Jeremy A. Lawrence (State Bar No. 270866)
jlawrence@fbm.com
Casey A. Rosen (State Bar No. 353097)
crosen@fbm.com
Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

Attorneys for KNIGHT LAW GROUP LLP, STEVE B. MIKHOV, AMY MORSE, ROGER KIRNOS, DOROTHY BECERRA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CONTINENTAL CASUALTY COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>KNIGHT LAW GROUP LLP, STEVE B. MIKHOV, AMY MORSE, ROGER KIRNOS, DORTHY BECERRA, WIRTZ LAW, APC and RICHARD M. WIRTZ,<br><br>Defendants.<br><br>KNIGHT LAW GROUP LLP; STEVE B. MIKHOV; AMY MORSE; ROGER KIRNOS; DOROTHY BECERRA,<br><br>Counterclaimants,<br><br>vs.<br><br>CONTINENTAL CASUALTY COMPANY,<br><br>Counterdefendant. | Case No. 2:25-cv-07126-AB-MAR<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT BY KNIGHT LAW GROUP LLP, STEVE B. MIKHOV, AMY MORSE, ROGER KIRNOS, AND DOROTHY BECERRA**<br><br>Judge: Hon. André Birotte, Jr.<br><br>Date: October 23, 2026<br>Time: 10:00 a.m.<br>Location: Courtroom 7B, 7th Floor<br><br>Trial Date: September 27, 2027 |

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 1

A. Continental issued the Policy to protect the Insureds against claims arising out of their performance of legal services. ..... 1

B. The Insureds were sued for claims incurred as a result of their performance of legal services for their clients. ..... 2

C. Continental refused to defend the Insureds against the claims incurred as a result of their performance of legal services. ..... 3

III. ARGUMENT ..... 3

A. The duty to defend under California law is appropriately resolved via summary judgment. ..... 3

B. Key principles of California insurance law support coverage here. ..... 4

1. California law requires coverage provisions to be construed broadly and exclusions to be construed narrowly. ..... 4

2. California law imposes a broad duty to defend on insurers. ..... 5

C. Continental had, and has, a duty to defend the *Ford* Action. ..... 7

1. The *Ford* Action potentially arises from acts in the rendering of legal services for others. ..... 7

2. Continental cannot avoid a duty to defend on the ground that the *Ford* Action does not seek covered damages. ..... 13

a. The *Ford* Action seeks covered monetary damages. ..... 13

b. The Policy does not bar coverage for all RICO claims. ..... 14

c. Continental is required to defend claims *regardless* of whether they seek covered damages. ..... 16

3. California Insurance Code section 533 does not apply to the duty to defend. ..... 18

D. Continental has breached its duty to defend the Insureds. ..... 20

IV. CONCLUSION ..... 21

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Am. Nat'l Fire Ins. Co. v. Abrams*,
No. 99 C 5807, 2002 WL 243455 (N.D. Ill. Feb. 19, 2002) .......................... 11, 12

*Anthem Elecs., Inc. v. Pac. Emps. Ins. Co.*,
302 F.3d 1049 (9th Cir. 2002) .......................................................... 4

*Boardman v. Pac. Seafood Grp.*,
822 F.3d 1011 (9th Cir. 2016) .......................................................... 15

*Colony Ins. Co. v. Fladseth*,
No. C 12-1157 CW, 2013 WL 1365988 (N.D. Cal. Apr. 3, 2013), *amended*, No. C 12-1157 CW, 2013 WL 3187938 (N.D. Cal. June 21, 2013) .......................................................... 10, 11

*Cont'l Cas. Co. v. Cole*,
809 F.2d 891 (D.C. Cir. 1987) .......................................................... 9, 10

*Evanston Ins. Co. v. L. Off. of Michael P. Medved, P.C.*,
890 F.3d 1195 (10th Cir. 2018) .......................................................... 11

*Ford Motor Company v. Knight Law Group LLP, et al.*,
Case No. 2:25-cv-04550 (C.D. Cal., filed May 21, 2025) ............................ *passim*

*Harad v. Aetna Cas. & Sur. Co.*,
839 F.2d 979 (3d Cir. 1988) .......................................................... 10, 12

*Harbison v. Am. Motorists Ins. Co.*,
244 F. App'x 123 (9th Cir. 2007) .......................................................... 9

*Home Ins. Co. v. Greenfield & Chimicles*,
No. 97-7797, 1999 WL 286440 (E.D. Pa. May 5, 1999) .............................. 10, 12

*Jensen v. Snellings*,
841 F.2d 600 (5th Cir. 1988) .......................................................... 12

*Mercier for Est. of England v. DePuy Orthopaedics, Inc.*,
No. CV 23-0040-GW-JCX, 2024 WL 4646994 (C.D. Cal. Oct. 25, 2024) .......................................................... 4

*Napoli, Kaiser & Bern, LLP v. Westport Ins. Corp.*,
295 F. Supp. 2d 335 (S.D.N.Y. 2003) ........ 10

*Rotella v. Wood*,
528 U.S. 549 (2000) ........ 15

*Shore Chan Bragalone Depumpo LLP v. Greenwich Ins. Co.*,
856 F. Supp. 2d 891 (N.D. Tex. 2012) ........ 10

*Travelers Indem. Co. of Conn. v. Centex*,
No. 11-CV-03638-SC, 2015 WL 5836947 (N.D. Cal. Oct. 7, 2015) ........ 21

**STATE CASES**

*Abrams v. State Farm Fire & Cas. Co.*,
714 N.E.2d 92 (Ill. Ct. App. 1999) ........ 11, 12

*Acceptance Ins. Co. v. Syufy Enters.*,
69 Cal. App. 4th 321 (1999) ........ 9

*AIU Ins. Co. v. Superior Court*,
51 Cal. 3d 807 (1990) ........ 5, 14

*Am. Guarantee & Liab. Ins. Co. v. Moskowitz*,
856 N.Y.S.2d 820 (N.Y. Sup. Ct. 2008), *aff'd*, 58 A.D.3d 426,
(2009); ........ 12

*Atl. Mut. Ins. Co. v. J. Lamb, Inc.*,
100 Cal. App. 4th 1017 (2002) ........ 6, 11

*Aydin Corp. v. First State Ins. Co.*,
18 Cal. 4th 1183 (1998) ........ 15

*B & E Convalescent Ctr. v. State Comp. Ins. Fund*,
8 Cal. App. 4th 78 (1992) ........ 18, 20

*Buss v. Superior Court*,
16 Cal. 4th 35 (1997) ........ 6, 20

*Downey Venture v. LMI Ins. Co.*,
66 Cal. App. 4th 478 (1998) ........ 6, 17, 19, 20

*E.M.M.I. Inc. v. Zurich Am. Ins. Co.*,
32 Cal. 4th 465 (2004) ........ 5

*Gray v. Zurich Ins. Co.*,
65 Cal. 2d 263 (1966) .......... 12, 19

*Horace Mann Ins. Co. v. Barbara B.*,
4 Cal. 4th 1076 (1993) .......... 19

*MacKinnon v. Truck Ins. Exch.*,
31 Cal. 4th 635 (2003) .......... 5, 15

*Marie Y. v. Gen. Star Indem. Co.*,
110 Cal. App. 4th 928 (2003) .......... 6, 16, 19, 20

*Montrose Chem. Corp. v. Admiral Ins. Co.*,
10 Cal. 4th 645 (1995) .......... 4,5

*Montrose Chem. Corp. v. Superior Court*,
6 Cal. 4th 287 (1993) .......... *passim*

*Murillo v. Fleetwood Enters., Inc.*,
17 Cal. 4th 985 (1998) .......... 8

*Naranjo v. Spectrum Sec. Servs., Inc.*,
15 Cal. 5th 1056 (2024) .......... 15

*Regas v. Cont'l Cas. Co.*,
487 N.E.2d 105 (Ill. Ct. App. 1985) .......... 9

*Rosen v. State Farm Gen. Ins. Co.*,
30 Cal. 4th 1070 (2003) .......... 16

*S. California Pizza Co., LLC v. Certain Underwriters at Lloyd's, London*,
40 Cal. App. 5th 140 (2019) .......... 17, 18

*Safeco Ins. Co. of Am. v. Robert S.*,
26 Cal. 4th 758 (2001) .......... 16

*Tana v. Pros. Prototype I Ins. Co.*,
47 Cal. App. 4th 1612 (1996) .......... 8, 10, 11

## FEDERAL STATUTES

18 U.S.C.
§ 1961, et. seq. .... 2, 14
§ 1962(c) and .... 3
§ 1962(d) .... 3
§ 1963 .... 15
§ 1964(a) .... 15
§ 1964(c) .... 14, 15

28 U.S.C.
§ 1927 .... 2, 14

## FEDERAL RULES AND REGULATIONS

Federal Rule of Civil Procedure
Rule 11 .... 2, 14
Rule 56 .... 3

## STATE STATUTES

Cal. Civ. Code
§ 998 .... 8
§ 1636 .... 4
§ 1638 .... 5
§ 1639 .... 5
§ 1644 .... 5
§ 1668 .... 19
§ 1794(d) .... 8

California Insurance Code
§ 533 .... 18, 19, 20

## OTHER AUTHORITIES

John Zulkey, *Does Your Claim Arise Out of Professional Services? Professional Liability Policies and Professional Services Exclusions*, 3 Corp. & Bus. L.J. 160, 190 (2022) .... 9

# I. INTRODUCTION

Continental Casualty Company ("Continental") agreed to insure Knight Law Group LLP and its affiliated professionals, including Steve B. Mikhov, Amy Morse, Roger Kirnos, and Dorothy Becerra (Knight Law Group and the foregoing individuals, the "Insureds"), in the event they faced claims arising out of their performance of legal services. After Ford Motor Company ("Ford") sued the Insureds for claims arising out of fee petitions filed by the Insureds on behalf of their clients in Lemon Law actions, Continental refused to perform its contractual promise to defend the Insureds against such suits. Instead of assisting the Insureds in defending themselves against Ford's meritless claims (which were recently dismissed with prejudice), Continental filed its own lawsuit against the Insureds.

By this motion, the Insureds seek an order of partial summary judgment declaring that Continental is in breach of its duty to defend.

# II. FACTUAL BACKGROUND

## A. Continental issued the Policy to protect the Insureds against claims arising out of their performance of legal services.

Continental issued Lawyers Professional Liability Policy No. 6052148900 ("Policy") to Knight Law Group. Statement of Uncontroverted Fact ("SUF") No. 1; *see also* Declaration of Jeremy Lawrence ("Lawrence Decl."), Ex. 1, Policy, ECF 1-2. The Policy applies to claims made against insureds during the period from September 15, 2024 to September 15, 2025. SUF No. 2. As Continental admits, all of the moving Defendants/Counterclaimants are **Insureds**[1] under the Policy. SUF No. 3.

The Policy covers the Insureds for "all sums in excess of the deductible that the **Insured** shall become legally obligated to pay as **damages** and **claim expenses**

[1] The Policy uses bold text to refer to terms that are defined in the Policy, and this brief does the same. Pincites to particular pages of the Policy refer to the page number appearing in the document header generated by the Court's ECF system.

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

because of a **claim** that is both first made against the **Insured** and reported in writing to [Continental] during the policy period by reason of an act or omission in the performance of legal services by the **Insured** or by any person for whom the **Insured** is legally liable….” SUF No. 4. Additionally, the Policy provides that Continental “shall have the right and duty to defend in the **Insured**’s name and on the **Insured**’s behalf a claim covered by this Policy even if any of the allegations of the claim are groundless, false or fraudulent.” SUF No. 5.

A **claim** is defined as “a demand, including the service of suit …, received by the **Insured** for money or services arising out of an act or omission, including personal injury, in the rendering of or failure to render **legal services**.” SUF No. 6. **Legal services** are “those services … performed by an **Insured** for others as a lawyer….” SUF No. 7.

The Policy defines **damages** as “judgments, awards and settlements (including pre-judgment interest),” but adds that **damages** do not include “civil or criminal fines, sanctions, penalties or forfeitures, whether pursuant to law, statute, regulation or court rule, including but not limited to awards under 18 U.S.C. § 1961, et. seq., Federal Rules of Civil Procedure 11 or 28 U.S.C. § 1927 and state statutes, regulations, rules or law so providing, and injuries that are a consequence of any of the foregoing.” SUF No. 8-9.

### B. The Insureds were sued for claims incurred as a result of their performance of legal services for their clients.

On May 21, 2025, the Insureds were sued by Ford in a lawsuit that fell squarely within the Policy’s coverage. *Ford Motor Company v. Knight Law Group LLP, et al.*, Case No. 2:25-cv-04550 (C.D. Cal., filed May 21, 2025) (“*Ford* Action”); SUF No. 12; *see* Lawrence Decl., Ex. 2, ECF 1-1. The crux of Ford’s claim is that the Insureds allegedly submitted inaccurate information to courts and/or directly to Ford in support of petitions for attorneys’ fees under the Song-Beverly Act. Ford filed three different versions of its complaint. SUF No. 13. In

each of the three iterations of its complaint, Ford asserted two causes of action: violations of 18 U.S.C. § 1962(c) and § 1962(d), which are part of the Racketeer Influenced and Corrupt Organizations Act (RICO). ECF 28 ¶ 35 (Counterclaim); ECF 33 ¶ 35 (Answer to Counterclaim). The original Complaint and First Amended Complaint were filed against all the Insureds as well as other defendants. Lawrence Decl., Ex. 2, *Ford* Compl., ECF 1-1; Lawrence Decl., Ex. 3, *Ford* First Am. Compl., ECF 39-4. The Second Amended Complaint asserted claims against only the individual attorneys Mikhov, Morse, and Kirnos. Lawrence Decl., Ex. 4, *Ford* Second Am. Compl., ECF 39-5.

The court dismissed Ford's complaints twice: first with respect to the First Amended Complaint, and a second time with respect to the Second Amended Complaint. SUF Nos. 14-15. In its most recent dismissal order, the court dismissed Ford's claims with prejudice. SUF No. 15. Ford has filed an appeal in the Ninth Circuit, which remains pending. SUF No. 16.

### C. Continental refused to defend the Insureds against the claims incurred as a result of their performance of legal services.

The Insureds notified Continental of the *Ford* Action in June 2025 and sought a defense under the Policy. SUF No. 17. Continental refused to accept coverage. SUF No. 18. Rather than providing a defense while the *Ford* Action was pending, Continental filed the instant action seeking a ruling that it owed no duty to defend or indemnify the Insureds in connection with the *Ford* Action. SUF No. 18; *see* Compl., ECF 1.

## III. ARGUMENT

### A. The duty to defend under California law is appropriately resolved via summary judgment.

Federal Rule of Civil Procedure 56 permits a party to move for summary judgment on all or part of a claim, so long as the material facts are undisputed. An insurer's duty to defend is an issue particularly well-suited for resolution on

summary judgment. *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 291 (1993) (adjudicating duty to defend on summary judgment) ("*Montrose I*"); *Anthem Elecs., Inc. v. Pac. Emps. Ins. Co.*, 302 F.3d 1049, 1060 (9th Cir. 2002) (state law duty to defend framework applies in federal court).[2]

Because this Court is exercising diversity jurisdiction, California choice-of-law rules apply. *See, e.g.*, *Mercier for Est. of England v. DePuy Orthopaedics, Inc.*, No. CV 23-0040-GW-JCX, 2024 WL 4646994, at *2 (C.D. Cal. Oct. 25, 2024). Under those rules, California law presumptively applies. *Id.* Continental has not suggested that any other state's laws apply here, and indeed, has expressly invoked California law in its Complaint. Compl., ECF No. 1, ¶¶ 51, 66. Accordingly, California law applies here.

### B. <u>Key principles of California insurance law support coverage here.</u>

California law provides well-established legal rules governing disputes over an insurer's duty to defend. Both rules addressing interpretation of insurance policy language and rules addressing the analysis of the insurer's duty to defend require that any uncertainties regarding insurance policy language and underlying allegations must be resolved *in favor of the insured*.

#### 1. California law requires coverage provisions to be construed broadly and exclusions to be construed narrowly.

The California legislature has codified the rules of contract interpretation that apply to all contracts, including insurance policies. *See Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 666 (1995) ("*Montrose II*"). The central goal is to "give effect to the mutual intention of the parties . . . ." Cal. Civ. Code § 1636. This

---

[2] Continental filed a Motion for Judgment on the Pleadings raising similar issues as this Motion. *See* ECF 39. The Insureds proposed that Continental could pursue its arguments by filing a cross-motion for summary judgment, without prejudice to filing an additional motion for summary judgment later in the case. *See* Joint Rule 26(f) Report, ECF 34 at 9. Continental refused. *Id.*

mutual "intent is to be inferred, if possible, solely from the written provisions of the contract." *Montrose II*, 10 Cal. 4th at 666 (citing Cal. Civ. Code § 1639). Subject to certain exceptions favoring the policyholder, the contract is interpreted according to "[t]he 'clear and explicit' meaning" of its provisions as used "in their 'ordinary and popular sense,'" "unless 'used by the parties in a technical sense or a special meaning is given to them by usage.'" *Id.* (quoting Cal. Civ. Code §§ 1638, 1644).

Because insurers are responsible for drafting insurance policies, courts have developed certain other rules of interpretation that protect the objectively reasonable expectations of the insured. Coverage provisions must be interpreted "broadly" in favor of coverage. *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 838 (1990). In contrast, "'exclusionary clauses are interpreted narrowly against the insurer.'" *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003) (citation omitted). Insurers are obligated "'to phrase exceptions and exclusions in *clear and unmistakable language*'"—otherwise, they are not enforceable. *Id.* (citation omitted). If the policy language "is susceptible to two or more reasonable constructions" in the context of the policy "'as a whole'" and the "'circumstances of the case,'" it is ambiguous. *E.M.M.I. Inc. v. Zurich Am. Ins. Co.*, 32 Cal. 4th 465, 470 (2004) (citation omitted). Such ambiguities must be "'resolved in the insureds' favor, consistent with the insureds' reasonable expectations.'" *Id.* at 471.

**2. California law imposes a broad duty to defend on insurers.**

The Policy requires Continental, in relevant part, "to defend in the **Insured's** name and on the **Insured's** behalf a claim covered by this **Policy** even if any of the allegations of the claim are groundless, false or fraudulent." SUF No. 5. California courts employ a burden-shifting framework for analyzing when such a contractual promise to defend applies. *See Montrose I*, 6 Cal. 4th at 299-300.

To meet its initial burden for invoking the insurer's duty to defend, the insured must show that the "underlying complaint alleges the insured's liability for damages potentially covered under the policy, or [that] the complaint might be amended to

give rise to a liability that would be covered under the policy." *Id.* at 299. This is typically done "'by comparing the allegations of the complaint with the terms of the policy.'" *Id.* at 295. The "bare 'potential' or 'possibility' of coverage" for even a single claim triggers the insurer's obligation to defend the entire case. *Id.* at 300.

Once the insured has met its burden, "'the insurer must assume its duty to defend unless and until it can conclusively refute that potential'" for coverage. *Id.* at 299-300. An insurer invoking an exclusion to coverage must demonstrate that the exclusion applies "in all possible worlds" and conclusively eliminates any possibility of coverage. *Atl. Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1039 (2002). "Any doubt as to whether the facts establish [or defeat] the existence of the defense duty *must be resolved in the insured's favor*." *Montrose I*, 6 Cal. 4th at 299-300 (emphasis added).

Where *even one allegation* in the complaint is potentially covered by the insurance policy, the insurer has a duty to defend against *the entire lawsuit*. *Buss v. Superior Court*, 16 Cal. 4th 35, 48 (1997) (only one of 27 claims potentially covered but insurer obligated to defend entire lawsuit). This approach reflects a key reason why insureds purchase liability insurance: "The insured's desire to secure the right to call on the insurer's superior resources for the defense of third party claims is, in all likelihood, typically as significant a motive for the purchase of insurance as is the wish to obtain indemnity for possible liability." *Montrose I*, 6 Cal. 4th at 295-96. Courts are, accordingly, "consistently solicitous" of insureds' expectations of a prompt, meaningful, and complete defense. *Id*.

In addition, "an insurer, in its contract, may agree to defend an insured against claims for which there is no [indemnity] coverage." *Marie Y. v. Gen. Star Indem. Co.*, 110 Cal. App. 4th 928, 951 (2003). Where the insurer provides a contractual promise to defend claims regardless of whether they are ultimately covered by the policy, the insurer is required to perform that "specific and distinct commitment" to defend such claims. *Downey Venture v. LMI Ins. Co.*, 66 Cal. App. 4th 478, 507

(1998).

### C. Continental had, and has, a duty to defend the *Ford* Action.

#### 1. The *Ford* Action potentially arises from acts in the rendering of legal services for others.

The Policy's insuring agreement provides coverage for claims made against the Insureds "arising out of an act or omission . . . in the rendering of or failure to render **legal services**." SUF No. 6. The Policy defines **legal services** to include "those services . . . performed by an **Insured** for others as a lawyer . . . ." SUF No. 7.

This basic coverage provision is clearly implicated by the *Ford* Action: the Insureds were sued for alleged acts in performing legal services for their clients. The crux of Ford's claim is that the Insureds allegedly submitted inaccurate information to courts and/or directly to Ford in support of petitions for attorneys' fees under the Song-Beverly Act. As Ford itself characterized its claims in its original complaint, its claims are based on the Insureds' "fee applications and fee demands" in Lemon Law claims against Ford. *see* SUF No. 19.

More specifically, Ford's claims are based on "fee applications" that the Insureds "publicly filed" with the courts and "served on lawyers" for the opposing parties. SUF Nos. 19-21. Ford's claims also involve the Insureds' negotiations of settlements with Ford. SUF Nos. 22-24. Ford specifically alleged that it has "overpaid to resolve consumers' pre-litigation and post-litigation claims even before fee applications are made" as a result of the Insureds' filing of fee applications. SUF 23. It claims that its "overpay[ment] in settlement of Lemon Law cases" is "not just for attorneys' fees, but for compensatory damages and civil penalties as well"—payments of additional compensation *to the Insureds' clients* as a result of the Insureds' legal services. SUF 23; *see also* SUF 24 (Ford's alleged injuries include "resolving consumers' pre-litigation and post-litigation claims even before fee applications are made").

These activities at issue in the *Ford* Action—filing and arguing motions in

court, and negotiating settlements with an adverse party—are core activities that a lawyer performs on behalf of a client. An attorney's preparation and submission of fee applications under the Song-Beverly Act inherently involves an attorney's performance of legal services for clients. The Song-Beverly Act provides:

> If the buyer prevails in an action under this section, ***the buyer*** shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred ***by the buyer*** in connection with the commencement and prosecution of such action.

Cal. Civ. Code § 1794(d) (emphases added). This fee-shifting statute is a central component of the remedies the Song-Beverly Act provides to injured consumers: "By permitting prevailing buyers to recover their attorney fees in addition to costs and expenses, our Legislature has provided injured consumers strong encouragement to seek legal redress in a situation in which a lawsuit might not otherwise have been economically feasible." *Murillo v. Fleetwood Enters., Inc.*, 17 Cal. 4th 985, 994 (1998), *superseded in part on other grounds by* Cal. Civ. Proc. Code § 998. As the Court concluded in its order dismissing Ford's Second Amended Complaint with prejudice, the Song-Beverly Act "deems a fee award to be a portion of the overall judgment and pays those fees not to the lawyer, but to the client." Lawrence Decl., Ex. 5 at 17 ( MTD Order).

The claims in the *Ford* Action accordingly fall squarely in the heartland of the Policy's coverage. The central purpose of lawyers' professional liability insurance is to provide "cover[age] for acts or omissions in the course of *representing his clients*." *Tana v. Pros. Prototype I Ins. Co.*, 47 Cal. App. 4th 1612, 1619 (1996). That broad purpose is reflected in the broad language of the Policy itself. It covers claims "*arising out of* an act or omission" in "rendering" or "fail[ing] to render" "services . . . performed by an **Insured** for others as a lawyer …." SUF Nos. 6-7 (emphasis added). This is expansive language. Under California law, it must be

interpreted expansively. *Acceptance Ins. Co. v. Syufy Enters.*, 69 Cal. App. 4th 321, 328 (1999) ("California courts have consistently given a broad interpretation to the terms 'arising out of'…in various kinds of insurance provisions."). By promising to cover claims "arising out of" the Insureds' performance of legal services, SUF No. 6, Continental agreed to cover claims involving even "a minimal causal connection or incidental relationship" between the Insureds' professional services and any subsequent claims against them. *Acceptance Ins.*, 69 Cal. App. 4th at 328.

Contrary to Continental's arguments, coverage is *not* limited solely to malpractice claims brought by clients. *See* ECF 39-1, Continental Mot. for J. at 12 Continental should know better. When Continental made similar arguments in prior cases, courts rejected Continental's argument because it is untethered from the plain language of Continental's insurance policies. *Cont'l Cas. Co. v. Cole*, 809 F.2d 891, 894 (D.C. Cir. 1987) (Continental's interpretation was "untenable"); *Regas v. Cont'l Cas. Co.*, 487 N.E.2d 105, 109 (Ill. Ct. App. 1985) (Continental's "interpretation is not supported by the language of the policy"). It is widely accepted that lawyers' professional liability insurance covers more than malpractice claims by clients. John Zulkey, *Does Your Claim Arise Out of Professional Services? Professional Liability Policies and Professional Services Exclusions*, 3 Corp. & Bus. L.J. 160, 190 (2022) ("courts have routinely rejected arguments that professional liability policies … apply only to claims brought by clients of the insured"); *see, e.g., Harbison v. Am. Motorists Ins. Co.*, 244 F. App'x 123, 125 (9th Cir. 2007) (insurer had duty to defend tortious interference claim asserted by former co-counsel). If Continental had intended to limit its coverage to client claims for malpractice, it easily could have written the Policy to apply only to claims brought *by clients* alleging *professional negligence*. It did not do so.

Instead, Continental's Policy is written more broadly to cover claims arising out of the Insureds' "rendering of" "services … for others as a lawyer …." SUF Nos. 6-7. The *Ford* Action squarely implicates that coverage. Ford's claims are

premised on the Insureds' acts of filing fee motions, making court appearances, and negotiating settlements on behalf of their clients. SUF Nos. 19-24. These activities obviously constitute the performance of legal services. *See, e.g.*, *Colony Ins. Co. v. Fladseth*, No. C 12-1157 CW, 2013 WL 1365988, at *8 (N.D. Cal. Apr. 3, 2013) (covered legal services include "advocacy on behalf of clients"), *amended*, No. C 12-1157 CW, 2013 WL 3187938 (N.D. Cal. June 21, 2013); *Shore Chan Bragalone Depumpo LLP v. Greenwich Ins. Co.*, 856 F. Supp. 2d 891, 897 (N.D. Tex. 2012) ("negotiating settlements" constitutes "legal services"); *Napoli, Kaiser & Bern, LLP v. Westport Ins. Corp.*, 295 F. Supp. 2d 335, 341 (S.D.N.Y. 2003) ("settlement negotiations" were covered legal services); *Home Ins. Co. v. Greenfield & Chimicles*, No. 97-7797, 1999 WL 286440, at *7 (E.D. Pa. May 5, 1999) ("Preparing and filing lawsuits are professional services for an attorney"); *Harad v. Aetna Cas. & Sur. Co.*, 839 F.2d 979, 984–85 (3d Cir. 1988) (claims against an attorney who "drafted, signed and filed" pleadings on behalf of a client "go to the heart of the type of services an attorney provides to his clients"); *Cole*, 908 F.2d at 896 (law firm's "settlement of the case and its acceptance of attorneys' fees" were covered professional services). The *Ford* Action Court specifically described the Insureds' "litigation activity" as a "but for" component of the underlying claims. Lawrence Decl., Ex. 5 at 15.

Continental is thus wrong to compare the *Ford* Action to cases involving fee disputes *between an attorney and a client*. *See* ECF 39-1, Continental Mot. for J. at 18-20. It is true that courts have rejected insureds' claims for coverage in disputes over the insureds' "business practices, such as attorney-client fee arrangements and disputes arising thereunder." *Tana*, 47 Cal. App. 4th at 1619. Those cases are based on a "distinction between skills or knowledge specific to the profession, and administrative tasks, such as billing, inherent to all businesses." *Fladseth*, 2013 WL 1365988, at *8.

The *Ford* Action plainly involves allegations about the Insureds' activities

falling on the *professional* side of this line, including litigation and negotiation activities on behalf of their clients. This case is not like the cases Continental cited, as those cases were not based on the insured attorneys' efforts in litigation and negotiation *on behalf of the client* to obtain a recovery *from the client's adversary*. *See Tana*, 47 Cal. App. 4th 1618 (insured attorney's dispute with former client and co-counsel over entitlement to disputed fee did not involve the performance of legal services); *Fladseth*, 2013 WL 1365988, at *9 (clients' claims regarding insured attorney's excessive billing and illegal fee agreement did not involve the performance of legal services); *Evanston Ins. Co. v. L. Off. of Michael P. Medved, P.C.*, 890 F.3d 1195, 1199 (10th Cir. 2018) (allegations based on insured attorney's excessive billing to clients, which were passed through to third party, did not involve the performance of legal services). Even if certain aspects of the *Ford* Action were deemed to involve the Insureds' administrative or business practices (as distinct from their professional legal services), other aspects of Ford's claims (including the negotiation of settlements and the litigation of fee petitions) unquestionably involve the performance of legal services. Continental therefore cannot meet its burden at the duty to defend stage of proving *conclusively* that there is *no potential* that the *Ford* Action involves the Insureds' performance of legal services on behalf of their clients. *Montrose I*, 6 Cal. 4th at 299-300; *J. Lamb*, 100 Cal. App. 4th at 1039.

Continental has also cited an alternative holding from an unpublished out-of-state decision to argue for a *per se* rule that claims alleging fraudulent conduct do not involve the performance of legal services as a matter of law. ECF 39-1, Continental Mot. for J. at 13 (citing *Am. Nat'l Fire Ins. Co. v. Abrams*, No. 99 C 5807, 2002 WL 243455, at *6 (N.D. Ill. Feb. 19, 2002)). That case involved the insured attorneys' involvement in an alleged insurance fraud scheme in which the attorneys represented individuals who intentionally caused car accidents and then sought inflated recoveries from the other drivers' insurance companies. *See Abrams*

*v. State Farm Fire & Cas. Co.*, 714 N.E.2d 92, 98 (Ill. Ct. App. 1999). That is not what is alleged against these Insureds; here, the Insureds represented their clients in pursuing bona fide, *meritorious* claims against Ford. *See* Lawrence Decl., Ex. 5 at 24 (Ford "does not dispute that Defendants brought meritorious Lemon Law cases"). There is no basis for suggesting that allegations of attorney fraud *per se* take a case outside the scope of a lawyers professional liability policy's coverage, especially before a court (or jury) determines whether the allegations have merit. Indeed, there is ample contrary case law. *See, e.g.*, *Abrams*, 714 N.E.2d at 98 (specifically holding that the conduct at issue in *Abrams* constituted professional services, for purposes of analyzing general liability policy's professional services exclusion); *Harad*, 839 F.2d at 980–81 (malicious prosecution action based on attorney filings involved professional services); *Greenfield & Chimicles*, 1999 WL 286440, at *8 (insurer had duty to defend insured attorney against claim alleging attorney threatened and filed fraudulent securities claims); *Am. Guarantee & Liab. Ins. Co. v. Moskowitz*, 856 N.Y.S.2d 820, 823 (N.Y. Sup. Ct. 2008) (insurer had duty to defend insured attorney against claims alleging fraud and RICO violations), *aff'd*, 58 A.D.3d 426, (2009); *Jensen v. Snellings*, 841 F.2d 600, 617 (5th Cir. 1988) (insurer had duty to defend law firm against RICO claims).

Indeed, it would be anomalous, and outside any insured's reasonable expectations under the Policy, for Continental to avoid its duty to defend on the mere basis that the *Ford* Action alleges fraud. It is widely recognized that "the complainant in the third party action drafts his complaint in the broadest terms" and "may very well stretch the action which lies in only nonintentional conduct to the dramatic complaint that alleges intentional misconduct." *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 276 (1966). Recognizing this problem, the Continental Policy *expressly confirms* that allegations of fraudulent and other intentional misconduct are within the scope of Continental's duty to defend. SUF No. 11; *see infra*, Sec. III.C.3. The Policy *expressly promises* to defend the Insureds against claims that "are groundless,

false or fraudulent." SUF No. 5. Continental cannot avoid its contractual duty to defend based on a supposed carve-out that contravenes the Policy's language and runs afoul of California insurance law.

Because the *Ford* Action asserts claims against the Insureds based on their litigation and negotiation activities on behalf of clients, the Policy's basic grant of coverage for claims based on their performance of **legal services** applies. And if there is even any doubt about that question, Continental has a duty to defend. *Montrose I*, 6 Cal. 4th at 299-300.

**2. Continental cannot avoid a duty to defend on the ground that the *Ford* Action does not seek covered damages.**

Continental is also wrong to argue that it has no defense obligations because the *Ford* Action does not seek covered **damages**. Continental is wrong for two independent reasons, both being a sufficient basis to grant the Insureds' Motion. First, the *Ford* Action *does* seek covered **damages**. Second, even if the *Ford* Action did not seek covered **damages**, the Policy still requires Continental to defend the Insureds.

**a. The *Ford* Action seeks covered monetary damages.**

The underlying claims seek damages that are potentially covered by the Continental Policy. The complaint in the *Ford* Action seeks "an award of general damages in an amount to be determined at trial …." SUF No. 25. That includes costs Ford allegedly incurred in its efforts "to detect and … stop" allegedly improperly Lemon Lee fee recovery efforts. SUF No. 26.

Ford also asserts that the Insureds have generated "negative publicity" for Ford, which has allegedly "harm[ed] Ford's reputation and goodwill." SUF No. 27. Ford's effort to recover general damages, including alleged damages for reputational injuries, at least potentially constitute covered **damages** under the Policy. The Policy defines **damages** broadly to mean "judgments, awards and settlements (including pre-judgment interest)." SUF No. 8. Ford's complaints obviously

implicate this broad coverage provision. *See AIU*, 51 Cal. 3d at 838 (coverage clauses are construed "broadly" in favor of coverage). And if there is even any doubt on this question, there is a duty to defend. *Montrose I*, 6 Cal. 4th at 299-300.

**b. The Policy does not bar coverage for all RICO claims.**

Continental incorrectly asserts that the Policy does not cover *any* RICO claims at all. ECF 39-1, Continental Mot. for J. at 16-17. That position misreads the Policy. The Policy states that covered **damages** do not include "civil or criminal fines, sanctions, penalties or forfeitures, whether pursuant to law, statute, regulation or court rule, including but not limited to awards under 18 U.S.C. § 1961, et. seq., Federal Rules of Civil Procedure 11 or 28 U.S.C. § 1927 and state statutes, regulations, rules or law so providing, and injuries that are a consequence of any of the foregoing." SUF No. 9.

According to Continental, these two provisions, taken together, completely preclude coverage for *any* RICO claim. ECF 39-1 at 16-17. Not so. RICO provides that a plaintiff may "recover threefold the damages he sustains …." 18 U.S.C. § 1964(c). While the trebled portion of a RICO award would presumably not be covered under the Policy's language eliminating coverage for "the multiplied portion of multiplied awards," (SUF No. 9), that language does not affect coverage for the single (actual) damages portion of a RICO award. (18 U.S.C. § 1964(c)).

Nor does an award of actual, single damages under RICO constitute a "civil or criminal fine[], sanction[], penalt[y] or forfeiture[]" under the Policy's exclusionary language. SUF No. 9. Continental hangs its hat on a subordinate clause in this sentence stating that non-covered fines, sanctions, penalties, and forfeitures "includ[e] but [are] not limited to awards under 18 U.S.C. § 1961, et. seq.," and various other provisions, like Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927. ECF 39-1 at 16-17. Continental seems to view this as an escape clause that allows it to avoid coverage for *any* RICO claim.

Continental's interpretation of the **damages** carve-out misapplies basic rules of

English grammar and California insurance law. The Policy's shorthand reference to RICO appears in a subordinate clause providing *illustrative examples* that are a *subset* of the items listed in the main clause: "civil or criminal fines, sanctions, penalties or forfeitures…." SUF No. 9; *see Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1021 (9th Cir. 2016) ("the claims in the second clause," which were introduced by the term "'specifically including,'" "are a *smaller subset* of the temporally limited claims in the first clause"); *Naranjo v. Spectrum Sec. Servs., Inc.*, 15 Cal. 5th 1056, 1083 (2024) (terms like "include" and "including" are "illustrative"). In other words, this clause applies only to *fines, sanctions, penalties, or forfeitures* under RICO—such as fines and forfeitures under 18 U.S.C. § 1963, and (potentially) divestiture orders under 18 U.S.C. § 1964(a)—but not to other remedies under RICO, such as actual, single damages under 18 U.S.C. § 1964(c), which are compensatory rather than punitive. *See Rotella v. Wood*, 528 U.S. 549, 557-58 (2000) (stating that RICO's single-damages provision compensates victims, but that its treble-damages provision penalizes wrongdoers).

Any doubt on this point must be resolved against Continental, which drafted the Policy. Under California law, exclusionary language must be construed narrowly, not expansively. The California Supreme Court has "declared time and again," "'*any* exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect.'" *MacKinnon*, 31 Cal. 4th at 648 (emphasis added). Insurers are obligated "to phrase exceptions and exclusions in *clear and unmistakable language*." *Id.* Exclusions thus "*must be conspicuous, plain and clear*" to be enforceable. *Id.* These rules of construction apply regardless of whether the language is specifically labelled as an exclusion. *Aydin Corp. v. First State Ins. Co.*, 18 Cal. 4th 1183, 1191 (1998) ("it is the function served by policy language, not the location of language in an insurance policy, that is determinative"). The definition of **damages** does not conspicuously, plainly, and clearly eliminate all coverage for RICO claims. If Continental had intended to

exclude coverage for RICO claims entirely, it easily could have written an exclusion that barred coverage for any and all claims alleging violations of RICO. Instead, though, Continental wrote a narrow limitation on the scope of covered **damages.** SUF No. 9. Continental cannot now rewrite its Policy by providing less coverage than it expressly promised. "To do so would violate the fundamental principle that in interpreting contracts, including insurance contracts, courts are not to insert what has been omitted." *Safeco Ins. Co. of Am. v. Robert S.*, 26 Cal. 4th 758, 764 (2001).

Accordingly, the plain language of the Policy, interpreted in accordance with basic rules of English grammar and California insurance law, does not support Continental's sweeping attempt to eliminate all coverage for RICO claims.

#### c. Continental is required to defend claims *regardless* of whether they seek covered damages.

There is a second, independent reason why Continental cannot refuse to defend the Insureds on the basis of the Policy's definition of **damages**: the Policy requires Continental to defend claims *regardless* of whether they seek covered **damages**.

While Continental has cited a variety of cases stating the general rule that an insurer's duty to defend applies when the underlying claims seek potentially covered damages, *see* ECF 39-1 at 15-16, that is only a default rule, and parties are free to modify it by contract. "[A]n insurer, in its contract, may agree to defend an insured against claims for which there is no [indemnity] coverage." *Marie Y.*, 110 Cal. App. 4th at 951; *see generally Rosen v. State Farm Gen. Ins. Co.*, 30 Cal. 4th 1070, 1080 (2003) (insurers and insureds have "freedom to contract as they please"). "[W]hether there is a duty to defend depends upon the language of the insurance contract and whether it created an objectively reasonable expectation on the part of the insured that a defense would be provided in the circumstances." *Marie Y.*, 110 Cal. App. 4th at 951.

Here, the Continental Policy requires Continental to defend claims that *do not*

necessarily seek covered **damages**. The Policy's basic grant of coverage obligates Continental to pay *both* "**damages** and **claim expenses**" incurred by the Insureds "because of a **claim**" against the Insureds. SUF No. 4. This clear distinction between **damages** and **claim expenses** is important, because it indicates that Continental's obligation to cover **claim expenses** does not depend on the presence (actual or potential) of **damages** in the underlying **claim**. *See, e.g.*, *Downey Venture,* 66 Cal. App. 4th at 507 (insurer's duty to defend was independent of its potential indemnity obligation because "there is a specific and express promise of both indemnity and defense coverage").

This conclusion is confirmed by the definitions of the key terms used in the key coverage clause, **claim expenses** and **claim**, as well as the provision expressly creating Continental's duty to defend. *None of these provisions refer to **damages** at all*. **Claim expenses** are defined as the "fees charged by attorneys" and "all other reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **claim** …." SUF No. 10. And as discussed above, a **claim** is defined as "a demand … for money or services" from an **Insured**, "including the service of suit," "arising out of an act or omission … in the rendering of or failure to render **legal services**." SUF No. 6. *None of these terms* is defined or limited by the separate definition of **damages**. The Policy's duty to defend provision is similar. It states that Continental has the "duty to defend … a **claim** covered by this Policy even if any of the allegations of the **claim** are groundless, false or fraudulent." SUF No. 5. Again, this provision and the cross-referenced term **claim** are not limited to claims involving covered **damages**. Continental thus has a duty to defend "a **claim** covered by this Policy" (*i.e.*, a claim "arising out of an act or omission . . . in the rendering of or failure to render legal services") regardless of whether it seeks **damages** covered under the Policy.

California courts give effect to an insurer's express promise of defense coverage for claims that do not seek covered damages. For example, in *S. California*

*Pizza Co., LLC v. Certain Underwriters at Lloyd's, London*, 40 Cal. App. 5th 140, 154 (2019), the Court of Appeal observed that whether the amounts claimed in the underlying suit "are covered losses is neither here nor there." *Id.* at 154. Under the insurance policy there, defense costs were "expressly included in the Policy's definition of 'loss,' and by their very nature, they necessarily are amounts paid 'on account of a Claim.'" *Id.* Nothing more was required for the insurer to have a duty to defend the suit under the policy language. The same is true here. *See also B & E Convalescent Ctr. v. State Comp. Ins. Fund*, 8 Cal. App. 4th 78, 101 (1992) ("an insurer and an insured are free to contract for the provision of a defense to a claim which can not be indemnified").

Accordingly, under the express terms of Continental's Policy, it is irrelevant whether the *Ford* Action seeks **damages** covered under the Policy—Continental has a duty to defend *any* claim against the Insureds arising out of their performance of legal services for others.

### 3. California Insurance Code section 533 does not apply to the duty to defend.

Continental's final asserted ground for refusing to defend its Insureds, California Insurance Code section 533, fares no better than the first two. *See* ECF 39-1 at 17-19. It argues that because (in its view) Insurance Code section 533 prohibits indemnification for any liabilities in the *Ford* Action, there is no potential for coverage under the Policy and thus no duty to defend. But Insurance Code section 533 is completely irrelevant to an insurer's contractual duty to defend its insureds against lawsuits under the terms of its policy.[3]

California law is clear that this statute applies only to an insurer's *duty to indemnify* claims that would otherwise fall within the policy's coverage, not the

[3] The statute states: "An insurer is not liable for a loss caused by the wilful [sic] act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others." Cal. Ins. Code § 533.

insurer's *duty to defend*. As the California Supreme Court explained decades ago, Insurance Code section 533 (as well as another statute that Continental has not invoked, Civil Code section 1668) "forbid only contracts which indemnify for '*loss*' or '*responsibility*' resulting from wilful wrong-doing. Here we deal with a contract which provides for *legal defense* against an action charging such conduct; the contract does not call for indemnification of the insured if the third party plaintiff prevails." *Gray*, 65 Cal. 2d at 277–78 (emphasis added); *see also Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1087 (1993) (same, quoting *Gray*). Thus, "'[S]ection 533 precludes only *indemnification* of wilful conduct and not the *defense* of an action in which such conduct is alleged.'" *Marie Y.*, 110 Cal. App. 4th at 959 (citations omitted); *see also Downey Venture*, 66 Cal. App. 4th at 507 ("while indemnification of such claim is precluded by section 533, that conclusion does not apply to [the insurer's] defense commitment which, in this policy, is a specific and distinct commitment.").

That well-established rule applies with particular force here—Continental expressly promised that it would defend the Insureds against claims alleging "any dishonest, fraudulent, criminal, malicious act or omission or intentional wrongdoing by an **Insured**" "unless or until" that conduct "has been determined by any trial verdict, court ruling, regulatory ruling or legal admission." SUF No. 11. This promise to defend the Insureds is further supported by Continental's express promise to defend the Insureds against allegations that "are groundless, false or fraudulent." SUF No. 5.

Nothing in Insurance Code section 533 allows Continental to back out of these express promises. As the Court of Appeal explained in a case that Continental itself relies on extensively:

> if an insured either expressly purchases a defense without regard to indemnification (e.g., a litigation policy) or is led by the terms of the insurance agreement, whether those terms be clear or ambiguous, to reasonably expect a defense to the type of claim asserted, then a defense

> may be required even though there can legally be no duty to indemnify because of section 533.

*B & E Convalescent Ctr.*, 8 Cal. App. 4th at 101. The Policy here promises a defense against allegations of intentional wrongdoing regardless of whether Continental may or may not ultimately have any indemnity obligations. Having specifically promised to defend against claims alleging intentional wrongdoing, Continental cannot now invoke California Insurance Code section 533 to avoid performing that "specific and distinct commitment." *Downey Venture*, 66 Cal. App. 4th at 507.

California Insurance Code section 533 thus has no impact on Continental's duty to defend the Insureds in the *Ford* Action.

**D. Continental has breached its duty to defend the Insureds.**

Because Continental had (and continues to have) a duty to defend the Insureds in the *Ford* Action, it breached that duty by failing to provide a defense or pay any of the defense fees the Insureds have incurred. When an insurer has a duty to defend, it must "mount and fund a defense." *Buss*, 16 Cal. 4th at 58. Continental failed to defend the Insureds as required under California law. *See* SUF No. 18.

Because of its breach, Continental is liable as a matter of law for all the reasonable defense fees and costs the Insureds have incurred in defending the *Ford* Action from the date the Insureds tendered the *Ford* Action in June 2025. This is black-letter law in California. When an insurer breaches it duty to defend, "the proper measure of damages is the reasonable attorneys' fees and costs incurred by the insured in defense of the claim." *Marie Y.*, 110 Cal. App. 4th at 960-61.

Not only is Continental liable for the Insureds' defense fees and costs incurred between the date of tender through the present (the specific amount of which will be determined later in this case), but it is also responsible for those fees and costs in their entirety through the conclusion of the *Ford* Action. "The defense

duty is a continuing one, arising on tender of defense and lasting ***until the underlying lawsuit is concluded***, or until it has been shown that there is *no* potential for coverage…." *Montrose I*, 6 Cal. 4th at 295 (citation omitted) (bold italic emphasis added). Because Continental is in breach of its duty to defend, it has forfeited any statutory or contractual right it may have had to control the rates it pays to the Insureds' defense counsel for the ongoing defense. *See Travelers Indem. Co. of Conn. v. Centex*, No. 11-CV-03638-SC, 2015 WL 5836947, at *4 (N.D. Cal. Oct. 7, 2015) (forfeiture encompasses "'the right to control financial decisions such as the rate paid to independent counsel or the cost-effectiveness of any particular defense tactic or approach'") (citation omitted).

## IV. CONCLUSION

The Insureds respectfully request that the Court grant this Motion based on the undisputed facts and governing law.

Dated: August 12, 2026

FARELLA BRAUN + MARTEL LLP

By: */s/ Jeremy A. Lawrence*
Jeremy A. Lawrence
Casey A. Rosen

Attorneys for KNIGHT LAW GROUP LLP, STEVE B. MIKHOV, AMY MORSE, ROGER KIRNOS, DOROTHY BECERRA

**CERTIFICATION PURSUANT TO CIVIL LOCAL RULE 11-6.1**

The undersigned, counsel of record for Knight Law Group LLP, Steve B. Mikhov, Amy Morse, Roger Kirnos, Dorothy Becerra, certifies that this brief contains 6,977 words, which complies with the word limit of L.R. 11-6.1.

*/s/ Jeremy A. Lawrence*
Jeremy A. Lawrence