# EXHIBIT 1

**Lawyers Professional Liability**
Policy Declarations

## LAWYERS PROFESSIONAL LIABILITY POLICY DECLARATIONS

| Agency: | Branch: | Policy Number: | Insurance is provided by |
|---|---|---|---|
| 701031 | 912 | 6052148900 | Continental Casualty Company,<br>151 N Franklin St Chicago IL 60606<br>A Stock Insurance Company. |

| 1. NAMED INSURED AND ADDRESS: | NOTICE TO POLICYHOLDERS: |
|---|---|
| Knight Law Group, LLP<br>10250 CONSTELLATION BLVD STE 2500,<br>LOS ANGELES, CA 90067-6225 | This is a Claims Made and Reported policy. It applies only to those claims that are both first made against the insured and reported in writing to the Company during the policy period. Please review the policy carefully and discuss this coverage with your insurance agent or broker. |

**2. POLICY PERIOD:**

Inception: 09/15/2024
*at 12:01 A.M. Standard Time at the address shown above* — Expiration: 09/15/2025

**3. LIMITS OF LIABILITY:**

| | |
|---|---|
| *Inclusive of **Claims Expenses*** | Each Claim: $3,000,000<br>Aggregate: $3,000,000 |
| Death or Disability and Non-Practicing Extended Reporting Period Limit of Liability: | Each Claim: $1,000,000<br>Aggregate: $2,000,000 |

**4. DEDUCTIBLES:**

| | |
|---|---|
| Deductibles<br>*Inclusive of **Claims Expenses*** | Aggregate: $25,000 |

**5. POLICY PREMIUM:**

| | |
|---|---|
| Annual Premium: | [redacted] |
| Total Amount: | [redacted] |
| *Includes CNA Risk Control Credit of* | $0.00 |

*Includes Lawyers Data Breach and Network Security Premium, see coverage endorsement if applicable*

**6. FORMS AND ENDORSEMENTS ATTACHED AT INCEPTION:**

G118012AC (Ed. 03-1999), G118011A (Ed. 06-2015), CNA82437XX (Ed. 06-2015), G118016ACC (Ed. 12-2011), G118024A (Ed. 04-2008), G118029A (Ed. 04-2008), G118031A (Ed. 04-2008), G118039A04 (Ed. 05-2008)

**7. WHO TO CONTACT:**

| | |
|---|---|
| To report a claim: | CNA - Claims Reporting<br>P.O. Box 8317<br>Chicago, IL 60680-8317<br>Fax: 866-773-7504 / Online: www.cna.com/claims<br>Email: SpecialtyProNewLoss@cna.com<br>Lawyers Claim Reporting Questions: 800-540-0762 |



© Copyright CNA All Rights Reserved.

CNA

**Lawyers Professional Liability**
Policy Declarations

| | |
|---|---|
| Authorized Representative | 09/13/2024 Date |



© Copyright CNA All Rights Reserved.

**Continental Casualty Company**
**151 N Franklin St**
**Chicago IL 60606**

**LAWYERS PROFESSIONAL LIABILITY POLICY**

**ATTORNEY SCHEDULE**

**Policy Number:** 6052148900

| Name of Each Lawyer |
|---|
| Timothy Lupinek |
| Amy-Lyn Morse |
| Elvira Kamosko |
| Sundeep Samra |
| Jacob Cutler |
| Ted Swanson |
| Deepak Devabose |
| Trach Tran |
| Phil Thomas |
| Jeffery Mukai |
| Roger Kirnos |
| Armando Lopez |
| Lauren Ungs |
| Zachary Powell |
| Scott Wilson |
| Debra Reed |
| Steve Mikhov |
| Russell W Higgins |
| Heidi Alexander |
| Keishunn Johnson |
| Harita Nandivada |
| Brian Plummer |
| Summer M Smith |



© Copyright CNA All Rights Reserved.

# LAWYERS PROFESSIONAL LIABILITY POLICY

**THIS IS A CLAIMS MADE AND REPORTED POLICY. IT APPLIES ONLY TO THOSE CLAIMS THAT ARE BOTH FIRST MADE AGAINST AN INSURED AND REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD. PLEASE REVIEW THIS POLICY CAREFULLY AND DISCUSS THIS COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

I. INSURING AGREEMENT

A. Coverage

The **Company** agrees to pay on behalf of the **Insured** all sums in excess of the deductible that the **Insured** shall become legally obligated to pay as **damages** and **claim expenses** because of a **claim** that is both first made against the **Insured** and reported in writing to the **Company** during the **policy period** by reason of an act or omission in the performance of **legal services** by the **Insured** or by any person for whom the **Insured** is legally liable, provided that:

1. no **Insured** gave notice to a **prior insurer** of such **claim** or a **related claim**;
2. no **Insured** gave notice to a **prior insurer** of any such act or omission or **related act or omission**;
3. prior to the date an **Insured** first becomes an **Insured** under this Policy or became an **Insured** under the first policy issued by the **Company** (or its subsidiary or affiliated insurers) to the **Named Insured** or any **predecessor firm**, whichever is earlier, of which this Policy is a renewal or replacement, no such **Insured** had a basis to believe that any such act or omission, or **related act or omission**, might reasonably be expected to be the basis of such **claim**;
4. there is no other policy, whether primary, contributory, excess, contingent or otherwise, which provides insurance to any **Insured** for the **claim** based on or arising out of an act or omission in the performance of **legal services** by such **Insured** or by any person for whom such **Insured** is legally liable while "affiliated" with a firm other than the **Named Insured**. As used herein, "affiliated" includes acting as Of Counsel for a firm other than the **Named Insured**.

B. Defense

The **Company** shall have the right and duty to defend in the **Insured's** name and on the **Insured's** behalf a **claim** covered by this Policy even if any of the allegations of the **claim** are groundless, false or fraudulent. The **Company** shall have the right to appoint counsel and to make such investigation and defense of a **claim** as is deemed necessary by the **Company**. If a **claim** shall be subject to arbitration or mediation, the **Company** shall be entitled to exercise all of the **Insured's** rights in the choice of arbitrators or mediators and in the conduct of an arbitration or mediation proceeding.

C. Settlement

The **Company** shall not settle a **claim** without the written consent of the **Named Insured**.

D. Exhaustion of limits

The **Company** is not obligated to investigate, defend, pay or settle, or continue to investigate, defend, pay or settle a **claim** after the applicable limit of the **Company**'s liability has been exhausted by payment of **damages** or **claim expenses** or by any combination thereof or after the **Company** has deposited the remaining available limits of liability into a court of competent jurisdiction. In such case, the **Company** shall have the right to withdraw from the further investigation, defense, payment or



© Copyright CNA All Rights Reserved.

Case 2:25-cv-07126 Document 1-2 Filed 08/01/25 Page 6 of 28 Page ID #:53


settlement of such **claim** by tendering control of said investigation, defense or settlement of the **claim** to the **Insured**.

II. LIMITS OF LIABILITY AND DEDUCTIBLE

A. Limit of liability - each **claim**

Subject to paragraph B. below, the limit of liability of the **Company** for **damages** and **claim expenses** for each **claim** first made against the **Insured** and reported to the **Company** during the **policy period** shall not exceed the amount stated in the Declarations for each **claim.**

B. Limit of liability - in the aggregate

The limit of liability of the **Company** for **damages** and **claim expenses** for all **claims** first made against the **Insured** and reported to the **Company** during the **policy period** shall not exceed the amount stated in the Declarations as the aggregate.

C. Deductible

The deductible amount stated in the Declarations is the total amount of the **Insured's** liability for all **claims** and applies to the payment of **damages** and **claim expenses** for **claims** first made and reported to the **Company** in writing during the **policy period**. The deductible shall be paid by the **Named Insured**, or upon the **Named Insured's** failure to pay, jointly and severally by all **Insureds.** The limits of liability set forth in the Declarations are in addition to and in excess of the deductible.

If a **claim** is based on or arises out of the rendering of eleemosynary (pro bono) **legal services,** no deductible will apply but only where at the time of retention, there was approval by the appropriate committee or lawyer within the **Named Insured** that the matter would be handled without compensation.

D. Multiple **insureds**, **claims** and claimants

The limits of liability shown in the Declarations and subject to the provisions of this Policy is the amount the **Company** will pay as **damages** and **claim expenses** regardless of the number of **Insureds, claims** made or persons or entities making **claims**. If **related claims** are subsequently made against the **Insured** and reported to the **Company**, all such **related claims**, whenever made, shall be considered a single **claim** first made and reported to the **Company** within the **policy period** in which the earliest of the **related claims** was first made and reported to the **Company**.

E. Supplementary payments

Payments made under paragraphs 1., 2. and 3. below will not be subject to the deductible. All supplementary payments are in addition to the limits of liability.

1. Loss of Earnings

The **Company** will reimburse each **Insured** up to $500 for loss of earnings for each day or part of a day of such **Insured's** attendance, at the **Company's** written request, at a trial, hearing or other alternative dispute resolution proceeding, including arbitration proceeding or mediation, involving a **claim** against such **Insured**, but in no event shall the amount payable hereunder exceed $15,000 per **Insured** despite the number of days an **Insured** is in attendance, or the number of trials, hearings or arbitration proceedings that an **Insured** is required to attend. In no event shall the amount payable per **policy period** exceed $50,000 despite the number of **Insureds** hereunder or the number of such proceedings.

2. **Disciplinary Proceedings**

The **Company** will reimburse the **Named Insured** up to $50,000 for each **Insured** and all **Insureds** in the aggregate, for attorney fees and other reasonable costs, expenses or fees (the "Disciplinary Fees") paid to third parties (other than an **Insured**) resulting from any one **Disciplinary Proceeding**



© Copyright CNA All Rights Reserved.

incurred as the result of a notice of such **Disciplinary Proceeding** both first received by the **Insured** and reported in writing to the **Company** either during the **policy period** or within 60 days after termination of the **policy period**, arising out of an act or omission in the rendering of **legal services** by such **Insured**. Except as set forth below, the amount payable hereunder shall not exceed $100,000 despite the number of such proceedings.

In the event of a determination of **No Liability** of the **Insured** against whom the **Disciplinary Proceeding** has been brought, the **Company** shall reimburse such **Insured** for Disciplinary Fees, including those in excess of the $50,000 cap set forth above, up to $100,000. In no event shall the amount payable hereunder exceed $100,000 despite the number of **Insureds** hereunder or the number of such proceedings.

3. Subpoena Assistance

In the event the **Insured** receives a subpoena for documents or testimony arising out of **legal services** rendered by the **Insured** and the **Insured** would like the **Company's** assistance in responding to the subpoena, the **Insured** may provide the **Company** with a copy of the subpoena and the **Company** will retain an attorney to provide advice regarding the production of documents, to prepare the **Insured** for sworn testimony, and to represent the **Insured** at the **Insured's** depositions, provided that:

a. the subpoena arises out of a civil lawsuit to which the **Insured** is not a party; and

b. the **Insured** has not been engaged to provide advice or testimony in connection with such lawsuit, nor has the **Insured** provided such advice or testimony in the past.

The **Company** will pay such attorney's legal fees excluding any disbursements. Any notice the **Insured** gives the **Company** of such subpoena shall be deemed notification of a potential **claim** under Section V.A. of this Policy.

4. **Crisis Event Expense**

The **Company** will reimburse the **Named Insured** up to $20,000 for **Crisis Event Expenses** that result from a **Crisis Event** first occurring and reported in writing to the **Company** during the **policy period**.

5. Regulatory Inquiry

If, during the **policy period**, a state licensing board, self regulatory body, public oversight board or a governmental agency with the authority to regulate the **Insured's legal services** or any entity acting on behalf of such entities initiates an investigation of the **Insured** arising from an actual or alleged violation of a **privacy breach notice law** or any law referenced under the definition of **privacy injury and identity theft** that occurred in the rendering of **legal services** and which the **Insured** reports to the **Company** in accordance with Section V.A. of this Policy, the **Company** agrees to pay attorney fees, attorney costs and court costs (excluding such attorney fees and costs incurred as a result of services performed by the **Insured**) incurred in responding to the investigation. The maximum amount the **Company** will pay for such attorney fees and costs is $20,000, regardless of the number of investigations or the number of **Insureds** who are subject to such investigations.

6. Medicare, Medicaid, and SCHIP Extension Act of 2007

Subject to the definition of **damages** set forth in Section III. DEFINITIONS of the Policy, the **Company** will reimburse the **Named Insured** for attorney fees and other reasonable costs or expenses incurred in responding to a demand pursuant to the recovery rights of the Centers for Medicare and Medicaid Services (CMS) under the Medicare, Medicaid, and SCHIP Extension Act of 2007 (MMSEA). The maximum amount the **Company** will pay for such attorney fees, costs and expenses is $25,000 per **policy period**, regardless of the number of such demands or the number of **Insureds** who are subject to such demands.



© Copyright CNA All Rights Reserved.

F. Risk Management Incentives

In the event that a **claim** is eligible for more than one Risk Management Incentive, the **Insured** shall receive the benefit of the highest deductible credit. In no way shall this section be construed to afford more than one Risk Management Incentive per **claim**.

1. Mediation

If mediation of a **claim** takes place either without institution of arbitration proceeding or service of suit or within sixty (60) days of the institution of such proceedings or service of suit, and such **claim** is ultimately resolved for an amount acceptable to the **Insured** and the **Company** by the process of mediation, the **Insured's** deductible, applying to the **claim**, will be reduced by 50%. In no event shall the amount of the deductible waived hereunder exceed $25,000.

2. Engagement Letters

If the **Insured** utilized an engagement letter in connection with the **legal services** that are the subject of a **claim**, and such **claim** is otherwise covered under the Policy, then the **Insured's** deductible applying to such **claim** will be reduced by 50%, provided that the engagement letter:

a. includes, at a minimum, the following information:

i. a specific description of the scope of **legal services** to be performed by the **Insured**;

ii. the identity of all clients for whom the **Insured** agreed to perform such **legal services**;

iii. the fee arrangement for such **legal services**; and

iv. a description of the **Named Insured's** file retention and destruction policy; and

b. was signed by all clients identified in such engagement letter prior to the **Insured's** commencement of representation of such clients for the **legal services** described in the engagement letter, but in no event more than thirty (30) days after the commencement of such representation.

In no event shall the amount of the deductible waived hereunder exceed $25,000.

G. Pre-**claims** Assistance

Until the date a **claim** is made, the **Company** may pay for all costs or expenses it incurs, at its sole discretion, as a result of investigating a potential **claim** that the **Insured** reports in accordance with Section V. CONDITIONS, Paragraph A, Notice, subparagraph 2, Notice of Potential **Claim**. Such payments are in addition to the limits of liability and not subject to the deductible.

III. DEFINITIONS

The following defined words shall have the same meaning throughout this Policy, whether expressed in the singular or the plural. Wherever appearing in bold print in this Policy:

**"Bodily injury"** means injury to the body, sickness or disease sustained by any person, including death resulting from such injuries; or mental injury, mental anguish, mental tension, emotional distress, pain or suffering or shock sustained by any person whether or not resulting from injury to the body, sickness, disease or death of any person.

**"Claim"** means a demand, including the service of suit or the institution of any alternative dispute resolution proceeding, received by the **Insured** for money or services arising out of an act or omission, including **personal injury**, in the rendering of or failure to render **legal services. "Claim"** also means **privacy claims** and **client network damage claims**.



© Copyright CNA All Rights Reserved.

"**Claim expenses**" mean:

A. fees charged by attorneys designated by the **Company** or by the **Insured** with the **Company's** written consent;

B. all other reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **claim** if incurred by the **Company**, or by the **Insured** with the written consent of the **Company**, including, but not limited to, premiums for any appeal bond, attachment bond or similar bond but without any obligation of the **Company** to apply for or furnish any such bond;

C. all costs taxed against an **Insured** in defense of a **claim**; and

D. all interest on the entire amount of any judgment which accrues after entry of the judgment and before the **Company** has paid that part of the judgment which does not exceed the limits of liability stated in Section II A. above.

**Claim expenses** with respect to a **claim** will be paid first and payment will reduce the amount available to pay **damages. Claim expenses** do not include fees, costs or expenses of employees or officers of the **Company**, other than fees, costs and expenses charged by the **Company's** employed attorneys who may be designated to represent the **Insured**, with the **Insured's** prior consent. Nor shall **claim expenses** include salaries, loss of earnings or other remuneration by or to any **Insured**.

**"Client network damage claim"** means a demand, including the service of suit or the institution of any alternative dispute resolution proceeding, received by the **Insured** for money or services alleging that a **security breach** or **electronic infection** caused **network damage** to a client's **network** in the rendering of **legal services.**

"**Company**" means the insurance company named in the Declarations.

**"Computer virus"** means unauthorized computer code that is designed and intended to transmit, infect and propagate itself over one or more **networks**, and cause:

A. a computer code or programs to perform in an unintended manner;

B. the deletion or corruption of electronic data or software; or

C. the disruption or suspension of a **network**.

**"Confidential commercial information"** means information that has been provided to the **Insured** by another, or created by the **Insured** for another where such information is subject to the terms of a confidentiality agreement or equivalent obligating the **Insured** to protect such information on behalf of another.

**"Crisis event"** means:

A. death, departure or debilitating illness of a **Principal Insured**;

B. dissolution of the **Named Insured**; or

C. incident of workplace violence;

that the **Named Insured** reasonably believes will have a material adverse effect upon the **Named Insured's** reputation.

**"Crisis event expenses"** means reasonable fees, costs and expenses incurred by the **Named Insured** for consulting services provided by a public relations firm to the **Named Insured** in response to a **Crisis Event**.

"**Damages**" mean judgments, awards and settlements (including pre-judgment interest), provided any settlements are negotiated with the assistance and approval of the **Company**. Notwithstanding anything to the contrary contained herein, **Damages** also include those amounts the court is permitted to impose on a debt collector as set forth in 15USC§1692k(a). **Damages** do not include:



© Copyright CNA All Rights Reserved.

A. legal fees, costs and expenses paid or incurred or charged by any **Insured**, no matter whether claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise, and injuries that are a consequence of any of the foregoing;

B. civil or criminal fines, sanctions, penalties or forfeitures, whether pursuant to law, statute, regulation or court rule, including but not limited to awards under 18 U.S.C. §1961, et. seq., Federal Rules of Civil Procedure 11 or 28 U.S.C. §1927 and state statutes, regulations, rules or law so providing, and injuries that are a consequence of any of the foregoing;

C. punitive or exemplary amounts;

D. the multiplied portion of multiplied awards;

E. injunctive or declaratory relief;

F. any amount for which an **Insured** is absolved from payment by reason of any covenant, agreement or court order.

**"Denial of service attack"** means an attack executed over one or more **networks** or the **Internet** that is specifically designed and intended to disrupt the operation of a **network** and render a **network** inaccessible to authorized users.

**"Disciplinary Proceeding"** means any pending matter, including an initial inquiry, before a state or federal licensing board or a peer review committee to investigate charges alleging a violation of any rule of professional conduct in the performance of **legal services**.

**"Electronic infection"** means the transmission of a **computer virus** to a **network**, including without limitation, such transmission to or from the **Named Insured's network**.

**"Electronic information damage"** means the destruction, deletion or alteration of any information residing on the **network** of any third party.

**"Insured"** means the **Named Insured**, **predecessor firm** and the persons or entities described below:

A. any lawyer (including a government affairs advisor or lobbyist), partnership, professional corporation, professional association, limited liability company or limited liability partnership who is or becomes a partner, officer, director, stockholder-employee, associate, manager, member or **employee** of the **Named Insured** during the **policy period** shown in the Declarations;

B. any lawyer previously affiliated with the **Named Insured** or a **predecessor firm** as a partner, officer, director, stockholder-employee, associate, manager, member or salaried employee but only for **legal services** performed on behalf of the **Named Insured** or a **predecessor firm** at the time of such affiliation. The term "previously affiliated" as used herein does not include a lawyer who, during the **policy period** and while affiliated with the **Named Insured**: a) voluntarily ceases, permanently and totally, the private practice of law; or b) dies or becomes **totally and permanently disabled.** Such an lawyer will be deemed to be an **Insured** under paragraph A. above;

C. any lawyer, law firm, partnership, professional corporation, professional association, limited liability company or limited liability partnership who acts as Of Counsel to the **Named Insured** or any non-employee independent contractor attorney to the **Named Insured**, but only for **legal services** rendered on behalf of the **Named Insured** and only if a fee inured or, in the event of a contingency fee, would have inured, to the **Named Insured**. No fee need inure to the **Named Insured** where eleemosynary (pro bono) **legal services** are rendered by such Of Counsel **Insured** where at the time of retention, there was approval by the appropriate committee or lawyer within the **Named Insured** that the matter would be handled without compensation. Any lawyer, law firm, partnership, professional corporation, professional association, limited liability company or limited liability partnership who previously qualified as an **Insured** under paragraph A. above, but gave up the position of partner, officer, director,



© Copyright CNA All Rights Reserved.

stockholder-employee, associate, manager, member or **employee** to act exclusively as Of Counsel to the **Named Insured**, will be deemed to be an **Insured** under paragraph A. above;

D. any person who is a former or current employee, other than an employed lawyer, of the **Named Insured** or any **predecessor firm**, but solely for services performed by such person within the course and scope of their employment by the **Named Insured** or any **predecessor firm** and provided that the services in dispute are **legal services** of the **Named Insured** or any **predecessor firm**;

E. the estate, heirs, executors, administrators, assigns and legal representatives of an **Insured** in the event of such **Insured's** death, incapacity, insolvency or bankruptcy, but only to the extent that such **Insured** would have been provided coverage under this Policy; and

F. the spouse or domestic partner of an **Insured**, but only to the extent that such **Insured** is provided coverage under this Policy.

**"Internet"** means the worldwide public **network** of computers as it currently exists or may be manifested in the future, but **Internet** does not include the **Named Insured's network**.

**"Legal services"** mean:

A. those services, including eleemosynary (pro bono) services, performed by an **Insured** for others as a lawyer, arbitrator, mediator, title agent or other neutral fact finder or as a notary public. Any title agency or company, on whose behalf the **Insured** acts as title agent or designated issuing attorney, is not an **Insured** under this Policy;

B. those services performed by an **Insured** as an administrator, conservator, receiver, executor, guardian, trustee or in any other fiduciary capacity and any investment advice given in connection with such services;

C. those services performed by an **Insured** in the capacity as a member, director or officer of any professional legal association, including any Bar Association and any similar organization or association, its governing board or any of its committees;

D. those services performed by an **Insured** as an expert witness, provided that such **Insured** was retained to offer expert opinion on issues related to the law, legal procedure or practice, or the legal profession; or

E. those services performed by an **Insured** as an author or publisher of legal research papers or legal materials or the presenter of legal seminars or materials, but only where such services are performed without compensation or compensation attributable per publication, presentation or seminar is less than $25,000.

**"Named Insured"** means the persons and entities designated in the Declarations.

**"Network"** means a party's local or wide area network owned or operated by or on behalf of or for the benefit of that party; provided, however, **network** shall not include the **Internet**, telephone company networks, or other public infrastructure network.

**"Network Damage"** means:

A. the unscheduled and unplanned inability of an authorized user to gain access to a **network**;

B. **electronic information damage**; or

C. the suspension or interruption of any **network**.

**"Non-public personal information"** means personal information not available to the general public from which an individual may be identified, including without limitation, an individual's name, address, telephone number, social security number, account relationships, account numbers, account balances, and account histories.



© Copyright CNA All Rights Reserved.

**"Personal injury"** means an injury arising out of: false arrest, detention, or imprisonment; wrongful entry, or eviction, or other invasion of the right of private occupancy; libel, slander, or other disparaging or defamatory materials; a writing or saying in violation of an individual's right to privacy; malicious prosecution or abuse of process.

**"Policy period"** means the period of time between the inception date and time shown in the Declarations and the date and time of termination, expiration or cancellation of this Policy.

**"Predecessor firm"** means any sole proprietorship, partnership, professional corporation, professional association, limited liability corporation or limited liability partnership engaged in **legal services** and:

A. to whose financial assets and liabilities the firm listed as the **Named Insured** in the Declarations is the majority successor in interest;

B. of which the **Named Insured** retained 50% or more of the lawyers; or

C. was previously deemed to be a predecessor firm under the lawyers professional liability policy issued by the **Company** immediately preceding this Policy.

**"Principal Insured"** means an **Insured** member of the board of managers, director, executive officer, natural person partner, owner of a sole proprietorship, principal, risk manager or in-house general counsel of the **Named Insured**.

**"Prior insurer"** means an insurer, including the **Company** and any subsidiary or affiliate of the **Company**, who has issued a lawyers professional liability insurance policy that is applicable to a **claim**, such policy having an inception date prior to the **policy period**.

**"Privacy breach notice law"** means any statute or regulation that requires an entity who is the custodian of **non-public personal information** to provide notice to individuals of any actual or potential privacy breach with respect to such **non-public personal information**. **Privacy breach notice laws** include Sections 1798.29 and 1798.82-1798.84 of the California Civil Code (formerly S.B. 1386) and other similar laws in any jurisdiction.

**"Privacy claim"** means a demand, including the service of suit or the institution of any alternative dispute resolution proceeding, received by the **Insured** for money or services and alleging **privacy injury and identity theft** that occurred in the rendering of **legal services.**

**"Privacy injury and identity theft"** means:

A. any unauthorized disclosure of, inability to access, or inaccuracy with respect to, **non-public personal information** in violation of:

   1. the **Named Insured's privacy policy**; or

   2. any federal, state, foreign or other law, statute or regulation governing the confidentiality, integrity or accessibility of **non-public personal information**, including but not limited, to the Health Insurance Portability and Accountability Act of 1996, Gramm-Leach-Bliley Act, Children's Online Privacy Protection Act, or the EU Data Protection Act.

B. the **Insured's** failure to prevent **unauthorized access** to **confidential commercial information**;

**"Privacy policy"** means the **Named Insured's** policies in written or electronic form that:

A. govern the collection, dissemination, confidentiality, integrity, accuracy or availability of **non-public personal information**; and

B. the **Insured** provides to its clients, customers, employees or others who provide the **Insured** with **non-public personal information.**

**"No Liability"** means that with respect to an **Insured** who is the subject of a **Disciplinary Proceeding**, there is a:



© Copyright CNA All Rights Reserved.

A. final determination of no liability;

B. a determination of no further action; or

C. the matter is abandoned by the disciplinary authority.

In no event shall the term **"No Liability"** apply to a **Disciplinary Proceeding** for which a settlement has occurred.

**"Related acts or omissions"** mean all acts or omissions in the rendering of **legal services** that are temporally, logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision.

**"Related claims"** mean all **claims** arising out of a single act or omission or arising out of **related acts or omissions** in the rendering of **legal services**.

**"Security breach"** means the failure of the **Named Insured's network** hardware, software, firmware, the function or purpose of which is to:

A. identify and authenticate parties prior to accessing the **Named Insured's network**;

B. control access to the **Named Insured's network** and monitor and audit such access;

C. protect against **computer viruses**;

D. defend against **denial of service attacks** upon the **Named Insured** or unauthorized use of the **Named Insured's network** to perpetrate a **denial of service attack**; or,

E. ensure confidentiality, integrity and authenticity of information on the **Named Insured's network**.

**"Totally and permanently disabled"** means that an **Insured** is so disabled as to be wholly prevented from rendering **legal services** provided that such disability:

A. has existed continuously for not less than six (6) months; and

B. is reasonably expected to be continuous and permanent.

**"Unauthorized access"** means any accessing of information in the **Insured's** care, custody or control by unauthorized persons or by authorized persons accessing or using such information in an unauthorized manner.

**Unauthorized access** also includes:

A. theft from the **Insured** of any information storage device used by the **Insured** to:

1. store and retrieve information on the **Insured's network**; or
2. transport information between the **Insured** and authorized recipients;

B. any unauthorized use by the **Insured** of information in the **Insured's** clients' care, custody or control if accessed by the **Insured** in the course of rendering **legal services**.

IV. EXCLUSIONS

This Policy does not apply:

A. Intentional Acts

to any **claim** based on or arising out of any dishonest, fraudulent, criminal, malicious act or omission or intentional wrongdoing by an **Insured** except that:

1. this exclusion shall not apply to **personal injury;**
2. the **Company** shall provide the **Insured** with a defense of such **claim** unless or until the dishonest, fraudulent, criminal, malicious act or omission or intentional wrongdoing has been determined by



© Copyright CNA All Rights Reserved.

any trial verdict, court ruling, regulatory ruling or legal admission, whether appealed or not. Such defense will not waive any of the **Company's** rights under this Policy. Criminal proceedings are not covered under this Policy regardless of the allegations made against any **Insured**;

3. this exclusion will not apply to any **Insured** who is not found to have personally committed the dishonest, fraudulent, criminal, malicious act or omission or intentional wrongdoing by any trial verdict, court ruling, or regulatory ruling.

B. **Bodily Injury**/Property Damage

to any **claim** for **bodily injury**, or injury to, or destruction of, any tangible property, including the loss of use resulting therefrom except that this exclusion of **bodily injury** does not apply to mental injury, mental anguish, mental stress, humiliation or emotional distress caused by **personal injury**;

C. Status as Beneficiary or Distributee

to any loss sustained by an **Insured** or **claim** made against an **Insured** as beneficiary or distributee of any trust or estate;

D. Contractual Liability

to any **claim** based on or arising out of an **Insured**'s alleged liability under any oral or written contract or agreement, unless such liability would have attached to any **Insured** in the absence of such agreement;

E. **Insured** vs. **Insured**

to any **claim** by or on behalf of an **Insured** under this Policy against any other **Insured** hereunder unless such **claim** arises out of **legal services** by an **Insured** rendered to such other **Insured** as a client;

F. Capacity as Director, Officer, Fiduciary

to any **claim** based on or arising out of an **Insured's** capacity as:

1. a former, existing or prospective officer, director, shareholder, partner, manager or member (or any equivalent position) of any entity if such entity is not named in the Declarations; or
2. a trustee of a pension, welfare, profit-sharing, mutual or investment fund or investment trust; or
3. a fiduciary under the Employee Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto or any other similar state or local law;

except that this exclusion does not apply to a **claim** based on or arising out of an **Insured's** capacity as a member, director or officer of any professional legal association, including any Bar Association and any similar organization or association, its governing board or any of its committees.

G. Capacity as Public Official

to any **claim** based on or arising out of an **Insured**'s capacity as a public official or an employee or representative of a governmental body, subdivision or agency unless such **Insured** is deemed as a matter of law to be a public official or employee or representative of such entity solely by virtue of rendering **legal services** to it;

H. Owned Entity

to any **claim** based on or arising out of **legal services** performed, directly or indirectly, for any entity not named in the Declarations, if at the time of the act or omission giving rise to the **claim**, the percentage of ownership interest, direct or indirect, in such entity by any **Insured**, or an accumulation of **Insureds**, exceeded 10%.



© Copyright CNA All Rights Reserved.

V. CONDITIONS

A. Notice

1. Notice of **Claims**

The **Insured**, as a condition precedent to the obligations of the **Company** under this Policy, shall as soon as reasonably possible after learning of a **claim** give written notice to the **Company** during the **policy period** of such **claim.** The **Company** agrees that the **Insured** may have up to, but not to exceed, sixty (60) days after the Policy expiration to report a **claim** made against the **Insured** during the **policy period** if the reporting of such **claim** is as soon as reasonably possible.

2. Notice of Potential **Claims**

If during the **policy period** the **Insured** becomes aware of any act or omission that may reasonably be expected to be the basis of a **claim** against the **Insured** and gives written notice to the **Company** of such act or omission and the reasons for anticipating a **claim**, with full particulars, including but not limited to:

a. the specific act or omission;

b. the dates and persons involved;

c. the identity of anticipated or possible claimants;

d. the circumstances by which the **Insured** first became aware of the possible **claim**,

then any such **claim** that arises out of such reported act or omission and that is subsequently made against the **Insured** and reported to the **Company** shall be deemed to have been made at the time such written notice was given to the **Company**.

B. Reimbursement of the **Company**

Subject always to the **Insured's** right to consent to settlement, as set forth in Section I. INSURING AGREEMENT, paragraph C, Settlement, if the **Company**, in the exercise of its discretion and without any obligation to do so, pays any amount within the amount of the deductible, the **Named Insured**, or upon the **Named Insured's** failure to pay, the **Insureds**, jointly and severally, shall be liable to the **Company** for any and all such amounts and, upon demand, shall pay such amounts to the **Company**.

C. Territory

This Policy applies to an act or omission taking place anywhere in the world, provided that the **claim** is made and suit is brought against the **Insured** within the United States of America, including its territories, possessions, Puerto Rico or Canada.

D. Other insurance

If there is other insurance that applies to the **claim**, this insurance shall be excess over such other valid and collectible insurance whether such insurance is stated to be primary, contributory, excess, contingent or otherwise. When there is such other insurance, the **Company** will pay only its share of the amount of any **damages** and **claim expenses**, if any, that exceed the sum of:

1. the total amount that all such other insurance would pay for with respect to such **claim** in the absence of this insurance; and

2. the total of all deductible and self-insured amounts under all that other insurance.

This paragraph does not apply to any other insurance that was bought specifically to apply in excess of the Limits of Liability shown in the Declarations of this Policy.

When this insurance is excess, the **Company** will have no duty under this Policy to defend the **Insured** against any **claim** if any other insurer has a duty to defend the **Insured** against that **claim**. If no other



© Copyright CNA All Rights Reserved.

insurer defends, the **Company** will undertake to do so, but it will be entitled to the **Insured's** rights against all those other insurers.

E. Assistance and cooperation of the **Insured**

1. The **Insured** shall cooperate with the **Company** and, upon the **Company**'s request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving of evidence, obtaining the attendance of witnesses, and the conduct of suits and proceedings in connection with a **claim**.

2. The **Insured** shall assist in the enforcement of any right of contribution or indemnity against any person or organization who or which may be liable to any **Insured** in connection with a **claim**.

3. The **Insured** shall not, except at its own cost, voluntarily make any payment, assume or admit any liability or incur any expense without the consent of the **Company.**

F. Action against the **Company**

No action shall lie against the **Company** by any third party, unless, as a condition precedent thereto:

1. there shall have been full compliance with all the terms of this Policy; and

2. the **Insured's** obligation to pay shall have been finally determined either by judgment against the **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the **Company**.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by this Policy. No person or organization shall have any right under this Policy to join the **Company** as a party to any action against an **Insured**, nor shall the **Company** be impleaded by the **Insured** or his legal representative.

G. Bankruptcy or Insolvency

Bankruptcy or insolvency of the **Insured** or of the **Insured**'s estate shall not relieve the **Company** of any of its obligations hereunder.

H. Subrogation

In the event of any payment under this Policy, the **Company** shall be subrogated to all the **Insured's** rights of recovery thereof against any person or organization. The **Insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure and collect upon such rights. The **Insured** shall do nothing to prejudice such rights.

I. Changes

Notice to any of the **Company's** agents or knowledge possessed by any such agent or any other person shall not act as a waiver or change in any part of this Policy. It also will not prevent the **Company** from asserting any rights under the provisions of this Policy. None of the provisions of this Policy will be waived, changed or modified except by written endorsement, signed by the **Company**, issued to form a part of this Policy.

J. Assignment

No assignment of interest of the **Insured** under this Policy shall be valid, unless the written consent of the **Company** is endorsed hereon.



© Copyright CNA All Rights Reserved.

K. Cancellation/ Nonrenewal

1. This Policy may be canceled by the **Named Insured** by returning it to the **Company**. The **Named Insured** may also cancel this Policy by written notice to the **Company** stating at what future date cancellation is to be effective.

2. The **Company** may cancel or non-renew this Policy by written notice to the **Named Insured** at the address last known to the **Company**. The **Company** will provide written notice at least sixty (60) days before cancellation or non-renewal is to be effective. If the **Company** cancels this Policy because the **Insured** has failed to pay a premium when due or has failed to pay amounts in excess of the limit of the **Company**'s liability or within the amount of the deductible, this Policy may be canceled by the **Company** by mailing to the **Named Insured** written notice stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The time of surrender of this Policy or the effective date and hour of cancellation stated in the notice shall become the end of the **policy period**. Delivery (where permitted by law) of such written notice either by the **Named Insured** or by the **Company** shall be equivalent to mailing.

3. If the **Company** cancels this Policy, the earned premium shall be computed pro rata. If the **Named Insured** cancels this Policy, the **Company** shall retain the customary short rate proportion of the premium. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

4. The offering of terms and conditions different from the expiring terms and conditions shall not constitute a refusal to renew.

L. Entire contract

By acceptance of this Policy the **Insured** agrees that:

1. all of the information and statements provided to the **Company** by the **Insured** are true, accurate and complete and shall be deemed to constitute material representations made by all of the **Insureds**;

2. this Policy is issued in reliance upon the **Insured's** representations;

3. this Policy, endorsements thereto, together with the completed and signed application and any and all supplementary information and statements provided by the **Insured** to the **Company** (all of which are deemed to be incorporated herein) embody all of the agreements existing between the **Insured** and the **Company** and shall constitute the entire contract between the **Insured** and the **Company**; and

4. the misrepresentation of any material matter by the **Insured** or the **Insured's** agent will render this Policy null and void and relieve the **Company** from all liability herein.

M. **Named Insured** sole agent

The **Named Insured** shall be the sole agent of all **Insureds** hereunder for the purpose of effecting or accepting any notices hereunder, any amendments to or cancellation of this Policy, for the completing of any applications and the making of any statements, representations and warranties, for the payment of any premium and the receipt of any return premium that may become due under this Policy, and the exercising or declining to exercise any right under this Policy.

N. Liberalization

If the **Company** adopts any revision that would broaden coverage under this policy form G-118011-A without additional premium at any time during the **policy period**, the broadened coverage will immediately apply to this Policy except that it will not apply to **claims** that were first made against the **Insured** prior to the effective date of such revision.



© Copyright CNA All Rights Reserved.

O. Notices

Any notices required to be given by an **Insured** shall be submitted in writing to the **Company** or its authorized representative. If mailed, the date of mailing of such notice shall be deemed to be the date such notice was given and proof of mailing shall be sufficient proof of notice.

P. Trade and Economic Embargoes

This policy does not provide coverage for **Insureds**, transactions or that part of **damages** or **claims expenses** that is uninsurable under the laws or regulations of the United States concerning trade or economic sanctions.

VI. **EXTENDED REPORTING PERIODS**

As used herein, "**extended reporting period**" means the period of time after the end of the **policy period** for reporting **claims** that are made against the **Insured** during the applicable **extended reporting period** by reason of an act or omission that occurred prior to the end of the **policy period** and is otherwise covered by this Policy.

A. Automatic **extended reporting period**

If this Policy is canceled or non-renewed by either the **Company** or by the **Named Insured**, the **Company** will provide to the **Named Insured** an automatic, non-cancelable **extended reporting period** starting at the termination of the **policy period** if the **Named Insured** has not obtained another policy of lawyers professional liability insurance within sixty (60) days of the termination of this Policy. This automatic extended reporting period will terminate after sixty (60) days.

B. Optional **extended reporting period**

1. If this Policy is canceled or non-renewed by either the **Company** or by the **Named Insured**, then the **Named Insured** shall have the right to purchase an optional **extended reporting period**. Such right must be exercised by the **Named Insured** within sixty (60) days of the termination of the **policy period** by providing:

    a. written notice to the **Company**; and

    b. with the written notice, the amount of additional premium described below.

2. The additional premium for the optional **extended reporting period** shall be based upon the rates for such coverage in effect on the date this Policy was issued or last renewed and shall be for one (1) year at 100% of such premium; two (2) years at 150% of such premium; three (3) years at 175% of such premium; six (6) years at 225% of such premium; or, for an unlimited period at 250% of such premium.

3. The premium for the optional **extended reporting period** is due on its effective date. This optional **extended reporting period** is non-cancelable and the entire premium shall be deemed fully earned at its commencement without any obligation by the **Company** to return any portion thereof.

C. Death or disability **extended reporting period**

1. If an **Insured** dies or becomes **totally and permanently disabled** during the **policy period**, then upon the latter of the expiration of: the **policy period**; any renewal or successive renewal of this Policy; or any automatic or optional **extended reporting period**, such **Insured** shall be provided with a death or disability **extended reporting period** as provided below.

    a. In the event of death, such **Insured**'s estate, heirs, executors or administrators must, within sixty (60) days of the expiration of the **policy period**, provide the **Company** with written proof of the date of death.



© Copyright CNA All Rights Reserved.

b. If an **Insured** becomes **totally and permanently disabled**, such **Insured** or **Insured**'s legal guardian must, within sixty (60) days of the expiration of the **policy period**, provide the **Company** with written proof that such **Insured** is **totally and permanently disabled**, including the date the disability commenced, certified by the **Insured**'s physician. The **Company** retains the right to contest the certification made by the **Insured**'s physician, and it is a condition precedent to this coverage that the **Insured** agree to submit to medical examinations by any physician designated by the **Company** at the **Company's** expense. This **extended reporting period** is provided until such **Insured** shall no longer be **totally or permanently disabled** or until the death of such **Insured** in which case subparagraph a. hereof shall apply.

2. No additional premium will be charged for any death or disability **extended reporting period**.

D. Non-practicing **extended reporting period**

1. If an **Insured** retires or otherwise voluntarily ceases, permanently and totally, the "private practice of law" during the **policy period** and has been continuously insured by the **Company** for at least three (3) consecutive years, then such **Insured** shall be provided with an **extended reporting period** commencing upon the latter of the expiration of: the **policy period**; any renewal or successive renewal of this Policy; or any automatic or optional **extended reporting period**.

2. This **extended reporting period** is provided until such **Insured** shall resume the "private practice of law" or until the death of such **Insured** in which case subparagraph C.1.a. hereof shall apply.

3. No additional premium will be charged for any non-practicing **extended reporting period**.

As used herein, the "private practice of law" means the practice of law performed by an **Insured** for a fee, including hourly, contingent or lump sum, as a sole practitioner or as a partner, officer, director, stockholder-employee, associate, manager, member or employee, of a law firm, or any agreement to act as an independent contractor or "Of Counsel" to a law firm. "Private practice of law" does not include the practice of law by an **Insured** on an eleemosynary (a pro bono) basis or services performed by an **Insured** solely as a mediator or arbitrator.

E. **Extended reporting periods** limits of liability and deductibles

1. Automatic and optional **extended reporting periods** limits of liability and deductibles

a. Where the **Company** has the right to nonrenew or cancel this Policy, and it exercises that right, then the **Company**'s liability for all **claims** reported during the automatic and optional **extended reporting periods** shall be part of and not in addition to the limits of liability for the **policy period** as set forth in the Declarations and Section II.A. and B. of this Policy. The deductible applicable to such **claims** shall be part of and not in addition to the deductible as set forth in the Declarations and Section II.C. of this Policy.

b. If this Policy is canceled by the **Named Insured** or if the **Company** offers to renew this Policy, and the **Named Insured** refuses such renewal offer, then the **Company's** liability for all **claims** reported during the automatic and optional **extended reporting periods** shall be reinstated to the limits of liability applicable to this Policy as set forth in the Declarations and Section II.A. and B. of this Policy. The deductible applicable to such **claims** shall be reinstated to an amount equal to the deductible as set forth in the Declarations and Section II.C. of this Policy.

2. Separate death or disability and non-practicing **extended reporting period** limits of liability

a. Limit of Liability - Each "**Claim**"

Subject to paragraph B. below, the **Company's** limit of liability for each **claim** first made against the **Insured** and reported to the **Company** during the death or disability **extended reporting period** or non-practicing **extended reporting period** shall not exceed the amount stated in the



© Copyright CNA All Rights Reserved.

Declarations as the "Each **Claim** Death or Disability and Non-Practicing **extended reporting period** limit of liability".

b. Limit of Liability - In the Aggregate

The limit of liability of the **Company** for all **claims** first made against the **Insured** and reported to the **Company** during the death or disability **extended reporting period** or non-practicing **extended reporting period** shall not exceed the amount stated in the Declarations as the "Aggregate Death or Disability and Non-Practicing **extended reporting period** limit of liability".

c. No Deductible

No deductible shall apply to **claims** first made against the **Insured** and reported to the **Company** during the death or disability **extended reporting period** or non-practicing **extended reporting period**.

F. Elimination of right to any **extended reporting period**

There is no right to any **extended reporting period**:

1. if the **Company** shall cancel or refuse to renew this Policy due to:

   a. non-payment of premiums; or

   b. non-compliance by an **Insured** with any of the terms and conditions of this Policy; or

   c. any misrepresentation or omission in the application for this Policy; or,

2. if during the **Policy Period** such **Insured's** right to practice law is revoked, suspended or surrendered at the request of any regulatory authority for reasons other than that the **Insured** is **totally and permanently disabled**.

G. **Extended reporting period** not a new policy

It is understood and agreed that the **extended reporting period** shall not be construed to be a new policy and any **claim** submitted during such period shall otherwise be governed by this Policy.

VII. HEADINGS

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

IN WITNESS WHEREOF, the **Company** has caused this Policy to be executed by its Chairman and Secretary, but this Policy shall not be binding upon us unless completed by the attachment of the Declarations.

Chairman

Secretary



© Copyright CNA All Rights Reserved.

## SPECIALIZATION ENHANCEMENT ENDORSEMENT

It is understood and agreed that:

I. A **claim expenses** limit of liability is added to the Policy, as follows:

**A.** The Item on the Declarations entitled **LIMITS OF LIABILITY** is amended to delete the phrase *"Inclusive of **claims expenses.**"*

**B.** The Section of the Policy entitled DEFINITIONS is amended by the addition of the following new definition:

**Damages limit of liability** means the limit of liability applicable to **damages**, and, upon exhaustion of the **claim expenses** limit of liability, to **claim expenses.**

**C.** The Section of the Policy entitled INSURING AGREEMENT, the subsection entitled Exhaustion of limits, is deleted in its entirety and replaced by the following:

Exhaustion of limits

The **Company** is not obligated to investigate, defend, pay or settle, or continue to investigate, defend, pay or settle a **claim** or pay any **damages** or **claim expenses**, if the **damages limit of liability** has been exhausted by the payment of **damages**, payment of **claim expenses** as set forth in paragraph I.D.2. of this endorsement, or the payment of both **damages** and **claim expenses**; or after the **Company** has deposited the remaining available **damages limits of liability** into a court of competent jurisdiction, even if any **claim expenses** limit of liability remains. In such case, the **Company** shall have the right to withdraw from the further investigation, defense, payment or settlement of such **claim** by tendering control of such investigation, defense or settlement of the **claim** to the **Insured.**

**D.** The Section of the Policy entitled LIMITS OF LIABILITY AND DEDUCTIBLE is amended as follows:

**1.** The paragraphs entitled Limit of liability - each **claim** and Limit of liability - in the aggregate are deleted in their entirety and replaced by the following:

**Damages limit of liability** - each **claim**

Subject to the aggregate **damages limit of liability** set forth below, the limit of liability of the **Company** for **damages** for each **claim** first made against the **Insured** and reported to the **Company** during the **policy period** shall not exceed the amount stated in the Declarations for each **claim.**

**Damages limit of liability** - in the aggregate

The limit of liability of the **Company** for **damages** for all **claims** first made against the **Insured** and reported to the **Company** during the **policy period** shall not exceed the amount stated in the Declarations as the aggregate.

**2.** The following new paragraph is added:

**Claim expenses** limit of liability - in the aggregate

The limit of liability of the **Company** for the payment of **claim expenses** for all **claims** first made against the **Insured** and reported to the **Company** during the **policy period** shall not exceed the lesser of $500,000 or an amount equal to fifty percent (50%) of the each **claim** limit of liability stated on the Declarations. **Claim expenses** under the Policy shall first be applied to such **claim expenses** aggregate limit of liability. If and when such aggregate limit of liability for **claim expenses**



© Copyright CNA All Rights Reserved.

is exhausted by payment of **claim expenses**, then and in that event only shall any remaining **claim expenses** be applied to the applicable **damages limits of liability**.

**E.** Paragraphs I.A. through I.D. of this endorsement shall not apply if another endorsement attached to this Policy provides for the payment of **claim expenses** outside of the limits of liability stated in the Declarations or sets forth a **claim expenses** limit of liability that is separate from the limits of liability stated in the Declarations.

**II.** The Section of the Policy entitled INSURING AGREEMENT, the subsection entitled Defense, is deleted in its entirety and replaced by the following:

Defense

The **Company** shall have the right and duty to defend in the **Insured's** name and on the **Insured's** behalf a **claim** covered by this Policy even if any of the allegations of the **claim** are groundless, false or fraudulent. The **Company** and the **Named Insured** shall mutually agree on the appointment of counsel selected from the **Company's** list of Lawyers Professional Liability preferred counsel to investigate and to defend a **claim**. If a **claim** shall be subject to arbitration or mediation, the **Company** and the **Named Insured** shall mutually agree on the choice of arbitrators or mediators and in the conduct of any arbitration or mediation proceeding involving a **claim** covered by the Policy. Either party's agreement to defense counsel, mediators or arbitrators shall not be unreasonably withheld.

**III.** The Section of the Policy entitled LIMITS OF LIABILITY AND DEDUCTIBLE, the subsection entitled Risk Management Incentives, the paragraph entitled Mediation, is deleted in its entirety and replaced by the following:

Early Resolution:

If a **claim** is settled or finally resolved within 364 days of the reporting of such **claim** to the **Company**, for an amount recommended to the **Insured** by the **Company**, then the **Insured's** deductible, applying to the **claim**, will be reduced by 50%. In no event shall the amount of the deductible waived hereunder exceed $25,000.

However, the deductible will not be waived if the **claim** is resolved after the commencement of:

a. a trial in a court of law; or

b. the first motion for a motion for summary judgment by any party has been filed in a court of law; or

c. the first evidentiary hearing in binding arbitration of the **Claim.**

To the extent this provision is applicable and the **Insured** has paid more than 50% of the deductible, the **Company** will reimburse the **Insured** the amount paid in excess of 50% of the deductible within 60 days of the final resolution of the **claim**.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.



© Copyright CNA All Rights Reserved.

## EACH CLAIM DEDUCTIBLE ENDORSEMENT

In consideration of a premium credit, it is understood and agreed that Item 4 of the Declarations is deleted in its entirety and replaced with the following:

4. DEDUCTIBLE: Each **claim:** $25,000 (inclusive of **claims expenses**)

It is further understood and agreed that Section II, LIMITS OF LIABILITY AND DEDUCTIBLE, the first paragraph of letter C. entitled Deductible, is deleted in its entirety and replaced with the following:

C. Deductible - Each **Claim**

The deductible amount stated in the Declarations for "each **claim**" applies to each and every **claim** made against an **Insured.** It shall be paid by the **Named Insured** and applies to the payment of **damages** and **claims expenses** for **claims** both first made against the **Insured** and reported to the **Company** in writing during the **policy period**. In the event the **Named Insured** fails to pay, the deductible shall be paid jointly and severally by all **Insureds.** The limits of liability set forth in the Declarations are in addition to and in excess of the deductible.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.



© Copyright CNA All Rights Reserved.

Case 2:25-cv-07126 Document 1-2 Filed 08/01/25 Page 24 of 28 Page ID #:71

CNA

Lawyers Professional Liability
Policy Endorsement

## NAMED INDIVIDUAL RETROACTIVE DATE ENDORSEMENT

It is understood and agreed that no coverage is afforded under this Policy for any **claims** by reason of an act or omission committed by any person listed below that occurred prior to date listed opposite such person.

| Person | Date |
|---|---|
| Timothy Lupinek | 04/04/2022 |
| Amy-Lyn Morse | 03/23/2013 |
| Elvira Kamosko | 10/31/2022 |
| Sundeep Samra | 09/10/2018 |
| Jacob Cutler | 07/20/2020 |
| Ted Swanson | 03/10/2022 |
| Deepak Devabose | 09/16/2015 |
| Trach Tran | 02/14/2022 |
| Phil Thomas | 01/04/2022 |
| Jeffery Mukai | 06/15/2020 |
| Roger Kirnos | 06/15/2017 |
| Armando Lopez | 09/04/2018 |
| Lauren Ungs | 03/27/2013 |
| Zachary Powell | 10/11/2017 |
| Scott Wilson | 01/10/2020 |
| Debra Reed | 07/11/2023 |
| Steve Mikhov | 03/27/2013 |
| Russell W Higgins | 04/03/2023 |
| Heidi Alexander | 05/21/2024 |
| Keishunn Johnson | 05/30/2024 |
| Harita Nandivada | 09/27/2023 |
| Brian Plummer | 04/30/2023 |
| Summer M Smith | 02/20/2024 |

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.



© Copyright CNA All Rights Reserved.

## RETROACTIVE EXCLUSION CLAUSE ENDORSEMENT

It is understood and agreed that Section I, Insuring Agreement, Paragraph A., Coverage, is amended to include a new subparagraph as follows:

- The act or omission occurred on or after 03/27/2013.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.



© Copyright CNA All Rights Reserved.

## OFFICE SHARING EXCLUSION ENDORSEMENT

It is understood and agreed that Section III, DEFINITIONS, definition of **Insured**, is amended by the addition of the following:

**Insured** does not include those persons or entities who have no oral or written partnership, shareholder or employment agreement with the **Named Insured** and who:

a. share office space with the **Named Insured**; and

b. are deemed to be partners, officers, directors, employees, associates, managers or members of the **Named Insured** solely by operation of law.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.



© Copyright CNA All Rights Reserved.

Lawyers Professional Liability
Policy Endorsement

## AMENDMENT OF TERMINATION PROVISIONS - CALIFORNIA

It is understood and agreed that Condition K. Cancellation/Nonrenewal is deleted and replaced in its entirety by the following:

K. Cancellation/Nonrenewal

1. Cancellation

a. This Policy may be canceled by the **Named Insured** by returning it to the **Company**. The **Named Insured** may also cancel this Policy by written notice to the **Company** stating at what future date cancellation is to be effective.

b. The **Company** may cancel this Policy by written notice, stating the reasons for cancellation, to the **Named Insured** and the producer of record at the addresses last known to the **Company**. The time of surrender of this Policy or the effective date and hour of cancellation stated in the notice shall become the end of the **policy period**. Delivery of such written notice by either the **Named Insured** or by the **Company** shall be equivalent to mailing.

c. If this Policy has been in effect for 60 days or more, or if it is a renewal of a policy issued by the **Company**, the **Company** may cancel only for one or more of the following reasons:

(1) Nonpayment of premium (including payment due on a prior policy the **Company** issued and due during the current policy term covering the same risks), or failure to pay amounts in excess of the limit of the **Company's liability** or within the amount of the deductible;

(2) Misrepresentation or fraud made by the **Named Insured** or with the **Named Insured**'s knowledge in obtaining the Policy or in pursuing a **claim** under the Policy;

(3) A judgment by a court or an administrative tribunal that the **Named Insured** has violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against;

(4) Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by the **Named Insured** or the **Named Insured**'s representative, which materially increase any of the risks insured against;

(5) Failure by the **Named Insured** or the **Named Insured**'s representative to implement reasonable loss control requirements, agreed to by the **Insured** as a condition of policy issuance, or which were conditions precedent to the **Company**'s use of a particular rate or rating plan, if the failure materially increases any of the risks insured against;

(6) A determination by the Commissioner of Insurance that:

(a) the loss of, or changes in, the **Company**'s reinsurance covering all or part of the risk would threaten the **Company**'s financial integrity or solvency; or

(b) the continuation of the Policy could place the **Company** in violation of California insurance laws or the laws of the state where the **Company** is domiciled, or threaten the solvency of the **Company**.

(7) A change by the **Named Insured** or the **Named Insured's** representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the Policy.



© Copyright CNA All Rights Reserved.

d. The **Company** will give notice at least:

(1) 10 days before the effective date of cancellation, if the **Company** cancels for a reason listed in paragraph K.1.c (1) or (2) above; or

(2) 30 days before the effective date of cancellation, if the **Company** cancels for any other reason listed in paragraph K.1.c. above.

e. If the **Company** cancels this Policy, the earned premium shall be computed pro rata. If the **Named Insured** cancels this Policy, the **Company** shall retain the customary short rate proportion of the premium. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

2. Nonrenewal

a. If the **Company** elects to nonrenew this Policy, the **Company** will provide written notice stating the reason for nonrenewal to the **Named Insured** and the producer of record, at the addresses last known to the **Company**, at least 60 days, but not more than 120 days, prior to the expiration date of this Policy. Delivery of such written notice by the **Company** shall be equivalent to mailing.

The **Company** is not required to provide written notice of nonrenewal in the following situations:

(1) If the transfer or renewal of a policy, without any changes in terms, conditions or rates, is between the **Company** and a member of the **Company**'s insurance group; or

(2) If the Policy has been extended for 90 days or less, provided that notice has been given in accordance with paragraph 2.a. above; or

(3) If the **Named Insured** has obtained replacement coverage, or if the **Named Insured** has agreed, in writing, within 60 days of the termination of the Policy, to obtain that coverage; or

(4) If the Policy is for a period of no more than 60 days and the **Named Insured** is notified at the time of issuance that it will not be renewed; or

(5) If the **Named Insured** requests a change in the terms or conditions for risks covered by the Policy within 60 days of the end of the policy period; or

(6) If the **Company** has made a written offer to the **Named Insured**, in accordance with the timeframes shown in paragraph 2.a., to renew the Policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

b. The offering of terms and conditions different from the expiring terms and conditions does not constitute a refusal to renew.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.



© Copyright CNA All Rights Reserved.

# EXHIBIT 2

**KASOWITZ BENSON TORRES LLP**
Daniel A. Saunders (SBN 161051)
DSaunders@kasowitz.com
Matthew S. Manacek (SBN 312834)
MManacek@kasowitz.com
1801 Century Park East, Suite 2400
Los Angeles, California 90067
Telephone: (424) 288-7900
Facsimile: (424) 288-7901

Edward E. McNally (*pro hac vice* forthcoming)
EMcNally@kasowitz.com
Daniel J. Fetterman (*pro hac vice* forthcoming)
DFetterman@kasowitz.com
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1715
Facsimile: (212) 506-1800

*Attorneys for Plaintiff Ford Motor Company*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FORD MOTOR COMPANY, a Delaware Corporation<br><br>Plaintiff,<br><br>v.<br><br>KNIGHT LAW GROUP LLP; STEVE B. MIKHOV; AMY MORSE; ROGER KIRNOS; DOROTHY BECERRA; THE ALTMAN LAW GROUP; BRYAN C. ALTMAN; WIRTZ LAW APC; and RICHARD M. WIRTZ,<br><br>Defendants. | Case No.: 2:25-cv-04550<br><br>**COMPLAINT FOR:**<br><br>**1. RICO – Violation of 18 U.S.C. § 1962(c)**<br>**2. RICO Conspiracy – Violation of 18 U.S.C. § 1962(d)**<br><br>**[Jury Trial Demand]** |

Plaintiff Ford Motor Company ("Plaintiff" or "Ford") files this Complaint against defendants Knight Law Group LLP, Steve B. Mikhov, Amy Morse, Roger Kirnos, Dorothy Becerra, The Altman Law Group, Bryan C. Altman, Wirtz Law APC, and Richard Wirtz ("Defendants") for damages and other relief for Defendants' violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"). In support of these claims, Ford alleges as follows:

## INTRODUCTION

1. This case arises out of a massive and years-long scheme by Defendants to defraud auto manufacturers, including Ford, out of money and property by falsely and fraudulently inflating their legal fees under California's Lemon Law (defined below). The scheme was carried out through a sophisticated criminal enterprise of attorneys and law firms that ingeniously spread their fraudulent billings across thousands of cases against many auto manufacturers so that their fraudulent scheme would go undetected. Indeed, but for the tremendous expense incurred by Ford to audit and detect the fraud, this criminal enterprise would have continued unabated. Ford brings this suit to end this wide-ranging and corrupt scheme to claim thousands of hours in fictitious billings for time never worked.

2. To effectuate this scheme, Defendants submitted false and inflated fee applications and fee demands based on wholly fictitious work and time entries. The ringleader of the criminal enterprise, Steve Mikhov, and his law firm, Knight Law Group, orchestrated this scheme to take advantage of generous remedies offered by California's Lemon Law at the expense of auto manufacturers including Ford. Ford has identified hundreds of cases in which not less than $100 million of legal bills were unlawfully sought and collected. A review of fee claims in multiple cases takes one on a magical mystery tour of fictitious billings, including individual attorneys who supposedly worked more than 24 hours per day or simultaneously attended different trials or depositions in geographically distant jurisdictions.

3. One of Mikhov's former partners, Amy Morse, billed more than 20 hours per day on at least 66 occasions, 34 of which exceeded 24 hours, including an ostensibly heroic but physically impossible 57.5-hour workday in November 2016. Other Defendants similarly billed vast amounts of phantom legal fees. Richard Wirtz and one of his associates, for instance, claimed to have attended two different trials in two different jurisdictions on a single day, totaling 29 hours of work. Mikhov also billed a large number of duplicate entries that described identical tasks on the same day for numerous clients with only slight differences in wording. Other lawyers similarly billed for the same repetitive tasks across a multitude of cases on the same day. These unconscionable and improper practices produced a highly lucrative but fraudulent criminal enterprise built on deceiving and abusing the judicial system, duping unsuspecting clients, and stealing many millions of dollars from auto manufacturers through a pattern and practice of false pretenses carried out by means of interstate wires and U.S. mail. These and other similar fraudulent time entries have continued to be used to make claims for legal fees, including as recently as September 2024. Indeed, in a single email on September 6, 2024, Knight Law Group sent ten fee statements to Ford's outside counsel, seven of which contain time entries as far back as 2018.

4. Defendants concealed their fraudulent scheme by lying and by spreading their fee claims across numerous matters involving different California courts, cases, and car company defendants. In so doing, they hoodwinked all of the judges and lawyers who were privy only to information presented in individual cases. However, when the Defendants' fee applications in numerous cases involving many clients are analyzed by cross-referencing different matters against different car manufacturers to track the claimed time entries for each lawyer in the criminal enterprise for each day over several years, the Defendants' massive false, fraudulent, and inflated billings are clear and unmistakable.

5. Defendants' conduct violates the Racketeer Influenced and Corrupt Organizations Act, 28 U.S.C. § 1961 et seq. As further described below, Defendants are

a group of persons constituting an association-in-fact enterprise within the meaning of the RICO statute that has the common purpose to unlawfully engage in fraudulent billing practices and has engaged in numerous predicate acts (including mail fraud and wire fraud) that constitute a pattern of racketeering. As a result, Defendants' misconduct entitles Ford to treble damages and declaratory relief barring Defendants from attempting to collect and retain their improperly obtained fees.

## PARTIES

**Plaintiff**

6. Plaintiff Ford Motor Company is incorporated under the laws of the State of Delaware, with its principal place of business in Michigan.

**Defendants**

7. Defendant Knight Law Group LLP ("KLG") is a law firm that is, and was at all material times herein, qualified to do business in California. KLG operates and has operated from various locations in California, including: 10250 Constellation Boulevard, Suite 2500, Los Angeles, CA 90067; 3400 Douglas Boulevard, Suite 250, Roseville, CA 95661; 1331 North California Boulevard, Suite 205, Walnut Creek, CA 94596; and 23 Corporate Plaza, Suite 150, Newport Beach, CA 92660. During some of the relevant time period, KLG's offices on Constellation Boulevard also housed the operations of Defendant The Altman Law Group and at least two of KLG's joint venturers, The Law Offices of Michael H. Rosenstein, LC ("Rosenstein") and Hackler Daghigian Martino & Novak PC ("Hackler"). Plaintiff is informed and believes, and thereon alleges, that at all relevant times herein, KLG personally and knowingly participated in the unlawful activities alleged herein, including, but not limited to, by knowingly making and allowing fraudulent entries for time not actually worked.

8. Defendant Steve B. Mikhov ("Mikhov") is a founding partner and former managing partner of KLG who now resides in Puerto Rico. Plaintiff is informed and believes, and thereon alleges, that at all relevant times herein, Mikhov personally and knowingly participated in the unlawful activities alleged herein, including, but not

limited to, by knowingly making and allowing fraudulent entries for time not actually worked. He is the ringleader of Defendants' criminal enterprise to obtain fraudulent fee judgments and settlements against Ford. Mikhov handles non-trial work, including operational tasks and marketing activities. Mikhov routinely associates with other lawyers to provide trial services and splits inflated fee awards with these lawyers, who benefit from and knowingly participate in overbilling and the creation of false billing records. Mikhov began his involvement in this scheme as a founding partner of O'Connor & Mikhov and later shifted his efforts to KLG. He continues to wield considerable influence on the other lawyers and firms that are members of the criminal enterprise.

9. Defendant Amy Morse ("Morse") is a partner at KLG who resides in the State of California. Plaintiff is informed and believes, and thereon alleges, that at all relevant times herein, Morse personally and knowingly participated in the unlawful activities alleged herein, including, but not limited to, by knowingly making and allowing fraudulent entries for time not actually worked.

10. Defendant Roger Kirnos ("Kirnos") is a partner at KLG who resides in the State of California. Plaintiff is informed and believes, and thereon alleges, that at all relevant times herein, Kirnos personally and knowingly participated in the unlawful activities alleged herein, including, but not limited to, by knowingly making and allowing fraudulent entries for time not actually worked.

11. Defendant Dorothy Becerra ("Becerra") is a former paralegal of KLG who resides in the State of California. Plaintiff is informed and believes, and thereon alleges, that at all relevant times herein, Becerra personally and knowingly participated in the unlawful activities alleged herein, including, but not limited to, by overseeing other paralegals participating in the fraudulent scheme, receiving and transacting checks for what she knew were fraudulently obtained fee payments, and developing the formula for KBG's split of those payments with other attorneys.

12. Defendant The Altman Law Group ("ALG") was a law firm located at 10250 Constellation Boulevard, Suite 2500, Los Angeles, CA 90067. ALG was qualified to do business in California. Plaintiff is informed and believes, and thereon alleges, that ALG personally and knowingly participated in the unlawful activities alleged herein, including, but not limited to, by knowingly making and allowing fraudulent entries for time not actually worked.

13. Defendant Bryan C. Altman ("Altman"), who resides in the State of California, is a partner at Quill & Arrow LLP, and previously was the founder and member attorney of The Altman Law Group. Plaintiff is informed and believes, and thereon alleges, that at all relevant times herein, Altman personally and knowingly participated in the unlawful activities alleged herein, including, but not limited to, by knowingly making and allowing fraudulent entries for time not actually worked.

14. Defendant Wirtz Law APC is a law firm with offices at 24370 La Jolla Village Drive, Suite 800, San Diego, CA 92122; 10866 Wilshire Boulevard, Suite 1200, Los Angeles, CA 90024; and 384 Forest Ave, Suite 17, Laguna Beach, CA 92651. Wirtz Law APC is, and was at all material times herein, qualified to do business in California. Plaintiff is informed and believes, and thereon alleges, that at all relevant times herein, Wirtz Law APC personally and knowingly participated in the unlawful activities alleged herein, including, but not limited to, by knowingly making and allowing fraudulent entries for time not actually worked.

15. Defendant Richard M. Wirtz ("Wirtz"), who resides in the State of California, is the founder and managing attorney of Wirtz Law APC. Plaintiff is informed and believes, and thereon alleges, that at all relevant times herein, Wirtz personally and knowingly participated in the unlawful activities alleged herein, including, but not limited to, by knowingly making and allowing fraudulent entries for time not actually worked.

**Other Lawyers and Law Firms Submitted Inflated Invoices**

16. Mikhov and KLG also engage, coordinate, and conspire with a consortium of other Defendants, retained experts, and legal professionals, including other law firms and attorneys who are brought in as co-counsel to handle trial work on purposefully overstaffed cases. These plaintiff lawyers, often numbering ten to fifteen lawyers for one case or set of plaintiffs, work in tandem to misrepresent the tasks completed and the amount of time spent on cases, and frequently split the proceeds of the inflated and fraudulently obtained fee awards. KLG enters into oral agreements with these plaintiff lawyers, in which the plaintiff lawyers KLG brings on must pay KLG a referral fee, based on a formula KLG created and calls the Attorney Fee Breakdown. On information and belief, a number of these other law firms and lawyers, including KLG's joint venturers, also submitted artificially inflated timesheets in connection with fee applications, but because the fee applications were frequently submitted by KLG, discovery is required to determine culpability for such submissions.

## JURISDICTION AND VENUE

17. This Court has federal question jurisdiction in this matter pursuant to 28 U.S.C. § 1331. This matter arises out of violations of the RICO Act, 18 U.S.C. §§ 1961 et seq. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions by Defendants giving rise to the claims occurred in this District.

## GENERAL ALLEGATIONS

### I. BACKGROUND

#### A. The Fraudulent Billing Scheme

18. This action centers on Defendants' criminal scheme to win astronomical fraudulent fee awards in Lemon Law cases in federal and state courts throughout California. Defendants' submission of fictitious billing records, among other actions, constituted multiple related acts of mail fraud, in violation of 18 U.S.C. § 1341, and wire fraud, in violation of 18 U.S.C. § 1343.

19. California's "Lemon Law," the Song-Beverly Consumer Warranty Act, Civil Code §1790 *et seq.*, provides for the recovery against car manufacturers of "costs and expenses, including attorney's fees based on *actual time expended*, determined by the court to have been *reasonably incurred* by the buyer . . . ." Cal. Civ. Code § 1794(d) (emphasis added). The party seeking the benefit of the Lemon Law's fee-shifting provisions must submit a fee application that is supported by competent evidence, including timesheets and other billing records, reflecting work actually performed on behalf of the car buyer. The fee applicant has the burden of showing that its requested fees are reasonable.

20. Unbeknownst to Ford or the courts, Defendants have exploited the Lemon Law by submitting fake time records in thousands of warranty claim cases asserted against Ford and other automakers, seeking compensation for work that was never performed. Defendants participated in the fraudulent billing scheme knowingly and with the intent to deceive and defraud Ford for their benefit. Defendants' shared objective was and is to rake in many millions of dollars of legal fees each year without regard for the actual value of the work performed.

21. Specifically, from 2015 through the present, to further their fraudulent scheme against Ford and other auto manufacturers, Defendants have routinely submitted false and fictitious time records as part of their fee applications in Lemon Law cases, and Defendants repeatedly received funds from Ford based on those false and artificially inflated timesheets to recover larger amounts of fees and costs than those to which KLG and other Defendants were entitled.

22. On information and belief, Defendants frequently do not maintain contemporaneous time records and instead generate purported time entries after the fact to support their fee demands, notwithstanding their representations to the contrary in court filings.

23. Defendants failed to provide courts with truthful evidence showing the actual time expended on client work for Lemon Law cases. Thus, the court

determinations and settlements based on the evidence, including time sheets that Defendants submitted to reflect the time they reasonably incurred, are tainted and unreliable; the settlements Ford entered into and paid to Defendants based on claims for fictitious legal fees were fraudulent; and the payments Ford made to comply with such court determinations and settlements were unearned and unwarranted.

24. In separate lawsuits, both of which settled in or around March 2022, two of KLG's joint venturers, Rosenstein and Hackler, alleged that KLG artificially inflates its invoices to recover a disproportionate share of attorneys' fees awarded by courts or obtained through settlements with car manufacturers. Indeed, Ford's review of fee applications reveals applications that purport to show that lawyers at the Rosenstein and Hackler firms on occasion billed in excess of 24 hours in a single day. These lawsuits also revealed complicated referral arrangements between KLG and the plaintiff lawyers it engages as trial counsel, in which trial counsel must pay KLG a referral fee.

25. Over the past ten years, Defendants have submitted fee applications seeking payment from Ford totaling more than $100 million for work on behalf of car buyers. The majority of the ill-gotten gains from submitting fraudulent billing records has been awarded to law firms under the control of Mikhov. Ford believes that of these payments, not less than 50% are attributable to fraudulently inflated attorneys' fees.

26. Defendants intended that Ford rely, and Ford did rely, on Defendants' fraudulent billings in paying false and inflated fees associated with fraudulently obtained fee judgments and settlements.

27. Despite Ford having examined only a small sample of fee applications submitted by Defendants, it is apparent from that examination that fictitious fee applications filed by Defendants cover a gamut of made-up work and physically impossible working hours and appearances, including, but not limited to:

(a) Numerous instances of attorneys purportedly working over 24 hours in a single day;

(b) Attorney "appearances" simultaneously at full-day depositions and trials in different geographic locations;

(c) Duplicative billing of the same vague task descriptions across multiple cases for comparable amounts of time; and

(d) More than 1,200 no-date entries for clerical tasks performed by Mikhov, as well as equally suspicious dated entries.

**1. Defendants Repeatedly Billed Between 24 and 60 Hours Per Attorney in a Single Day**

28. Defendants electronically filed false billing records indicating that individual attorneys worked more than 24 hours a day on numerous occasions.

29. Defendant Morse claimed to have worked more than 24 hours a day on 34 separate occasions, including an astounding 57.5-hour workday on November 30, 2016, and 31.3 hours on March 23, 2017. Morse also claimed to have worked between 20 and 23.9 hours a day on 38 separate occasions. During one three-month period (February-April 2017), Morse averaged 483.7 hours a month, with a high of 513.1 hours in March 2017 for an average of 16.5 hours a day in that month (including weekends). During this time, Morse did not participate in any trials; rather, according to her billing records, she spent her time drafting and reviewing discovery and pleadings. These obviously fraudulent and falsely inflated billing records were used, and continue to be used, to support fee awards.

30. Kristina Stephenson-Cheang, an associate with KLG, is second only to Amy Morse in the number of 24+ hour-days she has billed. On July 6, 2017, Stephenson-Cheang billed 34.1 hours; on July 14, 2017, Stephenson-Cheang billed 25.4 hours; on August 16, 2017, Stephenson-Cheang billed 25.6 hours; on August 21, 2017, Stephenson-Cheang billed 24.5 hours; on November 14, 2017, Stephenson-Cheang billed 28.7 hours; and on December 4, 2017, Stephenson-Cheang billed 28.6 hours.

31. Unless the laws of time and space operate differently at KLG's offices than elsewhere in the universe, these billings are conclusive evidence of fraud. Yet

Defendants attempted to conceal these and other fraudulent time entries by spreading them across different payor auto companies and different plaintiffs so that each individual fee application would appear innocuous in isolation.

**2. <u>Defendants Purportedly Appeared for a Full Day's Work at Two Different Locations in a Single Day</u>**

32. Defendants also falsely represented that attorneys made full-day appearances in different locations on the same day. For instance, KLG filed billing records indicating that Defendant Wirtz billed 29 hours on July 24, 2018 to attend two trials in two different jurisdictions on the same day – again a physical impossibility. Specifically, Wirtz billed 16 hours that day to prepare for and attend the *Jordan v, Ford Motor Company* trial in Alameda County Superior Court while also billing 13 hours that same day to travel to and attend the *Choi v. BMW* trial in Los Angeles County Superior Court, some 400 miles away. By order dated June 14, 2019 in *Jordan v. Ford Motor Company,* Alameda Co. Case No. RG16820118, the Alameda County Superior Court granted an award of attorneys' fees totaling $257,615.00 that included the foregoing fees.

33. Similarly, on July 18, 2018, Defendant Wirtz Law APC attorney Amy Smith billed 13.5 hours to prep/attend the *Choi* trial in Los Angeles and 11.2 hours on the *Jordan* trial in Alameda, while also managing to bill 0.7 hours to a third case – a total of 25.2 hours in a single day.

34. As a third example, on April 26, 2018, Larry Castruita, whose time entries are included in fee applications filed by KLG and other firms, billed 15.25 hours in *Smith v. FCA US LLC*, Sacramento Co. Case No. 34-2016-00192381-CU-BC-GDS, to travel to and attend a settlement conference in Sacramento while also billing 5.25 hours in *Orozco v. FCA US LLC*, Los Angeles Co. Case No. BC658214, to take a deposition in Long Beach, some 400 miles away.

### 3. The Same Tasks Were Fraudulently Billed for the Same Amounts of Time Across Multiple Separate Cases

35. Defendants generate substantial phantom legal fees by billing for the same repetitive tasks across a multitude of cases at the same time and by billing the same work through separate law firms or timekeepers. As an example, attached as Exhibit A is a chart of 489 task descriptions in which an attorney billed to draft a meet-and-confer letter and perform unspecified legal research. There is no plausible reason why those two separate tasks should so frequently be combined other than to mask the time actually spent on the two tasks. In this chart, the unspecified legal research masks the time actually billed for drafting identical or substantially similar meet-and-confer letters. The chart is in chronological order and shows days and periods of time when many letters were drafted without any economy of scale reduction in time allotments. Not surprisingly, these entries overlap with the 24-plus hour days described above. For example, Amy Morse allegedly drafted/researched four letters on March 10, 2017, for which she billed 4.0 of her total 28.0 hours.

36. Another example of such repetitive billing is the chart attached as Exhibit B of 596 fee entries submitted by Defendants for "drafting RFAs [Requests for Admission]." As with the meet-and-confer letter entries described above, the chart demonstrates that there are no economies of scale over time and that certain timekeepers, especially Amy Morse and Kristina Stephenson-Cheang, billed to draft RFAs day after day for extended periods of time. Overbilling for RFA drafting contributed to the 24+ hour days, including 12.9 hours of Amy Morse's 57.5 hours billed on November 30, 2016.

37. These and similar fraudulent time entries have continued to be used to make claims for legal fees, including as recently as September 2024.

#### 4. Defendants Rely on No-Date Time Entries as Part of Their Scheme

38. Billing records submitted by Defendants include other entries that are belied by the realities of practice. For example, Mikhov, who on information and belief has never first-chaired a trial and does not try cases for his firm, submitted hundreds of invoices that contain fee entries with no date, an essential element when determining the reasonableness of hourly fees. Such no-date entries exceed 1,200 hours, and the corresponding fees billed exceed $625,000.00. Nearly all entries are a combination of (i) initial communication with client, (ii) initial evaluation of client's claims, and (iii) analysis of vehicle documents. The entries describe identical tasks with only slight wording differences. These and other similar suspicious time entries continue to be used to assert claims for legal fees, including as recently as September 2022.

39. Mikhov's dated time entries are equally implausible. For example, on July 31, 2017, Mikhov billed a total of 18.1 hours that included 84 separate entries in 59 separate cases.

### B. Defendants Concealed and Lied About Their Fraudulent Scheme

40. Attorneys, in California as in every state across the country, are explicitly required to conduct themselves with dignity, courtesy, and integrity as officers of the court. An attorney seeking to practice in California is required to take an oath to that effect. Cal. Rules of Court, R. 9.7.

41. Defendants abused their positions of trust as members of the Bar to deceive the courts and Ford by submitting thousands of fee applications that appeared genuine on their face but are clearly false and fraudulent when viewed alongside other fee applications submitted for work on the same day.

42. The key to Defendants' fraudulent billing scheme is submitting fee applications that do not appear fraudulent when reviewed in isolation in a particular matter. Because there are no red flags to alert the courts or the victims to audit the daily time entries for every day over a decade across all cases for all of the Lemon Law

lawyers, including multiple law firms, courts have been deceived into awarding fees, and Ford has settled fee claims, in reliance on the false presumption that Defendants were complying with their ethical obligations and not perpetrating a massive and ongoing fraud on Ford, other automakers, and the courts.

43. In May 2020, Defendant Kirnos, a partner at KLG (and also Defendant Mikhov's half-brother), admitted that he expected the court and Ford to rely on Defendants' representations regarding fees. During an oral argument regarding KLG's fee application in an MDL action, *Mark Pedante v. Ford Motor Company et al.* (ML 18-02814-AB), Kirnos stated: "There is a presumption attached to our billing because there is a presumption that we are going to be ethical, that we are not going to submit lies to this Court. And we did not." Kirnos went on to implore the Court to rely on that presumption on the basis that Defendants obviously would not violate ethical duties when they submit fee applications to the Court. Even while making this representation, Kirnos knew that he and the other Defendants were in fact engaging in repeated and blatant violations of their ethical duties and committing criminal acts to line their own pockets.

44. While Defendants' overbilling did not go entirely unnoticed by courts, Defendants were successful in concealing the massive scope of their fraud. In a Lemon Law case in 2020, *In re Volkswagen "Clean Diesel" Marketing*, Sales Practice and Prod. Liab. Litig. (MDL No. 2672 CRB (JSC)), the court found that KLG, Altman Law Group, and others filed applications seeking compensation for work that was not in fact conducted on behalf of the clients involved in the fee application. United States District Judge Charles R. Breyer ordered reduction of the requested attorneys' fees by 50-90% for certain categories of tasks. The court stated that the plaintiff lawyers "likely overstaffed this case" and that "[o]ther courts have applied reductions when Knight Law Group's staffing practices appear to have led to inefficiency." The court noted "the enormous number of hours attributed to these Plaintiffs' cases while they were stayed." The court completely excluded bills for

vague entries and clerical tasks, as well as work performed for other plaintiffs, not involved in the fee application, whose cases actually went forward to trial. However, because the court was looking only at the fee applications in a single case, it was unable to discern the true extent of the fraud that Defendants concealed by spreading their fictitious billings across multiple clients, cases, and law firms.

### C. <u>Defendants Have Intensified Their Fraudulent Scheme Over Time</u>

45. Since 2015, the Defendants have filed over 5,000 breach of warranty cases against Ford and other car manufacturers and have filed hundreds of fee applications in connection with those cases.

46. Defendants' fraudulent scheme has expanded over time. In the years 2021 through 2024, KLG alone obtained fee awards from Ford totaling approximately $35 million, with a substantial portion of that sum likely resulting from false, fictitious and inflated billing records.

47. Moreover, Ford is not the only automaker in the Defendants' crosshairs. Defendants have filed numerous cases against other automakers including GM, Fiat Chrysler Automobiles/FCA, Volkswagen/Audi, and BMW, among others. Based on a review of only a small sample of such fee applications, Ford believes that these automakers are also victims of Defendants' scheme to defraud.

48. There are no signs of abatement of the criminal enterprise's fraudulent scheme, despite the fact that Defendants' clients often retain small recoveries, because Defendants have pursued this fraudulent billing scheme to enrich themselves, including bankrolling their lavish vacations, opulent homes, and use of private jets.

## II. <u>DEFENDANTS USED INTERSTATE WIRES AND U.S. MAIL TO SUBMIT FALSE, FRAUDULENT, AND INFLATED FEE APPLICATIONS AND TO SECURE THEIR FRAUDULENTLY OBTAINED PROCEEDS</u>

49. Defendants used the U.S. mail and interstate wires to make fraudulent court filings, to negotiate settlements, and to receive payments pursuant to fraudulent

Case 2:25-cv-04550 Document 1 Filed 05/20/25 Page 17 of 28 Page ID #:16

fee judgments and settlements based on falsified evidence, all in furtherance of their scheme to defraud Ford and other similarly situated automakers of their money.

50. For example, by order dated July 19, 2018 and filed on July 31, 2018, in *Buck v. Ford Motor Company,* Superior Court of California, Stanislaus County, Case No. 2008745, the Court ordered Ford to pay attorneys' fees, costs, and expenses totaling $135,500.00 based on a fee application filed by KLG that included billing entries by Morse for November 30, 2016 (on which date she billed 57.5 hours) and March 23, 2017 (on which date she billed 31.3 hours). By letter dated July 24, 2018 addressed to Mikhov and sent by FedEx, Ford enclosed a check in the amount of $135,500.00 payable to KLG. Similarly, by judgment entered on August 31, 2018 in *Duk v. Ford Motor Company*, Superior Court of California, San Diego County, Case No. 2016-00012779, the Court ordered Ford to pay attorneys' fees, costs, and expenses totaling $101,450.78 based on a fee application filed by KLG that included billing entries by Morse for November 30, 2016 and March 23, 2017. By letter dated October 1, 2018 addressed to Mikhov and sent by FedEx, Ford enclosed a check in the amount of $101,450.78 payable to KLG. In addition to the fee awards in the *Buck* and *Duk* cases, Morse's fraudulent billing records were also used to support fee awards in the following cases, among others: (a) fee award in the amount of $10,675.16 in *Burgess v. Ford Motor Company*, San Bernardino Co. Case No. CIVDS1620111, paid by check dated October 9, 2018 payable to KLG and sent by FedEx; (b) fee award in the amount of $12,405.20 in *Duenas v. Ford Motor Company*, Los Angeles Co. Case No. BC638306, paid by check dated August 15, 2018 payable to KLG and the plaintiff and sent by FedEx; and (c) fee award in the amount of $15,005.00 in *Orosco v. Ford Motor Company*, Los Angeles Co. Case No. BC638222, paid by check dated October 12, 2018 payable to KLG and sent by FedEx. Morse's fraudulent billing records were also used to support fee awards in cases involving other auto manufacturers, including, among others: (a) fee award in the amount of $106,560.55 in *Vargas v. FCA US LLC*, Orange Co. Superior Court Case No. 30-2016-00845431-CU-BC-CJC, paid by check dated July

26, 2018 and sent to Dorothy Becerra by FedEx; (b) fee award in the amount of $23,179.10 in *Beltran v. FCA US LLC*, Los Angeles Co. Case No. BC617905, paid by check dated September 10, 2019 and sent by FedEx.

51. When satisfying judgments and settlements pursuant to Defendants' inflated fee applications where KLG associates with another firm, Ford will often make a single payment via check to both KLG and the other firm, and, as a common practice, KLG endorses and deposits these checks without an additional signatory from the other firm. For instance, in *Santillo v. Ford Motor Company,* San Diego Co. Superior Court Case No. 37-2017-11591, pursuant to Notice of Ruling dated February 27, 2019, Ford submitted a payment to KLG and Rosenstein in a single check for $35,630.21, sent on March 27, 2019 by FedEx. The check was later endorsed and deposited by KLG only without a signature from Rosenstein.

52. Similarly, in *Beltran v. FCA US LLC*, Los Angeles Co. Superior Court Case No. BC617905, KLG received a single check for $23,179.10 on September 27, 2019, even though Defendants Wirtz Law APC and Richard Wirtz billed time on the matter. In *Vargas v. FCA US LLC*, Orange Co. Superior Court Case No. 30-2016-00845431-CU-BC-CJC, KLG received a single check for $106,560.55 on July 26, 2018; this check was addressed to Dorothy Becerra. Defendant Richard Wirtz billed time as of counsel *for KLG* on this case. The above checks in the *Beltran* and *Vargas* cases were sent by FedEx.

53. On other occasions, multiple firms receive checks in satisfaction of judgments or settlements. For instance, in *Berroteran v. Ford Motor Company*, Los Angeles Co. Superior Court Case No. BC542525, Ford sent KLG, ALG, and their client a settlement check for $645,259.41 on February 28, 2022 by FedEx. By this point, ALG and Ford had already reached agreement on ALG's fee claim for this case, agreeing on January 7, 2022 to pay ALG $300,000.00. Ford mailed this check to ALG on July 20, 2022 by FedEx. In a motion for attorneys' fees filed on May 20, 2022, KLG sought $1,226,868.45 in attorneys' fees, costs, and expenses on behalf of itself and

other attorneys. Kirnos submitted a declaration that attached KLG's invoices, which included time entries from him, Mikhov, and Morse. The court issued a minute order on July 14, 2022, awarding $807,127.50 in attorneys' fees only. Ford sent KLG a check in the amount of $851,493.51 on October 21, 2022 by FedEx.

54. Similarly, in *Coon v. Ford Motor Company*, Riverside Co. Superior Court Case No. MCC1300767, Ford sent KLG, ALG, and their client a check on March 2, 2022 for $793,924.29 by FedEx; this check was addressed to Dorothy Becerra. The fee application—on behalf of KLG, ALG and others—was filed years prior, on February 4, 2019. Mikhov submitted a declaration in support of that application. KLG requested $866,754.00 (including a lodestar enhancement) and ALG requested $433,091.25 (including a lodestar enhancement). On May 19, 2019, the court awarded KLG $543,554.00 in attorneys' fees. Like with the *Berroteran* matter, Ford and ALG agreed on January 7, 2022 that Ford would settle ALG's fee claim for $300,000.00. Ford mailed this check to ALG on June 16, 2022, by FedEx. Ford mailed a check to KLG for $709,004.12 on June 16, 2022, by FedEx.

55. In *Brown v. Ford Motor Company*, Butte Co. Superior Court Case No. 160060, KLG, ALG, and their client jointly received a check for $568,694.52, which Ford's outside counsel sent on behalf of Ford by FedEx on March 25, 2022. Like with the *Coon* matter, the fee application in this case—on behalf of KLG, ALG, and others—was submitted years prior, on November 21, 2018. Mikhov and Altman both submitted declarations in support of that application. KLG sought $807,163.50 (including a lodestar enhancement) and ALG sought $398,887.50 (including a lodestar enhancement). On January 16, 2019, the court awarded $714,233.00 in total attorneys' fees. On June 6, 2022, Ford mailed ALG a check for $300,000.00 by FedEx, based again on its January 7, 2022 agreement with Ford. Ford mailed a check to KLG for $843,528.13 on July 25, 2022 by FedEx.

56. *Margeson v. Ford Motor Company*, Los Angeles Co. Superior Court Case No. BC549430, is still another example. Like with the *Coon* and *Brown* matters, the fee

application—on behalf of KLG, ALG, and others—was submitted years prior, on December 15, 2017. Mikhov and Altman both submitted declarations in support of that application. KLG sought $523,494.00 in fees, and ALG sought $353,205 in fees. On February 1, 2018, the court awarded $741,839.70 in total attorneys' fees. Ford's outside counsel sent ALG a $500,000.00 check on July 26, 2022. Ford's outside counsel sent KLG two checks: one for $136,744.53 on July 26, 2022, and another for $345,000.00 on September 22, 2022. All of these checks were sent on behalf of Ford by FedEx.

57. As another example, the fee application in *Anderson v. Ford Motor Company*, San Joaquin Co. Superior Court Case No. 39-2013-00299512-CU-BC-STK, was submitted on May 28, 2019, on behalf of KLG, Wirtz Law, and others. Mikhov, Wirtz, and others submitted declarations in support of that application. KLG sought $740,118.75 (including a lodestar enhancement), and Wirtz Law sought $54,348.75 (including a lodestar enhancement). On May 10, 2022, Ford issued a check to Wirtz Law for $38,270.98, which was sent by FedEx.

58. On information and belief, all of the above checks were sent in reliance on false, fraudulent, and inflated fee applications or billing statements, and were caused by Defendants as an essential part of their fraudulent scheme.

## III. <u>FORD HAS SUFFERED AND CONTINUES TO SUFFER SIGNIFICANT HARM FROM THE CONSPIRACY</u>

59. As a direct and proximate result of Defendants' pervasive fraud, Ford has paid Defendants inflated fees on fee awards totaling tens of millions of dollars. Any uncertainty as to the amount of damages caused by the fraudulent billing scheme has been caused by Defendants' actions. In addition to the harm suffered from payment of fraudulently induced fee awards, Ford has been further damaged by the legal fees and other costs it had to incur to detect and now attempt to stop this fraudulent criminal enterprise, as well as by harm to its reputation and goodwill resulting from Defendants' misconduct.

**A. Rooting Out the Fraudulent Billing Scheme Took Thousands of Hours of Reviewing Court Records and Incurred Huge Expenses for Ford**

60. Ford's review of fee applications in only a sampling of the cases that Defendants have filed has uncovered numerous examples of impossible and implausible time entries. The true extent of Defendants' massive fraudulent billing scheme will only be revealed as Ford assembles additional evidence and through discovery in this matter.

61. The evidence presented in this Complaint reflects extensive work by Ford. New evidence continues to emerge as Defendants continue to file additional fraudulent fee applications against Ford and other car manufacturers in various jurisdictions.

62. Expensive expert services are needed to untangle the thousands of fraudulent billing entries that Defendants have filed in various jurisdictions.

63. The work to uncover Defendants' criminal scheme is continuing and is expected to cost Ford many millions of dollars. Such work is necessary only because of Defendants' calculated efforts to conceal their scheme by spreading their fraudulent billing entries across multiple cases, auto manufacturers, and jurisdictions.

**B. Ford Has Suffered Significant Additional Harm From Defendants' Fraudulent Scheme**

64. Ford also suffered by having to participate in a tainted litigation process. Defendants submitted false and fraudulent applications to sway courts to order unfair fee judgments that did not reflect the work actually performed on behalf of car owners.

65. In open court and through Facebook posts, blogs, and other forums for summoning negative publicity, Defendants have presented unfair and false representations of their fee recoveries to onboard new clients, harming Ford's reputation and goodwill.

66. Defendants' fraud has caused substantial monetary loss. Ford paid fee judgments much larger than it would have paid absent Defendants' fraud and abuse of their trusted positions as attorneys.

67. Although Ford's efforts to uncover the true extent of Defendants' fraud continue, on information and belief, the scheme has already cost Ford many millions of dollars in false and inflated fees.

## IV. THE RICO ENTERPRISE

68. Defendants are a group of persons constituting an association-in-fact enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) (referred to hereinafter as the "Enterprise"), because, among other reasons: (a) those involved have the common purpose to unlawfully operate an ongoing criminal enterprise engaged in fraudulent billing; (b) the Enterprise has an informal governing structure that at certain times operates as a command hierarchy led by Defendants Mikhov and KLG, different roles for members, and a governing set of rules and practices; (c) each of the Defendants participates in the operation or management of the Enterprise; (d) the Enterprise has enjoyed sufficient longevity and has been in continuous operation for over five years; and (e) the Enterprise has generally been structured to operate as a continuing unit, with membership, rank, privileges, and access constantly maintained by the members, to accomplish the goals of the fraudulent billing scheme.

69. Defendants have associated with one another in the Enterprise for the common purposes of preparing and filing fraudulent fee applications and billing records, negotiating fraudulent settlements, splitting inflated fees, and funneling fraud proceeds into attorney distributions and extravagant purchases.

70. At all relevant times, Defendants were financially intertwined. KLG received checks on behalf of other plaintiff lawyers and firms associated with the Enterprise and cashed these checks without obtaining proper endorsements.

71. At all relevant times, the Enterprise was engaged in, and its activities affected, interstate commerce within the meaning of 18 U.S.C. § 1962(c). Defendants are involved in business involving clients in different states, auto manufacturers engaged in interstate commerce, and the federal courts' interstate e-filing system. Many

of the cases involved in the criminal scheme are related to multi-district litigation involving lawyers located in different states accessing the federal e-filing system.

72. Defendants conducted or participated, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5) and in violation of 18 U.S.C. § 1962(c), namely, mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.

## V. THE PATTERN OF RACKETEERING ACTIVITY

73. As described herein, Defendants engaged in an expansive criminal scheme to defraud Ford about Defendants' role and efforts relating to tens of thousands of cases.

74. Defendants engaged in multiple instances of mail and wire fraud as part of their pattern of racketeering activity.

75. The ultimate objective of Defendants' scheme or artifice to defraud was to deceive and coerce Ford into paying them unearned fee judgments and settlements totaling millions of dollars to directly benefit Defendants.

76. In furtherance of their fraudulent scheme, and as described herein and in Exhibit C hereto, Defendants transmitted, or caused to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds, and also caused matters and things to be placed in any post office or authorized depository, or deposited or caused to be deposited matters or things to be sent or delivered by a private or commercial interstate carrier, including, but not limited to, the following:

(a) electronic filing and service of court papers, served on lawyers located in various states, containing false and misleading statements intended to mislead the courts and relevant parties and to obtain Ford's money;

(b) mail service of court papers on lawyers containing false and misleading statements intended to mislead the relevant parties and to obtain Ford's money; and

(c) wires and/or mailings between and among Defendants, or between and among Defendants and Ford or its counsel, containing fraudulent billings and payments therefor.

77. Defendants participated in the scheme or artifice knowingly, willfully, and with the specific intent to deceive and/or defraud Ford into paying Defendants money to which Defendants knew they were not entitled. Defendants knowingly and intentionally prepared false billing records and then, knowingly and with the intent to deceive Ford and the relevant courts for the purpose of obtaining Ford's money, caused those false and fictitious billing records to be publicly filed. Defendants colluded with one another to fabricate time records to inflate statutory fees and inflate settlements to further the conspiracy with the intent that those statements be believed. The attack on Ford was intended to, and did, result in Ford paying inflated fees that benefited the Defendants, which in turn financed the criminal scheme and supported the Enterprise members' jet-setting lifestyles.

78. In a concerted effort to thwart Ford's ability to uncover the truth about the fraudulent billing scheme, Defendants have filed or caused to be filed hundreds of false and misleading documents in various cases with different auto manufacturers.

79. Defendants intended that courts in various jurisdictions rely on, and those courts have relied on, Defendants' false and misleading statements, trusting Defendants to comply with their ethical obligations as officers of the court. The courts' acceptance of Defendants' fraudulent billings has resulted in numerous inflated fee awards against Ford.

80. Accordingly, Defendants' submission of fraudulent billings and false and misleading representations in court have caused Ford to suffer substantial damages and reputational harm.

81. The alleged predicate acts, consisting of scores of acts of mail and wire fraud, are related and continuous and were committed on behalf of an associated-in-fact

enterprise that has existed for the purpose of carrying out the fraudulent billing scheme for nearly a decade.

## FIRST CAUSE OF ACTION

**(RICO, 18 U.S.C. § 1962(c))**

**(Against All Defendants)**

82. Ford realleges and incorporates herein by reference each and every foregoing paragraph of this Complaint.

83. At all relevant times, Ford was and is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

84. At all relevant times, each Defendant was and is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

85. As detailed above, Defendants and their co-conspirators are a group of persons associated together in fact for the common purpose of advancing an ongoing criminal enterprise, specifically by submitting fraudulent fee applications and obtaining fraudulent fee awards in federal and state courts across California against Ford and other auto manufacturers.

86. Defendants and their co-conspirators are an association-in-fact enterprise as defined in 18 U.S.C. § 1961(4). Each Defendant participated in the operation or management of the Enterprise.

87. At all times alleged herein, the Enterprise was engaged in, and its activities affected, interstate commerce.

88. The Enterprise is likely to continue to engage in racketeering activity in its efforts to collect and protect its ill-gotten gains.

89. Each Defendant conducted or participated, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a "pattern of racketeering activity" as defined in 18 U.S.C. §1961(5).

90. Ford incorporates by reference the attached Exhibit C, which identifies numerous (but not all) specific uses of interstate wire and mail communications advancing the Enterprise's scheme in violation of 18 U.S.C §§ 1341 and 1443.

91. As a direct and proximate result of the Enterprise's pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), Ford has been damaged in its business and property in an amount to be determined at trial, including but not limited to by having to pay more than $100 million due to fraudulent billing statements submitted by Defendants.

92. Pursuant to 18 U.S.C. § 1964(c), Ford is entitled to recover treble damages plus costs and attorneys' fees from Defendants.

**SECOND CAUSE OF ACTION**

**Conspiracy to Violate RICO, 18 U.S.C. § 1962(d)**

**(Against All Defendants)**

93. Ford realleges and incorporates herein by reference each and every foregoing paragraph of this Complaint.

94. Defendants have unlawfully, knowingly and willfully combined, conspired, confederated and agreed together and with others to violate 18 U.S.C. § 1962(c) as described above, in violation of 18 U.S.C. § 1962(d).

95. Defendants knew that they were engaged in a conspiracy to commit the predicate acts of mail and wire fraud, and the participation and agreement of each of them was necessary to allow the commission of this pattern of racketeering activity.

96. Each Defendant agreed to conduct or participate, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

97. Each Defendant knew about and agreed to facilitate the Enterprise's scheme to submit fraudulent billing statements to state and federal courts to obtain favorable decisions and recover more than they were entitled to from Ford. It was part of the conspiracy that Defendants would commit a pattern of racketeering activity in the

conduct of the affairs of the Enterprise, including but not limited to the acts of racketeering set forth above and in Exhibit C.

98. As a direct and proximate result of Defendants' conspiracy to violate 18 U.S.C. § 1962(d) and the overt acts taken in furtherance of that conspiracy, Ford has been damaged in its business and property in an amount to be determined at trial, including but not limited to by having to pay more than $100 million due to fraudulent billing statements submitted by Defendants.

99. Pursuant to 18 U.S.C. § 1964(c), Ford is entitled to recover treble damages plus costs and attorneys' fees from Defendants.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks a judgment against Defendants awarding the following relief:

1. For an award of general damages in the amount to be determined at trial and estimated to be at least $100 million, which damages are to be trebled according to the RICO statute, 18 U.S.C. § 1964(c);

2. For pre-judgment interest according to statute;

3. For Ford's reasonable attorneys' fees and costs according to statute, 18 U.S.C. § 1964(c); and

4. Any other relief that this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial in this action.

Case 2:25-cv-04550 Document 1-1 Filed 05/20/25 Page 28 of 28 Page ID #:247

Dated: May 21, 2025

KASOWITZ BENSON TORRES LLP

By: /s/ *Daniel A. Saunders*

Daniel A. Saunders

*Attorneys for Plaintiff Ford Motor Company*

# EXHIBIT 3

**KASOWITZ LLP**
Daniel A. Saunders (SBN 161051)
DSaunders@kasowitz.com
Matthew S. Manacek (SBN 312834)
MManacek@kasowitz.com
1801 Century Park East, Suite 2400
Los Angeles, California 90067
Telephone: (424) 288-7900
Facsimile: (424) 288-7901

Edward E. McNally (admitted *pro hac vice*)
EMcNally@kasowitz.com
Daniel J. Fetterman (admitted *pro hac vice*)
DFetterman@kasowitz.com
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1715
Facsimile: (212) 506-1800

*Attorneys for Plaintiff Ford Motor Company*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

FORD MOTOR COMPANY, a Delaware Corporation,

Plaintiff,

v.

KNIGHT LAW GROUP LLP; STEVE B. MIKHOV; AMY MORSE; ROGER KIRNOS; DOROTHY BECERRA; THE ALTMAN LAW GROUP; BRYAN C. ALTMAN; WIRTZ LAW APC; and RICHARD M. WIRTZ,

Defendants.

Case No: 2:25-cv-04550-MWC-PVC

**FIRST AMENDED COMPLAINT FOR:**

1. **RICO – Violation of 18 U.S.C. § 1962(c)**
2. **RICO Conspiracy – Violation of 18 U.S.C. § 1962(d)**

**[Jury Trial Demand]**

Plaintiff Ford Motor Company ("Plaintiff" or "Ford") files this First Amended Complaint against defendants Knight Law Group LLP ("KLG"), Steve B. Mikhov ("Mikhov"), Amy Morse ("Morse"), Roger Kirnos ("Kirnos"), Dorothy Becerra ("Becerra"), The Altman Law Group ("ALG"), Bryan C. Altman ("Altman"), Wirtz Law APC ("Wirtz Law"), and Richard Wirtz ("Wirtz") (collectively, "Defendants") for damages and other relief for Defendants' violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"). In support of these claims, Ford alleges as follows:

**INTRODUCTION**

1. California's Lemon Law (defined below) provides for recovery from auto manufacturers of "attorney's fees based on actual time expended." In case after case brought under the Lemon Law over more than a decade, Los Angeles-based law firm KLG represented under oath to Ford and to state and federal courts that all of its attorneys' "time billing entries were completed contemporaneously with each dated entry or near in time to the work performed." But these were all lies. The truth, as KLG's representatives admitted in 2024, is that prior to 2018, KLG did not record its attorneys' time ***at all***.

2. KLG's problems stemming from having no contemporaneous time records for multiple years became more acute when Ford began refusing to settle Lemon Law cases unless KLG provided time sheets showing the attorney and other billable hours and the dates and descriptions of work performed that would support the amounts claimed in KLG's fee demands. Faced with those requirements, KLG could have forthrightly acknowledged that it was not its practice to create and contemporaneously record attorney and paralegal hours and disclosed that fact to Ford and to the federal and state courts to which KLG attorneys owe a duty of candor. But instead, KLG assembled a group of employees, overseen by Becerra, and specifically tasked them with creating false and fictitious billing records in thousands of cases, listing fabricated time entries that were created years after the work in question allegedly had been performed. This

outright falsification of evidence amplified a massive and years-long scheme by Defendants to defraud Ford and other auto manufacturers out of money and property by falsely and fraudulently claiming inflated attorneys' fees for time never actually worked—a scheme that continued even after KLG purportedly began keeping contemporaneous time records.

3. The scheme was carried out through a sophisticated criminal enterprise of attorneys and law firms that ingeniously spread their fraudulent billings across thousands of cases against many auto manufacturers so that their fraudulent scheme would go undetected. Indeed, but for the tremendous expense incurred by Ford to audit and detect the fraud, this criminal enterprise would have continued unabated. Ford brings this suit to end this wide-ranging and corrupt scheme to claim thousands of hours in wholly fictitious billings for time never worked and created out of thin air well after the alleged work for the cases was completed.

4. The ringleader of the criminal enterprise, Mikhov, and his law firm, KLG, orchestrated this scheme to parlay the generous remedies offered by California's Lemon Law into an opportunity to extract unearned payments for themselves from auto manufacturers including Ford. Ford has identified hundreds of cases in which Defendants' sham billing records were unlawfully used to collect well over $100 million of legal fees that they pocketed, in addition to a percentage of payments intended for their consumer clients. A review of fee records in multiple cases takes one on a magical mystery tour of fictitious billings, including individual attorneys who supposedly worked more than 24 hours per day or simultaneously attended different trials or depositions in widely separated jurisdictions. The physical impossibility of such billings is a direct consequence of KLG's long-concealed fabrication of evidence and repeated perjury to the courts, and constitutes prima facie evidence of Defendants' unlawful conduct and fraud.

5. As an example, one of Mikhov's former partners, Morse, billed more than 20 hours per day on at least 66 occasions, 34 of which *exceeded 24 hours*, including an

ostensibly heroic but physically impossible 57.5-hour workday in November 2016. Further proof of the fraud is that Morse herself has admitted under oath that her job responsibilities at KLG from 2016 and on primarily involved administrative and supervisory duties, that an estimated 70-80% of her time was spent managing personnel and was non-billable time, and that she herself ***never*** billed or recorded ***any*** hourly time for numerous tasks that KLG time records claim she performed, specifically including communicating with clients, attending mediations, drafting case management statements, drafting and responding to meet-and-confer letters, and communicating with expert witnesses. Accepting that testimony as truthful, either Morse or someone else at KLG had to falsely create years of her "time" for hundreds or thousands of different cases.

6. Other Defendants similarly billed vast amounts of phantom legal fees. According to the time entries of Wirtz and one of his associates, for instance, they each attended two different trials in two different jurisdictions on a single day, totaling 29 hours of work. Mikhov also billed a large number of duplicate entries that described identical tasks on the same day for numerous clients with only slight differences in wording. Other lawyers similarly billed for the same repetitive tasks across a multitude of cases on the same day. These sham billings, many or most of which were made up out of whole cloth often years after the fact, fueled a highly lucrative and fraudulent criminal enterprise that was built on deceiving and abusing the judicial system, duping unsuspecting clients who were not aware of and did not approve their lawyers' unethical and fraudulent practices, and stealing many millions of dollars from auto manufacturers through a pattern and practice of false representations that were carried out by means of interstate wires and U.S. mail. These and other similar fraudulent time entries have continued to be used to prepare false billing records and claim legal fees for fictitious time, including as recently as August 2025. For example, in a single email on September 6, 2024, KLG sent ten fee statements to Ford's outside counsel, seven of

which reflect fraudulently created and false time records dating back as many as six or more years.

7. Defendants concealed their fraudulent scheme by spreading their fictitious and inflated fee records across numerous matters involving different California courts, cases, and car company defendants. They also pressured their own clients into unconscionable contracts that—far from advancing their clients' legitimate interests—imposed draconian penalties on any clients who attempted to settle their own claims before Defendants could run up billings, or who even disclosed the terms of their representation, such as by seeking advice from independent counsel.[1] Defendants deprived the fee application process of its legitimacy by making false statements, presenting fraudulent claims for money, and misleading all of the judges and lawyers who were privy only to selective information presented by Defendants in each individual case to prevent the detection of their false and fraudulent billing practices. Only when Defendants' fee records in thousands of separate cases involving different clients are analyzed holistically—by cross-referencing different matters against different car manufacturers to track the claimed time entries for each lawyer in the criminal enterprise for each individual date over several years—do Defendants' massive false, fraudulent, and inflated hours and billings become clear and unmistakable.

---

[1] This is not the only example of Defendants acting against their clients' best interests. Under California's Lemon Law, attorneys' fees recoverable pursuant to Civil Code § 1794(d) are paid by the manufacturer to the prevailing consumer's counsel, but such payments are deemed gross income to the consumer for federal and California tax purposes when made on the consumer's behalf. *See Commissioner v. Banks*, 543 U.S. 426, 430–31 (2005); *see also* IRS Publication 525. California conforms to this federal rule. *See* Cal. Rev. & Tax. Code § 17071. By fraudulently inflating time entries and lodging exaggerated fee demands, Defendants cause inflated amounts to be reported on IRS Form 1099-MISC in the name of their consumer clients. This creates unnecessary and unjust federal and state income tax liabilities for those consumers, reducing their net recovery and exposing them to IRS or California Franchise Tax Board audits. Defendants did not disclose these foreseeable tax consequences to their clients, resulting in further harm from their RICO enterprise as well as evidencing their fraudulent intent and reckless disregard for the interests of those they purport to represent.

8. Defendants' conduct violates the Racketeer Influenced and Corrupt Organizations Act, 28 U.S.C. § 1961 et seq. As further described below, Defendants are a group of persons constituting an association-in-fact enterprise within the meaning of the RICO statute that has the common purpose to unlawfully engage in fraudulent billing practices and that has engaged in numerous predicate acts (including mail fraud and wire fraud) that constitute a pattern of racketeering. As a result, Defendants' misconduct entitles Ford to treble damages and declaratory relief barring Defendants from attempting to collect and retain their improperly obtained fees.

## PARTIES

### Plaintiff

9. Plaintiff Ford is incorporated under the laws of the State of Delaware, with its principal place of business in Michigan.

### Defendants

10. Defendant KLG is a law firm that is, and was at all material times herein, qualified to do business in California. KLG operates and has operated from various locations in California, including: 10250 Constellation Boulevard, Suite 2500, Los Angeles, CA 90067; 3400 Douglas Boulevard, Suite 250, Roseville, CA 95661; 1331 North California Boulevard, Suite 205, Walnut Creek, CA 94596; and 23 Corporate Plaza, Suite 150, Newport Beach, CA 92660. During some of the relevant time period, KLG's offices on Constellation Boulevard also housed the operations of Defendant ALG, Law Firm 1, and Law Firm 2. Plaintiff is informed and believes, and thereon alleges, that at all relevant times herein, KLG personally and knowingly participated in the unlawful activities alleged herein, including, but not limited to, by knowingly making and/or allowing the creation of fraudulent entries for time not actually worked.

11. Defendant Mikhov is a founding partner and former managing partner of KLG who now claims to reside in Puerto Rico. Plaintiff is informed and believes, and thereon alleges, that at all relevant times herein, Mikhov personally and knowingly participated in the unlawful activities alleged herein, including, but not limited to, by

knowingly making and allowing fraudulent entries for time not actually worked. He is the ringleader of Defendants' criminal enterprise to obtain fraudulent fee judgments and settlements against Ford. Mikhov routinely associates with other lawyers to provide trial services and splits inflated fee awards with these lawyers, bringing those lawyers into the criminal enterprise by causing them to overbill and create false billing records for the enterprise's financial benefit. As the scheme's ringleader, he specifically instructed other members of the enterprise, including Altman and ALG, to pad their bills and inflate their fees. Mikhov handles non-trial work, including operational tasks and marketing activities. Mikhov began his involvement in this scheme as a founding partner of O'Connor & Mikhov and later shifted his efforts to KLG. Despite his nominal separation from KLG and purported relocation to Puerto Rico, which was done for tax reasons—likely related to the more than $11 million in federal and state tax liens currently pending against him—he continues to manage activities at KLG and to wield considerable influence on the other lawyers and firms that are members of the criminal enterprise. Mikhov has falsely attested, under oath, to the truth of the fraudulent billing records supporting KLG's fee applications.

12. Defendant Morse is a partner at KLG who resides in the State of California. Plaintiff is informed and believes, and thereon alleges, that at all relevant times herein, Morse personally and knowingly participated in the unlawful activities alleged herein, including, but not limited to, by knowingly making and/or allowing the creation of fraudulent entries for time not actually worked, including in thousands of cases in which KLG did not create contemporaneous time records but fabricated them long after the cases had been completed, for the financial benefit of the enterprise. As she has testified that she rarely recorded ***any*** billable time, Morse knew that the great majority of (if not all) time entries submitted to Ford and to courts under her name were inaccurate, inflated, and fictitious.

13. Defendant Kirnos is a partner at KLG who resides in the State of California. Plaintiff is informed and believes, and thereon alleges, that at all relevant

times herein, Kirnos personally and knowingly participated in the unlawful activities alleged herein, including, but not limited to, by knowingly making and/or allowing the creation of fraudulent entries for time not actually worked, including in thousands of cases in which KLG did not create contemporaneous time records but fabricated them long after the cases had been completed, for the financial benefit of the enterprise. Kirnos has falsely attested, under oath, to the truth of the fraudulent billing records supporting KLG's fee applications.

14. Defendant Becerra is a former paralegal of KLG who resides in the State of California. Plaintiff is informed and believes, and thereon alleges, that at all relevant times herein, Becerra personally and knowingly participated in the unlawful activities alleged herein, including, but not limited to, by overseeing the group of employees that was charged with fraudulently creating tens of thousands of false and invented time records in thousands of cases, often long after the alleged work in the cases had been completed, for the financial benefit of the enterprise; requesting, receiving, and transacting checks for what she knew were fraudulently obtained fee payments to the enterprise; and developing the formula for KLG’s split of those payments with other enterprise members.

15. Defendant ALG was a law firm located at 10250 Constellation Boulevard, Suite 2500, Los Angeles, CA 90067. ALG was qualified to do business in California. Plaintiff is informed and believes, and thereon alleges, that ALG personally and knowingly participated in the unlawful activities alleged herein, including, but not limited to, by knowingly making and/or allowing the creation of fraudulent entries for time not actually worked for the financial benefit of the enterprise.

16. Defendant Altman, who resides in the State of California, is at present now a partner at Quill & Arrow LLP, and previously was the founder and member attorney of ALG. Plaintiff is informed and believes, and thereon alleges, that at all relevant times herein, Altman personally and knowingly participated in the unlawful activities alleged herein, including, but not limited to, by knowingly making and/or allowing the

creation of fraudulent entries for time not actually worked for the financial benefit of the enterprise.

17. Defendant Wirtz Law is a law firm with offices at 24370 La Jolla Village Drive, Suite 800, San Diego, CA 92122; 10866 Wilshire Boulevard, Suite 1200, Los Angeles, CA 90024; and 384 Forest Ave, Suite 17, Laguna Beach, CA 92651. Wirtz Law APC is, and was at all material times herein, qualified to do business in California. Plaintiff is informed and believes, and thereon alleges, that at all relevant times herein, Wirtz Law APC personally and knowingly participated in the unlawful activities alleged herein, including, but not limited to, by knowingly making and/or allowing the creation of fraudulent entries for time not actually worked for the financial benefit of the enterprise.

18. Defendant Wirtz, who resides in the State of California, is the founder and managing attorney of Wirtz Law. Plaintiff is informed and believes, and thereon alleges, that at all relevant times herein, Wirtz personally and knowingly participated in the unlawful activities alleged herein, including, but not limited to, by knowingly making and/or allowing the creation of fraudulent entries for time not actually worked for the financial benefit of the enterprise.

**Additional Members of the Enterprise**

19. Mikhov and KLG also engage, coordinate, and conspire with a consortium of other Defendants, retained experts, and legal professionals, including other law firms and attorneys who are brought in as co-counsel to handle trial work on purposefully overstaffed cases. These plaintiff lawyers, often numbering ten to fifteen lawyers for one case or set of plaintiffs, work in tandem to misrepresent the tasks completed and the amount of time spent on cases, and regularly split the proceeds unlawfully obtained through that process based on false and fraudulent billing records. KLG enters into oral agreements with these plaintiff lawyers, in which the plaintiff lawyers KLG brings on must pay KLG a referral fee (in violation of the California Rules of Professional Conduct), based on a formula KLG created and calls the Attorney Fee Breakdown.

20. Attorney A is a member of Law Firm 1, located in Los Angeles, California. Attorney B is a member of Law Firm 2, located in Los Angeles, California. Law Firm 1 and Law Firm 2 shared office space with KLG and ALG during many of the years of the enterprise's operation, and Attorney A and Attorney B worked with KLG and ALG on numerous Lemon Law cases. Attorney A engaged in facially fraudulent billing of more than 24 hours in one day on at least five different occasions, and presumptively fraudulent billing of more than 20 hours in one day on at least 12 different occasions. Other attorneys at Law Firm 1 engaged in facially fraudulent billing of more than 24 hours in one day on at least three different occasions, and presumptively fraudulent billing of more than 20 hours in one day on at least six different occasions. Attorney B and Law Firm 2 engaged in facially fraudulent billing of more than 24 hours in one day on at least one occasion, and presumptively fraudulent billing of more than 20 hours in one day on at least five different occasions. On information and belief, Attorney A, Attorney B, Law Firm 1, and Law Firm 2 (collectively, the "Unnamed Enterprise Members") submitted fabricated or artificially inflated timesheets at the direction of Mikhov, KLG, and other members of the enterprise.

## JURISDICTION AND VENUE

21. This Court has federal question jurisdiction in this matter pursuant to 28 U.S.C. § 1331. This matter arises out of violations of the RICO Act, 18 U.S.C. §§ 1961 et seq. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions by Defendants giving rise to the claims occurred in this District.

## GENERAL ALLEGATIONS

### I. BACKGROUND

#### A. KLG's Fraudulent Billing Scheme

22. This action centers on Defendants' criminal scheme to extract astronomically inflated fee payments based on false and fraudulent billing records in Lemon Law cases throughout California. Defendants' submission of fictitious billing

records over many years, among other actions, constituted a pattern of multiple related acts of mail fraud, in violation of 18 U.S.C. § 1341, and wire fraud, in violation of 18 U.S.C. § 1343.

23. California's "Lemon Law," the Song-Beverly Consumer Warranty Act, Civil Code §1790 *et seq.*, provides for the recovery against car manufacturers of "the aggregate amount of costs and expenses, including attorney's fees based on *actual time expended*, determined by the court to have been reasonably incurred by the buyer" in connection with an action under the statute. Cal. Civ. Code § 1794(d) (emphasis added). Counsel for the party seeking the benefit of the Lemon Law's fee-shifting provisions in court must submit a fee application that is supported by competent evidence, including timesheets and other billing records, reflecting work actually performed on behalf of the car buyer. The fee applicant has the burden of showing that its requested fees are reasonable.

24. Unbeknownst to Ford or the courts, Defendants exploited the Lemon Law by submitting fake time records created in thousands of warranty claim cases asserted against Ford and other automakers, seeking millions of dollars in compensation for work that was never performed. Defendants participated in the fraudulent billing scheme knowingly and with the intent to deceive and defraud Ford for their benefit. In doing so, Defendants knowingly and intentionally made misrepresentations to Ford and to numerous courts about their fictitious billing records. These misrepresentations, coupled with Defendants' knowing fraud through the submission of sham records, stripped the fee application process of its legitimacy. This unlawful conduct concealed from the courts and Ford that Defendants sought fictitious fees based on false billing records stemming from their fraudulent billing practices—records on which courts and Ford relied because of Defendants' intentional misrepresentations and fraud—thereby harming Ford's business and property interests by causing Ford to pay more than $100 million for Defendants' sham legal fees and to expend significant resources to detect and now attempt to end this fraudulent criminal enterprise, as well as by damaging

Ford's reputation and goodwill. Defendants' shared objective was and is to rake in many millions of dollars of legal fees each year without regard for the actual nature, extent, or value of the work performed.

25. Specifically, from 2015 through the present, to further their fraudulent scheme against Ford and other auto manufacturers, Defendants have routinely prepared and submitted false and fraudulent time records in Lemon Law cases, to extract larger amounts of fees and costs than those to which they were entitled, and Defendants repeatedly received and accepted funds that were in effect and in actuality *stolen* from Ford based on those false and fictitious time records.

26. In or around October 2024, Ford learned that KLG's representatives had made formal statements admitting that, during much of the preceding decade, KLG had not prepared or recorded *any* contemporaneous time records. KLG's representatives admitted that KLG began keeping contemporaneous time records in 2018 and that all purported time entries prior to that date were generated after the fact—often years after the purported work in question—to support KLG's fee demands against Ford and other auto manufacturers. Before learning of those admissions in 2024, although Ford had begun investigating apparent specific instances of overbilling by KLG where 24+ hour days and other irregularities had called particular timesheets and their corresponding payments into question, Ford did not know, and had no way of discovering, that until relatively recently virtually ***every*** single time entry in KLG's purported time sheets, records, and fee motions was fictitious—and that virtually ***every*** payment based on all such time entries had been obtained by fraud, regardless of whether Ford had been able to identify any specific suspicious time entry related to such payment.

27. Faced with Ford's demand for contemporaneous time records, KLG could have forthrightly acknowledged to Ford and to the federal and state courts that were overseeing and deciding the fee motions and related requests that KLG had not maintained any such hourly time records during the years in question. KLG could also have sought the approval of Ford and the courts to utilize some alternative acceptable

method of calculating reasonably incurred attorneys' fees that were proportionate to the cases in question. Instead, however, KLG and the other enterprise members chose to lie, to fabricate evidence, and to use the mails and the wires to commit fraud.

28. KLG assembled a team of employees, overseen by Becerra, for the specific purpose of deceiving Ford, other auto manufacturers, and the courts by secretly creating purported time entries and billing records for thousands of cases and often years after the work in question allegedly had been performed. The time records that Becerra and her team created included purported records not only for KLG attorneys, but for Altman, Wirtz, and their respective firms. Those attorneys then knowingly used the fabricated records to support their claims for attorney's fees, repeatedly misrepresenting to Ford and to the courts that all time billing entries were completed contemporaneously with or near in time to the work performed. Defendants accordingly failed to provide Ford and the courts with truthful evidence showing the actual time, dates, and attorneys for work on Lemon Law cases, and the payments made by Ford to comply with court determinations and settlements were based on Defendants' fabricated and untrue evidence and were tainted, unearned, and unwarranted. In short, Defendants' systemic intentional misrepresentations, perjury, and fraud upon the courts and upon their litigation opponent, Ford, deprived the underlying fee litigations of their legitimacy and rendered them as fraudulent shams.

29. Becerra created the fictitious and fraudulent billing records at the direction of Mikhov, Kirnos, Morse, Altman, and Wirtz, all of whom were paid portions of the money KLG obtained from Ford and other automobile manufacturers as a result of the fraud.

30. In separate lawsuits, both of which settled in or around March 2022, Law Firm 1 and Law Firm 2 alleged that KLG artificially inflated its invoices to recover a disproportionate share of attorneys' fees awarded by courts. These lawsuits also revealed complicated, undisclosed, and unethical referral arrangements between KLG

and the plaintiff lawyers with which it engages as trial counsel, in which trial counsel must pay KLG a referral fee.

31. On information and belief, when KLG received timesheets from co-counsel—including Wirtz, Wirtz Law, Altman, ALG, Attorney A, Attorney B, Law Firm 1, and Law Firm 2—it further manipulated those timesheets by fraudulently increasing the already inflated number of hours claimed by those other lawyers.

32. Over the past ten years, Defendants have submitted fraudulent and unlawful billing records to extract fee payments from Ford totaling more than $100 million for purported legal work on behalf of car buyers. It is now clear that the great majority of Ford's payments to KLG and its co-conspirators were attributable to fraudulent time records, many or most of them made up years after the fact.

33. Defendants intended that Ford rely, and Ford did reasonably rely, on Defendants' fraudulent billings in paying false, inflated, and fabricated fees associated with fraudulently obtained fee awards and settlements.

34. Ford has reviewed thousands of KLG's billing invoices and time records for the years 2013-2024, which Ford believes represent approximately 10% of all consumer warranty cases that Defendants handled during that time. Despite Ford having had access to only this small percentage and sampling of billing records submitted by Defendants, an analysis of the records included in that sampling reveals a gamut of obviously made-up work and physically impossible working hours and appearances that stand as irrefutable evidence of Defendants' fraudulent billing practices. The false and inflated time entries only can be discerned and detected when thousands of time entries from hundreds of timesheets across scores and scores of different cases are all entered into a spreadsheet. Examples include, but are not limited to:

(a) Numerous instances of attorneys purportedly working over 24 hours in a single day;

(b) Multiple attorney "appearances" simultaneously at full-day depositions and trials in different geographic locations;

(c) Duplicative billing of the same vague task descriptions across multiple cases for comparable amounts of time; and

(d) More than 1,200 no-date entries for clerical tasks performed by Mikhov, as well as equally suspicious dated entries.

### 1. Defendants Repeatedly Billed Between 24 and 57.5 Hours Per Attorney in a Single Day

35. Defendants electronically filed and submitted to Ford false and fabricated billing records purporting to reflect that individual attorneys had worked more than 24 billable hours a day on numerous occasions—a literal impossibility. Even greater is the number of days on which individual attorneys claim to have worked 20 or more billable hours. This raises an inference of a widespread pattern that cannot be explained away as occasional and innocent record-keeping lapses.

36. Despite Morse having testified under oath that most of her work is administrative and supervisory and thus she only rarely bills ***any*** time, time entries were submitted reflecting that Morse worked more than 24 hours a day on 34 separate occasions, including an astounding 57.5-hour workday on November 30, 2016, and 31.3 hours on March 23, 2017. Billing records also claimed that Morse worked between 20 and 23.9 hours a day on 38 separate occasions.[2] During one three-month period (February-April 2017), Morse averaged 483.7 hours a month (with a high of 513.1

[2] As noted, these figures are based on examination of only a small sample of billing records submitted by Defendants, who concealed their fraud by spreading their billings across a large number of cases and auto manufacturers. When other billing records (including those submitted against other auto manufacturers) are obtained in discovery, Ford anticipates that the number of 20+ and 24+ hour days purportedly worked by Morse, other Defendants, and other unnamed members of the enterprise will increase exponentially.

hours in March 2017) for an average of 16.5 hours a day in that month (including weekends).

37. The magnitude of Defendants' fraud grows exponentially when looking at Morse's time in year-long chunks. In 2016, she billed an astronomical 3,106.45 hours—and that is only on the small sampling of cases for which Ford has billing invoices it can review. In 2017, Morse was even more prolific, billing an eye-popping 3,975.40 hours—again, based only on the limited subset of cases for which Ford has billing invoices available. Yet Morse testified that from 2016 and on she worked 60 hours per week and between 70-80% of her working time was dedicated to non-billable administrative and supervisory work. Assuming that Morse worked 60 hours per week every week of the year, and making the most generous assumption that only 70% of her time was non-billable, she would have billed a maximum of 936 hours a year—less than 25% of the time shown on Ford's limited subset of her fraudulent time records for 2017 alone. Ford has every reason to believe that the actual number of hours billed by Morse (and all other enterprise Defendants) to auto manufacturers across the board is significantly higher, potentially by a factor of 10.

38. Notably, Morse did not participate in any trials during this time; rather, according to her billing records, she spent her time drafting and reviewing discovery and pleadings, even though she testified that between 0-5% of her total time worked involved drafting legal documents. Moreover, Defendant Altman, who shared office space with KLG, has told Ford that Morse was not a "burn the midnight oil" type of lawyer and generally worked more of a 9-to-5 schedule.

39. Not surprisingly, KLG has admitted that Morse's claimed time entries were fabricated. In 2024, KLG's representatives confessed that, when secretly creating after-the-fact time records to submit to Ford—records that thus were fraudulent *per se*—, KLG used Morse as a "catch-all" for listing discovery tasks in the form of thousands of time entries under her name. All or nearly all of these billing entries were false and

fraudulent, as Morse spent the vast majority of her time working on non-billable supervisory work.

40. Other clear patterns emerge when reviewing even the limited collection of invoices available to Ford. Morse was a billing attorney on 95% of the cases Ford has been able to review. She was the billing attorney on 92% of the entries for "Draft Complaint"—totaling more than 450 entries and nearly 350 hours, even though she testified that between 0-5% of her total time worked was billed for drafting legal documents. From 2016-2024, she made more than 4,600 distinct entries with the description "Communicate with Client," totaling nearly 1,150 hours, even though she testified that she never billed or recorded ***any*** time for client communications. Based on the information available to Ford—including the statements of KLG's representatives and Morse's own sworn testimony—each of these entries is entirely manufactured and fraudulent.

41. Kristina Stephenson-Cheang, an associate with KLG, is second only to Amy Morse in the number of 24+ hour-days—seven—she has billed. On July 6, 2017, Stephenson-Cheang billed 34.1 hours; on July 14, 2017, Stephenson-Cheang billed 25.4 hours; on August 16, 2017, Stephenson-Cheang billed 25.6 hours; on August 21, 2017, Stephenson-Cheang billed 24.5 hours; on November 14, 2017, Stephenson-Cheang billed 28.7 hours; and on December 4, 2017, Stephenson-Cheang billed 28.6 hours. As with Morse, Ford has been able to review only the small sampling of cases for which it has time entries from Stephenson-Cheang, and the true number of 24+ hour days billed in her name is undoubtedly much larger. Stephenson-Cheang was a billing attorney on 90% of the cases Ford has been able to review.

42. Unless the laws of time and space operate differently at KLG's offices than elsewhere in the universe, these billings are conclusive evidence of fraud. Yet these obviously fraudulent and falsely inflated billing records were used, and continue to be used, to support Defendants' extraction of payments for fictitious fees. Although Defendants attempted to conceal these and other fraudulent time entries by

spreading them across different payor auto companies and different plaintiffs so that each individual fee application would appear innocuous in isolation, KLG's admission that it kept ***no*** contemporaneous time records prior to 2018 (despite representing the contrary under oath to Ford and to the courts) means that ***every one*** of its billing records that included pre-2018 entries (as well as many artificially inflated records covering later periods) was fraudulent.

**2. <u>Defendants Purportedly Appeared for a Full Day's Work at Two Different Locations in a Single Day</u>**

43. Further evidencing the after-the-fact fabrication of time records and other schemes to defraud Ford and the courts, Defendants also represented that attorneys made full-day appearances in different locations on the same day. For instance, KLG filed billing records indicating that Wirtz billed an impossible 29 hours on July 24, 2018 to attend two trials in two different jurisdictions on the same day—as much of a physical impossibility as a 57.5-hour day. Specifically, Wirtz billed 16 hours that day to prepare for and attend the *Jordan v. FCA US LLC* trial in Alameda County Superior Court while also billing 13 hours that same day to travel to and attend the *Choi v. BMW* trial in Los Angeles County Superior Court, approximately 400 miles away.

44. Similarly, on July 18, 2018, Wirtz Law attorney Amy Smith billed 13.5 hours to prep/attend the *Choi* trial in Los Angeles and 11.2 hours on the *Jordan* trial in Alameda, while also managing to bill 0.7 hours to a third case—a total of 25.2 hours in a single day.

45. As a third example, on April 26, 2018, an attorney with Law Firm 1, whose time entries are included in fee applications filed by KLG and other firms, billed 15.25 hours in *Smith v. FCA US LLC*, Sacramento Co. Case No. 34-2016-00192381-CU-BC-GDS, to travel to and attend a settlement conference in Sacramento while also

billing 5.25 hours in *Orozco v. FCA US LLC*, Los Angeles Co. Case No. BC658214, to take a deposition in Long Beach, approximately 400 miles away.[3]

**3. The Same Tasks Were Fraudulently Billed for the Same Amounts of Time Across Multiple Separate Cases and Timekeepers**

46. Whether as a result of after-the-fact fabrication of time and billing records or of contemporaneous padding of those records (or both), Defendants generate substantial phantom legal fees by billing for the same repetitive tasks across a multitude of cases at the same time. As an example, attached as Exhibit A is a chart of 489 task descriptions in which an attorney billed to draft a meet-and-confer letter and perform unspecified legal research. There is no plausible reason why those two separate tasks should so frequently be combined other than to mask the time actually spent on the two tasks. In this chart, the unspecified legal research masks the time actually billed for drafting identical or substantially similar meet-and-confer letters. The chart is in chronological order and shows days and periods of time when many letters were drafted without any economy of scale reduction in time allotments. Not surprisingly, these entries overlap with the 24-plus hour days described above. For example, Morse allegedly drafted/researched four letters on March 10, 2017, for which she billed 4.0 of her total 28.0 hours. This is consistent with KLG's statements that, when it created time records years after the fact for scores of cases at a time, KLG used Morse as a "catch-all" for discovery-related time entries without regard to whether she had actually performed the described work. But based on Morse's own testimony that she never

[3] Although the cases cited in paragraphs 41-43 involved auto manufacturers other than Ford, and thus the fraudulent billings in those cases did not harm Ford, the physical impossibilities reflected in those billings are presented here as further facial evidence of Wirtz Law's, Law Firm 1's, and the other Defendants' participation in the enterprise's pattern and practice of fabricating and padding time records, which *did* harm Ford as alleged herein. The full scope of the harm caused to Ford by the enterprise's fraudulent scheme will become clear only through discovery of records in Defendants' exclusive possession.

drafted or responded to meet-and-confer letters after 2016, every one of these entries is fraudulent.

47. Another example of such repetitive billing is the chart attached as Exhibit B of 596 fee entries submitted by Defendants for "drafting RFAs [Requests for Admission]." As with the meet-and-confer letter entries described above, the chart demonstrates that there are no economies of scale over time and that certain timekeepers, especially Amy Morse and Kristina Stephenson-Cheang, billed to draft (presumably substantially identical) RFAs day after day for extended periods of time. Overbilling for RFA drafting contributed to the 24+ hour days, including 12.9 hours of Amy Morse's 57.5 hours billed on November 30, 2016—which, again, is consistent with KLG's statements that it billed Ford for Morse's purported time on discovery tasks without regard to whether or not she had ever actually performed any such tasks.

48. Defendants also fraudulently bill the same work through separate law firms and/or timekeepers. For example, in *Torres v. Ford Motor Co.*, Central District of California Case No. 2:18-cv-07983-SB-AS, after the case settled in 2021, both KLG and Wirtz Law provided invoices during the meet-and-confer process before filing their fee motions. Wirtz Law's invoices reflected that Daniel Inscore of Wirtz Law incurred time for preparing for, traveling to, and attending the deposition of Ford's expert in November 2019. KLG's invoices reflected that Deepak Devabose of KLG incurred time for those exact same tasks. KLG's time entries showed three separate entries for a combined total of 8.5 hours, and Wirtz Law's time entries showed four separate time entries for the same work totaling 18.6 hours. After these entries were flagged during the meet-and-confer process, Mr. Devabose's time was removed. Mr. Inscore submitted a declaration on August 6, 2021 with Wirtz Law's reply brief that explained he "alone took that deposition" and that the court reporter incorrectly put Mr. Devabose's name in the transcript. While this time was ultimately removed, this is further evidence that time was added to the invoices for work that was entirely made-up, whether because KLG

was still not keeping contemporaneous time records or because it was padding those records in the hope that Ford would not notice the same entries across multiple firms.

49. These and similar fraudulent time entries have continued to be used to make false claims for legal fees, including as recently as August 2025.

50. The continuity between Altman, Wirtz, their firms, and KLG runs deeper than similar fraudulent billing practices. Defendants routinely cross-billed, meaning Wirtz, Altman, and their firms' attorneys would have time billed through KLG billing invoices. For example, KLG billed for the time of at least six lawyers from Wirtz Law in a number of cases. Similarly, the time of at least four Altman firm attorneys was billed directly on KLG invoices across multiple cases. And in at least one instance, the time from a KLG attorney was reflected in billings submitted by the Altman firm.

**4. Defendants Rely on Undated and Form Time Entries as Part of Their Fraudulent Billing Scheme**

51. Billing records submitted by Defendants include other entries that are belied by the realities of practice. For example, Mikhov, who on information and belief has never first-chaired a trial and did not try cases for KLG, submitted hundreds of invoices that contain fee entries with no date. Such no-date entries exceed 1,200 hours, and the corresponding fees billed exceed $625,000.00. Nearly all entries are a combination of (i) initial communication with client, (ii) initial evaluation of client's claims, and (iii) analysis of vehicle documents. The entries describe identical tasks with only slight wording differences. These and other similar time entries are fully consistent with KLG's admission to having created time records from scratch often years after the fact—time entries that KLG continued to use to assert fraudulent claims for legal fees as recently as September 2022.

52. Mikhov's dated time entries are equally implausible and consistent with padding and/or outright fabrication. For example, in 2016, Mikhov himself was KLG's second-highest biller, totaling 1,350.10 hours just in the smattering of cases for which

Ford has invoices. Mikhov's time surged in 2017, when he logged 1,799.00 hours—again in only the limited subset of cases for which Ford has invoices.

53. Based on records currently available to Ford, from 2016 to 2025, Mikhov made 487 separate entries for "Initial communications with client and evaluation of clients' claims" totaling approximately 518.6 hours. Of note, 388 of these entries were for either exactly 1.0 hours (286 entries) or 0.8 hours (102 entries). Additionally, over this same time period, Mikhov made 2,002 entries (577 of which were undated) for "Communicate with Client" totaling approximately 554 hours. Mikhov also made vague entries for "analyze vehicle documentation" on all or nearly all of the matters in which Morse fraudulently billed for "Draft Complaint." Specific date logs likewise suggest fraud; on July 31, 2017, Mikhov billed a total of 18.1 hours that included 84 separate entries in 59 separate cases. These entries appear to be entirely manufactured and fraudulent, particularly in light of the recent admission that KLG kept no time records at all in 2017.

54. Mikhov was not alone in his use of "canned" and facially suspicious time entries. For example, Altman billed 0.7 or 0.8 hours on nearly every case for "Reviewed case file, documents, repair orders, discovery," regardless of the actual volume of discovery or complexity of the case.

### B. Defendants Concealed and Lied About Their Fraudulent Scheme in Furtherance of the Enterprise

55. Attorneys, in California as in every state across the country, are explicitly required to conduct themselves with dignity, courtesy, and integrity as officers of the court. An attorney seeking to practice in California is required to take an oath to that effect. Cal. Rules of Court, R. 9.7.

56. Defendants abused their positions of trust as members of the Bar to deceive the courts and Ford by submitting thousands of fee records that appeared genuine on their face but are clearly false and fraudulent when viewed alongside other records submitted for work on the same day, as well as in light of KLG's 2024 admission to not

having kept any contemporaneous time records prior to 2018 and to having created such records often years after the fact—records that Defendants falsely represented to Ford and to the courts to be contemporaneous and accurate.

57. The key to Defendants' fraudulent billing scheme is submitting time records that do not appear fraudulent when reviewed in isolation in a particular matter. Because there are no red flags to alert the courts or the victims to audit the daily time entries for every day over a decade across all cases against all automakers for all of the Lemon Law lawyers in the enterprise, including multiple law firms (even assuming courts and victims had all the information needed to do so, which they do not), courts have been deceived into awarding fees against Ford, and Ford has settled fee claims (as well as overpaid to resolve consumers' pre-litigation and post-litigation claims even before fee applications are made), based on those fraudulent fee applications.

58. In May 2020, Kirnos, a partner at KLG (and also Mikhov's half-brother), admitted that he expected the court and Ford to rely on Defendants' representations regarding fees. During an oral argument regarding KLG's fee application in an MDL action, *Mark Pedante v. Ford Motor Company et al.* (ML 18-02814-AB), Kirnos stated: "There is a presumption attached to our billing because there is a presumption that we are going to be ethical, that we are not going to submit lies to this Court. And we did not." Kirnos—whose criminal record includes a conviction for providing false statements to a police officer—went on to implore the Court to rely on that presumption on the basis that Defendants obviously would not violate their ethical duties when submitting fee applications to the Court. Even while making these representations, Kirnos knew that he and the other Defendants were in fact engaging in repeated and blatant violations of their ethical duties and committing criminal acts to line their own pockets, including but not limited to having fabricated years of time records in countless cases—**including the *Pedante* case itself**, which predated the time when KLG claims to have begun keeping contemporaneous time records—and having falsely represented to multiple courts under oath that those records were contemporaneous, reasonable and

accurate. And in *Reynolds v. Ford Motor Company* (2020), Defendants likewise succeeded in persuading trial and appellate courts that they should not analyze the ethics of Defendants' fee agreements with their clients—including improper "double-dipping" collection of statutory and contractual contingent fee recoveries—further shielding their unlawful behavior from discovery.

59. While certain instances of Defendants' inflated bills that might be attributable to one attorney's or firm's overzealous conduct did not go entirely unnoticed by courts in some matters on a case-by-case basis, Defendants were successful in concealing the massive (and, indeed, all-encompassing) scope of their coordinated fraud as a broader enterprise by passing it off as mere "overstaffing" and routine inefficiencies. In a Lemon Law case in 2020, *In re Volkswagen "Clean Diesel" Marketing*, Sales Practice and Prod. Liab. Litig. (MDL No. 2672 CRB (JSC)), the court found that KLG, ALG, and others filed applications seeking compensation for work that was not in fact conducted on behalf of the clients involved in the fee application. United States District Judge Charles R. Breyer ordered reduction of the requested attorneys' fees by 50-90% for certain categories of tasks. The court stated that the plaintiff lawyers "likely overstaffed this case" and that "[o]ther courts have applied reductions when Knight Law Group's staffing practices appear to have led to inefficiency." The court noted "the enormous number of hours attributed to these Plaintiffs' cases while they were stayed." The court completely excluded bills for vague entries and clerical tasks, as well as work performed for other plaintiffs, not involved in the fee application, whose cases actually went forward to trial. However, because the court was looking only at the fee applications in a single case and had no way of knowing that the lawyers appearing before it had secretly fabricated time records out of whole cloth years after the fact, it was unable to discern the true nature of the fraudulent enterprise that Defendants concealed by spreading their fictitious billings across multiple clients, cases, and law firms.

60. Reflecting the ongoing and self-perpetuating nature of the criminal enterprise, Defendants use the successes they achieved through their fraudulent acts to conceal and lend a cloak of legitimacy to their further fraudulent acts. KLG routinely touts its success in having fee motions granted by both state and federal judges, exploiting the respect those jurists had among their fellow members of the bench to avoid scrutiny of their fraudulent billings and further conceal the scheme. As just two of many examples, Mikhov and Kirnos signed declarations in August 2021 and November 2023, respectively, attaching multiple fraudulently obtained fee awards and identifying more than a dozen judges—including judges of the Central District of California and the Los Angeles Superior Court—who had approved fees for billings by Mikhov, Morse, Stephenson-Cheang and others. *See* Exhibit D at ¶¶ 48-94; Exhibit E at ¶¶ 35-58; *see also* Exhibit F at ¶¶ 47-104; Exhibit G at ¶¶ 56-90; Exhibit H at ¶¶ 54-122; Exhibit I at ¶¶ 50-89; Exhibit J at ¶¶ 68-72. The fee payments Defendants obtain based on their fraudulent billing records thus create a snowball effect by leading to less scrutiny of their time records, which in turn facilitates more fraud and even higher fraudulently fee payments.

61. Further demonstrating how Defendants' fraud fed on itself to perpetuate the ongoing enterprise, Defendants' success in defrauding judges and fraudulently obtaining outsize fee payments based on false billing records led Ford and, on information and belief, other auto manufacturers to make the rational business decision to overpay in settlement of Lemon Law cases—not just for attorneys' fees, but for compensatory damages and civil penalties as well—regardless of the merits of the individual case. The fees claimed by Defendants often far exceeded—sometimes by a factor of 10—the amount in dispute. Outsize fee payments disincentivize auto manufacturers from proceeding to fee hearings and encourage them to pay inflated settlement values. Even prelitigation settlement offers involving minimal attorneys'

fees and before case facts are even developed end up artificially inflated as a direct result of Defendants' fraudulent billing records.

**C. <u>Defendants Intensified Their Fraudulent Scheme Over Time</u>**

62. Since 2015, Defendants have filed over 5,000 breach of warranty cases against Ford and other car manufacturers and have filed hundreds of fee applications in connection with those cases.

63. Defendants' fraudulent scheme has expanded over time. In the years 2021 through 2024, KLG alone obtained fee awards from Ford totaling approximately $35 million, with a substantial portion of that sum likely resulting from false, inflated, and wholly fabricated billing records.

64. Moreover, Ford is not the only automaker in Defendants' crosshairs. Defendants have filed numerous cases against other automakers including GM, Fiat Chrysler Automobiles/FCA, Volkswagen/Audi, and BMW, among others. Based on a review of only a small sample of such fee applications, Ford believes that these automakers are also victims of Defendants' scheme to defraud.

65. While Defendants have long pursued this fraudulent billing scheme to enrich themselves—including bankrolling their lavish vacations, opulent homes, and use of private jets at their clients' expense—this lawsuit is the *only* thing that has even partially caused Defendants to abate their criminal activity. As just one example, on May 22, 2025—the day after Ford filed its complaint—KLG submitted time records reflecting time billed by Morse in *Solisperez v. Ford*, Los Angeles Superior Court Case No. 23PSCV01411. In what appears to be an acknowledgment that such time was never actually incurred and was instead (like most of Morse's other purported "time") invented at the case's conclusion to increase Defendants' financial windfall, KLG later submitted a "supplemental" billing invoice that removed the time purportedly billed by Morse. Since Ford filed this lawsuit, KLG has begun withdrawing requests for payment for time entries purportedly made by Morse (and other KLG attorneys) in other cases as well—against both Ford and other auto manufacturers—reflecting KLG's and its

members' and employees' ongoing efforts to cover their tracks and conceal their fraudulent conduct in furtherance of the continuing enterprise.

## II. <u>DEFENDANTS USED INTERSTATE WIRES AND U.S. MAIL TO DEMAND AND RECEIVE FALSE, FRAUDULENT, AND INFLATED FEE PAYMENTS</u>

66. Defendants used the U.S. mail and interstate wires to make fraudulent court filings, to negotiate settlements, and to receive payments pursuant to fraudulent billing records based on falsified time entries submitted in support of fee applications, all in furtherance of their scheme to defraud Ford of its money.

67. For example, by order dated July 19, 2018 and filed on July 31, 2018, in *Buck v. Ford Motor Company*, Superior Court of California, Stanislaus County, Case No. 2008745, the Court ordered Ford to pay attorneys' fees, costs, and expenses totaling $135,500.00 based on fraudulent billing records filed by KLG that included false billing entries by Morse for March 23, 2017 (on which date she billed at least 31.3 hours). By letter dated July 24, 2018 addressed to Mikhov and sent by FedEx, Ford enclosed a check in the amount of $135,500.00 payable to KLG. Similarly, by judgment entered on August 31, 2018 in *Duk v. Ford Motor Company*, Superior Court of California, San Diego County, Case No. 2016-00012779, the Court ordered Ford to pay attorneys' fees, costs, and expenses totaling $101,450.78 based on fraudulent billing records filed by KLG that included billing entries by Morse for November 30, 2016 (on which date she billed at least 57.5 hours). By letter dated October 1, 2018 addressed to Mikhov and sent by FedEx, Ford enclosed a check in the amount of $101,450.78 payable to KLG. In addition to the fee awards in the *Buck* and *Duk* cases, Morse's fraudulent billing records also were used to support fee awards in the following cases, among others: (a) fee award in the amount of $10,675.16 in *Burgess v. Ford Motor Company*, San Bernardino Co. Case No. CIVDS1620111, paid by check dated October 9, 2018 payable to KLG and sent by FedEx; (b) fee award in the amount of $12,405.20 in *Duenas v. Ford Motor Company*, Los Angeles Co. Case No. BC638306, paid by check dated

August 15, 2018 payable to KLG and the plaintiff and sent by FedEx; and (c) fee award in the amount of $15,005.00 in *Orosco v. Ford Motor Company*, Los Angeles Co. Case No. BC638222, paid by check dated October 12, 2018 payable to KLG and sent by FedEx. Each of the *Buck*, *Duk*, *Burgess*, *Duenas*, and *Orosco* cases included time entries that KLG has admitted were false and fraudulent because they predated the time when KLG claims to have begun keeping contemporaneous time records.[4]

68. When satisfying judgments and settlements pursuant to Defendants' inflated fee applications for cases in which KLG had associated with another firm, Ford often would make a single payment via check to both KLG and the other firm, and, as a common practice, KLG endorsed and deposited these checks without an additional signatory from the other firm. For instance, in *Santillo v. Ford Motor Company*, San Diego Co. Superior Court Case No. 37-2017-11591, pursuant to a Notice of Ruling dated February 27, 2019 that was based on Defendants' submission of fraudulent billing records, Ford submitted a payment to KLG and Law Firm 2 in a single check for $35,630.21, sent on March 27, 2019 by FedEx. The check was later endorsed and deposited by KLG only without a signature from Law Firm 2. The *Santillo* case included time entries that KLG has admitted were false and fraudulent because they predated the time when KLG claims to have begun keeping contemporaneous time records.

69. Similarly, in *Beltran v. FCA US LLC*, Los Angeles Co. Superior Court Case No. BC617905, KLG received a single check for $23,179.10 on September 27, 2019, even though Wirtz Law and Wirtz billed time on the matter. In *Vargas v. FCA*

[4] Morse's fraudulent billing records were also used to support successful efforts to extract fee payments in cases involving other auto manufacturers, including, among others: (a) fees in the amount of $106,560.55 in *Vargas v. FCA US LLC*, Orange Co. Superior Court Case No. 30-2016-00845431-CU-BC-CJC, paid by check dated July 26, 2018 and sent to Dorothy Becerra by FedEx; and (b) fees in the amount of $23,179.10 in *Beltran v. FCA US LLC*, Los Angeles Co. Case No. BC617905, paid by check dated September 10, 2019 and sent by FedEx.

*US LLC*, Orange Co. Superior Court Case No. 30-2016-00845431-CU-BC-CJC, KLG received a single check for $106,560.55 on July 26, 2018; at KLG's direction, this check was addressed to Dorothy Becerra. Wirtz billed time as of counsel *for KLG* on this case. The above checks in the *Beltran* and *Vargas* cases were sent by FedEx as payment based on fraudulent billing records. These cases each included time entries that KLG has admitted were false and fraudulent because they predated the time when KLG claims to have begun keeping contemporaneous time records.

70. On other occasions, multiple firms received checks for payments extracted as a result of demands based on fraudulent billing records. For instance, in *Berroteran v. Ford Motor Company*, Los Angeles Co. Superior Court Case No. BC542525, ALG and Ford agreed to settle ALG's fee claim for this case for $300,000.00 based on fraudulent billing records. Pursuant to fraudulent billing records submitted in support of a motion for attorneys' fees filed on May 20, 2022, KLG sought $1,226,868.45 in attorneys' fees, costs, and expenses on behalf of itself and other attorneys. Kirnos submitted a false declaration that attached KLG's invoices, which included time entries from him, Mikhov, and Morse. Those time entries, all of which Kirnos swore under oath "were completed contemporaneously with each dated entry or near in time to the work performed," *see* Exhibit F at ¶ 46, were in fact in large part false and fraudulent because they predated the time when KLG claims to have begun keeping contemporaneous time records and included time entries from Morse for work that she has testified she never performed. The court issued a minute order on July 14, 2022, awarding $807,127.50 in attorneys' fees only. Ford sent KLG a check in the amount of $851,493.51 on October 21, 2022 by FedEx.

71. Similarly, the fee application in *Coon v. Ford Motor Company*, Riverside Co. Superior Court Case No. MCC1300767, was based on fraudulent billing records—from KLG, ALG and others—and filed on February 4, 2019. Mikhov submitted a false declaration in support of that application. KLG requested $866,754.00 (including a lodestar enhancement) and ALG requested $433,091.25 (including a lodestar

enhancement). The time records attached to Mikhov's declaration, all of which Mikhov swore under oath "were completed contemporaneously with each dated entry or near in time to the work performed," *see* Exhibit G at ¶ 53, were in fact in large part false and fraudulent because they predated the time when KLG claims to have begun keeping contemporaneous time records and included time entries from Morse for work that she has testified she never performed. On May 19, 2019, the court awarded KLG $543,554.00 in attorneys' fees. Like with the *Berroteran* matter, Ford agreed on January 7, 2022 that it would settle ALG's fee claim for $300,000.00. Ford mailed this check, which was based on fraudulent billing records, to ALG on June 16, 2022, by FedEx. Ford mailed a check to KLG for $709,004.12—also based on fraudulent billing records—on June 16, 2022, by FedEx.

72. The fee application in *Brown v. Ford Motor Company*, Butte Co. Superior Court Case No. 160060, was filed on behalf of KLG, ALG, and others on November 21, 2018, and was based on fraudulent billing records. Mikhov and Altman both submitted false declarations in support of that application. The time records attached to Mikhov's declaration, all of which Mikhov swore under oath "were completed contemporaneously with each dated entry or near in time to the work performed," *see* Exhibit H at ¶ 51, were in fact in large part false and fraudulent because they predated the time when KLG claims to have begun keeping contemporaneous time records and included time entries from Morse for work that she has testified she never performed. KLG sought $807,163.50 (including a lodestar enhancement) and ALG sought $398,887.50 (including a lodestar enhancement). On January 16, 2019, the court awarded $714,233.00 in total attorneys' fees. On June 6, 2022, Ford mailed ALG a check for $300,000.00 by FedEx. Ford mailed a check to KLG for $843,528.13 on July 25, 2022 by FedEx.

73. *Margeson v. Ford Motor Company*, Los Angeles Co. Superior Court Case No. BC549430, is still another example. Like with the *Coon* and *Brown* matters, the fee application—on behalf of KLG, ALG, and others—was submitted years prior, on

December 15, 2017, and was also based on fraudulent billing records. Mikhov and Altman both submitted false declarations in support of that application. KLG sought $523,494.00 in fees, and ALG sought $353,205 in fees. The time records attached to Mikhov's declaration, all of which Mikhov swore under oath "were completed contemporaneously with each dated entry or near in time to the work performed," *see* Exhibit I at ¶ 49, were in fact in large part false and fraudulent because they predated the time when KLG claims to have begun keeping contemporaneous time records and included time entries from Morse for work that she has testified she never performed. On February 1, 2018, the court awarded $741,839.70 in total attorneys' fees, plus prejudgment interest. KLG had an opportunity to correct these misrepresentations in Mikhov's declaration when it filed a reply in support of its fee application on July 22, 2022, but failed to do so. Ford's outside counsel sent ALG a $500,000.00 check on July 26, 2022. Ford's outside counsel sent KLG two checks: one for $136,744.53 on July 26, 2022, and another for $345,000.00 on September 22, 2022. All of these checks were sent on behalf of Ford by FedEx.

74. As another example, the fee application in *Anderson v. Ford Motor Company*, San Joaquin Co. Superior Court Case No. 39-2013-00299512-CU-BC-STK, was submitted on May 28, 2019, on behalf of KLG, Wirtz Law, ALG, and others. Mikhov, Wirtz, and others submitted false declarations in support of that application. The time records attached to Mikhov's declaration, all of which Mikhov swore under oath "were completed contemporaneously with each dated entry or near in time to the work performed," *see* Exhibit J at ¶ 64, were in fact in large part false and fraudulent because they predated the time when KLG claims to have begun keeping contemporaneous time records. KLG sought $740,118.75 (including a lodestar enhancement), Wirtz Law sought $54,348.75 (including a lodestar enhancement), and ALG sought $482,548.13. On May 10, 2022, Ford sent a check to Wirtz Law for $38,270.98; on July 28, 2022, Ford sent a check to KLG for $813,554.48; on July 28, 2022, Ford sent a check to ALG for $225,000; and on February 9, 2023, KLG sent a

check to KLG for $27,664.00. All of these checks were sent by FedEx and were based on Defendants' claim for fees supported by their fraudulent billing records.

75. All of the above checks were sent in reliance on false, fraudulent, and inflated fee applications or billing statements, and were caused by Defendants to be mailed as an essential part of their fraudulent scheme.

## III. FORD HAS SUFFERED AND CONTINUES TO SUFFER SIGNIFICANT HARM FROM THE ENTERPRISE'S FRAUDULENT BILLING SCHEME

76. As a direct and proximate result of Defendants' pervasive fraudulent criminal enterprise built on sham billing records, Ford has paid Defendants more than $100 million. Ford paid fee judgments much larger than it would have paid absent Defendants' fraudulent billing records and abuse of their trusted positions as attorneys. Any uncertainty as to the amount of damages caused by Defendants' massive fraudulent billing scheme has been caused by Defendants' actions, and the true extent of the fraud and resulting damages will only be revealed as Ford assembles additional evidence and through discovery in this matter. For example, while KLG claims it began to keep contemporaneous time records sometime in 2018, further discovery will reveal whether that claim is truthful or just another of KLG's fabrications.

77. In addition to the harm suffered from fraudulently induced payments based on falsified billing records, Ford has been further damaged by the legal fees and other costs it had to incur to detect and now attempt to stop the fraud perpetrated by this criminal enterprise. The evidence presented in this Complaint reflects extensive work by Ford. New evidence continues to emerge as Defendants continue to file additional fraudulent fee billing records in support of fee demands against Ford and other car manufacturers in various jurisdictions. Expensive expert services are needed to untangle the thousands of fraudulent billing entries that Defendants have filed in various jurisdictions. The work to uncover Defendants' criminal enterprise is continuing and is expected to cost Ford many millions of dollars. Such work is necessary only because of

Defendants' calculated efforts to conceal their scheme by spreading their fraudulent billing entries across multiple cases, timekeepers, auto manufacturers, and jurisdictions.

78. Ford has been further damaged by having to participate in a sham and tainted litigation process in connection with Defendants' submission of false and fraudulent billing records in support of fee applications. Defendants misrepresented the amount of time they actually worked, making these misrepresentations to—and thereby perpetrating a fraud on—Ford and the courts. Defendants intentionally and knowingly concealed the fictitious nature of the time entries for which they sought to recover fees, successfully swaying courts to issue fee awards, and causing Ford to pay settlements, for work that had not actually been performed on behalf of Defendants' client car owners. Ford did not know at the time—and could not have known—that the entire proceedings were a farce; as Defendants well knew but concealed from Ford and the courts, the entries did not reflect actual and contemporaneously billed time that may or may not be reasonable, but rather were entirely fictional entries generated without regard to whether the billed tasks were ever performed at all and often years after cases had concluded.

79. Ford has also suffered harm to its reputation and goodwill as a result of Defendants' conduct. In open court and through Facebook posts, blogs, and other forums for summoning negative publicity, Defendants have touted their fraudulently obtained fee payments to onboard new clients, harming Ford's reputation and goodwill.

## IV. THE RICO ENTERPRISE

80. Defendants and the Unnamed Enterprise Members are a group of persons constituting an associated-in-fact enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) (referred to hereinafter as the "Enterprise"), because, among other reasons: (a) those involved have the common purpose to unlawfully operate an ongoing criminal enterprise engaged in fraudulent billing; (b) the Enterprise has an informal governing structure that at certain times operates as a command hierarchy led by Defendants Mikhov and KLG, different roles for members, and a governing set of rules and

practices; (c) each of the Defendants participates in the operation or management of the Enterprise; (d) the Enterprise has enjoyed sufficient longevity and has been in continuous operation for over five years; and (e) the Enterprise has generally been structured to operate as a continuing unit, with membership, rank, privileges, and access constantly maintained by the members, to accomplish the goals of the fraudulent billing scheme.

81. Defendants and the Unnamed Enterprise Members have associated with one another in the Enterprise for the common purposes of preparing and filing fraudulent billing records in support of fee demands, inflating the value of negotiated settlements, unethically splitting fraudulently obtained fees, delaying and/or depriving clients of compensation due to them or increasing their clients' tax liability to advance their own financial interests, and funneling fraud proceeds into attorney distributions and extravagant purchases.

82. ALG, Law Firm 1, and Law Firm 2 all shared office space with KLG during many years of the Enterprise's operation. Personnel from ALG, and on information and belief, from Law Firm 1 and Law Firm 2, attended weekly calendar meetings in KLG's offices during which Morse delegated assignments. Mikhov oversaw the Enterprise's operations and, as noted, expressly directed Altman and ALG—and, on information and belief, other members of the Enterprise—to pad their bills and inflate their fees.

83. At all relevant times, Defendants and the Unnamed Enterprise Members were financially intertwined. KLG received checks on behalf of other plaintiff lawyers and firms associated with the Enterprise and cashed these checks without obtaining proper endorsements. KLG entered into complex agreements with the non-KLG Defendants to structure the distribution of fraudulently obtained proceeds from settlements and fee applications. KLG also advanced funds to ALG and Law Firm 2, and on information and belief, to Wirtz Law and Law Firm 1.

84. At all relevant times, the Enterprise was engaged in, and its activities affected, interstate commerce within the meaning of 18 U.S.C. § 1962(c). Defendants and the Unnamed Enterprise Members are involved in business involving clients in different states, auto manufacturers engaged in interstate commerce, and the federal courts' interstate e-filing system. Many of the cases involved in the criminal scheme are related to multi-district litigation involving lawyers located in different states accessing the federal e-filing system.

85. Each of the Defendants conducted or participated, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5) and in violation of 18 U.S.C. § 1962(c), namely, mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.

## V. <u>THE PATTERN OF RACKETEERING ACTIVITY</u>

86. As described herein, Defendants engaged in an expansive criminal scheme to defraud Ford and obtain payment for fictitious fees in thousands of cases.

87. Defendants engaged in multiple instances of mail and wire fraud as part of their pattern of racketeering activity.

88. The ultimate objective of Defendants' scheme or artifice to defraud was to deceive and coerce Ford into paying them unearned and fraudulently obtained fee judgments and settlements totaling millions of dollars to directly benefit Defendants.

89. In furtherance of their fraudulent scheme, and as described herein and in Exhibit C hereto, Defendants transmitted, or caused to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds, and also caused matters and things to be placed in any post office or authorized depository, or deposited or caused to be deposited matters or things to be sent or delivered by a private or commercial interstate carrier, including, but not limited to, the following:

(a) electronic filing and service of court papers, served on lawyers located in various states, containing false and misleading statements intended to mislead the courts and relevant parties and to obtain Ford's money;

(b) mail service of court papers on lawyers containing false and misleading statements intended to mislead the relevant parties and to obtain Ford's money; and

(c) wires and/or mailings between and among Defendants, or between and among Defendants and Ford or its counsel, containing fraudulent billings and payments therefor.

90. In addition to the acts identified in Exhibit C hereto, and as alleged herein, any document transmitted or caused to be transmitted by Defendants, whether by mail or wire, that contains, incorporates, references, and/or is based on purported entries from any KLG attorney before 2018 constitutes a predicate act of racketeering under 18 U.S.C. § 1341 (mail fraud) or 18 U.S.C. § 1343 (wire fraud) because KLG did not keep any contemporaneous time records during that time but fabricated those records at a later date. Similarly, any document transmitted or caused to be transmitted by Defendants, whether by mail or wire, that contains, incorporates, references, and/or is based on purported post-2016 billing entries for Amy Morse for communicating with client, attending mediations, drafting case management statements, drafting or responding to meet-and-confer letters, and/or communicating with expert witnesses constitutes a predicate act of racketeering under 18 U.S.C. § 1341 (mail fraud) or 18 U.S.C. § 1343 (wire fraud) because Morse has testified that she did not ever perform any of those tasks. As just one example, in *Faulkner v. Ford Motor Company*, Riverside Superior Court Case No. RIC1709381 (transferred to JCCP 4856), KLG submitted a fee application on November 27, 2023 that included *both* pre-2018 purported time entries *and* purported time entries for Morse for work that she has testified she never performed. The predicate racketeering acts falling into these two categories, which are believed to number in at least the hundreds, are too numerous to list in Exhibit C and will be further explored through discovery in this matter. Ford

reserves the right to seek leave to amend Exhibit C to include additional predicate acts as warranted by the evidence.

91. Defendants participated in the scheme or artifice knowingly, willfully, and with the specific intent to deceive and/or defraud Ford into paying Defendants money to which Defendants knew they were not entitled. Defendants knowingly and intentionally prepared false and fictitious billing records and then, knowingly and with the intent to deceive Ford and the relevant courts for the purpose of obtaining Ford's money, caused those false and fictitious billing records to be transmitted to Ford and publicly filed. Defendants colluded with one another to fabricate and pad their time records to inflate statutory fees and settlements with the intent that their false statements be believed. Defendants also colluded with one another to create billing records out of thin air for full cases, after these cases had resolved and sometimes years after the purported work performed, also with the intent that their false records be believed; indeed, when KLG submitted billing records in support of fee motions, KLG's attorneys (typically Mikhov or Kirnos) falsely represented under oath to the court and to Ford that KLG had billed its time contemporaneously. Mikhov and Kirnos also stated repeatedly under oath that the initials "ALM" in KLG's fraudulent billing statements reflected "Ms. [Amy] Morse's billing entries"—another patently perjurious statement given KLG's admission that it used Morse as a "catch-all" for discovery tasks that she never performed and Morse's own testimony that she only rarely billed any time at all after 2016.

92. The attack on Ford was intended to, and did, result in Ford paying inflated fees that benefited the Defendants, which in turn financed the criminal scheme and supported the Enterprise members' jet-setting lifestyles.

93. In a concerted effort to thwart Ford's ability to uncover the truth about the fraudulent billing scheme, Defendants have filed or caused to be filed hundreds of false and misleading documents in various cases with different auto manufacturers.

94. Defendants intended that courts in various jurisdictions rely on, and those courts have relied on, Defendants' false and misleading statements, trusting Defendants

to comply with their ethical obligations as officers of the court. The courts' acceptance of Defendants' fraudulent billings has resulted in numerous inflated fee awards and settlements against Ford.

95. Accordingly, Defendants' submission of fraudulent billings and false and misleading representations in court have caused Ford to suffer substantial damages and reputational harm.

96. The alleged pattern of predicate acts, consisting of scores of acts of mail and wire fraud, are related and continuous and were committed on behalf of an associated-in-fact enterprise that has existed for the purpose of carrying out the fraudulent billing scheme for more than a decade.

**FIRST CAUSE OF ACTION**

**(RICO, 18 U.S.C. § 1962(c))**

**(Against All Defendants)**

97. Ford realleges and incorporates herein by reference each and every foregoing paragraph of this Complaint.

98. At all relevant times, Ford was and is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

99. At all relevant times, each Defendant was and is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

100. As detailed above, Defendants and their co-conspirators are a group of persons associated together in fact for the common purpose of advancing an ongoing criminal enterprise, by submitting fraudulent billing records to obtain fraudulent fee payments for time never actually worked in federal and state cases across California against Ford and other auto manufacturers.

101. Defendants and their co-conspirators are an association-in-fact enterprise as defined in 18 U.S.C. § 1961(4). Each Defendant participated in the operation or management of the Enterprise.

102. At all times alleged herein, the Enterprise was engaged in, and its activities affected, interstate commerce.

103. The Enterprise is likely to continue to engage in racketeering activity in its efforts to collect and protect its ill-gotten gains.

104. Each Defendant conducted or participated, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a "pattern of racketeering activity" as defined in 18 U.S.C. §1961(5).

105. Ford incorporates by reference the attached Exhibit C, which identifies numerous (but not all) specific uses of interstate wire and mail communications advancing the Enterprise's scheme in violation of 18 U.S.C §§ 1341 and 1443.

106. As a direct and proximate result of the Enterprise's pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), Ford has been damaged in its business and property in an amount to be determined at trial, including but not limited to by having to pay more than $100 million due to fraudulent billing statements submitted by Defendants.

107. Pursuant to 18 U.S.C. § 1964(c), Ford is entitled to recover treble damages plus costs and attorneys' fees from Defendants.

## SECOND CAUSE OF ACTION

**Conspiracy to Violate RICO, 18 U.S.C. § 1962(d)**

**(Against All Defendants)**

108. Ford realleges and incorporates herein by reference each and every foregoing paragraph of this Complaint.

109. Defendants have unlawfully, knowingly and willfully combined, conspired, confederated and agreed together and with others to violate 18 U.S.C. § 1962(c) as described above, in violation of 18 U.S.C. § 1962(d).

110. Defendants knew that they were engaged in a conspiracy to commit the predicate acts of mail and wire fraud, and the participation and agreement of each of them was necessary to allow the commission of this pattern of racketeering activity.

111. Each Defendant agreed to conduct or participate, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

112. Each Defendant knew about and agreed to facilitate the Enterprise's scheme to submit fraudulent billing records to state and federal courts to obtain fraudulent fee payments for time never actually worked and to recover more than they were entitled to from Ford. It was part of the conspiracy that Defendants would commit a pattern of racketeering activity in the conduct of the affairs of the Enterprise, including but not limited to the acts of racketeering set forth above and in Exhibit C.

113. As a direct and proximate result of Defendants' conspiracy to violate 18 U.S.C. § 1962(d) and the overt acts taken in furtherance of that conspiracy, Ford has been damaged in its business and property in an amount to be determined at trial, including but not limited to by having to pay more than $100 million due to fraudulent billing statements submitted by Defendants.

114. Pursuant to 18 U.S.C. § 1964(c), Ford is entitled to recover treble damages plus costs and attorneys' fees from Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks a judgment against Defendants awarding the following relief:

1. For an award of general damages in the amount to be determined at trial and estimated to be not less than $100 million, which damages are to be trebled according to the RICO statute, 18 U.S.C. § 1964(c);

2. For pre-judgment interest according to statute;

3. For Ford's reasonable attorneys' fees and costs according to statute, 18 U.S.C. § 1964(c); and

4. Any other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial in this action.

Dated: August 22, 2025

KASOWITZ LLP

By: <u>/s/ *Daniel A. Saunders*</u>

Daniel A. Saunders
Matthew S. Manacek

Edward E. McNally
Daniel J. Fetterman

*Attorneys for Plaintiff Ford Motor Company*

# EXHIBIT A

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 1. | Aandahl, Nancy v. FCA | 11/1/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.80 | $200.00 | $360.00 |
| 2. | Acosta, Richard v. FCA | 12/9/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Deft's Discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 3. | Adams, Robert v. Hyundai | 3/9/2017 | Steve B. Mikhov | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.30 | $500.00 | $650.00 |
| 4. | Aguilar, Gerardo v. General Motors LLC | 9/5/2019 | Natalee Fisher | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.50 | $250.00 | $375.00 |
| 5. | Aguilera, Christina v. FCA | 12/7/2016 | Michelle Lumasag | Draft letter to Defence to meet and confer re FCA's discovery responses; Conduct legal research | 1.50 | $200.00 | $300.00 |
| 6. | Aispuro, Lazaro v. FMC | 3/26/2019 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.50 | $350.00 | $525.00 |
| 7. | Alegre, Stephen v. FMC | 1/16/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.00 | $250.00 | $250.00 |
| 8. | Alfaro, Walter v. KMA | 11/20/2018 | Jonathan Cagliata | Draft letter to Defense to meet and confer re Deft's discovery responses, Set Two; conduct legal research | 1.40 | $225.00 | $315.00 |
| 9. | Alimonti, Anthony v. FMC | 2/3/2014 | Daisy Ortiz | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.50 | $225.00 | $337.50 |
| 10. | Allem, Renee v. FCA | 11/19/2015 | Amy Morse | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Discovery Requests; Conduct legal research | 1.10 | $250.00 | $275.00 |
| 11. | Allem, Renee v. FCA | 2/25/2016 | Amy Morse | Draft meet and confer letter to Defense Counsel re Defendant's Supplemental Discovery Responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 12. | Allen, Marty & Sandra v. Kia Motors | 4/24/2018 | George Semaan | Draft letter to Defense to meet and confer re Defendant's discovery responses; conduct legal research | 1.00 | $225.00 | $225.00 |
| 13. | Allen, Marty & Sandra v. Kia Motors | 11/19/2018 | Jodie Koo | Draft letter to Defense to meet and confer re Defendant's discovery responses, Set Two; conduct legal research | 1.20 | $225.00 | $270.00 |
| 14. | Alonso, Manuel v. FCA | 6/14/2017 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery requests; Conduct legal research | 1.10 | $350.00 | $385.00 |
| 15. | Alvarado, Edgar v. Kia Motors | 4/12/2016 | Amy Morse | Draft meet and confer letter to Defense Counsel re Defendant's Discovery Responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 16. | Alvarado, Edgar v. Kia Motors | 5/24/2016 | Russell Higgins | Draft meet and confer letter to Defense Counsel re Defendant's Responses to RFP; Conduct legal research | 1.00 | $400.00 | $400.00 |
| 17. | Alvernaz, Eulalia v. Hyundai | 3/10/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 18. | Anderson, Shelby v. FMC | 1/27/2014 | Daisy Ortiz | Draft letter to Defense to meet and confer re Defendant's discovery responses; conduct legal research | 1.90 | $225.00 | $427.50 |
| 19. | Andrino, Angelica and Andrino, Pedro v. Kia | 5/24/2016 | Russell Higgins | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiffs' Request for Production of Documents; review file and conduct research | 0.70 | $400.00 | $280.00 |
| 20. | Anthony, William v. Chrysler | 3/13/2015 | Daisy Ortiz | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiff's First Set of Discovery Requests; Conduct legal research | 2.00 | $225.00 | $450.00 |
| 21. | Aqueveque, Christian v. FCA | 6/25/2017 | Amy Morse | Draft letter to Defense to meet and confer re Def's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 22. | Archibald, Kandi v. FCA | 4/22/2017 | Amy Morse | Draft meet and confer letter to Defense re FCA's discovery responses; conduct legal research | 1.70 | $350.00 | $595.00 |
| 23. | Arragon, Joe and Ruby v. FMC | 9/2/2016 | Michael Ouziel | Draft meet and confer letter to Defense re Deft's discovery responses; Conduct legal, research | 1.30 | $250.00 | $325.00 |
| 24. | Arzate Lemus, Veronica v. FCA | 8/24/2020 | Sundeep Samra | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.50 | $225.00 | $337.50 |
| 25. | Aspinall, John v. Kia | 9/18/2015 | Lauren Ungs | Draft meet and confer letter re Deft's Discovery Responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 26. | Audo, Raad v. FCA | 10/25/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.40 | $200.00 | $280.00 |
| 27. | Avina, Peter v. FCA | 11/2/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 28. | AYBARTH V. FMC | 9/16/2016 | Michael Ouziel | Draft meet and confer letter to Defense re Deft's discovery responses; Conduct legal research | 1.80 | $250.00 | $450.00 |
| 29. | Ayers, Scott and Marsovszki, Ilona v. Hyundai | 7/28/2016 | Amy Morse | Draft letter to Defense Counsel to meet and confer re Defendant's responses to Plaintiff's discovery requests; Conduct legal research | 1.20 | $350.00 | $420.00 |
| 30. | Baca, Frank v. Chrysler | 8/25/2015 | Kevin Van Hout | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiffs' Discovery Requests; Conduct legal research | 1.50 | $300.00 | $450.00 |
| 31. | BAHNA v. FMC | 7/20/2016 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 32. | Ballasteros, Miguel v. Hyundai | 5/13/2016 | Russell Higgins | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.10 | $450.00 | $495.00 |
| 33. | BARHONA SALINAS v. FMC | 5/11/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.20 | $250.00 | $300.00 |
| 34. | Barnaba, Barbara v. FCA | 5/1/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.90 | $350.00 | $665.00 |
| 35. | Barr, Barbera v. FCA | 4/14/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.60 | $200.00 | $320.00 |
| 36. | Barredo, Theresa v. FCA | 12/8/2015 | Amy Morse | Draft meet and confer letter to Defense re Deft's discovery responses; Conduct legal research | 1.60 | $350.00 | $560.00 |
| 37. | Barrera, Jose v. FCA | 6/10/2015 | Kevin Van Hout | Draft meet and confer letter to Opposing Counsel re Defendant's Responses to Special ROGs; Conduct legal research | 1.10 | $300.00 | $330.00 |
| 38. | Barrera, Jose v. FCA | 9/21/2015 | Amy Morse | Draft meet and confer letter to Defense Counsel re Defendant 's Discovery Responses; conduct legal research | 1.50 | $250.00 | $375.00 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 39. | Barrera, Jose v. FCA | 10/27/2016 | Michelle Lumasag | Draft meet and confer letter to Defense re Deft's discovery responses; conduct legal research | 1.00 | $200.00 | $200.00 |
| 40. | Bartlett, Anthony v. FMC | 3/27/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.60 | $250.00 | $400.00 |
| 41. | Base, Galen v. FCA | 5/29/2018 | Deepak Devabose | Draft letter to Defense to meet and confer re Def's discovery responses; Conduct legal research | 1.50 | $275.00 | $412.50 |
| 42. | Batchelor, Jon Dale v. FCA | 12/11/2018 | George Semaan | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.20 | $200.00 | $240.00 |
| 43. | Beltran, Cesar v. FCA | 1/4/2017 | Michelle Lumasag | Draft meet and confer letter to Defense re Deft's discovery responses; conduct legal research | 1.60 | $200.00 | $320.00 |
| 44. | Bendersky, Yan and Bendersky, Tanya v. BMW | 10/5/2015 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.30 | $250.00 | $325.00 |
| 45. | Benjamin, Robert v. FCA | 10/12/2017 | Jennifer Ruiz | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $225.00 | $225.00 |
| 46. | Benson, Brent and Pamela v. FMC | 12/28/2018 | Amy Morse | Draft letter to Defense to meet and confer re FMC's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 47. | Berg, Timothy v. FMC | 2/27/2014 | Daisy Ortiz | Draft letter to Defense to meet and confer re Def's discovery responses; Conduct legal research | 1.50 | $225.00 | $337.50 |
| 48. | Berriozabal, Oscar v. FCA | 9/22/2015 | Amy Morse | Draft meet and confer letter to Defense re FCA's Discovery Responses; Conduct legal research | 1.40 | $350.00 | $490.00 |
| 49. | Berry, Travis v. FCA | 12/9/2016 | Michelle Lumasag | Draft meet and confer letter to Defense re Deft's discovery responses; conduct legal research | 1.00 | $200.00 | $200.00 |
| 50. | Bishop, Richard Lee v. FMC | 10/7/2016 | Michael Ouziel | Draft letter to Defense Counsel to meet and confer re Defendant's responses to Plaintiff's discovery request; Conduct legal research | 1.30 | $250.00 | $325.00 |
| 51. | Black, Edith Suzanne v. FCA | 10/4/2017 | Jennifer Ruiz | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.50 | $225.00 | $337.50 |
| 52. | Bowser, R. v. Ford | 4/21/2014 | Daisy Ortiz | Draft letter to Defense to meet and confer re Defendant's discovery responses; conduct legal research | 1.50 | $225.00 | $337.50 |
| 53. | Boyer, Leon v. BMW | 1/4/2017 | Deepak Devabose | Draft letter to Defense Counsel to meet and confer re Defendant's responses to Plaintiff's discovery; Conduct legal research | 1.30 | $275.00 | $357.50 |
| 54. | Braden, Teresa v. FCA | 9/2/2016 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.30 | $350.00 | $455.00 |
| 55. | Branam, Kimberly v. FMC | 10/11/2018 | Amy Morse | Draft letter to Defense to meet and confer re FMC's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 56. | Bravo, Tanya v. FCA | 6/10/2015 | Kevin Van Hout | Draft meet and confer letter to Opposing Counsel re Defendant's Responses to Special ROGs; Conduct legal research | 1.10 | $300.00 | $330.00 |
| 57. | Bravo, Tanya v. FCA | 9/21/2015 | Amy Morse | Draft meet and confer letter to Defense Counsel re Defendant 's Discovery Responses; conduct legal research | 1.50 | $250.00 | $375.00 |
| 58. | Brezil, James v. FCA | 12/29/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.00 | $200.00 | $200.00 |
| 59. | Brickner, Scott v. Chrysler | 3/13/2014 | Daisy Ortiz | Draft Plaintiff's meet and confer letter to Defense Counsel regarding Defendant's Discovery Responses; conduct legal research | 2.00 | $225.00 | $450.00 |
| 60. | Brickner, Scott v. Chrysler | 4/17/2014 | Daisy Ortiz | Draft Meet and Confer Letter to Defense Counsel regarding Defendant's Discovery Responses; Conduct Legal Research | 2.60 | $225.00 | $585.00 |
| 61. | Brown, Robert v. FMC | 2/5/2014 | Daisy Ortiz | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.50 | $225.00 | $337.50 |
| 62. | Buck, Denise and Buck, Shirlee v. FMC | 3/6/2015 | Daisy Ortiz | Draft meet and confer letter to Defense re Deft's Discovery Responses; Conduct legal research | 1.00 | $225.00 | $225.00 |
| 63. | Bugiel, Joshua v. FMC | 8/22/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.40 | $350.00 | $490.00 |
| 64. | Bulcao, Beatriz v. FCA | 1/18/2019 | George Semaan | Draft letter to Defense to meet and confer re FCA's response to Ptfs' second set of RFP; Conduct legal research | 1.00 | $225.00 | $225.00 |
| 65. | Burgess v FMC | 3/22/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re FMC's discovery responses; Conduct legal research | 1.50 | $250.00 | $375.00 |
| 66. | Burstein, Bruce and Linda v. Ford Motor Company | 2/5/2016 | Russell Higgins | Draft letter to Defense to meet and confer re Deft's responses to discovery; Conduct legal research | 1.00 | $400.00 | $400.00 |
| 67. | Cabada, Jose L. and Cabada, Graciela v. FMC | 6/23/2016 | Russell Higgins | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.30 | $400.00 | $520.00 |
| 68. | Cagle, Aaron v. FCA | 6/14/2017 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 69. | Calcaterra, Richard v. FCA | 4/12/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.80 | $200.00 | $360.00 |
| 70. | Canizalez, Norman v. KIA | 12/15/2016 | Deepak Devabose | Draft letter to Defense to meet and confer re KMA's discovery responses; conduct legal research | 1.00 | $275.00 | $275.00 |
| 71. | Canto, Olga v. FCA | 9/23/2015 | Amy Morse | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiff's Discovery Requests; Conduct legal research | 1.75 | $250.00 | $437.50 |
| 72. | Cappel, Kristin v. FCA | 10/24/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's Discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 73. | Carrillo, Nisa v. FCA | 11/20/2017 | Jennifer Ruiz | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.40 | $225.00 | $315.00 |
| 74. | Carruthers, Anthony v. FCA | 4/24/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.50 | $350.00 | $525.00 |
| 75. | Carthy, Heather v. FCA | 1/23/2017 | Thomas Burns | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.90 | $225.00 | $427.50 |
| 76. | CASTILLO v. FMC | 12/20/2016 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.70 | $250.00 | $425.00 |
| 77. | Castillo, Ellen Renee v. FMC | 10/17/2018 | Amy Morse | Draft letter to Defense to meet and confer re Def's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 78. | Castillo, Hugo v. FCA | 5/19/2017 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.00 | $350.00 | $350.00 |
| 79. | Castillo, Luis and Gonzalez, Yesenia v. Kia | 5/16/2016 | Amy Morse | Draft letter to Defense Counsel to meet and confer re Defendant's responses to Plaintiffs' discovery; Conduct legal research | 2.00 | $250.00 | $500.00 |
| 80. | Castro, RV FMC | 2/28/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re FMC's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 81. | Cavalleri, Nicholas v. FCA | 10/21/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.40 | $200.00 | $280.00 |
| 82. | Celestine, Larry v. FCA | 1/8/2018 | Deepak Devabose | Draft letter to Defense to meet and confer re Def's discovery responses; Conduct legal research | 1.50 | $275.00 | $412.50 |
| 83. | CERDA v.FMC | 2/21/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.60 | $250.00 | $400.00 |
| 84. | Cervantes-Juarez, Silva v. Hyundai | 7/22/2016 | Amy Morse | Draft letter to Defense to Meet and Confer re Deft's Discovery Responses; Conduct legal research | 1.20 | $350.00 | $420.00 |
| 85. | Chapman, Richard E. v. Hyundai Motor America | 4/17/2017 | Deepak Devabose | Draft letter to Defense to meet and confer re HMA's discovery responses; Conduct legal research | 1.20 | $275.00 | $330.00 |
| 86. | Chavez, Fernanda v. FCA | 5/11/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 0.90 | $350.00 | $315.00 |
| 87. | Chavez, Jose Luis v. GM | 9/6/2019 | Amy Morse | Draft letter to Defense to meet and confer re Delft's discovery responses; Conduct legal research | 1.40 | $350.00 | $490.00 |
| 88. | Chikahiro, Dwayne K. v. FMC | 3/13/2018 | George Aguilar | Draft letter to Defense to meet and confer re Def's improper discovery responses; Conduct legal research | 1.00 | $275.00 | $275.00 |
| 89. | Chikahiro, Dwayne K. v. FMC | 4/12/2018 | George Aguilar | Draft follow up letter to Defense to meet and confer re Def's Supplemental discovery responses; Conduct legal research | 1.00 | $275.00 | $275.00 |
| 90. | Chirinos, Jose v. Ford Motor Company | 12/27/2016 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery response; Conduct legal research | 1.50 | $250.00 | $375.00 |
| 91. | Chivas, Robert J v.FMC | 1/22/2019 | Armando Lopez | Draft letter to Defense to meet and confer re Ford's discovery responses; conduct legal research | 1.00 | $200.00 | $200.00 |
| 92. | Choi, Andrew v. Hyundai | 9/8/2016 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.80 | $350.00 | $630.00 |
| 93. | Choi, Kayla v. BMW | 2/27/2017 | Deepak Devabose | Draft letter to Defense re meet and confer re Deft's Discovery responses; Conduct legal research | 1.20 | $275.00 | $330.00 |
| 94. | Christensen v. FMC | 1/31/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re FMC's discovery responses; Conduct legal research | 1.10 | $250.00 | $275.00 |
| 95. | Cisneros, Jose v. FCA | 7/18/2017 | Jennifer Ruiz | Draft letter to Defense to meet and confer re FCA's responses to Plf's discovery requests; Conduct legal research | 1.00 | $225.00 | $225.00 |
| 96. | Clamar, Mario v. FCA | 2/10/2020 | Sundeep Samra | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.30 | $225.00 | $292.50 |
| 97. | Clark, K. v. FMC | 5/5/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re FMC's discovery responses; Conduct legal research | 1.50 | $250.00 | $375.00 |
| 98. | Clement, Margaret v. FCA | 12/19/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.90 | $200.00 | $380.00 |
| 99. | Codero, Anthony v. HMA | 11/7/2018 | Amy Morse | Draft letter to Defense to meet and confer re HMA's Discovery Responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 100. | Cofield, Jerry v. Kia | 5/22/2015 | Daisy Ortiz | Draft meet and confer letter to Defense Counsel re Defendant's Discovery Responses; Conduct legal research | 2.10 | $225.00 | $472.50 |
| 101. | Corona, Juan Jose v. FMC | 10/11/2018 | Amy Morse | Draft letter to meet and confer re Deft's discovery, responses; Conduct legal research | 0.80 | $350.00 | $280.00 |
| 102. | Costa, Sandra v. FCA | 6/22/2017 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal, research | 1.50 | $350.00 | $525.00 |
| 103. | Coulombe, Frank v. FCA | 1/5/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re Defs' discovery responses; Conduct legal, research | 2.10 | $200.00 | $420.00 |
| 104. | Covert, Eric v. FCA | 4/3/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 105. | Cox, John v. FCA | 1/30/2017 | Thomas Burns | Draft letter to Defense re meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $225.00 | $225.00 |
| 106. | Cramer, Eva v. FCA | 1/17/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re Defts' discovery responses; conduct legal research | 1.00 | $200.00 | $200.00 |
| 107. | Cruz, Danielle H. v. KIA Motors | 3/16/2015 | Daisy Ortiz | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiff's First Set of Discovery Requests; Conduct legal research | 1.75 | $225.00 | $393.75 |
| 108. | Cuevas, Richard v. FCA | 6/23/2017 | Amy Morse | Draft letter to Defense to meet and confer re Defendant's discovery requests; conduct legal research | 1.30 | $350.00 | $455.00 |
| 109. | Davis, Matthew v. FCA | 6/19/2017 | Christopher Swanson | Draft letter to Defense re meet and confer re FCA's responses to Ptf's Discovery requests; Conduct legal research | 1.00 | $375.00 | $375.00 |
| 110. | De La Cruz, Francisco v. FCA | 10/25/2016 | Michelle Lumasag | Draft letter to Defense Counsel to meet and confer re Defendant's discovery responses; Conduct legal research | 0.40 | $200.00 | $80.00 |
| 111. | De leon, Sonia v. KMA | 1/9/2020 | Gregory A. Lehrmann | Draft meet and confer letter re Defendant's discovery responses; conduct legal research | 0.90 | $200.00 | $180.00 |
| 112. | DeAngelis, Donald & Shelby v. FMC | 4/10/2014 | Daisy Ortiz | Draft letter to Defense to meet and confer re Ford's discovery responses; conduct legal research | 1.50 | $225.00 | $337.50 |
| 113. | Del Valle v. FMC | 8/2/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's Discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 114. | DELEO v.FMC | 3/2/2016 | Russell Higgins | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.10 | $400.00 | $440.00 |
| 115. | Delgadillo, Christian R and Martinez, Rigober | 6/19/2017 | Christopher Swanson | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $375.00 | $375.00 |
| 116. | Dertina, Damon v. BMW | 3/24/2016 | Amy Morse | Draft letter to Defense to meet and confer re BMW's Discovery responses; Conduct legal research | 1.30 | $350.00 | $455.00 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 117. | Desimone, Tom v. HMA | 5/10/2016 | Deepak Devabose | Draft letter to Defense to meet and confer re HMA's discovery responses; conduct legal research | 1.50 | $275.00 | $412.50 |
| 118. | Diarra, Monica v. FCA | 4/3/2018 | Daniel Kalinowski | Draft letter to Defense to meet and confer re FCA's Discovery Responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 119. | Dienes, Leon v. FCA | 2/16/2017 | Alastair Hamblin | Draft letter to Defense to meet and confer re FCA 's discovery responses; Conduct legal research | 1.00 | $325.00 | $325.00 |
| 120. | DiGioia, Anna Marie v. FMC | 5/10/2019 | Amy Morse | Draft letter to Defense to meet and confer, re Deft's Discovery responses Conduct legal research | 1.50 | $350.00 | $525.00 |
| 121. | Dill, Terri Anne v. Hyundai | 8/25/2015 | Christopher Swanson | Draft letter to Defense to meet and confer re HMA's discovery responses; Conduct legal research | 1.00 | $375.00 | $375.00 |
| 122. | Dombrowski, Bruce and Dombrowski, Nancy v. FM | 10/21/2015 | Russell Higgins | Draft letter to Opposing Counsel to meet and confer re Deft's discovery responses; Conduct legal research | 1.40 | $400.00 | $560.00 |
| 123. | Dosanjh, Jaspal v. Hyundai | 7/28/2016 | Amy Morse | Draft letter to Defense to meet and confer re, HMA's discovery responses; Conduct legal research | 1.20 | $350.00 | $420.00 |
| 124. | DUENAS v. FMC | 3/27/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.50 | $250.00 | $375.00 |
| 125. | DuFord, William v. FMC | 8/30/2016 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.00 | $250.00 | $250.00 |
| 126. | Dugan, Teri v. FMC | 10/9/2018 | Maite Colon | Draft meet and confer letter to Defense re Defendant's discovery responses; conduct legal, research | 1.00 | $275.00 | $275.00 |
| 127. | Duk v. Ford | 12/27/2016 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal, research | 1.70 | $250.00 | $425.00 |
| 128. | Dunfee, Ann and Dunfee, Robert | 8/25/2015 | Christopher Swanson | Draft meet and confer letter to Defense Counsel re Defendant's Responses to Discovery Requests; Conduct legal research | 0.70 | $325.00 | $227.50 |
| 129. | Edralin, Daniel v. FCA | 1/25/2017 | Thomas Burns | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 2.30 | $225.00 | $517.50 |
| 130. | Egger, Rudy Warren v. FCA | 4/11/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.50 | $200.00 | $300.00 |
| 131. | Encarnacion V. FMC | 12/20/2016 | Michael Ouziel | Draft letter to Defense to meet and confer re FMC's discovery responses; conduct legal research | 1.00 | $250.00 | $250.00 |
| 132. | Escalante, Alberto v. FCA | 4/13/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 2.00 | $200.00 | $400.00 |
| 133. | Espinoza, Beda v. FCA | 10/27/2016 | Michelle Lumasag | Draft letter to Defense re meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 134. | Espinoza, Carlos and Heather v. FCA | 12/14/2018 | George Semaan | Draft letter to Defense to meet and confer re FCA's,discovery responses; Conduct legal research | 1.00 | $225.00 | $225.00 |
| 135. | Espinoza, Rosa v. FCA | 11/20/2017 | Jennifer Ruiz | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.10 | $225.00 | $247.50 |
| 136. | Evans, Keith v. FCA | 6/20/2017 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.40 | $350.00 | $490.00 |
| 137. | EVERLING v. FMC | 8/14/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.60 | $350.00 | $560.00 |
| 138. | Farler, Karen v. FCA | 11/2/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.50 | $200.00 | $300.00 |
| 139. | Felix, Jaime v. BMW | 4/17/2017 | Deepak Devabose | Draft letter to Defense to meet and confer re BMW's discovery responses; Conduct legal research | 1.40 | $275.00 | $385.00 |
| 140. | Ferreira, Cecilia and Ferreira, Joseph v. FMC | 12/23/2016 | Michael Ouziel | Draft letter to Defense to meet and confer re Defendant's responses to Plaintiffs' first sets of discovery; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 141. | Figures, Ida v. FCA | 1/8/2018 | Deepak Devabose | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $275.00 | $275.00 |
| 142. | Fisher, Lourdes v. FMC | 6/2/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Ford's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 143. | Fitzgerald, Daniel v. HMA | 8/31/2016 | Amy Morse | Draft letter to Defense to meet and confer re HMA's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 144. | Flores, Francisco v. FCA | 3/25/2019 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery response; Conduct legal research | 0.90 | $350.00 | $315.00 |
| 145. | Flores, Julian and Alejandra v. FCA US LLC | 1/8/2018 | Deepak Devabose | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.00 | $275.00 | $275.00 |
| 146. | FLORES, RAUL v. FMC | 3/7/2017 | Michael Ouziel | Draft meet and confer letter to Defense re Deft's discovery responses; Conduct legal research | 1.80 | $250.00 | $450.00 |
| 147. | Floyd, Stacy Hoofkin v. FCA | 8/28/2018 | Daniel Kalinowski | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 148. | Fraga, Francisco Martinez | 3/7/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 0.90 | $250.00 | $225.00 |
| 149. | Frederick, Mark v. FMC | 8/26/2014 | Daisy Ortiz | Draft meet and confer letter to Opposing Counsel re Defendant's Discovery Responses; Conduct legal research | 2.00 | $225.00 | $450.00 |
| 150. | Fronek, Thomas and Fronek, Karen v. FCA | 4/4/2017 | Amy Morse | Draft letter to Defense re telephonic meet and confer re FCA's Discovery responses; Conduct legal research | 1.50 | $350.00 | $525.00 |
| 151. | Galvez Rios, Francisco and Maria v. FCA | 12/10/2018 | George Semaan | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 0.90 | $225.00 | $202.50 |
| 152. | Gaona, Alejandro v. FCA | 10/25/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 0.90 | $200.00 | $180.00 |
| 153. | Garcia, Juan v. FCA | 2/6/2017 | Thomas Burns | Draft letter to Defense to meet and confer re deft's discovery responses; conduct legal research | 2.30 | $225.00 | $517.50 |
| 154. | Garcia, Pompeyo and Cristal Mejicanos v. FMC | 3/27/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.50 | $250.00 | $375.00 |
| 155. | Garcis, Luis v. FCA | 4/14/2017 | Michelle Lumasag | Draft letter to Defense re telephonic Meet and Confer on 12/21/16 re FCA's Discovery Responses; Conduct legal research | 1.90 | $200.00 | $380.00 |
| 156. | Garza, Janiece v. FCA | 4/6/2017 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 157. | Gaytan, Rebecca Ann & Gaytan Ileen v. General Motors | 5/20/2019 | Amy Morse | Draft meet and confer letter to Defence re GM's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 158. | Geary, John v. FCA | 12/29/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Def's discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 159. | Giddings, Maryann v. FCA | 10/24/2016 | Michelle Lumasag | Draft letter to Defense Counsel to meet and confer re Defendant's discovery responses; Conduct legal research; review file | 0.90 | $200.00 | $180.00 |
| 160. | Goicoechea, Alfonso and Carmen v. Kia | 3/16/2015 | Daisy Ortiz | Draft meet and confer letter to Defense Counsel re Defendant's Responses to Discovery Requests; Conduct legal research | 1.30 | $225.00 | $292.50 |
| 161. | Goldman, Christine and Jette, David v. Hyunda | 3/9/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.10 | $350.00 | $385.00 |
| 162. | Gomes, Mike v. FMC | 2/21/2017 | Michael Ouziel | Draft meet and confer letter to Defense re Deft's discovery responses; conduct legal research | 1.30 | $250.00 | $325.00 |
| 163. | Gomez, Jose v. FCA | 10/27/2016 | Michelle Lumasag | Draft letter to Defense Counsel to meet and confer re Defendant's responses to Plaintiff's discovery requests; Conduct legal research | 1.30 | $200.00 | $260.00 |
| 164. | Gomez, Mark v. FCA | 6/23/2017 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.30 | $350.00 | $455.00 |
| 165. | Gomez, Mary v. FCA | 7/3/2018 | Daniel Kalinowski | Draft letter to Defense to meet and confer re Defendant's discovery responses; conduct legal research | 1.00 | $250.00 | $250.00 |
| 166. | Gomez, Mary v. FCA | 3/22/2019 | Amy Morse | Draft letter to Defense to meet and confer re FCA's response to RFP, Set No. Two; conduct legal research | 0.50 | $350.00 | $175.00 |
| 167. | Gomez, Melinda and Gomez, Amanda v. FMC | 7/20/2017 | Amy Morse | Draft letter to Defense to meet and confer re FMC's discovery responses; Conduct legal research | 1.40 | $350.00 | $490.00 |
| 168. | Gomez, Omar v. Kia | 3/22/2016 | Amy Morse | Draft meet and confer letter to Defense Counsel re Defendant's Responses to RFP; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 169. | Gonzalez, Gabriel v. FCA | 11/1/2017 | Jennifer Ruiz | Draft letter to meet and confer re Defts' discovery responses; Conduct legal research | 1.50 | $225.00 | $337.50 |
| 170. | Gonzalez, Gabriel v. FCA | 8/16/2018 | Daniel Kalinowski | Draft letter to meet and confer re Defts' discovery responses set two; Conduct legal research | 0.80 | $250.00 | $200.00 |
| 171. | Gonzalez, Pedro v. Ford Motor Company | 3/27/2017 | Michael Ouziel | Draft meet and confer letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 172. | Gonzalez, Zenaido Diaz v. FCA | 8/2/2018 | Daniel Kalinowski | Draft letter to Defense to meet and confer re Defendant's discovery responses; conduct legal research | 1.00 | $250.00 | $250.00 |
| 173. | Gordon, Robin v. FCA | 4/4/2017 | Michelle Lumasag | Draft meet and confer letter to Defense re Deft's discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 174. | Green, Donna v. FCA | 6/23/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.00 | $350.00 | $350.00 |
| 175. | Green, Patrick v. FCA | 6/23/2017 | Amy Morse | Draft letter to Defense re meet and confer re FCA's Discovery Responses; Conduct legal research | 1.10 | $350.00 | $385.00 |
| 176. | GUERRERO MARINA JORGE V. FMC | 5/20/2016 | Russell Higgins | Draft letter to Opposing Counsel to meet and confer re Deft's discovery responses; Conduct legal research | 1.40 | $400.00 | $560.00 |
| 177. | Guiterrez + Lozano v. FCA | 4/22/2017 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 178. | Gutierrez Lopez, Jose and Gutierrez Lopez, Jesus Ricardo | 8/19/2019 | Gregory A. Lehrmann | Draft letter to Defense to meet and confer re Defendant's discovery responses; conduct legal research | 1.10 | $200.00 | $220.00 |
| 179. | Gutierrez, Stephanie v. Hyundai Motor America | 12/4/2017 | Daniel Kalinowski | Draft letter to Defence to meet and confer re HMA's Discovery Responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 180. | Guzman, Roberto v. FCA | 4/21/2017 | Amy Morse | Draft letter to Defense to meet and confer Deft's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 181. | Hagerman, Connie v. FCA | 5/25/2018 | Deepak Devabose | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.50 | $275.00 | $412.50 |
| 182. | Hall, Dennis v. FCA | 2/3/2017 | Alastair Hamblin | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.60 | $325.00 | $520.00 |
| 183. | Hamilton, Lisa v. FCA | 11/20/2017 | Jennifer Ruiz | Draft letter to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $225.00 | $225.00 |
| 184. | HAND v.FMC | 4/21/2014 | Daisy Ortiz | Draft letter to Defense to meet and confer re FMC's discovery responses; Conduct legal research | 1.00 | $225.00 | $225.00 |
| 185. | Hannah v FMC | 5/23/2017 | Michael Ouziel | Draft letter to Defense requesting to meet and confer re FMC's responses to Ptf's discovery; Conduct legal research | 1.40 | $250.00 | $350.00 |
| 186. | Hardy, Russell v. Kia | 7/12/2018 | George Semaan | Draft letter to Defense to meet and confer re Defendant's discovery responses; conduct legal research | 1.00 | $225.00 | $225.00 |
| 187. | Hardy, Russell v. Kia | 1/25/2019 | Sundeep Samra | Draft letter to Defense to meet and confer re Def's discovery responses, Set Two; conduct legal research | 1.00 | $225.00 | $225.00 |
| 188. | Harisay, Marc v. Hyundai | 7/28/2016 | Amy Morse | Draft letter to Defense to meet and confer re Deft's responses to Plaintiff's discovery requests; Conduct legal research | 1.20 | $350.00 | $420.00 |
| 189. | Harris, Julie v. Hyundai | 1/20/2016 | Russell Higgins | Draft meet and confer letter to Defense Counsel re Defendant's Discovery Responses; Conduct legal research | 1.30 | $400.00 | $520.00 |
| 190. | Heil, Clayborne v. FCA | 12/20/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Deft's Discovery Responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 191. | Heil, Clayborne v. FCA | 3/21/2018 | Larry S. Castruita | Draft meet and confer letter regarding Motions In Limine Plaintiff intends to file in this case, including case research to identify which evidence should be excluded. | 0.75 | $350.00 | $262.50 |
| 192. | Hellenberg, Casey W. v. FMC | 5/6/2019 | Amy Morse | Draft letter to Defense to meet and confer re, FMC's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 193. | Hensley, Jedidiah v. FCA | 12/11/2015 | Amy Morse | Draft meet and confer letter to Defense re Deft's discovery responses; Conduct legal research | 1.80 | $350.00 | $630.00 |
| 194. | Hensley, Melissa v. FCA | 6/14/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.60 | $350.00 | $560.00 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 195. | Hernandez, Hada (aka Hada Romero) v. FCA | 6/20/2019 | Amy Morse | Draft letter to Defense to meet and Confer re Deft's discovery responses; Conduct legal research | 0.80 | $350.00 | $280.00 |
| 196. | Hernandez, Julio v. BMW | 10/11/2017 | Daniel Kalinowski | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.00 | $250.00 | $250.00 |
| 197. | Hernandez, Lilibeth v. FCA | 6/13/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 198. | Hernandez, Roberto III v. FMC | 9/13/2018 | Amy Morse | Draft letter to Defense to meet and confer re Deft's Discovery responses; Conduct, legal research | 1.50 | $350.00 | $525.00 |
| 199. | Hernandez, Toribio and Hernandez, Elizabeth v | 2/28/2017 | Thomas Burns | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.90 | $225.00 | $427.50 |
| 200. | Herrera, Aldrin v. Chrysler | 4/21/2014 | Daisy Ortiz | Draft meet and confer letter to Defense Counsel re Defendant's Discovery Responses; Conduct legal research | 1.40 | $225.00 | $315.00 |
| 201. | Herrera, Aldrin v. Chrysler | 5/28/2014 | Daisy Ortiz | Draft meet and confer letter to Defense Counsel re Defendant's Responses to Requests for Production of Documents; Conduct legal research | 1.50 | $225.00 | $337.50 |
| 202. | Herrera, Dalila v. FCA | 6/23/2017 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.00 | $350.00 | $350.00 |
| 203. | Hightower, Wilbur v. FMC | 8/25/2015 | Russell Higgins | Draft letter to Defence to meet and confer re Defendant's discovery responses; conduct legal research | 1.50 | $450.00 | $675.00 |
| 204. | Howton, Christopher v. FCA | 12/19/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Def's disco responses; Conduct legal research | 1.50 | $200.00 | $300.00 |
| 205. | Ibarra v. Ford | 3/13/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 206. | Ibarra, Teresa v. FMC | 7/20/2017 | Amy Morse | Draft meet and confer letter to Defense re Deft's discovery responses; conduct legal research | 1.60 | $350.00 | $560.00 |
| 207. | Jacquez, Mary v.FMC | 12/7/2015 | Russell Higgins | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.60 | $400.00 | $640.00 |
| 208. | Jameson, April v. FMC | 1/18/2019 | Amy Morse | Draft letter to Defense to meet and confer re FMC's discovery response; Conduct legal research | 1.50 | $350.00 | $525.00 |
| 209. | Jansson v. FMC | 7/8/2016 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 210. | Jasmer, Travis v. FCA | 12/20/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.60 | $200.00 | $320.00 |
| 211. | Javian, Benjamin Castro v. Ford Motor Company | 8/30/2016 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 212. | Jerry, Eugene v. Ford Motor Company | 1/26/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.00 | $250.00 | $250.00 |
| 213. | Johnson, Riadon v. FCA | 4/3/2017 | Michelle Lumasag | Draft meet and confer letter to Defense Counsel re FCA's discovery responses; conduct legal research | 1.00 | $200.00 | $200.00 |
| 214. | Johnson, Rita v. FCA | 6/23/2017 | Amy Morse | Draft letter to Defense re telephonic meet and confer re Deft's discovery responses; Conduct legal research | 1.50 | $350.00 | $525.00 |
| 215. | Johnson, Wanda v. Hyundai | 9/8/2016 | Amy Morse | Draft meet and confer letter to Defense re Deft's discovery responses; conduct legal research | 1.20 | $350.00 | $420.00 |
| 216. | Jones, Danny v. Chrysler | 3/13/2014 | Daisy Ortiz | Draft Plaintiff's meet and confer letter to Defense Counsel regarding Defendant's Discovery Responses; conduct legal research | 2.00 | $225.00 | $450.00 |
| 217. | Jordan, Matthew v. FCA | 1/20/2017 | Thomas Burns | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.00 | $225.00 | $225.00 |
| 218. | JUAREZ v.FMC | 2/21/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.00 | $250.00 | $250.00 |
| 219. | Juarez, Marco v. General Motors | 3/29/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 220. | Kantar, Joseph v. FCA | 12/9/2016 | Thomas Burns | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 2.10 | $225.00 | $472.50 |
| 221. | Kappler, Aaron v. FMC | 3/3/2016 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.30 | $250.00 | $325.00 |
| 222. | Karm, Cynthia v. FMC | 3/27/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's Discovery responses; conduct legal research | 0.90 | $250.00 | $225.00 |
| 223. | Kasarda, Melissa v. FCA | 12/13/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.80 | $200.00 | $360.00 |
| 224. | KATZ, MITCHELL V. FMC | 12/16/2016 | Michael Ouziel | Draft meet and confer letter to Defense re Deft's Discovery Responses; Conduct legal research | 1.70 | $250.00 | $425.00 |
| 225. | KATZ, MITCHELL V. FMC | 1/25/2017 | Michael Ouziel | Draft meet and confer letter to Defense re Deft's 1/20/17 letter and Discovery Responses; Conduct research | 0.80 | $250.00 | $200.00 |
| 226. | Kavanagh, Fiona v. FCA | 6/23/2017 | George Aguilar | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.00 | $275.00 | $275.00 |
| 227. | Kearin, Timothy v. FCA | 6/23/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.00 | $350.00 | $350.00 |
| 228. | Kearney, Kevin v. FCA | 10/24/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 2.10 | $200.00 | $420.00 |
| 229. | Kelton, Kevin v. FCA | 6/12/2018 | Daniel Kalinowski | Draft letter to Defense to meet and confer re FCA's Discovery Responses; Conduct Legal research | 1.30 | $250.00 | $325.00 |
| 230. | Kent, Doreen and Mead, Donald v. FCA | 12/29/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.50 | $200.00 | $300.00 |
| 231. | Kiemel, Sean Paul v. FMC | 10/22/2018 | George Aguilar | Draft letter to Defense to meet and confer re Ford's discovery responses; conduct legal research | 1.00 | $275.00 | $275.00 |
| 232. | Kim, Justin v. Hyundai | 3/22/2016 | Russell Higgins | Draft letter to Defense to meet and confer re Defendant's discovery responses; conduct legal research | 1.00 | $450.00 | $450.00 |
| 233. | King v. Hyundai | 5/13/2016 | Russell Higgins | Draft meet and confer letter to Defense Counsel re Defendant's Discovery Responses; Conduct legal research | 1.10 | $400.00 | $440.00 |
| 234. | King, A. v. Hyundai | 3/10/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.20 | $350.00 | $420.00 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 235. | King, Anthony v. FMC | 1/25/2017 | Michael Ouziel | Draft meet and confer letter to Defense re Deft's discovery responses; Conduct legal research | 1.60 | $250.00 | $400.00 |
| 236. | Koetsier, Thomas and Koetsier, Jackie (for Ba | 8/25/2016 | Michael Ouziel | Draft letter to Defense Counsel to meet and confer re Defendant's responses to Plaintiffs' discovery request; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 237. | Koller, Mary S. v. FMC | 10/17/2018 | Amy Morse | Draft letter to Defense to meet and confer re, FMC's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 238. | Kopa, Katherine v. FMC | 4/9/2019 | Amy Morse | Draft letter to Defense to meet and confer re Def's discovery responses; Conduct legal research | 1.50 | $350.00 | $525.00 |
| 239. | Kopchak v. FMC | 7/13/2016 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal, research | 1.50 | $250.00 | $375.00 |
| 240. | La Chance, Michael v. FCA | 10/25/2016 | Michelle Lumasag | Draft meet and confer letter to Defense re Deft's discovery responses; Conduct legal research | 0.90 | $200.00 | $180.00 |
| 241. | Laluan, Demetrio & Evelyn v. FCA | 10/1/2019 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 0.90 | $350.00 | $315.00 |
| 242. | Lambertson, Larry v. FCA | 1/13/2017 | Thomas Burns | Draft meet and confer letter to Defense re FCA 's discovery responses; conduct legal research | 1.00 | $225.00 | $225.00 |
| 243. | Lawson, Mark | 7/31/2014 | Daisy Ortiz | Draft letter to Defense to meet and confer re FMC's discovery responses; Conduct legal research | 1.90 | $225.00 | $427.50 |
| 244. | Leach, Todd v. FCA | 1/13/2017 | Thomas Burns | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct research | 1.90 | $225.00 | $427.50 |
| 245. | Leon, Yolanda v. FCA | 4/12/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.50 | $200.00 | $300.00 |
| 246. | Ligon, Ronald v. FCA | 10/4/2017 | Jennifer Ruiz | Draft letter to Defense to meet and confer re FCA's Discovery Responses; Conduct legal research | 1.00 | $225.00 | $225.00 |
| 247. | Lloyd, Drishan v. FCA | 10/21/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.50 | $200.00 | $300.00 |
| 248. | Lopez Lopez, Paul and Lopez Chacon, Audelia v. KMA | 3/23/2021 | Woody Jones | Draft letter to Defense to meet and confer re Def's discovery responses; Conduct Legal Research | 0.90 | $250.00 | $225.00 |
| 249. | Lopez, Maria and Jose v. FMC | 1/30/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.10 | $250.00 | $275.00 |
| 250. | Lopez, William Ceron and Guadalupe v. FMC | 9/18/2018 | Amy Morse | Draft letter to Defense to meet and confer re Def's discovery responses; Conduct legal, research | 1.00 | $350.00 | $350.00 |
| 251. | Lovato, Robert J. and Lovato, Rose v. FMC | 2/21/2017 | Michael Ouziel | Draft meet and confer letter to Defense re FMC's discovery responses; conduct legal research | 0.90 | $250.00 | $225.00 |
| 252. | Luevanos, Katherine v. FCA | 6/15/2017 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.50 | $350.00 | $525.00 |
| 253. | LUTZ V.FMC | 5/5/2017 | Michael Ouziel | Draft letter of Defense to meet and confer re Deft's Discovery responses; Conduct legal, research | 1.40 | $250.00 | $350.00 |
| 254. | Madariaga, Anthony v. FCA | 4/12/2017 | Michelle Lumasag | Draft meet and confer letter to Defense re Defendant's discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 255. | Madrigal, Oscar v. Hyundai | 3/4/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.10 | $350.00 | $385.00 |
| 256. | Madriz, Juan v. BMW | 3/20/2017 | Deepak Devabose | Draft letter to Defense to meet and confer re BMW's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 257. | Madsen, Benny v. FCA | 4/21/2014 | Daisy Ortiz | Draft letter to Defense to meet and confer re Defendant's discovery responses; Conduct legal research | 1.00 | $225.00 | $225.00 |
| 258. | Maestas, Robert v. Chrysler | 4/21/2014 | Daisy Ortiz | Draft Meet and Confer Letter to Defense Counsel regarding Defendant's Written Discovery Responses, Set One; Conduct Legal Research | 1.60 | $225.00 | $360.00 |
| 259. | Mansur, Bradford v. Chrysler | 7/7/2014 | Daisy Ortiz | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiff's First Set of Discovery Requests; Conduct legal research | 2.60 | $225.00 | $585.00 |
| 260. | Marcel-Mariano, Joel v. FCA | 6/9/2017 | Amy Morse | Draft meet and confer letter to Defense Counsel re FCA's discovery responses; conduct legal research | 1.30 | $350.00 | $455.00 |
| 261. | MARIN v. FMC | 8/30/2016 | Michael Ouziel | Draft letter to Defense to meet and confer re FMC's discovery responses; Conduct legal research | 1.20 | $250.00 | $300.00 |
| 262. | Marin, Rene v. FCA | 7/18/2017 | Jennifer Ruiz | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.00 | $225.00 | $225.00 |
| 263. | Marquez, Salvador v. FCA | 5/11/2017 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.00 | $350.00 | $350.00 |
| 264. | Marquinez, Norberto v. BMW | 8/24/2016 | Amy Morse | Draft meet and confer letter to Defense re Deft's discovery responses; Conduct legal research; Review file | 1.30 | $350.00 | $455.00 |
| 265. | MARROQUIN V.FMC | 1/25/2017 | Michael Ouziel | Draft meet and confer letter to Defense re Deft's discovery responses; conduct legal research | 1.00 | $250.00 | $250.00 |
| 266. | Martin, Wesley v. FMC | 3/14/2016 | Russell Higgins | Draft meet and confer letter to Defense Counsel re Defendant's Responses to Plaintiff's First Set of Discovery Requests; Conduct legal research | 1.00 | $400.00 | $400.00 |
| 267. | Martinez, Antonio v. FCA | 12/27/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 268. | MARTINEZ, JOSE V.FMC | 2/28/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal, research | 1.30 | $250.00 | $325.00 |
| 269. | Martinez, Maribel v. FCA | 5/15/2018 | Daniel Kalinowski | Draft letter to Defense to meet and confer re Defendant's discovery responses; conduct legal research | 1.00 | $250.00 | $250.00 |
| 270. | Martinez, Paul and Estella v. FMC | 5/9/2019 | Daniel Macioce | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.50 | $200.00 | $300.00 |
| 271. | Martinez, Stephanie v. FCA | 8/22/2016 | Amy Morse | Draft letter to Defense Counsel to meet and confer re FCA's discovery responses; Conduct legal research | 1.40 | $350.00 | $490.00 |
| 272. | Martinez, Steven v. FCA | 10/6/2017 | Jennifer Ruiz | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.00 | $225.00 | $225.00 |
| 273. | Martinez-Leycam, Belia v. FMC | 12/23/2016 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.70 | $250.00 | $425.00 |
| 274. | Masingale, Richard v. FCA | 6/15/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.50 | $350.00 | $525.00 |
| 275. | Matini, Carolyn v. General Motors | 2/22/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re GM's discovery responses; Conduct legal research | 1.50 | $200.00 | $300.00 |
| 276. | Matthews, Ronald v. FCA | 6/14/2017 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.60 | $350.00 | $560.00 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 277. | Mayorga, Amparao v. BMW | 4/14/2016 | Amy Morse | Draft meet and confer letter to Defense re Defendant's Discovery Responses; Conduct legal research | 1.10 | $250.00 | $275.00 |
| 278. | Mayorga, Amparao v. BMW | 5/26/2016 | Amy Morse | Draft meet and confer letter to Defense re Defendant's 5/17/16 letter and Discovery Responses; Conduct legal research | 0.50 | $250.00 | $125.00 |
| 279. | McCarthy, Jordan v. FCA | 4/3/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.10 | $200.00 | $220.00 |
| 280. | McCullough, William v. FCA | 11/17/2015 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.50 | $250.00 | $375.00 |
| 281. | McFalls, Linda v. Kis | 9/14/2015 | Russell Higgins | Draft meet and confer letter to Defense Counsel re Defendant's Discovery Responses; Conduct legal research | 1.60 | $400.00 | $640.00 |
| 282. | McKinnon, Corey v. FMC | 5/19/2014 | Daisy Ortiz | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.50 | $225.00 | $337.50 |
| 283. | McLaughlin, Lepe v. Chrysler | 3/13/2015 | Daisy Ortiz | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiffs' First Set of Discovery Requests; Conduct legal research | 1.80 | $225.00 | $405.00 |
| 284. | Medina, Cecilia v. FCA | 6/5/2017 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 285. | Medina, Cecilia v. FMC | 1/26/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re, Deft's discovery responses; Conduct legal research | 1.10 | $250.00 | $275.00 |
| 286. | Mejia, Jaime v. FCA | 6/15/2017 | Amy Morse | Draft meet and confer letter to Defense re FCA's discovery responses; Conduct legal research | 1.20 | $350.00 | $420.00 |
| 287. | Mejia, Jaime v. FCA | 7/26/2018 | Daniel Kalinowski | Draft letter to Defense to meet and confer re FCA's responses to Plf's Second Set of RFP; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 288. | Melton, Michael v. Kia | 7/17/2014 | Daisy Ortiz | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiff's Discovery Requests; conduct legal research | 2.30 | $225.00 | $517.50 |
| 289. | Melton, Michael v. Kia | 9/29/2014 | Daisy Ortiz | Draft meet and confer letter to Defense Counsel regarding Defendant's Discovery Responses; conduct legal research | 1.50 | $225.00 | $337.50 |
| 290. | Mendez, Julissa v. FCA | 6/10/2015 | Kevin Van Hout | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiff's Special Interrogatories, Set One; Conduct legal research | 1.75 | $300.00 | $525.00 |
| 291. | Mendez, Julissa v. FCA | 9/18/2015 | Russell Higgins | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiff's First Set of Discovery Requests; Conduct legal research | 1.25 | $400.00 | $500.00 |
| 292. | Mercado, Jaime v. FCA | 10/27/2016 | Michelle Lumasag | Draft letter to Defense Counsel to meet and confer re Defendant's discovery responses; Conduct legal research | 1.50 | $200.00 | $300.00 |
| 293. | Metzger, Duane v. FCA | 4/2/2017 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 294. | Meuse, Brian v. FCA | 2/2/2017 | Thomas Burns | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $225.00 | $225.00 |
| 295. | Mills, Dudley B., and Mills, Janette E. | 9/29/2017 | Amy Morse | Draft meet and confer letter to Defense re Deft's discovery responses; Conduct legal research | 1.50 | $350.00 | $525.00 |
| 296. | Milosevich, Dan for Loda Inc. v. FMC | 4/10/2019 | Amy Morse | Draft letter to Defense to meet and confer re FMC's, discovery responses; Conduct legal research | 1.50 | $350.00 | $525.00 |
| 297. | Misner, Gregory Scott Julie v. FMC | 3/7/2014 | Daisy Ortiz | Draft letter to Defense to meet and confer re Def's discovery responses; Conduct legal research | 1.50 | $225.00 | $337.50 |
| 298. | Modler, Walter v. FCA | 4/11/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.50 | $200.00 | $300.00 |
| 299. | Modler, Walter v. FCA | 1/18/2019 | George Semaan | Draft letter to Defense to meet and confer re FCA's response to Ptf's second set of RFP; conduct legal research | 0.30 | $225.00 | $67.50 |
| 300. | Mondragon, Noel v. FCA | 5/11/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.10 | $350.00 | $385.00 |
| 301. | Monroe, Lisa v. FCA | 1/25/2017 | Thomas Burns | Draft letter to Defense re 12/21/16 telephonic meet and confer re FCA's discovery responses; Conduct legal research | 1.50 | $225.00 | $337.50 |
| 302. | Montano Carranza, Gabriela v. FCA | 6/12/2019 | Amy Morse | Draft letter to Defense to meet and confer re Deft's Discovery responses; Conduct legal research | 0.90 | $350.00 | $315.00 |
| 303. | Montero, Martha v. Kia | 9/2/2016 | Amy Morse | Draft meet and confer letter re Deft's discovery responses; Conduct legal research | 0.90 | $250.00 | $225.00 |
| 304. | Montes, Alica and Padilla, Jesse v. FMC | 4/4/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re FMC's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 305. | Moore, Allen v. FCA | 1/31/2017 | Thomas Burns | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.10 | $225.00 | $247.50 |
| 306. | Mora, Robert v. FCA | 6/15/2017 | Amy Morse | Draft meet and confer letter to Defense re FCA's responses to discovery; conduct legal research | 1.00 | $350.00 | $350.00 |
| 307. | Morales, Daniel Mario v. FMC | 11/28/2016 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 308. | Moreno, Adam v. FCA | 12/19/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.70 | $200.00 | $340.00 |
| 309. | Moreno, Jesus v. FCA | 6/26/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 310. | Moreno, Martin and Ruby v. FMC | 1/25/2017 | Michael Ouziel | Draft meet and confer letter re Deft's discovery responses; Conduct legal research | 1.10 | $250.00 | $275.00 |
| 311. | Morgan, Geoffrey v. FCA | 2/2/2017 | Thomas Burns | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.50 | $225.00 | $337.50 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 312. | Morino, Michelle v.FCA | 4/15/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's Discovery Responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 313. | Morris, Mary v. Hyundai | 8/24/2016 | Amy Morse | Draft letter to Defense Counsel to meet and confer re Defendant's discovery responses; Conduct legal research | 1.20 | $350.00 | $420.00 |
| 314. | Morvarid, Roxana v. FCA | 7/19/2017 | Jennifer Ruiz | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.50 | $225.00 | $337.50 |
| 315. | Mosburg, Tiffany v. FCA | 4/14/2017 | Michelle Lumasag | Draft letter to Defense Counsel to meet and confer re FCA's discovery responses; conduct legal research | 1.00 | $200.00 | $200.00 |
| 316. | Mota, Hernan and Mota, Claudio v. KMA | 2/27/2020 | Gregory A. Lehrmann | Draft letter to Defense to meet and confer re Def's discovery responses; Conduct Legal Research, Set Two | 1.30 | $200.00 | $260.00 |
| 317. | Mota, Hernan and Mota, Claudio v. KMA | 11/3/2020 | Gregory A. Lehrmann | Draft letter to Defense to meet and confer re Def's discovery responses, set three; Conduct Legal Research | 1.50 | $200.00 | $300.00 |
| 318. | Mota, Victor and Carlos v. Hyundai | 9/2/2016 | Deepak Devabose | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.10 | $275.00 | $302.50 |
| 319. | Munguia, Maria and Edgar Morales v. FMC | 5/3/2019 | Daniel Macioce | Draft letter to Defense to meet and confer re Ford's discovery responses; conduct legal research | 1.50 | $200.00 | $300.00 |
| 320. | Munoz, Cruz v. General Motors | 6/15/2018 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.00 | $350.00 | $350.00 |
| 321. | Munoz, Efrain v. FCA | 6/7/2017 | Amy Morse | Draft meet and confer letter to Defense re FCA's discovery responses; conduct legal research | 1.60 | $350.00 | $560.00 |
| 322. | Munoz, Jose v. FCA | 11/25/2015 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 323. | Munoz, Martin v. FMC | 8/2/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.00 | $350.00 | $350.00 |
| 324. | Munoz, Miriam and Munoz, Martin v. GM | 5/19/2020 | Erum Siddiqui | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 325. | Murillo, Jose v. FCA | 6/23/2015 | Kevin Van Hout | Draft meet and confer letter to Defense Counsel re Defendant's Responses to SROGs; Conduct legal research | 1.50 | $300.00 | $450.00 |
| 326. | Murillo, Jose v. FCA | 9/21/2015 | Amy Morse | Draft meet and confer letter to Defense Counsel re Defendant's Responses to First Set of Discovery Requests; Conduct legal research | 1.50 | $250.00 | $375.00 |
| 327. | Murillo, Jose v. FCA | 12/30/2015 | Kristina Stephenson-Cheang | Draft letter to Defense Counsel confirming telephonic meet and confer re Plaintiff' s Responses to Discovery Requests; Conduct legal research | 2.50 | $350.00 | $875.00 |
| 328. | Murillo, Salvador v. KMA | 1/29/2021 | Gregory A. Lehrmann | Draft letter to Defense to meet and confer re Deft's discovery responses, set two; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 329. | Murphy, Timothy D. v. FMC | 11/11/2016 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 0.90 | $250.00 | $225.00 |
| 330. | Najera, Mary Beth v. Hyundai Motor America | 3/21/2016 | Russell Higgins | Draft letter to Defence to meet and confer re HMA's Discovery responses; Conduct legal research | 1.30 | $450.00 | $585.00 |
| 331. | Najera, Mary Beth v. Hyundai Motor America | 10/25/2018 | Jodie Koo | Draft letter to Defence to meet and confer re HMA's discovery responses; Conduct legal research | 2.30 | $225.00 | $517.50 |
| 332. | Nance, Joshua D. & Trisha N. v. KIA | 9/26/2016 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 333. | Nance, Joshua D. & Trisha N. v. KIA | 12/7/2018 | Jodie Koo | Draft letter to Defense to meet and confer re Deft's Discovery responses; Conduct legal research, Set Two | 0.80 | $225.00 | $180.00 |
| 334. | Navarro, Demetria J. Flores v. Ford Motors Co | 12/22/2016 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 0.90 | $250.00 | $225.00 |
| 335. | Negrete, Mauricio v. FCA | 4/12/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re Deft ' s discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 336. | Nickerson, Jo Ann v. FCA | 8/29/2016 | Amy Morse | Draft meet and confer letter to Defense Counsel re Third Supplemental Responses to RFP; Review file and conduct research | 0.60 | $250.00 | $150.00 |
| 337. | Niedermeier, Lisa v. FCA | 4/22/2017 | Amy Morse | Draft meet and confer letter to Defense re Deft's discovery responses; conduct legal research | 1.00 | $350.00 | $350.00 |
| 338. | Nieuwenhuis, Antonius A. v. FMC | 12/20/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.40 | $350.00 | $490.00 |
| 339. | Nunez, Eva and Archuleta, Robert v. KMA | 2/12/2021 | Gregory A. Lehrmann | Draft letter to Defense to meet and confer re Defendant's discovery responses; conduct legal research | 0.90 | $250.00 | $225.00 |
| 340. | Oakley, Melinda Kate v. FMC | 2/26/2019 | Amy Morse | Draft letter to Defense to meet and confer re Def's discovery responses; conduct legal research | 1.00 | $350.00 | $350.00 |
| 341. | O'Brien, Kristi v. FCA | 5/29/2018 | Deepak Devabose | Draft letter to Defense to meet and confer re Def's discovery responses; Conduct legal research | 1.50 | $275.00 | $412.50 |
| 342. | Ocana, Steve v. FCA | 11/16/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.50 | $200.00 | $0.00 |
| 343. | Ochoa, Carlos v. FMC | 7/22/2014 | Daisy Ortiz | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.00 | $225.00 | $225.00 |
| 344. | Oday, Kevin v. FCA | 6/7/2017 | Amy Morse | Draft meet and confer letter to Defense re FCA's discovery responses; Conduct legal research | 1.80 | $350.00 | $630.00 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 345. | O'Green, Danielle v. Kia | 3/16/2015 | Daisy Ortiz | Draft meet and confer letter to Defense Counsel re: Defendant's Responses to Plaintiff's Discovery; Conduct legal research | 1.40 | $225.00 | $315.00 |
| 346. | O'Laughlin, Jessica v. FCA | 6/23/2015 | Kevin Van Hout | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiff's Special Interrogatories, Set One; Conduct legal research | 1.75 | $300.00 | $525.00 |
| 347. | O'Laughlin, Jessica v. FCA | 11/17/2015 | Amy Morse | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiff's First Set of Discovery Requests; Conduct legal research | 1.25 | $250.00 | $312.50 |
| 348. | Orosco, Jose v. FMC | 4/28/2017 | Michael Ouziel | Draft meet and confer letter to Defense re Deft's discovery responses; conduct legal research | 1.00 | $250.00 | $250.00 |
| 349. | Orozco, Israel v. FCA | 10/11/2017 | Jennifer Ruiz | Draft letter to Defense to meet and confer re FCA's discovery response s; conduct legal research | 1.40 | $225.00 | $315.00 |
| 350. | Ortiz, Anthony v. FMC | 1/25/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal, research | 1.00 | $250.00 | $250.00 |
| 351. | Ossenfort, Victoria v. Kia | 10/23/2018 | George Semaan | Draft letter to Defense to meet and confer re KMA's discovery responses; Conduct legal research | 1.50 | $225.00 | $337.50 |
| 352. | Osuna, Patrick v. FCA | 1/20/2017 | Thomas Burns | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.80 | $225.00 | $405.00 |
| 353. | Page, Michelle v. Kia | 4/29/2015 | Daisy Ortiz | Draft meet and confer letter to Defense Counsel re Defendant's Responses to Plaintiffs' Discovery Requests; Conduct legal research | 1.30 | $225.00 | $292.50 |
| 354. | Palombi, Tiffany v. FCA | 7/11/2014 | Daisy Ortiz | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.30 | $225.00 | $292.50 |
| 355. | Patel, Nilay v. Mercedes-Benz | 9/11/2015 | Russell Higgins | Draft letter to Defense to meet and confer re Defendant's discovery responses; conduct legal research | 1.00 | $400.00 | $400.00 |
| 356. | Patricio, Adriana v. FCA | 6/26/2018 | Daniel Kalinowski | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 357. | Paul, Aaron | 10/24/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.90 | $200.00 | $380.00 |
| 358. | Pelaez, Esmeralda & Laura v. FMC | 4/28/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.00 | $250.00 | $250.00 |
| 359. | Pena, Elva | 12/29/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's responses to Ptf's discovery requests; Conduct legal research | 1.70 | $200.00 | $340.00 |
| 360. | Pereira, Francisco | 10/23/2014 | Stephanie Marshall | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiff's First Set of Discovery Requests; Conduct legal research | 1.60 | $200.00 | $320.00 |
| 361. | Perez, Angelita | 4/6/2017 | Christopher Swanson | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 2.20 | $350.00 | $770.00 |
| 362. | Perez, Jose | 9/23/2015 | Amy Morse | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiffs' First Set of Discovery Requests and conduct legal research | 1.20 | $250.00 | $300.00 |
| 363. | Perez, Jovita | 2/14/2018 | Deepak Devabose | Draft letter to Defense to meet and confer re FCA's responses to federal discovery requests; Conduct legal research | 2.10 | $275.00 | $577.50 |
| 364. | Perry, Eva v. FCA | 4/13/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.50 | $200.00 | $300.00 |
| 365. | Petropoulos, Peter v. FCA | 10/19/2016 | Amy Morse | Draft letter to Defense to meet and confer re Defts' Discovery responses; conduct legal research | 1.00 | $350.00 | $350.00 |
| 366. | Pignataro, Kathleen M. v. FCA | 3/20/2019 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 367. | Pineda, Yazman | 1/4/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 368. | Pitts, Tanisha v. FCA | 5/15/2018 | Daniel Kalinowski | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.40 | $250.00 | $350.00 |
| 369. | Plascencia, Jose | 6/7/2017 | Amy Morse | Draft letter to Defense to meet and confer re FCA's Discovery Responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 370. | Pollard, Derric | 10/20/2016 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.00 | $350.00 | $350.00 |
| 371. | Pollard, Derric | 1/26/2018 | Deepak Devabose | Draft letter to defense to meet and confer re FCA's discovery responses; conduct legal research | 1.00 | $275.00 | $275.00 |
| 372. | Potter, William v. FCA | 12/7/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.00 | $200.00 | $200.00 |
| 373. | Powell, Desmond v. FCA | 2/1/2017 | Thomas Burns | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 2.10 | $225.00 | $472.50 |
| 374. | Purifoy, Luria v. FMC | 5/19/2017 | Michael Ouziel | Draft meet and confer letter to Defense re Deft's discovery responses; Conduct legal, research | 0.90 | $250.00 | $225.00 |
| 375. | Purkiss, James M. & Penelope R. v. General Motors | 6/6/2019 | Amy Morse | Draft letter to Defence to meet and confer re GM's discovery responses; Conduct legal research | 1.10 | $350.00 | $385.00 |
| 376. | Quintana, Roy | 4/12/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 377. | Ramirez, Gustavo v. FMC | 1/30/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.70 | $250.00 | $425.00 |
| 378. | Ramsey, Lance v. FCA | 10/25/2016 | Michelle Lumasag | Draft meet and confer letter to Defense Counsel re Defendant's Discovery responses; Conduct legal research | 1.30 | $200.00 | $260.00 |
| 379. | Randall, Shane | 10/25/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 380. | Ray, Christian v. FMC | 2/28/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal, research | 1.70 | $250.00 | $425.00 |
| 381. | Reck, Kathy | 6/19/2017 | Christopher Swanson | Draft letter to Defense to meet and confer re FCA's Discovery responses; Conduct legal research | 1.00 | $375.00 | $375.00 |
| 382. | Redman, Glen v. FMC | 12/19/2016 | Michael Ouziel | Draft letter to Defense to meet and confer re FMC's discovery responses; conduct legal research | 1.00 | $250.00 | $250.00 |
| 383. | Reed, Andrew v. FCA | 6/19/2017 | Christopher Swanson | Draft letter to Defense re telephonic meet and confer re FCA's discovery responses; Conduct legal research | 1.60 | $375.00 | $600.00 |
| 384. | Reed, Thomas | 2/14/2017 | Thomas Burns | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.00 | $225.00 | $225.00 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 385. | Regueiro, Francisco | 12/29/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Def's discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 386. | Rendon v. FMC | 12/12/2016 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 387. | Reyes, Hugoino v. General Motors | 10/2/2018 | Natalee Fisher | Draft letter to Defence to meet and confer re Deft's discovery responses; Conduct legal research | 1.50 | $250.00 | $375.00 |
| 388. | Reynolds, Peter v. FMC | 8/5/2014 | Daisy Ortiz | Draft meet and confer letter to Defense regarding responses to Discovery Requests; Conduct legal research | 2.00 | $225.00 | $450.00 |
| 389. | Richardson, Leann | 1/18/2017 | Thomas Burns | Draft letter to Defense to meet and confer re Def's discovery responses; Conduct legal research | 1.50 | $225.00 | $337.50 |
| 390. | Rico, Veronica v. Hyundai | 8/28/2015 | Christopher Swanson | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.30 | $375.00 | $487.50 |
| 391. | Rivera, Jorge v. FCA | 2/27/2017 | Thomas Burns | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $225.00 | $225.00 |
| 392. | Robles, Juan | 6/21/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 393. | Rocha, Michael | 7/18/2017 | Jennifer Ruiz | Draft letter to Defense to meet and confer re? Deft's discovery responses; Conduct legal research | 1.00 | $225.00 | $225.00 |
| 394. | Rodriguez, Angel | 12/28/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 2.30 | $200.00 | $460.00 |
| 395. | Rodriguez, Antonio | 4/21/2017 | Amy Morse | Draft meet and confer letter to Defense re Deft's discovery responses; Conduct legal research | 1.40 | $250.00 | $350.00 |
| 396. | Rodriguez, Jose v. General Motors | 2/27/2019 | Natalee Fisher | Draft letter to Defence to meet and confer re Def's discovery responses; conduct legal research | 1.00 | $250.00 | $250.00 |
| 397. | Romero, Marcos v. FCA | 11/20/2017 | Jennifer Ruiz | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $225.00 | $225.00 |
| 398. | Ronquillo, Faye v. FCA | 4/11/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.50 | $200.00 | $300.00 |
| 399. | Rosales, Ivan and Rodolfo v. FMC | 8/30/2016 | Michael Ouziel | Draft letter to Defense to meet and confer re FMC's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 400. | Roscoe, Eric | 11/22/2017 | Jennifer Ruiz | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.30 | $225.00 | $292.50 |
| 401. | Rowland, Dave and Phyllis v. FMC | 3/6/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 402. | Rubish, Edward Phillip v. FMC | 1/31/2017 | Michael Ouziel | Draft meet and confer letter to Defense re Deft's discovery responses; Conduct legal, research | 1.10 | $250.00 | $275.00 |
| 403. | Rueda Gonzalez, Victor AKA Victor Pueda and Pina Moreno, Lidia v. KMA | 1/29/2021 | Gregory A. Lehrmann | Draft letter to Defense to meet and confer re Defendant's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 404. | Rueda, Maria | 7/19/2017 | Jennifer Ruiz | Draft letter to Defense to meet and confer re Deft's Discovery Responses; Conduct legal research | 1.00 | $225.00 | $225.00 |
| 405. | Ruiz, Sylvia G. v. General Motors | 10/4/2018 | Amy Morse | Draft letter to Defense to meet and confer re GM's discovery responses; Conduct legal research | 1.50 | $350.00 | $525.00 |
| 406. | Ruiz, Yanira v. FCA | 6/19/2017 | Christopher Swanson | Draft meet and confer letter to Defense re Deft's discovery responses; conduct legal research | 1.10 | $350.00 | $385.00 |
| 407. | Rus, Robert Mark v. FCA | 1/21/2019 | George Semaan | Draft letter to Defense to meet and confer re FCA's responses to RFP, Set Two; conduct legal research | 0.50 | $225.00 | $112.50 |
| 408. | Ruvalcaba, Raul v. FMC | 1/16/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.60 | $250.00 | $400.00 |
| 409. | Sahagun, Kimberly | 6/22/2015 | Kevin Van Hout | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiffs' Special Interrogatories, Set One; Conduct legal research (pro-rata charge) | 1.25 | $300.00 | $375.00 |
| 410. | Sahagun, Kimberly | 9/23/2015 | Amy Morse | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiffs' First Set of Discovery Requests; Conduct legal research | 1.50 | $250.00 | $375.00 |
| 411. | Sahagun, Kimberly | 12/11/2015 | Amy Morse | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiffs' First Set of Discovery Requests; Conduct legal research | 0.75 | $250.00 | $187.50 |
| 412. | Sahagun, Kimberly | 1/11/2016 | Amy Morse | Draft meet and confer letter regarding Defendant's Responses to Plaintiffs' Discovery Requests; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 413. | Salas, Maria v. Hyundai | 7/28/2016 | Amy Morse | Draft letter to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 414. | Salazar, Virgina v. FCA | 6/14/2017 | Amy Morse | Draft letter to Defense re meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 415. | Salmeron, Alejandro Omeany v. FMC | 1/28/2019 | Kristina Stephenson-Cheang | Draft letter to Defense to meet and confer re Def's Discovery responses; Conduct legal research | 1.50 | $375.00 | $562.50 |
| 416. | Sanchez, Antonio v. Hyundai | 9/8/2016 | Amy Morse | Draft meet and confer letter to Defense Counsel re Deft's discovery responses; conduct legal research | 1.20 | $350.00 | $420.00 |
| 417. | Sanchez, Maria | 2/17/2017 | Thomas Burns | Draft letter to Defense Counsel to meet and confer re Defendant's discovery responses; Conduct legal research | 2.50 | $225.00 | $562.50 |
| 418. | Sandoval, Cinthya and Mercedes v. FMC | 2/27/2017 | Michael Ouziel | Draft meet and confer letter to Defense re Deft's, discovery responses; conduct legal research | 1.70 | $250.00 | $425.00 |
| 419. | Sands, Sean v. FMC | 7/19/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.60 | $350.00 | $560.00 |
| 420. | Santiago-Lopez, Fernando v. General Motors | 6/19/2018 | Natalee Fisher | Draft letter to Defense to meet and confer re, Defendant's discovery responses; conduct legal research | 1.00 | $250.00 | $250.00 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 421. | Schene, Donald and Sheri v. FMC | 2/7/2017 | Michael Ouziel | Draft letter to Defence to meet and confer re Deft's discovery responses; Conduct legal, research | 1.20 | $250.00 | $300.00 |
| 422. | Schilling, Adam | 12/7/2015 | Amy Morse | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiff's First Set of Discovery Requests; Conduct legal research | 2.50 | $250.00 | $625.00 |
| 423. | Scott, Paul | 12/12/2016 | Michelle Lumasag | Draft meet and confer letter to Defense re FCA's discovery responses; conduct legal research | 1.60 | $200.00 | $320.00 |
| 424. | Sekula, Carla | 1/11/2018 | Deepak Devabose | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.00 | $275.00 | $275.00 |
| 425. | Self, Sandy v. FCA | 6/6/2018 | Deepak Devabose | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.50 | $275.00 | $412.50 |
| 426. | Serrato, Elizabeth | 12/7/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Defendant's discovery responses; conduct legal research | 1.00 | $200.00 | $200.00 |
| 427. | Shavies, Leonard | 4/19/2017 | Amy Morse | Draft meet and confer letter to Defense re FCA's discovery responses; Conduct legal research | 1.80 | $350.00 | $630.00 |
| 428. | Siciliano, Avilio v. Kia | 9/23/2016 | Amy Morse | Draft letter to Defense to meet and confer re KIA's discovery responses; Conduct legal research | 1.20 | $350.00 | $420.00 |
| 429. | Siegel, M. v. FMC | 3/7/2014 | Daisy Ortiz | Draft letter to Defense to meet and confer re Def's discovery responses; Conduct legal research | 1.40 | $225.00 | $315.00 |
| 430. | Sikes, Brian | 6/22/2015 | Kevin Van Hout | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiffs' First Set of Special Interrogatories; Conduct legal research | 1.80 | $300.00 | $540.00 |
| 431. | Sikes, Brian | 9/23/2015 | Amy Morse | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiffs' First Set of Discovery Requests; Conduct legal research | 1.80 | $250.00 | $450.00 |
| 432. | Sikes, Brian | 11/11/2015 | Amy Morse | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiffs' First Set of Discovery Requests; Conduct legal research (split between 14 cases) | 0.10 | $250.00 | $25.00 |
| 433. | Silin, Brian v. FMC | 1/20/2017 | Michael Ouziel | Draft letter to Defense counsel to meet and confer re FMC's discovery responses; Conduct legal research | 1.10 | $250.00 | $275.00 |
| 434. | Simmons, Stephanie v. FMC | 1/30/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.50 | $250.00 | $375.00 |
| 435. | Skillman, Gary v. FMC | 3/7/2014 | Daisy Ortiz | Draft letter to Defense to meet and confer re Defendant's discovery responses; conduct legal research | 1.10 | $225.00 | $247.50 |
| 436. | Smith, Nathan v. FCA | 10/24/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Defendant's discovery responses; Conduct legal research | 1.30 | $200.00 | $260.00 |
| 437. | Son, Richard v. BMW | 1/9/2017 | Deepak Devabose | Draft letter to Defense to meet and confer re BMW's discovery requests; Conduct legal research | 1.30 | $275.00 | $357.50 |
| 438. | Soria, Steve | 10/31/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.50 | $200.00 | $300.00 |
| 439. | Soto, Cinthia FKA Cinthis Casa and Soto, Enrique v. KMA | 6/4/2020 | Maxwell Kreymer | Draft meet and confer letter to defense re Defendant's discovery responses; conduct legal research | 1.00 | $200.00 | $200.00 |
| 440. | Spelts, Douglas | 12/11/2015 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.70 | $350.00 | $595.00 |
| 441. | Straub, David v. Hyundai | 8/24/2016 | Amy Morse | Draft meet and confer letter to Defense Counsel re Defendant's Discovery Responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 442. | Strutt, Mollee Marie v,. FCA | 5/11/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.10 | $350.00 | $385.00 |
| 443. | Suarez, Leovigildo v. FMC | 5/19/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal, research | 1.00 | $250.00 | $250.00 |
| 444. | Sutton, Jeffrey v. HMA | 10/16/2017 | Daniel Kalinowski | Draft letter to Defense to meet and confer re, Defendant's discovery responses; Conduct legal research | 1.40 | $250.00 | $350.00 |
| 445. | Talamante, Jacinto v. Kia | 9/14/2016 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 446. | Talavera, Erika v. FCA | 7/19/2017 | Jennifer Ruiz | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.10 | $225.00 | $247.50 |
| 447. | Tanner, John v. FMC | 8/17/2015 | Russell Higgins | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $450.00 | $450.00 |
| 448. | Tapia, Christine v. Hyundai | 8/28/2015 | Christopher Swanson | Draft meet and confer letter to Defense Counsel re Defendant's Discovery Responses; Conduct legal research | 0.90 | $325.00 | $292.50 |
| 449. | Tasch, George v. FMC | 11/21/2018 | Amy Morse | Draft letter to Defense to meet and confer re Deft's Responses; Conduct legal research | 1.10 | $350.00 | $385.00 |
| 450. | Tashner, Joseph | 12/28/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.80 | $200.00 | $360.00 |
| 451. | Thomas, Brandon v. General Motors | 2/12/2019 | Natalee Fisher | Draft letter to Defense to meet and confer re Deft's Discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 452. | Thomas, Faye v. FCA | 6/18/2018 | Daniel Kalinowski | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 453. | Thomasian, Sara | 2/2/2017 | Thomas Burns | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 2.30 | $225.00 | $517.50 |
| 454. | Thompson, James | 7/18/2017 | Jennifer Ruiz | Draft letter to Defense re meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $225.00 | $0.00 |
| 455. | Tinoco, Xochitl | 10/24/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 456. | Tomkins, Craig v. FCA | 4/3/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 457. | Tovar, David and Rocio v. FCA | 5/18/2018 | Daniel Kalinowski | Draft letter to defense to meet and confer re FCA's discovery responses; conduct legal research | 1.00 | $250.00 | $250.00 |
| 458. | Tovar, David and Rocio v. FCA | 2/28/2019 | George Semaan | Draft letter to defense to meet and confer re FCA's discovery responses, Set Two; conduct legal research | 1.00 | $225.00 | $225.00 |
| 459. | Tripette, Leroy v. Hyundai | 9/5/2016 | Amy Morse | Draft meet and confer letter to Defense Counsel re Defendant's Discovery Responses; Conduct legal research | 2.20 | $350.00 | $770.00 |
| 460. | Tripp, Jason | 6/14/2017 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 0.80 | $350.00 | $280.00 |
| 461. | Tuazon, Teodora and Joshua v. KMA | 5/2/2018 | George Semaan | Draft letter to Defense to meet and confer re Defendant's discovery responses; Conduct legal research | 1.00 | $225.00 | $225.00 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 462. | Tuazon, Teodora and Joshua v. KMA | 2/21/2019 | Daniel Kalinowski | Draft letter to Defense to meet and confer re Deft's responses to Ptfs ' second set of discovery requests; Conduct legal research | 0.60 | $250.00 | $150.00 |
| 463. | Tuell, Andrew for Tuell Concrete v. FMC | 8/26/2016 | Michael Ouziel | Draft meet and confer letter to Defense re Defendant's Discovery Responses; Conduct legal research | 1.50 | $250.00 | $375.00 |
| 464. | Tuell, Andrew for Tuell Concrete v. FMC | 9/22/2016 | Michael Ouziel | Draft meet and confer letter to Defense Counsel re Defendant's 9/12/16 letter and Discovery Responses; Conduct legal research | 2.80 | $250.00 | $700.00 |
| 465. | Tuey, Valinda | 11/2/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 2.10 | $200.00 | $420.00 |
| 466. | Valencia, Miguel | 1/5/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.70 | $200.00 | $340.00 |
| 467. | Valenton, Maria v. FCA | 2/28/2017 | Thomas Burns | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.50 | $225.00 | $337.50 |
| 468. | Vanegas, David v. Hyundai | 3/10/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.10 | $350.00 | $385.00 |
| 469. | Vargas, Josefa | 10/27/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.00 | $200.00 | $200.00 |
| 470. | Vasquez, Efrain and Vasquez, Michelle v. FMC | 11/23/2016 | Michael Ouziel | Draft letter to defense to meet and confer re FMC's discovery responses; Conduct legal research (14 p) | 1.50 | $250.00 | $375.00 |
| 471. | Vasquez, Gabriel v. Hyundai | 9/8/2016 | Amy Morse | Draft meet and confer letter to Defense Counsel re Defendant 's Responses; Conduct, legal research | 1.50 | $250.00 | $375.00 |
| 472. | Vasquez, Jesus | 6/14/2017 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.50 | $350.00 | $525.00 |
| 473. | Vasquez, Rosalva | 3/13/2015 | Daisy Ortiz | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiff's First Set of Discovery Requests; Conduct legal research | 1.00 | $225.00 | $225.00 |
| 474. | Vega, Alejandra v. BMW | 2/28/2017 | Deepak Devabose | Draft letter to Defense to meet and confer re BMW's discovery responses; Conduct legal research | 1.00 | $275.00 | $275.00 |
| 475. | Vega, Maria v. FCA | 8/24/2016 | Amy Morse | Draft meet and confer letter to Defense re Deft's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 476. | Velazquez v. FCA | 12/7/2016 | Michelle Lumasag | Draft meet and confer letter to Defense re FCA's discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 477. | Vidal, Beverly v. FMC | 11/29/2016 | Michael Ouziel | Draft letter to Defense Counsel to meet and confer re Defendant's Discovery responses; Conduct legal research | 1.70 | $250.00 | $425.00 |
| 478. | Villalta, Jose & Chacon, Karla v. FCA | 5/14/2019 | Sundeep Samra | Draft letter to Defense to meet and confer re Def's discovery responses; conduct legal research | 1.00 | $225.00 | $225.00 |
| 479. | Vivo, Gary v. Kia | 3/7/2017 | Deepak Devabose | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.00 | $275.00 | $275.00 |
| 480. | Waggener Paul | 6/19/2017 | Christopher Swanson | Draft letter to defense counsel to meet and confer re FCA's discovery responses; conduct legal research | 1.20 | $350.00 | $420.00 |
| 481. | Warren, Shirlean v. Kia | 3/16/2015 | Daisy Ortiz | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiff's Discovery Requests; Conduct legal research | 1.20 | $225.00 | $270.00 |
| 482. | Washington, Sharon v. Kia | 7/12/2018 | George Semaan | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct Legal research | 1.00 | $225.00 | $225.00 |
| 483. | Watkins, Donmna v. FMC | 2/5/2014 | Daisy Ortiz | Draft letter to Defense to meet and confer re Defendant's discovery responses; Conduct legal research | 1.50 | $225.00 | $337.50 |
| 484. | Watts, Cleveland v. FMC | 3/7/2014 | Daisy Ortiz | Draft letter to Defense to meet and confer re Ford's discovery responses; Conduct legal research | 1.10 | $225.00 | $247.50 |
| 485. | Watts, Sherri v. FCA | 6/12/2017 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.50 | $350.00 | $525.00 |
| 486. | Weakley, Robert and Weakley, Brenda v. FMC | 1/20/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re FMC's discovery responses; Conduct legal research | 1.40 | $250.00 | $350.00 |
| 487. | WELCH V.FMC | 6/2/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal, research | 1.00 | $250.00 | $250.00 |
| 488. | West, Marilyn v. Hyundai | 9/8/2016 | Amy Morse | Draft letter to Opposing Counsel to meet and confer re Dft's discovery responses; Conduct legal research | 0.90 | $250.00 | $225.00 |
| 489. | Weston, Celie v. FCA | 1/23/2017 | Thomas Burns | Draft letter to Defense Counsel to meet and confer re Deft's discovery responses; conduct legal research | 1.40 | $225.00 | $315.00 |
| 490. | White, Bryan v. Hyundai | 9/2/2016 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.20 | $350.00 | $420.00 |
| 491. | Whitehouse, James v. FCA | 1/25/2017 | Thomas Burns | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.40 | $225.00 | $315.00 |
| 492. | Williams, Gregory | 1/5/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.90 | $200.00 | $380.00 |
| 493. | Williams, Monte | 1/25/2017 | Thomas Burns | Draft letter to Defense to meet and confer re FCA 's discovery responses; Conduct legal research | 1.90 | $225.00 | $427.50 |
| 494. | Wu, Wei | 1/18/2017 | Thomas Burns | Draft meet and confer letter to Defense re Deft's discovery responses; Conduct legal research | 1.90 | $225.00 | $427.50 |
| 495. | Yazdanniaz, Shahriar v. FCA | 5/15/2018 | Daniel Kalinowski | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 496. | Yee, Donald K. v. FMC | 12/8/2015 | Russell Higgins | Draft letter to Defense Counsel to meet and confer re Defendant's discovery responses; Conduct legal research | 1.00 | $400.00 | $400.00 |
| 497. | Yoshikawa, Sue | 3/13/2015 | Daisy Ortiz | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiff's First Set of Discovery Requests; Conduct legal research | 1.50 | $225.00 | $337.50 |
| 498. | YOUNG V.FMC | 7/25/2017 | Amy Morse | Draft letter to Defense to meet and confer re FMC's discovery responses; Conduct legal, research | 1.60 | $350.00 | $560.00 |
| 499. | Young, Teresa v. FCA | 4/3/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.10 | $200.00 | $220.00 |
| 500. | Zuniga, Lucia v. FCA | 10/24/2016 | Michelle Lumasag | Draft letter to defense counsel to meet and confer re FCA's discovery responses; conduct legal research | 2.10 | $200.00 | $420.00 |
| 501. | Zur, Ofer | 12/8/2015 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| | | | | | **642.25** | | **$172,591.25** |

# EXHIBIT B

Drafting RFAs

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 1. | Aandahl, Nancy v. FCA | 8/24/2016 | Amy Morse | Draft RFA to FCA and Declaration | 1.00 | $350.00 | $350.00 |
| 2. | Acosta, Richard v. FCA | 9/26/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.30 | $350.00 | $455.00 |
| 3. | Adams, Robert v. Hyundai | 11/17/2016 | Amy Morse | Draft RFA to Deft and Declaration | 0.70 | $350.00 | $245.00 |
| 4. | Aguilar, Gerardo v. General Motors LLC | 5/28/2019 | Amy Morse | Draft RFA to Defendant | 0.60 | $350.00 | $210.00 |
| 5. | Aguilera, Christina v. FCA | 9/21/2016 | Amy Morse | Draft RFAs and Declaration to FCA | 1.10 | $350.00 | $385.00 |
| 6. | Aispuro, Lazaro v. FMC | 1/17/2019 | Deepak Devabose | Draft RFA to Deft | 0.50 | $275.00 | $137.50 |
| 7. | Alegre, Stephen v. FMC | 10/24/2016 | Amy Morse | Draft RFA to Deft and Declaration | 1.00 | $350.00 | $350.00 |
| 8. | Alfaro, Walter v. KMA | 9/12/2018 | Kristina Stephenson-Cheang | Draft RFA to KMA | 0.40 | $375.00 | $150.00 |
| 9. | Alimonti, Anthony v. FMC | 10/29/2013 | Daisy Ortiz | Draft RFA to Deft and Declaration | 1.40 | $225.00 | $315.00 |
| 10. | Allem, Renee v. FCA | 9/11/2015 | Russell Higgins | Draft First Set of RFA to Defendant | 0.50 | $400.00 | $200.00 |
| 11. | Allen, Marty & Sandra v. Kia Motors | 2/2/2018 | Kristina Stephenson-Cheang | Draft RFA to KMA and Declaration | 0.80 | $375.00 | $300.00 |
| 12. | Allen, Marty & Sandra v. Kia Motors | 9/12/2018 | Amy Morse | Draft RFA to Defendant, Set Two | 0.20 | $350.00 | $70.00 |
| 13. | Alonso, Manuel v. FCA | 3/21/2017 | Amy Morse | Draft RFAs to Deft and declaration | 1.30 | $350.00 | $455.00 |
| 14. | Alvarado, Edgar v. Kia Motors | 1/7/2016 | Russell Higgins | Draft Plaintiff's First Set of RFA and Declaration | 0.80 | $400.00 | $320.00 |
| 15. | Alvarez, Andres v. FCA | 10/31/2016 | Amy Morse | Draft RFA to FCA and Declaration | 1.20 | $350.00 | $420.00 |
| 16. | Alvarez, Ramon and Geralyn v, FMC | 11/7/2017 | Kristina Stephenson-Cheang | Draft RFAs to FMC and Declaration | 1.40 | $375.00 | $525.00 |
| 17. | Alvernaz, Eulalia v. Hyundai | 12/26/2016 | Amy Morse | Draft RFA to Deft and Declaration | 0.60 | $350.00 | $210.00 |
| 18. | Anderson, Shelby v. FMC | 10/22/2013 | Daisy Ortiz | Draft RFA to Defendant and Declaration | 1.50 | $225.00 | $337.50 |
| 19. | Aqueveque, Christian v. FCA | 2/26/2017 | Amy Morse | Draft RFAs to Defendant and Declaration | 1.40 | $350.00 | $490.00 |
| 20. | Archambo, Brian v. FCA | 11/30/2016 | Amy Morse | Draft RFAs and Declaration | 0.70 | $350.00 | $245.00 |
| 21. | Archibald, Kandi v. FCA | 2/14/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.40 | $350.00 | $490.00 |
| 22. | Ardon, Ligia v. FCA | 8/19/2016 | Amy Morse | Draft RFAs to FCA and declaration | 1.00 | $350.00 | $350.00 |
| 23. | Arias, Ana v. FMC | 4/25/2019 | Mitchell Rosensweig | Draft RFA to Deft | 1.50 | $325.00 | $487.50 |
| 24. | Arragon, Joe and Ruby v. FMC | 6/21/2016 | Russell Higgins | Draft Plf's' RFA and Declaration | 1.30 | $400.00 | $520.00 |
| 25. | Arriaga, Lilian v. FMC | 11/15/2018 | Deepak Devabose | Draft RFA to Deft | 1.10 | $275.00 | $302.50 |
| 26. | Aspinall, John v. Kia | 6/9/2015 | Daisy Ortiz | Draft RFA to Kia | 0.40 | $225.00 | $90.00 |
| 27. | Audo, Raad v. FCA | 7/20/2016 | Amy Morse | Draft RFA to Deft and Declaration | 1.20 | $250.00 | $300.00 |
| 28. | Avina, Peter v. FCA | 8/20/2016 | Amy Morse | Draft RFAs to FCA | 0.90 | $350.00 | $315.00 |
| 29. | AYBARTH V. FMC | 7/8/2016 | Russell Higgins | Draft RFA to FMC | 0.50 | $400.00 | $200.00 |
| 30. | Ayers, Scott and Marsovszki, Ilona v. Hyundai | 3/23/2016 | Russell Higgins | Draft Plaintiffs' RFAs to Deft and Declaration | 0.60 | $400.00 | $240.00 |
| 31. | BAHNA v. FMC | 4/25/2016 | Russell Higgins | Draft Plfs' RFA and Declaration | 1.40 | $400.00 | $560.00 |
| 32. | Ballasteros, Miguel v. Hyundai | 3/1/2016 | Amy Morse | Draft RFAs to Deft and Declaration | 0.70 | $350.00 | $245.00 |
| 33. | BARHONA SALINAS v. FMC | 12/28/2016 | Amy Morse | Draft RFAs to Deft | 0.50 | $350.00 | $175.00 |
| 34. | BARHONA SALINAS v. FMC | 3/8/2017 | Amy Morse | Draft RFAs to Deft and Declaration, Set Two | 0.20 | $350.00 | $70.00 |
| 35. | Barnaba, Barbara v. FCA | 12/20/2016 | Amy Morse | Draft RFA to Deft and Declaration, Set One | 1.00 | $350.00 | $350.00 |
| 36. | Barnaba, Barbara v. FCA | 2/14/2017 | Amy Morse | Draft RFAs to Deft and Declaration, Set Two | 1.10 | $350.00 | $385.00 |
| 37. | Barr, Barbera v. FCA | 2/10/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.00 | $350.00 | $350.00 |
| 38. | Barredo, Theresa v. FCA | 10/8/2015 | Russell Higgins | Draft RFA to Deft | 0.50 | $450.00 | $225.00 |
| 39. | Barrera, Jose v. FCA | 7/10/2015 | Daisy Ortiz | Draft Plaintiff's First Set of RFA to Defendant | 0.40 | $225.00 | $90.00 |
| 40. | Barrera, Jose v. FCA | 7/28/2016 | Amy Morse | Draft RFA to Deft and Declaration | 1.00 | $350.00 | $350.00 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 41. | Bartlett, Anthony v. FMC | 1/31/2017 | Amy Morse | Draft RFA to Deft and Declaration | 0.80 | $350.00 | $280.00 |
| 42. | Base, Galen v. FCA | 1/31/2017 | Amy Morse | Draft RFAs to Deft and Declaration | 1.00 | $350.00 | $350.00 |
| 43. | Base, Galen v. FCA | 12/13/2017 | Deepak Devabose | Draft RFAs to Deft | 0.90 | $275.00 | $247.50 |
| 44. | Batchelor, Jon Dale v. FCA | 9/19/2018 | Kristina Stephenson-Cheang | Draft RFAs to FCA and Declaration | 1.00 | $375.00 | $375.00 |
| 45. | Bauman, Alexander and Melissa Lynn v. FMC | 10/31/2018 | Deepak Devabose | Draft RFA to FMC | 0.80 | $275.00 | $220.00 |
| 46. | Bell, Everett v. FCA | 1/18/2017 | Amy Morse | Draft RFAs to Deft and Declaration | 1.00 | $350.00 | $350.00 |
| 47. | Bellamy, Tarisa v. Mercedes Benz | 1/28/2016 | Amy Morse | Draft Plaintiff's RFA and Declaration | 0.80 | $250.00 | $200.00 |
| 48. | Bellamy, Tarisa v. Mercedes Benz | 5/26/2016 | Christopher Swanson | Draft Plaintiff's RFA to Defendant, Set Two and Declaration | 0.30 | $325.00 | $97.50 |
| 49. | Bellamy, Tarisa v. Mercedes Benz | 9/26/2016 | Christopher Swanson | Draft Plaintiff's RFA, Set Three and Declaration | 0.20 | $325.00 | $65.00 |
| 50. | Beltran, Angel v. FMC | 11/7/2017 | Kristina Stephenson-Cheang | Draft RFA to Def and Declaration | 1.70 | $375.00 | $637.50 |
| 51. | Beltran, Cesar v. FCA | 7/25/2016 | Amy Morse | Draft RFA to Deft and Declaration | 1.30 | $350.00 | $455.00 |
| 52. | Benavidez, Elizabeth and Carolina v. Kia | 5/19/2020 | Amy Morse | Draft RFA to KMA and Declaration | 0.60 | $350.00 | $210.00 |
| 53. | Bendersky, Yan and Bendersky, Tanya v. BMW | 7/1/2015 | Daisy Ortiz | Draft RFA to Deft | 0.40 | $225.00 | $90.00 |
| 54. | Benjamin, Robert v. FCA | 7/28/2017 | Kristina Stephenson-Cheang | Draft RFA to FCA and Declaration | 0.90 | $375.00 | $337.50 |
| 55. | Benson, Brent and Pamela v. FMC | 9/18/2018 | Kristina Stephenson-Cheang | Draft RFA to FMC and Declaration | 1.40 | $375.00 | $525.00 |
| 56. | Berg, Timothy v. FMC | 11/22/2013 | Daisy Ortiz | Draft RFAs to Deft and Declaration | 2.00 | $225.00 | $450.00 |
| 57. | Berriozabal, Oscar v. FCA | 7/13/2015 | Daisy Ortiz | Draft RFA to FCA, Set One | 0.50 | $225.00 | $112.50 |
| 58. | Berry, Travis v. FCA | 9/27/2016 | Amy Morse | Draft RFA and Declaration to FCA | 1.10 | $350.00 | $385.00 |
| 59. | Bishop, Richard Lee v. FMC | 7/8/2016 | Russell Higgins | Draft RFA and Declaration to Defendant | 1.00 | $400.00 | $400.00 |
| 60. | Black, Edith Suzanne v. FCA | 7/10/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and Declaration | 1.30 | $375.00 | $487.50 |
| 61. | Blackburn, Michelle v. FCA | 7/27/2017 | Kristina Stephenson-Cheang | Draft RFAs to defendant and declaration | 1.30 | $375.00 | $487.50 |
| 62. | Blancas-Morales, Joana and Rocha, Javier v. KMA | 5/2/2018 | Kristina Stephenson-Cheang | Draft RFA to KMA | 0.40 | $375.00 | $150.00 |
| 63. | Blasco Real Estate v. FCA | 9/25/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.50 | $350.00 | $525.00 |
| 64. | Bolton, Harry v. FMC | 10/26/2016 | Amy Morse | Draft RFA to Deft | 0.50 | $350.00 | $175.00 |
| 65. | Bowser, R. v. Ford | 2/10/2014 | Daisy Ortiz | Draft RFA to FMC and Declaration | 1.40 | $225.00 | $315.00 |
| 66. | Boyer, Leon v. BMW | 9/27/2016 | Amy Morse | Draft Plf's RFAs to Deft and declaration | 1.10 | $350.00 | $385.00 |
| 67. | Braden, Teresa v. FCA | 6/8/2016 | Russell Higgins | Draft RFAs to Deft and Declaration | 0.80 | $450.00 | $360.00 |
| 68. | Branam, Kimberly v. FMC | 7/25/2018 | Kristina Stephenson-Cheang | Draft Ptf's RFA to FMC and declaration | 0.50 | $375.00 | $187.50 |
| 69. | Bratton, Christina v. FCA | 2/28/2017 | Amy Morse | Draft RFA to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 70. | Bratton, Christina v. FCA | 7/25/2017 | Alastair Hamblin | Draft Plaintiffs' RFA to FCA | 1.00 | $325.00 | $325.00 |
| 71. | Bravo, Tanya v. FCA | 7/10/2015 | Daisy Ortiz | Draft Plaintiff's First Set of RFA to Defendant | 0.40 | $225.00 | $90.00 |
| 72. | Brezil, James v. FCA | 10/10/2016 | Amy Morse | Draft RFA to Deft and Declaration | 1.10 | $350.00 | $385.00 |
| 73. | Brod, Jason v. FCA | 10/21/2016 | Amy Morse | Draft RFA to Deft and Declaration | 1.60 | $350.00 | $560.00 |
| 74. | Brown, Robert v. FMC | 10/3/2013 | Daisy Ortiz | Draft RFGs and RFAs to Deft and Declaration | 2.10 | $225.00 | $472.50 |
| 75. | Buck, Denise and Buck, Shirlee v. FMC | 11/17/2014 | Daisy Ortiz | Draft Plaintiffs' First Set of RFA and Declaration | 1.50 | $225.00 | $337.50 |
| 76. | Buck, Denise and Buck, Shirlee v. FMC | 6/14/2016 | Lauren Ungs | Draft Plaintiffs' Third Set of RFA | 0.60 | $375.00 | $225.00 |
| 77. | Buckman, Lisa v. FCA | 3/23/2017 | Amy Morse | Draft RFAs to Deft and declaration | 1.10 | $350.00 | $385.00 |
| 78. | Bugiel, Joshua v. FMC | 6/12/2017 | Kristina Stephenson-Cheang | Draft RFA to Deft and Declaration | 1.00 | $350.00 | $350.00 |
| 79. | Bulcao, Beatriz v. FCA | 2/26/2017 | Amy Morse | Draft Ptfs' RFA to FCA and declaration | 1.10 | $350.00 | $385.00 |

Drafting RFAs

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 80. | Burciaga, Esperanza and Pedro v. KMA | 8/30/2018 | Kristina Stephenson-Cheang | Draft Pltfs' RFA to KIA | 0.40 | $375.00 | $150.00 |
| 81. | Burgess v FMC | 1/11/2017 | Amy Morse | Draft RFAs to Deft and declaration | 0.80 | $350.00 | $280.00 |
| 82. | Burstein, Bruce and Linda v. Ford Motor Company | 11/3/2015 | Russell Higgins | Draft First Set of RFA to Deft | 0.60 | $400.00 | $240.00 |
| 83. | Cabada, Jose L. and Cabada, Graciela v. FMC | 4/18/2016 | Russell Higgins | Draft RFAs to Deft | 0.40 | $400.00 | $160.00 |
| 84. | Cagle, Aaron v. FCA | 3/23/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.00 | $350.00 | $350.00 |
| 85. | Calcaterra, Richard v. FCA | 2/6/2017 | Amy Morse | Draft RFAs to Deft and declaration | 1.20 | $350.00 | $420.00 |
| 86. | Canizalez, Norman v. KIA | 9/30/2016 | Amy Morse | Draft RFA to Defendant | 0.60 | $350.00 | $210.00 |
| 87. | Cantalupo, Jerry v. FMC | 7/5/2017 | Kristina Stephenson-Cheang | Draft RFAs to FMC and Declaration | 0.80 | $375.00 | $300.00 |
| 88. | Cappel, Kristin v. FCA | 7/23/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 89. | Caro, Othon Jr., v. BMW | 8/24/2017 | Kristina Stephenson-Cheang | Draft RFA to Defts | 0.60 | $350.00 | $210.00 |
| 90. | Carrera Lucia and Lopez, After v.FMC | 2/5/2019 | Mitchell Rosensweig | Draft RFA to Def | 0.90 | $325.00 | $292.50 |
| 91. | Carrillo, Nisa v. FCA | 6/13/2017 | Kristina Stephenson-Cheang | Draft RFAs and Declaration to FCA | 1.40 | $375.00 | $525.00 |
| 92. | Carruthers, Anthony v. FCA | 2/10/2017 | Amy Morse | Draft RFA to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 93. | Carthy, Heather v. FCA | 11/6/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.30 | $350.00 | $455.00 |
| 94. | Castaneda, Sara v. Hyundai | 1/13/2017 | Amy Morse | Draft RFAs to Defendant and Declaration | 1.00 | $350.00 | $350.00 |
| 95. | CASTILLO v. FMC | 10/5/2016 | Amy Morse | Draft RFA to Deft and Declaration | 0.80 | $350.00 | $280.00 |
| 96. | Castillo, Ellen Renee v. FMC | 7/27/2018 | Kristina Stephenson-Cheang | Draft RFAs to Def | 0.50 | $375.00 | $187.50 |
| 97. | Castillo, Hugo v. FCA | 2/19/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 0.60 | $350.00 | $210.00 |
| 98. | Castillo, Luis and Gonzalez, Yesenia v. Kia | 2/12/2016 | Amy Morse | Draft RFA to Defendant and Declaration | 0.80 | $250.00 | $200.00 |
| 99. | Castro, RV FMC | 11/18/2016 | Amy Morse | Draft RFAs to Deft and declaration | 0.80 | $350.00 | $280.00 |
| 100. | Cavalleri, Nicholas v. FCA | 7/28/2016 | Amy Morse | Draft RFA to FCA and Declaration | 1.20 | $250.00 | $300.00 |
| 101. | Celestine, Larry v. FCA | 8/24/2017 | Alastair Hamblin | Draft RFA to Def | 0.80 | $325.00 | $260.00 |
| 102. | CERDA v.FMC | 11/5/2016 | Amy Morse | Draft RFA to Deft and Declaration | 0.70 | $350.00 | $245.00 |
| 103. | Cervantes-Juarez, Silva v. Hyundai | 4/19/2016 | Russell Higgins | Draft RFAs to Deft and Declaration | 1.40 | $450.00 | $630.00 |
| 104. | Chapman, Richard E. v. Hyundai Motor America | 1/8/2017 | Amy Morse | Draft RFAs to Deft and declaration | 0.90 | $350.00 | $315.00 |
| 105. | Chavez, Fernanda v. FCA | 12/22/2016 | Amy Morse | Draft RFAs to Deft | 0.50 | $350.00 | $175.00 |
| 106. | Chavez, Fernanda v. FCA | 2/17/2017 | Amy Morse | Draft RFAs to Deft and Declaration, Set Two | 0.50 | $350.00 | $175.00 |
| 107. | Chavez, Jose Luis v. GM | 6/19/2019 | Amy Morse | Draft RFA to Deft and Declaration | 0.90 | $350.00 | $315.00 |
| 108. | Chikahiro, Dwayne K. v. FMC | 12/29/2017 | Kristina Stephenson-Cheang | Draft RFA to Def | 0.50 | $375.00 | $187.50 |
| 109. | Chirinos, Jose v. Ford Motor Company | 10/13/2016 | Amy Morse | Draft RFA to Deft and Declaration | 0.80 | $350.00 | $280.00 |
| 110. | Chivas, Robert J v.FMC | 11/16/2018 | Kristina Stephenson-Cheang | Draft Ptf's RFA to Deft and Declaration | 1.50 | $375.00 | $562.50 |
| 111. | Choi, Andrew v. Hyundai | 6/8/2016 | Russell Higgins | Draft RFAs to Deft | 0.60 | $450.00 | $270.00 |
| 112. | Choi, Kayla v. BMW | 11/12/2016 | Amy Morse | Draft RFAs to BMW and Declaration | 1.20 | $350.00 | $420.00 |
| 113. | Christensen v. FMC | 10/22/2016 | Amy Morse | Draft RFAs to Deft | 0.40 | $350.00 | $140.00 |
| 114. | Cieslikowski, Carl and Cieslikowski, Cathy v. | 2/25/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.40 | $350.00 | $490.00 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 115. | Cieslikowski, Carl and Cieslikowski, Cathy v. | 11/9/2017 | Deepak Devabose | Draft Ptfs' RFAs to FCA | 0.80 | $275.00 | $220.00 |
| 116. | Cisneros, Jose v. FCA | 4/22/2017 | Kristina Stephenson-Cheang | Draft RFA to FCA | 0.50 | $375.00 | $187.50 |
| 117. | Clamar, Mario v. FCA | 11/18/2019 | Amy Morse | Draft RFA to FCA and Declaration | 1.40 | $350.00 | $490.00 |
| 118. | Clark, K. v. FMC | 1/30/2017 | Amy Morse | Draft RFAs to Deft | 0.40 | $350.00 | $140.00 |
| 119. | Clark, K. v. FMC | 3/8/2017 | Amy Morse | Draft RFAs to Deft and declaration, Set Two | 0.20 | $350.00 | $70.00 |
| 120. | Clement, Margaret v. FCA | 10/6/2016 | Amy Morse | Draft RFAs to Defts and declaration | 1.10 | $350.00 | $385.00 |
| 121. | Codd, Joshua and Delgado, Tracy v. FMC | 5/16/2017 | Kristina Stephenson-Cheang | Draft RFA to Deft and Declaration | 1.10 | $375.00 | $412.50 |
| 122. | Codero, Anthony v. HMA | 3/6/2018 | Kristina Stephenson-Cheang | Draft RFAs to HMA and Declaration | 0.90 | $375.00 | $337.50 |
| 123. | Coffman, Lisa v. FCA | 9/29/2016 | Amy Morse | Draft RFA to Deft | 0.50 | $350.00 | $175.00 |
| 124. | Cofield, Jerry v. Kia | 2/23/2015 | Daisy Ortiz | Draft Plaintiffs' First Set of RFA | 0.50 | $225.00 | $112.50 |
| 125. | Conkle, Michelle v. FCA | 7/5/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and Declaration | 1.20 | $375.00 | $450.00 |
| 126. | Cook, Jonathan v. Hyundai | 12/23/2016 | Amy Morse | Draft RFA to Deft and Declaration | 0.90 | $350.00 | $315.00 |
| 127. | Corona, Juan Jose v. FMC | 7/25/2018 | Kristina Stephenson-Cheang | Draft RFA to Deft | 0.60 | $375.00 | $225.00 |
| 128. | Costa, Sandra v. FCA | 2/28/2017 | Amy Morse | Draft RFAs to Deft and Declaration | 1.20 | $350.00 | $420.00 |
| 129. | Coulombe, Frank v. FCA | 9/26/2016 | Amy Morse | Draft RFAs to Defts and declaration | 1.10 | $350.00 | $385.00 |
| 130. | Covert, Eric v. FCA | 1/15/2017 | Amy Morse | Draft RFA to FCA and Declaration | 1.40 | $350.00 | $490.00 |
| 131. | Cox, John v. FCA | 11/20/2016 | Amy Morse | Draft RFA, set one to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 132. | Cox, John v. FCA | 2/20/2017 | Amy Morse | Draft RFA to FCA, Set Two and Declaration | 0.60 | $350.00 | $210.00 |
| 133. | Cramer, Eva v. FCA | 10/30/2016 | Amy Morse | Draft RFA to Defts and Declaration | 1.30 | $350.00 | $455.00 |
| 134. | Cuevas, Richard v. FCA | 2/26/2017 | Amy Morse | Draft RFAs to FCA | 1.20 | $350.00 | $420.00 |
| 135. | Darchuk, Vasiliy v. Hyundai | 12/28/2016 | Amy Morse | Draft RFAs to HMA and Declaration | 0.60 | $350.00 | $210.00 |
| 136. | Daria, Ronald v. BMW | 11/17/2016 | Amy Morse | Draft Ptf's RFAs and Declaration | 2.00 | $350.00 | $0.00 |
| 137. | Daria, Ronald v. BMW | 9/20/2017 | Kristina Stephenson-Cheang | Draft Ptf's RFAs and Declaration | 1.20 | $375.00 | $450.00 |
| 138. | Davis, Matthew v. FCA | 2/13/2017 | Amy Morse | Draft RFAs and Declaration to Defts | 1.10 | $350.00 | $385.00 |
| 139. | DeAngelis, Donald & Shelby v. FMC | 2/12/2014 | Daisy Ortiz | Draft RFA to Ford and Declaration | 1.70 | $225.00 | $382.50 |
| 140. | Del Valle v. FMC | 4/27/2017 | Amy Morse | Draft RFAs to Deft | 0.50 | $350.00 | $175.00 |
| 141. | DELEO v.FMC | 11/18/2015 | Russell Higgins | Draft RFA to Deft and Declaration | 0.80 | $400.00 | $320.00 |
| 142. | Delgadillo, Christian R and Martinez, Rigober | 2/16/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 143. | Dertina, Damon v. BMW | 12/18/2015 | Russell Higgins | Draft Ptf's RFAs and Declaration | 0.70 | $450.00 | $315.00 |
| 144. | Desimone, Tom v. HMA | 3/2/2016 | Amy Morse | Draft RFA to HMA | 0.50 | $350.00 | $175.00 |
| 145. | Di Martino, Chiara v. Hyundai | 12/28/2016 | Amy Morse | Draft RFAs to Deft | 0.50 | $350.00 | $175.00 |
| 146. | Di Martino, Chiara v. Hyundai | 6/30/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft, Set Two | 0.20 | $375.00 | $75.00 |
| 147. | Diarra, Monica v. FCA | 1/29/2018 | Kristina Stephenson-Cheang | Draft RFAs to FCA | 0.50 | $375.00 | $187.50 |
| 148. | DIAZ, ALBERTO v. FMC | 5/12/2017 | Kristina Stephenson-Cheang | Draft RFA to Deft and Declaration | 0.80 | $375.00 | $300.00 |
| 149. | Dienes, Leon v. FCA | 1/5/2017 | Alastair Hamblin | Draft RFA to Deft | 0.90 | $325.00 | $292.50 |
| 150. | DiGioia, Anna Marie v. FMC | 10/31/2018 | Deepak Devabose | Draft Ptf's RFA to FMC | 0.70 | $275.00 | $192.50 |
| 151. | Dill, Terri Anne v. Hyundai | 6/17/2015 | Daisy Ortiz | Draft RFAs to Deft | 0.30 | $225.00 | $0.00 |
| 152. | Dombrowski, Bruce and Dombrowski, Nancy v. FM | 6/23/2015 | Daisy Ortiz | Draft RFAs to Defendant | 0.60 | $225.00 | $135.00 |
| 153. | Dominguez v. FMC | 7/6/2017 | Kristina Stephenson-Cheang | Draft RFA to Deft and Declaration | 0.90 | $350.00 | $315.00 |
| 154. | Donner, David and Donner, Kathleen v. FCA | 1/27/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.20 | $350.00 | $420.00 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 155. | Donner, David and Donner, Kathleen v. FCA | 12/7/2017 | Deepak Devabose | Draft Ptfs' RFAs to FCA | 0.80 | $275.00 | $220.00 |
| 156. | Dosanjh, Jaspal v. Hyundai | 4/20/2016 | Russell Higgins | Draft RFAs to HMA and Declaration | 0.90 | $450.00 | $405.00 |
| 157. | DUENAS v. FMC | 1/30/2017 | Amy Morse | Draft RFAs to Deft and Declaration | 0.80 | $350.00 | $280.00 |
| 158. | DuFord, William v. FMC | 6/4/2016 | Russell Higgins | Draft RFA to Deft and Declaration | 0.60 | $400.00 | $240.00 |
| 159. | Dugan, Teri v. FMC | 7/23/2018 | Kristina Stephenson-Cheang | Draft RFA to Ford | 0.80 | $375.00 | $300.00 |
| 160. | Duk v. Ford | 10/13/2016 | Amy Morse | Draft RFAs to Deft and Declaration | 0.70 | $350.00 | $245.00 |
| 161. | Dunfee, Ann and Dunfee, Robert | 6/22/2015 | Daisy Ortiz | Draft Plaintiffs' First Set of RFA | 0.50 | $225.00 | $112.50 |
| 162. | Durgana, Bibi v. FCA | 1/29/2017 | Amy Morse | Draft RFAs to Deft and Declaration | 1.30 | $350.00 | $455.00 |
| 163. | Duwe v.FMC | 6/23/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and declaration | 0.80 | $375.00 | $300.00 |
| 164. | Edralin, Daniel v. FCA | 10/22/2016 | Amy Morse | Draft RFA to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 165. | Egger, Rudy Warren v. FCA | 2/3/2017 | Amy Morse | Draft RFA to FCA and Declaration | 1.40 | $350.00 | $490.00 |
| 166. | Emmons, Melissa aka Young, Melissa v. FMC | 11/30/2016 | Michael Ouziel | Draft RFAs to Deft and Declaration | 0.80 | $250.00 | $200.00 |
| 167. | Emmons, Melissa aka Young, Melissa v. FMC | 7/17/2018 | Amy Morse | Draft RFAs, Set Two to Deft and Declaration | 0.90 | $350.00 | $315.00 |
| 168. | Encarnacion V. FMC | 10/4/2016 | Amy Morse | Draft RFAs to Deft and declaration | 0.80 | $350.00 | $280.00 |
| 169. | Erbe, Gabriel v. FCA | 5/24/2018 | Kristina Stephenson-Cheang | Draft RFAs to Def | 0.60 | $375.00 | $225.00 |
| 170. | Escalante, Alberto v. FCA | 2/8/2017 | Amy Morse | Draft RFAs to FCA | 1.00 | $350.00 | $350.00 |
| 171. | Espinoza, Alfredo v. FCA | 5/2/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and declaration | 0.90 | $375.00 | $337.50 |
| 172. | Espinoza, Beda v. FCA | 7/20/2016 | Amy Morse | Draft RFAs to Deft and Declaration | 0.70 | $350.00 | $245.00 |
| 173. | Espinoza, Carlos and Heather v. FCA | 10/4/2018 | Kristina Stephenson-Cheang | Draft RFA to FCA and Declaration | 1.00 | $375.00 | $375.00 |
| 174. | Espinoza, Rosa v. FCA | 6/15/2017 | Kristina Stephenson-Cheang | Draft RFAs to FCA | 0.80 | $375.00 | $300.00 |
| 175. | Evans, Keith v. FCA | 4/18/2017 | Amy Morse | Draft RFA to Deft and Declaration | 1.20 | $350.00 | $420.00 |
| 176. | EVERLING v. FMC | 5/24/2017 | Kristina Stephenson-Cheang | Draft RFA to Deft and Declaration | 0.90 | $375.00 | $337.50 |
| 177. | Farler, Karen v. FCA | 8/24/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.30 | $350.00 | $455.00 |
| 178. | Felix, Jaime v. BMW | 1/6/2017 | Amy Morse | Draft RFAs to Deft and declaration | 0.70 | $350.00 | $245.00 |
| 179. | Ferreira, Cecilia and Ferreira, Joseph v. FMC | 9/1/2016 | Amy Morse | Draft RFA and Declaration to Defendant, Set One | 0.70 | $350.00 | $245.00 |
| 180. | Figueroa, Angel v. FCA | 7/4/2017 | Kristina Stephenson-Cheang | Draft RFAs to FCA | 0.50 | $375.00 | $187.50 |
| 181. | Figures, Ida v. FCA | 8/24/2017 | Alastair Hamblin | Draft Ptf's RFA to Deft | 0.80 | $325.00 | $260.00 |
| 182. | Fisher, Lourdes v. FMC | 3/5/2017 | Amy Morse | Draft RFA to Deft and declaration | 0.80 | $350.00 | $280.00 |
| 183. | Fitzgerald, Daniel v. HMA | 6/3/2016 | Russell Higgins | Draft RFA to Deft and Declaration | 0.70 | $450.00 | $315.00 |
| 184. | Florentes, Maribel C. and Nelson, Scott v. FM | 7/29/2015 | Daisy Ortiz | Draft Plaintiffs' RFA | 0.40 | $225.00 | $90.00 |
| 185. | Flores, Francisco v. FCA | 1/4/2019 | Kristina Stephenson-Cheang | Draft Ptfs' RFAs to Deft and declaration | 1.40 | $375.00 | $525.00 |
| 186. | Flores, Julian and Alejandra v. FCA US LLC | 8/24/2017 | Alastair Hamblin | Draft RFA to FCA | 0.80 | $325.00 | $260.00 |
| 187. | FLORES, RAUL v. FMC | 11/30/2016 | Amy Morse | Draft RFA to Deft and Declaration | 0.80 | $350.00 | $280.00 |
| 188. | Floyd, Stacy Hoofkin v. FCA | 5/18/2018 | Kristina Stephenson-Cheang | Draft RFA to FCA | 0.60 | $375.00 | $225.00 |
| 189. | Foster, James v. FMC | 7/15/2013 | Daisy Ortiz | Draft RFGs and RFA to Deft and Declaration | 1.80 | $225.00 | $405.00 |
| 190. | Fox, Charity v. Hyundai | 11/17/2017 | Amy Morse | Draft RFAs to Deft | 0.50 | $350.00 | $175.00 |
| 191. | Fraga, Francisco Martinez | 11/23/2016 | Amy Morse | Draft RFA to Deft and Declaration | 0.90 | $350.00 | $315.00 |

Drafting RFAs

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 192. | Frazier, Steve and Regina v. FMC | 1/14/2019 | Kristina Stephenson-Cheang | Draft Ptfs' RFA to FMC and Declaration | 1.30 | $375.00 | $487.50 |
| 193. | Frederick, Mark v. FMC | 7/8/2014 | Daisy Ortiz | Draft RFA and Declaration | 1.70 | $225.00 | $382.50 |
| 194. | Fronek, Thomas and Fronek, Karen v. FCA | 2/1/2017 | Amy Morse | Draft Ptfs' RFAs to FCA and Declaration | 1.00 | $350.00 | $350.00 |
| 195. | Gacho, Evelyn v. FMC | 11/6/2016 | Amy Morse | Draft RFA to Deft and Declaration, Set One | 0.90 | $350.00 | $315.00 |
| 196. | Gacho, Evelyn v. FMC | 9/21/2017 | Kristina Stephenson-Cheang | Draft RFA to Deft and Declaration, Set One | 0.80 | $350.00 | $280.00 |
| 197. | Gage, Nelli v. FMC | 12/28/2016 | Amy Morse | Draft RFA to Deft | 0.50 | $350.00 | $175.00 |
| 198. | Gaines, Nicole v. FCA | 1/16/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 199. | Galvez Rios, Francisco and Maria v. FCA | 9/19/2018 | Kristina Stephenson-Cheang | Draft RFA to FCA and Declaration | 0.70 | $375.00 | $262.50 |
| 200. | Gaona, Alejandro v. FCA | 7/20/2016 | Amy Morse | Draft RFAs to Deft | 0.50 | $350.00 | $175.00 |
| 201. | Garcia Darlene v. FCA | 9/28/2016 | Alastair Hamblin | Draft RFAs to Deft | 0.80 | $325.00 | $260.00 |
| 202. | Garcia, Juan v. FCA | 11/30/2016 | Amy Morse | Draft RFAs to FCA and declaration | 1.40 | $350.00 | $490.00 |
| 203. | Garcia, Pompeyo and Cristal Mejicanos v. FMC | 1/30/2017 | Amy Morse | Draft RFAs to Deft and declaration | 0.80 | $350.00 | $280.00 |
| 204. | Garcia, Pompeyo and Cristal Mejicanos v. FMC | 5/23/2017 | Kristina Stephenson-Cheang | Draft Pompeyo Garcia's Rasp ones to RFAs | 0.60 | $350.00 | $210.00 |
| 205. | Garcis, Luis v. FCA | 2/8/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.30 | $350.00 | $455.00 |
| 206. | Garza, Janiece v. FCA | 1/24/2017 | Amy Morse | Draft RFA to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 207. | Gaytan, Rebecca Ann & Gaytan Ileen v. General Motors | 3/7/2019 | Amy Morse | Draft RFA to GM and Declaration | 0.70 | $350.00 | $245.00 |
| 208. | Geary, John v. FCA | 10/9/2016 | Amy Morse | Draft RFAs to Deft and declaration | 1.20 | $350.00 | $420.00 |
| 209. | Geiger, John D. v. FMC | 5/4/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and declaration | 0.70 | $375.00 | $262.50 |
| 210. | Gerber, Michael v. FCA | 11/30/2016 | Amy Morse | Draft Ptf's RFAs to FCA and Declaration | 1.20 | $350.00 | $420.00 |
| 211. | Gerber, Michael v. FCA | 8/4/2017 | Alastair Hamblin | Draft RFAs to FCA | 0.80 | $325.00 | $260.00 |
| 212. | Giddings, Maryann v. FCA | 7/28/2016 | Amy Morse | Draft RFA and Declaration to Defendant | 0.90 | $250.00 | $225.00 |
| 213. | Godinez, Lorena v. BMW | 5/11/2017 | Kristina Stephenson-Cheang | Draft RFA to BMW and Declaration | 0.50 | $375.00 | $187.50 |
| 214. | Goicoechea, Alfonso and Carmen v. Kia | 12/19/2014 | Daisy Ortiz | Draft Plaintiffs' First Set of RFAs | 0.50 | $225.00 | $112.50 |
| 215. | Goldman, Christine and Jette, David v. Hyunda | 11/17/2016 | Amy Morse | Draft RFA to Deft | 0.50 | $350.00 | $175.00 |
| 216. | Gomes, Mike v. FMC | 11/26/2016 | Amy Morse | Draft RFA to Deft and Declaration | 1.40 | $350.00 | $490.00 |
| 217. | Gomez, Jose v. FCA | 7/28/2016 | Amy Morse | Draft RFA to Defendant and Declaration | 1.00 | $250.00 | $250.00 |
| 218. | Gomez, Mark v. FCA | 3/14/2017 | Amy Morse | Draft RFA to FCA and Declaration | 1.00 | $350.00 | $350.00 |
| 219. | Gomez, Mary v. FCA | 4/9/2018 | Kristina Stephenson-Cheang | Draft RFA to Defendant and Declaration | 0.80 | $375.00 | $300.00 |
| 220. | Gomez, Melinda and Gomez, Amanda v. FMC | 4/27/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and declaration | 0.80 | $350.00 | $280.00 |
| 221. | Gomez, Omar v. Kia | 6/8/2015 | Daisy Ortiz | Draft Plaintiffs' First Set of RFA | 0.40 | $225.00 | $90.00 |
| 222. | Gonzalez Simon Juana v. FMC | 7/6/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and declaration | 0.80 | $350.00 | $280.00 |
| 223. | Gonzalez, Gabriel v. FCA | 8/7/2017 | Kristina Stephenson-Cheang | Draft RFAs to FCA and Declaration | 1.40 | $375.00 | $525.00 |
| 224. | Gonzalez, Pedro v. Ford Motor Company | 1/30/2017 | Amy Morse | Draft RFAs to Deft and Declaration | 0.90 | $350.00 | $315.00 |
| 225. | Gonzalez, Rosa v. FCA | 5/12/2017 | Kristina Stephenson-Cheang | Draft RFAs to FCA | 0.60 | $375.00 | $225.00 |
| 226. | Gonzalez, Zenaido Diaz v. FCA | 5/24/2018 | Kristina Stephenson-Cheang | Draft RFA to Defendant | 0.50 | $375.00 | $187.50 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 227. | Gonzalez, Zenaido Diaz v. FCA | 5/16/2019 | Amy Morse | Draft RFA to Defendant and Declaration, Set Two | 1.60 | $350.00 | $560.00 |
| 228. | Gordon, Robin v. FCA | 2/3/2017 | Amy Morse | Draft RFA to Deft and Declaration | 1.10 | $350.00 | $385.00 |
| 229. | Green, Donna v. FCA | 3/10/2017 | Amy Morse | Draft RFA to Deft and Declaration | 0.90 | $350.00 | $315.00 |
| 230. | Green, Patrick v. FCA | 3/12/2017 | Amy Morse | Draft Ptf's RFAs to Deft and Declaration | 1.30 | $350.00 | $455.00 |
| 231. | GUERRERO MARINA JORGE V. FMC | 2/12/2016 | Amy Morse | Draft RFAs to Deft and declaration | 1.40 | $250.00 | $350.00 |
| 232. | Guiterrez + Lozano v. FCA | 1/18/2017 | Amy Morse | Draft RFA to FCA, Set One | 0.50 | $250.00 | $125.00 |
| 233. | Guiterrez + Lozano v. FCA | 2/14/2017 | Amy Morse | Draft RFA to FCA, Set Two and Declaration | 0.70 | $250.00 | $175.00 |
| 234. | Gutierrez, Stephanie v. Hyundai Motor America | 6/15/2017 | Kristina Stephenson-Cheang | Draft RFA to HMA | 0.50 | $375.00 | $187.50 |
| 235. | Guzman, Roberto v. FCA | 2/10/2017 | Amy Morse | Draft RFA to Deft | 1.00 | $350.00 | $350.00 |
| 236. | Hagerman, Connie v. FCA | 6/13/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and Declaration | 1.30 | $375.00 | $487.50 |
| 237. | Hagerman, Connie v. FCA | 12/12/2017 | Deepak Devabose | Draft RFAs to Deft | 0.80 | $275.00 | $220.00 |
| 238. | Hall, Dennis v. FCA | 9/28/2016 | Alastair Hamblin | Draft RFAs to Deft | 1.30 | $325.00 | $422.50 |
| 239. | Hamilton, Lisa v. FCA | 8/24/2017 | Kristina Stephenson-Cheang | Draft RFA to FCA and Declaration | 0.90 | $375.00 | $337.50 |
| 240. | Hamm, Alan and Hamm, Susan | 1/29/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 241. | HAND v.FMC | 2/10/2014 | Daisy Ortiz | Draft RFA to Deft and Declaration | 1.60 | $225.00 | $360.00 |
| 242. | Hannah v FMC | 3/14/2017 | Amy Morse | Draft RFAs to Deft and Declaration | 1.00 | $350.00 | $350.00 |
| 243. | Hardy, Russell v. Kia | 4/20/2018 | Kristina Stephenson-Cheang | Draft Ptf's RFA to Defendant | 0.50 | $375.00 | $187.50 |
| 244. | Hardy, Russell v. Kia | 11/27/2018 | Amy Morse | Draft Ptf's RFA to Defendant, Set Two | 0.10 | $350.00 | $35.00 |
| 245. | Harisay, Marc v. Hyundai | 3/23/2016 | Russell Higgins | Draft Plaintiff's RFAs to Deft and Declaration | 0.60 | $400.00 | $240.00 |
| 246. | Harris, Julie v. Hyundai | 9/18/2015 | Russell Higgins | Draft RFAs to Defendant | 0.50 | $400.00 | $200.00 |
| 247. | Heil, Clayborne v. FCA | 10/9/2016 | Amy Morse | Draft Ptf's RFAs to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 248. | Hellenberg, Casey W. v. FMC | 3/4/2019 | Mitchell Rosensweig | Draft RFA to FMC | 0.70 | $325.00 | $227.50 |
| 249. | Hemric, Mark v. FMC | 9/15/2013 | Daisy Ortiz | Draft RFA to FMC and Declaration | 1.80 | $225.00 | $405.00 |
| 250. | Hendrickson, Paul v. FMC | 11/7/2017 | Kristina Stephenson-Cheang | Draft Ptf's RFAs and declaration to Deft | 2.10 | $375.00 | $787.50 |
| 251. | Hensley, Jedidiah v. FCA | 10/9/2015 | Russell Higgins | Draft Plfs' RFA | 0.40 | $400.00 | $160.00 |
| 252. | Hensley, Melissa v. FCA | 3/23/2017 | Amy Morse | Draft RFAs to Deft and Declaration | 1.30 | $350.00 | $455.00 |
| 253. | Heredia, D'Angelo v. FMC | 7/8/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and declaration | 0.80 | $350.00 | $280.00 |
| 254. | Hernandez, Esmeralda v. FCA | 6/14/2017 | Kristina Stephenson-Cheang | Draft RFAs to FCA and Declaration | 1.40 | $375.00 | $525.00 |
| 255. | Hernandez, Esmeralda v. FCA | 12/6/2017 | Deepak Devabose | Draft RFAs to FCA | 0.80 | $275.00 | $220.00 |
| 256. | Hernandez, Hada (aka Hada Romero) v. FCA | 3/29/2019 | Amy Morse | Draft RFA to FCA and Declaration | 1.40 | $350.00 | $490.00 |
| 257. | Hernandez, Hada (aka Hada Romero) v. FCA | 3/29/2019 | Amy Morse | Draft RFA to FCA | 2.90 | $350.00 | $1,015.00 |
| 258. | Hernandez, Julio v. BMW | 7/21/2017 | Kristina Stephenson-Cheang | Draft RFA to Deft and Declaration | 1.10 | $375.00 | $412.50 |
| 259. | Hernandez, Lilibeth v. FCA | 3/23/2017 | Amy Morse | Draft RFAs to Deft and declaration | 0.60 | $350.00 | $210.00 |
| 260. | Hernandez, Roberto III v. FMC | 3/12/2018 | Kristina Stephenson-Cheang | Draft Ptf's RFA to FMC and declaration | 1.10 | $375.00 | $412.50 |
| 261. | Hernandez, Toribio and Hernandez, Elizabeth v | 11/10/2016 | Amy Morse | Draft RFA to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 262. | Herrera, Aldrin v. Chrysler | 3/3/2014 | Daisy Ortiz | Draft First Set of RFA to Defendant | 0.50 | $225.00 | $112.50 |
| 263. | Herrera, Dalila v. FCA | 3/14/2017 | Amy Morse | Draft RFA to FCA and Declaration | 0.50 | $350.00 | $175.00 |
| 264. | Hess, Andrea and Hess, Brandon v. FMC | 7/21/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and declaration | 0.70 | $350.00 | $245.00 |
| 265. | Higareda, Mark v. FCA | 2/3/2017 | Amy Morse | Draft RFAs to Deft and declaration0 | 1.30 | $350.00 | $455.00 |
| 266. | Hightower, Wilbur v. FMC | 6/9/2015 | Daisy Ortiz | Draft RFA to Defendant | 0.50 | $225.00 | $112.50 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 267. | Hill, Jeremy v. FCA | 1/29/2017 | Amy Morse | Draft RFA to FCA and Declaration | 2.00 | $350.00 | $700.00 |
| 268. | Holt, Wade v. FCA | 11/30/2016 | Amy Morse | Draft RFAs to Deft and Declaration | 1.10 | $350.00 | $385.00 |
| 269. | Hopkins, Steven v. FCA | 11/30/2016 | Amy Morse | Draft RFAs to Defts and declaration | 1.10 | $350.00 | $385.00 |
| 270. | House, Thomas v. FCA | 9/13/2016 | Steve B. Mikhov | Draft RFA to FCA and Declaration | 0.30 | $550.00 | $165.00 |
| 271. | Howton, Christopher v. FCA | 10/8/2016 | Amy Morse | Draft RFA to Def's and declaration | 0.60 | $350.00 | $210.00 |
| 272. | Hughson, Manning v. FCA | 1/8/2017 | Amy Morse | Draft RFA to Deft and Declaration | 1.20 | $350.00 | $420.00 |
| 273. | Ibarra v. Ford | 12/16/2016 | Amy Morse | Draft RFAs to Deft | 0.50 | $350.00 | $175.00 |
| 274. | Ibarra, Teresa v. FMC | 4/26/2017 | Kristina Stephenson-Cheang | Draft RFA to Deft and Declaration | 0.90 | $350.00 | $315.00 |
| 275. | In RE VW Clean Diesel | 5/31/2019 | Armando Lopez | Draft RFA | 1.80 | $200.00 | $360.00 |
| 276. | Islas Galvez, Alfredo, et. Al. v. FMC | 7/15/2021 | Armando Lopez | Draft Plaintiff RFA and Declaration | 0.50 | $275.00 | $137.50 |
| 277. | Jackson, Katrina v. FCA | 10/27/2016 | Amy Morse | Draft RFA to Deft and Declaration | 1.00 | $350.00 | $350.00 |
| 278. | Jacquez, Mary v.FMC | 7/28/2015 | Daisy Ortiz | Draft RFA to Deft | 0.50 | $225.00 | $112.50 |
| 279. | Jain, Arun v. Hyundai | 1/6/2017 | Amy Morse | Draft RFAs to Deft and Declaration | 0.50 | $350.00 | $175.00 |
| 280. | Jameson, April v. FMC | 10/2/2018 | Deepak Devabose | Draft RFAs to FMC | 0.80 | $275.00 | $220.00 |
| 281. | Jansson v. FMC | 5/4/2016 | Russell Higgins | Draft RFA to Deft and Declaration | 1.00 | $450.00 | $450.00 |
| 282. | Jarrett, Michael v. FCA | 2/24/2017 | Amy Morse | Draft RFAs to Deft and declaration | 1.50 | $350.00 | $525.00 |
| 283. | Jasmer, Travis v. FCA | 10/11/2016 | Amy Morse | Draft RFA to FCA and Declaration | 1.20 | $350.00 | $420.00 |
| 284. | Javian, Benjamin Castro v. Ford Motor Company | 6/5/2016 | Russell Higgins | Draft RFA to Deft | 0.50 | $400.00 | $200.00 |
| 285. | Jerry, Eugene v. Ford Motor Company | 10/15/2016 | Amy Morse | Draft RFA to Deft and Declaration | 1.20 | $350.00 | $420.00 |
| 286. | Johnson, Riadon v. FCA | 1/16/2017 | Amy Morse | Draft RFAs to FCA and declaration | 1.30 | $350.00 | $455.00 |
| 287. | Johnson, Rita v. FCA | 2/28/2017 | Amy Morse | Draft Ptf's RFAs to Deft and Declaration | 1.30 | $350.00 | $455.00 |
| 288. | Johnson, Wanda v. Hyundai | 6/1/2016 | Russell Higgins | Draft RFA to Deft | 0.60 | $450.00 | $270.00 |
| 289. | Jordan, Harold and Hordan, Marna | 1/29/2017 | Amy Morse | Draft Ptfs' RFAs and Declaration | 1.10 | $350.00 | $385.00 |
| 290. | Jordan, Harold and Hordan, Marna | 12/7/2017 | Deepak Devabose | Draft Ptfs' RFAs- Federal | 0.80 | $275.00 | $220.00 |
| 291. | Jordan, Matthew v. FCA | 10/27/2016 | Amy Morse | Draft RFAs to FCA | 1.40 | $350.00 | $490.00 |
| 292. | JUAREZ v.FMC | 11/5/2016 | Amy Morse | Draft RFA to Deft and Declaration | 0.90 | $350.00 | $315.00 |
| 293. | Juarez, Marco v. General Motors | 1/10/2016 | Amy Morse | Draft RFAs to Deft | 0.90 | $350.00 | $315.00 |
| 294. | Kantar, Joseph v. FCA | 9/22/2016 | Amy Morse | Draft RFA to Deft and Declaration | 1.20 | $350.00 | $420.00 |
| 295. | Kappler, Aaron v. FMC | 11/4/2015 | Russell Higgins | Draft RFA to Deft | 0.50 | $400.00 | $200.00 |
| 296. | Karm, Cynthia v. FMC | 1/26/2017 | Amy Morse | Draft RFA to Deft and Declaration | 0.80 | $350.00 | $280.00 |
| 297. | Kasarda, Melissa v. FCA | 9/29/2016 | Amy Morse | Draft RFA to FCA and Declaration | 1.00 | $350.00 | $350.00 |
| 298. | KATZ, MITCHELL V. FMC | 9/29/2016 | Amy Morse | Draft RFA to  Deft and Declaration | 0.80 | $250.00 | $200.00 |
| 299. | Kavanagh, Fiona v. FCA | 4/21/2017 | Amy Morse | Draft RFA to FCA and Declaration | 1.20 | $350.00 | $420.00 |
| 300. | Kearin, Timothy v. FCA | 3/14/2017 | Amy Morse | Draft RFA to Deft and Declaration | 0.90 | $350.00 | $315.00 |
| 301. | Kearney, Kevin v. FCA | 7/22/2016 | Amy Morse | Draft RFAs to Deft and Declaration | 1.30 | $350.00 | $455.00 |
| 302. | Kearney, Kevin v. FCA | 3/29/2017 | Alastair Hamblin | Draft RFA to Defendant | 1.20 | $325.00 | $390.00 |
| 303. | Kelton, Kevin v. FCA | 3/21/2018 | Kristina Stephenson-Cheang | Draft RFAs to FCA | 0.50 | $375.00 | $187.50 |
| 304. | Kent, Doreen and Mead, Donald v. FCA | 9/21/2016 | Kristina Stephenson-Cheang | Draft RFAs to Deft and declaration | 1.00 | $375.00 | $375.00 |
| 305. | Kiemel, Sean Paul v. FMC | 8/8/2018 | Kristina Stephenson-Cheang | Draft RFA t o Deft | 0.60 | $375.00 | $225.00 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 306. | Killingsworth, William and Killingsworth, Vic | 9/2/2016 | Amy Morse | Draft RFA to Deft and Declaration | 0.70 | $350.00 | $245.00 |
| 307. | Kim, Justin v. Hyundai | 12/9/2015 | Russell Higgins | Draft RFAs to Defendant and Declaration | 1.00 | $450.00 | $450.00 |
| 308. | King v. Hyundai | 3/1/2016 | Amy Morse | Draft Plaintiff's First Set of RFA and Declaration | 0.80 | $250.00 | $200.00 |
| 309. | King, A. v. Hyundai | 11/30/2016 | Amy Morse | Draft RFA to Def | 0.40 | $350.00 | $140.00 |
| 310. | King, Anthony v. FMC | 10/18/2016 | Amy Morse | Draft RFA to Deft | 0.60 | $250.00 | $150.00 |
| 311. | Kirchner, Patty v. FCA | 3/29/2017 | Alastair Hamblin | Draft RFA to Defendant | 1.20 | $325.00 | $390.00 |
| 312. | Koetsier, Thomas and Koetsier, Jackie (for Ba | 6/1/2016 | Russell Higgins | Draft RFA to Defendant | 0.40 | $400.00 | $160.00 |
| 313. | Kolakowski, Sandra Rae v. FCA | 10/27/2016 | Amy Morse | Draft RFA to Deft | 0.60 | $350.00 | $210.00 |
| 314. | Koller, Mary S. v. FMC | 7/31/2018 | Kristina Stephenson-Cheang | Draft RFA to FMC | 0.50 | $375.00 | $187.50 |
| 315. | Kopa, Katherine v. FMC | 10/31/2018 | Deepak Devabose | Draft RFAs to Def | 0.90 | $275.00 | $247.50 |
| 316. | Kopchak v. FMC | 5/5/2016 | Russell Higgins | Draft RFA to Deft and Declaration | 0.90 | $400.00 | $360.00 |
| 317. | Kortan v. FMC | 6/21/2017 | Kristina Stephenson-Cheang | Draft RFA to Deft | 0.50 | $350.00 | $175.00 |
| 318. | La Chance, Michael v. FCA | 7/20/2016 | Amy Morse | Draft RFA and Declaration | 1.20 | $250.00 | $300.00 |
| 319. | Lagunas, Hector v. FCA | 1/14/2017 | Amy Morse | Draft RFA to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 320. | Laluan, Demetrio & Evelyn v. FCA | 4/1/2019 | Amy Morse | Draft RFA to FCA and Declaration | 1.50 | $350.00 | $525.00 |
| 321. | Lambertson, Larry v. FCA | 10/26/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 322. | Landis, Denise & David v. General Motors | 8/26/2019 | Amy Morse | Draft RFA to GM and Declaration | 0.80 | $350.00 | $280.00 |
| 323. | Lange, Erika v. FCA | 2/10/2017 | Amy Morse | Draft RFAs to Defts | 0.50 | $350.00 | $175.00 |
| 324. | Lawson, Mark | 6/19/2014 | Daisy Ortiz | Draft RFGs and RFAs to Deft and Declaration | 2.00 | $225.00 | $450.00 |
| 325. | Leach, Todd v. FCA | 10/14/2016 | Amy Morse | Draft RFA to Deft and Declaration | 1.20 | $350.00 | $420.00 |
| 326. | Leon, Yolanda v. FCA | 2/6/2017 | Amy Morse | Draft Ptf's RFAs to FCA and Declaration | 0.90 | $350.00 | $315.00 |
| 327. | Lewis, Morgan v. FCA | 9/25/2016 | Amy Morse | Draft RFAs to FCA | 0.40 | $350.00 | $140.00 |
| 328. | Li, Bruce Nai Hung v. FCA | 6/12/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and Declaration | 1.30 | $375.00 | $487.50 |
| 329. | Li, Bruce Nai Hung v. FCA | 12/13/2017 | Deepak Devabose | Draft RFAs to Deft | 0.80 | $275.00 | $220.00 |
| 330. | Ligon, Ronald v. FCA | 7/6/2017 | Kristina Stephenson-Cheang | Draft RFAs and Declaration to FCA | 1.30 | $375.00 | $487.50 |
| 331. | Lloyd, Darren v. FCA | 2/16/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.30 | $350.00 | $455.00 |
| 332. | Lloyd, Drishan v. FCA | 7/28/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 333. | Long, Tammy v. FMC | 6/22/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and Declaration | 0.80 | $375.00 | $300.00 |
| 334. | Lopez, Jose v. FMC | 6/22/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and Declaration | 0.60 | $350.00 | $210.00 |
| 335. | Lopez, Maria and Jose v. FMC | 10/24/2016 | Amy Morse | Draft RFAs to Deft and declaration | 0.90 | $350.00 | $315.00 |
| 336. | Lopez, William Ceron and Guadalupe v. FMC | 6/12/2018 | Kristina Stephenson-Cheang | Draft RFAs to FMC and Declaration | 1.00 | $375.00 | $375.00 |
| 337. | Lovato, Robert J. and Lovato, Rose v. FMC | 11/26/2016 | Amy Morse | Draft RFAs to Deft and declaration | 0.80 | $350.00 | $280.00 |
| 338. | Luevanos, Katherine v. FCA | 3/17/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.40 | $350.00 | $490.00 |
| 339. | LUTZ V.FMC | 1/23/2017 | Amy Morse | Draft RFA to Deft | 0.60 | $350.00 | $210.00 |
| 340. | Madariaga, Anthony v. FCA | 1/28/2017 | Amy Morse | Draft RFAs to FCA and declaration | 1.30 | $350.00 | $455.00 |
| 341. | Madrigal, Oscar v. Hyundai | 11/13/2016 | Amy Morse | Draft Ptfs' RFAs to Deft | 0.60 | $350.00 | $210.00 |
| 342. | Madriz, Juan v. BMW | 12/21/2016 | Amy Morse | Draft RFAs to BMW | 0.50 | $350.00 | $175.00 |
| 343. | Madsen, Benny v. FCA | 3/6/2014 | Daisy Ortiz | Draft RFA to Defendant | 0.50 | $225.00 | $112.50 |
| 344. | Marcel-Mariano, Joel v. FCA | 3/20/2017 | Amy Morse | Draft RFAs to Defendant and Declaration | 1.20 | $350.00 | $420.00 |
| 345. | MARIN v. FMC | 6/6/2016 | Russell Higgins | Draft RFAs to Deft and declaration | 0.90 | $400.00 | $360.00 |

Drafting RFAs

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 346. | Marin, Rene v. FCA | 4/25/2017 | Kristina Stephenson-Cheang | Draft RFAs to FCA | 0.50 | $375.00 | $187.50 |
| 347. | Markovich, Angeles Sea Rosaschi v. Hyundai | 3/23/2016 | Russell Higgins | Draft Plaintiffs' RFA to Deft | 0.50 | $400.00 | $200.00 |
| 348. | Marquez, Salvador v. FCA | 2/22/2017 | Amy Morse | Draft Plfs' RFA to FCA | 0.50 | $350.00 | $175.00 |
| 349. | MARROQUIN V.FMC | 10/15/2016 | Amy Morse | Draft RFA to Deft | 1.00 | $350.00 | $350.00 |
| 350. | Martin, Wesley v. FMC | 12/8/2015 | Russell Higgins | Draft RFA to Defendant | 0.40 | $400.00 | $160.00 |
| 351. | Martinez, Antonio v. FCA | 10/10/2016 | Michelle Lumasag | Draft RFAs to FCA and Declaration | 1.20 | $200.00 | $240.00 |
| 352. | MARTINEZ, JOSE V.FMC | 11/23/2016 | Amy Morse | Draft RFA to Deft and declaration | 1.00 | $350.00 | $350.00 |
| 353. | Martinez, Maribel v. FCA | 3/20/2018 | Kristina Stephenson-Cheang | Draft RFA to FCA and Declaration | 0.70 | $375.00 | $262.50 |
| 354. | Martinez, Maribel v. FCA | 5/17/2019 | Amy Morse | Draft RFA to FCA and Declaration, Set Two | 1.30 | $350.00 | $455.00 |
| 355. | Martinez, Paul and Estella v. FMC | 3/4/2019 | Mitchell Rosensweig | Draft RFA to Deft | 0.80 | $325.00 | $260.00 |
| 356. | Martinez, Stephanie v. FCA | 6/7/2016 | Russell Higgins | Draft RFA to Deft | 0.50 | $400.00 | $200.00 |
| 357. | Martinez, Steven v. FCA | 5/15/2017 | Kristina Stephenson-Cheang | Draft RFAs to FCA | 0.50 | $375.00 | $187.50 |
| 358. | MARTINEZ, TOMMY V.FMC | 6/28/2017 | Kristina Stephenson-Cheang | Draft RFAs to FMC and declaration | 2.10 | $375.00 | $787.50 |
| 359. | Martinez-Leycam, Belia v. FMC | 9/2/2016 | Amy Morse | Draft RFAs to Deft and declaration | 0.90 | $350.00 | $315.00 |
| 360. | Masingale, Richard v. FCA | 3/22/2017 | Amy Morse | Draft RFAs to Deft and Declaration | 1.40 | $350.00 | $490.00 |
| 361. | Matini, Carolyn v. General Motors | 11/28/2016 | Amy Morse | Draft RFAs to Deft | 0.60 | $350.00 | $210.00 |
| 362. | Matthews, Ronald v. FCA | 3/21/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.30 | $350.00 | $455.00 |
| 363. | Mayorga, Amparao v. BMW | 1/5/2016 | Russell Higgins | Draft Plf's RFA and Declaration | 0.90 | $400.00 | $360.00 |
| 364. | McCarthy, Jordan v. FCA | 1/23/2017 | Amy Morse | Draft RFAs to FCA | 0.40 | $250.00 | $100.00 |
| 365. | McCarthy, Jordan v. FCA | 2/14/2017 | Amy Morse | Draft RFAs to FCA and Declaration, Set Two | 0.70 | $250.00 | $175.00 |
| 366. | McCullough, William v. FCA | 7/16/2015 | Daisy Ortiz | Draft RFA to Deft | 0.40 | $225.00 | $90.00 |
| 367. | McFalls, Linda v. Kis | 6/8/2015 | Daisy Ortiz | Draft Plaintiff's First Set of RFA | 0.40 | $225.00 | $90.00 |
| 368. | McKinnon, Corey v. FMC | 4/3/2014 | Daisy Ortiz | Draft RFA to Deft and Declaration | 1.30 | $225.00 | $292.50 |
| 369. | McKinnon, Corey v. FMC | 11/10/2015 | Lauren Ungs | Draft RFA to Deft and Declaration, Set Two; prepare exhibits | 2.10 | $425.00 | $892.50 |
| 370. | McKinnon, Corey v. FMC | 6/14/2016 | Lauren Ungs | Draft RFA to Defendant, Set Three | 0.40 | $425.00 | $170.00 |
| 371. | Mclaughlin, Jeffrey Russell & Carina Ann-Sofie v. General Motors | 11/12/2019 | Amy Morse | Draft RFA to GM and Declaration | 1.10 | $350.00 | $385.00 |
| 372. | McNaughton, Lauren v. FCA | 4/16/2014 | Daisy Ortiz | Draft Plaintiff's First Set of RFA | 0.40 | $225.00 | $90.00 |
| 373. | Medina, Cecilia v. FCA | 2/22/2017 | Amy Morse | Draft RFAs to Deft and Declaration | 1.10 | $350.00 | $385.00 |
| 374. | Medina, Cecilia v. FMC | 10/15/2016 | Amy Morse | Draft RFAs to Deft and declaration | 0.60 | $350.00 | $210.00 |
| 375. | Mejia, Jaime v. FCA | 3/22/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.20 | $350.00 | $420.00 |
| 376. | Melton, Richard v. FMC | 7/6/2017 | Kristina Stephenson-Cheang | Draft RFA to Deft and Declaration | 1.10 | $375.00 | $412.50 |
| 377. | Mena, George v. FMC | 9/16/2013 | Daisy Ortiz | Draft RFAs to FMC and Declaration | 2.00 | $225.00 | $450.00 |
| 378. | Mercado, Jaime v. FCA | 7/28/2016 | Amy Morse | Draft RFA to Defendant and declaration | 1.00 | $350.00 | $350.00 |
| 379. | Metzger, Duane v. FCA | 1/28/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 380. | Meuse, Brian v. FCA | 11/26/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.30 | $350.00 | $455.00 |
| 381. | Mikhael, Josephine v. FCA | 1/11/2017 | Amy Morse | Draft RFAs to Deft and Declaration | 1.00 | $350.00 | $350.00 |
| 382. | Mills, Dudley B., and Mills, Janette E. | 7/13/2017 | Kristina Stephenson-Cheang | Draft RFA to Deft and Declaration | 0.90 | $375.00 | $337.50 |
| 383. | Mills, Dudley B., and Mills, Janette E. | 7/20/2017 | Kristina Stephenson-Cheang | Draft RFA to Deft and Declaration | 0.90 | $375.00 | $337.50 |
| 384. | Milosevich, Dan for Loda Inc. v. FMC | 2/21/2019 | Mitchell Rosensweig | Draft RFA to FMC | 1.10 | $325.00 | $357.50 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 385. | Misner, Gregory Scott Julie v. FMC | 11/27/2013 | Daisy Ortiz | Draft RFA to Def and Declaration | 1.90 | $225.00 | $427.50 |
| 386. | Modler, Walter v. FCA | 1/29/2017 | Amy Morse | Draft RFA to Deft and Declaration | 1.00 | $350.00 | $350.00 |
| 387. | Mondragon, Noel v. FCA | 2/22/2017 | Amy Morse | Draft RFAs to Deft and Declaration | 0.60 | $350.00 | $210.00 |
| 388. | Monroe, Lisa v. FCA | 10/27/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.30 | $350.00 | $455.00 |
| 389. | Montano Carranza, Gabriela v. FCA | 3/25/2019 | Amy Morse | Draft Ptf's RFA to FCA | 0.60 | $350.00 | $210.00 |
| 390. | Montero, Martha v. Kia | 6/24/2016 | Russell Higgins | Draft RFA to Deft and Declaration | 0.90 | $400.00 | $360.00 |
| 391. | Montes, Alica and Padilla, Jesse v. FMC | 12/28/2016 | Amy Morse | Draft Form ROGs to Deft, Draft Special ROGs to Deft and declaration, Draft RFAs, Draft RFPs | 2.80 | $350.00 | $980.00 |
| 392. | Moore, Allen v. FCA | 11/11/2016 | Amy Morse | Draft RFAs to FCA and declaration | 1.00 | $350.00 | $350.00 |
| 393. | Mora, Robert v. FCA | 3/19/2017 | Amy Morse | Draft RFA to FCA and Declaration | 1.30 | $350.00 | $455.00 |
| 394. | Morales, Carlos v. FCA | 1/18/2017 | Amy Morse | Draft RFAs to Deft | 0.40 | $350.00 | $140.00 |
| 395. | Morales, Daniel Mario v. FMC | 9/2/2016 | Amy Morse | Draft RFA to Deft and Declaration | 0.80 | $350.00 | $280.00 |
| 396. | Moreno, Adam v. FCA | 9/29/2016 | Amy Morse | Draft RFA to FCA | 1.30 | $350.00 | $455.00 |
| 397. | Moreno, Jesus v. FCA | 2/23/2017 | Amy Morse | Draft RFA to Deft and Declaration | 1.10 | $350.00 | $385.00 |
| 398. | Moreno, Martin and Ruby v. FMC | 10/18/2016 | Kristina Stephenson-Cheang | Draft RFA to Deft and Declaration | 0.60 | $350.00 | $210.00 |
| 399. | Morgan, Geoffrey v. FCA | 11/30/2016 | Amy Morse | Draft RFA to FCA and Declaration | 1.40 | $350.00 | $490.00 |
| 400. | Morino, Michelle v.FCA | 2/5/2017 | Amy Morse | Draft RFA to Deft and Declaration | 0.70 | $350.00 | $245.00 |
| 401. | Morris, Mary v. Hyundai | 5/19/2016 | Russell Higgins | Draft RFA and Declaration to Deft | 0.80 | $400.00 | $320.00 |
| 402. | Morvarid, Roxana v. FCA | 2/19/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 403. | Mosburg, Tiffany v. FCA | 2/8/2017 | Amy Morse | Draft RFA to Deft and Declaration | 1.10 | $350.00 | $385.00 |
| 404. | Mota, Victor and Carlos v. Hyundai | 6/3/2016 | Russell Higgins | Draft RFA to Defendant and Declaration | 0.70 | $450.00 | $315.00 |
| 405. | Munguia, Maria and Edgar Morales v. FMC | 10/16/2018 | Kristina Stephenson-Cheang | Draft RFA to Ford | 0.80 | $375.00 | $300.00 |
| 406. | Munguia, Maria and Edgar Morales v. FMC | 3/4/2019 | Mitchell Rosensweig | Draft RFA to FMC | 0.40 | $325.00 | $130.00 |
| 407. | Munoz, Cruz v. General Motors | 5/12/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and Declaration | 1.00 | $375.00 | $375.00 |
| 408. | Munoz, Efrain v. FCA | 2/24/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 409. | Munoz, Jose v. FCA | 9/14/2015 | Russell Higgins | Draft RFAs to FCA | 0.40 | $400.00 | $160.00 |
| 410. | Munoz, Martin v. FMC | 4/26/2017 | Amy Morse | Draft RFA to Deft and Declaration | 0.60 | $350.00 | $210.00 |
| 411. | Murphy, Timothy D. v. FMC | 8/31/2016 | Amy Morse | Draft RFAs to Deft and declaration | 0.70 | $350.00 | $245.00 |
| 412. | Najera, Mary Beth v. Hyundai Motor America | 12/11/2015 | Russell Higgins | Draft Pt.'s RFAs to Deft | 0.50 | $450.00 | $225.00 |
| 413. | Najera, Mary Beth v. Hyundai Motor America | 7/13/2018 | Kristina Stephenson-Cheang | Draft Pt.'s RFAs to Deft | 0.60 | $375.00 | $225.00 |
| 414. | Nance, Joshua D. & Trisha N. v. KIA | 6/23/2016 | Amy Morse | Draft RFA to Defendant and declaration | 0.90 | $350.00 | $315.00 |
| 415. | Nance, Joshua D. & Trisha N. v. KIA | 9/12/2018 | Amy Morse | Draft Ptfs' RFA to KIA, Set Two | 0.10 | $350.00 | $35.00 |
| 416. | Navarro, Demetria J. Flores v. Ford Motors Co | 9/17/2016 | Amy Morse | Draft RFA to Deft | 0.50 | $350.00 | $175.00 |
| 417. | Navarro, Demetria J. Flores v. Ford Motors Co | 2/23/2017 | Amy Morse | Draft RFA to Deft and Declaration, Set Two | 0.30 | $350.00 | $105.00 |
| 418. | Navarro, Roxanna v. FCA | 1/31/2017 | Amy Morse | Draft RFAs to FCA and declaration | 1.30 | $350.00 | $455.00 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 419. | Negrete, Mauricio v. FCA | 2/8/2017 | Amy Morse | Draft RFA to FCA and Declaration | 1.20 | $350.00 | $420.00 |
| 420. | Negrete, Mauricio v. FCA | 2/8/2017 | Amy Morse | Draft RFA to FCA and Declaration | 1.20 | $350.00 | $420.00 |
| 421. | Neumann, Robin v. FCA | 11/28/2016 | Amy Morse | Draft RFAs to Deft and Declaration | 1.00 | $350.00 | $350.00 |
| 422. | Nguyen, Nelson v. Hyundai | 4/24/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft | 0.60 | $375.00 | $225.00 |
| 423. | Nickerson, Jo Ann v. FCA | 7/10/2015 | Daisy Ortiz | Draft First Set of RFA | 0.50 | $225.00 | $112.50 |
| 424. | Niedermeier, Lisa v. FCA | 2/10/2017 | Amy Morse | Draft RFA to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 425. | Nieuwenhuis, Antonius A. v. FMC | 9/5/2017 | Kristina Stephenson-Cheang | Draft RFGs and RFAs to Deft and Declaration | 1.40 | $375.00 | $525.00 |
| 426. | Nolan, Shawn v. FMC | 11/26/2013 | Daisy Ortiz | Draft RFAs to FMC and Declaration | 1.50 | $225.00 | $337.50 |
| 427. | Oakley, Melinda Kate v. FMC | 10/10/2018 | Deepak Devabose | Draft RFA to Deft | 1.20 | $275.00 | $330.00 |
| 428. | O'Brien, Kristi v. FCA | 11/10/2016 | Amy Morse | Draft RFAs to Deft and Declaration | 1.20 | $350.00 | $420.00 |
| 429. | O'Brien, Kristi v. FCA | 12/13/2017 | Deepak Devabose | Draft RFAs to Deft | 0.90 | $275.00 | $247.50 |
| 430. | Ocana, Steve v. FCA | 8/24/2016 | Amy Morse | Draft Ptfs RFAs and Declaration | 1.10 | $350.00 | $385.00 |
| 431. | Ochoa, Carlos v. FMC | 6/12/2014 | Daisy Ortiz | Draft RFA to Deft and Declaration | 1.70 | $225.00 | $382.50 |
| 432. | Oday, Kevin v. FCA | 2/19/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.30 | $350.00 | $455.00 |
| 433. | O'Green, Danielle v. Kia | 12/18/2014 | Daisy Ortiz | Draft Plaintiff's First Set of RFA and Declaration | 0.80 | $225.00 | $180.00 |
| 434. | Orosco, Jose v. FMC | 2/3/2017 | Amy Morse | Draft RFA to Deft and Declaration | 1.40 | $350.00 | $490.00 |
| 435. | Orozco, Israel v. FCA | 5/31/2017 | Kristina Stephenson-Cheang | Draft RFAs to FCA and declaration | 1.20 | $375.00 | $450.00 |
| 436. | Ortega Morales, Anel v. FMC | 3/2/2017 | Amy Morse | Draft RFA to Deft and Declaration | 1.00 | $350.00 | $350.00 |
| 437. | Ortiz, Anthony v. FMC | 10/16/2016 | Amy Morse | Draft RFAs to Deft and declaration | 0.80 | $350.00 | $280.00 |
| 438. | Ossenfort, Victoria v. Kia | 4/20/2018 | Kristina Stephenson-Cheang | Draft RFA to KMA and Declaration | 0.80 | $375.00 | $300.00 |
| 439. | Ossenfort, Victoria v. Kia | 11/27/2018 | Amy Morse | Draft RFA to KMA, Set Two | 0.10 | $350.00 | $35.00 |
| 440. | Osuna, Patrick v. FCA | 11/10/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.00 | $350.00 | $350.00 |
| 441. | Palombi, Tiffany v. FCA | 6/3/2014 | Daisy Ortiz | Draft RFAs to Deft | 0.50 | $225.00 | $112.50 |
| 442. | Patel, Nilay v. Mercedes-Benz | 7/1/2015 | Daisy Ortiz | Draft RFA to Deft | 0.50 | $225.00 | $112.50 |
| 443. | Patricio, Adriana v. FCA | 5/3/2018 | Kristina Stephenson-Cheang | Draft RFA to Deft and Declaration | 1.20 | $375.00 | $450.00 |
| 444. | Patricio, Adriana v. FCA | 3/12/2019 | Amy Morse | Draft RFAs to Deft, Set Two | 1.60 | $350.00 | $560.00 |
| 445. | Paul, Aaron | 7/20/2016 | Amy Morse | Draft RFA to FCA and Declaration | 1.20 | $350.00 | $420.00 |
| 446. | Pedante, Mark v. FMC | 12/28/2018 | Kristina Stephenson-Cheang | Draft Ptf's RFA to Ford | 1.50 | $375.00 | $562.50 |
| 447. | Pelaez, Esmeralda & Laura v. FMC | 12/27/2016 | Amy Morse | Draft RFA to Deft and Declaration | 0.40 | $350.00 | $140.00 |
| 448. | Pellagrini, Michael Edward v. FMC | 3/13/2017 | Amy Morse | Draft RFAs to Deft and declaration | 1.60 | $350.00 | $560.00 |
| 449. | Pena, Elva | 10/14/2016 | Amy Morse | Draft RFA to FCA and Declaration | 1.20 | $350.00 | $420.00 |
| 450. | Perez, Angelita | 1/31/2017 | Christopher Swanson | Draft RFAs to Deft and declaration | 1.00 | $350.00 | $350.00 |
| 451. | Perez, Florentino | 11/29/2016 | Amy Morse | Draft RFAs and Declaration to Deft | 1.20 | $350.00 | $420.00 |
| 452. | Perez, Jovita | 6/14/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and declaration | 1.40 | $375.00 | $525.00 |
| 453. | Perez, Jovita | 12/7/2017 | Deepak Devabose | Draft RFAs to Deft | 0.80 | $275.00 | $220.00 |
| 454. | Perry, Eva v. FCA | 2/7/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.30 | $350.00 | $455.00 |
| 455. | Perry, Steve v. Hyundai | 6/18/2015 | Daisy Ortiz | Draft Plaintiffs' First Set of RFA | 0.50 | $225.00 | $112.50 |
| 456. | Peters, Richard Michael v. FMC | 10/6/2016 | Amy Morse | Draft RFAs to Deft and declaration | 0.90 | $350.00 | $315.00 |
| 457. | Petropoulos, Peter v. FCA | 7/18/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.40 | $350.00 | $490.00 |
| 458. | Petropoulos, Peter v. FCA | 12/7/2017 | Deepak Devabose | Draft RFAs to Deft (Federal) | 0.80 | $275.00 | $220.00 |
| 459. | Pignataro, Kathleen M. v. FCA | 12/12/2018 | Kristina Stephenson-Cheang | Draft RFA to Deft and Declaration | 1.70 | $375.00 | $637.50 |
| 460. | Pignataro, Kathleen M. v. FCA | 5/8/2019 | Amy Morse | Draft RFA to Deft and Declaration, set two | 0.50 | $350.00 | $175.00 |
| 461. | Pineda, Yazman | 10/30/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.20 | $350.00 | $420.00 |
| 462. | Pitts, Tanisha v. FCA | 3/20/2018 | Kristina Stephenson-Cheang | Draft RFAs to FCA and Declaration | 1.00 | $375.00 | $375.00 |
| 463. | Plascencia, Jose | 2/24/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.00 | $350.00 | $350.00 |

Drafting RFAs

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 464. | Pollard, Derric | 7/16/2016 | Amy Morse | Draft RFA to FCA and Declaration | 1.00 | $350.00 | $350.00 |
| 465. | Pollard, Derric | 12/7/2017 | Deepak Devabose | Draft Plaintiffs' RFA to FCA | 0.70 | $275.00 | $192.50 |
| 466. | Potter, William v. FCA | 9/21/2016 | Amy Morse | Draft RFA to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 467. | Powell, Desmond v. FCA | 11/30/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 468. | Purifoy, Luria v. FMC | 3/8/2017 | Amy Morse | Draft Plf's RFA | 0.50 | $250.00 | $125.00 |
| 469. | Purkiss, James M. & Penelope R. v. General Motors | 2/27/2019 | Amy Morse | Draft RFA to GM and Declaration | 0.60 | $350.00 | $210.00 |
| 470. | Quintana, Roy | 2/6/2017 | Amy Morse | Draft Ptf's RFAs to FCA and Declaration | 1.00 | $350.00 | $350.00 |
| 471. | Rahmani, Mahyar v. FMC | 11/7/2014 | Amy Morse | Draft RFA to Deft and Declaration | 1.20 | $350.00 | $420.00 |
| 472. | Ramirez, Gustavo v. FMC | 10/26/2016 | Kristina Stephenson-Cheang | Draft RFAs to Deft and declaration | 0.70 | $375.00 | $262.50 |
| 473. | Ramsey, Lance v. FCA | 7/18/2016 | Amy Morse | Draft RFA to Deft and Declaration | 1.20 | $350.00 | $420.00 |
| 474. | Randall, Shane | 7/23/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.00 | $350.00 | $350.00 |
| 475. | Ratajesak, Matthew | 11/30/2016 | Amy Morse | Draft RFAs to Deft and Declaration | 1.00 | $350.00 | $350.00 |
| 476. | Ray, Christian v. FMC | 11/21/2016 | Amy Morse | Draft RFAs to Deft and Declaration | 0.70 | $350.00 | $245.00 |
| 477. | Reck, Kathy | 2/16/2017 | Amy Morse | Draft Ptf's RFAs to FCA | 0.50 | $350.00 | $175.00 |
| 478. | Redman, Glen v. FMC | 10/1/2016 | Amy Morse | Draft RFA to Deft and Declaration | 1.10 | $350.00 | $385.00 |
| 479. | Reed, Andrew v. FCA | 2/15/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 480. | Reed, Thomas | 11/20/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.00 | $350.00 | $350.00 |
| 481. | Regina, Sonia v. FMC | 6/5/2017 | Kristina Stephenson-Cheang | Draft RFA to Defendant and Declaration | 0.80 | $375.00 | $300.00 |
| 482. | Regueiro, Francisco | 9/26/2016 | Amy Morse | Draft RFAs to Deft | 1.20 | $350.00 | $420.00 |
| 483. | Rendon v. FMC | 9/11/2016 | Amy Morse | Draft RFAs to Deft and Declaration | 0.80 | $350.00 | $280.00 |
| 484. | Reyes, Hugoino v. General Motors | 6/30/2018 | Kristina Stephenson-Cheang | Draft RFA to GM | 0.40 | $375.00 | $150.00 |
| 485. | Reyes, Margarita | 7/28/2016 | Amy Morse | Draft Plf's RFA and Declaration | 1.00 | $350.00 | $350.00 |
| 486. | Reynolds, Peter v. FMC | 6/23/2014 | Daisy Ortiz | Draft RFAs to Defendant and Declaration | 0.90 | $225.00 | $202.50 |
| 487. | Richardson, Leann | 11/6/2016 | Amy Morse | Draft RFAs to Deft and Declaration | 1.20 | $350.00 | $420.00 |
| 488. | Rico, Veronica v. Hyundai | 6/22/2015 | Daisy Ortiz | Draft RFAs to HMA | 0.50 | $225.00 | $112.50 |
| 489. | Rinsch, Dan v. FCA | 7/27/2018 | Kristina Stephenson-Cheang | Draft RFA to Deft and Declaration | 0.40 | $375.00 | $150.00 |
| 490. | Rivas, Antonio v. FMC | 7/21/2017 | Kristina Stephenson-Cheang | Draft RFAs To Deft And Declaration | 0.80 | $350.00 | $280.00 |
| 491. | Rivas, Claudia and Espinoza, Giovanni Rodrigu | 7/21/2017 | Kristina Stephenson-Cheang | Draft RFA to Deft and Declaration | 0.80 | $350.00 | $280.00 |
| 492. | Rivera, Jorge v. FCA | 12/23/2016 | Amy Morse | Draft RFAs to FCA | 0.40 | $350.00 | $140.00 |
| 493. | Robinette, Brian (for Sierra Conservation Project) v. FMC | 6/1/2016 | Russell Higgins | Draft RFA to Defendant and declaration | 1.10 | $400.00 | $440.00 |
| 494. | Robles, Juan | 3/12/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.00 | $350.00 | $350.00 |
| 495. | Robles, Juan | 5/14/2018 | Michael Rosenstein | Drafted staff to run a Carfax on the Subject Vehicle; reviewed the same | 0.10 | $550.00 | $55.00 |
| 496. | Rocha, Michael | 5/2/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and Declaration | 1.20 | $375.00 | $450.00 |
| 497. | Rodriguez , Rosa + Gonzalez, Emiliano v. FCA | 6/23/2016 | Russell Higgins | Draft RFAs to Deft and declaration | 0.90 | $450.00 | $405.00 |
| 498. | Rodriguez, Angel | 9/26/2016 | Amy Morse | Draft RFA to Deft and Declaration | 1.10 | $250.00 | $275.00 |
| 499. | Rodriguez, Antonio | 2/14/2017 | Amy Morse | Draft RFAs to Deft and Declaration | 1.00 | $250.00 | $250.00 |
| 500. | Rodriguez, Jose v. General Motors | 11/2/2018 | Kristina Stephenson-Cheang | Draft RFA to Defendant and Declaration | 0.80 | $375.00 | $300.00 |
| 501. | Romero, Marcos v. FCA | 8/29/2017 | Kristina Stephenson-Cheang | Draft RFAs and to FCA and Declaration | 1.40 | $375.00 | $525.00 |
| 502. | Ronquillo, Faye v. FCA | 2/2/2017 | Amy Morse | Draft RFAs to FCA and declaration | 1.30 | $350.00 | $455.00 |
| 503. | Rosales, Ivan and Rodolfo v. FMC | 6/6/2016 | Russell Higgins | Draft RFAs to Deft | 0.40 | $400.00 | $160.00 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 504. | Roscoe, Eric | 6/12/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and Declaration | 1.30 | $375.00 | $487.50 |
| 505. | Rowland, Dave and Phyllis v. FMC | 12/28/2016 | Amy Morse | Draft RFAs to Deft and declaration | 0.90 | $350.00 | $315.00 |
| 506. | Rubish, Edward Phillip v. FMC | 10/26/2016 | Amy Morse | Draft RFA to Deft and Declaration | 0.90 | $250.00 | $225.00 |
| 507. | Rueda, Maria | 4/21/2017 | Kristina Stephenson-Cheang | Draft Ptf's RFAs to Deft and Declaration | 1.00 | $375.00 | $375.00 |
| 508. | Rueda, Maria | 12/13/2017 | Deepak Devabose | Draft RFAs to FCA | 0.50 | $275.00 | $137.50 |
| 509. | Ruiz, Joe v. BMW | 1/3/2017 | Alastair Hamblin | Draft RFAs to Deft | 0.30 | $325.00 | $97.50 |
| 510. | Ruiz, Sylvia G. v. General Motors | 6/29/2018 | Kristina Stephenson-Cheang | Draft RFA to GM and Declaration | 0.50 | $375.00 | $187.50 |
| 511. | Ruiz, Yanira v. FCA | 2/28/2017 | Amy Morse | Draft RFA to Deft and Declaration | 0.80 | $350.00 | $280.00 |
| 512. | Rus, Robert Mark v. FCA | 5/24/2018 | Kristina Stephenson-Cheang | Draft RFA to FCA and Declaration | 1.30 | $375.00 | $487.50 |
| 513. | Rus, Robert Mark v. FCA | 5/1/2019 | Amy Morse | Draft RFA to FCA and Declaration, Set Two | 1.00 | $350.00 | $350.00 |
| 514. | Ruvalcaba, Raul v. FMC | 10/24/2016 | Amy Morse | Draft RFAs to Deft and Declaration | 0.60 | $350.00 | $210.00 |
| 515. | Sakkis, Emmanuel | 11/30/2016 | Amy Morse | Draft RFAs to Deft and declaration | 1.20 | $350.00 | $420.00 |
| 516. | Salas, Maria v. Hyundai | 4/21/2016 | Russell Higgins | Draft RFAs to Deft and Declaration | 0.70 | $400.00 | $280.00 |
| 517. | Salazar, Virgina v. FCA | 3/16/2017 | Amy Morse | Draft Ptf's RFAs and Declaration | 1.00 | $350.00 | $350.00 |
| 518. | Salmeron, Alejandro Omeany v. FMC | 11/15/2018 | Deepak Devabose | Draft Ptf's RFAs to FMC | 1.10 | $275.00 | $302.50 |
| 519. | San Nicolas, Betty | 2/14/2017 | Amy Morse | Draft RFAs to Defts and declaration | 1.00 | $350.00 | $350.00 |
| 520. | Sanchez, Antonio v. Hyundai | 6/6/2016 | Russell Higgins | Draft RFA to Deft | 0.50 | $450.00 | $225.00 |
| 521. | Sanchez, Maria | 11/30/2016 | Amy Morse | Draft RFA to Defendant and Declaration | 1.00 | $250.00 | $250.00 |
| 522. | Sandoval, Cinthya and Mercedes v. FMC | 11/21/2016 | Amy Morse | Draft RFA to Deft and Declaration | 0.90 | $350.00 | $315.00 |
| 523. | Sandoval, Noe | 5/14/2017 | Kristina Stephenson-Cheang | Draft RFAs to FCA | 0.40 | $375.00 | $150.00 |
| 524. | Sands, Sean v. FMC | 4/26/2017 | Kristina Stephenson-Cheang | Draft RFA to Deft and Declaration | 0.90 | $350.00 | $315.00 |
| 525. | Santiago-Lopez, Fernando v. General Motors | 4/13/2018 | Kristina Stephenson-Cheang | Draft Ptf's RFA to GM | 0.50 | $375.00 | $187.50 |
| 526. | Schene, Donald and Sheri v. FMC | 11/17/2016 | Amy Morse | Draft RFAs to Deft | 0.50 | $350.00 | $175.00 |
| 527. | Scott, Paul | 9/26/2016 | Amy Morse | Draft RFA and Declaration to FCA | 1.10 | $350.00 | $385.00 |
| 528. | Scott, Sharon Jean v. FMC | 3/4/2019 | Mitchell Rosensweig | Draft Ptf's RFA to FMC | 1.20 | $325.00 | $390.00 |
| 529. | Segrest, Misty Lynn and Segrest, Victor Willi | 7/6/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and Declaration | 0.70 | $350.00 | $245.00 |
| 530. | Sekula, Carla | 10/30/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 531. | Sekula, Carla | 11/29/2017 | Deepak Devabose | Draft RFA to FCA | 0.80 | $275.00 | $220.00 |
| 532. | Self, Sandy v. FCA | 11/9/2017 | Deepak Devabose | Draft RFAs to FCA | 0.80 | $275.00 | $220.00 |
| 533. | Serrano Medina, Oscar v. FMC | 4/4/2019 | Mitchell Rosensweig | Draft RFA to Deft | 1.50 | $325.00 | $487.50 |
| 534. | Serrato, Elizabeth | 9/17/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.30 | $350.00 | $455.00 |
| 535. | Shavies, Leonard | 2/12/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.00 | $350.00 | $350.00 |
| 536. | Siciliano, Avilio v. Kia | 6/24/2016 | Russell Higgins | Draft RFAs to Deft and declaration | 0.60 | $400.00 | $240.00 |
| 537. | Siegel, M. v. FMC | 11/25/2013 | Daisy Ortiz | Draft RFA to Def and Declaration | 1.70 | $225.00 | $382.50 |
| 538. | Sierra, Victor | 1/28/2017 | Amy Morse | Draft Ptf's RFAs to Deft and Declaration | 1.00 | $350.00 | $350.00 |
| 539. | Silin, Brian v. FMC | 10/18/2016 | Amy Morse | Draft RFAs to Deft and Declaration | 0.80 | $350.00 | $280.00 |
| 540. | Simmons, Stephanie v. FMC | 10/22/2016 | Amy Morse | Draft RFA to Deft and Declaration | 0.90 | $350.00 | $315.00 |
| 541. | Skillman, Gary v. FMC | 12/2/2013 | Daisy Ortiz | Draft RFA to Defendant and Declaration | 1.70 | $225.00 | $382.50 |
| 542. | Smith, Nathan v. FCA | 7/28/2016 | Amy Morse | Draft RFA to Deft and Declaration | 0.90 | $350.00 | $315.00 |
| 543. | Sommer, Vladimir v. FCA | 2/28/2017 | Amy Morse | Draft RFA to FCA and Declaration | 1.40 | $350.00 | $490.00 |
| 544. | Son, Richard v. BMW | 9/30/2016 | Amy Morse | Draft RFAs to Deft and declaration | 1.20 | $350.00 | $420.00 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 545. | Soria, Steve | 7/20/2016 | Amy Morse | Draft RFAs to Deft and Declaration | 1.00 | $350.00 | $350.00 |
| 546. | Soto, Ana Bertha v. FMC | 1/26/2017 | Amy Morse | Draft RFAs to Deft and declaration | 0.90 | $350.00 | $315.00 |
| 547. | Spelts, Douglas | 10/12/2015 | Russell Higgins | Draft RFAs to Deft | 0.50 | $400.00 | $200.00 |
| 548. | Starace, Martin v. FCA | 11/9/2016 | Amy Morse | Draft RFAs to FCA | 1.00 | $350.00 | $350.00 |
| 549. | Strandberg, Richard and Helen v. FMC | 6/25/2014 | Daisy Ortiz | Draft RFA to FMC and Declaration | 2.10 | $225.00 | $472.50 |
| 550. | Straub, David v. Hyundai | 5/19/2016 | Russell Higgins | Draft Plaintiffs' First Set of RFAs | 0.50 | $400.00 | $200.00 |
| 551. | Strutt, Mollee Marie v,. FCA | 2/16/2017 | Amy Morse | Draft RFA to Deft and Declaration | 1.30 | $350.00 | $455.00 |
| 552. | Suarez, Leovigildo v. FMC | 3/8/2017 | Amy Morse | Draft RFAs to Deft and Declaration | 0.60 | $350.00 | $210.00 |
| 553. | Suazo, Claurdina | 10/28/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.30 | $350.00 | $455.00 |
| 554. | Sutton, Jeffrey v. HMA | 5/1/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft | 0.50 | $375.00 | $187.50 |
| 555. | Talamante, Jacinto v. Kia | 6/22/2016 | Russell Higgins | Draft RFAs to Deft | 0.60 | $450.00 | $270.00 |
| 556. | Talavera, Erika v. FCA | 7/10/2017 | Kristina Stephenson-Cheang | Draft RFA to FCA and Declaration | 1.10 | $375.00 | $412.50 |
| 557. | Tanner, John v. FMC | 10/16/2013 | Daisy Ortiz | Draft RFA's to Deft and Declaration | 1.00 | $225.00 | $225.00 |
| 558. | Tanner, John v. FMC | 11/2/2015 | Lauren Ungs | Draft RFA to Defense and Declaration, Set two | 0.50 | $425.00 | $212.50 |
| 559. | Tanner, John v. FMC | 6/14/2016 | Lauren Ungs | Draft Plaintiffs Third Set of RFAs to Deft | 0.60 | $425.00 | $255.00 |
| 560. | Tapia, Christine v. Hyundai | 6/22/2015 | Daisy Ortiz | Draft Plaintiffs' First Set of RFA | 0.40 | $225.00 | $90.00 |
| 561. | Tasch, George v. FMC | 5/30/2018 | Deepak Devabose | Draft Ptf's RFAs to Plaintiff | 0.80 | $275.00 | $220.00 |
| 562. | Tasch, George v. FMC | 9/13/2018 | Amy Morse | Draft Ptf's RFAs to Plaintiff | 0.50 | $350.00 | $175.00 |
| 563. | Tashner, Joseph | 9/21/2016 | Amy Morse | Draft RFA and Declaration to Deft | 1.10 | $350.00 | $385.00 |
| 564. | Teran, Dominic | 10/31/2016 | Amy Morse | Draft RFAs and declaration | 1.20 | $250.00 | $300.00 |
| 565. | Thomas, Brandon v. General Motors | 11/26/2018 | Kristina Stephenson-Cheang | Draft Ptf's RFA to GM and declaration | 0.90 | $375.00 | $337.50 |
| 566. | Thomas, Faye v. FCA | 4/9/2018 | Kristina Stephenson-Cheang | Draft RFA's to FCA | 0.50 | $375.00 | $187.50 |
| 567. | Thomasian, Sara | 11/30/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.20 | $350.00 | $420.00 |
| 568. | Thompson, James | 4/22/2017 | Kristina Stephenson-Cheang | Draft RFAs to FCA | 0.60 | $375.00 | $225.00 |
| 569. | Tinoco, Xochitl | 7/28/2016 | Kristina Stephenson-Cheang | Draft RFAs to Deft and declaration | 1.10 | $350.00 | $385.00 |
| 570. | Tomas, Francisco v. FCA | 1/13/2017 | Amy Morse | Draft RFA to Deft and declaration | 1.00 | $350.00 | $350.00 |
| 571. | Tomkins, Craig v. FCA | 1/8/2017 | Amy Morse | Draft RFA to FCA and Declaration | 1.30 | $350.00 | $455.00 |
| 572. | Toro, Violeta v. FCA | 11/10/2016 | Amy Morse | Draft RFAs to FCA and declaration | 0.90 | $350.00 | $315.00 |
| 573. | Tovar, David and Rocio v. FCA | 3/28/2018 | Kristina Stephenson-Cheang | Draft RFA to FCA and Declaration | 1.10 | $375.00 | $412.50 |
| 574. | Tripette, Leroy v. Hyundai | 6/7/2016 | Russell Higgins | Draft RFAs to Deft and Declaration | 0.90 | $450.00 | $405.00 |
| 575. | Tripp, Jason | 3/23/2017 | Amy Morse | Draft RFAs to FCA and declaration | 1.40 | $350.00 | $490.00 |
| 576. | Tuazon, Teodora and Joshua v. KMA | 1/31/2018 | Kristina Stephenson-Cheang | Draft Ptfs' RFA to Deft | 0.40 | $375.00 | $150.00 |
| 577. | Tuazon, Teodora and Joshua v. KMA | 11/27/2018 | Amy Morse | Draft Ptfs' RFA to KIA, Set Two | 0.10 | $350.00 | $35.00 |
| 578. | Tuell, Andrew for Tuell Concrete v. FMC | 6/7/2016 | Russell Higgins | Draft RFA and Declaration | 0.90 | $400.00 | $360.00 |
| 579. | Tuey, Valinda | 8/25/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 580. | Urbina, Jose P. v. KMA | 5/31/2018 | Kristina Stephenson-Cheang | Draft Ptf's RFA to Defendant | 0.30 | $375.00 | $112.50 |
| 581. | Valencia, Miguel | 10/30/2016 | Amy Morse | Draft RFA to FCA and Declaration | 1.40 | $350.00 | $490.00 |
| 582. | Valenton, Maria v. FCA | 12/26/2016 | Amy Morse | Draft Ptfs' RFA to FCA and declaration | 1.40 | $350.00 | $490.00 |
| 583. | Vanegas, David v. Hyundai | 11/12/2016 | Amy Morse | Draft RFAs to Deft and declaration | 0.70 | $350.00 | $245.00 |
| 584. | Varela, Julian | 10/5/2015 | Russell Higgins | Draft Plaintiff's RFAs | 0.50 | $400.00 | $200.00 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 585. | Vargas, Josefa | 7/20/2016 | Amy Morse | Draft RFA to Deft and Declaration | 1.00 | $350.00 | $350.00 |
| 586. | Vasquez, Efrain and Vasquez, Michelle v. FMC | 9/13/2016 | Amy Morse | Draft RFA to Deft and declaration (8 p/ 54 r) | 0.90 | $350.00 | $315.00 |
| 587. | Vasquez, Gabriel v. Hyundai | 6/2/2016 | Russell Higgins | Draft Plaintiff's First Set of RFA | 0.40 | $400.00 | $160.00 |
| 588. | Vasquez, Jesus | 3/19/2017 | Amy Morse | Draft RFA to FCA and Declaration | 1.30 | $350.00 | $455.00 |
| 589. | Vega, Alejandra v. BMW | 11/14/2016 | Amy Morse | Draft RFAs to Deft | 0.50 | $350.00 | $175.00 |
| 590. | Vega, Maria v. FCA | 6/7/2016 | Russell Higgins | Draft Plfs' RFA | 0.50 | $400.00 | $200.00 |
| 591. | Velazquez v. FCA | 9/23/2016 | Amy Morse | Draft RFA to FCA and declaration | 1.00 | $350.00 | $350.00 |
| 592. | Vidal, Beverly v. FMC | 9/2/2016 | Amy Morse | Draft RFA to Defendant and Declaration, Set One | 0.70 | $350.00 | $245.00 |
| 593. | Villalta, Jose & Chacon, Karla v. FCA | 1/24/2019 | Kristina Stephenson-Cheang | Draft RFA to Defendant and Declaration | 1.90 | $375.00 | $712.50 |
| 594. | Vivo, Gary v. Kia | 11/23/2016 | Amy Morse | Draft RFA to Deft and Declaration | 0.90 | $350.00 | $315.00 |
| 595. | Waggener Paul | 2/25/2017 | Amy Morse | Draft RFA to Defendant and Declaration | 1.30 | $350.00 | $455.00 |
| 596. | Walker, Tracy | 1/16/2017 | Amy Morse | Draft RFAs to FCA and declaration | 0.90 | $350.00 | $315.00 |
| 597. | Washington, Sharon v. Kia | 4/13/2018 | Kristina Stephenson-Cheang | Draft Ptf's RFA to KMA and declaration | 1.00 | $375.00 | $375.00 |
| 598. | Watkins, Donmna v. FMC | 11/25/2013 | Daisy Ortiz | Draft RFA and RFG to Ford and Declaration | 1.80 | $225.00 | $405.00 |
| 599. | Watts, Cleveland v. FMC | 12/18/2013 | Lauren Ungs | Draft RFA to Defendant and Declaration | 1.30 | $425.00 | $552.50 |
| 600. | Watts, Sherri v. FCA | 3/19/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.30 | $350.00 | $455.00 |
| 601. | Weakley, Robert and Weakley, Brenda v. FMC | 10/13/2016 | Amy Morse | Draft RFAs to Deft and declaration | 1.20 | $350.00 | $420.00 |
| 602. | Webster, William v. Hyundai | 5/31/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft | 0.60 | $375.00 | $225.00 |
| 603. | WELCH V.FMC | 3/6/2017 | Amy Morse | Draft RFAs to Deft and declaration | 0.80 | $350.00 | $280.00 |
| 604. | West, Marilyn v. Hyundai | 6/2/2016 | Russell Higgins | Draft RFA and declaration to Dft | 0.80 | $400.00 | $320.00 |
| 605. | Weston, Celie v. FCA | 11/3/2016 | Amy Morse | Draft RFA to Defts and Declaration | 1.10 | $350.00 | $385.00 |
| 606. | White, Bryan v. Hyundai | 6/3/2016 | Russell Higgins | Draft RFAs to Deft and Declaration | 1.00 | $400.00 | $400.00 |
| 607. | White, Mae v. BMW | 11/17/2016 | Amy Morse | Draft RFAs to Deft | 0.50 | $350.00 | $175.00 |
| 608. | Whitehouse, James v. FCA | 11/21/2016 | Amy Morse | Draft RFA to FCA and Declaration | 0.90 | $350.00 | $315.00 |
| 609. | Whitehouse, James v. FCA | 2/24/2017 | Amy Morse | Draft RFA to FCA and Declaration, Set Two | 0.70 | $350.00 | $245.00 |
| 610. | Williams, Cora and Williams, Jeanine v. FMC | 6/23/2017 | Kristina Stephenson-Cheang | Draft RFA to Deft and Declaration | 0.90 | $375.00 | $337.50 |
| 611. | Williams, Gregory | 10/31/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 0.90 | $350.00 | $315.00 |
| 612. | Williams, Monte | 11/10/2016 | Amy Morse | Draft RFAs to Deft and Declaration (10 p/70 r) | 1.10 | $350.00 | $385.00 |
| 613. | Wu, Wei | 11/10/2016 | Amy Morse | Draft RFA to FCA and Declaration | 1.00 | $350.00 | $350.00 |
| 614. | Yazdanniaz, Shahriar v. FCA | 3/22/2018 | Kristina Stephenson-Cheang | Draft Ptf's RFA to FCA and declaration | 0.70 | $375.00 | $262.50 |
| 615. | Yazdanniaz, Shahriar v. FCA | 5/9/2019 | Amy Morse | Draft Ptf's RFA to FCA and declaration, Set Two | 1.80 | $350.00 | $630.00 |
| 616. | Yee, Donald K. v. FMC | 8/21/2015 | Russell Higgins | Draft Plaintiff's RFAs | 0.50 | $400.00 | $200.00 |
| 617. | YOUNG V.FMC | 5/3/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and Declaration | 0.70 | $375.00 | $262.50 |
| 618. | Young, Teresa v. FCA | 1/23/2017 | Amy Morse | Draft RFAs and Declaration to FCA | 0.60 | $350.00 | $210.00 |
| 619. | Yu, Borris | 3/9/2017 | Amy Morse | Draft RFAs to Deft and Declaration | 0.90 | $350.00 | $315.00 |
| 620. | Zagorski, John | 7/26/2016 | Amy Morse | Draft RFA to FCA and Declaration | 1.00 | $350.00 | $350.00 |
| 621. | Zamir, David | 10/5/2015 | Russell Higgins | Draft RFA to Defendant | 0.50 | $400.00 | $200.00 |
| 622. | Zuniga, Lucia v. FCA | 7/19/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 2.10 | $350.00 | $735.00 |
| 623. | Zur, Ofer | 10/13/2015 | Russell Higgins | Draft RFAs to FCA | 0.50 | $450.00 | $0.00 |
| | | | | | **578.30** | | **$196,267.50** |

# EXHIBIT C

***Ford Motor Co. v. Knight Law Group et al.*: First Amended Complaint Exhibit C**

**Specific Selected Violations of 18 U.S.C. §§ 1341, 1343 (Mail Fraud, Wire Fraud)**

| No. | From | To | Date | Format | Purpose | Description |
|---|---|---|---|---|---|---|
| 1 | Mirka Arellano KNIGHT LAW GROUP | Spencer P. Hugret GORDON & REES LLP | December 15, 2017 | Mail service of fraudulent fee application and supporting declarations | Securing funds to further fraudulent billing scheme | Motion for Attorney's Fees in Margeson v. Ford Motor Company, Los Angeles County Superior Court Case No. BC549430; supporting declarations of Steve Mikhov and Bryan Altman. |
| 2 | Spencer P. Hugret GORDON & REES LLP | Steve Mikhov KNIGHT LAW GROUP | July 24, 2018 | Payment via Mail | Securing funds to further fraudulent billing scheme | Buck v. Ford Motor Company, Stanislaus County Superior Court Case No. 2008745<br><br>Letter enclosing $135,500.00 check[1] from Ford to KLG |
| 3 | Ford Motor Company | Knight Law Group | August 15, 2018 | Payment via Mail | Securing funds to further fraudulent billing scheme | Duenas v. Ford Motor Company, Los Angeles County Superior Court Case No. BC638306<br><br>$12,405.20 check from Ford to KLG. |
| 4 | Nancy Perrelli GATES, GONTER, GUY, PROUDFOOT & MUENCH, LLP | Steve Mikhov KNIGHT LAW GROUP | October 1, 2018 | Payment via Mail | Securing funds to further fraudulent billing scheme | Duk v. Ford Motor Company, San Diego County Superior Court Case No. 2016-00012779<br><br>Letter enclosing $101,450.78 check from Ford to KLG. |

[1] All checks that any RICO Defendant received from Ford were issued in Michigan.

| | | | | | | |
|---|---|---|---|---|---|---|
| **5** | Ford Motor Company | Knight Law Group | October 9, 2018 | Payment via Mail | Securing funds to further fraudulent billing scheme | Burgess v. Ford Motor Company, San Bernardino County Superior Court Case No. CIVDS1620111<br><br>Letter enclosing $10,675.16 check from Ford to KLG |
| **6** | Ford Motor Company | Knight Law Group | October 12, 2018 | Payment via Mail | Securing funds to further fraudulent billing scheme | Orosco v. Ford Motor Company, Los Angeles County Superior Court Case No. BC638222<br><br>Letter enclosing $15,005.00 check from Ford to KLG |
| **7** | Nancy Perrelli GATES, GONTER, GUY, PROUDFOOT & MUENCH, LLP | Steve Mikhov, Esq. KNIGHT LAW GROUP, LLP | November 29, 2018 | Payment via Mail | Securing funds to further fraudulent billing scheme | Lehde v. Ford Motor Company<br><br>Letter enclosing $185,000 check from Ford to KLG |
| **8** | Bryan Altman ALTMAN LAW GROUP | Elizabeth McNulty EVANS, FEARS & SCHUTTERT LLP | January 7, 2022 | Email | Securing funds to further fraudulent billing scheme | Email correspondence between Altman and Ford outside counsel in which Ford agrees to settle ALG fee claims by paying ALG $300,000.00 in: (i) Berroteran v. Ford Motor Company, Los Angeles County Superior Court Case No. BC542525, (ii) Brown v. Ford Motor Company, Butte County Superior Court Case No. 160060, and (iii) Coon v. Ford Motor Company, Riverside County Superior Court Case No. MCC1300767 |
| **9** | Ford Motor Company | Dorothy Becerra KNIGHT LAW GROUP | March 2, 2022 | Payment via Mail | Securing funds to further fraudulent billing scheme | Coon v. Ford Motor Company, Riverside County Superior Court Case No. MCC1300767<br><br>$793,924.29 check from Ford to KLG. |

| | | | | | | |
|---|---|---|---|---|---|---|
| **10** | Elizabeth McNulty<br>EVANS, FEARS & SCHUTTERT LLP | Richard Wirtz<br>WIRTZ LAW APC | May 11, 2022 | Payment via Mail | Securing funds to further fraudulent billing scheme | <u>Anderson v. Ford Motor Company</u>, San Joaquin County Superior Court Case No. 39-2013-00299512-CU-BC-STK.<br><br>$38,270.98 check from Ford to Wirtz Law. |
| **11** | Knight Law Group | Los Angeles Superior Court | May 20, 2022 | Electronic filing and service, as well as mail service, of fraudulent fee applications and supporting declaration | Securing funds to further fraudulent billing scheme | Motion for Attorney's Fees in <u>Berroteran v. Ford Motor Company</u>, Los Angeles County Superior Court Case No. BC542525; supporting declaration of Roger Kirnos |
| **12** | Ford Motor Company | The Altman Law Group | June 6, 2022 | Payment via Mail | Securing funds to further fraudulent billing scheme | <u>Brown v. Ford Motor Company</u>, Butte County Superior Court Case No. 160060<br><br>$300,000 check from Ford to ALG |
| **13** | Ford Motor Company | The Altman Law Group | June 16, 2022 | Payment via Mail | Securing funds to further fraudulent billing scheme | <u>Coon v. Ford Motor Company</u>, Riverside County Superior Court Case No. MCC1300767<br><br>$300,000 check from Ford to ALG. |
| **14** | Ford Motor Company | Knight Law Group | June 16, 2022 | Payment via Mail | Securing funds to further fraudulent billing scheme | <u>Coon v. Ford Motor Company</u>, Riverside County Superior Court Case No. MCC1300767<br><br>$709,004.12 check from Ford to KLG. |
| **15** | Ford Motor Company | The Altman Law Group | July 20, 2022 | Payment via Mail | Securing funds to further fraudulent billing scheme | <u>Berroteran v. Ford Motor Company</u>, Los Angeles County Superior Court Case No. BC542525 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | $300,000.00 check from Ford to ALG. |
| **16** | Spencer Hugret GORDON & REES LLP | Roger Kirnos KNIGHT LAW GROUP | July 25, 2022 | Payment via Mail | Securing funds to further fraudulent billing scheme | <u>Margeson v. Ford Motor Company</u>, Los Angeles County Superior Court Case No. BC549430.<br><br>Letter enclosing $136,744.53 check from Ford to KLG. |
| **17** | Ford Motor Company | Roger Kirnos KNIGHT LAW GROUP | July 25, 2022 | Payment via Mail | Securing funds to further fraudulent billing scheme | <u>Brown v. Ford Motor Company</u>, Butte County Superior Court Case No. 160060<br><br>$843,528.13 check from Ford to KLG |
| **18** | Ford Motor Company | Altman Law Group | July 26, 2022 | Payment via Mail | Securing funds to further fraudulent billing scheme | <u>Anderson v. Ford Motor Company</u>, San Joaquin County Superior Court Case No. 39-2013-00299512-CU-BC-STK.<br><br>$225,000.00 check from Ford to ALG. |
| **19** | Ford Motor Company | Knight Law Group | July 26, 2022 | Payment via Mail | Securing funds to further fraudulent billing scheme | <u>Anderson v. Ford Motor Company</u>, San Joaquin County Superior Court Case No. 39-2013-00299512-CU-BC-STK.<br><br>$813,544.48 check from Ford to KLG. |
| **20** | Spencer Hugret GORDON & REES LLP | Bryan Altman ALTMAN LAW GROUP | August 17, 2022 | Payment via Mail | Securing funds to further fraudulent billing scheme | <u>Margeson v. Ford Motor Company</u>, Los Angeles County Superior Court Case No. BC549430. |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | Ford check in the amount of $500,000.00 |
| **21** | Spencer Hugret GORDON & REES LLP | Roger Kirnos KNIGHT LAW GROUP | September 26, 2022 | Payment via Mail | Securing funds to further fraudulent billing scheme | Margeson v. Ford Motor Company, Los Angeles County Superior Court Case No. BC549430.<br><br>Letter enclosing $345,000 check from Ford to KLG. |
| **22** | Ford Motor Company | Roger Kirnos KNIGHT LAW GROUP | October 21, 2022 | Payment via Mail | Securing funds to further fraudulent billing scheme | Berroteran v. Ford Motor Company, Los Angeles County Superior Court Case No. BC542525<br><br>$851,493.51 check from Ford to KLG. |
| **23** | Ford Motor Company | Knight Law Group | February 8, 2023 | Payment via Mail | Securing funds to further fraudulent billing scheme | Anderson v. Ford Motor Company, San Joaquin County Superior Court Case No. 39-2013-00299512-CU-BC-STK.<br><br>$27,644.00 check from Ford to KLG. |
| **24** | Knight Law Group | Los Angeles Superior Court | November 29, 2023 | Electronic filing and service, as well as mail service, of fraudulent fee applications and supporting declaration | Securing funds to further fraudulent billing scheme | Motion for Attorney's Fees in Faulkner v. Ford Motor Company, Riverside County Superior Court Case No. RIC1709381 (transferred to JCCP 4856); supporting declaration of Roger Kirnos |
| **25** | Jacob Cutler | Ford's outside counsel | September 5, 2024 | Email | Securing funds to further fraudulent billing scheme | Cutler, copying numerous KLG attorneys, including Kirnos, sent ten fee statements to Ford's outside counsel, seven of which |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | contain time entries as far back as 2018 and include entries for time allegedly billed by, among others, Amy Morse, Kristina Stephenson-Chang, and Lauren Ungs. |
| **26** | Roger Kirnos | Ford's outside counsel | April 21, 2025 | Email | Securing funds to further fraudulent billing scheme | Kirnos, copying numerous KLG attorneys, sent three fee statements to Ford's outside counsel. |

# EXHIBIT D

**KNIGHT LAW GROUP, LLP**
Steve Mikhov (SBN 224676)
stevem@knightlaw.com
Daniel Kalinowski (SBN 305087)
danielk@knightlaw.com
10250 Constellation Blvd., Suite 2500
Los Angeles, California 90067
Telephone: (310) 552-2250
Fax: (310) 552-7973

Attorney for Plaintiffs,
ROBERTO ISLAS and
FERNANDO ISLAS

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ROBERTO ISLAS and FERNANDO ISLAS,**<br><br>Plaintiffs,<br><br>vs.<br><br>**FORD MOTOR COMPANY, a Delaware Corporation; and DOES 1 through 10, inclusive**,<br><br>Defendants. | Case No: 5:18-cv-02221-GW-SP_<br><br>**DECLARATION OF STEVE MIKHOV IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEY FEES**<br><br>[Filed concurrently with Plaintiffs' Notice of Motion and Motion for Attorney's Fees, Costs and Expenses; Memorandum in Support Thereof]<br><br>*Assigned for All Purposes to the Honorable George H. Wu*<br><br>Hearing Date: September 13, 2021<br>Time: 8:30 a.m.<br>Courtroom: 9D |

**DECLARATION OF STEVE MIKHOV**

I, Steve Mikhov, declare as follows:

1. I am an attorney at law duly licensed to practice before the courts of the State of California and attorney of record for Plaintiffs Robert Islas and Fernando Islas ("Plaintiffs") in the instant action. I have personal knowledge of the following facts and, if sworn as a witness, I could and would testify to them competently.

2. I make this declaration in support of Plaintiffs' Motion for Attorney Fees ("Motion"). For the reasons set forth herein and, in the Motion, Plaintiffs request $114,884.00 in attorney's fees for the legal services provided by Knight Law Group, LLP ("Knight Law"). A true and correct copy of my firm's billing is attached hereto as **Exhibit A**.

3. On September 24, 2016, Plaintiffs purchased the Subject Vehicle for a cash price of $29,443.82 – adding taxes, fees, two service contracts, GAP insurance and finance charges on a several year loan, the total purchase price increased to a total of $38,853.28. See Dkt. No. 1, ECF pp. 17-18. The vehicle was manufactured and distributed by Ford, which provided an express written warranty, and was sold and serviced by David Wilson's Villa Ford in Orange, California, a Ford-authorized sales and repair facility.

4. Just six months into Plaintiffs' ownership of the Subject Vehicle, a recall was performed to the body control module. Roughly three months later, Plaintiffs experienced a malfunction when the check engine light turned on due to lack of power on account of an engine misfire. The Subject Vehicle was at Ford's authorized repair facility for around twenty-two days. Several months later, the check engine light came on again and Ford's authorize repair facility found oil leak from the engine. By this time, in the span of less than a year and early on in the warranty period, the Subject Vehicle was out of service for over thirty days for serious repairs and service.

5. Despite the ongoing problems with the engine in the relatively short time span, Ford refused to acknowledge the defective nature of the Subject Vehicle and did not affirmatively offer to repurchase or replace it, as required by law. At all times, Ford had direct, contemporaneous knowledge of the vehicle's serious defects, which it records in a database called "OASIS" and its warranty repair history database. These repair records indicate each time the vehicle was presented for repair during the warranty period, as well as every time the Ford repair facility found a problem/defect attributable to Ford and billed Ford for the warranty related work.

6. Frustrated, concerned for their safety, and having lost confidence in Ford's ability to repair the vehicle, Plaintiffs were forced to contact Ford's customer service center themselves and requested their Subject Vehicle be repurchased or replaced in early 2018. In response, instead of offering the total purchase price minus the statutory mileage offset allowed under the Song-Beverly Act ($34,204.81), Ford improperly offered to repurchase the Subject Vehicle for $31,474.81 deducting one of the two service contracts ($1,930.00) and GAP insurance ($800.00).

7. Feeling cheated that the entire amount they purchased the Subject Vehicle for was not being reimbursed to them, Plaintiffs contacted Knight Law and told the firm about the problems with the vehicle and the way Ford treated them. After reviewing the repair history and discussions with Plaintiffs, my firm, Knight Law, agreed to represent them and bear the risk of litigating the case on a fully contingent basis. Because Knight Law's compensation was purely contingent, my firm faced a genuine risk of not being paid for its services for years, if at all, while advancing thousands of dollars in costs and expenses on Plaintiffs' behalf. In taking on this duty, my firm was facing a litigation behemoth—Ford is a multi-billion-dollar company, with a virtually infinite litigation war-chest, that wages a battle of attrition that most firms cannot withstand.

8. As a result of Ford's failure to fix the material defects associated with the Subject Vehicle, or otherwise comply with the Song-Beverly Act's affirmative

duty, which requires car manufacturers to repurchase qualifying vehicles *affirmatively* without merely sitting back and waiting for a consumer to ask for relief and improperly deduct reimbursable items from its pre-litigation "offer" in response to Plaintiffs' buyback request, Plaintiffs filed a Complaint in this action on September 18, 2018 in the San Bernardino County Superior Court. See Dkt. No. 1, ECF pp. 7-15. Plaintiffs' Complaint alleged violations of the Song-Beverly Act. *Id.*

9. Ford then filed its Answer in state court denying all liability and asserting numerous affirmative defenses on or about October 17, 2018. See Dkt. No. 1, ECF pp. 33-39. Further defiant in its acknowledgment that it manufactured and sold a "lemon," Ford removed this case to federal court the next day, on October 18, 2018 asserting diversity jurisdiction. See Dkt. No. 1, generally.

10. On November 26, 2018, Knight Law began preparing the Joint Rule 26f Report as well as met and conferred with Ford's counsel regarding the Joint Report. See Dkt. No. 9. Subsequently, on December 10, 2018, the parties appeared at an Initial Scheduling Conference. See Dkt. No. 10.

11. In January 2019, Ford propounded a set of written discovery requests upon each Plaintiffs which included interrogatories and requests for production. My firm dutifully analyzed each request, secured Plaintiffs' input, and drafted responses by March 2019. In the meantime, the parties exchanged deposition notices including Ford's notices of Plaintiffs' depositions and Plaintiffs' notices of Ford's person most knowledgeable ("PMK") and its dealership personnel who worked on the Subject Vehicle.

12. Knowing from experience that Ford's position and strategy in this litigation would demand extensive efforts in response, written discovery was drafted and served on Ford in March 2019, consisting of requests for admissions, requests for production of documents, and interrogatories. Plaintiffs benefitted from Knight Law's expertise and experience in litigating against Ford as just 2.5 hours were billed for drafting the entirety of this written discovery. My firm is able to use existing files

as templates to conserve time and litigate efficiently. A set of written discovery requests drafted from scratch and without the benefit of my firm's vast knowledge, experience and specialized expertise, would have taken multitudes of the time expediently managed here.

13. On May 14, 2019, Plaintiffs prepared for and took the deposition of Ford's Person Most Knowledgeable Alyson Linda. That same month, Ford took the depositions of Plaintiffs. Prior to those depositions, my firm diligently prepared Plaintiffs.

14. On July 1, 2019, Ford filed its Motion to Dismiss for Lack of Subject Matter Jurisdiction as to one of the Plaintiffs and Motion for Summary Judgment (the "MSJ"). See Dkt. No. 19. My firm immediately prepared the Opposition to Ford's MSJ including evidentiary objections, memorandum of points and authorities, supporting declaration and separate statement. On July 29, 2019, the parties appeared at the first hearing on Ford's MSJ. See Dkt. No. 27. At this hearing, the Court denied Ford's Motion to Dismiss for Lack of Subject Matter Jurisdiction as to one of the Plaintiffs but continued the hearing on the Motion for Summary Judgment Portion and ordered the parties to meet and confer as to settlement and prepare supplemental briefing. On September 9, 2019, the parties appeared at another hearing on Ford's MSJ. See Dkt. No. 38. The Court continued the hearing again pending determination of Ford's MSJ and another hearing was held on September 19, 2019. See Dkt. Nos. 38, 41. The Court continued the hearing ordering the parties to continue to meet and confer on settlement as well as submit a joint submission specifically as to whether the extended service contract deducted from Ford's pre-litigation offer was born of Ford or a third party. After the parties were unable to settle, they submitted a joint brief, and the Court held hearings on the MSJ on September 30, 2019 and a final hearing on October 17, 2019. See Dkt. No. 48. The Court granted in part and denied in part Ford's MSJ dismissing the civil

penalties alleged by Plaintiffs under the Song-Beverly Act for Ford's willfulness but leaving in the remainder of Plaintiffs' claims and damages. See Dkt. No. 52.

15. On October 24, 2019 and December 5, 2019, after submitting a joint report to the Court, the parties appeared at status conferences ordered by the Court. See Dkt. Nos. 53, 56. As a result of those status conferences, the Court ordered the parties to a Mandatory Settlement Conference with the Honorable Magistrate Judge Kim which took place on January 23, 2020. See Dkt. No. 57. The case did not settle, and the parties continued to litigate and prepare for trial which, at that time, was set for June 30, 2020. See Dkt. No. 61.

16. On May 28, 2020, the parties filed pre-trial documents including Motions in Limine and Memorandum of Contentions of Fact and Law. See Dkt. Nos. 64-72. My firm also prepared other trial documents in anticipation of trial including Exhibit List, Witness List, Jury Instructions, and Verdict Form. On June 1, 2020, the parties appeared at a Post-Mediation Status Conference, and the Court vacated the trial and related dates and ordered the parties to submit a joint report as to settlement or new scheduling. See Dkt. No. 74. Following the submission of the parties' joint report, the Court reset trial to October 27, 2020. *Id*; see Dkt. No. 76. My firm continued to prepare for trial and draft, amend and update trial documents, including Oppositions to Ford's Motions in Limine.

17. On September 24, 2020 and October 1, 2020, the parties appeared at a Status Conferences. See Dkt. Nos. 79, 81. The parties continued to meet and confer as to settlement but were unable to reach a resolution, and Plaintiffs continued to prepare for trial. On January 28, 2021, the parties appeared at a Status Conference wherein trial and related deadlines were taken off calendar and the parties were ordered to file another joint report two days before the next scheduled Status Conference on March 18, 2021. See Dkt. Nos. 84, 86. At the March 18, 2021 Status Conference, a second settlement conference was scheduled to be held in front of the Honorable Magistrate Judge Steve Kim. See Dkt. No. 87.

18. On May 5, 2021, the parties appeared at a settlement conference in front of the Honorable Magistrate Judge Steve Kim and the case settled. See Dkt. No. 97. On May 7, 2021, the parties executed a settlement agreement for $34,204.81 which constitutes a statutory buyback with a mileage offset – no deductions were made for the extended service contract or GAP initially deducted from Ford's pre-litigation offer. The settlement agreement provides that "Plaintiffs shall retain the right to petition the Court for an award of attorney's fees, costs and expenses, reasonably incurred in connection with the commencement and prosecution of this action pursuant to Civil Code, section 1794(d)" and "[i]n ruling on Plaintiffs' fee motion… fees, expenses and costs amount shall be calculated as if Plaintiffs were found to have prevailed in this action as of the date of this Offer." A true and correct copy of the executed settlement agreement is attached hereto as **Exhibit B.**

19. Up until the May 5, 2021 settlement conference and subsequent settlement agreement, my firm served multiple written settlement offers on Ford, and the parties also met and conferred by phone on numerous occasions as to settlement as ordered by the Court. At no point in this action has Ford served a written settlement offer on my office, whether it be a Rule 68 Offer or another offer in exchange for dismissal.[1]

20. This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place by email and phone between July 28, 2021 and August 10, 2021. The parties were unable to reach a resolution.

**<u>Defendant Has Refused to Settle Attorney Fees/Costs/Expenses and Has Forced This Fee Motion to be Filed</u>**

21. Throughout my experience as an attorney in this area of law, I was routinely able to settle the matter of attorney's fees, costs and expenses without court

[1] My office does not disclose the specifics of these settlement discussions and negotiations in order to protect the confidentiality of settlement negotiations, some of which occurred prior to, during or subsequent to Court ordered settlement conferences with Magistrate Judge.

involvement. For most manufacturers, that remains to be true. However, while I do not have direct proof, it appears to me, and I infer that it not be coincidence, that a select few manufacturers represented by the same specific law firms have colluded to force my firm to file motions for attorney's fees in virtually every case instead of resolving the issue by agreement.

22. It is a policy of the law firm to settle our clients' claims before discussing settlement of attorney's fees, costs and expenses. We take this approach to avoid any possibility, or even the appearance, of a conflict of interest. Once the vehicle is surrendered and the client is paid, we discuss attorney's fees, costs and expenses with opposing counsel.

23. In 2016, the practice of settling fees changed completely, and in particular with Ford Motor Company. From 2007 until approximately the middle of 2016, I was typically able to settle attorney's fees with Ford. In 2015, I filed a <u>total</u> of 15 motions for attorney's fees all year. However, that all changed in mid-2016.

24. Since then, virtually every case concludes with a motion such as this. Even when the amount is relatively nominal, Ford refuses to engage in settlement. Ford appears to draw a "win" by trying to attack my firm and reduce our compensation rather than alleviating the burden and necessity of review of these matters. As it is now patently clear to me that Ford is unwilling to come to the table with realistic numbers to settle attorney's fees and costs, my firm has shifted focus to getting these unpaid matters to the courts, thereby increasing fees and clogging the already-busy courts with more work.

**<u>Ford is a Staunch Defendant That Litigates More Aggressively Than Most Other Vehicle Manufacturers While Deceiving Consumers More Than Most Manufacturers</u>**

25. There are vehicle manufacturers with whom this firm has had exactly zero trials, zero discovery disputes, zero motions to compel, zero fee motions. Ford Motor Company is not one of them. Since 2012, the firm has tried 55 lemon law

cases. One case ended in a hung jury and one case ended in a mistrial. Taking those two matters out, Knight Law and its trial attorneys have a win-loss record of 36 wins and 17 losses. This amounts to nearly a 70% winning percentage in trials. Of those 55 trials, Ford makes up 14 of them. <u>In other words, Ford alone comprises 25% of all of the cases that go to trial</u>. Of the 14 trials prosecuted against Ford, the firm has prevailed in 9 of them.

26. During the course of my years in practice, I have successfully pursued evidence during discovery that has proven damaging to the Ford. For example, Ford was compelled to produce 35,000 pages of training materials from its customer service call center. The production of these documents came only after Ford's representatives claimed for years that no such training materials existed, and perjured themselves in declarations opposing motions to compel. It was only once I flew to Melbourne, Florida to depose Abe Bush, one of Ford's customer service agents, during which he admitted that he had use of training materials. Based on that information, I pursued court orders to compel the materials. Ford's then-counsel, having denied the existence of training materials in countless declarations, flipped the opposition and claimed "it was a revelation" that the documents existed. Another example is Ford's attempt to conceal documents that it had produced in other class action litigation. Through continuing efforts, Ford was ordered to produce approximately 12,000,000 pages in a class document dump. The firm's attorneys spent countless hours sifting through these pages. Once certain documents were identified and brought into evidence at trial, Ford amazingly claimed that the documents were not genuine and authentic. As a result, we sought Ford's admission of the genuineness of these documents, which Ford initially denied, but court orders eventually compelled their admission of authenticity. More recently, there was an ongoing feud in which Ford was ordered to produce customer service documents located on what is referred to as the "G: drive," but Ford ignored the order, caused a motion to compel compliance, filed motions for a protective order and a motion for

reconsideration, and after almost two years of this battle finally produced the contents of that G: drive.

27. In my experience, Ford's approach to litigation is to fight at every turn, make unacceptably low offers that its attorneys know from their experience are not satisfactory, or make no offers at all, until the trial date for the case is near. Of course, this is not always the situation. Based on a sample of the cases filed against Ford in 2016 and 2017, 74% of those cases settled where trial was within six months or less, and 50% of those cases settled within just one month of trial. The following chart shows the percentage of lawsuits that are settled when Ford finally tenders an adequate offer when trial is imminent:




28. Since 2017, Ford ramped up its defense even more. Ford has hired several law firms to assist in its defense. Ford is now represented by the following eleven law firms in lemon law actions against my firm:

1) King & Spalding
2) Greenburg Traurig
3) Gordon Rees Scully Mansukhani, LLP
4) Gates, O'Doherty, Gonter & Guy

5) Baker Hostetler LLP
6) Snell & Wilmer, LLP
7) Shook, Hardy & Bacon
8) The Erskine Law Group
9) LeClairRyan
10) Sanders Roberts LLP
11) Dykema Gossett

29. Recently, one of Ford's attorneys, speaking on behalf of the entire army of lawyers, proclaimed that Ford was no longer willing to discuss settlement, did not want to engage in any further mediations and fully intends to bring every case to trial unless our clients accept Ford's existing offers. A true and correct copy of that letter is attached hereto as **Exhibit C**.

30. As a result of Ford's resolute defense, attorney's fees are incurred during the prosecution of the lawsuit. As discussed above, I was historically able to resolve payment without the need for filing motions, though in a few, rare cases my firm did file a motion. As stated by one of Ford's attorneys in a declaration in support of a federal court finding federal jurisdiction of a matter based on amount in controversy, "it is not uncommon, and in fact quite regular, for attorney's fee and cost awards (or resolutions through informal discussions with opposing counsel) to exceed $100,000.00." A true and correct copy of the declaration of Spencer Hugret is attached hereto as **Exhibit D, p. 3, ¶ 4**.

**The Attorneys' Hourly Rates Are Reasonable Pursuant to the Lodestar Method in Light of their Experience**

31. I attended law school at Pepperdine University and I was a judicial extern for Judge Gregory W. Alarcon of the Los Angeles County Superior Court in 2002.

32. I have been admitted to the State Bar of California since April 29, 2003. Since my admission to the State Bar of California, I have specialized in consumer law.

33. I have extensive experience prosecuting and resolving consumer protection matters involving motor vehicle claims. For the past fifteen years, I have specialized in breach of warranty and fraud cases against automobile manufacturers and dealers. I was among the attorneys who represented the plaintiff in *Joyce v. Ford Motor Co.* (2011) 198 Cal.App.4th 1478, a leading case which extended the protections of the Lemon Law to trucks based on actual weight, not maximum capacity.

34. Knight Law has been on the prevailing end of numerous other appellate decisions:

<u>Published Opinions</u>

1) *Joyce v. Ford Motor Co.* 198 Cal.App.4th 1478 (Cal Ct. App. 2011)
2) *Etcheson v. FCA US, LLC* 30 Cal.App.5th 831 (Cal. Ct. App. 2018)
3) *Warren v. Kia Motors America, Inc.*, 30 Cal.App.5th 24 (Cal. Ct. App. 2018)
4) *Hanna v. Mercedes-Benz USA, LLC* 36 Cal.App.5th 493 (Cal. Ct. App. 2019)
5) *Patel v. Mercedes-Benz USA, LLC*, 43 Cal.App.5th 1007 (Cal. Ct. App. 2019)
6) *Berroteran v. Sup. Ct.*, 41 Cal.App.5th 518 (Cal. Ct. App. 2019) (cert. review granted)
7) *Reynolds v. Ford Motor Company*, 47 Cal.App.5th 1105 (Cal. Ct. App. 2020)

<u>Unpublished Opinions</u>

8) McCullough v. FCA, No. D073330, 2018 WL 5856500 (Cal. App. Nov. 9, 2018)
9) Noflin v. Volkswagen, No. B275638, 2018 WL 1373992 (Cal. App. Mar. 19, 2018)
10) Cofield v. Kia, Nos. F074977, F075811, 2019 WL 3986198 (Cal. App. Aug. 23, 2019)

11) Palombi v. FCA, No. A156166, 2020 WL 2553307 (Cal. App. May 20, 2020)

12) Smart v. Ford, No. C087422, 2020 WL 284623 (Cal. App. Jan. 21, 2020)

13) Cieslikowski v. FCA, 809 Fed.Appx.386 (Mem) (9th Cir. June 12, 2020)

35. I originally worked for one of the largest consumer warranty law firms in the country, Consumer Legal Services. From April 2007 until April 2012, I was a founding partner in Romano, Stancroff & Mikhov PC. I was the Managing Partner of the firm until it was dissolved. In April 2012, I founded O'Connor & Mikhov, LLP. The firm was reformed in 2017 as Knight Law Group, LLP. I am the Managing Partner of the firm. My rate for this case was $550/hour. My billing entries are indicated by the initials "SBM" in the billing statement exhibited to this declaration.

36. Scot Wilson is a Partner in my office. Mr. Wilson has been with my firm since 2020. Prior to joining my firm, Mr. Wilson was a partner at the law firm of Robinson Calcagnie, Inc., where he exclusively represented plaintiffs. Before joining Robinson Calcagnie in 2010, Mr. Wilson was also previously a shareholder at a business litigation firm in Newport Beach for six (6) years where he represented clients in business, employment, and class action litigation. Before that, Mr. Wilson was an associate at an international law firm in Irvine for two (2) years. Mr. Wilson also served as a pro bono Deputy District Attorney with the Orange County District Attorney's Office Trial Attorney Partnership Program. Mr. Wilson also previously served as a judicial extern for Judge William J. Rea in the United States District Court for the Central District of California. After receiving his undergraduate degree from the University of California, San Diego (UCSD) in 1999, Mr. Wilson graduated cum laude from Pepperdine University School of Law in 2002. While at Pepperdine, Mr. Wilson served as Note & Comment Editor for the Pepperdine Law Review and won the Dalsimer Moot Court Competition. In addition to cases in California, Mr. Wilson has been admitted pro hac vice and handled cases in state and federal courts throughout the country, including the C.D. Cal., N.D. Cal., S.D.

Cal., E.D. Cal., 9th Cir., E.D. Pa., N.D. Ill., S.D.N.Y., S.D. Ohio, and D. N.J., and Arizona, New Jersey, Florida, New York, Illinois, and Michigan. In addition to being a member of the State Bar of California, Mr. Wilson is a member of the Western Trial Lawyers Association ("WTLA"), Consumer Attorneys of California ("CAOC"), Orange County Bar Association ("OCBA"), Association of Business Trial Lawyers ("ABTL"), and Orange County Trial Lawyers Association ("OCTLA"), Consumer Attorneys Association of Los Angeles ("CAALA), and the Orange County Chapter of the Federal Bar Association ("FBA/OC"). In 2015 and 2016, Mr. Wilson was on the Board of Directors for the OCTLA. Mr. Wilson is the author of the Recent Cases column in the CAOC's Forum Magazine and is a member of the OCBA's Administration of Justice committee. Mr. Wilson has been named a Super Lawyer by Los Angeles Magazine for his work. In 2018, Mr. Wilson was a recipient of the California Lawyer Attorney of the Year ("CLAY") Award. Mr. Wilson frequently gives presentations to other lawyers regarding trial advocacy, deposition techniques, and emerging issues in personal injury, consumer protection, and class action lawsuits. Mr. Wilson's hourly rate in this matter is $595/hour. Mr. Wilson's billing entries are indicated by the initials "SW" in the billing statement exhibited to this declaration.

37. Russell Higgins was an Associate with the firm and was admitted to practice in 2003. Mr. Higgins graduated from Pepperdine University School of Law and his hourly rate in this matter is $450/hour. Mr. Higgin's billing entries are indicated by the initials "RH" in the billing statement attached to this declaration.

38. Conor M. Kelly was a Senior Associate at my firm. Mr. Kelly has been with my firm since 2020. Prior to joining my firm, Mr. Wilson was a senior associate at the law firm of Robinson Calcagnie, Inc. Mr. Kelly graduated from UCLA in 2008 with a major in economics and a minor in accounting. He then earned his law degree from Pepperdine School of Law in 2011. He has been licensed to practice in California since 2011. Since 2011, Mr. Kelly has devoted his practice to handling

catastrophic personal injury, products liability, and mass tort litigation. He has extensive experience in complex automotive defect cases including *In re Toyota Unintended Acceleration* and *In re General Motors Ignition Switch Litigation*, where he handled a variety of tasks including depositions of experts and company employees. Mr. Kelly has also had a key role in several trials including serving as second chair trial counsel in a three (3) month long automotive defect catastrophic injury case: *Herbert v. Ford Motor Company/Takata Corporation*. He has substantial experience in cases involving fraud and the Song-Beverly Consumer Warranty Act. Mr. Kelly has been selected as a Rising Star by Super Lawyers in 2017, 2018 and 2019. Mr. Kelly's billing rate is $415/hour, and his billing entries are indicated by the initials "CK" in the billing statement exhibited to this declaration.

39. Chris Swanson is a Partner in my office. Mr. Swanson graduated from UCLA School of Law in 2011 where he distinguished himself academically. Mr. Swanson has been an Associate at my firm since 2014. His prior professional experience includes individual and class action consumer protection law. Mr. Swanson has been selected as a Rising Star by Super Lawyers in 2018 and 2019. Mr. Swanson's billing rate at my firm as of January 1, 2021 is $425/hour. His previous hourly rate is $375/hour. Mr. Swanson's billing entries are indicated by the initials "CS" in the billing statement exhibited to this declaration.

40. Mitchell Rosensweig was an associate at my firm. Mr. Rosensweig graduated cum laude from the University of Baltimore School of Law and was admitted to practice law in the state of Maryland in 2012. He was also admitted to practice law in Washington, D.C. in 2014. Prior to his employment with KLG, Mr. Rosensweig practiced primarily in the area of medical malpractice. Mr. Rosensweig was admitted to the California Bar in 2018. His hourly rate in this matter is $325/hour. Mr. Rosensweig's billing entries are indicated by the initials "MER" in the billing statement exhibited to this declaration

41. Kristina Stephenson-Cheang graduated from Western State University College of Law and was admitted to practice in 2008. Ms. Stephenson-Cheang was employed with the firm from 2013 - 2020. Prior to her employment at OM Law, she worked for a different lemon law firm gaining valuable experience in this area of law. Ms. Stephenson-Cheang's hourly rate in this matter was $375/hour. Ms. Stephenson-Cheang's billing entries are indicated by the initials "KSC" in the billing statement exhibited to this declaration.

42. Maite Colón is an associate in my office. Mrs. Colón graduated from the University of Puerto Rico School of Law in 2011. Mrs. Colón was admitted to practice law in the state of Florida in 2012, as well as in the District of Columbia and the District Court of Puerto Rico. More recently, Mrs. Colón was admitted to practice law in California in 2018 and has since been admitted to all federal district courts in California. Mrs. Colón has been employed at my law firm since 2017. Prior to joining my firm, she worked at an international law firm gaining valuable experience in commercial transactional work and international law. Her hourly rate as of January 1, 2021 is $345/hour. Her previous hourly rate is $300/hour. Her billing entries are indicated by the initials "MC" in the billing statement exhibited to this declaration.

43. Daniel Kalinowski is an Associate with the firm and was admitted to practice in 2015. Mr. Kalinowski graduated from Chapman University School of Law. His hourly rate as of January 1, 2021 is $295/hour. His previous hourly rate is $250/hour. His prior professional experience include business litigation, real estate litigation, and employment litigation. Mr. Kalinowski's billing entries are indicated by the initials "DK" in the billing statement attached to this declaration.

44. George Semaan was an associate at my firm. Mr. Semaan was admitted to the Bar in 2016 and joined my firm in 2017. Mr. Semaan graduated from Chapman University Fowler School of Law in 2016, and spent his first year practicing intellectual property, business and employment law. Mr. Semaan's hourly billing

rate was $225/hour. His billing entries are indicated by the initials "GS" in the billing statement exhibited to this declaration.

45. As always, Knight Law attempts to keep attorney's fees and costs down while providing vigorous and effective representation.

46. All time billing entries were completed contemporaneously with each dated entry or near in time to the work performed. I have personally reviewed the billing entries to ensure that they appropriately reflect the time expended. I have removed or reduced any time I felt was excessive, duplicative, or otherwise unreasonable, or I have labeled the entry as a "no charge", as identified by the "N/C" in the invoice. I am personally familiar with the background of each attorney hired at my firm. My firm **does not bill clients** for secretarial support staff time or paralegal, which further reduces the overall bill.

**<u>Evidence to Support the Reasonableness of Hourly Rates for Attorneys</u>**

47. I am aware of the hourly rates of other attorneys in California who work in the area of lemon law and consumer law. I bill my time at an hourly rate of $550 per hour. An hourly rate of $550 per hour is reasonable, and consistent with other attorneys who litigate consumer matters and who have a comparable level of experience. A canvas of the community of attorneys who specialize in this area reveals the following hourly rates:

a. Hallen Rosner of Rosner, Barry & Babbitt, LLP, San Diego, CA has been practicing law since 1983 and specializes in consumer litigation with particular attention to auto financing issues. He charges $640 per hour. Survey as of 2017.

b. Michael Lindsey was admitted to the bar in 1993 and has been handling consumer law cases for nearly 15 years in San Diego, California. Mr. Lindsey's hourly rate is $625. Survey as of 2017. His previous rate of $575/hour was recently confirmed as

reasonable in *Goglin v. BMW of North America* (2016) 4 Cal.App.5th 462, 473-74.

c. Brian Kemnitzer of Kemnitzer, Anderson, Barron, Ogilvie & Brewer LLP in San Francisco has been handling consumer cases since 1983. Mr. Kemnitzer charges $800 per hour. Survey as of 2016.

d. Robert Brennan of Brennan, Weiner and Associates in La Crescenta, California charges $450 per hour. He has been in practice since 1987. The hourly rate for his associates is $375 per hour. Survey as of 2010.

e. Martin Anderson of The Anderson Law Firm in Santa Ana, California has practiced law since 1995 and charges $395 per hour. Mr. Anderson specializes in Lemon Law matters. Survey as of 2007.

f. Nancy Barros of Kemnitzer, Anderson, Barron, Ogilvie & Brewer LLP in San Francisco, California has been handling consumer cases since 1983. Ms. Barros charges $625 per hour. Survey as of 2016.

g. Mark Romano of Romano, Stancroff in Los Angeles, California has been practicing for 23 years, primarily in consumer litigation. His hourly rate is $400 per hour. Survey as of 2010.

48. On July 24, 2020, Judge Michelle Williams Court awarded 100% of Knight Law Groups lodestar attorney's fees request in the amount of $211,080.00 which included approving Knight Law Group's requested hourly rates as reasonable which ranged from $550/hr-$225/hr in the matter of *Julio Hernandez v. BMW of North America, LLC* (Los Angeles Superior Court, Case No. BC666145). A true and correct copy of the minute order is attached hereto as **Exhibit E.**

///

49. On June 23, 2020, Judge Teresa Beaudet awarded 100% of the plaintiff's attorney's fees, costs and expenses in the amount of $126,527.88 and approved all requested rates ranging from $550/hr to $200/hr in the matter of *Donald Harbert v. FCA US LLC* (Los Angeles Superior Court, Case No. BC623621). A true and correct copy of the minute order is attached hereto as **Exhibit F**.

50. On December 12, 2019, Judge George H. Wu awarded 96% of the plaintiffs attorney's fees in the amount of $25,817.50, a 0.25 multiplier in the amount of $6,454.38, and approved all requested rates ranging from $550/hr to $200/hr in the matter of *Maria D. Munguia Munguia, et al. v. Ford Motor Company, et al.*, No. CV 18-9008-GW (KSx) (C.D. Cal. Dec. 12, 2019). A true and correct copy of the minute order is attached hereto as **Exhibit G**.

51. On October 25, 2019, Judge William Claster awarded 97% of the lodestar fees requested by motion, including a 1.1 lodestar multiplier, in the total amount of $192,893.50, in the matter of *Krupsky v. Ford Motor Company* (Orange County Superior Court, Case No. 30-2013-00662411-CU-BC-CXC). The case settled at trial prior to jury selection. The rates requested by motion that were granted included my rate of $550 per hour Mr. Altman's rate of $650 per hour, Mr. Kirnos' rate of $425 per hour, Ms. Ung's rate of $425 per hour, Mr. Swanson's rate of $375 per hour, and all other rates below $500 per hour. A true and correct copy of the judgment is attached hereto as **Exhibit H.**

52. On July 11, 2019, Judge Angel M. Bermudez in Riverside County awarded 100% of the requested attorney's fees in the amount of $87,465.00 and all of the requested costs and expenses in the amount of $11,843.66, in the matter of *Mark Dodd et al. v. FCA US LLC.* (Riverside County Superior Court, Case No. MCC1700496). In so doing, Judge Bermudez expressly ruled that the requested hourly rates were reasonable, including a rate of $350 per hour for partner Amy

Morse, $550 per hour for my rate, $375 per hour for attorney Kristina Stephenson-Cheang, and all other requested rates of $225, $250, $275, $300, $325 and $350 per hour as reasonable for Riverside County. A true and correct copy of the signed order is attached hereto as **Exhibit I.**

53. On July 1, 2019, Judge Gary Klausner, awarded 100% of the lodestar attorney's fees in the amount of $49,265 in the matter of *Bruce Hung Li v. FCA US LLC* (United States District Court Central District of California, Case No. 2:17-cv-06290-R-JEM). The court found reasonable the hourly rates that ranged from $300 - $375 per hour for associates and mid-level attorneys such as Amy Morse, Kristina Stephenson-Cheang, and Christopher Urner, to $550 per hour for my rate and $550 per hour. A true and correct copy of the signed order is attached hereto as **Exhibit J.**

54. On June 5, 2019, in the matter of *Ron Blasco et al v. FCA US LLC* (San Bernardino County Superior Court, Case No. CIVDS1609641), Judge Janet Frangie awarded 86% of the requested attorney's fees in the amount of $147,283.75 out of $170,536.25 requested, and ***granted a multiplier of 1.5*** in the amount of $36,811.56 given the contingent risk and "loss of the firm's capital resources", for a total award of fees in the amount of $184,104.69,. The court found the hourly rates of the attorneys at my firm reasonable ranging from $550 per hour for my rate to $200 per hour. A true and correct copy of the minute order is attached hereto as **Exhibit K.**

55. On April 4, 2019, Judge Daniel A. Ottolia awarded over 91% of the lodestar fees requested by motion in the total amount of $731,885.25 in the matter of *Leonard Coon v. Ford Motor Company* (Riverside County Superior Court, Case No. MCC1300767). The court found all of the hours worked to be reasonable. The court also found all hourly rates at or below $500/hour to be reasonable. A true and correct copy of the signed order is attached hereto as **Exhibit L.**

56. On December 12, 2018, Judge David M. Chapman awarded 100% of the lodestar fees requested by motion in the total amount of $115,718.75 in the matter of *Lawson v. FCA* (Riverside County Superior Court, Case No. PSC1604057). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion that were granted included my current rate of $550 per hour, the rates of $400 to $375 per hour for appearance attorneys Kirk Donnelly and Constance Morrison; $375 per hour for senior associates Christopher Swanson and Kristina Stephenson-Cheang; $350 per hour for partner Amy Morse; and $250 per hour for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit M.**

57. On December 10, 2018, Judge Bryan Foster awarded fees, costs and expenses in the total amount of $48,234.93 in the matter of *Stead v. Ford Motor Company* (San Bernardino County Superior Court, Case No. CIVDS1618876). The rates approved by Judge Foster included rates of $500 per hour for senior attorneys such as myself and Michael Rosenstein; the rate of $375 to $350 per hour for senior associates, appearance attorneys, and partners such as Kristina Stephenson-Cheang, Brian Murray, Constance Morrison, and Amy Morse; and $250 for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit N.**

58. On December 3, 2018, Judge Ronald L. Bauer awarded 100% of requested lodestar attorney's fees and costs in the total amount of $35,793.13 in the matter of *Juan Ibanez v. FCA US LLC* (Orange County Superior Court, Case No. 30-2016-00858615-CU-BC-CJC). The hourly rates awarded ranged from my rate of $550 for senior-level attorneys such as myself; $450 to $350 for senior associate Joel E. Elkins, senior associate Kristina Stephenson-Cheang, "contract/of counsel"

attorney Constance Morrison, and partner Amy Morse; $325 per hour for associate Alastair Hamblin; and $250 to $225 for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit O**.

59. On November 30, 2018, Judge Irma Asberry awarded 85% of the lodestar fees requested by motion in the total amount of $82,779.38 in the matter of *Ricardo Cuevas v. FCA* (Riverside County Superior Court, Case No. RIC1616584). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion that were granted included my current rate of $550 per hour, the rates of $375 to $350 per hour for appearance attorney Constance Morrison, associate Kristina Stephenson-Cheang, and partner Amy Morse; and $275 to $250 per hour for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit P.**

60. On November 28, 2018, Judge Katherine Bacal awarded 92% of the lodestar fees requested by motion in the total amount of $61,461.75 in the matter of *Nisa Carrillo v. FCA* (San Diego County Superior Court, Case No. 37-2017-00014078-CU-BC-CTL). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion that were granted included my current rate of $550 per hour, the rates of $375 to $350 per hour for associate Kristina Stephenson-Cheang and partner Amy Morse, $350 for attorney Lauren Veggian, and $225 per hour for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit Q.**

61. On November 19, 2018, James Di Cesare awarded 100% of the lodestar fees and costs requested by motion in the total amount of $15,460.60 in the matter of *Ayesha Whitlow v. Ford Motor Company* (Orange County Superior Court, Case

No. 30-2016-00882648-CU-BC-CJC). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion that were granted included my current rate of $550 per hour, the rates of $450 to $350 per hour for attorney Russell Higgins and partner Amy Morse, $350 for senior associate Kristina Stephenson-Cheang and attorney Hadi Gerami, and $275 to $250 per hour for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit R.**

62. On November 6, 2018, Judge Mark Borrell awarded 100% of requested lodestar attorney's fees in the amount of $54,980.00 and full requested costs in the amount of $5,337.63 in the matter of *Lisa Lorraine Buckman v. FCA US LLC* (Ventura County Superior Court, Case No. 56-2016-00490241-CU-BC-VTA). The hourly rates awarded ranged from $550 per hour for senior-level attorneys such as myself; $375 to $350 per hour for attorneys Kristina Stephenson-Cheang and Amy Morse; and $250 to $200 for younger attorneys. The overall award was 100% of the amount requested. A true and correct copy of the signed order is attached hereto as **Exhibit S.**

63. On September 25, 2018, Judge Sunshine Sykes awarded 87% of requested lodestar attorney's fees in the amount of $114,937.50 and also awarded a 1.25 multiplier in the amount of $28,734.38 in the matter of *Kantar v. FCA US LLC* (Riverside County Superior Court, Case No. RIC1606184). The hourly rates awarded ranged from my rate of $550 per hour to $450 per hour for senior-level attorneys such as myself and Russell Higgins; $425 to $300 for "contract/of counsel" attorneys such as Mary Fersch and Larry Castruita; $375 to $350 per hour for partner Amy Morse and senior associate Kristina Stephenson-Cheang; $275 for associate attorney Deepak Devabose; and $225 per hour for Thomas Burns. A true and correct

copy of the signed order is attached hereto as **Exhibit T.**

64. On September 7, 2018, Judge Joan M. Lewis awarded 100% of requested lodestar attorney's fees in the amount of $69,393.75 and full requested costs and expenses in the amount of $3,819.03 in the matter of *Edralin v. FCA US LLC* (San Diego County Superior Court, Case No. 37-2016-00020403-CU-BC-CT). The hourly rates awarded ranged from my rate of $550 for senior-level attorneys such as myself; $400 for "contract/of counsel" attorney Kirk Donnelly; $375 to $350 per hour for partner Amy Morse and senior associate Kristina Stephenson-Cheang; and $225 for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit U**.

65. On August 31, 2018, Judge Joel R. Wohlfeil awarded 87% of the lodestar fees requested by motion in the mount of 87,970.00 in the matter of *Duk v. Ford Motor Company* (San Diego County Superior Court, Case No. 37-2016-00012779-CU-BC-CTL). The court found that Knight Law's hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion included my current rate of $550 per hour; rates between $425 and $350 for partners Roger Kirnos, Lauren Ungs, and Amy Morse; rates between $400 and $375 per hour for contract/of counsel" attorneys Kirk Donnelly and Constance Morrison; and $375 per hour for senior associate Kristina Stephenson-Cheang; and $250 per hour for junior attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit V**.

66. On August 28, 2018, Judge Janet M. Frangie awarded 82% of the fees, costs and expenses requested by motion in the total amount of $9,736.76 in the matter of *Rivas v. Ford Motor Company* (San Bernardino County Superior Court, Case No. CIVDS1711898). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and

that the time incurred were reasonable. The rates requested by motion included my rate of $500 per hour, the rate of $350 per hour for Amy Morse, Hadi Gerami, and Kristina Stephenson-Cheang. A true and correct copy of the signed order is attached hereto as **Exhibit W.**

67. On August 27, 2018, Judge Randall S. Stamen awarded 100% of the lodestar fees requested by motion in the total amount of $88,327.50 in the matter of *Suazo v. FCA* (Riverside County Superior Court, Case No. RIC1607979). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion included my rate at the time of $500 per hour, the rates of $400 to $350 per hour for partners Roger Kirnos and Amy Morse, $350 for senior associates Christopher Swanson and Kristina Stephenson-Cheang, and $275 to $250 per hour for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit X**.

68. On August 27, 2018, Judge Ronald L. Bauer awarded 99% of the lodestar fees and costs requested by motion in the total amount of $30,798.08 in the matter of *Hopkins v. FCA* (Orange County Superior Court, Case No. 30-2016-00859037-CU-BC-CJC). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion included my rate of $500 per hour, rates between $375 and $350 per hour for contract/of counsel" attorneys Kirk Donnelly, Constance Morrison, and Hadi Gerami; rates between $350 and $325 for partner Amy Morse and associate Alastair Hamblin; and rates between $275 and $225 for junior associates Raymond Hay and Thomas Burns. A true and correct copy of the signed order is attached hereto as **Exhibit Y**.

///

69. On August 17, 2018, Judge Richard Strauss awarded $17,985.00 in lodestar attorney's fees and $1,767.49 in costs and expenses in the matter of *Bugiel v. Ford Motor Company* (San Diego County Superior Court, Case No. 37-2017-00011741-CU-BC-CTL), which resulted in a settlement that is more than three and a half times the total amount the plaintiff paid for the vehicle. The hourly rates awarded included my billing rate at the time of $500 per hour; $400 to $350 per hour for partners Roger Kirnos and Amy Morse; and $375 to $350 for Senior Associate Kristina Stephenson-Cheang and contract/"of counsel" attorney Kirk Donnelly. The overall award represents 100% of the amounts of the lodestar attorney's fees and costs requested. A true and correct copy of the signed order is attached hereto as **Exhibit Z**.

70. On July 25, 2018, Judge James T. Latting awarded full requested lodestar attorney's fees in the amount of $18,477.50 in attorney's fees and $2,665.15 in costs and expenses in the matter of *Meuse v. FCA US LLC* (Riverside County Superior Court, Case No. PSC1603210), which resulted in a settlement that is more than double the total amount the plaintiff paid for the vehicle. The hourly rates awarded ranged from $500 for senior-level attorneys such as myself; $350 per hour for attorneys Amy Morse, Constance Morrison, Hadi Gerami, and Kristina Stephenson-Cheang; and $225 for younger attorneys. The overall award represents almost 100% of the amount requested. A true and correct copy of the signed order is attached hereto as **Exhibit AA**.

71. On July 19, 2018, Judge Barry T. LaBarbera awarded 96% of the fees, costs and expenses requested by motion in the total amount of $173,218.61 in the matter of *Spelts v. FCA* (San Luis Obispo County Superior Court, Case No. 15CV-0470). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were

reasonable. The rates requested by motion included my rate of $500 per hour, the rate of $400 per hour for Russell Higgins and Lauren Ungs, $350 per hour for Amy Morse and Kristina Stephenson-Cheang, $325 per hour for Alastair Hamblin, and $200 per hour for Michelle Lumasag. A true and correct copy of the signed order is attached hereto as **Exhibit BB**.

72. On July 17, 2018, Judge David M. Chapman awarded $55,127.50 in attorney's fees based on a request of $60,127.50 and full $7,730.78 in costs and expenses in the matter of *Garrison v. FCA US LLC* (Riverside County Superior Court, Case No. PSC1605950), which resulted in a settlement that is more than double the total amount the plaintiff paid for the vehicle. The hourly rates awarded ranged from $500 to $490 per hour for senior-level attorneys, including me and trial counsel, Sepehr Daghighian; $350 per hour for attorneys Amy Morse, Constance Morrison, and Kristina Stephenson-Cheang; and $225 to $250 for younger attorneys. The overall award represents 92% of the amount requested. A true and correct copy of the signed order is attached hereto as **Exhibit CC.**

73. On July 13, 2018, Judge Joan M. Lewis awarded $20,960.00 in lodestar attorney's fees based on a request of $21,565.00, full $1,723.21 in costs and expenses, and a 1.5 multiplier of $10,782.50 in the matter of *Newberry v. Ford Motor Company* (San Diego County Superior Court, Case No. 37-2016-00031300-CU-BC-CTL), which resulted in a settlement that is more than three times the total amount the plaintiff paid for the vehicle. The hourly rates awarded included my billing rate of $500 per hour; $400 to $350 per hour for partners Roger Kirnos and Amy Morse; and $250 for Michael Ouziel. The overall award represents more than 100% of the amount requested. A true and correct copy of the signed order is attached hereto as **Exhibit DD.**

74. On July 11, 2018, Judge Mark Borrell awarded full requested lodestar attorney's fees in the amount of $75,557.00 and full costs and expenses in the amount of $8,912.36 in matter of *Paul v. FCA US LLC* (Ventura County Superior Court, Case No. 56-2016-00480745-CU-BC-VTA). Specifically, the Court deemed my hourly rate of $500 per hour reasonable along with trial attorney, Richard Wirtz's hourly rate of $500 per hour as reasonable. Judge Borrell determined that the hourly rates of attorneys ranging from $200 to $400 per hour were reasonable, such as Partners Amy Morse and Roger Kirnos, and Associates Christopher Swanson, Thomas Burns, Kristina Stephenson-Cheang, and Michelle Lumasag. The attorney fee award represents 100% recovery of the lodestar fees and costs requested by motion in the matter. A true and correct copy of the signed order is attached hereto as **Exhibit EE**.

75. On June 22, 2018, Judge Eddie C. Sturgeon awarded fees, costs, expenses, and a .2 multiplier as requested by motion in the total amount of $25,837.72 in the matter of *Lang v. Ford Motor Company* (San Diego County Superior Court, Case No. 37-2016-00004792-CU-BC-CTL). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion included my rate of $500 per hour, the rate of $400 per hour for Lauren Ungs, $375 per hour for Kirk Donnelly, $350 per hour for Amy Morse, Kristina Stephenson-Cheang, and Hadi Gerami, $325 per hour for Alastair Hamblin, and $250 per hour for Michael Ouziel. A true and correct copy of the signed order is attached hereto as **Exhibit FF.**

76. On June 19, 2018, Judge David M. Chapman granted full lodestar attorney fees, costs and expenses in the amount of $15,148.75 in the matter of *Kortan v. Ford Motor Company* Riverside Superior Court, Case No. PSC1702737), which

represented 100% of the fees and costs requested. Judge Chapman granted my rate of $500 per hour, $350 per hour for Amy Morse, $350 per hour for Chris Swanson, $350 per hour for Kristina Stephenson-Cheang, $325 per hour for Alastair Hamblin, and $250 for Hadi Gerami. The final order has yet to be signed but this is an accurate representation of the court's ruling. A true and correct copy of the court's ruling is attached hereto as **Exhibit GG.**

77. On June 18, 2018, Judge Daniel Ottolia awarded 95% of the requested lodestar fees and full costs and expenses requested by motion in the total amount of $20,503.00 in the matter of *Simmons v. Ford Motor Company* (Riverside County Superior Court, Case No. RIC1610619). The court indicated it would not consider rates of defense counsel and found that the hourly rates of $350 per hour for Christopher Swanson, Amy Morse, and Kristina Stephenson-Cheang were reasonable for that venue and that the time incurred was reasonable. A true and correct copy of the signed order is attached hereto as **Exhibit HH.**

78. On June 18, 2018, Judge Mark S. Borrell awarded 90% of the requested lodestar fees and full costs and expenses requested by motion in the total amount of $48,786.65 in the matter of *Perez v. FCA US LLC* (Ventura County Superior Court, Case No. 56-2016-00486433-CU-BC-VTA). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue. The rates requested by motion ranged from $500 per hour for senior-level attorneys, including me and trial counsel Michael Rosenstein, the rate of $350 per hour for Chris Swanson, Kristina Stephenson-Cheang, Hadi Gerami and Amy Morse, and $225 per hour for Thomas Burns. A true and correct copy of the signed order is attached hereto as **Exhibit II**.

79. On June 11, 2018, Judge Randall Stamen awarded $58,709.26 in attorney's fees based on a request of $65,232.50 and full costs of $7,149.84 in costs

and expenses in the matter of *Soria v. FCA US LLC* (Riverside County Superior Court, Case No. RIC1604160). The hourly rates awarded ranged from $500 per hour for senior-level attorneys, such as myself and trial counsel Richard Wirtz; $350 per hour for attorneys Christopher Swanson, Amy Morse, Constance Morrison, and Kristina Stephenson-Cheang; and $275 to $200 per hour for younger attorneys. The overall award represents 90% of the amount requested. A true and correct copy of the signed order is attached hereto as **Exhibit JJ.**

80. On June 11, 2018, Judge Stephen D. Schuett awarded 94% of the fees, costs and expenses requested by motion in the total amount of $17,202.32 in the matter of *Christensen v. Ford Motor Company* (Kern County Superior Court, Case No. BCV-16-101927). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion included my rate of $500 per hour, $350 per hour for Amy Morse and Christopher Swanson, and $250 per hour for Michael Ouziel. A true and correct copy of the signed order is attached hereto as **Exhibit KK**.

81. On June 1, 2018, Judge Glenda Sanders awarded full requested lodestar attorney fees in the amount of $98,515 and full costs and expenses in the amount of $8,045.55 in the matter of *Vargas v. FCA US LLC* (Orange County Superior Court, Case No. 30-2016-00845431-CU-BC-CJC). The hourly rates awarded ranged from $750 to $500 per hour for senior-level attorneys, such as myself, Mark O'Connor, trial counsel Richard Wirtz, and trial counsel Moses Lebovitz; $400 to $350 per hour for attorneys Roger Kirnos, Amy Morse, Constance Morrison, and Kristina Stephenson-Cheang; and $200 for younger attorney Michelle Lumasag. The overall award represents almost 99% of the amount requested. A true and correct copy of the signed order is attached hereto as **Exhibit LL.**

82. On May 18, 2018, Judge Bryan F. Foster awarded $37,405.00 in attorney fees and full costs and expenses in the matter of *Bahna v. Ford Motor Company* (San Bernardino County Superior Court, Case No. CIVDS 1602141). Specifically, the Court deemed my hourly rate of $500 per hour reasonable along with trial attorney, Sepehr Daghighian's, hourly rate of $400 per hour as reasonable. Judge Feuer determined that the hourly rates of attorneys ranging from $225 to $400 per hour were reasonable, such as Partners Lauren Ungs and Amy Morse (who were Associates at the time), and Associates Russell Higgins, Alastair Hamblin, Kristina Stephenson-Cheang, Daisy Ortiz, etc. Contract/"Of Counsel" attorney Constance Morrison was awarded her hourly rate of $350 for all time expended. The attorney fee award represents 98% recovery of the lodestar fees and costs requested by motion in the matter. A true and correct copy of the signed order is attached hereto as **Exhibit MM**.

83. On April 26, 2018, Judge Peter Wilson awarded 96% of the requested lodestar fees and full costs and expenses requested by motion in the total amount of $73,047.36 in the matter of *Hitomi v. Ford Motor Company* (Orange County Superior Court, Case No. 30-2016-00847294-CU-BC-CJC). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred was reasonable. The rates requested by motion ranged from $500 per hour for senior-level attorneys, including me and trial counsel Richard Wirtz, the rate of $350 per hour for Chris Swanson, $350 per hour for Kristina Stephenson-Cheang, $325 per hour for Alastair Hamblin, $350 per hour for Amy Morse, as well as rates of $225 per hour for Jennifer Reiz, $250 per hour for Michael Ouizel, and $225 per hour for Daniel Kalinowski. A true and correct copy of the signed order is attached hereto as **Exhibit NN**.

84. On March 1, 2018, Judge Barry T. LaBarbera awarded 95% of the

requested lodestar fees and full costs and expenses requested by motion in the total amount of $40,771.80 in the matter of *Vasquez v. Ford Motor County* (San Luis Obispo County Superior Court, Case No. 16-CV-0075). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred was reasonable. The rates requested by motion included my rate of $500 per hour, the rate of $400 per hour for Russell Higgins, $375 per hour for Lauren Ungs, $375 per hour for Roger Kirnos, $350 per hour for Amy Morse, each of whom were recently named Partners of the firm, as well as rates of $350 per hour for Kristina Stephenson-Cheang, $250 per hour for Michael Ouizel, and $225 per hour for Deepak Devabose. A true and correct copy of the signed order is attached hereto as **Exhibit OO**.

85. On February 26, 2018, Judge Angel Bermudez awarded $69,234.25 in lodestar attorney's fees and full requested costs of $6,660.29 in the matter of *Castillo v. Ford Motor Company* (Riverside County Superior Court, Case No. MCC1600116), which represents 82% of the total fees and costs requested by motion. A true and correct copy of the signed order is attached hereto as **Exhibit PP**.

86. On January 8, 2018, Judge Kent M. Kellegrew awarded 100% of the fees, costs and expenses requested by motion in the total amount of $26,065.90 in the matter of *Allem v. FCA* (Ventura County Superior Court, Case No. 56-2015-00468707). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion included my rate of $500 per hour, the rate of $400 per hour for Russell Higgins, $350 per hour for Lauren Ungs, $250 per hour for Amy Morse, each of whom were recently named Partners of the firm, as well as rates of $325 per hour for Chris Swanson, $350 per hour for Kristina Stephenson-Cheang, and $200 per hour for Deepak Devabose. A true and correct

copy of the signed order is attached hereto as **Exhibit QQ**.

87. On November 21, 2017, Judge David R. Lampe presiding in Kern County over the trial in the matter of *Marilyn West v. Hyundai Motor America* (Kern County Superior Court, Case No. BCV-16-100792) awarded 100% of the fees requested based on the same hourly rates requested here for an attorney fee award $169,148.75, plus an additional $16,431.83 in costs and expenses. The plaintiff obtained a jury verdict for treble damages, e.g. maximum civil penalties. Judge Lampe confirmed the rate of $650 per hour for trial attorney Bryan Altman, $500 per hour for myself and rates ranging from $350 to $400 per hour for Partners and mid-level Associates Russell Higgins, Kristina Stephenson-Cheang and Brian Murray, $450 per hour for Joel Elkins from the Altman Law Group, and $200 to $250 per hour for the lowest billing rate attorneys. The court awarded $350 per hour for attorney/"of counsel," Diane Hernandez. A true and correct copy of the signed order is attached hereto as **Exhibit RR**.

88. On November 17, 2017, Judge Colleen K. Sterne awarded all of the requested $54,400.17 in attorney's fees and costs and expenses in the matter of *Oksana Yudinova v. Ford Motor Company* (Santa Barbara Superior Court, Case No. 16CV00034). In doing so, the court awarded hourly rates ranging from $500 per hour for senior-level attorneys such as trial counsel, Richard Wirtz and myself, $325 to $400 per hour for mid-level Associates, $325 per hour for Associate Amy Smith from Wirtz Law, $200 to $250 for younger associates, and $175 per hour for paralegals. In total, the fee award represents 100% of the lodestar fee request. A true and correct copy of the signed order is attached hereto as **Exhibit SS**.

89. On September 15, 2017, Judge Kevin A. Enright awarded $199,248.08 in attorney's fees after trial in the matter of *Julie Harris v. Hyundai Motor America* (San Diego Superior Court, Case No. 37-2015-00019958-CU-BC-CTL). The

plaintiff obtained a maximum civil penalty jury verdict at trial. The Court found the hourly rates of the plaintiff's attorneys reasonable, including trial counsel, Bryan Altman's, rate of $650 per hour and my hourly rate of $500 per hour. The court found the hourly rates of $250 to $400 per hour for litigation attorneys, such as Russell Higgins, Lauren Ungs (trial counsel), Chris Swanson, Amy Morse and Michael Ouziel, were reasonable. The court also found that Mr. Altman's associates, Joel Elkins and Jordan Cohen, billed reasonable hourly rates of $450 and $300, respectively. The attorney fee award represents 85% of the lodestar fees requested by motion in the matter**.** A true and correct copy of the signed order is attached hereto as **Exhibit TT**.

90. On September 8, 2017, Judge Eddie C. Sturgeon awarded $226,845.00 in attorney's fees plus $46,021.71 in costs and expenses after trial in the matter of *John Aspinall v. Kia Motors America* (San Diego Superior Court, Case No. 37-2015-00002577-CU-BC-CTL). The total award amounts to $272,866.71. The plaintiff obtained a maximum civil penalty jury verdict at trial. Specifically, the Court deemed reasonable my hourly rate of $500, as well as trial attorneys, Michael Rosenstein's and Richard Wirtz', hourly rates of $500. He found that the hourly rates of $350 per hour reasonable for Lauren Ungs and a range of $200 to $250 per hour for younger attorneys. He also found that $375 and $350 per hour were reasonable for our contract attorneys, Kirk Donnelly and Constance Morrison. The attorney fee awarded represent 80% of the lodestar fees requested by motion in the matter. A true and correct copy of the signed order is attached hereto as **Exhibit UU**.

91. On August 9, 2017, Judge Craig L. Griffin awarded $59,515.00 in attorney's fees in the matter of *Jose Murillo v. FCA US LLC* (Orange County Superior Court, Case No. 30-2015-00771206-CU-BC-CJC). The Court affirmed the reasonableness of hourly rates requested by motion, specifically my rate of $500 per

hour, and rates of $300 to $350 per hour for attorneys such as Lauren Ungs, Chris Swanson, Kristina Stephenson-Cheang, Kevin Van Hout, $400 for Erin Barns from Wirtz Law, and $200 to $250 for young associates. In total, the fee award represented 97% of the lodestar fees requested, with the one reduction being time that we withdrew on our own. A true and correct copy of the signed order is attached hereto as **Exhibit VV**.

92. On May 26, 2017, my firm sought $97,221.25 in fees and $4,282.35 in costs and expenses in the matter of *Pumphrey v. Ford Motor Company* (Riverside Superior Court, Case No RIC1400402). The Court ordered the parties to meet and confer and Ford accepted a 10% reduction of fees, and Judge Gloria C. Trask issued an order for a fee and cost award for a total of $92,000.00. A true and correct copy of the signed order is attached hereto as **Exhibit WW**.

93. On May 9, 2017, Judge Sidney P. Chapin in Kern County awarded a total of $296,055.00 in attorney's fees plus $25,651.18 in costs and expenses based on a jury verdict for maximum civil penalties in the matter of *Cofield v. Kia Motors America, Inc.* (Kern County Superior Court, Case No. S-1500-CV-283504). In so doing, Judge Chapin expressly ruled that the requested hourly rates were reasonable, including a rate of $650 per hour for attorney Bryan Altman, $500 per hour for trial attorney Michael Rosenstein, $500 per hour for my rate, $375 per hour for trial attorney Roger Kirnos, and all other requested rates of $200, $225, $300, $325 and $350 per hour as reasonable for Kern County. A true and correct copy of the signed order is attached hereto as **Exhibit XX**.

94. On March 17, 2017, in the matter of *Page v. Kia Motors America, Inc.* (San Diego Superior Court, Case No. 37-2014-00023991-CU-BC-CTL), Judge Eddie C. Sturgeon granted an award of attorney's fees, costs and expenses in the amount of $271,077.16 in a case in which our clients prevailed at trial. Judge

Sturgeon ruled that the hourly rates were reasonable, including trial counsel Bryan Altman's rate of $650/hour and Roger Kirnos' rate of $375/hour. The court found my rate of $500/hour to be reasonable, as well as each of my associates and the associates of Mr. Altman who top out at $450/hour for Joel Elkins. The court's order reflects a 15% across the board reduction on the overall attorney's fees amount but expressly determined the hourly rates were reasonable. A true and correct copy of the signed order is attached hereto as **Exhibit YY**.

95. In considering the appropriate rates to charge in a matter such as this, I have reviewed a report entitled United States Consumer Law Attorney Fee Survey Report ("the Report") published in 2019 reflecting rates for 2017 to 2018. Based on the facts presented in the Report, I have determined that the rates charged by the attorneys in this case are commensurate with the hourly rates charged by other attorneys with comparable experience in consumer rights law. On Pages 1– 20, the purpose and methodology of the Report is described. On Pages 58 – 61, the Report sets forth the average hourly rates of consumer law attorneys in California based on experience. On Pages 230-231, the Report sets for the average hourly rates of consumer law attorneys in the Riverside-San Bernardino area specifically. The information reflected in these pages supports the reasonableness of the attorney hourly rates charged in this case, which are equivalent, if not below, the average rate of attorneys who practice consumer law in California. On pages 510 – 515, the Report identifies cases in California that have used this Report as supporting evidence in fee awards. The entire report is 598 pages so I have attached only the relevant pages dealing with California attorneys and California law. A true and correct copy of the relevant pages of the report is attached hereto as **Exhibit ZZ.**

96. It is not uncommon for attorney's fees and costs to exceed the client's damages. The Legislature acknowledged such a circumstance, which is the reason behind the fee shifting provision of the Song-Beverly Act. Otherwise, consumers

would be left without opportunity for redress when their damages were not enough for an attorney to take the case on a contingent fee or hourly rate basis. Such a result occurs in large part because of dealerships' or vehicle manufacturers' refusal to adhere to statutory laws protecting consumers, resistance to honoring consumers' complaints, and generally playing games or simply abusing discovery procedures.

97. Lemon law cases are not simple actions. They require a specialized understanding of the full scope of consumer protection laws, which are highly nuanced. The cases also require knowledge of intricacies of automobiles and a lexicon associated with them, as well as a knowledge concerning how to investigate these matters. They also require knowledge of auto manufacturers' and dealers' protocols for repairing vehicles.

98. Generally speaking, clients of the firm are benefitted by the experience of this firm insofar as work-product from other cases can be used in this case as well. Hence, a substantial amount of time was saved by not needing to draft each document from scratch and little time was needed to "get up to speed" in this specialized area of law. In effect, Ford also benefitted when it comes to a determination of reasonable attorney's fees to be paid because there are numerous cost-saving techniques employed by the firm.

99. As shown by the number of cases discussed herein and the positive results achieved on behalf of each client, the hourly rate is reasonable and the number of hours expended are reasonable. The fees incurred in this litigation are the direct result of Ford's own dismissive approach to handling lemon law matters.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 16th day of August 2021, at Los Angeles, California.

*/s/ Steve Mikhov*
STEVE MIKHOV
Declarant

# EXHIBIT E

**KNIGHT LAW GROUP, LLP**
Roger Kirnos (SBN 283163)
*rogerk@knightlaw.com*
Deepak Devabose (SBN 298890)
*deepakd@knightlaw.com*
10250 Constellation Blvd., Suite 2500
Los Angeles, CA 90067
Telephone: (310) 552-2250
Fax: (310) 552-7973

Attorneys for Plaintiff,
OSWALDO SANCHEZ HERNANDEZ

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **OSWALDO SANCHEZ HERNANDEZ**,<br><br>Plaintiff,<br><br>vs.<br><br>**FORD MOTOR COMPANY, a Delaware Corporation; and DOES 1 through 10, inclusive**,<br><br>Defendants. | Case No.: 2:22-cv-03361-MWF-KS<br><br>**DECLARATION OF ROGER KIRNOS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES**<br><br>[Filed Concurrently with Plaintiff's Notice of Motion for Attorney's Fees, Costs and Expenses; Memorandum in Support Thereof; Declaration of Brian Williams]<br><br>*Case Assigned to the Honorable Michael W. Fitzgerald*<br><br>Date: January 8, 2024<br>Time: 10:00 a.m.<br>Courtroom 5A |

# DECLARATION OF ROGER KIRNOS

I, Roger Kirnos, declare as follows:

1. I am an attorney at law duly licensed to practice before the courts of the State of California and attorney of record for Plaintiff OSWALDO SANCHEZ HERNANDEZ ("Plaintiff") in the instant action. I am the Managing Partner of Knight Law Group and, as such, I have personal knowledge of the following facts. If sworn as a witness, I could and would testify to them competently.

2. I make this declaration in support of Plaintiff's Motion for Attorney's Fees, Costs and Expenses ("Motion"). For the reasons set forth herein and, in the Motion, Plaintiff requests $60,110.50 in attorney's fees, costs and expenses. This amount is comprised of the legal services provided by Knight Law Group, LLP ("Knight Law") in the lodestar amount of $37,513.00 and legal services provided by Greenberg Gross LLP in the amount of $22,597.50. Plaintiff's attorneys request a reasonable "lodestar" enhancement of 0.5 in the amount of $30,055.25, for a total attorney's fee award of $90,165.75. A true and correct copy of my firm's billing is attached hereto as **Exhibit A**. Plaintiff also requests reimbursement of costs and expenses in the amount of $12,021.26. My firm advanced all of the costs in this matter. Plaintiff is concurrently filing a motion for costs that attaches Plaintiff's bill of costs. The total amount requested in fees, costs and expenses is $102,187.01.

3. On March 4, 2022, Plaintiff leased a new 2018 Ford F-150 ("Subject Vehicle") for a total lease price of $22,020.00. The vehicle was manufactured by Ford Motor Company ("Ford" or "Defendant"), which provided an express written warranty to be serviced by Ford authorized repair facilities. A true and correct copy of the Lease Agreement is attached hereto as **Exhibit B**.

4. At 11,592 miles after purchase, Plaintiff had problems with the vehicle strangely exhibiting a strong clunk from transmission and having hard shifting, so Plaintiff took it to an authorized dealership for repair. 3,000 miles later, Plaintiff returned to the dealership with the same transmission concerns. Despite taking

cumulatively around twenty-eight (28) days to attempt separate repairs to Plaintiff's defective vehicle and returning it to him each time claiming it was repaired, Plaintiff continued to experience the same problems throughout ownership

5. Despite the ongoing problems with the engine and transmission in the relatively short time span, Ford refused to acknowledge the defective nature of the vehicle and did not affirmatively offer to repurchase or replace it, as required by law. At all times, Ford had direct, contemporaneous knowledge of the vehicle's serious defects, which it records in a database called "OASIS" and its warranty repair history database. These repair records indicate each time the vehicle was presented for repair during the warranty period, as well as every time the Ford repair facility found a problem/defect attributable to Ford and billed Ford for the warranty related work.

6. Frustrated, concerned for their safety, and having lost confidence in Ford's ability to repair the vehicle, Plaintiff were forced to contact Ford's customer service center themselves and request their Subject Vehicle be repurchased or replaced in April of 2021. In response, instead of offering the total purchase price minus the statutory mileage offset allowed under the Song-Beverly Act, Ford simply strung Plaintiff along for almost two weeks before simply outright denying their reasonable request.

7. Feeling cheated, Plaintiff contacted Knight Law and told the firm about the problems with the vehicle and the way Ford treated them. After reviewing the repair history and discussions with Plaintiff, Knight Law agreed to represent them and bear the risk of litigating the case on a fully contingent basis. Because Knight Law's compensation was purely contingent, the firm faced a genuine risk of not being paid for its services for years, if at all, while advancing thousands of dollars in costs and expenses on Plaintiff's behalf. In taking on this duty, the firm was facing a litigation behemoth—Ford is a multi-billion-dollar company, with a virtually infinite litigation war-chest, that wages a battle of attrition that most firms cannot withstand.

8. As a result of Ford's failure to fix the material defects associated with the vehicle, or otherwise comply with the Song-Beverly Act's affirmative duty, which requires car manufacturers to repurchase qualifying vehicles *affirmatively* without merely sitting back and waiting for a consumer to ask for relief, Plaintiff filed a Complaint in this action in March 4, 2022 in the Los Angeles County Superior Court. Plaintiff's Complaint alleged violations of the Song-Beverly Act.

9. Ford subsequently filed its Answer in state court denying all liability and asserting twenty-four affirmative defenses on or about April 8, 2022. Doubling down on in its denial that it manufactured and sold a "lemon," Ford removed this case to federal court around the same time asserting diversity jurisdiction.

10. In January 2022, Plaintiff began researching whether the removal based in diversity jurisdiction, including the amount in controversy was timely and whether a motion for remand was appropriate. Later in June 2022, Plaintiff filed said motion for remand and Plaintiff's counsel began drafting the parties' Joint Rule 26f Report as well as meeting and conferring with Ford's counsel regarding the Joint Report. Shortly thereafter, Plaintiff prepared initial disclosures, and continued to meet and confer with Defendant on remand and the Rule 26f report.

11. In May 2022, Plaintiff diligently reviewed Ford's discovery requests and began preparing to serve interrogatories, requests for admission and requests for document production. Plaintiff also reviewed Ford's initial document production associated with its initial disclosures in August 2022.

12. Plaintiff thereafter continued to litigate this matter in an effort to prepare for trial. Pursuant to applicable Federal Rules, Plaintiff commenced meet and confer with Defendant regarding scheduling a deposition of its Person Most Qualified ("PMQ"), all dealership PMQs and all dealership personnel who had knowledge of or were involved in the repair attempts on the subject vehicle and the appropriate categories for examination.

///

13. Also in September of 2022, Plaintiff reviewed and analyzed Defendant's responses and document production to Plaintiff's written discovery requests.

14. In December 2022, Plaintiff conducted the depositions of Ford's authorized dealership Ford of Montebello, which serviced and attempted repairs on Plaintiff's defective vehicle. Plaintiff also continued to meet and confer on scheduling a PMQ deposition with Ford disagreeing to certain proposed matters for examination. On January 23, 2023, Plaintiff's counsel defended the deposition of Plaintiff. Plaintiff's meet and confer efforts resulted in Ford confirming the deposition of its Customer Relations Center Person Most Knowledgeable ("PMK") on February 7, 2023.

15. At the end of May 2023, Plaintiff prepared to take the deposition of Ford's automotive expert and took said deposition on May 24, 2023.

16. With the case appearing likely to go to trial, Plaintiff associated in trial counsel Greenberg Gross LLP to finalize trial preparations and represent Plaintiff at trial. This case ultimately settled before reaching trial thanks to the efforts of Plaintiff's counsel at mediation in July 2023.

17. On July 13, 2023, Ford sent a Rule 68 settlement offer to settle this case for $63,828.82 plus motions for attorney's fees, costs and expenses in which Plaintiff would be deemed the prevailing party. . The ultimate settlement that Plaintiff accepted on July 24, 2023 amounts to almost three (3) times the total original lease price and over $9,000 more than what Plaintiff payed to purchase the lease out. Attached as **<u>Exhibit C</u>** is a true and correct copy of the July 24, 2023 accepted settlement offer.

18. Up until the filing of this motion, Plaintiff attempted to settle fees and costs without a motion. However, the parties were unable to resolve attorney fees, costs and expenses – so Plaintiff filed the instant motion for attorney fees and concurrently filed motion for costs and expenses. If the parties reach a resolution on

Plaintiff's attorney fees, costs and expenses subsequent to this filing, the parties will immediately notify the Court.

**The Firm's Fees Incurred in Litigating This Matter Are Reasonable Pursuant to the Lodestar Method**

19. I am the Managing Partner at Knight Law Group, LLP. I graduated in 2009 from Southwestern University School of Law in the top 10% with cum laude honors and received several academic based scholarships including the Dean's Merit Award. While in law school, I was an oralist on the team that reached the semi-finals at the August A. Rendigs, Jr. National Products Liability Moot Court Competition. I received the CALI Excellence Award for Real Estate Transactions. I received a certificate for completing the Alternative Dispute Resolution program in Hong Kong and Beijing through Pepperdine Law School's esteemed Strauss Institute for Dispute Resolution. I was a judicial extern for then-Chief Judge Alexander Kozinski of the Ninth Circuit Court of Appeals and thereafter served as a judicial extern to Judge F. Gary Klausner of the United States District Court, Central District of California. I received a B.A. in Economics with a minor in English from the University of California at Los Angeles, where I graduated with Provost Honors in 2000. I also studied economics at the University of Westminster in London, England. I was admitted to the California State Bar in 2012. I am admitted to practice in each of the United States District Courts in California.

20. I have been prosecuting consumers' claims under the Song-Beverly Act, and other consumer statutes such as the Consumer Legal Remedies Act ("CLRA) and the Automobile Sales Finance Act ("ASFA"), since 2013. I joined Knight Law Group in 2017 as a Partner at the firm. My professional focus has been to protect consumers from large-scale abuses by automobile manufacturers. I have been involved in the settlement of hundreds of cases over the years. I have been trial counsel in over 25 consumer-protection cases that have gone to jury verdict, and was one of the trial attorneys on the team that won a record verdict of $8.2M against Ford

Motor Company, besting previous jury verdicts of $7.6M, $2.8M, and $1.6M. Three of these verdicts were in the Top 50 of all verdicts in California in the year they were rendered according to Top Verdicts, and were the #1, #2 and #5 top verdicts in the area of "Consumer Fraud, Deceptive Trade Practices, False Advertising, Fraudulent Concealment, Lemon Law" that year. In addition to litigating individual cases, I have been the lead attorney for Knight Law's clients in multiple federal Multi-District Litigation and state Judicial Counsel Coordinated Proceedings. I have represented clients in appeals and was personally and directly involved in authoring the briefing in at least 20 appeals, whether as appellant or respondent, including the following list of cases, which is not an exhaustive list of all appellate matters in which Knight Law Group was involved (Note: One asterisk (*) signifies an appeal brought as an Appellant, and two asterisks (**) signifies an appeal in which we were the Respondent):

<u>Published Opinions</u>

a. *Warren v. Kia Motors America* (2018) 30 Cal.App.5th 24; San Bernardino County, Case No. CIVDS1414575; Fourth Appellate District, Case No. SCV254959*

b. *Hanna v. Mercedes-Benz, USA* (2019) 36 Cal.App.5th 493; Los Angeles County, Case No. BC552038; Second Appellate District, Case No. B283776*

c. *Patel v. Mercedes-Benz, USA* (2019) 43 Cal.App.5th 1007; Los Angeles County, Case No. BC580425; Second Appellate District, Case No. B293813*

d. *Berroteran v. Ford Motor Company* (2019) 41 Cal.App.5th 518 (*review granted* 2/11/20); Los Angeles County, Case No. B542525; Second Appellate District, Case No. B296639*

e. *Berroteran v. Ford Motor Company* (2022) --- P.3d ----, 2022 WL 664719 Los Angeles County, Case No. B542525; California

Supreme Court, Case No. S259522

f. *Reynolds v. Ford Motor Company* (2020) 47 Cal.App.5th 1105; Sonoma County Case No. SCV254959; First Appellate District, Case No. A154811**

g. *Anderson v. Ford Motor Company* (2022) 74 Cal.App.5th 946, San Joaquin County, Case No. 39-2013-00299512-CU-BC-STK; Third Appellate District, Case No. C089603**

h. *Niedermeier v. FCA US* (2020) 56 Cal.App.5th 1052 (*review granted* 2/20/21); Los Angeles County, Case No. BC638010; Second Appellate District, Case No. B293960**

i. *Hernandez v. FCA US* (2020) 50 Cal.App.5th 329 Los Angeles County, Case No. BC668240; Second Appellate District, Case No. B296516*

j. *Reck v. FCA US* (2021) 64 Cal.App.5th 682, Alameda County, Case No. RG16836069; First Appellate District, Case No. A157966*

k. *Covert v. FCA US,* (2022) 73 Cal.App.5th 821, Los Angeles County, Case No.  BC629240, Second Appellate District, Case No. B293960**

<u>Unpublished Opinions / Pending Appeals</u>

l. *Palombi v. FCA, US*, Solano County, Case No. FCS043387; First Appellate District, Case No. A156166*

m. *Margeson v. Ford Motor Company*, Los Angeles County, Case No. BC552038; Second Appellate District, Case No. B283776**

n. *Cofield v. Kia Motors America*, Kern County, Case No. S-1500-CV283504; Fifth Appellate District, Case No. F074977**

o. *Myers v. Ford Motor Company*, Los Angeles County, Case No.

BC638302; Second Appellate District, Case No. B297244**

p. *Cieslikowski v. FCA US* (2020) 809 Fed.Appx. 386; USDC Central Dist., Case No. 5:17-cv-00562; Ninth Circuit, Case No. 21-55874*

q. *Bowser v. Ford Motor Company*, Riverside County, Case No. MCC1301631; Fourth Appellate District, Case No. E073609**

r. *Nolan v. Ford Motor Company*, Riverside County, Case No. RIC1307491; Fourth Appellate District, Case No. E073850**

s. *Brown v. Ford Motor Company,* Butte County, Case No. 160060; Third Appellate District, Case No. C088419**

t. *Coon v. Ford Motor Company*, Riverside County, Case No. MCC1300767; Fourth Appellate District, Case No. E073138**

u. *Rodriguez v. FCA US*, Riverside County, Case No. RIC1807727; Fourth Appellate District, Case No. E73766*

v. *Madrigal v. Hyundai Motor America*, Placer County, Case No. CV00338395; Third Appellate District, Case No. C090463**

w. *Figueroa v. FCA US*, Ventura County, Case No. 56-2018-00507038; Second Appellate District, Case No. B306275*

x. *Quintero v. Ford Motor Company*, USDC Central District, Case No. 2:18-cv-01912-AB-FFM; Ninth Circuit, Case No. 20-5583*

21. In addition to the above published and unpublished opinions, my firm was also involved in numerous other notable unpublished appellate decisions such as:

<u>Notable Favorable Unpublished Opinions</u>

a. *Smart v. Ford Motor Company*, Butte County, Case No. 159509; Third Appellate District, Case No. C087422*

b. *Noflin v. Volkswagen Group of America*, Los Angeles County, Case No. BC575800; Second Appellate District, Case No.

B275638*

c. *McCullough v. FCA US* San Diego County, Case No. 37-2015-00013501-CU-BC-CTL; Fourth Appellate District, Case No. D073330*

Published opinions:

d. *Etcheson v. FCA US* (2018) 30 Cal.App.5th 831*

e. *Morris v. Hyundai Motor America* (2019) 41 Cal.App.5th 24*

f. *Montoya v. Ford Motor Company* (2020) 46 Cal.App.5th 493**

g. *Santana v. FCA US* (2020) 56 Cal.App.5th 334*

22. I am a member of, and have been a presenter at conferences, for the National Association of Consumer Affairs discussing topics including automotive fraud generally and best practices for pursuing and calculating damages to maximize consumers' recoveries. I have also presented a Continuing Legal Education course addressing recent and upcoming changes in the area of the Song-Beverly Act and other consumers statutes such as the Consumer Legal Remedies Act by educating attorneys about recent appellate decisions and upcoming appellate issues to be decided. I am also actively involved with non-profit groups such as Consumers for Auto Reliability and Safety and professional organizations such as Consumer Attorneys of California where I sit on the organization's PAC Board. I have also been voted by my peers as a Super Lawyer Rising Star each year since 2018 to present. I am a member of the Los Angeles County Bar Association and Beverly Hills Bar Association. My current billing rate is $550 and my initials are indicated in the billing as "RK".

23. Deepak Devabose is a senior associate at my firm. Mr. Devabose was admitted to the Bar in 2014 and has been working at the firm since 2015. He graduated from Pepperdine University School of Law and received his undergraduate degree from Emory University. He has earned the Certificate in Reasonable Attorney Fees from the National Association of Legal Fee Analysis,

which specializes in attorney fees and legal billing. He has been trial counsel in over a dozen Song-Beverly Act trials and continues to take cases to trial on behalf of the firm. His hourly rate was $275/hour for 2015-2020, $325/hour for 2021, $375/hour for 2022 and $425/hour for 2023. His billing entries are indicated by the initials "DD" in the billing statement exhibited to this declaration.

24. Daniel Kalinowski is a senior attorney at Knight Law. He graduated *cum laude* from the University of California Irvine with a Bachelor's Degree in History. Subsequently, Mr. Kalinowski graduated from Chapman University, Dale E. Fowler School of Law having received a CALI Excellence of the Future Award during his time as a law student. He was admitted to practice law in 2015. From 2015 to 2017, Mr. Kalinowski worked for two different firms in various practices including but not limited to construction defect employment and business litigation. Since 2017, he has worked at Knight Law handling all aspects of litigation from inception through trial and post-trial work in all venues including state and federal court and arbitration. His hourly rate was $250/hour for 2017-2020, $295/hour for 2021, $350/hour for 2022 and $400/hour for 2023. Mr. Kalinowski's billing entries are indicated by the initials "DK" in the billing statement exhibited to this declaration.

25. Elvira Kamosko is an Associate Attorney at Knight Law Group. She graduated from Southwestern Law School and was admitted to practice in 2021. Ms. Kamosko's hourly rate is $295/hour. Ms. Kamosko's billing entries are indicated by the initials "EK" in the billing statement exhibited to this declaration.

26. Heidi Alexander was an associate at my firm. She graduated from the University of Miami School of Law and received her undergraduate degree from Vanderbilt University with highest honors. Ms. Alexander was admitted into Maryland Bar in 2010 and the Virginia Bar in 2012 (the latter license is no longer active). Ms. Alexander was admitted to the California Bar in 2017 and has been working at the firm since 2019. Following Ms. Alexander's admission to the Bar,

she received her Masters degree in Legal and Forensic Psychology from the University of California, Irvine in 2019. Her hourly rate was $325/hour for 2019-2021 and $350/hour for 2022. Her billing entries are indicated by the initials "HA" in the billing statement exhibited to this declaration.

27. Jeffery Mukai, a Senior Attorney at Knight Law Group, graduated Southwestern Law School manga cum laude and was admitted to practice in 2010. He received his undergraduate degree from the University of California, Los Angeles. Prior to working at Knight Law Group, he worked for over ten years at a law firm representing corporate clients in consumer finance litigation matters as well as UCC Article 2 and 9 disputes. At Knight Law Group he has served as a Second Chair for numerous jury trials to verdict. His hourly rate in this matter is $$400/hour for 2020-2021, $450/hour for 2022 and $495/hour, and his billing entries are indicated by the initials "JKM" in the billing statement exhibited to this declaration.

28. Kamau Edwards is a Senior Trial Attorney with over 19 years of experience in the legal field. Mr. Edwards earned his law degree from The Ohio State University College of Law in 2002, where he was honored with the Moritz Law Scholarship and a Public Service Fellowship. Mr. Edwards later obtained an LL.M in Real Property Development from the University of Miami. Mr. Edwards has a distinguished record of success in civil litigation, having served as the First Chair in more than 30 trials in California. Mr. Edwards has worked for a variety of firms and government agencies, including the San Francisco Legal Division of the Department of Transportation (Caltrans), where he represented clients from 2004-2015, as a solo practitioner specializing in civil litigation and criminal law from 2016-2017, and as a HEAT attorney (HIGH EXPOSURE ATTORNEY) at Hartsuyker, Stratman Williams-Abrego, where he represented clients with life-threatening injuries or significant legal questions from 2017-2020. Mr. Edwards has also worked at Ardalan and Associates as a senior trial attorney specializing in personal injury matters from 2020-2021. His hourly rate for 2021-2022 is $450/hour,

and his billing entries can be found in the billing statement under the initials "KE".

29. Maite Colón is a Senior Associate in my office. Mrs. Colón graduated from the University of Puerto Rico School of Law in 2011 and was admitted to practice law in California in 2018. Mrs. Colón has been employed at my law firm since 2017. Mrs. Colón is also admitted to the practice of law in the State of Florida (2012), the District of Columbia (2013) as well as the United States District Court for the Central, Southern and Northern Districts of California, the Southern District of Florida and the District Court of Puerto Rico. In addition, Mrs. Colón is a member of the Consumer Attorneys of California ("CAOC") and holds a Certificate in Mediation and International Commercial Arbitration from the Humboldt-Universität zu Berlin (2010). Prior to joining my firm, Mrs. Colón worked at an international law firm advising clients in the energy sector and gaining valuable experience in the areas of project finance, commercial transactional work and international law representing international clientele. Mrs. Colón also served as legislative advisor to the Government of the Commonwealth of Puerto Rico in 2013. Mrs. Colón's hourly rate was $300/hour for 2017-2020, $345/hour for 2021, $395/hour for 2022, and $425/hour for 2023 and her billing entries are indicated by the initials "MC" in the billing statement exhibited to this declaration.

30. Maxwell Kreymer was an Associate Attorney at Knight Law Group and was admitted to the bar in 2020. Mr. Kreymer graduated from Thomas Jefferson School of Law. Prior to his admission, he was a law clerk at the firm. During his time at my firm, Mr. Kreymer has gained extensive discovery and litigation experience. Mr. Kreymer is fluent in Russian. Mr. Kreymer's hourly rate was $200/hour for 2020, $250/hour for 2021, $295/hour for 2022 and $350/hour for 2023. Mr. Kreymer's billing entries are indicated by the initials "MK" in the billing statement exhibited to this declaration.

31. Marisa Melero is a senior associate at my firm. Ms. Melero has been employed by the firm since March of 2017. Ms. Melero graduated from University

of California Los Angeles, Southwestern Law School, and was admitted to practice law in 2015. Her prior professional experience includes employment and entertainment law where she also gained valuable experience in the area of copyright, contracts and negotiations. Ms. Melero's hourly rate was $225/hour for 2017-2020, $295/hour for 2021, $345/hour for 2022, and $395/hour for 2023. Ms. Melero's billing entries are indicated by the initials "MM" in the billing statement exhibited to this declaration.

32. Phil A Thomas is an associate with the firm and was admitted to practice in 2007. He has a J.D. from University of California, Hastings College of the Law and an L.L.M. from Southwestern Law School. His prior professional experience includes labor and employment law as well as work at different lemon law firms. His hourly billing rate is $400/hour for 2022 and $450/hour for 2023. Mr. Thomas's billing entries are indicated by the initials "PT" in the billing statement exhibited to this declaration.

33. As always, Knight Law attempts to keep attorney's fees and costs down while providing vigorous and effective representation.

34. All time billing entries were completed contemporaneously with each dated entry or near in time to the work performed. I have personally reviewed the billing entries to ensure that they appropriately reflect the time expended. I have removed or reduced any time I felt was excessive, duplicative, or otherwise unreasonable, or I have labeled the entry as a "no charge", as identified by the "N/C" in the invoice. My firm does not bill clients for secretarial support staff time other than for senior trial paralegals.

35. On January 19, 2023, Judge Malcolm Mackey awarded 100% of the attorney's fees requested in the amount of $54,338.00, and approved rates as reasonable ranging from $595/hr-$200/hr in the matter of *Victor Lozano v. Kia Motors America, Inc.* (Los Angeles Superior Court, Case No. 19STCV43316). A true and correct copy of the Order is attached hereto as **Exhibit D.**

36. On June 28, 2022, Judge Monica Bachner awarded attorney's fees in the amount of $333,801.50 out of $373,801.50 requested, and approved rates as reasonable ranging from $595/hr-$200/hr in the matter of *Sonia De Leon v. Kia Motors America, Inc.* (Los Angeles Superior Court, Case No. 19STCV11353). A true and correct copy of the Order is attached hereto as **Exhibit E.**

37. On March 8, 2022, Judge Maurice Leiter awarded 100% of the attorney's fees requested in the amount of $130,161.50, all of the costs and expenses requested in the amount of $20,236.89, and awarded rates as reasonable ranging from $650/hr-$200/hr in the matter of *Lino Bolvito v. Ford Motor Company LLC* (Los Angeles Superior Court, Case No. BC640055). A true and correct copy of the Order is attached hereto as **Exhibit F.**

38. On October 15, 2021, Judge Gregory Alarcon awarded 94% of the attorney's fees requested in the amount of $42,135.00 out of $44,935.00, 100% of the costs and expenses requested in the amount of $2,782.77, and awarded rates as reasonable ranging from $750/hr-$200/hr in the matter of *Ana Del Carmen Locayo v. Ford Motor Company LLC* (Los Angeles Superior Court, Case No. 18STCV05153). A true and correct copy of the Court's minute order is attached hereto as **Exhibit G.**

39. On June 28, 2021 Judge Armen Tamzarian awarded 99% of the attorney's fees requested in the amount of $25,229.50 out of $25,554.50 and awarded rates as reasonable ranging from $800/hr-$200/hr including $800/hr for Mr. Bryan Altman, $595/hr for Mr. Scot Wilson, and $550/hr for Mr. Steve Mikhov in the matter of *Hector Lara Mejia v. Ford Motor Company LLC* (Los Angeles Superior Court, Case No. 19STCV21898). A true and correct copy of the Court's minute order is attached hereto as **Exhibit H**.

40. On November 23, 2020 Judge Anthony J. Battaglia awarded attorney's fees in the amount of $47,030.00 out of $54,732.50 requested and approved all requested rates as reasonable including my rate of $550/hr, Mr. Wirtz's rate of

$650/hr, Ms. Barns rate of $450/hr, Ms. Rotman's rate of $450/hr, Mr. Higgins' rate of $450/hr, and Ms. Morse's rate of $350/hr in the matter of *Juan Herrera and Elizabeth Herrera v. FCA US LLC* (United States District Court Southern District, Case No.: 3:17-cv-00579-AJB-BGS). A true and correct copy of the Court's minute order is attached hereto as **Exhibit I.**

41. On September 8, 2020 Judge Virginia A. Phillips awarded attorney's fees in the amount of $39,003.85 out of $48,778.75 requested and approved the following rates as reasonable; Mr. Mikhov's rate of $550/hr, Mr. Lear's rate of $595/hr, Ms. Morse's rate of $350/hr, Ms. Morrison's rate of $375/hr, Ms. Stevenson-Cheang's rate of $350/hr, Mr. Devabose's rate of $275/hr, Ms. Colon's rate of $275/hr and Mr. Kalinowski's rate of $275/hr in the matter of *Caleb Lin v. Ford of North America, LLC et al* (United States District Court Central District of California, Case No. 2:18-cv-08297-VAP-PLA). A true and correct copy of the Court's minute order is attached hereto as **Exhibit J.**

42. On August 21, 2020 Judge Barbara Meiers awarded 100% of the attorney's fees requested and awarded a ***multiplier of .5*** (based on the excellent result achieved for Plaintiff) for a total of $30,377.25 in the matter of *Jose Luis Chavez Ramirez et al v. General Motors LLC* (Los Angeles Superior Court, Case No. 19STCV08317). The Court approved all requested rates as reasonable ranging from $550/hr-$200/hr. A true and correct copy of the signed order is attached hereto as **Exhibit K**.

43. On August 13, 2020 Judge Michelle Williams Court awarded 100% of the attorney's fees requested in the amount of $71,937.50 which included approving all rates sought as reasonable including Mr. Mikhov's rate of $550/hr, co-counsel Mr. Wirtz's rate of $650/hr, Russell Higgins' rate of $450/hr, Amy Morse's rate of $350/hr, and younger attorney's rates ranging from $275/hr-$225/hr in the matter of *Misty Miranda et al. v. FCA US LLC* (Los Angeles Superior Court, Case No. BC625980). A true and correct copy of the signed judgment is attached hereto as

**Exhibit L**.

44. On July 24, 2020 Judge Michelle Williams Court awarded 100% of Knight Law Groups lodestar attorney's fees request in the amount of $211,080.00 which included approving Knight Law Group's requested hourly rates as reasonable which ranged from $550/hr-$225/hr in the matter of *Julio Hernandez v. Ford of North America, LLC* (Los Angeles Superior Court, Case No. BC666145). A true and correct copy of the Court's minute order is attached hereto as **Exhibit M**.

45. On June 23, 2020, Judge Teresa Beuadet awarded 100% of Plaintiff's attorney's fees, costs and expenses in the amount of $126,527.88 and approved all requested rates ranging from $550/hr to $200/hr in the matter of *Donald Harbert v. FCA US LLC* (Los Angeles Superior Court, Case No. BC623621). A true and correct copy of the Court's minute order is attached hereto as **Exhibit N**.

46. On March 23, 2020, Judge Barbara Scheper awarded $27,470 in attorney's fees out of $24,877.50 requested, a ***1.5 multiplier*** of $13,735, as well as full costs and expenses in the amount of $6,850.73 in the matter of *Eluterio Murillo v. FCA US LLC* (Los Angeles Superior Court, Case No. 18STCV06504). The Court approved all of Plaintiff's rates as reasonable which ranged from $550/hr to $200/hr. A true and correct copy of the signed order is attached hereto as **Exhibit O**.

47. On February 5, 2020, Judge Robert B. Broadbelt III awarded Knight Law Group 100% of its requested fees and costs which amounted to $16,737.50 in fees and $28,439.91 in costs in *Roman Salcedo & Tania Ortega v. FCA* (Los Angeles Superior Court, Case No. BC655659). In addition, the court approved all requested rates from $550/hr to $200/hr. A true and correct copy of the signed order is attached hereto as **Exhibit P**.

48. On January 16, 2020, Judge Yolanda Orozco granted lodestar attorney fees in the amount of $44,063.75, which represented 96% of the requested lodestar fee amount of $45,801.25, and full costs in the amount of $5,752.87 in the matter of *Shahriar Yazdanniaz v. FCA US LLC et al.* (Los Angeles Superior Court, Case No.

BC686906). In particular, the hourly rates awarded as reasonable ranged from $550 to $595 per hour for senior-level attorneys such as Mr. Mikhov, trial counsel Edward O. Lear; $450 to $350 per hour for senior attorneys Russel Higgins, Kirk Donnelly, Amy Morse, and Kristina Stephenson-Cheang, and $200 to $300 for younger attorneys. A true and correct copy of the Court's minute order is attached hereto as **Exhibit Q.**

49. On January 15, 2020, Judge Mel Red Recana granted lodestar attorney fees in the amount of $86,866.25 (which represented over 87% of the requested lodestar of $99,290.00) and in addition, awarded a ***1.2 multiplier*** of $17,377.25 stating "Plaintiff's counsel accepted this case on contingency, advanced costs, and was required to secure a settlement greater than Defendant's Section 998 offer in order to get any attorney's fees. Thus Plaintiff's counsel took on financial risk in accepting this case and litigating it for three years up to the date of trial in the matter of *Claudia Ewing et al. v. FCA US LLC* (Los Angeles Superior Court, Case No. BC638178). In particular, the hourly rates awarded ranged from $550 to $595 per hour for senior-level attorneys such as Steve Mikhov, trial counsel Edward O. Lear; $450 to $350 per hour for senior attorneys Russel Higgins, Amy Morse, and Kristina Stephenson-Cheang, and $200 to $300 for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit R.**

50. On August 26, 2019, Judge Gregory W. Alarcon awarded 100% of the requested lodestar attorney's fees in the amount of $51,143.50 and $14,916.21 in costs and expenses in the matter of *Tanisha Pitts vs. FCA US LLC et al.* (Los Angeles County Superior Court, Case No. BC690577). The hourly rates awarded ranged from Steve Mikhov's rate at the time of $550 for senior-level attorneys; $350 per hour for partner Amy Morse; and $375 to $300 per hour for attorneys and senior associate Kristina Stephenson-Cheang; and $200 for younger attorneys. A true and correct copy of the Court's signed ruling is attached hereto as **Exhibit S.**

///

51. On July 1, 2019, Judge Gary Klausner, awarded 100% of the lodestar attorney's fees in the amount of $49,265 in the matter of *Bruce Hung Li v. FCA US LLC* (United States District Court Central District of California, Case No. 2:17-cv-06290-R-JEM). The court found reasonable the hourly rates that ranged from $250 per hour for attorney Lauren C. Martin to $300 - $375 per hour for associates and mid-level attorneys such as Amy Morse, Kristina Stephenson-Cheang, and Christopher Urner, to $550 per hour for Steve Mikhov's and $550 per hour for trial counsel, Michael Rosenstein. A true and correct copy of the Court's minute order is attached hereto as **Exhibit T.**

52. On June 25, 2019, Judge Holly J. Fujie in the matter of *Anthony S. Carruthers v. FCA US LLC* (Los Angeles Superior Court, Case No. BC639911) awarded attorney's fees in the amount of $65,045, 100% of the amount of the lodestar fees requested, which included approving hourly rates for attorneys at my firm ranging from $550/hr-$200/hr. A true and correct copy of the signed order is attached hereto as **Exhibit U**.

53. On June 5, 2019, Judge Dennis Landin awarded attorney's fees in the amount of $63,039.25, 99% of the lodestar fees requested of $63,364.25, in the matter of *Janiece Garza v. FCA US LLC, et al* (Los Angeles Superior Court, Case No. BC635166. The Court, other than reducing Steve Mikhov's hourly rate of $550/hr to $500/hr, approved our rates ranging from $375/hr-$200/hr also awarded costs and expenses in the amount of $7,249.12. A true and correct copy of the Court's signed ruling is attached hereto as **Exhibit V**.

54. On April 9, 2019, Judge Teresa A. Beaudet awarded 100% of the total requested lodestar fees in the amount of $57,910 in the matter of *Chiara Di Martino vs. Hyundai Motor America* (Los Angeles County Superior Court, Case No. BC631896). The hourly rates approved ranged from $550 for managing partners of law firms such as Steve Mikhov; $350 for partner Amy Morse; $350 for senior attorney Christopher Thoms; $375 for senior associates Kristina Stephenson-Cheang

and Alastair Hamblin; and $275 to $250 for associates Deepak Devabose and Daniel Kalinowski. A true and correct copy of the Court's minute order is attached hereto as **Exhibit W**.

55. On February 20, 2019, Judge Anthony Mohr awarded 100% of the total requested lodestar fees and cost as well as ***a .2 multiplier***, totaling in the amount of $88,470.80 in the matter of *Antonio Martinez vs. FCA US LLC* (Los Angeles County Superior Court, Case No. BC624319). The range of hourly rates confirmed included $550 for managing partners of law firms such as Steve Mikhov; $350 for partner Amy Morse; and $350 for senior attorney Christopher Thoms; and $200 for younger associates. A true and correct copy of the signed order is attached hereto as **Exhibit X**.

56. On January 25, 2019, Judge Maureen Duffy-Lewis awarded 100% of requested lodestar fees and costs in the amount of $41,992.62 in the matter of *Antonious Nieuwenhuis vs. Ford Motor Company* (Los Angeles County Superior Court, Case No. BC671090). The hourly rates confirmed ranged from $550 for managing partners such as Steve Mikhov; $450 to $350 for partners Russel Higgins and Amy Morse; $375 for senior attorneys Constance Morrison and Christopher Thoms; $375 for senior associate Kristina Stephenson-Cheang; and $250 to $225 for younger associates. A true and correct copy of the Court's minute order is attached hereto as **Exhibit Y**.

57. On September 17, 2018, Judge Elizabeth Feffer awarded $33,896.17 which was 100% of the attorney's fees, costs and expenses requested in the matter of *Avilio Siciliano v. Kia Motors America, Inc.* (Los Angeles Superior Court, Case No. BC620966). The Court approved all requested rates as reasonable ranging from $500/hr-$250/hr. A true and correct copy of the Court's minute order is attached hereto as **Exhibit Z.**

58. On January 5, 2018, Judge Mel Red Recana granted 100% of the requested lodestar attorney fees in the amount of **$529,885.50 and $96,840.81** in

costs and expenses in the matter of *Charles Margeson v. Ford Motor Company* (Los Angeles Superior Court, Case No. BC549430). Judge Recana believed the firm's prowess during the four-week trial that resulted in an unprecedented almost two million dollar jury verdict warranted a ***1.8 multiplier of $423,908.40*** to be added to the fee award. In addition, the hourly rates awarded as reasonable ranged from $500 to $650 per hour for senior-level attorneys such as Steve Mikhov, trial counsel Michael Rosenstein, trial counsel Bryan Altman, and Hal Rosner; $400 to $350 per hour for senior attorneys Russel Higgins, Lauren Ungs, myself, Amy Morse, Kirk Donnelly, Constance Morrison, and Kristina Stephenson-Cheang, and $200 to $300 for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit AA.**

59. In considering the appropriate rates to charge in a matter such as this, I have reviewed a report entitled United States Consumer Law Attorney Fee Survey Report ("the Report") published in 2019 reflecting rates for 2017 to 2018. Based on the facts presented in the Report, I have determined that the rates charged by the attorneys in this case are commensurate with the hourly rates charged by other attorneys with comparable experience in consumer rights law. On Pages 1– 20, the purpose and methodology of the Report is described. On Pages 58 – 61, the Report sets forth the average hourly rates of consumer law attorneys in California based on experience. The information reflected in these pages supports the reasonableness of the attorney hourly rates charged in this case, which are equivalent, if not below, the average rate of attorneys who practice consumer law in California. On pages 510 – 515, the Report identifies cases in California that have used this Report as supporting evidence in fee awards. The entire report is 598 pages so I have attached only the relevant pages dealing with California attorneys and California law. A true and correct copy of the report is attached hereto as **Exhibit BB**.

60. I request a multiplier of 0.5 based on my contingent fee, the risk and delay in payment associated with a contingent fee scenario, and the result achieved.

Such a multiplier is reasonable and towards the low end under the established law. (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 255.) Plaintiff's attorneys are paid only if Plaintiff prevails, unlike Defendants' attorneys who get paid monthly regardless of the outcome. Moreover, Defendants' attorneys typically have a continuing and ongoing relationship, whereas this firm will most likely not have the opportunity to represent Plaintiff again.

61. It is not uncommon for attorney's fees and costs to exceed the client's damages. The Legislature acknowledged such a circumstance, which is the reason behind the fee shifting provision of the Song-Beverly Act. Otherwise, consumers would be left without opportunity for redress when their damages were not enough for an attorney to take the case on a contingent fee or hourly rate basis. Such a result occurs in large part because of dealerships' or vehicle manufacturers' refusal to adhere to statutory laws protecting consumers, resistance to honoring consumers' complaints, and generally playing games or simply abusing discovery procedures. For example, Ford could have avoided paying any attorney's fees whatsoever had it admitted to its wrongdoing early on and honored Plaintiff's prelitigation request for a buyback. Instead, Ford engaged in expensive litigation, and drove up fees and costs by, among other things, removing the case to federal court, causing Plaintiff to take or defend numerous depositions, thoroughly prepare for trial, and attend multiple court hearings.

62. Lemon law cases are not simple actions. They require a specialized understanding of the full scope of consumer protection laws, which are highly nuanced. The cases also require knowledge of intricacies of automobiles and a lexicon associated with them, as well as a knowledge concerning how to investigate these matters. They also require knowledge of auto manufacturers' and dealers' protocols for repairing vehicles.

63. Generally speaking, clients of the firm are benefitted by the experience of this firm insofar as work-product from other cases can be used in this case as well.

Hence, a substantial amount of time was saved by not needing to draft each document from scratch and little time was needed to "get up to speed" in this specialized area of law. In effect, Ford also benefitted when it comes to a determination of reasonable attorney's fees to be paid because there are numerous cost-saving techniques employed by the firm.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed November 30, 2023, at Los Angeles, California.

*/s/ Roger Kirnos*
ROGER KIRNOS

# EXHIBIT F

**KNIGHT LAW GROUP, LLP**
Roger Kirnos (SBN 283163)
*rogerk@knightlaw.com*
10250 Constellation Blvd., Suite 2500
Los Angeles, CA 90067
Telephone: (310) 552-2250
Fax: (310) 552-7973

Attorneys for Plaintiff,
RAUL BERROTERAN II

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

| | |
|---|---|
| **RAUL BERROTERAN II,**<br><br>Plaintiff,<br><br>vs.<br><br>**FORD MOTOR COMPANY, a Delaware Corporation, and DOES 1 through 10, inclusive,**<br><br>Defendants. | Case No.: BC542525<br><br>**DECLARATION OF ROGER KIRNOS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES**<br><br>[Filed Concurrently with Plaintiff's Notice of Motion for Attorney's Fees, Costs and Expenses; Memorandum in Support Thereof, Declarations of Mark O' Connor, Cynthia Tobisman, Scot D. Wilson and Richard M. Pearl]<br><br>*Case Assigned to the Honorable Gregory Keosian*<br><br>Date: June 20, 2022<br>Time: 10:00 AM<br>Dept.: 61<br>Reservation No. 384133539966 |

**DECLARATION OF ROGER KIRNOS**

I, Roger Kirnos, declare as follows:

1. I am an attorney at law duly licensed to practice before the courts of the State of California and attorney of record for Plaintiff Raul Berroteran II ("Plaintiff") in the instant action. I am the Managing Partner of Knight Law Group and, as such, I have personal knowledge of the following facts. If sworn as a witness, I could and would testify to them competently.

2. I make this declaration in support of Plaintiff's Motion for Attorney's Fees, Costs and Expenses ("Motion"). For the reasons set forth herein and, in the Motion, Plaintiff requests $882,615.00 in attorney's fees. This amount is comprised of the legal services provided by Knight Law Group, LLP ("Knight Law") in the amount of $185,544.00, legal services provided by O'Connor Law Group ("OLG") in the amount of $34,362.00, legal services provided by Robinson Calcagnie, Inc. ("Robinson") in the amount of $73,149.00, and legal services provided by Greines, Martin, Stein & Richland LLP ("GMSR") in the amount of $589,560.00. Plaintiff's attorneys request a reasonable "lodestar" enhancement of 0.5 in the amount of $293,055.00[1], for a total attorney's fee award of $1,175,670.00. A true and correct copy of my firm's billing is attached hereto as **Exhibit A**.

3. Plaintiff also requests reimbursement of costs and expenses in the amount of $51,198.45. Our firms advanced costs/expenses in this matter. A true and correct copy of my firm's verified memorandum of costs is attached hereto as **Exhibit B.** The total amount requested in fees, costs and expenses is $1,226,868.45[2].

4. On March 2006, Plaintiff purchased a new 2006 Ford F-250 for a total sales price of $68,681.04. It was manufactured and distributed by Ford Motor Company ("Ford" or "Defendant"), which provided an express written warranty. A true and correct copy of the Retail Installment Sales Contract is attached hereto as **Exhibit C**.

5. By March 2011, the date when the engine warranty was set to expire, Plaintiff had taken the vehicle to Ford's technicians for repairs *more than eleven times*, to no avail.

---

[1] The enhancement is only sought for fees incurred at the trial level only. No enhancement is requested for appellate fees.

[2] The Altman Law Group, associated trial counsel for Plaintiff will be filing their own motion for attorney's fees, costs, and expenses

6. Faced with these ongoing problems, Ford refused to acknowledge the truck's defective nature. This was so despite the fact that Ford knew of the vehicle's issues, which Ford records in various databases accessible to its authorized repair facilities and the corporate offices.

7. Frustrated, concerned for their safety, and having lost confidence in Ford's ability to repair his truck, Plaintiff contacted the Better Business Bureau in April 2013 pursuant to Ford's customer service instructions, to request a buyback. Despite Ford's affirmative duty under the law to perform an investigation and offer relief, Ford failed to promptly repurchase or replace the truck.

8. Left with no other avenue for relief, Plaintiff contacted Knight Law Group (Knight), which agreed to represent him and bear the risk of litigating the case on a fully contingent basis. Because Knight's compensation was purely contingent, the firm faced a genuine risk of not being paid for its services for years, if at all, while advancing thousands of dollars in costs and expenses on Plaintiff's behalf—including the costs of appellate counsel, Greines, Martin, Stein & Richland, LLP (GMSR). In taking on this litigation, Knight faced a litigation behemoth—Ford is a multi-billion-dollar company with a massive war-chest, that wages a battle of attrition that most firms cannot withstand.

9. Plaintiff filed a complaint in April 2014, alleging willful violations of the Song-Beverly Act and the Consumers Legal Remedies Act, as well as fraud. He sought civil penalties and punitive damages, among other things. Plaintiff benefited from Knight's expertise and efficiency—for example, Knight billed only *one hour* to draft the 70-page complaint. A detailed complaint of this magnitude, drafted from scratch and without the benefit of Plaintiff's attorneys' specialized expertise would have taken dozens of hours. Indeed, Knight could use existing files as templates to conserve time and litigate efficiently.

10. Ford denied liability and asserted numerous affirmative defenses in their Answer.

11. Knight prepared written discovery, including 101 requests for admissions, 123 requests for production of documents, 98 special interrogatories and 27 form interrogatories. Plaintiff again benefitted from Knight's expertise and experience in litigating against Ford as just 5.6 hours were billed for drafting the entirety of this written discovery.

///

12. After Plaintiff received Ford's responses to Plaintiff's written discovery requests, Knight evaluated Ford's responses/document production, and met and conferred with Ford regarding the extensive deficiencies, then attempted to resolve the matter informally, including by narrowing their requests, agreeing to accept documents from Ford's internal corporate databases and documents that pertained only to California customers and consumers. Plaintiff also specifically identified the problems that they experienced with their vehicle by noting the specific repair orders from Ford-authorized dealership's evidencing these problems. Plaintiff also identified the documents from Ford's own warranty database—which Ford did produce in discovery—evidencing these very same concerns.

13. Ford served 28 Form Interrogatories, 33 Special Interrogatories, 23 Requests for Admission, and 25 Requests for Production of Documents. Plaintiff's counsel analyzed each request, secured Plaintiff's input, and drafted responses. Plaintiff again benefited from their counsel's experience—counsel drafted written discovery responses and prepared responsive documents for production in about 5.4 hours.

14. Ford would eventually go on over the course of its seven-year litigation onslaught to serve two *additional* sets of written discovery (totaling an additional 226 Special Interrogatories, 96 more Requests for Admission, and another 203 Requests for Production of Documents) as well as supplemental Requests for Production.

15. Plaintiff was deposed.

16. Ford inspected the Subject Vehicle.

17. Ford petitioned for coordination of this case and stay of all proceedings pending determination of that coordination. Ford's attempt to impose further delay through unnecessary coordination was denied outright on July 14, 2015.

18. In May 2016, Plaintiff attempted to mediate this case along with others against Ford over the course of a three-day mediation. Yet Plaintiff's counsel billed only .2 hours for that mediation—again, showing efficiency.

19. Plaintiff drafted notices of deposition for the dealership personnel who attempted repairs on the vehicle. These depositions were necessary to confirm the repairs attempted on the

vehicle, the days the vehicle was out for repairs, and to investigate the extent of Ford's willful failure to repurchase or replace the subject vehicle.

20. As the case approached trial, Plaintiff's counsel drafted trial documents such as a trial brief, trial witness list, trial exhibit list, and a joint statement of the case. Plaintiff's counsel drafted motions *in limine*, as well as a trial brief seeking admissibility of key evidence. With the volume of documents needed to be entered into evidence at trial, Plaintiff's counsel also drafted an evidence admissibility chart. Ford deposed one of Plaintiff's experts, Dr. Barbara Luna for both this case and another unrelated case, and the time billed was split accordingly. Plaintiff's counsel also deposed and defended the depositions of other experts, and also opposed a second vehicle inspection. This case later several other cases involving similar defective trucks that were also being litigated by Ford's counsel where Ford sent lengthy meet and confer letters that required responding—and again, Plaintiff's counsel split the fees amongst the cases. By the end of 2018, Ford filed and served *another* set of MILs which Plaintiff's counsel had to review/oppose, as needed.

21. At the end of January 2019, on the eve of trial, Ford attempted to untimely add additional expert opinions and bifurcate the trial, both of which Plaintiff's counsel reasonably opposed as the case had been pending trial for *years* at this point. By this point, Ford had also filed approximately thirty-four (34) motion *in limine*, which Plaintiff's counsel opposed. Plaintiff's counsel attended trial call on February 13, 2019, and multiple days of pre-trial arguments commenced the following day.

22. In pretrial rulings, the Court barred the use at trial of deposition testimony from Ford employees in prior actions against Ford. As this testimony was crucial to his case in chief, Plaintiff retained appellate specialists Greines, Martin, Stein & Richland LLP (GMSR) to seek writ relief. Ford preliminarily opposed Plaintiff's petition for writ of mandamus, and after Ford refused to comply with the Court of Appeal's alternative writ, Plaintiff filed a reply to the return. From the remainder of April 2019 to October 22, 2019, GMSR continued litigating before the Court of Appeal, including attending oral argument. After the Court of Appeals ruled in Plaintiff's favor, Ford filed a petition for Supreme Court review, which Plaintiff answered. The Supreme

Court granted review, occasioning a full round of merits briefing in the Supreme Court, including an answering brief on the merits and a consolidated reply to the amicus curiae briefs.

23. On November 23, 2021, shortly before the December 7, oral argument in the Supreme Court, Ford offered to settle the case for $645,259.41 with attorneys' fees and costs to be determined by negotiation or motion. The settlement included a full buyback of Plaintiff's defective vehicle, incidental and consequential damages and substantial civil penalties—*more than nine times* the purchase price of the vehicle purchased fifteen years ago. After a series of discussions with counsel given the magnitude of this case, Plaintiff agreed to accept the settlement offer. Plaintiff's attorneys prepared for and presented the important oral argument to the Supreme Court, which issued its opinion on March 7, 2022. Because of the settlement, the Supreme Court had no occasion to decide the substantive merits of the parties' dispute over the admissibility of the depositions; instead, the Supreme Court concluded that the Court of Appeal had instituted the wrong test, and therefore promulgated a new test for bench and bar to use in future cases to determine when former deposition testimony would be admissible in a later trial under Evidence Code section 1291, subdivision (a). (*Berroteran v. Superior Court* (2022) 12 Cal.5th 867, 901-904.)

24. Plaintiff, as the prevailing party in this action, has made every reasonable effort to resolve the payment of Plaintiff's attorney's fees, costs, and expenses by Ford but was forced to file this Motion with the Court.

**The Firm's Fees Incurred in Litigating This Matter Are Reasonable Pursuant to the Lodestar Method**

25. I am the Managing Partner at Knight Law Group, LLP. I graduated in 2009 from Southwestern University School of Law in the top 10% with cum laude honors and received several academic based scholarships including the Dean's Merit Award. While in law school, I was an oralist on the team that reached the semi-finals at the August A. Rendigs, Jr. National Products Liability Moot Court Competition. I received the CALI Excellence Award for Real Estate Transactions. I received a certificate for completing the Alternative Dispute Resolution program in Hong Kong and Beijing through Pepperdine Law School's esteemed Strauss Institute

for Dispute Resolution. I was a judicial extern for then-Chief Judge Alexander Kozinski of the Ninth Circuit Court of Appeals and thereafter served as a judicial extern to Judge F. Gary Klausner of the United States District Court, Central District of California. I received a B.A. in Economics with a minor in English from the University of California at Los Angeles, where I graduated with Provost Honors in 2000. I also studied economics at the University of Westminster in London, England. I was admitted to the California State Bar in 2012. I am admitted to practice in each of the United States District Courts in California.

26. I have been prosecuting consumers' claims under the Song-Beverly Act, and other consumer statutes such as the Consumer Legal Remedies Act ("CLRA) and the Automobile Sales Finance Act ("ASFA"), since 2013. I joined Knight Law Group in 2017 as a Partner at the firm. My professional focus has been to protect consumers from large-scale abuses by automobile manufacturers. I have been involved in the settlement of hundreds of cases over the years. I have been trial counsel in over 25 consumer-protection cases that have gone to jury verdict, and was one of the trial attorneys on the team that won a record verdict of $8.2M against Ford Motor Company, besting previous jury verdicts of $7.6M, $2.8M, and $1.6M. Three of these verdicts were in the Top 50 of all verdicts in California in the year they were rendered according to Top Verdicts, and were the #1, #2 and #5 top verdicts in the area of "Consumer Fraud, Deceptive Trade Practices, False Advertising, Fraudulent Concealment, Lemon Law" that year. In addition to litigating individual cases, I have been the lead attorney for Knight Law's clients in multiple federal Multi-District Litigation and state Judicial Counsel Coordinated Proceedings. I have represented clients in appeals and was personally and directly involved in authoring the briefing in at least 20 appeals, whether as appellant or respondent, including the following list of cases, which is not an exhaustive list of all appellate matters in which Knight Law Group was involved (Note: One asterisk (*) signifies an appeal brought as an Appellant, and two asterisks (**) signifies an appeal in which we were the Respondent):

<u>Published Opinions</u>

a. *Warren v. Kia Motors America* (2018) 30 Cal.App.5th 24; San Bernardino County, Case No. CIVDS1414575; Fourth Appellate District, Case No.

SCV254959*

b. *Hanna v. Mercedes-Benz, USA* (2019) 36 Cal.App.5th 493; Los Angeles County, Case No. BC552038; Second Appellate District, Case No. B283776*

c. *Patel v. Mercedes-Benz, USA* (2019) 43 Cal.App.5th 1007; Los Angeles County, Case No. BC580425; Second Appellate District, Case No. B293813*

d. *Berroteran v. Ford Motor Company* (2019) 41 Cal.App.5th 518 (*review granted* 2/11/20); Los Angeles County, Case No. B542525; Second Appellate District, Case No. B296639*

e. *Berroteran v. Ford Motor Company* (2022) --- P.3d ----, 2022 WL 664719 Los Angeles County, Case No. B542525; California Supreme Court, Case No. S259522

f. *Reynolds v. Ford Motor Company* (2020) 47 Cal.App.5th 1105; Sonoma County Case No. SCV254959; First Appellate District, Case No. A154811**

g. *Anderson v. Ford Motor Company* (2022) 74 Cal.App.5th 946, San Joaquin County, Case No. 39-2013-00299512-CU-BC-STK; Third Appellate District, Case No. C089603**

h. *Niedermeier v. FCA US* (2020) 56 Cal.App.5th 1052 (*review granted* 2/20/21); Los Angeles County, Case No. BC638010; Second Appellate District, Case No. B293960**

i. *Hernandez v. FCA US* (2020) 50 Cal.App.5th 329 Los Angeles County, Case No. BC668240; Second Appellate District, Case No. B296516*

j. *Reck v. FCA US* (2021) 64 Cal.App.5th 682, Alameda County, Case No. RG16836069; First Appellate District, Case No. A157966*

k. *Covert v. FCA US*, (2022) 73 Cal.App.5th 821, Los Angeles County, Case No. BC629240, Second Appellate District, Case No. B293960**

Unpublished Opinions / Pending Appeals

l. *Palombi v. FCA, US*, Solano County, Case No. FCS043387; First Appellate District, Case No. A156166*

m. *Margeson v. Ford Motor Company*, Los Angeles County, Case No. BC552038; Second Appellate District, Case No. B283776**

n. *Cofield v. Kia Motors America*, Kern County, Case No. S-1500-CV283504; Fifth Appellate District, Case No. F074977**

o. *Myers v. Ford Motor Company*, Los Angeles County, Case No. BC638302; Second Appellate District, Case No. B297244**

p. *Cieslikowski v. FCA US* (2020) 809 Fed.Appx. 386; USDC Central Dist., Case No. 5:17-cv-00562; Ninth Circuit, Case No. 21-55874*

q. *Bowser v. Ford Motor Company*, Riverside County, Case No. MCC1301631; Fourth Appellate District, Case No. E073609**

r. *Nolan v. Ford Motor Company*, Riverside County, Case No. RIC1307491; Fourth Appellate District, Case No. E073850**

s. *Brown v. Ford Motor Company*, Butte County, Case No. 160060; Third Appellate District, Case No. C088419**

t. *Coon v. Ford Motor Company*, Riverside County, Case No. MCC1300767; Fourth Appellate District, Case No. E073138**

u. *Rodriguez v. FCA US*, Riverside County, Case No. RIC1807727; Fourth Appellate District, Case No. E73766*

v. *Madrigal v. Hyundai Motor America*, Placer County, Case No. CV00338395; Third Appellate District, Case No. C090463**

w. *Figueroa v. FCA US*, Ventura County, Case No. 56-2018-00507038; Second Appellate District, Case No. B306275*

x. *Quintero v. Ford Motor Company*, USDC Central District, Case No. 2:18-cv-01912-AB-FFM; Ninth Circuit, Case No. 20-5583*

///

27. In addition to the above published and unpublished opinions, my firm was also involved in numerous other notable unpublished appellate decisions such as:

Notable Favorable Unpublished Opinions

a. *Smart v. Ford Motor Company*, Butte County, Case No. 159509; Third Appellate District, Case No. C087422*

b. *Noflin v. Volkswagen Group of America*, Los Angeles County, Case No. BC575800; Second Appellate District, Case No. B275638*

c. *McCullough v. FCA US* San Diego County, Case No. 37-2015-00013501-CU-BC-CTL; Fourth Appellate District, Case No. D073330*

Published opinions:

d. *Etcheson v. FCA US* (2018) 30 Cal.App.5th 831*

e. *Morris v. Hyundai Motor America* (2019) 41 Cal.App.5th 24*

f. *Montoya v. Ford Motor Company* (2020) 46 Cal.App.5th 493**

g. *Santana v. FCA US* (2020) 56 Cal.App.5th 334*

28. I am a member of, and have been a presenter at conferences, for the National Association of Consumer Affairs discussing topics including automotive fraud generally and best practices for pursuing and calculating damages to maximize consumers' recoveries. I have also presented a Continuing Legal Education course addressing recent and upcoming changes in the area of the Song-Beverly Act and other consumers statutes such as the Consumer Legal Remedies Act by educating attorneys about recent appellate decisions and upcoming appellate issues to be decided. I am also actively involved with non-profit groups such as Consumers for Auto Reliability and Safety and professional organizations such as Consumer Attorneys of California where I sit on the organization's PAC Board. I have also been voted by my peers as a Super Lawyer Rising Star each year since 2018 to present. I am a member of the Los Angeles County Bar Association and Beverly Hills Bar Association. My current billing rate is $500 and my initials are indicated in the billing as "RK".

29. Steve Mikhov is the former Managing Partner of the firm. He attended law school at Pepperdine University and was a judicial extern for Judge Gregory W. Alarcon of the Los

Angeles County Superior Court in 2002. He has been admitted to the State Bar of California since April 29, 2003. Mr. Mikhov has extensive experience prosecuting and resolving consumer protection matters involving motor vehicle claims. For the past approximately 18 years, he specialized in breach of warranty and fraud cases against automobile manufacturers and dealers. He was one of the attorneys who represented the Plaintiff in *Joyce v. Ford Motor Co.* (2011) 198 Cal.App.4th 1478, a leading case which extended the protections of the Lemon Law to trucks based on actual weight, not maximum capacity.

30. Prior to starting Knight Law Group, Mr. Mikhov originally worked for one of the largest consumer warranty law firms at the time, Consumer Legal Services. From April 2007 until April 2012, he was a founding partner in Romano, Stancroff & Mikhov PC where he was the Managing Partner of the firm until it was dissolved. In April 2012, he founded O'Connor & Mikhov, LLP, which was reformed in 2017 as Knight Law Group, LLP. He was the Managing Partner of the firm until 2021. His rate for this case is $550/hour. His billing entries are indicated by the initials "SBM" in the billing statement exhibited to this declaration.

31. Amy Morse is a Partner in my office. Ms. Morse has been with my firm since her admission to the bar in 2013. Prior to her admission, she was a law clerk with my office since 2012. Ms. Morse graduated from Loyola Law School. Ms. Morse's hourly rate is $350/hour for 2014-2020, $400/hour for 2021, and $425/hour for 2022. Ms. Morse's billing entries are indicated by the initials "ALM" in the billing statement exhibited to this declaration.

32. Constance Morrison is of counsel with my firm and attends vehicle inspections, defends depositions and attends hearings. Ms. Morrison has over 20 years of litigation experience. She graduated from Empire College School of Law and was admitted to practice in 1996. Ms. Morrison's hourly billing rate in this case was $375/hour, and her billing entries are signified by the initials "CM" in the billing statement exhibited to this declaration.

33. Chris Swanson is a Partner in my office. Mr. Swanson graduated from UCLA School of Law in 2011 where he distinguished himself academically. Mr. Swanson has been an attorney at my firm since 2014. His prior professional experience includes individual and class action consumer protection law. Mr. Swanson has been selected as a Rising Star by Super Lawyers

from 2018 to 2020. Mr. Swanson's billing rate in this matter is $375/hour for 2015-2020, $425/hour for 2021 and $450/hour for 2022. Mr. Swanson's billing entries are indicated by the initials "CS" in the billing statement exhibited to this declaration.

34. Daisy Ortiz was an Associate of the law firm for three years from 2012 until August of 2015. Ms. Ortiz graduated from University of California, Davis School of Law and admitted to practice in California in 2012. Ms. Ortiz's hourly rate was $225/hour. Ms. Ortiz primarily undertook the written discovery and meeting and conferring regarding discovery. Ms. Ortiz's billing entries are indicated by the initials "DO" in the billing statement exhibited to this declaration.

35. George Aguilar was an associate at Knight Law Group, LLP. He received his undergraduate degree from the University of California, Berkeley in 2011, and his law degree from the University of Maryland Carey School of Law in 2014. Mr. Aguilar was admitted to the California Bar in 2015, and spent his first year and a half practicing family law, criminal defense, personal injury and bankruptcy before joining my firm. Mr. Aguilar's hourly billing rate was $275/hour. Mr. Aguilar's billing entries are indicated by the initials "GA" in the billing statement exhibited to this declaration.

36. Kristina Stephenson-Cheang, a former associate, graduated from Western State University College of Law and was admitted to practice in 2008. Ms. Stephenson-Cheang was employed with the firm since 2013. Prior to her employment at Knight Law, she worked for a different lemon law firm gaining valuable experience in this area of law. Ms. Stephenson-Cheang's hourly rate in this matter was $375/hour. Ms. Stephenson-Cheang's billing entries are indicated by the initials "KSC" in the billing statement exhibited to this declaration.

37. Lauren Ungs is a Partner in my office. Ms. Ungs has been employed by the firm since July 12, 2012. Ms. Ungs has been a member of the California bar and actively practicing law for over eleven years. She graduated magna cum laude from Southwestern Law School in 2010. She currently specializes in consumer law, lemon law, and contract law. Prior to joining my firm, she worked for one year of practicing in the area of environmental law defense. Ms. Ungs' hourly rate is $425/hour for 2014-2020 and $450/hour for 2021. Ms. Ungs' entries are

indicated by the initials "LAU" in the billing statement exhibited to this declaration.

38. Mitchell Rosensweig was an associate at my firm. Mr. Rosensweig graduated cum laude from the University of Baltimore School of Law and was admitted to practice law in the state of Maryland in 2012. He was also admitted to practice law in Washington, D.C. in 2014. Prior to his employment with KLG, Mr. Rosensweig practiced primarily in the area of medical malpractice. Mr. Rosensweig was admitted to the California Bar in 2018. His hourly rate in this matter is $325/hour. Mr. Rosensweig's billing entries are indicated by the initials "MER" in the billing statement exhibited to this declaration.

39. Mark S. Gottlieb has been a practicing attorney since 1977. Mr. Gottlieb graduated from the University of California Los Angeles and graduated from Southwestern University School of Law. Mr. Gottlieb's hourly rate in this case was $350/hour. Mr. Gottlieb's billing entries are signified by the initials "MSG" in the billing statement exhibited to this declaration.

40. Russell Higgins was an Associate and then a Partner with the firm and was admitted to practice in 2003. Mr. Higgins graduated from Pepperdine University School of Law and his hourly rate in this matter is $450/hour for 2018-2020 and $495/hour for 2021. Mr. Higgin's billing entries are indicated by the initials "RH" in the billing statement attached to this declaration.

41. Sundeep Samra is an associate at my firm. Mr. Samra was admitted to the Bar in 2018 and has been working at the firm since then. He is a graduate of the two-year accelerated program at Southwestern Law School and received his undergraduate degree from the University of California, Los Angeles (UCLA). His hourly rate in this matter was $270/hour for 2021. His billing entries are indicated by the initials "SS" in the billing statement exhibited to this declaration.

42. Stephanie Marshall was an associate at my firm during the time she performed work on this matter. Ms. Marshall graduated from Indiana University – Purdue University Indianapolis, Robert H. McKinney School of Law and was admitted to practice in 2013. Ms. Marshall's hourly rate in this matter was $200/hour. Ms. Marshall's billing entries are indicated by the initials "STM" in the billing statement exhibited to this declaration.

43. Zachary Powell is an associate at Knight Law Group, LLP. He received his undergraduate degree from the University of California, Berkeley and his law degree from the

University of the Pacific, McGeorge School of Law. Mr. Powell was admitted to the Missouri Bar in 2013 and the California Bar in 2015. Mr. Powell's billing rate in this matter was $250/hour for 2018-2020 and $250/hour. Mr. Powell’s billing entries are indicated by the initials "ZP" in the billing statement exhibited to this declaration.

44. Deepak Devabose is a senior associate at my firm. Mr. Devabose was admitted to the Bar in 2014 and has been working at the firm since 2015. He graduated from Pepperdine University School of Law and received his undergraduate degree from Emory University. He has earned the Certificate in Reasonable Attorney Fees from the National Association of Legal Fee Analysis, which specializes in attorney fees and legal billing. His hourly rate in this matter is $375/hour for 2022. His billing entries are indicated by the initials “DD” in the billing statement exhibited to this declaration.

45. As always, Knight Law attempts to keep attorney’s fees and costs down while providing vigorous and effective representation.

46. All time billing entries were completed contemporaneously with each dated entry or near in time to the work performed. I have personally reviewed the billing entries to ensure that they appropriately reflect the time reasonably expended. I have removed or reduced any time I felt was excessive, duplicative, or otherwise unreasonable, or I have labeled the entry as a “no charge”, as identified by the “N/C” in the invoice. My firm does not bill clients for secretarial support staff time other than for senior trial paralegals.

47. On October 15, 2021, Judge Gregory Alarcon awarded 94% of the attorney’s fees requested in the amount of $42,135.00 out of $44,935.00, 100% of the costs and expenses requested in the amount of $2,782.77, and awarded rates as reasonable ranging from $750/hr-$200/hr in the matter of *Ana Del Carmen Locayo v. Ford Motor Company LLC* (Los Angeles Superior Court, Case No. 18STCV05153). A true and correct copy of the Court’s minute order is attached hereto as **Exhibit D.**

48. On June 28, 2021 Judge Armen Tamzarian awarded 99% of the attorney’s fees requested in the amount of $25,229.50 out of $25,554.50 and awarded rates as reasonable ranging from $800/hr-$200/hr including $800/hr for Mr. Bryan Altman, $595/hr for Mr. Scot Wilson, and

$550/hr for Mr. Steve Mikhov in the matter of *Hector Lara Mejia v. Ford Motor Company LLC* (Los Angeles Superior Court, Case No. 19STCV21898). A true and correct copy of the Court's minute order is attached hereto as **Exhibit E**.

49. On October 6, 2020 Judge John P. Doyle awarded attorney's fees in the amount of $29,839.25 out of $36,130.00 requested and approved all rates sought as reasonable ranging from $750/hr - $200/hr in the matter of *Elmer Mancia v. FCA US LLC* (Los Angeles Superior Court, Case No. 19STCV05032). A true and correct copy of the Court's minute order is attached hereto as **Exhibit F**.

50. On September 8, 2020 Judge Virginia A. Phillips awarded attorney's fees in the amount of $39,003.85 out of $48,778.75 requested and approved the following rates as reasonable; Mr. Mikhov's rate of $550/hr, Mr. Lear's rate of $595/hr, Ms. Morse's rate of $350/hr, Ms. Morrison's rate of $375/hr, Ms. Stevenson-Cheang's rate of $350/hr, Mr. Devabose's rate of $275/hr, Ms. Colon's rate of $275/hr and Mr. Kalinowski's rate of $275/hr in the matter of *Caleb Lin v. BMW of North America, LLC et al* (United States District Court Central District of California, Case No. 2:18-cv-08297-VAP-PLA). A true and correct copy of the Court's minute order is attached hereto as **Exhibit G**.

51. On August 21, 2020 Judge Barbara Meiers awarded 100% of the attorney's fees requested and awarded a ***multiplier of .5*** (based on the excellent result achieved for Plaintiff) for a total of $30,377.25 in the matter of *Jose Luis Chavez Ramirez et al v. General Motors LLC* (Los Angeles Superior Court, Case No. 19STCV08317). The Court approved all requested rates as reasonable ranging from $550/hr-$200/hr. A true and correct copy of the signed order is attached hereto as **Exhibit H**.

52. On August 13, 2020 Judge Michelle Williams Court awarded 100% of the attorney's fees requested in the amount of $71,937.50 which included approving all rates sought as reasonable including Mr. Mikhov's rate of $550/hr, co-counsel Mr. Wirtz's rate of $650/hr, Russell Higgins' rate of $450/hr, Amy Morse's rate of $350/hr, and younger attorney's rates ranging from $275/hr-$225/hr in the matter of *Misty Miranda et al. v. FCA US LLC* (Los Angeles Superior Court, Case No. BC625980). A true and correct copy of the signed judgment is attached

hereto as **Exhibit I**.

53. On July 24, 2020 Judge Michelle Williams Court awarded 100% of Knight Law Groups lodestar attorney's fees request in the amount of $211,080.00 which included approving Knight Law Group's requested hourly rates as reasonable which ranged from $550/hr-$225/hr in the matter of *Julio Hernandez v. BMW of North America, LLC* (Los Angeles Superior Court, Case No. BC666145). A true and correct copy of the Court's minute order is attached hereto as **Exhibit J**.

54. On June 25, 2020 Judge Christopher Lui awarded over 88% of Plaintiff's lodestar attorney's fees in the amount of $18,500.00 based on a request of $20,947.50 and approved all of plaintiff's rates as reasonable which ranged from $550/hr to $225/hr in the matter of *Javier Carranza et al v. FCA US LLC* (Los Angeles Superior Court Case No. 18STCV05066). A true and correct copy of the signed judgment is attached hereto as **Exhibit K**.

55. On June 23, 2020, Judge Teresa Beuadet awarded 100% of Plaintiff's attorney's fees, costs and expenses in the amount of $126,527.88 and approved all requested rates ranging from $550/hr to $200/hr in the matter of *Donald Harbert v. FCA US LLC* (Los Angeles Superior Court, Case No. BC623621). A true and correct copy of the Court's minute order is attached hereto as **Exhibit L**.

56. On March 23, 2020, Judge Barbara Scheper awarded $27,470 in attorney's fees out of $24,877.50 requested, a ***1.5 multiplier*** of $13,735, as well as full costs and expenses in the amount of $6,850.73 in the matter of *Eluterio Murillo v. FCA US LLC* (Los Angeles Superior Court, Case No. 18STCV06504). The Court approved all of plaintiff's rates as reasonable which ranged from $550/hr to $200/hr. A true and correct copy of the signed order is attached hereto as **Exhibit M**.

57. On March 10, 2020, Judge Michelle Williams awarded 100% of requested lodestar fees and costs in the amount of $196,288.75 in the matter of *Eric Covert vs. FCA US LLC et al.* (Los Angeles County Superior Court, Case No. BC629240). The hourly rates approved as reasonable ranged from $550 for managing partner Steve Mikhov; $350 for partner Amy Morse; $375 for senior attorney Constance Morrison; $375 for senior associates Kristina Stephenson-

Cheang and Chris Swanson; and $275 to $225 for younger associates. A true and correct copy of the signed judgment is attached hereto as **Exhibit N**.

58. On February 20, 2020 Judge Rafael A. Ongkeko awarded *88%* of requested lodestar fees and costs in the amount of $29,837.50 based on a request of $33,932.50 in the matter of Elizabeth *Velador et al. v. Ford Motor Company* (Los Angeles County Superior Court, Case No. BC692274). The court found reasonable the hourly rates which ranged from $550 for managing partner Steve Mikhov; $350 for partner Amy Morse; $375 for senior associates Kristina Stephenson-Cheang and Chris Swanson; and $275 to $225 for younger associates. A true and correct copy of the signed judgment is attached hereto as **Exhibit O**.

59. On February 13, 2020, Judge Kliefield awarded fees in the amount of $23,277.50 (representing about *95%* of the requested lodestar of $24,727.50) and awarded $6,184.26 the full amount of costs requested in *Hugolino Reyes v. GM* (Los Angeles Superior Court, Case No. BC704076). The Court approved as reasonable all rates requested ranging from $550/hr - $225/hr. A true and correct copy of the signed judgment is attached hereto as **Exhibit P**.

60. On February 5, 2020, Judge Robert B. Broadbelt III awarded Knight Law Group 100% of its requested fees and costs which amounted to $16,737.50 in fees and $28,439.91 in costs in *Roman Salcedo & Tania Ortega v. FCA* (Los Angeles Superior Court, Case No. BC655659). In addition, the court approved all requested rates from $550/hr to $200/hr. A true and correct copy of the signed order is attached hereto as **Exhibit Q**.

61. On January 16, 2020, Judge Yolanda Orozco granted lodestar attorney fees in the amount of $44,063.75, which represented 96% of the requested lodestar fee amount of $45,801.25, and full costs in the amount of $5,752.87 in the matter of *Shahriar Yazdanniaz v. FCA US LLC et al.* (Los Angeles Superior Court, Case No. BC686906). In particular, the hourly rates awarded as reasonable ranged from $550 to $595 per hour for senior-level attorneys such as Steve Mikhov, trial counsel Edward O. Lear; $450 to $350 per hour for senior attorneys Russel Higgins, Kirk Donnelly, Amy Morse, and Kristina Stephenson-Cheang, and $200 to $300 for younger attorneys. A true and correct copy of the Court's minute order is attached hereto as **Exhibit R**.

///

62. On January 15, 2020, Judge Mel Red Recana granted lodestar attorney fees in the amount of $86,866.25 (which represented over 87% of the requested lodestar of $99,290.00) and in addition, awarded a ***1.2 multiplier*** of $17,377.25 stating "Plaintiff's counsel accepted this case on contingency, advanced costs, and was required to secure a settlement greater than Defendant's Section 998 offer in order to get any attorney's fees. Thus Plaintiff's counsel took on financial risk in accepting this case and litigating it for three years up to the date of trial in the matter of *Claudia Ewing et al. v. FCA US LLC* (Los Angeles Superior Court, Case No. BC638178). In particular, the hourly rates awarded ranged from $550 to $595 per hour for senior-level attorneys such as Steve Mikhov, trial counsel Edward O. Lear; $450 to $350 per hour for senior attorneys Russel Higgins, Amy Morse, and Kristina Stephenson-Cheang, and $200 to $300 for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit S.**

63. On January 8, 2020, Judge Yolanda Orozco awarded fees in the amount of $28,957.50 for Knight Law Group (which represented over 94% of the requested lodestar of $30,650.00) and awarded the full costs and expenses requested in the amount of $6,470.35 in *Selene Valenzuela et al. v. GM* (Los Angeles Superior Court, Case No. BC707811).The court approved all requested rates as reasonable ranging from $550/hr-$225/hr. A true and correct copy of the Court's minute order is attached hereto as **Exhibit T**.

64. On December 10, 2019, Judge Michelle Williams expressly confirmed the reasonableness of each of the hourly rates and awarded 97% of the requested attorneys' lodestar fees in the amount of $112,065.00 out of $114,775.00 in the case of *Vickie M. Lively v. FCA US LLC et al.* (Los Angeles Superior Court, Case No. BC690576). The court ruled that managing partner Steve Mikhov's rate of $550 per hour was reasonable, trial counsel Edward O. Lear's rate of $595 per hour was reasonable, rates of $350 to $400 per hour for partner Amy Morse and attorney Matthew Evans, were reasonable, and the rate of $375 per hour was reasonable for attorney Kristina Stephenson-Cheang. A true and correct copy of the Court's minute order is attached hereto as **Exhibit U.**

65. On August 26, 2019, Judge Gregory W. Alarcon awarded 100% of the requested lodestar attorney's fees in the amount of $51,143.50 and $14,916.21 in costs and expenses in the

matter of *Tanisha Pitts vs. FCA US LLC et al.* (Los Angeles County Superior Court, Case No. BC690577). The hourly rates awarded ranged from $550 for senior-level attorneys such as Steve Mikhov; $350 per hour for partner Amy Morse; and $375 to $300 per hour for attorneys and senior associate Kristina Stephenson-Cheang; and $200 for younger attorneys. A true and correct copy of the Court's signed ruling is attached hereto as **Exhibit V.**

66. On July 1, 2019, Judge Gary Klausner, awarded 100% of the lodestar attorney's fees in the amount of $49,265 in the matter of *Bruce Hung Li v. FCA US LLC* (United States District Court Central District of California, Case No. 2:17-cv-06290-R-JEM). The court found reasonable the hourly rates that ranged from $250 per hour for attorney Lauren C. Martin to $300 - $375 per hour for associates and mid-level attorneys such as Amy Morse, Kristina Stephenson-Cheang, and Christopher Urner, to $550 per hour for Steve Mikhov and $550 per hour for trial counsel, Michael Rosenstein. A true and correct copy of the Court's minute order is attached hereto as **Exhibit W**.

67. On June 25, 2019, Judge Robert S. Draper, in the matter of *Rita Johnson v. FCA US LLC, et al.* (Los Angeles Superior Court, Case No. BC644172) awarded attorney's fees in the amount of $93,314.75, 93% of the lodestar fees requested of $100,617.25 and $13,937.42 in costs. A true and correct copy of the Court's minute order is attached hereto as **Exhibit X**.

68. On June 25, 2019, Judge Holly J. Fujie in the matter of *Anthony S. Carruthers v. FCA US LLC* (Los Angeles Superior Court, Case No. BC639911) awarded attorney's fees in the amount of $65,045, 100% of the amount of the lodestar fees requested, which included approving hourly rates for attorneys at my firm ranging from $550/hr-$200/hr. A true and correct copy of the signed order is attached hereto as **Exhibit Y**.

69. On June 5, 2019, Judge Dennis Landin awarded attorney's fees in the amount of $63,039.25, 99% of the lodestar fees requested of $63,364.25, in the matter of *Janiece Garza v. FCA US LLC, et al* (Los Angeles Superior Court, Case No. BC635166. The Court, other than reducing managing partner Steve Mikhov's hourly rate of $550/hr to $500/hr, approved our rates ranging from $375/hr-$200/hr also awarded costs and expenses in the amount of $7,249.12. A true and correct copy of the Court's signed ruling is attached hereto as **Exhibit Z**.

70. On May 30, 2019, Judge Teresa A. Beaudet in the matter of *Nicole Gaines v. FCA US LLC et al.* (Los Angeles Superior Court, Case No. BC627950) awarded attorney's fees in the amount of $79,230, 98% of the lodestar fees requested of $80,742.50. The Court approved all of our requested rates ranging from $550/hr-$225/hr. A true and correct copy of the Court's minute order is attached hereto as **Exhibit AA.**

71. On April 9, 2019, Judge Teresa A. Beaudet awarded 100% of the total requested lodestar fees in the amount of $57,910 in the matter of *Chiara Di Martino vs. Hyundai Motor America* (Los Angeles County Superior Court, Case No. BC631896). The hourly rates approved ranged from $550 for managing partner Steve Mikhov; $350 for partner Amy Morse; $350 for senior attorney Christopher Thoms; $375 for senior associates Kristina Stephenson-Cheang and Alastair Hamblin; and $275 to $250 for associates Deepak Devabose and Daniel Kalinowski. A true and correct copy of the Court's minute order is attached hereto as **Exhibit BB**.

72. On March 8, 2019, Judge John P. Doyle awarded about 93% of requested lodestar fees in the amount of $57,692.50 out of $61,965 and all of his costs expenses for a total amount of $72,951.68 in the matter of *Marcos Gastelum vs. FCA US LLC* (Los Angeles County Superior Court, Case No. BC668442). The hourly rates confirmed ranged from $550 for managing partner Steve Mikhov; $350 for partner Amy Morse; $375 for senior attorney Constance Morrison; and $375 for senior associate Kristina Stephenson-Cheang; and $275 to $225 for younger associates. A true and correct copy of the Court's minute order is attached hereto as **Exhibit CC**.

73. On February 20, 2019, Judge Anthony Mohr awarded 100% of the total requested lodestar fees and cost as well as ***<u>a .2 multiplier</u>***, totaling in the amount of $88,470.80 in the matter of *Antonio Martinez vs. FCA US LLC* (Los Angeles County Superior Court, Case No. BC624319). The range of hourly rates confirmed included $550 for managing partner Steve Mikhov; $350 for partner Amy Morse; and $350 for senior attorney Christopher Thoms; and $200 for younger associates. A true and correct copy of the signed order is attached hereto as **Exhibit DD**.

74. On February 13, 2019, Judge Gregory Keosian awarded about 96% of the total requested lodestar fees in the amount of $43,798 out of $45,688 and all of the requested costs and expenses for a total amount of $54,044.76 in the matter of *Alicia Haberman vs. FCA US LLC* (Los

Angeles County Superior Court, Case No. BC655846). The hourly rates confirmed ranged from $595 to $550 for managing partners of law firms such as Steve Mikhov and Edward Lear; $350 for partner Amy Morse; $375 to $300 for senior attorneys Constance Morrison, Christopher Thoms, Ilan Isaacs, and Ray Areshenko; $375 for senior associate Kristina Stephenson-Cheang; and $275 to $250 for associates Deepak Devabose, George Aguilar, and Daniel Kalinowski; and $225 for younger associates. A true and correct copy of the Court's minute order is attached hereto as **Exhibit EE**.

75. On January 25, 2019, Judge Maureen Duffy-Lewis awarded 100% of requested lodestar fees and costs in the amount of $41,992.62 in the matter of *Antonious Nieuwenhuis vs. Ford Motor Company* (Los Angeles County Superior Court, Case No. BC671090). The hourly rates confirmed ranged from $550 for managing partner Steve Mikhov; $450 to $350 for partners Russel Higgins and Amy Morse; $375 for senior attorneys Constance Morrison and Christopher Thoms; $375 for senior associate Kristina Stephenson-Cheang; and $250 to $225 for younger associates. A true and correct copy of the Court's minute order is attached hereto as **Exhibit FF**.

76. On January 23, 2019, Judge Monica Bachner awarded 100% of requested lodestar fees and costs in the amount of $41,992.62 in the matter of *Boris Yu vs. FCA US LLC* (Los Angeles County Superior Court, Case No. BC639907). The hourly rates awarded ranged from $550 for managing partner Steve Mikhov; $450 to $350 for partners Russel Higgins and Amy Morse; $375 for senior attorney Constance Morrison; $375 for senior associate Kristina Stephenson-Cheang; $275 to $250 for associates Deepak Devabose, George Aguilar, Daniel Kalinowski, and Michael Ouziel; and $225 for younger associates. A true and correct copy of the signed order is attached hereto as **Exhibit GG**.

77. On January 7, 2019, Judge David Sotelo awarded 100% of requested lodestar fees in the amount of $44,601.25 in the matter of *Maria Solis vs. FCA US LLC* (Los Angeles County Superior Court, Case No. BC656138). The hourly rates awarded ranged from $550 for managing partner Steve Mikhov; $350 for partner Amy Morse; $375 for senior attorney Constance Morrison; $375 for senior associate Kristina Stephenson-Cheang; $275 for associates Deepak Devabose and George Aguilar; and $250 to $200 for younger associates. A true and correct copy of the Court's

minute order is attached hereto as **Exhibit HH**.

78. On January 4, 2019, Judge Barbara A. Meiers awarded 100% of requested lodestar fees and costs in the amount of $64,748.78 in the matter of *Patrick Green vs. FCA US LLC* (Los Angeles County Superior Court, Case No. BC641408). The hourly rates approved ranged from $550 for senior-level attorneys such as Steve Mikhov; $350 for partner Amy Morse; $375 to $300 for senior attorneys Constance Morrison and Jon Anderson; $375 for senior associate Kristina Stephenson-Cheang; and $250 to $200 for younger associates. A true and correct copy of the Court's minute order is attached hereto as **Exhibit II**.

79. On December 10, 2018, Judge Holly J. Fujie awarded 97% of requested lodestar fees in the amount of $74,567.50 out of $76,190.00 and 100% of requested costs in the amount of $11,690.41 in the matter of *Rosa Rodriguez vs. FCA US LLC* (Los Angeles County Superior Court, Case No. BC616911). The hourly rates awarded ranged from managing partner Steve Mikhov's prior rate of $500 per hour; the prior rate of $300 for partner Amy Morse; and the prior rates of $400 to $350 per hour for senior associates Russel Higgins and Kristina Stephenson-Cheang. A true and correct copy of the signed judgment is attached hereto as **Exhibit JJ**.

80. On September 17, 2018, Judge Elizabeth Feffer awarded $33,896.17 which was 100% of the attorney's fees, costs and expenses requested in the matter of *Avilio Siciliano v. Kia Motors America, Inc.* (Los Angeles Superior Court, Case No. BC620966). The Court approved all requested rates as reasonable ranging from $500/hr-$250/hr. A true and correct copy of the Court's minute order is attached hereto as **Exhibit KK**.

81. On August 8, 2018, Judge John P. Doyle awarded 100% of the lodestar fees requested by motion in the total amount of $72,478.75 in the matter of *Geoffrey Morgan and Ambyr Morgan v. FCA* (Los Angeles County Superior Court, Case No. BC625668). The rates approved as reasonable include Steve Mikhov's rate of $500 per hour, the rate of $400 per hour for myself and Sepehr Daghighian, $375 per hour for kirk Donnelly, $350 per hour for Amy Morse and Kristina Stephenson-Cheang, $250 per hour for Deepak Devabose and George Aguilar, and $225 per hour Jennifer Reiz and Thomas Burns. A true and correct copy of the signed order is attached hereto as **Exhibit LL**.

82. On August 7, 2018, Judge David Sotello awarded 100% of the fees, costs and expenses requested by motion in the total amount of $31,656.20 in the matter of *Deiter Hadorn v. FCA* (Los Angeles County Superior Court, Case No. BC633611). The rates approved as reasonable include Steve Mikhov's rate of $500 per hour, the rate of $350 per hour for Amy Morse, Christopher Swanson, Hadi Gerami, and Kristina Stephenson-Cheang, $225 per hour for Jennifer Reiz, and $200 per hour for Michelle Lumasag. A true and correct copy of the signed order is attached hereto as **Exhibit MM**.

83. On July 31, 2018, Judge Teresa Beaudet awarded 100% of the lodestar attorneys fees in the amount of $55,312.50 in attorney's fees and $12,893.46 in costs and expenses in the matter of *Luis Marroquin et al vs. Ford Motor Company* (Los Angeles County Superior Court, Case No. BC626539). The hourly rates awarded ranged from $500 for senior-level attorneys such as Steve Mikhov; $375 to $300 per hour for "contract/of counsel" attorneys Kirk Donnelly, Constance Morrison, Hadi Gerami, and Larry Castruita; $350 per hour for partner Amy Morse and senior associate Kristina Stephenson-Cheang; and $250 for younger attorneys. A true and correct copy of the Court's minute order is attached hereto as **Exhibit NN**.

84. On July 13, 2018, Judge Deirdre Hill awarded 100% of the attorney's fees in the amount of $40,066.25 and full costs and expenses in the amount of $1,723.21 in the matter of *Everett Bell vs. FCA US LLC* (Los Angeles County Superior Court, Case No. BC631014). The hourly rates awarded as reasonable ranged from $500 for senior-level attorneys, such as Steve Mikhov and trial counsel, Michael Rosenstein; $400 to $350 per hour for attorneys Russell Higgins and Amy Morse; and $225 to $250 for Thomas Burns and Hadi Gerami. A true and correct copy of the Court's minute order is attached hereto as **Exhibit OO**.

85. On February 23, 2018, Judge John P. Doyle awarded about *90%* of the lodestar attorney's fees request in the amount of $63,705.38 out of $70,783.75 and all of Plaintiff's $8,560.21 in costs and expenses in the matter of *Aandahl vs. FCA US LLC* (Los Angeles County Superior Court, Case No. BC620824). The hourly rates awarded as reasonable ranged from $500 per hour for senior-level attorneys, including Steve Mikhov and trial counsel, Michael Rosenstein; $400 to $350 per hour for attorneys Russel Higgins, Lauren Ungs, Chris Swanson, Amy Morse,

Constance Morrison, Kristina Stephenson-Cheang, and $200 to $275 for younger attorneys. A true and correct copy of the Court's minute order is attached hereto as **Exhibit PP**.

86. On January 5, 2018, Judge Mel Red Recana granted 100% of the requested lodestar attorney fees in the amount of **$529,885.50 and $96,840.81** in costs and expenses in the matter of *Charles Margeson v. Ford Motor Company* (Los Angeles Superior Court, Case No. BC549430). Judge Recana believed the firm's prowess during the four-week trial that resulted in an unprecedented almost two million dollar jury verdict warranted a ***1.8 multiplier of $423,908.40*** to be added to the fee award. In addition, the hourly rates awarded as reasonable ranged from $500 to $650 per hour for senior-level attorneys such as Steve Mikhov, trial counsel Michael Rosenstein, trial counsel Bryan Altman, and Hal Rosner; $400 to $350 per hour for senior attorneys such as myself, Russel Higgins, Lauren Ungs, Amy Morse, Kirk Donnelly, Constance Morrison, and Kristina Stephenson-Cheang, and $200 to $300 for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit QQ**.

87. On October 31, 2017, Judge Elizabeth R. Feffer granted 100% of the attorney fees, costs and expenses in the amount of $43,527.50 in the matter of *Jesus Montes v. Ford Motor Company* (Los Angeles Superior Court, Case No. BC617619). Judge Feffer granted rates from $750 per hour for trial counsel Moses Lebovits, $500 per hour for Managing Partner Steve Mikhov, $400 per hour for Senior Associate Russell Higgins, $325 to $350 per hour for Associates Chris Swanson and Kristina Stephenson-Cheang, $350 per hour for Mr. Lebovits' associates, Ashley Arnett and Mary Fersch, $250 per hour for then-associate, now-Partner Amy Morse. A true and correct copy of the signed order is attached hereto as **Exhibit RR**.

88. On October 11, 2017, Judge Elizabeth R. Feffer awarded 98% of the attorney fees requested by motion in the matter of *Sergio Lopez v. Ford Motor Company* (Los Angeles County, Case No. 585892) in the amount of $108,750.00 out of $110,797.50, with the one reduction stemming from my firm's own withdrawal of time that was unreasonable. Judge Feffer reviewed the following hourly rates and determined them to be reasonable: $500 per hour for attorneys Steve Mikhov and Richard Wirtz, $400 per hour for attorney Russel Higgins, $300 - $350 per hour for attorneys Alistair Hamblin, Constance Morrison, Kristina Stephenson-Cheang, Amy Smith and

Erin Barns, and $250 per hour for Amy Morse and Lauren Sabb. A true and correct copy of the signed order is attached hereto as **Exhibit SS**.

89. On September 20, 2017, Judge Gail R. Feuer awarded 98% of the requested lodestar attorney's fees totaling $227,228.00 out of $231,228.000 and $31,712.55 in costs and expenses in the matter of *Anita Longin vs. Ford Motor Company* (Los Angeles Superior Court, Case No. BC564186). Specifically, the Court deemed managing partner Steve Mikhov's hourly rate of $500 per hour reasonable along with trial attorney, Sepehr Daghighian's hourly rate of $400 per hour as reasonable. Judge Feuer also determined that the hourly rates of the other associate attorneys ranging from $225 to $400 per hour were reasonable. A true and correct copy of the Court's ruling is attached hereto as **Exhibit TT**.

90. On June 19, 2017, Judge Michael J. Raphael awarded $116,872.50 in attorney's fees out of $134,975.00 requested after trial in the matter of *Tarisa Bellamy v. Mercedes Benz USA LLC* (Los Angeles Superior Court, Case No. BC597233). Plaintiff obtained a maximum treble damages jury verdict. The Court affirmed the hourly rates of the attorneys, including Moses Lebovits' rate of $750 per hour, Steve Mikhov's rate of $500 per hour and mid-level and young associates ranging from $250 to $400 per hour, as well as Attorney Ashley Arnett at $350 per hour. A true and correct copy of the Court's ruling is attached hereto as **Exhibit UU**.

91. On May 24, 2017, Judge Howard L. Halm awarded $168,000.00 in attorney's fees out of $204,795.00 requested and $27,257.19 in costs and expenses in a jury trial that resulted in a maximum civil penalty award for our client in the matter of *Omar Gomez v. Kia Motors America, Inc.* (Los Angeles County Superior Court, Case No. BC 574493). The court found the hourly rate of $500 for Steve Mikhov to be reasonable as well as those of other attorneys in my office ranging from $225 per hour for Daisy Ortiz to $350 per hour for Lauren Ungs and Kristina Stephenson-Cheang to $400 per hour for Russell Higgins. The court, on its own, *raised* my rate from the requested $375 per hour to $475 per hour. A true and correct copy of the signed order is attached hereto as **Exhibit VV**.

92. On March 15, 2017, Judge Susan Bryant-Deason awarded about 92% of the requested lodestar attorney's fees, costs and expenses in the amount of $113,398.46 out of

$123,238.46 in the matter of *Angelica Andrino v. Kia* (Los Angeles County Superior Court, Case No. BC596210), which settled on the first day of trial. A true and correct copy of the Court's minute order is attached hereto as **Exhibit WW**.

93. On February 28, 2017, Judge Ernest M. Hiroshige in Los Angeles County Superior Court awarded 100% of the requested fees in the matter of *Greg Dorfman v. BMW of North America, LLC* (Los Angeles Superior Court, Case No. BC538183) for a total attorney fee award (not including costs) of $47,732.50. Therefore, the court confirmed the reasonableness of the time expended as well as the reasonableness of the hourly rates requested, which were $500 per hour for managing partner Steve Mikhov and the rate of senior trial counsel, Rich Wirtz, $300 to $350 per hour for middle level attorneys such as Lauren Ungs, Kristina Stephenson-Cheang, Kevin Van Hout, and contract attorney/"of counsel" Constance Morrison, and $200 to $250 per hour for the younger associates, such as Daisy Ortiz, Amy Morse, Stephanie Marshall and Michael Ouziel. A true and correct copy of the Court's ruling is attached hereto as **Exhibit XX**.

94. On November 2, 2016, Judge Barbara A. Meiers in Los Angeles County Superior Court awarded 100% of the requested fees and costs in the matter of *Robert Carter and Peggy Carter v. Chrysler Group LLC* (Los Angeles Superior Court, Case No. BC495228) resulting in a total award of fees, costs and expenses in the amount of $41,466.22. The award reflects a finding that the hourly rate of $500 per hour is reasonable for managing partner Steve Mikhov and senior trial attorney, Michael Rosenstein, as well as $350 for myself and attorneys Lauren Ungs and Chris Swanson. A true and correct copy of the signed order is attached hereto as **Exhibit YY**.

95. On August 25, 2016, Judge Elizabeth A. White awarded 100% of the requested lodestar attorney fees and costs and expenses in the total sum of $84,210.90 in the matter of *Bradford Mansur v. Chrysler Group, LLC* (Los Angeles County Superior Court, Case No. BC539866). Judge White expressly approved hourly rates ranging from $600 per hour for trial counsel, Mark O'Connor, to Steve Mikhov's rate of $500 per hour to $325 - $350 per hour for mid-level attorneys such as Lauren Ungs, Chris Swanson, Shawna Melton and Kristina Stephenson-Cheang. A true and correct copy of the signed order is attached hereto as **Exhibit ZZ**.

96. On August 22, 2016, in the matter of *Kevin Kebodeaux et al v. Mercedes-Benz* (Los Angeles Superior Court, Case No. BC552037), Judge Marc R. Marmaro granted an award of attorney's fees, costs and expenses in the amount of $203,247.39 out of $215,704.14 requested (about 94%) in a case in which our clients prevailed at trial with an award of civil penalties. In so doing, the court approved rates for trial counsel Mark O'Connor at $600 per hour, Steve Mikhov at $500 per hour, mid-level attorney rates of $300 to $350 per hour and lower billing attorney rates of $225 to $250 per hour. A true and correct copy of the signed Judgment is attached hereto as **Exhibit AAA**.

97. Also on August 22, 2016, Judge John T. Doyle awarded 100% of the requested lodestar fees and costs in the case entitled *Frank Baca et al v. Chrysler Group, LLC* (Los Angeles Superior Court, Case No. BC566511). The court ruled that the time entries were reasonable as well as the hourly rates were reasonable, including the rate of $500 per hour for managing partner Steve Mikhov and senior trial counsel, Michael Rosenstein, $300 to $350 per hour for myself and attorneys Lauren Ungs, Chris Swanson, Kevin Van Hout and Constance Morrison, and $200 to $250 per hour for attorneys Stephanie Marshall, Michael Ouziel, Daisy Ortiz and Amy Morse. A true and correct copy of the signed order is attached hereto as **Exhibit BBB**.

98. On August 2, 2016, Judge Teresa A. Beaudette awarded 100% of the requested fees, costs and expenses in the matter of *Jasmine Lepe v. Chrysler Group, LLC* (Los Angeles Superior Court, Case No. BC556273) for a total of $74,712.10. . The court approved rates ranged from $650 per hour for trial counsel, Bryan Altman, to $500 per hour for Steve Mikhov, to $450 per hour for senior attorney, Joel Elkins, to $200 to $350 per hour for associates ranging from 1 year to 5 years of legal experience in California. A true and correct copy of the notice of ruling and the Court's minute order is attached hereto as **Exhibit CCC**.

99. On September 9, 2015, Judge Gregory W. Alarcon awarded 100% of the attorney's fees and costs and expenses actually incurred in the case of *Ralph Helm et al v. Chrysler* (Los Angeles County Superior Court, Case No. BC519503) in the amount of $66,172.80, thereby confirming the reasonableness of the hourly rates requested and the reasonableness of the time incurred. Judge Alarcon granted Steve Mikhov's rate of $450 per hour, trial attorneys Michael

Rosenstein and myself at rates of $450 and $300, respectively, associate rates at $300 per hour for attorneys Lauren Ungs and Kevin Van Hout and $325 per hour for Kristina Stephenson-Cheang, $350 per hour for Constance Morrison, and $200 to $250 per hour for Amy Morse, Daisy Ortiz and Stephanie Marshall. A true and correct copy of the Court's ruling is attached hereto as **Exhibit DDD**.

100. On April 20, 2015, Judge Michael P. Linfield awarded $79,081.14 in fees and costs and expenses in the matter of *Dmitry Shychko et al v. Mercedes-Benz USA* (Los Angeles Superior Court, Case No. BC533642). In addition, Judge Linfield approved all requested rates as reasonable ranging from $550/hr-$225/hr for attorneys and granted a **lodestar multiplier of 1.5** given that the case was taken on a contingency basis. A true and correct copy of the signed order is attached hereto as **Exhibit EEE**.

101. On October 31, 2013, Judge Abraham Khan awarded the amount of $136,701.17 in attorney's fees, costs and expenses out of $149,600.67 requested (about 91%) in the matter of *Stuart Chiavassa v Ford Motor Company*, Los Angeles Superior Court, The Court approved our requested rates ranging from $500/hr-$225/hr. A true and correct copy of the Court's ruling is attached hereto as **Exhibit FFF**.

102. On September 17, 2013, Judge Ernest M. Hiroshige awarded $28,683.75 in attorney's fees out of $35,413.75 requested and awarded a ***1.25 multiplier*** given that the case was taken on contingency and there was a delay in payment in the matter of *Brian Snell v. Ford Motor Company*, Los Angeles Superior Court Case No. BC 471985. The court approved rates ranging from $400/hr-$175/hr. A true and correct copy of the Court's ruling is attached hereto as **Exhibit GGG**.

103. On March 5, 2009, Judge Rolf M. Treu awarded 100% of the requested attorney's fees, ***plus a 1.33 multiplier*** for a total amount of $23,323.80 in William *Jeske v. Chrysler Motor Co.* (Los Angeles Superior Court Case No. BC394377). The rates approved as reasonable ranged from $400/hr-$300/hr. A true and correct copy of the Court's ruling is attached hereto as **Exhibit HHH**.

///

104. On August 20, 2008, the court awarded attorney fees in the amount of $31,255.11 which included a ***1.5 multiplier*** (due to the risks involved in taking this case on contingency) in *Kang v. American Honda Motor Co.* (Los Angeles County Superior Court Case No. BC379949). The court awarded rates ranging from $250/hr-$165/hr. A true and correct copy of the signed order is attached hereto as **Exhibit III**.

105. In considering the appropriate rates to charge in a matter such as this, I have reviewed a report entitled United States Consumer Law Attorney Fee Survey Report ("the Report") published in 2019 reflecting rates for 2017 to 2018. Based on the facts presented in the Report, I have determined that the rates charged by the attorneys in this case are commensurate with the hourly rates charged by other attorneys with comparable experience in consumer rights law. On Pages 1– 20, the purpose and methodology of the Report is described. On Pages 58 – 61, the Report sets forth the average hourly rates of consumer law attorneys in California based on experience. The information reflected in these pages supports the reasonableness of the attorney hourly rates charged in this case, which are equivalent, if not below, the average rate of attorneys who practice consumer law in California. On pages 510 – 515, the Report identifies cases in California that have used this Report as supporting evidence in fee awards. The entire report is 598 pages so I have attached only the relevant pages dealing with California attorneys and California law. A true and correct copy of the report is attached hereto as **Exhibit JJJ**.

106. While not controlling as to a reasonable rate for a contingent plaintiff attorney, one of Ford's trial counsel in this matter and similar matters charged $450.00 per hour for a sixth-year associate who did not attend trial, and attested that it was either at *or below* the market rate for *defense* attorneys in San Joaquin County. Attached hereto as **Exhibit KKK** is a true and correct copy of the declaration of Ford's counsel filed in the matter of *Anderson v. Ford,* San Joaquin County, case number STK-CV-UBC-2013-0007198.

107. Ford's counsel LeClairRyan represented Ford in a number of similar Ford truck engine cases, including two trials that went to verdict in 2018 and 2019. Attached hereto as **Exhibit LLL** is a true and correct copy of an excerpt from the hearing on plaintiff's motion for attorney fees in the matter of *Tanner v. Ford* (County of Riverside, Case No. MCC1301063) in

which Ford's trial counsel from LeClairRyan acknowledged that their fees were higher than Plaintiff's counsel in a similar case that settled shortly before trial.

108. I request a multiplier of 0.5 based on my contingent fee, the risk and delay in payment associated with a contingent fee scenario, and the result achieved. Such a multiplier is reasonable and towards the low end under the established law. (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 255.) Plaintiff's attorneys are paid only if Plaintiff prevails, unlike Defendants' attorneys who get paid monthly regardless of the outcome. Moreover, Defendants' attorneys typically have a continuing and ongoing relationship, whereas this firm will most likely not have the opportunity to represent Plaintiff again.

109. It is not uncommon for attorney's fees and costs to exceed the client's damages. The Legislature acknowledged such a circumstance, which is the reason behind the fee shifting provision of the Song-Beverly Act. Otherwise, consumers would be left without opportunity for redress when their damages were not enough for an attorney to take the case on a contingent fee or hourly rate basis. Such a result occurs in large part because of dealerships' or vehicle manufacturers' refusal to adhere to statutory laws protecting consumers, resistance to honoring consumers' complaints, and generally playing games or simply abusing discovery procedures. For example, Ford could have avoided paying any attorney's fees whatsoever had it admitted to its wrongdoing early on and honored Plaintiff's prelitigation request for a buyback. Instead, Ford engaged in expensive litigation.

110. Lemon law cases are not simple actions. They require a specialized understanding of the full scope of consumer protection laws, which are highly nuanced. The cases also require knowledge of intricacies of automobiles and a lexicon associated with them, as well as a knowledge concerning how to investigate these matters. They also require knowledge of auto manufacturers' and dealers' protocols for repairing vehicles.

111. Generally speaking, clients of the firm are benefitted by the experience of this firm insofar as work-product from other cases can be used in this case as well. Hence, a substantial amount of time was saved by not needing to draft each document from scratch and little time was needed to "get up to speed" in this specialized area of law. In effect, Ford also benefitted when it

comes to a determination of reasonable attorney's fees to be paid because there are numerous cost-saving techniques employed by the firm.

112. Ford utilized at least *21 attorneys and 7 law firms* in their defense of this case![3] There were undoubtedly many more attorneys, but Plaintiff does not have the benefit of reviewing Ford's internal billing records and Ford will not attach them in their opposition brief.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on Friday, May 20, 2022, at Los Angeles, California.

ROGER KIRNOS

---

[3] This includes Matthew M. Proudfoot, Douglas A. Proudfoot, Victor L. Block, Valerie G. Larsen-Fernandez, Kelley Gural from Gates, O'Doherty, Gonter & Guy, LLP; Scott M. Erskine from Erskine Law Group; Jeff E. Scott, Jordan D. Grotzinger, Rick L. Shackelford, Daniell K. Newman, Robert S. Feund, Hannah B. Shanks-Parkin, Evelyn Cobos from Greenberg Traurig, LLP; Justin H. Sanders, Darth K. Vaughn, Sabrina C. Narain from Sanders Roberts LLP; Paul B. La Scala from Shook, Hardy & Bacon LLP; Frederic D. Cohen, Lisa Perrochet, Allison W. Meredith from Horvitz & Levy LLP; and Elizabeth McNulty from Evans Fears & Schuttert LLP.

# EXHIBIT G

**KNIGHT LAW GROUP, LLP**
Steve Mikhov (SBN 224676)
10250 Constellation Blvd., Suite 2500
Los Angeles, CA 90067
Telephone: (310) 552-2250
Fax: (310) 552-7973
Email: stevem@knightlaw.com

**THE ALTMAN LAW GROUP**
Bryan C. Altman (SBN 122976)
10250 Constellation Blvd., Suite 2500
Los Angeles, CA 90067
Telephone: (310) 277-8481
Fax: (310) 277-8483
Email: bryan@altmanlawgroup.com

Attorneys for Plaintiff,
**LEONARD COON**

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF RIVERSIDE**

**LEONARD COON,**

Plaintiff,

vs.

**FORD MOTOR COMPANY, a Delaware Corporation; and DOES 1 through 10, inclusive,**

Defendants.

Case No: MCC1300767

**DECLARATION OF STEVE MIKHOV IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

[Filed concurrently with Plaintiff's Notice of Motion and Motion for Attorneys' Fees; Memorandum in Support Thereof; Declarations of Michael H. Rosenstein, Bryan C. Altman, Hallen D. Rosner, and Cynthia E. Tobisman]

*Assigned for trial to the Honorable Daniel A. Ottolia*

Date: April 4, 2019
Time: 8:30 a.m.
Dept: 4

# DECLARATION OF STEVE MIKHOV

I, Steve Mikhov, declare as follows:

1. I am an attorney at law duly licensed to practice before the courts of the State of California and attorney of record for Plaintiff Leonard Coon ("Plaintiff") in the instant action. I have personal knowledge of the following facts and, if sworn as a witness, I could and would testify to them competently.

2. I make this declaration in support of Plaintiff's Motion for Attorneys' Fees ("Motion"). For the reasons set forth herein and, in the Motion, Plaintiff requests $804,043.74 in attorneys' fees. This amount is comprised of the legal services provided by Knight Law Group, LLP ("Knight Law") in the amount of $481,530.00, legal services provided by the Law Office of Michael H. Rosenstein, LC ("LOMR") in the amount of $11,000.00, legal services provided by The Altman Law Group ("TALG") in the amount of $240,606.25, legal services provided by Rosner, Barry & Babbit, LLP ("Rosner") in the amount of $34,767.49 and legal services provided by Greines, Martin, Stein & Richland ("GMSR") in the amount of $36,140.00. Plaintiff's attorneys request a reasonable "lodestar" enhancement of 1.8 in the amount of $643,234.99, for a total attorneys' fee award of $1,447,278.73. A true and correct copy of my firm's billing is attached hereto as **Exhibit A.**

3. Plaintiff purchased a new 2005 Ford F-350 on July 22, 2005 for a total purchase price of $47,160.20. The vehicle was distributed by Ford Motor Company ("Defendant" or "Ford"), which provided an express written warranty. A true and correct copy of the Retail Installment Sales Contract is attached hereto as **Exhibit B.**

4. During and after the warranty period, Plaintiff brought his truck in dozens of times for severe engine problems. Despite the ongoing repairs and continued manifestation of problems, Ford refused to acknowledge the defective nature of Plaintiff's vehicle. At all times, however, Ford had direct, contemporaneous knowledge of the vehicle's serious defects, which it records in a database called "OASIS" and a warranty repair history database called "AWS." These repair records indicate each time the vehicle was presented for repair during the warranty period, as well

as every time the Ford repair facility found a problem/defect attributable to Ford and billed Ford for the work.

5. Frustrated, concerned for their safety and having lost confidence in Ford's ability to repair the vehicle, Plaintiff submitted a request for arbitration to the Better Business Bureau on or about March 12, 2013. Plaintiff's request for arbitration was denied on April 4, 2013.

6. With no other available avenue for relief, Plaintiff contacted Knight Law and told the firm about the problems with his truck and the way Ford had treated him. After reviewing the repair history and discussions with Plaintiff, Knight Law agreed to represent them and bear the risk of litigating the case on a fully contingent basis. Because Knight Law's compensation was purely contingent, the firm faced a genuine risk of not being paid for its services for years, if at all, while advancing thousands of dollars in costs and expenses on Plaintiff's behalf. In taking on this duty, the firm was facing a litigation behemoth—Ford is a multi-billion-dollar company, with a virtually infinite litigation war-chest, that wages a battle of attrition that most firms cannot withstand.

7. Prior to filing the lawsuit, Plaintiff served Ford with a demand under the Consumer Legal Remedies Act. Ford responded with a denial of all liability, despite the fact that Plaintiff had over three-dozen engine repairs.

8. Plaintiff filed a Complaint in this action on May 31, 2013, followed by a First Amended Complaint on July 2, 2013 alleging punitive damages on account of Ford's rejection of Plaintiff's CLRA demand. Plaintiff's First Amended Complaint alleged causes of action for Fraud for concealing a known engine defect, and violations of the Consumer Legal Remedies Act ("CLRA") and the Song-Beverly Act, and sought, among other things, civil penalties and punitive damages.

9. On August 12, 2013 Ford began its vigorous defense in this case, propounding requests for production of documents, requests for admissions, special interrogatories, and form interrogatories on Plaintiff. Ford also noticed the depositions of Plaintiff and made a demand for inspection of Plaintiff's defective vehicle.

10. Defendant's position in the litigation required extensive efforts on the part of Plaintiff's counsel, and they promptly began working up their case on behalf of Plaintiff. Written discovery was drafted and served on Defendant on July 18, 2013, consisting of 107 requests for admissions, 22 requests for genuineness, 122 requests for production of documents, 114 special interrogatories, and form interrogatories. Plaintiff again benefitted from Knight Law's expertise and experience in litigating against Ford as just 5.1 hours were billed for drafting the entirety of this discovery. Plaintiff's counsel are able to use existing files as templates to conserve time and litigate efficiently. Written discovery of this magnitude, drafted from scratch and without the benefit of Plaintiff's attorneys' vast knowledge, experience and specialized expertise, would have taken multitudes of the time expediently managed here.

11. On August 2, 2013, Ford filed both a demurrer and a motion to strike Plaintiff's First Amended Complaint. On August 9, 2013, Ford noticed the deposition of Plaintiff. Ford also concurrently noticed the inspection of Plaintiff's truck. Ford's demurrer was later granted in part with leave to amend. After Plaintiff filed an amended complaint, Ford again filed a demurrer and motion to strike on November 25, 2013, which were both denied. On January 28, 2014, Ford then filed its Answer to Plaintiff's Second Amended Complaint, denying all liability and asserting twenty-seven affirmative defenses.

12. Plaintiff's deposition went forward on February 18, 2014, and the vehicle was inspected on December 10, 2014. Meanwhile, Plaintiff's counsel reviewed, analyzed and annotated Ford's responses to Plaintiff's discovery. Due to Ford's improper objections and evasive responses to Plaintiff's discovery, Plaintiff began meet and confer efforts. Unfortunately, Ford refused to fully comply with its discovery obligations, leaving Plaintiff no choice but to file a Motion to Compel. At the hearing, Plaintiff's Motion to Compel was granted.

13. In total, Defendant made a document dump of over *twelve-million* pages of documents, which Plaintiff was able to review through numerous cases, achieving extreme efficiency for this matter. Notably, the hundreds of hours that it took to review these documents are *not included in Plaintiff's billing*. Similarly, some of the key depositions utilized in this case

were also not included in Plaintiff's billing.

14. At a February 9, 2015 trial setting conference, the court continued the hearing (after consulting with Ford's counsel) to June 23, 2015.

15. On March 2, 2015, Ford filed a 406-page Petition for Coordination seeking to coordinate all cases in California involving Ford trucks equipped with the 6.0L diesel engine. As a result, all cases, including this matter, were completely stayed and all trial dates were vacated, causing significant delay and prejudice to those consumers who had been waiting years for their day in court. Although Plaintiff's counsel incurred <u>substantial time</u> to oppose the petition and numerous related interim disputes and ensuing hearings, only a fraction of the total time was billed to this case. The presiding court ultimately denied the petition on July 14, 2015 but it took months to get cases like this one reset for trial. During the stay of all 6.0L engine cases, Plaintiffs' counsel was afforded time to then focus on review of the oft-mentioned 12,000,000 page document dump, which comprise the damaging internal documents. A true and correct copy of Ford's Petition is attached hereto as **Exhibit C**. Notably, Ford's Petition included a list of all 6.0 cases in California (all of which Ford was seeking to coordinate) – Plaintiff's counsel represented the vast majority of the cases. The other law firms consisted of: Premier Legal Center, APC (based in San Diego); Romano Stancroff PC (based in El Segundo); the Law Offices of Todd M. Friedman, PC (based in Beverly Hills); the Law Offices of David J. Farrell (based in Mission Viejo); and the Law Offices of William R. McGee (San Diego). Therefore, every single firm in California handling 6.0 lawsuits in 2014 was based in/near Los Angeles or San Diego.

16. Following the denial of Ford's petition for coordination, Ford filed a motion to bifurcate trial on the statute of limitations on January 18, 2016, which was later granted. In the one Ford case in which Ford did *not* file a motion to bifurcate, the court set trial for August, 2016, demonstrating the years of delay caused by Ford's request. The bench trial was scheduled for January 17, 2017.

17. With the absence of any reasonable settlement offer from Ford, the case appeared likely to go to trial. Accordingly, on or about January 19, 2016, Michael H. Rosenstein of the Law

Offices of Michael H. Rosenstein formally associated into the case to assist in preparing the case for trial.

18. On July 19, 2016, Ford served Plaintiff with an Offer to Compromise pursuant to the Code of Civil Procedure section 998 ("998 Offer") in the amount of $185,000.00. This was the first settlement offer served by Ford. According to recent arguments by Ford, the settlement offer explicitly did not include a single dollar for Plaintiff's CLRA claim, and did not provide for attorney fees under the CLRA.

19. In December 2016, Plaintiff noticed the depositions of several Ford employees and dealership personnel, including Ford's PMQ, service advisors and service technicians. These depositions were needed to obtain information regarding repairs to the vehicle, authenticate the repair orders, rebut Ford's anticipated argument that the problems with Plaintiff's vehicle were somehow caused by Plaintiff's neglect or abuse, and show Ford's control of its dealerships. The dealership's depositions went forward on December 21, 2016, and proved critical at trial.

20. At the January 17, 2017 bench trial pertaining to the application of class action tolling, Plaintiff prevailed, but it resulted in an additional year of delay and did not result in any of the efficiencies claimed by Ford.

21. The Court and Ford then wanted a bellwether trial case to move forward. The bellwether trial was set for October, 2017, with pre-trial evidence and motions to be decided on August 31, 2017. Ford failed to appear at the August 31, 2017 hearing.

22. Concurrently, Ford and Plaintiff's counsel engaged in court-ordered private mediation of several 6.0-liter diesel engine cases pending in Orange County complex court. On the first day of mediation, Ford insisted that the bellwether case, *Ferguson v. Ford*– and no other Riverside County cases – be included in the mediation. The bellwether case settled, and Ford then immediately associated in new counsel in every case. Despite Ford's insistence on a bellwether trial (and the resulting delay), Ford clearly did not want one to go forward. In response to Ford's stratagem of settling the bellwether case *immediately before jury trial*, Plaintiff' counsel requested that five cases be next set for trial simultaneously, so that either all those cases would be settled or

at least one could proceed. This matter was the first case.

23. After Ford associated in new counsel, Ford served a settlement offer for $185,000.00 –the *exact same amount* offered and rejected in July of 2016, despite coming after Plaintiff prevailed at the bench trial that Ford insisted would create efficiency and help resolve the case. Again, Ford's offer did not include a single dollar for Plaintiff's CLRA claim, and did not provide for attorney fees under the CLRA. In response, Bryan C. Altman of the Altman Law Group ("TALG") formally associated into the case as lead trial counsel on October 30, 2017.

24. With the January 2018 trial date approaching, Plaintiff's counsel kicked their trial preparation into high gear. Plaintiff's counsel prepared for and conducted the depositions of Ford's expert witnesses and defended the depositions of Plaintiff's expert witnesses. Plaintiff's counsel prepared seventeen motions in limine, proposed jury instructions, trial briefs, jury instructions, verdict forms, and other key trial documents. Plaintiff's counsel also prepared trial exhibits, reviewed important deposition transcripts, began preparing examination outlines, and prepared an opening statement.

25. On January 11, 2018, after its peremptory challenge to Judge Sunshine Sykes was denied, Ford petitioned the Court of Appeal for a writ of mandate and the case was stayed pending a decision. Plaintiff brought in appellate counsel to handle the response to Ford's writ.

26. The jury trial finally commenced on June 11, 2018. After nineteen days of testimony and arguments by counsel, the jury returned with its verdict in favor of Plaintiff on July 18, 2018 for violation of the Song-Beverly Act, violation of the Consumer Legal Remedies Act and common-law Fraud. Specifically, the jury awarded Plaintiff actual damages in the amount of $99,525.02, maximum two-time civil penalties in the amount of $176,427.62, and punitive damages in the amount of $2,500,000.00.

27. On July 19, 2018, Ford filed a motion for mistrial, which was denied.

28. Ford filed a Motion for New Trial and Judgment Notwithstanding the Verdict ("JNOV") on November 29, 2018. Veteran consumer law attorney, Hallen D. Rosner, associated into the case to assist with the post-trial motions and possible appeal by Ford. Following a hearing

on January 3, 2019, the Court denied Ford's Motion for a New Trial, and further denied Ford's Motion for JNOV *except* with respect to the amount of punitive damages. The Court reduced Plaintiff's punitive damages to 1,500,000.00. A true and correct copy of the Judgment on Jury Verdict is attached hereto as **Exhibit D.**

**Ford is a Staunch Defendant That Litigates More Aggressively Than Most Other Vehicle Manufacturers While Deceiving Consumers More Than Most Manufacturers**

29. There are vehicle manufacturers with whom this firm has had exactly zero trials, zero discovery disputes, zero motions to compel, zero fee motions. Ford Motor Company is not one of them. Since 2012, the firm has tried over 55 automotive cases. One case ended in a hung jury and two cases ended in a mistrial. Taking those two matters out, Knight Law and its trial attorneys have a win-loss record of 36 wins and 17 losses. This amounts to nearly a 70% winning percentage in trials. Of those 55 trials, Ford makes up 14 of them. In other words, Ford alone comprises 25% of all of the cases that go to trial. Of the 14 trials prosecuted against Ford, the firm has prevailed in 9 of them.

30. During the course of my years in practice, I have successfully pursued evidence during discovery that has proven damaging to the Ford. For example, Ford was compelled to produce 35,000 pages of training materials from its customer service call center. The production of these documents came only after Ford's representatives claimed for years that no such training materials existed, and perjured themselves in declarations opposing motions to compel. It was only once I flew to Melbourne, Florida to depose Abe Bush, one of Ford's customer service agents, during which he admitted that he had use of training materials. Based on that information, I pursued court orders to compel the materials. Ford's then-counsel of record from Bowman and Brooke (also initial counsel in this case), having denied the existence of training materials in countless declarations, flipped the opposition and claimed "it was a revelation" that the documents existed. Another example is Ford's attempt to conceal documents that it had produced in other class action litigation. Through continuing efforts, Ford was ordered to produce approximately 12,000,000 pages in a class document dump. The firm's attorneys spent countless hours sifting

through these pages. Once certain documents were identified and brought into evidence at trial, Ford amazingly claimed that the documents were not genuine and authentic. As a result, we sought Ford's admission of the genuineness of these documents, which Ford initially denied, but court orders eventually compelled their admission of authenticity. More recently, there was an ongoing feud in which Ford was ordered to produce customer service documents located on what is referred to as the "G: drive," but Ford ignored the order, caused a motion to compel compliance, filed motions for a protective order and a motion for reconsideration, and after almost two years of this battle finally produced the contents of that G: drive.

31. In my experience, Ford's approach to litigation is to fight at every turn, make unacceptably low offers that its attorneys know from their experience are not satisfactory, or make no offers at all, until the trial date for the case is near.

32. While there are a variety of vehicles forming the basis of breach of warranty, CLRA, and fraud claims against Ford, the prosecution of claims by my firm in representation of consumers against Ford in large part involves two particular vehicles with defects. The first is Ford's Super Duty trucks that were sold with a defective diesel engine. The second involves Ford Focus and Fiesta vehicles equipped with a malfunctioning "adaptive automatic transmission." As mentioned to some extent above, the firm's efforts have led to court orders compelling Ford to produce millions of internal documents relating to the defects in these vehicles, such as internal emails, presentations, studies, charts, tables, and graphs. I am not aware of any other firm that has successfully pursued such discovery. Such efforts have led to resounding settlements and victories in trial, though admittedly not every case has ended with a victory for the consumer. In June 2016, one of the firm's trial teams obtained a jury verdict in the amount of $1.68M against Ford on another 6.0l diesel engine vehicle that was purchased for just over $50,000.00 because it was proven by clear and convincing evidence that Ford engaged in fraudulent conduct with malicious, oppressive and/or fraudulent intent.

33. In response to that verdict, Ford ramped up its defense even more. Ford hired several new law firms to assist in its defense. Ford is now represented by the following eleven law firms in lemon law and CLRA actions against my firm:

1) King & Spalding
2) Greenberg Traurig
3) Gordon Rees Scully Mansukhani, LLP
4) Gates, O'Doherty, Gonter & Guy
5) Baker Hostetler LLP
6) Snell & Wilmer, LLP
7) Shook, Hardy & Bacon
8) The Erskine Law Group
9) LeClairRyan
10) Sanders Roberts LLP
11) Dykema Gossett

34. Recently, one of Ford's attorneys, speaking on behalf of the entire army of lawyers, proclaimed that Ford was no longer willing to discuss settlement, did not want to engage in any further mediations and fully intends to bring every case to trial unless our clients accept Ford's existing offers. A true and correct copy of that letter is attached hereto as **Exhibit E.**

35. In the context of discussing resolving a case with another plaintiff's firm, Justin Sanders of Sanders Roberts wrote in an electronic exchange that he is "focused on putting [Steve] Mikhov and [Bryan] Altman out of business!" Mr. Mikhov and Mr. Altman are the managing partners of Plaintiff's counsel's respective law firms.

36. As a result of Ford's resolute defense, attorney fees are incurred during the prosecution of the lawsuit.

**<u>The Attorneys' Hourly Rates Are Reasonable Pursuant to the Lodestar Method in Light of their Experience</u>**

37. I attended law school at Pepperdine University and I was a judicial extern for Judge Gregory W. Alarcon of the Los Angeles County Superior Court in 2002.

38. I have been admitted to the State Bar of California since April 29, 2003. Since my admission to the State Bar of California, I have specialized in consumer law.

39. I have extensive experience prosecuting and resolving consumer protection matters involving motor vehicle claims. For the past fifteen years, I have specialized in breach of warranty and fraud cases against automobile manufacturers and dealers. I was among the attorneys who represented the plaintiff in *Joyce v. Ford Motor Co.* (2011) 198 Cal.App.4th 1478, a leading case which extended the protections of the Lemon Law to trucks based on actual weight, not maximum capacity.

40. I originally worked for one of the largest consumer warranty law firms in the country, Consumer Legal Services. From April 2007 until April 2012, I was a founding partner in Romano, Stancroff & Mikhov PC. I was the Managing Partner of the firm until it was dissolved. In April 2012, I founded O'Connor & Mikhov, LLP. The firm was reformed in 2017 as Knight Law Group, LLP. I am the Managing Partner of the firm. My rate for this case was $550/hour. My billing entries are indicated by the initials "SBM" in the billing statement exhibited to this declaration.

41. Lauren Ungs is a Partner in my office. Ms. Ungs has been employed by the firm since July 12, 2012. Ms. Ungs has been a member of the California bar and actively practicing law for five years. She graduated magna cum laude from Southwestern Law School in 2010. She currently specializes in consumer law, lemon law, and contract law. Ms. Ungs current hourly rate, is $425/hour. Ms. Ungs' entries are indicated by the initials "LAU" in the billing statement exhibited to this declaration.

42. Amy Morse is a Partner in my office. Ms. Morse has been with my firm since her admission to the bar in 2013. Prior to her admission, she was a law clerk with my office since 2012. Ms. Morse graduated from Loyola Law School. Ms. Morse's hourly rate is $350/hour. Ms. Morse's billing entries are indicated by the initials "ALM" in the billing statement exhibited to

this declaration.

43. Daisy Ortiz was an Associate of the law firm for three years from 2012 until August of 2015. Ms. Ortiz graduated from University of California, Davis School of Law and admitted to practice in California in 2012. Ms. Ortiz's hourly rate was $225/hour. Ms. Ortiz primarily undertook the written discovery and meeting and conferring regarding discovery. Ms. Ortiz's billing entries are indicated by the initials "DO" in the billing statement exhibited to this declaration.

44. Kristina Stephenson-Cheang graduated from Western State University College of Law and was admitted to practice in 2008. Ms. Stephenson-Cheang has been employed with the firm since 2013. Prior to her employment at OM Law, she worked for a different lemon law firm gaining valuable experience in this area of law. Ms. Stephenson-Cheang's hourly rate in this matter is $375/hour. Ms. Stephenson-Cheang's billing entries are indicated by the initials "KSC" in the billing statement exhibited to this declaration.

45. George Aguilar is an associate at Knight Law Group, LLP. He received his undergraduate degree from the University of California, Berkeley in 2011, and his law degree from the University of Maryland Carey School of Law in 2014. Mr. Aguilar was admitted to the California Bar in 2015, and spent his first year and a half practicing family law, criminal defense, personal injury and bankruptcy before joining my firm. Mr. Aguilar's hourly billing rate is $275/hour. Mr. Aguilar's billing entries are indicated by the initials "GA" in the billing statement exhibited to this declaration.

46. Constance Morrison is a contract attorney that is very often used by my firm to attend vehicle inspections, defend depositions or attend hearings. Ms. Morrison has 20 years of litigation experience. She graduated from Empire College School of Law and was admitted to practice in 1996. Ms. Morrison's hourly billing rate in this case was $350/hour, and her billing entries are indicated by the initials "CM" in the billing statement exhibited to this declaration.

47. Laura M. Cotter is another contract attorney previously used by of counsel with my firm. She graduated from Trinity Coll University and was later admitted to practice in 2008. Ms.

Cotter's hourly billing rate in this case was $325/hour, and her billing entries are signified by the initials "LC" in the billing statement exhibited to this declaration. Ms. Cotter attended the vehicle inspection.

48. Mark O'Connor has been practicing law for over 25 years. He graduated from Rutgers School of Law in New Jersey in 1989 and immediately took and passed the Pennsylvania and New Jersey Bar exams. He moved to California in 1991 and passed the full California Bar exam. Mr. O'Connor specializes in litigation related to the automobile industry, including motor vehicle design and manufacturing, statistics, warranty processes, dealer requirements and processes, motor vehicle codes, the Federal Motor Vehicle Safety Standards and various other related issues. Mr. O'Connor's rate for this case is $650/hour. Mr. O'Connor's billing entries are indicated by the initials "MOC" in the billing statement attached to this declaration.

49. Russell Higgins is a Senior Associate with the firm and was admitted to practice in 2003. Mr. Higgins graduated from Pepperdine University School of Law and his hourly rate in this matter is $450/hour. Mr. Higgins' billing entries are indicated by the initials "RH" in the billing statement exhibited to this declaration.

50. Chris Swanson is a Senior Associate in my office. Mr. Swanson graduated from UCLA School of Law in 2011 where he distinguished himself academically. Mr. Swanson has been an Associate at my firm since 2014. His prior professional experience includes individual and class action consumer protection law. Mr. Swanson's billing rate at my firm is $375/hour. Mr. Swanson's billing entries are indicated by the initials "CS" in the billing statement exhibited to this declaration.

51. Roger Kirnos is a Partner in my office. Mr. Kirnos graduated from Southwestern Law School in 2009 in the top 10% of his class with cum laude honors. Mr. Kirnos previously was an extern for former Chief Judge Alex Kozinksi of the Ninth Circuit Court of Appeals and an extern for Judge F. Gary Klausner of the United States District Court, Central District. Mr. Kirnos has been trial counsel in over twenty lemon law cases that went to jury verdict, and approximately a dozen more that settled once trial began. The hourly rate for Mr. Kirnos is $425/hour, and his

billing entries are indicated by the initials "RK" in the billing statement exhibited to this declaration.

52. As always, Knight Law attempts to keep attorney fees and costs down while providing vigorous and effective representation.

53. All time billing entries were completed contemporaneously with each dated entry or near in time to the work performed. I have personally reviewed the billing entries to ensure that they appropriately reflect the time expended. I have removed or reduced any time I felt was excessive, duplicative, or otherwise unreasonable, or I have labeled the entry as a "no charge", as identified by the "N/C" in the invoice. My firm **does not bill clients** for secretarial support staff time.

54. While not controlling as to a reasonable rate for a contingent plaintiff attorney, one of Ford's law firms utilized in this matter and related matters charges a blended rate of 450 per hour for all attorneys regardless of experience, including for a fifth-year associate. Ford's counsel has also declared that 450 per hour is either at *or below* the market rate for defense attorneys in both Orange County and San Joaquin County. Attached hereto as **Exhibit G** is a true and correct copy of the declaration of Ford's counsel filed in the matter of *Anderson v. Ford*, San Joaquin County, case number STK-CV-UBC-2013-0007198. Attached hereto as **Exhibit H** is a true and correct copy of the declaration of Ford's counsel from the matter of *Misner v. Ford*, County of Orange, case number 30-2013-00668307-CU-BC-CXC.

**Evidence to Support the Reasonableness of Hourly Rates for Attorneys**

55. I am aware of the hourly rates of other attorneys in California who work in the area of lemon law and consumer law. I bill my time at an hourly rate of $550 per hour. An hourly rate of $550 per hour is reasonable, and consistent with other attorneys who litigate consumer matters and who have a comparable level of experience. A canvas of the community of attorneys who specialize in this area reveals the following hourly rates:

a. Hallen Rosner of Rosner, Barry & Babbit, LLP, San Diego, CA has been practicing law since 1983 and specializes in consumer litigation with

particular attention to auto financing issues. He charges $660 per hour. Survey as of 2019.

b. Michael Lindsey was admitted to the bar in 1993 and has been handling consumer law cases for nearly 15 years in San Diego, California. Mr. Lindsey's hourly rate is $625. Survey as of 2017. His previous rate of $575/hour was recently confirmed as reasonable in *Goglin v. BMW of North America* (2016) 4 Cal.App.5th 462, 473-74.

c. Brian Kemnitzer of Kemnitzer, Anderson, Barron, Ogilvie & Brewer LLP in San Francisco has been handling consumer cases since 1983. Mr. Kemnitzer charges $800 per hour. Survey as of 2016.

d. Robert Brennan of Brennan, Weiner and Associates in La Crescenta, California charges $450 per hour. He has been in practice since 1987. The hourly rate for his associates is $375 per hour. Survey as of 2010.

e. Martin Anderson of The Anderson Law Firm in Santa Ana, California has practiced law since 1995 and charges $395 per hour. Mr. Anderson specializes in Lemon Law matters. Survey as of 2007.

f. Nancy Barros of Kemnitzer, Anderson, Barron, Ogilvie & Brewer LLP in San Francisco, California has been handling consumer cases since 1983. Ms. Barros charges $625 per hour. Survey as of 2016.

g. Mark Romano of Romano, Stancroff in Los Angeles, California has been practicing for 23 years, primarily in consumer litigation. His hourly rate is $400 per hour. Survey as of 2010.

56. On January 10, 2019, Judge Chad Firetag awarded 100% of the requested lodestar attorney fees in the amount of $71,087.50 in the matter of *Virginia Salazar v. FCA US LLC* (Riverside County Superior Court, Case No. RIC1700340). The case settled shortly before trial. All requested hourly rates were granted, including my rate of $550, $375 for Kristina Stephenson-

Cheang, $350 for Amy Morse, and $550 for Michael Rosenstein. A true and correct copy of the signed order is attached hereto as **Exhibit I.**

57. On December 12, 2018, Judge David M. Chapman awarded 100% of the lodestar fees requested by motion in the total amount of $115,718.75 in the matter of *Lawson v. FCA* (Riverside County Superior Court, Case No. PSC1604057). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion that were granted included my current rate of $550 per hour, the rates of $400 to $375 per hour for appearance attorneys Kirk Donnelly and Constance Morrison; $375 per hour for senior associates Christopher Swanson and Kristina Stephenson-Cheang; $350 per hour for partner Amy Morse; and $250 per hour for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit J.**

58. On December 10, 2018, Judge Bryan Foster awarded fees, costs and expenses in the total amount of $48,234.93 in the matter of *Stead v. Ford Motor Company* (San Bernardino County Superior Court, Case No. CIVDS1618876). The rates approved by Judge Foster included rates of $500 per hour for senior attorneys such as myself and Michael Rosenstein; the rate of $375 to $350 per hour for senior associates, appearance attorneys, and partners such as Kristina Stephenson-Cheang, Brian Murray, Constance Morrison, and Amy Morse; and $250 for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit K.**

59. On December 3, 2018, Judge Ronald L. Bauer awarded 100% of requested lodestar attorneys fees and costs in the total amount of $35,793.13 in the matter of *Juan Ibanez vs. FCA US LLC* (Orange County Superior Court, Case No. 30-2016-00858615-CU-BC-CJC). The hourly rates awarded ranged from my rate of $550 for senior-level attorneys such as myself; $450 to $350 for senior associate Joel E. Elkins, senior associate Kristina Stephenson-Cheang, "contract/of counsel" attorney Constance Morrison, and partner Amy Morse; $325 per hour for associate Alastair Hamblin; and $250 to $225 for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit L.**

60. On November 30, 2018, Judge Irma Asberry awarded 85% of the lodestar fees requested by motion in the total amount of $82,779.38 in the matter of *Ricardo Cuevas v. FCA* (Riverside County Superior Court, Case No. RIC1616584). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion that were granted included my current rate of $550 per hour, the rates of $375 to $350 per hour for appearance attorney Constance Morrison, associate Kristina Stephenson-Cheang, and partner Amy Morse; and $275 to $250 per hour for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit M.**

61. On November 28, 2018, Judge Katherine Bacal awarded 92% of the lodestar fees requested by motion in the total amount of $61,461.75 in the matter of *Nisa Carrillo v. FCA* (San Diego County Superior Court, Case No. 37-2017-00014078-CU-BC-CTL). The court found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion that were granted included my current rate of $550 per hour, the rates of $375 to $350 per hour for associate Kristina Stephenson-Cheang and partner Amy Morse, and $225 per hour for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit N.**

62. On November 19, 2018, James Di Cesare awarded 100% of the lodestar fees and costs requested by motion in the total amount of $15,460.60 in the matter of *Ayesha Whitlow v. Ford Motor Company* (Orange County Superior Court, Case No. 30-2016-00882648-CU-BC-CJC). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion that were granted included my current rate of $550 per hour, the rates of $450 to $350 per hour for attorney Russel Higgins and partner Amy Morse, $350 for senior associate Kristina Stephenson-Cheang and attorney Hadi Gerami, and $275 to $250 per hour for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit O.**

63. On November 6, 2018, Judge Mark Borrell awarded 100% of requested lodestar

attorney's fees in the amount of $54,980.00 and full requested costs in the amount of $5,337.63 in the matter of *Lisa Lorraine Buckman, vs. FCA US LLC,* (Ventura County Superior Court, Case No. 56-2016-00490241-CU-BC-VTA). The hourly rates awarded ranged from $550 per hour for senior-level attorneys such as myself; $375 to $350 per hour for attorneys Kristina Stephenson-Cheang and Amy Morse; and $250 to $200 for younger attorneys. The overall award was 100% of the amount requested. A true and correct copy of the signed order is attached hereto as **Exhibit P.**

64. On September 25, 2018, Judge Sunshine Sykes awarded 87% of requested lodestar attorneys fees in the amount of $114,937.50 and also awarded a 1.25 multiplier in the amount of $28,734.38 in the matter of *Kantar vs. FCA US LLC* (Riverside County Superior Court, Case No. RIC1606184). The hourly rates awarded ranged from my rate of $550 per hour to $450 per hour for senior-level attorneys such as myself and Russel Higgins; $425 to $300 for "contract/of counsel" attorneys such as Mary Fersch and Larry Castruita; $375 to $350 per hour for partner Amy Morse and senior associate Kristina Stephenson-Cheang; $275 for associate attorney Deepak Devabose; and $225 per hour for Thomas Burns. A true and correct copy of the signed order is attached hereto as **Exhibit Q.**

65. On September 7, 2018, Judge Joan M. Lewis awarded 100% of requested lodestar attorneys fees in the amount of $69,393.75 and full requested costs and expenses in the amount of $3,819.03 in the matter of *Edralin vs. FCA US LLC* (San Diego County Superior Court, Case No. 37-2016-00020403-CU-BC-CT). The hourly rates awarded ranged from my rate of $550 for senior-level attorneys such as myself; $400 for "contract/of counsel" attorney Kirk Donnelly; $375 to $350 per hour for partner Amy Morse and senior associate Kristina Stephenson-Cheang; and $225 for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit R.**

66. On August 31, 2018, Judge Joel R. Wohlfeil awarded 87% of the lodestar fees requested by motion in the mount of 87,970.00 in the matter of *Duk v. Ford Motor Company* (San Diego County Superior Court, Case No. 37-2016-00012779-CU-BC-CTL). The court found that

Knight Law's hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion included my current rate of $550 per hour; rates between $425 and $350 for partners Roger Kirnos, Lauren Ungs, and Amy Morse; rates between $400 and $375 per hour for contract/of counsel" attorneys Kirk Donnelly and Constance Morrison; and $375 per hour for senior associate Kristina Stephenson-Cheang; and $250 per hour for junior attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit S.**

67. On August 28, 2018, Judge Janet M. Frangie awarded 82% of the fees, costs and expenses requested by motion in the total amount of $9,736.76 in the matter of *Rivas v. Ford Motor Company* (San Bernardino County Superior Court, Case No. CIVDS1711898). The court found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion included my rate of $500 per hour, the rate of $350 per hour for Amy Morse, Hadi Gerami, and Kristina Stephenson-Cheang. A true and correct copy of the signed order is attached hereto as **Exhibit T.**

68. On August 27, 2018, Judge Randall S. Stamen awarded 100% of the lodestar fees requested by motion in the total amount of $88,327.50 in the matter of *Suazo v. FCA* (Riverside County Superior Court, Case No. RIC1607979). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion included my rate at the time of $500 per hour, the rates of $400 to $350 per hour for partners Roger Kirnos and Amy Morse, $350 for senior associates Christopher Swanson and Kristina Stephenson-Cheang, and $275 to $250 per hour for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit U.**

69. On August 17, 2018, Judge Richard Strauss awarded $17,985.00 in lodestar attorney's fees and $1,767.49 in costs and expenses in the matter of *Bugiel vs. Ford Motor Company* (San Diego County Superior Court, Case No. 37-2017-00011741-CU-BC-CTL), which resulted in a settlement that is more than three and a half times the total amount Plaintiff paid for the vehicle. The hourly rates awarded included my billing rate at the time of $500 per hour; $400 to $350 per hour for partners Roger Kirnos and Amy Morse; and $375 to $350 for Senior Associate

Kristina Stephenson-Cheang and contract/"of counsel" attorney Kirk Donnelly. The overall award represents 100% of the amounts of the lodestar attorneys fees and costs requested. A true and correct copy of the signed order is attached hereto as **Exhibit V.**

70. On July 25, 2018, Judge James T. Latting awarded full requested lodestar attorneys fees in the amount of $18,477.50 in attorney's fees and $2,665.15 in costs and expenses in the matter of *Meuse vs. FCA US LLC* (Riverside County Superior Court, Case No. PSC1603210), which resulted in a settlement that is more than double the total amount Plaintiff paid for the vehicle. The hourly rates awarded ranged from $500 for senior-level attorneys such as myself; $350 per hour for attorneys Amy Morse, Constance Morrison, Hadi Gerami, and Kristina Stephenson-Cheang; and $225 for younger attorneys. The overall award represents almost 100% of the amount requested. A true and correct copy of the signed order is attached hereto as **Exhibit W.**

71. On July 17, 2018, Judge David M. Chapman awarded $55,127.50 in attorney's fees based on a request of $60,127.50 and full $7,730.78 in costs and expenses in the matter of *Garrison vs. FCA US LLC* (Riverside County Superior Court, Case No. PSC1605950), which resulted in a settlement that is more than double the total amount Plaintiff paid for the vehicle. The hourly rates awarded ranged from $500 to $490 per hour for senior-level attorneys, including me and trial counsel, Sepehr Daghighian; $350 per hour for attorneys Amy Morse, Constance Morrison, and Kristina Stephenson-Cheang; and $225 to $250 for younger attorneys. The overall award represents 92% of the amount requested. A true and correct copy of the signed order is attached hereto as **Exhibit X.**

72. On July 11, 2018, Judge Mark Borrell awarded full requested lodestar attorneys fees in the amount of $75,557.00 and full costs and expenses in the amount of $8,912.36 in matter of *Paul v. FCA US LLC* (Ventura County Superior Court, Case No. 56-2016-00480745-CU-BC-VTA). Specifically, the Court deemed my hourly rate of $500 per hour reasonable along with trial attorney, Richard Wirtz's hourly rate of $500 per hour as reasonable. Judge Borrell determined that the hourly rates of attorneys ranging from $200 to $400 per hour were reasonable, such as

Partners Amy Morse and Roger Kirnos, and Associates Christopher Swanson, Thomas Burns, Kristina Stephenson-Cheang, and Michelle Lumasag. The attorney fee award represents 100% recovery of the lodestar fees and costs requested by motion in the matter. A true and correct copy of the signed order is attached hereto as **Exhibit Y**.

73. On June 22, 2018, Judge Eddie C. Sturgeon awarded fees, costs, expenses, and a .2 multiplier as requested by motion in the total amount of $25,837.72 in the matter of *Lang v. Ford Motor Company* (San Diego County Superior Court, Case No. 37-2016-00004792-CU-BC-CTL). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion included my rate of $500 per hour, the rate of $400 per hour for Lauren Ungs,$375 per hour for Kirk Donnelly, $350 per hour for Amy Morse, Kristina Stephenson-Cheang, and Hadi Gerami, $325 per hour for Alastair Hamblin, and $250 per hour for Michael Ouziel. A true and correct copy of the signed order is attached hereto as **Exhibit Z.**

74. On June 19, 2018, Judge David M. Chapman granted full lodestar attorney fees, costs and expenses in the amount of $15,148.75 in the matter of *Kortan v. Ford Motor Company* Riverside Superior Court, Case No. PSC1702737), which represented 100% of the fees and costs requested. Judge Chapman granted my rate of $500 per hour, $350 per hour for Amy Morse, $350 per hour for Chris Swanson, $350 per hour for Kristina Stephenson-Cheang, $325 per hour for Alastair Hamblin, and $250 for Hadi Gerami. The final order has yet to be signed but this is an accurate representation of the court's ruling. A true and correct copy of the signed order is attached hereto as **Exhibit AA.**

75. On June 18, 2018, Judge Daniel Ottolia awarded 95% of the requested lodestar fees and full costs and expenses requested by motion in the total amount of $20,503.00 in the matter of *Simmons v. Ford Motor Company* (Riverside County Superior Court, Case No. RIC1610619). The court found that the hourly rates of $350 per hour for Christopher Swanson, Amy Morse, and Kristina Stephenson-Cheang were reasonable for that venue and that the time incurred was reasonable. A true and correct copy of the signed order is attached hereto as **Exhibit BB.**

76. On June 18, 2018, Judge Mark S. Borrell awarded 90% of the requested lodestar fees and full costs and expenses requested by motion in the total amount of $48,786.65 in the matter of *Perez v. FCA US LLC* (Ventura County Superior Court, Case No. 56-2016-00486433-CU-BC-VTA). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue. The rates requested by motion ranged from $500 per hour for senior-level attorneys, including me and trial counsel Michael Rosenstein, the rate of $350 per hour for Chris Swanson, Kristina Stephenson-Cheang, Hadi Gerami and Amy Morse, and $225 per hour for Thomas Burns. A true and correct copy of the signed order is attached hereto as **Exhibit CC.**

77. On June 11, 2018, Judge Randall Stamen awarded $58,709.26 in attorney's fees based on a request of $65,232.50 and full costs of $7,149.84 in costs and expenses in the matter of *Soria vs. FCA US LLC* (Riverside County Superior Court, Case No. RIC1604160). The hourly rates awarded ranged from $500 per hour for senior-level attorneys, such as myself and trial counsel Richard Wirtz; $350 per hour for attorneys Christopher Swanson, Amy Morse, Constance Morrison, and Kristina Stephenson-Cheang; and $275 to $200 per hour for younger attorneys. The overall award represents 90% of the amount requested. A true and correct copy of the signed order is attached hereto as **Exhibit DD.**

78. On June 11, 2018, Judge Stephen D. Schuett awarded 94% of the fees, costs and expenses requested by motion in the total amount of $17,202.32 in the matter of *Christensen v. Ford Motor Company* (Kern County Superior Court, Case No. BCV-16-101927). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion included my rate of $500 per hour, $350 per hour for Amy Morse and Christopher Swanson, and $250 per hour for Michael Ouziel. A true and correct copy of the signed order is attached hereto as **Exhibit EE.**

79. On June 1, 2018, Judge Glenda Sanders awarded full requested lodestar attorney fees in the amount of $98,515 and full costs and expenses in the amount of $8,045.55 in the matter

of *Vargas vs. FCA US LLC* (Orange County Superior Court, Case No. 30-2016-00845431-CU-BC-CJC). The hourly rates awarded ranged from $750 to $500 per hour for senior-level attorneys, such as myself, Mark O'Connor, trial counsel Richard Wirtz, and trial counsel Moses Lebovitz; $400 to $350 per hour for attorneys Roger Kirnos, Amy Morse, Constance Morrison, and Kristina Stephenson-Cheang; and $200 for younger attorney Michelle Lumasag. The overall award represents almost 99% of the amount requested. A true and correct copy of the signed order is attached hereto as **Exhibit FF.**

80. On May 18, 2018, Judge Bryan F. Foster awarded $37,405.00 in attorney fees and full costs and expenses in the matter of *Bahna v. Ford Motor Company* (San Bernardino County Superior Court, Case No. CIVDS 1602141). Specifically, the Court deemed my hourly rate of $500 per hour reasonable along with trial attorney, Sepehr Daghighian's, hourly rate of $400 per hour as reasonable. Judge Feuer determined that the hourly rates of attorneys ranging from $225 to $400 per hour were reasonable, such as Partners Lauren Ungs and Amy Morse (who were Associates at the time), and Associates Russell Higgins, Alastair Hamblin, Kristina Stephenson-Cheang, Daisy Ortiz, etc. Contract/"Of Counsel" attorney Constance Morrison was awarded her hourly rate of $350 for all time expended. The attorney fee award represents 98% recovery of the lodestar fees and costs requested by motion in the matter. A true and correct copy of the signed order is attached hereto as **Exhibit GG**.

81. On April 26, 2018, Judge Peter Wilson awarded 96% of the requested lodestar fees and full costs and expenses requested by motion in the total amount of $73,047.36 in the matter of *Hitomi v. Ford Motor Company* (Orange County Superior Court, Case No. 30-2016-00847294-CU-BC-CJC). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred was reasonable. The rates requested by motion ranged from $500 per hour for senior-level attorneys, including me and trial counsel Richard Wirtz, the rate of $350 per hour for Chris Swanson, $350 per hour for Kristina Stephenson-Cheang, $325 per hour for Alastair Hamblin, and $350 per hour for Amy Morse. A true and correct copy of the signed order is attached hereto as **Exhibit HH.**

82. On March 1, 2018, Judge Barry T. LaBarbera awarded 95% of the requested lodestar fees and full costs and expenses requested by motion in the total amount of $40,771.80 in the matter of *Vasquez v. Ford Motor County* (San Luis Obispo County Superior Court, Case No. 16-CV-0075). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred was reasonable. The rates requested by motion included my rate of $500 per hour, the rate of $400 per hour for Russell Higgins, $375 per hour for Lauren Ungs, $375 per hour for Roger Kirnos, $350 per hour for Amy Morse, each of whom were recently named Partners of the firm, as well as rates of $350 per hour for Kristina Stephenson-Cheang, $250 per hour for Michael Ouizel, and $225 per hour for Deepak Devabose. A true and correct copy of the signed order is attached hereto as **Exhibit II.**

83. On January 5, 2018, Judge Mel Red Recana granted full requested lodestar attorney fees in the amount of $529,885.50 and $96,840.81 in costs and expenses in the matter of *Margeson v. Ford Motor Company* (Los Angeles Superior Court, Case No. BC549430), which represented 100% of the fees and 98% of requested costs and expenses. Judge Recana believed the firm's prowess during the four-week trial that resulted in an unprecedented almost two million dollar jury verdict warranted a 1.8 multiplier of $423,908.40 to be added to the fee award. In particular, the hourly rates awarded ranged from $500 to $650 per hour for senior-level attorneys such as myself, trial counsel Michael Rosenstein, trial counsel Bryan Altman, and Hal Rosner ; $400 to $350 per hour for senior attorneys Russel Higgins, Lauren Ungs, Roger Kirnos, Amy Morse, Kirk Donnelly, Constance Morrison, and Kristina Stephenson-Cheang, and $200 to $300 for younger attorneys. **(Exhibit JJ.)**

84. On November 21, 2017, Judge David R. Lampe presiding in Kern County over the trial in the matter of *Marilyn West v. Hyundai Motor America* (Kern County Superior Court, Case No. BCV-16-100792) awarded 100% of the fees requested based on the same hourly rates requested here for an attorney fee award $169,148.75, plus an additional $16,431.83 in costs and expenses. The plaintiff obtained a jury verdict for treble damages, e.g. maximum civil penalties. Judge Lampe confirmed the rate of $650 per hour for trial attorney Bryan Altman, $500 per hour

for myself and rates ranging from $350 to $400 per hour for Partners and mid-level Associates Russell Higgin, Kristina Stephenson-Cheang and Brian Murray, $450 per hour for Joel Elkins from the Altman Law Group, and $200 to $250 per hour for the lowest billing rate attorneys. The court awarded $350 per hour for attorney/"of counsel," Diane Hernandez. A true and correct copy of the signed order is attached hereto as **Exhibit KK.**

85. On November 17, 2017, Judge Colleen K. Sterne awarded all of the requested $54,400.17 in attorney's fees and costs and expenses in the matter of *Oksana Yudinova vs. Ford Motor Company* (Santa Barbara Superior Court, Case No. 16CV00034). In doing so, the court awarded hourly rates ranging from $500 per hour for senior-level attorneys such as trial counsel, Richard Wirtz and myself, $325 to $400 per hour for mid-level Associates, $325 per hour for Associate Amy Smith from Wirtz Law, $200 to $250 for younger associates, and $175 per hour for paralegals. In total, the fee award represents 100% of the lodestar fee request. A true and correct copy of the signed order is attached hereto as **Exhibit LL.**

86. On September 15, 2017, Judge Kevin A. Enright awarded $199,248.08 in attorney's fees after trial in the matter of *Julie Harris vs. Hyundai Motor America* (San Diego Superior Court, Case No. 37-2015-00019958-CU-BC-CTL). Plaintiff obtained a maximum civil penalty jury verdict at trial. The Court found the hourly rates of Plaintiff's attorneys reasonable, including trial counsel, Bryan Altman's, rate of $650 per hour and my hourly rate of $500 per hour. The court found the hourly rates of $250 to $400 per hour for litigation attorneys, such as Russell Higgins, Lauren Ungs (trial counsel), Chris Swanson, Amy Morse and Michael Ouziel, were reasonable. The court also found that Mr. Altman's associates, Joel Elkins and Jordan Cohen, billed reasonable hourly rates of $450 and $300, respectively. The attorney fee award represents 85% of the lodestar fees requested by motion in the matter. A true and correct copy of the signed order is attached hereto as **Exhibit MM.**

87. On September 8, 2017, Judge Eddie C. Sturgeon awarded $226,845.00 in attorney's fees plus $46,021.71 in costs and expenses after trial in the matter of *John Aspinall vs. Kia Motors America* (San Diego Superior Court, Case No. 37-2015-00002577-CU-BC-CTL). The total award

Case 2:25-cv-04526-MWC-AJR Document 38-1 Filed 07/02/25 Page 256 of 1096 Page ID #:555

amounts to $272,866.71. Plaintiff obtained a maximum civil penalty jury verdict at trial. Specifically, the Court deemed reasonable my hourly rate of $500, as well as trial attorneys, Michael Rosenstein's and Richard Wirtz', hourly rates of $500. He found that the hourly rates of $350 per hour reasonable for Lauren Ungs and a range of $200 to $250 per hour for younger attorneys. He also found that $375 and $350 per hour were reasonable for our contract attorneys, Kirk Donnelly and Constance Morrison. The attorney fee awarded represent 80% of the lodestar fees requested by motion in the matter. A true and correct copy of the signed order is attached hereto as **Exhibit NN.**

88. On August 9, 2017, Judge Craig L. Griffin awarded $59,515.00 in attorney's fees in the matter of *Jose Murillo v. FCA US LLC* (Orange County Superior Court, Case No. 30-2015-00771206-CU-BC-CJC). The Court affirmed the reasonableness of hourly rates requested by motion, specifically my rate of $500 per hour, and rates of $300 to $350 per hour for attorneys such as Lauren Ungs, Chris Swanson, Kristina Stephenson-Cheang, Kevin Van Hout, $400 for Erin Barns from Wirtz Law, and $200 to $250 for young associates. In total, the fee award represented 97% of the lodestar fees requested, with the one reduction being time that we withdrew on our own. A true and correct copy of the signed order is attached hereto as **Exhibit OO.**

89. On May 9, 2017, Judge Sidney P. Chapin in Kern County awarded a total of $296,055.00 in attorney's fees plus $25,651.18 in costs and expenses based on a jury verdict for maximum civil penalties in the matter of *Cofield v. Kia Motors America, Inc.* (Kern County Superior Court, Case No. S-1500-CV-283504). In so doing, Judge Chapin expressly ruled that the requested hourly rates were reasonable, including a rate of $650 per hour for attorney Bryan Altman, $500 per hour for trial attorney Michael Rosenstein, $500 per hour for my rate, $375 per hour for trial attorney Roger Kirnos, and all other requested rates of $200, $225, $300, $325 and $350 per hour as reasonable for Kern County. A true and correct copy of the signed order is attached hereto as **Exhibit PP**.

90. On March 17, 2017, in the matter of *Page v. Kia Motors America, Inc.* (San Diego Superior Court, Case No. 37-2014-00023991-CU-BC-CTL), Judge Eddie C. Sturgeon granted an

award of attorney's fees, costs and expenses in the amount of $271,077.16 in a case in which our clients prevailed at trial. Judge Sturgeon ruled that the hourly rates were reasonable, including trial counsel Bryan Altman's rate of $650/hour and Roger Kirnos' rate of $375/hour. The court found my rate of $500/hour to be reasonable, as well as each of my associates and the associates of Mr. Altman who top out at $450/hour for Joel Elkins. The court's order reflects a 15% across the board reduction on the overall attorney's fees amount but expressly determined the hourly rates were reasonable. A true and correct copy of the signed order is attached hereto as **Exhibit QQ**.

91. I request a multiplier of 1.8 based on my contingent fee, the risk and delay in payment associated with a contingent fee scenario, and the result achieved. Such a multiplier is reasonable and towards the low end under the established law. (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 255.) Plaintiff's attorneys are paid only if Plaintiff prevails, unlike Defendant's attorneys who get paid monthly regardless of the outcome. Moreover, Defendant's attorneys typically have a continuing and ongoing relationship, whereas this firm will most likely not have the opportunity to represent Plaintiff again.

92. It is not uncommon for attorney's fees and costs to exceed the client's damages. The Legislature acknowledged such a circumstance, which is the reason behind the fee shifting provision of the Song-Beverly Act and the CLRA. Otherwise, consumers would be left without opportunity for redress when their damages were not enough for an attorney to take the case on a contingent fee or hourly rate basis. Such a result occurs in large part because of dealerships' or vehicle manufacturers' refusal to adhere to statutory laws protecting consumers, resistance to honoring consumers' complaints, and generally playing games or simply abusing discovery procedures. For example, Ford could have avoided paying any attorney fees whatsoever had it admitted to its wrongdoing early on. Instead, Ford engaged in expensive litigation, and drove up fees and costs by, among other things, filing a Demurrer and Motion to Strike Plaintiff's Complaint, filing a Motion for Protective Order, engaging in extensive discovery, stone-walling Plaintiff's discovery efforts, and holding out for nearly five years of litigation before ultimately reaching a jury trial.

93. Song-Beverly Act and automotive CLRA cases are not simple actions. They require a specialized understanding of the full scope of consumer protection laws, which are highly nuanced. The cases also require knowledge of intricacies of automobiles and a lexicon associated with them, as well as a knowledge concerning how to investigate these matters. They also require knowledge of auto manufacturers' and dealers' protocols for repairing vehicles.

94. Generally speaking, clients of the firm are benefitted by the experience of this firm insofar as work-product from other cases can be used in this case as well. Hence, a substantial amount of time was saved by not needing to draft each document from scratch and little time was needed to "get up to speed" in this specialized area of law. In effect, Ford also benefitted when it comes to a determination of reasonable attorney's fees to be paid because there are numerous cost-saving techniques employed by the firm.

95. Ford itself made this matter more complex by maintaining it had no liability and declining to submit reasonable offers to settle the matter early in the litigation.

96. As shown by the number of cases discussed herein and the positive results achieved on behalf of each client, the hourly rate is reasonable and the number of hours expended are reasonable. The fees incurred in this litigation are the direct result of Ford's own dismissive approach to handling lemon law matters.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 4th day of February 2019, at Los Angeles, California.

STEVE MIKHOV
Declarant

# EXHIBIT H

**KNIGHT LAW GROUP, LLP**
Steve Mikhov (SBN 224676)
10250 Constellation Blvd., Suite 2500
Los Angeles, CA 90067
Telephone: (310) 552-2250
Fax: (310) 552-7973
Email: stevem@knightlaw.com

**THE ALTMAN LAW GROUP**
Bryan C. Altman (SBN 122976)
10250 Constellation Blvd., Suite 2500
Los Angeles, CA 90067
Telephone: (323) 653-5581
Fax: (323) 653-5542
Email: bryan@altmanlawgroup.com

**ROSNER, BARRY & BABBIT, LLP**
Hallen D. Rosner (SBN 109740)
10085 Carroll Canyon Road, 1st Floor
San Diego, CA 92131
Telephone: (858) 348-1005
Fax: (858) 348-1150
Email: hal@rbblawgroup.com

Attorneys for Plaintiffs,
**ROBERT BROWN and**
**VALERIE BROWN**

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF BUTTE**

| | |
|---|---|
| **ROBERT BROWN and VALERIE BROWN,**<br><br>Plaintiffs,<br><br>vs.<br><br>**FORD MOTOR COMPANY, a Delaware Corporation; and DOES 1 through 10, inclusive,**<br><br>Defendants. | Case No: 160060<br><br>**DECLARATION OF STEVE MIKHOV IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**<br><br>[Filed concurrently with Plaintiffs' Notice of Motion and Motion for Attorneys' Fees; Memorandum in Support Thereof; Declarations of Michael H. Rosenstein, Bryan C. Altman and Hallen D. Rosner]<br><br>*Assigned for All Purposes to the Honorable Tamara L. Mosbarger*<br><br>Date: December 21, 2018<br>Time: 9:00 a.m.<br>Dept: 1 |

# DECLARATION OF STEVE MIKHOV

I, Steve Mikhov, declare as follows:

1. I am an attorney at law duly licensed to practice before the courts of the State of California and attorney of record for Plaintiffs Robert Brown and Valerie Brown ("Plaintiffs") in the instant action. I have personal knowledge of the following facts and, if sworn as a witness, I could and would testify to them competently.

2. I make this declaration in support of Plaintiffs' Motion for Attorneys' Fees ("Motion"). For the reasons set forth herein and, in the Motion, Plaintiffs request $608,391.00 in attorneys' fees. This amount is comprised of the legal services provided by Knight Law Group, LLP ("Knight Law") in the amount of $366,892.50, legal services provided by the Law Office of Michael H. Rosenstein, LC ("LOMR") in the amount of $18,970.00, legal services provided by The Altman Law Group ("TALG") in the amount of $181,312.50, and legal services provided by Rosner, Barry & Babbit, LLP ("Rosner") in the amount of $41,216.00. Plaintiffs' attorneys request a reasonable "lodestar" enhancement of 2.2 in the amount of $730,069.20, for a total attorneys' fee award of $1,338,460.20. A true and correct copy of my firm's billing is attached hereto as **Exhibit A**.

3. Plaintiffs purchased a new 2006 Ford F-250 on February 15, 2006 for a purchase price of $43,065.00 – adding taxes and fees, the total purchase price was $49,590.23. The vehicle was distributed by Ford Motor Company ("Defendant" or "Ford"), which provided an express written warranty. A true and correct copy of the Retail Installment Sales Contract is attached hereto as **Exhibit B**.

4. After approximately 2,880 miles of ownership, and within the applicable warranty periods, Plaintiffs began experiencing problems with the vehicle. Specifically, Plaintiffs delivered the truck to a Ford-authorized repair facility for engine repairs on at least four (4) separate occasions because of numerous problems with the engine, including but not limited to the following: the fuel light illuminated, the engine light illuminated and the engine leaked oil. Additionally, Plaintiffs experienced problems with the vehicle's transmission and cooling system.

As a result, Plaintiffs were forced to replace the turbo, clean the EGR cooler and rebuild the transmission, but the problems with the engine persisted.

5. Despite the ongoing repairs and continued manifestation of problems, Ford refused to acknowledge the defective nature of Plaintiffs' vehicle. At all times, however, Ford had direct, contemporaneous knowledge of the vehicle's serious defects, which it records in a database called "OASIS" and a warranty repair history database called "AWS." These repair records indicate each time the vehicle was presented for repair during the warranty period, as well as every time the Ford repair facility found a problem/defect attributable to Ford and billed Ford for the work.

6. Frustrated, concerned for their safety and having lost confidence in Ford's ability to repair the vehicle, Plaintiffs submitted a request for arbitration to the Better Business Bureau on or about May 23, 2013. Plaintiffs' request for arbitration was denied on or about June 28, 2013.

7. With no other available avenue for relief, Plaintiffs contacted Knight Law and told the firm about the problems with the vehicle and the way Ford treated them. After reviewing the repair history and discussions with Plaintiffs, Knight Law agreed to represent them and bear the risk of litigating the case on a fully contingent basis. Because Knight Law's compensation was purely contingent, the firm faced a genuine risk of not being paid for its services for years, if at all, while advancing thousands of dollars in costs and expenses on Plaintiffs' behalf. In taking on this duty, the firm was facing a litigation behemoth—Ford is a multi-billion-dollar company, with a virtually infinite litigation war-chest, that wages a battle of attrition that most firms cannot withstand.

8. As a result of Ford's failure to fix the material defects associated with Plaintiffs' vehicle, or otherwise comply with the Song-Beverly Act, Plaintiffs filed a Complaint in this action on July 24, 2013, followed by a First Amended Complaint on September 27, 2013. Plaintiffs' First Amended Complaint alleged causes of action for Fraud for concealing a known engine defect, and violations of the Consumer Legal Remedies Act ("CLRA") and the Song-Beverly Act, and sought, among other things, civil penalties and punitive damages.

///

9. Ford immediately began its vigorous defense in this case, propounding requests for production of documents and special interrogatories upon Plaintiffs. Plaintiffs benefitted from Knight Law's expertise and experience in litigating against Ford as just 2.6 hours were billed for drafting responses to the entirety of this discovery. Ford also noticed the depositions of Plaintiffs and made a demand for inspection of Plaintiffs' defective vehicle.

10. Defendant's position in the litigation required extensive efforts on the part of Plaintiffs' counsel, and they promptly began working up their case on behalf of Plaintiffs. Written discovery was drafted and served on Defendant on or about October 3, 2013, consisting of 129 requests for admissions, 20 requests for genuineness, 122 requests for production of documents, 113 special interrogatories and 24 form interrogatories. Plaintiffs again benefitted from Knight Law's expertise and experience in litigating against Ford as just 6.4 hours were billed for drafting the entirety of this discovery. Plaintiffs' counsel are able to use existing files as templates to conserve time and litigate efficiently. Written discovery of this magnitude, drafted from scratch and without the benefit of Plaintiffs' attorneys' vast knowledge, experience and specialized expertise, would have taken multitudes of the time expediently managed here.

11. On October 1, 2013, Ford filed both a demurrer and a motion to strike Plaintiffs' First Amended Complaint, both of which were denied. Ford then filed its Answer to Plaintiffs' First Amended Complaint, denying all liability and asserting numerous affirmative defenses, on or about December 23, 2013.

12. Also, in December 2013, Plaintiffs' counsel reviewed, analyzed and annotated Ford's responses to Plaintiffs' discovery. Due to Ford's improper objections and/or incomplete and evasive responses to Plaintiffs' discovery, Plaintiffs began "meet and confer" efforts in February 2014. After the parties reached an impasse, despite Plaintiffs' extensive meet and confer efforts, Ford refused to fully comply with its discovery obligations, leaving Plaintiffs no choice but to file a Motion to Compel. Ford filed its Opposition to Plaintiffs' Motion to Compel, forcing Plaintiffs' counsel to expend additional time drafting their Reply. The parties then attended a hearing on the matter on April 9, 2014, during which Plaintiffs' Motion to Compel was granted.

Plaintiffs were then forced to file a Motion to Compel Ford's compliance with the Court's discovery order in a further effort to obtain adequate responses from Ford. In total, Defendant made a document dump of over *twelve-million* pages of documents, which Plaintiffs were able to efficiently review through numerous cases, achieving extreme efficiency for this matter.

13. Meanwhile, Ford propounded a second and third set of discovery requests upon Plaintiffs, including requests for admissions, requests for production of documents, special interrogatories and form interrogatories. On September 24, 2014, Ford served Plaintiffs with an Offer to Compromise pursuant to the Code of Civil Procedure section 998 ("998 Offer") in the paltry amount of $12,000.00. Needless to say, Plaintiffs rejected the inadequate offer.

14. Plaintiffs' counsel then continued working up the case on behalf of Plaintiffs. In December 2014, Plaintiffs noticed the depositions of several Ford employees and dealership personnel, including Ford's PMK and PMQ, service advisors and service technicians. These depositions were needed to obtain information regarding repairs to the vehicle, authenticate the repair orders, and rebut Ford's anticipated argument that the problems with Plaintiffs' vehicle were somehow caused by Plaintiffs' neglect or abuse. True to form, Ford served objections to all of the noticed depositions.

15. On December 5, 2014, Plaintiffs' counsel prepared for and defended the depositions of Plaintiffs. On December 15, 2014, Plaintiffs' counsel prepared for and attended the Mandatory Settlement Conference.

16. With the absence of any reasonable settlement offer from Ford accounting for its willful violations of the Song-Beverly Act and CLRA, the case appeared likely to go to trial. Accordingly, on or about December 24, 2014, Michael H. Rosenstein formally associated into the case to assist in preparing the case for trial.

17. On March 2, 2015, Ford filed a 406-page Petition for Coordination seeking to coordinate all cases in California involving Ford trucks equipped with the 6.0L diesel engine. As a result, all cases, including this matter, were completely stayed and all trial dates were vacated, causing significant delay and prejudice to those consumers who had been waiting years for their

day in court. (*Id.*) Although Plaintiffs' counsel incurred substantial time to oppose the petition and numerous related interim disputes and ensuing hearings, only a fraction of the total time was billed to this case. (*Id.*) Time entries from March 2015 to July 2015 indicate *de minimus* time allocated amongst multiple cases, showing billing efficiencies. (*Id.*) The presiding court ultimately denied the petition on July 14, 2015 but it took months to get cases like this one reset for trial. (*Id.*) During the stay of all 6.0L engine cases, Plaintiffs' counsel was afforded time to then focus on review of the oft-mentioned 12,000,000 page document dump, which comprise the damaging internal documents. A true and correct copy of Ford's Petition is attached hereto as **Exhibit C**. Notably, Ford's Petition included a list of all 6.0 cases in California (all of which Ford was seeking to coordinate) – Plaintiffs' counsel represented the great majority of the cases. The other law firms consisted of: Premier Legal Center, APC (based in San Diego); Romano Stancroff PC (based in El Segundo); the Law Offices of Todd M. Friedman, PC (based in Beverly Hills); the Law Offices of David J. Farrell (based in Mission Viejo); and the Law Offices of William R. McGee (San Diego). Therefore, every single firm in California handling 6.0 lawsuits in 2014 was based in/near Los Angeles or San Diego.

18. On August 15, 2016, Ford filed a Motion for Summary Adjudication. Plaintiffs filed their Opposition and the parties attended a hearing on the matter on November 18, 2016. After supplemental briefing and two more hearing dates, the Court ultimately denied Ford's Motion for Summary Adjudication except as to the fourth cause of action.

19. Plaintiffs' noticed the deposition of Ford's Person Most Qualified and Custodian of Records on topics raised in Ford's motion. True to form, Ford did not show up at the deposition, did not object, but still refused to produce a witness *on the very topics raised in their motion for summary adjudication*. With no alternative, Plaintiffs filed a motion to compel, and Ford responded by filing a motion for protective order. The parties then attended a hearing on the matter on November 18, 2016, at which time Plaintiffs' Motion to Compel the Deposition Attendance of Ford's PMK was granted, and Ford's motion for protective order was denied.

///

20. In November 2016, Plaintiffs' counsel prepared for and attended the depositions of Ford's dealership personnel. However, due to Ford's continued stonewalling, Plaintiffs were forced to file a Motion to Compel Ford's compliance with the Court's order compelling a PMK deposition, which was granted. Finally, in March and June of 2017, Plaintiffs' counsel conducted depositions of Ford's PMKs.

21. Utilizing the new evidence and authenticated documents gained from Ford's PMK and Custodian of Records, Plaintiffs filed supplemental briefing in opposition to Ford's motion for summary adjudication. At the hearing, the Court's tentative was to grant Ford's motion, but after oral argument the Court reversed its tentative and denied Ford's motion on everything except the fourth cause of action.

22. On September 7, 2017, Ford served Plaintiffs with a Second Offer to Compromise pursuant to the Code of Civil Procedure section 998 ("Second 998 Offer"), in the amount $194,000.00. Plaintiffs rejected the inadequate offer.

23. On March 9, 2018, Plaintiffs' counsel prepared for and attended the Mandatory Settlement Conference. On or about March 12, 2018, Bryan C. Altman of Altman Law formally associated into the case as lead trial counsel. Mr. Altman had recently completed two other similar trials on 6.0L diesel vehicles, obtaining favorable verdicts in both. Associating counsel immediately reviewed the case file and noticed the depositions of Ford's expert witnesses.

24. With the April 16, 2018 trial date approaching, Plaintiffs' counsel kicked their trial preparation into high gear. In March and April 2018, Plaintiffs' counsel prepared for and conducted the depositions of Ford's expert witnesses and defended the depositions of Plaintiffs' expert witnesses. In April 2018, Plaintiffs' counsel drafted numerous trial documents including eighteen (18) Motions in Limine, proposed jury instructions and Plaintiffs' Trial Brief. Plaintiffs' counsel also drafted oppositions to Ford's eighteen (18) Motions in Limine. In further preparation for trial, Plaintiffs' counsel prepared trial exhibits, reviewed deposition transcripts, prepared direct and cross examination outlines, and prepared an opening statement.

///

25. The jury trial commenced on April 16, 2018. After thirteen days of testimony and arguments by counsel, the jury returned with its verdict in favor of Plaintiffs on May 2, 2018 for violation of the Song-Beverly Act, violation of the Consumer Legal Remedies Act and Fraud. Specifically, the jury awarded Plaintiffs actual damages in the amount of $63,188.28, maximum two-time civil penalties in the amount of $126,376.56, and punitive damages in the amount of $7,500,000.00. The Court then entered judgment on the verdict on August 28, 2018 for the total amount of $7,563,188.28.[1] A true and correct copy of the Judgment on Jury Verdict is attached hereto as **Exhibit D**.

26. On or about June 12, 2018, veteran consumer law attorney, Hallen D. Rosner, associated into the case to address the post-trial motions and possible appeal.

27. Ford filed a Motion for New Trial and Judgment Notwithstanding the Verdict ("JNOV") on September 21, 2018. Following a hearing on October 19, 2018, the Court denied Ford's Motion for JNOV. The Court further denied Ford's Motion for a New Trial *except* with respect to the amount of punitive damages.[2] Plaintiffs accepted the remittitur of punitive damages to the amount of $1,895,648.40 on November 8, 2018.

**<u>Ford is a Staunch Defendant That Litigates More Aggressively Than Most Other Vehicle Manufacturers While Deceiving Consumers More Than Most Manufacturers</u>**

28. There are vehicle manufacturers with whom this firm has had exactly zero trials, zero discovery disputes, zero motions to compel, zero fee motions. Ford Motor Company is not one of them. Since 2012, the firm has tried 55 automotive cases. One case ended in a hung jury and two cases ended in a mistrial. Taking those two matters out, Knight Law and its trial attorneys have a win-loss record of 36 wins and 17 losses. This amounts to nearly a 70% winning percentage

---

[1] On July 13, 2018, the parties attended a hearing on the proposed judgment. Following the hearing, the Court found that the civil penalties and punitive damages awarded are based upon the same wrongful conduct and that Plaintiff must elect between the two.

[2] Specifically, the Court found that the ratio of 118:1 between the punitive damages awarded ($7.5 million) and actual damages awarded ($63,188.28) to be disproportionate. Accordingly, the Court conditionally denied Ford's Motion for a New Trial as to punitive damages if an award of $1,895,648.40 (representing a ratio of 30:1) was accepted by Plaintiffs.

in trials. Of those 55 trials, Ford makes up 14 of them. In other words, Ford alone comprises 25% of all of the cases that go to trial. Of the 14 trials prosecuted against Ford, the firm has prevailed in 9 of them.

29. During the course of my years in practice, I have successfully pursued evidence during discovery that has proven damaging to the Ford. For example, Ford was compelled to produce 35,000 pages of training materials from its customer service call center. The production of these documents came only after Ford's representatives claimed for years that no such training materials existed, and perjured themselves in declarations opposing motions to compel. It was only once I flew to Melbourne, Florida to depose Abe Bush, one of Ford's customer service agents, during which he admitted that he had use of training materials. Based on that information, I pursued court orders to compel the materials. Ford's then-counsel of record from Bowman and Brooke (also initial counsel in this case), having denied the existence of training materials in countless declarations, flipped the opposition and claimed "it was a revelation" that the documents existed. Another example is Ford's attempt to conceal documents that it had produced in other class action litigation. Through continuing efforts, Ford was ordered to produce approximately 12,000,000 pages in a class document dump. The firm's attorneys spent countless hours sifting through these pages. Once certain documents were identified and brought into evidence at trial, Ford amazingly claimed that the documents were not genuine and authentic. As a result, we sought Ford's admission of the genuineness of these documents, which Ford initially denied, but court orders eventually compelled their admission of authenticity. More recently, there was an ongoing feud in which Ford was ordered to produce customer service documents located on what is referred to as the "G: drive," but Ford ignored the order, caused a motion to compel compliance, filed motions for a protective order and a motion for reconsideration, and after almost two years of this battle finally produced the contents of that G: drive.

30. In my experience, Ford's approach to litigation is to fight at every turn, make unacceptably low offers that its attorneys know from their experience are not satisfactory, or make no offers at all, until the trial date for the case is near.

31. While there are a variety of vehicles forming the basis of breach of warranty, CLRA, and fraud claims against Ford, the prosecution of claims by my firm in representation of consumers against Ford in large part involves two particular vehicles with defects. The first is Ford's Super Duty trucks that were sold with a defective diesel engine. The second involves Ford Focus and Fiesta vehicles equipped with a malfunctioning "adaptive automatic transmission." As mentioned to some extent above, the firm's efforts have led to court orders compelling Ford to produce millions of internal documents relating to the defects in these vehicles, such as internal emails, presentations, studies, charts, tables, and graphs. I am not aware of any other firm that has successfully pursued such discovery. Such efforts have led to resounding settlements and victories in trial, though admittedly not every case has ended with a victory for the consumer. In June 2016, one of the firm's trial teams obtained a jury verdict in the amount of $1.68M against Ford on another 6.0l diesel engine vehicle that was purchased for just over $50,000.00 because it was proven by clear and convincing evidence that Ford engaged in fraudulent conduct with malicious, oppressive and/or fraudulent intent.

32. In response to that verdict, Ford ramped up its defense even more. Ford hired several new law firms to assist in its defense. Ford is now represented by the following eleven law firms in lemon law and CLRA actions against my firm:

1) King & Spalding
2) Greenberg Traurig
3) Gordon Rees Scully Mansukhani, LLP
4) Gates, O'Doherty, Gonter & Guy
5) Baker Hostetler LLP
6) Snell & Wilmer, LLP
7) Shook, Hardy & Bacon
8) The Erskine Law Group
9) LeClairRyan
10) Sanders Roberts LLP

11) Dykema Gossett

33. Recently, one of Ford's attorneys, speaking on behalf of the entire army of lawyers, proclaimed that Ford was no longer willing to discuss settlement, did not want to engage in any further mediations and fully intends to bring every case to trial unless our clients accept Ford's existing offers. A true and correct copy of that letter is attached hereto as **Exhibit E**.

34. As a result of Ford's resolute defense, attorney fees are incurred during the prosecution of the lawsuit. As stated by one of Ford's attorneys in a declaration in support of a federal court finding federal jurisdiction of a matter based on amount in controversy, "it is not uncommon, and in fact quite regular, for attorney's fee and cost awards (or resolutions through informal discussions with opposing counsel) to exceed $100,000.00." A true and correct copy of the declaration of Spencer Hugret is attached hereto as **Exhibit F, p. 3, ¶ 4**.

**The Attorneys' Hourly Rates Are Reasonable Pursuant to the Lodestar Method in Light of their Experience**

35. I attended law school at Pepperdine University and I was a judicial extern for Judge Gregory W. Alarcon of the Los Angeles County Superior Court in 2002.

36. I have been admitted to the State Bar of California since April 29, 2003. Since my admission to the State Bar of California, I have specialized in consumer law.

37. I have extensive experience prosecuting and resolving consumer protection matters involving motor vehicle claims. For the past fifteen years, I have specialized in breach of warranty and fraud cases against automobile manufacturers and dealers. I was among the attorneys who represented the plaintiff in *Joyce v. Ford Motor Co.* (2011) 198 Cal.App.4th 1478, a leading case which extended the protections of the Lemon Law to trucks based on actual weight, not maximum capacity.

38. I originally worked for one of the largest consumer warranty law firms in the country, Consumer Legal Services. From April 2007 until April 2012, I was a founding partner in Romano, Stancroff & Mikhov PC. I was the Managing Partner of the firm until it was dissolved. In April 2012, I founded O'Connor & Mikhov, LLP. The firm was reformed in 2017 as Knight

Law Group, LLP. I am the Managing Partner of the firm. My rate for this case was $550/hour. My billing entries are indicated by the initials "SBM" in the billing statement exhibited to this declaration.

39. Lauren Ungs is a Partner in my office. Ms. Ungs has been employed by the firm since July 12, 2012. Ms. Ungs has been a member of the California bar and actively practicing law for five years. She graduated magna cum laude from Southwestern Law School in 2010. She currently specializes in consumer law, lemon law, and contract law. Ms. Ungs current hourly rate, now, over five years later, is $425/hour. Ms. Ungs' entries are indicated by the initials "LAU" in the billing statement exhibited to this declaration.

40. Amy Morse is a Partner in my office. Ms. Morse has been with my firm since her admission to the bar in 2013. Prior to her admission, she was a law clerk with my office since 2012. Ms. Morse graduated from Loyola Law School. Ms. Morse's hourly rate is $350/hour. Ms. Morse's billing entries are indicated by the initials "ALM" in the billing statement exhibited to this declaration.

41. Daisy Ortiz was an Associate of the law firm for three years from 2012 until August of 2015. Ms. Ortiz graduated from University of California, Davis School of Law and admitted to practice in California in 2012. Ms. Ortiz's hourly rate was $225/hour. Ms. Ortiz primarily undertook the written discovery and meeting and conferring regarding discovery. Ms. Ortiz's billing entries are indicated by the initials "DO" in the billing statement exhibited to this declaration.

42. Kristina Stephenson-Cheang graduated from Western State University College of Law and was admitted to practice in 2008. Ms. Stephenson-Cheang has been employed with the firm since 2013. Prior to her employment at OM Law, she worked for a different lemon law firm gaining valuable experience in this area of law. Ms. Stephenson-Cheang's hourly rate in this matter is $375/hour. Ms. Stephenson-Cheang's billing entries are indicated by the initials "KSC" in the billing statement exhibited to this declaration.

///

43. Kevin Van Hout was an Associate at my firm during the time he performed work on this matter. Prior to his employment with O'Connor & Mikhov LLP, Mr. Van Hout appeared in federal and state court, handling all matters in small business and consumer bankruptcy cases for a national firm. Mr. Van Hout was first admitted to practice law in the state of Illinois in 2003, was admitted in the state of Indiana in 2005, and was admitted in California in 2010. Mr. Van Hout graduated from University of Illinois College of Law after finishing Northwestern University as an undergraduate. Mr. Van Hout's rate while working at my firm was $300/hour. Mr. Van Hout's billing entries are indicated by the initials "KVH" in the billing statement exhibited to this declaration.

44. George Aguilar is an associate at Knight Law Group, LLP. He received his undergraduate degree from the University of California, Berkeley in 2011, and his law degree from the University of Maryland Carey School of Law in 2014. Mr. Aguilar was admitted to the California Bar in 2015, and spent his first year and a half practicing family law, criminal defense, personal injury and bankruptcy before joining my firm. Mr. Aguilar's hourly billing rate is $275/hour. Mr. Aguilar's billing entries are indicated by the initials "GA" in the billing statement exhibited to this declaration.

45. Janet Manrique was admitted to practice law in 1995. Ms. Manrique is of counsel that the firm regularly uses to make appearances in Northern California, for the purpose of keeping fees and costs down. Ms. Manrique's hourly rate for lemon law work is $375/hour based on her 20 years of experience in litigation. Ms. Manrique's billing entries are indicated by the initials "JSM" in the billing statement exhibited to this declaration.

46. Russell Higgins is a Senior Associate with the firm and was admitted to practice in 2003. Mr. Higgins graduated from Pepperdine University School of Law and his hourly rate in this matter is $450/hour. Mr. Higgins' billing entries are indicated by the initials "RH" in the billing statement exhibited to this declaration.

47. Michael Ouziel was an Associate at my firm. Mr. Ouziel graduated from Washington and Lee University School of Law and was admitted to practice in 2013. Mr. Ouziel

spent approximately his first two years of practice at a Los Angeles based boutique litigation firm and subsequently joined O'Connor & Mikhov, LLP in 2015, where his practice focuses largely on claims involving violations of the Song-Beverly Act. Mr. Ouziel's hourly billing rate was $250/hour. His billing entries are indicated by the initials "MO" in the billing statement exhibited to this declaration.

48. Chris Swanson is a Senior Associate in my office. Mr. Swanson graduated from UCLA School of Law in 2011 where he distinguished himself academically. Mr. Swanson has been an Associate at my firm since 2014. His prior professional experience includes individual and class action consumer protection law. Mr. Swanson's billing rate at my firm is $375/hour. Mr. Swanson's billing entries are indicated by the initials "CS" in the billing statement exhibited to this declaration.

49. Roger Kirnos is a Partner in my office. Mr. Kirnos graduated from Southwestern Law School in 2009 in the top 10% of his class with cum laude honors. Mr. Kirnos previously was an extern for former Chief Judge Alex Kozinksi of the Ninth Circuit Court of Appeals and an extern for Judge F. Gary Klausner of the United States District Court, Central District. Mr. Kirnos has been trial counsel in over twenty lemon law cases that went to jury verdict, and approximately a dozen more that settled once trial began. The hourly rate for Mr. Kirnos is $425/hour, and his billing entries are indicated by the initials "RK" in the billing statement exhibited to this declaration.

50. As always, Knight Law attempts to keep attorney fees and costs down while providing vigorous and effective representation.

51. All time billing entries were completed contemporaneously with each dated entry or near in time to the work performed. I have personally reviewed the billing entries to ensure that they appropriately reflect the time expended. I have removed or reduced any time I felt was excessive, duplicative, or otherwise unreasonable, or I have labeled the entry as a "no charge", as identified by the "N/C" in the invoice. My firm **does not bill clients** for secretarial support staff time.

52. While not controlling as to a reasonable rate for a contingent plaintiff attorney, Ford's lead counsel in this case charges a blended rate of 450 per hour for all attorneys regardless of experience, as demonstrated by a managing partner and a fourth year associate sharing the same billing rate. Ford's counsel has also declared that 450 per hour is either at *or below* the market rate for defense attorneys in San Joaquin, as well as in Orange County. Attached hereto as **Exhibit G** is a true and correct copy of the declaration of Ford's counsel Jeff Scott, filed in the matter of *Anderson v. Ford*, San Joaquin County, case number STK-CV-UBC-2013-0007198.

**Evidence to Support the Reasonableness of Hourly Rates for Attorneys**

53. I am aware of the hourly rates of other attorneys in California who work in the area of lemon law and consumer law. I bill my time at an hourly rate of $550 per hour. An hourly rate of $550 per hour is reasonable, and consistent with other attorneys who litigate consumer matters and who have a comparable level of experience. A canvas of the community of attorneys who specialize in this area reveals the following hourly rates:

a. Hallen Rosner of Rosner, Barry & Babbit, LLP, San Diego, CA has been practicing law since 1983 and specializes in consumer litigation with particular attention to auto financing issues. He charges $640 per hour. Survey as of 2018.

b. Michael Lindsey was admitted to the bar in 1993 and has been handling consumer law cases for nearly 15 years in San Diego, California. Mr. Lindsey's hourly rate is $625. Survey as of 2017. His previous rate of $575/hour was recently confirmed as reasonable in *Goglin v. BMW of North America* (2016) 4 Cal.App.5th 462, 473-74.

c. Brian Kemnitzer of Kemnitzer, Anderson, Barron, Ogilvie & Brewer LLP in San Francisco has been handling consumer cases since 1983. Mr. Kemnitzer charges $800 per hour. Survey as of 2016.

d. Robert Brennan of Brennan, Weiner and Associates in La Crescenta, California charges $450 per hour. He has been in practice since 1987. The

hourly rate for his associates is $375 per hour. Survey as of 2010.

e. Martin Anderson of The Anderson Law Firm in Santa Ana, California has practiced law since 1995 and charges $395 per hour. Mr. Anderson specializes in Lemon Law matters. Survey as of 2007.

f. Nancy Barros of Kemnitzer, Anderson, Barron, Ogilvie & Brewer LLP in San Francisco, California has been handling consumer cases since 1983. Ms. Barros charges $625 per hour. Survey as of 2016.

g. Mark Romano of Romano, Stancroff in Los Angeles, California has been practicing for 23 years, primarily in consumer litigation. His hourly rate is $400 per hour. Survey as of 2010.

54. On October 24, 2018, Judge Kelly L. Neel awarded 100% of requested lodestar attorneys fees in the amount of $189,230.00 and full requested costs and expenses in the amount of $32,079.98 in the matter of *Furber vs. Ford Motor Company* (Humboldt County Superior Court, Case No. DR130223). The case settled right before trial. All requested hourly rates were granted, including my rate of $550; $425 to $350 for partners Lauren Ungs and Amy Morse; $375 to $350 for "contract/of counsel" attorneys Diane Hernandez and Christopher Thoms; $375 to $350 for senior associates Kristina Stephenson-Cheang and Christopher Swanson; and $225 for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit H.**

55. On August 1, 2018, Judge William J. Elfving awarded lodestar attorneys fees in the amount of $12,680.00 in attorney fees and full costs and expenses in the matter of *Silin v. Ford Motor Company* (Santa Clara County Superior Court, Case No. 16CV297442). Specifically, the Court deemed my hourly rate of $500 per hour reasonable. Judge Elfving determined that the hourly rates of attorneys ranging from $350 to $400 per hour were reasonable, such as Partners Roger Kirnos and Amy Morse, and Associates Diane Hernandez, Chris Swanson and Kristina Stephenson-Cheang, and $250 per hour for younger attorneys. Contract/"Of Counsel" attorney Constance Morrison was awarded her hourly rate of $350 for all time expended. The attorney fee award represents 93% recovery of the lodestar fees and costs requested by motion in the matter.

(**Exhibit I**.)

56. On July 17, 2018, Judge Theodore C. Zayner awarded full requested lodestar attorneys of $24,255 $ and $1,728.96 in costs and expenses in the matter of *Lovato vs. Ford Motor Company* (Santa Clara County Superior Court, Case No. 16CV300284), which resulted in a settlement that is more than triple the total amount Plaintiff paid for the vehicle. The hourly rates awarded ranged from $500 per hour for senior-level attorneys such as myself; $350 per hour for attorneys Amy Morse, Christopher Swanson, Hadi Gerami, and Kristina Stephenson-Cheang; and $225 to $250 for younger attorneys such as Deepak Devabose, and Michael Ouziel. The overall award 100% of the amount requested. **(Exhibit J.)**

57. On July 17, 2018, Judge David M. Chapman awarded $55,127.50 in attorney's fees based on a request of $60,127.50 and full $7,730.78 in costs and expenses in the matter of *Garrison vs. FCA US LLC* (Riverside County Superior Court, Case No. PSC1605950), which resulted in a settlement that is more than double the total amount Plaintiff paid for the vehicle. The hourly rates awarded ranged from $500 to $490 per hour for senior-level attorneys, including me and trial counsel, Sepehr Daghighian; $350 per hour for attorneys Amy Morse, Constance Morrison, and Kristina Stephenson-Cheang; and $225 to $250 for younger attorneys. The overall award represents 92% of the amount requested. **(Exhibit K.)**

58. On July 13, 2018, Judge Deirdre Hill awarded full lodestar attorney's fees in the amount of $40,066.25 and full costs and expenses in the amount of $1,723.21 in the matter of *Bell vs. FCA US LLC* (Los Angeles County Superior Court, Case No. BC631014), which resulted in a settlement that consisted of a full buy-back of the subject vehicle, incidental and consequential damages, and civil penalties. The hourly rates awarded ranged from $500 for senior-level attorneys, such as myself and trial counsel, Michael Rosenstein; $400 to $350 per hour for attorneys Russel Higgins and Amy Morse; and $225 to $250 for Thomas Burns ad Hadi Gerami. The overall award represents 100% of the amount requested. The final order has yet to be signed but this is an accurate representation of the court's ruling. **(Exhibit L.)**

///

59. On July 13, 2018, Judge Joan M. Lewis awarded $20,960.00 in lodestar attorney's fees based on a request of $21,565.00, full $1,723.21 in costs and expenses, and a 1.5 multiplier of $10,782.50 in the matter of *Newberry vs. Ford Motor Company* (San Diego County Superior Court, Case No. 37-2016-00031300-CU-BC-CTL), which resulted in a settlement that is more than three times the total amount Plaintiff paid for the vehicle. The hourly rates awarded included my billing rate of $500 per hour; $400 to $350 per hour for partners Roger Kirnos and Amy Morse; and $250 for Michael Ouziel. The overall award represents more than 100% of the amount requested. **(Exhibit M.)**

60. On July 11, 2018, Judge Mark Borrell awarded full requested lodestar attorneys fees in the amount of $75,557.00 and full costs and expenses in the amount of $8,912.36 in matter of *Paul v. FCA US LLC* (Ventura County Superior Court, Case No. 56-2016-00480745-CU-BC-VTA). Specifically, the Court deemed my hourly rate of $500 per hour reasonable along with trial attorney, Richard Wirtz's hourly rate of $500 per hour as reasonable. Judge Borrell determined that the hourly rates of attorneys ranging from $200 to $400 per hour were reasonable, such as Partners Amy Morse and Roger Kirnos, and Associates Christopher Swanson, Thomas Burns, Kristina Stephenson-Cheang, and Michelle Lumasag. The attorney fee award represents 100% recovery of the lodestar fees and costs requested by motion in the matter. (**Exhibit N**.)

61. On June 28, 2018, Judge James Oakley awarded full requested lodestar attorneys fees in the amount of $98,602.50 and full costs and expenses in the amount of $17,878.25 in matter of *Coulombe v. FCA US LLC* (Merced County Superior Court, Case No. 15CV00543). Specifically, the Court deemed my hourly rate of $500 per hour reasonable along with trial attorney, Michael Rosenstein's hourly rate of $500 per hour as reasonable. Judge Oakley determined that the hourly rates of attorneys ranging from $200 to $400 per hour were reasonable, such as Partners Amy Morse and Roger Kirnos, and Associates Christopher Swanson, Deepak Devabose, Kristina Stephenson-Cheang, and Michelle Lumasag, and contract/"Of Counsel" attorney Diane Hernandez was awarded her hourly rate of $350 for all time expended. The attorney fee award represents 100% recovery of the lodestar fees and costs requested by motion in the

matter. (**Exhibit O**.)

62. On June 28, 2018, Judge Donald Proietti awarded full requested lodestar attorneys fees in the amount of $136,550.00, full costs and expenses in the amount of $15,682.73, and a 1.5 multiplier of $ $81,817.50 in matter of *Berriozabal v. FCA US LLC* (Merced County Superior Court, Case No. 15CV00543). Specifically, the Court deemed my hourly rate of $500 per hour reasonable along with trial attorney, Richard Wirtz's hourly rate of $500 per hour as reasonable. Judge Proietti determined that the hourly rates of attorneys ranging from $200 to $400 per hour were reasonable, such as Partners Lauren Ungs, Amy Morse, and Roger Kirnos, and Associates Russell Higgins, Christopher Swanson, Daisy Ortiz, Kevin Van Hout, Stephanie Marshall and contract/"Of Counsel" attorney Diane Hernandez was awarded her hourly rate of $350 for all time expended. The attorney fee award represents more than 100% recovery of the lodestar fees and costs requested by motion in the matter. (**Exhibit P**.)

63. On June 19, 2018, Judge David M. Chapman granted full lodestar attorney fees, costs and expenses in the amount of $15,148.75 in the matter of *Kortan v. Ford Motor Company* Riverside Superior Court, Case No. PSC1702737), which represented 100% of the fees and costs requested. Judge Chapman granted my rate of $500 per hour, $350 per hour for Amy Morse, $350 per hour for Chris Swanson, $350 per hour for Kristina Stephenson-Cheang, $325 per hour for Alastair Hamblin, and $250 for Hadi Gerami. **(Exhibit Q.)**

64. On June 18, 2018, Judge Richard Henderson awarded lodestar attorneys fees in the amount of $168,242.50, costs and expenses in the amount of $26,663.24, and a 1.2 multiplier of $33,648.50 in matter of *Reynolds v. Ford Motor Company* (Sonoma County Superior Court, Case No. SCV-254959). Specifically, the Court deemed a rate of $500 per hour reasonable for senior attorneys like myself and trial attorney, Bryan Altman's hourly rate of $500 per hour as reasonable. The attorney fee award represents more than 100% recovery of the lodestar fees and costs requested by motion in the matter. (**Exhibit R**.)

65. On June 18, 2018, Judge Daniel Ottolia awarded 95% of the requested lodestar fees and full costs and expenses requested by motion in the total amount of $20,503.00 in the matter of

*Simmons v. Ford Motor Company* (Riverside County Superior Court, Case No. RIC1610619). The court indicated it would not consider rates of defense counsel and found that the hourly rates of $350 per hour for Christopher Swanson, Amy Morse, and Kristina Stephenson-Cheang were reasonable for that venue and that the time incurred was reasonable. **(Exhibit S.)**

66. On June 18, 2018, Judge Mark S. Borrell awarded 90% of the requested lodestar fees and full costs and expenses requested by motion in the total amount of $48,786.65 in the matter of *Perez v. FCA US LLC* (Ventura County Superior Court, Case No. 56-2016-00486433-CU-BC-VTA). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue. The rates requested by motion ranged from $500 per hour for senior-level attorneys, including me and trial counsel Michael Rosenstein, the rate of $350 per hour for Chris Swanson, Kristina Stephenson-Cheang, Hadi Gerami and Amy Morse, and $225 per hour for Thomas Burns. **(Exhibit T.)**

67. On June 15, 2018, my firm was awarded a total of $ $68,390.29 in fees, costs, and expenses where Plaintiff's lodestar fee request was $46,322.50 plus costs and expenses of $5,484.04. In making this ruling, Judge Brian McCabe granted a lodestar multiplier 1.5, in the matter of *Morales v. Ford Motor Company* (Merced County Superior Court, Case No. 15CV-03200). Judge McCabe granted the rates requested by motion which ranged from $500 per hour for senior-level attorneys, including me and trial counsel Richard Wirtz and ruled that rates ranging from $400 per hour for Lauren Ungs, Russel Higgins, and Roger Kirnos, $350 per hour for Kristina Stephen-Cheang, contract attorney Diane Hernandez, Christopher Swanson, and Amy Morse, and $250 per hour associates Michael Ouziel and Deepak Devabose. **(Exhibit U.)**

68. On June 11, 2018, Judge Randall Stamen awarded $58,709.26 in attorney's fees based on a request of $65,232.50 and full costs of $7,149.84 in costs and expenses in the matter of *Soria vs. FCA US LLC* (Riverside County Superior Court, Case No. RIC1604160). The hourly rates awarded ranged from $500 per hour for senior-level attorneys, such as myself and trial counsel Richard Wirtz; $350 per hour for attorneys Christopher Swanson, Amy Morse, Constance Morrison, and Kristina Stephenson-Cheang; and $275 to $200 per hour for younger attorneys. The

overall award represents 90% of the amount requested. **(Exhibit V.)**

69. On June 11, 2018, Judge Harold E. Kahn awarded $59,099.26 in attorney's fees based on a request of $70,883.75 and $5,706.91 in costs and expenses and a .05 multiplier in the matter of *Barrera vs. FCA US LLC* (San Francisco County Superior Court, Case No. 16-551433). The hourly rates awarded ranged from $500 per hour for senior-level attorneys, including me and trial counsel, Michael Rosenstein; $400 to $350 per hour for attorneys Roger Kirnos, Amy Morse, Diane Hernandez, and Kristina Stephenson-Cheang; and $200 to $250 for younger attorneys. The overall award represents 84% of the amount requested. The final order has yet to be signed but this is an accurate representation of the court's ruling. **(Exhibit W.)**

70. On June 1, 2018, Judge Glenda Sanders awarded full requested lodestar attorney fees in the amount of $98,515 and full costs and expenses in the amount of $8,045.55 in the matter of *Vargas vs. FCA US LLC* (Orange County Superior Court, Case No. 30-2016-00845431-CU-BC-CJC). The hourly rates awarded ranged from $750 to $500 per hour for senior-level attorneys, such as myself, Mark O'Connor, trial counsel Richard Wirtz, and trial counsel Moses Lebovitz; $400 to $350 per hour for attorneys Roger Kirnos, Amy Morse, Constance Morrison, and Kristina Stephenson-Cheang; and $200 for younger attorney Michelle Lumasag. The overall award represents almost 99% of the amount requested. **(Exhibit X.)**

71. On May 18, 2018, Judge Bryan F. Foster awarded $37,405.00 in attorney fees and full costs and expenses in the matter of *Bahna v. Ford Motor Company* (San Bernardino County Superior Court, Case No. CIVDS 1602141). Specifically, the Court deemed my hourly rate of $500 per hour reasonable along with trial attorney, Sepehr Daghighian's, hourly rate of $400 per hour as reasonable. Judge Feuer determined that the hourly rates of attorneys ranging from $225 to $400 per hour were reasonable, such as Partners Lauren Ungs and Amy Morse (who were Associates at the time), and Associates Russell Higgins, Alastair Hamblin, Kristina Stephenson-Cheang, Daisy Ortiz, etc. Contract/"Of Counsel" attorney Constance Morrison was awarded her hourly rate of $350 for all time expended. The attorney fee award represents 98% recovery of the lodestar fees and costs requested by motion in the matter. (**Exhibit Y**.)

72. On May 11, 2018, Judge Susan J. Matcham awarded full lodestar attorney fees of $22,015.68 and full costs and expenses in the matter of *Gomes v. Ford Motor Company* (Monterey County Superior Court, Case No. 16CV002793). Specifically, the Court deemed my hourly rate of $500 per hour as reasonable. Judge Matcham also determined that the hourly rates of attorneys ranging from $225 to $400 per hour were reasonable, such as Partners Lauren Ungs and Amy Morse (who were Associates at the time), and Associates Christopher Swanson, Michael Ouziel, Kristina Stephenson-Cheang, and Stephanie Reimer. Contract/"Of Counsel" attorney Diane Hernandez was awarded her hourly rate of $350 for all time expended. The attorney fee award represents 100% recovery of the lodestar fees and costs requested by motion in the matter. The final order has yet to be signed but this is an accurate representation of the court's ruling. (**Exhibit Z.**)

73. On April 26, 2018, Judge Peter Wilson awarded 96% of the requested lodestar fees and full costs and expenses requested by motion in the total amount of $73,047.36 in the matter of *Hitomi v. Ford Motor Company* (Orange County Superior Court, Case No. 30-2016-00847294-CU-BC-CJC). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred was reasonable. The rates requested by motion ranged from $500 per hour for senior-level attorneys, including me and trial counsel Richard Wirtz, the rate of $350 per hour for Chris Swanson, $350 per hour for Kristina Stephenson-Cheang, $325 per hour for Alastair Hamblin, $350 per hour for Amy Morse, as well as rates of $225 per hour for Jennifer Reiz, $250 per hour for Michael Ouizel, and $225 per hour for Daniel Kalinowski. **(Exhibit AA.)**

74. On March 1, 2018, Judge Barry T. LaBarbera awarded 95% of the requested lodestar fees and full costs and expenses requested by motion in the total amount of $40,771.80 in the matter of *Vasquez v. Ford Motor County* (San Luis Obispo County Superior Court, Case No. 16-CV-0075). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred was reasonable. The rates requested by motion included my rate of $500 per hour, the rate of $400 per hour for Russell

Higgins, $375 per hour for Lauren Ungs, $375 per hour for Roger Kirnos, $350 per hour for Amy Morse, each of whom were recently named Partners of the firm, as well as rates of $350 per hour for Kristina Stephenson-Cheang, $250 per hour for Michael Ouizel, and $225 per hour for Deepak Devabose. **(Exhibit BB.)**

75. On February 27, 2018, Judge Richard H. Dubois awarded $23,812.50 in attorney's fees based on a request of $26,887.50 and full $1,287.26 in costs and expenses in the matter of *Vidal vs. Ford Motor Company* (San Mateo County Superior Court, Case No. CIV537352), which resulted in a settlement that is more than three and a half times the total amount Plaintiff paid for the vehicle. The hourly rates awarded ranged from $500 per hour for myself; $375 to $325 per hour for attorneys Roger Kirnos, Lauren Ungs, Chris Swanson, Amy Morse, Alistair Hamblin, and Kristina Stephenson-Cheang; and $250 to $225 for younger attorneys. The overall award represents almost 90% of the amount requested. **(Exhibit CC.)**

76. On February 23, 2018, Judge John P. Doyle awarded $63,705.38 in attorney's fees based on a request of $70,783.75 and full $8,560.21 in costs and expenses in the matter of *Aandahl vs. FCA US LLC* (Los Angeles County Superior Court, Case No. BC620824), which resulted in a settlement that is more than double the total amount Plaintiff paid for the vehicle. The hourly rates awarded ranged from $500 per hour for senior-level attorneys, including me and trial counsel, Michael Rosenstein; $400 to $350 per hour for attorneys Russel Higgins, Lauren Ungs, Chris Swanson, Amy Morse, Constance Morrison, Kristina Stephenson-Cheang, $200 to $275 for younger attorneys. The overall award represents 90% of the amount requested. The final order has yet to be signed but this is an accurate representation of the court's ruling. **(Exhibit DD.)**

77. On January 5, 2018, Judge Mel Red Recana granted full requested lodestar attorney fees in the amount of $529,885.50 and $96,840.81 in costs and expenses in the matter of *Margeson v. Ford Motor Company* (Los Angeles Superior Court, Case No. BC549430), which represented 100% of the fees and 98% of requested costs and expenses. Judge Recana believed the firm's prowess during the four-week trial that resulted in an unprecedented almost two million dollar jury verdict warranted a 1.8 multiplier of $423,908.40 to be added to the fee award. In particular, the

hourly rates awarded ranged from $500 to $650 per hour for senior-level attorneys such as myself, trial counsel Michael Rosenstein, trial counsel Bryan Altman, and Hal Rosner ; $400 to $350 per hour for senior attorneys Russel Higgins, Lauren Ungs, Roger Kirnos, Amy Morse, Kirk Donnelly, Constance Morrison, and Kristina Stephenson-Cheang, and $200 to $300 for younger attorneys. **(Exhibit EE.)**

78. On January 8, 2018, Judge Kent M. Kellegrew awarded 100% of the fees, costs and expenses requested by motion in the total amount of $26,065.90 in the matter of *Allem v. FCA* (Ventura County Superior Court, Case No. 56-2015-00468707). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion included my rate of $500 per hour, the rate of $400 per hour for Russell Higgins, $350 per hour for Lauren Ungs, $250 per hour for Amy Morse, each of whom were recently named Partners of the firm, as well as rates of $325 per hour for Chris Swanson, $350 per hour for Kristina Stephenson-Cheang, and $200 per hour for Deepak Devabose. The final order has yet to be signed but this is an accurate representation of the court's ruling. **(Exhibit FF.)**

79. On December 11, 2017, Judge Melinda M. Reed awarded $151,780.00 in attorney's fees based on a request of $155,330.00 and $42,060.45 in costs and expenses after trial in the matter of *Dominic Teran vs. FCA US LLC* (Tulare County Superior Court, Case No. 265860), which resulted in a maximum possible statutory award of three times the price of the vehicle. The hourly rates awarded ranged from $500 per hour for senior-level attorneys, including me and trial counsel, Rich Wirtz; $325 to $400 per hour for attorneys Russel Higgins, Lauren Ungs and Chris Swanson, $200 to $250 for younger attorneys; and for attorneys from Wirtz Law $325 per hour for Amy Smith, $250 per hour for Jessica Underwood and Lauren Saab, and $175 per hour for paralegals. The overall award amounts to $193,840.45 in the fees, costs and expenses, which represents 98% of the amount requested. The final order has yet to be signed but this is an accurate representation of the court's award. **(Exhibit GG.)**

///

80. On November 21, 2017, Judge David R. Lampe presiding in Kern County over the trial in the matter of *Marilyn West v. Hyundai Motor America* (Kern County Superior Court, Case No. BCV-16-100792) awarded 100% of the fees requested based on the same hourly rates requested here for an attorney fee award $169,148.75, plus an additional $16,431.83 in costs and expenses. The plaintiff obtained a jury verdict for treble damages, e.g. maximum civil penalties. Judge Lampe confirmed the rate of $650 per hour for trial attorney Bryan Altman, $500 per hour for myself and rates ranging from $350 to $400 per hour for Partners and mid-level Associates Russell Higgin, Kristina Stephenson-Cheang and Brian Murray, $450 per hour for Joel Elkins from the Altman Law Group, and $200 to $250 per hour for the lowest billing rate attorneys. The court awarded $350 per hour for attorney/"of counsel," Diane Hernandez. **(Exhibit HH.)**

81. On November 17, 2017, Judge Colleen K. Sterne awarded all of the requested $54,400.17 in attorney's fees and costs and expenses in the matter of *Oksana Yudinova vs. Ford Motor Company* (Santa Barbara Superior Court, Case No. 16CV00034). In doing so, the court awarded hourly rates ranging from $500 per hour for senior-level attorneys such as trial counsel, Richard Wirtz and myself, $325 to $400 per hour for mid-level Associates, $325 per hour for Associate Amy Smith from Wirtz Law, $200 to $250 for younger associates, and $175 per hour for paralegals. In total, the fee award represents 100% of the lodestar fee request. The final order has yet to be signed but this is an accurate representation of the court's award. **(Exhibit II.)**

82. On October 31, 2017, Judge Elizabeth R. Feffer granted attorney fees, costs and expenses in the amount of $43,527.50 in the matter of *Jesus Montes v. Ford Motor Company* (Los Angeles Superior Court, Case No. BC617619), which represented 100% of the fees and costs requested. Judge Feffer granted rates from $750 per hour for trial counsel Moses Lebovits, my rate of $500 per hour, $400 per hour for Senior Associate Russell Higgins, $325 to $350 per hour for Associates Chris Swanson and Kristina Stephenson-Cheang, $350 per hour for Mr. Lebovits' associates, Ashley Arnett and Mary Fersch, $250 per hour for then-associate, now-Partner Amy Morse. **(Exhibit JJ.)**

///

83. On October 11, 2017, Judge Elizabeth R. Feffer awarded 98% of the attorney fees requested by motion in the matter of *Sergio Lopez v. Ford Motor Company* (Los Angeles County, Case No. 585892) in the amount of $108,750.00, with the one reduction stemming from my firm's own withdrawal of time that was unreasonable. Judge Feffer reviewed the following hourly rates and determined them to be reasonable: $500 per hour for attorneys Steve Mikhov and Richard Wirtz, $400 per hour for attorney Russel Higgins, $300 - $350 per hour for attorneys Alistair Hamblin, Constance Morrison, Kristina Stephenson-Cheang, Amy Smith and Erin Barns, and $250 per hour for Amy Morse and Lauren Sabb. **(Exhibit KK.)**

84. On September 20, 2017, Judge Gail R. Feuer awarded $227,228.00 in attorney fees and $31,712.55 in costs and expenses in the matter of *Anita Longin vs. Ford Motor Company* (Los Angeles Superior Court, Case No. BC564186). Specifically, the Court deemed my hourly rate of $500 per hour reasonable along with trial attorney, Sepehr Daghighian's, hourly rate of $400 per hour as reasonable. Judge Feuer determined that the hourly rates of attorneys ranging from $225 to $400 per hour were reasonable, such as Partners Lauren Ungs and Amy Morse (who were Associates at the time), and Associates Russell Higgins, Alastair Hamblin, Kristina Stephenson-Cheang, Daisy Ortiz, etc. Contract/"Of Counsel" attorney Constance Morrison was awarded her hourly rate of $350 for all time expended. The attorney fee award represents 98% recovery of the lodestar fees and costs requested by motion in the matter. (**Exhibit LL.**)

85. On September 15, 2017, Judge Kevin A. Enright awarded $199,248.08 in attorney's fees after trial in the matter of *Julie Harris vs. Hyundai Motor America* (San Diego Superior Court, Case No. 37-2015-00019958-CU-BC-CTL). Plaintiff obtained a maximum civil penalty jury verdict at trial. The Court found the hourly rates of Plaintiff's attorneys reasonable, including trial counsel, Bryan Altman's, rate of $650 per hour and my hourly rate of $500 per hour. The court found the hourly rates of $250 to $400 per hour for litigation attorneys, such as Russell Higgins, Lauren Ungs (trial counsel), Chris Swanson, Amy Morse and Michael Ouziel, were reasonable. The court also found that Mr. Altman's associates, Joel Elkins and Jordan Cohen, billed reasonable hourly rates of $450 and $300, respectively. The attorney fee award represents 85% of the lodestar

fees requested by motion in the matter. (**Exhibit MM**.)

86. On September 8, 2017, Judge Eddie C. Sturgeon awarded $226,845.00 in attorney's fees plus $46,021.71 in costs and expenses after trial in the matter of *John Aspinall vs. Kia Motors America* (San Diego Superior Court, Case No. 37-2015-00002577-CU-BC-CTL). The total award amounts to $272,866.71. Plaintiff obtained a maximum civil penalty jury verdict at trial. Specifically, the Court deemed reasonable my hourly rate of $500, as well as trial attorneys, Michael Rosenstein's and Richard Wirtz', hourly rates of $500. He found that the hourly rates of $350 per hour reasonable for Lauren Ungs and a range of $200 to $250 per hour for younger attorneys. He also found that $375 and $350 per hour were reasonable for our contract attorneys, Kirk Donnelly and Constance Morrison. The attorney fee awarded represent 80% of the lodestar fees requested by motion in the matter. (**Exhibit NN**.)

87. On August 9, 2017, Judge Sandra K. Bean awarded $94,112.50 in attorney's fees plus $11,484.05 in costs and expenses in the matter of *Tanya Bravo v. FCA US LLC* (Alameda Superior Court, Case No. RG15757477), which represented 100% of the amount requested by motion. The Court affirmed the hourly rates of attorneys, including the hourly rate of trial counsel of $650 for Bryan Altman, my hourly rate of $500, and associate rates ranging from $225 to $375 per hour. In total, the fee award represented 100% of the lodestar fees requested. (**Exhibit OO**.)

88. On August 9, 2017, Judge Craig L. Griffin awarded $59,515.00 in attorney's fees in the matter of *Jose Murillo v. FCA US LLC* (Orange County Superior Court, Case No. 30-2015-00771206-CU-BC-CJC). The Court affirmed the reasonableness of hourly rates requested by motion, specifically my rate of $500 per hour, and rates of $300 to $350 per hour for attorneys such as Lauren Ungs, Chris Swanson, Kristina Stephenson-Cheang, Kevin Van Hout, $400 for Erin Barns from Wirtz Law, and $200 to $250 for young associates. In total, the fee award represented 97% of the lodestar fees requested, with the one reduction being time that we withdrew on our own. (**Exhibit PP**.)

89. On June 19, 2017, Judge Michael J. Raphael awarded $116,872.50 in attorney's fees after trial in the matter of *Bellamy v. Mercedes Benz USA LLC* (Los Angeles Superior Court,

Case No. BC597233). Plaintiff obtained a maximum treble damages jury verdict. The Court affirmed the hourly rates of the attorneys, including Moses Lebovits' rate of $750 per hour, my rate of $500 per hour and mid-level and young associates ranging from $250 to $400 per hour, as well as Attorney Ashley Arnett at $350 per hour. The court made reductions to some time entries and the fee award represents 84% of the lodestar fees requested. (**Exhibit QQ**.)

90. On May 26, 2017, my firm sought $97,221.25 in fees and $4,282.35 in costs and expenses in the matter of *Pumphrey v. Ford Motor Company* (Riverside Superior Court, Case No. RIC1400402). The Court ordered the parties to meet and confer and Ford accepted a 10% reduction of fees, and Judge Gloria C. Trask issued an order for a fee and cost award for a total of $92,000.00. (**Exhibit RR**.)

91. On May 24, 2017, Judge Howard L. Halm awarded $168,000.00 in attorney's fees and $27,257.19 in costs and expenses in a jury trial that resulted in a maximum civil penalty award for our client in the matter of *Gomez v. Kia Motors America, Inc.* (Los Angeles County Superior Court, Case No. BC 574493). The attorney fee award represents 81% of the lodestar fees requested by motion in the matter. The court reduced the number of hours for various billing entries. The court also reduced Attorneys Bryan Altman and Joel Elkins from $650 per hour and $450 per hour down to $550 per hour and $375 per hour, respectively. The court found my hourly rate of $500 to be reasonable as well as those of other attorneys in my office ranging from $225 per hour for Daisy Ortiz to $350 per hour for Lauren Ungs and Kristina Stephenson-Cheang to $400 per hour for Russell Higgins. The court, on its own, *raised* the rate of trial attorney Roger Kirnos from the requested $375 per hour to $475 per hour. **(Exhibit SS.)**

92. On May 9, 2017, Judge Sidney P. Chapin in Kern County awarded a total of $296,055.00 in attorney's fees plus $25,651.18 in costs and expenses based on a jury verdict for maximum civil penalties in the matter of *Cofield v. Kia Motors America, Inc.* (Kern County Superior Court, Case No. S-1500-CV-283504). In so doing, Judge Chapin expressly ruled that the requested hourly rates were reasonable, including a rate of $650 per hour for attorney Bryan Altman, $500 per hour for trial attorney Michael Rosenstein, $500 per hour for my rate, $375 per

hour for trial attorney Roger Kirnos, and all other requested rates of $200, $225, $300, $325 and $350 per hour as reasonable for Kern County. (**Exhibit TT**.)

93. On March 24, 2017, my firm was awarded a total of $64,138.00 in fees, costs, and expenses where Plaintiff's lodestar fee request was $43,417.50 plus costs and expenses of $5,503.04. In making this ruling, Judge Thomas W. Wills granted a lodestar multiplier 1.5, in the matter of *Herrera v. Chrysler* (Monterey County Superior Court, Case No. M126216). The court reduced the two top billing attorneys' rates that were at $500 per hour down to $450 per hour and ruled that all other rates, including rates for Roger Kirnos at $375 per hour, the rate of $350 per hour for Lauren Ungs, Kristina Stephen-Cheang and contract attorney, Diane Hernandez, $400 per hour for Russell Higgins, and junior attorney rates for $225 to $250 per hour. Judge Wills found that the work performed and the time incurred for that work was reasonable and did not make any reductions. (**Exhibit UU**.)

94. On March 15, 2017, Judge Susan Bryant-Deason awarded $113,398.46 in fees, costs and expenses in the matter of *Andrino v. Kia* (Los Angeles County Superior Court, Case No. BC596210), which settled on the first day of trial. The court's award represents approximately 10% reduction of the fees requested by motion. (**Exhibit VV**.)

95. On March 17, 2017, in the matter of *Page v. Kia Motors America, Inc.* (San Diego Superior Court, Case No. 37-2014-00023991-CU-BC-CTL), Judge Eddie C. Sturgeon granted an award of attorney's fees, costs and expenses in the amount of $271,077.16 in a case in which our clients prevailed at trial. Judge Sturgeon ruled that the hourly rates were reasonable, including trial counsel Bryan Altman's rate of $650/hour and Roger Kirnos' rate of $375/hour. The court found my rate of $500/hour to be reasonable, as well as each of my associates and the associates of Mr. Altman who top out at $450/hour for Joel Elkins. The court's order reflects a 15% across the board reduction on the overall attorney's fees amount but expressly determined the hourly rates were reasonable. (**Exhibit WW**.)

96. On February 28, 2017, Judge Ernest M. Hiroshige in Los Angeles County Superior Court awarded 100% of the requested fees in the matter of *Dorfman v. BMW of North America,*

*LLC* (Los Angeles Superior Court, Case No. BC538183) for a total attorney fee award (not including costs) of $47,732.50. Therefore, the court confirmed the reasonableness of the time expended as well as the reasonableness of the hourly rates requested, which were $500 for my rate and the rate of senior trial counsel, Rich Wirtz, $300 to $350 per hour for middle level attorneys such as Lauren Ungs, Kristina Stephenson-Cheang, Kevin Van Hout, and contract attorney/"of counsel" Constance Morrison, and $200 to $250 per hour for the younger associates, such as Daisy Ortiz, Amy Morse, Stephanie Marshall and Michael Ouziel. (**Exhibit XX**.)

97. On December 5, 2016, Judge Colleen K. Sterne in Santa Barbara ruled that the hourly rates and the amount of the work performed were both reasonable, and granted 150% of the firm's lodestar fee request in the matter of *Holzer v Ford Motor Company* (Santa Barbara County Superior Court, Case No. 15CV02771). The court granted a multiplier of 1.5, for a total award of fees, costs and expenses in the amount of $143,301.69. The court found the hourly rates of my firm ranging from $500 per hour for my rate to $250 per hour for the lowest billing attorneys were reasonable. The court also found that trial counsel, Sepehr Daghighian's, hourly rate of $400 per hour was reasonable. (**Exhibit YY**.)

98. On November 2, 2016, Judge Barbara A. Meiers in Los Angeles County Superior Court awarded 100% of the requested fees and costs in the matter of *Carter v. Chrysler Group LLC* (Los Angeles Superior Court, Case No. BC495228) resulting in a total award of fees, costs and expenses in the amount of $41,466.22. The award reflects a finding that the hourly rate of $500 per hour is reasonable for myself and senior trial attorney, Michael Rosenstein, as well as $350 for attorneys Roger Kirnos, Lauren Ungs and Chris Swanson. (**Exhibit ZZ**.)

99. On August 25, 2016, Judge Elizabeth A. White awarded 100% of the requested lodestar attorney fees and costs and expenses in the total sum of $84,210.90 in the matter of *Mansur v. Chrysler Group, LLC* (Los Angeles County Superior Court, Case No. BC539866). Judge White expressly approved hourly rates ranging from $600 per hour for trial counsel, Mark O'Connor, to my rate of $500 per hour to $325 - $350 per hour for mid-level attorneys such as Lauren Ungs, Chris Swanson, Shawna Melton and Kristina Stephenson-Cheang. (**Exhibit AAA.**)

100. On August 22, 2016, in the matter of *Kebodeaoux v. Mercedes-Benz* (Los Angeles Superior Court, Case No. BC552037), Judge Marc R. Marmaro granted an award of attorney's fees, costs and expenses in the amount of $203,247.39 in a case in which our clients prevailed at trial with an award of civil penalties. In so doing, the court took a 15% reduction on the overall amount but expressly considered and granted hourly rates for trial counsel Mark O'Connor at $600 per hour, my rate at $500 per hour, mid-level attorney rates of $300 to $350 per hour and lower billing attorney rates of $225 to $250 per hour. (**Exhibit BBB**.)

101. Also on August 22, 2016, Judge John T. Doyle ruled that the hourly rates were reasonable and likewise ruled the work performed in that case was also reasonable. He also awarded 100% of the requested lodestar fees and costs in the case entitled *Baca v. Chrysler Group, LLC* (Los Angeles Superior Court, Case No. BC566511). The court ruled that the time entries were reasonable as well as the hourly rates were reasonable, including the rate of $500 per hour for myself and senior trial counsel, Michael Rosenstein, $300 to $350 per hour for attorneys Lauren Ungs, Roger Kirnos, Chris Swanson, Kevin Van Hout and Constance Morrison, and $200 to $250 per hour for attorneys Stephanie Marshall, Michael Ouziel, Daisy Ortiz and Amy Morse. (**Exhibit CCC.**)

102. On August 2, 2016, Judge Teresa A. Beaudette awarded 100% of the requested fees, costs and expenses in the matter of *Lepe v. Chrysler Group, LLC* (Los Angeles Superior Court, Case No. BC556273) for a total of $74,712.10. Judge Beaudette determined the requested hourly rates were reasonable and found that the work performed in the matter was reasonable. The requested rates ranged from $650 per hour for trial counsel, Bryan Altman, to $500 per hour for my rate, to $450 per hour for senior attorney, Joel Elkins, to $200 to $350 per hour for associates ranging from 1 year to 5 years of legal experience in California. (**Exhibit DDD.**)

103. On June 6, 2016, Judge Michael Johnson expressly confirmed the reasonableness of each of the hourly rates and awarded 90% of the attorneys' lodestar fees in the amount of $50,541.00, in addition to $2,634.80 in costs, in the case of *Perez v. Chrysler Group LLC* (Los Angeles Superior Court, Case No. BC528217.) The court ruled that my rate of $500 per hour was

reasonable, trial counsel Michael Rosenstein's rate of $450 per hour was reasonable, rates of $300 to $350 per hour for attorneys Lauren Ungs, Roger Kirnos, Kevin Van Hout, Kristina Stephenson-Cheang were reasonable, and the rate of $375 per hour was reasonable for attorney Kirk Donnelly. (**Exhibit EEE**.)

104. On December 21, 2015, Judge Melinda M. Reed issued a ruling directing the parties to meet and confer to come to an agreement in the case of *Wing v. Ford Motor Company* (Tulare County Superior Court, Case No. VCU253635). The parties came to an agreement whereby the award of attorney's fees and costs and expenses came to $115,405.60, which represented 90% of the lodestar fees requested. The award included my rate of $500 per hour, and the rate of $500 per hour for trial counsel, Rich Wirtz. Mid-level attorneys such as Lauren Ungs and Kristina Stephenson-Cheang, Joshua Sams and Erin Barnes were granted rates of $350 to $400 per hour. (**Exhibit FFF**.)

105. On December 1, 2015, Judge Ernest H. Goldsmith awarded 100% of the attorneys' lodestar fees and costs requested in the matter of *Yerbic v. Ford Motor Company* (San Francisco County Superior Court, Case No. CGC-13-533092) in the amount of $73,995.00, thereby confirming the reasonableness of the hourly rates requested and the reasonableness of the time incurred. The court granted my rate of $500 per hour and my associates' rates ranging from $225 to $350 per hour. The court also granted trial attorneys, Michael Rosenstein and Roger Kirnos, their rates of $450 and $300 per hour, respectively. (**Exhibit GGG**.)

106. On November 4, 2015, Judge Geoffrey M. Howard granted fees, costs and expenses in the case of *Kran v. Ford Motor Company* (Marin County Superior Court, Case No. CIV1302144) awarding $73,918.63 in lodestar fees, after an hourly rate reduction of 15% for each attorney. The court also made various other deductions to the amount of time spent on the case. However, the court granted a 1.5 multiplier in the amount of $36,959.31, for a total award including costs of $122,947.34. (**Exhibit HHH**.)

107. On October 27, 2015, Judge Geoffrey M. Howard awarded attorney's fees and costs in the matter of *Wiessler v. Ford Motor Company* (Marin County Superior Court, Case No.

CIV1303232) in the amount of $144,137.77. The court determined that counsel's rates of $225 to $500 per hour were higher than rates charged by attorneys in the particular community of Marin County and reduced the rates by 15%, but granted a lodestar multiplier of 1.5. (**Exhibit III.**)

108. On September 9, 2015, Judge Gregory W. Alarcon awarded 100% of the attorney's fees and costs and expenses actually incurred in the case of *Helm v. Chrysler* (Los Angeles County Superior Court, Case No. BC519503) in the amount of $66,172.80, thereby confirming the reasonableness of the hourly rates requested and the reasonableness of the time incurred. Judge Alarcon granted my rate of $450 per hour, trial attorneys Michael Rosenstein and Roger Kirnos at rates of $450 and $300, respectively, associate rates at $300 per hour for attorneys Lauren Ungs and Kevin Van Hout and $325 per hour for Kristina Stephenson-Cheang, $350 per hour for Constance Morrison, and $200 to $250 per hour for Amy Morse, Daisy Ortiz and Stephanie Marshall. (**Exhibit JJJ.**)

109. On April 20, 2015, Judge Michael P. Linfield awarded $79,081.14 in fees and costs and expenses in the matter of *Shychko v. Mercedes-Benz USA* (Los Angeles Superior Court, Case No. BC533642). Judge Linfield reduced the fee amount by 21% but granted a lodestar multiplier of 1.5. (**Exhibit KKK.**)

110. On January 12, 2015, Judge Jeffrey A. Thompson awarded a total of $126,129.08 in fees and costs and expenses in the matter of *Thiessen v. Ford Motor Company* (Colusa County Superior Court, Case No. CV23968. Judge Thompson reduced the hourly rates in light of the rural venue (there is one courtroom for the entire county) but added a multiplier of 1.25 that resulted in an award comprising nearly 100% of the $129,765.90 in fees and costs actually incurred in the case. (**Exhibit LLL.**)

111. On January 5, 2015, Judge Melinda M. Reed in Tulare County confirmed the reasonableness of each our attorneys' rates, including my rate of $400 per hour and co-counsel Michael Rosenstein's rate of $450 per hour. The Court awarded 90.4% of the fees requested in the matter of *Valencia v. Ford Motor Company* (Tulare County, Case No. 252468). (**Exhibit MMM.**)

112. On October 8, 2014, Judge Terry A. Green awarded $150,000 in a case that went to trial in the matter of *Sanders v. Ford Motor Company* (Los Angeles County Superior Court, Case No. BC48466.) The hourly rates ranged from $175 per hour for Ms. Ortiz to $300 - $375 per hour for associates and mid-level attorneys such as Roger Kirnos, Lauren Ungs and Kevin Van Hout, to $400 per hour for my rate and $450 per hour for trial counsel, Michael Rosenstein. (**Exhibit NNN.**)

113. On October 31, 2013, Judge Abraham Khan awarded the amount of $136,701.17 in the matter of *Chiavassa v Ford Motor Company*, Los Angeles Superior Court, awarding him his hourly rate of $500 per hour. (**Exhibit OOO**.)

114. On September 17, 2013, Judge Ernest M. Hiroshige awarded me fees that I requested at the rate of $350 per hour in *Snell v. Ford Motor Company*, Los Angeles Superior Court, Case No. BC 471985. Judge Hiroshige also granted a lodestar multiplier of 1.5. (**Exhibit PPP**.)

115. On July 24, 2013, Judge Michael L. Stern awarded fees at my rate of $350 per hour in *Meuchel v. Ford Motor Company* (Los Angeles Superior Court, Case No. BC 481727). (**Exhibit QQQ**.)

116. On January 6, 2011, Judge Sidney P. Chapin awarded me all the fees I requested at $300 per hour in *Watson v. Mercedes-Benz USA, LLC* (Kern County Superior Court Case No. S-1500-CV-268423). (**Exhibit RRR**.)

117. On May 4, 2010, our firm obtained an order from Judge Gail Brewster Bereola, in the matter of *Walker v Mercedes Benz USA* (Alameda Superior Court, Case No. RG08402907). Judge Brewster found that an hourly rate of $400 for Mr. O'Connor was reasonable and appropriate. (**Exhibit SSS**.)

118. On April 23, 2010, Judge Frederick A. Mandabach presiding over the matter of *Gonzalez v. Chrysler* (San Bernardino Superior Court Case No. CIVSS803240) granted Mark O'Connor a lodestar rate of $400 per hour as reasonable and appropriate, and my rate of $300 per hour was deemed reasonable as well. (**Exhibit TTT.**)

119. On February 19, 2010, Judge Sheila B. Fell awarded me all the fees I requested at $300 per hour in *Micu v. Chrysler Motor Co.* (Orange County Superior Court Case No. 30-2008-00114410). **(Exhibit UUU.)**

120. On March 5, 2009, Judge Rolf M. Treu awarded me all the fees I requested at $300 per hour, plus a 1.33 multiplier in *Jeske v. Chrysler Motor Co.* (Los Angeles Superior Court Case No. BC394377). **(Exhibit VVV.)**

121. On August 20, 2008, I was awarded attorney fees based on an hourly rate of $300 per hour after a 1.5 multiplier in *Kang v. American Honda Motor Co.* (Los Angeles County Superior Court Case No. BC379949). Although the court in *Kang* reduced the requested hourly rate, it did award a 1.5 multiplier because *Kang*, like this case, was taken on a contingent-fee basis. **(Exhibit WWW**.)

122. In *Root v. Mercedes-Benz USA, LLC* (Orange County Superior Court, Case No. 06CC07044) Ret. Judge Schneider awarded an hourly rate of $295 per hour including a multiplier of 1.075 on January 14, 2008. **(Exhibit XXX.)**

123. I request a multiplier of 2.2 based on my contingent fee, the risk and delay in payment associated with a contingent fee scenario, and the result achieved. Such a multiplier is reasonable and towards the low end under the established law. (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 255.) Plaintiffs' attorneys are paid only if Plaintiffs prevail, unlike Defendant's attorneys who get paid monthly regardless of the outcome. Moreover, Defendant's attorneys typically have a continuing and ongoing relationship, whereas this firm will most likely not have the opportunity to represent Plaintiffs again.

124. It is not uncommon for attorney's fees and costs to exceed the client's damages. The Legislature acknowledged such a circumstance, which is the reason behind the fee shifting provision of the Song-Beverly Act and the CLRA. Otherwise, consumers would be left without opportunity for redress when their damages were not enough for an attorney to take the case on a contingent fee or hourly rate basis. Such a result occurs in large part because of dealerships' or vehicle manufacturers' refusal to adhere to statutory laws protecting consumers, resistance to

honoring consumers' complaints, and generally playing games or simply abusing discovery procedures. For example, Ford could have avoided paying any attorney fees whatsoever had it admitted to its wrongdoing early on. Instead, Ford engaged in expensive litigation, and drove up fees and costs by, among other things, filing a Demurrer and Motion to Strike Plaintiffs' Complaint, filing a Motion for Summary Adjudication, filing a Motion for Protective Order, engaging in extensive discovery, stone-walling Plaintiffs' discovery efforts, and holding out for nearly five years of litigation before ultimately reaching a jury trial.

125. Song-Beverly Act and automotive CLRA cases are not simple actions. They require a specialized understanding of the full scope of consumer protection laws, which are highly nuanced. The cases also require knowledge of intricacies of automobiles and a lexicon associated with them, as well as a knowledge concerning how to investigate these matters. They also require knowledge of auto manufacturers' and dealers' protocols for repairing vehicles.

126. Generally speaking, clients of the firm are benefitted by the experience of this firm insofar as work-product from other cases can be used in this case as well. Hence, a substantial amount of time was saved by not needing to draft each document from scratch and little time was needed to "get up to speed" in this specialized area of law. In effect, Ford also benefitted when it comes to a determination of reasonable attorney's fees to be paid because there are numerous cost-saving techniques employed by the firm.

127. Ford itself made this matter more complex by maintaining it had no liability and declining to submit reasonable offers to settle the matter early in the litigation.

128. As shown by the number of cases discussed herein and the positive results achieved on behalf of each client, the hourly rate is reasonable and the number of hours expended are reasonable. The fees incurred in this litigation are the direct result of Ford's own dismissive approach to handling lemon law matters.

///

///

///

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 21st day of November 2018, at Los Angeles, California.

STEVE MIKHOV
Declarant

# EXHIBIT I

**KNIGHT LAW GROUP, LLP**
Steve Mikhov (SBN 224676)
Roger Kirnos (SBN 283173)
Amy Morse (SBN 290502)
1801 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: (310) 552-2250
Fax: (310) 552-7973

**THE ALTMAN LAW GROUP**
Bryan Altman (SBN 122976)
6300 Wilshire Blvd., Suite 980
Los Angeles, CA 90048
Telephone: (323) 653-5581
Fax: (323) 653-5542

**ROSNER, BARRY & BABBITT, LLP**
Hallen D. Rosner (SBN: 109740)
10085 Carroll Canyon Road, Suite 100
San Diego, California 92131
Telephone: (858) 348-1005
Facsimile: (858) 348-1150

Attorneys for Plaintiff,
**CHARLES MARGESON**

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

| | |
|---|---|
| **CHARLES MARGESON,**<br><br>Plaintiff,<br><br>vs.<br><br>**FORD MOTOR COMPANY, a Delaware Corporation, and DOES 1 through 10, inclusive,**<br><br>Defendants. | Case No. BC549430<br><br>Unlimited Jurisdiction<br><br>**DECLARATION OF STEVE MIKHOV ISO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES**<br><br>[Filed concurrently with Notice of Motion & Motion; Memorandum of Points and Authorities; and Declarations of B. Altman, M. Rosenstein, and H. Rosner in support thereof]<br><br>Hearing Date: January 26, 2018<br>Time: 8:35 a.m.<br>Dept.: 45<br>Hon. Mel Red Recana<br>Reservation ID: 171004256256 |

**DECLARATION OF STEVE MIKHOV**

I, Steve Mikhov, declare under penalty of perjury the following

1. I am an attorney at law duly licensed to practice before the courts of the State of California. I am a partner at the law firm of Knight Law Group, LLP ("Knight Law," formerly known as O'Connor & Mikhov LLP), attorneys of record for Plaintiff Charles Margeson ("Plaintiff") in the instant action. I have personal knowledge of the following facts and if sworn as a witness, I could and would testify to them competently.

2. I make this declaration in support of Plaintiff's Motion for Attorney's Fees (the "Motion"). For the reasons set forth herein and in the Motion, Plaintiff requests a total amount of $529,885.50 in attorney's fees, inclusive of the time to draft the Motion and supporting papers, and the anticipated time for reviewing the opposition, drafting a reply and appearing at the hearing. Plaintiff further requests a reasonable "lodestar" enhancement of 1.8 in the amount of $423,908.40 for a total attorney's fee award of $953,793.90. Of these figures, my firm's efforts constitute $290,830.00 of the fees incurred, and my firm advanced all of the costs and expenses incurred in this litigation. The remainder of the fees incurred in this action are attributable to work performed by The Altman Law Group and the Law Office of Michael H. Rosenstein to prepare this case and take it to trial, and Hal Rosner of Rosner, Barry & Babbit for work performed in connection with Plaintiff's post-trial motions and oppositions. Plaintiff also previously filed a timely memorandum of costs and expenses with the Court on October 6, 2017 in the amount of $99,451.81 for reimbursement of costs and expenses incurred in the prosecution of this action pursuant to Civil Code section 1794(d). A true and correct copy of my firm's billing is attached hereto as **Exhibit A**. A true and correct copy of my office's verified memorandum of costs and expenses is attached hereto as **Exhibit B.**

3. Plaintiff purchased a new 2006 Ford F-350 truck on July 4, 2006 for a total price of $58,876.00, inclusive of fees, taxes, and financing charges. The vehicle was manufactured by Ford, which provided an express written warranty. A true and correct copy of the Retail Installment Sales Contract is attached hereto as **Exhibit C**.

4. Over the course of 73,000 miles and under six years, Plaintiff was required to bring in his defective vehicle for repairs to the engine at least ten times, plus five more times

relating to a potpourri of other issues. These presentations do not include the myriad times Plaintiff had to pull over on the road to try to fix engine problems on his own.

5. At all times, Ford had direct ongoing knowledge of the vehicle's ongoing warranty repairs, which it records in a warranty repair history database that Ford calls the AWS. The repair records indicate that each time the vehicle was presented for repair during the warranty period, the authorized Ford repair facility found a problem attributable to Ford and billed Ford for all repairs. Moreover, discovery of internal communications amongst high ranking Ford executives and engineers show that Ford was aware of the problems with the engine in Plaintiff's truck, which caused "unprecedented repair rates" and "absolutely disgraceful" warranty spending. However, Ford marketed and sold the truck as a quality vehicle free from defects. While touting the vehicle as "best-in-class," Ford simultaneously sued the engine manufacturer due to the astronomical amounts it spent on warranty repairs. Yet, Ford denied the defective condition to its own consumers when they asked for their relief. Evidence supporting these facts were discovered by Plaintiff's counsel and admitted at trial based on substantial time expended in reviewing millions of pages of documents and compelling Ford to admit the documents are genuine.

6. Frustrated with his vehicle, Plaintiff submitted a request through the BBB for arbitration of his claims against Ford. The BBB rejected Plaintiff's request for arbitration. Although it rejected the request, the BBB notified Ford of Plaintiff's claim but Ford simply ignored it.

7. The conscious ignorance exhibited by Ford is consistent with its internal policies obtained in discovery that teach customer service employees that their "primary goal is to reduce RAVs" (i.e. buybacks), and to offer a buyback only in "extreme circumstances." A true and correct copy of Ford's internal training materials for its customer call center employees is attached hereto as **Exhibit D** and **Exhibit E**.

8. Plaintiff hired the Knight Law and told the firm about the problems with his vehicle and the way he had been treated by Ford. After review of the repair history and discussions with Plaintiff, Knight Law agreed to represent him and bear the risk of litigating the case on a contingent-fee basis. The firm faced a genuine risk of not being paid for its

services for years, if at all, while advancing thousands of dollars in costs.

9. Plaintiff filed a complaint in this action on June 20, 2014, alleging causes of action for fraud and violations of the Song-Beverly Act and the Consumer Legal Remedies Act. Plaintiff filed a first amended complaint (the "FAC") on August 6, 2014 because Ford failed to make a proper correction under the CLRA entitling Plaintiff to monetary damages.

10. Following Plaintiff's agreement to an extension for Ford to respond to the FAC, Ford demurred and moved to strike Plaintiff's fraud-based causes of action on November 4, 2014. Plaintiff opposed. The motions were not heard until April 22, 2015. The Court overruled Ford's demurrer and denied its motion to strike in their entirety. Ford did not actually file an answer until January 25, <u>2017</u> prompting Plaintiff to seek an order deeming affirmative defenses waived. In its answer, Ford *denied* all liability and asserted a slew of meritless affirmative defenses.

11. Meanwhile, in August 2014, Plaintiff began investigation of the merits of his case by serving written discovery, consisting of 123 Requests for Production of Documents, 107 Requests for Admissions, 114 Special Interrogatories, and 22 Form Interrogatories. Plaintiff benefitted from Knight Law's expertise and experience in litigating against Defendant as just <u>4.0</u> hours were billed for drafting the entirety of this voluminous discovery. The firm is able to utilize existing templates that attorneys can tailor for case-specific facts to reduce billing time.

12. Ford served its own written discovery in October 2014. Plaintiff responded and produced documents. Ford was evidently satisfied since it did not need to meet and confer.

13. However, Ford's responses to Plaintiff's August 2014 discovery were clearly inadequate. Plaintiff met and conferred extensively with Ford but was forced to file a motion to compel further responses to requests for production of documents on December 11, 2014. After several continuances, Plaintiff's motion to compel was heard on August 31, 2015. The Court <u>granted Plaintiff's motion</u> in its entirety and also granted sanctions against Ford.

14. On March 2, 2015, Ford filed a 406-page Petition for Coordination seeking to coordinate all cases in California involving Ford trucks equipped with the 6.0L diesel engine. A true and correct copy of Ford's Petition for Coordination is attached hereto as **Exhibit F.** As

a result, all cases, including this matter, were completely stayed and all trial dates were vacated, causing significant delay and prejudice to those consumers who had been waiting years for their day in court. Although Plaintiff's counsel incurred substantial time to oppose the petition and numerous related interim disputes and ensuing hearings, only a fraction of the total time was billed to this case. Time entries from March 2015 to July 2015 indicate *de minimus* time allocated amongst multiple cases, showing billing efficiencies. The presiding court ultimately denied the petition on July 14, 2015 but it took months to get cases like this one reset for trial.

15. During the stay of all 6.0L engine cases, Plaintiff's counsel was afforded time to then focus on review of the oft-mentioned 12,000,000 page document dump, which comprise the damaging internal documents. The documents were relevant to the defective condition of Plaintiff's truck under the Song-Beverly Act and to the fraud and CLRA claims.

16. On October 14, 2015, Plaintiff served a set of 152 requests for genuineness on Ford relating to Ford's internal documents, which was critical in confirming the authenticity and foundational aspects of that evidence. Ford had to admit the genuineness of this material evidence. Plaintiff incurred just 1.5 hours to draft these myriad requests.

17. On or about December 9, 2015, Ford finally bothered to inspect Plaintiff's vehicle; something that typically occurs in the very early stages of such cases, but not here.

18. On May 9, 2016, Plaintiff's counsel agreed to travel to Ford's headquarters in Dearborn, Michigan in the hopes of settling the remaining 98 cases that involved litigation about the defective 6.0L diesel engine. Ford chose the mediator, who was local in Dearborn. The mediation was three days long. Only a dozen of the cases settled; this case was not one of them. Though the mediation was attended by five attorneys from Plaintiff's firm and associated trial attorneys, only *two* attorneys billed their time and the amount billed to this case was just 0.6 hours for each attorney to prepare for, travel and attend the critical mediation.

19. Given Ford's staunch defense of the case and failure to make any acceptable offers, the case appeared likely to go to trial. In August 2016, the Law Offices of Michael H. Rosenstein formally associated into the case to serve as trial counsel.

20. On December 1, 2016, Plaintiff deposed Ford's designated Person Most

Knowledgeable. On December 6 and 7, 2016, Plaintiff deposed technicians and service advisors at one of the dealerships that performed repairs to the subject vehicle, which were needed to obtain information regarding repairs to the vehicle, authenticate the repair orders, and rebut Ford's anticipated argument that the problems with Plaintiff's vehicle were somehow caused by Plaintiff's neglect or abuse or installation of after-market parts.

21. With trial imminent, Ford moved *ex parte* to continue trial because it had not completed discovery but claiming unavailability of trial counsel due to another trial. The Court denied the requested relief as premature since counsel was not actually engaged. Plaintiff began in earnest preparing for trial by filing motions *in limine* and all trial documents such as a trial brief, jury instructions, verdict forms, and exhibit and witness lists. Plaintiff prepared and filed a lengthy bench brief regarding admissibility of evidence related to Ford's fraudulent conduct. Ford also filed twenty motions in limine, which Plaintiff opposed.

22. Unfortunately, Mr. Rosenstein's trial calendar made him unavailable so The Altman Law Group ("TALG") associated into the case and ramped up quickly to avoid continuance and further delay. The billing of the two offices was audited to ensure no duplicative charges.

23. On February 3, 2017, Ford made a second 998 Offer for $200,000.00. Given the evidence of Ford's fraudulent conduct that Plaintiff had uncovered, Plaintiff did not accept this offer. The parties attended settlement conferences on February 7 and 8, 2017.

24. Despite the Court's denial of Ford's trial continuance request, Ford managed to get the trial date continued in a manner that is still unclear to Plaintiff. Plaintiff applied *ex parte* to reinstate the trial date but that request could not be accommodated because the Court could not get a time qualified jury in time. Ford then substituted in new counsel in March 2017 but the new law firm, Gordon & Rees, also claimed it was unavailable and unprepared for the trial date, which led to further delay and continuance. In sum, Ford's conduct led to repeated continuances and multiple unnecessary court appearances, causing an increase in fees.

25. After trial was continued several times at Ford's request, the parties attended another settlement conference on May 9, 2017 with the Court wherein His Honor made a mediator's proposal, which Plaintiff was willing to accept but Ford was not.

26. After the jury verdict, Plaintiff submitted a proposed judgment but Ford objected, which prompted the Court to set a briefing schedule to address Ford's objections. However, Ford did not file any briefing at all so Plaintiff appeared *ex parte* seeking to enter judgment. The Court granted the application and entered judgment on September 21, 2017.

27. October 6, 2017, Plaintiff filed his Memorandum of Costs and Motion for Prejudgment Interest. Plaintiff's motion for prejudgment interest was conditionally granted on October 27, 2017 and the Court awarded $107,830.16 in prejudgment interest.

28. Ford then filed a Motion for New Trial and Judgment Not Withstanding the Verdict (the "JNOV") on October 12, 2017. Ford filed a Motion to Tax Costs on October 17, 2017. The Motion to Tax is set to be heard on January 5, 2018; the opposition will be filed next week.

29. On or about October 23, 2017, veteran consumer attorney, Hal Rosner, associated into this case to address the new trial motion and JNOV because it is anticipated that Ford will appeal this matter and Mr. Rosner will be the appellate attorney.

30. The Court denied Ford's JNOV but granted the Motion for New Trial and ordered a reduction of Plaintiff's damages.

**The Firm's Fees Incurred in Litigating This Matter Are Reasonable Pursuant to the Lodestar Method**

31. I attended law school at Pepperdine University and I was a judicial extern for Judge Gregory W. Alarcon of the Los Angeles County Superior Court in 2002.

32. I have been admitted to the State Bar of California since April 29, 2003.

33. Since my admission to the State Bar of California, I have specialized in consumer law. I originally worked for one of the largest consumer warranty law firms in the country, Consumer Legal Services.

34. I have extensive experience prosecuting and resolving consumer protection matters involving motor vehicle claims. For the past 13 years, I have specialized in breach of warranty and fraud cases against automobile manufacturers and dealers. I was among the attorneys who represented the plaintiff in *Joyce v. Ford Motor Co.* (2011) 198 Cal.App.4th 1478, a leading case which extended the protections of the Lemon Law to trucks based on

actual weight, not maximum capacity.

35. From April 2007 until April 2012, I was a founding partner in Romano, Stancroff & Mikhov PC. I was the Managing Partner of the firm until it was dissolved.

36. In April 2012, I founded O'Connor & Mikhov, LLP. I am the Managing Partner of the firm. My rate in for this case was $500/hour. My billing entries are indicated by the initials "SBM" in the billing statement exhibited to this declaration.

37. Lauren Ungs has been employed by the firm since July 12, 2012. Ms. Ungs has been a member of the California bar and actively practicing law for five years. She graduated magna cum laude from Southwestern Law School in 2010. She currently specializes in consumer law, lemon law, and contract law. Prior to joining my firm, she worked for one year of practicing in the area of environmental law defense, in which her hourly rate at that time was $275/ hour. Ms. Ungs current hourly rate, now five years later, is $350/hour. Ms. Ungs' entries are indicated by the initials "LAU" in the billing statement exhibited to this declaration.

38. Amy Morse has been an Associate at my firm since her admission to the bar in 2013. Prior to her admission, she was a law clerk with my office since 2012. Ms. Morse graduated from Loyola Law School. Ms. Morse's hourly rate is $250/hour. Ms. Morse's billing entries are indicated by the initials "ALM" in the billing statement exhibited to this declaration.

39. Russel Higgins is an Associate with the firm and was admitted to practice in 2003. Mr. Higgins graduated from Pepperdine Unversity School of Law and his hourly rate in this matter is $400/hour. Mr. Higgin's billing entries are indicated by the initials "RH" in the billing statement attached to this declaration.

40. Michael Ouziel was an Associate at my firm. Mr. Ouziel graduated from Washington and Lee University School of Law and was admitted to practice in 2013. Mr. Ouziel spent approximately his first two years of practice at a Los Angeles based boutique litigation firm and subsequently joined O'Connor & Mikhov, LLP in 2015, where his practice focuses largely on claims involving violations of the Song-Beverly Act. Mr. Ouziel's hourly billing rate was $250/hour. His billing entries are indicated by the initials "MO" in the billing statement exhibited to this declaration.

41. Stephanie Marshall was an associate at my firm during the time she performed work on this matter. Ms. Marhsall graduated from Indiana University – Purdue University Indianapolis, Robert H. McKinney School of Law and was admitted to practice in 2013. Ms. Marhsall's hourly rate in this matter is $200/hour. Ms. Marshall's billing entries are indicated by the initials "STM" in the billing statement exhibited to this declaration.

42. Kevin Van Hout was an associate at my firm during the time he performed work on this matter. Prior to his employment with O'Connor & Mikhov LLP, Mr. Van Hout appeared in federal and state court, handling all matters in small business and consumer bankruptcy cases for a national firm. Mr. Van Hout was first admitted to practice law in the state of Illinois in 2003, was admitted in the state of Indiana in 2005, and was admitted in California in 2010. Mr. Van Hout graduated from University of Illinois College of Law after finishing Northwestern University as an undergraduate. Mr. Van Hout's rate while working at my firm was $300/hour. Mr. Van Hout's billing entries are indicated by the initials "KVH" in the billing statement exhibited to this declaration.

43. Daisy Ortiz was an Associate of the law firm for three years from 2012 until August of 2015. Ms. Ortiz graduated from University of California, Davis School of Law and admitted to practice in California in 2012. Ms. Ortiz's hourly rate is $225/hour. Ms. Ortiz primarily undertook the written discovery and meeting and conferring regarding discovery. Ms. Ortiz's billing entries are indicated by the initials "DO" in the billing statement exhibited to this declaration.

44. Constance Morrison is a contract attorney that is very often used by my firm to attend vehicle inspections, defend depositions or attend hearings. Ms. Morrison has 20 years of litigation experience. She graduated from Empire College School of Law and was admitted to practice in 1996. Ms. Morrison's hourly billing rate in this case was $350/hour, and her billing entries are signified by the initials "CM" in the billing statement exhibited to this declaration.

45. Kirk Donnelly is a contract attorney with my firm with 20 years of litigation experience representing individual and corporate clients in hundreds of matters in state and federal court, including some 40 class actions. He graduated cum laude from the University of San Diego, School of Law where he was selected to the Order of the Coif and the Order of

Barristers. He was admitted to practice law in the State of California in 1995. Mr. Donnelly's hourly rate is $375/hour. Mr. Donnelly's billing entries are indicated by the initials "JKD" in the billing statement exhibited to this declaration.

46. Roger Kirnos is an Associate in my office. Mr. Kirnos graduated from Southwestern Law School in 2009 in the top 10% of his class with cum laude honors. Mr. Kirnos previously was an extern for Chief Judge Kozinksi of the Ninth Circuit Court of Appeals and an extern for Judge Klausner of the United States District Court, Central District. Mr. Kirnos has been trial counsel in fifteen lemon law cases that went to jury verdict in the last three years, and about a dozen more that settled once trial began. The hourly rate for Mr. Kirnos is $375 per hour, and his billing is indicated by the initials "RK" in the attached invoice.

47. As always, the firm attempts to keep attorney fees and costs down while providing vigorous and effective representation. This is because the firm runs the risk that it may never be paid back if the client does not prevail. Therefore, it makes sense that the firm would not engage in running up fees unnecessarily.

48. I am aware of the hourly rates of other attorneys in the California who work in the area of lemon law and consumer law. I bill my time at an hourly rate of $500 per hour. An hourly rate of $500 per hour is reasonable, and consistent with other attorneys who litigate consumer matters and who have a comparable level of experience. A canvas of the community of attorneys who specialize in this area from 2010 reveals the following hourly rates:

a. Robert Brennan of Brennan, Weiner and Associates in La Crescenta, California charges $450 per hour. He has been in practice since 1987. The hourly rates for his associates is $375 per hour. Survey as of 2010.

b. Hallen Rosner of Rosner & Mansfield, San Diego, CA. has been practicing law since 1983 and specializes in consumer litigation with particular attention to auto financing issues. He charges $620 per hour. Survey as of 2016.

c. Martin Anderson of The Anderson Law Firm in Santa Ana, California has practiced law since 1995 and charges $395 per hour. Mr. Anderson specializes in Lemon Law matters. Survey as of 2007

d. Michael Lindsey has been handling consumer law cases for nearly 10 years in San Diego, California. Mr. Lindsey's hourly rate is $575. Survey as of 2010.

e. Nancy Barros of Kemnitzer, Anderson, Barron, Ogilvie & Brewer LLP in San Francisco, California has been handling consumer cases since 1983. Ms. Barros charges $625 per hour. Survey as of 2010.

f. Brian Kemnitzer of Kemnitzer, Anderson, Barron, Ogilvie & Brewer LLP in San Francisco has been handling consumer cases since 1983. Mr. Kemintzer charges $625 per hour. Survey as of 2010.

g. Mark Romano of Romano, Stancroff in Los Angeles, California has been practicing for 23 years, primarily in consumer litigation. His hourly rate is $400 per hour. Survey as of 2010.

49. All time billing entries were completed contemporaneously with each dated entry, and accurately set forth the actual time expended for the matters indicated. I have personally reviewed the billing entries to ensure that they accurately reflect the time expended. I have removed or reduced any time I felt was excessive, duplicative, or otherwise not justified. My firm **does not bill clients** for support staff time, including secretarial or paralegal time.

50. On November 21, 2017, Judge David R. Lampe presiding in Kern County over the trial in the matter of *West v. Hyundai Motor America* (Kern County Superior Court, Case No. BCV-16-100792) awarded 100% of the fees requested based on the same rates requested here, except that he also confirmed the rate of $650/hour for trial attorney Bryan Altman, for a total fee and cost award of $185.580.58. (**Exhibit G**.)

51. On September 8, 2017, Judge Eddie C. Sturgeon awarded $226,845.00 in attorney's fees and $46,021.71 in costs and expenses after trial in the matter of *Aspinall vs. Kia Motors America* (San Diego Superior Court, Case No. 37-2015-00002577-CU-BC-CTL). The Court found the hourly rates of Plaintiff's attorneys reasonable. The attorney fee award

represents 80% of the lodestar fees requested by motion in the matter. (**Exhibit H**.)

52. On September 15, 2017, Judge Kevin A. Enright awarded $199,248.08 in attorney's fees after trial in the matter of *Harris vs. Hyundai Motor America* (San Diego Superior Court, Case No. 37-2015-00019958-CU-BC-CTL). The Court found the hourly rates of Plaintiff's attorneys reasonable. The attorney fee award represents 85% of the lodestar fees requested by motion in the matter. (**Exhibit I**.)

53. On September 20, 2017, Judge Gail G. Feuer awarded $227,228.00 in attorney's fees and $31,712.55 in costs and expenses after trial in the matter of *Longin vs. Ford Motor Company* (Los Angeles Superior Court, Case No. BC564186). The Court found the hourly rates of Plaintiff's attorneys reasonable. The attorney fee award represents 98% of the lodestar fees requested by motion in the matter. (**Exhibit J**.)

54. On August 9, 2017, Judge Sandra K. Bean awarded $94,112.50 in attorney's fees in the matter of *Bravo v. FCA US LLC* (Alameda Superior Court, Case No. RG15757477). The Court affirmed the hourly rates of Knight Law Group's attorneys, including a top hourly rate of trial counsel in the amount of $650.00. In total, the fee award represented 100% of the lodestar fees requested. The final order has yet to be signed but this is an accurate representation of the court's award. (**Exhibit K**.)

55. On August 9, 2017, Judge Craig L. Griffin awarded $59,515.00 in attorney's fees in the matter of *Murillo v. FCA US LLC* (Orange County Superior Court, Case No. 30-2015-00771206-CU-BC-CJC). The Court affirmed the hourly rates of Knight Law Group's attorneys, finding them reasonable. In total, the fee award represented 97% of the lodestar fees requested, with the only reduction being time that we withdrew on our own. The final order has yet to be signed but this is an accurate representation of the court's award. (**Exhibit L**.)

56. On June 19, 2017, Judge Raphael awarded $116,872.50 in attorney's fees after trial in the matter of *Bellamy v. Mercedes Benz USA LLC* (Los Angeles Superior Court, Case No. BC597233). The Court affirmed the hourly rates of Knight Law Group's attorneys. In total, the fee award represented 84% of the lodestar fees requested. (**Exhibit M**.)

57. On May 26, 2017, my firm sought $97,221.25 in fees and $4,282.35 in costs and expenses in the matter of *Pumphrey v. Ford Motor Company* (Riverside Superior Court,

Case No RIC1400402). The Court ordered the parties to meet and confer and, based on our willingness to agree to a nominal reduction, the Judge Trask issued an order for a fee and cost award for $92,000.00. (**Exhibit N**.)

58. On May 24, 2017, Judge Halm awarded $168,000.00 in attorney's fees and $27,257.19 in costs and expenses in a jury trial that resulted in a maximum civil penalty award for our client in the matter of *Gomez v. Kia Motors America, Inc.* (Los Angeles County Superior Court, Case No. BC 574493). The attorney fee award represents 81% of the lodestar fees requested by motion in the matter. (**Exhibit O**.)

59. On May 9, 2017, Judge Chapin in Kern County awarded a total of $296,055.00 in attorney's fees plus $25,651.18 in costs and expenses based on a jury verdict for maximum civil penalties in the matter of *Cofield v. Kia Motors America, Inc.* (Kern County Superior Court, Case No. S-1500-CV-283504. In so doing, Judge Chapin specifically ruled that the requested hourly rates were reasonable, including a rate of $650.00 per hour for attorney Bryan Altman with approximately 30 years of experience. (**Exhibit P**.)

60. On March 24, 2017, my firm was awarded a total of $64,138.00 in fees, costs, and expenses, inclusive of a 1.5 lodestar multiplier, in the matter of *Herrera v. Chrysler* (Monterey County Superior Court, Case No. M126216). Judge Thomas W. Wills reduced the two attorneys' rates that were at $500 per hour down to $450 per hour and ruled that all other rates were reasonable. Judge Wills found that the work performed and the time incurred for that work was reasonable and did not make any reductions. (**Exhibit Q**.)

61. On March 15, 2017, Judge Susan Bryant-Deason awarded $113,398.46 in fees, costs and expenses in the matter of *Andrino v. Kia* (Los Angeles County Superior Court, Case No. BC596210), which settled on the first day of trial. The court's award represents approximately 10% reduction of the fees requested by motion. (**Exhibit R**.)

62. On March 17, 2017, in the matter of *Page v. Kia Motors America, Inc.* (San Diego Superior Court, Case No. 37-2014-00023991-CU-BC-CTL), Judge Sturgeon granted an award of attorney's fees, costs and expenses in the amount of $271,077.16 in a case in which our clients prevailed at trial. Judge Sturgeon ruled that the hourly rates were reasonable, including trial counsel's, Bryan Altman, rate of $650/hour. In so doing, the court took a 15%

reduction on the overall attorney's fees amount but expressly considered and granted the same rates requested herein, as the court determined the hourly rates reasonable. (**Exhibit S**.)

63. On February 28, 2017, Judge Hiroshige in Los Angeles County Superior Court awarded 100% of the requested fees in the matter of *Dorfman v. BMW of North America, LLC* (Los Angeles Superior Court, Case No. BC538183) for a total fee award of $47,732.50, with costs and expenses still to be decided at subsequent hearing. (**Exhibit T**.)

64. On December 5, 2016, Judge Sterne in Santa Barbara ruled that the hourly rates and the amount of the work performed were both reasonable, and granted the firm's lodestar fee request in full in the matter of *Holzer v Ford Motor Company* (Santa Barbara County Superior Court, Case No. 15CV02771). The court also granted a multiplier of 1.5, for a total award of fees, costs and expenses in the amount of $143,301.69. (**Exhibit U**.)

65. On November 2, 2016, Judge Meiers in Los Angeles County Superior Court awarded 100% of the requested fees and costs in the matter of *Carter v. Chrysler Group LLC* (Los Angeles Superior Court, Case No. BC495228) resulting a total award of fees, costs and expenses in the amount of $41,466.22. (**Exhibit V**.)

66. On August 25, 2016, Judge White of the Los Angeles County Superior Court expressly approved the hourly rates sought here, including partner Mark O'Connor's hourly rate of $600 per hour and my rate of $500 per hour in the matter of *Mansur v. Chrysler Group, LLC* (Los Angeles County Superior Court, Case No. BC539866). The court awarded a total of $84,210.90 in fees, costs and expenses. (**Exhibit W**.)

67. On August 22, 2016, in the matter of *Kebodeaoux v. Mercedes-Benz* (Los Angeles Superior Court, Case No. BC552037), Judge Marmaro granted an award of attorney's fees, costs and expenses in the amount of $203,247.39 in a case in which our clients prevailed at trial. In so doing, the court took a 15% reduction on the overall amount but expressly considered and granted the same rates requested herein, except that Mark O'Connor's $600 per hour rate was granted there. (**Exhibit X**.)

68. Also on August 22, 2016, Judge Doyle ruled that the hourly rates were reasonable and likewise ruled the work performed in that case was also reasonable. He also awarded 100% of the requested lodestar fees and costs in the case entitled *Baca v. Chrysler*

*Group, LLC* (Los Angeles Superior Court, Case No. BC566511). (**Exhibit Y**.)

69. On August 2, 2016, Judge Beaudette awarded 100% of the requested fees and costs in the matter of *Lepe v. Chrysler Group, LLC* (Los Angeles Superior Court, Case No. BC556273). Judge Beaudette determined the hourly rates were to be reasonable and found that the work performed in the matter was reasonable. (**Exhibit Z**.)

70. On June 6, 2016, Judge Johnson expressly confirmed the reasonableness of each of the hourly rate and awarded 90% of the attorneys' lodestar fees in the amount of $50,541.00, in addition to $2,634.80 in costs in the case of *Perez v. Chrysler Group LLC* (Los Angeles Superior Court, Case No. BC528217.) (**Exhibit AA**.)

71. On December 21, 2015, Judge Reed issued a ruling directing the parties to meet and confer to come to an agreement in the case of *Wing v. Ford Motor Company* (Tulare County Superior Court, Case No. VCU253635). The parties came to an agreement whereby the award of attorney's fees and costs and expenses came to $115,405.60, which represented 90% of the lodestar fees requested at the hourly rates requested herein. (**Exhibit BB**.)

72. On December 1, 2015, Judge Goldsmith awarded 100% of the attorneys' lodestar fees and costs requested in the matter of *Yerbic v. Ford Motor Company* (San Francisco County Superior Court, Case No. CGC-13-533092) in the amount of $73,995.00, thereby confirming the reasonableness of the hourly rates requested and the reasonableness of the time incurred. (**Exhibit CC**.)

73. On November 4, 2015, Judge Howard again granted a motion in the case of *Kran v. Ford Motor Company* (Marin County Superior Court, Case No. CIV1302144) awarding $73,918.63 in lodestar fees, after an hourly rate reduction of 15%, and a 1.5 multiplier in the amount of $36,959.31, for a total award including costs of $122.947.34. (**Exhibit DD**.)

74. On October 27, 2015, Judge Howard awarded attorney's fees and costs in the matter of *Wiessler v. Ford Motor Company* (Marin County Superior Court, Case No. CIV1303232) in the amount of $144,137.77. The court determined that counsel's fees were higher than rates charged by attorneys in the particular community of Marin County and reduced the rates by 15%, but granted a lodestar multiplier of 1.5. (**Exhibit EE**.)

75. On September 9, 2015, Judge Alarcon awarded 100% of the attorney's fees and costs and expenses actually incurred in the case of *Helm v. Chrysler* (Los Angeles County Superior Court, Case No. BC519503) in the amount of $66,172.80, thereby confirming the reasonableness of the hourly rates requested and the reasonableness of the time incurred. (**Exhibit FF**.)

76. On April 20, 2015, Judge Michael Linfield awarded $79,081.14 in fees and costs and expenses in the matter of *Shychko v. Mercedes-Benz USA* in Los Angeles Superior Court, Case No. BC533642. Judge Linfield reduced the fee amount by 21% but granted a lodestar multiplier of 1.5. (**Exhibit GG**.)

77. On January 12, 2015, Judge Thompson awarded of $126,129.08 in fees and costs and expenses in the matter of *Thiessen v. Ford Motor Company* in Colusa County Superior Court, Case No. CV23968. Judge Thompson reduced the hourly rates in light of the rural venue (there is one courtroom for the entire county) but added a multiplier of 1.25 that resulted in an award comprising almost every dollar of the $129,765.90 in fees and costs actually incurred in the case. (**Exhibit HH**.)

78. On January 5, 2015, Judge Reed in Tulare County confirmed the reasonableness of each our attorneys' 2014 hourly rates, including my $400 rate and co-counsel Michael Rosenstein's $450 rate. The Court awarded 90.4% of the fees requested in the matter of *Valencia v. Ford Motor Company*, Tulare County, Case No. 252468. Attached is the court's order by which Judge Reed confirmed the hourly rates. (**Exhibit II**.)

79. On October 8, 2014, Judge Green in Los Angeles County Superior Court, Case No. BC48466, confirmed each one of the hourly rates for each of the attorneys in the case of *Sanders v. Ford Motor Company*. The hourly rates ranged from $175 per hour for Ms. Ortiz to $450 per hour for co-counsel Michael Rosenstein. (**Exhibit JJ**.)

80. On October 31, 2013, Mr. O'Connor obtained an order from Judge Abraham Khan in the amount of $136,701.17 in the matter of *Chiavassa v Ford Motor Company*, Los Angeles Superior Court, awarding him his hourly rate of $500 per hour. (**Exhibit KK**.)

81. On September 17, 2013, Judge Hiroshige awarded me fees that I requested at the rate of $350 per hour in *Snell v. Ford Motor Company*, Los Angeles Superior Court, Case

No. BC 471985. Judge Hiroshige also granted a lodestar multiplier of 1.5. (**Exhibit LL**.)

82. On July 24, 2013, Judge Stern awarded fees at my rate of $350 per hour in *Meuchel v. Ford Motor Company*, Los Angeles Superior Court, Case No. BC 481727. (**Exhibit MM**.)

83. On January 6, 2011, Judge Chapin awarded me all the fees I requested at $300 per hour in *Watson v. Mercedes-Benz USA, LLC*, Kern County Superior Court Case No. S-1500-CV-268423. (**Exhibit NN**.)

84. On May 4, 2010, our firm obtained an order from Judge Gail Brewster Bereola, in the matter of *Walker v Mercedes Benz USA*, Alameda Superior Court, Case No. RG08402907. Judge Brewster found that an hourly rate of $400 for Mr. O'Connor was reasonable and appropriate. (**Exhibit OO**.)

85. On April 23, 2010, the Judge Mandabach presiding over the matter of *Gonzalez v. Chrysler*, San Bernardino Superior Court Case No. CIVSS803240 granted Mark O'Connor, the firm's former partner, a lodestar rate of $400 per hour as reasonable and appropriate. (**Exhibit PP**.)

86. On February 19, 2010, Judge Fell awarded me all the fees I requested at $300 per hour in *Micu v. Chrysler Motor Co.*, Orange County Superior Court Case No. 30-2008-00114410. (**Exhibit QQ**.)

87. On March 5, 2009, Judge Treu awarded me all the fees I requested at $300 per hour, plus a 1.33 multiplier in *Jeske v. Chrysler Motor Co*., Los Angeles Superior Court Case No. BC394377. (**Exhibit RR**.)

88. On August 20, 2008, I was awarded attorney fees based on an hourly rate of $300 per hour after a 1.5 multiplier in *Kang v. American Honda Motor Co.*, Los Angeles County Superior Court Case No. BC379949. (**Exhibit SS**.) Although the court in Kang reduced the requested hourly rate, it did award a 1.5 multiplier because Kang, like this case, was taken on a contingent-fee basis.

89. In *Root v. Mercedes-Benz USA, LLC*, Orange County Superior Court, Case No. 06CC07044, Ret. Judge Schneider awarded an hourly rate of $295 per hour including a multiplier of 1.075 on January 14, 2008. (**Exhibit TT**.)

90. I request a multiplier of 1.8 based on my contingent fee, the risk and delay in payment associated with a contingent fee scenario, and the result achieved. Such a multiplier is reasonable, and towards the low end, under the established law. (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 255.) We are paid in these cases only if the client prevails, unlike Defendant's attorneys who get paid regardless of the outcome. Moreover, Defendant's attorneys typically have a continuing and ongoing relationship, whereas this firm will most likely not have the opportunity to represent Plaintiffs again. In addition, the firm has not received a dollar of compensation since the case was filed in 2014.

91. It is not uncommon for attorney fees and costs to exceed the client's damages. The Legislature acknowledged such a circumstance, which is the reason behind the fee shifting provision of the Song-Beverly Act. Otherwise, consumers would be left without opportunity for redress when their damages were not enough for an attorney to take the case on a contingent fee or hourly rate basis. Such a result occurs in large part because of dealership's or vehicle manufacturer's refusal to adhere to statutory laws protecting consumers, resistance to honoring consumers' complaints, and generally playing games or simply abusing discovery procedures. For example, Ford could have avoided paying any attorney fees whatsoever had it admitted to its wrongdoing early on. Instead, Ford engaged in expensive litigation. Ford drove up fees and costs by, among other things, impeding the firm's discovery efforts, forcing a successful motion to compel. Ford also failed to make any reasonable settlement offers, including at several mediation attempts.

92. Generally speaking, clients of the firm are benefitted by the experience of this firm insofar as work product from other cases can be used in this case as well. Hence, a substantial amount of time was saved by not needing to draft each document from scratch and little time was needed to "get up to speed" in this specialized area of law. In effect, Ford is also benefitted by these facts when it comes to a determination of reasonable attorney's fees to be paid because there are numerous cost saving techniques employed by the firm.

93. As shown by the number of cases discussed herein and the positive results achieved on behalf of each client, the hourly rate is reasonable and the number of hours expended is reasonable. The fees incurred in this litigation are the direct result of Ford's own

dismissive approach to handling lemon law matters.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 15th day of December 2017, at Los Angeles, California.

STEVE MIKHOV
Declarant

# EXHIBIT J

ORIGINAL

FILED
2019 MAY 28 PM 3:25

**KNIGHT LAW GROUP, LLP**
Steve Mikhov (SBN 224676)
10250 Constellation Blvd., Suite 2500
Los Angeles, CA 90067
Telephone: (310) 552-2250
Fax: (310) 552-7973
Email: stevem@knightlaw.com

**THE ALTMAN LAW GROUP**
Bryan C. Altman (SBN 122976)
10250 Constellation Blvd., Suite 2500
Los Angeles, CA 90067
Telephone: (310) 277-8481
Fax: (310) 277-8483
Email: bryan@altmanlawgroup.com

Attorneys for Plaintiffs,
**SHELBY ANDERSON and TAMMY ANDERSON**

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF SAN JOAQUIN**

BY FAX

**SHELBY ANDERSON and TAMMY ANDERSON,**

Plaintiffs,

vs.

**FORD MOTOR COMPANY, a Delaware Corporation; and DOES 1 through 10, inclusive,**

Defendants.

Case No: 39-2013-00299512-CU-BC-STK

**DECLARATION OF STEVE MIKHOV IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**

[Filed concurrently with Plaintiffs' Notice of Motion and Motion for Attorneys' Fees; Memorandum in Support Thereof; Declarations of Bryan C. Altman, Richard Wirtz, and Cynthia E. Tobisman]

*Assigned for All Purposes to the Honorable W. Stephen Scott*

Date: JUL 03 2019
Time: 9:00 a.m.
Dept: 10A

# DECLARATION OF STEVE MIKHOV

I, Steve Mikhov, declare as follows:

1. I am an attorney at law duly licensed to practice before the courts of the State of California and attorney of record for Plaintiffs Shelby Anderson and Tammy Anderson ("Plaintiffs") in the instant action. I have personal knowledge of the following facts and, if sworn as a witness, I could and would testify to them competently.

2. I make this declaration in support of Plaintiffs' Motion for Attorneys' Fees ("Motion"). For the reasons set forth herein and, in the Motion, Plaintiff requests $939,438.75 in attorneys' fees. This amount is comprised of the legal services provided by Knight Law Group, LLP ("Knight Law") in the amount of $493,412.50, legal services provided by The Altman Law Group ("TALG") in the amount of $321,968.75, legal services provided by Wirtz Law APC ("WL") in the amount of $36,232.50, and legal services provided by Greines, Martin, Stein & Richland LLP ("GMSR") in the amount of $87,825.00. Plaintiffs' attorneys request a reasonable "lodestar" enhancement of 1.5 in the amount of $469,719.38, for a total attorneys' fee award of $1,409,158.13. A true and correct copy of my firm's billing is attached hereto as **Exhibit A.** Plaintiffs previously requested reimbursement of costs and expenses, which is subject to a motion to tax costs by Ford.

3. Plaintiffs purchased a new 2005 Ford F-250 on October 21, 2004 for a total purchase price of $47,715.60. The vehicle was distributed by Ford Motor Company ("Defendant" or "Ford"), which provided an express written warranty. A true and correct copy of the Retail Installment Sales Contract is attached hereto as **Exhibit B.**

4. During and after the warranty period, Plaintiffs brought their truck in repeatedly for severe engine problems. Despite the ongoing repairs and continued manifestation of problems, Ford refused to acknowledge the defective nature of Plaintiffs' vehicle. At all times, however, Ford had direct, contemporaneous knowledge of the vehicle's serious defects, which it records in a database called "OASIS" and a warranty repair history database called "AWS." These repair records indicate each time the vehicle was presented for repair during the warranty period, as well

as every time the Ford repair facility found a problem/defect attributable to Ford and billed Ford for the work.

5. Frustrated, concerned for their safety and having lost confidence in Ford's ability to repair the vehicle, Plaintiffs submitted a request for arbitration to the Better Business Bureau on or about January 23, 2013. Plaintiffs' request for arbitration was denied. Although it rejected the request, the BBB notified Ford of Plaintiffs' claim but Ford simply ignored it.

6. With no other available avenue for relief, Plaintiffs contacted Knight Law and told the firm about the problems with their truck and the way Ford had treated them. After reviewing the repair history and discussions with Plaintiffs, Knight Law agreed to represent them and bear the risk of litigating the case on a fully contingent basis. Because Knight Law's compensation was purely contingent, the firm faced a genuine risk of not being paid for its services for years, if at all, while advancing thousands of dollars in costs and expenses on Plaintiffs' behalf. In taking on this duty, the firm was facing a litigation behemoth—Ford is a multi-billion-dollar company, with a virtually infinite litigation war-chest, that wages a battle of attrition that most firms cannot withstand.

7. Prior to filing the lawsuit, Plaintiffs served Ford with a demand under the Consumer Legal Remedies Act. Ford denied Plaintiffs' request for relief.

8. Plaintiffs filed a Complaint in this action on July 19, 2013, followed by a First Amended Complaint on September 10, 2013 alleging punitive damages on account of Ford's rejection of Plaintiffs' CLRA demand. Plaintiffs alleged causes of action for Fraud for concealing a known engine defect, and violations of the Consumer Legal Remedies Act ("CLRA") and the Song-Beverly Act, and sought, among other things, civil penalties and punitive damages.

9. On August 26, 2013 Ford began its vigorous defense in this case, propounding requests for production of documents, requests for admissions, special interrogatories, and form interrogatories on Plaintiffs. In total, there were 165 initial requests. Ford also noticed the depositions of Plaintiffs and made a demand for inspection of Plaintiffs' defective vehicle.

///

10. On October 15, 2013, Ford filed both a demurrer and a motion to strike Plaintiffs' First Amended Complaint; they were denied. Ford then filed its Answer to Plaintiffs' First Amended Complaint, denying all liability and asserting nineteen affirmative defenses.

11. Defendant's position in the litigation required extensive efforts on the part of Plaintiffs' counsel, and they promptly began working up their case on behalf of Plaintiffs. Written discovery was drafted and served on Defendant on October 22, 2013, consisting of 107 requests for admissions, 22 requests for genuineness, 123 requests for production of documents, 113 special interrogatories, and form interrogatories. Plaintiffs again benefitted from Knight Law's expertise and experience in litigating against Ford as just 4.5 hours were billed for drafting the entirety of this discovery. Plaintiffs' counsel are able to use existing files as templates to conserve time and litigate efficiently. Written discovery of this magnitude, drafted from scratch and without the benefit of Plaintiffs' attorneys' vast knowledge, experience and specialized expertise, would have taken multitudes of the time expediently managed here.

12. Ford took the depositions of Plaintiffs Shelby Anderson and Tammy Anderson on January 23, 2014, and the subject vehicle was inspected on October 18, 2014. Meanwhile, Plaintiffs' counsel reviewed, analyzed and annotated Ford's responses to Plaintiffs' discovery. Notably, the hundreds of hours that it took to review these documents are *not included in Plaintiffs' billing.* Similarly, many of the depositions utilized in this case were also not included in Plaintiffs' billing, including the depositions of Eric Kalis, Scott Clark, and Eric Gillanders.

13. On November 3, 2014, the court set trial for October 19, 2015.

14. On March 2, 2015, Ford filed a 406-page Petition for Coordination seeking to coordinate all cases in California involving Ford trucks equipped with the 6.0L diesel engine. As a result, all cases, including this matter, were completely stayed and all trial dates were vacated, causing significant delay. Although Plaintiffs' counsel incurred <u>substantial time</u> to oppose the petition and for the numerous related interim disputes and ensuing hearings, only a tiny fraction of the total time was billed to this case. The presiding court ultimately denied the petition on July 14, 2015 but it took months to get cases like this one back on calendar. A true and correct copy of

Ford's Petition is attached hereto as **Exhibit C**. Notably, Ford's Petition included a list of all 6.0 cases in California (all of which Ford was seeking to coordinate) – Plaintiffs' counsel represented the vast majority of the cases. The other law firms consisted of: Premier Legal Center, APC (based in San Diego); Romano Stancroff PC (based in El Segundo); the Law Offices of Todd M. Friedman, PC (based in Beverly Hills); the Law Offices of David J. Farrell (based in Mission Viejo); and the Law Offices of William R. McGee (San Diego). Therefore, every single firm in California handling 6.0 lawsuits in 2014 was based in/near Los Angeles or San Diego.

15. With the absence of any reasonable settlement offer from Ford, the case appeared likely to go to trial. Accordingly, in June of 2015, Richard M. Wirtz of Wirtz Law APC formally associated into the case to assist in preparing the case for trial.

16. On August 17, 2015, Plaintiff noticed the depositions of several Ford employees and dealership personnel, including Ford's PMQ, service advisors and service technicians. These depositions were needed to obtain information regarding repairs to the vehicle, authenticate the repair orders, rebut Ford's anticipated argument that the problems with Plaintiffs' vehicle were somehow caused by Plaintiffs' neglect or abuse, and show Ford's control of its dealerships. On August 27, 2015, Plaintiffs took a statement of non-appearance after Ford refused produce its PMQ for deposition. The dealership's depositions went forward on September 9, 2015.

17. On September 8, 2016, Ford filed and served a motion for summary adjudication, seeking to dispose of Plaintiffs' fraud and CLRA claims. While reviewing Ford's motion, Plaintiffs saw that Ford had based one of its key arguments on a false citation to a California Supreme Court case that if believed could be potentially dispositive. Plaintiffs drafted a motion for sanctions, outlining thirty-six prior instances in which Ford had made the same argument and been notified (by counsel and by courts) that it was false. After Plaintiffs served the motion with the requisite safe-harbor letter, Ford responded by withdrawing their motion for summary adjudication and later filing a new motion without the offending argument and authority. Afterward, Ford finally ceased to make that argument in any further cases. Plaintiffs opposed the amended motion for summary adjudication, and it was denied in January of 2017.

18. On January 24, 2017, Ford served Plaintiffs with their first and only Offer to Compromise pursuant to the Code of Civil Procedure section 998 ("998 Offer") in the amount of $190,000.00. According to Ford's counsel of record (Erskine Law Group), the settlement offer explicitly did not include a single dollar for Plaintiffs' CLRA claim, and did not provide for attorney fees under the CLRA. The amount itself was deficient, and it did not admit any wrongdoing. Plaintiffs rejected the inadequate offer and subsequently began fully preparing for trial, drafting nineteen (19) motions in limine.

19. On February 7, 2017, the parties attended a mandatory settlement conference. Ford refused to negotiate beyond its 998 offer, and the case appeared headed to trial.

20. On February 10, 2017, Ford took the deposition of Plaintiffs' expert Thomas Lepper. On February 14, 2017, Plaintiffs took a second statement of non-appearance when Ford again refused to produce its PMQ for deposition. On February 28, 2017, Plaintiffs took the deposition of Ford's expert Greg West.

21. Trial was set to begin on March 6, 2017, but on February 22, 2017 Ford moved *ex parte* to continue trial due to Mr. Erskine's unavailability. Trial was continued to May 15, 2017.

22. On May 10, 2017, Ford served twenty-one (21) motions in limine, and then on May 11, 2017 served twenty-one (21) amended motions in limine.

23. In September of 2017 Greenberg Traurig substituted in as counsel for Ford. In response, Bryan C. Altman of the Altman Law Group ("TALG") formally associated into the case as lead trial counsel in February of 2018.

24. On February 13, 2018, the parties attended a second mandatory settlement conference. Mr. Goines from Greenberg Traurig attended the settlement conference as lead trial counsel. Ford immediately said that it was standing on its prior 998 offer (as it had done the year beforehand), and the hearing ended immediately.

25. On March 14, 2018, Ford filed nine (9) motions in limine, numbered between one through 22 and presumably replacing the previously filed motions with the same numbers.

///

26. On July 10, 2018, a year after discovery had closed, Ford filed a motion to compel a second vehicle inspection without seeking to reopen discovery. Ford concurrently filed a motion to compel deposition testimony from Plaintiffs' expert witnesses, despite the fact that their scheduled depositions were scheduled but had not yet occurred. Plaintiffs opposed both improper motions, and the Court did not grant either motion.

27. On July 17, 2018, Plaintiffs took the deposition of Ford's expert Carlyn Irwin, and on August 10, 2018 Plaintiffs took the deposition of Ford's expert Victor Hakim.

28. On August 9, 2018, Ford took a second deposition of Plaintiffs' expert Thomas Lepper to discuss Mr. Lepper's additional two opinions, but the six-hour deposition delved into every opinion that he had previously testified about a year earlier.

29. On August 14, 2018, Ford filed twenty-one new and revised motions in limine, jettisoning the dozens of prior motions including those previously done by other counsel at Greenberg Traurig. On September 17, 2018, Ford filed an additional motion in limine. These motions sought to exclude the entirety of Plaintiffs case, from witnesses, experts, depositions, and documents. In effect, many of them were improper motions for summary adjudication, and they took substantial time to oppose.

30. In total, Ford served fifty-two motions in limine (not including the May 11, 2017 twenty-one amended motions).

31. On August 20, 2018, Ford filed a motion to quash the trial subpoena for Susan Aluia, a former PMQ witness for Ford.

32. At the end of August, 2018 the parties argued motions in limine over multiple days. This Court granted Ford's motion in limine excluding certain video depositions, and subsequently granted Plaintiffs' request for a brief stay so that a writ could be filed.

33. On September 11, 2018, Plaintiffs filed a writ of mandate seeking relief from a motion in limine ruling excluding the majority of Plaintiffs' video depositions at trial. While the court declined to consider Plaintiffs' writ, Plaintiffs were reasonable in seeking relief. (*Id.*) Critical evidence was excluded, significantly impairment Plaintiffs' ability to prosecute their case.

Further, this evidence had been recently admitted in the related case of *Alimonti v. Ford* with the same defense counsel, as well as numerous similar cases. (*Id.*) Plaintiffs hoped that the writ would resolve the issue prior to trial without having to potentially relitigate the entire trial itself after a possible appeal. (*Id.*) Finally, a similar order was issued by a trial court in Los Angeles in the matter of *Berroteran v. Ford* (another 6.0L case with the same deposition designations), and Plaintiffs' alternative writ was granted. Attached hereto as **Exhibit D** is a copy of the court of appeal's order granting the preliminary writ.

34. The parties returned for juror hardships and questionnaire on September 25, 2018, and trial began on October 2, 2018. The trial was litigated aggressively by Ford. The parties returned for juror hardships and questionnaire on September 25, 2018, and trial began on October 2, 2018. The trial was litigated aggressively by Ford. Ford objected to every witness, every document, and every expert. Multiple 402 hearings were needed. Ford objected to deposition testimony to which prior counsel of record had specifically stipulated could be used in this case. Moreover, Ford's witnesses were blatantly obstructive under cross-examination, causing further delay and eventually leading the jury to disregard their testimony as not credible. At trial, Ford was represented by an entirely new team of five lawyers, three from Greenberg Traurig and two from Shook Hardy & Bacon, with additional assistance from attorneys at three *other* firms: LeClair Ryan, Sanders Roberts and Taylor Anderson. After nearly a month, on October 30, 2018, the jury returned with its verdict in favor of Plaintiffs for violation of the Song-Beverly Act, violation of the Consumer Legal Remedies Act and common-law Fraud, and the following day, returned a punitive damage award in the second phase of trial.

35. On December 10, 2018, Ford filed objections to Plaintiffs proposed judgment, arguing that Plaintiffs could not recover both Song-Beverly Act and CLRA damages. After extensive briefing the Court held a hearing on December 24, 2018. Ford's objections –with the exception of two minor changes –were overruled.

36. On March 11, 2019, Ford filed a Motion for Partial Judgment Notwithstanding the Verdict. On March 26, 2019, Plaintiffs filed their opposition.

37. On March 19, 2019, Ford filed a Motion to Tax Costs, which Plaintiffs opposed.

38. In total, this case involved over a dozen motions (mostly from Ford), three *ex parte* applications, fourteen depositions, two mandatory settlement conferences, seventy-four (74) motions in limine (again, mostly filed by Ford), and one vehicle inspection.

**Ford is a Staunch Defendant That Litigates More Aggressively Than Most Other Vehicle Manufacturers While Deceiving Consumers More Than Most Manufacturers**

39. There are vehicle manufacturers with whom this firm has had exactly zero trials, zero discovery disputes, and zero fee motions. Ford Motor Company is not one of them. Since 2012, the firm has tried over 55 automotive cases. One case ended in a hung jury and two cases ended in a mistrial. Taking those two matters out, Knight Law and its trial attorneys have a win-loss record of 36 wins and 17 losses. This amounts to nearly a 70% winning percentage in trials. Of those 55 trials, Ford makes up 14 of them. <u>In other words, Ford alone comprises 25% of all of the cases that go to trial</u>. Of the 14 trials prosecuted against Ford, the firm has prevailed in 9 of them.

40. During the course of my years in practice, I have successfully pursued evidence during discovery that has proven damaging to the Ford. For example, Ford was compelled to produce 35,000 pages of training materials from its customer service call center. The production of these documents came only after Ford's representatives claimed for years that no such training materials existed, and perjured themselves in declarations opposing motions to compel. It was only once I flew to Melbourne, Florida to depose Abe Bush, one of Ford's customer service agents, during which he admitted that he had use of training materials. Based on that information, I pursued court orders to compel the materials. Ford's then-counsel of record from Bowman and Brooke (also initial counsel in this case), having denied the existence of training materials in countless declarations, flipped the opposition and claimed "it was a revelation" that the documents existed. Another example is Ford's attempt to conceal documents that it had produced in other class action litigation. Through continuing efforts, Ford was ordered to produce approximately 12,000,000 pages in a class document dump. The firm's attorneys spent countless hours sifting

through these pages. Once certain documents were identified and brought into evidence at trial, Ford amazingly claimed that the documents were not genuine and authentic. As a result, we sought Ford's admission of the genuineness of these documents, which Ford initially denied, but court orders eventually compelled their admission of authenticity. More recently, there was an ongoing feud in which Ford was ordered to produce customer service documents located on what is referred to as the "G: drive," but Ford ignored the order, caused a motion to compel compliance, filed motions for a protective order and a motion for reconsideration, and after almost two years of this battle finally produced the contents of that G: drive.

41. In my experience, Ford's approach to litigation is to fight at every turn, make unacceptably low offers that its attorneys know from their experience are not satisfactory, or make no offers at all, until the trial date for the case is near.

42. While there are a variety of vehicles forming the basis of breach of warranty, CLRA, and fraud claims against Ford, the prosecution of claims by my firm in representation of consumers against Ford in large part involves two particular vehicles with defects. The first is Ford's Super Duty trucks that were sold with a defective diesel engine. The second involves Ford Focus and Fiesta vehicles equipped with a malfunctioning "adaptive automatic transmission." As mentioned to some extent above, the firm's efforts have led to court orders compelling Ford to produce millions of internal documents relating to the defects in these vehicles, such as internal emails, presentations, studies, charts, tables, and graphs. I am not aware of any other firm that has successfully pursued such discovery. Such efforts have led to resounding settlements and victories in trial, though admittedly not every case has ended with a victory for the consumer. In June 2016, one of the firm's trial teams obtained a jury verdict in the amount of $1.68M against Ford on another 6.0l diesel engine vehicle that was purchased for just over $50,000.00 because it was proven by clear and convincing evidence that Ford engaged in fraudulent conduct with malicious, oppressive and/or fraudulent intent.

///

///

43. In response to that verdict, Ford ramped up its defense even more. Ford hired several new law firms to assist in its defense. Ford is now represented by the following twelve law firms in lemon law and CLRA actions against my firm:

1) King & Spalding
2) Greenberg Traurig
3) Gordon Rees Scully Mansukhani, LLP
4) Gates, O'Doherty, Gonter & Guy
5) Baker Hostetler LLP
6) Snell & Wilmer, LLP
7) Shook, Hardy & Bacon
8) The Erskine Law Group
9) LeClairRyan
10) Sanders Roberts LLP
11) Dykema Gossett
12) Bowman and Brooke

44. Recently, one of Ford's attorneys, speaking on behalf of the entire army of lawyers, proclaimed that Ford was no longer willing to discuss settlement in other Ford cases, did not want to engage in any further mediations and fully intends to bring every case to trial unless our clients accept Ford's existing offers.

45. In the context of discussing resolving a case with another plaintiff's firm, Justin Sanders of Sanders Roberts wrote in an electronic exchange that he is "focused on putting [Steve] Mikhov and [Bryan] Altman out of business!" Mr. Mikhov and Mr. Altman are the managing partners of Plaintiffs' counsel's respective law firms.

46. As a result of Ford's resolute defense, attorney fees are incurred during the prosecution of the lawsuit.

///

///

**The Attorneys' Hourly Rates Are Reasonable Pursuant to the Lodestar Method in Light of their Experience**

47. I attended law school at Pepperdine University and I was a judicial extern for Judge Gregory W. Alarcon of the Los Angeles County Superior Court in 2002.

48. I have been admitted to the State Bar of California since April 29, 2003. Since my admission to the State Bar of California, I have specialized in consumer law.

49. I have extensive experience prosecuting and resolving consumer protection matters involving motor vehicle claims. For the past fifteen years, I have specialized in breach of warranty and fraud cases against automobile manufacturers and dealers. I was among the attorneys who represented the plaintiff in *Joyce v. Ford Motor Co.* (2011) 198 Cal.App.4th 1478, a leading case which extended the protections of the Lemon Law to trucks based on actual weight, not maximum capacity.

50. I originally worked for one of the largest consumer warranty law firms in the country, Consumer Legal Services. From April 2007 until April 2012, I was a founding partner in Romano, Stancroff & Mikhov PC. I was the Managing Partner of the firm until it was dissolved. In April 2012, I founded O'Connor & Mikhov, LLP. The firm was reformed in 2017 as Knight Law Group, LLP. I am the Managing Partner of the firm. My rate for this case was $550/hour. My billing entries are indicated by the initials "SBM" in the billing statement exhibited to this declaration.

51. Lauren Ungs is a Partner in my office. Ms. Ungs has been employed by the firm since July 12, 2012. Ms. Ungs has been a member of the California bar and actively practicing law for five years. She graduated magna cum laude from Southwestern Law School in 2010. She currently specializes in consumer law, lemon law, and contract law. Ms. Ungs has been part of trial teams that returned verdicts of $1.8 million, $7.5 million, $2.6 million, and $8.1 million in similar cases against Ford. Mr. Ungs has been selected as a Rising Star by Super Lawyers in 2018 and 2019. Ms. Ungs current hourly rate, is $425/hour. Ms. Ungs' entries are indicated by the initials "LAU" in the billing statement exhibited to this declaration.

52. Amy Morse is a Partner in my office. Ms. Morse has been with my firm since her admission to the bar in 2013. Prior to her admission, she was a law clerk with my office since 2012. Ms. Morse graduated from Loyola Law School. Ms. Morse's hourly rate is $350/hour. Ms. Morse's billing entries are indicated by the initials "ALM" in the billing statement exhibited to this declaration.

53. Daisy Ortiz was an Associate of the law firm for three years from 2012 until August of 2015. Ms. Ortiz graduated from University of California, Davis School of Law and admitted to practice in California in 2012. Ms. Ortiz's hourly rate was $225/hour. Ms. Ortiz primarily undertook the written discovery and meeting and conferring regarding discovery. Ms. Ortiz's billing entries are indicated by the initials "DO" in the billing statement exhibited to this declaration.

54. Kristina Stephenson-Cheang graduated from Western State University College of Law and was admitted to practice in 2008. Ms. Stephenson-Cheang has been employed with the firm since 2013. Prior to her employment at OM Law, she worked for a different lemon law firm gaining valuable experience in this area of law. Ms. Stephenson-Cheang's hourly rate in this matter is $375/hour. Ms. Stephenson-Cheang's billing entries are indicated by the initials "KSC" in the billing statement exhibited to this declaration.

55. George Aguilar is an associate at Knight Law Group, LLP. He received his undergraduate degree from the University of California, Berkeley in 2011, and his law degree from the University of Maryland Carey School of Law in 2014. Mr. Aguilar was admitted to the California Bar in 2015, and spent his first year and a half practicing family law, criminal defense, personal injury and bankruptcy before joining my firm. Mr. Aguilar's hourly billing rate is $275/hour. Mr. Aguilar's billing entries are indicated by the initials "GA" in the billing statement exhibited to this declaration.

56. Zachary Powell is an associate at Knight Law Group, LLP. He received his undergraduate degree from the University of California, Berkeley and his law degree from the University of the Pacific, McGeorge School of Law. Mr. Powell was admitted to the Missouri Bar

in 2013 and the California Bar in 2015. Mr. Powell's billing rate is $250/hour, and his billing entries are indicated by the initials "ZP" in the billing statement exhibited to this declaration

57. Russell Higgins is a Senior Associate with the firm and was admitted to practice in 2003. Mr. Higgins graduated from Pepperdine University School of Law and his hourly rate in this matter is $450/hour. Mr. Higgins' billing entries are indicated by the initials "RH" in the billing statement exhibited to this declaration.

58. Chris Swanson is a Senior Associate in my office. Mr. Swanson graduated from UCLA School of Law in 2011 where he distinguished himself academically. Mr. Swanson has been an Associate at my firm since 2014. His prior professional experience includes individual and class action consumer protection law. Mr. Swanson has been selected as a Rising Star by Super Lawyers in 2018 and 2019. Mr. Swanson's billing rate at my firm is $375/hour. Mr. Swanson's billing entries are indicated by the initials "CS" in the billing statement exhibited to this declaration.

59. Roger Kirnos is a Partner in my office. Mr. Kirnos graduated from Southwestern Law School in 2009 in the top 10% of his class with cum laude honors. Mr. Kirnos previously was an extern for former Chief Judge Alex Kozinksi of the Ninth Circuit Court of Appeals and an extern for Judge F. Gary Klausner of the United States District Court, Central District. Mr. Kirnos has been trial counsel in over twenty lemon law cases that went to jury verdict, and approximately a dozen more that settled once trial began. The hourly rate for Mr. Kirnos is $425/hour, and his billing entries are indicated by the initials "RK" in the billing statement exhibited to this declaration.

60. Deepak Devabose is an associate at my firm. Mr. Devabose was admitted to the Bar in 2014 and has been working at the firm since 2015. He graduated from Pepperdine University School of Law and received his undergraduate degree from Emory University. He has earned the Certificate in Reasonable Attorney Fees from the National Association of Legal Fee Analysis, which specializes in attorney fees and legal billing. His hourly rate is $275/hour. His billing entries are indicated by the initials "DD" in the billing statement exhibited to this

declaration.

61. Alastair Hamblin was an associate at Knight Law Group and was employed by the firm since January 2016. Mr. Hamblin graduated from Southwestern Law School in 2007. He specialized in consumer law, lemon law, and contract law. Prior to joining the firm, Mr. Hamblin practiced general commercial, insurance, products liability, and environmental law defense for four years. Mr. Hamblin's billing rate at the firm was $325/hour. Mr. Hamblin's billing entries are indicated by the initials "AH" in the billing statement exhibited to this declaration.

62. Diane Hernandez is of counsel with my firm and frequently works in lemon law cases. She was admitted to practice in California in 1997. Ms. Hernandez's hourly rate in this case was $375/hour, and her billing entries are signified by the initials "DLH" in the billing statement exhibited to this declaration.

63. As always, Knight Law attempts to keep attorney fees and costs down while providing vigorous and effective representation.

64. All time billing entries were completed contemporaneously with each dated entry or near in time to the work performed. I have personally reviewed the billing entries to ensure that they appropriately reflect the time expended. I have removed or reduced any time I felt was excessive, duplicative, or otherwise unreasonable, or I have labeled the entry as a "no charge", as identified by the "N/C" in the invoice. My firm **does not bill clients** for secretarial support staff time.

65. While not controlling as to a reasonable rate for a contingent plaintiff attorney, one of Ford's law firms utilized in this matter and related matters charges 450 per hour for a fifth-year associate who did not attend trial. Ford's counsel has also declared that 450 per hour is either at *or below* the market rate for *defense* attorneys of similar experience in both Orange County and San Joaquin County. Attached hereto as **Exhibit E** is a true and correct copy of the declaration of Ford's counsel filed in this matter in support of its request for sanctions. Attached hereto as **Exhibit F** is a true and correct copy of the declaration of Ford's counsel from the matter of *Misner v. Ford*, County of Orange, case number 30-2013-00668307-CU-BC-CXC attesting to the same.

Ford has also attested to hundreds of hours in trial preparation time in the matter of *Melton v. Ford*, County of San Diego, case number 37-2017-00018831-CU-BC-CTL. Attached hereto as **Exhibits G-H** are Ford's counsel's declarations from *Melton v. Ford* attesting to a portion of their trial preparation time which they sought to recover as sanctions. Ford later amended their existing trial documents and filed dozens of new trial motions that were not included in the preparation time.

**Evidence to Support the Reasonableness of Hourly Rates for Attorneys**

66. I am aware of the hourly rates of other attorneys in California who work in the area of lemon law and consumer law. I bill my time at an hourly rate of $550 per hour. An hourly rate of $550 per hour is reasonable, and consistent with other attorneys who litigate consumer matters and who have a comparable level of experience.

67. I have included fee awards in other Ford 6.0L diesel cases, including ones that went to trial.

68. On April 4, 2019, Judge Daniel A. Ottolia awarded over 91% of the lodestar fees requested by motion in the total amount of $731,885.25 in the matter of *Leonard Coon v. Ford Motor Company* (Riverside County Superior Court, Case No. MCC1300767). *Coon* was a similar 6.0L case that also went to trial. The court found all of the hours worked to be reasonable. The court also found all hourly rates at or below $500/hour to be reasonable.

69. On January 9, 2019, Judge Tamara L. Mosbarger awarded $714,233.00 in attorneys' fees in the matter of *Brown vs. Ford Motor Company* (Butte County Superior Court, Case No. 160060). This award is over the amount of the original lodestar request and includes a .3 multiplier for risk and delay. *Brown* was a similar 6.0L case that also went to trial, and Greenberg Traurig represented Ford with William Goines as lead trial counsel. Ford did not object to every piece of evidence in the *Brown* case, and utilized fewer witnesses. A true and correct copy of the signed order is attached hereto as **Exhibit I**.

70. On January 5, 2018, Judge Mel Red Recana granted full requested lodestar attorney fees in the amount of $529,885.50 and $96,840.81 in costs and expenses in the matter of *Margeson v. Ford Motor Company* (Los Angeles Superior Court, Case No. BC549430), which represented

100% of the fees and 98% of requested costs and expenses. Judge Recana further awarded a 1.8 multiplier of $423,908.40 to be added to the fee award for a total of $953,739.90 in fees. *Margeson* was a similar 6.0L case that also went to trial. After this first trial loss, Ford brought in multiple new law firms and ratcheted up their litigation strategy, significantly increasing the length and cost of trial. A true and correct copy of the signed order is attached hereto as **Exhibit J.**

71. On October 24, 2018, Judge Kelly L. Neel awarded 100% of requested lodestar attorneys fees in the amount of $189,230.00 and full requested costs and expenses in the amount of $32,079.98 in the matter of *Furber vs. Ford Motor Company* (Humboldt County Superior Court, Case No. DR130223). The hourly rates awarded ranged from my rate of $550 for senior-level attorneys such as myself; $425 to $350 for partners Lauren Ungs and Amy Morse; $375 to $350 for "contract/of counsel" attorneys Diane Hernandez and Christopher Thoms; $375 to $350 for senior associates Kristina Stephenson-Cheang and Christopher Swanson; and $225 for younger attorneys. *Furber* was a similar 6.0L case that settled before trial. A true and correct copy of the signed order is attached hereto as **Exhibit K.**

72. On June 18, 2018, Judge Richard Henderson awarded lodestar attorneys fees in the amount of $168,242.50, costs and expenses in the amount of $26,663.24, and a 1.2 multiplier of $33,648.50 in matter of *Reynolds v. Ford Motor Company* (Sonoma County Superior Court, Case No. SCV-254959). Specifically, the Court deemed a rate of $500 per hour reasonable for senior attorneys like myself and trial attorney, Bryan Altman's hourly rate of $500 per hour as reasonable. The attorney fee award represents more than 100% recovery of the lodestar fees and costs requested by motion in the matter. *Reynolds* was a similar 6.0L case that settled before trial. A true and correct copy of the signed order is attached hereto as **Exhibit L.**

73. I request a multiplier of 1.5 based on my contingent fee, the risk and delay in payment associated with a contingent fee scenario, and the result achieved. Such a multiplier is reasonable and towards the low end under the established law. (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 255.) Plaintiffs' attorneys are paid only if Plaintiffs prevail, unlike Defendant's attorneys who get paid monthly regardless of the outcome. Moreover, Defendant's

attorneys typically have a continuing and ongoing relationship, whereas this firm will most likely not have the opportunity to represent Plaintiffs again.

74. It is not uncommon for attorney's fees and costs to exceed the client's damages. The Legislature acknowledged such a circumstance, which is the reason behind the fee shifting provision of the Song-Beverly Act and the CLRA. Otherwise, consumers would be left without opportunity for redress when their damages were not enough for an attorney to take the case on a contingent fee or hourly rate basis. Such a result occurs in large part because of dealerships' or vehicle manufacturers' refusal to adhere to statutory laws protecting consumers, resistance to honoring consumers' complaints, and generally playing games or simply abusing discovery procedures. For example, Ford could have avoided paying any attorney fees whatsoever had it admitted to its wrongdoing early on. Instead, Ford engaged in expensive litigation, and drove up fees and costs by, among other things, filing a Demurrer and Motion to Strike Plaintiffs' Complaint, filing a Motion for Summary Adjudication, engaging in extensive discovery, stone-walling Plaintiff's discovery efforts, filing more than fifty motions in limine, and fighting this case through trial.

75. Song-Beverly Act and automotive CLRA cases are not simple actions. They require a specialized understanding of the full scope of consumer protection laws, which are highly nuanced. The cases also require knowledge of intricacies of automobiles and a lexicon associated with them, as well as a knowledge concerning how to investigate these matters. They also require knowledge of auto manufacturers' and dealers' protocols for repairing vehicles.

76. Generally speaking, clients of the firm are benefitted by the experience of this firm insofar as work-product from other cases can be used in this case as well. Hence, a substantial amount of time was saved by not needing to draft each document from scratch and little time was needed to "get up to speed" in this specialized area of law. In effect, Ford also benefitted when it comes to a determination of reasonable attorney's fees to be paid because there are numerous cost-saving techniques employed by the firm.

77. Ford itself made this matter more complex by maintaining it had no liability and

declining to submit reasonable offers to settle the matter early in the litigation.

78. As shown by the number of cases discussed herein and the positive results achieved on behalf of each client, the hourly rate is reasonable and the number of hours expended are reasonable. The fees incurred in this litigation are the direct result of Ford's own obstructive and aggressive defense.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 28th day of May 2019, at Los Angeles, California.

STEVE MIKHOV
Declarant

# EXHIBIT 4

**KASOWITZ LLP**
Daniel A. Saunders (SBN 161051)
DSaunders@kasowitz.com
Matthew S. Manacek (SBN 312834)
MManacek@kasowitz.com
1801 Century Park East, Suite 2400
Los Angeles, California 90067
Telephone: (424) 288-7900
Facsimile: (424) 288-7901

Edward E. McNally (admitted *pro hac vice*)
EMcNally@kasowitz.com
Daniel J. Fetterman (admitted *pro hac vice*)
DFetterman@kasowitz.com
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1715
Facsimile: (212) 506-1800

*Attorneys for Plaintiff Ford Motor Company*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FORD MOTOR COMPANY, a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>STEVE B. MIKHOV; ROGER KIRNOS; and AMY MORSE,<br><br>Defendants. | Case No: 2:25-cv-04550-MWC-PVC<br><br>**SECOND AMENDED COMPLAINT FOR:**<br><br>**1. RICO – Violation of 18 U.S.C. § 1962(c)**<br>**2. RICO Conspiracy – Violation of 18 U.S.C. § 1962(d)**<br><br>**[Jury Trial Demand]** |

Plaintiff Ford Motor Company ("Plaintiff" or "Ford") files this Second Amended Complaint against defendants Steve B. Mikhov ("Mikhov"), Amy Morse ("Morse"), and Roger Kirnos ("Kirnos") (collectively, "Defendants") for damages and other relief for Defendants' violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"). In support of these claims, Ford alleges as follows:

**INTRODUCTION**

1. In 1913, Ford's founder, Henry Ford, revolutionized the automobile industry by introducing a moving assembly line, which enabled Ford to efficiently manufacture automobiles, create jobs for middle-class Americans, and make the automobile accessible to all. A century later, Defendants—all licensed attorneys with legal and ethical duties of truthfulness and candor to the courts and to their clients—adopted the principles of the moving assembly line to devise and operationalize a fraudulent scheme to create false billing records after the conclusion of their client's case, built around Knight Law Group LLP's ("KLG") fee motion department (the "Fee Motion Department") that employed "drafters," "reviewers," and "finalizers" to defraud Ford and other auto manufacturers into paying tens of millions of dollars in legal fees for make-believe work.

2. Defendants picked the perfect industry to deploy their fraud. KLG primarily represents plaintiffs in lawsuits arising out of California's Lemon Law (defined below). Once a lawsuit under this law concludes, if it is resolved in the plaintiffs' favor, their attorneys may seek fees for "actual time expended." In case after case over more than a decade, KLG's (nominally) former managing partner Steve Mikhov and current managing partner Roger Kirnos defrauded Ford and other auto manufacturers to pay for legal services that were never rendered and induced Ford and other auto manufacturers to settle fee claims that they falsely claimed were for reasonable attorneys' fees based on actual time expended.

3. To further their fraud, Mikhov and Kirnos also lied under oath to federal and state courts throughout California about the time sheets created by KLG's Fee Motion Department operated under Defendants' supervision. The lies included the oft-repeated statement that KLG's attorneys' "time billing entries were completed contemporaneously with each dated entry or near in time to the work performed." Instead, the extremely limited preliminary discovery in this matter—which Defendants fought tooth-and-nail to block—has revealed the truth: that while some KLG attorneys may have recorded their time, most of the billing entries were created after the fact and under Defendants' direction by KLG's dedicated Fee Motion Department, the primary function of which was to fabricate billing records to fraudulently obtain funds from Ford and other auto manufacturers. At the direction of Defendants, members of the Fee Motion Department would, on a regular basis, arbitrarily enter time entries for particular attorney tasks prior to the filing of fee applications. In that way, the Department—an assembly line of fraud—churned out countless billing statements stuffed with fraudulent entries and generating tens if not hundreds of millions of dollars of fictitious and ill-gotten attorney's fees for Defendants at Ford's expense. For example, by comparing the small percentage (approximately 11-12%) of KLG' fee applications that Ford has in its possession with prior deposition testimony of KLG witnesses recently produced in discovery, Ford has already identified at least 8,963 specific fraudulent time entries in 1,152 separate cases totaling $865,301 in fees attributable to Defendant Morse alone for work she has admitted under oath she never performed.

4. And this is only the tip of the iceberg. The scheme was carried out through a sophisticated criminal enterprise that ingeniously spread KLG's fraudulent billings across thousands of cases against many auto manufacturers so that Defendants' fraudulent scheme would go undetected. Indeed, but for the tremendous expense incurred by Ford to audit and detect the fraud, this criminal enterprise would have continued unabated. The exercise of creating fictional time sheets was not in the service

of any clients' interests. It occurred *after* the clients' own cases were fully resolved upon the conclusion of the settlement or trial that determined those rights. Defendants typically required their clients to sign engagement letters under which the clients would pay a contingency fee and under which the clients *relinquished all interests in later statutory fee recoveries*. The real party in interest with respect to collecting payments from Ford was therefore not the clients, but rather the enterprise that existed for that purpose. Ford brings this suit to end this wide-ranging and corrupt scheme to defraud Ford and the courts by claiming thousands of hours in wholly fictitious billings for time never worked and created well after the alleged work for the cases was completed.

5. To be clear, while Defendants have attempted to downplay their illegal conduct by mischaracterizing this case as being about "padding" of time entries (itself a fraud and disgrace to the profession) or run-of-the-mill "mistakes," that is decidedly not what is alleged here. This is not a "padding" or "inflating" case. Rather, this is a case about an organized, deliberate, and pervasive scheme across thousands of cases to defraud Ford, other auto manufacturers, the courts, and even KLG's own clients through the fabrication of entirely fictitious time entries to overstate the amount of work performed.

6. The ringleader of the criminal enterprise, Mikhov, and his partners at KLG orchestrated this scheme to parlay the generous fee-shifting provided for by California's Lemon Law into an opportunity to extract unearned payments for themselves from Ford and other auto manufacturers. Ford has identified hundreds of instances in which Defendants' sham billing records were unlawfully used to collect well over $100 million of legal fees that Defendants pocketed. A review of fee records in multiple matters takes one on a magical mystery tour of fictitious billings created after their clients' cases have resolved in full, including individual attorneys who claimed to have worked more than 24 hours per day or simultaneously attended different trials or depositions in widely separated jurisdictions. The physical impossibility of such

billings is a direct consequence of Defendants' long-concealed fabrication of evidence, repeated lies to Ford, and perjury to the courts amounting to obstruction of justice, and constitutes prima facie evidence of Defendants' unlawful conduct and fraud.

7. As an example, one of Mikhov's former partners, Morse, billed more than 24 hours in a day more than 34 times, while topping 20 hours per day on at least 66 occasions. Those indefensible claims included an ostensibly heroic but physically impossible 57.5-hour workday in November 2016. And this is based only on the small sampling of KLG's billing records in Ford's possession; when the full universe of those records are produced, Morse's 57.5-hour day could well become 500 hours or more.

8. Further proof of the fraud is that Morse herself has admitted under oath that her job responsibilities at KLG from 2016 on primarily involved administrative and supervisory duties, that most of her time was spent managing personnel and was non-billable, and that she herself did not bill or record hourly time for numerous tasks that KLG time records claim she performed, such as drafting discovery, drafting motions, and communicating with clients. And again, this is based only on the small percentage of KLG's billing records that Ford has obtained. When that percentage is taken as a representative sample, the scale of the fraud contained in the remaining approximately 88% of KLG billing records is likely to be substantially larger.

9. As another example, Mikhov billed a large number of duplicate entries that described identical tasks on the same day for numerous clients with only slight differences in wording—a circumstance that is highly unlikely to occur in the real-world practice of law, but is fully consistent with the large-scale fabrication of time entries across a multitude of cases.

10. These sham billings, many or most of which were made up out of whole cloth often years after the fact, fueled a highly lucrative and fraudulent criminal enterprise that was built on deceiving and defrauding Ford and other automobile manufacturers out of millions of dollars, abusing the judicial system, and duping

unsuspecting clients who were not aware of and did not approve their lawyers' unethical and fraudulent practices. The net result of this fraudulent scheme was stealing many millions of dollars from auto manufacturers through a pattern and practice of false representations that were carried out by means of interstate wires and U.S. mail. These and other similar fraudulent time entries have continued to be used to wrongly obtain settlement payments from Ford, including as recently as August 2025. For example, in a single email on September 6, 2024, KLG sent ten fee statements to Ford's outside counsel, seven of which reflect fraudulently created and false time records dating back as many as six or more years. Notably, these fee statements were sent to Ford prior to the commencement of any fee litigation regarding the statements.

11. Defendants concealed their fraudulent scheme by spreading their fictitious billing records across numerous matters involving different California courts, cases, and auto manufacturer defendants. They also pressured their own clients into unconscionable contracts that—far from advancing their clients' legitimate interests—imposed draconian penalties on any clients who attempted to settle their own claims before Defendants could run up billings or even disclosed the terms of their representation, such as by seeking advice from independent counsel. Defendants undertook this scheme not to plead and prove their clients' right to statutory damages, but rather as part of a separate, post-settlement or post-trial process that was entirely limited to their *own* interests in collecting fees pursuant to private contracts with KLG's clients, who signed away any right to or interest in a fee award rendered in their name.

12. Defendants defrauded Ford and other manufacturers out of millions of dollars based on fraudulent billing records and misrepresentations about fees supposedly incurred. Defendants' material fraudulent misrepresentations were transmitted in the form of settlement demands for unearned fee amounts for services that were not truly rendered. Defendants also perpetuated their scheme in part by making false and knowingly fraudulent representations to the courts, committing obstruction of justice

through perjury, submitting and relying on fabricated evidence, presenting fraudulent claims for money, and misleading all of the judges and lawyers who were privy only to selective information presented by Defendants in each individual case to prevent the detection of their false and fraudulent billing practices—all of which deprived the fee application process of any legitimacy. Although under normal circumstances Defendants may have been entitled to some legal fees, these proceedings lacked *any* legitimacy because Defendants' settlement demands and fee applications were holistically fraudulent. Defendants did not merely supplement legitimate billing records with additional hours; rather, the billing entries were inherently fraudulent, submitted by Defendants with the false representations that billing entries were completed contemporaneously, when they were invented after the fact through the systematic operation of KLG's Fee Motion Department.

13. Defendants' misconduct is exposed by cross-referencing fee records from different matters, before different judges, against different car manufacturers to track the claimed time entries for each lawyer in the criminal enterprise for each individual date over several years. Only then does Defendants' massive fraud involving false and fraudulent hours and billings become clear and unmistakable.

14. Defendants' scheme also misuses the structure of Lemon Law litigation. Fee petition proceedings are not part of the merits of the underlying lawsuit in which the alleged grievance of the plaintiff is redressed; instead, fee motions are not made or considered by the court until the substantive Lemon Law claim has been resolved either through settlement or trial, at which point the Lemon Law plaintiff's vehicle is repurchased, the plaintiff is otherwise compensated, and KLG takes its contingent percentage of the client's recovery. Then, the case is typically dismissed with the court retaining ancillary jurisdiction only for post-settlement or post-trial issues, including a statutory entitlement to payment of attorney's fees based on actual time expended. That distinct jurisdictional grant allows a court to consider attorney's fees even when the

underlying case is resolved. The fee proceeding is totally separate from the merits of the underlying Lemon Law litigation: the issue presented is different; the legal standard is different; the parties in interest are different; and the evidence is different. Nor do fee proceedings affect the finality of the merits ruling or settlement.

15. As applicable to this case, many months—sometimes as much as a year or more—after the merits of Lemon Law cases were finalized and the plaintiffs' grievances redressed, KLG would make a demand for fees to Ford and other manufacturers directly, threatening that unless Ford paid the claimed fees without KLG having to provide time records or any other proof of their claimed fees, KLG would file a fee motion and seek more than its original demand using a substantial multiplier. In some cases, Ford would settle the fee claims based on KLG's fraudulent demands, meaning there was no court action on those demands. KLG's fraudulent demands were material to Ford's settlement decisions. If Ford refused to pay without receiving time records, then KLG would file a fee motion, starting a new proceeding before the court claiming statutory entitlement to fees. Because discovery had long been closed, Ford would be unable to obtain discovery regarding the bases for the fee application. KLG would then charge Ford for its time associated with the fee hearing—often spanning multiple days of (alleged) attorney labor to prepare and attend.

16. Ford had no ability at the time of KLG's fraudulent fee demands or the judicial proceedings that sometimes followed those demands to discover the fraud in each of thousands of cases and every reason to accede to Defendants' demands, particularly as that fraud only becomes apparent when time sheets across those cases and other cases against other auto manufacturers are aggregated and compared.

17. Defendants' conduct violates the Racketeer Influenced and Corrupt Organizations Act, 28 U.S.C. § 1961 et seq. As further described below, Defendants are a group of persons associated with an enterprise within the meaning of the RICO statute who have the common purpose to unlawfully engage in fraudulent billing practices and

have engaged in numerous predicate acts (including mail fraud, wire fraud, and obstruction of justice) that constitute a pattern of racketeering. As a result, Defendants' misconduct entitles Ford to treble damages and declaratory relief barring Defendants from attempting to collect and retain their improperly obtained fees.

18. Defendants' conduct cannot reasonably be described as zealous advocacy or a legitimate exercise of KLG's, Defendants', or KLG's clients' First Amendment rights to petition the government. Instead, Defendants sought to fraudulently induce payments directly from Ford and, if necessary, to unduly influence the courts through criminal and fraudulent conduct in proceedings that did not involve redress of the underlying Lemon Law grievance, but were separate proceedings that involved a claim for payment. Indeed, Defendants, despite being officers of the court, routinely corrupted the integrity of the judicial process by intentionally operating a fraud on every court in which they appeared bearing their fraudulent fee statements and perjured declarations. This fraud and perjury—hidden as it was by being spread over numerous cases—fully impaired the ability of each court to fairly adjudicate each individual fee motion before it and deprived those proceedings of legitimacy.

## PARTIES

### Plaintiff

19. Plaintiff Ford is incorporated under the laws of the State of Delaware, with its principal place of business in Michigan.

### Defendants

20. Defendant Mikhov is a founding partner and former managing partner of KLG who now claims to reside in Puerto Rico. Plaintiff is informed and believes, and thereon alleges, that at all relevant times herein, Mikhov personally and knowingly participated in the unlawful activities alleged herein, including, but not limited to, by knowingly making and allowing fraudulent entries for time not actually worked, making fraudulent extra-judicial fee demands of Ford, and obstructing justice through the

knowing submission of fraudulent extra-judicial demands, fraudulent evidence and false declarations attesting to the accuracy and contemporaneous creation of KLG's billing records. His scheme—undertaken on behalf of Defendants and not on behalf of KLG's clients—was all too successful. He is the ringleader of Defendants' criminal association to obtain fraudulent settlements from, and fee judgments against, Ford that are not authorized by statute. Mikhov routinely associates with other lawyers at KLG to carry out the scheme. As the scheme's ringleader, he was responsible for creating KLG's Fee Motion Department as a formal system to create fictitious time entries in Lemon Law cases for work never performed or contemporaneously billed. While at KLG, Mikhov performed very little billable work himself but rather handled marketing activities, client intake, and approval of settlements. Mikhov began his involvement in this scheme as a founding partner of O'Connor & Mikhov and later shifted his efforts to KLG. Despite his nominal separation from KLG and purported relocation to Puerto Rico, apparently to avoid both federal and California income taxes, Mikhov continues to manage KLG and to wield considerable influence on the other lawyers that are members of the criminal enterprise. From approximately four years ago to the present, Mikhov has made statements claiming that he has separated from KLG and purportedly moved to Puerto Rico. He has been removed from KLG's website, removed from pending cases, and he has changed his affiliation with the California State Bar from KLG to instead affiliate with a Puerto Rico company that he founded, Rusk LLC. Rusk LLC is not a law firm nor is it in the business of practicing law in California. Instead, it purports to be a management consulting company for hire, helping KLG "adapt its business strategy in the face of ever-expanding challenges" and "reforming company culture or looking to streamline internal processes." Nonetheless, despite Mikhov having publicly purported to separate himself from KLG and from California litigation matters four years ago, he has maintained his role working with the other Defendants to oversee and direct the enterprise's operations and its fraudulent fee-related scheme, and

continued to profit from the enterprise's fraudulent activities. The specifics of what amounts and how he receives money from the enterprise are peculiarly within the knowledge of defendants and will be more fully uncovered in discovery.

21. Defendant Morse is a partner at KLG who supervises KLG's litigation department and who resides in the State of California. Plaintiff is informed and believes, and thereon alleges, that at all relevant times herein, Morse personally and knowingly participated in the unlawful activities alleged herein, including, but not limited to, by knowingly making and/or allowing the creation of fraudulent entries for time not actually worked including in thousands of cases in which KLG did not create contemporaneous time records but fabricated them long after the cases had been completed, for the financial benefit of the enterprise. As she has testified that she rarely if ever performed many of the billable tasks recorded in her name, Morse knew that the great majority of time entries submitted to Ford and to courts under her name were fictitious.

22. Defendant Kirnos is a partner at KLG who resides in the State of California. Plaintiff is informed and believes, and thereon alleges, that at all relevant times herein, Kirnos personally and knowingly participated in the unlawful activities alleged herein, including, but not limited to, by knowingly making and/or allowing the creation of fraudulent entries for time not actually worked and by obstructing justice through the knowing submission of fraudulent extra-judicial demands, fraudulent evidence and false declarations attesting to the accuracy and contemporaneous creation of KLG's billing records.

**<u>Additional Members of the Enterprise</u>**

23. KLG constitutes an enterprise within the meaning of the RICO statute. Mikhov, Kirnos, Morse, and other attorneys and employees at KLG work in tandem to conduct the operations of the enterprise, including by creating fictitious time sheets that misrepresent the tasks completed and the amount of time spent on cases, and regularly

split the proceeds unlawfully obtained by relying on these false and fraudulent billing records to obtain fee awards. Defendants oversee a Fee Motion Department, made up of ten or more employees at any one time, whose primary task is to create fictitious billing records to support fee applications. At the direction of Defendants, members of the Fee Motion Department create time records in which they falsely add fictitious tasks, assign the amounts to be billed to the fictitious task, and choose a billing attorney to whom the fictitious task is to be attributed. These fictitious billing records are then used to support fraudulent and perjurious fee demands and applications.

## JURISDICTION AND VENUE

24. This Court has federal question jurisdiction in this matter pursuant to 28 U.S.C. § 1331. This matter arises out of violations of the RICO Act, 18 U.S.C. §§ 1961 et seq. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions by Defendants giving rise to the claims occurred in this District.

## GENERAL ALLEGATIONS

### I. BACKGROUND FACTS

#### A. Defendants' Fraudulent Billing Scheme

25. This action centers on Defendants' criminal scheme to extract unearned fee payments from Ford based on false and fraudulent billing records in Lemon Law cases throughout California. Defendants' fraudulent demands for payment from Ford and their submission of fictitious billing records over many years, among other actions, constituted a pattern of multiple related acts of mail fraud in violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. § 1343, and obstruction and impediment of justice in violation of 18 U.S.C. § 1503.

26. California's "Lemon Law," the Song-Beverly Consumer Warranty Act, Civil Code §1790 *et seq.,* provides car manufacturers must pay "the aggregate amount of costs and expenses, including attorney's fees based on *actual time expended*,

determined by the court to have been reasonably incurred by the buyer" in connection with an action under the statute. Cal. Civ. Code § 1794(d) (emphasis added). Fees are determined after the conclusion of the underlying Lemon Law litigation. If the parties do not reach a settlement, counsel for the party seeking the benefit of the Lemon Law's fee-shifting provisions in court must submit a fee application that is supported by competent evidence, including timesheets and other billing records, reflecting work actually performed on behalf of the car buyer. The fee applicant has the burden of showing that its requested fees are reasonable.

27. Unbeknownst to Ford or the courts, Defendants exploited the Lemon Law by creating fake time records in thousands of warranty claim cases that they demanded Ford and other automakers pay after resolution of a consumer's underlying claims, seeking millions of dollars in compensation for work Defendants had not performed. Defendants' fee petitions were not based on "actual time expended" in each case, as required by California law. Defendants also leveraged these fake time records to make fraudulent demands for payment from Ford and extract settlements that were based on material fraudulent representations.

28. Defendants participated in the fraudulent billing scheme knowingly and with the intent to deceive and defraud Ford for their benefit. In doing so, Defendants knowingly and intentionally made misrepresentations—in extra-judicial communications as well as in sworn, perjurious declarations—to Ford and to numerous courts about their fictitious billing records. When these misrepresentations were made in court, through the submission of sham records about the legal work performed, they impeded the administration of justice, defrauded Plaintiff, and stripped the statutory fee recovery procedure of its legitimacy. This unlawful conduct concealed from Ford and the courts that Defendants sought fictitious fees based on false billing records stemming from their fraudulent billing practices. Defendants' intentional misrepresentations and fraud resulted in unwarranted fee payments that harmed Ford's business and property

interests by causing Ford to pay more than $100 million for Defendants' sham legal fees and to expend significant resources to detect and now attempt to end this fraudulent criminal enterprise, as well as by damaging Ford's reputation and goodwill. Defendants' shared objective was and is to rake in many millions of dollars of legal fees each year without regard for the actual nature, extent, or value of the work performed for consumer clients.

29. Defendants' billing fraud went to the central issue of the fee petition proceedings—how much Ford owed pursuant to the fee-shifting provision in California's Lemon Law—and affected the outcome of those proceedings.

30. Specifically, from 2015 through the present, to further their fraudulent scheme against Ford and other auto manufacturers, Defendants have routinely made fraudulent demands for payment from Ford for services that were not truly rendered. Defendants have prepared and submitted false and fraudulent time records to Ford and to courts in Lemon Law cases to extract exorbitant amounts of fees and costs regardless of whether Defendants even performed the work reflected in those records. Defendants also fraudulently extracted substantial settlements from Ford based on the fraudulent benchmarks set in other cases based on false time records. In so doing, Defendants repeatedly received and accepted funds that were in effect and in actuality *stolen* from Ford based on those false and fictitious time records.

31. As a result of its limited preliminary discovery in this action, Ford has learned that KLG members and employees have testified that KLG attorneys frequently did not record time contemporaneously. Rather, Defendants oversaw a process by which the purported time entries included in KLG's fee motions were generated by non-lawyer members of a dedicated Fee Motion Department after the fact—often years after the purported work in question—to support KLG's fee demands against Ford and other auto manufacturers. Although Ford had earlier begun investigating apparent specific instances of overbilling by KLG where 24+ hour days and other irregularities had called

particular timesheets and their corresponding payments into question, and although Ford was informed in or around October 2024 that KLG attorneys did not regularly begin keeping contemporaneous records until 2018, Ford—at the time it originally received KLG's time records and made fraudulently induced payments to KLG—did not know and had no way of discovering that KLG's purported time sheets, records, and fee motions were fictitious and that virtually ***every*** payment based on all such time entries had been obtained by fraud, regardless of whether Ford had been able to contemporaneously identify any specific suspicious time entry related to such payment.

32. In sworn testimony given in unrelated litigation, Defendants and KLG employees gave a small window into Defendants' multi-step fraud—the full scope of which is still to be uncovered. Testimony from each Defendant confirmed that KLG attorneys did not consistently record their time contemporaneously or ensure that the time entries ultimately attributed to them reflected time they actually worked. Testimony also indicates that, rather than record their time accurately and contemporaneously, Defendants relied on the Fee Motion Department to generate false billing records to fraudulently recover unearned fees from Plaintiff and other car manufacturers. Portions of the deposition transcripts referred to herein are contained in Exhibit K.

33. Kirnos, who testified that his duties as partner included "supervising and addressing matters involving settlement of cases [and] fee motion[s]," claimed he did not know whether attorneys at the firm contemporaneously entered their time. When asked in 2021 whether KLG attorneys "all enter their own time in a billing program," Kirnos responded: "I can't speak for what other attorneys do. My understanding is that we have a billing program, and they're supposed to, and I have seen results. So I know that they do on a general level[.]"

34. Morse testified that "a lot of what [she did was] on the administrative end of things, and [] would not be billed to a case," but as will be detailed *infra*, KLG billing

records indicate that she billed unnatural and sometimes impossible amounts on individual KLG cases. The discrepancies regarding Ms. Morse's billing were further highlighted through the testimony of Elin Howard, detailed below.

35. Mikhov testified that he would only record his time spent working on cases "from time to time" and in a "hodgepodge" fashion, and that he would "recreate" "what [time he could] remember" sometimes a month or two after he would have done the purported task. Once he had done that, Mikhov testified that he would give a paper with this time to Kirnos or Guadalupe Lopez, a non-lawyer KLG employee who reported to Mikhov and Kirnos and worked in the Fee Motion Department, to enter into fee motions. Mikhov also testified that "the fee motion department . . . ha[d] authority to enter time for various tasks for [Mikhov] absent [Mikhov] handing them a written sheet or Mr. Kirnos handing them a written sheet" with purported time entries.

36. In sworn deposition testimony, KLG employee Elin Howard described how the Fee Motion Department operated during the time period from 2017 through the deposition in March 2021. Howard, like other members of the Fee Motion Department—who were divided by role into "drafters," "reviewers," and "finalizers"—was tasked with "prepar[ing] to file the motion for attorney's fees and costs after a case has settled," and to that end would "review attorney time billing." Members of the team would review attorney tasks that KLG attorneys had input into KLG's billing software to compile an invoice in a new, separate document for filing a fee petition. Howard testified that where information on time spent as stored in KLG's billing software was, in the opinion of the Fee Motion Department, lacking, team members were authorized to "input an attorney task and identify a particular set of hours for that attorney." "[***O]n a regular basis***" (and for "[m]ore than 50 percent" of case files she handled), Howard would determine the amount she estimated an attorney might conceivably have spent on a particular task and would then input that imagined amount into a spreadsheet that would be submitted in support of KLG's fee petitions. In doing so, Howard and the rest

of her team initially relied on "guidelines" provided by to them to determine the amounts to be added for specified "tasks," but Howard eventually began to "rely on [her] experience" and "history with the company" to "set a certain amount of time" for a particular task. Under this system, Howard testified that she would, for example, regularly input one hour for "Initial communication with client," nine-tenths of an hour for "Analyze vehicle documentation," and half an hour for "Draft Complaint." Howard admitted that she would make these entries without confirming their accuracy with the lawyers whose time she was supposedly entering.

37. The Fee Motion Department's practices were specifically authorized by Mikhov and Kirnos. As stated above, in sworn deposition testimony, Mikhov was asked: "[I]n the fee motion department, do they have authority to enter time for various tasks for you absent you handing them a written sheet [of tasks performed] or Mr. Kirnos handing them a written sheet?" Mikhov answered unequivocally: "Yes." Similarly, Kirnos testified that his responsibilities at KLG included supervising the preparation of fee motions.

38. Mikhov and Kirnos then knowingly used the fabricated records to support their claims for attorney's fees and repeatedly misrepresented to Ford and to the courts —including in sworn, perjurious declarations—that all time billing entries were completed contemporaneously with or near in time to the work performed. Because the fee application process was predicated on billing records created after the fact according to the fraudulent practices of the Fee Motion Department, the entire fee petition process was tainted by Mikhov's and Kirnos's false representations to the courts that their claims were based on reliable contemporaneous records. Defendants failed to properly substantiate their claims for fees, or to provide Ford and the courts with truthful evidence showing the actual time, dates, and attorneys for work on Lemon Law cases. The payments made by Ford to settle fee demands or to comply with court determinations were therefore based on Defendants' fabricated and untrue evidence and

were tainted, unearned, and unwarranted. In short, Defendants' systemic misrepresentations, corrupt and intentional obstruction and impeding of the due administration of justice, and fraud upon Ford and the courts deprived the underlying fee litigations of their legitimacy and rendered them as fraudulent shams. The scope and scale of Defendants' fraud constitutes the type of misrepresentation that deprives the fee proceedings of their legitimacy.

39. The Fee Motion Department created the fictitious and fraudulent billing records at the direction of Mikhov, Kirnos, Morse, and others, all of whom were paid portions of the money KLG obtained from Ford and other automobile manufacturers as a result of the fraud.

40. Over the past ten years, Defendants have submitted and relied on fraudulent and unlawful billing records and perjured declarations to extract fee payments from Ford totaling more than $100 million for purported legal work on behalf of car buyers. It is now clear that the great majority of Ford's payments to KLG, in which Defendants shared, were attributable to fraudulent time records (*i.e.*, records not based on time actually expended, as required by California law), many or most of them made up years after the fact.

41. Defendants intended that Ford rely, and Ford did reasonably rely, on Defendants' fraudulent billings in paying false and fabricated fees associated with fraudulently obtained fee awards and settlements.

42. Ford has reviewed thousands of KLG's billing invoices and time records for the years 2013-2024, which Ford believes represent approximately 11-12% of all consumer warranty cases that Defendants handled during that time. Despite Ford having had access to only this small percentage and sampling of billing records submitted by Defendants, an analysis of the records included in that sampling reveals a gamut of obviously made-up work and physically impossible working hours and appearances that stand as irrefutable evidence of Defendants' fraudulent billing

practices. The false and fictitious time entries can be discerned and detected only when thousands of time entries from hundreds of timesheets across scores and scores of different cases are all aggregated. Examples include, but are not limited to:

(a) Numerous instances of attorneys purportedly working over 24 hours in a single day;

(b) Individual attorneys entering "appearances" simultaneously at full-day depositions and trials in different geographic locations;

(c) Duplicative billing of the same vague task descriptions across multiple cases for comparable amounts of time; and

(d) More than 1,200 no-date entries for clerical tasks performed by Mikhov, as well as equally suspicious dated entries.

**1. Defendants Repeatedly Billed Between 24 and 57.5 Hours Per Attorney in a Single Day, Including for Tasks Never Performed by That Billing Attorney.**

43. Defendants electronically filed and submitted to Ford false and fabricated billing records purporting to reflect tasks that were not actually performed by the attorney for whom that time was claimed.

44. For instance, Defendant Morse has testified under oath that since becoming a "supervising attorney" at KLG in 2016, she has not "propounded written discovery," "drafted or prepared any motions," or had any "direct communications with clients." She also testified that she could not recall the "last time. . . [she] communicated with opposing counsel," which she did "not very often." Morse also testified that in her supervisory role she spent very little time drafting any legal documents. Yet, billing statements attached to sworn declarations filed by KLG include many hundreds of entries for Morse that purport to attribute to her time for performing these very tasks during this period, including frequent entries for communicating with clients and

opposing counsel and hundreds of entries claiming to have drafted written discovery and complaints.

45. Notably, the inconsistency between Morse's testimony and KLG's fee applications cannot fully be attributed to the fraud that took place in KLG's Fee Motion Department. Howard, a member of the Fee Motion Department, testified that, prior to inputting the arbitrary time values, she reviewed attorney billing statements that reflected that Morse performed these tasks—including "preparing complaints" and "drafting discovery"—as recently as 2020 and 2021, notwithstanding Morse's own testimony that she has not performed these tasks since 2016.

46. KLG's billing records reflect that individual attorneys, including Kirnos and Morse, worked more than 24 billable hours a day on numerous occasions—a literal impossibility. Even greater is the number of days on which individual attorneys claim to have worked 20 or more billable hours. This constitutes further evidence of a widespread billing fraud that cannot be explained away as occasional and innocent record-keeping lapses, or even non-innocent but minor "padding."

47. Despite Morse having testified under oath that most of her work is administrative and supervisory and thus she only rarely bills ***any*** time, time entries were submitted representing that Morse worked more than 24 hours a day on 34 separate occasions, including an astounding 57.5-hour workday on November 30, 2016, and 31.3 hours on March 23, 2017. Billing records also claimed that Morse worked between 20 and 23.9 hours a day on 38 separate occasions. During one three-month period (February-April 2017), Morse averaged 483.7 hours a month (with a high of 513.1 hours in March 2017) for an average of 16.5 hours a day in that month (including weekends).

48. The magnitude of Defendants' fraud grows exponentially when looking at Morse's time on an annual basis. In 2016, Morse purported to bill an astronomical 3,106.45 hours—and that is based only on the small sampling of cases for which Ford

has billing invoices it can review. In 2017, Morse was even more prolific, billing an eye-popping 3,975.40 hours—again, based only on the limited subset of cases for which Ford has billing invoices available. Yet Morse testified that from 2016 and on she worked 60 hours per week and between 70-80% of her working time was dedicated to non-billable administrative and supervisory work. Assuming that Morse worked 60 hours per week every week of the year, and making the most generous assumption that only 50% of her time was non-billable, she would have billed a maximum of 936 hours a year—less than 25% of the time shown on Ford's limited subset of her fraudulent time records for 2017 alone.

49. As mentioned above, these figures are based on examination of only the small sampling of billing records—an estimated 11-12% of KLG-filed cases—currently in Ford's possession, and Defendants concealed their fraud by spreading their billings across a large number of cases and auto manufacturers. When the other 88-89% of billing records (including those submitted against other auto manufacturers) are obtained in discovery, Ford reasonably anticipates that the number of 20+ and 24+ hour days purportedly worked by Morse, other Defendants, and potentially other as-yet unidentified or unnamed persons associated with the enterprise will increase exponentially, possibly by a factor of 10 or more.

50. Other clear patterns emerge when reviewing even the limited collection of invoices available to Ford. Morse was a billing attorney on 95% of the cases that Ford has been able to review. She was the billing attorney on 92% of the entries for "Draft Complaint"—totaling more than 450 entries and nearly 350 hours, even though she testified that between 0-5% of her total time worked was billed for drafting legal documents. From 2016-2024, she made more than 4,600 distinct entries with the description "Communicate with Client," totaling nearly 1,150 hours, even though she testified that she never communicated with clients during this period. Based on the information available to Ford—including the statements of KLG's representatives and

Morse's own sworn testimony—each of these entries is entirely manufactured and fraudulent.

51. Kristina Stephenson-Cheang, an associate with KLG, is second only to Amy Morse in the number of 24+ hour-days—seven—she has purportedly billed. On July 6, 2017, Stephenson-Cheang billed 34.1 hours; on July 14, 2017, she billed 25.4 hours; on August 16, 2017, she billed 25.6 hours; on August 21, 2017, she billed 24.5 hours; on November 14, 2017, she billed 28.7 hours; and on December 4, 2017, she billed 28.6 hours. As with Morse, Ford has been able to review only the small sampling of cases for which it has time entries from Stephenson-Cheang, and the true number of 24+ hour days billed in her name is undoubtedly much larger. Stephenson-Cheang was a billing attorney on 90% of the cases that Ford has been able to review.

52. Unless the laws of time and space operate differently at KLG's offices than elsewhere in the universe, these billings are conclusive evidence of fraud. Yet these obviously fraudulent billing records were used, and continue to be used, to support Defendants' extraction of payments for fictitious fees. Although Defendants attempted to conceal these and other fraudulent time entries by spreading them across different payor automobile manufacturers and different plaintiffs so that each individual fee application would appear innocuous in isolation, the sworn deposition testimony confirming the pervasive use of fraudulent billing statements created by KLG's Fee Motion Department leads to the reasonable inference that ***every one*** of KLG's billing records is presumptively fraudulent. These fraudulent billing records were used not only to wrongly obtain fee awards in court, but also as leverage to wrongly extract high and unwarranted settlement payments from Ford.

**2. <u>The Same Tasks Were Fraudulently Billed for the Same Amounts of Time Across Multiple Separate Cases and Timekeepers</u>**

53. Consistent with the admitted after-the-fact fabrication of time and billing records, Defendants generate substantial phantom legal fees by billing for the same repetitive tasks across a multitude of cases at the same time. As an example, attached as Exhibit A is a chart of 489 task descriptions in which an attorney billed to draft a meet-and-confer letter and perform unspecified legal research. There is no plausible reason why those two separate tasks should so frequently be combined other than to mask the time actually spent on the two tasks. In this chart, the unspecified legal research masks the time actually billed for drafting identical or substantially similar meet-and-confer letters. The chart is in chronological order and shows days and periods of time when many letters were drafted without any economy of scale reduction in time allotments. Not surprisingly, these entries overlap with the 24-plus hour days described above. For example, Morse allegedly drafted/researched four letters on March 10, 2017, for which she billed 4.0 of her total 28.0 hours. This is consistent with Howard's testimony regarding both (1) Morse's time entries including discovery tasks after she ceased performing them, and (2) KLG's Fee Motion Department creating time records years after the fact irrespective of actual time spent or even of whether the work had actually been performed.

54. Another example of such repetitive billing is the chart attached as Exhibit B of 596 fee entries submitted by Defendants for "drafting RFAs [Requests for Admission]." As with the meet-and-confer letter entries described above, the chart demonstrates that there are no economies of scale over time and that certain timekeepers, especially Amy Morse and Kristina Stephenson-Cheang, billed to draft (presumably substantially identical) RFAs day after day for extended periods of time. Overbilling for RFA drafting contributed to the 24+ hour days, including 12.9 hours of Amy Morse's 57.5 hours billed on November 30, 2016—which, again, is consistent with sworn testimony establishing that KLG billed Ford for Morse's

purported time on discovery tasks without regard to whether or not she had ever actually performed any such tasks.

55. These and similar fraudulent time entries have continued to be used to make false claims for legal fees and to wrongly obtain settlement payments from Ford, including as recently as August 2025.

### 3. Defendants Rely on Undated and Form Time Entries as Part of Their Fraudulent Billing Scheme

56. Billing records submitted by Defendants include other entries that are belied by the realities of practice. For example, Mikhov, who on information and belief has never first-chaired a trial and did not try cases for KLG, submitted hundreds of invoices that contain fee entries with no date. Such no-date entries exceed 1,200 hours, and the corresponding fees billed exceed $625,000.00. Nearly all entries are a combination of (i) initial communication with client, (ii) initial evaluation of client's claims, and (iii) analysis of vehicle documents. The entries describe identical tasks with only slight wording differences. These and other similar time entries are fully consistent with deposition testimony establishing that KLG created time records from scratch often years after the fact—time entries that KLG continued to use to assert fraudulent claims for legal fees as recently as August 2025. Indeed, Howard testified that when creating billing statements, she would "insert a set time period" for Mikhov's "client intake" tasks without ascertaining how much time Mikhov had actually spent on that task or whether he performed that task at all. This was consistent with the practices Mikhov had authorized for the Fee Motion Department.

57. Mikhov's dated time entries are equally implausible and consistent only with outright fabrication. For example, in 2016, Mikhov himself was KLG's second-highest biller, totaling 1,350.10 hours just in the estimated 11-12% of cases for which Ford has invoices. Mikhov's time surged in 2017, when he logged 1,799.00 hours—again in only the estimated 11-12% of cases for which Ford has invoices.

58. Based on records currently available to Ford, from 2016 to 2025, Mikhov has 487 separate time entries for "Initial communications with client and evaluation of clients' claims" totaling approximately 518.6 hours. Of note, 388 of these entries were for either exactly 1.0 hours (286 entries) or 0.8 hours (102 entries). Additionally, over this same time period, Mikhov made 2,002 entries (577 of which were undated) for "Communicate with Client" totaling approximately 554 hours. Mikhov also made vague entries for "analyze vehicle documentation" on all or nearly all of the matters in which Morse fraudulently billed for "Draft Complaint." Specific date logs likewise suggest fraud; on July 31, 2017, Mikhov billed a total of 18.1 hours that included 84 separate entries in 59 separate cases. These entries appear to be entirely manufactured and fraudulent, particularly in light of deposition testimony that, at Mikhov's direction, KLG's Fee Motion Department would create fictitious time entries for Mikhov using fictitious time values.

**B. <u>Defendants Concealed and Lied About Their Fraudulent Scheme in Furtherance of the Enterprise</u>**

59. Attorneys, in California as in every state across the country, are explicitly required to conduct themselves with dignity, courtesy, and integrity as officers of the court. An attorney seeking to practice in California is required to take an oath to that effect. Cal. Rules of Court, R. 9.7. The same or similar requirements apply in federal courts.

60. Defendants abused their positions of trust as members of the Bar to deceive Ford and the courts, including by submitting thousands of billing records that appeared plausible in isolation but are clearly false and fraudulent. The fraudulent nature of these records is apparent when viewed alongside other records submitted for work on the same day. Deposition testimony establishes that KLG created such records often years after the fact and without regard for work actually performed, despite Defendants' false

Case 2:25-cv-04516-AB-MAR Document 34-1 Filed 07/18/25 Page 26 of 43 Page ID #:1762

representations to Ford and to the courts that the time records were both contemporaneous and accurate.

61. Defendants likewise defrauded Ford and other car manufacturers in the settlement process. Defendants' fraudulent scheme led Ford and, on information and belief, other auto manufacturers to overpay in settlement of Lemon Law fee disputes—not just for attorney's fees, but for compensatory damages and civil penalties as well—regardless of the merits of the individual case. The fees claimed by Defendants often far exceeded—sometimes by a factor of 10—the amount in dispute in the underlying Lemon Law case. Outsize fee payments disincentivize auto manufacturers from proceeding to fee hearings—where auto manufacturers end up paying both sides to fight over how much more to pay—and induce them to pay inflated settlement values. Defendants' fraudulent billing records thus result in the artificial and fraudulent inflation of prelitigation settlement offers, including by altering the perceived risk calculus of fee litigation.

62. The key to Defendants' fraudulent billing scheme is creating time records that do not appear fraudulent when reviewed in isolation in a particular matter. Because there are no red flags to alert the courts or the victims of this fraud to audit the daily time entries for every day over a decade across all cases against all automakers for all of the Lemon Law lawyers in the enterprise (even assuming courts and victims had all the information needed to do so, which they do not), two circumstances have resulted: First, courts have been deceived into awarding fees against Ford during the fee-petition process that occurs as a separate and distinct process from any underlying merits litigation, and, second, Ford has been defrauded into settling fee claims based on these fraudulent billing records and resolving consumers' pre-litigation and post-litigation claims even before fee applications are made.

63. In May 2020, Kirnos admitted, as he has on numerous other occasions that he expected the court and Ford to rely on Defendants' representations regarding fees.

During an oral argument regarding KLG's fee application in an MDL action, *Mark Pedante v. Ford Motor Company et al.* (ML 18-02814-AB), Kirnos stated: "There is a presumption attached to our billing because there is a presumption that we are going to be ethical, that we are not going to submit lies to this Court. And we did not." Kirnos went on to implore the Court to rely on that presumption on the basis that Defendants obviously would not violate their ethical duties when submitting fee applications to the Court. Even while making these representations, Kirnos knew that he and the other Defendants were in fact engaging in repeated and blatant violations of their ethical duties and committing criminal acts to line their own pockets, including but not limited to having directed and overseen the fabrication years of time records in countless cases—**including the *Pedante* case itself**—and having falsely represented to multiple courts under oath that those records were contemporaneous, reasonable and accurate.

64. While certain instances of Defendants' inflated bills did not go entirely unnoticed by courts in some matters on a case-by-case basis, Defendants were successful in concealing the massive (and, indeed, all-encompassing) scope of their coordinated fraud as a broader enterprise by passing it off as mere "overstaffing" and routine inefficiencies. For example, in a Lemon Law fee proceeding in 2020, *In re Volkswagen "Clean Diesel" Marketing, Sales Practice and Prod. Liab. Litig.* (MDL No. 2672 CRB (JSC)), the court found that KLG and other firms filed applications seeking compensation for work that was not in fact conducted on behalf of the clients involved in the fee application. United States District Judge Charles R. Breyer noted "the enormous number of hours attributed to these Plaintiffs' cases while they were stayed." The court completely excluded bills for vague entries and clerical tasks, as well as work performed for other plaintiffs, not involved in the fee application, whose cases actually went forward to trial. However, because the court was looking only at the fee applications in a single case and had no way of knowing that the lawyers appearing before it had secretly fabricated time records out of

whole cloth years after the fact, it was unable to discern the true nature of the fraudulent enterprise that Defendants concealed by spreading their fictitious billings across multiple clients, cases, and law firms.

65. Reflecting the ongoing and self-perpetuating nature of the criminal enterprise, Defendants use the successes they achieve through their fraudulent acts to conceal and lend a cloak of legitimacy to their further fraudulent acts. In declarations submitted to federal and state courts, Mikhov and Kirnos routinely tout their success in having fee motions granted by both federal and state judges, exploiting the respect those jurists have for their fellow members of the bench to avoid scrutiny of their fraudulent billings and further conceal the scheme. As just two of many examples, Mikhov and Kirnos signed declarations in August 2021 and November 2023, respectively, attaching multiple fraudulently obtained fee awards and identifying more than a dozen judges—including judges of the Central District of California and the Los Angeles Superior Court—who had approved fees for billings by Mikhov, Morse, Stephenson-Cheang and others. *See* Exhibit D at ¶¶ 48-94; Exhibit E at ¶¶ 35-58; *see also* Exhibit F at ¶¶ 47-104; Exhibit G at ¶¶ 56-90; Exhibit H at ¶¶ 54-122; Exhibit I at ¶¶ 50-89; Exhibit J at ¶¶ 68-72; Exhibit L at ¶¶ 41-51; Exhibit M at ¶¶ 174-128; Exhibit O at ¶¶ 51-76. The fee payments Defendants obtain based on their fraudulent billing records thus create a snowball effect by leading to less scrutiny of their time records, which in turn facilitates more fraud and even higher fraudulent fee payments and settlements not "based on" time actually expended in each case. Defendants' scheme thus harmed Ford in transactions far beyond those specific to the individual cases in which the fee claims were made.

### C. Defendants Intensified Their Fraudulent Scheme Over Time

66. Since 2015, Defendants have filed over 10,000 breach of warranty cases against Ford and other car manufacturers and have filed hundreds of fee applications in connection with those cases.

67. Defendants' fraudulent scheme has expanded over time. In the years 2021 through 2024, KLG obtained fee awards from Ford totaling approximately $35 million, with a substantial portion of that sum likely resulting from false and wholly fabricated billing records.

68. Moreover, Ford is not the only automaker in Defendants' crosshairs. Defendants have filed thousands of cases against other automakers including GM, Fiat Chrysler Automobiles/FCA, Volkswagen/Audi, and BMW, among others. Based on a review of only a small sample of such fee applications, Ford believes that these automakers are also victims of Defendants' scheme to defraud.

69. Defendants have long pursued this fraudulent billing scheme to enrich themselves, and their conduct since the filing of this lawsuit demonstrates consciousness of guilt. As just one example, on May 22, 2025—the day after Ford filed its complaint—KLG submitted time records reflecting time billed by Morse in *Solisperez v. Ford*, Los Angeles Superior Court Case No. 23PSCV01411. In what appears to be an acknowledgment that such time was never actually incurred and was instead (like most of Morse's other purported "time") invented at the case's conclusion to increase Defendants' financial windfall, KLG later, after reviewing the initial complaint in this action, submitted a "supplemental" billing invoice that removed the time purportedly billed by Morse. Since Ford filed this lawsuit, KLG has begun withdrawing requests for payment for time entries purportedly made by Morse (and other KLG attorneys) in other cases as well—against both Ford and other auto manufacturers—reflecting KLG's and its members' and employees' ongoing efforts to

cover their tracks and conceal their fraudulent conduct in furtherance of the continuing enterprise.

**D. <u>Defendants Corruptly Obstructed And Impeded The Administration Of Justice By Submitting Fabricated Evidence And Sworn Declarations Falsely Attesting To The Truth Of KLG's Fraudulent Fee Motions</u>**

70. As noted, the fee application process is separate from and subsequent to the underlying Lemon Law litigation. The submission of sworn declarations by counsel in support of a fee request is central to the resolution of the narrowly focused separate fee application proceeding. In submitting sworn declarations in support of KLG's fee motions, Defendants Mikhov and Kirnos repeatedly perjured themselves in violation of 18 U.S.C. § 1621 and thereby obstructed and impeded the administration of justice in violation of 18 U.S.C. § 1503. Section 1503 prohibits anyone from "corruptly . . . influenc[ing], obstruct[ing], or imped[ing], or endeavor[ing] to influence, obstruct, or impede, the due administration of justice." Acts of perjury committed in federal courts, including those violating 18 U.S.C. § 1621, are indictable under 18 U.S.C. § 1503.

71. For instance, as part of cases comprising *In Re Ford Motor Co. DPS6 Powershift Transmission Products Liability Litigation*, No. 2:18-ml-02814 (C.D. Cal.) (the "DPS6 Cases"), KLG submitted multiple perjurious declarations. In one of those cases, *Pedante*, Mikhov submitted a sworn declaration attaching timesheets and attesting that "[a]ll time billing entries were completed contemporaneously with each dated entry or near in time to the work performed" and that he "personally reviewed the billing entries to ensure that they appropriately reflect the time expended." Exhibit L at ¶ 40. However, in *Pedante*, Defendants submitted numerous time entries for Amy Morse beginning in July 2017 reflecting "Communication with Client" and "Draft Complaint," notwithstanding her testimony that she did not perform those tasks during this period. *See id*. Moreover, the application included entries for Mikhov himself,

including an entry reflecting one hour for "Initial communication with Client; Analyze Vehicle documentation"—exactly the amount of time Elin Howard testified she would input for Mikhov arbitrarily and fictitiously, without receiving any actual time entry from him. *Id*. Aside from these specific examples, the application included other non-contemporaneous time records that were supplemented or entirely created by KLG's Fee Motion Department. Pursuant to a Court order entered in reliance on Mikhov's perjurious declaration and fraudulent billing records, Ford paid KLG $49,987.01.

72. In *Fort v. Ford Motor Company*, No. 2:17-cv-06631 (C.D. Cal.), and *Bagwell v. Ford Motor Company*, No. 2:17-cv-06632 (C.D. Cal.), Mikhov submitted a sworn declaration attaching timesheets and attesting that "[a]ll time billing entries were completed contemporaneously with each dated entry or near in time to the work performed" and that he "personally reviewed the billing entries to ensure that they appropriately reflect the time expended." Exhibit M at ¶ 73. However, in *Fort/Bagwell*, Defendants submitted numerous time entries for Amy Morse beginning in July 2017 reflecting "Communication with Client," "Draft Complaint," and "Draft NOD [Notice of Deposition]," notwithstanding her testimony that she did not perform those tasks during this period. *See id*. Moreover, the application included entries for Mikhov himself, including an entry reflecting one hour (for each plaintiff) for "Initial communication with Clients and evaluation of Clients' claims"—exactly the amount of time Elin Howard testified she would input for Mikhov arbitrarily and fictitiously, without receiving any actual time entry from him. *Id*. Aside from these specific examples, the application included other non-contemporaneous time records that were supplemented or entirely created by KLG's Fee Motion Department.

73. Later with respect to the *Fort* and *Bagwell* cases, Kirnos submitted a sworn declaration attaching "revised billing" to support a "revised . . . fee request" after Ford opposed the fee request, which included the same fraudulent entries for Morse and Mikhov to which Mikhov had previously sworn. Exhibit N at ¶ 2. Just as Mikhov did,

Kirnos swore that the time sheets were "true and correct." *Id*. Pursuant to a joint stipulation—agreed to by Ford and entered by the Court in reliance on Kirnos' and Mikhov's perjurious declarations and fraudulent fee statements—Ford paid KLG and associated firms a total of $146,978.48 between the two cases.

74. In *Medina v. Ford Motor Company*, Docket No. 2:29-cv-00078 (C.D. Cal.), Mikhov submitted a sworn declaration attaching timesheets and attesting that "[a]ll time billing entries were completed contemporaneously with each dated entry or near in time to the work performed" and that he "personally reviewed the billing entries to ensure that they appropriately reflect the time expended." Exhibit O at ¶ 49. However, in *Medina*, Defendants submitted numerous time entries for Amy Morse beginning in December 2018 reflecting "Communication with Client," "Draft Complaint" and "Draft NOD [Notice of Deposition]," notwithstanding her testimony that she did not perform those tasks during this period. *See id*. Moreover, the application included entries for Mikhov himself, including an entry reflecting one hour for "Initial communication with Clients and evaluation of Clients' claims"—exactly the amount of time Elin Howard testified she would input for Mikhov arbitrarily and fictitiously, without receiving any actual time entry from him. *Id*. Aside from these specific examples, the application included other non-contemporaneous time records that were supplemented or entirely created by KLG's Fee Motion Department. Pursuant to a joint stipulation—agreed to by Ford and entered by the Court in reliance on Mikhov's perjurious declaration and fraudulent billing records—Ford paid KLG and associated firms a total of $30,000.00.

75. In *O'Brien v. Ford Motor Company*, Docket No. 2:24-cv-04969 (C.D. Cal.), and *Daggett v. Ford Motor Company, et al.*, Docket No.: 2:24-cv-04970 (C.D. Cal.), which were part of the DPS6 Cases, Kirnos submitted a sworn declaration attaching timesheets and attesting that "[a]ll time billing entries were completed contemporaneously with each dated entry or near in time to the work performed" and

that he "personally reviewed the billing entries to ensure that they appropriately reflect the time expended." Exhibit P at ¶ 66; Exhibit Q at ¶ 63. The *O'Brien* and *Daggett* applications included not only attached time purportedly incurred for those plaintiffs alone, but also an attachment containing KLG time entries "performed globally for [KLG] clients' cases" in Judicial Council Coordinated Proceeding 4856 of the DP6S Cases. Exhibit P at ¶ 3; Exhibit Q at ¶ 3. These included numerous time entries for Amy Morse beginning in July 2016 reflecting numerous tasks including attending hearings, notwithstanding her testimony that she did not perform those tasks during this period. Aside from these specific examples, the application included other non-contemporaneous time records that were supplemented or entirely created by KLG's Fee Motion Department. Pursuant to a joint stipulation—agreed to by Ford and entered by the Court in reliance on Kirnos's perjurious declaration and fraudulent billing records —Ford paid KLG and associated firms a total of $73,600.58.

76. The foregoing are but several illustrative examples. Other, non-exhaustive examples are described in Exhibit C. Mikhov and Kirnos submitted many such perjurious declarations in federal court in fee application proceedings, the outcomes of which hinged on their representations to the court about fees. When a fee petition based on such perjurious declarations and fabricated evidence was successful, Mikhov and Kirnos often cited the result as "evidence" to recover fees in future matters, thus using their fraud as a foundation for further fraud. Where, as in the foregoing examples, the declarations were filed in federal court and induced either Ford to stipulate to an amount of attorneys' fees or the Court to order attorneys' fees, Mikhov's and Kirnos' perjury caused an obstruction of and impediment to justice in violation of 18 U.S.C. § 1503.

**E. <u>Defendants Used Interstate Wires And U.S. Mail To Demand And Receive False, Unearned, And Fraudulently Induced Fee Payments</u>**

77. Defendants used the U.S. mail and interstate wires to make fraudulent evidentiary submissions, to negotiate settlements, and to receive payments pursuant to

fraudulent billing records based on falsified time entries submitted in support of fee applications, all in furtherance of their scheme to defraud Ford of its money. For example, by order dated July 19, 2018 and filed on July 31, 2018, in *Buck v. Ford Motor Company,* Stanislaus County Superior Court Case No. 2008745, the Court ordered Ford to pay attorneys' fees, costs, and expenses totaling $135,500.00 based on fraudulent billing records filed by KLG that included false billing entries by Morse for March 23, 2017 (on which date she billed at least 31.3 hours). By letter dated July 24, 2018 addressed to Mikhov and sent by FedEx, Ford enclosed a check in the amount of $135,500.00 payable to KLG. Similarly, by judgment entered on August 31, 2018 in *Duk v. Ford Motor Company*, San Diego County Superior Court Case No. 2016-00012779, the Court ordered Ford to pay attorneys' fees, costs, and expenses totaling $101,450.78 based on fraudulent billing records filed by KLG that included billing entries by Morse for November 30, 2016 (on which date she billed at least 57.5 hours). By letter dated October 1, 2018 addressed to Mikhov and sent by FedEx, Ford enclosed a check in the amount of $101,450.78 payable to KLG. In addition to the fee awards in the *Buck* and *Duk* cases, Morse's fraudulent billing records also were used to support fee awards in the following cases, among others: (a) fee award in the amount of $10,675.16 in *Burgess v. Ford Motor Company*, San Bernardino Superior Court Case No. CIVDS1620111, paid by check dated October 9, 2018 payable to KLG and sent by FedEx; (b) fee award in the amount of $12,405.20 in *Duenas v. Ford Motor Company*, Los Angeles County Superior Court Case No. BC638306, paid by check dated August 15, 2018 payable to KLG and the plaintiff and sent by FedEx; and (c) fee award in the amount of $15,005.00 in *Orosco v. Ford Motor Company*, Los Angeles Cnty. Sup. Ct. Case No. BC638222, paid by check dated October 12, 2018 payable to KLG and sent by FedEx. Each of the *Buck*, *Duk*, *Burgess*, *Duenas*, and *Orosco* cases included time entries that were false and fraudulent because they were not contemporaneously

recorded and were fabricated or supplemented after the fact by KLG's Fee Motion Department.[1]

78. In *Berroteran v. Ford Motor Company*, Los Angeles County Superior Court Case No. BC542525, pursuant to fraudulent billing records submitted in support of a motion for attorneys' fees filed on May 20, 2022, KLG sought $1,226,868.45 in attorneys' fees, costs, and expenses on behalf of itself and other attorneys. Kirnos submitted a false declaration that attached KLG's invoices, which included time entries from him, Mikhov, and Morse. Those time entries, all of which Kirnos swore under oath "were completed contemporaneously with each dated entry or near in time to the work performed," *see* Exhibit F at ¶ 46, were in fact at least in large part false and fraudulent because they included entries that were not contemporaneously recorded and were fabricated or supplemented after the fact by KLG's Fee Motion Department, as well as because they included time entries for Morse for work that she has testified she never performed. The court issued a minute order on July 14, 2022, awarding $807,127.50 in attorneys' fees only. Ford mailed KLG a check in the amount of $851,493.51 on October 21, 2022 by FedEx.

79. The fee application in *Coon v. Ford Motor Company*, Riverside County Superior Court Case No. MCC1300767, was filed on February 4, 2019, and was based on fraudulent billing records. Mikhov submitted a false declaration in support of that application. KLG requested $866,754.00 in attorney's fees (including a lodestar enhancement). The time records attached to Mikhov's declaration, all of which Mikhov

---

[1] Morse's fraudulent billing records were also used to support successful efforts to extract fee payments in cases involving other auto manufacturers, including, among others: (a) fees in the amount of $106,560.55 in *Vargas v. FCA US LLC*, Orange County Superior Court Case No. 30-2016-00845431-CU-BC-CJC, paid by check dated July 26, 2018 and sent to KLG by FedEx; and (b) fees in the amount of $23,179.10 in *Beltran v. FCA US LLC*, Los Angeles County Superior Court Case No. BC617905, paid by check dated September 10, 2019 and sent by FedEx.

swore under oath "were completed contemporaneously with each dated entry or near in time to the work performed," *see* Exhibit G at ¶ 53, were in fact at least in large part false and fraudulent because they included entries that were not contemporaneously recorded and were fabricated or supplemented after the fact by KLG's Fee Motion Department, as well as because they included time entries from Morse for work that she has testified she never performed. On May 19, 2019, the court awarded KLG $543,554.00 in attorneys' fees. Ford mailed KLG a check in the amount of $709,004.12 on June 16, 2022 by FedEx.

80. The fee application in *Brown v. Ford Motor Company*, Butte County Superior Court Case No. 160060, was filed on behalf of KLG and others on November 21, 2018, and was based on fraudulent billing records. Mikhov submitted a false declaration in support of that application. The time records attached to Mikhov's declaration, all of which Mikhov swore under oath "were completed contemporaneously with each dated entry or near in time to the work performed," *see* Exhibit H at ¶ 51, were in fact at least in large part false and fraudulent because they included entries that were not contemporaneously recorded and were fabricated or supplemented after the fact by KLG's Fee Motion Department, as well as because they included time entries from Morse for work that she has testified she never performed. KLG sought $807,163.50 (including a lodestar enhancement). On January 16, 2019, the court awarded $714,233.00 in total attorneys' fees. Ford mailed KLG a check in the amount of $843,528.13 on July 25, 2022 by FedEx.

81. *Margeson v. Ford Motor Company*, Los Angeles County Superior Court Case No. BC549430, is still another example. Like with the *Coon* and *Brown* matters, the fee application—on behalf of KLG and others—was submitted years prior, on December 15, 2017, and was based on fraudulent billing records. Mikhov submitted a false declaration in support of that application. KLG sought $523,494.00 in fees. The time records attached to Mikhov's declaration, all of which Mikhov swore under oath

"were completed contemporaneously with each dated entry or near in time to the work performed," *see* Exhibit I at ¶ 49, were in fact at least in large part false and fraudulent because they included entries that were not contemporaneously recorded and were fabricated or supplemented after the fact by KLG's Fee Motion Department, as well as because they included time entries from Morse for work that she has testified she never performed. On February 1, 2018, the court awarded $741,839.70 in total attorneys' fees, plus prejudgment interest to KLG and its associated counsel. KLG had an opportunity to correct these misrepresentations in Mikhov's declaration when it filed a reply in support of its fee application on July 22, 2022, but failed to do so. Ford's outside counsel mailed KLG two checks on behalf of Ford by FedEx: one for $136,744.53 on July 26, 2022, and another for $345,000.00 on September 22, 2022.

82. As another example, the fee application in *Anderson v. Ford Motor Company*, San Joaquin County Superior Court Case No. 39-2013-00299512-CU-BC-STK, was submitted on May 28, 2019, on behalf of KLG and others. Mikhov submitted a false declaration in support of that application. The time records attached to Mikhov's declaration, all of which Mikhov swore under oath "were completed contemporaneously with each dated entry or near in time to the work performed," *see* Exhibit J at ¶ 64, were in fact at least in large part false and fraudulent because they included entries that were not contemporaneously recorded and were fabricated or supplemented after the fact by KLG's Fee Motion Department. KLG sought $740,118.75 (including a lodestar enhancement). On May 10, 2022, Ford mailed a check to KLG for $813,554.48 by FedEx.

83. All of the above checks were sent in reliance on false and fraudulent fee applications or billing statements, and all were caused by Defendants to be mailed as an essential part of their fraudulent scheme.

**F. Ford Has Suffered And Continues To Suffer Significant Harm From The Enterprise's Fraudulent Billing Scheme**

84. As a direct and proximate result of Defendants' pervasive fraudulent criminal enterprise built on sham billing records, Ford has paid Defendants more than $100 million. Defendants' misrepresentations to Ford have fraudulently induced Ford to settle fee disputes and have caused Ford to pay much larger amounts than it would have paid absent Defendants' fraudulent billing records and abuse of their trusted positions as attorneys. Any uncertainty as to the amount of damages caused by Defendants' massive fraudulent billing scheme has been caused by Defendants' actions, and the true extent of the fraud and resulting damages will only be revealed as Ford assembles additional evidence and through discovery in this matter.

85. In addition to the harm suffered from fraudulently induced payments based on false representations and falsified billing records, Ford has been further damaged by the legal fees and other costs it had to incur to detect and now attempt to stop the fraud perpetrated by this criminal enterprise. The evidence presented in this Second Amended Complaint reflects extensive work by Ford. New evidence continues to emerge as Defendants continue to file additional fraudulent fee billing records in support of fee demands against Ford and other car manufacturers in various jurisdictions. Expensive expert services are needed to untangle the thousands of fraudulent billing entries that Defendants have filed in various jurisdictions. The work to uncover Defendants' criminal enterprise is continuing and is expected to cost Ford many millions of dollars. Such work is necessary only because of Defendants' calculated efforts to conceal their scheme by spreading their fraudulent billing entries across multiple cases, timekeepers, auto manufacturers, and jurisdictions.

86. Ford has been further damaged by having to participate in a sham and tainted litigation process in connection with Defendants' submission of false and fraudulent billing records and perjured declarations in support of fee applications.

Defendants misrepresented the amount of time they actually worked, making those misrepresentations to—and thereby perpetrating a fraud on—Ford and the courts. Defendants intentionally and knowingly concealed the fictitious nature of the time entries for which they sought to recover fees, causing Ford to pay settlements, and successfully swaying courts to issue fee awards, for work that had not actually been performed on behalf of Defendants' client car owners. Ford did not know at the time—and could not have known—that Defendants' demands were premised on fabrications, lies, and systemic fraud. As Defendants well knew but concealed from Ford and the courts, its billing entries did not reflect actual and contemporaneously billed time, but rather were entirely fictional entries generated without regard to whether the billed tasks were ever performed at all and often years after cases had concluded.

87. Ford has also suffered harm to its reputation and goodwill as a result of Defendants' conduct. In open court and through Facebook posts, blogs, and other forums for summoning negative publicity, Defendants have touted their fraudulently obtained fee payments to onboard new clients, harming Ford's reputation and goodwill.

## II. <u>THE RICO ENTERPRISE</u>

88. Defendants are a group of persons associated with Knight Law Group LLP, which constitutes an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) (referred to hereinafter as the "Enterprise"), because, among other reasons: (a) those involved have the common purpose to unlawfully operate an ongoing criminal enterprise engaged in fraudulent billing; (b) the Enterprise has a governing structure that operates as a command hierarchy led by Defendants Mikhov, Morse, and Kirnos, different roles for members, and a governing set of rules and practices; (c) each of the Defendants participates in the operation or management of the Enterprise; (d) the Enterprise has enjoyed sufficient longevity and has been in continuous operation for over five years; and (e) the Enterprise has generally been structured to operate as a

continuing unit, with membership, rank, privileges, and access constantly maintained by the members, to accomplish the goals of the fraudulent billing scheme.

89. Defendants and others have associated with one another and with the Enterprise for the common purposes of preparing and filing fraudulent billing records and perjured declarations in support of fee demands, fraudulently inflating the value of negotiated settlements, delaying and/or depriving clients of compensation due to them or increasing their clients' tax liability to advance their own financial interests, and funneling fraud proceeds into attorney distributions and extravagant purchases.

90. Mikhov, Kirnos, and Morse oversaw the Enterprise's operations and expressly directed employees of the Enterprise to create fictitious fee statements and perjured declarations in order to allow the Enterprise to extract fraudulently induced payments from Ford and others.

91. At all relevant times, Defendants were financially intertwined as partners of KLG.

92. At all relevant times, the Enterprise was engaged in, and its activities affected, interstate commerce within the meaning of 18 U.S.C. § 1962(c). The Enterprise conducts business involving clients in different states, auto manufacturers engaged in interstate commerce, and the federal courts' interstate e-filing system. Many of the cases involved in the criminal scheme are related to multi-district litigation involving lawyers located in different states accessing the federal e-filing system.

93. Each of the Defendants conducted or participated, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5) and in violation of 18 U.S.C. § 1962(c), namely, mail fraud in violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. § 1343, and obstruction and impediment of justice in violation of 18 U.S.C. § 1503.

## III. THE PATTERN OF RACKETEERING ACTIVITY

94. As described herein, Defendants engaged in an expansive criminal scheme to defraud Ford and obtain payment for fictitious fees in thousands of cases.

95. Defendants conducted and participated in, directly and indirectly, the conduct of the Enterprise's affairs through a pattern of racketeering activity that included multiple instances of mail fraud, wire fraud, and obstruction and impediment of justice.

96. The ultimate objective of Defendants' scheme or artifice to defraud and obstruction and impediment of justice was to deceive and coerce Ford into paying the Enterprise unearned and fraudulently obtained fee settlements and judgments totaling millions of dollars to directly benefit Defendants.

97. In furtherance of their fraudulent scheme, and as described herein and in Exhibit C hereto, Defendants transmitted, or caused to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds, and also caused matters and things to be placed in any post office or authorized depository, or deposited or caused to be deposited matters or things to be sent or delivered by a private or commercial interstate carrier, including, but not limited to, the following:

(a) electronic filing and service of court papers, served on lawyers located in various states, containing false and misleading statements intended to mislead the courts and relevant parties and to obtain Ford's money;

(b) mail service of court papers on lawyers containing false and misleading statements intended to mislead the relevant parties and to obtain Ford's money; and

(c) wires and/or mailings between and among Defendants, or between and among Defendants and Ford or its counsel, containing fraudulent billings and payments therefor.

98. In addition to the acts identified in Exhibit C hereto, and as alleged herein, any document transmitted or caused to be transmitted by Defendants, whether by mail or wire, that contains, incorporates, references, and/or is based on purported post-2016 billing entries for Amy Morse for communicating with client, attending mediations, drafting case management statements, drafting or responding to meet-and-confer letters, and/or communicating with expert witnesses constitutes a predicate act of racketeering under 18 U.S.C. § 1341 (mail fraud) or 18 U.S.C. § 1343 (wire fraud) because Morse has testified that she did not ever perform any of those tasks. The predicate racketeering acts falling into these two categories, which are believed to number in at least the hundreds, are too numerous to list in Exhibit C and will be further explored through discovery in this matter. Ford reserves the right to seek leave to amend Exhibit C to include additional predicate acts as warranted by the evidence.

99. In furthering this scheme, Defendants also engaged in multiple instances of perjury in federal court in violation of 18 U.S.C. § 1621, thereby "corruptly . . . influenc[ing], obstruct[ing], [and] imped[ing], or endeavor[ing] to influence, obstruct, or impede, the due administration of justice." 18 U.S.C. § 1503. Several examples of perjurious declarations are included in Exhibits C. The predicate racketeering acts falling into this category are too numerous to identify in Exhibit C, and will be further explored through discovery in this matter. Ford reserves the right to seek leave to amend Exhibit C to include additional predicate acts as warranted by the evidence.

100. Defendants participated in the scheme or artifice knowingly, willfully, and with the specific intent to deceive and/or defraud Ford into paying Defendants money to which Defendants knew they were not entitled. Defendants knowingly and intentionally prepared false and fictitious billing records and perjured declarations and then, knowingly and with the intent to deceive Ford and the relevant courts for the purpose of obtaining Ford's money, caused those false and fictitious billing records and perjured declarations to be transmitted to Ford and publicly filed. Defendants colluded with one

another to fabricate time records, after cases had been resolved and sometimes years after the purported work performed, and to use those fabricated records to extract fees and settlements, all with the intent that their false statements be believed. Indeed, when KLG submitted billing records in support of fee motions, KLG's attorneys (typically Mikhov or Kirnos) committed perjury when they falsely represented under oath to the courts and to Ford that KLG had billed its time contemporaneously. Mikhov and Kirnos also stated repeatedly under oath that the initials "ALM" in KLG's fraudulent billing statements reflected "Ms. [Amy] Morse's billing entries"—another patently perjurious statement given the content of those entries and Morse's own testimony that she only rarely billed any such time at all after 2016.

101. The attack on Ford was intended to, and did, result in Ford paying fabricated fees that benefited the Defendants, which in turn financed the criminal scheme.

102. In a concerted effort to thwart Ford's ability to uncover the truth about the fraudulent billing scheme, Defendants have filed or caused to be filed hundreds or thousands of false and misleading extra-judicial communications and hundreds or thousands of fraudulent documents in various matters against different auto manufacturers.

103. Defendants intended that automakers and courts in various jurisdictions rely on Defendants' false and misleading statements, trusting Defendants to comply with their ethical obligations as officers of the court. The effort has been successful. The acceptance of Defendants' fraudulent billings and perjured declarations has resulted in numerous inflated fee awards and settlements against Ford.

104. Accordingly, Defendants' submission of fraudulent billings and false and misleading representations in court have caused Ford to suffer substantial damages and reputational harm.

105. The alleged pattern of predicate acts, consisting of scores of acts of mail fraud, wire fraud, and obstruction of justice, are related and continuous and were committed on behalf of an Enterprise that has existed for the purpose of carrying out the fraudulent billing scheme for more than a decade.

**FIRST CAUSE OF ACTION**

**(RICO, 18 U.S.C. § 1962(c))**

**(Against All Defendants)**

106. Ford realleges and incorporates herein by reference each and every foregoing paragraph of this Complaint.

107. At all relevant times, Ford was and is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

108. At all relevant times, each Defendant was and is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

109. As detailed above, Defendants and their co-conspirators are a group of persons associated with KLG for the common purpose of advancing an ongoing criminal enterprise by creating and submitting fraudulent billing records, including to Ford in settlement demands and to federal and state courts across California in fee petition proceedings, to obtain fraudulent payments for time never actually worked on behalf of clients.

110. At all times alleged herein, the Enterprise was engaged in, and its activities affected, interstate commerce.

111. The Enterprise is likely to continue to engage in racketeering activity in its efforts to collect and protect its ill-gotten gains.

112. Each Defendant conducted or participated, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5).

113. Ford incorporates by reference the attached Exhibit C, which identifies numerous (but not all) specific uses of interstate wire and mail communications advancing the Enterprise's scheme in violation of 18 U.S.C §§ 1341 and 1443, and numerous (but not all) specific instances of Defendants' perjurious obstruction and impediment of justice in advancing the Enterprise's scheme in violation of 18 U.S.C § 1503.

114. As a direct and proximate result of the Enterprise's pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), Ford has been damaged in its business and property in an amount to be determined at trial, including but not limited to by having to pay more than $100 million due to fraudulent billing statements submitted by Defendants.

115. Pursuant to 18 U.S.C. § 1964(c), Ford is entitled to recover treble damages plus costs and attorneys' fees from Defendants.

## SECOND CAUSE OF ACTION

**Conspiracy to Violate RICO, 18 U.S.C. § 1962(d)**

**(Against All Defendants)**

116. Ford realleges and incorporates herein by reference each and every foregoing paragraph of this Complaint.

117. Defendants have unlawfully, knowingly and willfully combined, conspired, confederated and agreed together and with others to violate 18 U.S.C. § 1962(c) as described above, in violation of 18 U.S.C. § 1962(d).

118. Defendants knew that they were engaged in a conspiracy to commit the predicate acts of mail fraud, wire fraud, and obstruction and impediment of justice, and the participation and agreement of each of them was necessary to allow the commission of this pattern of racketeering activity.

119. Each Defendant agreed to conduct or participate, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

120. Each Defendant knew about and agreed to facilitate the Enterprise's scheme to submit fraudulent billing records to state and federal courts to obtain fraudulent fee payments for time never actually worked and to recover more than they were entitled to from Ford. It was part of the conspiracy that Defendants would commit a pattern of racketeering activity in the conduct of the affairs of the Enterprise, including but not limited to the acts of racketeering set forth above and in Exhibit C.

121. As a direct and proximate result of Defendants' conspiracy to violate 18 U.S.C. § 1962(d) and the overt acts taken in furtherance of that conspiracy, Ford has been damaged in its business and property in an amount to be determined at trial, including but not limited to by having to pay more than $100 million due to fraudulent billing statements submitted by Defendants.

122. Pursuant to 18 U.S.C. § 1964(c), Ford is entitled to recover treble damages plus costs and attorneys' fees from Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks a judgment against Defendants awarding the following relief:

1. An award of general damages in an amount to be determined at trial and estimated to be not less than $100 million, which damages are to be trebled according to the RICO statute, 18 U.S.C. § 1964(c);

2. Pre-judgment interest according to statute;

3. Ford's reasonable attorneys' fees and costs according to statute, 18 U.S.C. § 1964(c); and

4. Any other relief that this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial in this action.

Dated: January 5, 2025

KASOWITZ LLP

By: /s/ *Daniel A. Saunders*

Daniel A. Saunders
Matthew S. Manacek

Edward E. McNally
Daniel J. Fetterman
*Attorneys for Plaintiff Ford Motor Company*

# EXHIBIT A

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 1. | Aandahl, Nancy v. FCA | 11/1/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.80 | $200.00 | $360.00 |
| 2. | Acosta, Richard v. FCA | 12/9/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Deft's Discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 3. | Adams, Robert v. Hyundai | 3/9/2017 | Steve B. Mikhov | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.30 | $500.00 | $650.00 |
| 4. | Aguilar, Gerardo v. General Motors LLC | 9/5/2019 | Natalee Fisher | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.50 | $250.00 | $375.00 |
| 5. | Aguilera, Christina v. FCA | 12/7/2016 | Michelle Lumasag | Draft letter to Defence to meet and confer re FCA's discovery responses; Conduct legal research | 1.50 | $200.00 | $300.00 |
| 6. | Aispuro, Lazaro v. FMC | 3/26/2019 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.50 | $350.00 | $525.00 |
| 7. | Alegre, Stephen v. FMC | 1/16/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.00 | $250.00 | $250.00 |
| 8. | Alfaro, Walter v. KMA | 11/20/2018 | Jonathan Cagliata | Draft letter to Defense to meet and confer re Deft's discovery responses, Set Two; conduct legal research | 1.40 | $225.00 | $315.00 |
| 9. | Alimonti, Anthony v. FMC | 2/3/2014 | Daisy Ortiz | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.50 | $225.00 | $337.50 |
| 10. | Allem, Renee v. FCA | 11/19/2015 | Amy Morse | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Discovery Requests; Conduct legal research | 1.10 | $250.00 | $275.00 |
| 11. | Allem, Renee v. FCA | 2/25/2016 | Amy Morse | Draft meet and confer letter to Defense Counsel re Defendant's Supplemental Discovery Responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 12. | Allen, Marty & Sandra v. Kia Motors | 4/24/2018 | George Semaan | Draft letter to Defense to meet and confer re Defendant's discovery responses; conduct legal research | 1.00 | $225.00 | $225.00 |
| 13. | Allen, Marty & Sandra v. Kia Motors | 11/19/2018 | Jodie Koo | Draft letter to Defense to meet and confer re Defendant's discovery responses, Set Two; conduct legal research | 1.20 | $225.00 | $270.00 |
| 14. | Alonso, Manuel v. FCA | 6/14/2017 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery requests; Conduct legal research | 1.10 | $350.00 | $385.00 |
| 15. | Alvarado, Edgar v. Kia Motors | 4/12/2016 | Amy Morse | Draft meet and confer letter to Defense Counsel re Defendant's Discovery Responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 16. | Alvarado, Edgar v. Kia Motors | 5/24/2016 | Russell Higgins | Draft meet and confer letter to Defense Counsel re Defendant's Responses to RFP; Conduct legal research | 1.00 | $400.00 | $400.00 |
| 17. | Alvernaz, Eulalia v. Hyundai | 3/10/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 18. | Anderson, Shelby v. FMC | 1/27/2014 | Daisy Ortiz | Draft letter to Defense to meet and confer re Defendant's discovery responses; conduct legal research | 1.90 | $225.00 | $427.50 |
| 19. | Andrino, Angelica and Andrino, Pedro v. Kia | 5/24/2016 | Russell Higgins | Draft meet and confer letter to Defense Counsel regarding Defendant’s Responses to Plaintiffs’ Request for Production of Documents; review file and conduct research | 0.70 | $400.00 | $280.00 |
| 20. | Anthony, William v. Chrysler | 3/13/2015 | Daisy Ortiz | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiff's First Set of Discovery Requests; Conduct legal research | 2.00 | $225.00 | $450.00 |
| 21. | Aqueveque, Christian v. FCA | 6/25/2017 | Amy Morse | Draft letter to Defense to meet and confer re Def's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 22. | Archibald, Kandi v. FCA | 4/22/2017 | Amy Morse | Draft meet and confer letter to Defense re FCA's discovery responses; conduct legal research | 1.70 | $350.00 | $595.00 |
| 23. | Arragon, Joe and Ruby v. FMC | 9/2/2016 | Michael Ouziel | Draft meet and confer letter to Defense re Deft's discovery responses; Conduct legal, research | 1.30 | $250.00 | $325.00 |
| 24. | Arzate Lemus, Veronica v. FCA | 8/24/2020 | Sundeep Samra | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.50 | $225.00 | $337.50 |
| 25. | Aspinall, John v. Kia | 9/18/2015 | Lauren Ungs | Draft meet and confer letter re Deft's Discovery Responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 26. | Audo, Raad v. FCA | 10/25/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.40 | $200.00 | $280.00 |
| 27. | Avina, Peter v. FCA | 11/2/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 28. | AYBARTH V. FMC | 9/16/2016 | Michael Ouziel | Draft meet and confer letter to Defense re Deft's discovery responses; Conduct legal research | 1.80 | $250.00 | $450.00 |
| 29. | Ayers, Scott and Marsovszki, Ilona v. Hyundai | 7/28/2016 | Amy Morse | Draft letter to Defense Counsel to meet and confer re Defendant's responses to Plaintiff's discovery requests; Conduct legal research | 1.20 | $350.00 | $420.00 |
| 30. | Baca, Frank v. Chrysler | 8/25/2015 | Kevin Van Hout | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiffs' Discovery Requests; Conduct legal research | 1.50 | $300.00 | $450.00 |
| 31. | BAHNA v. FMC | 7/20/2016 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 32. | Ballasteros, Miguel v. Hyundai | 5/13/2016 | Russell Higgins | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.10 | $450.00 | $495.00 |
| 33. | BARHONA SALINAS v. FMC | 5/11/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.20 | $250.00 | $300.00 |
| 34. | Barnaba, Barbara v. FCA | 5/1/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.90 | $350.00 | $665.00 |
| 35. | Barr, Barbera v. FCA | 4/14/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.60 | $200.00 | $320.00 |
| 36. | Barredo, Theresa v. FCA | 12/8/2015 | Amy Morse | Draft meet and confer letter to Defense re Deft's discovery responses; Conduct legal research | 1.60 | $350.00 | $560.00 |
| 37. | Barrera, Jose v. FCA | 6/10/2015 | Kevin Van Hout | Draft meet and confer letter to Opposing Counsel re Defendant's Responses to Special ROGs; Conduct legal research | 1.10 | $300.00 | $330.00 |
| 38. | Barrera, Jose v. FCA | 9/21/2015 | Amy Morse | Draft meet and confer letter to Defense Counsel re Defendant 's Discovery Responses; conduct legal research | 1.50 | $250.00 | $375.00 |

Draft Meet and Confer Letter; Conduct Legal Research

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 39. | Barrera, Jose v. FCA | 10/27/2016 | Michelle Lumasag | Draft meet and confer letter to Defense re Deft's discovery responses; conduct legal research | 1.00 | $200.00 | $200.00 |
| 40. | Bartlett, Anthony v. FMC | 3/27/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.60 | $250.00 | $400.00 |
| 41. | Base, Galen v. FCA | 5/29/2018 | Deepak Devabose | Draft letter to Defense to meet and confer re Def's discovery responses; Conduct legal research | 1.50 | $275.00 | $412.50 |
| 42. | Batchelor, Jon Dale v. FCA | 12/11/2018 | George Semaan | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.20 | $200.00 | $240.00 |
| 43. | Beltran, Cesar v. FCA | 1/4/2017 | Michelle Lumasag | Draft meet and confer letter to Defense re Deft's discovery responses; conduct legal research | 1.60 | $200.00 | $320.00 |
| 44. | Bendersky, Yan and Bendersky, Tanya v. BMW | 10/5/2015 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.30 | $250.00 | $325.00 |
| 45. | Benjamin, Robert v. FCA | 10/12/2017 | Jennifer Ruiz | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $225.00 | $225.00 |
| 46. | Benson, Brent and Pamela v. FMC | 12/28/2018 | Amy Morse | Draft letter to Defense to meet and confer re FMC's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 47. | Berg, Timothy v. FMC | 2/27/2014 | Daisy Ortiz | Draft letter to Defense to meet and confer re Def's discovery responses; Conduct legal research | 1.50 | $225.00 | $337.50 |
| 48. | Berriozabal, Oscar v. FCA | 9/22/2015 | Amy Morse | Draft meet and confer letter to Defense re FCA's Discovery Responses; Conduct legal research | 1.40 | $350.00 | $490.00 |
| 49. | Berry, Travis v. FCA | 12/9/2016 | Michelle Lumasag | Draft meet and confer letter to Defense re Deft's discovery responses; conduct legal research | 1.00 | $200.00 | $200.00 |
| 50. | Bishop, Richard Lee v. FMC | 10/7/2016 | Michael Ouziel | Draft letter to Defense Counsel to meet and confer re Defendant's responses to Plaintiff's discovery request; Conduct legal research | 1.30 | $250.00 | $325.00 |
| 51. | Black, Edith Suzanne v. FCA | 10/4/2017 | Jennifer Ruiz | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.50 | $225.00 | $337.50 |
| 52. | Bowser, R. v. Ford | 4/21/2014 | Daisy Ortiz | Draft letter to Defense to meet and confer re Defendant's discovery responses; conduct legal research | 1.50 | $225.00 | $337.50 |
| 53. | Boyer, Leon v. BMW | 1/4/2017 | Deepak Devabose | Draft letter to Defense Counsel to meet and confer re Defendant's responses to Plaintiff's discovery; Conduct legal research | 1.30 | $275.00 | $357.50 |
| 54. | Braden, Teresa v. FCA | 9/2/2016 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.30 | $350.00 | $455.00 |
| 55. | Branam, Kimberly v. FMC | 10/11/2018 | Amy Morse | Draft letter to Defense to meet and confer re FMC's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 56. | Bravo, Tanya v. FCA | 6/10/2015 | Kevin Van Hout | Draft meet and confer letter to Opposing Counsel re Defendant's Responses to Special ROGs; Conduct legal research | 1.10 | $300.00 | $330.00 |
| 57. | Bravo, Tanya v. FCA | 9/21/2015 | Amy Morse | Draft meet and confer letter to Defense Counsel re Defendant 's Discovery Responses; conduct legal research | 1.50 | $250.00 | $375.00 |
| 58. | Brezil, James v. FCA | 12/29/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.00 | $200.00 | $200.00 |
| 59. | Brickner, Scott v. Chrysler | 3/13/2014 | Daisy Ortiz | Draft Plaintiff's meet and confer letter to Defense Counsel regarding Defendant's Discovery Responses; conduct legal research | 2.00 | $225.00 | $450.00 |
| 60. | Brickner, Scott v. Chrysler | 4/17/2014 | Daisy Ortiz | Draft Meet and Confer Letter to Defense Counsel regarding Defendant's Discovery Responses; Conduct Legal Research | 2.60 | $225.00 | $585.00 |
| 61. | Brown, Robert v. FMC | 2/5/2014 | Daisy Ortiz | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.50 | $225.00 | $337.50 |
| 62. | Buck, Denise and Buck, Shirlee v. FMC | 3/6/2015 | Daisy Ortiz | Draft meet and confer letter to Defense re Deft's Discovery Responses; Conduct legal research | 1.00 | $225.00 | $225.00 |
| 63. | Bugiel, Joshua v. FMC | 8/22/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.40 | $350.00 | $490.00 |
| 64. | Bulcao, Beatriz v. FCA | 1/18/2019 | George Semaan | Draft letter to Defense to meet and confer re FCA's response to Ptfs' second set of RFP; Conduct legal research | 1.00 | $225.00 | $225.00 |
| 65. | Burgess v FMC | 3/22/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re FMC's discovery responses; Conduct legal research | 1.50 | $250.00 | $375.00 |
| 66. | Burstein, Bruce and Linda v. Ford Motor Company | 2/5/2016 | Russell Higgins | Draft letter to Defense to meet and confer re Deft's responses to discovery; Conduct legal research | 1.00 | $400.00 | $400.00 |
| 67. | Cabada, Jose L. and Cabada, Graciela v. FMC | 6/23/2016 | Russell Higgins | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.30 | $400.00 | $520.00 |
| 68. | Cagle, Aaron v. FCA | 6/14/2017 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 69. | Calcaterra, Richard v. FCA | 4/12/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.80 | $200.00 | $360.00 |
| 70. | Canizalez, Norman v. KIA | 12/15/2016 | Deepak Devabose | Draft letter to Defense to meet and confer re KMA's discovery responses; conduct legal research | 1.00 | $275.00 | $275.00 |
| 71. | Canto, Olga v. FCA | 9/23/2015 | Amy Morse | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiff's Discovery Requests; Conduct legal research | 1.75 | $250.00 | $437.50 |
| 72. | Cappel, Kristin v. FCA | 10/24/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's Discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 73. | Carrillo, Nisa v. FCA | 11/20/2017 | Jennifer Ruiz | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.40 | $225.00 | $315.00 |
| 74. | Carruthers, Anthony v. FCA | 4/24/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.50 | $350.00 | $525.00 |
| 75. | Carthy, Heather v. FCA | 1/23/2017 | Thomas Burns | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.90 | $225.00 | $427.50 |
| 76. | CASTILLO v. FMC | 12/20/2016 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.70 | $250.00 | $425.00 |
| 77. | Castillo, Ellen Renee v. FMC | 10/17/2018 | Amy Morse | Draft letter to Defense to meet and confer re Def's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 78. | Castillo, Hugo v. FCA | 5/19/2017 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.00 | $350.00 | $350.00 |
| 79. | Castillo, Luis and Gonzalez, Yesenia v. Kia | 5/16/2016 | Amy Morse | Draft letter to Defense Counsel to meet and confer re Defendant's responses to Plaintiffs' discovery; Conduct legal research | 2.00 | $250.00 | $500.00 |
| 80. | Castro, RV FMC | 2/28/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re FMC's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 81. | Cavalleri, Nicholas v. FCA | 10/21/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.40 | $200.00 | $280.00 |
| 82. | Celestine, Larry v. FCA | 1/8/2018 | Deepak Devabose | Draft letter to Defense to meet and confer re Def's discovery responses; Conduct legal research | 1.50 | $275.00 | $412.50 |
| 83. | CERDA v.FMC | 2/21/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.60 | $250.00 | $400.00 |
| 84. | Cervantes-Juarez, Silva v. Hyundai | 7/22/2016 | Amy Morse | Draft letter to Defense to Meet and Confer re Deft's Discovery Responses; Conduct legal research | 1.20 | $350.00 | $420.00 |
| 85. | Chapman, Richard E. v. Hyundai Motor America | 4/17/2017 | Deepak Devabose | Draft letter to Defense to meet and confer re HMA's discovery responses; Conduct legal research | 1.20 | $275.00 | $330.00 |
| 86. | Chavez, Fernanda v. FCA | 5/11/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 0.90 | $350.00 | $315.00 |
| 87. | Chavez, Jose Luis v. GM | 9/6/2019 | Amy Morse | Draft letter to Defense to meet and confer re Delft's discovery responses; Conduct legal research | 1.40 | $350.00 | $490.00 |
| 88. | Chikahiro, Dwayne K. v. FMC | 3/13/2018 | George Aguilar | Draft letter to Defense to meet and confer re Def's improper discovery responses; Conduct legal research | 1.00 | $275.00 | $275.00 |
| 89. | Chikahiro, Dwayne K. v. FMC | 4/12/2018 | George Aguilar | Draft follow up letter to Defense to meet and confer re Def's Supplemental discovery responses; Conduct legal research | 1.00 | $275.00 | $275.00 |
| 90. | Chirinos, Jose v. Ford Motor Company | 12/27/2016 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery response; Conduct legal research | 1.50 | $250.00 | $375.00 |
| 91. | Chivas, Robert J v.FMC | 1/22/2019 | Armando Lopez | Draft letter to Defense to meet and confer re Ford's discovery responses; conduct legal research | 1.00 | $200.00 | $200.00 |
| 92. | Choi, Andrew v. Hyundai | 9/8/2016 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.80 | $350.00 | $630.00 |
| 93. | Choi, Kayla v. BMW | 2/27/2017 | Deepak Devabose | Draft letter to Defense re meet and confer re Deft's Discovery responses; Conduct legal research | 1.20 | $275.00 | $330.00 |
| 94. | Christensen v. FMC | 1/31/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re FMC's discovery responses; Conduct legal research | 1.10 | $250.00 | $275.00 |
| 95. | Cisneros, Jose v. FCA | 7/18/2017 | Jennifer Ruiz | Draft letter to Defense to meet and confer re FCA's responses to Plf's discovery requests; Conduct legal research | 1.00 | $225.00 | $225.00 |
| 96. | Clamar, Mario v. FCA | 2/10/2020 | Sundeep Samra | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.30 | $225.00 | $292.50 |
| 97. | Clark, K. v. FMC | 5/5/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re FMC's discovery responses; Conduct legal research | 1.50 | $250.00 | $375.00 |
| 98. | Clement, Margaret v. FCA | 12/19/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.90 | $200.00 | $380.00 |
| 99. | Codero, Anthony v. HMA | 11/7/2018 | Amy Morse | Draft letter to Defense to meet and confer re HMA's Discovery Responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 100. | Cofield, Jerry v. Kia | 5/22/2015 | Daisy Ortiz | Draft meet and confer letter to Defense Counsel re Defendant's Discovery Responses; Conduct legal research | 2.10 | $225.00 | $472.50 |
| 101. | Corona, Juan Jose v. FMC | 10/11/2018 | Amy Morse | Draft letter to meet and confer re Deft's discovery, responses; Conduct legal research | 0.80 | $350.00 | $280.00 |
| 102. | Costa, Sandra v. FCA | 6/22/2017 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal, research | 1.50 | $350.00 | $525.00 |
| 103. | Coulombe, Frank v. FCA | 1/5/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re Defs' discovery responses; Conduct legal, research | 2.10 | $200.00 | $420.00 |
| 104. | Covert, Eric v. FCA | 4/3/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 105. | Cox, John v. FCA | 1/30/2017 | Thomas Burns | Draft letter to Defense re meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $225.00 | $225.00 |
| 106. | Cramer, Eva v. FCA | 1/17/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re Defts' discovery responses; conduct legal research | 1.00 | $200.00 | $200.00 |
| 107. | Cruz, Danielle H. v. KIA Motors | 3/16/2015 | Daisy Ortiz | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiff's First Set of Discovery Requests; Conduct legal research | 1.75 | $225.00 | $393.75 |
| 108. | Cuevas, Richard v. FCA | 6/23/2017 | Amy Morse | Draft letter to Defense to meet and confer re Defendant's discovery requests; conduct legal research | 1.30 | $350.00 | $455.00 |
| 109. | Davis, Matthew v. FCA | 6/19/2017 | Christopher Swanson | Draft letter to Defense re meet and confer re FCA's responses to Ptf's Discovery requests; Conduct legal research | 1.00 | $375.00 | $375.00 |
| 110. | De La Cruz, Francisco v. FCA | 10/25/2016 | Michelle Lumasag | Draft letter to Defense Counsel to meet and confer re Defendant's discovery responses; Conduct legal research | 0.40 | $200.00 | $80.00 |
| 111. | De leon, Sonia v. KMA | 1/9/2020 | Gregory A. Lehrmann | Draft meet and confer letter re Defendant's discovery responses; conduct legal research | 0.90 | $200.00 | $180.00 |
| 112. | DeAngelis, Donald & Shelby v. FMC | 4/10/2014 | Daisy Ortiz | Draft letter to Defense to meet and confer re Ford's discovery responses; conduct legal research | 1.50 | $225.00 | $337.50 |
| 113. | Del Valle v. FMC | 8/2/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's Discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 114. | DELEO v.FMC | 3/2/2016 | Russell Higgins | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.10 | $400.00 | $440.00 |
| 115. | Delgadillo, Christian R and Martinez, Rigober | 6/19/2017 | Christopher Swanson | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $375.00 | $375.00 |
| 116. | Dertina, Damon v. BMW | 3/24/2016 | Amy Morse | Draft letter to Defense to meet and confer re BMW's Discovery responses; Conduct legal research | 1.30 | $350.00 | $455.00 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 117. | Desimone, Tom v. HMA | 5/10/2016 | Deepak Devabose | Draft letter to Defense to meet and confer re HMA's discovery responses; conduct legal research | 1.50 | $275.00 | $412.50 |
| 118. | Diarra, Monica v. FCA | 4/3/2018 | Daniel Kalinowski | Draft letter to Defense to meet and confer re FCA's Discovery Responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 119. | Dienes, Leon v. FCA | 2/16/2017 | Alastair Hamblin | Draft letter to Defense to meet and confer re FCA 's discovery responses; Conduct legal research | 1.00 | $325.00 | $325.00 |
| 120. | DiGioia, Anna Marie v. FMC | 5/10/2019 | Amy Morse | Draft letter to Defense to meet and confer, re Deft's Discovery responses Conduct legal research | 1.50 | $350.00 | $525.00 |
| 121. | Dill, Terri Anne v. Hyundai | 8/25/2015 | Christopher Swanson | Draft letter to Defense to meet and confer re HMA's discovery responses; Conduct legal research | 1.00 | $375.00 | $375.00 |
| 122. | Dombrowski, Bruce and Dombrowski, Nancy v. FM | 10/21/2015 | Russell Higgins | Draft letter to Opposing Counsel to meet and confer re Deft's discovery responses; Conduct legal research | 1.40 | $400.00 | $560.00 |
| 123. | Dosanjh, Jaspal v. Hyundai | 7/28/2016 | Amy Morse | Draft letter to Defense to meet and confer re, HMA's discovery responses; Conduct legal research | 1.20 | $350.00 | $420.00 |
| 124. | DUENAS v. FMC | 3/27/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.50 | $250.00 | $375.00 |
| 125. | DuFord, William v. FMC | 8/30/2016 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.00 | $250.00 | $250.00 |
| 126. | Dugan, Teri v. FMC | 10/9/2018 | Maite Colon | Draft meet and confer letter to Defense re Defendant's discovery responses; conduct legal, research | 1.00 | $275.00 | $275.00 |
| 127. | Duk v. Ford | 12/27/2016 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal, research | 1.70 | $250.00 | $425.00 |
| 128. | Dunfee, Ann and Dunfee, Robert | 8/25/2015 | Christopher Swanson | Draft meet and confer letter to Defense Counsel re Defendant's Responses to Discovery Requests; Conduct legal research | 0.70 | $325.00 | $227.50 |
| 129. | Edralin, Daniel v. FCA | 1/25/2017 | Thomas Burns | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 2.30 | $225.00 | $517.50 |
| 130. | Egger, Rudy Warren v. FCA | 4/11/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.50 | $200.00 | $300.00 |
| 131. | Encarnacion V. FMC | 12/20/2016 | Michael Ouziel | Draft letter to Defense to meet and confer re FMC's discovery responses; conduct legal research | 1.00 | $250.00 | $250.00 |
| 132. | Escalante, Alberto v. FCA | 4/13/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 2.00 | $200.00 | $400.00 |
| 133. | Espinoza, Beda v. FCA | 10/27/2016 | Michelle Lumasag | Draft letter to Defense re meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 134. | Espinoza, Carlos and Heather v. FCA | 12/14/2018 | George Semaan | Draft letter to Defense to meet and confer re FCA's,discovery responses; Conduct legal research | 1.00 | $225.00 | $225.00 |
| 135. | Espinoza, Rosa v. FCA | 11/20/2017 | Jennifer Ruiz | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.10 | $225.00 | $247.50 |
| 136. | Evans, Keith v. FCA | 6/20/2017 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.40 | $350.00 | $490.00 |
| 137. | EVERLING v. FMC | 8/14/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.60 | $350.00 | $560.00 |
| 138. | Farler, Karen v. FCA | 11/2/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.50 | $200.00 | $300.00 |
| 139. | Felix, Jaime v. BMW | 4/17/2017 | Deepak Devabose | Draft letter to Defense to meet and confer re BMW's discovery responses; Conduct legal research | 1.40 | $275.00 | $385.00 |
| 140. | Ferreira, Cecilia and Ferreira, Joseph v. FMC | 12/23/2016 | Michael Ouziel | Draft letter to Defense to meet and confer re Defendant's responses to Plaintiffs' first sets of discovery; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 141. | Figures, Ida v. FCA | 1/8/2018 | Deepak Devabose | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $275.00 | $275.00 |
| 142. | Fisher, Lourdes v. FMC | 6/2/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Ford's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 143. | Fitzgerald, Daniel v. HMA | 8/31/2016 | Amy Morse | Draft letter to Defense to meet and confer re HMA's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 144. | Flores, Francisco v. FCA | 3/25/2019 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery response; Conduct legal research | 0.90 | $350.00 | $315.00 |
| 145. | Flores, Julian and Alejandra v. FCA US LLC | 1/8/2018 | Deepak Devabose | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.00 | $275.00 | $275.00 |
| 146. | FLORES, RAUL v. FMC | 3/7/2017 | Michael Ouziel | Draft meet and confer letter to Defense re Deft's discovery responses; Conduct legal research | 1.80 | $250.00 | $450.00 |
| 147. | Floyd, Stacy Hoofkin v. FCA | 8/28/2018 | Daniel Kalinowski | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 148. | Fraga, Francisco Martinez | 3/7/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 0.90 | $250.00 | $225.00 |
| 149. | Frederick, Mark v. FMC | 8/26/2014 | Daisy Ortiz | Draft meet and confer letter to Opposing Counsel re Defendant's Discovery Responses; Conduct legal research | 2.00 | $225.00 | $450.00 |
| 150. | Fronek, Thomas and Fronek, Karen v. FCA | 4/4/2017 | Amy Morse | Draft letter to Defense re telephonic meet and confer re FCA's Discovery responses; Conduct legal research | 1.50 | $350.00 | $525.00 |
| 151. | Galvez Rios, Francisco and Maria v. FCA | 12/10/2018 | George Semaan | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 0.90 | $225.00 | $202.50 |
| 152. | Gaona, Alejandro v. FCA | 10/25/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 0.90 | $200.00 | $180.00 |
| 153. | Garcia, Juan v. FCA | 2/6/2017 | Thomas Burns | Draft letter to Defense to meet and confer re deft's discovery responses; conduct legal research | 2.30 | $225.00 | $517.50 |
| 154. | Garcia, Pompeyo and Cristal Mejicanos v. FMC | 3/27/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.50 | $250.00 | $375.00 |
| 155. | Garcis, Luis v. FCA | 4/14/2017 | Michelle Lumasag | Draft letter to Defense re telephonic Meet and Confer on 12/21/16 re FCA's Discovery Responses; Conduct legal research | 1.90 | $200.00 | $380.00 |
| 156. | Garza, Janiece v. FCA | 4/6/2017 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 157. | Gaytan, Rebecca Ann & Gaytan Ileen v. General Motors | 5/20/2019 | Amy Morse | Draft meet and confer letter to Defence re GM's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 158. | Geary, John v. FCA | 12/29/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Def's discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 159. | Giddings, Maryann v. FCA | 10/24/2016 | Michelle Lumasag | Draft letter to Defense Counsel to meet and confer re Defendant's discovery responses; Conduct legal research; review file | 0.90 | $200.00 | $180.00 |
| 160. | Goicoechea, Alfonso and Carmen v. Kia | 3/16/2015 | Daisy Ortiz | Draft meet and confer letter to Defense Counsel re Defendant's Responses to Discovery Requests; Conduct legal research | 1.30 | $225.00 | $292.50 |
| 161. | Goldman, Christine and Jette, David v. Hyunda | 3/9/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.10 | $350.00 | $385.00 |
| 162. | Gomes, Mike v. FMC | 2/21/2017 | Michael Ouziel | Draft meet and confer letter to Defense re Deft's discovery responses; conduct legal research | 1.30 | $250.00 | $325.00 |
| 163. | Gomez, Jose v. FCA | 10/27/2016 | Michelle Lumasag | Draft letter to Defense Counsel to meet and confer re Defendant's responses to Plaintiff's discovery requests; Conduct legal research | 1.30 | $200.00 | $260.00 |
| 164. | Gomez, Mark v. FCA | 6/23/2017 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.30 | $350.00 | $455.00 |
| 165. | Gomez, Mary v. FCA | 7/3/2018 | Daniel Kalinowski | Draft letter to Defense to meet and confer re Defendant's discovery responses; conduct legal research | 1.00 | $250.00 | $250.00 |
| 166. | Gomez, Mary v. FCA | 3/22/2019 | Amy Morse | Draft letter to Defense to meet and confer re FCA's response to RFP, Set No. Two; conduct legal research | 0.50 | $350.00 | $175.00 |
| 167. | Gomez, Melinda and Gomez, Amanda v. FMC | 7/20/2017 | Amy Morse | Draft letter to Defense to meet and confer re FMC's discovery responses; Conduct legal research | 1.40 | $350.00 | $490.00 |
| 168. | Gomez, Omar v. Kia | 3/22/2016 | Amy Morse | Draft meet and confer letter to Defense Counsel re Defendant's Responses to RFP; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 169. | Gonzalez, Gabriel v. FCA | 11/1/2017 | Jennifer Ruiz | Draft letter to meet and confer re Defts' discovery responses; Conduct legal research | 1.50 | $225.00 | $337.50 |
| 170. | Gonzalez, Gabriel v. FCA | 8/16/2018 | Daniel Kalinowski | Draft letter to meet and confer re Defts' discovery responses set two; Conduct legal research | 0.80 | $250.00 | $200.00 |
| 171. | Gonzalez, Pedro v. Ford Motor Company | 3/27/2017 | Michael Ouziel | Draft meet and confer letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 172. | Gonzalez, Zenaido Diaz v. FCA | 8/2/2018 | Daniel Kalinowski | Draft letter to Defense to meet and confer re Defendant's discovery responses; conduct legal research | 1.00 | $250.00 | $250.00 |
| 173. | Gordon, Robin v. FCA | 4/4/2017 | Michelle Lumasag | Draft meet and confer letter to Defense re Deft's discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 174. | Green, Donna v. FCA | 6/23/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.00 | $350.00 | $350.00 |
| 175. | Green, Patrick v. FCA | 6/23/2017 | Amy Morse | Draft letter to Defense re meet and confer re FCA's Discovery Responses; Conduct legal research | 1.10 | $350.00 | $385.00 |
| 176. | GUERRERO MARINA JORGE V. FMC | 5/20/2016 | Russell Higgins | Draft letter to Opposing Counsel to meet and confer re Deft's discovery responses; Conduct legal research | 1.40 | $400.00 | $560.00 |
| 177. | Guiterrez + Lozano v. FCA | 4/22/2017 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 178. | Gutierrez Lopez, Jose and Gutierrez Lopez, Jesus Ricardo | 8/19/2019 | Gregory A. Lehrmann | Draft letter to Defense to meet and confer re Defendant's discovery responses; conduct legal research | 1.10 | $200.00 | $220.00 |
| 179. | Gutierrez, Stephanie v. Hyundai Motor America | 12/4/2017 | Daniel Kalinowski | Draft letter to Defence to meet and confer re HMA's Discovery Responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 180. | Guzman, Roberto v. FCA | 4/21/2017 | Amy Morse | Draft letter to Defense to meet and confer Deft's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 181. | Hagerman, Connie v. FCA | 5/25/2018 | Deepak Devabose | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.50 | $275.00 | $412.50 |
| 182. | Hall, Dennis v. FCA | 2/3/2017 | Alastair Hamblin | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.60 | $325.00 | $520.00 |
| 183. | Hamilton, Lisa v. FCA | 11/20/2017 | Jennifer Ruiz | Draft letter to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $225.00 | $225.00 |
| 184. | HAND v.FMC | 4/21/2014 | Daisy Ortiz | Draft letter to Defense to meet and confer re FMC's discovery responses; Conduct legal research | 1.00 | $225.00 | $225.00 |
| 185. | Hannah v FMC | 5/23/2017 | Michael Ouziel | Draft letter to Defense requesting to meet and confer re FMC's responses to Ptf's discovery; Conduct legal research | 1.40 | $250.00 | $350.00 |
| 186. | Hardy, Russell v. Kia | 7/12/2018 | George Semaan | Draft letter to Defense to meet and confer re Defendant's discovery responses; conduct legal research | 1.00 | $225.00 | $225.00 |
| 187. | Hardy, Russell v. Kia | 1/25/2019 | Sundeep Samra | Draft letter to Defense to meet and confer re Def's discovery responses, Set Two; conduct legal research | 1.00 | $225.00 | $225.00 |
| 188. | Harisay, Marc v. Hyundai | 7/28/2016 | Amy Morse | Draft letter to Defense to meet and confer re Deft's responses to Plaintiff's discovery requests; Conduct legal research | 1.20 | $350.00 | $420.00 |
| 189. | Harris, Julie v. Hyundai | 1/20/2016 | Russell Higgins | Draft meet and confer letter to Defense Counsel re Defendant's Discovery Responses; Conduct legal research | 1.30 | $400.00 | $520.00 |
| 190. | Heil, Clayborne v. FCA | 12/20/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Deft's Discovery Responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 191. | Heil, Clayborne v. FCA | 3/21/2018 | Larry S. Castruita | Draft meet and confer letter regarding Motions In Limine Plaintiff intends to file in this case, including case research to identify which evidence should be excluded. | 0.75 | $350.00 | $262.50 |
| 192. | Hellenberg, Casey W. v. FMC | 5/6/2019 | Amy Morse | Draft letter to Defense to meet and confer re, FMC's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 193. | Hensley, Jedidiah v. FCA | 12/11/2015 | Amy Morse | Draft meet and confer letter to Defense re Deft's discovery responses; Conduct legal research | 1.80 | $350.00 | $630.00 |
| 194. | Hensley, Melissa v. FCA | 6/14/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.60 | $350.00 | $560.00 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 195. | Hernandez, Hada (aka Hada Romero) v. FCA | 6/20/2019 | Amy Morse | Draft letter to Defense to meet and Confer re Deft's discovery responses; Conduct legal research | 0.80 | $350.00 | $280.00 |
| 196. | Hernandez, Julio v. BMW | 10/11/2017 | Daniel Kalinowski | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.00 | $250.00 | $250.00 |
| 197. | Hernandez, Lilibeth v. FCA | 6/13/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 198. | Hernandez, Roberto III v. FMC | 9/13/2018 | Amy Morse | Draft letter to Defense to meet and confer re Deft's Discovery responses; Conduct, legal research | 1.50 | $350.00 | $525.00 |
| 199. | Hernandez, Toribio and Hernandez, Elizabeth v | 2/28/2017 | Thomas Burns | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.90 | $225.00 | $427.50 |
| 200. | Herrera, Aldrin v. Chrysler | 4/21/2014 | Daisy Ortiz | Draft meet and confer letter to Defense Counsel re Defendant's Discovery Responses; Conduct legal research | 1.40 | $225.00 | $315.00 |
| 201. | Herrera, Aldrin v. Chrysler | 5/28/2014 | Daisy Ortiz | Draft meet and confer letter to Defense Counsel re Defendant's Responses to Requests for Production of Documents; Conduct legal research | 1.50 | $225.00 | $337.50 |
| 202. | Herrera, Dalila v. FCA | 6/23/2017 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.00 | $350.00 | $350.00 |
| 203. | Hightower, Wilbur v. FMC | 8/25/2015 | Russell Higgins | Draft letter to Defence to meet and confer re Defendant's discovery responses; conduct legal research | 1.50 | $450.00 | $675.00 |
| 204. | Howton, Christopher v. FCA | 12/19/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Def's disco responses; Conduct legal research | 1.50 | $200.00 | $300.00 |
| 205. | Ibarra v. Ford | 3/13/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 206. | Ibarra, Teresa v. FMC | 7/20/2017 | Amy Morse | Draft meet and confer letter to Defense re Deft's discovery responses; conduct legal research | 1.60 | $350.00 | $560.00 |
| 207. | Jacquez, Mary v.FMC | 12/7/2015 | Russell Higgins | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.60 | $400.00 | $640.00 |
| 208. | Jameson, April v. FMC | 1/18/2019 | Amy Morse | Draft letter to Defense to meet and confer re FMC's discovery response; Conduct legal research | 1.50 | $350.00 | $525.00 |
| 209. | Jansson v. FMC | 7/8/2016 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 210. | Jasmer, Travis v. FCA | 12/20/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.60 | $200.00 | $320.00 |
| 211. | Javian, Benjamin Castro v. Ford Motor Company | 8/30/2016 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 212. | Jerry, Eugene v. Ford Motor Company | 1/26/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.00 | $250.00 | $250.00 |
| 213. | Johnson, Riadon v. FCA | 4/3/2017 | Michelle Lumasag | Draft meet and confer letter to Defense Counsel re FCA's discovery responses; conduct legal research | 1.00 | $200.00 | $200.00 |
| 214. | Johnson, Rita v. FCA | 6/23/2017 | Amy Morse | Draft letter to Defense re telephonic meet and confer re Deft's discovery responses; Conduct legal research | 1.50 | $350.00 | $525.00 |
| 215. | Johnson, Wanda v. Hyundai | 9/8/2016 | Amy Morse | Draft meet and confer letter to Defense re Deft's discovery responses; conduct legal research | 1.20 | $350.00 | $420.00 |
| 216. | Jones, Danny v. Chrysler | 3/13/2014 | Daisy Ortiz | Draft Plaintiff's meet and confer letter to Defense Counsel regarding Defendant's Discovery Responses; conduct legal research | 2.00 | $225.00 | $450.00 |
| 217. | Jordan, Matthew v. FCA | 1/20/2017 | Thomas Burns | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.00 | $225.00 | $225.00 |
| 218. | JUAREZ v.FMC | 2/21/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.00 | $250.00 | $250.00 |
| 219. | Juarez, Marco v. General Motors | 3/29/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 220. | Kantar, Joseph v. FCA | 12/9/2016 | Thomas Burns | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 2.10 | $225.00 | $472.50 |
| 221. | Kappler, Aaron v. FMC | 3/3/2016 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.30 | $250.00 | $325.00 |
| 222. | Karm, Cynthia v. FMC | 3/27/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's Discovery responses; conduct legal research | 0.90 | $250.00 | $225.00 |
| 223. | Kasarda, Melissa v. FCA | 12/13/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.80 | $200.00 | $360.00 |
| 224. | KATZ, MITCHELL V. FMC | 12/16/2016 | Michael Ouziel | Draft meet and confer letter to Defense re Deft's Discovery Responses; Conduct legal research | 1.70 | $250.00 | $425.00 |
| 225. | KATZ, MITCHELL V. FMC | 1/25/2017 | Michael Ouziel | Draft meet and confer letter to Defense re Deft's 1/20/17 letter and Discovery Responses; Conduct research | 0.80 | $250.00 | $200.00 |
| 226. | Kavanagh, Fiona v. FCA | 6/23/2017 | George Aguilar | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.00 | $275.00 | $275.00 |
| 227. | Kearin, Timothy v. FCA | 6/23/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.00 | $350.00 | $350.00 |
| 228. | Kearney, Kevin v. FCA | 10/24/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 2.10 | $200.00 | $420.00 |
| 229. | Kelton, Kevin v. FCA | 6/12/2018 | Daniel Kalinowski | Draft letter to Defense to meet and confer re FCA's Discovery Responses; Conduct Legal research | 1.30 | $250.00 | $325.00 |
| 230. | Kent, Doreen and Mead, Donald v. FCA | 12/29/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.50 | $200.00 | $300.00 |
| 231. | Kiemel, Sean Paul v. FMC | 10/22/2018 | George Aguilar | Draft letter to Defense to meet and confer re Ford's discovery responses; conduct legal research | 1.00 | $275.00 | $275.00 |
| 232. | Kim, Justin v. Hyundai | 3/22/2016 | Russell Higgins | Draft letter to Defense to meet and confer re Defendant's discovery responses; conduct legal research | 1.00 | $450.00 | $450.00 |
| 233. | King v. Hyundai | 5/13/2016 | Russell Higgins | Draft meet and confer letter to Defense Counsel re Defendant's Discovery Responses; Conduct legal research | 1.10 | $400.00 | $440.00 |
| 234. | King, A. v. Hyundai | 3/10/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.20 | $350.00 | $420.00 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 235. | King, Anthony v. FMC | 1/25/2017 | Michael Ouziel | Draft meet and confer letter to Defense re Deft's discovery responses; Conduct legal research | 1.60 | $250.00 | $400.00 |
| 236. | Koetsier, Thomas and Koetsier, Jackie (for Ba | 8/25/2016 | Michael Ouziel | Draft letter to Defense Counsel to meet and confer re Defendant's responses to Plaintiffs' discovery request; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 237. | Koller, Mary S. v. FMC | 10/17/2018 | Amy Morse | Draft letter to Defense to meet and confer re, FMC's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 238. | Kopa, Katherine v. FMC | 4/9/2019 | Amy Morse | Draft letter to Defense to meet and confer re Def's discovery responses; Conduct legal research | 1.50 | $350.00 | $525.00 |
| 239. | Kopchak v. FMC | 7/13/2016 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal, research | 1.50 | $250.00 | $375.00 |
| 240. | La Chance, Michael v. FCA | 10/25/2016 | Michelle Lumasag | Draft meet and confer letter to Defense re Deft's discovery responses; Conduct legal research | 0.90 | $200.00 | $180.00 |
| 241. | Laluan, Demetrio & Evelyn v. FCA | 10/1/2019 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 0.90 | $350.00 | $315.00 |
| 242. | Lambertson, Larry v. FCA | 1/13/2017 | Thomas Burns | Draft meet and confer letter to Defense re FCA 's discovery responses; conduct legal research | 1.00 | $225.00 | $225.00 |
| 243. | Lawson, Mark | 7/31/2014 | Daisy Ortiz | Draft letter to Defense to meet and confer re FMC's discovery responses; Conduct legal research | 1.90 | $225.00 | $427.50 |
| 244. | Leach, Todd v. FCA | 1/13/2017 | Thomas Burns | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct research | 1.90 | $225.00 | $427.50 |
| 245. | Leon, Yolanda v. FCA | 4/12/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.50 | $200.00 | $300.00 |
| 246. | Ligon, Ronald v. FCA | 10/4/2017 | Jennifer Ruiz | Draft letter to Defense to meet and confer re FCA's Discovery Responses; Conduct legal research | 1.00 | $225.00 | $225.00 |
| 247. | Lloyd, Drishan v. FCA | 10/21/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.50 | $200.00 | $300.00 |
| 248. | Lopez Lopez, Paul and Lopez Chacon, Audelia v. KMA | 3/23/2021 | Woody Jones | Draft letter to Defense to meet and confer re Def's discovery responses; Conduct Legal Research | 0.90 | $250.00 | $225.00 |
| 249. | Lopez, Maria and Jose v. FMC | 1/30/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.10 | $250.00 | $275.00 |
| 250. | Lopez, William Ceron and Guadalupe v. FMC | 9/18/2018 | Amy Morse | Draft letter to Defense to meet and confer re Def's discovery responses; Conduct legal, research | 1.00 | $350.00 | $350.00 |
| 251. | Lovato, Robert J. and Lovato, Rose v. FMC | 2/21/2017 | Michael Ouziel | Draft meet and confer letter to Defense re FMC's discovery responses; conduct legal research | 0.90 | $250.00 | $225.00 |
| 252. | Luevanos, Katherine v. FCA | 6/15/2017 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.50 | $350.00 | $525.00 |
| 253. | LUTZ V.FMC | 5/5/2017 | Michael Ouziel | Draft letter of Defense to meet and confer re Deft's Discovery responses; Conduct legal, research | 1.40 | $250.00 | $350.00 |
| 254. | Madariaga, Anthony v. FCA | 4/12/2017 | Michelle Lumasag | Draft meet and confer letter to Defense re Defendant's discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 255. | Madrigal, Oscar v. Hyundai | 3/4/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.10 | $350.00 | $385.00 |
| 256. | Madriz, Juan v. BMW | 3/20/2017 | Deepak Devabose | Draft letter to Defense to meet and confer re BMW's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 257. | Madsen, Benny v. FCA | 4/21/2014 | Daisy Ortiz | Draft letter to Defense to meet and confer re Defendant's discovery responses; Conduct legal research | 1.00 | $225.00 | $225.00 |
| 258. | Maestas, Robert v. Chrysler | 4/21/2014 | Daisy Ortiz | Draft Meet and Confer Letter to Defense Counsel regarding Defendant's Written Discovery Responses, Set One; Conduct Legal Research | 1.60 | $225.00 | $360.00 |
| 259. | Mansur, Bradford v. Chrysler | 7/7/2014 | Daisy Ortiz | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiff's First Set of Discovery Requests; Conduct legal research | 2.60 | $225.00 | $585.00 |
| 260. | Marcel-Mariano, Joel v. FCA | 6/9/2017 | Amy Morse | Draft meet and confer letter to Defense Counsel re FCA's discovery responses; conduct legal research | 1.30 | $350.00 | $455.00 |
| 261. | MARIN v. FMC | 8/30/2016 | Michael Ouziel | Draft letter to Defense to meet and confer re FMC's discovery responses; Conduct legal research | 1.20 | $250.00 | $300.00 |
| 262. | Marin, Rene v. FCA | 7/18/2017 | Jennifer Ruiz | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.00 | $225.00 | $225.00 |
| 263. | Marquez, Salvador v. FCA | 5/11/2017 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.00 | $350.00 | $350.00 |
| 264. | Marquinez, Norberto v. BMW | 8/24/2016 | Amy Morse | Draft meet and confer letter to Defense re Deft's discovery responses; Conduct legal research; Review file | 1.30 | $350.00 | $455.00 |
| 265. | MARROQUIN V.FMC | 1/25/2017 | Michael Ouziel | Draft meet and confer letter to Defense re Deft's discovery responses; conduct legal research | 1.00 | $250.00 | $250.00 |
| 266. | Martin, Wesley v. FMC | 3/14/2016 | Russell Higgins | Draft meet and confer letter to Defense Counsel re Defendant's Responses to Plaintiff's First Set of Discovery Requests; Conduct legal research | 1.00 | $400.00 | $400.00 |
| 267. | Martinez, Antonio v. FCA | 12/27/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 268. | MARTINEZ, JOSE V.FMC | 2/28/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal, research | 1.30 | $250.00 | $325.00 |
| 269. | Martinez, Maribel v. FCA | 5/15/2018 | Daniel Kalinowski | Draft letter to Defense to meet and confer re Defendant's discovery responses; conduct legal research | 1.00 | $250.00 | $250.00 |
| 270. | Martinez, Paul and Estella v. FMC | 5/9/2019 | Daniel Macioce | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.50 | $200.00 | $300.00 |
| 271. | Martinez, Stephanie v. FCA | 8/22/2016 | Amy Morse | Draft letter to Defense Counsel to meet and confer re FCA's discovery responses; Conduct legal research | 1.40 | $350.00 | $490.00 |
| 272. | Martinez, Steven v. FCA | 10/6/2017 | Jennifer Ruiz | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.00 | $225.00 | $225.00 |
| 273. | Martinez-Leycam, Belia v. FMC | 12/23/2016 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.70 | $250.00 | $425.00 |
| 274. | Masingale, Richard v. FCA | 6/15/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.50 | $350.00 | $525.00 |
| 275. | Matini, Carolyn v. General Motors | 2/22/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re GM's discovery responses; Conduct legal research | 1.50 | $200.00 | $300.00 |
| 276. | Matthews, Ronald v. FCA | 6/14/2017 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.60 | $350.00 | $560.00 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 277. | Mayorga, Amparao v. BMW | 4/14/2016 | Amy Morse | Draft meet and confer letter to Defense re Defendant's Discovery Responses; Conduct legal research | 1.10 | $250.00 | $275.00 |
| 278. | Mayorga, Amparao v. BMW | 5/26/2016 | Amy Morse | Draft meet and confer letter to Defense re Defendant's 5/17/16 letter and Discovery Responses; Conduct legal research | 0.50 | $250.00 | $125.00 |
| 279. | McCarthy, Jordan v. FCA | 4/3/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.10 | $200.00 | $220.00 |
| 280. | McCullough, William v. FCA | 11/17/2015 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.50 | $250.00 | $375.00 |
| 281. | McFalls, Linda v. Kis | 9/14/2015 | Russell Higgins | Draft meet and confer letter to Defense Counsel re Defendant's Discovery Responses; Conduct legal research | 1.60 | $400.00 | $640.00 |
| 282. | McKinnon, Corey v. FMC | 5/19/2014 | Daisy Ortiz | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.50 | $225.00 | $337.50 |
| 283. | McLaughlin, Lepe v. Chrysler | 3/13/2015 | Daisy Ortiz | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiffs' First Set of Discovery Requests; Conduct legal research | 1.80 | $225.00 | $405.00 |
| 284. | Medina, Cecilia v. FCA | 6/5/2017 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 285. | Medina, Cecilia v. FMC | 1/26/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re, Deft's discovery responses; Conduct legal research | 1.10 | $250.00 | $275.00 |
| 286. | Mejia, Jaime v. FCA | 6/15/2017 | Amy Morse | Draft meet and confer letter to Defense re FCA's discovery responses; Conduct legal research | 1.20 | $350.00 | $420.00 |
| 287. | Mejia, Jaime v. FCA | 7/26/2018 | Daniel Kalinowski | Draft letter to Defense to meet and confer re FCA's responses to Plf's Second Set of RFP; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 288. | Melton, Michael v. Kia | 7/17/2014 | Daisy Ortiz | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiff's Discovery Requests; conduct legal research | 2.30 | $225.00 | $517.50 |
| 289. | Melton, Michael v. Kia | 9/29/2014 | Daisy Ortiz | Draft meet and confer letter to Defense Counsel regarding Defendant's Discovery Responses; conduct legal research | 1.50 | $225.00 | $337.50 |
| 290. | Mendez, Julissa v. FCA | 6/10/2015 | Kevin Van Hout | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiff's Special Interrogatories, Set One; Conduct legal research | 1.75 | $300.00 | $525.00 |
| 291. | Mendez, Julissa v. FCA | 9/18/2015 | Russell Higgins | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiff's First Set of Discovery Requests; Conduct legal research | 1.25 | $400.00 | $500.00 |
| 292. | Mercado, Jaime v. FCA | 10/27/2016 | Michelle Lumasag | Draft letter to Defense Counsel to meet and confer re Defendant's discovery responses; Conduct legal research | 1.50 | $200.00 | $300.00 |
| 293. | Metzger, Duane v. FCA | 4/2/2017 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 294. | Meuse, Brian v. FCA | 2/2/2017 | Thomas Burns | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $225.00 | $225.00 |
| 295. | Mills, Dudley B., and Mills, Janette E. | 9/29/2017 | Amy Morse | Draft meet and confer letter to Defense re Deft's discovery responses; Conduct legal research | 1.50 | $350.00 | $525.00 |
| 296. | Milosevich, Dan for Loda Inc. v. FMC | 4/10/2019 | Amy Morse | Draft letter to Defense to meet and confer re FMC's, discovery responses; Conduct legal research | 1.50 | $350.00 | $525.00 |
| 297. | Misner, Gregory Scott Julie v. FMC | 3/7/2014 | Daisy Ortiz | Draft letter to Defense to meet and confer re Def's discovery responses; Conduct legal research | 1.50 | $225.00 | $337.50 |
| 298. | Modler, Walter v. FCA | 4/11/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.50 | $200.00 | $300.00 |
| 299. | Modler, Walter v. FCA | 1/18/2019 | George Semaan | Draft letter to Defense to meet and confer re FCA's response to Ptf's second set of RFP; conduct legal research | 0.30 | $225.00 | $67.50 |
| 300. | Mondragon, Noel v. FCA | 5/11/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.10 | $350.00 | $385.00 |
| 301. | Monroe, Lisa v. FCA | 1/25/2017 | Thomas Burns | Draft letter to Defense re 12/21/16 telephonic meet and confer re FCA's discovery responses; Conduct legal research | 1.50 | $225.00 | $337.50 |
| 302. | Montano Carranza, Gabriela v. FCA | 6/12/2019 | Amy Morse | Draft letter to Defense to meet and confer re Deft's Discovery responses; Conduct legal research | 0.90 | $350.00 | $315.00 |
| 303. | Montero, Martha v. Kia | 9/2/2016 | Amy Morse | Draft meet and confer letter re Deft's discovery responses; Conduct legal research | 0.90 | $250.00 | $225.00 |
| 304. | Montes, Alica and Padilla, Jesse v. FMC | 4/4/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re FMC's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 305. | Moore, Allen v. FCA | 1/31/2017 | Thomas Burns | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.10 | $225.00 | $247.50 |
| 306. | Mora, Robert v. FCA | 6/15/2017 | Amy Morse | Draft meet and confer letter to Defense re FCA's responses to discovery; conduct legal research | 1.00 | $350.00 | $350.00 |
| 307. | Morales, Daniel Mario v. FMC | 11/28/2016 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 308. | Moreno, Adam v. FCA | 12/19/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.70 | $200.00 | $340.00 |
| 309. | Moreno, Jesus v. FCA | 6/26/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 310. | Moreno, Martin and Ruby v. FMC | 1/25/2017 | Michael Ouziel | Draft meet and confer letter re Deft's discovery responses; Conduct legal research | 1.10 | $250.00 | $275.00 |
| 311. | Morgan, Geoffrey v. FCA | 2/2/2017 | Thomas Burns | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.50 | $225.00 | $337.50 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 312. | Morino, Michelle v.FCA | 4/15/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's Discovery Responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 313. | Morris, Mary v. Hyundai | 8/24/2016 | Amy Morse | Draft letter to Defense Counsel to meet and confer re Defendant's discovery responses; Conduct legal research | 1.20 | $350.00 | $420.00 |
| 314. | Morvarid, Roxana v. FCA | 7/19/2017 | Jennifer Ruiz | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.50 | $225.00 | $337.50 |
| 315. | Mosburg, Tiffany v. FCA | 4/14/2017 | Michelle Lumasag | Draft letter to Defense Counsel to meet and confer re FCA's discovery responses; conduct legal research | 1.00 | $200.00 | $200.00 |
| 316. | Mota, Hernan and Mota, Claudio v. KMA | 2/27/2020 | Gregory A. Lehrmann | Draft letter to Defense to meet and confer re Def's discovery responses; Conduct Legal Research, Set Two | 1.30 | $200.00 | $260.00 |
| 317. | Mota, Hernan and Mota, Claudio v. KMA | 11/3/2020 | Gregory A. Lehrmann | Draft letter to Defense to meet and confer re Def's discovery responses, set three; Conduct Legal Research | 1.50 | $200.00 | $300.00 |
| 318. | Mota, Victor and Carlos v. Hyundai | 9/2/2016 | Deepak Devabose | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.10 | $275.00 | $302.50 |
| 319. | Munguia, Maria and Edgar Morales v. FMC | 5/3/2019 | Daniel Macioce | Draft letter to Defense to meet and confer re Ford's discovery responses; conduct legal research | 1.50 | $200.00 | $300.00 |
| 320. | Munoz, Cruz v. General Motors | 6/15/2018 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.00 | $350.00 | $350.00 |
| 321. | Munoz, Efrain v. FCA | 6/7/2017 | Amy Morse | Draft meet and confer letter to Defense re FCA's discovery responses; conduct legal research | 1.60 | $350.00 | $560.00 |
| 322. | Munoz, Jose v. FCA | 11/25/2015 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 323. | Munoz, Martin v. FMC | 8/2/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.00 | $350.00 | $350.00 |
| 324. | Munoz, Miriam and Munoz, Martin v. GM | 5/19/2020 | Erum Siddiqui | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 325. | Murillo, Jose v. FCA | 6/23/2015 | Kevin Van Hout | Draft meet and confer letter to Defense Counsel re Defendant's Responses to SROGs; Conduct legal research | 1.50 | $300.00 | $450.00 |
| 326. | Murillo, Jose v. FCA | 9/21/2015 | Amy Morse | Draft meet and confer letter to Defense Counsel re Defendant's Responses to First Set of Discovery Requests; Conduct legal research | 1.50 | $250.00 | $375.00 |
| 327. | Murillo, Jose v. FCA | 12/30/2015 | Kristina Stephenson-Cheang | Draft letter to Defense Counsel confirming telephonic meet and confer re Plaintiff' s Responses to Discovery Requests; Conduct legal research | 2.50 | $350.00 | $875.00 |
| 328. | Murillo, Salvador v. KMA | 1/29/2021 | Gregory A. Lehrmann | Draft letter to Defense to meet and confer re Deft's discovery responses, set two; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 329. | Murphy, Timothy D. v. FMC | 11/11/2016 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 0.90 | $250.00 | $225.00 |
| 330. | Najera, Mary Beth v. Hyundai Motor America | 3/21/2016 | Russell Higgins | Draft letter to Defence to meet and confer re HMA's Discovery responses; Conduct legal research | 1.30 | $450.00 | $585.00 |
| 331. | Najera, Mary Beth v. Hyundai Motor America | 10/25/2018 | Jodie Koo | Draft letter to Defence to meet and confer re HMA's discovery responses; Conduct legal research | 2.30 | $225.00 | $517.50 |
| 332. | Nance, Joshua D. & Trisha N. v. KIA | 9/26/2016 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 333. | Nance, Joshua D. & Trisha N. v. KIA | 12/7/2018 | Jodie Koo | Draft letter to Defense to meet and confer re Deft's Discovery responses; Conduct legal research, Set Two | 0.80 | $225.00 | $180.00 |
| 334. | Navarro, Demetria J. Flores v. Ford Motors Co | 12/22/2016 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 0.90 | $250.00 | $225.00 |
| 335. | Negrete, Mauricio v. FCA | 4/12/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re Deft ' s discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 336. | Nickerson, Jo Ann v. FCA | 8/29/2016 | Amy Morse | Draft meet and confer letter to Defense Counsel re Third Supplemental Responses to RFP; Review file and conduct research | 0.60 | $250.00 | $150.00 |
| 337. | Niedermeier, Lisa v. FCA | 4/22/2017 | Amy Morse | Draft meet and confer letter to Defense re Deft's discovery responses; conduct legal research | 1.00 | $350.00 | $350.00 |
| 338. | Nieuwenhuis, Antonius A. v. FMC | 12/20/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.40 | $350.00 | $490.00 |
| 339. | Nunez, Eva and Archuleta, Robert v. KMA | 2/12/2021 | Gregory A. Lehrmann | Draft letter to Defense to meet and confer re Defendant's discovery responses; conduct legal research | 0.90 | $250.00 | $225.00 |
| 340. | Oakley, Melinda Kate v. FMC | 2/26/2019 | Amy Morse | Draft letter to Defense to meet and confer re Def's discovery responses; conduct legal research | 1.00 | $350.00 | $350.00 |
| 341. | O'Brien, Kristi v. FCA | 5/29/2018 | Deepak Devabose | Draft letter to Defense to meet and confer re Def's discovery responses; Conduct legal research | 1.50 | $275.00 | $412.50 |
| 342. | Ocana, Steve v. FCA | 11/16/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.50 | $200.00 | $0.00 |
| 343. | Ochoa, Carlos v. FMC | 7/22/2014 | Daisy Ortiz | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.00 | $225.00 | $225.00 |
| 344. | Oday, Kevin v. FCA | 6/7/2017 | Amy Morse | Draft meet and confer letter to Defense re FCA's discovery responses; Conduct legal research | 1.80 | $350.00 | $630.00 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 345. | O'Green, Danielle v. Kia | 3/16/2015 | Daisy Ortiz | Draft meet and confer letter to Defense Counsel re: Defendant's Responses to Plaintiff's Discovery; Conduct legal research | 1.40 | $225.00 | $315.00 |
| 346. | O'Laughlin, Jessica v. FCA | 6/23/2015 | Kevin Van Hout | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiff's Special Interrogatories, Set One; Conduct legal research | 1.75 | $300.00 | $525.00 |
| 347. | O'Laughlin, Jessica v. FCA | 11/17/2015 | Amy Morse | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiff's First Set of Discovery Requests; Conduct legal research | 1.25 | $250.00 | $312.50 |
| 348. | Orosco, Jose v. FMC | 4/28/2017 | Michael Ouziel | Draft meet and confer letter to Defense re Deft's discovery responses; conduct legal research | 1.00 | $250.00 | $250.00 |
| 349. | Orozco, Israel v. FCA | 10/11/2017 | Jennifer Ruiz | Draft letter to Defense to meet and confer re FCA's discovery response s; conduct legal research | 1.40 | $225.00 | $315.00 |
| 350. | Ortiz, Anthony v. FMC | 1/25/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal, research | 1.00 | $250.00 | $250.00 |
| 351. | Ossenfort, Victoria v. Kia | 10/23/2018 | George Semaan | Draft letter to Defense to meet and confer re KMA's discovery responses; Conduct legal research | 1.50 | $225.00 | $337.50 |
| 352. | Osuna, Patrick v. FCA | 1/20/2017 | Thomas Burns | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.80 | $225.00 | $405.00 |
| 353. | Page, Michelle v. Kia | 4/29/2015 | Daisy Ortiz | Draft meet and confer letter to Defense Counsel re Defendant's Responses to Plaintiffs' Discovery Requests; Conduct legal research | 1.30 | $225.00 | $292.50 |
| 354. | Palombi, Tiffany v. FCA | 7/11/2014 | Daisy Ortiz | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.30 | $225.00 | $292.50 |
| 355. | Patel, Nilay v. Mercedes-Benz | 9/11/2015 | Russell Higgins | Draft letter to Defense to meet and confer re Defendant's discovery responses; conduct legal research | 1.00 | $400.00 | $400.00 |
| 356. | Patricio, Adriana v. FCA | 6/26/2018 | Daniel Kalinowski | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 357. | Paul, Aaron | 10/24/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.90 | $200.00 | $380.00 |
| 358. | Pelaez, Esmeralda & Laura v. FMC | 4/28/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.00 | $250.00 | $250.00 |
| 359. | Pena, Elva | 12/29/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's responses to Ptf's discovery requests; Conduct legal research | 1.70 | $200.00 | $340.00 |
| 360. | Pereira, Francisco | 10/23/2014 | Stephanie Marshall | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiff's First Set of Discovery Requests; Conduct legal research | 1.60 | $200.00 | $320.00 |
| 361. | Perez, Angelita | 4/6/2017 | Christopher Swanson | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 2.20 | $350.00 | $770.00 |
| 362. | Perez, Jose | 9/23/2015 | Amy Morse | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiffs' First Set of Discovery Requests and conduct legal research | 1.20 | $250.00 | $300.00 |
| 363. | Perez, Jovita | 2/14/2018 | Deepak Devabose | Draft letter to Defense to meet and confer re FCA's responses to federal discovery requests; Conduct legal research | 2.10 | $275.00 | $577.50 |
| 364. | Perry, Eva v. FCA | 4/13/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.50 | $200.00 | $300.00 |
| 365. | Petropoulos, Peter v. FCA | 10/19/2016 | Amy Morse | Draft letter to Defense to meet and confer re Defts' Discovery responses; conduct legal research | 1.00 | $350.00 | $350.00 |
| 366. | Pignataro, Kathleen M. v. FCA | 3/20/2019 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 367. | Pineda, Yazman | 1/4/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 368. | Pitts, Tanisha v. FCA | 5/15/2018 | Daniel Kalinowski | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.40 | $250.00 | $350.00 |
| 369. | Plascencia, Jose | 6/7/2017 | Amy Morse | Draft letter to Defense to meet and confer re FCA's Discovery Responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 370. | Pollard, Derric | 10/20/2016 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.00 | $350.00 | $350.00 |
| 371. | Pollard, Derric | 1/26/2018 | Deepak Devabose | Draft letter to defense to meet and confer re FCA's discovery responses; conduct legal research | 1.00 | $275.00 | $275.00 |
| 372. | Potter, William v. FCA | 12/7/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.00 | $200.00 | $200.00 |
| 373. | Powell, Desmond v. FCA | 2/1/2017 | Thomas Burns | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 2.10 | $225.00 | $472.50 |
| 374. | Purifoy, Luria v. FMC | 5/19/2017 | Michael Ouziel | Draft meet and confer letter to Defense re Deft's discovery responses; Conduct legal, research | 0.90 | $250.00 | $225.00 |
| 375. | Purkiss, James M. & Penelope R. v. General Motors | 6/6/2019 | Amy Morse | Draft letter to Defence to meet and confer re GM's discovery responses; Conduct legal research | 1.10 | $350.00 | $385.00 |
| 376. | Quintana, Roy | 4/12/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 377. | Ramirez, Gustavo v. FMC | 1/30/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.70 | $250.00 | $425.00 |
| 378. | Ramsey, Lance v. FCA | 10/25/2016 | Michelle Lumasag | Draft meet and confer letter to Defense Counsel re Defendant's Discovery responses; Conduct legal research | 1.30 | $200.00 | $260.00 |
| 379. | Randall, Shane | 10/25/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 380. | Ray, Christian v. FMC | 2/28/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal, research | 1.70 | $250.00 | $425.00 |
| 381. | Reck, Kathy | 6/19/2017 | Christopher Swanson | Draft letter to Defense to meet and confer re FCA's Discovery responses; Conduct legal research | 1.00 | $375.00 | $375.00 |
| 382. | Redman, Glen v. FMC | 12/19/2016 | Michael Ouziel | Draft letter to Defense to meet and confer re FMC's discovery responses; conduct legal research | 1.00 | $250.00 | $250.00 |
| 383. | Reed, Andrew v. FCA | 6/19/2017 | Christopher Swanson | Draft letter to Defense re telephonic meet and confer re FCA's discovery responses; Conduct legal research | 1.60 | $375.00 | $600.00 |
| 384. | Reed, Thomas | 2/14/2017 | Thomas Burns | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.00 | $225.00 | $225.00 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 385. | Regueiro, Francisco | 12/29/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Def's discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 386. | Rendon v. FMC | 12/12/2016 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 387. | Reyes, Hugoino v. General Motors | 10/2/2018 | Natalee Fisher | Draft letter to Defence to meet and confer re Deft's discovery responses; Conduct legal research | 1.50 | $250.00 | $375.00 |
| 388. | Reynolds, Peter v. FMC | 8/5/2014 | Daisy Ortiz | Draft meet and confer letter to Defense regarding responses to Discovery Requests; Conduct legal research | 2.00 | $225.00 | $450.00 |
| 389. | Richardson, Leann | 1/18/2017 | Thomas Burns | Draft letter to Defense to meet and confer re Def's discovery responses; Conduct legal research | 1.50 | $225.00 | $337.50 |
| 390. | Rico, Veronica v. Hyundai | 8/28/2015 | Christopher Swanson | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.30 | $375.00 | $487.50 |
| 391. | Rivera, Jorge v. FCA | 2/27/2017 | Thomas Burns | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $225.00 | $225.00 |
| 392. | Robles, Juan | 6/21/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 393. | Rocha, Michael | 7/18/2017 | Jennifer Ruiz | Draft letter to Defense to meet and confer re? Deft's discovery responses; Conduct legal research | 1.00 | $225.00 | $225.00 |
| 394. | Rodriguez, Angel | 12/28/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 2.30 | $200.00 | $460.00 |
| 395. | Rodriguez, Antonio | 4/21/2017 | Amy Morse | Draft meet and confer letter to Defense re Deft's discovery responses; Conduct legal research | 1.40 | $250.00 | $350.00 |
| 396. | Rodriguez, Jose v. General Motors | 2/27/2019 | Natalee Fisher | Draft letter to Defence to meet and confer re Def's discovery responses; conduct legal research | 1.00 | $250.00 | $250.00 |
| 397. | Romero, Marcos v. FCA | 11/20/2017 | Jennifer Ruiz | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $225.00 | $225.00 |
| 398. | Ronquillo, Faye v. FCA | 4/11/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.50 | $200.00 | $300.00 |
| 399. | Rosales, Ivan and Rodolfo v. FMC | 8/30/2016 | Michael Ouziel | Draft letter to Defense to meet and confer re FMC's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 400. | Roscoe, Eric | 11/22/2017 | Jennifer Ruiz | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.30 | $225.00 | $292.50 |
| 401. | Rowland, Dave and Phyllis v. FMC | 3/6/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 402. | Rubish, Edward Phillip v. FMC | 1/31/2017 | Michael Ouziel | Draft meet and confer letter to Defense re Deft's discovery responses; Conduct legal, research | 1.10 | $250.00 | $275.00 |
| 403. | Rueda Gonzalez, Victor AKA Victor Pueda and Pina Moreno, Lidia v. KMA | 1/29/2021 | Gregory A. Lehrmann | Draft letter to Defense to meet and confer re Defendant's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 404. | Rueda, Maria | 7/19/2017 | Jennifer Ruiz | Draft letter to Defense to meet and confer re Deft's Discovery Responses; Conduct legal research | 1.00 | $225.00 | $225.00 |
| 405. | Ruiz, Sylvia G. v. General Motors | 10/4/2018 | Amy Morse | Draft letter to Defense to meet and confer re GM's discovery responses; Conduct legal research | 1.50 | $350.00 | $525.00 |
| 406. | Ruiz, Yanira v. FCA | 6/19/2017 | Christopher Swanson | Draft meet and confer letter to Defense re Deft's discovery responses; conduct legal research | 1.10 | $350.00 | $385.00 |
| 407. | Rus, Robert Mark v. FCA | 1/21/2019 | George Semaan | Draft letter to Defense to meet and confer re FCA's responses to RFP, Set Two; conduct legal research | 0.50 | $225.00 | $112.50 |
| 408. | Ruvalcaba, Raul v. FMC | 1/16/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.60 | $250.00 | $400.00 |
| 409. | Sahagun, Kimberly | 6/22/2015 | Kevin Van Hout | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiffs' Special Interrogatories, Set One; Conduct legal research (pro-rata charge) | 1.25 | $300.00 | $375.00 |
| 410. | Sahagun, Kimberly | 9/23/2015 | Amy Morse | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiffs' First Set of Discovery Requests; Conduct legal research | 1.50 | $250.00 | $375.00 |
| 411. | Sahagun, Kimberly | 12/11/2015 | Amy Morse | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiffs' First Set of Discovery Requests; Conduct legal research | 0.75 | $250.00 | $187.50 |
| 412. | Sahagun, Kimberly | 1/11/2016 | Amy Morse | Draft meet and confer letter regarding Defendant's Responses to Plaintiffs' Discovery Requests; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 413. | Salas, Maria v. Hyundai | 7/28/2016 | Amy Morse | Draft letter to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 414. | Salazar, Virgina v. FCA | 6/14/2017 | Amy Morse | Draft letter to Defense re meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 415. | Salmeron, Alejandro Omeany v. FMC | 1/28/2019 | Kristina Stephenson-Cheang | Draft letter to Defense to meet and confer re Def's Discovery responses; Conduct legal research | 1.50 | $375.00 | $562.50 |
| 416. | Sanchez, Antonio v. Hyundai | 9/8/2016 | Amy Morse | Draft meet and confer letter to Defense Counsel re Deft's discovery responses; conduct legal research | 1.20 | $350.00 | $420.00 |
| 417. | Sanchez, Maria | 2/17/2017 | Thomas Burns | Draft letter to Defense Counsel to meet and confer re Defendant's discovery responses; Conduct legal research | 2.50 | $225.00 | $562.50 |
| 418. | Sandoval, Cinthya and Mercedes v. FMC | 2/27/2017 | Michael Ouziel | Draft meet and confer letter to Defense re Deft's, discovery responses; conduct legal research | 1.70 | $250.00 | $425.00 |
| 419. | Sands, Sean v. FMC | 7/19/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.60 | $350.00 | $560.00 |
| 420. | Santiago-Lopez, Fernando v. General Motors | 6/19/2018 | Natalee Fisher | Draft letter to Defense to meet and confer re, Defendant's discovery responses; conduct legal research | 1.00 | $250.00 | $250.00 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 421. | Schene, Donald and Sheri v. FMC | 2/7/2017 | Michael Ouziel | Draft letter to Defence to meet and confer re Deft's discovery responses; Conduct legal, research | 1.20 | $250.00 | $300.00 |
| 422. | Schilling, Adam | 12/7/2015 | Amy Morse | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiff's First Set of Discovery Requests; Conduct legal research | 2.50 | $250.00 | $625.00 |
| 423. | Scott, Paul | 12/12/2016 | Michelle Lumasag | Draft meet and confer letter to Defense re FCA's discovery responses; conduct legal research | 1.60 | $200.00 | $320.00 |
| 424. | Sekula, Carla | 1/11/2018 | Deepak Devabose | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.00 | $275.00 | $275.00 |
| 425. | Self, Sandy v. FCA | 6/6/2018 | Deepak Devabose | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.50 | $275.00 | $412.50 |
| 426. | Serrato, Elizabeth | 12/7/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Defendant's discovery responses; conduct legal research | 1.00 | $200.00 | $200.00 |
| 427. | Shavies, Leonard | 4/19/2017 | Amy Morse | Draft meet and confer letter to Defense re FCA's discovery responses; Conduct legal research | 1.80 | $350.00 | $630.00 |
| 428. | Siciliano, Avilio v. Kia | 9/23/2016 | Amy Morse | Draft letter to Defense to meet and confer re KIA's discovery responses; Conduct legal research | 1.20 | $350.00 | $420.00 |
| 429. | Siegel, M. v. FMC | 3/7/2014 | Daisy Ortiz | Draft letter to Defense to meet and confer re Def's discovery responses; Conduct legal research | 1.40 | $225.00 | $315.00 |
| 430. | Sikes, Brian | 6/22/2015 | Kevin Van Hout | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiffs' First Set of Special Interrogatories; Conduct legal research | 1.80 | $300.00 | $540.00 |
| 431. | Sikes, Brian | 9/23/2015 | Amy Morse | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiffs' First Set of Discovery Requests; Conduct legal research | 1.80 | $250.00 | $450.00 |
| 432. | Sikes, Brian | 11/11/2015 | Amy Morse | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiffs' First Set of Discovery Requests; Conduct legal research (split between 14 cases) | 0.10 | $250.00 | $25.00 |
| 433. | Silin, Brian v. FMC | 1/20/2017 | Michael Ouziel | Draft letter to Defense counsel to meet and confer re FMC's discovery responses; Conduct legal research | 1.10 | $250.00 | $275.00 |
| 434. | Simmons, Stephanie v. FMC | 1/30/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.50 | $250.00 | $375.00 |
| 435. | Skillman, Gary v. FMC | 3/7/2014 | Daisy Ortiz | Draft letter to Defense to meet and confer re Defendant's discovery responses; conduct legal research | 1.10 | $225.00 | $247.50 |
| 436. | Smith, Nathan v. FCA | 10/24/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Defendant's discovery responses; Conduct legal research | 1.30 | $200.00 | $260.00 |
| 437. | Son, Richard v. BMW | 1/9/2017 | Deepak Devabose | Draft letter to Defense to meet and confer re BMW's discovery requests; Conduct legal research | 1.30 | $275.00 | $357.50 |
| 438. | Soria, Steve | 10/31/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.50 | $200.00 | $300.00 |
| 439. | Soto, Cinthia FKA Cinthis Casa and Soto, Enrique v. KMA | 6/4/2020 | Maxwell Kreymer | Draft meet and confer letter to defense re Defendant's discovery responses; conduct legal research | 1.00 | $200.00 | $200.00 |
| 440. | Spelts, Douglas | 12/11/2015 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 1.70 | $350.00 | $595.00 |
| 441. | Straub, David v. Hyundai | 8/24/2016 | Amy Morse | Draft meet and confer letter to Defense Counsel re Defendant's Discovery Responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 442. | Strutt, Mollee Marie v,. FCA | 5/11/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.10 | $350.00 | $385.00 |
| 443. | Suarez, Leovigildo v. FMC | 5/19/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal, research | 1.00 | $250.00 | $250.00 |
| 444. | Sutton, Jeffrey v. HMA | 10/16/2017 | Daniel Kalinowski | Draft letter to Defense to meet and confer re, Defendant's discovery responses; Conduct legal research | 1.40 | $250.00 | $350.00 |
| 445. | Talamante, Jacinto v. Kia | 9/14/2016 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 446. | Talavera, Erika v. FCA | 7/19/2017 | Jennifer Ruiz | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.10 | $225.00 | $247.50 |
| 447. | Tanner, John v. FMC | 8/17/2015 | Russell Higgins | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $450.00 | $450.00 |
| 448. | Tapia, Christine v. Hyundai | 8/28/2015 | Christopher Swanson | Draft meet and confer letter to Defense Counsel re Defendant's Discovery Responses; Conduct legal research | 0.90 | $325.00 | $292.50 |
| 449. | Tasch, George v. FMC | 11/21/2018 | Amy Morse | Draft letter to Defense to meet and confer re Deft's Responses; Conduct legal research | 1.10 | $350.00 | $385.00 |
| 450. | Tashner, Joseph | 12/28/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.80 | $200.00 | $360.00 |
| 451. | Thomas, Brandon v. General Motors | 2/12/2019 | Natalee Fisher | Draft letter to Defense to meet and confer re Deft's Discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 452. | Thomas, Faye v. FCA | 6/18/2018 | Daniel Kalinowski | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 453. | Thomasian, Sara | 2/2/2017 | Thomas Burns | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 2.30 | $225.00 | $517.50 |
| 454. | Thompson, James | 7/18/2017 | Jennifer Ruiz | Draft letter to Defense re meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $225.00 | $0.00 |
| 455. | Tinoco, Xochitl | 10/24/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 456. | Tomkins, Craig v. FCA | 4/3/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 457. | Tovar, David and Rocio v. FCA | 5/18/2018 | Daniel Kalinowski | Draft letter to defense to meet and confer re FCA's discovery responses; conduct legal research | 1.00 | $250.00 | $250.00 |
| 458. | Tovar, David and Rocio v. FCA | 2/28/2019 | George Semaan | Draft letter to defense to meet and confer re FCA's discovery responses, Set Two; conduct legal research | 1.00 | $225.00 | $225.00 |
| 459. | Tripette, Leroy v. Hyundai | 9/5/2016 | Amy Morse | Draft meet and confer letter to Defense Counsel re Defendant's Discovery Responses; Conduct legal research | 2.20 | $350.00 | $770.00 |
| 460. | Tripp, Jason | 6/14/2017 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 0.80 | $350.00 | $280.00 |
| 461. | Tuazon, Teodora and Joshua v. KMA | 5/2/2018 | George Semaan | Draft letter to Defense to meet and confer re Defendant's discovery responses; Conduct legal research | 1.00 | $225.00 | $225.00 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 462. | Tuazon, Teodora and Joshua v. KMA | 2/21/2019 | Daniel Kalinowski | Draft letter to Defense to meet and confer re Deft's responses to Ptfs ' second set of discovery requests; Conduct legal research | 0.60 | $250.00 | $150.00 |
| 463. | Tuell, Andrew for Tuell Concrete v. FMC | 8/26/2016 | Michael Ouziel | Draft meet and confer letter to Defense re Defendant's Discovery Responses; Conduct legal research | 1.50 | $250.00 | $375.00 |
| 464. | Tuell, Andrew for Tuell Concrete v. FMC | 9/22/2016 | Michael Ouziel | Draft meet and confer letter to Defense Counsel re Defendant's 9/12/16 letter and Discovery Responses; Conduct legal research | 2.80 | $250.00 | $700.00 |
| 465. | Tuey, Valinda | 11/2/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; conduct legal research | 2.10 | $200.00 | $420.00 |
| 466. | Valencia, Miguel | 1/5/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.70 | $200.00 | $340.00 |
| 467. | Valenton, Maria v. FCA | 2/28/2017 | Thomas Burns | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.50 | $225.00 | $337.50 |
| 468. | Vanegas, David v. Hyundai | 3/10/2017 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.10 | $350.00 | $385.00 |
| 469. | Vargas, Josefa | 10/27/2016 | Michelle Lumasag | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.00 | $200.00 | $200.00 |
| 470. | Vasquez, Efrain and Vasquez, Michelle v. FMC | 11/23/2016 | Michael Ouziel | Draft letter to defense to meet and confer re FMC's discovery responses; Conduct legal research (14 p) | 1.50 | $250.00 | $375.00 |
| 471. | Vasquez, Gabriel v. Hyundai | 9/8/2016 | Amy Morse | Draft meet and confer letter to Defense Counsel re Defendant 's Responses; Conduct, legal research | 1.50 | $250.00 | $375.00 |
| 472. | Vasquez, Jesus | 6/14/2017 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.50 | $350.00 | $525.00 |
| 473. | Vasquez, Rosalva | 3/13/2015 | Daisy Ortiz | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiff's First Set of Discovery Requests; Conduct legal research | 1.00 | $225.00 | $225.00 |
| 474. | Vega, Alejandra v. BMW | 2/28/2017 | Deepak Devabose | Draft letter to Defense to meet and confer re BMW's discovery responses; Conduct legal research | 1.00 | $275.00 | $275.00 |
| 475. | Vega, Maria v. FCA | 8/24/2016 | Amy Morse | Draft meet and confer letter to Defense re Deft's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| 476. | Velazquez v. FCA | 12/7/2016 | Michelle Lumasag | Draft meet and confer letter to Defense re FCA's discovery responses; Conduct legal research | 1.00 | $200.00 | $200.00 |
| 477. | Vidal, Beverly v. FMC | 11/29/2016 | Michael Ouziel | Draft letter to Defense Counsel to meet and confer re Defendant's Discovery responses; Conduct legal research | 1.70 | $250.00 | $425.00 |
| 478. | Villalta, Jose & Chacon, Karla v. FCA | 5/14/2019 | Sundeep Samra | Draft letter to Defense to meet and confer re Def's discovery responses; conduct legal research | 1.00 | $225.00 | $225.00 |
| 479. | Vivo, Gary v. Kia | 3/7/2017 | Deepak Devabose | Draft letter to Defense to meet and confer re Deft's discovery responses; conduct legal research | 1.00 | $275.00 | $275.00 |
| 480. | Waggener Paul | 6/19/2017 | Christopher Swanson | Draft letter to defense counsel to meet and confer re FCA's discovery responses; conduct legal research | 1.20 | $350.00 | $420.00 |
| 481. | Warren, Shirlean v. Kia | 3/16/2015 | Daisy Ortiz | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiff's Discovery Requests; Conduct legal research | 1.20 | $225.00 | $270.00 |
| 482. | Washington, Sharon v. Kia | 7/12/2018 | George Semaan | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct Legal research | 1.00 | $225.00 | $225.00 |
| 483. | Watkins, Donmna v. FMC | 2/5/2014 | Daisy Ortiz | Draft letter to Defense to meet and confer re Defendant's discovery responses; Conduct legal research | 1.50 | $225.00 | $337.50 |
| 484. | Watts, Cleveland v. FMC | 3/7/2014 | Daisy Ortiz | Draft letter to Defense to meet and confer re Ford's discovery responses; Conduct legal research | 1.10 | $225.00 | $247.50 |
| 485. | Watts, Sherri v. FCA | 6/12/2017 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.50 | $350.00 | $525.00 |
| 486. | Weakley, Robert and Weakley, Brenda v. FMC | 1/20/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re FMC's discovery responses; Conduct legal research | 1.40 | $250.00 | $350.00 |
| 487. | WELCH V.FMC | 6/2/2017 | Michael Ouziel | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal, research | 1.00 | $250.00 | $250.00 |
| 488. | West, Marilyn v. Hyundai | 9/8/2016 | Amy Morse | Draft letter to Opposing Counsel to meet and confer re Dft's discovery responses; Conduct legal research | 0.90 | $250.00 | $225.00 |
| 489. | Weston, Celie v. FCA | 1/23/2017 | Thomas Burns | Draft letter to Defense Counsel to meet and confer re Deft's discovery responses; conduct legal research | 1.40 | $225.00 | $315.00 |
| 490. | White, Bryan v. Hyundai | 9/2/2016 | Amy Morse | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.20 | $350.00 | $420.00 |
| 491. | Whitehouse, James v. FCA | 1/25/2017 | Thomas Burns | Draft letter to Defense to meet and confer re Deft's discovery responses; Conduct legal research | 1.40 | $225.00 | $315.00 |
| 492. | Williams, Gregory | 1/5/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.90 | $200.00 | $380.00 |
| 493. | Williams, Monte | 1/25/2017 | Thomas Burns | Draft letter to Defense to meet and confer re FCA 's discovery responses; Conduct legal research | 1.90 | $225.00 | $427.50 |
| 494. | Wu, Wei | 1/18/2017 | Thomas Burns | Draft meet and confer letter to Defense re Deft's discovery responses; Conduct legal research | 1.90 | $225.00 | $427.50 |
| 495. | Yazdanniaz, Shahriar v. FCA | 5/15/2018 | Daniel Kalinowski | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $250.00 | $250.00 |
| 496. | Yee, Donald K. v. FMC | 12/8/2015 | Russell Higgins | Draft letter to Defense Counsel to meet and confer re Defendant's discovery responses; Conduct legal research | 1.00 | $400.00 | $400.00 |
| 497. | Yoshikawa, Sue | 3/13/2015 | Daisy Ortiz | Draft meet and confer letter to Defense Counsel regarding Defendant's Responses to Plaintiff's First Set of Discovery Requests; Conduct legal research | 1.50 | $225.00 | $337.50 |
| 498. | YOUNG V.FMC | 7/25/2017 | Amy Morse | Draft letter to Defense to meet and confer re FMC's discovery responses; Conduct legal, research | 1.60 | $350.00 | $560.00 |
| 499. | Young, Teresa v. FCA | 4/3/2017 | Michelle Lumasag | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.10 | $200.00 | $220.00 |
| 500. | Zuniga, Lucia v. FCA | 10/24/2016 | Michelle Lumasag | Draft letter to defense counsel to meet and confer re FCA's discovery responses; conduct legal research | 2.10 | $200.00 | $420.00 |
| 501. | Zur, Ofer | 12/8/2015 | Amy Morse | Draft letter to Defense to meet and confer re FCA's discovery responses; Conduct legal research | 1.00 | $350.00 | $350.00 |
| | | | | | **642.25** | | **$172,591.25** |

# EXHIBIT B

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 1. | Aandahl, Nancy v. FCA | 8/24/2016 | Amy Morse | Draft RFA to FCA and Declaration | 1.00 | $350.00 | $350.00 |
| 2. | Acosta, Richard v. FCA | 9/26/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.30 | $350.00 | $455.00 |
| 3. | Adams, Robert v. Hyundai | 11/17/2016 | Amy Morse | Draft RFA to Deft and Declaration | 0.70 | $350.00 | $245.00 |
| 4. | Aguilar, Gerardo v. General Motors LLC | 5/28/2019 | Amy Morse | Draft RFA to Defendant | 0.60 | $350.00 | $210.00 |
| 5. | Aguilera, Christina v. FCA | 9/21/2016 | Amy Morse | Draft RFAs and Declaration to FCA | 1.10 | $350.00 | $385.00 |
| 6. | Aispuro, Lazaro v. FMC | 1/17/2019 | Deepak Devabose | Draft RFA to Deft | 0.50 | $275.00 | $137.50 |
| 7. | Alegre, Stephen v. FMC | 10/24/2016 | Amy Morse | Draft RFA to Deft and Declaration | 1.00 | $350.00 | $350.00 |
| 8. | Alfaro, Walter v. KMA | 9/12/2018 | Kristina Stephenson-Cheang | Draft RFA to KMA | 0.40 | $375.00 | $150.00 |
| 9. | Alimonti, Anthony v. FMC | 10/29/2013 | Daisy Ortiz | Draft RFA to Deft and Declaration | 1.40 | $225.00 | $315.00 |
| 10. | Allem, Renee v. FCA | 9/11/2015 | Russell Higgins | Draft First Set of RFA to Defendant | 0.50 | $400.00 | $200.00 |
| 11. | Allen, Marty & Sandra v. Kia Motors | 2/2/2018 | Kristina Stephenson-Cheang | Draft RFA to KMA and Declaration | 0.80 | $375.00 | $300.00 |
| 12. | Allen, Marty & Sandra v. Kia Motors | 9/12/2018 | Amy Morse | Draft RFA to Defendant, Set Two | 0.20 | $350.00 | $70.00 |
| 13. | Alonso, Manuel v. FCA | 3/21/2017 | Amy Morse | Draft RFAs to Deft and declaration | 1.30 | $350.00 | $455.00 |
| 14. | Alvarado, Edgar v. Kia Motors | 1/7/2016 | Russell Higgins | Draft Plaintiff's First Set of RFA and Declaration | 0.80 | $400.00 | $320.00 |
| 15. | Alvarez, Andres v. FCA | 10/31/2016 | Amy Morse | Draft RFA to FCA and Declaration | 1.20 | $350.00 | $420.00 |
| 16. | Alvarez, Ramon and Geralyn v, FMC | 11/7/2017 | Kristina Stephenson-Cheang | Draft RFAs to FMC and Declaration | 1.40 | $375.00 | $525.00 |
| 17. | Alvernaz, Eulalia v. Hyundai | 12/26/2016 | Amy Morse | Draft RFA to Deft and Declaration | 0.60 | $350.00 | $210.00 |
| 18. | Anderson, Shelby v. FMC | 10/22/2013 | Daisy Ortiz | Draft RFA to Defendant and Declaration | 1.50 | $225.00 | $337.50 |
| 19. | Aqueveque, Christian v. FCA | 2/26/2017 | Amy Morse | Draft RFAs to Defendant and Declaration | 1.40 | $350.00 | $490.00 |
| 20. | Archambo, Brian v. FCA | 11/30/2016 | Amy Morse | Draft RFAs and Declaration | 0.70 | $350.00 | $245.00 |
| 21. | Archibald, Kandi v. FCA | 2/14/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.40 | $350.00 | $490.00 |
| 22. | Ardon, Ligia v. FCA | 8/19/2016 | Amy Morse | Draft RFAs to FCA and declaration | 1.00 | $350.00 | $350.00 |
| 23. | Arias, Ana v. FMC | 4/25/2019 | Mitchell Rosensweig | Draft RFA to Deft | 1.50 | $325.00 | $487.50 |
| 24. | Arragon, Joe and Ruby v. FMC | 6/21/2016 | Russell Higgins | Draft Plf's' RFA and Declaration | 1.30 | $400.00 | $520.00 |
| 25. | Arriaga, Lilian v. FMC | 11/15/2018 | Deepak Devabose | Draft RFA to Deft | 1.10 | $275.00 | $302.50 |
| 26. | Aspinall, John v. Kia | 6/9/2015 | Daisy Ortiz | Draft RFA to Kia | 0.40 | $225.00 | $90.00 |
| 27. | Audo, Raad v. FCA | 7/20/2016 | Amy Morse | Draft RFA to Deft and Declaration | 1.20 | $250.00 | $300.00 |
| 28. | Avina, Peter v. FCA | 8/20/2016 | Amy Morse | Draft RFAs to FCA | 0.90 | $350.00 | $315.00 |
| 29. | AYBARTH V. FMC | 7/8/2016 | Russell Higgins | Draft RFA to FMC | 0.50 | $400.00 | $200.00 |
| 30. | Ayers, Scott and Marsovszki, Ilona v. Hyundai | 3/23/2016 | Russell Higgins | Draft Plaintiffs' RFAs to Deft and Declaration | 0.60 | $400.00 | $240.00 |
| 31. | BAHNA v. FMC | 4/25/2016 | Russell Higgins | Draft Plfs' RFA and Declaration | 1.40 | $400.00 | $560.00 |
| 32. | Ballasteros, Miguel v. Hyundai | 3/1/2016 | Amy Morse | Draft RFAs to Deft and Declaration | 0.70 | $350.00 | $245.00 |
| 33. | BARHONA SALINAS v. FMC | 12/28/2016 | Amy Morse | Draft RFAs to Deft | 0.50 | $350.00 | $175.00 |
| 34. | BARHONA SALINAS v. FMC | 3/8/2017 | Amy Morse | Draft RFAs to Deft and Declaration, Set Two | 0.20 | $350.00 | $70.00 |
| 35. | Barnaba, Barbara v. FCA | 12/20/2016 | Amy Morse | Draft RFA to Deft and Declaration, Set One | 1.00 | $350.00 | $350.00 |
| 36. | Barnaba, Barbara v. FCA | 2/14/2017 | Amy Morse | Draft RFAs to Deft and Declaration, Set Two | 1.10 | $350.00 | $385.00 |
| 37. | Barr, Barbera v. FCA | 2/10/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.00 | $350.00 | $350.00 |
| 38. | Barredo, Theresa v. FCA | 10/8/2015 | Russell Higgins | Draft RFA to Deft | 0.50 | $450.00 | $225.00 |
| 39. | Barrera, Jose v. FCA | 7/10/2015 | Daisy Ortiz | Draft Plaintiff's First Set of RFA to Defendant | 0.40 | $225.00 | $90.00 |
| 40. | Barrera, Jose v. FCA | 7/28/2016 | Amy Morse | Draft RFA to Deft and Declaration | 1.00 | $350.00 | $350.00 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 41. | Bartlett, Anthony v. FMC | 1/31/2017 | Amy Morse | Draft RFA to Deft and Declaration | 0.80 | $350.00 | $280.00 |
| 42. | Base, Galen v. FCA | 1/31/2017 | Amy Morse | Draft RFAs to Deft and Declaration | 1.00 | $350.00 | $350.00 |
| 43. | Base, Galen v. FCA | 12/13/2017 | Deepak Devabose | Draft RFAs to Deft | 0.90 | $275.00 | $247.50 |
| 44. | Batchelor, Jon Dale v. FCA | 9/19/2018 | Kristina Stephenson-Cheang | Draft RFAs to FCA and Declaration | 1.00 | $375.00 | $375.00 |
| 45. | Bauman, Alexander and Melissa Lynn v. FMC | 10/31/2018 | Deepak Devabose | Draft RFA to FMC | 0.80 | $275.00 | $220.00 |
| 46. | Bell, Everett v. FCA | 1/18/2017 | Amy Morse | Draft RFAs to Deft and Declaration | 1.00 | $350.00 | $350.00 |
| 47. | Bellamy, Tarisa v. Mercedes Benz | 1/28/2016 | Amy Morse | Draft Plaintiff's RFA and Declaration | 0.80 | $250.00 | $200.00 |
| 48. | Bellamy, Tarisa v. Mercedes Benz | 5/26/2016 | Christopher Swanson | Draft Plaintiff's RFA to Defendant, Set Two and Declaration | 0.30 | $325.00 | $97.50 |
| 49. | Bellamy, Tarisa v. Mercedes Benz | 9/26/2016 | Christopher Swanson | Draft Plaintiff's RFA, Set Three and Declaration | 0.20 | $325.00 | $65.00 |
| 50. | Beltran, Angel v. FMC | 11/7/2017 | Kristina Stephenson-Cheang | Draft RFA to Def and Declaration | 1.70 | $375.00 | $637.50 |
| 51. | Beltran, Cesar v. FCA | 7/25/2016 | Amy Morse | Draft RFA to Deft and Declaration | 1.30 | $350.00 | $455.00 |
| 52. | Benavidez, Elizabeth and Carolina v. Kia | 5/19/2020 | Amy Morse | Draft RFA to KMA and Declaration | 0.60 | $350.00 | $210.00 |
| 53. | Bendersky, Yan and Bendersky, Tanya v. BMW | 7/1/2015 | Daisy Ortiz | Draft RFA to Deft | 0.40 | $225.00 | $90.00 |
| 54. | Benjamin, Robert v. FCA | 7/28/2017 | Kristina Stephenson-Cheang | Draft RFA to FCA and Declaration | 0.90 | $375.00 | $337.50 |
| 55. | Benson, Brent and Pamela v. FMC | 9/18/2018 | Kristina Stephenson-Cheang | Draft RFA to FMC and Declaration | 1.40 | $375.00 | $525.00 |
| 56. | Berg, Timothy v. FMC | 11/22/2013 | Daisy Ortiz | Draft RFAs to Deft and Declaration | 2.00 | $225.00 | $450.00 |
| 57. | Berriozabal, Oscar v. FCA | 7/13/2015 | Daisy Ortiz | Draft RFA to FCA, Set One | 0.50 | $225.00 | $112.50 |
| 58. | Berry, Travis v. FCA | 9/27/2016 | Amy Morse | Draft RFA and Declaration to FCA | 1.10 | $350.00 | $385.00 |
| 59. | Bishop, Richard Lee v. FMC | 7/8/2016 | Russell Higgins | Draft RFA and Declaration to Defendant | 1.00 | $400.00 | $400.00 |
| 60. | Black, Edith Suzanne v. FCA | 7/10/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and Declaration | 1.30 | $375.00 | $487.50 |
| 61. | Blackburn, Michelle v. FCA | 7/27/2017 | Kristina Stephenson-Cheang | Draft RFAs to defendant and declaration | 1.30 | $375.00 | $487.50 |
| 62. | Blancas-Morales, Joana and Rocha, Javier v. KMA | 5/2/2018 | Kristina Stephenson-Cheang | Draft RFA to KMA | 0.40 | $375.00 | $150.00 |
| 63. | Blasco Real Estate v. FCA | 9/25/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.50 | $350.00 | $525.00 |
| 64. | Bolton, Harry v. FMC | 10/26/2016 | Amy Morse | Draft RFA to Deft | 0.50 | $350.00 | $175.00 |
| 65. | Bowser, R. v. Ford | 2/10/2014 | Daisy Ortiz | Draft RFA to FMC and Declaration | 1.40 | $225.00 | $315.00 |
| 66. | Boyer, Leon v. BMW | 9/27/2016 | Amy Morse | Draft Plf's RFAs to Deft and declaration | 1.10 | $350.00 | $385.00 |
| 67. | Braden, Teresa v. FCA | 6/8/2016 | Russell Higgins | Draft RFAs to Deft and Declaration | 0.80 | $450.00 | $360.00 |
| 68. | Branam, Kimberly v. FMC | 7/25/2018 | Kristina Stephenson-Cheang | Draft Ptf's RFA to FMC and declaration | 0.50 | $375.00 | $187.50 |
| 69. | Bratton, Christina v. FCA | 2/28/2017 | Amy Morse | Draft RFA to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 70. | Bratton, Christina v. FCA | 7/25/2017 | Alastair Hamblin | Draft Plaintiffs' RFA to FCA | 1.00 | $325.00 | $325.00 |
| 71. | Bravo, Tanya v. FCA | 7/10/2015 | Daisy Ortiz | Draft Plaintiff's First Set of RFA to Defendant | 0.40 | $225.00 | $90.00 |
| 72. | Brezil, James v. FCA | 10/10/2016 | Amy Morse | Draft RFA to Deft and Declaration | 1.10 | $350.00 | $385.00 |
| 73. | Brod, Jason v. FCA | 10/21/2016 | Amy Morse | Draft RFA to Deft and Declaration | 1.60 | $350.00 | $560.00 |
| 74. | Brown, Robert v. FMC | 10/3/2013 | Daisy Ortiz | Draft RFGs and RFAs to Deft and Declaration | 2.10 | $225.00 | $472.50 |
| 75. | Buck, Denise and Buck, Shirlee v. FMC | 11/17/2014 | Daisy Ortiz | Draft Plaintiffs' First Set of RFA and Declaration | 1.50 | $225.00 | $337.50 |
| 76. | Buck, Denise and Buck, Shirlee v. FMC | 6/14/2016 | Lauren Ungs | Draft Plaintiffs' Third Set of RFA | 0.60 | $375.00 | $225.00 |
| 77. | Buckman, Lisa v. FCA | 3/23/2017 | Amy Morse | Draft RFAs to Deft and declaration | 1.10 | $350.00 | $385.00 |
| 78. | Bugiel, Joshua v. FMC | 6/12/2017 | Kristina Stephenson-Cheang | Draft RFA to Deft and Declaration | 1.00 | $350.00 | $350.00 |
| 79. | Bulcao, Beatriz v. FCA | 2/26/2017 | Amy Morse | Draft Ptfs' RFA to FCA and declaration | 1.10 | $350.00 | $385.00 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 80. | Burciaga, Esperanza and Pedro v. KMA | 8/30/2018 | Kristina Stephenson-Cheang | Draft Pltfs' RFA to KIA | 0.40 | $375.00 | $150.00 |
| 81. | Burgess v FMC | 1/11/2017 | Amy Morse | Draft RFAs to Deft and declaration | 0.80 | $350.00 | $280.00 |
| 82. | Burstein, Bruce and Linda v. Ford Motor Company | 11/3/2015 | Russell Higgins | Draft First Set of RFA to Deft | 0.60 | $400.00 | $240.00 |
| 83. | Cabada, Jose L. and Cabada, Graciela v. FMC | 4/18/2016 | Russell Higgins | Draft RFAs to Deft | 0.40 | $400.00 | $160.00 |
| 84. | Cagle, Aaron v. FCA | 3/23/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.00 | $350.00 | $350.00 |
| 85. | Calcaterra, Richard v. FCA | 2/6/2017 | Amy Morse | Draft RFAs to Deft and declaration | 1.20 | $350.00 | $420.00 |
| 86. | Canizalez, Norman v. KIA | 9/30/2016 | Amy Morse | Draft RFA to Defendant | 0.60 | $350.00 | $210.00 |
| 87. | Cantalupo, Jerry v. FMC | 7/5/2017 | Kristina Stephenson-Cheang | Draft RFAs to FMC and Declaration | 0.80 | $375.00 | $300.00 |
| 88. | Cappel, Kristin v. FCA | 7/23/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 89. | Caro, Othon Jr., v. BMW | 8/24/2017 | Kristina Stephenson-Cheang | Draft RFA to Defts | 0.60 | $350.00 | $210.00 |
| 90. | Carrera Lucia and Lopez, After v.FMC | 2/5/2019 | Mitchell Rosensweig | Draft RFA to Def | 0.90 | $325.00 | $292.50 |
| 91. | Carrillo, Nisa v. FCA | 6/13/2017 | Kristina Stephenson-Cheang | Draft RFAs and Declaration to FCA | 1.40 | $375.00 | $525.00 |
| 92. | Carruthers, Anthony v. FCA | 2/10/2017 | Amy Morse | Draft RFA to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 93. | Carthy, Heather v. FCA | 11/6/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.30 | $350.00 | $455.00 |
| 94. | Castaneda, Sara v. Hyundai | 1/13/2017 | Amy Morse | Draft RFAs to Defendant and Declaration | 1.00 | $350.00 | $350.00 |
| 95. | CASTILLO v. FMC | 10/5/2016 | Amy Morse | Draft RFA to Deft and Declaration | 0.80 | $350.00 | $280.00 |
| 96. | Castillo, Ellen Renee v. FMC | 7/27/2018 | Kristina Stephenson-Cheang | Draft RFAs to Def | 0.50 | $375.00 | $187.50 |
| 97. | Castillo, Hugo v. FCA | 2/19/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 0.60 | $350.00 | $210.00 |
| 98. | Castillo, Luis and Gonzalez, Yesenia v. Kia | 2/12/2016 | Amy Morse | Draft RFA to Defendant and Declaration | 0.80 | $250.00 | $200.00 |
| 99. | Castro, RV FMC | 11/18/2016 | Amy Morse | Draft RFAs to Deft and declaration | 0.80 | $350.00 | $280.00 |
| 100. | Cavalleri, Nicholas v. FCA | 7/28/2016 | Amy Morse | Draft RFA to FCA and Declaration | 1.20 | $250.00 | $300.00 |
| 101. | Celestine, Larry v. FCA | 8/24/2017 | Alastair Hamblin | Draft RFA to Def | 0.80 | $325.00 | $260.00 |
| 102. | CERDA v.FMC | 11/5/2016 | Amy Morse | Draft RFA to Deft and Declaration | 0.70 | $350.00 | $245.00 |
| 103. | Cervantes-Juarez, Silva v. Hyundai | 4/19/2016 | Russell Higgins | Draft RFAs to Deft and Declaration | 1.40 | $450.00 | $630.00 |
| 104. | Chapman, Richard E. v. Hyundai Motor America | 1/8/2017 | Amy Morse | Draft RFAs to Deft and declaration | 0.90 | $350.00 | $315.00 |
| 105. | Chavez, Fernanda v. FCA | 12/22/2016 | Amy Morse | Draft RFAs to Deft | 0.50 | $350.00 | $175.00 |
| 106. | Chavez, Fernanda v. FCA | 2/17/2017 | Amy Morse | Draft RFAs to Deft and Declaration, Set Two | 0.50 | $350.00 | $175.00 |
| 107. | Chavez, Jose Luis v. GM | 6/19/2019 | Amy Morse | Draft RFA to Deft and Declaration | 0.90 | $350.00 | $315.00 |
| 108. | Chikahiro, Dwayne K. v. FMC | 12/29/2017 | Kristina Stephenson-Cheang | Draft RFA to Def | 0.50 | $375.00 | $187.50 |
| 109. | Chirinos, Jose v. Ford Motor Company | 10/13/2016 | Amy Morse | Draft RFA to Deft and Declaration | 0.80 | $350.00 | $280.00 |
| 110. | Chivas, Robert J v.FMC | 11/16/2018 | Kristina Stephenson-Cheang | Draft Ptf's RFA to Deft and Declaration | 1.50 | $375.00 | $562.50 |
| 111. | Choi, Andrew v. Hyundai | 6/8/2016 | Russell Higgins | Draft RFAs to Deft | 0.60 | $450.00 | $270.00 |
| 112. | Choi, Kayla v. BMW | 11/12/2016 | Amy Morse | Draft RFAs to BMW and Declaration | 1.20 | $350.00 | $420.00 |
| 113. | Christensen v. FMC | 10/22/2016 | Amy Morse | Draft RFAs to Deft | 0.40 | $350.00 | $140.00 |
| 114. | Cieslikowski, Carl and Cieslikowski, Cathy v. | 2/25/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.40 | $350.00 | $490.00 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 115. | Cieslikowski, Carl and Cieslikowski, Cathy v. | 11/9/2017 | Deepak Devabose | Draft Ptfs' RFAs to FCA | 0.80 | $275.00 | $220.00 |
| 116. | Cisneros, Jose v. FCA | 4/22/2017 | Kristina Stephenson-Cheang | Draft RFA to FCA | 0.50 | $375.00 | $187.50 |
| 117. | Clamar, Mario v. FCA | 11/18/2019 | Amy Morse | Draft RFA to FCA and Declaration | 1.40 | $350.00 | $490.00 |
| 118. | Clark, K. v. FMC | 1/30/2017 | Amy Morse | Draft RFAs to Deft | 0.40 | $350.00 | $140.00 |
| 119. | Clark, K. v. FMC | 3/8/2017 | Amy Morse | Draft RFAs to Deft and declaration, Set Two | 0.20 | $350.00 | $70.00 |
| 120. | Clement, Margaret v. FCA | 10/6/2016 | Amy Morse | Draft RFAs to Defts and declaration | 1.10 | $350.00 | $385.00 |
| 121. | Codd, Joshua and Delgado, Tracy v. FMC | 5/16/2017 | Kristina Stephenson-Cheang | Draft RFA to Deft and Declaration | 1.10 | $375.00 | $412.50 |
| 122. | Codero, Anthony v. HMA | 3/6/2018 | Kristina Stephenson-Cheang | Draft RFAs to HMA and Declaration | 0.90 | $375.00 | $337.50 |
| 123. | Coffman, Lisa v. FCA | 9/29/2016 | Amy Morse | Draft RFA to Deft | 0.50 | $350.00 | $175.00 |
| 124. | Cofield, Jerry v. Kia | 2/23/2015 | Daisy Ortiz | Draft Plaintiffs' First Set of RFA | 0.50 | $225.00 | $112.50 |
| 125. | Conkle, Michelle v. FCA | 7/5/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and Declaration | 1.20 | $375.00 | $450.00 |
| 126. | Cook, Jonathan v. Hyundai | 12/23/2016 | Amy Morse | Draft RFA to Deft and Declaration | 0.90 | $350.00 | $315.00 |
| 127. | Corona, Juan Jose v. FMC | 7/25/2018 | Kristina Stephenson-Cheang | Draft RFA to Deft | 0.60 | $375.00 | $225.00 |
| 128. | Costa, Sandra v. FCA | 2/28/2017 | Amy Morse | Draft RFAs to Deft and Declaration | 1.20 | $350.00 | $420.00 |
| 129. | Coulombe, Frank v. FCA | 9/26/2016 | Amy Morse | Draft RFAs to Defts and declaration | 1.10 | $350.00 | $385.00 |
| 130. | Covert, Eric v. FCA | 1/15/2017 | Amy Morse | Draft RFA to FCA and Declaration | 1.40 | $350.00 | $490.00 |
| 131. | Cox, John v. FCA | 11/20/2016 | Amy Morse | Draft RFA, set one to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 132. | Cox, John v. FCA | 2/20/2017 | Amy Morse | Draft RFA to FCA, Set Two and Declaration | 0.60 | $350.00 | $210.00 |
| 133. | Cramer, Eva v. FCA | 10/30/2016 | Amy Morse | Draft RFA to Defts and Declaration | 1.30 | $350.00 | $455.00 |
| 134. | Cuevas, Richard v. FCA | 2/26/2017 | Amy Morse | Draft RFAs to FCA | 1.20 | $350.00 | $420.00 |
| 135. | Darchuk, Vasiliy v. Hyundai | 12/28/2016 | Amy Morse | Draft RFAs to HMA and Declaration | 0.60 | $350.00 | $210.00 |
| 136. | Daria, Ronald v. BMW | 11/17/2016 | Amy Morse | Draft Ptf's RFAs and Declaration | 2.00 | $350.00 | $0.00 |
| 137. | Daria, Ronald v. BMW | 9/20/2017 | Kristina Stephenson-Cheang | Draft Ptf's RFAs and Declaration | 1.20 | $375.00 | $450.00 |
| 138. | Davis, Matthew v. FCA | 2/13/2017 | Amy Morse | Draft RFAs and Declaration to Defts | 1.10 | $350.00 | $385.00 |
| 139. | DeAngelis, Donald & Shelby v. FMC | 2/12/2014 | Daisy Ortiz | Draft RFA to Ford and Declaration | 1.70 | $225.00 | $382.50 |
| 140. | Del Valle v. FMC | 4/27/2017 | Amy Morse | Draft RFAs to Deft | 0.50 | $350.00 | $175.00 |
| 141. | DELEO v.FMC | 11/18/2015 | Russell Higgins | Draft RFA to Deft and Declaration | 0.80 | $400.00 | $320.00 |
| 142. | Delgadillo, Christian R and Martinez, Rigober | 2/16/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 143. | Dertina, Damon v. BMW | 12/18/2015 | Russell Higgins | Draft Ptf's RFAs and Declaration | 0.70 | $450.00 | $315.00 |
| 144. | Desimone, Tom v. HMA | 3/2/2016 | Amy Morse | Draft RFA to HMA | 0.50 | $350.00 | $175.00 |
| 145. | Di Martino, Chiara v. Hyundai | 12/28/2016 | Amy Morse | Draft RFAs to Deft | 0.50 | $350.00 | $175.00 |
| 146. | Di Martino, Chiara v. Hyundai | 6/30/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft, Set Two | 0.20 | $375.00 | $75.00 |
| 147. | Diarra, Monica v. FCA | 1/29/2018 | Kristina Stephenson-Cheang | Draft RFAs to FCA | 0.50 | $375.00 | $187.50 |
| 148. | DIAZ, ALBERTO v. FMC | 5/12/2017 | Kristina Stephenson-Cheang | Draft RFA to Deft and Declaration | 0.80 | $375.00 | $300.00 |
| 149. | Dienes, Leon v. FCA | 1/5/2017 | Alastair Hamblin | Draft RFA to Deft | 0.90 | $325.00 | $292.50 |
| 150. | DiGioia, Anna Marie v. FMC | 10/31/2018 | Deepak Devabose | Draft Ptf's RFA to FMC | 0.70 | $275.00 | $192.50 |
| 151. | Dill, Terri Anne v. Hyundai | 6/17/2015 | Daisy Ortiz | Draft RFAs to Deft | 0.30 | $225.00 | $0.00 |
| 152. | Dombrowski, Bruce and Dombrowski, Nancy v. FM | 6/23/2015 | Daisy Ortiz | Draft RFAs to Defendant | 0.60 | $225.00 | $135.00 |
| 153. | Dominguez v. FMC | 7/6/2017 | Kristina Stephenson-Cheang | Draft RFA to Deft and Declaration | 0.90 | $350.00 | $315.00 |
| 154. | Donner, David and Donner, Kathleen v. FCA | 1/27/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.20 | $350.00 | $420.00 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 155. | Donner, David and Donner, Kathleen v. FCA | 12/7/2017 | Deepak Devabose | Draft Ptfs' RFAs to FCA | 0.80 | $275.00 | $220.00 |
| 156. | Dosanjh, Jaspal v. Hyundai | 4/20/2016 | Russell Higgins | Draft RFAs to HMA and Declaration | 0.90 | $450.00 | $405.00 |
| 157. | DUENAS v. FMC | 1/30/2017 | Amy Morse | Draft RFAs to Deft and Declaration | 0.80 | $350.00 | $280.00 |
| 158. | DuFord, William v. FMC | 6/4/2016 | Russell Higgins | Draft RFA to Deft and Declaration | 0.60 | $400.00 | $240.00 |
| 159. | Dugan, Teri v. FMC | 7/23/2018 | Kristina Stephenson-Cheang | Draft RFA to Ford | 0.80 | $375.00 | $300.00 |
| 160. | Duk v. Ford | 10/13/2016 | Amy Morse | Draft RFAs to Deft and Declaration | 0.70 | $350.00 | $245.00 |
| 161. | Dunfee, Ann and Dunfee, Robert | 6/22/2015 | Daisy Ortiz | Draft Plaintiffs' First Set of RFA | 0.50 | $225.00 | $112.50 |
| 162. | Durgana, Bibi v. FCA | 1/29/2017 | Amy Morse | Draft RFAs to Deft and Declaration | 1.30 | $350.00 | $455.00 |
| 163. | Duwe v.FMC | 6/23/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and declaration | 0.80 | $375.00 | $300.00 |
| 164. | Edralin, Daniel v. FCA | 10/22/2016 | Amy Morse | Draft RFA to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 165. | Egger, Rudy Warren v. FCA | 2/3/2017 | Amy Morse | Draft RFA to FCA and Declaration | 1.40 | $350.00 | $490.00 |
| 166. | Emmons, Melissa aka Young, Melissa v. FMC | 11/30/2016 | Michael Ouziel | Draft RFAs to Deft and Declaration | 0.80 | $250.00 | $200.00 |
| 167. | Emmons, Melissa aka Young, Melissa v. FMC | 7/17/2018 | Amy Morse | Draft RFAs, Set Two to Deft and Declaration | 0.90 | $350.00 | $315.00 |
| 168. | Encarnacion V. FMC | 10/4/2016 | Amy Morse | Draft RFAs to Deft and declaration | 0.80 | $350.00 | $280.00 |
| 169. | Erbe, Gabriel v. FCA | 5/24/2018 | Kristina Stephenson-Cheang | Draft RFAs to Def | 0.60 | $375.00 | $225.00 |
| 170. | Escalante, Alberto v. FCA | 2/8/2017 | Amy Morse | Draft RFAs to FCA | 1.00 | $350.00 | $350.00 |
| 171. | Espinoza, Alfredo v. FCA | 5/2/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and declaration | 0.90 | $375.00 | $337.50 |
| 172. | Espinoza, Beda v. FCA | 7/20/2016 | Amy Morse | Draft RFAs to Deft and Declaration | 0.70 | $350.00 | $245.00 |
| 173. | Espinoza, Carlos and Heather v. FCA | 10/4/2018 | Kristina Stephenson-Cheang | Draft RFA to FCA and Declaration | 1.00 | $375.00 | $375.00 |
| 174. | Espinoza, Rosa v. FCA | 6/15/2017 | Kristina Stephenson-Cheang | Draft RFAs to FCA | 0.80 | $375.00 | $300.00 |
| 175. | Evans, Keith v. FCA | 4/18/2017 | Amy Morse | Draft RFA to Deft and Declaration | 1.20 | $350.00 | $420.00 |
| 176. | EVERLING v. FMC | 5/24/2017 | Kristina Stephenson-Cheang | Draft RFA to Deft and Declaration | 0.90 | $375.00 | $337.50 |
| 177. | Farler, Karen v. FCA | 8/24/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.30 | $350.00 | $455.00 |
| 178. | Felix, Jaime v. BMW | 1/6/2017 | Amy Morse | Draft RFAs to Deft and declaration | 0.70 | $350.00 | $245.00 |
| 179. | Ferreira, Cecilia and Ferreira, Joseph v. FMC | 9/1/2016 | Amy Morse | Draft RFA and Declaration to Defendant, Set One | 0.70 | $350.00 | $245.00 |
| 180. | Figueroa, Angel v. FCA | 7/4/2017 | Kristina Stephenson-Cheang | Draft RFAs to FCA | 0.50 | $375.00 | $187.50 |
| 181. | Figures, Ida v. FCA | 8/24/2017 | Alastair Hamblin | Draft Ptf's RFA to Deft | 0.80 | $325.00 | $260.00 |
| 182. | Fisher, Lourdes v. FMC | 3/5/2017 | Amy Morse | Draft RFA to Deft and declaration | 0.80 | $350.00 | $280.00 |
| 183. | Fitzgerald, Daniel v. HMA | 6/3/2016 | Russell Higgins | Draft RFA to Deft and Declaration | 0.70 | $450.00 | $315.00 |
| 184. | Florentes, Maribel C. and Nelson, Scott v. FM | 7/29/2015 | Daisy Ortiz | Draft Plaintiffs' RFA | 0.40 | $225.00 | $90.00 |
| 185. | Flores, Francisco v. FCA | 1/4/2019 | Kristina Stephenson-Cheang | Draft Ptfs' RFAs to Deft and declaration | 1.40 | $375.00 | $525.00 |
| 186. | Flores, Julian and Alejandra v. FCA US LLC | 8/24/2017 | Alastair Hamblin | Draft RFA to FCA | 0.80 | $325.00 | $260.00 |
| 187. | FLORES, RAUL v. FMC | 11/30/2016 | Amy Morse | Draft RFA to Deft and Declaration | 0.80 | $350.00 | $280.00 |
| 188. | Floyd, Stacy Hoofkin v. FCA | 5/18/2018 | Kristina Stephenson-Cheang | Draft RFA to FCA | 0.60 | $375.00 | $225.00 |
| 189. | Foster, James v. FMC | 7/15/2013 | Daisy Ortiz | Draft RFGs and RFA to Deft and Declaration | 1.80 | $225.00 | $405.00 |
| 190. | Fox, Charity v. Hyundai | 11/17/2017 | Amy Morse | Draft RFAs to Deft | 0.50 | $350.00 | $175.00 |
| 191. | Fraga, Francisco Martinez | 11/23/2016 | Amy Morse | Draft RFA to  Deft and Declaration | 0.90 | $350.00 | $315.00 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 192. | Frazier, Steve and Regina v. FMC | 1/14/2019 | Kristina Stephenson-Cheang | Draft Ptfs' RFA to FMC and Declaration | 1.30 | $375.00 | $487.50 |
| 193. | Frederick, Mark v. FMC | 7/8/2014 | Daisy Ortiz | Draft RFA and Declaration | 1.70 | $225.00 | $382.50 |
| 194. | Fronek, Thomas and Fronek, Karen v. FCA | 2/1/2017 | Amy Morse | Draft Ptfs' RFAs to FCA and Declaration | 1.00 | $350.00 | $350.00 |
| 195. | Gacho, Evelyn v. FMC | 11/6/2016 | Amy Morse | Draft RFA to Deft and Declaration, Set One | 0.90 | $350.00 | $315.00 |
| 196. | Gacho, Evelyn v. FMC | 9/21/2017 | Kristina Stephenson-Cheang | Draft RFA to Deft and Declaration, Set One | 0.80 | $350.00 | $280.00 |
| 197. | Gage, Nelli v. FMC | 12/28/2016 | Amy Morse | Draft RFA to Deft | 0.50 | $350.00 | $175.00 |
| 198. | Gaines, Nicole v. FCA | 1/16/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 199. | Galvez Rios, Francisco and Maria v. FCA | 9/19/2018 | Kristina Stephenson-Cheang | Draft RFA to FCA and Declaration | 0.70 | $375.00 | $262.50 |
| 200. | Gaona, Alejandro v. FCA | 7/20/2016 | Amy Morse | Draft RFAs to Deft | 0.50 | $350.00 | $175.00 |
| 201. | Garcia Darlene v. FCA | 9/28/2016 | Alastair Hamblin | Draft RFAs to Deft | 0.80 | $325.00 | $260.00 |
| 202. | Garcia, Juan v. FCA | 11/30/2016 | Amy Morse | Draft RFAs to FCA and declaration | 1.40 | $350.00 | $490.00 |
| 203. | Garcia, Pompeyo and Cristal Mejicanos v. FMC | 1/30/2017 | Amy Morse | Draft RFAs to Deft and declaration | 0.80 | $350.00 | $280.00 |
| 204. | Garcia, Pompeyo and Cristal Mejicanos v. FMC | 5/23/2017 | Kristina Stephenson-Cheang | Draft Pompeyo Garcia's Rasp ones to RFAs | 0.60 | $350.00 | $210.00 |
| 205. | Garcis, Luis v. FCA | 2/8/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.30 | $350.00 | $455.00 |
| 206. | Garza, Janiece v. FCA | 1/24/2017 | Amy Morse | Draft RFA to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 207. | Gaytan, Rebecca Ann & Gaytan Ileen v. General Motors | 3/7/2019 | Amy Morse | Draft RFA to GM and Declaration | 0.70 | $350.00 | $245.00 |
| 208. | Geary, John v. FCA | 10/9/2016 | Amy Morse | Draft RFAs to Deft and declaration | 1.20 | $350.00 | $420.00 |
| 209. | Geiger, John D. v. FMC | 5/4/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and declaration | 0.70 | $375.00 | $262.50 |
| 210. | Gerber, Michael v. FCA | 11/30/2016 | Amy Morse | Draft Ptf's RFAs to FCA and Declaration | 1.20 | $350.00 | $420.00 |
| 211. | Gerber, Michael v. FCA | 8/4/2017 | Alastair Hamblin | Draft RFAs to FCA | 0.80 | $325.00 | $260.00 |
| 212. | Giddings, Maryann v. FCA | 7/28/2016 | Amy Morse | Draft RFA and Declaration to Defendant | 0.90 | $250.00 | $225.00 |
| 213. | Godinez, Lorena v. BMW | 5/11/2017 | Kristina Stephenson-Cheang | Draft RFA to BMW and Declaration | 0.50 | $375.00 | $187.50 |
| 214. | Goicoechea, Alfonso and Carmen v. Kia | 12/19/2014 | Daisy Ortiz | Draft Plaintiffs' First Set of RFAs | 0.50 | $225.00 | $112.50 |
| 215. | Goldman, Christine and Jette, David v. Hyunda | 11/17/2016 | Amy Morse | Draft RFA to Deft | 0.50 | $350.00 | $175.00 |
| 216. | Gomes, Mike v. FMC | 11/26/2016 | Amy Morse | Draft RFA to Deft and Declaration | 1.40 | $350.00 | $490.00 |
| 217. | Gomez, Jose v. FCA | 7/28/2016 | Amy Morse | Draft RFA to Defendant and Declaration | 1.00 | $250.00 | $250.00 |
| 218. | Gomez, Mark v. FCA | 3/14/2017 | Amy Morse | Draft RFA to FCA and Declaration | 1.00 | $350.00 | $350.00 |
| 219. | Gomez, Mary v. FCA | 4/9/2018 | Kristina Stephenson-Cheang | Draft RFA to Defendant and Declaration | 0.80 | $375.00 | $300.00 |
| 220. | Gomez, Melinda and Gomez, Amanda v. FMC | 4/27/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and declaration | 0.80 | $350.00 | $280.00 |
| 221. | Gomez, Omar v. Kia | 6/8/2015 | Daisy Ortiz | Draft Plaintiffs' First Set of RFA | 0.40 | $225.00 | $90.00 |
| 222. | Gonzalez Simon Juana v. FMC | 7/6/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and declaration | 0.80 | $350.00 | $280.00 |
| 223. | Gonzalez, Gabriel v. FCA | 8/7/2017 | Kristina Stephenson-Cheang | Draft RFAs to FCA and Declaration | 1.40 | $375.00 | $525.00 |
| 224. | Gonzalez, Pedro v. Ford Motor Company | 1/30/2017 | Amy Morse | Draft RFAs to Deft and Declaration | 0.90 | $350.00 | $315.00 |
| 225. | Gonzalez, Rosa v. FCA | 5/12/2017 | Kristina Stephenson-Cheang | Draft RFAs to FCA | 0.60 | $375.00 | $225.00 |
| 226. | Gonzalez, Zenaido Diaz v. FCA | 5/24/2018 | Kristina Stephenson-Cheang | Draft RFA to Defendant | 0.50 | $375.00 | $187.50 |

Drafting RFAs

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 227. | Gonzalez, Zenaido Diaz v. FCA | 5/16/2019 | Amy Morse | Draft RFA to Defendant and Declaration, Set Two | 1.60 | $350.00 | $560.00 |
| 228. | Gordon, Robin v. FCA | 2/3/2017 | Amy Morse | Draft RFA to Deft and Declaration | 1.10 | $350.00 | $385.00 |
| 229. | Green, Donna v. FCA | 3/10/2017 | Amy Morse | Draft RFA to Deft and Declaration | 0.90 | $350.00 | $315.00 |
| 230. | Green, Patrick v. FCA | 3/12/2017 | Amy Morse | Draft Ptf's RFAs to Deft and Declaration | 1.30 | $350.00 | $455.00 |
| 231. | GUERRERO MARINA JORGE V. FMC | 2/12/2016 | Amy Morse | Draft RFAs to Deft and declaration | 1.40 | $250.00 | $350.00 |
| 232. | Guiterrez + Lozano v. FCA | 1/18/2017 | Amy Morse | Draft RFA to FCA, Set One | 0.50 | $250.00 | $125.00 |
| 233. | Guiterrez + Lozano v. FCA | 2/14/2017 | Amy Morse | Draft RFA to FCA, Set Two and Declaration | 0.70 | $250.00 | $175.00 |
| 234. | Gutierrez, Stephanie v. Hyundai Motor America | 6/15/2017 | Kristina Stephenson-Cheang | Draft RFA to HMA | 0.50 | $375.00 | $187.50 |
| 235. | Guzman, Roberto v. FCA | 2/10/2017 | Amy Morse | Draft RFA to Deft | 1.00 | $350.00 | $350.00 |
| 236. | Hagerman, Connie v. FCA | 6/13/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and Declaration | 1.30 | $375.00 | $487.50 |
| 237. | Hagerman, Connie v. FCA | 12/12/2017 | Deepak Devabose | Draft RFAs to Deft | 0.80 | $275.00 | $220.00 |
| 238. | Hall, Dennis v. FCA | 9/28/2016 | Alastair Hamblin | Draft RFAs to Deft | 1.30 | $325.00 | $422.50 |
| 239. | Hamilton, Lisa v. FCA | 8/24/2017 | Kristina Stephenson-Cheang | Draft RFA to FCA and Declaration | 0.90 | $375.00 | $337.50 |
| 240. | Hamm, Alan and Hamm, Susan | 1/29/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 241. | HAND v.FMC | 2/10/2014 | Daisy Ortiz | Draft RFA to Deft and Declaration | 1.60 | $225.00 | $360.00 |
| 242. | Hannah v FMC | 3/14/2017 | Amy Morse | Draft RFAs to Deft and Declaration | 1.00 | $350.00 | $350.00 |
| 243. | Hardy, Russell v. Kia | 4/20/2018 | Kristina Stephenson-Cheang | Draft Ptf's RFA to Defendant | 0.50 | $375.00 | $187.50 |
| 244. | Hardy, Russell v. Kia | 11/27/2018 | Amy Morse | Draft Ptf's RFA to Defendant, Set Two | 0.10 | $350.00 | $35.00 |
| 245. | Harisay, Marc v. Hyundai | 3/23/2016 | Russell Higgins | Draft Plaintiff's RFAs to Deft and Declaration | 0.60 | $400.00 | $240.00 |
| 246. | Harris, Julie v. Hyundai | 9/18/2015 | Russell Higgins | Draft RFAs to Defendant | 0.50 | $400.00 | $200.00 |
| 247. | Heil, Clayborne v. FCA | 10/9/2016 | Amy Morse | Draft Ptf's RFAs to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 248. | Hellenberg, Casey W. v. FMC | 3/4/2019 | Mitchell Rosensweig | Draft RFA to FMC | 0.70 | $325.00 | $227.50 |
| 249. | Hemric, Mark v. FMC | 9/15/2013 | Daisy Ortiz | Draft RFA to FMC and Declaration | 1.80 | $225.00 | $405.00 |
| 250. | Hendrickson, Paul v. FMC | 11/7/2017 | Kristina Stephenson-Cheang | Draft Ptf's RFAs and declaration to Deft | 2.10 | $375.00 | $787.50 |
| 251. | Hensley, Jedidiah v. FCA | 10/9/2015 | Russell Higgins | Draft Plfs' RFA | 0.40 | $400.00 | $160.00 |
| 252. | Hensley, Melissa v. FCA | 3/23/2017 | Amy Morse | Draft RFAs to Deft and Declaration | 1.30 | $350.00 | $455.00 |
| 253. | Heredia, D'Angelo v. FMC | 7/8/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and declaration | 0.80 | $350.00 | $280.00 |
| 254. | Hernandez, Esmeralda v. FCA | 6/14/2017 | Kristina Stephenson-Cheang | Draft RFAs to FCA and Declaration | 1.40 | $375.00 | $525.00 |
| 255. | Hernandez, Esmeralda v. FCA | 12/6/2017 | Deepak Devabose | Draft RFAs to FCA | 0.80 | $275.00 | $220.00 |
| 256. | Hernandez, Hada (aka Hada Romero) v. FCA | 3/29/2019 | Amy Morse | Draft RFA to FCA and Declaration | 1.40 | $350.00 | $490.00 |
| 257. | Hernandez, Hada (aka Hada Romero) v. FCA | 3/29/2019 | Amy Morse | Draft RFA to FCA | 2.90 | $350.00 | $1,015.00 |
| 258. | Hernandez, Julio v. BMW | 7/21/2017 | Kristina Stephenson-Cheang | Draft RFA to Deft and Declaration | 1.10 | $375.00 | $412.50 |
| 259. | Hernandez, Lilibeth v. FCA | 3/23/2017 | Amy Morse | Draft RFAs to Deft and declaration | 0.60 | $350.00 | $210.00 |
| 260. | Hernandez, Roberto III v. FMC | 3/12/2018 | Kristina Stephenson-Cheang | Draft Ptf's RFA to FMC and declaration | 1.10 | $375.00 | $412.50 |
| 261. | Hernandez, Toribio and Hernandez, Elizabeth v | 11/10/2016 | Amy Morse | Draft RFA to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 262. | Herrera, Aldrin v. Chrysler | 3/3/2014 | Daisy Ortiz | Draft First Set of RFA to Defendant | 0.50 | $225.00 | $112.50 |
| 263. | Herrera, Dalila v. FCA | 3/14/2017 | Amy Morse | Draft RFA to FCA and Declaration | 0.50 | $350.00 | $175.00 |
| 264. | Hess, Andrea and Hess, Brandon v. FMC | 7/21/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and declaration | 0.70 | $350.00 | $245.00 |
| 265. | Higareda, Mark v. FCA | 2/3/2017 | Amy Morse | Draft RFAs to Deft and declaration0 | 1.30 | $350.00 | $455.00 |
| 266. | Hightower, Wilbur v. FMC | 6/9/2015 | Daisy Ortiz | Draft RFA to Defendant | 0.50 | $225.00 | $112.50 |

Drafting RFAs

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 267. | Hill, Jeremy v. FCA | 1/29/2017 | Amy Morse | Draft RFA to FCA and Declaration | 2.00 | $350.00 | $700.00 |
| 268. | Holt, Wade v. FCA | 11/30/2016 | Amy Morse | Draft RFAs to Deft and Declaration | 1.10 | $350.00 | $385.00 |
| 269. | Hopkins, Steven v. FCA | 11/30/2016 | Amy Morse | Draft RFAs to Defts and declaration | 1.10 | $350.00 | $385.00 |
| 270. | House, Thomas v. FCA | 9/13/2016 | Steve B. Mikhov | Draft RFA to FCA and Declaration | 0.30 | $550.00 | $165.00 |
| 271. | Howton, Christopher v. FCA | 10/8/2016 | Amy Morse | Draft RFA to Def's and declaration | 0.60 | $350.00 | $210.00 |
| 272. | Hughson, Manning v. FCA | 1/8/2017 | Amy Morse | Draft RFA to Deft and Declaration | 1.20 | $350.00 | $420.00 |
| 273. | Ibarra v. Ford | 12/16/2016 | Amy Morse | Draft RFAs to Deft | 0.50 | $350.00 | $175.00 |
| 274. | Ibarra, Teresa v. FMC | 4/26/2017 | Kristina Stephenson-Cheang | Draft RFA to Deft and Declaration | 0.90 | $350.00 | $315.00 |
| 275. | In RE VW Clean Diesel | 5/31/2019 | Armando Lopez | Draft RFA | 1.80 | $200.00 | $360.00 |
| 276. | Islas Galvez, Alfredo, et. Al. v. FMC | 7/15/2021 | Armando Lopez | Draft Plaintiff RFA and Declaration | 0.50 | $275.00 | $137.50 |
| 277. | Jackson, Katrina v. FCA | 10/27/2016 | Amy Morse | Draft RFA to Deft and Declaration | 1.00 | $350.00 | $350.00 |
| 278. | Jacquez, Mary v.FMC | 7/28/2015 | Daisy Ortiz | Draft RFA to Deft | 0.50 | $225.00 | $112.50 |
| 279. | Jain, Arun v. Hyundai | 1/6/2017 | Amy Morse | Draft RFAs to Deft and Declaration | 0.50 | $350.00 | $175.00 |
| 280. | Jameson, April v. FMC | 10/2/2018 | Deepak Devabose | Draft RFAs to FMC | 0.80 | $275.00 | $220.00 |
| 281. | Jansson v. FMC | 5/4/2016 | Russell Higgins | Draft RFA to Deft and Declaration | 1.00 | $450.00 | $450.00 |
| 282. | Jarrett, Michael v. FCA | 2/24/2017 | Amy Morse | Draft RFAs to Deft and declaration | 1.50 | $350.00 | $525.00 |
| 283. | Jasmer, Travis v. FCA | 10/11/2016 | Amy Morse | Draft RFA to FCA and Declaration | 1.20 | $350.00 | $420.00 |
| 284. | Javian, Benjamin Castro v. Ford Motor Company | 6/5/2016 | Russell Higgins | Draft RFA to Deft | 0.50 | $400.00 | $200.00 |
| 285. | Jerry, Eugene v. Ford Motor Company | 10/15/2016 | Amy Morse | Draft RFA to Deft and Declaration | 1.20 | $350.00 | $420.00 |
| 286. | Johnson, Riadon v. FCA | 1/16/2017 | Amy Morse | Draft RFAs to FCA and declaration | 1.30 | $350.00 | $455.00 |
| 287. | Johnson, Rita v. FCA | 2/28/2017 | Amy Morse | Draft Ptf's RFAs to Deft and Declaration | 1.30 | $350.00 | $455.00 |
| 288. | Johnson, Wanda v. Hyundai | 6/1/2016 | Russell Higgins | Draft RFA to Deft | 0.60 | $450.00 | $270.00 |
| 289. | Jordan, Harold and Hordan, Marna | 1/29/2017 | Amy Morse | Draft Ptfs' RFAs and Declaration | 1.10 | $350.00 | $385.00 |
| 290. | Jordan, Harold and Hordan, Marna | 12/7/2017 | Deepak Devabose | Draft Ptfs' RFAs- Federal | 0.80 | $275.00 | $220.00 |
| 291. | Jordan, Matthew v. FCA | 10/27/2016 | Amy Morse | Draft RFAs to FCA | 1.40 | $350.00 | $490.00 |
| 292. | JUAREZ v.FMC | 11/5/2016 | Amy Morse | Draft RFA to Deft and Declaration | 0.90 | $350.00 | $315.00 |
| 293. | Juarez, Marco v. General Motors | 1/10/2016 | Amy Morse | Draft RFAs to Deft | 0.90 | $350.00 | $315.00 |
| 294. | Kantar, Joseph v. FCA | 9/22/2016 | Amy Morse | Draft RFA to Deft and Declaration | 1.20 | $350.00 | $420.00 |
| 295. | Kappler, Aaron v. FMC | 11/4/2015 | Russell Higgins | Draft RFA to Deft | 0.50 | $400.00 | $200.00 |
| 296. | Karm, Cynthia v. FMC | 1/26/2017 | Amy Morse | Draft RFA to Deft and Declaration | 0.80 | $350.00 | $280.00 |
| 297. | Kasarda, Melissa v. FCA | 9/29/2016 | Amy Morse | Draft RFA to FCA and Declaration | 1.00 | $350.00 | $350.00 |
| 298. | KATZ, MITCHELL V. FMC | 9/29/2016 | Amy Morse | Draft RFA to  Deft and Declaration | 0.80 | $250.00 | $200.00 |
| 299. | Kavanagh, Fiona v. FCA | 4/21/2017 | Amy Morse | Draft RFA to FCA and Declaration | 1.20 | $350.00 | $420.00 |
| 300. | Kearin, Timothy v. FCA | 3/14/2017 | Amy Morse | Draft RFA to Deft and Declaration | 0.90 | $350.00 | $315.00 |
| 301. | Kearney, Kevin v. FCA | 7/22/2016 | Amy Morse | Draft RFAs to Deft and Declaration | 1.30 | $350.00 | $455.00 |
| 302. | Kearney, Kevin v. FCA | 3/29/2017 | Alastair Hamblin | Draft RFA to Defendant | 1.20 | $325.00 | $390.00 |
| 303. | Kelton, Kevin v. FCA | 3/21/2018 | Kristina Stephenson-Cheang | Draft RFAs to FCA | 0.50 | $375.00 | $187.50 |
| 304. | Kent, Doreen and Mead, Donald v. FCA | 9/21/2016 | Kristina Stephenson-Cheang | Draft RFAs to Deft and declaration | 1.00 | $375.00 | $375.00 |
| 305. | Kiemel, Sean Paul v. FMC | 8/8/2018 | Kristina Stephenson-Cheang | Draft RFA t o Deft | 0.60 | $375.00 | $225.00 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 306. | Killingsworth, William and Killingsworth, Vic | 9/2/2016 | Amy Morse | Draft RFA to Deft and Declaration | 0.70 | $350.00 | $245.00 |
| 307. | Kim, Justin v. Hyundai | 12/9/2015 | Russell Higgins | Draft RFAs to Defendant and Declaration | 1.00 | $450.00 | $450.00 |
| 308. | King v. Hyundai | 3/1/2016 | Amy Morse | Draft Plaintiff's First Set of RFA and Declaration | 0.80 | $250.00 | $200.00 |
| 309. | King, A. v. Hyundai | 11/30/2016 | Amy Morse | Draft RFA to Def | 0.40 | $350.00 | $140.00 |
| 310. | King, Anthony v. FMC | 10/18/2016 | Amy Morse | Draft RFA to Deft | 0.60 | $250.00 | $150.00 |
| 311. | Kirchner, Patty v. FCA | 3/29/2017 | Alastair Hamblin | Draft RFA to Defendant | 1.20 | $325.00 | $390.00 |
| 312. | Koetsier, Thomas and Koetsier, Jackie (for Ba | 6/1/2016 | Russell Higgins | Draft RFA to Defendant | 0.40 | $400.00 | $160.00 |
| 313. | Kolakowski, Sandra Rae v. FCA | 10/27/2016 | Amy Morse | Draft RFA to Deft | 0.60 | $350.00 | $210.00 |
| 314. | Koller, Mary S. v. FMC | 7/31/2018 | Kristina Stephenson-Cheang | Draft RFA to FMC | 0.50 | $375.00 | $187.50 |
| 315. | Kopa, Katherine v. FMC | 10/31/2018 | Deepak Devabose | Draft RFAs to Def | 0.90 | $275.00 | $247.50 |
| 316. | Kopchak v. FMC | 5/5/2016 | Russell Higgins | Draft RFA to Deft and Declaration | 0.90 | $400.00 | $360.00 |
| 317. | Kortan v. FMC | 6/21/2017 | Kristina Stephenson-Cheang | Draft RFA to Deft | 0.50 | $350.00 | $175.00 |
| 318. | La Chance, Michael v. FCA | 7/20/2016 | Amy Morse | Draft RFA and Declaration | 1.20 | $250.00 | $300.00 |
| 319. | Lagunas, Hector v. FCA | 1/14/2017 | Amy Morse | Draft RFA to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 320. | Laluan, Demetrio & Evelyn v. FCA | 4/1/2019 | Amy Morse | Draft RFA to FCA and Declaration | 1.50 | $350.00 | $525.00 |
| 321. | Lambertson, Larry v. FCA | 10/26/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 322. | Landis, Denise & David v. General Motors | 8/26/2019 | Amy Morse | Draft RFA to GM and Declaration | 0.80 | $350.00 | $280.00 |
| 323. | Lange, Erika v. FCA | 2/10/2017 | Amy Morse | Draft RFAs to Defts | 0.50 | $350.00 | $175.00 |
| 324. | Lawson, Mark | 6/19/2014 | Daisy Ortiz | Draft RFGs and RFAs to Deft and Declaration | 2.00 | $225.00 | $450.00 |
| 325. | Leach, Todd v. FCA | 10/14/2016 | Amy Morse | Draft RFA to Deft and Declaration | 1.20 | $350.00 | $420.00 |
| 326. | Leon, Yolanda v. FCA | 2/6/2017 | Amy Morse | Draft Ptf's RFAs to FCA and Declaration | 0.90 | $350.00 | $315.00 |
| 327. | Lewis, Morgan v. FCA | 9/25/2016 | Amy Morse | Draft RFAs to FCA | 0.40 | $350.00 | $140.00 |
| 328. | Li, Bruce Nai Hung v. FCA | 6/12/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and Declaration | 1.30 | $375.00 | $487.50 |
| 329. | Li, Bruce Nai Hung v. FCA | 12/13/2017 | Deepak Devabose | Draft RFAs to Deft | 0.80 | $275.00 | $220.00 |
| 330. | Ligon, Ronald v. FCA | 7/6/2017 | Kristina Stephenson-Cheang | Draft RFAs and Declaration to FCA | 1.30 | $375.00 | $487.50 |
| 331. | Lloyd, Darren v. FCA | 2/16/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.30 | $350.00 | $455.00 |
| 332. | Lloyd, Drishan v. FCA | 7/28/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 333. | Long, Tammy v. FMC | 6/22/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and Declaration | 0.80 | $375.00 | $300.00 |
| 334. | Lopez, Jose v. FMC | 6/22/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and Declaration | 0.60 | $350.00 | $210.00 |
| 335. | Lopez, Maria and Jose v. FMC | 10/24/2016 | Amy Morse | Draft RFAs to Deft and declaration | 0.90 | $350.00 | $315.00 |
| 336. | Lopez, William Ceron and Guadalupe v. FMC | 6/12/2018 | Kristina Stephenson-Cheang | Draft RFAs to FMC and Declaration | 1.00 | $375.00 | $375.00 |
| 337. | Lovato, Robert J. and Lovato, Rose v. FMC | 11/26/2016 | Amy Morse | Draft RFAs to Deft and declaration | 0.80 | $350.00 | $280.00 |
| 338. | Luevanos, Katherine v. FCA | 3/17/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.40 | $350.00 | $490.00 |
| 339. | LUTZ V.FMC | 1/23/2017 | Amy Morse | Draft RFA to Deft | 0.60 | $350.00 | $210.00 |
| 340. | Madariaga, Anthony v. FCA | 1/28/2017 | Amy Morse | Draft RFAs to FCA and declaration | 1.30 | $350.00 | $455.00 |
| 341. | Madrigal, Oscar v. Hyundai | 11/13/2016 | Amy Morse | Draft Ptfs' RFAs to Deft | 0.60 | $350.00 | $210.00 |
| 342. | Madriz, Juan v. BMW | 12/21/2016 | Amy Morse | Draft RFAs to BMW | 0.50 | $350.00 | $175.00 |
| 343. | Madsen, Benny v. FCA | 3/6/2014 | Daisy Ortiz | Draft RFA to Defendant | 0.50 | $225.00 | $112.50 |
| 344. | Marcel-Mariano, Joel v. FCA | 3/20/2017 | Amy Morse | Draft RFAs to Defendant and Declaration | 1.20 | $350.00 | $420.00 |
| 345. | MARIN v. FMC | 6/6/2016 | Russell Higgins | Draft RFAs to Deft and declaration | 0.90 | $400.00 | $360.00 |

Drafting RFAs

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 346. | Marin, Rene v. FCA | 4/25/2017 | Kristina Stephenson-Cheang | Draft RFAs to FCA | 0.50 | $375.00 | $187.50 |
| 347. | Markovich, Angeles Sea Rosaschi v. Hyundai | 3/23/2016 | Russell Higgins | Draft Plaintiffs' RFA to Deft | 0.50 | $400.00 | $200.00 |
| 348. | Marquez, Salvador v. FCA | 2/22/2017 | Amy Morse | Draft Plfs' RFA to FCA | 0.50 | $350.00 | $175.00 |
| 349. | MARROQUIN V.FMC | 10/15/2016 | Amy Morse | Draft RFA to Deft | 1.00 | $350.00 | $350.00 |
| 350. | Martin, Wesley v. FMC | 12/8/2015 | Russell Higgins | Draft RFA to Defendant | 0.40 | $400.00 | $160.00 |
| 351. | Martinez, Antonio v. FCA | 10/10/2016 | Michelle Lumasag | Draft RFAs to FCA and Declaration | 1.20 | $200.00 | $240.00 |
| 352. | MARTINEZ, JOSE V.FMC | 11/23/2016 | Amy Morse | Draft RFA to Deft and declaration | 1.00 | $350.00 | $350.00 |
| 353. | Martinez, Maribel v. FCA | 3/20/2018 | Kristina Stephenson-Cheang | Draft RFA to FCA and Declaration | 0.70 | $375.00 | $262.50 |
| 354. | Martinez, Maribel v. FCA | 5/17/2019 | Amy Morse | Draft RFA to FCA and Declaration, Set Two | 1.30 | $350.00 | $455.00 |
| 355. | Martinez, Paul and Estella v. FMC | 3/4/2019 | Mitchell Rosensweig | Draft RFA to Deft | 0.80 | $325.00 | $260.00 |
| 356. | Martinez, Stephanie v. FCA | 6/7/2016 | Russell Higgins | Draft RFA to Deft | 0.50 | $400.00 | $200.00 |
| 357. | Martinez, Steven v. FCA | 5/15/2017 | Kristina Stephenson-Cheang | Draft RFAs to FCA | 0.50 | $375.00 | $187.50 |
| 358. | MARTINEZ, TOMMY V.FMC | 6/28/2017 | Kristina Stephenson-Cheang | Draft RFAs to FMC and declaration | 2.10 | $375.00 | $787.50 |
| 359. | Martinez-Leycam, Belia v. FMC | 9/2/2016 | Amy Morse | Draft RFAs to Deft and declaration | 0.90 | $350.00 | $315.00 |
| 360. | Masingale, Richard v. FCA | 3/22/2017 | Amy Morse | Draft RFAs to Deft and Declaration | 1.40 | $350.00 | $490.00 |
| 361. | Matini, Carolyn v. General Motors | 11/28/2016 | Amy Morse | Draft RFAs to Deft | 0.60 | $350.00 | $210.00 |
| 362. | Matthews, Ronald v. FCA | 3/21/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.30 | $350.00 | $455.00 |
| 363. | Mayorga, Amparao v. BMW | 1/5/2016 | Russell Higgins | Draft Plf's RFA and Declaration | 0.90 | $400.00 | $360.00 |
| 364. | McCarthy, Jordan v. FCA | 1/23/2017 | Amy Morse | Draft RFAs to FCA | 0.40 | $250.00 | $100.00 |
| 365. | McCarthy, Jordan v. FCA | 2/14/2017 | Amy Morse | Draft RFAs to FCA and Declaration, Set Two | 0.70 | $250.00 | $175.00 |
| 366. | McCullough, William v. FCA | 7/16/2015 | Daisy Ortiz | Draft RFA to Deft | 0.40 | $225.00 | $90.00 |
| 367. | McFalls, Linda v. Kis | 6/8/2015 | Daisy Ortiz | Draft Plaintiff's First Set of RFA | 0.40 | $225.00 | $90.00 |
| 368. | McKinnon, Corey v. FMC | 4/3/2014 | Daisy Ortiz | Draft RFA to Deft and Declaration | 1.30 | $225.00 | $292.50 |
| 369. | McKinnon, Corey v. FMC | 11/10/2015 | Lauren Ungs | Draft RFA to Deft and Declaration, Set Two; prepare exhibits | 2.10 | $425.00 | $892.50 |
| 370. | McKinnon, Corey v. FMC | 6/14/2016 | Lauren Ungs | Draft RFA to Defendant, Set Three | 0.40 | $425.00 | $170.00 |
| 371. | Mclaughlin, Jeffrey Russell & Carina Ann-Sofie v. General Motors | 11/12/2019 | Amy Morse | Draft RFA to GM and Declaration | 1.10 | $350.00 | $385.00 |
| 372. | McNaughton, Lauren v. FCA | 4/16/2014 | Daisy Ortiz | Draft Plaintiff's First Set of RFA | 0.40 | $225.00 | $90.00 |
| 373. | Medina, Cecilia v. FCA | 2/22/2017 | Amy Morse | Draft RFAs to Deft and Declaration | 1.10 | $350.00 | $385.00 |
| 374. | Medina, Cecilia v. FMC | 10/15/2016 | Amy Morse | Draft RFAs to Deft and declaration | 0.60 | $350.00 | $210.00 |
| 375. | Mejia, Jaime v. FCA | 3/22/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.20 | $350.00 | $420.00 |
| 376. | Melton, Richard v. FMC | 7/6/2017 | Kristina Stephenson-Cheang | Draft RFA to Deft and Declaration | 1.10 | $375.00 | $412.50 |
| 377. | Mena, George v. FMC | 9/16/2013 | Daisy Ortiz | Draft RFAs to FMC and Declaration | 2.00 | $225.00 | $450.00 |
| 378. | Mercado, Jaime v. FCA | 7/28/2016 | Amy Morse | Draft RFA to Defendant and declaration | 1.00 | $350.00 | $350.00 |
| 379. | Metzger, Duane v. FCA | 1/28/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 380. | Meuse, Brian v. FCA | 11/26/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.30 | $350.00 | $455.00 |
| 381. | Mikhael, Josephine v. FCA | 1/11/2017 | Amy Morse | Draft RFAs to Deft and Declaration | 1.00 | $350.00 | $350.00 |
| 382. | Mills, Dudley B., and Mills, Janette E. | 7/13/2017 | Kristina Stephenson-Cheang | Draft RFA to Deft and Declaration | 0.90 | $375.00 | $337.50 |
| 383. | Mills, Dudley B., and Mills, Janette E. | 7/20/2017 | Kristina Stephenson-Cheang | Draft RFA to Deft and Declaration | 0.90 | $375.00 | $337.50 |
| 384. | Milosevich, Dan for Loda Inc. v. FMC | 2/21/2019 | Mitchell Rosensweig | Draft RFA to FMC | 1.10 | $325.00 | $357.50 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 385. | Misner, Gregory Scott Julie v. FMC | 11/27/2013 | Daisy Ortiz | Draft RFA to Def and Declaration | 1.90 | $225.00 | $427.50 |
| 386. | Modler, Walter v. FCA | 1/29/2017 | Amy Morse | Draft RFA to Deft and Declaration | 1.00 | $350.00 | $350.00 |
| 387. | Mondragon, Noel v. FCA | 2/22/2017 | Amy Morse | Draft RFAs to Deft and Declaration | 0.60 | $350.00 | $210.00 |
| 388. | Monroe, Lisa v. FCA | 10/27/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.30 | $350.00 | $455.00 |
| 389. | Montano Carranza, Gabriela v. FCA | 3/25/2019 | Amy Morse | Draft Ptf's RFA to FCA | 0.60 | $350.00 | $210.00 |
| 390. | Montero, Martha v. Kia | 6/24/2016 | Russell Higgins | Draft RFA to Deft and Declaration | 0.90 | $400.00 | $360.00 |
| 391. | Montes, Alica and Padilla, Jesse v. FMC | 12/28/2016 | Amy Morse | Draft Form ROGs to Deft, Draft Special ROGs to Deft and declaration, Draft RFAs, Draft RFPs | 2.80 | $350.00 | $980.00 |
| 392. | Moore, Allen v. FCA | 11/11/2016 | Amy Morse | Draft RFAs to FCA and declaration | 1.00 | $350.00 | $350.00 |
| 393. | Mora, Robert v. FCA | 3/19/2017 | Amy Morse | Draft RFA to FCA and Declaration | 1.30 | $350.00 | $455.00 |
| 394. | Morales, Carlos v. FCA | 1/18/2017 | Amy Morse | Draft RFAs to Deft | 0.40 | $350.00 | $140.00 |
| 395. | Morales, Daniel Mario v. FMC | 9/2/2016 | Amy Morse | Draft RFA to Deft and Declaration | 0.80 | $350.00 | $280.00 |
| 396. | Moreno, Adam v. FCA | 9/29/2016 | Amy Morse | Draft RFA to FCA | 1.30 | $350.00 | $455.00 |
| 397. | Moreno, Jesus v. FCA | 2/23/2017 | Amy Morse | Draft RFA to Deft and Declaration | 1.10 | $350.00 | $385.00 |
| 398. | Moreno, Martin and Ruby v. FMC | 10/18/2016 | Kristina Stephenson-Cheang | Draft RFA to Deft and Declaration | 0.60 | $350.00 | $210.00 |
| 399. | Morgan, Geoffrey v. FCA | 11/30/2016 | Amy Morse | Draft RFA to FCA and Declaration | 1.40 | $350.00 | $490.00 |
| 400. | Morino, Michelle v.FCA | 2/5/2017 | Amy Morse | Draft RFA to Deft and Declaration | 0.70 | $350.00 | $245.00 |
| 401. | Morris, Mary v. Hyundai | 5/19/2016 | Russell Higgins | Draft RFA and Declaration to Deft | 0.80 | $400.00 | $320.00 |
| 402. | Morvarid, Roxana v. FCA | 2/19/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 403. | Mosburg, Tiffany v. FCA | 2/8/2017 | Amy Morse | Draft RFA to Deft and Declaration | 1.10 | $350.00 | $385.00 |
| 404. | Mota, Victor and Carlos v. Hyundai | 6/3/2016 | Russell Higgins | Draft RFA to Defendant and Declaration | 0.70 | $450.00 | $315.00 |
| 405. | Munguia, Maria and Edgar Morales v. FMC | 10/16/2018 | Kristina Stephenson-Cheang | Draft RFA to Ford | 0.80 | $375.00 | $300.00 |
| 406. | Munguia, Maria and Edgar Morales v. FMC | 3/4/2019 | Mitchell Rosensweig | Draft RFA to FMC | 0.40 | $325.00 | $130.00 |
| 407. | Munoz, Cruz v. General Motors | 5/12/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and Declaration | 1.00 | $375.00 | $375.00 |
| 408. | Munoz, Efrain v. FCA | 2/24/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 409. | Munoz, Jose v. FCA | 9/14/2015 | Russell Higgins | Draft RFAs to FCA | 0.40 | $400.00 | $160.00 |
| 410. | Munoz, Martin v. FMC | 4/26/2017 | Amy Morse | Draft RFA to Deft and Declaration | 0.60 | $350.00 | $210.00 |
| 411. | Murphy, Timothy D. v. FMC | 8/31/2016 | Amy Morse | Draft RFAs to Deft and declaration | 0.70 | $350.00 | $245.00 |
| 412. | Najera, Mary Beth v. Hyundai Motor America | 12/11/2015 | Russell Higgins | Draft Pt.'s RFAs to Deft | 0.50 | $450.00 | $225.00 |
| 413. | Najera, Mary Beth v. Hyundai Motor America | 7/13/2018 | Kristina Stephenson-Cheang | Draft Pt.'s RFAs to Deft | 0.60 | $375.00 | $225.00 |
| 414. | Nance, Joshua D. & Trisha N. v. KIA | 6/23/2016 | Amy Morse | Draft RFA to Defendant and declaration | 0.90 | $350.00 | $315.00 |
| 415. | Nance, Joshua D. & Trisha N. v. KIA | 9/12/2018 | Amy Morse | Draft Ptfs' RFA to KIA, Set Two | 0.10 | $350.00 | $35.00 |
| 416. | Navarro, Demetria J. Flores v. Ford Motors Co | 9/17/2016 | Amy Morse | Draft RFA to Deft | 0.50 | $350.00 | $175.00 |
| 417. | Navarro, Demetria J. Flores v. Ford Motors Co | 2/23/2017 | Amy Morse | Draft RFA to Deft and Declaration, Set Two | 0.30 | $350.00 | $105.00 |
| 418. | Navarro, Roxanna v. FCA | 1/31/2017 | Amy Morse | Draft RFAs to FCA and declaration | 1.30 | $350.00 | $455.00 |

Drafting RFAs

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 419. | Negrete, Mauricio v. FCA | 2/8/2017 | Amy Morse | Draft RFA to FCA and Declaration | 1.20 | $350.00 | $420.00 |
| 420. | Negrete, Mauricio v. FCA | 2/8/2017 | Amy Morse | Draft RFA to FCA and Declaration | 1.20 | $350.00 | $420.00 |
| 421. | Neumann, Robin v. FCA | 11/28/2016 | Amy Morse | Draft RFAs to Deft and Declaration | 1.00 | $350.00 | $350.00 |
| 422. | Nguyen, Nelson v. Hyundai | 4/24/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft | 0.60 | $375.00 | $225.00 |
| 423. | Nickerson, Jo Ann v. FCA | 7/10/2015 | Daisy Ortiz | Draft First Set of RFA | 0.50 | $225.00 | $112.50 |
| 424. | Niedermeier, Lisa v. FCA | 2/10/2017 | Amy Morse | Draft RFA to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 425. | Nieuwenhuis, Antonius A. v. FMC | 9/5/2017 | Kristina Stephenson-Cheang | Draft RFGs and RFAs to Deft and Declaration | 1.40 | $375.00 | $525.00 |
| 426. | Nolan, Shawn v. FMC | 11/26/2013 | Daisy Ortiz | Draft RFAs to FMC and Declaration | 1.50 | $225.00 | $337.50 |
| 427. | Oakley, Melinda Kate v. FMC | 10/10/2018 | Deepak Devabose | Draft RFA to Deft | 1.20 | $275.00 | $330.00 |
| 428. | O'Brien, Kristi v. FCA | 11/10/2016 | Amy Morse | Draft RFAs to Deft and Declaration | 1.20 | $350.00 | $420.00 |
| 429. | O'Brien, Kristi v. FCA | 12/13/2017 | Deepak Devabose | Draft RFAs to Deft | 0.90 | $275.00 | $247.50 |
| 430. | Ocana, Steve v. FCA | 8/24/2016 | Amy Morse | Draft Ptfs RFAs and Declaration | 1.10 | $350.00 | $385.00 |
| 431. | Ochoa, Carlos v. FMC | 6/12/2014 | Daisy Ortiz | Draft RFA to Deft and Declaration | 1.70 | $225.00 | $382.50 |
| 432. | Oday, Kevin v. FCA | 2/19/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.30 | $350.00 | $455.00 |
| 433. | O'Green, Danielle v. Kia | 12/18/2014 | Daisy Ortiz | Draft Plaintiff's First Set of RFA and Declaration | 0.80 | $225.00 | $180.00 |
| 434. | Orosco, Jose v. FMC | 2/3/2017 | Amy Morse | Draft RFA to Deft and Declaration | 1.40 | $350.00 | $490.00 |
| 435. | Orozco, Israel v. FCA | 5/31/2017 | Kristina Stephenson-Cheang | Draft RFAs to FCA and declaration | 1.20 | $375.00 | $450.00 |
| 436. | Ortega Morales, Anel v. FMC | 3/2/2017 | Amy Morse | Draft RFA to Deft and Declaration | 1.00 | $350.00 | $350.00 |
| 437. | Ortiz, Anthony v. FMC | 10/16/2016 | Amy Morse | Draft RFAs to Deft and declaration | 0.80 | $350.00 | $280.00 |
| 438. | Ossenfort, Victoria v. Kia | 4/20/2018 | Kristina Stephenson-Cheang | Draft RFA to KMA and Declaration | 0.80 | $375.00 | $300.00 |
| 439. | Ossenfort, Victoria v. Kia | 11/27/2018 | Amy Morse | Draft RFA to KMA, Set Two | 0.10 | $350.00 | $35.00 |
| 440. | Osuna, Patrick v. FCA | 11/10/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.00 | $350.00 | $350.00 |
| 441. | Palombi, Tiffany v. FCA | 6/3/2014 | Daisy Ortiz | Draft RFAs to Deft | 0.50 | $225.00 | $112.50 |
| 442. | Patel, Nilay v. Mercedes-Benz | 7/1/2015 | Daisy Ortiz | Draft RFA to Deft | 0.50 | $225.00 | $112.50 |
| 443. | Patricio, Adriana v. FCA | 5/3/2018 | Kristina Stephenson-Cheang | Draft RFA to Deft and Declaration | 1.20 | $375.00 | $450.00 |
| 444. | Patricio, Adriana v. FCA | 3/12/2019 | Amy Morse | Draft RFAs to Deft, Set Two | 1.60 | $350.00 | $560.00 |
| 445. | Paul, Aaron | 7/20/2016 | Amy Morse | Draft RFA to FCA and Declaration | 1.20 | $350.00 | $420.00 |
| 446. | Pedante, Mark v. FMC | 12/28/2018 | Kristina Stephenson-Cheang | Draft Ptf's RFA to Ford | 1.50 | $375.00 | $562.50 |
| 447. | Pelaez, Esmeralda & Laura v. FMC | 12/27/2016 | Amy Morse | Draft RFA to Deft and Declaration | 0.40 | $350.00 | $140.00 |
| 448. | Pellagrini, Michael Edward v. FMC | 3/13/2017 | Amy Morse | Draft RFAs to Deft and declaration | 1.60 | $350.00 | $560.00 |
| 449. | Pena, Elva | 10/14/2016 | Amy Morse | Draft RFA to FCA and Declaration | 1.20 | $350.00 | $420.00 |
| 450. | Perez, Angelita | 1/31/2017 | Christopher Swanson | Draft RFAs to Deft and declaration | 1.00 | $350.00 | $350.00 |
| 451. | Perez, Florentino | 11/29/2016 | Amy Morse | Draft RFAs and Declaration to Deft | 1.20 | $350.00 | $420.00 |
| 452. | Perez, Jovita | 6/14/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and declaration | 1.40 | $375.00 | $525.00 |
| 453. | Perez, Jovita | 12/7/2017 | Deepak Devabose | Draft RFAs to Deft | 0.80 | $275.00 | $220.00 |
| 454. | Perry, Eva v. FCA | 2/7/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.30 | $350.00 | $455.00 |
| 455. | Perry, Steve v. Hyundai | 6/18/2015 | Daisy Ortiz | Draft Plaintiffs' First Set of RFA | 0.50 | $225.00 | $112.50 |
| 456. | Peters, Richard Michael v. FMC | 10/6/2016 | Amy Morse | Draft RFAs to Deft and declaration | 0.90 | $350.00 | $315.00 |
| 457. | Petropoulos, Peter v. FCA | 7/18/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.40 | $350.00 | $490.00 |
| 458. | Petropoulos, Peter v. FCA | 12/7/2017 | Deepak Devabose | Draft RFAs to Deft (Federal) | 0.80 | $275.00 | $220.00 |
| 459. | Pignataro, Kathleen M. v. FCA | 12/12/2018 | Kristina Stephenson-Cheang | Draft RFA to Deft and Declaration | 1.70 | $375.00 | $637.50 |
| 460. | Pignataro, Kathleen M. v. FCA | 5/8/2019 | Amy Morse | Draft RFA to Deft and Declaration, set two | 0.50 | $350.00 | $175.00 |
| 461. | Pineda, Yazman | 10/30/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.20 | $350.00 | $420.00 |
| 462. | Pitts, Tanisha v. FCA | 3/20/2018 | Kristina Stephenson-Cheang | Draft RFAs to FCA and Declaration | 1.00 | $375.00 | $375.00 |
| 463. | Plascencia, Jose | 2/24/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.00 | $350.00 | $350.00 |

Drafting RFAs

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 464. | Pollard, Derric | 7/16/2016 | Amy Morse | Draft RFA to FCA and Declaration | 1.00 | $350.00 | $350.00 |
| 465. | Pollard, Derric | 12/7/2017 | Deepak Devabose | Draft Plaintiffs' RFA to FCA | 0.70 | $275.00 | $192.50 |
| 466. | Potter, William v. FCA | 9/21/2016 | Amy Morse | Draft RFA to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 467. | Powell, Desmond v. FCA | 11/30/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 468. | Purifoy, Luria v. FMC | 3/8/2017 | Amy Morse | Draft Plf's RFA | 0.50 | $250.00 | $125.00 |
| 469. | Purkiss, James M. & Penelope R. v. General Motors | 2/27/2019 | Amy Morse | Draft RFA to GM and Declaration | 0.60 | $350.00 | $210.00 |
| 470. | Quintana, Roy | 2/6/2017 | Amy Morse | Draft Ptf's RFAs to FCA and Declaration | 1.00 | $350.00 | $350.00 |
| 471. | Rahmani, Mahyar v. FMC | 11/7/2014 | Amy Morse | Draft RFA to Deft and Declaration | 1.20 | $350.00 | $420.00 |
| 472. | Ramirez, Gustavo v. FMC | 10/26/2016 | Kristina Stephenson-Cheang | Draft RFAs to Deft and declaration | 0.70 | $375.00 | $262.50 |
| 473. | Ramsey, Lance v. FCA | 7/18/2016 | Amy Morse | Draft RFA to Deft and Declaration | 1.20 | $350.00 | $420.00 |
| 474. | Randall, Shane | 7/23/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.00 | $350.00 | $350.00 |
| 475. | Ratajesak, Matthew | 11/30/2016 | Amy Morse | Draft RFAs to Deft and Declaration | 1.00 | $350.00 | $350.00 |
| 476. | Ray, Christian v. FMC | 11/21/2016 | Amy Morse | Draft RFAs to Deft and Declaration | 0.70 | $350.00 | $245.00 |
| 477. | Reck, Kathy | 2/16/2017 | Amy Morse | Draft Ptf's RFAs to FCA | 0.50 | $350.00 | $175.00 |
| 478. | Redman, Glen v. FMC | 10/1/2016 | Amy Morse | Draft RFA to Deft and Declaration | 1.10 | $350.00 | $385.00 |
| 479. | Reed, Andrew v. FCA | 2/15/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 480. | Reed, Thomas | 11/20/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.00 | $350.00 | $350.00 |
| 481. | Regina, Sonia v. FMC | 6/5/2017 | Kristina Stephenson-Cheang | Draft RFA to Defendant and Declaration | 0.80 | $375.00 | $300.00 |
| 482. | Regueiro, Francisco | 9/26/2016 | Amy Morse | Draft RFAs to Deft | 1.20 | $350.00 | $420.00 |
| 483. | Rendon v. FMC | 9/11/2016 | Amy Morse | Draft RFAs to Deft and Declaration | 0.80 | $350.00 | $280.00 |
| 484. | Reyes, Hugoino v. General Motors | 6/30/2018 | Kristina Stephenson-Cheang | Draft RFA to GM | 0.40 | $375.00 | $150.00 |
| 485. | Reyes, Margarita | 7/28/2016 | Amy Morse | Draft Plf's RFA and Declaration | 1.00 | $350.00 | $350.00 |
| 486. | Reynolds, Peter v. FMC | 6/23/2014 | Daisy Ortiz | Draft RFAs to Defendant and Declaration | 0.90 | $225.00 | $202.50 |
| 487. | Richardson, Leann | 11/6/2016 | Amy Morse | Draft RFAs to Deft and Declaration | 1.20 | $350.00 | $420.00 |
| 488. | Rico, Veronica v. Hyundai | 6/22/2015 | Daisy Ortiz | Draft RFAs to HMA | 0.50 | $225.00 | $112.50 |
| 489. | Rinsch, Dan v. FCA | 7/27/2018 | Kristina Stephenson-Cheang | Draft RFA to Deft and Declaration | 0.40 | $375.00 | $150.00 |
| 490. | Rivas, Antonio v. FMC | 7/21/2017 | Kristina Stephenson-Cheang | Draft RFAs To Deft And Declaration | 0.80 | $350.00 | $280.00 |
| 491. | Rivas, Claudia and Espinoza, Giovanni Rodrigu | 7/21/2017 | Kristina Stephenson-Cheang | Draft RFA to Deft and Declaration | 0.80 | $350.00 | $280.00 |
| 492. | Rivera, Jorge v. FCA | 12/23/2016 | Amy Morse | Draft RFAs to FCA | 0.40 | $350.00 | $140.00 |
| 493. | Robinette, Brian (for Sierra Conservation Project) v. FMC | 6/1/2016 | Russell Higgins | Draft RFA to Defendant and declaration | 1.10 | $400.00 | $440.00 |
| 494. | Robles, Juan | 3/12/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.00 | $350.00 | $350.00 |
| 495. | Robles, Juan | 5/14/2018 | Michael Rosenstein | Drafted staff to run a Carfax on the Subject Vehicle; reviewed the same | 0.10 | $550.00 | $55.00 |
| 496. | Rocha, Michael | 5/2/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and Declaration | 1.20 | $375.00 | $450.00 |
| 497. | Rodriguez , Rosa + Gonzalez, Emiliano v. FCA | 6/23/2016 | Russell Higgins | Draft RFAs to Deft and declaration | 0.90 | $450.00 | $405.00 |
| 498. | Rodriguez, Angel | 9/26/2016 | Amy Morse | Draft RFA to Deft and Declaration | 1.10 | $250.00 | $275.00 |
| 499. | Rodriguez, Antonio | 2/14/2017 | Amy Morse | Draft RFAs to Deft and Declaration | 1.00 | $250.00 | $250.00 |
| 500. | Rodriguez, Jose v. General Motors | 11/2/2018 | Kristina Stephenson-Cheang | Draft RFA to Defendant and Declaration | 0.80 | $375.00 | $300.00 |
| 501. | Romero, Marcos v. FCA | 8/29/2017 | Kristina Stephenson-Cheang | Draft RFAs and to FCA and Declaration | 1.40 | $375.00 | $525.00 |
| 502. | Ronquillo, Faye v. FCA | 2/2/2017 | Amy Morse | Draft RFAs to FCA and declaration | 1.30 | $350.00 | $455.00 |
| 503. | Rosales, Ivan and Rodolfo v. FMC | 6/6/2016 | Russell Higgins | Draft RFAs to Deft | 0.40 | $400.00 | $160.00 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 504. | Roscoe, Eric | 6/12/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and Declaration | 1.30 | $375.00 | $487.50 |
| 505. | Rowland, Dave and Phyllis v. FMC | 12/28/2016 | Amy Morse | Draft RFAs to Deft and declaration | 0.90 | $350.00 | $315.00 |
| 506. | Rubish, Edward Phillip v. FMC | 10/26/2016 | Amy Morse | Draft RFA to Deft and Declaration | 0.90 | $250.00 | $225.00 |
| 507. | Rueda, Maria | 4/21/2017 | Kristina Stephenson-Cheang | Draft Ptf's RFAs to Deft and Declaration | 1.00 | $375.00 | $375.00 |
| 508. | Rueda, Maria | 12/13/2017 | Deepak Devabose | Draft RFAs to FCA | 0.50 | $275.00 | $137.50 |
| 509. | Ruiz, Joe v. BMW | 1/3/2017 | Alastair Hamblin | Draft RFAs to Deft | 0.30 | $325.00 | $97.50 |
| 510. | Ruiz, Sylvia G. v. General Motors | 6/29/2018 | Kristina Stephenson-Cheang | Draft RFA to GM and Declaration | 0.50 | $375.00 | $187.50 |
| 511. | Ruiz, Yanira v. FCA | 2/28/2017 | Amy Morse | Draft RFA to Deft and Declaration | 0.80 | $350.00 | $280.00 |
| 512. | Rus, Robert Mark v. FCA | 5/24/2018 | Kristina Stephenson-Cheang | Draft RFA to FCA and Declaration | 1.30 | $375.00 | $487.50 |
| 513. | Rus, Robert Mark v. FCA | 5/1/2019 | Amy Morse | Draft RFA to FCA and Declaration, Set Two | 1.00 | $350.00 | $350.00 |
| 514. | Ruvalcaba, Raul v. FMC | 10/24/2016 | Amy Morse | Draft RFAs to Deft and Declaration | 0.60 | $350.00 | $210.00 |
| 515. | Sakkis, Emmanuel | 11/30/2016 | Amy Morse | Draft RFAs to Deft and declaration | 1.20 | $350.00 | $420.00 |
| 516. | Salas, Maria v. Hyundai | 4/21/2016 | Russell Higgins | Draft RFAs to Deft and Declaration | 0.70 | $400.00 | $280.00 |
| 517. | Salazar, Virgina v. FCA | 3/16/2017 | Amy Morse | Draft Ptf's RFAs and Declaration | 1.00 | $350.00 | $350.00 |
| 518. | Salmeron, Alejandro Omeany v. FMC | 11/15/2018 | Deepak Devabose | Draft Ptf's RFAs to FMC | 1.10 | $275.00 | $302.50 |
| 519. | San Nicolas, Betty | 2/14/2017 | Amy Morse | Draft RFAs to Defts and declaration | 1.00 | $350.00 | $350.00 |
| 520. | Sanchez, Antonio v. Hyundai | 6/6/2016 | Russell Higgins | Draft RFA to Deft | 0.50 | $450.00 | $225.00 |
| 521. | Sanchez, Maria | 11/30/2016 | Amy Morse | Draft RFA to Defendant and Declaration | 1.00 | $250.00 | $250.00 |
| 522. | Sandoval, Cinthya and Mercedes v. FMC | 11/21/2016 | Amy Morse | Draft RFA to Deft and Declaration | 0.90 | $350.00 | $315.00 |
| 523. | Sandoval, Noe | 5/14/2017 | Kristina Stephenson-Cheang | Draft RFAs to FCA | 0.40 | $375.00 | $150.00 |
| 524. | Sands, Sean v. FMC | 4/26/2017 | Kristina Stephenson-Cheang | Draft RFA to Deft and Declaration | 0.90 | $350.00 | $315.00 |
| 525. | Santiago-Lopez, Fernando v. General Motors | 4/13/2018 | Kristina Stephenson-Cheang | Draft Ptf's RFA to GM | 0.50 | $375.00 | $187.50 |
| 526. | Schene, Donald and Sheri v. FMC | 11/17/2016 | Amy Morse | Draft RFAs to Deft | 0.50 | $350.00 | $175.00 |
| 527. | Scott, Paul | 9/26/2016 | Amy Morse | Draft RFA and Declaration to FCA | 1.10 | $350.00 | $385.00 |
| 528. | Scott, Sharon Jean v. FMC | 3/4/2019 | Mitchell Rosensweig | Draft Ptf's RFA to FMC | 1.20 | $325.00 | $390.00 |
| 529. | Segrest, Misty Lynn and Segrest, Victor Willi | 7/6/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and Declaration | 0.70 | $350.00 | $245.00 |
| 530. | Sekula, Carla | 10/30/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 531. | Sekula, Carla | 11/29/2017 | Deepak Devabose | Draft RFA to FCA | 0.80 | $275.00 | $220.00 |
| 532. | Self, Sandy v. FCA | 11/9/2017 | Deepak Devabose | Draft RFAs to FCA | 0.80 | $275.00 | $220.00 |
| 533. | Serrano Medina, Oscar v. FMC | 4/4/2019 | Mitchell Rosensweig | Draft RFA to Deft | 1.50 | $325.00 | $487.50 |
| 534. | Serrato, Elizabeth | 9/17/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.30 | $350.00 | $455.00 |
| 535. | Shavies, Leonard | 2/12/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.00 | $350.00 | $350.00 |
| 536. | Siciliano, Avilio v. Kia | 6/24/2016 | Russell Higgins | Draft RFAs to Deft and declaration | 0.60 | $400.00 | $240.00 |
| 537. | Siegel, M. v. FMC | 11/25/2013 | Daisy Ortiz | Draft RFA to Def and Declaration | 1.70 | $225.00 | $382.50 |
| 538. | Sierra, Victor | 1/28/2017 | Amy Morse | Draft Ptf's RFAs to Deft and Declaration | 1.00 | $350.00 | $350.00 |
| 539. | Silin, Brian v. FMC | 10/18/2016 | Amy Morse | Draft RFAs to Deft and Declaration | 0.80 | $350.00 | $280.00 |
| 540. | Simmons, Stephanie v. FMC | 10/22/2016 | Amy Morse | Draft RFA to Deft and Declaration | 0.90 | $350.00 | $315.00 |
| 541. | Skillman, Gary v. FMC | 12/2/2013 | Daisy Ortiz | Draft RFA to Defendant and Declaration | 1.70 | $225.00 | $382.50 |
| 542. | Smith, Nathan v. FCA | 7/28/2016 | Amy Morse | Draft RFA to Deft and Declaration | 0.90 | $350.00 | $315.00 |
| 543. | Sommer, Vladimir v. FCA | 2/28/2017 | Amy Morse | Draft RFA to FCA and Declaration | 1.40 | $350.00 | $490.00 |
| 544. | Son, Richard v. BMW | 9/30/2016 | Amy Morse | Draft RFAs to Deft and declaration | 1.20 | $350.00 | $420.00 |

Drafting RFAs

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 545. | Soria, Steve | 7/20/2016 | Amy Morse | Draft RFAs to Deft and Declaration | 1.00 | $350.00 | $350.00 |
| 546. | Soto, Ana Bertha v. FMC | 1/26/2017 | Amy Morse | Draft RFAs to Deft and declaration | 0.90 | $350.00 | $315.00 |
| 547. | Spelts, Douglas | 10/12/2015 | Russell Higgins | Draft RFAs to Deft | 0.50 | $400.00 | $200.00 |
| 548. | Starace, Martin v. FCA | 11/9/2016 | Amy Morse | Draft RFAs to FCA | 1.00 | $350.00 | $350.00 |
| 549. | Strandberg, Richard and Helen v. FMC | 6/25/2014 | Daisy Ortiz | Draft RFA to FMC and Declaration | 2.10 | $225.00 | $472.50 |
| 550. | Straub, David v. Hyundai | 5/19/2016 | Russell Higgins | Draft Plaintiffs' First Set of RFAs | 0.50 | $400.00 | $200.00 |
| 551. | Strutt, Mollee Marie v,. FCA | 2/16/2017 | Amy Morse | Draft RFA to Deft and Declaration | 1.30 | $350.00 | $455.00 |
| 552. | Suarez, Leovigildo v. FMC | 3/8/2017 | Amy Morse | Draft RFAs to Deft and Declaration | 0.60 | $350.00 | $210.00 |
| 553. | Suazo, Claurdina | 10/28/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.30 | $350.00 | $455.00 |
| 554. | Sutton, Jeffrey v. HMA | 5/1/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft | 0.50 | $375.00 | $187.50 |
| 555. | Talamante, Jacinto v. Kia | 6/22/2016 | Russell Higgins | Draft RFAs to Deft | 0.60 | $450.00 | $270.00 |
| 556. | Talavera, Erika v. FCA | 7/10/2017 | Kristina Stephenson-Cheang | Draft RFA to FCA and Declaration | 1.10 | $375.00 | $412.50 |
| 557. | Tanner, John v. FMC | 10/16/2013 | Daisy Ortiz | Draft RFA's to Deft and Declaration | 1.00 | $225.00 | $225.00 |
| 558. | Tanner, John v. FMC | 11/2/2015 | Lauren Ungs | Draft RFA to Defense and Declaration, Set two | 0.50 | $425.00 | $212.50 |
| 559. | Tanner, John v. FMC | 6/14/2016 | Lauren Ungs | Draft Plaintiffs Third Set of RFAs to Deft | 0.60 | $425.00 | $255.00 |
| 560. | Tapia, Christine v. Hyundai | 6/22/2015 | Daisy Ortiz | Draft Plaintiffs' First Set of RFA | 0.40 | $225.00 | $90.00 |
| 561. | Tasch, George v. FMC | 5/30/2018 | Deepak Devabose | Draft Ptf's RFAs to Plaintiff | 0.80 | $275.00 | $220.00 |
| 562. | Tasch, George v. FMC | 9/13/2018 | Amy Morse | Draft Ptf's RFAs to Plaintiff | 0.50 | $350.00 | $175.00 |
| 563. | Tashner, Joseph | 9/21/2016 | Amy Morse | Draft RFA and Declaration to Deft | 1.10 | $350.00 | $385.00 |
| 564. | Teran, Dominic | 10/31/2016 | Amy Morse | Draft RFAs and declaration | 1.20 | $250.00 | $300.00 |
| 565. | Thomas, Brandon v. General Motors | 11/26/2018 | Kristina Stephenson-Cheang | Draft Ptf's RFA to GM and declaration | 0.90 | $375.00 | $337.50 |
| 566. | Thomas, Faye v. FCA | 4/9/2018 | Kristina Stephenson-Cheang | Draft RFA's to FCA | 0.50 | $375.00 | $187.50 |
| 567. | Thomasian, Sara | 11/30/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.20 | $350.00 | $420.00 |
| 568. | Thompson, James | 4/22/2017 | Kristina Stephenson-Cheang | Draft RFAs to FCA | 0.60 | $375.00 | $225.00 |
| 569. | Tinoco, Xochitl | 7/28/2016 | Kristina Stephenson-Cheang | Draft RFAs to Deft and declaration | 1.10 | $350.00 | $385.00 |
| 570. | Tomas, Francisco v. FCA | 1/13/2017 | Amy Morse | Draft RFA to Deft and declaration | 1.00 | $350.00 | $350.00 |
| 571. | Tomkins, Craig v. FCA | 1/8/2017 | Amy Morse | Draft RFA to FCA and Declaration | 1.30 | $350.00 | $455.00 |
| 572. | Toro, Violeta v. FCA | 11/10/2016 | Amy Morse | Draft RFAs to FCA and declaration | 0.90 | $350.00 | $315.00 |
| 573. | Tovar, David and Rocio v. FCA | 3/28/2018 | Kristina Stephenson-Cheang | Draft RFA to FCA and Declaration | 1.10 | $375.00 | $412.50 |
| 574. | Tripette, Leroy v. Hyundai | 6/7/2016 | Russell Higgins | Draft RFAs to Deft and Declaration | 0.90 | $450.00 | $405.00 |
| 575. | Tripp, Jason | 3/23/2017 | Amy Morse | Draft RFAs to FCA and declaration | 1.40 | $350.00 | $490.00 |
| 576. | Tuazon, Teodora and Joshua v. KMA | 1/31/2018 | Kristina Stephenson-Cheang | Draft Ptfs' RFA to Deft | 0.40 | $375.00 | $150.00 |
| 577. | Tuazon, Teodora and Joshua v. KMA | 11/27/2018 | Amy Morse | Draft Ptfs' RFA to KIA, Set Two | 0.10 | $350.00 | $35.00 |
| 578. | Tuell, Andrew for Tuell Concrete v. FMC | 6/7/2016 | Russell Higgins | Draft RFA and Declaration | 0.90 | $400.00 | $360.00 |
| 579. | Tuey, Valinda | 8/25/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 1.10 | $350.00 | $385.00 |
| 580. | Urbina, Jose P. v. KMA | 5/31/2018 | Kristina Stephenson-Cheang | Draft Ptf's RFA to Defendant | 0.30 | $375.00 | $112.50 |
| 581. | Valencia, Miguel | 10/30/2016 | Amy Morse | Draft RFA to FCA and Declaration | 1.40 | $350.00 | $490.00 |
| 582. | Valenton, Maria v. FCA | 12/26/2016 | Amy Morse | Draft Ptfs' RFA to FCA and declaration | 1.40 | $350.00 | $490.00 |
| 583. | Vanegas, David v. Hyundai | 11/12/2016 | Amy Morse | Draft RFAs to Deft and declaration | 0.70 | $350.00 | $245.00 |
| 584. | Varela, Julian | 10/5/2015 | Russell Higgins | Draft Plaintiff's RFAs | 0.50 | $400.00 | $200.00 |

| | Case Name | Date | Timekeeper | Description | Hours | Rate | Fees |
|---|---|---|---|---|---|---|---|
| 585. | Vargas, Josefa | 7/20/2016 | Amy Morse | Draft RFA to Deft and Declaration | 1.00 | $350.00 | $350.00 |
| 586. | Vasquez, Efrain and Vasquez, Michelle v. FMC | 9/13/2016 | Amy Morse | Draft RFA to Deft and declaration (8 p/ 54 r) | 0.90 | $350.00 | $315.00 |
| 587. | Vasquez, Gabriel v. Hyundai | 6/2/2016 | Russell Higgins | Draft Plaintiff's First Set of RFA | 0.40 | $400.00 | $160.00 |
| 588. | Vasquez, Jesus | 3/19/2017 | Amy Morse | Draft RFA to FCA and Declaration | 1.30 | $350.00 | $455.00 |
| 589. | Vega, Alejandra v. BMW | 11/14/2016 | Amy Morse | Draft RFAs to Deft | 0.50 | $350.00 | $175.00 |
| 590. | Vega, Maria v. FCA | 6/7/2016 | Russell Higgins | Draft Plfs' RFA | 0.50 | $400.00 | $200.00 |
| 591. | Velazquez v. FCA | 9/23/2016 | Amy Morse | Draft RFA to FCA and declaration | 1.00 | $350.00 | $350.00 |
| 592. | Vidal, Beverly v. FMC | 9/2/2016 | Amy Morse | Draft RFA to Defendant and Declaration, Set One | 0.70 | $350.00 | $245.00 |
| 593. | Villalta, Jose & Chacon, Karla v. FCA | 1/24/2019 | Kristina Stephenson-Cheang | Draft RFA to Defendant and Declaration | 1.90 | $375.00 | $712.50 |
| 594. | Vivo, Gary v. Kia | 11/23/2016 | Amy Morse | Draft RFA to Deft and Declaration | 0.90 | $350.00 | $315.00 |
| 595. | Waggener Paul | 2/25/2017 | Amy Morse | Draft RFA to Defendant and Declaration | 1.30 | $350.00 | $455.00 |
| 596. | Walker, Tracy | 1/16/2017 | Amy Morse | Draft RFAs to FCA and declaration | 0.90 | $350.00 | $315.00 |
| 597. | Washington, Sharon v. Kia | 4/13/2018 | Kristina Stephenson-Cheang | Draft Ptf's RFA to KMA and declaration | 1.00 | $375.00 | $375.00 |
| 598. | Watkins, Donmna v. FMC | 11/25/2013 | Daisy Ortiz | Draft RFA and RFG to Ford and Declaration | 1.80 | $225.00 | $405.00 |
| 599. | Watts, Cleveland v. FMC | 12/18/2013 | Lauren Ungs | Draft RFA to Defendant and Declaration | 1.30 | $425.00 | $552.50 |
| 600. | Watts, Sherri v. FCA | 3/19/2017 | Amy Morse | Draft RFAs to FCA and Declaration | 1.30 | $350.00 | $455.00 |
| 601. | Weakley, Robert and Weakley, Brenda v. FMC | 10/13/2016 | Amy Morse | Draft RFAs to Deft and declaration | 1.20 | $350.00 | $420.00 |
| 602. | Webster, William v. Hyundai | 5/31/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft | 0.60 | $375.00 | $225.00 |
| 603. | WELCH V.FMC | 3/6/2017 | Amy Morse | Draft RFAs to Deft and declaration | 0.80 | $350.00 | $280.00 |
| 604. | West, Marilyn v. Hyundai | 6/2/2016 | Russell Higgins | Draft RFA and declaration to Dft | 0.80 | $400.00 | $320.00 |
| 605. | Weston, Celie v. FCA | 11/3/2016 | Amy Morse | Draft RFA to Defts and Declaration | 1.10 | $350.00 | $385.00 |
| 606. | White, Bryan v. Hyundai | 6/3/2016 | Russell Higgins | Draft RFAs to Deft and Declaration | 1.00 | $400.00 | $400.00 |
| 607. | White, Mae v. BMW | 11/17/2016 | Amy Morse | Draft RFAs to Deft | 0.50 | $350.00 | $175.00 |
| 608. | Whitehouse, James v. FCA | 11/21/2016 | Amy Morse | Draft RFA to FCA and Declaration | 0.90 | $350.00 | $315.00 |
| 609. | Whitehouse, James v. FCA | 2/24/2017 | Amy Morse | Draft RFA to FCA and Declaration, Set Two | 0.70 | $350.00 | $245.00 |
| 610. | Williams, Cora and Williams, Jeanine v. FMC | 6/23/2017 | Kristina Stephenson-Cheang | Draft RFA to Deft and Declaration | 0.90 | $375.00 | $337.50 |
| 611. | Williams, Gregory | 10/31/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 0.90 | $350.00 | $315.00 |
| 612. | Williams, Monte | 11/10/2016 | Amy Morse | Draft RFAs to Deft and Declaration (10 p/70 r) | 1.10 | $350.00 | $385.00 |
| 613. | Wu, Wei | 11/10/2016 | Amy Morse | Draft RFA to FCA and Declaration | 1.00 | $350.00 | $350.00 |
| 614. | Yazdanniaz, Shahriar v. FCA | 3/22/2018 | Kristina Stephenson-Cheang | Draft Ptf's RFA to FCA and declaration | 0.70 | $375.00 | $262.50 |
| 615. | Yazdanniaz, Shahriar v. FCA | 5/9/2019 | Amy Morse | Draft Ptf's RFA to FCA and declaration, Set Two | 1.80 | $350.00 | $630.00 |
| 616. | Yee, Donald K. v. FMC | 8/21/2015 | Russell Higgins | Draft Plaintiff's RFAs | 0.50 | $400.00 | $200.00 |
| 617. | YOUNG V.FMC | 5/3/2017 | Kristina Stephenson-Cheang | Draft RFAs to Deft and Declaration | 0.70 | $375.00 | $262.50 |
| 618. | Young, Teresa v. FCA | 1/23/2017 | Amy Morse | Draft RFAs and Declaration to FCA | 0.60 | $350.00 | $210.00 |
| 619. | Yu, Borris | 3/9/2017 | Amy Morse | Draft RFAs to Deft and Declaration | 0.90 | $350.00 | $315.00 |
| 620. | Zagorski, John | 7/26/2016 | Amy Morse | Draft RFA to FCA and Declaration | 1.00 | $350.00 | $350.00 |
| 621. | Zamir, David | 10/5/2015 | Russell Higgins | Draft RFA to Defendant | 0.50 | $400.00 | $200.00 |
| 622. | Zuniga, Lucia v. FCA | 7/19/2016 | Amy Morse | Draft RFAs to FCA and Declaration | 2.10 | $350.00 | $735.00 |
| 623. | Zur, Ofer | 10/13/2015 | Russell Higgins | Draft RFAs to FCA | 0.50 | $450.00 | $0.00 |
| | | | | | **578.30** | | **$196,267.50** |

# EXHIBIT C

***Ford Motor Co. v. Knight Law Group et al.*: Complaint Exhibit C**

**Specific Selected Violations of 18 U.S.C. §§ 1341, 1343 (Mail Fraud, Wire Fraud)**

| No. | From | To | Date | Format | Purpose | Description |
|---|---|---|---|---|---|---|
| **1** | Mirka Arellano<br>KNIGHT LAW GROUP | Spencer P. Hugret<br>GORDON & REES LLP | December 15, 2017 | Mail service of fraudulent fee application and supporting declarations | Securing funds to further fraudulent billing scheme | Motion for Attorney's Fees in Margeson v. Ford Motor Company, Los Angeles County Superior Court Case No. BC549430; supporting declarations of Steve Mikhov and Bryan Altman. |
| **2** | Spencer P. Hugret<br>GORDON & REES LLP | Steve Mikhov<br>KNIGHT LAW GROUP | July 24, 2018 | Payment via Mail | Securing funds to further fraudulent billing scheme | Buck v. Ford Motor Company, Stanislaus County Superior Court Case No. 2008745<br><br>Letter enclosing $135,500.00 check[1] from Ford to KLG |
| **3** | Ford Motor Company | Knight Law Group | August 15, 2018 | Payment via Mail | Securing funds to further fraudulent billing scheme | Duenas v. Ford Motor Company, Los Angeles County Superior Court Case No. BC638306<br><br>$12,405.20 check from Ford to KLG. |
| **4** | Nancy Perrelli<br>GATES, GONTER, GUY, PROUDFOOT & MUENCH, LLP | Steve Mikhov<br>KNIGHT LAW GROUP | October 1, 2018 | Payment via Mail | Securing funds to further fraudulent billing scheme | Duk v. Ford Motor Company, San Diego County Superior Court Case No. 2016-00012779<br><br>Letter enclosing $101,450.78 check from Ford to KLG. |

[1] All checks that any RICO Defendant received from Ford were issued in Michigan.

| | | | | | | |
|---|---|---|---|---|---|---|
| **5** | Ford Motor Company | Knight Law Group | October 9, 2018 | Payment via Mail | Securing funds to further fraudulent billing scheme | Burgess v. Ford Motor Company, San Bernardino County Superior Court Case No. CIVDS1620111<br><br>Letter enclosing $10,675.16 check from Ford to KLG |
| **6** | Ford Motor Company | Knight Law Group | October 12, 2018 | Payment via Mail | Securing funds to further fraudulent billing scheme | Orosco v. Ford Motor Company, Los Angeles County Superior Court Case No. BC638222<br><br>Letter enclosing $15,005.00 check from Ford to KLG |
| **7** | Nancy Perrelli<br>GATES, GONTER, GUY, PROUDFOOT & MUENCH, LLP | Steve Mikhov, Esq.<br>KNIGHT LAW GROUP, LLP | November 29, 2018 | Payment via Mail | Securing funds to further fraudulent billing scheme | Lehde v. Ford Motor Company<br><br>Letter enclosing $185,000 check from Ford to KLG |
| **8** | Bryan Altman<br>ALTMAN LAW GROUP | Elizabeth McNulty<br>EVANS, FEARS & SCHUTTERT LLP | January 7, 2022 | Email | Securing funds to further fraudulent billing scheme | Email correspondence between Altman and Ford outside counsel in which Ford agrees to settle ALG fee claims by paying ALG $300,000.00 in: (i) Berroteran v. Ford Motor Company, Los Angeles County Superior Court Case No. BC542525, (ii) Brown v. Ford Motor Company, Butte County Superior Court Case No. 160060, and (iii) Coon v. Ford Motor Company, Riverside County Superior Court Case No. MCC1300767 |
| **9** | Ford Motor Company | Dorothy Becerra<br>KNIGHT LAW GROUP | March 2, 2022 | Payment via Mail | Securing funds to further fraudulent billing scheme | Coon v. Ford Motor Company, Riverside County Superior Court Case No. MCC1300767<br><br>$793,924.29 check from Ford to KLG. |

| | | | | | | |
|---|---|---|---|---|---|---|
| **10** | Elizabeth McNulty<br>EVANS, FEARS & SCHUTTERT LLP | Richard Wirtz<br>WIRTZ LAW APC | May 11, 2022 | Payment via Mail | Securing funds to further fraudulent billing scheme | Anderson v. Ford Motor Company, San Joaquin County Superior Court Case No. 39-2013-00299512-CU-BC-STK.<br><br>$38,270.98 check from Ford to Wirtz Law. |
| **11** | Knight Law Group | Los Angeles Superior Court | May 20, 2022 | Electronic filing and service, as well as mail service, of fraudulent fee applications and supporting declaration | Securing funds to further fraudulent billing scheme | Motion for Attorney's Fees in Berroteran v. Ford Motor Company, Los Angeles County Superior Court Case No. BC542525; supporting declaration of Roger Kirnos |
| **12** | Ford Motor Company | The Altman Law Group | June 6, 2022 | Payment via Mail | Securing funds to further fraudulent billing scheme | Brown v. Ford Motor Company, Butte County Superior Court Case No. 160060<br><br>$300,000 check from Ford to ALG |
| **13** | Ford Motor Company | The Altman Law Group | June 16, 2022 | Payment via Mail | Securing funds to further fraudulent billing scheme | Coon v. Ford Motor Company, Riverside County Superior Court Case No. MCC1300767<br><br>$300,000 check from Ford to ALG. |
| **14** | Ford Motor Company | Knight Law Group | June 16, 2022 | Payment via Mail | Securing funds to further fraudulent billing scheme | Coon v. Ford Motor Company, Riverside County Superior Court Case No. MCC1300767<br><br>$709,004.12 check from Ford to KLG. |
| **15** | Ford Motor Company | The Altman Law Group | July 20, 2022 | Payment via Mail | Securing funds to further fraudulent billing scheme | Berroteran v. Ford Motor Company, Los Angeles County Superior Court Case No. BC542525 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | $300,000.00 check from Ford to ALG. |
| **16** | Spencer Hugret GORDON & REES LLP | Roger Kirnos KNIGHT LAW GROUP | July 25, 2022 | Payment via Mail | Securing funds to further fraudulent billing scheme | Margeson v. Ford Motor Company, Los Angeles County Superior Court Case No. BC549430.<br><br>Letter enclosing $136,744.53 check from Ford to KLG. |
| **17** | Ford Motor Company | Roger Kirnos KNIGHT LAW GROUP | July 25, 2022 | Payment via Mail | Securing funds to further fraudulent billing scheme | Brown v. Ford Motor Company, Butte County Superior Court Case No. 160060<br><br>$843,528.13 check from Ford to KLG |
| **18** | Ford Motor Company | Altman Law Group | July 26, 2022 | Payment via Mail | Securing funds to further fraudulent billing scheme | Anderson v. Ford Motor Company, San Joaquin County Superior Court Case No. 39-2013-00299512-CU-BC-STK.<br><br>$225,000.00 check from Ford to ALG. |
| **19** | Ford Motor Company | Knight Law Group | July 26, 2022 | Payment via Mail | Securing funds to further fraudulent billing scheme | Anderson v. Ford Motor Company, San Joaquin County Superior Court Case No. 39-2013-00299512-CU-BC-STK.<br><br>$813,544.48 check from Ford to KLG. |
| **20** | Spencer Hugret GORDON & REES LLP | Bryan Altman ALTMAN LAW GROUP | August 17, 2022 | Payment via Mail | Securing funds to further fraudulent billing scheme | Margeson v. Ford Motor Company, Los Angeles County Superior Court Case No. BC549430. |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | Ford check in the amount of $500,000.00 |
| **21** | Spencer Hugret GORDON & REES LLP | Roger Kirnos KNIGHT LAW GROUP | September 26, 2022 | Payment via Mail | Securing funds to further fraudulent billing scheme | <u>Margeson v. Ford Motor Company</u>, Los Angeles County Superior Court Case No. BC549430.<br><br>Letter enclosing $345,000 check from Ford to KLG. |
| **22** | Ford Motor Company | Roger Kirnos KNIGHT LAW GROUP | October 21, 2022 | Payment via Mail | Securing funds to further fraudulent billing scheme | <u>Berroteran v. Ford Motor Company</u>, Los Angeles County Superior Court Case No. BC542525<br><br>$851,493.51 check from Ford to KLG. |
| **23** | Ford Motor Company | Knight Law Group | February 8, 2023 | Payment via Mail | Securing funds to further fraudulent billing scheme | <u>Anderson v. Ford Motor Company</u>, San Joaquin County Superior Court Case No. 39-2013-00299512-CU-BC-STK.<br><br>$27,644.00 check from Ford to KLG. |
| **24** | Knight Law Group | Los Angeles Superior Court | November 29, 2023 | Electronic filing and service, as well as mail service, of fraudulent fee applications and supporting declaration | Securing funds to further fraudulent billing scheme | Motion for Attorney's Fees in <u>Faulkner v. Ford Motor Company</u>, Riverside County Superior Court Case No. RIC1709381 (transferred to JCCP 4856); supporting declaration of Roger Kirnos |
| **25** | Jacob Cutler | Ford's outside counsel | September 5, 2024 | Email | Securing funds to further fraudulent billing scheme | Cutler, copying numerous KLG attorneys, including Kirnos, sent ten fee statements to Ford's outside counsel, seven of which |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | contain time entries as far back as 2018 and include entries for time allegedly billed by, among others, Amy Morse, Kristina Stephenson-Chang, and Lauren Ungs. |
| **26** | Roger Kirnos | Ford's outside counsel | April 21, 2025 | Email | Securing funds to further fraudulent billing scheme | Kirnos, copying numerous KLG attorneys, sent three fee statements to Ford's outside counsel. |

**Specific Selected Violations of 18 U.S.C. § 1503 (Obstruction of Justice through Perjurious Declarations)**

| **No.** | **Declarant** | **Date** | **Case** | **Docket No.** | **Description** |
|---|---|---|---|---|---|
| 1 | Steve Mikhov | May 10, 2019 | *Negrete v. Ford Motor Company*, No. 5:18-cv-01972 (C.D. Cal.) | 34-2 | Includes numerous time entries for Amy Morse for tasks she testified she did not perform, including "Communication with Client," "Draft Complaint," and "Draft NOD and Depo[sition] Subp[oena]" and entries for Mikhov reflecting eight tenths of an hour for "Initial communication with clients and evaluation of Clients' claims"— nearly identical to the amount Elin Howard testified she would routinely input without consulting with Mikhov. Mikhov declared that "[a]ll time billing entries were completed contemporaneously with each dated entry or near in time to the work performed" and that "he personally reviewed the billing entries to ensure that they appropriately reflect the time expended." |
| 2 | Steve Mikhov | September 4, 2019 | *Kopa v. Ford Motor Company*, No. 2:18-cv-07663 (C.D. Cal.) | 15-2 | Includes numerous time entries for Amy Morse for tasks she testified she did not perform, including "Communication with Client," and "Draft Complaint," and entries for Mikhov |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | reflecting exactly one hour for "Initial communication with client and evaluation of clients' claims"—identical to the amount Elin Howard testified she would routinely input without consulting with Mikhov. Mikhov declared that "[a]ll time billing entries were completed contemporaneously with each dated entry or near in time to the work performed" and that "he personally reviewed the billing entries to ensure that they appropriately reflect the time expended." |
| 3 | Steve Mikhov | September 20, 2019 | *Jameson v. Ford Motor Company*, No. 2:18-cv-01952 (C.D. Cal.) | 32-2 | Includes numerous time entries for Amy Morse for tasks she testified she did not perform, including "Communication with Client," and "Draft Complaint," and entries for Mikhov reflecting exactly one hour for "Initial communication with client and evaluation of clients' claims"—identical to the amount Elin Howard testified she would routinely input without consulting with Mikhov. Mikhov declared that "[a]ll time billing entries were completed contemporaneously with each dated entry or near in time to the work performed" and that "he personally reviewed the billing entries to ensure that they appropriately reflect the time expended." |
| 4 | Steve Mikhov | September 30, 2019 | *Hellenberg v. Ford Motor Company*, No. 3:18-cv-02202 (C.D. Cal.) | 23-2 | Includes numerous time entries for Amy Morse for tasks she testified she did not perform, including "Communication with Client," and "Draft Complaint," and entries for Mikhov reflecting exactly one hour for "Initial communication with Client and evaluation of clients' claims"—identical to the amount Elin Howard testified she would routinely input without consulting with Mikhov. Mikhov declared that "[a]ll time billing entries were completed contemporaneously with each dated |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | entry or near in time to the work performed" and that "he personally reviewed the billing entries to ensure that they appropriately reflect the time expended." |
| 5 | Steve Mikhov | October 23, 2019 | *Flores v. FCA US LLC*, No. 1:17-cv-00427 (E.D. Cal.) | 84-2 | Includes numerous time entries for Amy Morse for tasks she testified she did not perform, including "Communication with Client," and "Draft Objections [to Notice of Deposition]," and entries for Mikhov reflecting exactly one hour for "Initial communication with clients and evaluation of clients' claims"—identical to the amount Elin Howard testified she would routinely input without consulting with Mikhov. Mikhov declared that "[a]ll time billing entries were completed contemporaneously with each dated entry or near in time to the work performed" and that "he personally reviewed the billing entries to ensure that they appropriately reflect the time expended." |
| 6 | Steve Mikhov | November 14, 2019 | *Munguia et. al. v. Ford Motor Company*, No. 2:18-cv-09008 (C.D. Cal.) | 28-2 | Includes numerous time entries for Amy Morse for tasks she testified she did not perform, including "Communication with Client" and "Draft Complaint," and entries for Mikhov reflecting nine tenths of an hour for "Initial communication with Clients and evaluation of Clients' claims"—nearly identical to the amount Elin Howard testified she would routinely input without consulting with Mikhov. Mikhov declared that "[a]ll time billing entries were completed contemporaneously with each dated entry or near in time to the work performed" and that "he personally reviewed the billing entries to ensure that they appropriately reflect the time expended." |
| 7 | Steve Mikhov | December 9, 2019 | *Arias v. Ford Motor Company*, No. 5:18-cv-01928 (C.D. Cal.) | 45-2 | Includes numerous time entries for Amy Morse for tasks she testified she did not perform, including "Communication with Client," and |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | "Draft Complaint," and entries for Mikhov reflecting exactly one hour for "Initial communication with client and evaluation of client's claims"—identical to the amount Elin Howard testified she would routinely input without consulting with Mikhov. Mikhov declared that "[a]ll time billing entries were completed contemporaneously with each dated entry or near in time to the work performed" and that "he personally reviewed the billing entries to ensure that they appropriately reflect the time expended." |
| 8 | Steve Mikhov | January 6, 2020 | *Pedante v. Ford Motor Company*, 2:17-cv-06656 (C.D. Cal) (a part of *In Re Ford Motor Co. DPS6 Powershift Transmission Products Liability Litigation*, No. 2:18-ml-02814 (C.D. Cal.) ("DPS6")[2]) | 70-2 | Includes numerous time entries for Amy Morse for tasks she testified she did not perform, including "Communication with Client," and "Draft Complaint," and entries for Mikhov reflecting exactly one hour for "Initial communication with Client; Analyze Vehicle documentation"—the exact amount Elin Howard testified she would routinely input for this task without consulting with Mikhov. Mikhov declared that "[a]ll time billing entries were completed contemporaneously with each dated entry or near in time to the work performed" and that "he personally reviewed the billing entries to ensure that they appropriately reflect the time expended." |
| 9 | Steve Mikhov | January 31, 2020 | *Martinez v. Ford Motor Company*, No. 1:18-cv-01607 (C.D. Cal.) | 25-2 | Includes numerous time entries for Amy Morse for tasks she testified she did not perform, including "Communication with Client," "Draft Complaint," and "Draft Amended NOD and Depo Subp," and entries for Mikhov reflecting exactly one hour for "Initial communication with clients and evaluation of clients' claims"—identical to the amount Elin Howard testified |

[2] References to "*DPS6*" in the Docket No. column indicate that the declaration was filed on the docket for the MDL, No. 2:18-ml-02814 (C.D. Cal.). The declaration in *Pedante* was filed on its own docket rather than that for the MDL.

| | | | | | |
|---|---|---|---|---|---|
| | | | | | she would routinely input without consulting with Mikhov. Mikhov declared that “[a]ll time billing entries were completed contemporaneously with each dated entry or near in time to the work performed” and that “he personally reviewed the billing entries to ensure that they appropriately reflect the time expended.” |
| 10 | Steve Mikhov | February 14, 2020 | *Di Gioia v. Ford Motor Company*, No. 5:18-cv-01724 (C.D. Cal.) | 50-2 | Includes numerous time entries for Amy Morse for tasks she testified she did not perform, including “Communication with Client,” and “Draft Complaint,” and entries for Mikhov reflecting exactly one hour for “Initial communication with client and evaluation of Client’s claims”—identical to the amount Elin Howard testified she would routinely input without consulting with Mikhov. Mikhov declared that “[a]ll time billing entries were completed contemporaneously with each dated entry or near in time to the work performed” and that “he personally reviewed the billing entries to ensure that they appropriately reflect the time expended.” |
| 11 | Steve Mikhov | February 28, 2020 | *Milosevich v. Ford Motor Company*, No. 5:18-cv-02014 (C.D. Cal.) | 31-2 | Includes numerous time entries for Amy Morse for tasks she testified she did not perform, including “Communication with Client” and “Draft Complaint,” and entries for Mikhov reflecting exactly one hour for “Initial communication with Client and evaluation of Clients’ claims”—identical to the amount Elin Howard testified she would routinely input without consulting with Mikhov. Mikhov declared that “[a]ll time billing entries were completed contemporaneously with each dated entry or near in time to the work performed” and that “he personally reviewed the billing |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | entries to ensure that they appropriately reflect the time expended.” |
| 12 | Steve Mikhov | March 2, 2020 | *Medina v. Ford Motor Company*, No. 2:29-cv-00078 (C.D. Cal.) | 32-2 | Includes numerous time entries for Amy Morse for tasks she testified she did not perform, including “Communication with Client,” “Draft Complaint,” and “Draft NOD [Notice of Deposition]” and entries for Mikhov reflecting one hour (for each of the two plaintiffs) for “Initial communication with clients and evaluation of Clients’ claims”— the exact amount Elin Howard testified she would routinely input without consulting with Mikhov. Mikhov declared that “[a]ll time billing entries were completed contemporaneously with each dated entry or near in time to the work performed” and that “he personally reviewed the billing entries to ensure that they appropriately reflect the time expended.” |
| 13 | Steve Mikhov | March 2, 2020 | *Foulkrod v. Ford Motor Company*, No. 5-18-cv-02613 (C.D. Cal.) | 40-2 | Includes numerous time entries for Amy Morse for tasks she testified she did not perform, including “Communication with Client,” and “Draft Complaint,” and entries for Mikhov reflecting exactly one hour and two tenths of an hour for “Initial communication with client and analyze vehicle documentation”—nearly identical to the amount Elin Howard testified she would routinely input for a variation of this task without consulting with Mikhov. Mikhov declared that “[a]ll time billing entries were completed contemporaneously with each dated entry or near in time to the work performed” and that “he personally reviewed the billing entries to ensure that they appropriately reflect the time expended.” |
| 14 | Steve Mikhov | March 13, 2020 | *Scott v. Ford Motor Company*, No. 5:18-cv-02346 (C.D. Cal.) | 28-2 | Includes numerous time entries for Amy Morse for tasks she testified she did not perform, including “Communication with Client,” “Draft |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | Complaint," and "Draft NOD and Depo[sition] Subp[oena]" and entries for Mikhov reflecting one hour for "Initial communication with clients and evaluation of Clients' claims"— identical to the amount Elin Howard testified she would routinely input without consulting with Mikhov. Mikhov declared that "[a]ll time billing entries were completed contemporaneously with each dated entry or near in time to the work performed" and that "he personally reviewed the billing entries to ensure that they appropriately reflect the time expended." |
| 15 | Steve Mikhov | April 8, 2020 | *Arriaga v. Ford Motor Company*, No. 2:18-cv-09089 (C.D. Cal.) | 31-2 | Includes numerous time entries for Amy Morse for tasks she testified she did not perform, including "Communication with Client," and "Draft Complaint," and entries for Mikhov reflecting exactly one hour for "Initial communication with client and evaluation of client's claims"—identical to the amount Elin Howard testified she would routinely input without consulting with Mikhov. Mikhov declared that "[a]ll time billing entries were completed contemporaneously with each dated entry or near in time to the work performed" and that "he personally reviewed the billing entries to ensure that they appropriately reflect the time expended." |
| 16 | Steve Mikhov | April 27, 2020 | *Oakley v. Ford Motor Company*, No. 2:18-cv-07218 (C.D. Cal.) | 32-2 | Includes numerous time entries for Amy Morse for tasks she testified she did not perform, including "Communication with Client," "Draft Complaint," and "Draft NOD and Depo[sition] Subp[oena]" and entries for Mikhov reflecting one hour for "Initial communication with clients and evaluation of Clients' claims"— identical to the amount Elin Howard testified she would routinely input without consulting with Mikhov. Mikhov declared that "[a]ll time billing entries |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | were completed contemporaneously with each dated entry or near in time to the work performed" and that "he personally reviewed the billing entries to ensure that they appropriately reflect the time expended." |
| 17 | Steve Mikhov | May 1, 2020 | *Carrera et. al. v. Ford Motor Company*, No. 2:18-cv-09781 (C.D. Cal.) | 13-2 | Includes numerous time entries for Amy Morse for tasks she testified she did not perform, including "Communication with Client" and "Draft Complaint," and entries for Mikhov reflecting around one hour for "Initial communication with clients and evaluation of clients' claims"—nearly identical to the amount Elin Howard testified she would routinely input without consulting with Mikhov. Mikhov declared that "[a]ll time billing entries were completed contemporaneously with each dated entry or near in time to the work performed" and that "he personally reviewed the billing entries to ensure that they appropriately reflect the time expended." |
| 18 | Steve Mikhov | May 1, 2020 | *Bauman v. Ford Motor Company*, No. 2:18-cv-07971 (C.D. Cal.) | 52-2 | Includes numerous time entries for Amy Morse for tasks she testified she did not perform, including "Communication with Client," and "Draft Complaint," and entries for Mikhov reflecting exactly one hour for "Initial communication with clients and evaluation of clients' claims"—identical to the amount Elin Howard testified she would routinely input without consulting with Mikhov. Mikhov declared that "[a]ll time billing entries were completed contemporaneously with each dated entry or near in time to the work performed" and that "he personally reviewed the billing entries to ensure that they appropriately reflect the time expended." |

| | | | | | |
|---|---|---|---|---|---|
| 19 | Steve Mikhov | May 4, 2020 | *Aispuro et. al. v. Ford Motor Company*, No. 3:18-cv-02045 (S.D. Cal.) | 37-2 | Includes numerous time entries for Amy Morse for tasks she testified she did not perform, including “Communication with Client,” and “Draft Complaint,” and entries for Mikhov reflecting exactly one hour for “Initial communication with clients and evaluation of clients’ claims”—identical to the amount Elin Howard testified she would routinely input without consulting with Mikhov. Mikhov declared that “[a]ll time billing entries were completed contemporaneously with each dated entry or near in time to the work performed” and that “he personally reviewed the billing entries to ensure that they appropriately reflect the time expended.” |
| 20 | Steve Mikhov | October 9, 2020 | *Fort v. Ford Motor Company*, No. 2:17-cv-06631 (C.D. Cal.), and *Bagwell v. Ford Motor Company*, No. 2:17-cv-06632 (C.D. Cal.) | *DPS6* 955-4 | Includes numerous time entries for Amy Morse for tasks she testified she did not perform, including “Communication with Client,” “Draft Complaint,” and “Draft NOD [Notice of Deposition]” and entries for Mikhov reflecting one hour (for each of the two plaintiffs) for “Initial communication with client and evaluation of [c]lient’s claims”— the exact amount Elin Howard testified she would routinely input without consulting with Mikhov. Mikhov declared that “[a]ll time billing entries were completed contemporaneously with each dated entry or near in time to the work performed” and that “he personally reviewed the billing entries to ensure that they appropriately reflect the time expended.” |
| 21 | Roger Kirnos | January 20, 2021 | *Fort v. Ford Motor Company*, No. 2:17-cv-06631 (C.D Cal.), and *Bagwell v. Ford Motor Company*, No. 2:17-cv-06632 (C.D. Cal.) | *DPS6* 1042-1 | Includes numerous time entries for Amy Morse for tasks she testified she did not perform, including “Communication with Client,” “Draft Complaint,” and “Draft NOD,” and entries for Mikhov reflecting one hour (for each of the two plaintiffs) for “Initial communication with |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | Clients and evaluation of Clients' claims"—the exact amount Elin Howard testified she would routinely input without consulting with Mikhov. Kirnos declared that the time entries are "the actual time expended" and are "true and correct." |
| 22 | Roger Kirnos | April 7, 2023 | *Mejia v. Ford Motor Company*, 2:17-cv-06654 (C.D. Cal.) | *DPS6* 1457-2 | Includes numerous time entries for Amy Morse for tasks she testified she did not perform, including "Communication with client." Kirnos declared that "[a]ll time billing entries were completed contemporaneously with each dated entry or near in time to the work performed," and that he "personally reviewed the billing entries to ensure that they appropriately reflect the time expended." |
| 23 | Roger Kirnos | September 11, 2024 | *O'Brien v. Ford Motor Company*, No. 2:24-cv-04969 (C.D. Cal.) | *DPS6* 1638-2 | Attaches as Exhibit B "attorney billings from Knight Law Group for work performed globally for cases in JCCP 4856." Exhibit B includes time entries for Amy Morse for tasks she testified she would not perform, including communications with opposing counsel and multiple in-person court appearances. Kirnos declared that "[a]ll time billing entries were completed contemporaneously with each dated entry or near in time to the work performed" and that "he personally reviewed the billing entries to ensure that they appropriately reflect the time expended." |
| 24 | Roger Kirnos | September 11, 2024 | *Daggett v. Ford Motor Company*, No. 2:25-cv-04970 (C.D. Cal.) (DPS6) | *DPS6* 1640-2 | Attaches as Exhibit B "attorney billings from Knight Law Group for work performed globally for cases in JCCP 4856." Exhibit B includes time entries for Amy Morse for tasks she testified she would not perform, including communications with opposing counsel and multiple in-person court appearances. Kirnos declared that "[a]ll time billing entries were completed contemporaneously with each dated |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | entry or near in time to the work performed" and that "he personally reviewed the billing entries to ensure that they appropriately reflect the time expended." |
| 25 | Roger Kirnos | April 30, 2025 | *Henderson v. Ford Motor Company*, 2:18-cv-01748 (C.D. Cal.) | *DPS6* 1831-2 | Includes numerous time entries for Amy Morse for tasks she testified she did not perform, including "Communication with client." Kirnos declared that "[a]ll time billing entries were completed contemporaneously with each dated entry or near in time to the work performed," and that he "personally reviewed the billing entries to ensure that they appropriately reflect the time expended." |
| 26 | Roger Kirnos | April 30, 2025 | *Garant et. al. v. Ford Motor Company*, 2:18-cv-09126 (C.D. Cal.) | *DPS6* 1833-2 | Includes time entries for Amy Morse for tasks she testified she would not perform, including "Communication with client." Kirnos declared that "[a]ll time billing entries were completed contemporaneously with each dated entry or near in time to the work performed," and that he "personally reviewed the billing entries to ensure that they appropriately reflect the time expended." |
| 27 | Roger Kirnos | May 8, 2025 | *Bell v. Ford Motor Company*, 2:18-cv-01752 (C.D. Cal.) | *DPS6* 1840 | Includes time entries for Amy Morse for tasks she testified she would not perform, including "Communication with client." Kirnos declared that "[a]ll time billing entries were completed contemporaneously with each dated entry or near in time to the work performed," and that he "personally reviewed the billing entries to ensure that they appropriately reflect the time expended." |

# EXHIBIT D

**KNIGHT LAW GROUP, LLP**
Steve Mikhov (SBN 224676)
stevem@knightlaw.com
Daniel Kalinowski (SBN 305087)
danielk@knightlaw.com
10250 Constellation Blvd., Suite 2500
Los Angeles, California 90067
Telephone: (310) 552-2250
Fax: (310) 552-7973

Attorney for Plaintiffs,
ROBERTO ISLAS and
FERNANDO ISLAS

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ROBERTO ISLAS and FERNANDO ISLAS,**<br><br>Plaintiffs,<br><br>vs.<br><br>**FORD MOTOR COMPANY, a Delaware Corporation; and DOES 1 through 10, inclusive**,<br><br>Defendants. | Case No: 5:18-cv-02221-GW-SP_<br><br>**DECLARATION OF STEVE MIKHOV IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEY FEES**<br><br>[Filed concurrently with Plaintiffs' Notice of Motion and Motion for Attorney's Fees, Costs and Expenses; Memorandum in Support Thereof]<br><br>*Assigned for All Purposes to the Honorable George H. Wu*<br><br>Hearing Date: September 13, 2021<br>Time: 8:30 a.m.<br>Courtroom: 9D |

**<u>DECLARATION OF STEVE MIKHOV</u>**

I, Steve Mikhov, declare as follows:

1. I am an attorney at law duly licensed to practice before the courts of the State of California and attorney of record for Plaintiffs Robert Islas and Fernando Islas ("Plaintiffs") in the instant action. I have personal knowledge of the following facts and, if sworn as a witness, I could and would testify to them competently.

2. I make this declaration in support of Plaintiffs' Motion for Attorney Fees ("Motion"). For the reasons set forth herein and, in the Motion, Plaintiffs request $114,884.00 in attorney's fees for the legal services provided by Knight Law Group, LLP ("Knight Law"). A true and correct copy of my firm's billing is attached hereto as **Exhibit A**.

3. On September 24, 2016, Plaintiffs purchased the Subject Vehicle for a cash price of $29,443.82 – adding taxes, fees, two service contracts, GAP insurance and finance charges on a several year loan, the total purchase price increased to a total of $38,853.28. See Dkt. No. 1, ECF pp. 17-18. The vehicle was manufactured and distributed by Ford, which provided an express written warranty, and was sold and serviced by David Wilson's Villa Ford in Orange, California, a Ford-authorized sales and repair facility.

4. Just six months into Plaintiffs' ownership of the Subject Vehicle, a recall was performed to the body control module. Roughly three months later, Plaintiffs experienced a malfunction when the check engine light turned on due to lack of power on account of an engine misfire. The Subject Vehicle was at Ford's authorized repair facility for around twenty-two days. Several months later, the check engine light came on again and Ford's authorize repair facility found oil leak from the engine. By this time, in the span of less than a year and early on in the warranty period, the Subject Vehicle was out of service for over thirty days for serious repairs and service.

5. Despite the ongoing problems with the engine in the relatively short time span, Ford refused to acknowledge the defective nature of the Subject Vehicle and did not affirmatively offer to repurchase or replace it, as required by law. At all times, Ford had direct, contemporaneous knowledge of the vehicle's serious defects, which it records in a database called "OASIS" and its warranty repair history database. These repair records indicate each time the vehicle was presented for repair during the warranty period, as well as every time the Ford repair facility found a problem/defect attributable to Ford and billed Ford for the warranty related work.

6. Frustrated, concerned for their safety, and having lost confidence in Ford's ability to repair the vehicle, Plaintiffs were forced to contact Ford's customer service center themselves and requested their Subject Vehicle be repurchased or replaced in early 2018. In response, instead of offering the total purchase price minus the statutory mileage offset allowed under the Song-Beverly Act ($34,204.81), Ford improperly offered to repurchase the Subject Vehicle for $31,474.81 deducting one of the two service contracts ($1,930.00) and GAP insurance ($800.00).

7. Feeling cheated that the entire amount they purchased the Subject Vehicle for was not being reimbursed to them, Plaintiffs contacted Knight Law and told the firm about the problems with the vehicle and the way Ford treated them. After reviewing the repair history and discussions with Plaintiffs, my firm, Knight Law, agreed to represent them and bear the risk of litigating the case on a fully contingent basis. Because Knight Law's compensation was purely contingent, my firm faced a genuine risk of not being paid for its services for years, if at all, while advancing thousands of dollars in costs and expenses on Plaintiffs' behalf. In taking on this duty, my firm was facing a litigation behemoth—Ford is a multi-billion-dollar company, with a virtually infinite litigation war-chest, that wages a battle of attrition that most firms cannot withstand.

8. As a result of Ford's failure to fix the material defects associated with the Subject Vehicle, or otherwise comply with the Song-Beverly Act's affirmative

duty, which requires car manufacturers to repurchase qualifying vehicles *affirmatively* without merely sitting back and waiting for a consumer to ask for relief and improperly deduct reimbursable items from its pre-litigation "offer" in response to Plaintiffs' buyback request, Plaintiffs filed a Complaint in this action on September 18, 2018 in the San Bernardino County Superior Court. See Dkt. No. 1, ECF pp. 7-15. Plaintiffs' Complaint alleged violations of the Song-Beverly Act. *Id.*

9. Ford then filed its Answer in state court denying all liability and asserting numerous affirmative defenses on or about October 17, 2018. See Dkt. No. 1, ECF pp. 33-39. Further defiant in its acknowledgment that it manufactured and sold a "lemon," Ford removed this case to federal court the next day, on October 18, 2018 asserting diversity jurisdiction. See Dkt. No. 1, generally.

10. On November 26, 2018, Knight Law began preparing the Joint Rule 26f Report as well as met and conferred with Ford's counsel regarding the Joint Report. See Dkt. No. 9. Subsequently, on December 10, 2018, the parties appeared at an Initial Scheduling Conference. See Dkt. No. 10.

11. In January 2019, Ford propounded a set of written discovery requests upon each Plaintiffs which included interrogatories and requests for production. My firm dutifully analyzed each request, secured Plaintiffs' input, and drafted responses by March 2019. In the meantime, the parties exchanged deposition notices including Ford's notices of Plaintiffs' depositions and Plaintiffs' notices of Ford's person most knowledgeable ("PMK") and its dealership personnel who worked on the Subject Vehicle.

12. Knowing from experience that Ford's position and strategy in this litigation would demand extensive efforts in response, written discovery was drafted and served on Ford in March 2019, consisting of requests for admissions, requests for production of documents, and interrogatories. Plaintiffs benefitted from Knight Law's expertise and experience in litigating against Ford as just 2.5 hours were billed for drafting the entirety of this written discovery. My firm is able to use existing files

as templates to conserve time and litigate efficiently. A set of written discovery requests drafted from scratch and without the benefit of my firm's vast knowledge, experience and specialized expertise, would have taken multitudes of the time expediently managed here.

13. On May 14, 2019, Plaintiffs prepared for and took the deposition of Ford's Person Most Knowledgeable Alyson Linda. That same month, Ford took the depositions of Plaintiffs. Prior to those depositions, my firm diligently prepared Plaintiffs.

14. On July 1, 2019, Ford filed its Motion to Dismiss for Lack of Subject Matter Jurisdiction as to one of the Plaintiffs and Motion for Summary Judgment (the "MSJ"). See Dkt. No. 19. My firm immediately prepared the Opposition to Ford's MSJ including evidentiary objections, memorandum of points and authorities, supporting declaration and separate statement. On July 29, 2019, the parties appeared at the first hearing on Ford's MSJ. See Dkt. No. 27. At this hearing, the Court denied Ford's Motion to Dismiss for Lack of Subject Matter Jurisdiction as to one of the Plaintiffs but continued the hearing on the Motion for Summary Judgment Portion and ordered the parties to meet and confer as to settlement and prepare supplemental briefing. On September 9, 2019, the parties appeared at another hearing on Ford's MSJ. See Dkt. No. 38. The Court continued the hearing again pending determination of Ford's MSJ and another hearing was held on September 19, 2019. See Dkt. Nos. 38, 41. The Court continued the hearing ordering the parties to continue to meet and confer on settlement as well as submit a joint submission specifically as to whether the extended service contract deducted from Ford's pre-litigation offer was born of Ford or a third party. After the parties were unable to settle, they submitted a joint brief, and the Court held hearings on the MSJ on September 30, 2019 and a final hearing on October 17, 2019. See Dkt. No. 48. The Court granted in part and denied in part Ford's MSJ dismissing the civil

penalties alleged by Plaintiffs under the Song-Beverly Act for Ford's willfulness but leaving in the remainder of Plaintiffs' claims and damages. See Dkt. No. 52.

15. On October 24, 2019 and December 5, 2019, after submitting a joint report to the Court, the parties appeared at status conferences ordered by the Court. See Dkt. Nos. 53, 56. As a result of those status conferences, the Court ordered the parties to a Mandatory Settlement Conference with the Honorable Magistrate Judge Kim which took place on January 23, 2020. See Dkt. No. 57. The case did not settle, and the parties continued to litigate and prepare for trial which, at that time, was set for June 30, 2020. See Dkt. No. 61.

16. On May 28, 2020, the parties filed pre-trial documents including Motions in Limine and Memorandum of Contentions of Fact and Law. See Dkt. Nos. 64-72. My firm also prepared other trial documents in anticipation of trial including Exhibit List, Witness List, Jury Instructions, and Verdict Form. On June 1, 2020, the parties appeared at a Post-Mediation Status Conference, and the Court vacated the trial and related dates and ordered the parties to submit a joint report as to settlement or new scheduling. See Dkt. No. 74. Following the submission of the parties' joint report, the Court reset trial to October 27, 2020. *Id*; see Dkt. No. 76. My firm continued to prepare for trial and draft, amend and update trial documents, including Oppositions to Ford's Motions in Limine.

17. On September 24, 2020 and October 1, 2020, the parties appeared at a Status Conferences. See Dkt. Nos. 79, 81. The parties continued to meet and confer as to settlement but were unable to reach a resolution, and Plaintiffs continued to prepare for trial. On January 28, 2021, the parties appeared at a Status Conference wherein trial and related deadlines were taken off calendar and the parties were ordered to file another joint report two days before the next scheduled Status Conference on March 18, 2021. See Dkt. Nos. 84, 86. At the March 18, 2021 Status Conference, a second settlement conference was scheduled to be held in front of the Honorable Magistrate Judge Steve Kim. See Dkt. No. 87.

18. On May 5, 2021, the parties appeared at a settlement conference in front of the Honorable Magistrate Judge Steve Kim and the case settled. See Dkt. No. 97. On May 7, 2021, the parties executed a settlement agreement for $34,204.81 which constitutes a statutory buyback with a mileage offset – no deductions were made for the extended service contract or GAP initially deducted from Ford's pre-litigation offer. The settlement agreement provides that "Plaintiffs shall retain the right to petition the Court for an award of attorney's fees, costs and expenses, reasonably incurred in connection with the commencement and prosecution of this action pursuant to Civil Code, section 1794(d)" and "[i]n ruling on Plaintiffs' fee motion… fees, expenses and costs amount shall be calculated as if Plaintiffs were found to have prevailed in this action as of the date of this Offer." A true and correct copy of the executed settlement agreement is attached hereto as **Exhibit B.**

19. Up until the May 5, 2021 settlement conference and subsequent settlement agreement, my firm served multiple written settlement offers on Ford, and the parties also met and conferred by phone on numerous occasions as to settlement as ordered by the Court. At no point in this action has Ford served a written settlement offer on my office, whether it be a Rule 68 Offer or another offer in exchange for dismissal.[1]

20. This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place by email and phone between July 28, 2021 and August 10, 2021. The parties were unable to reach a resolution.

**Defendant Has Refused to Settle Attorney Fees/Costs/Expenses and Has Forced This Fee Motion to be Filed**

21. Throughout my experience as an attorney in this area of law, I was routinely able to settle the matter of attorney's fees, costs and expenses without court

[1] My office does not disclose the specifics of these settlement discussions and negotiations in order to protect the confidentiality of settlement negotiations, some of which occurred prior to, during or subsequent to Court ordered settlement conferences with Magistrate Judge.

involvement. For most manufacturers, that remains to be true. However, while I do not have direct proof, it appears to me, and I infer that it not be coincidence, that a select few manufacturers represented by the same specific law firms have colluded to force my firm to file motions for attorney's fees in virtually every case instead of resolving the issue by agreement.

22. It is a policy of the law firm to settle our clients' claims before discussing settlement of attorney's fees, costs and expenses. We take this approach to avoid any possibility, or even the appearance, of a conflict of interest. Once the vehicle is surrendered and the client is paid, we discuss attorney's fees, costs and expenses with opposing counsel.

23. In 2016, the practice of settling fees changed completely, and in particular with Ford Motor Company. From 2007 until approximately the middle of 2016, I was typically able to settle attorney's fees with Ford. In 2015, I filed a <u>total</u> of 15 motions for attorney's fees all year. However, that all changed in mid-2016.

24. Since then, virtually every case concludes with a motion such as this. Even when the amount is relatively nominal, Ford refuses to engage in settlement. Ford appears to draw a "win" by trying to attack my firm and reduce our compensation rather than alleviating the burden and necessity of review of these matters. As it is now patently clear to me that Ford is unwilling to come to the table with realistic numbers to settle attorney's fees and costs, my firm has shifted focus to getting these unpaid matters to the courts, thereby increasing fees and clogging the already-busy courts with more work.

**<u>Ford is a Staunch Defendant That Litigates More Aggressively Than Most Other Vehicle Manufacturers While Deceiving Consumers More Than Most Manufacturers</u>**

25. There are vehicle manufacturers with whom this firm has had exactly zero trials, zero discovery disputes, zero motions to compel, zero fee motions. Ford Motor Company is not one of them. Since 2012, the firm has tried 55 lemon law

cases. One case ended in a hung jury and one case ended in a mistrial. Taking those two matters out, Knight Law and its trial attorneys have a win-loss record of 36 wins and 17 losses. This amounts to nearly a 70% winning percentage in trials. Of those 55 trials, Ford makes up 14 of them. <u>In other words, Ford alone comprises 25% of all of the cases that go to trial</u>. Of the 14 trials prosecuted against Ford, the firm has prevailed in 9 of them.

26. During the course of my years in practice, I have successfully pursued evidence during discovery that has proven damaging to the Ford. For example, Ford was compelled to produce 35,000 pages of training materials from its customer service call center. The production of these documents came only after Ford's representatives claimed for years that no such training materials existed, and perjured themselves in declarations opposing motions to compel. It was only once I flew to Melbourne, Florida to depose Abe Bush, one of Ford's customer service agents, during which he admitted that he had use of training materials. Based on that information, I pursued court orders to compel the materials. Ford's then-counsel, having denied the existence of training materials in countless declarations, flipped the opposition and claimed "it was a revelation" that the documents existed. Another example is Ford's attempt to conceal documents that it had produced in other class action litigation. Through continuing efforts, Ford was ordered to produce approximately 12,000,000 pages in a class document dump. The firm's attorneys spent countless hours sifting through these pages. Once certain documents were identified and brought into evidence at trial, Ford amazingly claimed that the documents were not genuine and authentic. As a result, we sought Ford's admission of the genuineness of these documents, which Ford initially denied, but court orders eventually compelled their admission of authenticity. More recently, there was an ongoing feud in which Ford was ordered to produce customer service documents located on what is referred to as the "G: drive," but Ford ignored the order, caused a motion to compel compliance, filed motions for a protective order and a motion for

reconsideration, and after almost two years of this battle finally produced the contents of that G: drive.

27. In my experience, Ford's approach to litigation is to fight at every turn, make unacceptably low offers that its attorneys know from their experience are not satisfactory, or make no offers at all, until the trial date for the case is near. Of course, this is not always the situation. Based on a sample of the cases filed against Ford in 2016 and 2017, 74% of those cases settled where trial was within six months or less, and 50% of those cases settled within just one month of trial. The following chart shows the percentage of lawsuits that are settled when Ford finally tenders an adequate offer when trial is imminent:




28. Since 2017, Ford ramped up its defense even more. Ford has hired several law firms to assist in its defense. Ford is now represented by the following eleven law firms in lemon law actions against my firm:

1) King & Spalding
2) Greenburg Traurig
3) Gordon Rees Scully Mansukhani, LLP
4) Gates, O'Doherty, Gonter & Guy

5) Baker Hostetler LLP

6) Snell & Wilmer, LLP

7) Shook, Hardy & Bacon

8) The Erskine Law Group

9) LeClairRyan

10) Sanders Roberts LLP

11) Dykema Gossett

29. Recently, one of Ford's attorneys, speaking on behalf of the entire army of lawyers, proclaimed that Ford was no longer willing to discuss settlement, did not want to engage in any further mediations and fully intends to bring every case to trial unless our clients accept Ford's existing offers. A true and correct copy of that letter is attached hereto as **Exhibit C**.

30. As a result of Ford's resolute defense, attorney's fees are incurred during the prosecution of the lawsuit. As discussed above, I was historically able to resolve payment without the need for filing motions, though in a few, rare cases my firm did file a motion. As stated by one of Ford's attorneys in a declaration in support of a federal court finding federal jurisdiction of a matter based on amount in controversy, "it is not uncommon, and in fact quite regular, for attorney's fee and cost awards (or resolutions through informal discussions with opposing counsel) to exceed $100,000.00." A true and correct copy of the declaration of Spencer Hugret is attached hereto as **Exhibit D, p. 3, ¶ 4**.

**<u>The Attorneys' Hourly Rates Are Reasonable Pursuant to the Lodestar Method in Light of their Experience</u>**

31. I attended law school at Pepperdine University and I was a judicial extern for Judge Gregory W. Alarcon of the Los Angeles County Superior Court in 2002.

32. I have been admitted to the State Bar of California since April 29, 2003. Since my admission to the State Bar of California, I have specialized in consumer law.

33. I have extensive experience prosecuting and resolving consumer protection matters involving motor vehicle claims. For the past fifteen years, I have specialized in breach of warranty and fraud cases against automobile manufacturers and dealers. I was among the attorneys who represented the plaintiff in *Joyce v. Ford Motor Co.* (2011) 198 Cal.App.4th 1478, a leading case which extended the protections of the Lemon Law to trucks based on actual weight, not maximum capacity.

34. Knight Law has been on the prevailing end of numerous other appellate decisions:

Published Opinions

1) *Joyce v. Ford Motor Co.* 198 Cal.App.4th 1478 (Cal Ct. App. 2011)
2) *Etcheson v. FCA US, LLC* 30 Cal.App.5th 831 (Cal. Ct. App. 2018)
3) *Warren v. Kia Motors America, Inc.*, 30 Cal.App.5th 24 (Cal. Ct. App. 2018)
4) *Hanna v. Mercedes-Benz USA, LLC* 36 Cal.App.5th 493 (Cal. Ct. App. 2019)
5) *Patel v. Mercedes-Benz USA, LLC*, 43 Cal.App.5th 1007 (Cal. Ct. App. 2019)
6) *Berroteran v. Sup. Ct.*, 41 Cal.App.5th 518 (Cal. Ct. App. 2019) (cert. review granted)
7) *Reynolds v. Ford Motor Company*, 47 Cal.App.5th 1105 (Cal. Ct. App. 2020)

Unpublished Opinions

8) McCullough v. FCA, No. D073330, 2018 WL 5856500 (Cal. App. Nov. 9, 2018)
9) Noflin v. Volkswagen, No. B275638, 2018 WL 1373992 (Cal. App. Mar. 19, 2018)
10) Cofield v. Kia, Nos. F074977, F075811, 2019 WL 3986198 (Cal. App. Aug. 23, 2019)

11) Palombi v. FCA, No. A156166, 2020 WL 2553307 (Cal. App. May 20, 2020)

12) Smart v. Ford, No. C087422, 2020 WL 284623 (Cal. App. Jan. 21, 2020)

13) Cieslikowski v. FCA, 809 Fed.Appx.386 (Mem) (9th Cir. June 12, 2020)

35. I originally worked for one of the largest consumer warranty law firms in the country, Consumer Legal Services. From April 2007 until April 2012, I was a founding partner in Romano, Stancroff & Mikhov PC. I was the Managing Partner of the firm until it was dissolved. In April 2012, I founded O'Connor & Mikhov, LLP. The firm was reformed in 2017 as Knight Law Group, LLP. I am the Managing Partner of the firm. My rate for this case was $550/hour. My billing entries are indicated by the initials "SBM" in the billing statement exhibited to this declaration.

36. Scot Wilson is a Partner in my office. Mr. Wilson has been with my firm since 2020. Prior to joining my firm, Mr. Wilson was a partner at the law firm of Robinson Calcagnie, Inc., where he exclusively represented plaintiffs. Before joining Robinson Calcagnie in 2010, Mr. Wilson was also previously a shareholder at a business litigation firm in Newport Beach for six (6) years where he represented clients in business, employment, and class action litigation. Before that, Mr. Wilson was an associate at an international law firm in Irvine for two (2) years. Mr. Wilson also served as a pro bono Deputy District Attorney with the Orange County District Attorney's Office Trial Attorney Partnership Program. Mr. Wilson also previously served as a judicial extern for Judge William J. Rea in the United States District Court for the Central District of California. After receiving his undergraduate degree from the University of California, San Diego (UCSD) in 1999, Mr. Wilson graduated cum laude from Pepperdine University School of Law in 2002. While at Pepperdine, Mr. Wilson served as Note & Comment Editor for the Pepperdine Law Review and won the Dalsimer Moot Court Competition. In addition to cases in California, Mr. Wilson has been admitted pro hac vice and handled cases in state and federal courts throughout the country, including the C.D. Cal., N.D. Cal., S.D.

Cal., E.D. Cal., 9th Cir., E.D. Pa., N.D. Ill., S.D.N.Y., S.D. Ohio, and D. N.J., and Arizona, New Jersey, Florida, New York, Illinois, and Michigan. In addition to being a member of the State Bar of California, Mr. Wilson is a member of the Western Trial Lawyers Association ("WTLA"), Consumer Attorneys of California ("CAOC"), Orange County Bar Association ("OCBA"), Association of Business Trial Lawyers ("ABTL"), and Orange County Trial Lawyers Association ("OCTLA"), Consumer Attorneys Association of Los Angeles ("CAALA), and the Orange County Chapter of the Federal Bar Association ("FBA/OC"). In 2015 and 2016, Mr. Wilson was on the Board of Directors for the OCTLA. Mr. Wilson is the author of the Recent Cases column in the CAOC's Forum Magazine and is a member of the OCBA's Administration of Justice committee. Mr. Wilson has been named a Super Lawyer by Los Angeles Magazine for his work. In 2018, Mr. Wilson was a recipient of the California Lawyer Attorney of the Year ("CLAY") Award. Mr. Wilson frequently gives presentations to other lawyers regarding trial advocacy, deposition techniques, and emerging issues in personal injury, consumer protection, and class action lawsuits. Mr. Wilson's hourly rate in this matter is $595/hour. Mr. Wilson's billing entries are indicated by the initials "SW" in the billing statement exhibited to this declaration.

37. Russell Higgins was an Associate with the firm and was admitted to practice in 2003. Mr. Higgins graduated from Pepperdine University School of Law and his hourly rate in this matter is $450/hour. Mr. Higgin's billing entries are indicated by the initials "RH" in the billing statement attached to this declaration.

38. Conor M. Kelly was a Senior Associate at my firm. Mr. Kelly has been with my firm since 2020. Prior to joining my firm, Mr. Wilson was a senior associate at the law firm of Robinson Calcagnie, Inc. Mr. Kelly graduated from UCLA in 2008 with a major in economics and a minor in accounting. He then earned his law degree from Pepperdine School of Law in 2011. He has been licensed to practice in California since 2011. Since 2011, Mr. Kelly has devoted his practice to handling

catastrophic personal injury, products liability, and mass tort litigation. He has extensive experience in complex automotive defect cases including *In re Toyota Unintended Acceleration* and *In re General Motors Ignition Switch Litigation*, where he handled a variety of tasks including depositions of experts and company employees. Mr. Kelly has also had a key role in several trials including serving as second chair trial counsel in a three (3) month long automotive defect catastrophic injury case: *Herbert v. Ford Motor Company/Takata Corporation*. He has substantial experience in cases involving fraud and the Song-Beverly Consumer Warranty Act. Mr. Kelly has been selected as a Rising Star by Super Lawyers in 2017, 2018 and 2019. Mr. Kelly's billing rate is $415/hour, and his billing entries are indicated by the initials "CK" in the billing statement exhibited to this declaration.

39. Chris Swanson is a Partner in my office. Mr. Swanson graduated from UCLA School of Law in 2011 where he distinguished himself academically. Mr. Swanson has been an Associate at my firm since 2014. His prior professional experience includes individual and class action consumer protection law. Mr. Swanson has been selected as a Rising Star by Super Lawyers in 2018 and 2019. Mr. Swanson's billing rate at my firm as of January 1, 2021 is $425/hour. His previous hourly rate is $375/hour. Mr. Swanson's billing entries are indicated by the initials "CS" in the billing statement exhibited to this declaration.

40. Mitchell Rosensweig was an associate at my firm. Mr. Rosensweig graduated cum laude from the University of Baltimore School of Law and was admitted to practice law in the state of Maryland in 2012. He was also admitted to practice law in Washington, D.C. in 2014. Prior to his employment with KLG, Mr. Rosensweig practiced primarily in the area of medical malpractice. Mr. Rosensweig was admitted to the California Bar in 2018. His hourly rate in this matter is $325/hour. Mr. Rosensweig's billing entries are indicated by the initials "MER" in the billing statement exhibited to this declaration

41. Kristina Stephenson-Cheang graduated from Western State University College of Law and was admitted to practice in 2008. Ms. Stephenson-Cheang was employed with the firm from 2013 - 2020. Prior to her employment at OM Law, she worked for a different lemon law firm gaining valuable experience in this area of law. Ms. Stephenson-Cheang's hourly rate in this matter was $375/hour. Ms. Stephenson-Cheang's billing entries are indicated by the initials "KSC" in the billing statement exhibited to this declaration.

42. Maite Colón is an associate in my office. Mrs. Colón graduated from the University of Puerto Rico School of Law in 2011. Mrs. Colón was admitted to practice law in the state of Florida in 2012, as well as in the District of Columbia and the District Court of Puerto Rico. More recently, Mrs. Colón was admitted to practice law in California in 2018 and has since been admitted to all federal district courts in California. Mrs. Colón has been employed at my law firm since 2017. Prior to joining my firm, she worked at an international law firm gaining valuable experience in commercial transactional work and international law. Her hourly rate as of January 1, 2021 is $345/hour. Her previous hourly rate is $300/hour. Her billing entries are indicated by the initials "MC" in the billing statement exhibited to this declaration.

43. Daniel Kalinowski is an Associate with the firm and was admitted to practice in 2015. Mr. Kalinowski graduated from Chapman University School of Law. His hourly rate as of January 1, 2021 is $295/hour. His previous hourly rate is $250/hour. His prior professional experience include business litigation, real estate litigation, and employment litigation. Mr. Kalinowski's billing entries are indicated by the initials "DK" in the billing statement attached to this declaration.

44. George Semaan was an associate at my firm. Mr. Semaan was admitted to the Bar in 2016 and joined my firm in 2017. Mr. Semaan graduated from Chapman University Fowler School of Law in 2016, and spent his first year practicing intellectual property, business and employment law. Mr. Semaan's hourly billing

rate was $225/hour. His billing entries are indicated by the initials "GS" in the billing statement exhibited to this declaration.

45. As always, Knight Law attempts to keep attorney's fees and costs down while providing vigorous and effective representation.

46. All time billing entries were completed contemporaneously with each dated entry or near in time to the work performed. I have personally reviewed the billing entries to ensure that they appropriately reflect the time expended. I have removed or reduced any time I felt was excessive, duplicative, or otherwise unreasonable, or I have labeled the entry as a "no charge", as identified by the "N/C" in the invoice. I am personally familiar with the background of each attorney hired at my firm. My firm **does not bill clients** for secretarial support staff time or paralegal, which further reduces the overall bill.

**Evidence to Support the Reasonableness of Hourly Rates for Attorneys**

47. I am aware of the hourly rates of other attorneys in California who work in the area of lemon law and consumer law. I bill my time at an hourly rate of $550 per hour. An hourly rate of $550 per hour is reasonable, and consistent with other attorneys who litigate consumer matters and who have a comparable level of experience. A canvas of the community of attorneys who specialize in this area reveals the following hourly rates:

a. Hallen Rosner of Rosner, Barry & Babbitt, LLP, San Diego, CA has been practicing law since 1983 and specializes in consumer litigation with particular attention to auto financing issues. He charges $640 per hour. Survey as of 2017.

b. Michael Lindsey was admitted to the bar in 1993 and has been handling consumer law cases for nearly 15 years in San Diego, California. Mr. Lindsey's hourly rate is $625. Survey as of 2017. His previous rate of $575/hour was recently confirmed as

reasonable in *Goglin v. BMW of North America* (2016) 4 Cal.App.5th 462, 473-74.

c. Brian Kemnitzer of Kemnitzer, Anderson, Barron, Ogilvie & Brewer LLP in San Francisco has been handling consumer cases since 1983. Mr. Kemnitzer charges $800 per hour. Survey as of 2016.

d. Robert Brennan of Brennan, Weiner and Associates in La Crescenta, California charges $450 per hour. He has been in practice since 1987. The hourly rate for his associates is $375 per hour. Survey as of 2010.

e. Martin Anderson of The Anderson Law Firm in Santa Ana, California has practiced law since 1995 and charges $395 per hour. Mr. Anderson specializes in Lemon Law matters. Survey as of 2007.

f. Nancy Barros of Kemnitzer, Anderson, Barron, Ogilvie & Brewer LLP in San Francisco, California has been handling consumer cases since 1983. Ms. Barros charges $625 per hour. Survey as of 2016.

g. Mark Romano of Romano, Stancroff in Los Angeles, California has been practicing for 23 years, primarily in consumer litigation. His hourly rate is $400 per hour. Survey as of 2010.

48. On July 24, 2020, Judge Michelle Williams Court awarded 100% of Knight Law Groups lodestar attorney's fees request in the amount of $211,080.00 which included approving Knight Law Group's requested hourly rates as reasonable which ranged from $550/hr-$225/hr in the matter of *Julio Hernandez v. BMW of North America, LLC* (Los Angeles Superior Court, Case No. BC666145). A true and correct copy of the minute order is attached hereto as **Exhibit E.**

///

49. On June 23, 2020, Judge Teresa Beaudet awarded 100% of the plaintiff's attorney's fees, costs and expenses in the amount of $126,527.88 and approved all requested rates ranging from $550/hr to $200/hr in the matter of *Donald Harbert v. FCA US LLC* (Los Angeles Superior Court, Case No. BC623621). A true and correct copy of the minute order is attached hereto as **Exhibit F**.

50. On December 12, 2019, Judge George H. Wu awarded 96% of the plaintiffs attorney's fees in the amount of $25,817.50, a 0.25 multiplier in the amount of $6,454.38, and approved all requested rates ranging from $550/hr to $200/hr in the matter of *Maria D. Munguia Munguia, et al. v. Ford Motor Company, et al.*, No. CV 18-9008-GW (KSx) (C.D. Cal. Dec. 12, 2019). A true and correct copy of the minute order is attached hereto as **Exhibit G**.

51. On October 25, 2019, Judge William Claster awarded 97% of the lodestar fees requested by motion, including a 1.1 lodestar multiplier, in the total amount of $192,893.50, in the matter of *Krupsky v. Ford Motor Company* (Orange County Superior Court, Case No. 30-2013-00662411-CU-BC-CXC). The case settled at trial prior to jury selection. The rates requested by motion that were granted included my rate of $550 per hour Mr. Altman's rate of $650 per hour, Mr. Kirnos' rate of $425 per hour, Ms. Ung's rate of $425 per hour, Mr. Swanson's rate of $375 per hour, and all other rates below $500 per hour. A true and correct copy of the judgment is attached hereto as **Exhibit H.**

52. On July 11, 2019, Judge Angel M. Bermudez in Riverside County awarded 100% of the requested attorney's fees in the amount of $87,465.00 and all of the requested costs and expenses in the amount of $11,843.66, in the matter of *Mark Dodd et al. v. FCA US LLC.* (Riverside County Superior Court, Case No. MCC1700496). In so doing, Judge Bermudez expressly ruled that the requested hourly rates were reasonable, including a rate of $350 per hour for partner Amy

Morse, $550 per hour for my rate, $375 per hour for attorney Kristina Stephenson-Cheang, and all other requested rates of $225, $250, $275, $300, $325 and $350 per hour as reasonable for Riverside County. A true and correct copy of the signed order is attached hereto as **Exhibit I.**

53. On July 1, 2019, Judge Gary Klausner, awarded 100% of the lodestar attorney's fees in the amount of $49,265 in the matter of *Bruce Hung Li v. FCA US LLC* (United States District Court Central District of California, Case No. 2:17-cv-06290-R-JEM). The court found reasonable the hourly rates that ranged from $300 - $375 per hour for associates and mid-level attorneys such as Amy Morse, Kristina Stephenson-Cheang, and Christopher Urner, to $550 per hour for my rate and $550 per hour. A true and correct copy of the signed order is attached hereto as **Exhibit J.**

54. On June 5, 2019, in the matter of *Ron Blasco et al v. FCA US LLC* (San Bernardino County Superior Court, Case No. CIVDS1609641), Judge Janet Frangie awarded 86% of the requested attorney's fees in the amount of $147,283.75 out of $170,536.25 requested, and ***granted a multiplier of 1.5*** in the amount of $36,811.56 given the contingent risk and "loss of the firm's capital resources", for a total award of fees in the amount of $184,104.69,. The court found the hourly rates of the attorneys at my firm reasonable ranging from $550 per hour for my rate to $200 per hour. A true and correct copy of the minute order is attached hereto as **Exhibit K.**

55. On April 4, 2019, Judge Daniel A. Ottolia awarded over 91% of the lodestar fees requested by motion in the total amount of $731,885.25 in the matter of *Leonard Coon v. Ford Motor Company* (Riverside County Superior Court, Case No. MCC1300767). The court found all of the hours worked to be reasonable. The court also found all hourly rates at or below $500/hour to be reasonable. A true and correct copy of the signed order is attached hereto as **Exhibit L.**

56. On December 12, 2018, Judge David M. Chapman awarded 100% of the lodestar fees requested by motion in the total amount of $115,718.75 in the matter of *Lawson v. FCA* (Riverside County Superior Court, Case No. PSC1604057). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion that were granted included my current rate of $550 per hour, the rates of $400 to $375 per hour for appearance attorneys Kirk Donnelly and Constance Morrison; $375 per hour for senior associates Christopher Swanson and Kristina Stephenson-Cheang; $350 per hour for partner Amy Morse; and $250 per hour for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit M.**

57. On December 10, 2018, Judge Bryan Foster awarded fees, costs and expenses in the total amount of $48,234.93 in the matter of *Stead v. Ford Motor Company* (San Bernardino County Superior Court, Case No. CIVDS1618876). The rates approved by Judge Foster included rates of $500 per hour for senior attorneys such as myself and Michael Rosenstein; the rate of $375 to $350 per hour for senior associates, appearance attorneys, and partners such as Kristina Stephenson-Cheang, Brian Murray, Constance Morrison, and Amy Morse; and $250 for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit N.**

58. On December 3, 2018, Judge Ronald L. Bauer awarded 100% of requested lodestar attorney's fees and costs in the total amount of $35,793.13 in the matter of *Juan Ibanez v. FCA US LLC* (Orange County Superior Court, Case No. 30-2016-00858615-CU-BC-CJC). The hourly rates awarded ranged from my rate of $550 for senior-level attorneys such as myself; $450 to $350 for senior associate Joel E. Elkins, senior associate Kristina Stephenson-Cheang, "contract/of counsel"

attorney Constance Morrison, and partner Amy Morse; $325 per hour for associate Alastair Hamblin; and $250 to $225 for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit O**.

59. On November 30, 2018, Judge Irma Asberry awarded 85% of the lodestar fees requested by motion in the total amount of $82,779.38 in the matter of *Ricardo Cuevas v. FCA* (Riverside County Superior Court, Case No. RIC1616584). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion that were granted included my current rate of $550 per hour, the rates of $375 to $350 per hour for appearance attorney Constance Morrison, associate Kristina Stephenson-Cheang, and partner Amy Morse; and $275 to $250 per hour for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit P.**

60. On November 28, 2018, Judge Katherine Bacal awarded 92% of the lodestar fees requested by motion in the total amount of $61,461.75 in the matter of *Nisa Carrillo v. FCA* (San Diego County Superior Court, Case No. 37-2017-00014078-CU-BC-CTL). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion that were granted included my current rate of $550 per hour, the rates of $375 to $350 per hour for associate Kristina Stephenson-Cheang and partner Amy Morse, $350 for attorney Lauren Veggian, and $225 per hour for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit Q.**

61. On November 19, 2018, James Di Cesare awarded 100% of the lodestar fees and costs requested by motion in the total amount of $15,460.60 in the matter of *Ayesha Whitlow v. Ford Motor Company* (Orange County Superior Court, Case

No. 30-2016-00882648-CU-BC-CJC). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion that were granted included my current rate of $550 per hour, the rates of $450 to $350 per hour for attorney Russell Higgins and partner Amy Morse, $350 for senior associate Kristina Stephenson-Cheang and attorney Hadi Gerami, and $275 to $250 per hour for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit R.**

62. On November 6, 2018, Judge Mark Borrell awarded 100% of requested lodestar attorney's fees in the amount of $54,980.00 and full requested costs in the amount of $5,337.63 in the matter of *Lisa Lorraine Buckman v. FCA US LLC* (Ventura County Superior Court, Case No. 56-2016-00490241-CU-BC-VTA). The hourly rates awarded ranged from $550 per hour for senior-level attorneys such as myself; $375 to $350 per hour for attorneys Kristina Stephenson-Cheang and Amy Morse; and $250 to $200 for younger attorneys. The overall award was 100% of the amount requested. A true and correct copy of the signed order is attached hereto as **Exhibit S.**

63. On September 25, 2018, Judge Sunshine Sykes awarded 87% of requested lodestar attorney's fees in the amount of $114,937.50 and also awarded a 1.25 multiplier in the amount of $28,734.38 in the matter of *Kantar v. FCA US LLC* (Riverside County Superior Court, Case No. RIC1606184). The hourly rates awarded ranged from my rate of $550 per hour to $450 per hour for senior-level attorneys such as myself and Russell Higgins; $425 to $300 for "contract/of counsel" attorneys such as Mary Fersch and Larry Castruita; $375 to $350 per hour for partner Amy Morse and senior associate Kristina Stephenson-Cheang; $275 for associate attorney Deepak Devabose; and $225 per hour for Thomas Burns. A true and correct

copy of the signed order is attached hereto as **Exhibit T.**

64. On September 7, 2018, Judge Joan M. Lewis awarded 100% of requested lodestar attorney's fees in the amount of $69,393.75 and full requested costs and expenses in the amount of $3,819.03 in the matter of *Edralin v. FCA US LLC* (San Diego County Superior Court, Case No. 37-2016-00020403-CU-BC-CT). The hourly rates awarded ranged from my rate of $550 for senior-level attorneys such as myself; $400 for "contract/of counsel" attorney Kirk Donnelly; $375 to $350 per hour for partner Amy Morse and senior associate Kristina Stephenson-Cheang; and $225 for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit U**.

65. On August 31, 2018, Judge Joel R. Wohlfeil awarded 87% of the lodestar fees requested by motion in the mount of 87,970.00 in the matter of *Duk v. Ford Motor Company* (San Diego County Superior Court, Case No. 37-2016-00012779-CU-BC-CTL). The court found that Knight Law's hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion included my current rate of $550 per hour; rates between $425 and $350 for partners Roger Kirnos, Lauren Ungs, and Amy Morse; rates between $400 and $375 per hour for contract/of counsel" attorneys Kirk Donnelly and Constance Morrison; and $375 per hour for senior associate Kristina Stephenson-Cheang; and $250 per hour for junior attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit V**.

66. On August 28, 2018, Judge Janet M. Frangie awarded 82% of the fees, costs and expenses requested by motion in the total amount of $9,736.76 in the matter of *Rivas v. Ford Motor Company* (San Bernardino County Superior Court, Case No. CIVDS1711898). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and

that the time incurred were reasonable. The rates requested by motion included my rate of $500 per hour, the rate of $350 per hour for Amy Morse, Hadi Gerami, and Kristina Stephenson-Cheang. A true and correct copy of the signed order is attached hereto as **Exhibit W.**

67. On August 27, 2018, Judge Randall S. Stamen awarded 100% of the lodestar fees requested by motion in the total amount of $88,327.50 in the matter of *Suazo v. FCA* (Riverside County Superior Court, Case No. RIC1607979). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion included my rate at the time of $500 per hour, the rates of $400 to $350 per hour for partners Roger Kirnos and Amy Morse, $350 for senior associates Christopher Swanson and Kristina Stephenson-Cheang, and $275 to $250 per hour for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit X**.

68. On August 27, 2018, Judge Ronald L. Bauer awarded 99% of the lodestar fees and costs requested by motion in the total amount of $30,798.08 in the matter of *Hopkins v. FCA* (Orange County Superior Court, Case No. 30-2016-00859037-CU-BC-CJC). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion included my rate of $500 per hour, rates between $375 and $350 per hour for contract/of counsel" attorneys Kirk Donnelly, Constance Morrison, and Hadi Gerami; rates between $350 and $325 for partner Amy Morse and associate Alastair Hamblin; and rates between $275 and $225 for junior associates Raymond Hay and Thomas Burns. A true and correct copy of the signed order is attached hereto as **Exhibit Y**.

///

69. On August 17, 2018, Judge Richard Strauss awarded $17,985.00 in lodestar attorney's fees and $1,767.49 in costs and expenses in the matter of *Bugiel v. Ford Motor Company* (San Diego County Superior Court, Case No. 37-2017-00011741-CU-BC-CTL), which resulted in a settlement that is more than three and a half times the total amount the plaintiff paid for the vehicle. The hourly rates awarded included my billing rate at the time of $500 per hour; $400 to $350 per hour for partners Roger Kirnos and Amy Morse; and $375 to $350 for Senior Associate Kristina Stephenson-Cheang and contract/"of counsel" attorney Kirk Donnelly. The overall award represents 100% of the amounts of the lodestar attorney's fees and costs requested. A true and correct copy of the signed order is attached hereto as **Exhibit Z**.

70. On July 25, 2018, Judge James T. Latting awarded full requested lodestar attorney's fees in the amount of $18,477.50 in attorney's fees and $2,665.15 in costs and expenses in the matter of *Meuse v. FCA US LLC* (Riverside County Superior Court, Case No. PSC1603210), which resulted in a settlement that is more than double the total amount the plaintiff paid for the vehicle. The hourly rates awarded ranged from $500 for senior-level attorneys such as myself; $350 per hour for attorneys Amy Morse, Constance Morrison, Hadi Gerami, and Kristina Stephenson-Cheang; and $225 for younger attorneys. The overall award represents almost 100% of the amount requested. A true and correct copy of the signed order is attached hereto as **Exhibit AA**.

71. On July 19, 2018, Judge Barry T. LaBarbera awarded 96% of the fees, costs and expenses requested by motion in the total amount of $173,218.61 in the matter of *Spelts v. FCA* (San Luis Obispo County Superior Court, Case No. 15CV-0470). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were

reasonable. The rates requested by motion included my rate of $500 per hour, the rate of $400 per hour for Russell Higgins and Lauren Ungs, $350 per hour for Amy Morse and Kristina Stephenson-Cheang, $325 per hour for Alastair Hamblin, and $200 per hour for Michelle Lumasag. A true and correct copy of the signed order is attached hereto as **Exhibit BB**.

72. On July 17, 2018, Judge David M. Chapman awarded $55,127.50 in attorney's fees based on a request of $60,127.50 and full $7,730.78 in costs and expenses in the matter of *Garrison v. FCA US LLC* (Riverside County Superior Court, Case No. PSC1605950), which resulted in a settlement that is more than double the total amount the plaintiff paid for the vehicle. The hourly rates awarded ranged from $500 to $490 per hour for senior-level attorneys, including me and trial counsel, Sepehr Daghighian; $350 per hour for attorneys Amy Morse, Constance Morrison, and Kristina Stephenson-Cheang; and $225 to $250 for younger attorneys. The overall award represents 92% of the amount requested. A true and correct copy of the signed order is attached hereto as **Exhibit CC.**

73. On July 13, 2018, Judge Joan M. Lewis awarded $20,960.00 in lodestar attorney's fees based on a request of $21,565.00, full $1,723.21 in costs and expenses, and a 1.5 multiplier of $10,782.50 in the matter of *Newberry v. Ford Motor Company* (San Diego County Superior Court, Case No. 37-2016-00031300-CU-BC-CTL), which resulted in a settlement that is more than three times the total amount the plaintiff paid for the vehicle. The hourly rates awarded included my billing rate of $500 per hour; $400 to $350 per hour for partners Roger Kirnos and Amy Morse; and $250 for Michael Ouziel. The overall award represents more than 100% of the amount requested. A true and correct copy of the signed order is attached hereto as **Exhibit DD.**

74. On July 11, 2018, Judge Mark Borrell awarded full requested lodestar attorney's fees in the amount of $75,557.00 and full costs and expenses in the amount of $8,912.36 in matter of *Paul v. FCA US LLC* (Ventura County Superior Court, Case No. 56-2016-00480745-CU-BC-VTA). Specifically, the Court deemed my hourly rate of $500 per hour reasonable along with trial attorney, Richard Wirtz's hourly rate of $500 per hour as reasonable. Judge Borrell determined that the hourly rates of attorneys ranging from $200 to $400 per hour were reasonable, such as Partners Amy Morse and Roger Kirnos, and Associates Christopher Swanson, Thomas Burns, Kristina Stephenson-Cheang, and Michelle Lumasag. The attorney fee award represents 100% recovery of the lodestar fees and costs requested by motion in the matter. A true and correct copy of the signed order is attached hereto as **Exhibit EE**.

75. On June 22, 2018, Judge Eddie C. Sturgeon awarded fees, costs, expenses, and a .2 multiplier as requested by motion in the total amount of $25,837.72 in the matter of *Lang v. Ford Motor Company* (San Diego County Superior Court, Case No. 37-2016-00004792-CU-BC-CTL). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion included my rate of $500 per hour, the rate of $400 per hour for Lauren Ungs, $375 per hour for Kirk Donnelly, $350 per hour for Amy Morse, Kristina Stephenson-Cheang, and Hadi Gerami, $325 per hour for Alastair Hamblin, and $250 per hour for Michael Ouziel. A true and correct copy of the signed order is attached hereto as **Exhibit FF.**

76. On June 19, 2018, Judge David M. Chapman granted full lodestar attorney fees, costs and expenses in the amount of $15,148.75 in the matter of *Kortan v. Ford Motor Company* Riverside Superior Court, Case No. PSC1702737), which

represented 100% of the fees and costs requested. Judge Chapman granted my rate of $500 per hour, $350 per hour for Amy Morse, $350 per hour for Chris Swanson, $350 per hour for Kristina Stephenson-Cheang, $325 per hour for Alastair Hamblin, and $250 for Hadi Gerami. The final order has yet to be signed but this is an accurate representation of the court's ruling. A true and correct copy of the court's ruling is attached hereto as **Exhibit GG.**

77. On June 18, 2018, Judge Daniel Ottolia awarded 95% of the requested lodestar fees and full costs and expenses requested by motion in the total amount of $20,503.00 in the matter of *Simmons v. Ford Motor Company* (Riverside County Superior Court, Case No. RIC1610619). The court indicated it would not consider rates of defense counsel and found that the hourly rates of $350 per hour for Christopher Swanson, Amy Morse, and Kristina Stephenson-Cheang were reasonable for that venue and that the time incurred was reasonable. A true and correct copy of the signed order is attached hereto as **Exhibit HH.**

78. On June 18, 2018, Judge Mark S. Borrell awarded 90% of the requested lodestar fees and full costs and expenses requested by motion in the total amount of $48,786.65 in the matter of *Perez v. FCA US LLC* (Ventura County Superior Court, Case No. 56-2016-00486433-CU-BC-VTA). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue. The rates requested by motion ranged from $500 per hour for senior-level attorneys, including me and trial counsel Michael Rosenstein, the rate of $350 per hour for Chris Swanson, Kristina Stephenson-Cheang, Hadi Gerami and Amy Morse, and $225 per hour for Thomas Burns. A true and correct copy of the signed order is attached hereto as **Exhibit II**.

79. On June 11, 2018, Judge Randall Stamen awarded $58,709.26 in attorney's fees based on a request of $65,232.50 and full costs of $7,149.84 in costs

and expenses in the matter of *Soria v. FCA US LLC* (Riverside County Superior Court, Case No. RIC1604160). The hourly rates awarded ranged from $500 per hour for senior-level attorneys, such as myself and trial counsel Richard Wirtz; $350 per hour for attorneys Christopher Swanson, Amy Morse, Constance Morrison, and Kristina Stephenson-Cheang; and $275 to $200 per hour for younger attorneys. The overall award represents 90% of the amount requested. A true and correct copy of the signed order is attached hereto as **Exhibit JJ.**

80. On June 11, 2018, Judge Stephen D. Schuett awarded 94% of the fees, costs and expenses requested by motion in the total amount of $17,202.32 in the matter of *Christensen v. Ford Motor Company* (Kern County Superior Court, Case No. BCV-16-101927). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion included my rate of $500 per hour, $350 per hour for Amy Morse and Christopher Swanson, and $250 per hour for Michael Ouziel. A true and correct copy of the signed order is attached hereto as **Exhibit KK**.

81. On June 1, 2018, Judge Glenda Sanders awarded full requested lodestar attorney fees in the amount of $98,515 and full costs and expenses in the amount of $8,045.55 in the matter of *Vargas v. FCA US LLC* (Orange County Superior Court, Case No. 30-2016-00845431-CU-BC-CJC). The hourly rates awarded ranged from $750 to $500 per hour for senior-level attorneys, such as myself, Mark O'Connor, trial counsel Richard Wirtz, and trial counsel Moses Lebovitz; $400 to $350 per hour for attorneys Roger Kirnos, Amy Morse, Constance Morrison, and Kristina Stephenson-Cheang; and $200 for younger attorney Michelle Lumasag. The overall award represents almost 99% of the amount requested. A true and correct copy of the signed order is attached hereto as **Exhibit LL.**

82. On May 18, 2018, Judge Bryan F. Foster awarded $37,405.00 in attorney fees and full costs and expenses in the matter of *Bahna v. Ford Motor Company* (San Bernardino County Superior Court, Case No. CIVDS 1602141). Specifically, the Court deemed my hourly rate of $500 per hour reasonable along with trial attorney, Sepehr Daghighian's, hourly rate of $400 per hour as reasonable. Judge Feuer determined that the hourly rates of attorneys ranging from $225 to $400 per hour were reasonable, such as Partners Lauren Ungs and Amy Morse (who were Associates at the time), and Associates Russell Higgins, Alastair Hamblin, Kristina Stephenson-Cheang, Daisy Ortiz, etc. Contract/"Of Counsel" attorney Constance Morrison was awarded her hourly rate of $350 for all time expended. The attorney fee award represents 98% recovery of the lodestar fees and costs requested by motion in the matter. A true and correct copy of the signed order is attached hereto as **Exhibit MM**.

83. On April 26, 2018, Judge Peter Wilson awarded 96% of the requested lodestar fees and full costs and expenses requested by motion in the total amount of $73,047.36 in the matter of *Hitomi v. Ford Motor Company* (Orange County Superior Court, Case No. 30-2016-00847294-CU-BC-CJC). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred was reasonable. The rates requested by motion ranged from $500 per hour for senior-level attorneys, including me and trial counsel Richard Wirtz, the rate of $350 per hour for Chris Swanson, $350 per hour for Kristina Stephenson-Cheang, $325 per hour for Alastair Hamblin, $350 per hour for Amy Morse, as well as rates of $225 per hour for Jennifer Reiz, $250 per hour for Michael Ouizel, and $225 per hour for Daniel Kalinowski. A true and correct copy of the signed order is attached hereto as **Exhibit NN**.

84. On March 1, 2018, Judge Barry T. LaBarbera awarded 95% of the

requested lodestar fees and full costs and expenses requested by motion in the total amount of $40,771.80 in the matter of *Vasquez v. Ford Motor County* (San Luis Obispo County Superior Court, Case No. 16-CV-0075). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred was reasonable. The rates requested by motion included my rate of $500 per hour, the rate of $400 per hour for Russell Higgins, $375 per hour for Lauren Ungs, $375 per hour for Roger Kirnos, $350 per hour for Amy Morse, each of whom were recently named Partners of the firm, as well as rates of $350 per hour for Kristina Stephenson-Cheang, $250 per hour for Michael Ouizel, and $225 per hour for Deepak Devabose. A true and correct copy of the signed order is attached hereto as **Exhibit OO**.

85. On February 26, 2018, Judge Angel Bermudez awarded $69,234.25 in lodestar attorney's fees and full requested costs of $6,660.29 in the matter of *Castillo v. Ford Motor Company* (Riverside County Superior Court, Case No. MCC1600116), which represents 82% of the total fees and costs requested by motion. A true and correct copy of the signed order is attached hereto as **Exhibit PP**.

86. On January 8, 2018, Judge Kent M. Kellegrew awarded 100% of the fees, costs and expenses requested by motion in the total amount of $26,065.90 in the matter of *Allem v. FCA* (Ventura County Superior Court, Case No. 56-2015-00468707). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion included my rate of $500 per hour, the rate of $400 per hour for Russell Higgins, $350 per hour for Lauren Ungs, $250 per hour for Amy Morse, each of whom were recently named Partners of the firm, as well as rates of $325 per hour for Chris Swanson, $350 per hour for Kristina Stephenson-Cheang, and $200 per hour for Deepak Devabose. A true and correct

copy of the signed order is attached hereto as **Exhibit QQ**.

87. On November 21, 2017, Judge David R. Lampe presiding in Kern County over the trial in the matter of *Marilyn West v. Hyundai Motor America* (Kern County Superior Court, Case No. BCV-16-100792) awarded 100% of the fees requested based on the same hourly rates requested here for an attorney fee award $169,148.75, plus an additional $16,431.83 in costs and expenses. The plaintiff obtained a jury verdict for treble damages, e.g. maximum civil penalties. Judge Lampe confirmed the rate of $650 per hour for trial attorney Bryan Altman, $500 per hour for myself and rates ranging from $350 to $400 per hour for Partners and mid-level Associates Russell Higgins, Kristina Stephenson-Cheang and Brian Murray, $450 per hour for Joel Elkins from the Altman Law Group, and $200 to $250 per hour for the lowest billing rate attorneys. The court awarded $350 per hour for attorney/"of counsel," Diane Hernandez. A true and correct copy of the signed order is attached hereto as **Exhibit RR**.

88. On November 17, 2017, Judge Colleen K. Sterne awarded all of the requested $54,400.17 in attorney's fees and costs and expenses in the matter of *Oksana Yudinova v. Ford Motor Company* (Santa Barbara Superior Court, Case No. 16CV00034). In doing so, the court awarded hourly rates ranging from $500 per hour for senior-level attorneys such as trial counsel, Richard Wirtz and myself, $325 to $400 per hour for mid-level Associates, $325 per hour for Associate Amy Smith from Wirtz Law, $200 to $250 for younger associates, and $175 per hour for paralegals. In total, the fee award represents 100% of the lodestar fee request. A true and correct copy of the signed order is attached hereto as **Exhibit SS**.

89. On September 15, 2017, Judge Kevin A. Enright awarded $199,248.08 in attorney's fees after trial in the matter of *Julie Harris v. Hyundai Motor America* (San Diego Superior Court, Case No. 37-2015-00019958-CU-BC-CTL). The

plaintiff obtained a maximum civil penalty jury verdict at trial. The Court found the hourly rates of the plaintiff's attorneys reasonable, including trial counsel, Bryan Altman's, rate of $650 per hour and my hourly rate of $500 per hour. The court found the hourly rates of $250 to $400 per hour for litigation attorneys, such as Russell Higgins, Lauren Ungs (trial counsel), Chris Swanson, Amy Morse and Michael Ouziel, were reasonable. The court also found that Mr. Altman's associates, Joel Elkins and Jordan Cohen, billed reasonable hourly rates of $450 and $300, respectively. The attorney fee award represents 85% of the lodestar fees requested by motion in the matter**.** A true and correct copy of the signed order is attached hereto as **Exhibit TT**.

90. On September 8, 2017, Judge Eddie C. Sturgeon awarded $226,845.00 in attorney's fees plus $46,021.71 in costs and expenses after trial in the matter of *John Aspinall v. Kia Motors America* (San Diego Superior Court, Case No. 37-2015-00002577-CU-BC-CTL). The total award amounts to $272,866.71. The plaintiff obtained a maximum civil penalty jury verdict at trial. Specifically, the Court deemed reasonable my hourly rate of $500, as well as trial attorneys, Michael Rosenstein's and Richard Wirtz', hourly rates of $500. He found that the hourly rates of $350 per hour reasonable for Lauren Ungs and a range of $200 to $250 per hour for younger attorneys. He also found that $375 and $350 per hour were reasonable for our contract attorneys, Kirk Donnelly and Constance Morrison. The attorney fee awarded represent 80% of the lodestar fees requested by motion in the matter. A true and correct copy of the signed order is attached hereto as **Exhibit UU**.

91. On August 9, 2017, Judge Craig L. Griffin awarded $59,515.00 in attorney's fees in the matter of *Jose Murillo v. FCA US LLC* (Orange County Superior Court, Case No. 30-2015-00771206-CU-BC-CJC). The Court affirmed the reasonableness of hourly rates requested by motion, specifically my rate of $500 per

hour, and rates of $300 to $350 per hour for attorneys such as Lauren Ungs, Chris Swanson, Kristina Stephenson-Cheang, Kevin Van Hout, $400 for Erin Barns from Wirtz Law, and $200 to $250 for young associates. In total, the fee award represented 97% of the lodestar fees requested, with the one reduction being time that we withdrew on our own. A true and correct copy of the signed order is attached hereto as **Exhibit VV**.

92. On May 26, 2017, my firm sought $97,221.25 in fees and $4,282.35 in costs and expenses in the matter of *Pumphrey v. Ford Motor Company* (Riverside Superior Court, Case No RIC1400402). The Court ordered the parties to meet and confer and Ford accepted a 10% reduction of fees, and Judge Gloria C. Trask issued an order for a fee and cost award for a total of $92,000.00. A true and correct copy of the signed order is attached hereto as **Exhibit WW**.

93. On May 9, 2017, Judge Sidney P. Chapin in Kern County awarded a total of $296,055.00 in attorney's fees plus $25,651.18 in costs and expenses based on a jury verdict for maximum civil penalties in the matter of *Cofield v. Kia Motors America, Inc.* (Kern County Superior Court, Case No. S-1500-CV-283504). In so doing, Judge Chapin expressly ruled that the requested hourly rates were reasonable, including a rate of $650 per hour for attorney Bryan Altman, $500 per hour for trial attorney Michael Rosenstein, $500 per hour for my rate, $375 per hour for trial attorney Roger Kirnos, and all other requested rates of $200, $225, $300, $325 and $350 per hour as reasonable for Kern County. A true and correct copy of the signed order is attached hereto as **Exhibit XX**.

94. On March 17, 2017, in the matter of *Page v. Kia Motors America, Inc.* (San Diego Superior Court, Case No. 37-2014-00023991-CU-BC-CTL), Judge Eddie C. Sturgeon granted an award of attorney's fees, costs and expenses in the amount of $271,077.16 in a case in which our clients prevailed at trial. Judge

Sturgeon ruled that the hourly rates were reasonable, including trial counsel Bryan Altman's rate of $650/hour and Roger Kirnos' rate of $375/hour. The court found my rate of $500/hour to be reasonable, as well as each of my associates and the associates of Mr. Altman who top out at $450/hour for Joel Elkins. The court's order reflects a 15% across the board reduction on the overall attorney's fees amount but expressly determined the hourly rates were reasonable. A true and correct copy of the signed order is attached hereto as **Exhibit YY**.

95. In considering the appropriate rates to charge in a matter such as this, I have reviewed a report entitled United States Consumer Law Attorney Fee Survey Report ("the Report") published in 2019 reflecting rates for 2017 to 2018. Based on the facts presented in the Report, I have determined that the rates charged by the attorneys in this case are commensurate with the hourly rates charged by other attorneys with comparable experience in consumer rights law. On Pages 1– 20, the purpose and methodology of the Report is described. On Pages 58 – 61, the Report sets forth the average hourly rates of consumer law attorneys in California based on experience. On Pages 230-231, the Report sets for the average hourly rates of consumer law attorneys in the Riverside-San Bernardino area specifically. The information reflected in these pages supports the reasonableness of the attorney hourly rates charged in this case, which are equivalent, if not below, the average rate of attorneys who practice consumer law in California. On pages 510 – 515, the Report identifies cases in California that have used this Report as supporting evidence in fee awards. The entire report is 598 pages so I have attached only the relevant pages dealing with California attorneys and California law. A true and correct copy of the relevant pages of the report is attached hereto as **Exhibit ZZ.**

96. It is not uncommon for attorney's fees and costs to exceed the client's damages. The Legislature acknowledged such a circumstance, which is the reason behind the fee shifting provision of the Song-Beverly Act. Otherwise, consumers

would be left without opportunity for redress when their damages were not enough for an attorney to take the case on a contingent fee or hourly rate basis. Such a result occurs in large part because of dealerships' or vehicle manufacturers' refusal to adhere to statutory laws protecting consumers, resistance to honoring consumers' complaints, and generally playing games or simply abusing discovery procedures.

97. Lemon law cases are not simple actions. They require a specialized understanding of the full scope of consumer protection laws, which are highly nuanced. The cases also require knowledge of intricacies of automobiles and a lexicon associated with them, as well as a knowledge concerning how to investigate these matters. They also require knowledge of auto manufacturers' and dealers' protocols for repairing vehicles.

98. Generally speaking, clients of the firm are benefitted by the experience of this firm insofar as work-product from other cases can be used in this case as well. Hence, a substantial amount of time was saved by not needing to draft each document from scratch and little time was needed to "get up to speed" in this specialized area of law. In effect, Ford also benefitted when it comes to a determination of reasonable attorney's fees to be paid because there are numerous cost-saving techniques employed by the firm.

99. As shown by the number of cases discussed herein and the positive results achieved on behalf of each client, the hourly rate is reasonable and the number of hours expended are reasonable. The fees incurred in this litigation are the direct result of Ford's own dismissive approach to handling lemon law matters.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 16th day of August 2021, at Los Angeles, California.

*/s/ Steve Mikhov*
STEVE MIKHOV
Declarant

# EXHIBIT E

**KNIGHT LAW GROUP, LLP**
Roger Kirnos (SBN 283163)
*rogerk@knightlaw.com*
Deepak Devabose (SBN 298890)
*deepakd@knightlaw.com*
10250 Constellation Blvd., Suite 2500
Los Angeles, CA 90067
Telephone: (310) 552-2250
Fax: (310) 552-7973

Attorneys for Plaintiff,
OSWALDO SANCHEZ HERNANDEZ

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**OSWALDO SANCHEZ HERNANDEZ**,

Plaintiff,

vs.

**FORD MOTOR COMPANY, a Delaware Corporation; and DOES 1 through 10, inclusive**,

Defendants.

Case No.: 2:22-cv-03361-MWF-KS

**DECLARATION OF ROGER KIRNOS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES**

[Filed Concurrently with Plaintiff's Notice of Motion for Attorney's Fees, Costs and Expenses; Memorandum in Support Thereof; Declaration of Brian Williams]

*Case Assigned to the Honorable Michael W. Fitzgerald*

Date: January 8, 2024
Time: 10:00 a.m.
Courtroom 5A

# DECLARATION OF ROGER KIRNOS

I, Roger Kirnos, declare as follows:

1. I am an attorney at law duly licensed to practice before the courts of the State of California and attorney of record for Plaintiff OSWALDO SANCHEZ HERNANDEZ ("Plaintiff") in the instant action. I am the Managing Partner of Knight Law Group and, as such, I have personal knowledge of the following facts. If sworn as a witness, I could and would testify to them competently.

2. I make this declaration in support of Plaintiff's Motion for Attorney's Fees, Costs and Expenses ("Motion"). For the reasons set forth herein and, in the Motion, Plaintiff requests $60,110.50 in attorney's fees, costs and expenses. This amount is comprised of the legal services provided by Knight Law Group, LLP ("Knight Law") in the lodestar amount of $37,513.00 and legal services provided by Greenberg Gross LLP in the amount of $22,597.50. Plaintiff's attorneys request a reasonable "lodestar" enhancement of 0.5 in the amount of $30,055.25, for a total attorney's fee award of $90,165.75. A true and correct copy of my firm's billing is attached hereto as **Exhibit A**. Plaintiff also requests reimbursement of costs and expenses in the amount of $12,021.26. My firm advanced all of the costs in this matter. Plaintiff is concurrently filing a motion for costs that attaches Plaintiff's bill of costs. The total amount requested in fees, costs and expenses is $102,187.01.

3. On March 4, 2022, Plaintiff leased a new 2018 Ford F-150 ("Subject Vehicle") for a total lease price of $22,020.00. The vehicle was manufactured by Ford Motor Company ("Ford" or "Defendant"), which provided an express written warranty to be serviced by Ford authorized repair facilities. A true and correct copy of the Lease Agreement is attached hereto as **Exhibit B**.

4. At 11,592 miles after purchase, Plaintiff had problems with the vehicle strangely exhibiting a strong clunk from transmission and having hard shifting, so Plaintiff took it to an authorized dealership for repair. 3,000 miles later, Plaintiff returned to the dealership with the same transmission concerns. Despite taking

cumulatively around twenty-eight (28) days to attempt separate repairs to Plaintiff's defective vehicle and returning it to him each time claiming it was repaired, Plaintiff continued to experience the same problems throughout ownership

5. Despite the ongoing problems with the engine and transmission in the relatively short time span, Ford refused to acknowledge the defective nature of the vehicle and did not affirmatively offer to repurchase or replace it, as required by law. At all times, Ford had direct, contemporaneous knowledge of the vehicle's serious defects, which it records in a database called "OASIS" and its warranty repair history database. These repair records indicate each time the vehicle was presented for repair during the warranty period, as well as every time the Ford repair facility found a problem/defect attributable to Ford and billed Ford for the warranty related work.

6. Frustrated, concerned for their safety, and having lost confidence in Ford's ability to repair the vehicle, Plaintiff were forced to contact Ford's customer service center themselves and request their Subject Vehicle be repurchased or replaced in April of 2021. In response, instead of offering the total purchase price minus the statutory mileage offset allowed under the Song-Beverly Act, Ford simply strung Plaintiff along for almost two weeks before simply outright denying their reasonable request.

7. Feeling cheated, Plaintiff contacted Knight Law and told the firm about the problems with the vehicle and the way Ford treated them. After reviewing the repair history and discussions with Plaintiff, Knight Law agreed to represent them and bear the risk of litigating the case on a fully contingent basis. Because Knight Law's compensation was purely contingent, the firm faced a genuine risk of not being paid for its services for years, if at all, while advancing thousands of dollars in costs and expenses on Plaintiff's behalf. In taking on this duty, the firm was facing a litigation behemoth—Ford is a multi-billion-dollar company, with a virtually infinite litigation war-chest, that wages a battle of attrition that most firms cannot withstand.

8. As a result of Ford's failure to fix the material defects associated with the vehicle, or otherwise comply with the Song-Beverly Act's affirmative duty, which requires car manufacturers to repurchase qualifying vehicles *affirmatively* without merely sitting back and waiting for a consumer to ask for relief, Plaintiff filed a Complaint in this action in March 4, 2022 in the Los Angeles County Superior Court. Plaintiff's Complaint alleged violations of the Song-Beverly Act.

9. Ford subsequently filed its Answer in state court denying all liability and asserting twenty-four affirmative defenses on or about April 8, 2022. Doubling down on in its denial that it manufactured and sold a "lemon," Ford removed this case to federal court around the same time asserting diversity jurisdiction.

10. In January 2022, Plaintiff began researching whether the removal based in diversity jurisdiction, including the amount in controversy was timely and whether a motion for remand was appropriate. Later in June 2022, Plaintiff filed said motion for remand and Plaintiff's counsel began drafting the parties' Joint Rule 26f Report as well as meeting and conferring with Ford's counsel regarding the Joint Report. Shortly thereafter, Plaintiff prepared initial disclosures, and continued to meet and confer with Defendant on remand and the Rule 26f report.

11. In May 2022, Plaintiff diligently reviewed Ford's discovery requests and began preparing to serve interrogatories, requests for admission and requests for document production. Plaintiff also reviewed Ford's initial document production associated with its initial disclosures in August 2022.

12. Plaintiff thereafter continued to litigate this matter in an effort to prepare for trial. Pursuant to applicable Federal Rules, Plaintiff commenced meet and confer with Defendant regarding scheduling a deposition of its Person Most Qualified ("PMQ"), all dealership PMQs and all dealership personnel who had knowledge of or were involved in the repair attempts on the subject vehicle and the appropriate categories for examination.

///

13. Also in September of 2022, Plaintiff reviewed and analyzed Defendant's responses and document production to Plaintiff's written discovery requests.

14. In December 2022, Plaintiff conducted the depositions of Ford's authorized dealership Ford of Montebello, which serviced and attempted repairs on Plaintiff's defective vehicle. Plaintiff also continued to meet and confer on scheduling a PMQ deposition with Ford disagreeing to certain proposed matters for examination. On January 23, 2023, Plaintiff's counsel defended the deposition of Plaintiff. Plaintiff's meet and confer efforts resulted in Ford confirming the deposition of its Customer Relations Center Person Most Knowledgeable ("PMK") on February 7, 2023.

15. At the end of May 2023, Plaintiff prepared to take the deposition of Ford's automotive expert and took said deposition on May 24, 2023.

16. With the case appearing likely to go to trial, Plaintiff associated in trial counsel Greenberg Gross LLP to finalize trial preparations and represent Plaintiff at trial. This case ultimately settled before reaching trial thanks to the efforts of Plaintiff's counsel at mediation in July 2023.

17. On July 13, 2023, Ford sent a Rule 68 settlement offer to settle this case for $63,828.82 plus motions for attorney's fees, costs and expenses in which Plaintiff would be deemed the prevailing party. . The ultimate settlement that Plaintiff accepted on July 24, 2023 amounts to almost three (3) times the total original lease price and over $9,000 more than what Plaintiff payed to purchase the lease out. Attached as **Exhibit C** is a true and correct copy of the July 24, 2023 accepted settlement offer.

18. Up until the filing of this motion, Plaintiff attempted to settle fees and costs without a motion. However, the parties were unable to resolve attorney fees, costs and expenses – so Plaintiff filed the instant motion for attorney fees and concurrently filed motion for costs and expenses. If the parties reach a resolution on

Plaintiff's attorney fees, costs and expenses subsequent to this filing, the parties will immediately notify the Court.

**The Firm's Fees Incurred in Litigating This Matter Are Reasonable Pursuant to the Lodestar Method**

19. I am the Managing Partner at Knight Law Group, LLP. I graduated in 2009 from Southwestern University School of Law in the top 10% with cum laude honors and received several academic based scholarships including the Dean's Merit Award. While in law school, I was an oralist on the team that reached the semi-finals at the August A. Rendigs, Jr. National Products Liability Moot Court Competition. I received the CALI Excellence Award for Real Estate Transactions. I received a certificate for completing the Alternative Dispute Resolution program in Hong Kong and Beijing through Pepperdine Law School's esteemed Strauss Institute for Dispute Resolution. I was a judicial extern for then-Chief Judge Alexander Kozinski of the Ninth Circuit Court of Appeals and thereafter served as a judicial extern to Judge F. Gary Klausner of the United States District Court, Central District of California. I received a B.A. in Economics with a minor in English from the University of California at Los Angeles, where I graduated with Provost Honors in 2000. I also studied economics at the University of Westminster in London, England. I was admitted to the California State Bar in 2012. I am admitted to practice in each of the United States District Courts in California.

20. I have been prosecuting consumers' claims under the Song-Beverly Act, and other consumer statutes such as the Consumer Legal Remedies Act ("CLRA) and the Automobile Sales Finance Act ("ASFA"), since 2013. I joined Knight Law Group in 2017 as a Partner at the firm. My professional focus has been to protect consumers from large-scale abuses by automobile manufacturers. I have been involved in the settlement of hundreds of cases over the years. I have been trial counsel in over 25 consumer-protection cases that have gone to jury verdict, and was one of the trial attorneys on the team that won a record verdict of $8.2M against Ford

Motor Company, besting previous jury verdicts of $7.6M, $2.8M, and $1.6M. Three of these verdicts were in the Top 50 of all verdicts in California in the year they were rendered according to Top Verdicts, and were the #1, #2 and #5 top verdicts in the area of "Consumer Fraud, Deceptive Trade Practices, False Advertising, Fraudulent Concealment, Lemon Law" that year. In addition to litigating individual cases, I have been the lead attorney for Knight Law's clients in multiple federal Multi-District Litigation and state Judicial Counsel Coordinated Proceedings. I have represented clients in appeals and was personally and directly involved in authoring the briefing in at least 20 appeals, whether as appellant or respondent, including the following list of cases, which is not an exhaustive list of all appellate matters in which Knight Law Group was involved (Note: One asterisk (*) signifies an appeal brought as an Appellant, and two asterisks (**) signifies an appeal in which we were the Respondent):

<u>Published Opinions</u>

a. *Warren v. Kia Motors America* (2018) 30 Cal.App.5th 24; San Bernardino County, Case No. CIVDS1414575; Fourth Appellate District, Case No. SCV254959*

b. *Hanna v. Mercedes-Benz, USA* (2019) 36 Cal.App.5th 493; Los Angeles County, Case No. BC552038; Second Appellate District, Case No. B283776*

c. *Patel v. Mercedes-Benz, USA* (2019) 43 Cal.App.5th 1007; Los Angeles County, Case No. BC580425; Second Appellate District, Case No. B293813*

d. *Berroteran v. Ford Motor Company* (2019) 41 Cal.App.5th 518 (*review granted* 2/11/20); Los Angeles County, Case No. B542525; Second Appellate District, Case No. B296639*

e. *Berroteran v. Ford Motor Company* (2022) --- P.3d ----, 2022 WL 664719 Los Angeles County, Case No. B542525; California

Supreme Court, Case No. S259522

f. *Reynolds v. Ford Motor Company* (2020) 47 Cal.App.5th 1105; Sonoma County Case No. SCV254959; First Appellate District, Case No. A154811**

g. *Anderson v. Ford Motor Company* (2022) 74 Cal.App.5th 946, San Joaquin County, Case No. 39-2013-00299512-CU-BC-STK; Third Appellate District, Case No. C089603**

h. *Niedermeier v. FCA US* (2020) 56 Cal.App.5th 1052 (*review granted* 2/20/21); Los Angeles County, Case No. BC638010; Second Appellate District, Case No. B293960**

i. *Hernandez v. FCA US* (2020) 50 Cal.App.5th 329 Los Angeles County, Case No. BC668240; Second Appellate District, Case No. B296516*

j. *Reck v. FCA US* (2021) 64 Cal.App.5th 682, Alameda County, Case No. RG16836069; First Appellate District, Case No. A157966*

k. *Covert v. FCA US,* (2022) 73 Cal.App.5th 821, Los Angeles County, Case No. BC629240, Second Appellate District, Case No. B293960**

Unpublished Opinions / Pending Appeals

l. *Palombi v. FCA, US*, Solano County, Case No. FCS043387; First Appellate District, Case No. A156166*

m. *Margeson v. Ford Motor Company*, Los Angeles County, Case No. BC552038; Second Appellate District, Case No. B283776**

n. *Cofield v. Kia Motors America*, Kern County, Case No. S-1500-CV283504; Fifth Appellate District, Case No. F074977**

o. *Myers v. Ford Motor Company*, Los Angeles County, Case No.

BC638302; Second Appellate District, Case No. B297244**

p. *Cieslikowski v. FCA US* (2020) 809 Fed.Appx. 386; USDC Central Dist., Case No. 5:17-cv-00562; Ninth Circuit, Case No. 21-55874*

q. *Bowser v. Ford Motor Company*, Riverside County, Case No. MCC1301631; Fourth Appellate District, Case No. E073609**

r. *Nolan v. Ford Motor Company*, Riverside County, Case No. RIC1307491; Fourth Appellate District, Case No. E073850**

s. *Brown v. Ford Motor Company,* Butte County, Case No. 160060; Third Appellate District, Case No. C088419**

t. *Coon v. Ford Motor Company*, Riverside County, Case No. MCC1300767; Fourth Appellate District, Case No. E073138**

u. *Rodriguez v. FCA US*, Riverside County, Case No. RIC1807727; Fourth Appellate District, Case No. E73766*

v. *Madrigal v. Hyundai Motor America*, Placer County, Case No. CV00338395; Third Appellate District, Case No. C090463**

w. *Figueroa v. FCA US*, Ventura County, Case No. 56-2018-00507038; Second Appellate District, Case No. B306275*

x. *Quintero v. Ford Motor Company*, USDC Central District, Case No. 2:18-cv-01912-AB-FFM; Ninth Circuit, Case No. 20-5583*

21. In addition to the above published and unpublished opinions, my firm was also involved in numerous other notable unpublished appellate decisions such as:

<u>Notable Favorable Unpublished Opinions</u>

a. *Smart v. Ford Motor Company*, Butte County, Case No. 159509; Third Appellate District, Case No. C087422*

b. *Noflin v. Volkswagen Group of America*, Los Angeles County, Case No. BC575800; Second Appellate District, Case No.

B275638*

c. *McCullough v. FCA US* San Diego County, Case No. 37-2015-00013501-CU-BC-CTL; Fourth Appellate District, Case No. D073330*

Published opinions:

d. *Etcheson v. FCA US* (2018) 30 Cal.App.5th 831*

e. *Morris v. Hyundai Motor America* (2019) 41 Cal.App.5th 24*

f. *Montoya v. Ford Motor Company* (2020) 46 Cal.App.5th 493**

g. *Santana v. FCA US* (2020) 56 Cal.App.5th 334*

22. I am a member of, and have been a presenter at conferences, for the National Association of Consumer Affairs discussing topics including automotive fraud generally and best practices for pursuing and calculating damages to maximize consumers' recoveries. I have also presented a Continuing Legal Education course addressing recent and upcoming changes in the area of the Song-Beverly Act and other consumers statutes such as the Consumer Legal Remedies Act by educating attorneys about recent appellate decisions and upcoming appellate issues to be decided. I am also actively involved with non-profit groups such as Consumers for Auto Reliability and Safety and professional organizations such as Consumer Attorneys of California where I sit on the organization's PAC Board. I have also been voted by my peers as a Super Lawyer Rising Star each year since 2018 to present. I am a member of the Los Angeles County Bar Association and Beverly Hills Bar Association. My current billing rate is $550 and my initials are indicated in the billing as "RK".

23. Deepak Devabose is a senior associate at my firm. Mr. Devabose was admitted to the Bar in 2014 and has been working at the firm since 2015. He graduated from Pepperdine University School of Law and received his undergraduate degree from Emory University. He has earned the Certificate in Reasonable Attorney Fees from the National Association of Legal Fee Analysis,

which specializes in attorney fees and legal billing. He has been trial counsel in over a dozen Song-Beverly Act trials and continues to take cases to trial on behalf of the firm. His hourly rate was $275/hour for 2015-2020, $325/hour for 2021, $375/hour for 2022 and $425/hour for 2023. His billing entries are indicated by the initials "DD" in the billing statement exhibited to this declaration.

24. Daniel Kalinowski is a senior attorney at Knight Law. He graduated *cum laude* from the University of California Irvine with a Bachelor's Degree in History. Subsequently, Mr. Kalinowski graduated from Chapman University, Dale E. Fowler School of Law having received a CALI Excellence of the Future Award during his time as a law student. He was admitted to practice law in 2015. From 2015 to 2017, Mr. Kalinowski worked for two different firms in various practices including but not limited to construction defect employment and business litigation. Since 2017, he has worked at Knight Law handling all aspects of litigation from inception through trial and post-trial work in all venues including state and federal court and arbitration. His hourly rate was $250/hour for 2017-2020, $295/hour for 2021, $350/hour for 2022 and $400/hour for 2023. Mr. Kalinowski's billing entries are indicated by the initials "DK" in the billing statement exhibited to this declaration.

25. Elvira Kamosko is an Associate Attorney at Knight Law Group. She graduated from Southwestern Law School and was admitted to practice in 2021. Ms. Kamosko's hourly rate is $295/hour. Ms. Kamosko's billing entries are indicated by the initials "EK" in the billing statement exhibited to this declaration.

26. Heidi Alexander was an associate at my firm. She graduated from the University of Miami School of Law and received her undergraduate degree from Vanderbilt University with highest honors. Ms. Alexander was admitted into Maryland Bar in 2010 and the Virginia Bar in 2012 (the latter license is no longer active). Ms. Alexander was admitted to the California Bar in 2017 and has been working at the firm since 2019. Following Ms. Alexander's admission to the Bar,

she received her Masters degree in Legal and Forensic Psychology from the University of California, Irvine in 2019. Her hourly rate was $325/hour for 2019-2021 and $350/hour for 2022. Her billing entries are indicated by the initials “HA” in the billing statement exhibited to this declaration.

27. Jeffery Mukai, a Senior Attorney at Knight Law Group, graduated Southwestern Law School manga cum laude and was admitted to practice in 2010. He received his undergraduate degree from the University of California, Los Angeles. Prior to working at Knight Law Group, he worked for over ten years at a law firm representing corporate clients in consumer finance litigation matters as well as UCC Article 2 and 9 disputes. At Knight Law Group he has served as a Second Chair for numerous jury trials to verdict. His hourly rate in this matter is $$400/hour for 2020-2021, $450/hour for 2022 and $495/hour, and his billing entries are indicated by the initials “JKM” in the billing statement exhibited to this declaration.

28. Kamau Edwards is a Senior Trial Attorney with over 19 years of experience in the legal field. Mr. Edwards earned his law degree from The Ohio State University College of Law in 2002, where he was honored with the Moritz Law Scholarship and a Public Service Fellowship. Mr. Edwards later obtained an LL.M in Real Property Development from the University of Miami. Mr. Edwards has a distinguished record of success in civil litigation, having served as the First Chair in more than 30 trials in California. Mr. Edwards has worked for a variety of firms and government agencies, including the San Francisco Legal Division of the Department of Transportation (Caltrans), where he represented clients from 2004-2015, as a solo practitioner specializing in civil litigation and criminal law from 2016-2017, and as a HEAT attorney (HIGH EXPOSURE ATTORNEY) at Hartsuyker, Stratman Williams-Abrego, where he represented clients with life-threatening injuries or significant legal questions from 2017-2020. Mr. Edwards has also worked at Ardalan and Associates as a senior trial attorney specializing in personal injury matters from 2020-2021. His hourly rate for 2021-2022 is $450/hour,

and his billing entries can be found in the billing statement under the initials "KE".

29. Maite Colón is a Senior Associate in my office. Mrs. Colón graduated from the University of Puerto Rico School of Law in 2011 and was admitted to practice law in California in 2018. Mrs. Colón has been employed at my law firm since 2017. Mrs. Colón is also admitted to the practice of law in the State of Florida (2012), the District of Columbia (2013) as well as the United States District Court for the Central, Southern and Northern Districts of California, the Southern District of Florida and the District Court of Puerto Rico. In addition, Mrs. Colón is a member of the Consumer Attorneys of California ("CAOC") and holds a Certificate in Mediation and International Commercial Arbitration from the Humboldt-Universität zu Berlin (2010). Prior to joining my firm, Mrs. Colón worked at an international law firm advising clients in the energy sector and gaining valuable experience in the areas of project finance, commercial transactional work and international law representing international clientele. Mrs. Colón also served as legislative advisor to the Government of the Commonwealth of Puerto Rico in 2013. Mrs. Colón's hourly rate was $300/hour for 2017-2020, $345/hour for 2021, $395/hour for 2022, and $425/hour for 2023 and her billing entries are indicated by the initials "MC" in the billing statement exhibited to this declaration.

30. Maxwell Kreymer was an Associate Attorney at Knight Law Group and was admitted to the bar in 2020. Mr. Kreymer graduated from Thomas Jefferson School of Law. Prior to his admission, he was a law clerk at the firm. During his time at my firm, Mr. Kreymer has gained extensive discovery and litigation experience. Mr. Kreymer is fluent in Russian. Mr. Kreymer's hourly rate was $200/hour for 2020, $250/hour for 2021, $295/hour for 2022 and $350/hour for 2023. Mr. Kreymer's billing entries are indicated by the initials "MK" in the billing statement exhibited to this declaration.

31. Marisa Melero is a senior associate at my firm. Ms. Melero has been employed by the firm since March of 2017. Ms. Melero graduated from University

of California Los Angeles, Southwestern Law School, and was admitted to practice law in 2015. Her prior professional experience includes employment and entertainment law where she also gained valuable experience in the area of copyright, contracts and negotiations. Ms. Melero's hourly rate was $225/hour for 2017-2020, $295/hour for 2021, $345/hour for 2022, and $395/hour for 2023. Ms. Melero's billing entries are indicated by the initials "MM" in the billing statement exhibited to this declaration.

32. Phil A Thomas is an associate with the firm and was admitted to practice in 2007. He has a J.D. from University of California, Hastings College of the Law and an L.L.M. from Southwestern Law School. His prior professional experience includes labor and employment law as well as work at different lemon law firms. His hourly billing rate is $400/hour for 2022 and $450/hour for 2023. Mr. Thomas's billing entries are indicated by the initials "PT" in the billing statement exhibited to this declaration.

33. As always, Knight Law attempts to keep attorney's fees and costs down while providing vigorous and effective representation.

34. All time billing entries were completed contemporaneously with each dated entry or near in time to the work performed. I have personally reviewed the billing entries to ensure that they appropriately reflect the time expended. I have removed or reduced any time I felt was excessive, duplicative, or otherwise unreasonable, or I have labeled the entry as a "no charge", as identified by the "N/C" in the invoice. My firm does not bill clients for secretarial support staff time other than for senior trial paralegals.

35. On January 19, 2023, Judge Malcolm Mackey awarded 100% of the attorney's fees requested in the amount of $54,338.00, and approved rates as reasonable ranging from $595/hr-$200/hr in the matter of *Victor Lozano v. Kia Motors America, Inc.* (Los Angeles Superior Court, Case No. 19STCV43316). A true and correct copy of the Order is attached hereto as **Exhibit D.**

36. On June 28, 2022, Judge Monica Bachner awarded attorney's fees in the amount of $333,801.50 out of $373,801.50 requested, and approved rates as reasonable ranging from $595/hr-$200/hr in the matter of *Sonia De Leon v. Kia Motors America, Inc.* (Los Angeles Superior Court, Case No. 19STCV11353). A true and correct copy of the Order is attached hereto as **Exhibit E.**

37. On March 8, 2022, Judge Maurice Leiter awarded 100% of the attorney's fees requested in the amount of $130,161.50, all of the costs and expenses requested in the amount of $20,236.89, and awarded rates as reasonable ranging from $650/hr-$200/hr in the matter of *Lino Bolvito v. Ford Motor Company LLC* (Los Angeles Superior Court, Case No. BC640055). A true and correct copy of the Order is attached hereto as **Exhibit F.**

38. On October 15, 2021, Judge Gregory Alarcon awarded 94% of the attorney's fees requested in the amount of $42,135.00 out of $44,935.00, 100% of the costs and expenses requested in the amount of $2,782.77, and awarded rates as reasonable ranging from $750/hr-$200/hr in the matter of *Ana Del Carmen Locayo v. Ford Motor Company LLC* (Los Angeles Superior Court, Case No. 18STCV05153). A true and correct copy of the Court's minute order is attached hereto as **Exhibit G.**

39. On June 28, 2021 Judge Armen Tamzarian awarded 99% of the attorney's fees requested in the amount of $25,229.50 out of $25,554.50 and awarded rates as reasonable ranging from $800/hr-$200/hr including $800/hr for Mr. Bryan Altman, $595/hr for Mr. Scot Wilson, and $550/hr for Mr. Steve Mikhov in the matter of *Hector Lara Mejia v. Ford Motor Company LLC* (Los Angeles Superior Court, Case No. 19STCV21898). A true and correct copy of the Court's minute order is attached hereto as **Exhibit H**.

40. On November 23, 2020 Judge Anthony J. Battaglia awarded attorney's fees in the amount of $47,030.00 out of $54,732.50 requested and approved all requested rates as reasonable including my rate of $550/hr, Mr. Wirtz's rate of

$650/hr, Ms. Barns rate of $450/hr, Ms. Rotman's rate of $450/hr, Mr. Higgins' rate of $450/hr, and Ms. Morse's rate of $350/hr in the matter of *Juan Herrera and Elizabeth Herrera v. FCA US LLC* (United States District Court Southern District, Case No.: 3:17-cv-00579-AJB-BGS). A true and correct copy of the Court's minute order is attached hereto as **Exhibit I.**

41. On September 8, 2020 Judge Virginia A. Phillips awarded attorney's fees in the amount of $39,003.85 out of $48,778.75 requested and approved the following rates as reasonable; Mr. Mikhov's rate of $550/hr, Mr. Lear's rate of $595/hr, Ms. Morse's rate of $350/hr, Ms. Morrison's rate of $375/hr, Ms. Stevenson-Cheang's rate of $350/hr, Mr. Devabose's rate of $275/hr, Ms. Colon's rate of $275/hr and Mr. Kalinowski's rate of $275/hr in the matter of *Caleb Lin v. Ford of North America, LLC et al* (United States District Court Central District of California, Case No. 2:18-cv-08297-VAP-PLA). A true and correct copy of the Court's minute order is attached hereto as **Exhibit J.**

42. On August 21, 2020 Judge Barbara Meiers awarded 100% of the attorney's fees requested and awarded a ***multiplier of .5*** (based on the excellent result achieved for Plaintiff) for a total of $30,377.25 in the matter of *Jose Luis Chavez Ramirez et al v. General Motors LLC* (Los Angeles Superior Court, Case No. 19STCV08317). The Court approved all requested rates as reasonable ranging from $550/hr-$200/hr. A true and correct copy of the signed order is attached hereto as **Exhibit K**.

43. On August 13, 2020 Judge Michelle Williams Court awarded 100% of the attorney's fees requested in the amount of $71,937.50 which included approving all rates sought as reasonable including Mr. Mikhov's rate of $550/hr, co-counsel Mr. Wirtz's rate of $650/hr, Russell Higgins' rate of $450/hr, Amy Morse's rate of $350/hr, and younger attorney's rates ranging from $275/hr-$225/hr in the matter of *Misty Miranda et al. v. FCA US LLC* (Los Angeles Superior Court, Case No. BC625980). A true and correct copy of the signed judgment is attached hereto as

**Exhibit L**.

44. On July 24, 2020 Judge Michelle Williams Court awarded 100% of Knight Law Groups lodestar attorney's fees request in the amount of $211,080.00 which included approving Knight Law Group's requested hourly rates as reasonable which ranged from $550/hr-$225/hr in the matter of *Julio Hernandez v. Ford of North America, LLC* (Los Angeles Superior Court, Case No. BC666145). A true and correct copy of the Court's minute order is attached hereto as **Exhibit M**.

45. On June 23, 2020, Judge Teresa Beuadet awarded 100% of Plaintiff's attorney's fees, costs and expenses in the amount of $126,527.88 and approved all requested rates ranging from $550/hr to $200/hr in the matter of *Donald Harbert v. FCA US LLC* (Los Angeles Superior Court, Case No. BC623621). A true and correct copy of the Court's minute order is attached hereto as **Exhibit N**.

46. On March 23, 2020, Judge Barbara Scheper awarded $27,470 in attorney's fees out of $24,877.50 requested, a ***<u>1.5 multiplier</u>*** of $13,735, as well as full costs and expenses in the amount of $6,850.73 in the matter of *Eluterio Murillo v. FCA US LLC* (Los Angeles Superior Court, Case No. 18STCV06504). The Court approved all of Plaintiff's rates as reasonable which ranged from $550/hr to $200/hr. A true and correct copy of the signed order is attached hereto as **Exhibit O**.

47. On February 5, 2020, Judge Robert B. Broadbelt III awarded Knight Law Group 100% of its requested fees and costs which amounted to $16,737.50 in fees and $28,439.91 in costs in *Roman Salcedo & Tania Ortega v. FCA* (Los Angeles Superior Court, Case No. BC655659). In addition, the court approved all requested rates from $550/hr to $200/hr. A true and correct copy of the signed order is attached hereto as **Exhibit P**.

48. On January 16, 2020, Judge Yolanda Orozco granted lodestar attorney fees in the amount of $44,063.75, which represented 96% of the requested lodestar fee amount of $45,801.25, and full costs in the amount of $5,752.87 in the matter of *Shahriar Yazdanniaz v. FCA US LLC et al.* (Los Angeles Superior Court, Case No.

BC686906). In particular, the hourly rates awarded as reasonable ranged from $550 to $595 per hour for senior-level attorneys such as Mr. Mikhov, trial counsel Edward O. Lear; $450 to $350 per hour for senior attorneys Russel Higgins, Kirk Donnelly, Amy Morse, and Kristina Stephenson-Cheang, and $200 to $300 for younger attorneys. A true and correct copy of the Court's minute order is attached hereto as **Exhibit Q.**

49. On January 15, 2020, Judge Mel Red Recana granted lodestar attorney fees in the amount of $86,866.25 (which represented over 87% of the requested lodestar of $99,290.00) and in addition, awarded a ***1.2 multiplier*** of $17,377.25 stating "Plaintiff's counsel accepted this case on contingency, advanced costs, and was required to secure a settlement greater than Defendant's Section 998 offer in order to get any attorney's fees. Thus Plaintiff's counsel took on financial risk in accepting this case and litigating it for three years up to the date of trial in the matter of *Claudia Ewing et al. v. FCA US LLC* (Los Angeles Superior Court, Case No. BC638178). In particular, the hourly rates awarded ranged from $550 to $595 per hour for senior-level attorneys such as Steve Mikhov, trial counsel Edward O. Lear; $450 to $350 per hour for senior attorneys Russel Higgins, Amy Morse, and Kristina Stephenson-Cheang, and $200 to $300 for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit R.**

50. On August 26, 2019, Judge Gregory W. Alarcon awarded 100% of the requested lodestar attorney's fees in the amount of $51,143.50 and $14,916.21 in costs and expenses in the matter of *Tanisha Pitts vs. FCA US LLC et al.* (Los Angeles County Superior Court, Case No. BC690577). The hourly rates awarded ranged from Steve Mikhov's rate at the time of $550 for senior-level attorneys; $350 per hour for partner Amy Morse; and $375 to $300 per hour for attorneys and senior associate Kristina Stephenson-Cheang; and $200 for younger attorneys. A true and correct copy of the Court's signed ruling is attached hereto as **Exhibit S.**

///

51. On July 1, 2019, Judge Gary Klausner, awarded 100% of the lodestar attorney's fees in the amount of $49,265 in the matter of *Bruce Hung Li v. FCA US LLC* (United States District Court Central District of California, Case No. 2:17-cv-06290-R-JEM). The court found reasonable the hourly rates that ranged from $250 per hour for attorney Lauren C. Martin to $300 - $375 per hour for associates and mid-level attorneys such as Amy Morse, Kristina Stephenson-Cheang, and Christopher Urner, to $550 per hour for Steve Mikhov's and $550 per hour for trial counsel, Michael Rosenstein. A true and correct copy of the Court's minute order is attached hereto as **Exhibit T.**

52. On June 25, 2019, Judge Holly J. Fujie in the matter of *Anthony S. Carruthers v. FCA US LLC* (Los Angeles Superior Court, Case No. BC639911) awarded attorney's fees in the amount of $65,045, 100% of the amount of the lodestar fees requested, which included approving hourly rates for attorneys at my firm ranging from $550/hr-$200/hr. A true and correct copy of the signed order is attached hereto as **Exhibit U**.

53. On June 5, 2019, Judge Dennis Landin awarded attorney's fees in the amount of $63,039.25, 99% of the lodestar fees requested of $63,364.25, in the matter of *Janiece Garza v. FCA US LLC, et al* (Los Angeles Superior Court, Case No. BC635166. The Court, other than reducing Steve Mikhov's hourly rate of $550/hr to $500/hr, approved our rates ranging from $375/hr-$200/hr also awarded costs and expenses in the amount of $7,249.12. A true and correct copy of the Court's signed ruling is attached hereto as **Exhibit V**.

54. On April 9, 2019, Judge Teresa A. Beaudet awarded 100% of the total requested lodestar fees in the amount of $57,910 in the matter of *Chiara Di Martino vs. Hyundai Motor America* (Los Angeles County Superior Court, Case No. BC631896). The hourly rates approved ranged from $550 for managing partners of law firms such as Steve Mikhov; $350 for partner Amy Morse; $350 for senior attorney Christopher Thoms; $375 for senior associates Kristina Stephenson-Cheang

and Alastair Hamblin; and $275 to $250 for associates Deepak Devabose and Daniel Kalinowski. A true and correct copy of the Court's minute order is attached hereto as **Exhibit W**.

55. On February 20, 2019, Judge Anthony Mohr awarded 100% of the total requested lodestar fees and cost as well as ***a .2 multiplier***, totaling in the amount of $88,470.80 in the matter of *Antonio Martinez vs. FCA US LLC* (Los Angeles County Superior Court, Case No. BC624319). The range of hourly rates confirmed included $550 for managing partners of law firms such as Steve Mikhov; $350 for partner Amy Morse; and $350 for senior attorney Christopher Thoms; and $200 for younger associates. A true and correct copy of the signed order is attached hereto as **Exhibit X**.

56. On January 25, 2019, Judge Maureen Duffy-Lewis awarded 100% of requested lodestar fees and costs in the amount of $41,992.62 in the matter of *Antonious Nieuwenhuis vs. Ford Motor Company* (Los Angeles County Superior Court, Case No. BC671090). The hourly rates confirmed ranged from $550 for managing partners such as Steve Mikhov; $450 to $350 for partners Russel Higgins and Amy Morse; $375 for senior attorneys Constance Morrison and Christopher Thoms; $375 for senior associate Kristina Stephenson-Cheang; and $250 to $225 for younger associates. A true and correct copy of the Court's minute order is attached hereto as **Exhibit Y**.

57. On September 17, 2018, Judge Elizabeth Feffer awarded $33,896.17 which was 100% of the attorney's fees, costs and expenses requested in the matter of *Avilio Siciliano v. Kia Motors America, Inc.* (Los Angeles Superior Court, Case No. BC620966). The Court approved all requested rates as reasonable ranging from $500/hr-$250/hr. A true and correct copy of the Court's minute order is attached hereto as **Exhibit Z.**

58. On January 5, 2018, Judge Mel Red Recana granted 100% of the requested lodestar attorney fees in the amount of **$529,885.50 and $96,840.81** in

costs and expenses in the matter of *Charles Margeson v. Ford Motor Company* (Los Angeles Superior Court, Case No. BC549430). Judge Recana believed the firm's prowess during the four-week trial that resulted in an unprecedented almost two million dollar jury verdict warranted a ***1.8 multiplier of $423,908.40*** to be added to the fee award. In addition, the hourly rates awarded as reasonable ranged from $500 to $650 per hour for senior-level attorneys such as Steve Mikhov, trial counsel Michael Rosenstein, trial counsel Bryan Altman, and Hal Rosner; $400 to $350 per hour for senior attorneys Russel Higgins, Lauren Ungs, myself, Amy Morse, Kirk Donnelly, Constance Morrison, and Kristina Stephenson-Cheang, and $200 to $300 for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit AA.**

59. In considering the appropriate rates to charge in a matter such as this, I have reviewed a report entitled United States Consumer Law Attorney Fee Survey Report ("the Report") published in 2019 reflecting rates for 2017 to 2018. Based on the facts presented in the Report, I have determined that the rates charged by the attorneys in this case are commensurate with the hourly rates charged by other attorneys with comparable experience in consumer rights law. On Pages 1– 20, the purpose and methodology of the Report is described. On Pages 58 – 61, the Report sets forth the average hourly rates of consumer law attorneys in California based on experience. The information reflected in these pages supports the reasonableness of the attorney hourly rates charged in this case, which are equivalent, if not below, the average rate of attorneys who practice consumer law in California. On pages 510 – 515, the Report identifies cases in California that have used this Report as supporting evidence in fee awards. The entire report is 598 pages so I have attached only the relevant pages dealing with California attorneys and California law. A true and correct copy of the report is attached hereto as **Exhibit BB**.

60. I request a multiplier of 0.5 based on my contingent fee, the risk and delay in payment associated with a contingent fee scenario, and the result achieved.

Such a multiplier is reasonable and towards the low end under the established law. (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 255.) Plaintiff's attorneys are paid only if Plaintiff prevails, unlike Defendants' attorneys who get paid monthly regardless of the outcome. Moreover, Defendants' attorneys typically have a continuing and ongoing relationship, whereas this firm will most likely not have the opportunity to represent Plaintiff again.

61. It is not uncommon for attorney's fees and costs to exceed the client's damages. The Legislature acknowledged such a circumstance, which is the reason behind the fee shifting provision of the Song-Beverly Act. Otherwise, consumers would be left without opportunity for redress when their damages were not enough for an attorney to take the case on a contingent fee or hourly rate basis. Such a result occurs in large part because of dealerships' or vehicle manufacturers' refusal to adhere to statutory laws protecting consumers, resistance to honoring consumers' complaints, and generally playing games or simply abusing discovery procedures. For example, Ford could have avoided paying any attorney's fees whatsoever had it admitted to its wrongdoing early on and honored Plaintiff's prelitigation request for a buyback. Instead, Ford engaged in expensive litigation, and drove up fees and costs by, among other things, removing the case to federal court, causing Plaintiff to take or defend numerous depositions, thoroughly prepare for trial, and attend multiple court hearings.

62. Lemon law cases are not simple actions. They require a specialized understanding of the full scope of consumer protection laws, which are highly nuanced. The cases also require knowledge of intricacies of automobiles and a lexicon associated with them, as well as a knowledge concerning how to investigate these matters. They also require knowledge of auto manufacturers' and dealers' protocols for repairing vehicles.

63. Generally speaking, clients of the firm are benefitted by the experience of this firm insofar as work-product from other cases can be used in this case as well.

Hence, a substantial amount of time was saved by not needing to draft each document from scratch and little time was needed to "get up to speed" in this specialized area of law. In effect, Ford also benefitted when it comes to a determination of reasonable attorney's fees to be paid because there are numerous cost-saving techniques employed by the firm.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed November 30, 2023, at Los Angeles, California.

*/s/ Roger Kirnos*
ROGER KIRNOS

# EXHIBIT F

**KNIGHT LAW GROUP, LLP**
Roger Kirnos (SBN 283163)
*rogerk@knightlaw.com*
10250 Constellation Blvd., Suite 2500
Los Angeles, CA 90067
Telephone: (310) 552-2250
Fax: (310) 552-7973

Attorneys for Plaintiff,
RAUL BERROTERAN II

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

**RAUL BERROTERAN II,**

Plaintiff,

vs.

**FORD MOTOR COMPANY, a Delaware Corporation, and DOES 1 through 10, inclusive,**

Defendants.

Case No.: BC542525

**DECLARATION OF ROGER KIRNOS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES**

[Filed Concurrently with Plaintiff's Notice of Motion for Attorney's Fees, Costs and Expenses; Memorandum in Support Thereof, Declarations of Mark O' Connor, Cynthia Tobisman, Scot D. Wilson and Richard M. Pearl]

*Case Assigned to the Honorable Gregory Keosian*

Date: June 20, 2022
Time: 10:00 AM
Dept.: 61
Reservation No. 384133539966

**DECLARATION OF ROGER KIRNOS**

I, Roger Kirnos, declare as follows:

1. I am an attorney at law duly licensed to practice before the courts of the State of California and attorney of record for Plaintiff Raul Berroteran II ("Plaintiff") in the instant action. I am the Managing Partner of Knight Law Group and, as such, I have personal knowledge of the following facts. If sworn as a witness, I could and would testify to them competently.

2. I make this declaration in support of Plaintiff's Motion for Attorney's Fees, Costs and Expenses ("Motion"). For the reasons set forth herein and, in the Motion, Plaintiff requests $882,615.00 in attorney's fees. This amount is comprised of the legal services provided by Knight Law Group, LLP ("Knight Law") in the amount of $185,544.00, legal services provided by O'Connor Law Group ("OLG") in the amount of $34,362.00, legal services provided by Robinson Calcagnie, Inc. ("Robinson") in the amount of $73,149.00, and legal services provided by Greines, Martin, Stein & Richland LLP ("GMSR") in the amount of $589,560.00. Plaintiff's attorneys request a reasonable "lodestar" enhancement of 0.5 in the amount of $293,055.00[1], for a total attorney's fee award of $1,175,670.00. A true and correct copy of my firm's billing is attached hereto as **Exhibit A**.

3. Plaintiff also requests reimbursement of costs and expenses in the amount of $51,198.45. Our firms advanced costs/expenses in this matter. A true and correct copy of my firm's verified memorandum of costs is attached hereto as **Exhibit B.** The total amount requested in fees, costs and expenses is $1,226,868.45[2].

4. On March 2006, Plaintiff purchased a new 2006 Ford F-250 for a total sales price of $68,681.04. It was manufactured and distributed by Ford Motor Company ("Ford" or "Defendant"), which provided an express written warranty. A true and correct copy of the Retail Installment Sales Contract is attached hereto as **Exhibit C**.

5. By March 2011, the date when the engine warranty was set to expire, Plaintiff had taken the vehicle to Ford's technicians for repairs *more than eleven times*, to no avail.

---

[1] The enhancement is only sought for fees incurred at the trial level only. No enhancement is requested for appellate fees.

[2] The Altman Law Group, associated trial counsel for Plaintiff will be filing their own motion for attorney's fees, costs, and expenses

6. Faced with these ongoing problems, Ford refused to acknowledge the truck's defective nature. This was so despite the fact that Ford knew of the vehicle's issues, which Ford records in various databases accessible to its authorized repair facilities and the corporate offices.

7. Frustrated, concerned for their safety, and having lost confidence in Ford's ability to repair his truck, Plaintiff contacted the Better Business Bureau in April 2013 pursuant to Ford's customer service instructions, to request a buyback. Despite Ford's affirmative duty under the law to perform an investigation and offer relief, Ford failed to promptly repurchase or replace the truck.

8. Left with no other avenue for relief, Plaintiff contacted Knight Law Group (Knight), which agreed to represent him and bear the risk of litigating the case on a fully contingent basis. Because Knight's compensation was purely contingent, the firm faced a genuine risk of not being paid for its services for years, if at all, while advancing thousands of dollars in costs and expenses on Plaintiff's behalf—including the costs of appellate counsel, Greines, Martin, Stein & Richland, LLP (GMSR). In taking on this litigation, Knight faced a litigation behemoth—Ford is a multi-billion-dollar company with a massive war-chest, that wages a battle of attrition that most firms cannot withstand.

9. Plaintiff filed a complaint in April 2014, alleging willful violations of the Song-Beverly Act and the Consumers Legal Remedies Act, as well as fraud. He sought civil penalties and punitive damages, among other things. Plaintiff benefited from Knight's expertise and efficiency—for example, Knight billed only *one hour* to draft the 70-page complaint. A detailed complaint of this magnitude, drafted from scratch and without the benefit of Plaintiff's attorneys' specialized expertise would have taken dozens of hours. Indeed, Knight could use existing files as templates to conserve time and litigate efficiently.

10. Ford denied liability and asserted numerous affirmative defenses in their Answer.

11. Knight prepared written discovery, including 101 requests for admissions, 123 requests for production of documents, 98 special interrogatories and 27 form interrogatories. Plaintiff again benefitted from Knight's expertise and experience in litigating against Ford as just 5.6 hours were billed for drafting the entirety of this written discovery.

///

12. After Plaintiff received Ford's responses to Plaintiff's written discovery requests, Knight evaluated Ford's responses/document production, and met and conferred with Ford regarding the extensive deficiencies, then attempted to resolve the matter informally, including by narrowing their requests, agreeing to accept documents from Ford's internal corporate databases and documents that pertained only to California customers and consumers. Plaintiff also specifically identified the problems that they experienced with their vehicle by noting the specific repair orders from Ford-authorized dealership's evidencing these problems. Plaintiff also identified the documents from Ford's own warranty database—which Ford did produce in discovery—evidencing these very same concerns.

13. Ford served 28 Form Interrogatories, 33 Special Interrogatories, 23 Requests for Admission, and 25 Requests for Production of Documents. Plaintiff's counsel analyzed each request, secured Plaintiff's input, and drafted responses. Plaintiff again benefited from their counsel's experience—counsel drafted written discovery responses and prepared responsive documents for production in about 5.4 hours.

14. Ford would eventually go on over the course of its seven-year litigation onslaught to serve two *additional* sets of written discovery (totaling an additional 226 Special Interrogatories, 96 more Requests for Admission, and another 203 Requests for Production of Documents) as well as supplemental Requests for Production.

15. Plaintiff was deposed.

16. Ford inspected the Subject Vehicle.

17. Ford petitioned for coordination of this case and stay of all proceedings pending determination of that coordination. Ford's attempt to impose further delay through unnecessary coordination was denied outright on July 14, 2015.

18. In May 2016, Plaintiff attempted to mediate this case along with others against Ford over the course of a three-day mediation. Yet Plaintiff's counsel billed only .2 hours for that mediation—again, showing efficiency.

19. Plaintiff drafted notices of deposition for the dealership personnel who attempted repairs on the vehicle. These depositions were necessary to confirm the repairs attempted on the

vehicle, the days the vehicle was out for repairs, and to investigate the extent of Ford's willful failure to repurchase or replace the subject vehicle.

20. As the case approached trial, Plaintiff's counsel drafted trial documents such as a trial brief, trial witness list, trial exhibit list, and a joint statement of the case. Plaintiff's counsel drafted motions *in limine*, as well as a trial brief seeking admissibility of key evidence. With the volume of documents needed to be entered into evidence at trial, Plaintiff's counsel also drafted an evidence admissibility chart. Ford deposed one of Plaintiff's experts, Dr. Barbara Luna for both this case and another unrelated case, and the time billed was split accordingly. Plaintiff's counsel also deposed and defended the depositions of other experts, and also opposed a second vehicle inspection. This case later several other cases involving similar defective trucks that were also being litigated by Ford's counsel where Ford sent lengthy meet and confer letters that required responding—and again, Plaintiff's counsel split the fees amongst the cases. By the end of 2018, Ford filed and served *another* set of MILs which Plaintiff's counsel had to review/oppose, as needed.

21. At the end of January 2019, on the eve of trial, Ford attempted to untimely add additional expert opinions and bifurcate the trial, both of which Plaintiff's counsel reasonably opposed as the case had been pending trial for *years* at this point. By this point, Ford had also filed approximately thirty-four (34) motion *in limine*, which Plaintiff's counsel opposed. Plaintiff's counsel attended trial call on February 13, 2019, and multiple days of pre-trial arguments commenced the following day.

22. In pretrial rulings, the Court barred the use at trial of deposition testimony from Ford employees in prior actions against Ford. As this testimony was crucial to his case in chief, Plaintiff retained appellate specialists Greines, Martin, Stein & Richland LLP (GMSR) to seek writ relief. Ford preliminarily opposed Plaintiff's petition for writ of mandamus, and after Ford refused to comply with the Court of Appeal's alternative writ, Plaintiff filed a reply to the return. From the remainder of April 2019 to October 22, 2019, GMSR continued litigating before the Court of Appeal, including attending oral argument. After the Court of Appeals ruled in Plaintiff's favor, Ford filed a petition for Supreme Court review, which Plaintiff answered. The Supreme

Case 2:25-cv-04526-MWC-PVC Document 39-4 Filed 08/25/26 Page 165 of 321 Page ID #:2900

Court granted review, occasioning a full round of merits briefing in the Supreme Court, including an answering brief on the merits and a consolidated reply to the amicus curiae briefs.

23. On November 23, 2021, shortly before the December 7, oral argument in the Supreme Court, Ford offered to settle the case for $645,259.41 with attorneys' fees and costs to be determined by negotiation or motion. The settlement included a full buyback of Plaintiff's defective vehicle, incidental and consequential damages and substantial civil penalties—*more than nine times* the purchase price of the vehicle purchased fifteen years ago. After a series of discussions with counsel given the magnitude of this case, Plaintiff agreed to accept the settlement offer. Plaintiff's attorneys prepared for and presented the important oral argument to the Supreme Court, which issued its opinion on March 7, 2022. Because of the settlement, the Supreme Court had no occasion to decide the substantive merits of the parties' dispute over the admissibility of the depositions; instead, the Supreme Court concluded that the Court of Appeal had instituted the wrong test, and therefore promulgated a new test for bench and bar to use in future cases to determine when former deposition testimony would be admissible in a later trial under Evidence Code section 1291, subdivision (a). (*Berroteran v. Superior Court* (2022) 12 Cal.5th 867, 901-904.)

24. Plaintiff, as the prevailing party in this action, has made every reasonable effort to resolve the payment of Plaintiff's attorney's fees, costs, and expenses by Ford but was forced to file this Motion with the Court.

**The Firm's Fees Incurred in Litigating This Matter Are Reasonable**

**Pursuant to the Lodestar Method**

25. I am the Managing Partner at Knight Law Group, LLP. I graduated in 2009 from Southwestern University School of Law in the top 10% with cum laude honors and received several academic based scholarships including the Dean's Merit Award. While in law school, I was an oralist on the team that reached the semi-finals at the August A. Rendigs, Jr. National Products Liability Moot Court Competition. I received the CALI Excellence Award for Real Estate Transactions. I received a certificate for completing the Alternative Dispute Resolution program in Hong Kong and Beijing through Pepperdine Law School's esteemed Strauss Institute

for Dispute Resolution. I was a judicial extern for then-Chief Judge Alexander Kozinski of the Ninth Circuit Court of Appeals and thereafter served as a judicial extern to Judge F. Gary Klausner of the United States District Court, Central District of California. I received a B.A. in Economics with a minor in English from the University of California at Los Angeles, where I graduated with Provost Honors in 2000. I also studied economics at the University of Westminster in London, England. I was admitted to the California State Bar in 2012. I am admitted to practice in each of the United States District Courts in California.

26. I have been prosecuting consumers' claims under the Song-Beverly Act, and other consumer statutes such as the Consumer Legal Remedies Act ("CLRA) and the Automobile Sales Finance Act ("ASFA"), since 2013. I joined Knight Law Group in 2017 as a Partner at the firm. My professional focus has been to protect consumers from large-scale abuses by automobile manufacturers. I have been involved in the settlement of hundreds of cases over the years. I have been trial counsel in over 25 consumer-protection cases that have gone to jury verdict, and was one of the trial attorneys on the team that won a record verdict of $8.2M against Ford Motor Company, besting previous jury verdicts of $7.6M, $2.8M, and $1.6M. Three of these verdicts were in the Top 50 of all verdicts in California in the year they were rendered according to Top Verdicts, and were the #1, #2 and #5 top verdicts in the area of "Consumer Fraud, Deceptive Trade Practices, False Advertising, Fraudulent Concealment, Lemon Law" that year. In addition to litigating individual cases, I have been the lead attorney for Knight Law's clients in multiple federal Multi-District Litigation and state Judicial Counsel Coordinated Proceedings. I have represented clients in appeals and was personally and directly involved in authoring the briefing in at least 20 appeals, whether as appellant or respondent, including the following list of cases, which is not an exhaustive list of all appellate matters in which Knight Law Group was involved (Note: One asterisk (*) signifies an appeal brought as an Appellant, and two asterisks (**) signifies an appeal in which we were the Respondent):

<u>Published Opinions</u>

a. *Warren v. Kia Motors America* (2018) 30 Cal.App.5th 24; San Bernardino County, Case No. CIVDS1414575; Fourth Appellate District, Case No.

SCV254959*

b. *Hanna v. Mercedes-Benz, USA* (2019) 36 Cal.App.5th 493; Los Angeles County, Case No. BC552038; Second Appellate District, Case No. B283776*

c. *Patel v. Mercedes-Benz, USA* (2019) 43 Cal.App.5th 1007; Los Angeles County, Case No. BC580425; Second Appellate District, Case No. B293813*

d. *Berroteran v. Ford Motor Company* (2019) 41 Cal.App.5th 518 (*review granted* 2/11/20); Los Angeles County, Case No. B542525; Second Appellate District, Case No. B296639*

e. *Berroteran v. Ford Motor Company* (2022) --- P.3d ----, 2022 WL 664719 Los Angeles County, Case No. B542525; California Supreme Court, Case No. S259522

f. *Reynolds v. Ford Motor Company* (2020) 47 Cal.App.5th 1105; Sonoma County Case No. SCV254959; First Appellate District, Case No. A154811**

g. *Anderson v. Ford Motor Company* (2022) 74 Cal.App.5th 946, San Joaquin County, Case No. 39-2013-00299512-CU-BC-STK; Third Appellate District, Case No. C089603**

h. *Niedermeier v. FCA US* (2020) 56 Cal.App.5th 1052 (*review granted* 2/20/21); Los Angeles County, Case No. BC638010; Second Appellate District, Case No. B293960**

i. *Hernandez v. FCA US* (2020) 50 Cal.App.5th 329 Los Angeles County, Case No. BC668240; Second Appellate District, Case No. B296516*

j. *Reck v. FCA US* (2021) 64 Cal.App.5th 682, Alameda County, Case No. RG16836069; First Appellate District, Case No. A157966*

k. *Covert v. FCA US*, (2022) 73 Cal.App.5th 821, Los Angeles County, Case No. BC629240, Second Appellate District, Case No. B293960**

Unpublished Opinions / Pending Appeals

l. *Palombi v. FCA, US*, Solano County, Case No. FCS043387; First Appellate District, Case No. A156166*

m. *Margeson v. Ford Motor Company*, Los Angeles County, Case No. BC552038; Second Appellate District, Case No. B283776**

n. *Cofield v. Kia Motors America*, Kern County, Case No. S-1500-CV283504; Fifth Appellate District, Case No. F074977**

o. *Myers v. Ford Motor Company*, Los Angeles County, Case No. BC638302; Second Appellate District, Case No. B297244**

p. *Cieslikowski v. FCA US* (2020) 809 Fed.Appx. 386; USDC Central Dist., Case No. 5:17-cv-00562; Ninth Circuit, Case No. 21-55874*

q. *Bowser v. Ford Motor Company*, Riverside County, Case No. MCC1301631; Fourth Appellate District, Case No. E073609**

r. *Nolan v. Ford Motor Company*, Riverside County, Case No. RIC1307491; Fourth Appellate District, Case No. E073850**

s. *Brown v. Ford Motor Company*, Butte County, Case No. 160060; Third Appellate District, Case No. C088419**

t. *Coon v. Ford Motor Company*, Riverside County, Case No. MCC1300767; Fourth Appellate District, Case No. E073138**

u. *Rodriguez v. FCA US*, Riverside County, Case No. RIC1807727; Fourth Appellate District, Case No. E73766*

v. *Madrigal v. Hyundai Motor America*, Placer County, Case No. CV00338395; Third Appellate District, Case No. C090463**

w. *Figueroa v. FCA US*, Ventura County, Case No. 56-2018-00507038; Second Appellate District, Case No. B306275*

x. *Quintero v. Ford Motor Company*, USDC Central District, Case No. 2:18-cv-01912-AB-FFM; Ninth Circuit, Case No. 20-5583*

///

27. In addition to the above published and unpublished opinions, my firm was also involved in numerous other notable unpublished appellate decisions such as:

Notable Favorable Unpublished Opinions

a. *Smart v. Ford Motor Company*, Butte County, Case No. 159509; Third Appellate District, Case No. C087422*

b. *Noflin v. Volkswagen Group of America*, Los Angeles County, Case No. BC575800; Second Appellate District, Case No. B275638*

c. *McCullough v. FCA US* San Diego County, Case No. 37-2015-00013501-CU-BC-CTL; Fourth Appellate District, Case No. D073330*

Published opinions:

d. *Etcheson v. FCA US* (2018) 30 Cal.App.5th 831*

e. *Morris v. Hyundai Motor America* (2019) 41 Cal.App.5th 24*

f. *Montoya v. Ford Motor Company* (2020) 46 Cal.App.5th 493**

g. *Santana v. FCA US* (2020) 56 Cal.App.5th 334*

28. I am a member of, and have been a presenter at conferences, for the National Association of Consumer Affairs discussing topics including automotive fraud generally and best practices for pursuing and calculating damages to maximize consumers' recoveries. I have also presented a Continuing Legal Education course addressing recent and upcoming changes in the area of the Song-Beverly Act and other consumers statutes such as the Consumer Legal Remedies Act by educating attorneys about recent appellate decisions and upcoming appellate issues to be decided. I am also actively involved with non-profit groups such as Consumers for Auto Reliability and Safety and professional organizations such as Consumer Attorneys of California where I sit on the organization's PAC Board. I have also been voted by my peers as a Super Lawyer Rising Star each year since 2018 to present. I am a member of the Los Angeles County Bar Association and Beverly Hills Bar Association. My current billing rate is $500 and my initials are indicated in the billing as "RK".

29. Steve Mikhov is the former Managing Partner of the firm. He attended law school at Pepperdine University and was a judicial extern for Judge Gregory W. Alarcon of the Los

Angeles County Superior Court in 2002. He has been admitted to the State Bar of California since April 29, 2003. Mr. Mikhov has extensive experience prosecuting and resolving consumer protection matters involving motor vehicle claims. For the past approximately 18 years, he specialized in breach of warranty and fraud cases against automobile manufacturers and dealers. He was one of the attorneys who represented the Plaintiff in *Joyce v. Ford Motor Co.* (2011) 198 Cal.App.4th 1478, a leading case which extended the protections of the Lemon Law to trucks based on actual weight, not maximum capacity.

30. Prior to starting Knight Law Group, Mr. Mikhov originally worked for one of the largest consumer warranty law firms at the time, Consumer Legal Services. From April 2007 until April 2012, he was a founding partner in Romano, Stancroff & Mikhov PC where he was the Managing Partner of the firm until it was dissolved. In April 2012, he founded O'Connor & Mikhov, LLP, which was reformed in 2017 as Knight Law Group, LLP. He was the Managing Partner of the firm until 2021. His rate for this case is $550/hour. His billing entries are indicated by the initials "SBM" in the billing statement exhibited to this declaration.

31. Amy Morse is a Partner in my office. Ms. Morse has been with my firm since her admission to the bar in 2013. Prior to her admission, she was a law clerk with my office since 2012. Ms. Morse graduated from Loyola Law School. Ms. Morse's hourly rate is $350/hour for 2014-2020, $400/hour for 2021, and $425/hour for 2022. Ms. Morse's billing entries are indicated by the initials "ALM" in the billing statement exhibited to this declaration.

32. Constance Morrison is of counsel with my firm and attends vehicle inspections, defends depositions and attends hearings. Ms. Morrison has over 20 years of litigation experience. She graduated from Empire College School of Law and was admitted to practice in 1996. Ms. Morrison's hourly billing rate in this case was $375/hour, and her billing entries are signified by the initials "CM" in the billing statement exhibited to this declaration.

33. Chris Swanson is a Partner in my office. Mr. Swanson graduated from UCLA School of Law in 2011 where he distinguished himself academically. Mr. Swanson has been an attorney at my firm since 2014. His prior professional experience includes individual and class action consumer protection law. Mr. Swanson has been selected as a Rising Star by Super Lawyers

from 2018 to 2020. Mr. Swanson's billing rate in this matter is $375/hour for 2015-2020, $425/hour for 2021 and $450/hour for 2022. Mr. Swanson's billing entries are indicated by the initials "CS" in the billing statement exhibited to this declaration.

34. Daisy Ortiz was an Associate of the law firm for three years from 2012 until August of 2015. Ms. Ortiz graduated from University of California, Davis School of Law and admitted to practice in California in 2012. Ms. Ortiz's hourly rate was $225/hour. Ms. Ortiz primarily undertook the written discovery and meeting and conferring regarding discovery. Ms. Ortiz's billing entries are indicated by the initials "DO" in the billing statement exhibited to this declaration.

35. George Aguilar was an associate at Knight Law Group, LLP. He received his undergraduate degree from the University of California, Berkeley in 2011, and his law degree from the University of Maryland Carey School of Law in 2014. Mr. Aguilar was admitted to the California Bar in 2015, and spent his first year and a half practicing family law, criminal defense, personal injury and bankruptcy before joining my firm. Mr. Aguilar's hourly billing rate was $275/hour. Mr. Aguilar's billing entries are indicated by the initials "GA" in the billing statement exhibited to this declaration.

36. Kristina Stephenson-Cheang, a former associate, graduated from Western State University College of Law and was admitted to practice in 2008. Ms. Stephenson-Cheang was employed with the firm since 2013. Prior to her employment at Knight Law, she worked for a different lemon law firm gaining valuable experience in this area of law. Ms. Stephenson-Cheang's hourly rate in this matter was $375/hour. Ms. Stephenson-Cheang's billing entries are indicated by the initials "KSC" in the billing statement exhibited to this declaration.

37. Lauren Ungs is a Partner in my office. Ms. Ungs has been employed by the firm since July 12, 2012. Ms. Ungs has been a member of the California bar and actively practicing law for over eleven years. She graduated magna cum laude from Southwestern Law School in 2010. She currently specializes in consumer law, lemon law, and contract law. Prior to joining my firm, she worked for one year of practicing in the area of environmental law defense. Ms. Ungs' hourly rate is $425/hour for 2014-2020 and $450/hour for 2021. Ms. Ungs' entries are

indicated by the initials "LAU" in the billing statement exhibited to this declaration.

38. Mitchell Rosensweig was an associate at my firm. Mr. Rosensweig graduated cum laude from the University of Baltimore School of Law and was admitted to practice law in the state of Maryland in 2012. He was also admitted to practice law in Washington, D.C. in 2014. Prior to his employment with KLG, Mr. Rosensweig practiced primarily in the area of medical malpractice. Mr. Rosensweig was admitted to the California Bar in 2018. His hourly rate in this matter is $325/hour. Mr. Rosensweig's billing entries are indicated by the initials "MER" in the billing statement exhibited to this declaration.

39. Mark S. Gottlieb has been a practicing attorney since 1977. Mr. Gottlieb graduated from the University of California Los Angeles and graduated from Southwestern University School of Law. Mr. Gottlieb's hourly rate in this case was $350/hour. Mr. Gottlieb's billing entries are signified by the initials "MSG" in the billing statement exhibited to this declaration.

40. Russell Higgins was an Associate and then a Partner with the firm and was admitted to practice in 2003. Mr. Higgins graduated from Pepperdine University School of Law and his hourly rate in this matter is $450/hour for 2018-2020 and $495/hour for 2021. Mr. Higgin's billing entries are indicated by the initials "RH" in the billing statement attached to this declaration.

41. Sundeep Samra is an associate at my firm. Mr. Samra was admitted to the Bar in 2018 and has been working at the firm since then. He is a graduate of the two-year accelerated program at Southwestern Law School and received his undergraduate degree from the University of California, Los Angeles (UCLA). His hourly rate in this matter was $270/hour for 2021. His billing entries are indicated by the initials "SS" in the billing statement exhibited to this declaration.

42. Stephanie Marshall was an associate at my firm during the time she performed work on this matter. Ms. Marshall graduated from Indiana University – Purdue University Indianapolis, Robert H. McKinney School of Law and was admitted to practice in 2013. Ms. Marshall's hourly rate in this matter was $200/hour. Ms. Marshall's billing entries are indicated by the initials "STM" in the billing statement exhibited to this declaration.

43. Zachary Powell is an associate at Knight Law Group, LLP. He received his undergraduate degree from the University of California, Berkeley and his law degree from the

University of the Pacific, McGeorge School of Law. Mr. Powell was admitted to the Missouri Bar in 2013 and the California Bar in 2015. Mr. Powell's billing rate in this matter was $250/hour for 2018-2020 and $250/hour. Mr. Powell's billing entries are indicated by the initials "ZP" in the billing statement exhibited to this declaration.

44. Deepak Devabose is a senior associate at my firm. Mr. Devabose was admitted to the Bar in 2014 and has been working at the firm since 2015. He graduated from Pepperdine University School of Law and received his undergraduate degree from Emory University. He has earned the Certificate in Reasonable Attorney Fees from the National Association of Legal Fee Analysis, which specializes in attorney fees and legal billing. His hourly rate in this matter is $375/hour for 2022. His billing entries are indicated by the initials "DD" in the billing statement exhibited to this declaration.

45. As always, Knight Law attempts to keep attorney's fees and costs down while providing vigorous and effective representation.

46. All time billing entries were completed contemporaneously with each dated entry or near in time to the work performed. I have personally reviewed the billing entries to ensure that they appropriately reflect the time reasonably expended. I have removed or reduced any time I felt was excessive, duplicative, or otherwise unreasonable, or I have labeled the entry as a "no charge", as identified by the "N/C" in the invoice. My firm does not bill clients for secretarial support staff time other than for senior trial paralegals.

47. On October 15, 2021, Judge Gregory Alarcon awarded 94% of the attorney's fees requested in the amount of $42,135.00 out of $44,935.00, 100% of the costs and expenses requested in the amount of $2,782.77, and awarded rates as reasonable ranging from $750/hr-$200/hr in the matter of *Ana Del Carmen Locayo v. Ford Motor Company LLC* (Los Angeles Superior Court, Case No. 18STCV05153). A true and correct copy of the Court's minute order is attached hereto as **Exhibit D.**

48. On June 28, 2021 Judge Armen Tamzarian awarded 99% of the attorney's fees requested in the amount of $25,229.50 out of $25,554.50 and awarded rates as reasonable ranging from $800/hr-$200/hr including $800/hr for Mr. Bryan Altman, $595/hr for Mr. Scot Wilson, and

$550/hr for Mr. Steve Mikhov in the matter of *Hector Lara Mejia v. Ford Motor Company LLC* (Los Angeles Superior Court, Case No. 19STCV21898). A true and correct copy of the Court's minute order is attached hereto as **Exhibit E**.

49. On October 6, 2020 Judge John P. Doyle awarded attorney's fees in the amount of $29,839.25 out of $36,130.00 requested and approved all rates sought as reasonable ranging from $750/hr - $200/hr in the matter of *Elmer Mancia v. FCA US LLC* (Los Angeles Superior Court, Case No. 19STCV05032). A true and correct copy of the Court's minute order is attached hereto as **Exhibit F**.

50. On September 8, 2020 Judge Virginia A. Phillips awarded attorney's fees in the amount of $39,003.85 out of $48,778.75 requested and approved the following rates as reasonable; Mr. Mikhov's rate of $550/hr, Mr. Lear's rate of $595/hr, Ms. Morse's rate of $350/hr, Ms. Morrison's rate of $375/hr, Ms. Stevenson-Cheang's rate of $350/hr, Mr. Devabose's rate of $275/hr, Ms. Colon's rate of $275/hr and Mr. Kalinowski's rate of $275/hr in the matter of *Caleb Lin v. BMW of North America, LLC et al* (United States District Court Central District of California, Case No. 2:18-cv-08297-VAP-PLA). A true and correct copy of the Court's minute order is attached hereto as **Exhibit G**.

51. On August 21, 2020 Judge Barbara Meiers awarded 100% of the attorney's fees requested and awarded a ***multiplier of .5*** (based on the excellent result achieved for Plaintiff) for a total of $30,377.25 in the matter of *Jose Luis Chavez Ramirez et al v. General Motors LLC* (Los Angeles Superior Court, Case No. 19STCV08317). The Court approved all requested rates as reasonable ranging from $550/hr-$200/hr. A true and correct copy of the signed order is attached hereto as **Exhibit H**.

52. On August 13, 2020 Judge Michelle Williams Court awarded 100% of the attorney's fees requested in the amount of $71,937.50 which included approving all rates sought as reasonable including Mr. Mikhov's rate of $550/hr, co-counsel Mr. Wirtz's rate of $650/hr, Russell Higgins' rate of $450/hr, Amy Morse's rate of $350/hr, and younger attorney's rates ranging from $275/hr-$225/hr in the matter of *Misty Miranda et al. v. FCA US LLC* (Los Angeles Superior Court, Case No. BC625980). A true and correct copy of the signed judgment is attached

hereto as **Exhibit I**.

53. On July 24, 2020 Judge Michelle Williams Court awarded 100% of Knight Law Groups lodestar attorney's fees request in the amount of $211,080.00 which included approving Knight Law Group's requested hourly rates as reasonable which ranged from $550/hr-$225/hr in the matter of *Julio Hernandez v. BMW of North America, LLC* (Los Angeles Superior Court, Case No. BC666145). A true and correct copy of the Court's minute order is attached hereto as **Exhibit J**.

54. On June 25, 2020 Judge Christopher Lui awarded over 88% of Plaintiff's lodestar attorney's fees in the amount of $18,500.00 based on a request of $20,947.50 and approved all of plaintiff's rates as reasonable which ranged from $550/hr to $225/hr in the matter of *Javier Carranza et al v. FCA US LLC* (Los Angeles Superior Court Case No. 18STCV05066). A true and correct copy of the signed judgment is attached hereto as **Exhibit K**.

55. On June 23, 2020, Judge Teresa Beuadet awarded 100% of Plaintiff's attorney's fees, costs and expenses in the amount of $126,527.88 and approved all requested rates ranging from $550/hr to $200/hr in the matter of *Donald Harbert v. FCA US LLC* (Los Angeles Superior Court, Case No. BC623621). A true and correct copy of the Court's minute order is attached hereto as **Exhibit L**.

56. On March 23, 2020, Judge Barbara Scheper awarded $27,470 in attorney's fees out of $24,877.50 requested, a ***1.5 multiplier*** of $13,735, as well as full costs and expenses in the amount of $6,850.73 in the matter of *Eluterio Murillo v. FCA US LLC* (Los Angeles Superior Court, Case No. 18STCV06504). The Court approved all of plaintiff's rates as reasonable which ranged from $550/hr to $200/hr. A true and correct copy of the signed order is attached hereto as **Exhibit M**.

57. On March 10, 2020, Judge Michelle Williams awarded 100% of requested lodestar fees and costs in the amount of $196,288.75 in the matter of *Eric Covert vs. FCA US LLC et al.* (Los Angeles County Superior Court, Case No. BC629240). The hourly rates approved as reasonable ranged from $550 for managing partner Steve Mikhov; $350 for partner Amy Morse; $375 for senior attorney Constance Morrison; $375 for senior associates Kristina Stephenson-

Cheang and Chris Swanson; and $275 to $225 for younger associates. A true and correct copy of the signed judgment is attached hereto as **Exhibit N**.

58. On February 20, 2020 Judge Rafael A. Ongkeko awarded *88%* of requested lodestar fees and costs in the amount of $29,837.50 based on a request of $33,932.50 in the matter of Elizabeth *Velador et al. v. Ford Motor Company* (Los Angeles County Superior Court, Case No. BC692274). The court found reasonable the hourly rates which ranged from $550 for managing partner Steve Mikhov; $350 for partner Amy Morse; $375 for senior associates Kristina Stephenson-Cheang and Chris Swanson; and $275 to $225 for younger associates. A true and correct copy of the signed judgment is attached hereto as **Exhibit O**.

59. On February 13, 2020, Judge Kliefield awarded fees in the amount of $23,277.50 (representing about *95%* of the requested lodestar of $24,727.50) and awarded $6,184.26 the full amount of costs requested in *Hugolino Reyes v. GM* (Los Angeles Superior Court, Case No. BC704076). The Court approved as reasonable all rates requested ranging from $550/hr - $225/hr. A true and correct copy of the signed judgment is attached hereto as **Exhibit P**.

60. On February 5, 2020, Judge Robert B. Broadbelt III awarded Knight Law Group 100% of its requested fees and costs which amounted to $16,737.50 in fees and $28,439.91 in costs in *Roman Salcedo & Tania Ortega v. FCA* (Los Angeles Superior Court, Case No. BC655659). In addition, the court approved all requested rates from $550/hr to $200/hr. A true and correct copy of the signed order is attached hereto as **Exhibit Q**.

61. On January 16, 2020, Judge Yolanda Orozco granted lodestar attorney fees in the amount of $44,063.75, which represented 96% of the requested lodestar fee amount of $45,801.25, and full costs in the amount of $5,752.87 in the matter of *Shahriar Yazdanniaz v. FCA US LLC et al.* (Los Angeles Superior Court, Case No. BC686906). In particular, the hourly rates awarded as reasonable ranged from $550 to $595 per hour for senior-level attorneys such as Steve Mikhov, trial counsel Edward O. Lear; $450 to $350 per hour for senior attorneys Russel Higgins, Kirk Donnelly, Amy Morse, and Kristina Stephenson-Cheang, and $200 to $300 for younger attorneys. A true and correct copy of the Court's minute order is attached hereto as **Exhibit R**.

///

62. On January 15, 2020, Judge Mel Red Recana granted lodestar attorney fees in the amount of $86,866.25 (which represented over 87% of the requested lodestar of $99,290.00) and in addition, awarded a ***1.2 multiplier*** of $17,377.25 stating "Plaintiff's counsel accepted this case on contingency, advanced costs, and was required to secure a settlement greater than Defendant's Section 998 offer in order to get any attorney's fees. Thus Plaintiff's counsel took on financial risk in accepting this case and litigating it for three years up to the date of trial in the matter of *Claudia Ewing et al. v. FCA US LLC* (Los Angeles Superior Court, Case No. BC638178). In particular, the hourly rates awarded ranged from $550 to $595 per hour for senior-level attorneys such as Steve Mikhov, trial counsel Edward O. Lear; $450 to $350 per hour for senior attorneys Russel Higgins, Amy Morse, and Kristina Stephenson-Cheang, and $200 to $300 for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit S.**

63. On January 8, 2020, Judge Yolanda Orozco awarded fees in the amount of $28,957.50 for Knight Law Group (which represented over 94% of the requested lodestar of $30,650.00) and awarded the full costs and expenses requested in the amount of $6,470.35 in *Selene Valenzuela et al. v. GM* (Los Angeles Superior Court, Case No. BC707811).The court approved all requested rates as reasonable ranging from $550/hr-$225/hr. A true and correct copy of the Court's minute order is attached hereto as **Exhibit T**.

64. On December 10, 2019, Judge Michelle Williams expressly confirmed the reasonableness of each of the hourly rates and awarded 97% of the requested attorneys' lodestar fees in the amount of $112,065.00 out of $114,775.00 in the case of *Vickie M. Lively v. FCA US LLC et al.* (Los Angeles Superior Court, Case No. BC690576). The court ruled that managing partner Steve Mikhov's rate of $550 per hour was reasonable, trial counsel Edward O. Lear's rate of $595 per hour was reasonable, rates of $350 to $400 per hour for partner Amy Morse and attorney Matthew Evans, were reasonable, and the rate of $375 per hour was reasonable for attorney Kristina Stephenson-Cheang. A true and correct copy of the Court's minute order is attached hereto as **Exhibit U.**

65. On August 26, 2019, Judge Gregory W. Alarcon awarded 100% of the requested lodestar attorney's fees in the amount of $51,143.50 and $14,916.21 in costs and expenses in the

matter of *Tanisha Pitts vs. FCA US LLC et al.* (Los Angeles County Superior Court, Case No. BC690577). The hourly rates awarded ranged from $550 for senior-level attorneys such as Steve Mikhov; $350 per hour for partner Amy Morse; and $375 to $300 per hour for attorneys and senior associate Kristina Stephenson-Cheang; and $200 for younger attorneys. A true and correct copy of the Court's signed ruling is attached hereto as **Exhibit V.**

66. On July 1, 2019, Judge Gary Klausner, awarded 100% of the lodestar attorney's fees in the amount of $49,265 in the matter of *Bruce Hung Li v. FCA US LLC* (United States District Court Central District of California, Case No. 2:17-cv-06290-R-JEM). The court found reasonable the hourly rates that ranged from $250 per hour for attorney Lauren C. Martin to $300 - $375 per hour for associates and mid-level attorneys such as Amy Morse, Kristina Stephenson-Cheang, and Christopher Urner, to $550 per hour for Steve Mikhov and $550 per hour for trial counsel, Michael Rosenstein. A true and correct copy of the Court's minute order is attached hereto as **Exhibit W**.

67. On June 25, 2019, Judge Robert S. Draper, in the matter of *Rita Johnson v. FCA US LLC, et al.* (Los Angeles Superior Court, Case No. BC644172) awarded attorney's fees in the amount of $93,314.75, 93% of the lodestar fees requested of $100,617.25 and $13,937.42 in costs. A true and correct copy of the Court's minute order is attached hereto as **Exhibit X**.

68. On June 25, 2019, Judge Holly J. Fujie in the matter of *Anthony S. Carruthers v. FCA US LLC* (Los Angeles Superior Court, Case No. BC639911) awarded attorney's fees in the amount of $65,045, 100% of the amount of the lodestar fees requested, which included approving hourly rates for attorneys at my firm ranging from $550/hr-$200/hr. A true and correct copy of the signed order is attached hereto as **Exhibit Y**.

69. On June 5, 2019, Judge Dennis Landin awarded attorney's fees in the amount of $63,039.25, 99% of the lodestar fees requested of $63,364.25, in the matter of *Janiece Garza v. FCA US LLC, et al* (Los Angeles Superior Court, Case No. BC635166. The Court, other than reducing managing partner Steve Mikhov's hourly rate of $550/hr to $500/hr, approved our rates ranging from $375/hr-$200/hr also awarded costs and expenses in the amount of $7,249.12. A true and correct copy of the Court's signed ruling is attached hereto as **Exhibit Z**.

70. On May 30, 2019, Judge Teresa A. Beaudet in the matter of *Nicole Gaines v. FCA US LLC et al.* (Los Angeles Superior Court, Case No. BC627950) awarded attorney's fees in the amount of $79,230, 98% of the lodestar fees requested of $80,742.50. The Court approved all of our requested rates ranging from $550/hr-$225/hr. A true and correct copy of the Court's minute order is attached hereto as **Exhibit AA.**

71. On April 9, 2019, Judge Teresa A. Beaudet awarded 100% of the total requested lodestar fees in the amount of $57,910 in the matter of *Chiara Di Martino vs. Hyundai Motor America* (Los Angeles County Superior Court, Case No. BC631896). The hourly rates approved ranged from $550 for managing partner Steve Mikhov; $350 for partner Amy Morse; $350 for senior attorney Christopher Thoms; $375 for senior associates Kristina Stephenson-Cheang and Alastair Hamblin; and $275 to $250 for associates Deepak Devabose and Daniel Kalinowski. A true and correct copy of the Court's minute order is attached hereto as **Exhibit BB**.

72. On March 8, 2019, Judge John P. Doyle awarded about 93% of requested lodestar fees in the amount of $57,692.50 out of $61,965 and all of his costs expenses for a total amount of $72,951.68 in the matter of *Marcos Gastelum vs. FCA US LLC* (Los Angeles County Superior Court, Case No. BC668442). The hourly rates confirmed ranged from $550 for managing partner Steve Mikhov; $350 for partner Amy Morse; $375 for senior attorney Constance Morrison; and $375 for senior associate Kristina Stephenson-Cheang; and $275 to $225 for younger associates. A true and correct copy of the Court's minute order is attached hereto as **Exhibit CC**.

73. On February 20, 2019, Judge Anthony Mohr awarded 100% of the total requested lodestar fees and cost as well as ***a .2 multiplier***, totaling in the amount of $88,470.80 in the matter of *Antonio Martinez vs. FCA US LLC* (Los Angeles County Superior Court, Case No. BC624319). The range of hourly rates confirmed included $550 for managing partner Steve Mikhov; $350 for partner Amy Morse; and $350 for senior attorney Christopher Thoms; and $200 for younger associates. A true and correct copy of the signed order is attached hereto as **Exhibit DD**.

74. On February 13, 2019, Judge Gregory Keosian awarded about 96% of the total requested lodestar fees in the amount of $43,798 out of $45,688 and all of the requested costs and expenses for a total amount of $54,044.76 in the matter of *Alicia Haberman vs. FCA US LLC* (Los

Angeles County Superior Court, Case No. BC655846). The hourly rates confirmed ranged from $595 to $550 for managing partners of law firms such as Steve Mikhov and Edward Lear; $350 for partner Amy Morse; $375 to $300 for senior attorneys Constance Morrison, Christopher Thoms, Ilan Isaacs, and Ray Areshenko; $375 for senior associate Kristina Stephenson-Cheang; and $275 to $250 for associates Deepak Devabose, George Aguilar, and Daniel Kalinowski; and $225 for younger associates. A true and correct copy of the Court's minute order is attached hereto as **Exhibit EE**.

75. On January 25, 2019, Judge Maureen Duffy-Lewis awarded 100% of requested lodestar fees and costs in the amount of $41,992.62 in the matter of *Antonious Nieuwenhuis vs. Ford Motor Company* (Los Angeles County Superior Court, Case No. BC671090). The hourly rates confirmed ranged from $550 for managing partner Steve Mikhov; $450 to $350 for partners Russel Higgins and Amy Morse; $375 for senior attorneys Constance Morrison and Christopher Thoms; $375 for senior associate Kristina Stephenson-Cheang; and $250 to $225 for younger associates. A true and correct copy of the Court's minute order is attached hereto as **Exhibit FF**.

76. On January 23, 2019, Judge Monica Bachner awarded 100% of requested lodestar fees and costs in the amount of $41,992.62 in the matter of *Boris Yu vs. FCA US LLC* (Los Angeles County Superior Court, Case No. BC639907). The hourly rates awarded ranged from $550 for managing partner Steve Mikhov; $450 to $350 for partners Russel Higgins and Amy Morse; $375 for senior attorney Constance Morrison; $375 for senior associate Kristina Stephenson-Cheang; $275 to $250 for associates Deepak Devabose, George Aguilar, Daniel Kalinowski, and Michael Ouziel; and $225 for younger associates. A true and correct copy of the signed order is attached hereto as **Exhibit GG**.

77. On January 7, 2019, Judge David Sotelo awarded 100% of requested lodestar fees in the amount of $44,601.25 in the matter of *Maria Solis vs. FCA US LLC* (Los Angeles County Superior Court, Case No. BC656138). The hourly rates awarded ranged from $550 for managing partner Steve Mikhov; $350 for partner Amy Morse; $375 for senior attorney Constance Morrison; $375 for senior associate Kristina Stephenson-Cheang; $275 for associates Deepak Devabose and George Aguilar; and $250 to $200 for younger associates. A true and correct copy of the Court's

minute order is attached hereto as **Exhibit HH**.

78. On January 4, 2019, Judge Barbara A. Meiers awarded 100% of requested lodestar fees and costs in the amount of $64,748.78 in the matter of *Patrick Green vs. FCA US LLC* (Los Angeles County Superior Court, Case No. BC641408). The hourly rates approved ranged from $550 for senior-level attorneys such as Steve Mikhov; $350 for partner Amy Morse; $375 to $300 for senior attorneys Constance Morrison and Jon Anderson; $375 for senior associate Kristina Stephenson-Cheang; and $250 to $200 for younger associates. A true and correct copy of the Court's minute order is attached hereto as **Exhibit II**.

79. On December 10, 2018, Judge Holly J. Fujie awarded 97% of requested lodestar fees in the amount of $74,567.50 out of $76,190.00 and 100% of requested costs in the amount of $11,690.41 in the matter of *Rosa Rodriguez vs. FCA US LLC* (Los Angeles County Superior Court, Case No. BC616911). The hourly rates awarded ranged from managing partner Steve Mikhov's prior rate of $500 per hour; the prior rate of $300 for partner Amy Morse; and the prior rates of $400 to $350 per hour for senior associates Russel Higgins and Kristina Stephenson-Cheang. A true and correct copy of the signed judgment is attached hereto as **Exhibit JJ**.

80. On September 17, 2018, Judge Elizabeth Feffer awarded $33,896.17 which was 100% of the attorney's fees, costs and expenses requested in the matter of *Avilio Siciliano v. Kia Motors America, Inc.* (Los Angeles Superior Court, Case No. BC620966). The Court approved all requested rates as reasonable ranging from $500/hr-$250/hr. A true and correct copy of the Court's minute order is attached hereto as **Exhibit KK**.

81. On August 8, 2018, Judge John P. Doyle awarded 100% of the lodestar fees requested by motion in the total amount of $72,478.75 in the matter of *Geoffrey Morgan and Ambyr Morgan v. FCA* (Los Angeles County Superior Court, Case No. BC625668). The rates approved as reasonable include Steve Mikhov's rate of $500 per hour, the rate of $400 per hour for myself and Sepehr Daghighian, $375 per hour for kirk Donnelly, $350 per hour for Amy Morse and Kristina Stephenson-Cheang, $250 per hour for Deepak Devabose and George Aguilar, and $225 per hour Jennifer Reiz and Thomas Burns. A true and correct copy of the signed order is attached hereto as **Exhibit LL**.

82. On August 7, 2018, Judge David Sotello awarded 100% of the fees, costs and expenses requested by motion in the total amount of $31,656.20 in the matter of *Deiter Hadorn v. FCA* (Los Angeles County Superior Court, Case No. BC633611). The rates approved as reasonable include Steve Mikhov's rate of $500 per hour, the rate of $350 per hour for Amy Morse, Christopher Swanson, Hadi Gerami, and Kristina Stephenson-Cheang, $225 per hour for Jennifer Reiz, and $200 per hour for Michelle Lumasag. A true and correct copy of the signed order is attached hereto as **Exhibit MM**.

83. On July 31, 2018, Judge Teresa Beaudet awarded 100% of the lodestar attorneys fees in the amount of $55,312.50 in attorney's fees and $12,893.46 in costs and expenses in the matter of *Luis Marroquin et al vs. Ford Motor Company* (Los Angeles County Superior Court, Case No. BC626539). The hourly rates awarded ranged from $500 for senior-level attorneys such as Steve Mikhov; $375 to $300 per hour for "contract/of counsel" attorneys Kirk Donnelly, Constance Morrison, Hadi Gerami, and Larry Castruita; $350 per hour for partner Amy Morse and senior associate Kristina Stephenson-Cheang; and $250 for younger attorneys. A true and correct copy of the Court's minute order is attached hereto as **Exhibit NN**.

84. On July 13, 2018, Judge Deirdre Hill awarded 100% of the attorney's fees in the amount of $40,066.25 and full costs and expenses in the amount of $1,723.21 in the matter of *Everett Bell vs. FCA US LLC* (Los Angeles County Superior Court, Case No. BC631014). The hourly rates awarded as reasonable ranged from $500 for senior-level attorneys, such as Steve Mikhov and trial counsel, Michael Rosenstein; $400 to $350 per hour for attorneys Russell Higgins and Amy Morse; and $225 to $250 for Thomas Burns and Hadi Gerami. A true and correct copy of the Court's minute order is attached hereto as **Exhibit OO**.

85. On February 23, 2018, Judge John P. Doyle awarded about *90%* of the lodestar attorney's fees request in the amount of $63,705.38 out of $70,783.75 and all of Plaintiff's $8,560.21 in costs and expenses in the matter of *Aandahl vs. FCA US LLC* (Los Angeles County Superior Court, Case No. BC620824). The hourly rates awarded as reasonable ranged from $500 per hour for senior-level attorneys, including Steve Mikhov and trial counsel, Michael Rosenstein; $400 to $350 per hour for attorneys Russel Higgins, Lauren Ungs, Chris Swanson, Amy Morse,

Constance Morrison, Kristina Stephenson-Cheang, and $200 to $275 for younger attorneys. A true and correct copy of the Court's minute order is attached hereto as **Exhibit PP**.

86. On January 5, 2018, Judge Mel Red Recana granted 100% of the requested lodestar attorney fees in the amount of **$529,885.50 and $96,840.81** in costs and expenses in the matter of *Charles Margeson v. Ford Motor Company* (Los Angeles Superior Court, Case No. BC549430). Judge Recana believed the firm's prowess during the four-week trial that resulted in an unprecedented almost two million dollar jury verdict warranted a ***1.8 multiplier of $423,908.40*** to be added to the fee award. In addition, the hourly rates awarded as reasonable ranged from $500 to $650 per hour for senior-level attorneys such as Steve Mikhov, trial counsel Michael Rosenstein, trial counsel Bryan Altman, and Hal Rosner; $400 to $350 per hour for senior attorneys such as myself, Russel Higgins, Lauren Ungs, Amy Morse, Kirk Donnelly, Constance Morrison, and Kristina Stephenson-Cheang, and $200 to $300 for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit QQ**.

87. On October 31, 2017, Judge Elizabeth R. Feffer granted 100% of the attorney fees, costs and expenses in the amount of $43,527.50 in the matter of *Jesus Montes v. Ford Motor Company* (Los Angeles Superior Court, Case No. BC617619). Judge Feffer granted rates from $750 per hour for trial counsel Moses Lebovits, $500 per hour for Managing Partner Steve Mikhov, $400 per hour for Senior Associate Russell Higgins, $325 to $350 per hour for Associates Chris Swanson and Kristina Stephenson-Cheang, $350 per hour for Mr. Lebovits' associates, Ashley Arnett and Mary Fersch, $250 per hour for then-associate, now-Partner Amy Morse. A true and correct copy of the signed order is attached hereto as **Exhibit RR**.

88. On October 11, 2017, Judge Elizabeth R. Feffer awarded 98% of the attorney fees requested by motion in the matter of *Sergio Lopez v. Ford Motor Company* (Los Angeles County, Case No. 585892) in the amount of $108,750.00 out of $110,797.50, with the one reduction stemming from my firm's own withdrawal of time that was unreasonable. Judge Feffer reviewed the following hourly rates and determined them to be reasonable: $500 per hour for attorneys Steve Mikhov and Richard Wirtz, $400 per hour for attorney Russel Higgins, $300 - $350 per hour for attorneys Alistair Hamblin, Constance Morrison, Kristina Stephenson-Cheang, Amy Smith and

Erin Barns, and $250 per hour for Amy Morse and Lauren Sabb. A true and correct copy of the signed order is attached hereto as **Exhibit SS**.

89. On September 20, 2017, Judge Gail R. Feuer awarded 98% of the requested lodestar attorney's fees totaling $227,228.00 out of $231,228.000 and $31,712.55 in costs and expenses in the matter of *Anita Longin vs. Ford Motor Company* (Los Angeles Superior Court, Case No. BC564186). Specifically, the Court deemed managing partner Steve Mikhov's hourly rate of $500 per hour reasonable along with trial attorney, Sepehr Daghighian's hourly rate of $400 per hour as reasonable. Judge Feuer also determined that the hourly rates of the other associate attorneys ranging from $225 to $400 per hour were reasonable. A true and correct copy of the Court's ruling is attached hereto as **Exhibit TT**.

90. On June 19, 2017, Judge Michael J. Raphael awarded $116,872.50 in attorney's fees out of $134,975.00 requested after trial in the matter of *Tarisa Bellamy v. Mercedes Benz USA LLC* (Los Angeles Superior Court, Case No. BC597233). Plaintiff obtained a maximum treble damages jury verdict. The Court affirmed the hourly rates of the attorneys, including Moses Lebovits' rate of $750 per hour, Steve Mikhov's rate of $500 per hour and mid-level and young associates ranging from $250 to $400 per hour, as well as Attorney Ashley Arnett at $350 per hour. A true and correct copy of the Court's ruling is attached hereto as **Exhibit UU**.

91. On May 24, 2017, Judge Howard L. Halm awarded $168,000.00 in attorney's fees out of $204,795.00 requested and $27,257.19 in costs and expenses in a jury trial that resulted in a maximum civil penalty award for our client in the matter of *Omar Gomez v. Kia Motors America, Inc.* (Los Angeles County Superior Court, Case No. BC 574493). The court found the hourly rate of $500 for Steve Mikhov to be reasonable as well as those of other attorneys in my office ranging from $225 per hour for Daisy Ortiz to $350 per hour for Lauren Ungs and Kristina Stephenson-Cheang to $400 per hour for Russell Higgins. The court, on its own, *raised* my rate from the requested $375 per hour to $475 per hour. A true and correct copy of the signed order is attached hereto as **Exhibit VV**.

92. On March 15, 2017, Judge Susan Bryant-Deason awarded about 92% of the requested lodestar attorney's fees, costs and expenses in the amount of $113,398.46 out of

$123,238.46 in the matter of *Angelica Andrino v. Kia* (Los Angeles County Superior Court, Case No. BC596210), which settled on the first day of trial. A true and correct copy of the Court's minute order is attached hereto as **Exhibit WW**.

93. On February 28, 2017, Judge Ernest M. Hiroshige in Los Angeles County Superior Court awarded 100% of the requested fees in the matter of *Greg Dorfman v. BMW of North America, LLC* (Los Angeles Superior Court, Case No. BC538183) for a total attorney fee award (not including costs) of $47,732.50. Therefore, the court confirmed the reasonableness of the time expended as well as the reasonableness of the hourly rates requested, which were $500 per hour for managing partner Steve Mikhov and the rate of senior trial counsel, Rich Wirtz, $300 to $350 per hour for middle level attorneys such as Lauren Ungs, Kristina Stephenson-Cheang, Kevin Van Hout, and contract attorney/"of counsel" Constance Morrison, and $200 to $250 per hour for the younger associates, such as Daisy Ortiz, Amy Morse, Stephanie Marshall and Michael Ouziel. A true and correct copy of the Court's ruling is attached hereto as **Exhibit XX**.

94. On November 2, 2016, Judge Barbara A. Meiers in Los Angeles County Superior Court awarded 100% of the requested fees and costs in the matter of *Robert Carter and Peggy Carter v. Chrysler Group LLC* (Los Angeles Superior Court, Case No. BC495228) resulting in a total award of fees, costs and expenses in the amount of $41,466.22. The award reflects a finding that the hourly rate of $500 per hour is reasonable for managing partner Steve Mikhov and senior trial attorney, Michael Rosenstein, as well as $350 for myself and attorneys Lauren Ungs and Chris Swanson. A true and correct copy of the signed order is attached hereto as **Exhibit YY**.

95. On August 25, 2016, Judge Elizabeth A. White awarded 100% of the requested lodestar attorney fees and costs and expenses in the total sum of $84,210.90 in the matter of *Bradford Mansur v. Chrysler Group, LLC* (Los Angeles County Superior Court, Case No. BC539866). Judge White expressly approved hourly rates ranging from $600 per hour for trial counsel, Mark O'Connor, to Steve Mikhov's rate of $500 per hour to $325 - $350 per hour for mid-level attorneys such as Lauren Ungs, Chris Swanson, Shawna Melton and Kristina Stephenson-Cheang. A true and correct copy of the signed order is attached hereto as **Exhibit ZZ**.

96. On August 22, 2016, in the matter of *Kevin Kebodeaux et al v. Mercedes-Benz* (Los Angeles Superior Court, Case No. BC552037), Judge Marc R. Marmaro granted an award of attorney's fees, costs and expenses in the amount of $203,247.39 out of $215,704.14 requested (about 94%) in a case in which our clients prevailed at trial with an award of civil penalties. In so doing, the court approved rates for trial counsel Mark O'Connor at $600 per hour, Steve Mikhov at $500 per hour, mid-level attorney rates of $300 to $350 per hour and lower billing attorney rates of $225 to $250 per hour. A true and correct copy of the signed Judgment is attached hereto as **Exhibit AAA**.

97. Also on August 22, 2016, Judge John T. Doyle awarded 100% of the requested lodestar fees and costs in the case entitled *Frank Baca et al v. Chrysler Group, LLC* (Los Angeles Superior Court, Case No. BC566511). The court ruled that the time entries were reasonable as well as the hourly rates were reasonable, including the rate of $500 per hour for managing partner Steve Mikhov and senior trial counsel, Michael Rosenstein, $300 to $350 per hour for myself and attorneys Lauren Ungs, Chris Swanson, Kevin Van Hout and Constance Morrison, and $200 to $250 per hour for attorneys Stephanie Marshall, Michael Ouziel, Daisy Ortiz and Amy Morse. A true and correct copy of the signed order is attached hereto as **Exhibit BBB**.

98. On August 2, 2016, Judge Teresa A. Beaudette awarded 100% of the requested fees, costs and expenses in the matter of *Jasmine Lepe v. Chrysler Group, LLC* (Los Angeles Superior Court, Case No. BC556273) for a total of $74,712.10. . The court approved rates ranged from $650 per hour for trial counsel, Bryan Altman, to $500 per hour for Steve Mikhov, to $450 per hour for senior attorney, Joel Elkins, to $200 to $350 per hour for associates ranging from 1 year to 5 years of legal experience in California. A true and correct copy of the notice of ruling and the Court's minute order is attached hereto as **Exhibit CCC**.

99. On September 9, 2015, Judge Gregory W. Alarcon awarded 100% of the attorney's fees and costs and expenses actually incurred in the case of *Ralph Helm et al v. Chrysler* (Los Angeles County Superior Court, Case No. BC519503) in the amount of $66,172.80, thereby confirming the reasonableness of the hourly rates requested and the reasonableness of the time incurred. Judge Alarcon granted Steve Mikhov's rate of $450 per hour, trial attorneys Michael

Rosenstein and myself at rates of $450 and $300, respectively, associate rates at $300 per hour for attorneys Lauren Ungs and Kevin Van Hout and $325 per hour for Kristina Stephenson-Cheang, $350 per hour for Constance Morrison, and $200 to $250 per hour for Amy Morse, Daisy Ortiz and Stephanie Marshall. A true and correct copy of the Court's ruling is attached hereto as **Exhibit DDD**.

100. On April 20, 2015, Judge Michael P. Linfield awarded $79,081.14 in fees and costs and expenses in the matter of *Dmitry Shychko et al v. Mercedes-Benz USA* (Los Angeles Superior Court, Case No. BC533642). In addition, Judge Linfield approved all requested rates as reasonable ranging from $550/hr-$225/hr for attorneys and <u>granted a **lodestar multiplier of 1.5**</u> given that the case was taken on a contingency basis. A true and correct copy of the signed order is attached hereto as **Exhibit EEE**.

101. On October 31, 2013, Judge Abraham Khan awarded the amount of $136,701.17 in attorney's fees, costs and expenses out of $149,600.67 requested (about 91%) in the matter of *Stuart Chiavassa v Ford Motor Company*, Los Angeles Superior Court, The Court approved our requested rates ranging from $500/hr-$225/hr. A true and correct copy of the Court's ruling is attached hereto as **Exhibit FFF**.

102. On September 17, 2013, Judge Ernest M. Hiroshige awarded $28,683.75 in attorney's fees out of $35,413.75 requested and awarded a <u>***1.25 multiplier***</u> given that the case was taken on contingency and there was a delay in payment in the matter of *Brian Snell v. Ford Motor Company*, Los Angeles Superior Court Case No. BC 471985. The court approved rates ranging from $400/hr-$175/hr. A true and correct copy of the Court's ruling is attached hereto as **Exhibit GGG**.

103. On March 5, 2009, Judge Rolf M. Treu awarded 100% of the requested attorney's fees, <u>***plus a 1.33 multiplier***</u> for a total amount of $23,323.80 in William *Jeske v. Chrysler Motor Co.* (Los Angeles Superior Court Case No. BC394377). The rates approved as reasonable ranged from $400/hr-$300/hr. A true and correct copy of the Court's ruling is attached hereto as **Exhibit HHH**.

///

104. On August 20, 2008, the court awarded attorney fees in the amount of $31,255.11 which included a ***<u>1.5 multiplier</u>*** (due to the risks involved in taking this case on contingency) in *Kang v. American Honda Motor Co.* (Los Angeles County Superior Court Case No. BC379949). The court awarded rates ranging from $250/hr-$165/hr. A true and correct copy of the signed order is attached hereto as **Exhibit III**.

105. In considering the appropriate rates to charge in a matter such as this, I have reviewed a report entitled United States Consumer Law Attorney Fee Survey Report ("the Report") published in 2019 reflecting rates for 2017 to 2018. Based on the facts presented in the Report, I have determined that the rates charged by the attorneys in this case are commensurate with the hourly rates charged by other attorneys with comparable experience in consumer rights law. On Pages 1– 20, the purpose and methodology of the Report is described. On Pages 58 – 61, the Report sets forth the average hourly rates of consumer law attorneys in California based on experience. The information reflected in these pages supports the reasonableness of the attorney hourly rates charged in this case, which are equivalent, if not below, the average rate of attorneys who practice consumer law in California. On pages 510 – 515, the Report identifies cases in California that have used this Report as supporting evidence in fee awards. The entire report is 598 pages so I have attached only the relevant pages dealing with California attorneys and California law. A true and correct copy of the report is attached hereto as **Exhibit JJJ**.

106. While not controlling as to a reasonable rate for a contingent plaintiff attorney, one of Ford's trial counsel in this matter and similar matters charged $450.00 per hour for a sixth-year associate who did not attend trial, and attested that it was either at *or below* the market rate for *defense* attorneys in San Joaquin County. Attached hereto as **Exhibit KKK** is a true and correct copy of the declaration of Ford's counsel filed in the matter of *Anderson v. Ford,* San Joaquin County, case number STK-CV-UBC-2013-0007198.

107. Ford's counsel LeClairRyan represented Ford in a number of similar Ford truck engine cases, including two trials that went to verdict in 2018 and 2019. Attached hereto as **Exhibit LLL** is a true and correct copy of an excerpt from the hearing on plaintiff's motion for attorney fees in the matter of *Tanner v. Ford* (County of Riverside, Case No. MCC1301063) in

which Ford's trial counsel from LeClairRyan acknowledged that their fees were higher than Plaintiff's counsel in a similar case that settled shortly before trial.

108. I request a multiplier of 0.5 based on my contingent fee, the risk and delay in payment associated with a contingent fee scenario, and the result achieved. Such a multiplier is reasonable and towards the low end under the established law. (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 255.) Plaintiff's attorneys are paid only if Plaintiff prevails, unlike Defendants' attorneys who get paid monthly regardless of the outcome. Moreover, Defendants' attorneys typically have a continuing and ongoing relationship, whereas this firm will most likely not have the opportunity to represent Plaintiff again.

109. It is not uncommon for attorney's fees and costs to exceed the client's damages. The Legislature acknowledged such a circumstance, which is the reason behind the fee shifting provision of the Song-Beverly Act. Otherwise, consumers would be left without opportunity for redress when their damages were not enough for an attorney to take the case on a contingent fee or hourly rate basis. Such a result occurs in large part because of dealerships' or vehicle manufacturers' refusal to adhere to statutory laws protecting consumers, resistance to honoring consumers' complaints, and generally playing games or simply abusing discovery procedures. For example, Ford could have avoided paying any attorney's fees whatsoever had it admitted to its wrongdoing early on and honored Plaintiff's prelitigation request for a buyback. Instead, Ford engaged in expensive litigation.

110. Lemon law cases are not simple actions. They require a specialized understanding of the full scope of consumer protection laws, which are highly nuanced. The cases also require knowledge of intricacies of automobiles and a lexicon associated with them, as well as a knowledge concerning how to investigate these matters. They also require knowledge of auto manufacturers' and dealers' protocols for repairing vehicles.

111. Generally speaking, clients of the firm are benefitted by the experience of this firm insofar as work-product from other cases can be used in this case as well. Hence, a substantial amount of time was saved by not needing to draft each document from scratch and little time was needed to "get up to speed" in this specialized area of law. In effect, Ford also benefitted when it

comes to a determination of reasonable attorney's fees to be paid because there are numerous cost-saving techniques employed by the firm.

112. Ford utilized at least *21 attorneys and 7 law firms* in their defense of this case![3] There were undoubtedly many more attorneys, but Plaintiff does not have the benefit of reviewing Ford's internal billing records and Ford will not attach them in their opposition brief.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on Friday, May 20, 2022, at Los Angeles, California.

________________________________
ROGER KIRNOS

---

[3] This includes Matthew M. Proudfoot, Douglas A. Proudfoot, Victor L. Block, Valerie G. Larsen-Fernandez, Kelley Gural from Gates, O'Doherty, Gonter & Guy, LLP; Scott M. Erskine from Erskine Law Group; Jeff E. Scott, Jordan D. Grotzinger, Rick L. Shackelford, Daniell K. Newman, Robert S. Feund, Hannah B. Shanks-Parkin, Evelyn Cobos from Greenberg Traurig, LLP; Justin H. Sanders, Darth K. Vaughn, Sabrina C. Narain from Sanders Roberts LLP; Paul B. La Scala from Shook, Hardy & Bacon LLP; Frederic D. Cohen, Lisa Perrochet, Allison W. Meredith from Horvitz & Levy LLP; and Elizabeth McNulty from Evans Fears & Schuttert LLP.

# EXHIBIT G

**KNIGHT LAW GROUP, LLP**
Steve Mikhov (SBN 224676)
10250 Constellation Blvd., Suite 2500
Los Angeles, CA 90067
Telephone: (310) 552-2250
Fax: (310) 552-7973
Email: stevem@knightlaw.com

**THE ALTMAN LAW GROUP**
Bryan C. Altman (SBN 122976)
10250 Constellation Blvd., Suite 2500
Los Angeles, CA 90067
Telephone: (310) 277-8481
Fax: (310) 277-8483
Email: bryan@altmanlawgroup.com

Attorneys for Plaintiff,
**LEONARD COON**

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF RIVERSIDE**

**LEONARD COON,**

Plaintiff,

vs.

**FORD MOTOR COMPANY, a Delaware Corporation; and DOES 1 through 10, inclusive,**

Defendants.

Case No: MCC1300767

**DECLARATION OF STEVE MIKHOV IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

[Filed concurrently with Plaintiff's Notice of Motion and Motion for Attorneys' Fees; Memorandum in Support Thereof; Declarations of Michael H. Rosenstein, Bryan C. Altman, Hallen D. Rosner, and Cynthia E. Tobisman]

*Assigned for trial to the Honorable Daniel A. Ottolia*

Date: April 4, 2019
Time: 8:30 a.m.
Dept: 4

**DECLARATION OF STEVE MIKHOV**

I, Steve Mikhov, declare as follows:

1. I am an attorney at law duly licensed to practice before the courts of the State of California and attorney of record for Plaintiff Leonard Coon ("Plaintiff") in the instant action. I have personal knowledge of the following facts and, if sworn as a witness, I could and would testify to them competently.

2. I make this declaration in support of Plaintiff's Motion for Attorneys' Fees ("Motion"). For the reasons set forth herein and, in the Motion, Plaintiff requests $804,043.74 in attorneys' fees. This amount is comprised of the legal services provided by Knight Law Group, LLP ("Knight Law") in the amount of $481,530.00, legal services provided by the Law Office of Michael H. Rosenstein, LC ("LOMR") in the amount of $11,000.00, legal services provided by The Altman Law Group ("TALG") in the amount of $240,606.25, legal services provided by Rosner, Barry & Babbit, LLP ("Rosner") in the amount of $34,767.49 and legal services provided by Greines, Martin, Stein & Richland ("GMSR") in the amount of $36,140.00. Plaintiff's attorneys request a reasonable "lodestar" enhancement of 1.8 in the amount of $643,234.99, for a total attorneys' fee award of $1,447,278.73. A true and correct copy of my firm's billing is attached hereto as **Exhibit A.**

3. Plaintiff purchased a new 2005 Ford F-350 on July 22, 2005 for a total purchase price of $47,160.20. The vehicle was distributed by Ford Motor Company ("Defendant" or "Ford"), which provided an express written warranty. A true and correct copy of the Retail Installment Sales Contract is attached hereto as **Exhibit B.**

4. During and after the warranty period, Plaintiff brought his truck in dozens of times for severe engine problems. Despite the ongoing repairs and continued manifestation of problems, Ford refused to acknowledge the defective nature of Plaintiff's vehicle. At all times, however, Ford had direct, contemporaneous knowledge of the vehicle's serious defects, which it records in a database called "OASIS" and a warranty repair history database called "AWS." These repair records indicate each time the vehicle was presented for repair during the warranty period, as well

as every time the Ford repair facility found a problem/defect attributable to Ford and billed Ford for the work.

5. Frustrated, concerned for their safety and having lost confidence in Ford's ability to repair the vehicle, Plaintiff submitted a request for arbitration to the Better Business Bureau on or about March 12, 2013. Plaintiff's request for arbitration was denied on April 4, 2013.

6. With no other available avenue for relief, Plaintiff contacted Knight Law and told the firm about the problems with his truck and the way Ford had treated him. After reviewing the repair history and discussions with Plaintiff, Knight Law agreed to represent them and bear the risk of litigating the case on a fully contingent basis. Because Knight Law's compensation was purely contingent, the firm faced a genuine risk of not being paid for its services for years, if at all, while advancing thousands of dollars in costs and expenses on Plaintiff's behalf. In taking on this duty, the firm was facing a litigation behemoth—Ford is a multi-billion-dollar company, with a virtually infinite litigation war-chest, that wages a battle of attrition that most firms cannot withstand.

7. Prior to filing the lawsuit, Plaintiff served Ford with a demand under the Consumer Legal Remedies Act. Ford responded with a denial of all liability, despite the fact that Plaintiff had over three-dozen engine repairs.

8. Plaintiff filed a Complaint in this action on May 31, 2013, followed by a First Amended Complaint on July 2, 2013 alleging punitive damages on account of Ford's rejection of Plaintiff's CLRA demand. Plaintiff's First Amended Complaint alleged causes of action for Fraud for concealing a known engine defect, and violations of the Consumer Legal Remedies Act ("CLRA") and the Song-Beverly Act, and sought, among other things, civil penalties and punitive damages.

9. On August 12, 2013 Ford began its vigorous defense in this case, propounding requests for production of documents, requests for admissions, special interrogatories, and form interrogatories on Plaintiff. Ford also noticed the depositions of Plaintiff and made a demand for inspection of Plaintiff's defective vehicle.

10. Defendant's position in the litigation required extensive efforts on the part of Plaintiff's counsel, and they promptly began working up their case on behalf of Plaintiff. Written discovery was drafted and served on Defendant on July 18, 2013, consisting of 107 requests for admissions, 22 requests for genuineness, 122 requests for production of documents, 114 special interrogatories, and form interrogatories. Plaintiff again benefitted from Knight Law's expertise and experience in litigating against Ford as just 5.1 hours were billed for drafting the entirety of this discovery. Plaintiff's counsel are able to use existing files as templates to conserve time and litigate efficiently. Written discovery of this magnitude, drafted from scratch and without the benefit of Plaintiff's attorneys' vast knowledge, experience and specialized expertise, would have taken multitudes of the time expediently managed here.

11. On August 2, 2013, Ford filed both a demurrer and a motion to strike Plaintiff's First Amended Complaint. On August 9, 2013, Ford noticed the deposition of Plaintiff. Ford also concurrently noticed the inspection of Plaintiff's truck. Ford's demurrer was later granted in part with leave to amend. After Plaintiff filed an amended complaint, Ford again filed a demurrer and motion to strike on November 25, 2013, which were both denied. On January 28, 2014, Ford then filed its Answer to Plaintiff's Second Amended Complaint, denying all liability and asserting twenty-seven affirmative defenses.

12. Plaintiff's deposition went forward on February 18, 2014, and the vehicle was inspected on December 10, 2014. Meanwhile, Plaintiff's counsel reviewed, analyzed and annotated Ford's responses to Plaintiff's discovery. Due to Ford's improper objections and evasive responses to Plaintiff's discovery, Plaintiff began meet and confer efforts. Unfortunately, Ford refused to fully comply with its discovery obligations, leaving Plaintiff no choice but to file a Motion to Compel. At the hearing, Plaintiff's Motion to Compel was granted.

13. In total, Defendant made a document dump of over *twelve-million* pages of documents, which Plaintiff was able to review through numerous cases, achieving extreme efficiency for this matter. Notably, the hundreds of hours that it took to review these documents are *not included in Plaintiff's billing*. Similarly, some of the key depositions utilized in this case

were also not included in Plaintiff's billing.

14. At a February 9, 2015 trial setting conference, the court continued the hearing (after consulting with Ford's counsel) to June 23, 2015.

15. On March 2, 2015, Ford filed a 406-page Petition for Coordination seeking to coordinate all cases in California involving Ford trucks equipped with the 6.0L diesel engine. As a result, all cases, including this matter, were completely stayed and all trial dates were vacated, causing significant delay and prejudice to those consumers who had been waiting years for their day in court. Although Plaintiff's counsel incurred <u>substantial time</u> to oppose the petition and numerous related interim disputes and ensuing hearings, only a fraction of the total time was billed to this case. The presiding court ultimately denied the petition on July 14, 2015 but it took months to get cases like this one reset for trial. During the stay of all 6.0L engine cases, Plaintiffs' counsel was afforded time to then focus on review of the oft-mentioned 12,000,000 page document dump, which comprise the damaging internal documents. A true and correct copy of Ford's Petition is attached hereto as **Exhibit C**. Notably, Ford's Petition included a list of all 6.0 cases in California (all of which Ford was seeking to coordinate) – Plaintiff's counsel represented the vast majority of the cases. The other law firms consisted of: Premier Legal Center, APC (based in San Diego); Romano Stancroff PC (based in El Segundo); the Law Offices of Todd M. Friedman, PC (based in Beverly Hills); the Law Offices of David J. Farrell (based in Mission Viejo); and the Law Offices of William R. McGee (San Diego). Therefore, every single firm in California handling 6.0 lawsuits in 2014 was based in/near Los Angeles or San Diego.

16. Following the denial of Ford's petition for coordination, Ford filed a motion to bifurcate trial on the statute of limitations on January 18, 2016, which was later granted. In the one Ford case in which Ford did *not* file a motion to bifurcate, the court set trial for August, 2016, demonstrating the years of delay caused by Ford's request. The bench trial was scheduled for January 17, 2017.

17. With the absence of any reasonable settlement offer from Ford, the case appeared likely to go to trial. Accordingly, on or about January 19, 2016, Michael H. Rosenstein of the Law

Offices of Michael H. Rosenstein formally associated into the case to assist in preparing the case for trial.

18. On July 19, 2016, Ford served Plaintiff with an Offer to Compromise pursuant to the Code of Civil Procedure section 998 ("998 Offer") in the amount of $185,000.00. This was the first settlement offer served by Ford. According to recent arguments by Ford, the settlement offer explicitly did not include a single dollar for Plaintiff's CLRA claim, and did not provide for attorney fees under the CLRA.

19. In December 2016, Plaintiff noticed the depositions of several Ford employees and dealership personnel, including Ford's PMQ, service advisors and service technicians. These depositions were needed to obtain information regarding repairs to the vehicle, authenticate the repair orders, rebut Ford's anticipated argument that the problems with Plaintiff's vehicle were somehow caused by Plaintiff's neglect or abuse, and show Ford's control of its dealerships. The dealership's depositions went forward on December 21, 2016, and proved critical at trial.

20. At the January 17, 2017 bench trial pertaining to the application of class action tolling, Plaintiff prevailed, but it resulted in an additional year of delay and did not result in any of the efficiencies claimed by Ford.

21. The Court and Ford then wanted a bellwether trial case to move forward. The bellwether trial was set for October, 2017, with pre-trial evidence and motions to be decided on August 31, 2017. Ford failed to appear at the August 31, 2017 hearing.

22. Concurrently, Ford and Plaintiff's counsel engaged in court-ordered private mediation of several 6.0-liter diesel engine cases pending in Orange County complex court. On the first day of mediation, Ford insisted that the bellwether case, *Ferguson v. Ford* – and no other Riverside County cases – be included in the mediation. The bellwether case settled, and Ford then immediately associated in new counsel in every case. Despite Ford's insistence on a bellwether trial (and the resulting delay), Ford clearly did not want one to go forward. In response to Ford's stratagem of settling the bellwether case *immediately before jury trial*, Plaintiff' counsel requested that five cases be next set for trial simultaneously, so that either all those cases would be settled or

at least one could proceed. This matter was the first case.

23. After Ford associated in new counsel, Ford served a settlement offer for $185,000.00 –the *exact same amount* offered and rejected in July of 2016, despite coming after Plaintiff prevailed at the bench trial that Ford insisted would create efficiency and help resolve the case. Again, Ford's offer did not include a single dollar for Plaintiff's CLRA claim, and did not provide for attorney fees under the CLRA. In response, Bryan C. Altman of the Altman Law Group ("TALG") formally associated into the case as lead trial counsel on October 30, 2017.

24. With the January 2018 trial date approaching, Plaintiff's counsel kicked their trial preparation into high gear. Plaintiff's counsel prepared for and conducted the depositions of Ford's expert witnesses and defended the depositions of Plaintiff's expert witnesses. Plaintiff's counsel prepared seventeen motions in limine, proposed jury instructions, trial briefs, jury instructions, verdict forms, and other key trial documents. Plaintiff's counsel also prepared trial exhibits, reviewed important deposition transcripts, began preparing examination outlines, and prepared an opening statement.

25. On January 11, 2018, after its peremptory challenge to Judge Sunshine Sykes was denied, Ford petitioned the Court of Appeal for a writ of mandate and the case was stayed pending a decision. Plaintiff brought in appellate counsel to handle the response to Ford's writ.

26. The jury trial finally commenced on June 11, 2018. After nineteen days of testimony and arguments by counsel, the jury returned with its verdict in favor of Plaintiff on July 18, 2018 for violation of the Song-Beverly Act, violation of the Consumer Legal Remedies Act and common-law Fraud. Specifically, the jury awarded Plaintiff actual damages in the amount of $99,525.02, maximum two-time civil penalties in the amount of $176,427.62, and punitive damages in the amount of $2,500,000.00.

27. On July 19, 2018, Ford filed a motion for mistrial, which was denied.

28. Ford filed a Motion for New Trial and Judgment Notwithstanding the Verdict ("JNOV") on November 29, 2018. Veteran consumer law attorney, Hallen D. Rosner, associated into the case to assist with the post-trial motions and possible appeal by Ford. Following a hearing

on January 3, 2019, the Court denied Ford's Motion for a New Trial, and further denied Ford's Motion for JNOV *except* with respect to the amount of punitive damages. The Court reduced Plaintiff's punitive damages to 1,500,000.00. A true and correct copy of the Judgment on Jury Verdict is attached hereto as **Exhibit D.**

**Ford is a Staunch Defendant That Litigates More Aggressively Than Most Other Vehicle Manufacturers While Deceiving Consumers More Than Most Manufacturers**

29. There are vehicle manufacturers with whom this firm has had exactly zero trials, zero discovery disputes, zero motions to compel, zero fee motions. Ford Motor Company is not one of them. Since 2012, the firm has tried over 55 automotive cases. One case ended in a hung jury and two cases ended in a mistrial. Taking those two matters out, Knight Law and its trial attorneys have a win-loss record of 36 wins and 17 losses. This amounts to nearly a 70% winning percentage in trials. Of those 55 trials, Ford makes up 14 of them. In other words, Ford alone comprises 25% of all of the cases that go to trial. Of the 14 trials prosecuted against Ford, the firm has prevailed in 9 of them.

30. During the course of my years in practice, I have successfully pursued evidence during discovery that has proven damaging to the Ford. For example, Ford was compelled to produce 35,000 pages of training materials from its customer service call center. The production of these documents came only after Ford's representatives claimed for years that no such training materials existed, and perjured themselves in declarations opposing motions to compel. It was only once I flew to Melbourne, Florida to depose Abe Bush, one of Ford's customer service agents, during which he admitted that he had use of training materials. Based on that information, I pursued court orders to compel the materials. Ford's then-counsel of record from Bowman and Brooke (also initial counsel in this case), having denied the existence of training materials in countless declarations, flipped the opposition and claimed "it was a revelation" that the documents existed. Another example is Ford's attempt to conceal documents that it had produced in other class action litigation. Through continuing efforts, Ford was ordered to produce approximately 12,000,000 pages in a class document dump. The firm's attorneys spent countless hours sifting

through these pages. Once certain documents were identified and brought into evidence at trial, Ford amazingly claimed that the documents were not genuine and authentic. As a result, we sought Ford's admission of the genuineness of these documents, which Ford initially denied, but court orders eventually compelled their admission of authenticity. More recently, there was an ongoing feud in which Ford was ordered to produce customer service documents located on what is referred to as the "G: drive," but Ford ignored the order, caused a motion to compel compliance, filed motions for a protective order and a motion for reconsideration, and after almost two years of this battle finally produced the contents of that G: drive.

31. In my experience, Ford's approach to litigation is to fight at every turn, make unacceptably low offers that its attorneys know from their experience are not satisfactory, or make no offers at all, until the trial date for the case is near.

32. While there are a variety of vehicles forming the basis of breach of warranty, CLRA, and fraud claims against Ford, the prosecution of claims by my firm in representation of consumers against Ford in large part involves two particular vehicles with defects. The first is Ford's Super Duty trucks that were sold with a defective diesel engine. The second involves Ford Focus and Fiesta vehicles equipped with a malfunctioning "adaptive automatic transmission." As mentioned to some extent above, the firm's efforts have led to court orders compelling Ford to produce millions of internal documents relating to the defects in these vehicles, such as internal emails, presentations, studies, charts, tables, and graphs. I am not aware of any other firm that has successfully pursued such discovery. Such efforts have led to resounding settlements and victories in trial, though admittedly not every case has ended with a victory for the consumer. In June 2016, one of the firm's trial teams obtained a jury verdict in the amount of $1.68M against Ford on another 6.0l diesel engine vehicle that was purchased for just over $50,000.00 because it was proven by clear and convincing evidence that Ford engaged in fraudulent conduct with malicious, oppressive and/or fraudulent intent.

33. In response to that verdict, Ford ramped up its defense even more. Ford hired several new law firms to assist in its defense. Ford is now represented by the following eleven law firms in lemon law and CLRA actions against my firm:

1) King & Spalding
2) Greenberg Traurig
3) Gordon Rees Scully Mansukhani, LLP
4) Gates, O'Doherty, Gonter & Guy
5) Baker Hostetler LLP
6) Snell & Wilmer, LLP
7) Shook, Hardy & Bacon
8) The Erskine Law Group
9) LeClairRyan
10) Sanders Roberts LLP
11) Dykema Gossett

34. Recently, one of Ford's attorneys, speaking on behalf of the entire army of lawyers, proclaimed that Ford was no longer willing to discuss settlement, did not want to engage in any further mediations and fully intends to bring every case to trial unless our clients accept Ford's existing offers. A true and correct copy of that letter is attached hereto as **Exhibit E.**

35. In the context of discussing resolving a case with another plaintiff's firm, Justin Sanders of Sanders Roberts wrote in an electronic exchange that he is "focused on putting [Steve] Mikhov and [Bryan] Altman out of business!" Mr. Mikhov and Mr. Altman are the managing partners of Plaintiff's counsel's respective law firms.

36. As a result of Ford's resolute defense, attorney fees are incurred during the prosecution of the lawsuit.

**<u>The Attorneys' Hourly Rates Are Reasonable Pursuant to the Lodestar Method in Light of their Experience</u>**

37. I attended law school at Pepperdine University and I was a judicial extern for Judge Gregory W. Alarcon of the Los Angeles County Superior Court in 2002.

38. I have been admitted to the State Bar of California since April 29, 2003. Since my admission to the State Bar of California, I have specialized in consumer law.

39. I have extensive experience prosecuting and resolving consumer protection matters involving motor vehicle claims. For the past fifteen years, I have specialized in breach of warranty and fraud cases against automobile manufacturers and dealers. I was among the attorneys who represented the plaintiff in *Joyce v. Ford Motor Co.* (2011) 198 Cal.App.4th 1478, a leading case which extended the protections of the Lemon Law to trucks based on actual weight, not maximum capacity.

40. I originally worked for one of the largest consumer warranty law firms in the country, Consumer Legal Services. From April 2007 until April 2012, I was a founding partner in Romano, Stancroff & Mikhov PC. I was the Managing Partner of the firm until it was dissolved. In April 2012, I founded O'Connor & Mikhov, LLP. The firm was reformed in 2017 as Knight Law Group, LLP. I am the Managing Partner of the firm. My rate for this case was $550/hour. My billing entries are indicated by the initials "SBM" in the billing statement exhibited to this declaration.

41. Lauren Ungs is a Partner in my office. Ms. Ungs has been employed by the firm since July 12, 2012. Ms. Ungs has been a member of the California bar and actively practicing law for five years. She graduated magna cum laude from Southwestern Law School in 2010. She currently specializes in consumer law, lemon law, and contract law. Ms. Ungs current hourly rate, is $425/hour. Ms. Ungs' entries are indicated by the initials "LAU" in the billing statement exhibited to this declaration.

42. Amy Morse is a Partner in my office. Ms. Morse has been with my firm since her admission to the bar in 2013. Prior to her admission, she was a law clerk with my office since 2012. Ms. Morse graduated from Loyola Law School. Ms. Morse's hourly rate is $350/hour. Ms. Morse's billing entries are indicated by the initials "ALM" in the billing statement exhibited to

this declaration.

43. Daisy Ortiz was an Associate of the law firm for three years from 2012 until August of 2015. Ms. Ortiz graduated from University of California, Davis School of Law and admitted to practice in California in 2012. Ms. Ortiz's hourly rate was $225/hour. Ms. Ortiz primarily undertook the written discovery and meeting and conferring regarding discovery. Ms. Ortiz's billing entries are indicated by the initials "DO" in the billing statement exhibited to this declaration.

44. Kristina Stephenson-Cheang graduated from Western State University College of Law and was admitted to practice in 2008. Ms. Stephenson-Cheang has been employed with the firm since 2013. Prior to her employment at OM Law, she worked for a different lemon law firm gaining valuable experience in this area of law. Ms. Stephenson-Cheang's hourly rate in this matter is $375/hour. Ms. Stephenson-Cheang's billing entries are indicated by the initials "KSC" in the billing statement exhibited to this declaration.

45. George Aguilar is an associate at Knight Law Group, LLP. He received his undergraduate degree from the University of California, Berkeley in 2011, and his law degree from the University of Maryland Carey School of Law in 2014. Mr. Aguilar was admitted to the California Bar in 2015, and spent his first year and a half practicing family law, criminal defense, personal injury and bankruptcy before joining my firm. Mr. Aguilar's hourly billing rate is $275/hour. Mr. Aguilar's billing entries are indicated by the initials "GA" in the billing statement exhibited to this declaration.

46. Constance Morrison is a contract attorney that is very often used by my firm to attend vehicle inspections, defend depositions or attend hearings. Ms. Morrison has 20 years of litigation experience. She graduated from Empire College School of Law and was admitted to practice in 1996. Ms. Morrison's hourly billing rate in this case was $350/hour, and her billing entries are indicated by the initials "CM" in the billing statement exhibited to this declaration.

47. Laura M. Cotter is another contract attorney previously used by of counsel with my firm. She graduated from Trinity Coll University and was later admitted to practice in 2008. Ms.

Cotter's hourly billing rate in this case was $325/hour, and her billing entries are signified by the initials "LC" in the billing statement exhibited to this declaration. Ms. Cotter attended the vehicle inspection.

48. Mark O'Connor has been practicing law for over 25 years. He graduated from Rutgers School of Law in New Jersey in 1989 and immediately took and passed the Pennsylvania and New Jersey Bar exams. He moved to California in 1991 and passed the full California Bar exam. Mr. O'Connor specializes in litigation related to the automobile industry, including motor vehicle design and manufacturing, statistics, warranty processes, dealer requirements and processes, motor vehicle codes, the Federal Motor Vehicle Safety Standards and various other related issues. Mr. O'Connor's rate for this case is $650/hour. Mr. O'Connor's billing entries are indicated by the initials "MOC" in the billing statement attached to this declaration.

49. Russell Higgins is a Senior Associate with the firm and was admitted to practice in 2003. Mr. Higgins graduated from Pepperdine University School of Law and his hourly rate in this matter is $450/hour. Mr. Higgins' billing entries are indicated by the initials "RH" in the billing statement exhibited to this declaration.

50. Chris Swanson is a Senior Associate in my office. Mr. Swanson graduated from UCLA School of Law in 2011 where he distinguished himself academically. Mr. Swanson has been an Associate at my firm since 2014. His prior professional experience includes individual and class action consumer protection law. Mr. Swanson's billing rate at my firm is $375/hour. Mr. Swanson's billing entries are indicated by the initials "CS" in the billing statement exhibited to this declaration.

51. Roger Kirnos is a Partner in my office. Mr. Kirnos graduated from Southwestern Law School in 2009 in the top 10% of his class with cum laude honors. Mr. Kirnos previously was an extern for former Chief Judge Alex Kozinksi of the Ninth Circuit Court of Appeals and an extern for Judge F. Gary Klausner of the United States District Court, Central District. Mr. Kirnos has been trial counsel in over twenty lemon law cases that went to jury verdict, and approximately a dozen more that settled once trial began. The hourly rate for Mr. Kirnos is $425/hour, and his

billing entries are indicated by the initials "RK" in the billing statement exhibited to this declaration.

52. As always, Knight Law attempts to keep attorney fees and costs down while providing vigorous and effective representation.

53. All time billing entries were completed contemporaneously with each dated entry or near in time to the work performed. I have personally reviewed the billing entries to ensure that they appropriately reflect the time expended. I have removed or reduced any time I felt was excessive, duplicative, or otherwise unreasonable, or I have labeled the entry as a "no charge", as identified by the "N/C" in the invoice. My firm **does not bill clients** for secretarial support staff time.

54. While not controlling as to a reasonable rate for a contingent plaintiff attorney, one of Ford's law firms utilized in this matter and related matters charges a blended rate of 450 per hour for all attorneys regardless of experience, including for a fifth-year associate. Ford's counsel has also declared that 450 per hour is either at *or below* the market rate for defense attorneys in both Orange County and San Joaquin County. Attached hereto as **Exhibit G** is a true and correct copy of the declaration of Ford's counsel filed in the matter of *Anderson v. Ford*, San Joaquin County, case number STK-CV-UBC-2013-0007198. Attached hereto as **Exhibit H** is a true and correct copy of the declaration of Ford's counsel from the matter of *Misner v. Ford*, County of Orange, case number 30-2013-00668307-CU-BC-CXC.

**Evidence to Support the Reasonableness of Hourly Rates for Attorneys**

55. I am aware of the hourly rates of other attorneys in California who work in the area of lemon law and consumer law. I bill my time at an hourly rate of $550 per hour. An hourly rate of $550 per hour is reasonable, and consistent with other attorneys who litigate consumer matters and who have a comparable level of experience. A canvas of the community of attorneys who specialize in this area reveals the following hourly rates:

a. Hallen Rosner of Rosner, Barry & Babbit, LLP, San Diego, CA has been practicing law since 1983 and specializes in consumer litigation with

particular attention to auto financing issues. He charges $660 per hour. Survey as of 2019.

b. Michael Lindsey was admitted to the bar in 1993 and has been handling consumer law cases for nearly 15 years in San Diego, California. Mr. Lindsey's hourly rate is $625. Survey as of 2017. His previous rate of $575/hour was recently confirmed as reasonable in *Goglin v. BMW of North America* (2016) 4 Cal.App.5th 462, 473-74.

c. Brian Kemnitzer of Kemnitzer, Anderson, Barron, Ogilvie & Brewer LLP in San Francisco has been handling consumer cases since 1983. Mr. Kemnitzer charges $800 per hour. Survey as of 2016.

d. Robert Brennan of Brennan, Weiner and Associates in La Crescenta, California charges $450 per hour. He has been in practice since 1987. The hourly rate for his associates is $375 per hour. Survey as of 2010.

e. Martin Anderson of The Anderson Law Firm in Santa Ana, California has practiced law since 1995 and charges $395 per hour. Mr. Anderson specializes in Lemon Law matters. Survey as of 2007.

f. Nancy Barros of Kemnitzer, Anderson, Barron, Ogilvie & Brewer LLP in San Francisco, California has been handling consumer cases since 1983. Ms. Barros charges $625 per hour. Survey as of 2016.

g. Mark Romano of Romano, Stancroff in Los Angeles, California has been practicing for 23 years, primarily in consumer litigation. His hourly rate is $400 per hour. Survey as of 2010.

56. On January 10, 2019, Judge Chad Firetag awarded 100% of the requested lodestar attorney fees in the amount of $71,087.50 in the matter of *Virginia Salazar v. FCA US LLC* (Riverside County Superior Court, Case No. RIC1700340). The case settled shortly before trial. All requested hourly rates were granted, including my rate of $550, $375 for Kristina Stephenson-

Cheang, $350 for Amy Morse, and $550 for Michael Rosenstein. A true and correct copy of the signed order is attached hereto as **Exhibit I.**

57. On December 12, 2018, Judge David M. Chapman awarded 100% of the lodestar fees requested by motion in the total amount of $115,718.75 in the matter of *Lawson v. FCA* (Riverside County Superior Court, Case No. PSC1604057). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion that were granted included my current rate of $550 per hour, the rates of $400 to $375 per hour for appearance attorneys Kirk Donnelly and Constance Morrison; $375 per hour for senior associates Christopher Swanson and Kristina Stephenson-Cheang; $350 per hour for partner Amy Morse; and $250 per hour for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit J.**

58. On December 10, 2018, Judge Bryan Foster awarded fees, costs and expenses in the total amount of $48,234.93 in the matter of *Stead v. Ford Motor Company* (San Bernardino County Superior Court, Case No. CIVDS1618876). The rates approved by Judge Foster included rates of $500 per hour for senior attorneys such as myself and Michael Rosenstein; the rate of $375 to $350 per hour for senior associates, appearance attorneys, and partners such as Kristina Stephenson-Cheang, Brian Murray, Constance Morrison, and Amy Morse; and $250 for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit K.**

59. On December 3, 2018, Judge Ronald L. Bauer awarded 100% of requested lodestar attorneys fees and costs in the total amount of $35,793.13 in the matter of *Juan Ibanez vs. FCA US LLC* (Orange County Superior Court, Case No. 30-2016-00858615-CU-BC-CJC). The hourly rates awarded ranged from my rate of $550 for senior-level attorneys such as myself; $450 to $350 for senior associate Joel E. Elkins, senior associate Kristina Stephenson-Cheang, "contract/of counsel" attorney Constance Morrison, and partner Amy Morse; $325 per hour for associate Alastair Hamblin; and $250 to $225 for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit L.**

60. On November 30, 2018, Judge Irma Asberry awarded 85% of the lodestar fees requested by motion in the total amount of $82,779.38 in the matter of *Ricardo Cuevas v. FCA* (Riverside County Superior Court, Case No. RIC1616584). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion that were granted included my current rate of $550 per hour, the rates of $375 to $350 per hour for appearance attorney Constance Morrison, associate Kristina Stephenson-Cheang, and partner Amy Morse; and $275 to $250 per hour for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit M.**

61. On November 28, 2018, Judge Katherine Bacal awarded 92% of the lodestar fees requested by motion in the total amount of $61,461.75 in the matter of *Nisa Carrillo v. FCA* (San Diego County Superior Court, Case No. 37-2017-00014078-CU-BC-CTL). The court found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion that were granted included my current rate of $550 per hour, the rates of $375 to $350 per hour for associate Kristina Stephenson-Cheang and partner Amy Morse, and $225 per hour for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit N.**

62. On November 19, 2018, James Di Cesare awarded 100% of the lodestar fees and costs requested by motion in the total amount of $15,460.60 in the matter of *Ayesha Whitlow v. Ford Motor Company* (Orange County Superior Court, Case No. 30-2016-00882648-CU-BC-CJC). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion that were granted included my current rate of $550 per hour, the rates of $450 to $350 per hour for attorney Russel Higgins and partner Amy Morse, $350 for senior associate Kristina Stephenson-Cheang and attorney Hadi Gerami, and $275 to $250 per hour for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit O.**

63. On November 6, 2018, Judge Mark Borrell awarded 100% of requested lodestar

attorney's fees in the amount of $54,980.00 and full requested costs in the amount of $5,337.63 in the matter of *Lisa Lorraine Buckman, vs. FCA US LLC,* (Ventura County Superior Court, Case No. 56-2016-00490241-CU-BC-VTA). The hourly rates awarded ranged from $550 per hour for senior-level attorneys such as myself; $375 to $350 per hour for attorneys Kristina Stephenson-Cheang and Amy Morse; and $250 to $200 for younger attorneys. The overall award was 100% of the amount requested. A true and correct copy of the signed order is attached hereto as **Exhibit P.**

64. On September 25, 2018, Judge Sunshine Sykes awarded 87% of requested lodestar attorneys fees in the amount of $114,937.50 and also awarded a 1.25 multiplier in the amount of $28,734.38 in the matter of *Kantar vs. FCA US LLC* (Riverside County Superior Court, Case No. RIC1606184). The hourly rates awarded ranged from my rate of $550 per hour to $450 per hour for senior-level attorneys such as myself and Russel Higgins; $425 to $300 for "contract/of counsel" attorneys such as Mary Fersch and Larry Castruita; $375 to $350 per hour for partner Amy Morse and senior associate Kristina Stephenson-Cheang; $275 for associate attorney Deepak Devabose; and $225 per hour for Thomas Burns. A true and correct copy of the signed order is attached hereto as **Exhibit Q.**

65. On September 7, 2018, Judge Joan M. Lewis awarded 100% of requested lodestar attorneys fees in the amount of $69,393.75 and full requested costs and expenses in the amount of $3,819.03 in the matter of *Edralin vs. FCA US LLC* (San Diego County Superior Court, Case No. 37-2016-00020403-CU-BC-CT). The hourly rates awarded ranged from my rate of $550 for senior-level attorneys such as myself; $400 for "contract/of counsel" attorney Kirk Donnelly; $375 to $350 per hour for partner Amy Morse and senior associate Kristina Stephenson-Cheang; and $225 for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit R.**

66. On August 31, 2018, Judge Joel R. Wohlfeil awarded 87% of the lodestar fees requested by motion in the mount of 87,970.00 in the matter of *Duk v. Ford Motor Company* (San Diego County Superior Court, Case No. 37-2016-00012779-CU-BC-CTL). The court found that

Knight Law's hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion included my current rate of $550 per hour; rates between $425 and $350 for partners Roger Kirnos, Lauren Ungs, and Amy Morse; rates between $400 and $375 per hour for contract/of counsel" attorneys Kirk Donnelly and Constance Morrison; and $375 per hour for senior associate Kristina Stephenson-Cheang; and $250 per hour for junior attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit S.**

67. On August 28, 2018, Judge Janet M. Frangie awarded 82% of the fees, costs and expenses requested by motion in the total amount of $9,736.76 in the matter of *Rivas v. Ford Motor Company* (San Bernardino County Superior Court, Case No. CIVDS1711898). The court found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion included my rate of $500 per hour, the rate of $350 per hour for Amy Morse, Hadi Gerami, and Kristina Stephenson-Cheang. A true and correct copy of the signed order is attached hereto as **Exhibit T.**

68. On August 27, 2018, Judge Randall S. Stamen awarded 100% of the lodestar fees requested by motion in the total amount of $88,327.50 in the matter of *Suazo v. FCA* (Riverside County Superior Court, Case No. RIC1607979). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion included my rate at the time of $500 per hour, the rates of $400 to $350 per hour for partners Roger Kirnos and Amy Morse, $350 for senior associates Christopher Swanson and Kristina Stephenson-Cheang, and $275 to $250 per hour for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit U.**

69. On August 17, 2018, Judge Richard Strauss awarded $17,985.00 in lodestar attorney's fees and $1,767.49 in costs and expenses in the matter of *Bugiel vs. Ford Motor Company* (San Diego County Superior Court, Case No. 37-2017-00011741-CU-BC-CTL), which resulted in a settlement that is more than three and a half times the total amount Plaintiff paid for the vehicle. The hourly rates awarded included my billing rate at the time of $500 per hour; $400 to $350 per hour for partners Roger Kirnos and Amy Morse; and $375 to $350 for Senior Associate

Kristina Stephenson-Cheang and contract/"of counsel" attorney Kirk Donnelly. The overall award represents 100% of the amounts of the lodestar attorneys fees and costs requested. A true and correct copy of the signed order is attached hereto as **Exhibit V.**

70. On July 25, 2018, Judge James T. Latting awarded full requested lodestar attorneys fees in the amount of $18,477.50 in attorney's fees and $2,665.15 in costs and expenses in the matter of *Meuse vs. FCA US LLC* (Riverside County Superior Court, Case No. PSC1603210), which resulted in a settlement that is more than double the total amount Plaintiff paid for the vehicle. The hourly rates awarded ranged from $500 for senior-level attorneys such as myself; $350 per hour for attorneys Amy Morse, Constance Morrison, Hadi Gerami, and Kristina Stephenson-Cheang; and $225 for younger attorneys. The overall award represents almost 100% of the amount requested. A true and correct copy of the signed order is attached hereto as **Exhibit W.**

71. On July 17, 2018, Judge David M. Chapman awarded $55,127.50 in attorney's fees based on a request of $60,127.50 and full $7,730.78 in costs and expenses in the matter of *Garrison vs. FCA US LLC* (Riverside County Superior Court, Case No. PSC1605950), which resulted in a settlement that is more than double the total amount Plaintiff paid for the vehicle. The hourly rates awarded ranged from $500 to $490 per hour for senior-level attorneys, including me and trial counsel, Sepehr Daghighian; $350 per hour for attorneys Amy Morse, Constance Morrison, and Kristina Stephenson-Cheang; and $225 to $250 for younger attorneys. The overall award represents 92% of the amount requested. A true and correct copy of the signed order is attached hereto as **Exhibit X.**

72. On July 11, 2018, Judge Mark Borrell awarded full requested lodestar attorneys fees in the amount of $75,557.00 and full costs and expenses in the amount of $8,912.36 in matter of *Paul v. FCA US LLC* (Ventura County Superior Court, Case No. 56-2016-00480745-CU-BC-VTA). Specifically, the Court deemed my hourly rate of $500 per hour reasonable along with trial attorney, Richard Wirtz's hourly rate of $500 per hour as reasonable. Judge Borrell determined that the hourly rates of attorneys ranging from $200 to $400 per hour were reasonable, such as

Partners Amy Morse and Roger Kirnos, and Associates Christopher Swanson, Thomas Burns, Kristina Stephenson-Cheang, and Michelle Lumasag. The attorney fee award represents 100% recovery of the lodestar fees and costs requested by motion in the matter. A true and correct copy of the signed order is attached hereto as **Exhibit Y**.

73. On June 22, 2018, Judge Eddie C. Sturgeon awarded fees, costs, expenses, and a .2 multiplier as requested by motion in the total amount of $25,837.72 in the matter of *Lang v. Ford Motor Company* (San Diego County Superior Court, Case No. 37-2016-00004792-CU-BC-CTL). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion included my rate of $500 per hour, the rate of $400 per hour for Lauren Ungs,$375 per hour for Kirk Donnelly, $350 per hour for Amy Morse, Kristina Stephenson-Cheang, and Hadi Gerami, $325 per hour for Alastair Hamblin, and $250 per hour for Michael Ouziel. A true and correct copy of the signed order is attached hereto as **Exhibit Z.**

74. On June 19, 2018, Judge David M. Chapman granted full lodestar attorney fees, costs and expenses in the amount of $15,148.75 in the matter of *Kortan v. Ford Motor Company* Riverside Superior Court, Case No. PSC1702737), which represented 100% of the fees and costs requested. Judge Chapman granted my rate of $500 per hour, $350 per hour for Amy Morse, $350 per hour for Chris Swanson, $350 per hour for Kristina Stephenson-Cheang, $325 per hour for Alastair Hamblin, and $250 for Hadi Gerami. The final order has yet to be signed but this is an accurate representation of the court's ruling. A true and correct copy of the signed order is attached hereto as **Exhibit AA.**

75. On June 18, 2018, Judge Daniel Ottolia awarded 95% of the requested lodestar fees and full costs and expenses requested by motion in the total amount of $20,503.00 in the matter of *Simmons v. Ford Motor Company* (Riverside County Superior Court, Case No. RIC1610619). The court found that the hourly rates of $350 per hour for Christopher Swanson, Amy Morse, and Kristina Stephenson-Cheang were reasonable for that venue and that the time incurred was reasonable. A true and correct copy of the signed order is attached hereto as **Exhibit BB.**

76. On June 18, 2018, Judge Mark S. Borrell awarded 90% of the requested lodestar fees and full costs and expenses requested by motion in the total amount of $48,786.65 in the matter of *Perez v. FCA US LLC* (Ventura County Superior Court, Case No. 56-2016-00486433-CU-BC-VTA). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue. The rates requested by motion ranged from $500 per hour for senior-level attorneys, including me and trial counsel Michael Rosenstein, the rate of $350 per hour for Chris Swanson, Kristina Stephenson-Cheang, Hadi Gerami and Amy Morse, and $225 per hour for Thomas Burns. A true and correct copy of the signed order is attached hereto as **Exhibit CC.**

77. On June 11, 2018, Judge Randall Stamen awarded $58,709.26 in attorney's fees based on a request of $65,232.50 and full costs of $7,149.84 in costs and expenses in the matter of *Soria vs. FCA US LLC* (Riverside County Superior Court, Case No. RIC1604160). The hourly rates awarded ranged from $500 per hour for senior-level attorneys, such as myself and trial counsel Richard Wirtz; $350 per hour for attorneys Christopher Swanson, Amy Morse, Constance Morrison, and Kristina Stephenson-Cheang; and $275 to $200 per hour for younger attorneys. The overall award represents 90% of the amount requested. A true and correct copy of the signed order is attached hereto as **Exhibit DD.**

78. On June 11, 2018, Judge Stephen D. Schuett awarded 94% of the fees, costs and expenses requested by motion in the total amount of $17,202.32 in the matter of *Christensen v. Ford Motor Company* (Kern County Superior Court, Case No. BCV-16-101927). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion included my rate of $500 per hour, $350 per hour for Amy Morse and Christopher Swanson, and $250 per hour for Michael Ouziel. A true and correct copy of the signed order is attached hereto as **Exhibit EE.**

79. On June 1, 2018, Judge Glenda Sanders awarded full requested lodestar attorney fees in the amount of $98,515 and full costs and expenses in the amount of $8,045.55 in the matter

of *Vargas vs. FCA US LLC* (Orange County Superior Court, Case No. 30-2016-00845431-CU-BC-CJC). The hourly rates awarded ranged from $750 to $500 per hour for senior-level attorneys, such as myself, Mark O'Connor, trial counsel Richard Wirtz, and trial counsel Moses Lebovitz; $400 to $350 per hour for attorneys Roger Kirnos, Amy Morse, Constance Morrison, and Kristina Stephenson-Cheang; and $200 for younger attorney Michelle Lumasag. The overall award represents almost 99% of the amount requested. A true and correct copy of the signed order is attached hereto as **Exhibit FF.**

80. On May 18, 2018, Judge Bryan F. Foster awarded $37,405.00 in attorney fees and full costs and expenses in the matter of *Bahna v. Ford Motor Company* (San Bernardino County Superior Court, Case No. CIVDS 1602141). Specifically, the Court deemed my hourly rate of $500 per hour reasonable along with trial attorney, Sepehr Daghighian's, hourly rate of $400 per hour as reasonable. Judge Feuer determined that the hourly rates of attorneys ranging from $225 to $400 per hour were reasonable, such as Partners Lauren Ungs and Amy Morse (who were Associates at the time), and Associates Russell Higgins, Alastair Hamblin, Kristina Stephenson-Cheang, Daisy Ortiz, etc. Contract/"Of Counsel" attorney Constance Morrison was awarded her hourly rate of $350 for all time expended. The attorney fee award represents 98% recovery of the lodestar fees and costs requested by motion in the matter. A true and correct copy of the signed order is attached hereto as **Exhibit GG**.

81. On April 26, 2018, Judge Peter Wilson awarded 96% of the requested lodestar fees and full costs and expenses requested by motion in the total amount of $73,047.36 in the matter of *Hitomi v. Ford Motor Company* (Orange County Superior Court, Case No. 30-2016-00847294-CU-BC-CJC). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred was reasonable. The rates requested by motion ranged from $500 per hour for senior-level attorneys, including me and trial counsel Richard Wirtz, the rate of $350 per hour for Chris Swanson, $350 per hour for Kristina Stephenson-Cheang, $325 per hour for Alastair Hamblin, and $350 per hour for Amy Morse. A true and correct copy of the signed order is attached hereto as **Exhibit HH.**

82. On March 1, 2018, Judge Barry T. LaBarbera awarded 95% of the requested lodestar fees and full costs and expenses requested by motion in the total amount of $40,771.80 in the matter of *Vasquez v. Ford Motor County* (San Luis Obispo County Superior Court, Case No. 16-CV-0075). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred was reasonable. The rates requested by motion included my rate of $500 per hour, the rate of $400 per hour for Russell Higgins, $375 per hour for Lauren Ungs, $375 per hour for Roger Kirnos, $350 per hour for Amy Morse, each of whom were recently named Partners of the firm, as well as rates of $350 per hour for Kristina Stephenson-Cheang, $250 per hour for Michael Ouizel, and $225 per hour for Deepak Devabose. A true and correct copy of the signed order is attached hereto as **Exhibit II.**

83. On January 5, 2018, Judge Mel Red Recana granted full requested lodestar attorney fees in the amount of $529,885.50 and $96,840.81 in costs and expenses in the matter of *Margeson v. Ford Motor Company* (Los Angeles Superior Court, Case No. BC549430), which represented 100% of the fees and 98% of requested costs and expenses. Judge Recana believed the firm's prowess during the four-week trial that resulted in an unprecedented almost two million dollar jury verdict warranted a 1.8 multiplier of $423,908.40 to be added to the fee award. In particular, the hourly rates awarded ranged from $500 to $650 per hour for senior-level attorneys such as myself, trial counsel Michael Rosenstein, trial counsel Bryan Altman, and Hal Rosner ; $400 to $350 per hour for senior attorneys Russel Higgins, Lauren Ungs, Roger Kirnos, Amy Morse, Kirk Donnelly, Constance Morrison, and Kristina Stephenson-Cheang, and $200 to $300 for younger attorneys. **(Exhibit JJ.)**

84. On November 21, 2017, Judge David R. Lampe presiding in Kern County over the trial in the matter of *Marilyn West v. Hyundai Motor America* (Kern County Superior Court, Case No. BCV-16-100792) awarded 100% of the fees requested based on the same hourly rates requested here for an attorney fee award $169,148.75, plus an additional $16,431.83 in costs and expenses. The plaintiff obtained a jury verdict for treble damages, e.g. maximum civil penalties. Judge Lampe confirmed the rate of $650 per hour for trial attorney Bryan Altman, $500 per hour

for myself and rates ranging from $350 to $400 per hour for Partners and mid-level Associates Russell Higgin, Kristina Stephenson-Cheang and Brian Murray, $450 per hour for Joel Elkins from the Altman Law Group, and $200 to $250 per hour for the lowest billing rate attorneys. The court awarded $350 per hour for attorney/"of counsel," Diane Hernandez. A true and correct copy of the signed order is attached hereto as **Exhibit KK.**

85. On November 17, 2017, Judge Colleen K. Sterne awarded all of the requested $54,400.17 in attorney's fees and costs and expenses in the matter of *Oksana Yudinova vs. Ford Motor Company* (Santa Barbara Superior Court, Case No. 16CV00034). In doing so, the court awarded hourly rates ranging from $500 per hour for senior-level attorneys such as trial counsel, Richard Wirtz and myself, $325 to $400 per hour for mid-level Associates, $325 per hour for Associate Amy Smith from Wirtz Law, $200 to $250 for younger associates, and $175 per hour for paralegals. In total, the fee award represents 100% of the lodestar fee request. A true and correct copy of the signed order is attached hereto as **Exhibit LL.**

86. On September 15, 2017, Judge Kevin A. Enright awarded $199,248.08 in attorney's fees after trial in the matter of *Julie Harris vs. Hyundai Motor America* (San Diego Superior Court, Case No. 37-2015-00019958-CU-BC-CTL). Plaintiff obtained a maximum civil penalty jury verdict at trial. The Court found the hourly rates of Plaintiff's attorneys reasonable, including trial counsel, Bryan Altman's, rate of $650 per hour and my hourly rate of $500 per hour. The court found the hourly rates of $250 to $400 per hour for litigation attorneys, such as Russell Higgins, Lauren Ungs (trial counsel), Chris Swanson, Amy Morse and Michael Ouziel, were reasonable. The court also found that Mr. Altman's associates, Joel Elkins and Jordan Cohen, billed reasonable hourly rates of $450 and $300, respectively. The attorney fee award represents 85% of the lodestar fees requested by motion in the matter. A true and correct copy of the signed order is attached hereto as **Exhibit MM.**

87. On September 8, 2017, Judge Eddie C. Sturgeon awarded $226,845.00 in attorney's fees plus $46,021.71 in costs and expenses after trial in the matter of *John Aspinall vs. Kia Motors America* (San Diego Superior Court, Case No. 37-2015-00002577-CU-BC-CTL). The total award

amounts to $272,866.71. Plaintiff obtained a maximum civil penalty jury verdict at trial. Specifically, the Court deemed reasonable my hourly rate of $500, as well as trial attorneys, Michael Rosenstein's and Richard Wirtz', hourly rates of $500. He found that the hourly rates of $350 per hour reasonable for Lauren Ungs and a range of $200 to $250 per hour for younger attorneys. He also found that $375 and $350 per hour were reasonable for our contract attorneys, Kirk Donnelly and Constance Morrison. The attorney fee awarded represent 80% of the lodestar fees requested by motion in the matter. A true and correct copy of the signed order is attached hereto as **Exhibit NN.**

88. On August 9, 2017, Judge Craig L. Griffin awarded $59,515.00 in attorney's fees in the matter of *Jose Murillo v. FCA US LLC* (Orange County Superior Court, Case No. 30-2015-00771206-CU-BC-CJC). The Court affirmed the reasonableness of hourly rates requested by motion, specifically my rate of $500 per hour, and rates of $300 to $350 per hour for attorneys such as Lauren Ungs, Chris Swanson, Kristina Stephenson-Cheang, Kevin Van Hout, $400 for Erin Barns from Wirtz Law, and $200 to $250 for young associates. In total, the fee award represented 97% of the lodestar fees requested, with the one reduction being time that we withdrew on our own. A true and correct copy of the signed order is attached hereto as **Exhibit OO.**

89. On May 9, 2017, Judge Sidney P. Chapin in Kern County awarded a total of $296,055.00 in attorney's fees plus $25,651.18 in costs and expenses based on a jury verdict for maximum civil penalties in the matter of *Cofield v. Kia Motors America, Inc.* (Kern County Superior Court, Case No. S-1500-CV-283504). In so doing, Judge Chapin expressly ruled that the requested hourly rates were reasonable, including a rate of $650 per hour for attorney Bryan Altman, $500 per hour for trial attorney Michael Rosenstein, $500 per hour for my rate, $375 per hour for trial attorney Roger Kirnos, and all other requested rates of $200, $225, $300, $325 and $350 per hour as reasonable for Kern County. A true and correct copy of the signed order is attached hereto as **Exhibit PP**.

90. On March 17, 2017, in the matter of *Page v. Kia Motors America, Inc.* (San Diego Superior Court, Case No. 37-2014-00023991-CU-BC-CTL), Judge Eddie C. Sturgeon granted an

award of attorney's fees, costs and expenses in the amount of $271,077.16 in a case in which our clients prevailed at trial. Judge Sturgeon ruled that the hourly rates were reasonable, including trial counsel Bryan Altman's rate of $650/hour and Roger Kirnos' rate of $375/hour. The court found my rate of $500/hour to be reasonable, as well as each of my associates and the associates of Mr. Altman who top out at $450/hour for Joel Elkins. The court's order reflects a 15% across the board reduction on the overall attorney's fees amount but expressly determined the hourly rates were reasonable. A true and correct copy of the signed order is attached hereto as **Exhibit QQ**.

91. I request a multiplier of 1.8 based on my contingent fee, the risk and delay in payment associated with a contingent fee scenario, and the result achieved. Such a multiplier is reasonable and towards the low end under the established law. (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 255.) Plaintiff's attorneys are paid only if Plaintiff prevails, unlike Defendant's attorneys who get paid monthly regardless of the outcome. Moreover, Defendant's attorneys typically have a continuing and ongoing relationship, whereas this firm will most likely not have the opportunity to represent Plaintiff again.

92. It is not uncommon for attorney's fees and costs to exceed the client's damages. The Legislature acknowledged such a circumstance, which is the reason behind the fee shifting provision of the Song-Beverly Act and the CLRA. Otherwise, consumers would be left without opportunity for redress when their damages were not enough for an attorney to take the case on a contingent fee or hourly rate basis. Such a result occurs in large part because of dealerships' or vehicle manufacturers' refusal to adhere to statutory laws protecting consumers, resistance to honoring consumers' complaints, and generally playing games or simply abusing discovery procedures. For example, Ford could have avoided paying any attorney fees whatsoever had it admitted to its wrongdoing early on. Instead, Ford engaged in expensive litigation, and drove up fees and costs by, among other things, filing a Demurrer and Motion to Strike Plaintiff's Complaint, filing a Motion for Protective Order, engaging in extensive discovery, stone-walling Plaintiff's discovery efforts, and holding out for nearly five years of litigation before ultimately reaching a jury trial.

93. Song-Beverly Act and automotive CLRA cases are not simple actions. They require a specialized understanding of the full scope of consumer protection laws, which are highly nuanced. The cases also require knowledge of intricacies of automobiles and a lexicon associated with them, as well as a knowledge concerning how to investigate these matters. They also require knowledge of auto manufacturers' and dealers' protocols for repairing vehicles.

94. Generally speaking, clients of the firm are benefitted by the experience of this firm insofar as work-product from other cases can be used in this case as well. Hence, a substantial amount of time was saved by not needing to draft each document from scratch and little time was needed to "get up to speed" in this specialized area of law. In effect, Ford also benefitted when it comes to a determination of reasonable attorney's fees to be paid because there are numerous cost-saving techniques employed by the firm.

95. Ford itself made this matter more complex by maintaining it had no liability and declining to submit reasonable offers to settle the matter early in the litigation.

96. As shown by the number of cases discussed herein and the positive results achieved on behalf of each client, the hourly rate is reasonable and the number of hours expended are reasonable. The fees incurred in this litigation are the direct result of Ford's own dismissive approach to handling lemon law matters.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 4th day of February 2019, at Los Angeles, California.

STEVE MIKHOV
Declarant

# EXHIBIT H

**KNIGHT LAW GROUP, LLP**
Steve Mikhov (SBN 224676)
10250 Constellation Blvd., Suite 2500
Los Angeles, CA 90067
Telephone: (310) 552-2250
Fax: (310) 552-7973
Email: stevem@knightlaw.com

**THE ALTMAN LAW GROUP**
Bryan C. Altman (SBN 122976)
10250 Constellation Blvd., Suite 2500
Los Angeles, CA 90067
Telephone: (323) 653-5581
Fax: (323) 653-5542
Email: bryan@altmanlawgroup.com

**ROSNER, BARRY & BABBIT, LLP**
Hallen D. Rosner (SBN 109740)
10085 Carroll Canyon Road, 1st Floor
San Diego, CA 92131
Telephone: (858) 348-1005
Fax: (858) 348-1150
Email: hal@rbblawgroup.com

Attorneys for Plaintiffs,
**ROBERT BROWN and VALERIE BROWN**

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF BUTTE**

**ROBERT BROWN and VALERIE BROWN,**

Plaintiffs,

vs.

**FORD MOTOR COMPANY, a Delaware Corporation; and DOES 1 through 10, inclusive,**

Defendants.

Case No: 160060

**DECLARATION OF STEVE MIKHOV IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**

[Filed concurrently with Plaintiffs' Notice of Motion and Motion for Attorneys' Fees; Memorandum in Support Thereof; Declarations of Michael H. Rosenstein, Bryan C. Altman and Hallen D. Rosner]

*Assigned for All Purposes to the Honorable Tamara L. Mosbarger*

Date: December 21, 2018
Time: 9:00 a.m.
Dept: 1

**DECLARATION OF STEVE MIKHOV**

I, Steve Mikhov, declare as follows:

1. I am an attorney at law duly licensed to practice before the courts of the State of California and attorney of record for Plaintiffs Robert Brown and Valerie Brown ("Plaintiffs") in the instant action. I have personal knowledge of the following facts and, if sworn as a witness, I could and would testify to them competently.

2. I make this declaration in support of Plaintiffs' Motion for Attorneys' Fees ("Motion"). For the reasons set forth herein and, in the Motion, Plaintiffs request $608,391.00 in attorneys' fees. This amount is comprised of the legal services provided by Knight Law Group, LLP ("Knight Law") in the amount of $366,892.50, legal services provided by the Law Office of Michael H. Rosenstein, LC ("LOMR") in the amount of $18,970.00, legal services provided by The Altman Law Group ("TALG") in the amount of $181,312.50, and legal services provided by Rosner, Barry & Babbit, LLP ("Rosner") in the amount of $41,216.00. Plaintiffs' attorneys request a reasonable "lodestar" enhancement of 2.2 in the amount of $730,069.20, for a total attorneys' fee award of $1,338,460.20. A true and correct copy of my firm's billing is attached hereto as **Exhibit A**.

3. Plaintiffs purchased a new 2006 Ford F-250 on February 15, 2006 for a purchase price of $43,065.00 – adding taxes and fees, the total purchase price was $49,590.23. The vehicle was distributed by Ford Motor Company ("Defendant" or "Ford"), which provided an express written warranty. A true and correct copy of the Retail Installment Sales Contract is attached hereto as **Exhibit B**.

4. After approximately 2,880 miles of ownership, and within the applicable warranty periods, Plaintiffs began experiencing problems with the vehicle. Specifically, Plaintiffs delivered the truck to a Ford-authorized repair facility for engine repairs on at least four (4) separate occasions because of numerous problems with the engine, including but not limited to the following: the fuel light illuminated, the engine light illuminated and the engine leaked oil. Additionally, Plaintiffs experienced problems with the vehicle's transmission and cooling system.

As a result, Plaintiffs were forced to replace the turbo, clean the EGR cooler and rebuild the transmission, but the problems with the engine persisted.

5. Despite the ongoing repairs and continued manifestation of problems, Ford refused to acknowledge the defective nature of Plaintiffs' vehicle. At all times, however, Ford had direct, contemporaneous knowledge of the vehicle's serious defects, which it records in a database called "OASIS" and a warranty repair history database called "AWS." These repair records indicate each time the vehicle was presented for repair during the warranty period, as well as every time the Ford repair facility found a problem/defect attributable to Ford and billed Ford for the work.

6. Frustrated, concerned for their safety and having lost confidence in Ford's ability to repair the vehicle, Plaintiffs submitted a request for arbitration to the Better Business Bureau on or about May 23, 2013. Plaintiffs' request for arbitration was denied on or about June 28, 2013.

7. With no other available avenue for relief, Plaintiffs contacted Knight Law and told the firm about the problems with the vehicle and the way Ford treated them. After reviewing the repair history and discussions with Plaintiffs, Knight Law agreed to represent them and bear the risk of litigating the case on a fully contingent basis. Because Knight Law's compensation was purely contingent, the firm faced a genuine risk of not being paid for its services for years, if at all, while advancing thousands of dollars in costs and expenses on Plaintiffs' behalf. In taking on this duty, the firm was facing a litigation behemoth—Ford is a multi-billion-dollar company, with a virtually infinite litigation war-chest, that wages a battle of attrition that most firms cannot withstand.

8. As a result of Ford's failure to fix the material defects associated with Plaintiffs' vehicle, or otherwise comply with the Song-Beverly Act, Plaintiffs filed a Complaint in this action on July 24, 2013, followed by a First Amended Complaint on September 27, 2013. Plaintiffs' First Amended Complaint alleged causes of action for Fraud for concealing a known engine defect, and violations of the Consumer Legal Remedies Act ("CLRA") and the Song-Beverly Act, and sought, among other things, civil penalties and punitive damages.

///

9. Ford immediately began its vigorous defense in this case, propounding requests for production of documents and special interrogatories upon Plaintiffs. Plaintiffs benefitted from Knight Law's expertise and experience in litigating against Ford as just 2.6 hours were billed for drafting responses to the entirety of this discovery. Ford also noticed the depositions of Plaintiffs and made a demand for inspection of Plaintiffs' defective vehicle.

10. Defendant's position in the litigation required extensive efforts on the part of Plaintiffs' counsel, and they promptly began working up their case on behalf of Plaintiffs. Written discovery was drafted and served on Defendant on or about October 3, 2013, consisting of 129 requests for admissions, 20 requests for genuineness, 122 requests for production of documents, 113 special interrogatories and 24 form interrogatories. Plaintiffs again benefitted from Knight Law's expertise and experience in litigating against Ford as just 6.4 hours were billed for drafting the entirety of this discovery. Plaintiffs' counsel are able to use existing files as templates to conserve time and litigate efficiently. Written discovery of this magnitude, drafted from scratch and without the benefit of Plaintiffs' attorneys' vast knowledge, experience and specialized expertise, would have taken multitudes of the time expediently managed here.

11. On October 1, 2013, Ford filed both a demurrer and a motion to strike Plaintiffs' First Amended Complaint, both of which were denied. Ford then filed its Answer to Plaintiffs' First Amended Complaint, denying all liability and asserting numerous affirmative defenses, on or about December 23, 2013.

12. Also, in December 2013, Plaintiffs' counsel reviewed, analyzed and annotated Ford's responses to Plaintiffs' discovery. Due to Ford's improper objections and/or incomplete and evasive responses to Plaintiffs' discovery, Plaintiffs began "meet and confer" efforts in February 2014. After the parties reached an impasse, despite Plaintiffs' extensive meet and confer efforts, Ford refused to fully comply with its discovery obligations, leaving Plaintiffs no choice but to file a Motion to Compel. Ford filed its Opposition to Plaintiffs' Motion to Compel, forcing Plaintiffs' counsel to expend additional time drafting their Reply. The parties then attended a hearing on the matter on April 9, 2014, during which Plaintiffs' Motion to Compel was granted.

Case 2:25-cv-04526-AB-MAR Document 15-18 Filed 07/25/25 Page 256 of 318 Page ID #:2432

Plaintiffs were then forced to file a Motion to Compel Ford's compliance with the Court's discovery order in a further effort to obtain adequate responses from Ford. In total, Defendant made a document dump of over *twelve-million* pages of documents, which Plaintiffs were able to efficiently review through numerous cases, achieving extreme efficiency for this matter.

13. Meanwhile, Ford propounded a second and third set of discovery requests upon Plaintiffs, including requests for admissions, requests for production of documents, special interrogatories and form interrogatories. On September 24, 2014, Ford served Plaintiffs with an Offer to Compromise pursuant to the Code of Civil Procedure section 998 ("998 Offer") in the paltry amount of $12,000.00. Needless to say, Plaintiffs rejected the inadequate offer.

14. Plaintiffs' counsel then continued working up the case on behalf of Plaintiffs. In December 2014, Plaintiffs noticed the depositions of several Ford employees and dealership personnel, including Ford's PMK and PMQ, service advisors and service technicians. These depositions were needed to obtain information regarding repairs to the vehicle, authenticate the repair orders, and rebut Ford's anticipated argument that the problems with Plaintiffs' vehicle were somehow caused by Plaintiffs' neglect or abuse. True to form, Ford served objections to all of the noticed depositions.

15. On December 5, 2014, Plaintiffs' counsel prepared for and defended the depositions of Plaintiffs. On December 15, 2014, Plaintiffs' counsel prepared for and attended the Mandatory Settlement Conference.

16. With the absence of any reasonable settlement offer from Ford accounting for its willful violations of the Song-Beverly Act and CLRA, the case appeared likely to go to trial. Accordingly, on or about December 24, 2014, Michael H. Rosenstein formally associated into the case to assist in preparing the case for trial.

17. On March 2, 2015, Ford filed a 406-page Petition for Coordination seeking to coordinate all cases in California involving Ford trucks equipped with the 6.0L diesel engine. As a result, all cases, including this matter, were completely stayed and all trial dates were vacated, causing significant delay and prejudice to those consumers who had been waiting years for their

day in court. (*Id.*) Although Plaintiffs' counsel incurred substantial time to oppose the petition and numerous related interim disputes and ensuing hearings, only a fraction of the total time was billed to this case. (*Id.*) Time entries from March 2015 to July 2015 indicate *de minimus* time allocated amongst multiple cases, showing billing efficiencies. (*Id.*) The presiding court ultimately denied the petition on July 14, 2015 but it took months to get cases like this one reset for trial. (*Id.*) During the stay of all 6.0L engine cases, Plaintiffs' counsel was afforded time to then focus on review of the oft-mentioned 12,000,000 page document dump, which comprise the damaging internal documents. A true and correct copy of Ford's Petition is attached hereto as **Exhibit C**. Notably, Ford's Petition included a list of all 6.0 cases in California (all of which Ford was seeking to coordinate) – Plaintiffs' counsel represented the great majority of the cases. The other law firms consisted of: Premier Legal Center, APC (based in San Diego); Romano Stancroff PC (based in El Segundo); the Law Offices of Todd M. Friedman, PC (based in Beverly Hills); the Law Offices of David J. Farrell (based in Mission Viejo); and the Law Offices of William R. McGee (San Diego). Therefore, every single firm in California handling 6.0 lawsuits in 2014 was based in/near Los Angeles or San Diego.

18. On August 15, 2016, Ford filed a Motion for Summary Adjudication. Plaintiffs filed their Opposition and the parties attended a hearing on the matter on November 18, 2016. After supplemental briefing and two more hearing dates, the Court ultimately denied Ford's Motion for Summary Adjudication except as to the fourth cause of action.

19. Plaintiffs' noticed the deposition of Ford's Person Most Qualified and Custodian of Records on topics raised in Ford's motion. True to form, Ford did not show up at the deposition, did not object, but still refused to produce a witness *on the very topics raised in their motion for summary adjudication*. With no alternative, Plaintiffs filed a motion to compel, and Ford responded by filing a motion for protective order. The parties then attended a hearing on the matter on November 18, 2016, at which time Plaintiffs' Motion to Compel the Deposition Attendance of Ford's PMK was granted, and Ford's motion for protective order was denied.

///

20. In November 2016, Plaintiffs' counsel prepared for and attended the depositions of Ford's dealership personnel. However, due to Ford's continued stonewalling, Plaintiffs were forced to file a Motion to Compel Ford's compliance with the Court's order compelling a PMK deposition, which was granted. Finally, in March and June of 2017, Plaintiffs' counsel conducted depositions of Ford's PMKs.

21. Utilizing the new evidence and authenticated documents gained from Ford's PMK and Custodian of Records, Plaintiffs filed supplemental briefing in opposition to Ford's motion for summary adjudication. At the hearing, the Court's tentative was to grant Ford's motion, but after oral argument the Court reversed its tentative and denied Ford's motion on everything except the fourth cause of action.

22. On September 7, 2017, Ford served Plaintiffs with a Second Offer to Compromise pursuant to the Code of Civil Procedure section 998 ("Second 998 Offer"), in the amount $194,000.00. Plaintiffs rejected the inadequate offer.

23. On March 9, 2018, Plaintiffs' counsel prepared for and attended the Mandatory Settlement Conference. On or about March 12, 2018, Bryan C. Altman of Altman Law formally associated into the case as lead trial counsel. Mr. Altman had recently completed two other similar trials on 6.0L diesel vehicles, obtaining favorable verdicts in both. Associating counsel immediately reviewed the case file and noticed the depositions of Ford's expert witnesses.

24. With the April 16, 2018 trial date approaching, Plaintiffs' counsel kicked their trial preparation into high gear. In March and April 2018, Plaintiffs' counsel prepared for and conducted the depositions of Ford's expert witnesses and defended the depositions of Plaintiffs' expert witnesses. In April 2018, Plaintiffs' counsel drafted numerous trial documents including eighteen (18) Motions in Limine, proposed jury instructions and Plaintiffs' Trial Brief. Plaintiffs' counsel also drafted oppositions to Ford's eighteen (18) Motions in Limine. In further preparation for trial, Plaintiffs' counsel prepared trial exhibits, reviewed deposition transcripts, prepared direct and cross examination outlines, and prepared an opening statement.

///

25. The jury trial commenced on April 16, 2018. After thirteen days of testimony and arguments by counsel, the jury returned with its verdict in favor of Plaintiffs on May 2, 2018 for violation of the Song-Beverly Act, violation of the Consumer Legal Remedies Act and Fraud. Specifically, the jury awarded Plaintiffs actual damages in the amount of $63,188.28, maximum two-time civil penalties in the amount of $126,376.56, and punitive damages in the amount of $7,500,000.00. The Court then entered judgment on the verdict on August 28, 2018 for the total amount of $7,563,188.28.[1] A true and correct copy of the Judgment on Jury Verdict is attached hereto as **Exhibit D**.

26. On or about June 12, 2018, veteran consumer law attorney, Hallen D. Rosner, associated into the case to address the post-trial motions and possible appeal.

27. Ford filed a Motion for New Trial and Judgment Notwithstanding the Verdict ("JNOV") on September 21, 2018. Following a hearing on October 19, 2018, the Court denied Ford's Motion for JNOV. The Court further denied Ford's Motion for a New Trial *except* with respect to the amount of punitive damages.[2] Plaintiffs accepted the remittitur of punitive damages to the amount of $1,895,648.40 on November 8, 2018.

**Ford is a Staunch Defendant That Litigates More Aggressively Than Most Other Vehicle Manufacturers While Deceiving Consumers More Than Most Manufacturers**

28. There are vehicle manufacturers with whom this firm has had exactly zero trials, zero discovery disputes, zero motions to compel, zero fee motions. Ford Motor Company is not one of them. Since 2012, the firm has tried 55 automotive cases. One case ended in a hung jury and two cases ended in a mistrial. Taking those two matters out, Knight Law and its trial attorneys have a win-loss record of 36 wins and 17 losses. This amounts to nearly a 70% winning percentage

---

[1] On July 13, 2018, the parties attended a hearing on the proposed judgment. Following the hearing, the Court found that the civil penalties and punitive damages awarded are based upon the same wrongful conduct and that Plaintiff must elect between the two.

[2] Specifically, the Court found that the ratio of 118:1 between the punitive damages awarded ($7.5 million) and actual damages awarded ($63,188.28) to be disproportionate. Accordingly, the Court conditionally denied Ford's Motion for a New Trial as to punitive damages if an award of $1,895,648.40 (representing a ratio of 30:1) was accepted by Plaintiffs.

in trials. Of those 55 trials, Ford makes up 14 of them. In other words, Ford alone comprises 25% of all of the cases that go to trial. Of the 14 trials prosecuted against Ford, the firm has prevailed in 9 of them.

29. During the course of my years in practice, I have successfully pursued evidence during discovery that has proven damaging to the Ford. For example, Ford was compelled to produce 35,000 pages of training materials from its customer service call center. The production of these documents came only after Ford's representatives claimed for years that no such training materials existed, and perjured themselves in declarations opposing motions to compel. It was only once I flew to Melbourne, Florida to depose Abe Bush, one of Ford's customer service agents, during which he admitted that he had use of training materials. Based on that information, I pursued court orders to compel the materials. Ford's then-counsel of record from Bowman and Brooke (also initial counsel in this case), having denied the existence of training materials in countless declarations, flipped the opposition and claimed "it was a revelation" that the documents existed. Another example is Ford's attempt to conceal documents that it had produced in other class action litigation. Through continuing efforts, Ford was ordered to produce approximately 12,000,000 pages in a class document dump. The firm's attorneys spent countless hours sifting through these pages. Once certain documents were identified and brought into evidence at trial, Ford amazingly claimed that the documents were not genuine and authentic. As a result, we sought Ford's admission of the genuineness of these documents, which Ford initially denied, but court orders eventually compelled their admission of authenticity. More recently, there was an ongoing feud in which Ford was ordered to produce customer service documents located on what is referred to as the "G: drive," but Ford ignored the order, caused a motion to compel compliance, filed motions for a protective order and a motion for reconsideration, and after almost two years of this battle finally produced the contents of that G: drive.

30. In my experience, Ford's approach to litigation is to fight at every turn, make unacceptably low offers that its attorneys know from their experience are not satisfactory, or make no offers at all, until the trial date for the case is near.

31. While there are a variety of vehicles forming the basis of breach of warranty, CLRA, and fraud claims against Ford, the prosecution of claims by my firm in representation of consumers against Ford in large part involves two particular vehicles with defects. The first is Ford's Super Duty trucks that were sold with a defective diesel engine. The second involves Ford Focus and Fiesta vehicles equipped with a malfunctioning "adaptive automatic transmission." As mentioned to some extent above, the firm's efforts have led to court orders compelling Ford to produce millions of internal documents relating to the defects in these vehicles, such as internal emails, presentations, studies, charts, tables, and graphs. I am not aware of any other firm that has successfully pursued such discovery. Such efforts have led to resounding settlements and victories in trial, though admittedly not every case has ended with a victory for the consumer. In June 2016, one of the firm's trial teams obtained a jury verdict in the amount of $1.68M against Ford on another 6.0l diesel engine vehicle that was purchased for just over $50,000.00 because it was proven by clear and convincing evidence that Ford engaged in fraudulent conduct with malicious, oppressive and/or fraudulent intent.

32. In response to that verdict, Ford ramped up its defense even more. Ford hired several new law firms to assist in its defense. Ford is now represented by the following eleven law firms in lemon law and CLRA actions against my firm:

1) King & Spalding
2) Greenberg Traurig
3) Gordon Rees Scully Mansukhani, LLP
4) Gates, O'Doherty, Gonter & Guy
5) Baker Hostetler LLP
6) Snell & Wilmer, LLP
7) Shook, Hardy & Bacon
8) The Erskine Law Group
9) LeClairRyan
10) Sanders Roberts LLP

11) Dykema Gossett

33. Recently, one of Ford's attorneys, speaking on behalf of the entire army of lawyers, proclaimed that Ford was no longer willing to discuss settlement, did not want to engage in any further mediations and fully intends to bring every case to trial unless our clients accept Ford's existing offers. A true and correct copy of that letter is attached hereto as **Exhibit E**.

34. As a result of Ford's resolute defense, attorney fees are incurred during the prosecution of the lawsuit. As stated by one of Ford's attorneys in a declaration in support of a federal court finding federal jurisdiction of a matter based on amount in controversy, "it is not uncommon, and in fact quite regular, for attorney's fee and cost awards (or resolutions through informal discussions with opposing counsel) to exceed $100,000.00." A true and correct copy of the declaration of Spencer Hugret is attached hereto as **Exhibit F, p. 3, ¶ 4**.

**The Attorneys' Hourly Rates Are Reasonable Pursuant to the Lodestar Method in Light of their Experience**

35. I attended law school at Pepperdine University and I was a judicial extern for Judge Gregory W. Alarcon of the Los Angeles County Superior Court in 2002.

36. I have been admitted to the State Bar of California since April 29, 2003. Since my admission to the State Bar of California, I have specialized in consumer law.

37. I have extensive experience prosecuting and resolving consumer protection matters involving motor vehicle claims. For the past fifteen years, I have specialized in breach of warranty and fraud cases against automobile manufacturers and dealers. I was among the attorneys who represented the plaintiff in *Joyce v. Ford Motor Co.* (2011) 198 Cal.App.4th 1478, a leading case which extended the protections of the Lemon Law to trucks based on actual weight, not maximum capacity.

38. I originally worked for one of the largest consumer warranty law firms in the country, Consumer Legal Services. From April 2007 until April 2012, I was a founding partner in Romano, Stancroff & Mikhov PC. I was the Managing Partner of the firm until it was dissolved. In April 2012, I founded O'Connor & Mikhov, LLP. The firm was reformed in 2017 as Knight

Law Group, LLP. I am the Managing Partner of the firm. My rate for this case was $550/hour. My billing entries are indicated by the initials "SBM" in the billing statement exhibited to this declaration.

39. Lauren Ungs is a Partner in my office. Ms. Ungs has been employed by the firm since July 12, 2012. Ms. Ungs has been a member of the California bar and actively practicing law for five years. She graduated magna cum laude from Southwestern Law School in 2010. She currently specializes in consumer law, lemon law, and contract law. Ms. Ungs current hourly rate, now, over five years later, is $425/hour. Ms. Ungs' entries are indicated by the initials "LAU" in the billing statement exhibited to this declaration.

40. Amy Morse is a Partner in my office. Ms. Morse has been with my firm since her admission to the bar in 2013. Prior to her admission, she was a law clerk with my office since 2012. Ms. Morse graduated from Loyola Law School. Ms. Morse's hourly rate is $350/hour. Ms. Morse's billing entries are indicated by the initials "ALM" in the billing statement exhibited to this declaration.

41. Daisy Ortiz was an Associate of the law firm for three years from 2012 until August of 2015. Ms. Ortiz graduated from University of California, Davis School of Law and admitted to practice in California in 2012. Ms. Ortiz's hourly rate was $225/hour. Ms. Ortiz primarily undertook the written discovery and meeting and conferring regarding discovery. Ms. Ortiz's billing entries are indicated by the initials "DO" in the billing statement exhibited to this declaration.

42. Kristina Stephenson-Cheang graduated from Western State University College of Law and was admitted to practice in 2008. Ms. Stephenson-Cheang has been employed with the firm since 2013. Prior to her employment at OM Law, she worked for a different lemon law firm gaining valuable experience in this area of law. Ms. Stephenson-Cheang's hourly rate in this matter is $375/hour. Ms. Stephenson-Cheang's billing entries are indicated by the initials "KSC" in the billing statement exhibited to this declaration.

///

43. Kevin Van Hout was an Associate at my firm during the time he performed work on this matter. Prior to his employment with O'Connor & Mikhov LLP, Mr. Van Hout appeared in federal and state court, handling all matters in small business and consumer bankruptcy cases for a national firm. Mr. Van Hout was first admitted to practice law in the state of Illinois in 2003, was admitted in the state of Indiana in 2005, and was admitted in California in 2010. Mr. Van Hout graduated from University of Illinois College of Law after finishing Northwestern University as an undergraduate. Mr. Van Hout's rate while working at my firm was $300/hour. Mr. Van Hout's billing entries are indicated by the initials "KVH" in the billing statement exhibited to this declaration.

44. George Aguilar is an associate at Knight Law Group, LLP. He received his undergraduate degree from the University of California, Berkeley in 2011, and his law degree from the University of Maryland Carey School of Law in 2014. Mr. Aguilar was admitted to the California Bar in 2015, and spent his first year and a half practicing family law, criminal defense, personal injury and bankruptcy before joining my firm. Mr. Aguilar's hourly billing rate is $275/hour. Mr. Aguilar's billing entries are indicated by the initials "GA" in the billing statement exhibited to this declaration.

45. Janet Manrique was admitted to practice law in 1995. Ms. Manrique is of counsel that the firm regularly uses to make appearances in Northern California, for the purpose of keeping fees and costs down. Ms. Manrique's hourly rate for lemon law work is $375/hour based on her 20 years of experience in litigation. Ms. Manrique's billing entries are indicated by the initials "JSM" in the billing statement exhibited to this declaration.

46. Russell Higgins is a Senior Associate with the firm and was admitted to practice in 2003. Mr. Higgins graduated from Pepperdine University School of Law and his hourly rate in this matter is $450/hour. Mr. Higgins' billing entries are indicated by the initials "RH" in the billing statement exhibited to this declaration.

47. Michael Ouziel was an Associate at my firm. Mr. Ouziel graduated from Washington and Lee University School of Law and was admitted to practice in 2013. Mr. Ouziel

spent approximately his first two years of practice at a Los Angeles based boutique litigation firm and subsequently joined O'Connor & Mikhov, LLP in 2015, where his practice focuses largely on claims involving violations of the Song-Beverly Act. Mr. Ouziel's hourly billing rate was $250/hour. His billing entries are indicated by the initials "MO" in the billing statement exhibited to this declaration.

48. Chris Swanson is a Senior Associate in my office. Mr. Swanson graduated from UCLA School of Law in 2011 where he distinguished himself academically. Mr. Swanson has been an Associate at my firm since 2014. His prior professional experience includes individual and class action consumer protection law. Mr. Swanson's billing rate at my firm is $375/hour. Mr. Swanson's billing entries are indicated by the initials "CS" in the billing statement exhibited to this declaration.

49. Roger Kirnos is a Partner in my office. Mr. Kirnos graduated from Southwestern Law School in 2009 in the top 10% of his class with cum laude honors. Mr. Kirnos previously was an extern for former Chief Judge Alex Kozinksi of the Ninth Circuit Court of Appeals and an extern for Judge F. Gary Klausner of the United States District Court, Central District. Mr. Kirnos has been trial counsel in over twenty lemon law cases that went to jury verdict, and approximately a dozen more that settled once trial began. The hourly rate for Mr. Kirnos is $425/hour, and his billing entries are indicated by the initials "RK" in the billing statement exhibited to this declaration.

50. As always, Knight Law attempts to keep attorney fees and costs down while providing vigorous and effective representation.

51. All time billing entries were completed contemporaneously with each dated entry or near in time to the work performed. I have personally reviewed the billing entries to ensure that they appropriately reflect the time expended. I have removed or reduced any time I felt was excessive, duplicative, or otherwise unreasonable, or I have labeled the entry as a "no charge", as identified by the "N/C" in the invoice. My firm **does not bill clients** for secretarial support staff time.

52. While not controlling as to a reasonable rate for a contingent plaintiff attorney, Ford's lead counsel in this case charges a blended rate of 450 per hour for all attorneys regardless of experience, as demonstrated by a managing partner and a fourth year associate sharing the same billing rate. Ford's counsel has also declared that 450 per hour is either at *or below* the market rate for defense attorneys in San Joaquin, as well as in Orange County. Attached hereto as **Exhibit G** is a true and correct copy of the declaration of Ford's counsel Jeff Scott, filed in the matter of *Anderson v. Ford*, San Joaquin County, case number STK-CV-UBC-2013-0007198.

**Evidence to Support the Reasonableness of Hourly Rates for Attorneys**

53. I am aware of the hourly rates of other attorneys in California who work in the area of lemon law and consumer law. I bill my time at an hourly rate of $550 per hour. An hourly rate of $550 per hour is reasonable, and consistent with other attorneys who litigate consumer matters and who have a comparable level of experience. A canvas of the community of attorneys who specialize in this area reveals the following hourly rates:

a. Hallen Rosner of Rosner, Barry & Babbit, LLP, San Diego, CA has been practicing law since 1983 and specializes in consumer litigation with particular attention to auto financing issues. He charges $640 per hour. Survey as of 2018.

b. Michael Lindsey was admitted to the bar in 1993 and has been handling consumer law cases for nearly 15 years in San Diego, California. Mr. Lindsey's hourly rate is $625. Survey as of 2017. His previous rate of $575/hour was recently confirmed as reasonable in *Goglin v. BMW of North America* (2016) 4 Cal.App.5th 462, 473-74.

c. Brian Kemnitzer of Kemnitzer, Anderson, Barron, Ogilvie & Brewer LLP in San Francisco has been handling consumer cases since 1983. Mr. Kemnitzer charges $800 per hour. Survey as of 2016.

d. Robert Brennan of Brennan, Weiner and Associates in La Crescenta, California charges $450 per hour. He has been in practice since 1987. The

hourly rate for his associates is $375 per hour. Survey as of 2010.

e. Martin Anderson of The Anderson Law Firm in Santa Ana, California has practiced law since 1995 and charges $395 per hour. Mr. Anderson specializes in Lemon Law matters. Survey as of 2007.

f. Nancy Barros of Kemnitzer, Anderson, Barron, Ogilvie & Brewer LLP in San Francisco, California has been handling consumer cases since 1983. Ms. Barros charges $625 per hour. Survey as of 2016.

g. Mark Romano of Romano, Stancroff in Los Angeles, California has been practicing for 23 years, primarily in consumer litigation. His hourly rate is $400 per hour. Survey as of 2010.

54. On October 24, 2018, Judge Kelly L. Neel awarded 100% of requested lodestar attorneys fees in the amount of $189,230.00 and full requested costs and expenses in the amount of $32,079.98 in the matter of *Furber vs. Ford Motor Company* (Humboldt County Superior Court, Case No. DR130223). The case settled right before trial. All requested hourly rates were granted, including my rate of $550; $425 to $350 for partners Lauren Ungs and Amy Morse; $375 to $350 for "contract/of counsel" attorneys Diane Hernandez and Christopher Thoms; $375 to $350 for senior associates Kristina Stephenson-Cheang and Christopher Swanson; and $225 for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit H.**

55. On August 1, 2018, Judge William J. Elfving awarded lodestar attorneys fees in the amount of $12,680.00 in attorney fees and full costs and expenses in the matter of *Silin v. Ford Motor Company* (Santa Clara County Superior Court, Case No. 16CV297442). Specifically, the Court deemed my hourly rate of $500 per hour reasonable. Judge Elfving determined that the hourly rates of attorneys ranging from $350 to $400 per hour were reasonable, such as Partners Roger Kirnos and Amy Morse, and Associates Diane Hernandez, Chris Swanson and Kristina Stephenson-Cheang, and $250 per hour for younger attorneys. Contract/"Of Counsel" attorney Constance Morrison was awarded her hourly rate of $350 for all time expended. The attorney fee award represents 93% recovery of the lodestar fees and costs requested by motion in the matter.

(**Exhibit I**.)

56. On July 17, 2018, Judge Theodore C. Zayner awarded full requested lodestar attorneys of $24,255 $ and $1,728.96 in costs and expenses in the matter of *Lovato vs. Ford Motor Company* (Santa Clara County Superior Court, Case No. 16CV300284), which resulted in a settlement that is more than triple the total amount Plaintiff paid for the vehicle. The hourly rates awarded ranged from $500 per hour for senior-level attorneys such as myself; $350 per hour for attorneys Amy Morse, Christopher Swanson, Hadi Gerami, and Kristina Stephenson-Cheang; and $225 to $250 for younger attorneys such as Deepak Devabose, and Michael Ouziel. The overall award 100% of the amount requested. **(Exhibit J.)**

57. On July 17, 2018, Judge David M. Chapman awarded $55,127.50 in attorney's fees based on a request of $60,127.50 and full $7,730.78 in costs and expenses in the matter of *Garrison vs. FCA US LLC* (Riverside County Superior Court, Case No. PSC1605950), which resulted in a settlement that is more than double the total amount Plaintiff paid for the vehicle. The hourly rates awarded ranged from $500 to $490 per hour for senior-level attorneys, including me and trial counsel, Sepehr Daghighian; $350 per hour for attorneys Amy Morse, Constance Morrison, and Kristina Stephenson-Cheang; and $225 to $250 for younger attorneys. The overall award represents 92% of the amount requested. **(Exhibit K.)**

58. On July 13, 2018, Judge Deirdre Hill awarded full lodestar attorney's fees in the amount of $40,066.25 and full costs and expenses in the amount of $1,723.21 in the matter of *Bell vs. FCA US LLC* (Los Angeles County Superior Court, Case No. BC631014), which resulted in a settlement that consisted of a full buy-back of the subject vehicle, incidental and consequential damages, and civil penalties. The hourly rates awarded ranged from $500 for senior-level attorneys, such as myself and trial counsel, Michael Rosenstein; $400 to $350 per hour for attorneys Russel Higgins and Amy Morse; and $225 to $250 for Thomas Burns ad Hadi Gerami. The overall award represents 100% of the amount requested. The final order has yet to be signed but this is an accurate representation of the court's ruling. **(Exhibit L.)**

///

59. On July 13, 2018, Judge Joan M. Lewis awarded $20,960.00 in lodestar attorney's fees based on a request of $21,565.00, full $1,723.21 in costs and expenses, and a 1.5 multiplier of $10,782.50 in the matter of *Newberry vs. Ford Motor Company* (San Diego County Superior Court, Case No. 37-2016-00031300-CU-BC-CTL), which resulted in a settlement that is more than three times the total amount Plaintiff paid for the vehicle. The hourly rates awarded included my billing rate of $500 per hour; $400 to $350 per hour for partners Roger Kirnos and Amy Morse; and $250 for Michael Ouziel. The overall award represents more than 100% of the amount requested. **(Exhibit M.)**

60. On July 11, 2018, Judge Mark Borrell awarded full requested lodestar attorneys fees in the amount of $75,557.00 and full costs and expenses in the amount of $8,912.36 in matter of *Paul v. FCA US LLC* (Ventura County Superior Court, Case No. 56-2016-00480745-CU-BC-VTA). Specifically, the Court deemed my hourly rate of $500 per hour reasonable along with trial attorney, Richard Wirtz's hourly rate of $500 per hour as reasonable. Judge Borrell determined that the hourly rates of attorneys ranging from $200 to $400 per hour were reasonable, such as Partners Amy Morse and Roger Kirnos, and Associates Christopher Swanson, Thomas Burns, Kristina Stephenson-Cheang, and Michelle Lumasag. The attorney fee award represents 100% recovery of the lodestar fees and costs requested by motion in the matter. (**Exhibit N**.)

61. On June 28, 2018, Judge James Oakley awarded full requested lodestar attorneys fees in the amount of $98,602.50 and full costs and expenses in the amount of $17,878.25 in matter of *Coulombe v. FCA US LLC* (Merced County Superior Court, Case No. 15CV00543). Specifically, the Court deemed my hourly rate of $500 per hour reasonable along with trial attorney, Michael Rosenstein's hourly rate of $500 per hour as reasonable. Judge Oakley determined that the hourly rates of attorneys ranging from $200 to $400 per hour were reasonable, such as Partners Amy Morse and Roger Kirnos, and Associates Christopher Swanson, Deepak Devabose, Kristina Stephenson-Cheang, and Michelle Lumasag, and contract/"Of Counsel" attorney Diane Hernandez was awarded her hourly rate of $350 for all time expended. The attorney fee award represents 100% recovery of the lodestar fees and costs requested by motion in the

matter. (**Exhibit O**.)

62. On June 28, 2018, Judge Donald Proietti awarded full requested lodestar attorneys fees in the amount of $136,550.00, full costs and expenses in the amount of $15,682.73, and a 1.5 multiplier of $ $81,817.50 in matter of *Berriozabal v. FCA US LLC* (Merced County Superior Court, Case No. 15CV00543). Specifically, the Court deemed my hourly rate of $500 per hour reasonable along with trial attorney, Richard Wirtz's hourly rate of $500 per hour as reasonable. Judge Proietti determined that the hourly rates of attorneys ranging from $200 to $400 per hour were reasonable, such as Partners Lauren Ungs, Amy Morse, and Roger Kirnos, and Associates Russell Higgins, Christopher Swanson, Daisy Ortiz, Kevin Van Hout, Stephanie Marshall and contract/"Of Counsel" attorney Diane Hernandez was awarded her hourly rate of $350 for all time expended. The attorney fee award represents more than 100% recovery of the lodestar fees and costs requested by motion in the matter. (**Exhibit P**.)

63. On June 19, 2018, Judge David M. Chapman granted full lodestar attorney fees, costs and expenses in the amount of $15,148.75 in the matter of *Kortan v. Ford Motor Company* Riverside Superior Court, Case No. PSC1702737), which represented 100% of the fees and costs requested. Judge Chapman granted my rate of $500 per hour, $350 per hour for Amy Morse, $350 per hour for Chris Swanson, $350 per hour for Kristina Stephenson-Cheang, $325 per hour for Alastair Hamblin, and $250 for Hadi Gerami. **(Exhibit Q.)**

64. On June 18, 2018, Judge Richard Henderson awarded lodestar attorneys fees in the amount of $168,242.50, costs and expenses in the amount of $26,663.24, and a 1.2 multiplier of $33,648.50 in matter of *Reynolds v. Ford Motor Company* (Sonoma County Superior Court, Case No. SCV-254959). Specifically, the Court deemed a rate of $500 per hour reasonable for senior attorneys like myself and trial attorney, Bryan Altman's hourly rate of $500 per hour as reasonable. The attorney fee award represents more than 100% recovery of the lodestar fees and costs requested by motion in the matter. (**Exhibit R**.)

65. On June 18, 2018, Judge Daniel Ottolia awarded 95% of the requested lodestar fees and full costs and expenses requested by motion in the total amount of $20,503.00 in the matter of

*Simmons v. Ford Motor Company* (Riverside County Superior Court, Case No. RIC1610619). The court indicated it would not consider rates of defense counsel and found that the hourly rates of $350 per hour for Christopher Swanson, Amy Morse, and Kristina Stephenson-Cheang were reasonable for that venue and that the time incurred was reasonable. **(Exhibit S.)**

66. On June 18, 2018, Judge Mark S. Borrell awarded 90% of the requested lodestar fees and full costs and expenses requested by motion in the total amount of $48,786.65 in the matter of *Perez v. FCA US LLC* (Ventura County Superior Court, Case No. 56-2016-00486433-CU-BC-VTA). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue. The rates requested by motion ranged from $500 per hour for senior-level attorneys, including me and trial counsel Michael Rosenstein, the rate of $350 per hour for Chris Swanson, Kristina Stephenson-Cheang, Hadi Gerami and Amy Morse, and $225 per hour for Thomas Burns. **(Exhibit T.)**

67. On June 15, 2018, my firm was awarded a total of $ $68,390.29 in fees, costs, and expenses where Plaintiff's lodestar fee request was $46,322.50 plus costs and expenses of $5,484.04. In making this ruling, Judge Brian McCabe granted a lodestar multiplier 1.5, in the matter of *Morales v. Ford Motor Company* (Merced County Superior Court, Case No. 15CV-03200). Judge McCabe granted the rates requested by motion which ranged from $500 per hour for senior-level attorneys, including me and trial counsel Richard Wirtz and ruled that rates ranging from $400 per hour for Lauren Ungs, Russel Higgins, and Roger Kirnos, $350 per hour for Kristina Stephen-Cheang, contract attorney Diane Hernandez, Christopher Swanson, and Amy Morse, and $250 per hour associates Michael Ouziel and Deepak Devabose. **(Exhibit U.)**

68. On June 11, 2018, Judge Randall Stamen awarded $58,709.26 in attorney's fees based on a request of $65,232.50 and full costs of $7,149.84 in costs and expenses in the matter of *Soria vs. FCA US LLC* (Riverside County Superior Court, Case No. RIC1604160). The hourly rates awarded ranged from $500 per hour for senior-level attorneys, such as myself and trial counsel Richard Wirtz; $350 per hour for attorneys Christopher Swanson, Amy Morse, Constance Morrison, and Kristina Stephenson-Cheang; and $275 to $200 per hour for younger attorneys. The

overall award represents 90% of the amount requested. **(Exhibit V.)**

69. On June 11, 2018, Judge Harold E. Kahn awarded $59,099.26 in attorney's fees based on a request of $70,883.75 and $5,706.91 in costs and expenses and a .05 multiplier in the matter of *Barrera vs. FCA US LLC* (San Francisco County Superior Court, Case No. 16-551433). The hourly rates awarded ranged from $500 per hour for senior-level attorneys, including me and trial counsel, Michael Rosenstein; $400 to $350 per hour for attorneys Roger Kirnos, Amy Morse, Diane Hernandez, and Kristina Stephenson-Cheang; and $200 to $250 for younger attorneys. The overall award represents 84% of the amount requested. The final order has yet to be signed but this is an accurate representation of the court's ruling. **(Exhibit W.)**

70. On June 1, 2018, Judge Glenda Sanders awarded full requested lodestar attorney fees in the amount of $98,515 and full costs and expenses in the amount of $8,045.55 in the matter of *Vargas vs. FCA US LLC* (Orange County Superior Court, Case No. 30-2016-00845431-CU-BC-CJC). The hourly rates awarded ranged from $750 to $500 per hour for senior-level attorneys, such as myself, Mark O'Connor, trial counsel Richard Wirtz, and trial counsel Moses Lebovitz; $400 to $350 per hour for attorneys Roger Kirnos, Amy Morse, Constance Morrison, and Kristina Stephenson-Cheang; and $200 for younger attorney Michelle Lumasag. The overall award represents almost 99% of the amount requested. **(Exhibit X.)**

71. On May 18, 2018, Judge Bryan F. Foster awarded $37,405.00 in attorney fees and full costs and expenses in the matter of *Bahna v. Ford Motor Company* (San Bernardino County Superior Court, Case No. CIVDS 1602141). Specifically, the Court deemed my hourly rate of $500 per hour reasonable along with trial attorney, Sepehr Daghighian's, hourly rate of $400 per hour as reasonable. Judge Feuer determined that the hourly rates of attorneys ranging from $225 to $400 per hour were reasonable, such as Partners Lauren Ungs and Amy Morse (who were Associates at the time), and Associates Russell Higgins, Alastair Hamblin, Kristina Stephenson-Cheang, Daisy Ortiz, etc. Contract/"Of Counsel" attorney Constance Morrison was awarded her hourly rate of $350 for all time expended. The attorney fee award represents 98% recovery of the lodestar fees and costs requested by motion in the matter. (**Exhibit Y**.)

72. On May 11, 2018, Judge Susan J. Matcham awarded full lodestar attorney fees of $22,015.68 and full costs and expenses in the matter of *Gomes v. Ford Motor Company* (Monterey County Superior Court, Case No. 16CV002793). Specifically, the Court deemed my hourly rate of $500 per hour as reasonable. Judge Matcham also determined that the hourly rates of attorneys ranging from $225 to $400 per hour were reasonable, such as Partners Lauren Ungs and Amy Morse (who were Associates at the time), and Associates Christopher Swanson, Michael Ouziel, Kristina Stephenson-Cheang, and Stephanie Reimer. Contract/"Of Counsel" attorney Diane Hernandez was awarded her hourly rate of $350 for all time expended. The attorney fee award represents 100% recovery of the lodestar fees and costs requested by motion in the matter. The final order has yet to be signed but this is an accurate representation of the court's ruling. (**Exhibit Z.**)

73. On April 26, 2018, Judge Peter Wilson awarded 96% of the requested lodestar fees and full costs and expenses requested by motion in the total amount of $73,047.36 in the matter of *Hitomi v. Ford Motor Company* (Orange County Superior Court, Case No. 30-2016-00847294-CU-BC-CJC). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred was reasonable. The rates requested by motion ranged from $500 per hour for senior-level attorneys, including me and trial counsel Richard Wirtz, the rate of $350 per hour for Chris Swanson, $350 per hour for Kristina Stephenson-Cheang, $325 per hour for Alastair Hamblin, $350 per hour for Amy Morse, as well as rates of $225 per hour for Jennifer Reiz, $250 per hour for Michael Ouizel, and $225 per hour for Daniel Kalinowski. **(Exhibit AA.)**

74. On March 1, 2018, Judge Barry T. LaBarbera awarded 95% of the requested lodestar fees and full costs and expenses requested by motion in the total amount of $40,771.80 in the matter of *Vasquez v. Ford Motor County* (San Luis Obispo County Superior Court, Case No. 16-CV-0075). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred was reasonable. The rates requested by motion included my rate of $500 per hour, the rate of $400 per hour for Russell

Higgins, $375 per hour for Lauren Ungs, $375 per hour for Roger Kirnos, $350 per hour for Amy Morse, each of whom were recently named Partners of the firm, as well as rates of $350 per hour for Kristina Stephenson-Cheang, $250 per hour for Michael Ouizel, and $225 per hour for Deepak Devabose. **(Exhibit BB.)**

75. On February 27, 2018, Judge Richard H. Dubois awarded $23,812.50 in attorney's fees based on a request of $26,887.50 and full $1,287.26 in costs and expenses in the matter of *Vidal vs. Ford Motor Company* (San Mateo County Superior Court, Case No. CIV537352), which resulted in a settlement that is more than three and a half times the total amount Plaintiff paid for the vehicle. The hourly rates awarded ranged from $500 per hour for myself; $375 to $325 per hour for attorneys Roger Kirnos, Lauren Ungs, Chris Swanson, Amy Morse, Alistair Hamblin, and Kristina Stephenson-Cheang; and $250 to $225 for younger attorneys. The overall award represents almost 90% of the amount requested. **(Exhibit CC.)**

76. On February 23, 2018, Judge John P. Doyle awarded $63,705.38 in attorney's fees based on a request of $70,783.75 and full $8,560.21 in costs and expenses in the matter of *Aandahl vs. FCA US LLC* (Los Angeles County Superior Court, Case No. BC620824), which resulted in a settlement that is more than double the total amount Plaintiff paid for the vehicle. The hourly rates awarded ranged from $500 per hour for senior-level attorneys, including me and trial counsel, Michael Rosenstein; $400 to $350 per hour for attorneys Russel Higgins, Lauren Ungs, Chris Swanson, Amy Morse, Constance Morrison, Kristina Stephenson-Cheang, $200 to $275 for younger attorneys. The overall award represents 90% of the amount requested. The final order has yet to be signed but this is an accurate representation of the court's ruling. **(Exhibit DD.)**

77. On January 5, 2018, Judge Mel Red Recana granted <u>full</u> requested lodestar attorney fees in the amount of $529,885.50 and $96,840.81 in costs and expenses in the matter of *Margeson v. Ford Motor Company* (Los Angeles Superior Court, Case No. BC549430), which represented 100% of the fees and 98% of requested costs and expenses. Judge Recana believed the firm's prowess during the four-week trial that resulted in an unprecedented almost two million dollar jury verdict warranted a 1.8 multiplier of $423,908.40 to be added to the fee award. In particular, the

hourly rates awarded ranged from $500 to $650 per hour for senior-level attorneys such as myself, trial counsel Michael Rosenstein, trial counsel Bryan Altman, and Hal Rosner ; $400 to $350 per hour for senior attorneys Russel Higgins, Lauren Ungs, Roger Kirnos, Amy Morse, Kirk Donnelly, Constance Morrison, and Kristina Stephenson-Cheang, and $200 to $300 for younger attorneys. **(Exhibit EE.)**

78. On January 8, 2018, Judge Kent M. Kellegrew awarded 100% of the fees, costs and expenses requested by motion in the total amount of $26,065.90 in the matter of *Allem v. FCA* (Ventura County Superior Court, Case No. 56-2015-00468707). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion included my rate of $500 per hour, the rate of $400 per hour for Russell Higgins, $350 per hour for Lauren Ungs, $250 per hour for Amy Morse, each of whom were recently named Partners of the firm, as well as rates of $325 per hour for Chris Swanson, $350 per hour for Kristina Stephenson-Cheang, and $200 per hour for Deepak Devabose. The final order has yet to be signed but this is an accurate representation of the court's ruling. **(Exhibit FF.)**

79. On December 11, 2017, Judge Melinda M. Reed awarded $151,780.00 in attorney's fees based on a request of $155,330.00 and $42,060.45 in costs and expenses after trial in the matter of *Dominic Teran vs. FCA US LLC* (Tulare County Superior Court, Case No. 265860), which resulted in a maximum possible statutory award of three times the price of the vehicle. The hourly rates awarded ranged from $500 per hour for senior-level attorneys, including me and trial counsel, Rich Wirtz; $325 to $400 per hour for attorneys Russel Higgins, Lauren Ungs and Chris Swanson, $200 to $250 for younger attorneys; and for attorneys from Wirtz Law $325 per hour for Amy Smith, $250 per hour for Jessica Underwood and Lauren Saab, and $175 per hour for paralegals. The overall award amounts to $193,840.45 in the fees, costs and expenses, which represents 98% of the amount requested. The final order has yet to be signed but this is an accurate representation of the court's award. **(Exhibit GG.)**

///

80. On November 21, 2017, Judge David R. Lampe presiding in Kern County over the trial in the matter of *Marilyn West v. Hyundai Motor America* (Kern County Superior Court, Case No. BCV-16-100792) awarded 100% of the fees requested based on the same hourly rates requested here for an attorney fee award $169,148.75, plus an additional $16,431.83 in costs and expenses. The plaintiff obtained a jury verdict for treble damages, e.g. maximum civil penalties. Judge Lampe confirmed the rate of $650 per hour for trial attorney Bryan Altman, $500 per hour for myself and rates ranging from $350 to $400 per hour for Partners and mid-level Associates Russell Higgin, Kristina Stephenson-Cheang and Brian Murray, $450 per hour for Joel Elkins from the Altman Law Group, and $200 to $250 per hour for the lowest billing rate attorneys. The court awarded $350 per hour for attorney/"of counsel," Diane Hernandez. **(Exhibit HH.)**

81. On November 17, 2017, Judge Colleen K. Sterne awarded all of the requested $54,400.17 in attorney's fees and costs and expenses in the matter of *Oksana Yudinova vs. Ford Motor Company* (Santa Barbara Superior Court, Case No. 16CV00034). In doing so, the court awarded hourly rates ranging from $500 per hour for senior-level attorneys such as trial counsel, Richard Wirtz and myself, $325 to $400 per hour for mid-level Associates, $325 per hour for Associate Amy Smith from Wirtz Law, $200 to $250 for younger associates, and $175 per hour for paralegals. In total, the fee award represents 100% of the lodestar fee request. The final order has yet to be signed but this is an accurate representation of the court's award. **(Exhibit II.)**

82. On October 31, 2017, Judge Elizabeth R. Feffer granted attorney fees, costs and expenses in the amount of $43,527.50 in the matter of *Jesus Montes v. Ford Motor Company* (Los Angeles Superior Court, Case No. BC617619), which represented 100% of the fees and costs requested. Judge Feffer granted rates from $750 per hour for trial counsel Moses Lebovits, my rate of $500 per hour, $400 per hour for Senior Associate Russell Higgins, $325 to $350 per hour for Associates Chris Swanson and Kristina Stephenson-Cheang, $350 per hour for Mr. Lebovits' associates, Ashley Arnett and Mary Fersch, $250 per hour for then-associate, now-Partner Amy Morse. **(Exhibit JJ.)**

///

83. On October 11, 2017, Judge Elizabeth R. Feffer awarded 98% of the attorney fees requested by motion in the matter of *Sergio Lopez v. Ford Motor Company* (Los Angeles County, Case No. 585892) in the amount of $108,750.00, with the one reduction stemming from my firm's own withdrawal of time that was unreasonable. Judge Feffer reviewed the following hourly rates and determined them to be reasonable: $500 per hour for attorneys Steve Mikhov and Richard Wirtz, $400 per hour for attorney Russel Higgins, $300 - $350 per hour for attorneys Alistair Hamblin, Constance Morrison, Kristina Stephenson-Cheang, Amy Smith and Erin Barns, and $250 per hour for Amy Morse and Lauren Sabb. **(Exhibit KK.)**

84. On September 20, 2017, Judge Gail R. Feuer awarded $227,228.00 in attorney fees and $31,712.55 in costs and expenses in the matter of *Anita Longin vs. Ford Motor Company* (Los Angeles Superior Court, Case No. BC564186). Specifically, the Court deemed my hourly rate of $500 per hour reasonable along with trial attorney, Sepehr Daghighian's, hourly rate of $400 per hour as reasonable. Judge Feuer determined that the hourly rates of attorneys ranging from $225 to $400 per hour were reasonable, such as Partners Lauren Ungs and Amy Morse (who were Associates at the time), and Associates Russell Higgins, Alastair Hamblin, Kristina Stephenson-Cheang, Daisy Ortiz, etc. Contract/"Of Counsel" attorney Constance Morrison was awarded her hourly rate of $350 for all time expended. The attorney fee award represents 98% recovery of the lodestar fees and costs requested by motion in the matter. (**Exhibit LL**.)

85. On September 15, 2017, Judge Kevin A. Enright awarded $199,248.08 in attorney's fees after trial in the matter of *Julie Harris vs. Hyundai Motor America* (San Diego Superior Court, Case No. 37-2015-00019958-CU-BC-CTL). Plaintiff obtained a maximum civil penalty jury verdict at trial. The Court found the hourly rates of Plaintiff's attorneys reasonable, including trial counsel, Bryan Altman's, rate of $650 per hour and my hourly rate of $500 per hour. The court found the hourly rates of $250 to $400 per hour for litigation attorneys, such as Russell Higgins, Lauren Ungs (trial counsel), Chris Swanson, Amy Morse and Michael Ouziel, were reasonable. The court also found that Mr. Altman's associates, Joel Elkins and Jordan Cohen, billed reasonable hourly rates of $450 and $300, respectively. The attorney fee award represents 85% of the lodestar

fees requested by motion in the matter. (**Exhibit MM**.)

86. On September 8, 2017, Judge Eddie C. Sturgeon awarded $226,845.00 in attorney's fees plus $46,021.71 in costs and expenses after trial in the matter of *John Aspinall vs. Kia Motors America* (San Diego Superior Court, Case No. 37-2015-00002577-CU-BC-CTL). The total award amounts to $272,866.71. Plaintiff obtained a maximum civil penalty jury verdict at trial. Specifically, the Court deemed reasonable my hourly rate of $500, as well as trial attorneys, Michael Rosenstein's and Richard Wirtz', hourly rates of $500. He found that the hourly rates of $350 per hour reasonable for Lauren Ungs and a range of $200 to $250 per hour for younger attorneys. He also found that $375 and $350 per hour were reasonable for our contract attorneys, Kirk Donnelly and Constance Morrison. The attorney fee awarded represent 80% of the lodestar fees requested by motion in the matter. (**Exhibit NN**.)

87. On August 9, 2017, Judge Sandra K. Bean awarded $94,112.50 in attorney's fees plus $11,484.05 in costs and expenses in the matter of *Tanya Bravo v. FCA US LLC* (Alameda Superior Court, Case No. RG15757477), which represented 100% of the amount requested by motion. The Court affirmed the hourly rates of attorneys, including the hourly rate of trial counsel of $650 for Bryan Altman, my hourly rate of $500, and associate rates ranging from $225 to $375 per hour. In total, the fee award represented 100% of the lodestar fees requested. (**Exhibit OO**.)

88. On August 9, 2017, Judge Craig L. Griffin awarded $59,515.00 in attorney's fees in the matter of *Jose Murillo v. FCA US LLC* (Orange County Superior Court, Case No. 30-2015-00771206-CU-BC-CJC). The Court affirmed the reasonableness of hourly rates requested by motion, specifically my rate of $500 per hour, and rates of $300 to $350 per hour for attorneys such as Lauren Ungs, Chris Swanson, Kristina Stephenson-Cheang, Kevin Van Hout, $400 for Erin Barns from Wirtz Law, and $200 to $250 for young associates. In total, the fee award represented 97% of the lodestar fees requested, with the one reduction being time that we withdrew on our own. (**Exhibit PP**.)

89. On June 19, 2017, Judge Michael J. Raphael awarded $116,872.50 in attorney's fees after trial in the matter of *Bellamy v. Mercedes Benz USA LLC* (Los Angeles Superior Court,

Case No. BC597233). Plaintiff obtained a maximum treble damages jury verdict. The Court affirmed the hourly rates of the attorneys, including Moses Lebovits' rate of $750 per hour, my rate of $500 per hour and mid-level and young associates ranging from $250 to $400 per hour, as well as Attorney Ashley Arnett at $350 per hour. The court made reductions to some time entries and the fee award represents 84% of the lodestar fees requested. (**Exhibit QQ**.)

90. On May 26, 2017, my firm sought $97,221.25 in fees and $4,282.35 in costs and expenses in the matter of *Pumphrey v. Ford Motor Company* (Riverside Superior Court, Case No. RIC1400402). The Court ordered the parties to meet and confer and Ford accepted a 10% reduction of fees, and Judge Gloria C. Trask issued an order for a fee and cost award for a total of $92,000.00. (**Exhibit RR**.)

91. On May 24, 2017, Judge Howard L. Halm awarded $168,000.00 in attorney's fees and $27,257.19 in costs and expenses in a jury trial that resulted in a maximum civil penalty award for our client in the matter of *Gomez v. Kia Motors America, Inc.* (Los Angeles County Superior Court, Case No. BC 574493). The attorney fee award represents 81% of the lodestar fees requested by motion in the matter. The court reduced the number of hours for various billing entries. The court also reduced Attorneys Bryan Altman and Joel Elkins from $650 per hour and $450 per hour down to $550 per hour and $375 per hour, respectively. The court found my hourly rate of $500 to be reasonable as well as those of other attorneys in my office ranging from $225 per hour for Daisy Ortiz to $350 per hour for Lauren Ungs and Kristina Stephenson-Cheang to $400 per hour for Russell Higgins. The court, on its own, *raised* the rate of trial attorney Roger Kirnos from the requested $375 per hour to $475 per hour. **(Exhibit SS.)**

92. On May 9, 2017, Judge Sidney P. Chapin in Kern County awarded a total of $296,055.00 in attorney's fees plus $25,651.18 in costs and expenses based on a jury verdict for maximum civil penalties in the matter of *Cofield v. Kia Motors America, Inc.* (Kern County Superior Court, Case No. S-1500-CV-283504). In so doing, Judge Chapin expressly ruled that the requested hourly rates were reasonable, including a rate of $650 per hour for attorney Bryan Altman, $500 per hour for trial attorney Michael Rosenstein, $500 per hour for my rate, $375 per

hour for trial attorney Roger Kirnos, and all other requested rates of $200, $225, $300, $325 and $350 per hour as reasonable for Kern County. (**Exhibit TT**.)

93. On March 24, 2017, my firm was awarded a total of $64,138.00 in fees, costs, and expenses where Plaintiff's lodestar fee request was $43,417.50 plus costs and expenses of $5,503.04. In making this ruling, Judge Thomas W. Wills granted a lodestar multiplier 1.5, in the matter of *Herrera v. Chrysler* (Monterey County Superior Court, Case No. M126216). The court reduced the two top billing attorneys' rates that were at $500 per hour down to $450 per hour and ruled that all other rates, including rates for Roger Kirnos at $375 per hour, the rate of $350 per hour for Lauren Ungs, Kristina Stephen-Cheang and contract attorney, Diane Hernandez, $400 per hour for Russell Higgins, and junior attorney rates for $225 to $250 per hour. Judge Wills found that the work performed and the time incurred for that work was reasonable and did not make any reductions. (**Exhibit UU**.)

94. On March 15, 2017, Judge Susan Bryant-Deason awarded $113,398.46 in fees, costs and expenses in the matter of *Andrino v. Kia* (Los Angeles County Superior Court, Case No. BC596210), which settled on the first day of trial. The court's award represents approximately 10% reduction of the fees requested by motion. (**Exhibit VV**.)

95. On March 17, 2017, in the matter of *Page v. Kia Motors America, Inc.* (San Diego Superior Court, Case No. 37-2014-00023991-CU-BC-CTL), Judge Eddie C. Sturgeon granted an award of attorney's fees, costs and expenses in the amount of $271,077.16 in a case in which our clients prevailed at trial. Judge Sturgeon ruled that the hourly rates were reasonable, including trial counsel Bryan Altman's rate of $650/hour and Roger Kirnos' rate of $375/hour. The court found my rate of $500/hour to be reasonable, as well as each of my associates and the associates of Mr. Altman who top out at $450/hour for Joel Elkins. The court's order reflects a 15% across the board reduction on the overall attorney's fees amount but expressly determined the hourly rates were reasonable. (**Exhibit WW**.)

96. On February 28, 2017, Judge Ernest M. Hiroshige in Los Angeles County Superior Court awarded 100% of the requested fees in the matter of *Dorfman v. BMW of North America,*

*LLC* (Los Angeles Superior Court, Case No. BC538183) for a total attorney fee award (not including costs) of $47,732.50. Therefore, the court confirmed the reasonableness of the time expended as well as the reasonableness of the hourly rates requested, which were $500 for my rate and the rate of senior trial counsel, Rich Wirtz, $300 to $350 per hour for middle level attorneys such as Lauren Ungs, Kristina Stephenson-Cheang, Kevin Van Hout, and contract attorney/"of counsel" Constance Morrison, and $200 to $250 per hour for the younger associates, such as Daisy Ortiz, Amy Morse, Stephanie Marshall and Michael Ouziel. (**Exhibit XX**.)

97. On December 5, 2016, Judge Colleen K. Sterne in Santa Barbara ruled that the hourly rates and the amount of the work performed were both reasonable, and granted 150% of the firm's lodestar fee request in the matter of *Holzer v Ford Motor Company* (Santa Barbara County Superior Court, Case No. 15CV02771). The court granted a multiplier of 1.5, for a total award of fees, costs and expenses in the amount of $143,301.69. The court found the hourly rates of my firm ranging from $500 per hour for my rate to $250 per hour for the lowest billing attorneys were reasonable. The court also found that trial counsel, Sepehr Daghighian's, hourly rate of $400 per hour was reasonable. (**Exhibit YY**.)

98. On November 2, 2016, Judge Barbara A. Meiers in Los Angeles County Superior Court awarded 100% of the requested fees and costs in the matter of *Carter v. Chrysler Group LLC* (Los Angeles Superior Court, Case No. BC495228) resulting in a total award of fees, costs and expenses in the amount of $41,466.22. The award reflects a finding that the hourly rate of $500 per hour is reasonable for myself and senior trial attorney, Michael Rosenstein, as well as $350 for attorneys Roger Kirnos, Lauren Ungs and Chris Swanson. (**Exhibit ZZ**.)

99. On August 25, 2016, Judge Elizabeth A. White awarded 100% of the requested lodestar attorney fees and costs and expenses in the total sum of $84,210.90 in the matter of *Mansur v. Chrysler Group, LLC* (Los Angeles County Superior Court, Case No. BC539866). Judge White expressly approved hourly rates ranging from $600 per hour for trial counsel, Mark O'Connor, to my rate of $500 per hour to $325 - $350 per hour for mid-level attorneys such as Lauren Ungs, Chris Swanson, Shawna Melton and Kristina Stephenson-Cheang. (**Exhibit AAA.**)

100. On August 22, 2016, in the matter of *Kebodeaoux v. Mercedes-Benz* (Los Angeles Superior Court, Case No. BC552037), Judge Marc R. Marmaro granted an award of attorney's fees, costs and expenses in the amount of $203,247.39 in a case in which our clients prevailed at trial with an award of civil penalties. In so doing, the court took a 15% reduction on the overall amount but expressly considered and granted hourly rates for trial counsel Mark O'Connor at $600 per hour, my rate at $500 per hour, mid-level attorney rates of $300 to $350 per hour and lower billing attorney rates of $225 to $250 per hour. (**Exhibit BBB**.)

101. Also on August 22, 2016, Judge John T. Doyle ruled that the hourly rates were reasonable and likewise ruled the work performed in that case was also reasonable. He also awarded 100% of the requested lodestar fees and costs in the case entitled *Baca v. Chrysler Group, LLC* (Los Angeles Superior Court, Case No. BC566511). The court ruled that the time entries were reasonable as well as the hourly rates were reasonable, including the rate of $500 per hour for myself and senior trial counsel, Michael Rosenstein, $300 to $350 per hour for attorneys Lauren Ungs, Roger Kirnos, Chris Swanson, Kevin Van Hout and Constance Morrison, and $200 to $250 per hour for attorneys Stephanie Marshall, Michael Ouziel, Daisy Ortiz and Amy Morse. (**Exhibit CCC.**)

102. On August 2, 2016, Judge Teresa A. Beaudette awarded 100% of the requested fees, costs and expenses in the matter of *Lepe v. Chrysler Group, LLC* (Los Angeles Superior Court, Case No. BC556273) for a total of $74,712.10. Judge Beaudette determined the requested hourly rates were reasonable and found that the work performed in the matter was reasonable. The requested rates ranged from $650 per hour for trial counsel, Bryan Altman, to $500 per hour for my rate, to $450 per hour for senior attorney, Joel Elkins, to $200 to $350 per hour for associates ranging from 1 year to 5 years of legal experience in California. (**Exhibit DDD.**)

103. On June 6, 2016, Judge Michael Johnson expressly confirmed the reasonableness of each of the hourly rates and awarded 90% of the attorneys' lodestar fees in the amount of $50,541.00, in addition to $2,634.80 in costs, in the case of *Perez v. Chrysler Group LLC* (Los Angeles Superior Court, Case No. BC528217.) The court ruled that my rate of $500 per hour was

reasonable, trial counsel Michael Rosenstein's rate of $450 per hour was reasonable, rates of $300 to $350 per hour for attorneys Lauren Ungs, Roger Kirnos, Kevin Van Hout, Kristina Stephenson-Cheang were reasonable, and the rate of $375 per hour was reasonable for attorney Kirk Donnelly. (**Exhibit EEE**.)

104. On December 21, 2015, Judge Melinda M. Reed issued a ruling directing the parties to meet and confer to come to an agreement in the case of *Wing v. Ford Motor Company* (Tulare County Superior Court, Case No. VCU253635). The parties came to an agreement whereby the award of attorney's fees and costs and expenses came to $115,405.60, which represented 90% of the lodestar fees requested. The award included my rate of $500 per hour, and the rate of $500 per hour for trial counsel, Rich Wirtz. Mid-level attorneys such as Lauren Ungs and Kristina Stephenson-Cheang, Joshua Sams and Erin Barnes were granted rates of $350 to $400 per hour. (**Exhibit FFF**.)

105. On December 1, 2015, Judge Ernest H. Goldsmith awarded 100% of the attorneys' lodestar fees and costs requested in the matter of *Yerbic v. Ford Motor Company* (San Francisco County Superior Court, Case No. CGC-13-533092) in the amount of $73,995.00, thereby confirming the reasonableness of the hourly rates requested and the reasonableness of the time incurred. The court granted my rate of $500 per hour and my associates' rates ranging from $225 to $350 per hour. The court also granted trial attorneys, Michael Rosenstein and Roger Kirnos, their rates of $450 and $300 per hour, respectively. (**Exhibit GGG**.)

106. On November 4, 2015, Judge Geoffrey M. Howard granted fees, costs and expenses in the case of *Kran v. Ford Motor Company* (Marin County Superior Court, Case No. CIV1302144) awarding $73,918.63 in lodestar fees, after an hourly rate reduction of 15% for each attorney. The court also made various other deductions to the amount of time spent on the case. However, the court granted a 1.5 multiplier in the amount of $36,959.31, for a total award including costs of $122,947.34. (**Exhibit HHH**.)

107. On October 27, 2015, Judge Geoffrey M. Howard awarded attorney's fees and costs in the matter of *Wiessler v. Ford Motor Company* (Marin County Superior Court, Case No.

CIV1303232) in the amount of $144,137.77. The court determined that counsel's rates of $225 to $500 per hour were higher than rates charged by attorneys in the particular community of Marin County and reduced the rates by 15%, but granted a lodestar multiplier of 1.5. (**Exhibit III.**)

108. On September 9, 2015, Judge Gregory W. Alarcon awarded 100% of the attorney's fees and costs and expenses actually incurred in the case of *Helm v. Chrysler* (Los Angeles County Superior Court, Case No. BC519503) in the amount of $66,172.80, thereby confirming the reasonableness of the hourly rates requested and the reasonableness of the time incurred. Judge Alarcon granted my rate of $450 per hour, trial attorneys Michael Rosenstein and Roger Kirnos at rates of $450 and $300, respectively, associate rates at $300 per hour for attorneys Lauren Ungs and Kevin Van Hout and $325 per hour for Kristina Stephenson-Cheang, $350 per hour for Constance Morrison, and $200 to $250 per hour for Amy Morse, Daisy Ortiz and Stephanie Marshall. (**Exhibit JJJ.**)

109. On April 20, 2015, Judge Michael P. Linfield awarded $79,081.14 in fees and costs and expenses in the matter of *Shychko v. Mercedes-Benz USA* (Los Angeles Superior Court, Case No. BC533642). Judge Linfield reduced the fee amount by 21% but granted a lodestar multiplier of 1.5. (**Exhibit KKK.**)

110. On January 12, 2015, Judge Jeffrey A. Thompson awarded a total of $126,129.08 in fees and costs and expenses in the matter of *Thiessen v. Ford Motor Company* (Colusa County Superior Court, Case No. CV23968. Judge Thompson reduced the hourly rates in light of the rural venue (there is one courtroom for the entire county) but added a multiplier of 1.25 that resulted in an award comprising nearly 100% of the $129,765.90 in fees and costs actually incurred in the case. (**Exhibit LLL.**)

111. On January 5, 2015, Judge Melinda M. Reed in Tulare County confirmed the reasonableness of each our attorneys' rates, including my rate of $400 per hour and co-counsel Michael Rosenstein's rate of $450 per hour. The Court awarded 90.4% of the fees requested in the matter of *Valencia v. Ford Motor Company* (Tulare County, Case No. 252468). (**Exhibit MMM.**)

112. On October 8, 2014, Judge Terry A. Green awarded $150,000 in a case that went to trial in the matter of *Sanders v. Ford Motor Company* (Los Angeles County Superior Court, Case No. BC48466.) The hourly rates ranged from $175 per hour for Ms. Ortiz to $300 - $375 per hour for associates and mid-level attorneys such as Roger Kirnos, Lauren Ungs and Kevin Van Hout, to $400 per hour for my rate and $450 per hour for trial counsel, Michael Rosenstein. (**Exhibit NNN.**)

113. On October 31, 2013, Judge Abraham Khan awarded the amount of $136,701.17 in the matter of *Chiavassa v Ford Motor Company*, Los Angeles Superior Court, awarding him his hourly rate of $500 per hour. (**Exhibit OOO**.)

114. On September 17, 2013, Judge Ernest M. Hiroshige awarded me fees that I requested at the rate of $350 per hour in *Snell v. Ford Motor Company*, Los Angeles Superior Court, Case No. BC 471985. Judge Hiroshige also granted a lodestar multiplier of 1.5. (**Exhibit PPP**.)

115. On July 24, 2013, Judge Michael L. Stern awarded fees at my rate of $350 per hour in *Meuchel v. Ford Motor Company* (Los Angeles Superior Court, Case No. BC 481727). (**Exhibit QQQ**.)

116. On January 6, 2011, Judge Sidney P. Chapin awarded me all the fees I requested at $300 per hour in *Watson v. Mercedes-Benz USA, LLC* (Kern County Superior Court Case No. S-1500-CV-268423). (**Exhibit RRR**.)

117. On May 4, 2010, our firm obtained an order from Judge Gail Brewster Bereola, in the matter of *Walker v Mercedes Benz USA* (Alameda Superior Court, Case No. RG08402907). Judge Brewster found that an hourly rate of $400 for Mr. O'Connor was reasonable and appropriate. (**Exhibit SSS**.)

118. On April 23, 2010, Judge Frederick A. Mandabach presiding over the matter of *Gonzalez v. Chrysler* (San Bernardino Superior Court Case No. CIVSS803240) granted Mark O'Connor a lodestar rate of $400 per hour as reasonable and appropriate, and my rate of $300 per hour was deemed reasonable as well. (**Exhibit TTT.**)

119. On February 19, 2010, Judge Sheila B. Fell awarded me all the fees I requested at $300 per hour in *Micu v. Chrysler Motor Co.* (Orange County Superior Court Case No. 30-2008-00114410). **(Exhibit UUU.)**

120. On March 5, 2009, Judge Rolf M. Treu awarded me all the fees I requested at $300 per hour, plus a 1.33 multiplier in *Jeske v. Chrysler Motor Co.* (Los Angeles Superior Court Case No. BC394377). **(Exhibit VVV.)**

121. On August 20, 2008, I was awarded attorney fees based on an hourly rate of $300 per hour after a 1.5 multiplier in *Kang v. American Honda Motor Co.* (Los Angeles County Superior Court Case No. BC379949). Although the court in *Kang* reduced the requested hourly rate, it did award a 1.5 multiplier because *Kang*, like this case, was taken on a contingent-fee basis. **(Exhibit WWW**.)

122. In *Root v. Mercedes-Benz USA, LLC* (Orange County Superior Court, Case No. 06CC07044) Ret. Judge Schneider awarded an hourly rate of $295 per hour including a multiplier of 1.075 on January 14, 2008. **(Exhibit XXX.)**

123. I request a multiplier of 2.2 based on my contingent fee, the risk and delay in payment associated with a contingent fee scenario, and the result achieved. Such a multiplier is reasonable and towards the low end under the established law. (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 255.) Plaintiffs' attorneys are paid only if Plaintiffs prevail, unlike Defendant's attorneys who get paid monthly regardless of the outcome. Moreover, Defendant's attorneys typically have a continuing and ongoing relationship, whereas this firm will most likely not have the opportunity to represent Plaintiffs again.

124. It is not uncommon for attorney's fees and costs to exceed the client's damages. The Legislature acknowledged such a circumstance, which is the reason behind the fee shifting provision of the Song-Beverly Act and the CLRA. Otherwise, consumers would be left without opportunity for redress when their damages were not enough for an attorney to take the case on a contingent fee or hourly rate basis. Such a result occurs in large part because of dealerships' or vehicle manufacturers' refusal to adhere to statutory laws protecting consumers, resistance to

honoring consumers' complaints, and generally playing games or simply abusing discovery procedures. For example, Ford could have avoided paying any attorney fees whatsoever had it admitted to its wrongdoing early on. Instead, Ford engaged in expensive litigation, and drove up fees and costs by, among other things, filing a Demurrer and Motion to Strike Plaintiffs' Complaint, filing a Motion for Summary Adjudication, filing a Motion for Protective Order, engaging in extensive discovery, stone-walling Plaintiffs' discovery efforts, and holding out for nearly five years of litigation before ultimately reaching a jury trial.

125. Song-Beverly Act and automotive CLRA cases are not simple actions. They require a specialized understanding of the full scope of consumer protection laws, which are highly nuanced. The cases also require knowledge of intricacies of automobiles and a lexicon associated with them, as well as a knowledge concerning how to investigate these matters. They also require knowledge of auto manufacturers' and dealers' protocols for repairing vehicles.

126. Generally speaking, clients of the firm are benefitted by the experience of this firm insofar as work-product from other cases can be used in this case as well. Hence, a substantial amount of time was saved by not needing to draft each document from scratch and little time was needed to "get up to speed" in this specialized area of law. In effect, Ford also benefitted when it comes to a determination of reasonable attorney's fees to be paid because there are numerous cost-saving techniques employed by the firm.

127. Ford itself made this matter more complex by maintaining it had no liability and declining to submit reasonable offers to settle the matter early in the litigation.

128. As shown by the number of cases discussed herein and the positive results achieved on behalf of each client, the hourly rate is reasonable and the number of hours expended are reasonable. The fees incurred in this litigation are the direct result of Ford's own dismissive approach to handling lemon law matters.

///

///

///

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 21st day of November 2018, at Los Angeles, California.

STEVE MIKHOV
Declarant

# EXHIBIT I

**KNIGHT LAW GROUP, LLP**
Steve Mikhov (SBN 224676)
Roger Kirnos (SBN 283173)
Amy Morse (SBN 290502)
1801 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: (310) 552-2250
Fax: (310) 552-7973

**THE ALTMAN LAW GROUP**
Bryan Altman (SBN 122976)
6300 Wilshire Blvd., Suite 980
Los Angeles, CA 90048
Telephone: (323) 653-5581
Fax: (323) 653-5542

**ROSNER, BARRY & BABBITT, LLP**
Hallen D. Rosner (SBN: 109740)
10085 Carroll Canyon Road, Suite 100
San Diego, California 92131
Telephone: (858) 348-1005
Facsimile: (858) 348-1150

Attorneys for Plaintiff,
**CHARLES MARGESON**

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

| | |
|---|---|
| **CHARLES MARGESON,**<br><br>Plaintiff,<br><br>vs.<br><br>**FORD MOTOR COMPANY, a Delaware Corporation, and DOES 1 through 10, inclusive,**<br><br>Defendants. | Case No. BC549430<br><br>Unlimited Jurisdiction<br><br>**DECLARATION OF STEVE MIKHOV ISO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES**<br><br>[Filed concurrently with Notice of Motion & Motion; Memorandum of Points and Authorities; and Declarations of B. Altman, M. Rosenstein, and H. Rosner in support thereof]<br><br>Hearing Date: January 26, 2018<br>Time: 8:35 a.m.<br>Dept.: 45<br>Hon. Mel Red Recana<br>Reservation ID: 171004256256 |

Case 2:25-cv-04526-MWC-MAR Document 41-19 Filed 09/12/25 Page 269 of 210 Page ID #:2972

**DECLARATION OF STEVE MIKHOV**

I, Steve Mikhov, declare under penalty of perjury the following

1. I am an attorney at law duly licensed to practice before the courts of the State of California. I am a partner at the law firm of Knight Law Group, LLP ("Knight Law," formerly known as O'Connor & Mikhov LLP), attorneys of record for Plaintiff Charles Margeson ("Plaintiff") in the instant action. I have personal knowledge of the following facts and if sworn as a witness, I could and would testify to them competently.

2. I make this declaration in support of Plaintiff's Motion for Attorney's Fees (the "Motion"). For the reasons set forth herein and in the Motion, Plaintiff requests a total amount of $529,885.50 in attorney's fees, inclusive of the time to draft the Motion and supporting papers, and the anticipated time for reviewing the opposition, drafting a reply and appearing at the hearing. Plaintiff further requests a reasonable "lodestar" enhancement of 1.8 in the amount of $423,908.40 for a total attorney's fee award of $953,793.90. Of these figures, my firm's efforts constitute $290,830.00 of the fees incurred, and my firm advanced all of the costs and expenses incurred in this litigation. The remainder of the fees incurred in this action are attributable to work performed by The Altman Law Group and the Law Office of Michael H. Rosenstein to prepare this case and take it to trial, and Hal Rosner of Rosner, Barry & Babbit for work performed in connection with Plaintiff's post-trial motions and oppositions. Plaintiff also previously filed a timely memorandum of costs and expenses with the Court on October 6, 2017 in the amount of $99,451.81 for reimbursement of costs and expenses incurred in the prosecution of this action pursuant to Civil Code section 1794(d). A true and correct copy of my firm's billing is attached hereto as **Exhibit A**. A true and correct copy of my office's verified memorandum of costs and expenses is attached hereto as **Exhibit B.**

3. Plaintiff purchased a new 2006 Ford F-350 truck on July 4, 2006 for a total price of $58,876.00, inclusive of fees, taxes, and financing charges. The vehicle was manufactured by Ford, which provided an express written warranty. A true and correct copy of the Retail Installment Sales Contract is attached hereto as **Exhibit C**.

4. Over the course of 73,000 miles and under six years, Plaintiff was required to bring in his defective vehicle for repairs to the engine at least ten times, plus five more times

relating to a potpourri of other issues. These presentations do not include the myriad times Plaintiff had to pull over on the road to try to fix engine problems on his own.

5. At all times, Ford had direct ongoing knowledge of the vehicle's ongoing warranty repairs, which it records in a warranty repair history database that Ford calls the AWS. The repair records indicate that each time the vehicle was presented for repair during the warranty period, the authorized Ford repair facility found a problem attributable to Ford and billed Ford for all repairs. Moreover, discovery of internal communications amongst high ranking Ford executives and engineers show that Ford was aware of the problems with the engine in Plaintiff's truck, which caused "unprecedented repair rates" and "absolutely disgraceful" warranty spending. However, Ford marketed and sold the truck as a quality vehicle free from defects. While touting the vehicle as "best-in-class," Ford simultaneously sued the engine manufacturer due to the astronomical amounts it spent on warranty repairs. Yet, Ford denied the defective condition to its own consumers when they asked for their relief. Evidence supporting these facts were discovered by Plaintiff's counsel and admitted at trial based on substantial time expended in reviewing millions of pages of documents and compelling Ford to admit the documents are genuine.

6. Frustrated with his vehicle, Plaintiff submitted a request through the BBB for arbitration of his claims against Ford. The BBB rejected Plaintiff's request for arbitration. Although it rejected the request, the BBB notified Ford of Plaintiff's claim but Ford simply ignored it.

7. The conscious ignorance exhibited by Ford is consistent with its internal policies obtained in discovery that teach customer service employees that their "primary goal is to reduce RAVs" (i.e. buybacks), and to offer a buyback only in "extreme circumstances." A true and correct copy of Ford's internal training materials for its customer call center employees is attached hereto as **Exhibit D** and **Exhibit E**.

8. Plaintiff hired the Knight Law and told the firm about the problems with his vehicle and the way he had been treated by Ford. After review of the repair history and discussions with Plaintiff, Knight Law agreed to represent him and bear the risk of litigating the case on a contingent-fee basis. The firm faced a genuine risk of not being paid for its

services for years, if at all, while advancing thousands of dollars in costs.

9. Plaintiff filed a complaint in this action on June 20, 2014, alleging causes of action for fraud and violations of the Song-Beverly Act and the Consumer Legal Remedies Act. Plaintiff filed a first amended complaint (the "FAC") on August 6, 2014 because Ford failed to make a proper correction under the CLRA entitling Plaintiff to monetary damages.

10. Following Plaintiff's agreement to an extension for Ford to respond to the FAC, Ford demurred and moved to strike Plaintiff's fraud-based causes of action on November 4, 2014. Plaintiff opposed. The motions were not heard until April 22, 2015. The Court overruled Ford's demurrer and denied its motion to strike in their entirety. Ford did not actually file an answer until January 25, 2017 prompting Plaintiff to seek an order deeming affirmative defenses waived. In its answer, Ford *denied* all liability and asserted a slew of meritless affirmative defenses.

11. Meanwhile, in August 2014, Plaintiff began investigation of the merits of his case by serving written discovery, consisting of 123 Requests for Production of Documents, 107 Requests for Admissions, 114 Special Interrogatories, and 22 Form Interrogatories. Plaintiff benefitted from Knight Law's expertise and experience in litigating against Defendant as just 4.0 hours were billed for drafting the entirety of this voluminous discovery. The firm is able to utilize existing templates that attorneys can tailor for case-specific facts to reduce billing time.

12. Ford served its own written discovery in October 2014. Plaintiff responded and produced documents. Ford was evidently satisfied since it did not need to meet and confer.

13. However, Ford's responses to Plaintiff's August 2014 discovery were clearly inadequate. Plaintiff met and conferred extensively with Ford but was forced to file a motion to compel further responses to requests for production of documents on December 11, 2014. After several continuances, Plaintiff's motion to compel was heard on August 31, 2015. The Court granted Plaintiff's motion in its entirety and also granted sanctions against Ford.

14. On March 2, 2015, Ford filed a 406-page Petition for Coordination seeking to coordinate all cases in California involving Ford trucks equipped with the 6.0L diesel engine. A true and correct copy of Ford's Petition for Coordination is attached hereto as **Exhibit F.** As

a result, all cases, including this matter, were completely stayed and all trial dates were vacated, causing significant delay and prejudice to those consumers who had been waiting years for their day in court. Although Plaintiff's counsel incurred substantial time to oppose the petition and numerous related interim disputes and ensuing hearings, only a fraction of the total time was billed to this case. Time entries from March 2015 to July 2015 indicate *de minimus* time allocated amongst multiple cases, showing billing efficiencies. The presiding court ultimately denied the petition on July 14, 2015 but it took months to get cases like this one reset for trial.

15. During the stay of all 6.0L engine cases, Plaintiff's counsel was afforded time to then focus on review of the oft-mentioned 12,000,000 page document dump, which comprise the damaging internal documents. The documents were relevant to the defective condition of Plaintiff's truck under the Song-Beverly Act and to the fraud and CLRA claims.

16. On October 14, 2015, Plaintiff served a set of 152 requests for genuineness on Ford relating to Ford's internal documents, which was critical in confirming the authenticity and foundational aspects of that evidence. Ford had to admit the genuineness of this material evidence. Plaintiff incurred just 1.5 hours to draft these myriad requests.

17. On or about December 9, 2015, Ford finally bothered to inspect Plaintiff's vehicle; something that typically occurs in the very early stages of such cases, but not here.

18. On May 9, 2016, Plaintiff's counsel agreed to travel to Ford's headquarters in Dearborn, Michigan in the hopes of settling the remaining 98 cases that involved litigation about the defective 6.0L diesel engine. Ford chose the mediator, who was local in Dearborn. The mediation was three days long. Only a dozen of the cases settled; this case was not one of them. Though the mediation was attended by five attorneys from Plaintiff's firm and associated trial attorneys, only *two* attorneys billed their time and the amount billed to this case was just 0.6 hours for each attorney to prepare for, travel and attend the critical mediation.

19. Given Ford's staunch defense of the case and failure to make any acceptable offers, the case appeared likely to go to trial. In August 2016, the Law Offices of Michael H. Rosenstein formally associated into the case to serve as trial counsel.

20. On December 1, 2016, Plaintiff deposed Ford's designated Person Most

Knowledgeable. On December 6 and 7, 2016, Plaintiff deposed technicians and service advisors at one of the dealerships that performed repairs to the subject vehicle, which were needed to obtain information regarding repairs to the vehicle, authenticate the repair orders, and rebut Ford's anticipated argument that the problems with Plaintiff's vehicle were somehow caused by Plaintiff's neglect or abuse or installation of after-market parts.

21. With trial imminent, Ford moved *ex parte* to continue trial because it had not completed discovery but claiming unavailability of trial counsel due to another trial. The Court denied the requested relief as premature since counsel was not actually engaged. Plaintiff began in earnest preparing for trial by filing motions *in limine* and all trial documents such as a trial brief, jury instructions, verdict forms, and exhibit and witness lists. Plaintiff prepared and filed a lengthy bench brief regarding admissibility of evidence related to Ford's fraudulent conduct. Ford also filed twenty motions in limine, which Plaintiff opposed.

22. Unfortunately, Mr. Rosenstein's trial calendar made him unavailable so The Altman Law Group ("TALG") associated into the case and ramped up quickly to avoid continuance and further delay. The billing of the two offices was audited to ensure no duplicative charges.

23. On February 3, 2017, Ford made a second 998 Offer for $200,000.00. Given the evidence of Ford's fraudulent conduct that Plaintiff had uncovered, Plaintiff did not accept this offer. The parties attended settlement conferences on February 7 and 8, 2017.

24. Despite the Court's denial of Ford's trial continuance request, Ford managed to get the trial date continued in a manner that is still unclear to Plaintiff. Plaintiff applied *ex parte* to reinstate the trial date but that request could not be accommodated because the Court could not get a time qualified jury in time. Ford then substituted in new counsel in March 2017 but the new law firm, Gordon & Rees, also claimed it was unavailable and unprepared for the trial date, which led to further delay and continuance. In sum, Ford's conduct led to repeated continuances and multiple unnecessary court appearances, causing an increase in fees.

25. After trial was continued several times at Ford's request, the parties attended another settlement conference on May 9, 2017 with the Court wherein His Honor made a mediator's proposal, which Plaintiff was willing to accept but Ford was not.

26. After the jury verdict, Plaintiff submitted a proposed judgment but Ford objected, which prompted the Court to set a briefing schedule to address Ford's objections. However, Ford did not file any briefing at all so Plaintiff appeared *ex parte* seeking to enter judgment. The Court granted the application and entered judgment on September 21, 2017.

27. October 6, 2017, Plaintiff filed his Memorandum of Costs and Motion for Prejudgment Interest. Plaintiff's motion for prejudgment interest was conditionally granted on October 27, 2017 and the Court awarded $107,830.16 in prejudgment interest.

28. Ford then filed a Motion for New Trial and Judgment Not Withstanding the Verdict (the "JNOV") on October 12, 2017. Ford filed a Motion to Tax Costs on October 17, 2017. The Motion to Tax is set to be heard on January 5, 2018; the opposition will be filed next week.

29. On or about October 23, 2017, veteran consumer attorney, Hal Rosner, associated into this case to address the new trial motion and JNOV because it is anticipated that Ford will appeal this matter and Mr. Rosner will be the appellate attorney.

30. The Court denied Ford's JNOV but granted the Motion for New Trial and ordered a reduction of Plaintiff's damages.

**The Firm's Fees Incurred in Litigating This Matter Are Reasonable Pursuant to the Lodestar Method**

31. I attended law school at Pepperdine University and I was a judicial extern for Judge Gregory W. Alarcon of the Los Angeles County Superior Court in 2002.

32. I have been admitted to the State Bar of California since April 29, 2003.

33. Since my admission to the State Bar of California, I have specialized in consumer law. I originally worked for one of the largest consumer warranty law firms in the country, Consumer Legal Services.

34. I have extensive experience prosecuting and resolving consumer protection matters involving motor vehicle claims. For the past 13 years, I have specialized in breach of warranty and fraud cases against automobile manufacturers and dealers. I was among the attorneys who represented the plaintiff in *Joyce v. Ford Motor Co.* (2011) 198 Cal.App.4th 1478, a leading case which extended the protections of the Lemon Law to trucks based on

actual weight, not maximum capacity.

35. From April 2007 until April 2012, I was a founding partner in Romano, Stancroff & Mikhov PC. I was the Managing Partner of the firm until it was dissolved.

36. In April 2012, I founded O'Connor & Mikhov, LLP. I am the Managing Partner of the firm. My rate in for this case was $500/hour. My billing entries are indicated by the initials "SBM" in the billing statement exhibited to this declaration.

37. Lauren Ungs has been employed by the firm since July 12, 2012. Ms. Ungs has been a member of the California bar and actively practicing law for five years. She graduated magna cum laude from Southwestern Law School in 2010. She currently specializes in consumer law, lemon law, and contract law. Prior to joining my firm, she worked for one year of practicing in the area of environmental law defense, in which her hourly rate at that time was $275/ hour. Ms. Ungs current hourly rate, now five years later, is $350/hour. Ms. Ungs' entries are indicated by the initials "LAU" in the billing statement exhibited to this declaration.

38. Amy Morse has been an Associate at my firm since her admission to the bar in 2013. Prior to her admission, she was a law clerk with my office since 2012. Ms. Morse graduated from Loyola Law School. Ms. Morse's hourly rate is $250/hour. Ms. Morse's billing entries are indicated by the initials "ALM" in the billing statement exhibited to this declaration.

39. Russel Higgins is an Associate with the firm and was admitted to practice in 2003. Mr. Higgins graduated from Pepperdine Unversity School of Law and his hourly rate in this matter is $400/hour. Mr. Higgin's billing entries are indicated by the initials "RH" in the billing statement attached to this declaration.

40. Michael Ouziel was an Associate at my firm. Mr. Ouziel graduated from Washington and Lee University School of Law and was admitted to practice in 2013. Mr. Ouziel spent approximately his first two years of practice at a Los Angeles based boutique litigation firm and subsequently joined O'Connor & Mikhov, LLP in 2015, where his practice focuses largely on claims involving violations of the Song-Beverly Act. Mr. Ouziel's hourly billing rate was $250/hour. His billing entries are indicated by the initials "MO" in the billing statement exhibited to this declaration.

Case 2:25-cv-07520-MEMF-MAR Document 31-7 Filed 01/08/26 Page 604 of 1097 Page ID #:2400

41. Stephanie Marshall was an associate at my firm during the time she performed work on this matter. Ms. Marhsall graduated from Indiana University – Purdue University Indianapolis, Robert H. McKinney School of Law and was admitted to practice in 2013. Ms. Marhsall's hourly rate in this matter is $200/hour. Ms. Marshall's billing entries are indicated by the initials "STM" in the billing statement exhibited to this declaration.

42. Kevin Van Hout was an associate at my firm during the time he performed work on this matter. Prior to his employment with O'Connor & Mikhov LLP, Mr. Van Hout appeared in federal and state court, handling all matters in small business and consumer bankruptcy cases for a national firm. Mr. Van Hout was first admitted to practice law in the state of Illinois in 2003, was admitted in the state of Indiana in 2005, and was admitted in California in 2010. Mr. Van Hout graduated from University of Illinois College of Law after finishing Northwestern University as an undergraduate. Mr. Van Hout's rate while working at my firm was $300/hour. Mr. Van Hout's billing entries are indicated by the initials "KVH" in the billing statement exhibited to this declaration.

43. Daisy Ortiz was an Associate of the law firm for three years from 2012 until August of 2015. Ms. Ortiz graduated from University of California, Davis School of Law and admitted to practice in California in 2012. Ms. Ortiz's hourly rate is $225/hour. Ms. Ortiz primarily undertook the written discovery and meeting and conferring regarding discovery. Ms. Ortiz's billing entries are indicated by the initials "DO" in the billing statement exhibited to this declaration.

44. Constance Morrison is a contract attorney that is very often used by my firm to attend vehicle inspections, defend depositions or attend hearings. Ms. Morrison has 20 years of litigation experience. She graduated from Empire College School of Law and was admitted to practice in 1996. Ms. Morrison's hourly billing rate in this case was $350/hour, and her billing entries are signified by the initials "CM" in the billing statement exhibited to this declaration.

45. Kirk Donnelly is a contract attorney with my firm with 20 years of litigation experience representing individual and corporate clients in hundreds of matters in state and federal court, including some 40 class actions. He graduated cum laude from the University of San Diego, School of Law where he was selected to the Order of the Coif and the Order of

Barristers. He was admitted to practice law in the State of California in 1995. Mr. Donnelly's hourly rate is $375/hour. Mr. Donnelly's billing entries are indicated by the initials "JKD" in the billing statement exhibited to this declaration.

46. Roger Kirnos is an Associate in my office. Mr. Kirnos graduated from Southwestern Law School in 2009 in the top 10% of his class with cum laude honors. Mr. Kirnos previously was an extern for Chief Judge Kozinksi of the Ninth Circuit Court of Appeals and an extern for Judge Klausner of the United States District Court, Central District. Mr. Kirnos has been trial counsel in fifteen lemon law cases that went to jury verdict in the last three years, and about a dozen more that settled once trial began. The hourly rate for Mr. Kirnos is $375 per hour, and his billing is indicated by the initials "RK" in the attached invoice.

47. As always, the firm attempts to keep attorney fees and costs down while providing vigorous and effective representation. This is because the firm runs the risk that it may never be paid back if the client does not prevail. Therefore, it makes sense that the firm would not engage in running up fees unnecessarily.

48. I am aware of the hourly rates of other attorneys in the California who work in the area of lemon law and consumer law. I bill my time at an hourly rate of $500 per hour. An hourly rate of $500 per hour is reasonable, and consistent with other attorneys who litigate consumer matters and who have a comparable level of experience. A canvas of the community of attorneys who specialize in this area from 2010 reveals the following hourly rates:

a. Robert Brennan of Brennan, Weiner and Associates in La Crescenta, California charges $450 per hour. He has been in practice since 1987. The hourly rates for his associates is $375 per hour. Survey as of 2010.

b. Hallen Rosner of Rosner & Mansfield, San Diego, CA. has been practicing law since 1983 and specializes in consumer litigation with particular attention to auto financing issues. He charges $620 per hour. Survey as of 2016.

c. Martin Anderson of The Anderson Law Firm in Santa Ana, California has practiced law since 1995 and charges $395 per hour. Mr. Anderson specializes in Lemon Law matters. Survey as of 2007

d. Michael Lindsey has been handling consumer law cases for nearly 10 years in San Diego, California. Mr. Lindsey's hourly rate is $575. Survey as of 2010.

e. Nancy Barros of Kemnitzer, Anderson, Barron, Ogilvie & Brewer LLP in San Francisco, California has been handling consumer cases since 1983. Ms. Barros charges $625 per hour. Survey as of 2010.

f. Brian Kemnitzer of Kemnitzer, Anderson, Barron, Ogilvie & Brewer LLP in San Francisco has been handling consumer cases since 1983. Mr. Kemintzer charges $625 per hour. Survey as of 2010.

g. Mark Romano of Romano, Stancroff in Los Angeles, California has been practicing for 23 years, primarily in consumer litigation. His hourly rate is $400 per hour. Survey as of 2010.

49. All time billing entries were completed contemporaneously with each dated entry, and accurately set forth the actual time expended for the matters indicated. I have personally reviewed the billing entries to ensure that they accurately reflect the time expended. I have removed or reduced any time I felt was excessive, duplicative, or otherwise not justified. My firm **does not bill clients** for support staff time, including secretarial or paralegal time.

50. On November 21, 2017, Judge David R. Lampe presiding in Kern County over the trial in the matter of *West v. Hyundai Motor America* (Kern County Superior Court, Case No. BCV-16-100792) awarded 100% of the fees requested based on the same rates requested here, except that he also confirmed the rate of $650/hour for trial attorney Bryan Altman, for a total fee and cost award of $185.580.58. (**Exhibit G**.)

51. On September 8, 2017, Judge Eddie C. Sturgeon awarded $226,845.00 in attorney's fees and $46,021.71 in costs and expenses after trial in the matter of *Aspinall vs. Kia Motors America* (San Diego Superior Court, Case No. 37-2015-00002577-CU-BC-CTL). The Court found the hourly rates of Plaintiff's attorneys reasonable. The attorney fee award

represents 80% of the lodestar fees requested by motion in the matter. (**Exhibit H**.)

52. On September 15, 2017, Judge Kevin A. Enright awarded $199,248.08 in attorney's fees after trial in the matter of *Harris vs. Hyundai Motor America* (San Diego Superior Court, Case No. 37-2015-00019958-CU-BC-CTL). The Court found the hourly rates of Plaintiff's attorneys reasonable. The attorney fee award represents 85% of the lodestar fees requested by motion in the matter. (**Exhibit I**.)

53. On September 20, 2017, Judge Gail G. Feuer awarded $227,228.00 in attorney's fees and $31,712.55 in costs and expenses after trial in the matter of *Longin vs. Ford Motor Company* (Los Angeles Superior Court, Case No. BC564186). The Court found the hourly rates of Plaintiff's attorneys reasonable. The attorney fee award represents 98% of the lodestar fees requested by motion in the matter. (**Exhibit J**.)

54. On August 9, 2017, Judge Sandra K. Bean awarded $94,112.50 in attorney's fees in the matter of *Bravo v. FCA US LLC* (Alameda Superior Court, Case No. RG15757477). The Court affirmed the hourly rates of Knight Law Group's attorneys, including a top hourly rate of trial counsel in the amount of $650.00. In total, the fee award represented 100% of the lodestar fees requested. The final order has yet to be signed but this is an accurate representation of the court's award. (**Exhibit K**.)

55. On August 9, 2017, Judge Craig L. Griffin awarded $59,515.00 in attorney's fees in the matter of *Murillo v. FCA US LLC* (Orange County Superior Court, Case No. 30-2015-00771206-CU-BC-CJC). The Court affirmed the hourly rates of Knight Law Group's attorneys, finding them reasonable. In total, the fee award represented 97% of the lodestar fees requested, with the only reduction being time that we withdrew on our own. The final order has yet to be signed but this is an accurate representation of the court's award. (**Exhibit L**.)

56. On June 19, 2017, Judge Raphael awarded $116,872.50 in attorney's fees after trial in the matter of *Bellamy v. Mercedes Benz USA LLC* (Los Angeles Superior Court, Case No. BC597233). The Court affirmed the hourly rates of Knight Law Group's attorneys. In total, the fee award represented 84% of the lodestar fees requested. (**Exhibit M**.)

57. On May 26, 2017, my firm sought $97,221.25 in fees and $4,282.35 in costs and expenses in the matter of *Pumphrey v. Ford Motor Company* (Riverside Superior Court,

Case No RIC1400402). The Court ordered the parties to meet and confer and, based on our willingness to agree to a nominal reduction, the Judge Trask issued an order for a fee and cost award for $92,000.00. (**Exhibit N**.)

58. On May 24, 2017, Judge Halm awarded $168,000.00 in attorney's fees and $27,257.19 in costs and expenses in a jury trial that resulted in a maximum civil penalty award for our client in the matter of *Gomez v. Kia Motors America, Inc.* (Los Angeles County Superior Court, Case No. BC 574493). The attorney fee award represents 81% of the lodestar fees requested by motion in the matter. (**Exhibit O**.)

59. On May 9, 2017, Judge Chapin in Kern County awarded a total of $296,055.00 in attorney's fees plus $25,651.18 in costs and expenses based on a jury verdict for maximum civil penalties in the matter of *Cofield v. Kia Motors America, Inc.* (Kern County Superior Court, Case No. S-1500-CV-283504. In so doing, Judge Chapin specifically ruled that the requested hourly rates were reasonable, including a rate of $650.00 per hour for attorney Bryan Altman with approximately 30 years of experience. (**Exhibit P**.)

60. On March 24, 2017, my firm was awarded a total of $64,138.00 in fees, costs, and expenses, inclusive of a 1.5 lodestar multiplier, in the matter of *Herrera v. Chrysler* (Monterey County Superior Court, Case No. M126216). Judge Thomas W. Wills reduced the two attorneys' rates that were at $500 per hour down to $450 per hour and ruled that all other rates were reasonable. Judge Wills found that the work performed and the time incurred for that work was reasonable and did not make any reductions. (**Exhibit Q**.)

61. On March 15, 2017, Judge Susan Bryant-Deason awarded $113,398.46 in fees, costs and expenses in the matter of *Andrino v. Kia* (Los Angeles County Superior Court, Case No. BC596210), which settled on the first day of trial. The court's award represents approximately 10% reduction of the fees requested by motion. (**Exhibit R**.)

62. On March 17, 2017, in the matter of *Page v. Kia Motors America, Inc.* (San Diego Superior Court, Case No. 37-2014-00023991-CU-BC-CTL), Judge Sturgeon granted an award of attorney's fees, costs and expenses in the amount of $271,077.16 in a case in which our clients prevailed at trial. Judge Sturgeon ruled that the hourly rates were reasonable, including trial counsel's, Bryan Altman, rate of $650/hour. In so doing, the court took a 15%

reduction on the overall attorney's fees amount but expressly considered and granted the same rates requested herein, as the court determined the hourly rates reasonable. (**Exhibit S**.)

63. On February 28, 2017, Judge Hiroshige in Los Angeles County Superior Court awarded 100% of the requested fees in the matter of *Dorfman v. BMW of North America, LLC* (Los Angeles Superior Court, Case No. BC538183) for a total fee award of $47,732.50, with costs and expenses still to be decided at subsequent hearing. (**Exhibit T**.)

64. On December 5, 2016, Judge Sterne in Santa Barbara ruled that the hourly rates and the amount of the work performed were both reasonable, and granted the firm's lodestar fee request in full in the matter of *Holzer v Ford Motor Company* (Santa Barbara County Superior Court, Case No. 15CV02771). The court also granted a multiplier of 1.5, for a total award of fees, costs and expenses in the amount of $143,301.69. (**Exhibit U**.)

65. On November 2, 2016, Judge Meiers in Los Angeles County Superior Court awarded 100% of the requested fees and costs in the matter of *Carter v. Chrysler Group LLC* (Los Angeles Superior Court, Case No. BC495228) resulting a total award of fees, costs and expenses in the amount of $41,466.22. (**Exhibit V**.)

66. On August 25, 2016, Judge White of the Los Angeles County Superior Court expressly approved the hourly rates sought here, including partner Mark O'Connor's hourly rate of $600 per hour and my rate of $500 per hour in the matter of *Mansur v. Chrysler Group, LLC* (Los Angeles County Superior Court, Case No. BC539866). The court awarded a total of $84,210.90 in fees, costs and expenses. (**Exhibit W**.)

67. On August 22, 2016, in the matter of *Kebodeaoux v. Mercedes-Benz* (Los Angeles Superior Court, Case No. BC552037), Judge Marmaro granted an award of attorney's fees, costs and expenses in the amount of $203,247.39 in a case in which our clients prevailed at trial. In so doing, the court took a 15% reduction on the overall amount but expressly considered and granted the same rates requested herein, except that Mark O'Connor's $600 per hour rate was granted there. (**Exhibit X**.)

68. Also on August 22, 2016, Judge Doyle ruled that the hourly rates were reasonable and likewise ruled the work performed in that case was also reasonable. He also awarded 100% of the requested lodestar fees and costs in the case entitled *Baca v. Chrysler*

*Group, LLC* (Los Angeles Superior Court, Case No. BC566511). (**Exhibit Y**.)

69. On August 2, 2016, Judge Beaudette awarded 100% of the requested fees and costs in the matter of *Lepe v. Chrysler Group, LLC* (Los Angeles Superior Court, Case No. BC556273). Judge Beaudette determined the hourly rates were to be reasonable and found that the work performed in the matter was reasonable. (**Exhibit Z**.)

70. On June 6, 2016, Judge Johnson expressly confirmed the reasonableness of each of the hourly rate and awarded 90% of the attorneys' lodestar fees in the amount of $50,541.00, in addition to $2,634.80 in costs in the case of *Perez v. Chrysler Group LLC* (Los Angeles Superior Court, Case No. BC528217.) (**Exhibit AA**.)

71. On December 21, 2015, Judge Reed issued a ruling directing the parties to meet and confer to come to an agreement in the case of *Wing v. Ford Motor Company* (Tulare County Superior Court, Case No. VCU253635). The parties came to an agreement whereby the award of attorney's fees and costs and expenses came to $115,405.60, which represented 90% of the lodestar fees requested at the hourly rates requested herein. (**Exhibit BB**.)

72. On December 1, 2015, Judge Goldsmith awarded 100% of the attorneys' lodestar fees and costs requested in the matter of *Yerbic v. Ford Motor Company* (San Francisco County Superior Court, Case No. CGC-13-533092) in the amount of $73,995.00, thereby confirming the reasonableness of the hourly rates requested and the reasonableness of the time incurred. (**Exhibit CC**.)

73. On November 4, 2015, Judge Howard again granted a motion in the case of *Kran v. Ford Motor Company* (Marin County Superior Court, Case No. CIV1302144) awarding $73,918.63 in lodestar fees, after an hourly rate reduction of 15%, and a 1.5 multiplier in the amount of $36,959.31, for a total award including costs of $122.947.34. (**Exhibit DD**.)

74. On October 27, 2015, Judge Howard awarded attorney's fees and costs in the matter of *Wiessler v. Ford Motor Company* (Marin County Superior Court, Case No. CIV1303232) in the amount of $144,137.77. The court determined that counsel's fees were higher than rates charged by attorneys in the particular community of Marin County and reduced the rates by 15%, but granted a lodestar multiplier of 1.5. (**Exhibit EE**.)

75. On September 9, 2015, Judge Alarcon awarded 100% of the attorney's fees and costs and expenses actually incurred in the case of *Helm v. Chrysler* (Los Angeles County Superior Court, Case No. BC519503) in the amount of $66,172.80, thereby confirming the reasonableness of the hourly rates requested and the reasonableness of the time incurred. (**Exhibit FF**.)

76. On April 20, 2015, Judge Michael Linfield awarded $79,081.14 in fees and costs and expenses in the matter of *Shychko v. Mercedes-Benz USA* in Los Angeles Superior Court, Case No. BC533642. Judge Linfield reduced the fee amount by 21% but granted a lodestar multiplier of 1.5. (**Exhibit GG**.)

77. On January 12, 2015, Judge Thompson awarded of $126,129.08 in fees and costs and expenses in the matter of *Thiessen v. Ford Motor Company* in Colusa County Superior Court, Case No. CV23968. Judge Thompson reduced the hourly rates in light of the rural venue (there is one courtroom for the entire county) but added a multiplier of 1.25 that resulted in an award comprising almost every dollar of the $129,765.90 in fees and costs actually incurred in the case. (**Exhibit HH**.)

78. On January 5, 2015, Judge Reed in Tulare County confirmed the reasonableness of each our attorneys' 2014 hourly rates, including my $400 rate and co-counsel Michael Rosenstein's $450 rate. The Court awarded 90.4% of the fees requested in the matter of *Valencia v. Ford Motor Company*, Tulare County, Case No. 252468. Attached is the court's order by which Judge Reed confirmed the hourly rates. (**Exhibit II**.)

79. On October 8, 2014, Judge Green in Los Angeles County Superior Court, Case No. BC48466, confirmed each one of the hourly rates for each of the attorneys in the case of *Sanders v. Ford Motor Company*. The hourly rates ranged from $175 per hour for Ms. Ortiz to $450 per hour for co-counsel Michael Rosenstein. (**Exhibit JJ**.)

80. On October 31, 2013, Mr. O'Connor obtained an order from Judge Abraham Khan in the amount of $136,701.17 in the matter of *Chiavassa v Ford Motor Company*, Los Angeles Superior Court, awarding him his hourly rate of $500 per hour. (**Exhibit KK**.)

81. On September 17, 2013, Judge Hiroshige awarded me fees that I requested at the rate of $350 per hour in *Snell v. Ford Motor Company*, Los Angeles Superior Court, Case

No. BC 471985. Judge Hiroshige also granted a lodestar multiplier of 1.5. (**Exhibit LL**.)

82. On July 24, 2013, Judge Stern awarded fees at my rate of $350 per hour in *Meuchel v. Ford Motor Company*, Los Angeles Superior Court, Case No. BC 481727. (**Exhibit MM**.)

83. On January 6, 2011, Judge Chapin awarded me all the fees I requested at $300 per hour in *Watson v. Mercedes-Benz USA, LLC*, Kern County Superior Court Case No. S-1500-CV-268423. (**Exhibit NN**.)

84. On May 4, 2010, our firm obtained an order from Judge Gail Brewster Bereola, in the matter of *Walker v Mercedes Benz USA*, Alameda Superior Court, Case No. RG08402907. Judge Brewster found that an hourly rate of $400 for Mr. O'Connor was reasonable and appropriate. (**Exhibit OO**.)

85. On April 23, 2010, the Judge Mandabach presiding over the matter of *Gonzalez v. Chrysler*, San Bernardino Superior Court Case No. CIVSS803240 granted Mark O'Connor, the firm's former partner, a lodestar rate of $400 per hour as reasonable and appropriate. (**Exhibit PP**.)

86. On February 19, 2010, Judge Fell awarded me all the fees I requested at $300 per hour in *Micu v. Chrysler Motor Co.*, Orange County Superior Court Case No. 30-2008-00114410. (**Exhibit QQ**.)

87. On March 5, 2009, Judge Treu awarded me all the fees I requested at $300 per hour, plus a 1.33 multiplier in *Jeske v. Chrysler Motor Co*., Los Angeles Superior Court Case No. BC394377. (**Exhibit RR**.)

88. On August 20, 2008, I was awarded attorney fees based on an hourly rate of $300 per hour after a 1.5 multiplier in *Kang v. American Honda Motor Co.*, Los Angeles County Superior Court Case No. BC379949. (**Exhibit SS**.) Although the court in Kang reduced the requested hourly rate, it did award a 1.5 multiplier because Kang, like this case, was taken on a contingent-fee basis.

89. In *Root v. Mercedes-Benz USA, LLC*, Orange County Superior Court, Case No. 06CC07044, Ret. Judge Schneider awarded an hourly rate of $295 per hour including a multiplier of 1.075 on January 14, 2008. (**Exhibit TT**.)

90. I request a multiplier of 1.8 based on my contingent fee, the risk and delay in payment associated with a contingent fee scenario, and the result achieved. Such a multiplier is reasonable, and towards the low end, under the established law. (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 255.) We are paid in these cases only if the client prevails, unlike Defendant's attorneys who get paid regardless of the outcome. Moreover, Defendant's attorneys typically have a continuing and ongoing relationship, whereas this firm will most likely not have the opportunity to represent Plaintiffs again. In addition, the firm has not received a dollar of compensation since the case was filed in 2014.

91. It is not uncommon for attorney fees and costs to exceed the client's damages. The Legislature acknowledged such a circumstance, which is the reason behind the fee shifting provision of the Song-Beverly Act. Otherwise, consumers would be left without opportunity for redress when their damages were not enough for an attorney to take the case on a contingent fee or hourly rate basis. Such a result occurs in large part because of dealership's or vehicle manufacturer's refusal to adhere to statutory laws protecting consumers, resistance to honoring consumers' complaints, and generally playing games or simply abusing discovery procedures. For example, Ford could have avoided paying any attorney fees whatsoever had it admitted to its wrongdoing early on. Instead, Ford engaged in expensive litigation. Ford drove up fees and costs by, among other things, impeding the firm's discovery efforts, forcing a successful motion to compel. Ford also failed to make any reasonable settlement offers, including at several mediation attempts.

92. Generally speaking, clients of the firm are benefitted by the experience of this firm insofar as work product from other cases can be used in this case as well. Hence, a substantial amount of time was saved by not needing to draft each document from scratch and little time was needed to "get up to speed" in this specialized area of law. In effect, Ford is also benefitted by these facts when it comes to a determination of reasonable attorney's fees to be paid because there are numerous cost saving techniques employed by the firm.

93. As shown by the number of cases discussed herein and the positive results achieved on behalf of each client, the hourly rate is reasonable and the number of hours expended is reasonable. The fees incurred in this litigation are the direct result of Ford's own

dismissive approach to handling lemon law matters.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 15th day of December 2017, at Los Angeles, California.

STEVE MIKHOV
Declarant

# EXHIBIT J

**ORIGINAL**

FILED
2019 MAY 28 PM 3:25
ROSA JUNQUEIRO, CLERK
BY [signature] DEPUTY

**KNIGHT LAW GROUP, LLP**
Steve Mikhov (SBN 224676)
10250 Constellation Blvd., Suite 2500
Los Angeles, CA 90067
Telephone: (310) 552-2250
Fax: (310) 552-7973
Email: stevem@knightlaw.com

**THE ALTMAN LAW GROUP**
Bryan C. Altman (SBN 122976)
10250 Constellation Blvd., Suite 2500
Los Angeles, CA 90067
Telephone: (310) 277-8481
Fax: (310) 277-8483
Email: bryan@altmanlawgroup.com

Attorneys for Plaintiffs,
**SHELBY ANDERSON and TAMMY ANDERSON**

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF SAN JOAQUIN**

**BY FAX**

**SHELBY ANDERSON and TAMMY ANDERSON,**

Plaintiffs,

vs.

**FORD MOTOR COMPANY, a Delaware Corporation; and DOES 1 through 10, inclusive,**

Defendants.

Case No: 39-2013-00299512-CU-BC-STK

**DECLARATION OF STEVE MIKHOV IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**

[Filed concurrently with Plaintiffs' Notice of Motion and Motion for Attorneys' Fees; Memorandum in Support Thereof; Declarations of Bryan C. Altman, Richard Wirtz, and Cynthia E. Tobisman]

*Assigned for All Purposes to the Honorable W. Stephen Scott*

Date: JUL 03 2019
Time: 9:00 a.m.
Dept: 10A

# DECLARATION OF STEVE MIKHOV

I, Steve Mikhov, declare as follows:

1. I am an attorney at law duly licensed to practice before the courts of the State of California and attorney of record for Plaintiffs Shelby Anderson and Tammy Anderson ("Plaintiffs") in the instant action. I have personal knowledge of the following facts and, if sworn as a witness, I could and would testify to them competently.

2. I make this declaration in support of Plaintiffs' Motion for Attorneys' Fees ("Motion"). For the reasons set forth herein and, in the Motion, Plaintiff requests $939,438.75 in attorneys' fees. This amount is comprised of the legal services provided by Knight Law Group, LLP ("Knight Law") in the amount of $493,412.50, legal services provided by The Altman Law Group ("TALG") in the amount of $321,968.75, legal services provided by Wirtz Law APC ("WL") in the amount of $36,232.50, and legal services provided by Greines, Martin, Stein & Richland LLP ("GMSR") in the amount of $87,825.00. Plaintiffs' attorneys request a reasonable "lodestar" enhancement of 1.5 in the amount of $469,719.38, for a total attorneys' fee award of $1,409,158.13. A true and correct copy of my firm's billing is attached hereto as **Exhibit A.** Plaintiffs previously requested reimbursement of costs and expenses, which is subject to a motion to tax costs by Ford.

3. Plaintiffs purchased a new 2005 Ford F-250 on October 21, 2004 for a total purchase price of $47,715.60. The vehicle was distributed by Ford Motor Company ("Defendant" or "Ford"), which provided an express written warranty. A true and correct copy of the Retail Installment Sales Contract is attached hereto as **Exhibit B**.

4. During and after the warranty period, Plaintiffs brought their truck in repeatedly for severe engine problems. Despite the ongoing repairs and continued manifestation of problems, Ford refused to acknowledge the defective nature of Plaintiffs' vehicle. At all times, however, Ford had direct, contemporaneous knowledge of the vehicle's serious defects, which it records in a database called "OASIS" and a warranty repair history database called "AWS." These repair records indicate each time the vehicle was presented for repair during the warranty period, as well

as every time the Ford repair facility found a problem/defect attributable to Ford and billed Ford for the work.

5. Frustrated, concerned for their safety and having lost confidence in Ford's ability to repair the vehicle, Plaintiffs submitted a request for arbitration to the Better Business Bureau on or about January 23, 2013. Plaintiffs' request for arbitration was denied. Although it rejected the request, the BBB notified Ford of Plaintiffs' claim but Ford simply ignored it.

6. With no other available avenue for relief, Plaintiffs contacted Knight Law and told the firm about the problems with their truck and the way Ford had treated them. After reviewing the repair history and discussions with Plaintiffs, Knight Law agreed to represent them and bear the risk of litigating the case on a fully contingent basis. Because Knight Law's compensation was purely contingent, the firm faced a genuine risk of not being paid for its services for years, if at all, while advancing thousands of dollars in costs and expenses on Plaintiffs' behalf. In taking on this duty, the firm was facing a litigation behemoth—Ford is a multi-billion-dollar company, with a virtually infinite litigation war-chest, that wages a battle of attrition that most firms cannot withstand.

7. Prior to filing the lawsuit, Plaintiffs served Ford with a demand under the Consumer Legal Remedies Act. Ford denied Plaintiffs' request for relief.

8. Plaintiffs filed a Complaint in this action on July 19, 2013, followed by a First Amended Complaint on September 10, 2013 alleging punitive damages on account of Ford's rejection of Plaintiffs' CLRA demand. Plaintiffs alleged causes of action for Fraud for concealing a known engine defect, and violations of the Consumer Legal Remedies Act ("CLRA") and the Song-Beverly Act, and sought, among other things, civil penalties and punitive damages.

9. On August 26, 2013 Ford began its vigorous defense in this case, propounding requests for production of documents, requests for admissions, special interrogatories, and form interrogatories on Plaintiffs. In total, there were 165 initial requests. Ford also noticed the depositions of Plaintiffs and made a demand for inspection of Plaintiffs' defective vehicle.

///

10. On October 15, 2013, Ford filed both a demurrer and a motion to strike Plaintiffs' First Amended Complaint; they were denied. Ford then filed its Answer to Plaintiffs' First Amended Complaint, denying all liability and asserting nineteen affirmative defenses.

11. Defendant's position in the litigation required extensive efforts on the part of Plaintiffs' counsel, and they promptly began working up their case on behalf of Plaintiffs. Written discovery was drafted and served on Defendant on October 22, 2013, consisting of 107 requests for admissions, 22 requests for genuineness, 123 requests for production of documents, 113 special interrogatories, and form interrogatories. Plaintiffs again benefitted from Knight Law's expertise and experience in litigating against Ford as just 4.5 hours were billed for drafting the entirety of this discovery. Plaintiffs' counsel are able to use existing files as templates to conserve time and litigate efficiently. Written discovery of this magnitude, drafted from scratch and without the benefit of Plaintiffs' attorneys' vast knowledge, experience and specialized expertise, would have taken multitudes of the time expediently managed here.

12. Ford took the depositions of Plaintiffs Shelby Anderson and Tammy Anderson on January 23, 2014, and the subject vehicle was inspected on October 18, 2014. Meanwhile, Plaintiffs' counsel reviewed, analyzed and annotated Ford's responses to Plaintiffs' discovery. Notably, the hundreds of hours that it took to review these documents are *not included in Plaintiffs' billing.* Similarly, many of the depositions utilized in this case were also not included in Plaintiffs' billing, including the depositions of Eric Kalis, Scott Clark, and Eric Gillanders.

13. On November 3, 2014, the court set trial for October 19, 2015.

14. On March 2, 2015, Ford filed a 406-page Petition for Coordination seeking to coordinate all cases in California involving Ford trucks equipped with the 6.0L diesel engine. As a result, all cases, including this matter, were completely stayed and all trial dates were vacated, causing significant delay. Although Plaintiffs' counsel incurred substantial time to oppose the petition and for the numerous related interim disputes and ensuing hearings, only a tiny fraction of the total time was billed to this case. The presiding court ultimately denied the petition on July 14, 2015 but it took months to get cases like this one back on calendar. A true and correct copy of

Ford's Petition is attached hereto as **Exhibit C**. Notably, Ford's Petition included a list of all 6.0 cases in California (all of which Ford was seeking to coordinate) – Plaintiffs' counsel represented the vast majority of the cases. The other law firms consisted of: Premier Legal Center, APC (based in San Diego); Romano Stancroff PC (based in El Segundo); the Law Offices of Todd M. Friedman, PC (based in Beverly Hills); the Law Offices of David J. Farrell (based in Mission Viejo); and the Law Offices of William R. McGee (San Diego). Therefore, every single firm in California handling 6.0 lawsuits in 2014 was based in/near Los Angeles or San Diego.

15. With the absence of any reasonable settlement offer from Ford, the case appeared likely to go to trial. Accordingly, in June of 2015, Richard M. Wirtz of Wirtz Law APC formally associated into the case to assist in preparing the case for trial.

16. On August 17, 2015, Plaintiff noticed the depositions of several Ford employees and dealership personnel, including Ford's PMQ, service advisors and service technicians. These depositions were needed to obtain information regarding repairs to the vehicle, authenticate the repair orders, rebut Ford's anticipated argument that the problems with Plaintiffs' vehicle were somehow caused by Plaintiffs' neglect or abuse, and show Ford's control of its dealerships. On August 27, 2015, Plaintiffs took a statement of non-appearance after Ford refused produce its PMQ for deposition. The dealership's depositions went forward on September 9, 2015.

17. On September 8, 2016, Ford filed and served a motion for summary adjudication, seeking to dispose of Plaintiffs' fraud and CLRA claims. While reviewing Ford's motion, Plaintiffs saw that Ford had based one of its key arguments on a false citation to a California Supreme Court case that if believed could be potentially dispositive. Plaintiffs drafted a motion for sanctions, outlining thirty-six prior instances in which Ford had made the same argument and been notified (by counsel and by courts) that it was false. After Plaintiffs served the motion with the requisite safe-harbor letter, Ford responded by withdrawing their motion for summary adjudication and later filing a new motion without the offending argument and authority. Afterward, Ford finally ceased to make that argument in any further cases. Plaintiffs opposed the amended motion for summary adjudication, and it was denied in January of 2017.

18. On January 24, 2017, Ford served Plaintiffs with their first and only Offer to Compromise pursuant to the Code of Civil Procedure section 998 ("998 Offer") in the amount of $190,000.00. According to Ford's counsel of record (Erskine Law Group), the settlement offer explicitly did not include a single dollar for Plaintiffs' CLRA claim, and did not provide for attorney fees under the CLRA. The amount itself was deficient, and it did not admit any wrongdoing. Plaintiffs rejected the inadequate offer and subsequently began fully preparing for trial, drafting nineteen (19) motions in limine.

19. On February 7, 2017, the parties attended a mandatory settlement conference. Ford refused to negotiate beyond its 998 offer, and the case appeared headed to trial.

20. On February 10, 2017, Ford took the deposition of Plaintiffs' expert Thomas Lepper. On February 14, 2017, Plaintiffs took a second statement of non-appearance when Ford again refused to produce its PMQ for deposition. On February 28, 2017, Plaintiffs took the deposition of Ford's expert Greg West.

21. Trial was set to begin on March 6, 2017, but on February 22, 2017 Ford moved *ex parte* to continue trial due to Mr. Erskine's unavailability. Trial was continued to May 15, 2017.

22. On May 10, 2017, Ford served twenty-one (21) motions in limine, and then on May 11, 2017 served twenty-one (21) amended motions in limine.

23. In September of 2017 Greenberg Traurig substituted in as counsel for Ford. In response, Bryan C. Altman of the Altman Law Group ("TALG") formally associated into the case as lead trial counsel in February of 2018.

24. On February 13, 2018, the parties attended a second mandatory settlement conference. Mr. Goines from Greenberg Traurig attended the settlement conference as lead trial counsel. Ford immediately said that it was standing on its prior 998 offer (as it had done the year beforehand), and the hearing ended immediately.

25. On March 14, 2018, Ford filed nine (9) motions in limine, numbered between one through 22 and presumably replacing the previously filed motions with the same numbers.

///

26. On July 10, 2018, a year after discovery had closed, Ford filed a motion to compel a second vehicle inspection without seeking to reopen discovery. Ford concurrently filed a motion to compel deposition testimony from Plaintiffs' expert witnesses, despite the fact that their scheduled depositions were scheduled but had not yet occurred. Plaintiffs opposed both improper motions, and the Court did not grant either motion.

27. On July 17, 2018, Plaintiffs took the deposition of Ford's expert Carlyn Irwin, and on August 10, 2018 Plaintiffs took the deposition of Ford's expert Victor Hakim.

28. On August 9, 2018, Ford took a second deposition of Plaintiffs' expert Thomas Lepper to discuss Mr. Lepper's additional two opinions, but the six-hour deposition delved into every opinion that he had previously testified about a year earlier.

29. On August 14, 2018, Ford filed twenty-one new and revised motions in limine, jettisoning the dozens of prior motions including those previously done by other counsel at Greenberg Traurig. On September 17, 2018, Ford filed an additional motion in limine. These motions sought to exclude the entirety of Plaintiffs case, from witnesses, experts, depositions, and documents. In effect, many of them were improper motions for summary adjudication, and they took substantial time to oppose.

30. In total, Ford served fifty-two motions in limine (not including the May 11, 2017 twenty-one amended motions).

31. On August 20, 2018, Ford filed a motion to quash the trial subpoena for Susan Aluia, a former PMQ witness for Ford.

32. At the end of August, 2018 the parties argued motions in limine over multiple days. This Court granted Ford's motion in limine excluding certain video depositions, and subsequently granted Plaintiffs' request for a brief stay so that a writ could be filed.

33. On September 11, 2018, Plaintiffs filed a writ of mandate seeking relief from a motion in limine ruling excluding the majority of Plaintiffs' video depositions at trial. While the court declined to consider Plaintiffs' writ, Plaintiffs were reasonable in seeking relief. (*Id.*) Critical evidence was excluded, significantly impairment Plaintiffs' ability to prosecute their case.

Further, this evidence had been recently admitted in the related case of *Alimonti v. Ford* with the same defense counsel, as well as numerous similar cases. (*Id.*) Plaintiffs hoped that the writ would resolve the issue prior to trial without having to potentially relitigate the entire trial itself after a possible appeal. (*Id.*) Finally, a similar order was issued by a trial court in Los Angeles in the matter of *Berroteran v. Ford* (another 6.0L case with the same deposition designations), and Plaintiffs' alternative writ was granted. Attached hereto as **Exhibit D** is a copy of the court of appeal's order granting the preliminary writ.

34. The parties returned for juror hardships and questionnaire on September 25, 2018, and trial began on October 2, 2018. The trial was litigated aggressively by Ford. The parties returned for juror hardships and questionnaire on September 25, 2018, and trial began on October 2, 2018. The trial was litigated aggressively by Ford. Ford objected to every witness, every document, and every expert. Multiple 402 hearings were needed. Ford objected to deposition testimony to which prior counsel of record had specifically stipulated could be used in this case. Moreover, Ford's witnesses were blatantly obstructive under cross-examination, causing further delay and eventually leading the jury to disregard their testimony as not credible. At trial, Ford was represented by an entirely new team of five lawyers, three from Greenberg Traurig and two from Shook Hardy & Bacon, with additional assistance from attorneys at three *other* firms: LeClair Ryan, Sanders Roberts and Taylor Anderson. After nearly a month, on October 30, 2018, the jury returned with its verdict in favor of Plaintiffs for violation of the Song-Beverly Act, violation of the Consumer Legal Remedies Act and common-law Fraud, and the following day, returned a punitive damage award in the second phase of trial.

35. On December 10, 2018, Ford filed objections to Plaintiffs proposed judgment, arguing that Plaintiffs could not recover both Song-Beverly Act and CLRA damages. After extensive briefing the Court held a hearing on December 24, 2018. Ford's objections –with the exception of two minor changes –were overruled.

36. On March 11, 2019, Ford filed a Motion for Partial Judgment Notwithstanding the Verdict. On March 26, 2019, Plaintiffs filed their opposition.

37. On March 19, 2019, Ford filed a Motion to Tax Costs, which Plaintiffs opposed.

38. In total, this case involved over a dozen motions (mostly from Ford), three *ex parte* applications, fourteen depositions, two mandatory settlement conferences, seventy-four (74) motions in limine (again, mostly filed by Ford), and one vehicle inspection.

**Ford is a Staunch Defendant That Litigates More Aggressively Than Most Other Vehicle Manufacturers While Deceiving Consumers More Than Most Manufacturers**

39. There are vehicle manufacturers with whom this firm has had exactly zero trials, zero discovery disputes, and zero fee motions. Ford Motor Company is not one of them. Since 2012, the firm has tried over 55 automotive cases. One case ended in a hung jury and two cases ended in a mistrial. Taking those two matters out, Knight Law and its trial attorneys have a win-loss record of 36 wins and 17 losses. This amounts to nearly a 70% winning percentage in trials. Of those 55 trials, Ford makes up 14 of them. <u>In other words, Ford alone comprises 25% of all of the cases that go to trial</u>. Of the 14 trials prosecuted against Ford, the firm has prevailed in 9 of them.

40. During the course of my years in practice, I have successfully pursued evidence during discovery that has proven damaging to the Ford. For example, Ford was compelled to produce 35,000 pages of training materials from its customer service call center. The production of these documents came only after Ford's representatives claimed for years that no such training materials existed, and perjured themselves in declarations opposing motions to compel. It was only once I flew to Melbourne, Florida to depose Abe Bush, one of Ford's customer service agents, during which he admitted that he had use of training materials. Based on that information, I pursued court orders to compel the materials. Ford's then-counsel of record from Bowman and Brooke (also initial counsel in this case), having denied the existence of training materials in countless declarations, flipped the opposition and claimed "it was a revelation" that the documents existed. Another example is Ford's attempt to conceal documents that it had produced in other class action litigation. Through continuing efforts, Ford was ordered to produce approximately 12,000,000 pages in a class document dump. The firm's attorneys spent countless hours sifting

through these pages. Once certain documents were identified and brought into evidence at trial, Ford amazingly claimed that the documents were not genuine and authentic. As a result, we sought Ford's admission of the genuineness of these documents, which Ford initially denied, but court orders eventually compelled their admission of authenticity. More recently, there was an ongoing feud in which Ford was ordered to produce customer service documents located on what is referred to as the "G: drive," but Ford ignored the order, caused a motion to compel compliance, filed motions for a protective order and a motion for reconsideration, and after almost two years of this battle finally produced the contents of that G: drive.

41. In my experience, Ford's approach to litigation is to fight at every turn, make unacceptably low offers that its attorneys know from their experience are not satisfactory, or make no offers at all, until the trial date for the case is near.

42. While there are a variety of vehicles forming the basis of breach of warranty, CLRA, and fraud claims against Ford, the prosecution of claims by my firm in representation of consumers against Ford in large part involves two particular vehicles with defects. The first is Ford's Super Duty trucks that were sold with a defective diesel engine. The second involves Ford Focus and Fiesta vehicles equipped with a malfunctioning "adaptive automatic transmission." As mentioned to some extent above, the firm's efforts have led to court orders compelling Ford to produce millions of internal documents relating to the defects in these vehicles, such as internal emails, presentations, studies, charts, tables, and graphs. I am not aware of any other firm that has successfully pursued such discovery. Such efforts have led to resounding settlements and victories in trial, though admittedly not every case has ended with a victory for the consumer. In June 2016, one of the firm's trial teams obtained a jury verdict in the amount of $1.68M against Ford on another 6.0l diesel engine vehicle that was purchased for just over $50,000.00 because it was proven by clear and convincing evidence that Ford engaged in fraudulent conduct with malicious, oppressive and/or fraudulent intent.

///

///

43. In response to that verdict, Ford ramped up its defense even more. Ford hired several new law firms to assist in its defense. Ford is now represented by the following twelve law firms in lemon law and CLRA actions against my firm:

1) King & Spalding
2) Greenberg Traurig
3) Gordon Rees Scully Mansukhani, LLP
4) Gates, O'Doherty, Gonter & Guy
5) Baker Hostetler LLP
6) Snell & Wilmer, LLP
7) Shook, Hardy & Bacon
8) The Erskine Law Group
9) LeClairRyan
10) Sanders Roberts LLP
11) Dykema Gossett
12) Bowman and Brooke

44. Recently, one of Ford's attorneys, speaking on behalf of the entire army of lawyers, proclaimed that Ford was no longer willing to discuss settlement in other Ford cases, did not want to engage in any further mediations and fully intends to bring every case to trial unless our clients accept Ford's existing offers.

45. In the context of discussing resolving a case with another plaintiff's firm, Justin Sanders of Sanders Roberts wrote in an electronic exchange that he is "focused on putting [Steve] Mikhov and [Bryan] Altman out of business!" Mr. Mikhov and Mr. Altman are the managing partners of Plaintiffs' counsel's respective law firms.

46. As a result of Ford's resolute defense, attorney fees are incurred during the prosecution of the lawsuit.

///

///

**The Attorneys' Hourly Rates Are Reasonable Pursuant to the Lodestar Method in Light of their Experience**

47. I attended law school at Pepperdine University and I was a judicial extern for Judge Gregory W. Alarcon of the Los Angeles County Superior Court in 2002.

48. I have been admitted to the State Bar of California since April 29, 2003. Since my admission to the State Bar of California, I have specialized in consumer law.

49. I have extensive experience prosecuting and resolving consumer protection matters involving motor vehicle claims. For the past fifteen years, I have specialized in breach of warranty and fraud cases against automobile manufacturers and dealers. I was among the attorneys who represented the plaintiff in *Joyce v. Ford Motor Co.* (2011) 198 Cal.App.4th 1478, a leading case which extended the protections of the Lemon Law to trucks based on actual weight, not maximum capacity.

50. I originally worked for one of the largest consumer warranty law firms in the country, Consumer Legal Services. From April 2007 until April 2012, I was a founding partner in Romano, Stancroff & Mikhov PC. I was the Managing Partner of the firm until it was dissolved. In April 2012, I founded O'Connor & Mikhov, LLP. The firm was reformed in 2017 as Knight Law Group, LLP. I am the Managing Partner of the firm. My rate for this case was $550/hour. My billing entries are indicated by the initials "SBM" in the billing statement exhibited to this declaration.

51. Lauren Ungs is a Partner in my office. Ms. Ungs has been employed by the firm since July 12, 2012. Ms. Ungs has been a member of the California bar and actively practicing law for five years. She graduated magna cum laude from Southwestern Law School in 2010. She currently specializes in consumer law, lemon law, and contract law. Ms. Ungs has been part of trial teams that returned verdicts of $1.8 million, $7.5 million, $2.6 million, and $8.1 million in similar cases against Ford. Mr. Ungs has been selected as a Rising Star by Super Lawyers in 2018 and 2019. Ms. Ungs current hourly rate, is $425/hour. Ms. Ungs' entries are indicated by the initials "LAU" in the billing statement exhibited to this declaration.

52. Amy Morse is a Partner in my office. Ms. Morse has been with my firm since her admission to the bar in 2013. Prior to her admission, she was a law clerk with my office since 2012. Ms. Morse graduated from Loyola Law School. Ms. Morse's hourly rate is $350/hour. Ms. Morse's billing entries are indicated by the initials "ALM" in the billing statement exhibited to this declaration.

53. Daisy Ortiz was an Associate of the law firm for three years from 2012 until August of 2015. Ms. Ortiz graduated from University of California, Davis School of Law and admitted to practice in California in 2012. Ms. Ortiz's hourly rate was $225/hour. Ms. Ortiz primarily undertook the written discovery and meeting and conferring regarding discovery. Ms. Ortiz's billing entries are indicated by the initials "DO" in the billing statement exhibited to this declaration.

54. Kristina Stephenson-Cheang graduated from Western State University College of Law and was admitted to practice in 2008. Ms. Stephenson-Cheang has been employed with the firm since 2013. Prior to her employment at OM Law, she worked for a different lemon law firm gaining valuable experience in this area of law. Ms. Stephenson-Cheang's hourly rate in this matter is $375/hour. Ms. Stephenson-Cheang's billing entries are indicated by the initials "KSC" in the billing statement exhibited to this declaration.

55. George Aguilar is an associate at Knight Law Group, LLP. He received his undergraduate degree from the University of California, Berkeley in 2011, and his law degree from the University of Maryland Carey School of Law in 2014. Mr. Aguilar was admitted to the California Bar in 2015, and spent his first year and a half practicing family law, criminal defense, personal injury and bankruptcy before joining my firm. Mr. Aguilar's hourly billing rate is $275/hour. Mr. Aguilar's billing entries are indicated by the initials "GA" in the billing statement exhibited to this declaration.

56. Zachary Powell is an associate at Knight Law Group, LLP. He received his undergraduate degree from the University of California, Berkeley and his law degree from the University of the Pacific, McGeorge School of Law. Mr. Powell was admitted to the Missouri Bar

in 2013 and the California Bar in 2015. Mr. Powell's billing rate is $250/hour, and his billing entries are indicated by the initials "ZP" in the billing statement exhibited to this declaration

57. Russell Higgins is a Senior Associate with the firm and was admitted to practice in 2003. Mr. Higgins graduated from Pepperdine University School of Law and his hourly rate in this matter is $450/hour. Mr. Higgins' billing entries are indicated by the initials "RH" in the billing statement exhibited to this declaration.

58. Chris Swanson is a Senior Associate in my office. Mr. Swanson graduated from UCLA School of Law in 2011 where he distinguished himself academically. Mr. Swanson has been an Associate at my firm since 2014. His prior professional experience includes individual and class action consumer protection law. Mr. Swanson has been selected as a Rising Star by Super Lawyers in 2018 and 2019. Mr. Swanson's billing rate at my firm is $375/hour. Mr. Swanson's billing entries are indicated by the initials "CS" in the billing statement exhibited to this declaration.

59. Roger Kirnos is a Partner in my office. Mr. Kirnos graduated from Southwestern Law School in 2009 in the top 10% of his class with cum laude honors. Mr. Kirnos previously was an extern for former Chief Judge Alex Kozinksi of the Ninth Circuit Court of Appeals and an extern for Judge F. Gary Klausner of the United States District Court, Central District. Mr. Kirnos has been trial counsel in over twenty lemon law cases that went to jury verdict, and approximately a dozen more that settled once trial began. The hourly rate for Mr. Kirnos is $425/hour, and his billing entries are indicated by the initials "RK" in the billing statement exhibited to this declaration.

60. Deepak Devabose is an associate at my firm. Mr. Devabose was admitted to the Bar in 2014 and has been working at the firm since 2015. He graduated from Pepperdine University School of Law and received his undergraduate degree from Emory University. He has earned the Certificate in Reasonable Attorney Fees from the National Association of Legal Fee Analysis, which specializes in attorney fees and legal billing. His hourly rate is $275/hour. His billing entries are indicated by the initials "DD" in the billing statement exhibited to this

declaration.

61. Alastair Hamblin was an associate at Knight Law Group and was employed by the firm since January 2016. Mr. Hamblin graduated from Southwestern Law School in 2007. He specialized in consumer law, lemon law, and contract law. Prior to joining the firm, Mr. Hamblin practiced general commercial, insurance, products liability, and environmental law defense for four years. Mr. Hamblin's billing rate at the firm was $325/hour. Mr. Hamblin's billing entries are indicated by the initials "AH" in the billing statement exhibited to this declaration.

62. Diane Hernandez is of counsel with my firm and frequently works in lemon law cases. She was admitted to practice in California in 1997. Ms. Hernandez's hourly rate in this case was $375/hour, and her billing entries are signified by the initials "DLH" in the billing statement exhibited to this declaration.

63. As always, Knight Law attempts to keep attorney fees and costs down while providing vigorous and effective representation.

64. All time billing entries were completed contemporaneously with each dated entry or near in time to the work performed. I have personally reviewed the billing entries to ensure that they appropriately reflect the time expended. I have removed or reduced any time I felt was excessive, duplicative, or otherwise unreasonable, or I have labeled the entry as a "no charge", as identified by the "N/C" in the invoice. My firm **does not bill clients** for secretarial support staff time.

65. While not controlling as to a reasonable rate for a contingent plaintiff attorney, one of Ford's law firms utilized in this matter and related matters charges 450 per hour for a fifth-year associate who did not attend trial. Ford's counsel has also declared that 450 per hour is either at *or below* the market rate for *defense* attorneys of similar experience in both Orange County and San Joaquin County. Attached hereto as **Exhibit E** is a true and correct copy of the declaration of Ford's counsel filed in this matter in support of its request for sanctions. Attached hereto as **Exhibit F** is a true and correct copy of the declaration of Ford's counsel from the matter of *Misner v. Ford*, County of Orange, case number 30-2013-00668307-CU-BC-CXC attesting to the same.

Ford has also attested to hundreds of hours in trial preparation time in the matter of *Melton v. Ford*, County of San Diego, case number 37-2017-00018831-CU-BC-CTL. Attached hereto as **Exhibits G-H** are Ford's counsel's declarations from *Melton v. Ford* attesting to a portion of their trial preparation time which they sought to recover as sanctions. Ford later amended their existing trial documents and filed dozens of new trial motions that were not included in the preparation time.

**Evidence to Support the Reasonableness of Hourly Rates for Attorneys**

66. I am aware of the hourly rates of other attorneys in California who work in the area of lemon law and consumer law. I bill my time at an hourly rate of $550 per hour. An hourly rate of $550 per hour is reasonable, and consistent with other attorneys who litigate consumer matters and who have a comparable level of experience.

67. I have included fee awards in other Ford 6.0L diesel cases, including ones that went to trial.

68. On April 4, 2019, Judge Daniel A. Ottolia awarded over 91% of the lodestar fees requested by motion in the total amount of $731,885.25 in the matter of *Leonard Coon v. Ford Motor Company* (Riverside County Superior Court, Case No. MCC1300767). *Coon* was a similar 6.0L case that also went to trial. The court found all of the hours worked to be reasonable. The court also found all hourly rates at or below $500/hour to be reasonable.

69. On January 9, 2019, Judge Tamara L. Mosbarger awarded $714,233.00 in attorneys' fees in the matter of *Brown vs. Ford Motor Company* (Butte County Superior Court, Case No. 160060). This award is over the amount of the original lodestar request and includes a .3 multiplier for risk and delay. *Brown* was a similar 6.0L case that also went to trial, and Greenberg Traurig represented Ford with William Goines as lead trial counsel. Ford did not object to every piece of evidence in the *Brown* case, and utilized fewer witnesses. A true and correct copy of the signed order is attached hereto as **Exhibit I**.

70. On January 5, 2018, Judge Mel Red Recana granted full requested lodestar attorney fees in the amount of $529,885.50 and $96,840.81 in costs and expenses in the matter of *Margeson v. Ford Motor Company* (Los Angeles Superior Court, Case No. BC549430), which represented

100% of the fees and 98% of requested costs and expenses. Judge Recana further awarded a 1.8 multiplier of $423,908.40 to be added to the fee award for a total of $953,739.90 in fees. *Margeson* was a similar 6.0L case that also went to trial. After this first trial loss, Ford brought in multiple new law firms and ratcheted up their litigation strategy, significantly increasing the length and cost of trial. A true and correct copy of the signed order is attached hereto as **Exhibit J.**

71. On October 24, 2018, Judge Kelly L. Neel awarded 100% of requested lodestar attorneys fees in the amount of $189,230.00 and full requested costs and expenses in the amount of $32,079.98 in the matter of *Furber vs. Ford Motor Company* (Humboldt County Superior Court, Case No. DR130223). The hourly rates awarded ranged from my rate of $550 for senior-level attorneys such as myself; $425 to $350 for partners Lauren Ungs and Amy Morse; $375 to $350 for "contract/of counsel" attorneys Diane Hernandez and Christopher Thoms; $375 to $350 for senior associates Kristina Stephenson-Cheang and Christopher Swanson; and $225 for younger attorneys. *Furber* was a similar 6.0L case that settled before trial. A true and correct copy of the signed order is attached hereto as **Exhibit K.**

72. On June 18, 2018, Judge Richard Henderson awarded lodestar attorneys fees in the amount of $168,242.50, costs and expenses in the amount of $26,663.24, and a 1.2 multiplier of $33,648.50 in matter of *Reynolds v. Ford Motor Company* (Sonoma County Superior Court, Case No. SCV-254959). Specifically, the Court deemed a rate of $500 per hour reasonable for senior attorneys like myself and trial attorney, Bryan Altman's hourly rate of $500 per hour as reasonable. The attorney fee award represents more than 100% recovery of the lodestar fees and costs requested by motion in the matter. *Reynolds* was a similar 6.0L case that settled before trial. A true and correct copy of the signed order is attached hereto as **Exhibit L.**

73. I request a multiplier of 1.5 based on my contingent fee, the risk and delay in payment associated with a contingent fee scenario, and the result achieved. Such a multiplier is reasonable and towards the low end under the established law. (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 255.) Plaintiffs' attorneys are paid only if Plaintiffs prevail, unlike Defendant's attorneys who get paid monthly regardless of the outcome. Moreover, Defendant's

attorneys typically have a continuing and ongoing relationship, whereas this firm will most likely not have the opportunity to represent Plaintiffs again.

74. It is not uncommon for attorney's fees and costs to exceed the client's damages. The Legislature acknowledged such a circumstance, which is the reason behind the fee shifting provision of the Song-Beverly Act and the CLRA. Otherwise, consumers would be left without opportunity for redress when their damages were not enough for an attorney to take the case on a contingent fee or hourly rate basis. Such a result occurs in large part because of dealerships' or vehicle manufacturers' refusal to adhere to statutory laws protecting consumers, resistance to honoring consumers' complaints, and generally playing games or simply abusing discovery procedures. For example, Ford could have avoided paying any attorney fees whatsoever had it admitted to its wrongdoing early on. Instead, Ford engaged in expensive litigation, and drove up fees and costs by, among other things, filing a Demurrer and Motion to Strike Plaintiffs' Complaint, filing a Motion for Summary Adjudication, engaging in extensive discovery, stone-walling Plaintiff's discovery efforts, filing more than fifty motions in limine, and fighting this case through trial.

75. Song-Beverly Act and automotive CLRA cases are not simple actions. They require a specialized understanding of the full scope of consumer protection laws, which are highly nuanced. The cases also require knowledge of intricacies of automobiles and a lexicon associated with them, as well as a knowledge concerning how to investigate these matters. They also require knowledge of auto manufacturers' and dealers' protocols for repairing vehicles.

76. Generally speaking, clients of the firm are benefitted by the experience of this firm insofar as work-product from other cases can be used in this case as well. Hence, a substantial amount of time was saved by not needing to draft each document from scratch and little time was needed to "get up to speed" in this specialized area of law. In effect, Ford also benefitted when it comes to a determination of reasonable attorney's fees to be paid because there are numerous cost-saving techniques employed by the firm.

77. Ford itself made this matter more complex by maintaining it had no liability and

declining to submit reasonable offers to settle the matter early in the litigation.

78. As shown by the number of cases discussed herein and the positive results achieved on behalf of each client, the hourly rate is reasonable and the number of hours expended are reasonable. The fees incurred in this litigation are the direct result of Ford's own obstructive and aggressive defense.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 28th day of May 2019, at Los Angeles, California.

STEVE MIKHOV
Declarant

# EXHIBIT K

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

HACKLER DAGHIGHIAN MARTINO & )
NOVAK, P.C., a California )
professional corporation, )
Plaintiff, )
vs. ) Case No.
KNIGHT LAW GROUP, a California) 20STCV19127
limited liability partnership,)
et al., )
Defendants. )
_______________________________)
AND RELATED CROSS-ACTIONS. )
_______________________________)

VIDEOCONFERENCE DEPOSITION OF AMY MORSE

FRIDAY, JANUARY 15, 2021

10:03 A.M.

REPORTED BY:

Sari M. Knudsen, CSR No. 13109

JOB No. 4392862

[redacted]

A My role is sort of more on the administrative side. I supervise attorneys and staff.

Q And how long have you had this supervising role?

A Maybe since 2016, 2015 or 2016.

Q Okay. What was your role before that?

A I was just an associate -- I was a law clerk, and then I was an associate attorney, and that's it.

Q Okay. As a supervising attorney -- so you've

testified that you've taken approximately one to two depositions. Correct?

A That is correct.

Q Have you drafted motions for summary judgment?

A I have not.

Q Have you been lead counsel at a trial, a jury trial?

A No.

Q Have you been lead counsel at a court trial?

A No.

Q Have you been lead counsel in arbitration?

A No.

Q Have you second-chaired a jury trial?

A No.

Q You know what I mean by "second chair"?

A Yes, I do.

Q Have you second-chaired a court trial?

A No, I have not.

Q Have you second-chaired an arbitration?

A No.

Q Have you propounded written discovery?

A Yes.

Q When is the last time you propounded written discovery?

A Many years ago when I was a law clerk

Q And then -- so maybe 2013, you then became an associate attorney. Correct?

A Correct.

Q Okay. Did you propound written discovery as an associate attorney?

A Yes.

Q Okay. And how many years were you a -- an associate attorney?

A Three years.

Q So from about 2013 to approximately 2016?

A Correct.

Q Okay. And then from 2016 to present, you've been -- and I don't want to mischaracterize it, but would you classify it as a supervising attorney?

A Yes.

Q Have you propounded written discovery since the time you've been a supervising attorney?

A No.

Q Have you taken any depositions since the time you've been a supervising attorney?

A No.

Q Have you drafted or prepared any written motions since the time that you've been a supervising attorney?

A Personally, no.

Q Do you directly communicate with clients in your role as a supervising attorney?
A No.
Q When is the last time you've had direct communications with a client?
A I don't recall.
Q Would it have been prior to the time that you were a supervising attorney?
A Yes.
Q Has it been your role -- as a supervising attorney, do you have communications with opposing counsel?
A Yes.
Q How often do you communicate with opposing counsel in your role as a supervising attorney?
A Not very often.
Q When is the last time you think you communicated with opposing counsel on a particular case?
A I don't recall.
Q Do you review the pleadings that are filed in the various cases that you are supervising?
A Yes.
Q How many cases do you currently oversee, best estimate?

[redacted]

Q Okay. And what are the different groups within the litigation department?

A I will try to name all of them. But again, I don't know if I have them all memorized.

So we have a complaint team. Not client complaints, the actual pleadings.

[redacted]

[redacted]

Q Sure. In 2020, typically how many hours would you bill a week?

A Typically about 60. And I should clarify that.

That is a combination of billable and non-billable hours or just myself. Because a lot of -- as I explained earlier, a lot of what I do is on the administrative end of things, and that would not be billed to a case as far as I know.

Q But you still enter that as time which you get credit for?

A Yes.

Q Okay. So if you bill approximately 60 hours a week, that's about 240 hours a month between billable and non-billable time. Would that be fair to say?

A I didn't do the calculation, but I will take your word for it and -- yes.

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

HACKLER DAGHIGHIAN MARTINO & NOVAK, P.C., a California professional corporation,

Plaintiff,

vs.

KNIGHT LAW GROUP, a California limited liability partnership; STEVE BORISLAV MIKHOV, an individual; and DOES 1 through 10, inclusive,

Defendants.

No. 20STCV19127

AND RELATED CROSS-ACTION.

VIDEO-RECORDED DEPOSITION OF STEVE MIKHOV, ESQUIRE
VIA REMOTE COUNSEL
Beverly Hills, California
Saturday, April 17, 2021
Volume I

Reported by:
LORI SCINTA, RPR
CSR No. 4811
Job No. 4544328

PAGES 1 - 321

[redacted]

Q Okay. And when you manually enter your time, where do you input it? 02:24:49

A Paper.

Q And do you have a -- do you just write it down on any piece of paper in front of you or do you have a notepad that is meant for cataloging your billing entries? 02:25:03

MR. BROWN: Objection. Waiver.

THE REFEREE: Overruled.

THE WITNESS: It's a hodgepodge. A little bit of this, a little bit of that. 02:25:15

[redacted]

[redacted]

Q Okay. And then do you -- on whatever sheet of paper you were writing down tasks, do you keep doing that for an entire week or do you -- by day? How does it go? 02:27:25

A Like I said, it's just from time to time I make note of my entries if I can.

Q And when you make note of your entries, is it done contemporaneously or right after you completed the particular task? 02:27:40

A Hopefully.

I do it close in time, what I can remember, the task and the -- and the work.

Q And then you take that piece of paper and what do you do with it? 02:27:57

A It either goes to Lupe or to Roger.

Q Okay. And do you know what they do with it?

A They enter it into the fee motion.

Q Okay. And when you say, "They enter it into the fee motion," do you write down your time referring back to maybe a month earlier when you might have done a particular task? 02:28:07

MR. BROWN: Objection. Waiver estoppel.

THE WITNESS: I'm sure I have. 02:28:26

[redacted]

Q And do you sometimes refer two months back to recreate time as to particular tasks that you've done?
A I'm sure I have. 02:28:44
Q What about going further back in time? Do you -- oftentimes, when it's time for a fee motion to be prepared, do you do your best to go back and recreate all the work you did for that particular matter? 02:29:04
MR. BROWN: Objection. Vague as to "oftentimes," waiver estoppel.
THE REFEREE: I'll sustain on the "oftentimes" ground.
BY MR. COLE: 02:29:13
Q On a particular case when a fee motion is set to be filed, have you recreated your time for prior tasks that you completed in the past?
MR. BROWN: Objection. Relevance, waiver.
THE REFEREE: Overruled. 02:29:28

THE WITNESS: I'm sure I have.

BY MR. COLE:

Q And when you write down the amount of time you spent on that task, you're just giving your best estimate as to the amount of time you spent? 02:29:41

A Yes.

Q And in the billing -- in the fee motion department, do they have authority to enter time for various tasks for you absent you handing them a written sheet or Mr. Kirnos handing them a written 02:30:01 sheet?

MR. BROWN: Objection. Relevance.

THE WITNESS: Sure.

[redacted]

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

HACKLER DAGHIGHIAN MARTINO & NOVAK, P.C., a California professional corporation,

Plaintiff,

vs.

No. 20STCV19127

KNIGHT LAW GROUP, a California limited liability partnership; STEVE BORISLAV MIKHOV, an individual; and DOES 1 through 10, inclusive,

Defendants.

AND RELATED CROSS-ACTION.

DEPOSITION OF ELIN HOWARD
VIA REMOTE COUNSEL
Los Angeles, California
Wednesday, March 3, 2021
Volume I

Reported by:
LORI SCINTA, RPR
CSR No. 4811
Job No. 4450182

PAGES 1 - 74

[redacted]

Q Can you explain to me what the fee motion department is.

A Yes. So we prepare to file the motion for attorneys' fees and costs after a case has settled.

Q Do you physically do the preparation of the motion?

A No.

Q Who does that?

A I'm not sure.

Q And what is your specific job in the fee motion department?

A I have to review attorney time billing and the costs.

Q Who do you report to in the fee motion department?

A What do you mean, I report to?

Q Do you have a superior above you that you -- an individual that you report to?

A Yes.

Q And who is that?

A Guadalupe -- Lupe.

Q Guadalupe Lopez?

[redacted]

Q Okay. Now, in terms of preparing the invoices, does the fee motion department have individuals who are known as drafters?

A Drafters?

Q Have you heard that term before?

A Yes.

Q Okay. What is your understanding of what a drafter is?

A They will pull up the billing.

Q And what do they do?

A They also look to see that nothing is missing in the folders.

Q Do they draft the actual invoices or create them?

A No.

Q Have you heard of the term "reviewers"?

A Yes.

Q And do reviewers work in the fee motion department?

A Yes.

Q What does a reviewer do?
A Review.
Q Review. Review what?
A The invoice.
Q And do you know why they review the invoice?
A Make sure there are no mistakes.
Q Okay. And what's the difference between a drafter and a reviewer?
A A reviewer has more seniority.
Q Okay. Do they do different things?
A I don't know.
Q Okay. And then have you heard the term "finalizer"?
A Yes.
Q What does a finalizer do?
A They also review the invoice.
Q Other than reviewing the invoice, do you know if they do anything else?
A I don't know.
Q Do you know what the difference is between a reviewer and a finalizer?
A No.
Q Are you a drafter, reviewer or finalizer?
A I review the invoice, so I'm a reviewer.
[redacted]

[redacted]

Q Okay. So the information from Salesforce gets put into a new document; is that correct?

A Correct.

[redacted]

[redacted]

Q Is there a -- maybe I'll get a little more specific and help you out here.
Is there any type of list that you refer to that has the attorney's hourly rates?
A Yes.
Q Okay. And is that a document that you have a hard copy of? Is that on a computer system?
A It's not on a system.
Q So you have a document that lists all of the attorneys at Knight Law Group and their attorney rates, correct?
A Correct.
Q And you also have a document that tells you how much to bill for a particular -- that attorney should bill for a particular task, correct?
A No.
Q Do you have any guide at all that tells you what amount of time to input for a particular task that

an attorney would work on?

A Yes. The attorney's billing.

Q And Ms. Lopez provides you with that list regarding the attorney time and the hourly rates, correct?

A No. Jason.

Q Jason.

So you do not at any point in time input an attorney task and identify a particular set of hours for that attorney? You've never done that.

A I have done that.

Q You have done that? Okay.

When have you done that?

A I don't know specifically when.

Q How often do you do that?

A I don't know.

Q On a regular basis --

(Speaking simultaneously.)

A -- guessing, so I'm not going to.

Q Sure. And I don't want you to guess.

Do you do it on a regular basis?

A Yes.

Q Okay. Do you do it for every case file that you handle?

A I don't know.

Q More than 50 percent of them?
A Yes.
Q Okay. And how do you know how much time to input for the particular task that you create?
A Well, I don't create a task.
Q Okay. How much time do you input for the task -- how do you know how much time to input for the task that's already there?
A Well, it depends on the task.
Q Sure. So -- well, depending on the task, do you have a reference guide that tells you how much time should be allocated depending on what the words are that are listed?
A I don't right now, no.
Q Have you ever had such a document?
A Not a document. Some guidelines.
Q Guidelines. Okay.
And of the guidelines, did you have a hard copy of those guidelines?
A No.
Q It was on the system?
A No.
Q How would you -- how did you acces the guidelines?
A I think they were given to me.

Q Okay. By whom?
A By my supervisor.
Q And what do the guidelines say?
A I don't remember. It was...
Q And when you did have the guidelines, you would refer to those when you needed to allocate a set of time to a particular task?
A Yes.
Q So how do you do it now since, if I understand your testimony, you don't have a guideline to refer to?
A Right.
Well, I -- because I've worked there for a while.
Q So you rely on your experience in having done it for so many years, correct?
A Yes.
Q So you know that if you look at a particular task, based upon your experience, you can then set a certain amount of time for that task, correct?
A Correct.
But that's just when -- when something is missing.
Q Yeah. I get that.
The guideline, did it have a particular name?
A No. I don't remember.

Q I'm sorry?

A I don't remember.

Q When is the last time you remember referring to it?

A I don't remember.

Q A long time ago?

A Yeah.

Q Would you consider yourself a more senior member within the fee motion department?

A Yes.

Q How do more junior members know how much time to allocate to a particular task if the number's missing?

A I don't.

Q Do you tell them?

A I review it and then I will.

Q You do it yourself?

A Yeah.

Q And so, for instance, with initial client communications, is there a set amount of time that you bill for those tasks?

A No.

Q It varies?

A Yes.

Q Okay. What's the range that you identify for

those particular tasks?
A Do you mean which -- are you referring to the top entries or --
Q Yeah, yeah. For instance, the "Initial communication with client" is one hour.
Is that a set time entry that you would input there?
A Yes. I think --
Q That's --
A I mean, that would be I think the most that is there.
Q So this would be on the higher end of the entry that you would insert for that one hour, right?
A Correct.
Q And then "Analyze vehicle documentation," when you insert that task is that -- .9 there, is that typical or on the higher end?
A On the higher --
Q Okay.
A -- or --
Q When you input the -- and then "Draft Complaint" is .5.
Do you put that .5 in there? Is that a typical number you put in?
[redacted]

[redacted]

Q So my question was referring you to the "Draft Complaint" there.

Do you see that entry?

A Right.

Q And you would insert the time for that particular task on a regular basis?

A Yes.

Q And is .5 generally speaking what you would insert?

A Yes.

Q Okay. And the -- and so when you insert these particular amounts of time, at this point in your career, you're relying upon the years that you've been doing this, right?

A Well -- yes.

Q Okay. And for "Discovery requests," do you insert particular amounts of time for reviewing discovery or drafting discovery?

A Well, I take it from the attorney billing time, what they spent on it.

Q And are there always time entries there?

A No.

Q All right. So when there's not a time entry there, you would then insert a particular amount of time, correct?

A Correct.

Q And you would use again your history with the company and your experience in determining how much time to set for that particular time entry?

A Yes.

[redacted]

[redacted]

Q And Amy Morse, she currently as far as you're aware of prepares complaints for files she works on?

A Yes.

Q And she bills for that time, so she would prepare those complaints?

A Yes.

Q Okay. And you've seen invoices where she prepares complaints I take it even as recently as this year, 2021?

A What do you mean, I've seen an invoice?

Q You've seen invoices reflecting Ms. Morse preparing complaints in the year 2020, 2021?

A Yes.

Q And drafting discovery?

A Yes.

Q You've seen those invoices?
A It's not invoices. It's billing entries.
Q Billing entries, and thank you for that correction.
You've seen billing entries with Ms. Morse where she drafts and prepares discovery in the year 2020?
A 2020? Yes.
Q And same, have you seen such time entries in 2021?
A I think so.
MR. BROWN: I'll object as to relevance in 2021.
BY MR. COLE:
Q And 2019 you've seen time entries where Ms. Morse prepares complaints and drafts in response to discovery?
A I mean, I would just have to say I guess so because I don't remember everything that you're asking me, so --
Q I don't want you to guess, but do you have a recollection of seeing Ms. Morse's time entries in preparing discovery or responding to discovery recently?
A Recently? Yeah.
[redacted]

[redacted]

Q In the client intake portion Mr. Mikhov enters -- provides an entry, you don't call him to ask

him how much time he spent, do you?

A No.

Q You don't email him to ask him how much time he spent, do you?

A No.

Q You insert a set time period for that, correct?

A Yes.

[redacted]

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

HACKLER DAGHIGHIAN MARTINO & NOVAK, P.C., a California professional corporation,

Plaintiff,

vs.

No. 20STCV19127

KNIGHT LAW GROUP, a California limited liability partnership; STEVE BORISLAV MIKHOV, an individual; and DOES 1 through 10, inclusive,

Defendants.

AND RELATED CROSS-ACTION.

DEPOSITION OF ROGER KIRNOS, ESQUIRE
VIA REMOTE COUNSEL
Los Angeles, California
Monday, March 15, 2021
Volume I

Reported by:
LORI SCINTA, RPR
CSR No. 4811
Job No. 4488123

PAGES 1 - 187

Q Okay. And as a partner, what are your responsibilities within Knight Law Group?

A They vary on a day-to-day basis. I wear various hats. But, overall, I guess I would describe my duties as supervising and addressing matters involving settlement of cases, fee motion, and litigation and trial strategy.

[redacted]

[redacted]

Q Do the attorneys within Knight Law Group all enter their own time in a billing program?

A I can't speak for what other attorneys do. My understanding is that we have a billing program, and they're supposed to, and I have seen results. So I know

that they do on a general level, yes.

Q Do you know if they input the time themselves or another individual within Knight Law Group enters the time for them?

A My understanding is that all attorneys -- or at least most attorneys are entering their own time. I can say for myself that I keep my time on a spreadsheet and give it to my assistant.

I don't think other people enjoy that benefit, though.

[redacted]

# EXHIBIT L

**KNIGHT LAW GROUP, LLP**
Steve Mikhov (SBN 224676)
*stevem@knightlaw.com*
Roger Kirnos (SBN 283163)
*rogerk@knightlaw.com*
10250 Constellation Blvd., Suite 2500
Los Angeles, California 90067
Telephone: (310) 552-2250
Fax: (310) 552-7973

**KIESEL LAW LLP**
Paul R. Kiesel (SBN 119854)
8648 Wilshire Boulevard
Beverly Hills, CA 90211-2910
Telephone: 310-854-4444
Fax: 310-854-0812
Email: kiesel@kiesel.law

Attorneys for Plaintiff,
MARK PEDANTE

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **IN RE: FORD MOTOR CO. DPS6 POWERSHIFT TRANSMISSION PRODUCTS LIABILITY LITIGATION** | Case No.: 2:18:-ML-02814-AB-FFM |
| **THIS DOCUMENT RELATES ONLY TO:** *Pedante, Mark v. Ford Motor Company, et. Al., 2:17-cv-06656-AB-FFM* | **DECLARATION OF STEVE MIKHOV IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS, AND EXPENSES** [Filed Concurrently with Notice of Motion and Motion; Memorandum of Points and Authorities in Support Thereof; Declaration of Paul R. Kiesel in Support Thereof] Date: February 28, 2020 Time: 10:00 a.m. Courtroom 7B Judge: Hon. Andre Birotte, Jr. |

# DECLARATION OF STEVE MIKHOV

I, Steve Mikhov, declare as follows:

1. I am an attorney at law duly licensed to practice before the courts of the State of California and attorney of record for Plaintiff Mark Pedante ("Plaintiff") in the instant action. I have personal knowledge of the following facts and, if sworn as a witness, I could and would testify to them competently.

2. I make this declaration in support of Plaintiff's Motion for Attorneys' Fees ("Motion"). For the reasons set forth herein and, in the Motion, Plaintiff requests $385,996.25 in attorneys' fees. This amount is comprised of the legal services provided by Knight Law Group, LLP ("Knight Law") in the amount of $102,155.00 and the amount of $283,841.25 for legal services provided by Kiesel Law, LLP ("Kiesel Law"). Plaintiffs' attorneys request a reasonable "lodestar" enhancement of 1.4 in the amount of $154,398.50, for a total attorneys' fee award of $540,394.75. A true and correct copy of my firm's billing is attached hereto as **Exhibit A.** Plaintiffs also requests reimbursement of costs and expenses in the amount of $1,214.49. My firm advanced all of the costs in this matter. A true and correct copy of my memorandum of costs is attached hereto as **Exhibit B.** The total amount requested in fees, costs and expenses is $541,609.24.

3. Plaintiff purchased his 2013 Ford Focus on March 10, 2013 for $27,377.00, including taxes, fees, finances charges, a Ford service contract, a Ford GAP insurance contract, and a $2,500.00 rebate – the purpose of the rebate being to incentivize dealers to actually push these vehicles on to consumers. The vehicle purchase came with an express written warranty and an implied warranty which arose as a matter of law. A true and correct copy of the Retail Installment Sales Contract is attached hereto as **Exhibit C**.

4. Plaintiff began experiencing transmission issues that began with a light shudder and ultimately escalated to a more significant jerking. After just over 16,000 miles, he brought the vehicle into Ford's authorized repair facility where they

reprogrammed the Transmission Control Module ("TCM") and replaced the clutch and inner shaft seals – all of which were issues the documentary evidence shows Ford was aware of prior to selling Mr. Pedante his car. At 25,000 miles, the vehicle still had the same issues and the transmission appeared to be overheating based on the warning message. The clutch was replaced again. About 3,000 miles later, the vehicle had a coolant leak damaging the heater core of the air conditioning system. Then about 2,000 miles later, the TCM had to be reprogrammed again. Less than 5,000 miles later, the vehicle lost all power and had to be towed to the Ford dealership. The clutch was again replaced and the TCM was again reprogrammed. These transmission problems continued up to, and even after, Ford's own experts in this case replaced the clutch for a seventh time at about 65,000 miles during an October 2019 litigation inspection of the vehicle.

5. Despite the ongoing repairs and continued manifestation of problems, Ford refused to acknowledge the defective nature of Plaintiff's vehicle. At all times, however, Ford had direct, contemporaneous knowledge of the particular vehicle's serious defects, which it records in a variety of databases. Ford's internal repair records indicate when the vehicle was presented, as well as every time the Ford repair facility found a warrantable problem and billed Ford for the work.

6. Frustrated with his vehicle and concerned for his safety, Plaintiff contacted Ford's customer service in September 2017 requesting a repurchase of the defective vehicle. He was promised he would receive a response within two weeks, but no response was offered. Mr. Pedante had to follow up once by email and three times by phone call before finally being told his vehicle problems were insufficient to warrant a buyback under Ford's version of the law.

7. Plaintiff contacted Knight Law and described the problems with his vehicle and the way Ford had treated him. After reviewing the repair history and discussions with Mr. Pedante, the firm agreed to represent him and bear the risk of litigating the case on a contingent basis. The firm faced a genuine risk of not being

paid for its services for years, if at all, while advancing tens of thousands in costs and expenses to prosecute his claims. *Id.* In taking on this duty, the firm was facing a litigation behemoth—Ford is a multi-billion-dollar company, utilizing a virtually infinite litigation war-chest to wage a battle of attrition that most firms could not withstand.

8. Plaintiff filed his complaint in Los Angeles Superior Court on August 3, 2017 alleging violations of the Act and fraud causes based on misrepresentation and concealment. On September 7, 2017, Ford served its answer to the complaint denying all liability and asserting forty-three (43) affirmative defenses. On September 8, 2017, Defendant removed this case to federal court. On November 9, 2017, this matter was stayed pending decision on Ford's request to create an MDL and have this matter transferred. Of note, Ford already created *two* coordinated JCCP proceedings in state court but wanted another.

9. For the next several months, the parties conferred regarding remand issues and possibly staying this case prior to MDL coordination pending resolution of remand issues. On February 6, 2018, this matter was ordered transferred into a newly created MDL entitled *In Re: Ford Motor Company DPS6 PowerShift Transmission Products Liability Litigation*, MDL 2814-AB(FFMx).

10. In March of 2018, a Notice of Appearance was filed bringing Kiesel Law, LLP into this action. While Kiesel Law performed various duties of a liaison counsel in a coordinated action, Knight Law worked to prepare a case management order. On April 18, 2018, Knight Law attended the initial status conference in this matter. The parties were also ordered to confer regarding a protective order. The Court also ordered a status conference would be held every six weeks.

11. In April 2018, Knight Law began preparing their motion for remand that would apply to this case and others.

12. On June 13, 2018, a status conference was held where the parties discussed the upcoming remand motions and the Court ordered, among other things,

the parties to further meet and confer regarding document repository issues and to file a proposed order to that effect. Knight Law prepared and finalized the motions for remand and filed them on June 22, 2018. Ford filed its opposition papers on July 20, 2019. In declarations from counsel, Spencer Hugret, in support of prior removals, Mr. Hugret declared that, "[i]n his vase experience litigating such cases, it is not uncommon, and in fact quire regular, for attorney's fee and cost *awards* (or resolutions through information discussions with opposing counsel) to exceed $100,000." Mr. Hugret changed this factual averment in Ford's opposition in this case reducing it to just $50,000.00 in recognition of the admission he previously made. Knight Law prepared the reply papers and filed them on August 3, 2018. A true and correct copy of this declaration supporting removal in another DPS6 PowerShift transmission case entitled *Gibson v. Ford Motor Company* is attached hereto as **Exhibit D.**

13. On August 29, 2018, the Court held the next status conference where the motions for remand were taken under submission and the parties were ordered to meet and confer. Knight Law worked with Kiesel Law and other plaintiff firms to provide comments and feedback concerning the scheduling order and deposition order.

14. On October 3, 2018, Knight Law attended the next status conference in which the Court. The Court ordered the parties to each select fifteen (15) cases for a total of thirty (30) cases to comprise the Initial Disposition Pool. Knight Law reviewed its cases and determined this case should be included in the IDP.

15. At the following status conference on November 7, 2018, the Court set trial dates for four IDP cases selected to go to trial, including this case. Knight Law began preparing discovery in this matter. We prepared the Rule 26 disclosures and notices of depositions for the Galpin Ford personnel, while Ford issued written discovery consisting special interrogatories (20), requests for admission (51), and requests for production of documents (50).

16. Knight Law attended the next status conference on December 12, 2018. Ford served objections to the aforementioned dealership depositions and stepped into the shoes of the dealer to confer with Kiesel Law regarding proof of service of those deposition notices. At the same time, Ford conferred with Knight Law demanding plaintiff deposition dates. On December 28, 2018, Plaintiff served his written discovery consisting of special interrogatories (24), requests for admissions (74) and requests for production of documents (110). The entirety of this discovery took less than four hours. On January 11, 2019, Plaintiff served responses to Ford's discovery.

17. On December 21, 2019, Ford filed a motion for judgment on the pleadings. Knight Law opposed the motion on January 18, 2019.

18. On January 23, 2019, the parties attended the next status conference where a settlement master was appointed and Ford's motions of judgment on the pleadings were continued.

19. On January 29, 2019, Ford served a Rule 68 Offer in this matter. Plaintiff rejected the offer. Plaintiff was reasonable in rejecting this offer, which was substantially lower that offers made to similarly situated clients. Plaintiff provides evidence of numerous settlements resolved by statutory offers of judgment in cases that were not subject to coordinated proceedings. These offers all involved vehicle with a purchase price of about $30,000, some higher some lower. The amount of these offers range from just over **5 times the "buyback" damages** of the respective vehicle to **over 8 times the "buyback" amount** in one case with most being between 5.5x to 6.5x the buyback calculation. Mr. Pedante's offer in this case was about 4 times the buyback for Mr. Pedante, which was not adequate given the repair history to his vehicle. The offer in this matter was not served to resolve the case, but rather to instill a significant financial risk to Plaintiff's recovery of his counsel's fees, costs and expenses. Plaintiff seeks recovery of work performed up to the date of the offer. A true and correct copy of each of these accepted statutory offers is

attached hereto as **Exhibit E.**

20. This Motion is timely, as stipulated by the parties and ordered by the Court. Plaintiff's counsel provided a written demand on January 2, 2020 offering discounts to the amount requested herein and leaving the offer open until January 10, 2020. On January 3, 2020, Plaintiff's counsel revised the demand offering further discounts.

**Ford is a Staunch Defendant That Litigates More Aggressively Than Most Other Vehicle Manufacturers While Deceiving Consumers More Than Most Manufacturers**

21. There are vehicle manufacturers with whom this firm has had exactly zero trials, zero discovery disputes, and zero fee motions. Ford Motor Company is not one of them. Since 2012, the firm has tried over numerous automotive cases. Of all vehicle manufacturers, Ford alone comprises 30% of all of the cases that go to trial with clients of the firm. One company makes up 1/3 of all of the trials in which Knight Law participates.

22. During the course of my years in practice, I have successfully pursued evidence during discovery that has proven damaging to the Ford. For example, Ford was compelled to produce 35,000 pages of training materials from its customer service call center. The production of these documents came only after Ford's attorneys claimed for years that no such training materials existed, and perjured themselves in declarations opposing motions to compel. It was uncovered only once I flew to Melbourne, Florida to depose one of Ford's customer service agents, during which he admitted that he had use of training materials. Based on that information, I pursued court orders to compel the materials. Ford's then-counsel of record from Bowman and Brooke, having denied the existence of training materials in countless declarations, flipped the opposition and claimed "it was a revelation" that the documents existed. Another example is Ford's attempt to conceal documents that it had produced in other class action litigation. Through continuing efforts, Ford was

ordered to produce approximately 12,000,000 pages in a class document dump related to defects in its diesel engine Super-Duty trucks. The firm's attorneys spent countless hours sifting through these pages. Once certain documents were identified and brought into evidence at trial, Ford amazingly claimed that the documents were not genuine and authentic. As a result, we sought Ford's admission of the genuineness of these documents, which Ford initially denied, but court orders eventually compelled their admission of authenticity. More recently, there was an ongoing feud in which Ford was ordered to produce customer service documents located on what is referred to as the "G: drive," but Ford ignored the order, caused a motion to compel compliance, filed motions for a protective order and a motion for reconsideration, and after almost two years of this battle finally produced the contents of that G: drive.

23. In my experience, Ford's approach to litigation is to fight at every turn, make unacceptably low offers that its attorneys know from their experience are not satisfactory, or make no offers at all, until the trial date for the case is near. Of course, this is not always the situation. Based on a sample of the cases filed against Ford in 2016 and 2017, 74% of those cases settled where trial was within six months or less, and 50% of those cases settled within just one month of trial.

24. While there are a variety of vehicles forming the basis of breach of warranty, CLRA, and fraud claims against Ford, the prosecution of claims by my firm in representation of consumers against Ford in large part involves two particular vehicles with defects. The first is Ford's Super Duty trucks that were sold with a defective diesel engine. The second involves the instant Ford Focus and Fiesta vehicles. As mentioned to some extent above, the firm's efforts have led to court orders compelling Ford to produce millions of internal documents relating to the defects in these vehicles, such as internal emails, presentations, studies, charts, tables, and graphs. The Super-Duty related documents are remarkably similar to the documents produced in this action. There is a patently obvious culture at Ford to

conceal the defective condition of its products and sell them to unwitting consumers. I am not aware of any other firm that has successfully pursued such discovery.

25. Such efforts have led to resounding settlements and victories in trial, though admittedly not every case has ended with a victory for the consumer. In June 2016, one of the firm's trial teams, including Bryan Altman and Roger Kirnos obtained a jury verdict in the amount of $1.68M against Ford in a case called *Margeson v. Ford* on a vehicle that was purchased for just over $50,000.00 because it was proven by clear and convincing evidence that Ford engaged in fraudulent conduct with malicious, oppressive and/or fraudulent intent. The judgment was later reduced by the trial court to approximately $950,000.00, comprised of compensatory damages, civil penalties and punitive damages based on a multiple of ten times the compensatory damages, and prejudgment interest. This was the first of a string of multi-million dollar jury awards against Ford in matters where there was no physical injury. Those verdicts include an award of $7,563,188.28 on a vehicle with a purchase price of about $65,000 in a case called *Brown v. Ford* in April 2018; $2,775,952.64 in a case called *Coon v. Ford* in July of 2018; and $8,244,269.82 in a case called *Nolan v. Ford* in December of 2018. It took six jury awards of punitive damages for Ford to recognize the value of these matters and final settle them at appropriate amounts.

26. Recently, one of Ford's attorneys, speaking on behalf of the entire army of lawyers, proclaimed that Ford was no longer willing to discuss settlement, did not want to engage in any further mediations and fully intended to bring every case to trial unless our clients accept Ford's existing offers. A true and correct copy of that letter is attached hereto as **Exhibit F**.

27. As a result of Ford's resolute defense, attorney fees are incurred during the prosecution of the lawsuit.

//

//

**The Attorneys' Hourly Rates Are Reasonable Pursuant to the Lodestar Method in Light of their Experience**

28. I attended law school at Pepperdine University and I was a judicial extern for Judge Gregory W. Alarcon of the Los Angeles County Superior Court in 2002. I have been admitted to the State Bar of California since April 29, 2003. Since my admission to the State Bar of California, I have specialized in consumer law.

29. I have extensive experience prosecuting and resolving consumer protection matters involving motor vehicle claims. For the past sixteen years, I have specialized in breach of warranty and fraud cases against automobile manufacturers and dealers. I was among the attorneys who represented the plaintiff in *Joyce v. Ford Motor Co.* (2011) 198 Cal.App.4th 1478, a leading case which extended the protections of the Lemon Law to trucks based on actual weight, not maximum capacity.

30. I originally worked for one of the largest consumer warranty law firms in the country, Consumer Legal Services. From April 2007 until April 2012, I was a founding partner in Romano, Stancroff & Mikhov PC. I was the Managing Partner of the firm until it was dissolved. In April 2012, I founded O'Connor & Mikhov, LLP. The firm was reformed in 2017 as Knight Law Group, LLP. I am the Managing Partner of the firm. My rate for this case is $550/hour. My billing entries are indicated by the initials "SBM" in the billing statement exhibited to this declaration.

31. Russell Higgins is an Associate with the firm and was admitted to practice in 2003. Mr. Higgins graduated from Pepperdine University School of Law and his hourly rate in this matter is $450/hour. Mr. Higgin's billing entries are indicated by the initials "RH" in the billing statement attached to this declaration.

32. Roger Kirnos is a Partner in my office. Mr. Kirnos graduated from Southwestern Law School in 2009 in the top 10% of his class with cum laude honors. Mr. Kirnos previously was an extern for former Chief Judge Alex Kozinksi of the

Ninth Circuit Court of Appeals and an extern for Judge F. Gary Klausner of the United States District Court, Central District. Mr. Kirnos has been trial counsel in over twenty-five lemon law cases that went to jury verdict, and approximately a dozen more that settled once trial began. The hourly rate for Mr. Kirnos is $425/hour, and his billing is indicated by the initials “RK” in the attached invoice.

33. Lauren Ungs is a Partner in my office. Ms. Ungs has been employed by the firm since July 12, 2012. Ms. Ungs has been a member of the California bar and actively practicing law for five years. She graduated magna cum laude from Southwestern Law School in 2010. She currently specializes in consumer law, lemon law, and contract law. Prior to joining my firm, she worked in the area of environmental law defense, in which her hourly rate at that time was $275/hour in 2011. Ms. Ungs’ current hourly rate is $425/hour. Ms. Ungs’ entries are indicated by the initials “LAU” in the billing statement exhibited to this declaration.

34. Amy Morse is a Partner in my office. Ms. Morse has been with my firm since her admission to the bar in 2013. Prior to her admission, she was a law clerk with my office since 2012. Ms. Morse graduated from Loyola Law School. Ms. Morse’s hourly rate is $350/hour. Ms. Morse’s billing entries are indicated by the initials “ALM” in the billing statement exhibited to this declaration.

35. Kristina Stephenson-Cheang graduated from Western State University College of Law and was admitted to practice in 2008. Ms. Stephenson-Cheang has been employed with the firm since 2013. Prior to her employment at Knight Law, she worked for a different lemon law firm gaining valuable experience in this area of law. Ms. Stephenson-Cheang’s hourly rate in this matter is $375/hour. Ms. Stephenson-Cheang’s billing entries are indicated by the initials “KSC” in the billing statement exhibited to this declaration.

36. Mitch Rosensweig was an associate at my firm. Mr. Rosensweig graduated cum laude from the University of Baltimore School of Law and was admitted to practice law in the state of Maryland in 2012. He was also admitted to

practice law in Washington, D.C. in 2014. Prior to his employment with KLG, Mr. Rosensweig practiced primarily in the area of medical malpractice. Mr. Rosensweig was admitted to the California Bar in 2018. His hourly rate in this matter is $325/hour. Mr. Rosensweig's billing entries are indicated by the initials "MER" in the billing statement exhibited to this declaration.

37. Maite Colón is an associate in my office. Mrs. Colón graduated from the University of Puerto Rico School of Law in 2011. Mrs. Colón was admitted to practice law in the state of Florida in 2012, as well as in the District of Columbia and the District Court of Puerto Rico. More recently, Mrs. Colón was admitted to practice law in California in 2018 and has since been admitted to all federal district courts in California. Mrs. Colón has been employed at my law firm since 2017. Prior to joining my firm, she worked at an international law firm gaining valuable experience in commercial transactional work and international law. Her hourly rate is $300/hour. Her billing entries are indicated by the initials "MC" in the billing statement exhibited to this declaration.

38. In considering the appropriate rates to charge in a matter such as this, I have reviewed a report entitled United States Consumer Law Attorney Fee Survey Report published in 2019 reflecting rates for 2017 to 2018. Based on the facts presented in the Report, I have determined that the rates charged by the attorneys in this case are commensurate with the hourly rates charged by other attorneys with comparable experience in consumer rights law. On Pages 1– 20, the purpose and methodology of the Report is described. On Pages 58 – 61, the Report sets forth the average hourly rates of consumer law attorneys in California based on experience. The information reflected in these pages supports the reasonableness of the attorney hourly rates charged in this case, which are equivalent, if not below, the average rate of attorneys who practice consumer law in California. On pages 510 – 515, the Report identifies cases in California that have used this Report as supporting evidence in fee awards. The entire report is 598 pages so I have attached only the

relevant pages dealing with California attorneys and California law. A true and correct copy of the most relevant pages from the Report is attached hereto as **Exhibit G**.

39. As always, Knight Law attempts to keep attorney fees and costs down while providing vigorous and effective representation.

40. All time billing entries were completed contemporaneously with each dated entry or near in time to the work performed. I have personally reviewed the billing entries to ensure that they appropriately reflect the time expended. I have removed or reduced any time I felt was excessive, duplicative, or otherwise unreasonable, or I have labeled the entry as a "no charge", as identified by the "N/C" in the invoice. My firm **does not bill clients** for paralegal or secretarial support staff time.

**Evidence to Support the Reasonableness of Hourly Rates for Attorneys**

41. On December 13, 2019, Judge Michelle Williams awarded $112,065 in fees and $15,854.52 in costs in the matter of *Lively v. FCA* (Los Angeles County Superior Court, Case No. BC690576). The court found our attorneys' rates were reasonable, including my rate at $550 and deducted approximately $2,700 for particular tasks resulting in an award of 98% of the requested lodestar fees. A true and correct copy of the minute order is attached hereto as **Exhibit H.**

42. On December 3, 2019, Judge Daniel A. Ottolia awarded $688,000.00 in the matter of *Nolan v. Ford Motor Company* (Riverside County Superior Court, Case No. RIC1307491) in a case that went to trial and resulted in an $8.2M verdict against Ford. A true and correct copy of the notice of ruling is attached hereto as **Exhibit I.**

43. On April 4, 2019, Judge Daniel A. Ottolia awarded over 91% of the lodestar fees requested by motion in the total amount of $731,885.25 in the matter of *Leonard Coon v. Ford Motor Company* (Riverside County Superior Court, Case No. MCC1300767). The case went to trial. The court found all of the hours worked

to be reasonable. A true and correct copy of the signed order is attached hereto as **Exhibit J**.

44. On January 9, 2019, Judge Tamara L. Mosbarger awarded $714,233.00 in attorneys' fees in the matter of *Brown vs. Ford Motor Company* (Butte County Superior Court, Case No. 160060). This award is over the amount of the original lodestar request and includes a 0.3 multiplier for risk and delay. *Brown* was a Super-Duty truck diesel engine case went to trial, and Greenberg Traurig represented Ford as lead trial counsel. A true and correct copy of the signed order is attached hereto as **Exhibit K**.

45. On December 12, 2018, Judge David M. Chapman awarded 100% of the lodestar fees requested by motion in the total amount of $115,718.75 in the matter of *Lawson v. FCA* (Riverside County Superior Court, Case No. PSC1604057). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion that were granted included my current rate of $550 per hour, the rates of $400 to $375 per hour for appearance attorneys Kirk Donnelly and Constance Morrison; $375 per hour for senior associates Christopher Swanson and Kristina Stephenson-Cheang; $350 per hour for partner Amy Morse; and $250 per hour for younger attorneys. The final order has yet to be signed but this is an accurate representation of the court's ruling **Exhibit L**.

46. On October 24, 2018, Judge Kelly L. Neel awarded 100% of requested lodestar attorney fees in the amount of $189,230.00 and full requested costs and expenses in the amount of $32,079.98 in the matter of *Furber vs. Ford Motor Company* (Humboldt County Superior Court, Case No. DR130223). The hourly rates awarded ranged from my rate of $550 for senior-level attorneys such as myself; $425 to $350 for partners Lauren Ungs and Amy Morse; $375 to $350 for "contract/of counsel" attorneys Diane Hernandez and Christopher Thoms; $375 to

$350 for senior associates Kristina Stephenson-Cheang and Christopher Swanson; and $225 for younger attorneys. *Furber* was a similar 6.0L case that settled before trial. A true and correct copy of the signed order is attached hereto as **Exhibit M**.

47. On August 8, 2018, Judge John P. Doyle awarded 100% of the lodestar fees requested by motion in the total amount of $72,478.75 in the matter of *Morgan v. FCA* (Los Angeles County Superior Court, Case No. BC625668). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion included my rate of $500 per hour, the rate of $400 per hour for Roger Kirnos and Sepehr Daghighian, $375 per hour for kirk Donnelly, $350 per hour for Amy Morse and Kristina Stephenson-Cheang, $250 per hour for Deepak Devabose and George Aguilar, and $225 per hour Jennifer Reiz and Thomas Burns. A true and correct copy of the signed order is attached hereto as **Exhibit N**.

48. On January 5, 2018, Judge Mel Red Recana granted full requested lodestar attorney fees in the amount of $529,885.50 and $96,840.81 in costs and expenses in the matter of *Margeson v. Ford Motor Company* (Los Angeles Superior Court, Case No. BC549430), which represented 100% of the fees and 98% of requested costs and expenses. Judge Recana believed the firm's prowess during the four-week trial that resulted in an unprecedented almost two million dollar jury verdict warranted a 1.8 multiplier of $423,908.40 to be added to the fee award. A true and correct copy of the signed order is attached hereto as **Exhibit O**.

49. On September 15, 2017, Judge Kevin A. Enright awarded $199,248.08 in attorney's fees after trial in the matter of *Julie Harris vs. Hyundai Motor America* (San Diego Superior Court, Case No. 37-2015-00019958-CU-BC-CTL). Plaintiff obtained a maximum civil penalty jury verdict at trial. The Court found the hourly rates of Plaintiff's attorneys reasonable, including trial counsel, Bryan Altman's, rate of $650 per hour and my hourly rate of $500 per hour. The court found the hourly rates of $250 to $400 per hour for litigation attorneys, such as Russell Higgins,

Lauren Ungs (trial counsel), Chris Swanson, Amy Morse and Michael Ouziel, were reasonable. The court also found that Mr. Altman's associates, Joel Elkins and Jordan Cohen, billed reasonable hourly rates of $450 and $300, respectively. The attorney fee award represents 85% of the lodestar fees requested by motion in the matter. A true and correct copy of the Court's minute order is attached hereto as **Exhibit P**.

50. On May 24, 2017, Judge Howard L. Halm awarded $168,000.00 in attorney's fees and $27,257.19 in costs and expenses in a jury trial that resulted in a maximum civil penalty award for our client in the matter of Gomez v. Kia Motors America, Inc. (Los Angeles County Superior Court, Case No. BC 574493). The attorney fee award represents 81% of the lodestar fees requested by motion in the matter. The court reduced the number of hours for various billing entries. The court also reduced Attorneys Bryan Altman and Joel Elkins from $650 per hour and $450 per hour down to $550 per hour and $375 per hour, respectively. The court found my hourly rate of $500 to be reasonable as well as those of other attorneys in my office ranging from $225 per hour for Daisy Ortiz to $350 per hour for Lauren Ungs and Kristina Stephenson-Cheang to $400 per hour for Russell Higgins. The court, on its own, raised the rate of trial attorney Roger Kirnos from the requested $375 per hour to $475 per hour. A true and correct copy of the signed order is attached hereto as **Exhibit Q**.

51. On March 17, 2017, in the matter of *Page v. Kia Motors America, Inc.* (San Diego Superior Court, Case No. 37-2014-00023991-CU-BC-CTL), Judge Eddie C. Sturgeon granted an award of attorney's fees, costs and expenses in the amount of $271,077.16 in a case in which our clients prevailed at trial. Judge Sturgeon ruled that the hourly rates were reasonable, including trial counsel Bryan Altman's rate of $650/hour and Roger Kirnos' rate of $375/hour. The court found my rate of $500/hour to be reasonable, as well as each of my associates and the associates of Mr. Altman who top out at $450/hour for Joel Elkins. The court's order

reflects a 15% across the board reduction on the overall attorney's fees amount but expressly determined the hourly rates were reasonable. The final order has yet to be signed but this is an accurate representation of the court's ruling **Exhibit R**.

52. I request a multiplier of 1.4 based on my contingent fee, the risk and delay in payment associated with a contingent fee scenario, and the result achieved. Such a multiplier is reasonable and towards the low end under the established law. (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 255.) Knight Law is compensated only if its clients prevail, unlike Defendant's attorneys who get paid monthly regardless of the outcome. Moreover, Defendant's attorneys typically have a continuing and ongoing relationship, whereas this firm will most likely not have the opportunity to represent Plaintiffs again.

53. It is not uncommon for attorney's fees and costs to exceed the client's damages. The Legislature acknowledged such a circumstance, which is the reason behind the fee shifting provision of the Song-Beverly Act. Otherwise, consumers would be left without opportunity for redress when their damages were not enough for an attorney to take the case on a contingent fee or hourly rate basis. Such a result occurs in large part because of dealerships' or vehicle manufacturers' refusal to adhere to statutory laws protecting consumers, resistance to honoring consumers' complaints, and generally playing games or simply abusing discovery procedures. For example, Ford could have avoided paying any attorney fees whatsoever had it admitted to its wrongdoing early on. Instead, Ford engaged in expensive litigation, and drove up fees and costs by holding out for nearly five years of litigation before ultimately settling at the beginning of trial for exponentially more than their sole 998 offer.

54. The Song-Beverly Act and automotive fraud cases are not simple actions. They require a specialized understanding of the full scope of consumer protection laws, which are highly nuanced. The cases also require knowledge of intricacies of automobiles and a lexicon associated with them, as well as a

knowledge concerning how to investigate these matters. They also require knowledge of auto manufacturers' and dealers' protocols for repairing vehicles.

55. This case was particularly complicated as it involved matters that are not typically part of "lemon law" litigation due to the coordination of this case with so many others. Ford produced millions of pages of documents from the *Vargas* class action and Plaintiff took over twenty fact witness depositions around the country and even in London. This type of litigation in individual actions that do not have fraud allegations does not usually involve such in-depth discovery, but Ford made matters difficult so far as refusing to agree to the simple authenticity of its own documents until this Court ordered an in-person meet and confer to resolve that issue.

56. Generally speaking, clients of the firm are benefitted by the experience of this firm insofar as work-product from other cases can be used in this case as well. Hence, a substantial amount of time was saved by not needing to draft each document from scratch and little time was needed to "get up to speed" in this specialized area of law. In effect, Ford also benefitted when it comes to a determination of reasonable attorney's fees to be paid because there are numerous cost-saving techniques employed by the firm.

57. Ford itself made this matter more complex by maintaining it had no liability and declining to submit reasonable offers to settle the matter early in the litigation.

///

///

///

///

///

///

///

58. As shown by the number of cases discussed herein and the results achieved on behalf of each client, the hourly rate is reasonable and the number of hours expended are reasonable. The fees incurred in this litigation are the direct result of Ford's aggressive litigation strategy.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 6th day of January 2019, at Los Angeles, California.

/s/Steve Mikhov
STEVE MIKHOV
Declarant

# EXHIBIT A

| Date | Attorney | Rate | Task | Time | FEE |
|---|---|---|---|---|---|
| | SBM | $550.00 | Initial communication with Client; Analyze Vehicle documentation | 1.0 | $550.00 |
| | SBM | $550.00 | Evaluation of Client's claims | 0.8 | $440.00 |
| 7/28/2017 | ALM | $350.00 | Communication with Client | 0.5 | $175.00 |
| 7/28/2017 | ALM | $350.00 | Draft Complaint | 0.7 | $245.00 |
| 7/31/2017 | SBM | $550.00 | Review and sign Complaint | 0.1 | $55.00 |
| 9/11/2017 | SBM | $550.00 | Review Ford's Answer to Complaint | 0.3 | $165.00 |
| 9/12/2017 | KSC | $375.00 | Review Ford's Notice of Removal, Declaration of S. Hugret in support of Removal, Declaration of T. Bush in support of Removal, Notice of Interested Parties | 0.5 | $187.50 |
| 9/12/2017 | KSC | $375.00 | Review Court Notice of Assignment to U.S. Judges | 0.1 | N/C |
| 9/13/2017 | KSC | $375.00 | Review Court Notice of CMC | 0.1 | N/C |
| 9/21/2017 | KSC | $375.00 | Review Court Order re Transfer Pursuant to General Order | 0.1 | N/C |
| 9/27/2017 | KSC | $375.00 | Review Court Order Setting Initial Status Conference; review New Case Order | 0.1 | N/C |
| 9/30/2017 | KSC | $375.00 | Communication with Client | 0.3 | $112.50 |
| 10/5/2017 | RH | $450.00 | Prepare for, correspond with, and telephonic meet and confer with Ford counsel re motion to remand | 0.3 | $135.00 |
| 10/6/2017 | JC | $225.00 | Draft Motion for Remand and declaration in support | 1.5 | N/C |
| 10/10/2017 | RH | $450.00 | Review and edit Motion for Remand | 0.5 | $225.00 |
| 10/10/2017 | RH | $450.00 | Review and sign Notice of Appearance | 0.1 | N/C |
| 10/17/2017 | KSC | $375.00 | Review Ford's Notice of Related Cases | 0.1 | $37.50 |
| 10/20/2017 | ALM | $350.00 | Communication with Client | 0.1 | $35.00 |
| 10/25/2017 | RH | $450.00 | Communication with Client | 0.4 | $180.00 |
| 10/31/2017 | RH | $450.00 | Communication with FMC counsel (John Thomas, Molly Mrowka, Tamara Bush, Spencer Hugret) re motions to remand, proposed ex parte to stay pending MDL, state coordination | 0.1 | $45.00 |
| 11/10/2017 | KSC | $375.00 | Review Court Notice of Stay | 0.1 | N/C |
| 11/14/2017 | RH | $450.00 | Legal research re MDL proceedings; conference call with Geileghem; confer with SBM and Mitch | 2.0 | $900.00 |
| 11/17/2017 | RH | $450.00 | Confer with CS re opposition to MDL | 0.6 | $270.00 |
| 12/7/2017 | ALM | $350.00 | Draft Notice of CMC | 0.1 | $35.00 |
| 1/3/2018 | ALM | $350.00 | Communication with Client | 0.3 | $105.00 |
| 1/22/2018 | RH | $450.00 | Communication with Payam re judicial assignments and scheduling | 0.2 | $90.00 |
| 2/2/2018 | RH | $450.00 | Review orders granting MDL and transferring cases | 0.1 | $45.00 |
| 2/27/2018 | RH | $450.00 | Confer with Neil Geileghem re basis of federal subject matter jurisdiction | 0.4 | $180.00 |

| | | | | | |
|---|---|---|---|---|---|
| 3/12/2018 | KSC | $375.00 | Review Court Order Setting Case Management Conference | 0.1 | N/C |
| 3/22/2018 | KSC | $375.00 | Communication with Client | 0.2 | $75.00 |
| 3/27/2018 | RH | $450.00 | Prepare portions of preliminary report | 0.5 | $225.00 |
| 3/27/2018 | RH | $450.00 | Confer with Jeff Koncius re issues for joint report for initial status conference | 0.4 | $180.00 |
| 3/28/2018 | RH | $450.00 | Confer with co-counsel re joint status report, and prepare draft report | 1.8 | $810.00 |
| 3/30/2018 | RH | $450.00 | Prepare for and attend conference call with plaintiff and defense liaison counsel | 0.7 | $315.00 |
| 4/16/2018 | RH | $450.00 | Review file and recent receipts of transfer notices | 2.0 | N/C |
| 4/16/2018 | RH | $450.00 | Confer with Kiesel Law re preparations for status conference; review proposed protective order and joint report, etc. | 1.5 | $675.00 |
| 4/18/2018 | RH | $450.00 | Prepare for and attend Status Conference | 5.0 | $2,250.00 |
| 4/18/2018 | RH | $450.00 | Review finalized CMOs to be submitted, and confer with liaison and Neil Gieleghem re protective order issues | 0.6 | $270.00 |
| 4/19/2018 | RH | $450.00 | Review communications between CLR and Ford re representations about value of cases | 0.5 | $225.00 |
| 4/20/2018 | RH | $450.00 | Review CLR communications with Ford re proposed ex parte concerning remand motion | 0.4 | $180.00 |
| 4/23/2018 | RH | $450.00 | Review communications between CLR and Ford re response in opposition to remand motion | 0.1 | $45.00 |
| 4/23/2018 | RH | $450.00 | Review communication from liaison counsel re initial status conference | 0.2 | $90.00 |
| 4/23/2018 | ALM | $350.00 | Communication with Client | 0.2 | $70.00 |
| 4/24/2018 | RH | $450.00 | Review communications between CLR and Ford re removal issues; communication with CLR re same | 0.8 | $360.00 |
| 4/27/2018 | RH | $450.00 | Review documents related to Australian proceeding | 0.4 | $180.00 |
| 5/3/2018 | RH | $450.00 | Communication with Liaison counsel re transcript of initial status conference, and arrangements for remand motions | 0.2 | $90.00 |
| 5/8/2018 | MER | $325.00 | Draft remand motion; legal research re diversity | 6.5 | $2,112.50 |
| 5/9/2018 | MER | $325.00 | Draft remand motion; legal research re amount in controversy | 5.8 | $1,885.00 |
| 5/11/2018 | MER | $325.00 | Emails with liaison counsel; draft stip re removal of Cousyn v. FMC | 0.8 | N/C |
| 5/16/2018 | MER | $325.00 | Emails with liaison counsel re meet and confer | 0.4 | $130.00 |
| 5/16/2018 | MER | $325.00 | Discuss MDL status with ALM | 0.2 | $65.00 |
| 5/16/2018 | MER | $325.00 | M&C call with Liaison Counsel re newly filed Cases | 1.0 | $325.00 |

| | | | | | |
|---|---|---|---|---|---|
| 5/18/2018 | MER | $325.00 | Meeting with RH re select remand motions | 0.4 | N/C |
| 5/22/2018 | MER | $325.00 | Research re Rule 11 standard | 3.8 | $1,235.00 |
| 5/23/2018 | MER | $325.00 | Meeting with Naji re remand motions | 0.5 | N/C |
| 5/23/2018 | MER | $325.00 | Emails with Liaison counsel re briefing schedule | 0.2 | $65.00 |
| 5/24/2018 | RH | $450.00 | Communication with liaison counsel re briefing and hearing schedules for motions to remand | 0.1 | $45.00 |
| 6/7/2018 | MER | $325.00 | Emails with liaison counsel | 0.4 | $130.00 |
| 6/12/2018 | MER | $325.00 | Prep for Status Conference; Review transcript of first status conference | 2.5 | $812.50 |
| 6/12/2018 | MER | $325.00 | Review and sign Notice of Appearance | 0.1 | N/C |
| 6/13/2018 | MER | $325.00 | Prepare for and attend Status Conference (travel included); meet with N. Ramirez | 3.8 | $1,235.00 |
| 6/13/2018 | MER | $325.00 | Results email re status conference | 0.3 | $97.50 |
| 6/13/2018 | ALM | $350.00 | Meeting with Mitch: discuss results of status conference | 0.3 | N/C |
| 6/18/2018 | ALM | $350.00 | Read and review email from liaison counsel re status of MDL | 0.2 | $70.00 |
| 6/21/2018 | MER | $325.00 | Research re remand motions | 3.2 | $1,040.00 |
| 6/21/2018 | MER | $325.00 | Draft review and revise remand motion | 8.5 | $2,762.50 |
| 6/22/2018 | MER | $325.00 | Draft review and revise remand motions | 7.8 | $2,535.00 |
| 6/22/2018 | MER | $325.00 | Emails with liaison counsel | 0.3 | N/C |
| 7/2/2018 | RH | $450.00 | Review court order re filing of remand motions in individual cases in MDL | 0.1 | $45.00 |
| 7/5/2018 | ALM | $350.00 | Communication with Client | 0.2 | $70.00 |
| 7/9/2018 | MER | $325.00 | Review and revise draft joint status report; Email with liaison counsel | 0.6 | $195.00 |
| 7/18/2018 | MER | $325.00 | Attend status conference; travel included | 3.0 | $975.00 |
| 7/18/2018 | MER | $325.00 | Results email re status conference | 0.3 | $97.50 |
| 7/25/2018 | RH | $450.00 | Legal research and communication with NG re arguments in opposition to remand and confer with co-counsel re same | 0.7 | $315.00 |
| 7/27/2018 | RH | $450.00 | Review opposition to motion for remand; confer with MER | 0.8 | $360.00 |
| 7/27/2018 | MER | $325.00 | Review FMC opps to our remand motions and CLR remand motions | 2.8 | $910.00 |
| 8/2/2018 | MER | $325.00 | Research and draft reply briefs re remand motion | 4.8 | $1,560.00 |
| 8/3/2018 | MER | $325.00 | Draft and revise reply briefs re remand motions | 6.2 | $2,015.00 |
| 8/8/2018 | MER | $325.00 | Email with liaison counsel and meeting with attorneys re pausing removals | 0.4 | $130.00 |
| 8/14/2018 | MER | $325.00 | Review stipulation to pause removals; discuss with RH; email with liaison counsel | 0.6 | $195.00 |
| 8/20/2018 | MER | $325.00 | Discuss remand issues with CLR counsel | 0.4 | $130.00 |

| | | | | | |
|---|---|---|---|---|---|
| 8/21/2018 | MER | $325.00 | Review draft joint report and discuss with co-counsel | 0.6 | $195.00 |
| 8/21/2018 | RH | $450.00 | Confer with liaison and CLR re Ford supplementary authority re remand issues, legal research | 0.9 | $405.00 |
| 8/21/2018 | RH | $450.00 | Confer with liaison and CLR re joint status report, discovery issues; review file re prior orders and status of discovery in related proceeding | 1.4 | $630.00 |
| 8/22/2018 | MER | $325.00 | Review Ford's supplement to Opp for Remand; Research re new case law cited by Ford and draft memo in response | 2.6 | $845.00 |
| 8/22/2018 | RH | $450.00 | Prepare joint status report; Confer with liaison and CLR re joint status report | 2.0 | $900.00 |
| 8/22/2018 | RH | $450.00 | Review and evaluate statement of agreed facts and omissions in ACCC | 1.5 | $675.00 |
| 8/27/2018 | RH | $450.00 | Prepare for status conference | 2.0 | $900.00 |
| 8/28/2018 | RH | $450.00 | Conferences with liaison counsel and CLR re preparation for status conference; legal research re effect of parallel proceedings | 6.5 | $2,925.00 |
| 8/28/2018 | MER | $325.00 | Prepare to argue remand motions | 2.5 | $812.50 |
| 8/28/2018 | MER | $325.00 | Conference calls with plaintiffs' counsels | 1.2 | $390.00 |
| 8/29/2018 | RH | $450.00 | Prepare for, travel to and attend status conference | 5.5 | $2,475.00 |
| 8/29/2018 | MER | $325.00 | Status Conference and Remand Hearing; travel time; pre hearing meetings with counsel | 5.2 | $1,690.00 |
| 8/29/2018 | MER | $325.00 | Results email re remand hearing | 0.4 | $130.00 |
| 8/30/2018 | MC | $300.00 | Meeting with RH: discuss MDL issues, status and strategy | 0.5 | N/C |
| 8/31/2018 | RH | $450.00 | Prepare for and attend meetings with attorneys re document repository, status of related actions | 8.0 | $3,600.00 |
| 9/7/2018 | RH | $450.00 | Review and revise proposed coordination order, communication with plaintiffs' liaison counsel, staff counsel, and CLR counsel re same | 0.9 | $405.00 |
| 9/7/2018 | MER | $325.00 | Discuss coordination order with co-counsel | 0.6 | N/C |
| 9/17/2018 | RH | $450.00 | Revise draft deposition and scheduling orders | 1.0 | $450.00 |
| 9/18/2018 | ALM | $350.00 | Read and review Defendant's PO re scheduling/fact witness depositions in preparation for telephone conference with liaison counsel | 0.4 | $140.00 |
| 9/18/2018 | ALM | $350.00 | Conference call re Defendant's Pos | 0.9 | N/C |
| 9/19/2018 | RH | $450.00 | Review Ford's proposed changes to joint report, draft deposition order, and draft scheduling order; confer with liaison counsel re same | 0.3 | $135.00 |

| | | | | | |
|---|---|---|---|---|---|
| 9/20/2018 | ALM | $350.00 | Meeting with liaison counsel; discuss issue re parties' joint report | 0.4 | $140.00 |
| 9/26/2018 | RH | $450.00 | Prepare for and attend conference call with plaintiffs' counsel re proposed scheduling and deposition orders | 0.4 | $180.00 |
| 10/2/2018 | RH | $450.00 | Prepare for Status Conference | 0.5 | $225.00 |
| 10/3/2018 | RH | $450.00 | Travel to and from, prepare for and attend status conference | 5.0 | $2,250.00 |
| 10/5/2018 | RH | $450.00 | Draft memorandum re 10/3 status conference, case selection for initial disposition pool and trial | 0.2 | $90.00 |
| 10/8/2018 | RH | $450.00 | Conference call with plaintiffs' counsel re case selection method; memo to file; prepare materials to review for case selection | 0.9 | $405.00 |
| 10/8/2018 | RH | $450.00 | Conference call and emails with Neil Geileghem re Daubert issues, case selection and status of Michigan actions | 0.6 | $270.00 |
| 10/14/2018 | RH | $450.00 | Review and select cases for IDP and trial | 3.5 | $1,575.00 |
| 10/15/2018 | RH | $450.00 | Review files and client statements, and select final cases for IDP and trial; prepare materials to review for case selection | 0.6 | $270.00 |
| 10/15/2018 | ALM | $350.00 | Meeting with Attorneys: discuss selected cases to participate in IDP/proceed to trial | 0.6 | N/C |
| 10/17/2018 | ALM | $350.00 | Meeting with Russ: discuss issue re setting trials | 0.2 | N/C |
| 11/1/2018 | RH | $450.00 | Confer with KSC re IDP initial disclosure deadlines, and further discovery | 0.1 | N/C |
| 11/6/2018 | RH | $450.00 | Conference call with liaison and co-counsel re upcoming status conference; review IDP and scheduling order and memo to file re same; email liaison re IDP cases and schedule | 1.0 | $450.00 |
| 11/7/2018 | RH | $450.00 | Travel to and from, prepare for and attend status conference hearing | 4.5 | $2,025.00 |
| 11/7/2018 | ALM | $350.00 | Read and review summary re results of status conference hearing | 0.2 | $70.00 |
| 11/15/2018 | MC | $300.00 | Draft Ptf's Rule 26 Initial Disclosures; review file | 1.3 | $390.00 |
| 11/16/2018 | RH | $450.00 | Review Ford's Initial Disclosures | 0.7 | $315.00 |
| 11/20/2018 | MER | $325.00 | Telephonic meeting with liaison counsel | 0.5 | $162.50 |
| 11/21/2018 | MER | $325.00 | Meeting with SBM and experts | 0.8 | $260.00 |
| 11/21/2018 | KSC | $375.00 | Review NOD of Plaintiff | 0.1 | $37.50 |
| 11/26/2018 | MER | $325.00 | Emails with liaison counsel and other plaintiffs' counsels re dealer defendants | 0.6 | $195.00 |
| 11/28/2018 | MER | $325.00 | Prepare depo notices | 0.8 | $260.00 |
| 11/29/2018 | MER | $325.00 | Review file for the purpose of drafting NODs of dealership personnel | 0.3 | $97.50 |

| | | | | | |
|---|---|---|---|---|---|
| 11/29/2018 | MER | $325.00 | Draft NOD and Depo Subp. of Galpin Ford's PMQ and Personnel (4 total) | 0.5 | $162.50 |
| 11/30/2018 | MER | $325.00 | Draft template discovery requests | 6.0 | $1,950.00 |
| 12/5/2018 | KSC | $375.00 | Review Deft's Special ROGs to draft response | 0.2 | $75.00 |
| 12/5/2018 | KSC | $375.00 | Review Deft's RFA to draft response | 0.3 | $112.50 |
| 12/5/2018 | KSC | $375.00 | Review Deft's RFP to draft response | 0.3 | $112.50 |
| 12/5/2018 | KSC | $375.00 | Prepare discovery requests to send to Plaintiff in preparation of drafting responses; Communication with Client | 0.7 | $262.50 |
| 12/7/2018 | MER | $325.00 | Draft NOD of Ford's PMK and cover letter | 0.2 | $65.00 |
| 12/12/2018 | RH | $450.00 | Prepare for, travel to and attend status conference hearing; memoranda to file | 3.5 | $1,575.00 |
| 12/12/2018 | RH | $450.00 | Review correspondence from Defense re Plaintiffs' NODs and depo subp. of defendant's dealership personnel | 0.1 | $45.00 |
| 12/13/2018 | RH | $450.00 | Review Deft's Objections to Ptf's NOD of Galpin Ford's PMQ and Personnel (4 Objections) | 0.1 | $45.00 |
| 12/13/2018 | KSC | $375.00 | Emails with opposing counsel re extension of time for Ptfs to respond to Deft's discovery | 0.1 | $37.50 |
| 12/18/2018 | RH | $450.00 | Confer with co-counsel re recent Ford recall and potential spoliation, sub rosa VIs, and prevention of harm | 0.7 | $315.00 |
| 12/26/2018 | KSC | $375.00 | Review FMC letter demanding pltf availability for upcoming deposition dates | 0.1 | $37.50 |
| 12/27/2018 | KSC | $375.00 | Communication with Client | 0.2 | $75.00 |
| 12/27/2018 | KSC | $375.00 | Prepare letter to deft with proposed deposition availability | 0.2 | $75.00 |
| 12/28/2018 | KSC | $375.00 | Review file in preparation of drafting Plaintiff's discovery requests | 0.5 | $187.50 |
| 12/28/2018 | KSC | $375.00 | Draft Ptf's Special ROGs to Ford | 0.5 | $187.50 |
| 12/28/2018 | KSC | $375.00 | Draft Ptf's RFA to Ford | 1.5 | $562.50 |
| 12/28/2018 | KSC | $375.00 | Draft Ptf's RFP to Ford | 1.8 | $675.00 |
| 12/28/2018 | KSC | $375.00 | Review and revise letter to Defense enclosing Ptf's discovery requests | 0.1 | $37.50 |
| 1/4/2019 | KSC | $375.00 | Review letter via email from Spencer H. confirming pltf deposition | 0.1 | $37.50 |
| 1/7/2019 | KSC | $375.00 | Communication with Client | 0.1 | $37.50 |
| 1/7/2019 | KSC | $375.00 | Review Amended NOD of Plaintiff | 0.1 | $37.50 |
| 1/9/2019 | RH | $450.00 | Review proposed fed/state coordination order; meet & confer letter from Ford counsel regarding purported "oppression" from routine discovery requests; and confer with co-counsel re response | 0.5 | $225.00 |
| 1/10/2019 | KSC | $375.00 | Review letter from Defense re Pltf's NOD of Ford's PMK | 0.1 | $37.50 |

| | | | | | |
|---|---|---|---|---|---|
| 1/10/2019 | KSC | $375.00 | Review responses and documents provided by Plaintiff to discovery requests to draft responses; Communication with Client | 1.2 | $450.00 |
| 1/10/2019 | KSC | $375.00 | Draft Ptf's response to Special ROGs | 1.0 | $375.00 |
| 1/11/2019 | KSC | $375.00 | Draft Ptf's response to RFA | 1.7 | $637.50 |
| 1/11/2019 | KSC | $375.00 | Draft Ptf's response to RFP | 1.6 | $600.00 |
| 1/11/2019 | KSC | $375.00 | Prepare Ptf's Document Production | 0.5 | $187.50 |
| 1/11/2019 | KSC | $375.00 | Review and revise letter to Defense enclosing Ptf's discovery responses | 0.1 | $37.50 |
| 1/11/2019 | KSC | $375.00 | Review Ford's Objection to NOD of PMK | 0.2 | $75.00 |
| 1/15/2019 | RH | $450.00 | Confer with co-counsel and liaison counsel and review proposed deposition coordination issues | 0.4 | $180.00 |
| 1/15/2019 | RH | $450.00 | Meeting with Maite C., discuss Ford's MJOP | 0.1 | $45.00 |
| 1/15/2019 | MC | $300.00 | Work on draft for opposition to MJOP | 3.0 | $900.00 |
| 1/16/2019 | MC | $300.00 | Draft Opposition to Ford's MJOP | 10.0 | $3,000.00 |
| 1/17/2019 | MER | $325.00 | Draft and revise opps to MJOP; telephone conferences with co-counsel | 9.5 | $3,087.50 |
| 1/17/2019 | KSC | $375.00 | Review letter from Defense re Galpin Ford dealer depositions | 0.1 | $37.50 |
| 1/17/2019 | KSC | $375.00 | Communication with Client | 0.1 | $37.50 |
| 1/17/2019 | KSC | $375.00 | Draft Objections to NOD of Plaintiff | 0.2 | $75.00 |
| 1/17/2019 | MC | $300.00 | Continue drafting MJOP Opposition | 6.0 | $1,800.00 |
| 1/18/2019 | RH | $450.00 | Prepare opposition to Ford's motion for judgment on pleadings; legal research; review of 30-pages of incorporated arguments from CLR motion | 8.5 | $3,825.00 |
| 1/18/2019 | RH | $450.00 | Confer with co-counsel Neil Geileghem and liaison counsel re settlement offers and inappropriate questions about settlement related matters during depositions of parties | 0.2 | $90.00 |
| 1/18/2019 | MER | $325.00 | Draft and revise opps to MJOP | 10.8 | $3,510.00 |
| 1/23/2019 | RH | $450.00 | Travel to and attend status conference; meetings with lead counsel, co-counsel, proposed trial counsel, re preparation of discovery and files for trials | 4.5 | $2,025.00 |
| 1/28/2019 | KSC | $375.00 | Email exchange with opposing counsel confirming extension for Deft to respond to Pltf's discovery requests | 0.1 | $37.50 |
| 1/29/2019 | LAU | $425.00 | Preparation for meeting regarding discovery strategy | 1.5 | $637.50 |
| 1/29/2019 | LAU | $425.00 | Meeting re discovery and depositions | 3.2 | $1,360.00 |
| 1/29/2019 | LAU | $425.00 | Database document review | 2.0 | $850.00 |
| 1/29/2019 | RH | $450.00 | Confer with Neil and Michael re Matthew Fyie declarations claiming confidentiality of records for sealing | 0.8 | $360.00 |

| | | | | | |
|---|---|---|---|---|---|
| 1/30/2019 | KSC | $375.00 | Draft Objections to Amended NOD of Plaintiff; communication with client | 0.3 | $112.50 |
| 1/31/2019 | SBM | $550.00 | Review and analyze Ford's Rule 68 Offer of Judgment | 0.2 | N/C |
| 2/1/2019 | SBM | $550.00 | Communication with Client | 0.3 | N/C |
| 1/4/2020 | RK | $425.00 | Review file; Begin Drafting Motion for Attorney's Fees, Costs and Expenses | 5.5 | $2,337.50 |
| 1/5/2020 | RK | $425.00 | Draft Declarations of Steve Mikhov and Paul Kiesel in Support of Motion for Attorney's Fees | 2.2 | $935.00 |
| 1/6/2020 | RK | $425.00 | Review and finalize Motion for Attorney's Fees | 6.3 | $2,677.50 |
| TBD | RK | $425.00 | Review and analyze Defendant's Opposition to Motion for Attorney's Fees, Costs and Expenses and supporting documents (Anticipated) | 2.0 | $850.00 |
| TBD | RK | $425.00 | Draft Reply to Opposition to Motion for Attorney's Fees, Costs and Expenses (Anticipated) | 8.0 | $3,400.00 |
| TBD | RK | $425.00 | Prepare for and appear at hearing on Motion for Attorney's Fees, Costs and Expenses (Travel Included) (Anticipated) | 3.5 | $1,487.50 |
| | | | Total Attorney Fees | 267.9 | $102,155.00 |

**Billing Rate Summary**

| Initials | Avg/Hr | Attorney/Staff | Hours | Amount |
|---|---|---|---|---|
| ALM | $350.00 | Amy Morse | 3.3 | $1,155.00 |
| KSC | $375.00 | Kristina Stephenson-Cheang | 15.2 | $5,700.00 |
| LAU | $425.00 | Lauren Ungs | 6.7 | $2,847.50 |
| MC | $300.00 | Maite Colon | 20.3 | $6,090.00 |
| MER | $325.00 | Mitchell Rosensweig | 106.0 | $34,450.00 |
| RH | $450.00 | Russell Higgins | 86.7 | $39,015.00 |
| RK | $425.00 | Roger Kirnos | 27.5 | $11,687.50 |
| SBM | $550.00 | Steve Mikhov | 2.2 | $1,210.00 |

# EXHIBIT M

**KNIGHT LAW GROUP, LLP**
Steve Mikhov (SBN 224676)
*stevem@knightlaw.com*
Roger Kirnos (SBN 283163)
*rogerk@knightlaw.com*
10250 Constellation Blvd., Suite 2500
Los Angeles, California 90067
Telephone: (310) 552-2250
Fax: (310) 552-7973

**KIESEL LAW LLP**
Paul R. Kiesel (SBN 119854)
8648 Wilshire Boulevard
Beverly Hills, CA 90211-2910
Telephone: 310-854-4444
Fax: 310-854-0812
Email: kiesel@kiesel.law

Attorneys for Plaintiff,
MARK PEDANTE

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **IN RE: FORD MOTOR CO. DPS6 POWERSHIFT TRANSMISSION PRODUCTS LIABILITY LITIGATION** | Case No.: 2:18-ML-02814-AB-FFM |
| **THIS DOCUMENT RELATES ONLY TO:**<br>*Pedante, Mark v. Ford Motor Company, et. Al., 2:17-cv-06656-AB-FFM* | **DECLARATION OF STEVE MIKHOV IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS, AND EXPENSES**<br>[Filed Concurrently with Notice of Motion and Motion; Memorandum of Points and Authorities in Support Thereof; Declaration of Paul R. Kiesel in Support Thereof]<br>Date: December 4, 2020<br>Time: 10:00 a.m.<br>Courtroom 7B<br>Judge: Hon. Andre Birotte, Jr. |

# DECLARATION OF STEVE MIKHOV

I, Steve Mikhov, declare as follows:

1. I am an attorney at law duly licensed to practice before the courts of the State of California and the United States District Court, Central District of California and attorney of record for Plaintiff Sharon Fort ("Fort") and Plaintiff Robert Bagwell ("Plaintiff") (together referred to as "Plaintiffs") in the instant action. I am the Managing Partner of Knight Law Group, LLP ("Knight Law"). I have personal knowledge of the following facts and, if sworn as a witness, I could and would testify to them competently. I make this declaration in support of Plaintiffs' Consolidated Motion for Attorney's Fees, Costs and Expenses ("Motion").

2. For the reasons set forth herein and, in the Motion, Fort requests $69,902.79 in attorney's fees for the legal services provided by Knight Law Group, LLP ("Knight Law"). This figure is based upon the work performed in his individual case and well as a pro-rata portion of the work performed in his case as part of the Initial Disposition Pool cases in this MDL.

3. Bagwell requests $77,730.29 in attorney's fees for the legal services provided by Knight Law. This figure is based upon the work performed in his individual case and well as a pro-rata portion of the work performed in his case as part of the Initial Disposition Pool cases in this MDL

4. The total in lodestar fees requested by Plaintiffs' attorneys in this action, including the billing submitted by the Altman Law Group and Boucher, LLP, is $199,081.34. Plaintiffs' attorneys request a reasonable "lodestar" enhancement of 0.5 for the attorney fees attributable to Knight Law and ALG in the amount of $94,296.05, for a total attorney's fee award of $293.377.39. A true and correct copy of my firm's billing is attached hereto as **Exhibit A**. **Exhibit A-1** indicates fees incurred by Bagwell. **Exhibit A-2** indicates fees incurred by Ford. **Exhibit A-3** indicates billing for work incurred in furtherance of the IDP cases, which should be split by a

denominator of 15. **Exhibit A-4** indicates work that should be split by a denominator of 13.

5. Both matters resolved by Plaintiffs' acceptance of their respective Rule 68 Offers. A true and correct copy of the Rule 68 Offer that Fort accepted is attached hereto as **Exhibit B**. A true and correct copy of the Rule 68 Offer that Bagwell accepted is attached hereto as **Exhibit C**. According to Knight Law's calculations, the settlements result in damages exceeding four (4) times their actual damages, or a ratio of 4:1.

**<u>Fort Before the MDL</u>**

6. Fort purchased her 2012 Ford Focus on August 30, 2012 for $36,675.06. The vehicle was distributed by Ford Motor Company ("Defendant" or "Ford"), which provided an express written warranty. A true and correct copy of the Retail Installment Sales Contract is attached hereto as **Exhibit D**.

7. Fort had four (4) transmission repair presentations within the first 48,067 miles. Fort called Ford's customer service and requested a repurchase of her defective vehicle but Ford denied her request.

8. Fort contacted Knight Law and told the firm about the problems with the vehicle and the way Ford treated her. After reviewing the repair history and discussions with her, Knight Law agreed to represent her and bear the risk of litigating the case on a fully contingent basis. Because Knight Law's compensation was purely contingent, the firm faced a genuine risk of not being paid for its services for years, if at all, while advancing thousands of dollars in costs and expenses on Fort's behalf. In taking on this duty, the firm was facing a litigation behemoth—Ford is a multi-billion-dollar company, with a virtually infinite litigation war-chest, that wages a battle of attrition that most firms cannot withstand.

9. Fort filed her complaint in the Los Angeles County Superior Court on August 3, 2017. On September 6, 2017, Ford answered the complaint, denying all liability and asserting forty-two (42) affirmative defenses.

10. On September 7, 2017, Fort propounded written discovery consisting of Form Interrogatories, Special Interrogatories, Requests for Production, and Requests for Admission.

11. On September 8, 2017, Ford filed a notice of removal, and Fort's matter was assigned to the Honorable Beverly Reid O'Connell. The matter was transferred to this Court on September 25, 2017. It was then transferred into the MDL on February 6, 2018.

12. Fort sought to remand the case back to the Superior Court of California where litigation had begun. Accordingly, Fort filed a Motion for Remand on or about October 10, 2017. The motion was not heard.

**<u>Bagwell before the MDL</u>**

13. Bagwell purchased his 2012 Ford Focus on January 11, 2013 for $37,733.36. The vehicle was also distributed by Ford Motor Company ("Defendant" or "Ford"), which provided an express written warranty. A true and correct copy of the Retail Installment Sales Contract is attached hereto as **Exhibit E**.

14. Bagwell got 35,000 miles of driving before his transmission needed repairs for the first of a total of nine (9) times over the next 65,000 miles. Bagwell contacted Ford to request a repurchase. About one week later, Ford denied his request. Like Fort, Bagwell also contacted Knight Law to ask for help. After listening to his issues and review of his repair history, Knight agreed to take his case on a contingency.

15. Bagwell filed his lawsuit on August 3, 2017 in the Los Angeles Superior Court. Ford answered on September 7, 2016 denying liability and asserting forty-three (43) affirmative defenses. Ford removed the matter the next day, and it was assigned to the Honorable S. James Otero. The matter was transferred to this Court on September 21, 2017.

16. Bagwell filed a Motion for Remand on or about October 10, 2017. The motion was not heard before his case was transferred to this MDL on February 6,

2018.

**<u>Work Performed For Plaintiffs' IDP Cases as Part of the MDL</u>**

17. This MDL was created by court order at the request of Ford on February 6, 2018. My firm began in earnest preparing for what we anticipated would be a huge battle with Ford. Some initial preparation and investigation was done regarding the database of documents that were produced in the *Vargas* class-action and we attended status conferences.

18. In light of the numerous motions for remand filed by various plaintiffs and plaintiff firms, on April 18, 2018, this Court ordered a stay of proceedings until "test" motions for remands were filed and heard. Knight Law prepared three test motions, which were denied. Those motions are not sought as part of this fee request.

19. In October 2018, we began reviewing and analyzing client files to identify IDP cases. On November 2, 2018, this Court issued an Order designating fifteen (15) cases filed by Knight Law clients as IDP cases.

20. On or about November 15, 2018, the firm drafted separate Rule 26 initial disclosures for both Plaintiffs. Leading up to these disclosures, we worked on preparing a template that could be used and adjusted for case-specific facts, issues and other matters as needed, which substantially streamlined the process and results in fewer attorney fees incurred.

21. On November 20, 2018, Ford propounded its first set of voluminous written discovery to Bagwell and Fort, each containing 50 Requests for Production, 51 Requests for Admission, and 20 Special Interrogatories. The firm's associate attorney dutifully analyzed each request, secured both Plaintiffs' input, and, on or about January 11, 2019 drafted responses to the discovery.

22. On or about December 28, 2018, written discovery was drafted and served on Defendants on behalf of both Plaintiffs, consisting of 74 requests for admissions, 110 requests for production of documents and 24 special interrogatories. Plaintiffs benefitted from Knight Law's experience in litigating against Ford and the

efficiencies created by representing multiple clients as can be seen by the nominal time billed for drafting the entirety of this discovery. We were able to use files as templates to conserve time and litigate efficiently but still ensured that each document was revised for case specific issues and proofed to avoid errors. Written discovery of this magnitude, drafted from scratch and without the benefit of the firm's attorneys' knowledge, experience and specialized expertise, would have taken multitudes of the time expediently managed here.

23. In January 2019, my firm initiated its efforts towards obtaining oral depositions of percipient witnesses and 30(b)(6) witnesses. We began preparing the notices of depositions and reviewing discovery. We also provided input for joint status reports.

24. In February and March of 2019, the parties met and conferred about plaintiff depositions vehicle inspections for each of the IDP cases. Fort was deposed on February 6, 2019. Her vehicle was inspected by Ford on March 20, 2019. Bagwell was deposed on March 12, 2019 and, on March 18, 2019, Ford inspected Bagwell's vehicle.

25. On February 13, 2019, Knight Law reviewed and analyzed Ford's responses to Bagwell's discovery and Ford's document production. The responses contained meritless boilerplate objections and/or incomplete and evasive responses to the discovery requests. Likewise, Ford failed to produce responsive documents to many of Bagwell's and Fort's requests despite their relevance to this case. Plaintiffs initiated meet and confer efforts. Defendant did not supplement the discovery until May 28, 2019.

26. On February 25, 2019, Ford continued its barrage of discovery by propounding Request for Production of Documents, Set Two which Bagwell and Fort responded to on or about March 27, 2019.

27. On February 27, 2019, Ford propounded Request for Production of Documents, Set Three. Plaintiff responded on or about March 27, 2019.

28. We also began conferring with Ford and strategizing with other attorneys regarding depositions of Ford employees. There were several discussions and meetings involved as we prepared for a massive undertaking of depositions of approximately thirty (30) witnesses taking place in Michigan and other cities. To prepare for these depositions, associates at my firm engaged in a massive document review and organization of millions of pages of reports, charts, emails, PowerPoints, spreadsheets, prior depositions, etc. In light of the mountain of work, the number of clients all being served concurrently and the varying issues that were arising in the discovery, the firm's attorneys attended meetings to ensure a cohesive and organized litigation strategy. These meetings also involved preparation for the significant undertaking of numerous depositions that were scheduled to begin imminently.

29. On April 8, 2019 Ford determined it needed even more written discovery when it propounded Request for Production of Documents, Set Three which Bagwell responded to on or about May 6, 2019.

30. In early April 2019 through July, we prepared for, assisted with, attended and/or conducted depositions of several Ford engineers and executives in Dearborn, Michigan, including Chris Kwasniewicz, Shawn McClain, Greg Overla, Tom Hamm, Greg Goodall, Kara Kennedy, Roger Pline, Gary Nichols, Jeremiah Cannon, Piero Aversa, Joseph Borneo, Jacob Doss, William Draper, Matthew Fyie, Mark Tuneff, Michael Khomutin, Charles Gray, Brian Wolfe, and Elizabeth Foley. These four months were intensely focused on preparing for and conducting these oral depositions. In addition, we assisted with efforts to obtain and prepare for the depositions of Alan Draper and Mark Fields.

31. These depositions resulted in disputes with Ford, including objections that Ford asserted refusing to produce a competent 30(b)(6) witness on certain categories as well as an *ex parte* application seeking a protective order against further depositions. (Dkt. No. 307.) On June 6, 2019, my office attended the hearing on Plaintiffs' motion to compel production of unredacted documents, which was granted

in part. (Dkt. No. 337.)

32. During this time period we attended status conferences dealing with IDP issues and well as conferred with Ford regarding joint reports and various attempts at stipulations. We also had meetings and conference calls to coordinate strategies and ideas in furtherance of developing the cases.

33. On May 24, 2019 and June 19, 2019, Bagwell attempted to conduct depositions of Ford's 30(b)(6) witness/Person Most Knowledgeable about Bagwell's repurchase request and Ford's policies in that regard. Both times, we took statements of non-appearance. Similarly, Fort attempted to take this case-specific deposition on June 21, 2019 and August 22, 2019, and both times, the deponent refused to appear. Mr. Doss was finally deposed on August 29, 2019.

34. Beginning in June 2019 and going into September, we endeavored to streamline the substantial number of deposition transcripts we obtained by having associates at the firm summarize the depositions for ease of reference and to avoid duplicative transcript review. We also conferred with Getrag's attorney regarding Getrag's involvement and the potential for a declaration to authenticate documents.

35. Throughout September, we also conferred with Ford and internally about stipulations for the authenticity of documents and applicable hearsay exceptions. We appeared at a status conference on September 26, 2019, which time was split with *Pedante*.

36. On October 1, 2019, we met with Ford's lead trial counsel, Frank Kelly, and spent a day reviewing documents to identify those which Ford would agree are business records. Ford agreed to numerous documents but, to this day, has refused to sign a stipulation memorializing that agreement.

37. The next two months were focused almost exclusively on preparation for trials in *Pedante* and *Quintero*. There is a two-month gap in the billing with virtually no time incurred to the IDP cases.

38. On February 14, 2020, Ford filed a Motion to Compel Arbitration in

Fort's case after her case had been litigated in this MDL for two years feigning ignorance of its ability to arbitrate and even though Ford was not a beneficiary of the sales contract's arbitration provision, either expressly or impliedly. Plaintiff opposed this baseless motion on February 21, 2020, which was ultimately denied

39. In March 2020, the MDL litigation efforts were reinitiated. As a result of the global pandemic and resulting shut down of business and courts, Plaintiffs' counsel utilized this time to create and implement new strategies and methods of organization. Plaintiffs' attorneys met frequently over the next few months to assign tasks, to provide status reports on pending tasks, to review the final work product, to plan for and organize the evidence and trial documents in anticipation of the next trial, including drafting new exhibit lists, deposition designations, etc., so that certain trial documents would not have to be reinvented each time a court ruling permitted or excluded certain types of evidence or video deposition testimony. Plaintiffs' attorneys applied new strategies towards the review and identification of certain categories of documents and as well as categorizing them so that they could be nimble when evidentiary rulings were made.

40. In April 2020, we began discussing the prospects of setting a mediation and reviewed files and strategized towards that end. Ford also had ideas about mediation and suggested to apply the settlement procedure used in another MDL that did not result in settlement of any of the consumers represented by various law firms in that proceeding.

41. On May 13, 2020, the parties attended a status conference during which time the Court informed the parties of a potential November 2020 trial date and ordered the parties to designate two IDP cases for the next trials. We diligently began preparing and performed review and analysis of the document repository.

42. In June, Ford focused on Plaintiffs' counsel's attorney fees and submitted reports and orders demanding methods of apportionment and relentlessly pushed a mediation program that Plaintiffs did not agree to; other firms objected as well.

Meanwhile, Plaintiffs' counsel continued to perform additional document review in search of specific issues and matters to broaden the knowledge base of existing evidence and to strengthen Plaintiffs' cases.

43. On June 19, 2019, these cases settled.

44. Plaintiffs engaged in a telephonic meet on October 2, 2020. It was evident that settlement of this matter was implausible.

45. My firm has agreed not to charge for dozens of tasks that were performed in this matter. Some of the time being withdrawn involves communications amongst counsel, which is necessary in a coordinated proceeding, but we still removed significant amounts of time; we do not charge for every attorney who attends a meeting, conference call or hearing. This substantially reduces the overall bill.

**Ford is a Staunch Defendant That Litigates More Aggressively Than Most Other Vehicle Manufacturers While Deceiving Consumers More Than Most Manufacturers**

46. There are vehicle manufacturers with whom this firm has had exactly zero trials, zero discovery disputes, and zero fee motions. Ford Motor Company is not one of them. Since 2012, the firm has tried numerous automotive cases. Of all vehicle manufacturers, Ford alone comprises 30% of all of the cases that go to trial with clients of the firm. One company makes up 1/3 of all of the trials in which Knight Law participates.

47. During the course of my years in practice, I have successfully pursued evidence during discovery that has proven damaging to the Ford. For example, Ford was compelled to produce 35,000 pages of training materials from its customer service call center. The production of these documents came only after Ford's attorneys claimed for years that no such training materials existed, and perjured themselves in declarations opposing motions to compel. It was uncovered only once I flew to Melbourne, Florida to depose one of Ford's customer service agents, during which he admitted that he had use of training materials. Based on that information, I pursued

court orders to compel the materials. Ford's then-counsel of record from Bowman and Brooke, having denied the existence of training materials in countless declarations, flipped the opposition and claimed "it was a revelation" that the documents existed. Another example is Ford's attempt to conceal documents that it had produced in other class action litigation. Through continuing efforts, Ford was ordered to produce approximately 12,000,000 pages in a class document dump related to defects in its diesel engine Super-Duty trucks. The firm's attorneys spent countless hours sifting through these pages. Once certain documents were identified and brought into evidence at trial, Ford amazingly claimed that the documents were not genuine and authentic. As a result, we sought Ford's admission of the genuineness of these documents, which Ford initially denied, but court orders eventually compelled their admission of authenticity. More recently, there was an ongoing feud in which Ford was ordered to produce customer service documents located on what is referred to as the "G: drive," but Ford ignored the order, caused a motion to compel compliance, filed motions for a protective order and a motion for reconsideration, and after almost two years of this battle finally produced the contents of that G: drive.

48. In my experience, Ford's approach to litigation is to fight at every turn, make unacceptably low offers that its attorneys know from their experience are not satisfactory, or make no offers at all, until the trial date for the case is near. Of course, this is not always the situation. Based on a sample of the cases filed against Ford in 2016 and 2017, 74% of those cases settled where trial was within six months or less, and 50% of those cases settled within just one month of trial.

49. While there are a variety of vehicles forming the basis of breach of warranty, CLRA, and fraud claims against Ford, the prosecution of claims by my firm in representation of consumers against Ford in large part involves two particular vehicles with defects. The first is Ford's Super Duty trucks that were sold with a defective diesel engine. The second involves the instant Ford Focus and Fiesta vehicles. As mentioned to some extent above, the firm's efforts have led to court

orders compelling Ford to produce millions of internal documents relating to the defects in these vehicles, such as internal emails, presentations, studies, charts, tables, and graphs. The Super-Duty related documents are remarkably similar to the documents produced in this action. There is a patently obvious culture at Ford to conceal the defective condition of its products and sell them to unwitting consumers. I am not aware of any other firm that has successfully pursued such discovery.

50. Such efforts have led to resounding settlements and victories in trial, though admittedly not every case has ended with a victory for the consumer. In June 2016, one of the firm's trial teams, including Bryan Altman and Roger Kirnos obtained a jury verdict in the amount of $1.68M against Ford in a case called *Margeson v. Ford* on a vehicle that was purchased for just over $50,000.00 because it was proven by clear and convincing evidence that Ford engaged in fraudulent conduct with malicious, oppressive and/or fraudulent intent. The judgment was later reduced by the trial court to approximately $950,000.00, comprised of compensatory damages, civil penalties and punitive damages based on a multiple of ten times the compensatory damages, and prejudgment interest. This was the first of a string of multi-million dollar jury awards against Ford in matters where there was no physical injury. Those verdicts include an award of $7,563,188.28 on a vehicle with a purchase price of about $65,000 in a case called *Brown v. Ford* in April 2018; $2,775,952.64 in a case called *Coon v. Ford* in July of 2018; and $8,244,269.82 in a case called *Nolan v. Ford* in December of 2018. It took <u>six</u> jury awards of punitive damages for Ford to recognize the value of these matters and final settle them at appropriate amounts.

51. Recently, one of Ford's attorneys at Gordon Rees, speaking on behalf of the entire army of lawyers, proclaimed that Ford was no longer willing to discuss settlement, did not want to engage in any further mediations and fully intended to bring every case to trial unless our clients accept Ford's existing offers. A true and correct copy of that letter is attached hereto as **Exhibit F**.

52. It was also revealed that another Ford attorney, the managing partner of a small firm called Sanders Roberts wrote in an electronic exchange that he was too busy to discuss settlement in one of his cases because he was "focused on putting [Steve] Mikhov and [Bryan] Altman out of business!"

53. Ford is also disingenuous in its attacks on Plaintiffs' attorneys' fees, both as to a reasonable hourly rate and as to the amount of time it should reasonably take to perform tasks:

1) Ford's attorneys have attested, under penalty of perjury, to charging $450/hour for a sixth-year associate. He declared that that rate was either at *or below* the market rate for *defense* attorneys in San Joaquin County. Attached hereto as **Exhibit G** is a true and correct copy of the declaration of Ford's counsel filed in the related matter of *Anderson v. Ford*, San Joaquin County, case number STK-CV-UBC-2013-0007198.

2) Ford's counsel Gordon & Rees and Sanders Roberts have also attested to spending literally hundreds of hours just in trial preparation time for a single, individual action in the matter of *Melton v. Ford*, County of San Diego, case number 37-2017-00018831-CU-BC-CTL. Attached hereto as **Exhibits H-I** are true and correct copies of Ford's counsel declarations from *Melton v. Ford* attesting to a portion of their trial preparation time which they sought to recover as sanctions.

3) Ford's counsel recently requested in another Ford case with my office *two-hundred* hours in sanctions pertaining to a six-hour deposition and a subsequent motion related to that deposition. Attached hereto as **Exhibit J** is a true and correct copy of Ford's declarations in support of sanctions in the matter of *Cousyn v. Ford*

(Central District of California, Case No. 5:17-cv-2051-DOC(KKx).

4) In another Ford matter, Ford's attorney was honest and acknowledged to the Court that their fees *were higher than Plaintiff's counsel* in a case that settled shortly before trial.. Attached hereto as **Exhibit K** is a true and correct copy of an excerpt from the hearing on plaintiff's motion for attorney fees in the matter of *Tanner v. Ford* (County of Riverside, Case No. MCC1301063).

5) More recently, in *Hightower v. Ford* (County of Sacramento, Case No. 34-2015-00174765, JCCP 4924) a DPS6 case in the JCCP in Sacramento, Ford submitted a cost bill in the amount of $227,967.45, including $187,450.28 just in witness costs. These costs included work for experts who did work *in this MDL*, not in that JCCP. Nevertheless, Ford argued for the recovery of those amounts. Moreover, Ford itself advocated for the proposition that it could recover *all of its costs in the JCCP* by seeking reimbursement through one case – the exact opposite as it does here. A true and correct copy of Ford's memorandum of costs is attached hereto as **Exhibit L**. A true and correct copy of Ford's opposition to the plaintiff's motion to tax or strike costs is attached hereto as **Exhibit M**.

6) In *Ambriz v. Ford* (County of Riverside, Case No. RIC1612390), another DPS6 matter, Ford sought $198,427.00 just in costs for just *one individual action* not part of any coordinated proceeding, which included absurd requests for five hotel rooms, food and sundries, parking, first-class flights for its experts/employees and

not one but *two* separate "war rooms" in the hotel over a period of nearly two months. A true and correct copy of the cost memorandum is attached hereto as **Exhibit N**.

54. As a result of Ford's resolute defense, attorney fees are incurred during the prosecution of the lawsuit.

**<u>The Attorneys' Hourly Rates Are Reasonable Pursuant to the Lodestar Method in Light of their Experience</u>**

55. Knight Law is one of the, if not the leading, firm involved in California in cases alleging violations of consumer protection laws by automotive manufacturers. Knight Law endeavors to help protect the rights of consumers in this state and prosecute the rights of those who have been taken advantage by these large corporations. Knight Law has been on the forefront of protecting vehicle consumers and enforcing their rights.

56. Knight Law's achievements are not reserved to trial court successes. Knight Law has also been on the prevailing end of numerous appellate decisions:

<u>Published Opinions</u>

1) *Joyce v. Ford Motor Co.* 198 Cal.App.4th 1478 (Cal Ct. App. 2011)
2) *Etcheson v. FCA US, LLC* 30 Cal.App.5th 831 (Cal. Ct. App. 2018)
3) *Warren v. Kia Motors America, Inc.*, 30 Cal.App.5th 24 (Cal. Ct. App. 2018)
4) *Hanna v. Mercedes-Benz USA, LLC* 36 Cal.App.5th 493 (Cal. Ct. App. 2019)
5) Patel v. MBUSA, 43 Cal.App.5th 1007 (Cal. Ct. App. 2019)
6) Berroteran v. Sup. Ct., 41 Cal.App.5th 518 (Cal. Ct. App. 2019) (cert. review granted)
7) *Reynolds v. Ford Motor Company*, 47 Cal.App.5th 1105 (Cal. Ct. App. 2020)

<u>Unpublished Opinions</u>

8) McCullough v. FCA, No. D073330, 2018 WL 5856500 (Cal. App. Nov. 9, 2018)

9) Noflin v. Volkswagen, No. B275638, 2018 WL 1373992 (Cal. App. Mar. 19, 2018)

10) Cofield v. Kia, Nos. F074977, F075811, 2019 WL 3986198 (Cal. App. Aug. 23, 2019)

11) Palombi v. FCA, No. A156166, 2020 WL 2553307 (Cal. App. May 20, 2020)

12) Smart v. Ford, No. C087422, 2020 WL 284623 (Cal. App. Jan. 21, 2020)

13) Cieslikowski v. FCA, 809 Fed.Appx.386 (Mem) (9th Cir. June 12, 2020)

57. I attended law school at Pepperdine University and I was a judicial extern for Judge Gregory W. Alarcon of the Los Angeles County Superior Court in 2002. I have been admitted to the State Bar of California since April 29, 2003. Since my admission to the State Bar of California, I have specialized in consumer law.

58. I have extensive experience prosecuting and resolving consumer protection matters involving motor vehicle claims. For the past sixteen years, I have specialized in breach of warranty and fraud cases against automobile manufacturers and dealers.

59. I originally worked for one of the largest consumer warranty law firms in the country, Consumer Legal Services. From April 2007 until April 2012, I was a founding partner in Romano, Stancroff & Mikhov PC. I was the Managing Partner of the firm until it was dissolved. In April 2012, I founded O'Connor & Mikhov, LLP. The firm was reformed in 2017 as Knight Law Group, LLP. I am the Managing Partner of the firm. My rate for this case is $550/hour. My billing entries are indicated by the initials "SBM" in the billing statement exhibited to this declaration. As seen in the billing invoice, I have not charged for nearly all of the time I have incurred in this litigation.

60. Russell Higgins is a Partner with the firm and was admitted to practice in 2003. Mr. Higgins graduated from Pepperdine University School of Law and his hourly rate in this matter is $450/hour. Mr. Higgin's billing entries are indicated by the initials "RH" in the billing statement attached to this declaration.

61. Roger Kirnos is a Partner in my office. Mr. Kirnos graduated from Southwestern Law School in 2009 with cum laude honors. Mr. Kirnos previously was a judicial extern for former Chief Judge Alex Kozinksi of the Ninth Circuit Court of Appeals and a judicial extern for Judge F. Gary Klausner of the United States District Court, Central District. Mr. Kirnos has been trial counsel in over twenty-five lemon law cases that went to jury verdict, including those multi-million dollar punitive damage jury verdicts discussed above. Mr. Kirnos has been nominated as a "Rising Star" by Super Lawyers each year since 2018. The hourly rate for Mr. Kirnos is $425/hour, and his billing is indicated by the initials "RK" in the attached invoice.

62. Lauren Ungs is a Partner in my office. Ms. Ungs has been employed by the firm since July 12, 2012. Ms. Ungs has been a member of the California bar and actively practicing law for five years. She graduated magna cum laude from Southwestern Law School in 2010. She currently specializes in consumer law, lemon law, and contract law. Ms. Ungs has been part of trial teams that returned verdicts of $1.8 million, $7.5 million, $2.6 million, and $1.2 million in similar cases against Ford. Mr. Ungs has been selected as a Rising Star by Super Lawyers in 2018, 2019, and 2020. Ms. Ungs current hourly rate, is $425/hour. Ms. Ungs' entries are indicated by the initials "LAU" in the billing statement exhibited to this declaration.

63. Amy Morse is a Partner in my office. Ms. Morse has been with my firm since her admission to the bar in 2013. Prior to her admission, she was a law clerk with my office since 2012. Ms. Morse graduated from Loyola Law School. Ms. Morse's hourly rate is $350/hour. Ms. Morse's billing entries are indicated by the initials "ALM" in the billing statement exhibited to this declaration.

64. Kristina Stephenson-Cheang graduated from Western State University College of Law and was admitted to practice in 2008. Ms. Stephenson-Cheang has been employed with the firm since 2013. Prior to her employment at Knight Law, she worked for a different lemon law firm gaining valuable experience in this area of law. Ms. Stephenson-Cheang's hourly rate in this matter is $375/hour. Ms. Stephenson-

Cheang's billing entries are indicated by the initials "KSC" in the billing statement exhibited to this declaration.

65. Daniel Kalinowski is an Associate with the firm and was admitted to practice in 2015. Mr. Kalinowski graduated from Chapman University School of Law and his hourly rate in this matter is $250/hour. His prior professional experience include business litigation, real estate litigation, and employment litigation. Mr. Kalinowski's billing entries are indicated by the initials "DK" in the billing statement attached to this declaration.

66. Maite Colón is an associate in my office. Mrs. Colón graduated from the University of Puerto Rico School of Law in 2011. Mrs. Colón was admitted to practice law in the state of Florida in 2012, as well as in the District of Columbia and the District Court of Puerto Rico. More recently, Mrs. Colón was admitted to practice law in California in 2018 and has since been admitted to all federal district courts in California. Mrs. Colón has been employed at my law firm since 2017. Prior to joining my firm, she worked at an international law firm gaining valuable experience in commercial transactional work and international law. Her hourly rate is $300/hour. Her billing entries are indicated by the initials "MC" in the billing statement exhibited to this declaration.

67. Natalee Fisher is an associate at my firm. Ms. Fisher was admitted to the Bar in 2015 and has been working at the firm for one year. She is a graduate from the University of San Francisco School of Law, and received her undergraduate degree from Syracuse University. Her hourly rate is $250/hour. Her billing entries are indicated by the initials "NF" in the billing statement exhibited to this declaration.

68. Marisa Melero has been an Associate at my firm since March of 2017. Ms. Melero graduated from University of California Los Angeles, Southwestern Law School, and was admitted to practice law in 2015. Ms. Melero's hourly rate in this matter is $225/hour. Ms. Melero's billing entries are indicated by the initials "MM" in the billing statement exhibited to this declaration.

69. Summer Benson is an Associate at my firm. Ms. Benson has been with my firm since her admission to the Bar in 2019. She graduated from American University Washington College of Law and received her undergraduate degree from the University of Florida. Ms. Benson's hourly rate is $200/hour. Her prior professional experience includes intellectual property transactions and litigation. Her billing entries are indicated by the initials "SB" in the billing statement exhibited to this declaration.

70. Mitch Rosensweig was an associate at my firm. Mr. Rosensweig graduated cum laude from the University of Baltimore School of Law and was admitted to practice law in the state of Maryland in 2012. He was also admitted to practice law in Washington, D.C. in 2014. Prior to his employment with KLG, Mr. Rosensweig practiced primarily in the area of medical malpractice. Mr. Rosensweig was admitted to the California Bar in 2018. His hourly rate in this matter is $325/hour. Mr. Rosensweig's billing entries are indicated by the initials "MER" in the billing statement exhibited to this declaration.

71. George Aguilar was an associate at Knight Law Group, LLP. He received his undergraduate degree from the University of California, Berkeley in 2011, and his law degree from the University of Maryland Carey School of Law in 2014. Mr. Aguilar was admitted to the California Bar in 2015, and spent his first year and a half practicing family law, criminal defense, personal injury and bankruptcy before joining my firm. Mr. Aguilar's hourly billing rate was $275/hour. Mr. Aguilar's billing entries are indicated by the initials "GA" in the billing statement exhibited to this declaration.

72. As always, Knight Law attempts to keep attorney fees and costs down while providing vigorous and effective representation.

73. All time billing entries were completed contemporaneously with each dated entry or near in time to the work performed. I have personally reviewed the billing entries to ensure that they appropriately reflect the time expended. I have removed or reduced any time I felt was excessive, duplicative, or otherwise

unreasonable, or I have labeled the entry as a "no charge", as identified by the "N/C" in the invoice. My firm **does not bill clients** for paralegal or secretarial support staff time.

**Evidence to Support the Reasonableness of Hourly Rates for Attorneys**

74. On October 6, 2020 Judge John P. Doyle awarded attorney's fees in the amount of $29,839.25, which was 85% of the requested $36,130.00. Judge Doyle confirmed that all requested rates sought were reasonable ranging from a top billing rate $750/hr to $200/hr in the matter of *Elmer Mancia v. FCA US LLC* (Los Angeles Superior Court, Case No. 19STCV05032). A true and correct copy of the signed order is attached hereto as **Exhibit O**.

75. On July 24, 2020, Judge Michelle Williams Court awarded 100% of Knight Law Groups lodestar attorney's fees request in the amount of $211,080.00 which included approving Knight Law Group's requested hourly rates as reasonable which ranged from $550/hr-$225/hr in the matter of *Julio Hernandez v. BMW of North America, LLC* (Los Angeles Superior Court, Case No. BC666145). A true and correct copy of the signed order is attached hereto as **Exhibit P.**

76. On June 23, 2020, Judge Teresa Beuadet awarded 100% of Plaintiff's attorney's fees, costs and expenses in the amount of $126,527.88 and approved all requested rates ranging from $550/hr to $200/hr in the matter of *Donald Harbert v. FCA US LLC* (Los Angeles Superior Court, Case No. BC623621). A true and correct copy of the signed order is attached hereto as **Exhibit Q**.

77. On March 10, 2020, Judge Michelle Williams awarded 100% of requested lodestar fees and costs in the amount of $196,288.75 in the matter of *Eric Covert vs. FCA US LLC et al.* (Los Angeles County Superior Court, Case No. BC629240). The hourly rates approved as reasonable ranged from $550 for managing partners such as myself; $350 for partner Amy Morse; $375 for senior attorney Constance Morrison; $375 for senior associates Kristina Stephenson-Cheang and

Chris Swanson; and $275 to $225 for younger associates. A true and correct copy of the Court's minute order is attached hereto as **Exhibit R.**

78. On March 5, 2020, Judge Stacy P. Speiller awarded $75,345.00 in attorney's fees, or approximately 90% of the lodestar request of $84,110.00 and 100% of the requested costs and expenses in the amount of $29,366.50 in the matter of *Fiona Kavanagh v. FCA US LLC et al.* (Stanislaus County Superior Court, Case No. 9000366), which resulted in a settlement that is almost three and a half times the total amount Plaintiff paid for the vehicle. The hourly rates approved as reasonable included my rate of $550/hr; $375/hr for senior associate Kristina Stephenson-Cheang; $350/hr for partner Amy Morse; and $225/hr-$275/hr for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit S.**

79. On March 4, 2020, Judge Arthur Wick awarded attorney's fees and costs in the matter of *Rebecca Sanders v. FCA US LLC et al.* (Sonoma County Superior Court, Case No. BC627622). The Court awarded $36,432.50 for attorney's fees with an additional **multiplier of 1.5** for a total of $54,648.75, and $6,412.06 in costs, which was 100% of the requested value. The hourly rates approved as reasonable included my rate of $550/hr; $450/hr for partner Russel Higgins; $375/hr for senior associates Kristina Stephenson-Cheang and Diane Hernandez; $350/hr for partner Amy Morse; and $225-$250 for younger attorneys. In addition the court approved our co-counsel's rate of $650/hr for Mr. Wirtz, rates ranging from $400/hr-$450/hr for his associates, and $200/hr for his paralegals. A true and correct copy of the signed order is attached hereto as **Exhibit T.**

80. On February 21, 2020, Judge Jennifer V. Dollard awarded lodestar attorney fees in the amount of $25,237 based on a request of $29,290, in addition to a **1.2 multiplier** of $5,047.50 in which the court stated that a multiplier was warranted "based on the contingent nature of the fee award to provide fair market value for plaintiffs' counsel's legal services", for a total award of $30,285.50 in the matter of

*Robert Mark Rus v. FCA US LLC* (Sonoma County Superior Court, Case No. SCV-262413). Regarding hourly rates, the Court reduced my hourly rate to $500 from $550, but found the hourly rates of the other attorneys in my firm (ranging from $375-$225), and the hourly rates charged by trial counsel's firm (ranging from $650 to $450 for attorneys and $200 for paralegals) to be reasonable in Sonoma County. A true and correct copy of the signed order is attached hereto as **Exhibit U**.

81. On February 20, 2020, Judge Holly Carter awarded attorney's fees and costs in the matter of *Ed Bettencourt v. FCA US LLC et al.* (San Joaquin County Superior Court, Case No. STK-CV-UBC-2017-0003016). The Court found of all of Plaintiff's requested hours and rates to be reasonable including my rate of $550/hr; $375/hr for senior associate Kristina Stephenson-Cheang; $350/hr for partner Amy Morse; $325/hr-$350/hr for experienced associates Matthew Hartman and Mitchell Rosenweig; and $225/hr-$250/hr for younger attorneys and awarded $19,127.50 for attorney's fees with a **multiplier of 1.3** for a total of $22,490.86, and $1,863.66 in costs, which was 100% of the requested value. A true and correct copy of the signed order is attached hereto as **Exhibit V.**

82. On January 15, 2020, Judge Mel Red Recana granted lodestar attorney fees in the amount of $86,866.25 (which represented over 87% of the requested lodestar of $99,290.00) and in addition, awarded a ***1.2 multiplier*** of $17,377.25 stating "Plaintiff's counsel accepted this case on contingency, advanced costs, and was required to secure a settlement greater than Defendant's Section 998 offer in order to get any attorney's fees. Thus Plaintiff's counsel took on financial risk in accepting this case and litigating it for three years up to the date of trial." in the matter of Claudia *Ewing et al. v. FCA US LLC* (Los Angeles Superior Court, Case No. BC638178). In particular, the hourly rates awarded ranged from $550 to $595 per hour for senior-level attorneys such as myself, trial counsel Edward O. Lear; $450 to $350 per hour for senior attorneys Russel Higgins, Amy Morse, and Kristina Stephenson-Cheang,

and $200 to $300 for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit W.**

83. On October 25, 2019, Judge William Claster awarded 97% of the lodestar fees requested by motion, including a 1.1 lodestar multiplier, in the total amount of $192,893.50, in the matter of *Krupsky v. Ford Motor Company* (Orange County Superior Court, Case No. 30-2013-00662411-CU-BC-CXC). The case settled at trial prior to jury selection. The rates requested by motion that were granted included my rate of $550 per hour Mr. Altman's rate of $650 per hour, Mr. Kirnos' rate of $425 per hour, Ms. Ung's rate of $425 per hour, Mr. Swanson's rate of $375 per hour, and all other rates below $500 per hour. A true and correct copy of the minute order is attached hereto as **Exhibit X.**

84. On December 10, 2019, Jeffrey G. Bennett awarded 100% of the requested attorney's fees in the amount of $370,327.50 plus the full amount of costs and expenses requested in the matter of *Samuel Peck v. BMW North America, LLC et al.* (Ventura County Superior Court, Case No. 56-2016-00486056-CU-BC-VTA). Plaintiff obtained a maximum civil penalty jury verdict at trial. Specifically, the Court deemed reasonable my hourly rate of $550, as well as trial attorney, Richard Wirtz', hourly rate of $650. He found that the hourly rates of $350 per hour reasonable for partner Amy Morse and a range of $200 to $275 per hour for younger attorneys.. A true and correct copy of the signed order is attached hereto as **Exhibit Y.**

85. On September 17, 2019, Judge Gary Nadler awarded attorney's fees and costs in the matter of *Lisa M. Monroe v. FCA US LLC et al.* (Solano County Superior Court, Case No. FCS047244). The Court awarded $51,440.50 for attorneys' fees based on a request of $60,157.50, all of the requested costs and expenses in the amount of $13,903.77, and a **<u>1.3 multiplier</u>** of $15,432.15. The court reduced my hourly rate from $550/hr to $500/hr but approved all of Knight Law Group's associate attorneys' rates ranging from $225/hr-$375/hr. A true and correct copy of the signed order is

attached hereto as **Exhibit Z**.

86. On July 12, 2019, Judge Susan Greenberg awarded attorney's fees in the amount of $43,257.50, 97% of the lodestar fees request in the amount of $44,555, along with Plaintiff's requested **multiplier of 1.5** in the amount of $21,628.75 in the matter of *Robert Benjamin v. FCA US LLC et al.* (San Mateo Superior Court, Case No. 17CIV03123) for a total award of $64,886.25. The hourly rates approved as reasonable included my rate of $550/hr; $375/hr for senior associates Kristina Stephenson-Cheang and Diane Hernandez; $350/hr for partner Amy Morse; and $225-$275 for younger attorneys. In addition the court approved our co-counsel's rate of $550/hr for Mr. Daghighian, and $275/hr for his associate. A true and correct copy of the signed order is attached hereto as **Exhibit AA**.

87. On July 11, 2019, Judge Angel M. Bermudez in Riverside County awarded 100% of the requested attorney's fees in the amount of $87,465.00 and all of the requested costs and expenses in the amount of $11,843.66 , in the matter of *Mark Dodd et al. v. FCA US LLC.* (Riverside County Superior Court, Case No. MCC1700496). In so doing, Judge Bermudez expressly ruled that the requested hourly rates were reasonable, including a rate of $350 per hour for partner Amy Morse, $550 per hour for my rate, $375 per hour for attorney Kristina Stephenson-Cheang, and all other requested rates of $225, $250, $275, $300, $325 and $350 per hour as reasonable for Riverside County. A true and correct copy of the signed order is attached hereto as **Exhibit BB.**

88. On July 3, 2019, Judge Barbara A. Kronlund awarded 100% of the requested lodestar attorney's fees and costs in the amount of $39,929.36 in the matter of *Erika Talavera v. FCA US LLC et al.* (San Joaquin Superior Court, Case No. STK-CV-UBC-2017-3011.) The hourly rates approved as reasonable included my rate at the time of $550; $375 senior associates Christopher Swanson and Kristina Stephenson-Cheang; $350 for my partner Amy Morse; and $225 for younger

attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit CC**.

89. On July 3, 2019, Judge Gary Nadler awarded attorney's fees and costs in the matter of *Sandra Kolakowski v. FCA US LLC et al.* (Sonoma County Superior Court, Case No. SCV-259020) for a total of $47,815. The attorney fee award represents 92% recovery of the lodestar fees requested of $51,965 and 100% of costs requested by motion in the matter. Specifically, the Court deemed an hourly rate of $500 per hour reasonable for my rate. Judge Nadler determined that the hourly rates of attorneys ranging from $375 to $350 per hour were reasonable, such as Partner Amy Morse, and Associates Diane Hernandez and Kristina Stephenson-Cheang, and $250 to $275 per hour for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit DD.**

90. On July 1, 2019, Judge Gary Klausner, awarded 100% of the lodestar attorney's fees in the amount of $49,265 in the matter of *Bruce Hung Li v. FCA US LLC* (United States District Court Central District of California, Case No. 2:17-cv-06290-R-JEM). The court found reasonable the hourly rates that ranged from $300 - $375 per hour for associates and mid-level attorneys such as Amy Morse, Kristina Stephenson-Cheang, and Christopher Urner, to $550 per hour for my rate and $550 per hour. A true and correct copy of the signed order is attached hereto as **Exhibit EE.**

91. On June 5, 2019, in the matter of *Ron Blasco et al v. FCA US LLC* (San Bernardino County Superior Court, Case No. CIVDS1609641), Judge Janet Frangie awarded 86% of the requested attorney's fees in the amount of $147,283.75 out of $170,536.25 requested, and ***granted a multiplier of 1.5*** in the amount of $36,811.56 given the contingent risk and "loss of the firm's capital resources", for a total award of fees in the amount of $184,104.69,. The court found the hourly rates of the attorneys at my firm reasonable ranging from $550 per hour for my rate to $200 per hour. A

true and correct copy of the minute order is attached hereto as **Exhibit FF.**

92. On June 4, 2019, Judge Paul D. Herbert, in the matter of *Matthew Jordan and Marissa Jordan v. FCA US LLC* (Alameda Superior Court, Case No. RG16820118) awarded $257,615 in attorney's fees (which constituted 98% of the requested lodestar of $262,097.50), $117,901.09 in costs and expenses, and $6,427.80 in prejudgment interest. Furthermore, Judge Herbert found that our fee rates based on a $225 to $575 hourly rate for attorney's fees and $175 to $200 hourly rate for paralegal's fees was reasonable based on counsel's experience and the prevailing rate in the community. A true and correct copy of the signed order is attached hereto as **Exhibit GG**.

93. On April 25, 2019, Judge Michael Brenner in the matter of *Jose Santana v. FCA US LLC, et al.* (Orange County Superior Court, Case No. 30-2016-00882680-CU-BC-CJC) awarded 100% of lodestar fees requested in the amount of $235,533, in addition to ***a multiplier of 2.0*** totaling $471,066.00 in fees and $39,571.87 in costs and expenses after Plaintiff prevailed at trial. The court approved Knight Law Group's rates as reasonable ranging from $350/hr-$550/hr. A true and correct copy of the minute order is attached hereto as **Exhibit HH**.

94. On April 10, 2019, Judge Christopher E. Krueger awarded 96% of requested lodestar fees in the amount of $99,368.75 based on $103,933.75 requested and all of Plaintiff's requested costs and expenses in the amount of $20,495.42 in the matter of *Clayborne Heil vs. FCA US LLC* (Sacramento County Superior Court, Case No. 34-2016-00195870-CU-BC-GDS). The hourly rates awarded ranged from $550 for senior-level attorneys such as myself; $350 for partner Amy Morse; $375 for senior attorney Diane Hernandez; $375 for senior associate Kristina Stephenson-Cheang; and $250 to $200 for younger associates. A true and correct copy of the signed order is attached hereto as **Exhibit II.**

95. On April 5, 2019, Paul R. Bernal awarded $120,000.00 in attorneys' fees

based on a request of $143,585 in the matter of *Elizabeth Serrato vs. FCA US LLC* (Santa Clara County Superior Court, Case No. 16CV295317). This award is 83% of the amount of the original lodestar request. The hourly rates approved as reasonable included my rate of $550/hr; $375/hr for senior associate Kristina Stephenson-Cheang; $350/hr for partner Amy Morse; and $200-$275 for younger attorneys. A true and correct copy of the signed order will be attached once received. A true and correct copy of the order is attached hereto as **Exhibit JJ.**

96. On April 4, 2019, Judge Daniel A. Ottolia awarded over 91% of the lodestar fees requested by motion in the total amount of $731,885.25 in the matter of *Leonard Coon v. Ford Motor Company* (Riverside County Superior Court, Case No. MCC1300767). The court found all of the hours worked to be reasonable. The court also found all hourly rates at or below $500/hour to be reasonable. A true and correct copy of the signed order is attached hereto as **Exhibit KK.**

97. On February 20, 2019, Judge Anthony Mohr awarded 100% of the total requested lodestar fees and cost as well as ***a 1.2 multiplier***, totaling in the amount of $88,470.80 in the matter of *Antonio Martinez vs. FCA US LLC* (Los Angeles County Superior Court, Case No. BC624319). The range of hourly rates confirmed included $550 for managing partners of law firms such as myself; $350 for partner Amy Morse; and $350 for senior attorney Christopher Thoms; and $200 for younger associates. A true and correct copy of the Court's minute order is attached hereto as **Exhibit LL**.

98. On February 1, 2019 in the matter of *Daniel Leonardo v. FCA US LLC* (Ventura Superior Court Case No. 56-2016-00488147-CU-BC-VTA), Judge John Nguyen awarded 100% of the attorney's fees requested in the amount of $103,866.25 including deeming our hourly rates of $275-$550.00 reasonable. A true and correct copy of the minute order is attached hereto as **Exhibit MM.**

99. On January 11, 2019, Judge Teri L. Jackson awarded $59,427.12 in attorneys' fees in the matter of *Leonard Shavies vs. FCA US LLC* (San Francisco

County Superior Court, Case No. CGC-16-555079) including a **1.2 multiplier** in which the court stated was warranted "based on the contingent nature of this case, its difficulty, and plaintiff's success…" The hourly rates awarded as reasonable included my rate of $550, $350 for partner Amy Morse; $375 for senior associate Kristina Stephenson-Cheang; and $250 for younger associates. A true and correct copy of the signed minute order is attached hereto as **Exhibit NN**.

100. On January 9, 2019, Judge Tamara L. Mosbarger awarded **$714,233.00** in attorneys' fees in the matter of *Brown vs. Ford Motor Company* (Butte County Superior Court, Case No. 160060) which included a **1.3 fee multiplier** for risk of taking the case through trial and delay in payment. The court awarded rates ranging from $200/hr- $600/hr. A true and correct copy of the signed minute order is attached hereto as **Exhibit OO**.

101. On December 27, 2018, Judge Rene Auguste Chouteau awarded 100% of the requested lodestar and a **1.2 multiplier** for a total award of $88,721.73 in attorneys' fees, costs and expenses in the matter of *Roman Starno and Beverly Starno* (Sonoma County Superior Court, Case No. SCV-259213). The hourly rates approved as reasonable included my rate of $500/hr; $350/hr for senior associate Kristina Stephenson-Cheang; $350/hr for partner Amy Morse; and $225-$250 for younger attorneys A true and correct copy of the order is attached hereto as **Exhibit PP.**

102. On December 12, 2018, Judge David M. Chapman awarded 100% of the lodestar fees requested by motion in the total amount of $115,718.75 in the matter of *Julia Lawson and Don Lawson v. FCA* (Riverside County Superior Court, Case No. PSC1604057). The rates approved as reasonable included my current rate of $550 per hour, the rates of $400 to $375 per hour for appearance attorneys Kirk Donnelly and Constance Morrison; $375 per hour for senior associates Christopher Swanson and Kristina Stephenson-Cheang; $350 per hour for partner Amy Morse; and $250 per hour for younger attorneys. A true and correct copy of the signed order is attached

hereto as **Exhibit QQ.**

103. On November 20, 2018, Judge Theodore C. Zayner awarded 100% of requested lodestar fees and costs in the amount of $27,302.15 in the matter of *Eulalia Alvernaz vs. Hyundai Motor America* (Santa Clara County Superior Court, Case No. 16CV301838). The hourly rates awarded as reasonable ranged from $550 for senior-level attorneys such as myself; $425 to $350 for partners Roger Kirnos and Amy Morse; $375 to $350 for associates Christopher Swanson and Christopher Thoms; and $275 to $200 for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit RR**.

104. On November 1, 2018, Judge Raoul M. Thorbourne awarded $166,237.50 in attorney's fees, $35,083.57 in costs, including a **<u>1.2 multiplier</u>** in the matter of *Paul Waggener vs. FCA US LLC* (Sacramento County Superior Court, Case No. 2016-00203774). The hourly rates awarded as reasonable ranged from my rate at the time of $500 for senior-level attorneys such as myself; $350 for partner Amy Morse and senior associates Christopher Swanson and Kristina Stephenson-Cheang; and $225 for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit SS.**

105. On October 24, 2018, Judge Kelly L. Neel awarded 100% of requested lodestar attorneys' fees in the amount of $189,230.00 and full requested costs and expenses in the amount of $32,079.98 in the matter of *Robert Furber and Marjorie Furber vs. Ford Motor Company* (Humboldt County Superior Court, Case No. DR130223). The hourly rates awarded as reasonable ranged from my rate of $550 for senior-level attorneys such as myself; $425 to $350 for partners Lauren Ungs and Amy Morse; $375 to $350 for "contract/of counsel" attorneys Diane Hernandez and Christopher Thomas; $375 to $350 for senior associates Kristina Stephenson-Cheang and Christopher Swanson; and $225 for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit TT.**

106. On October 22, 2018, Magistrate Judge Joseph Spero approved the hours and rates sought, ranging from $500 per hour to $250 per hour, as reasonable and awarded 100% of the lodestar requested in the amount of $27,092.50 in *Christina Bratton v. FCA US LLC* (United States District Court Northern District of California, Case No. 17-cv-01458-JCS). A true and correct copy of the signed order is attached hereto as **Exhibit UU.**

107. On September 25, 2018, Judge Sunshine Sykes awarded 87% of requested lodestar attorneys' fees in the amount of $114,937.50 out of $132,787.50 requested and also awarded a ***1.25 multiplier*** in the amount of $28,734.38 in the matter of *Joseph Kantar vs. FCA US LLC* (Riverside County Superior Court, Case No. RIC1606184). The hourly rates awarded ranged from my rate of $550 per hour to $450 per hour for senior-level attorneys such as myself and Russel Higgins; $425 to $300 for "contract/of counsel" attorneys such as Mary Fersch and Larry Castruita; $375 to $350 per hour for partner Amy Morse and senior associate Kristina Stephenson-Cheang; $275 for associate attorney Deepak Devabose; and $225 per hour for Thomas Burns. A true and correct copy of the signed order is attached hereto as **Exhibit VV.**

108. On August 30, 2018, Judge David Foster awarded 100% of the lodestar fees requested by motion in the mount of $77,296.25, a ***1.5 multiplier*** in the amount of $38,648.13, and costs and expenses in the amount of $11,910.14 in the matter of Dennis *Evans and Joann Evans v. FCA US LLC* (Merced County Superior Court, Case No. 16CV-01578). The rates approved as reasonable included my rate at the time of $500 per hour, rates between $400 and $350 for Russell Higgins and Amy Morse, $375 and $325 per hour for contract/of counsel" attorney Hadi Gerami and senior associates Christopher Swanson, Kristina Stephenson-Cheang, and Alastair Hamblin; and $225 for junior attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit WW.**

109. On August 15, 2018, Judge Arthur A. Wick awarded 100% of requested

lodestar attorney's fees in the amount of $43,472.50 in the matter of *Angela Markovich and Patrick Markovich v. Hyundai Motor Company* (Sonoma County Superior Court, Case No. SCV258267). Specifically, the Court deemed my then hourly rate of $500 per hour reasonable. Judge Wick also determined that the hourly rates of attorneys ranging from $350 to $400 per hour were reasonable, such as Amy Morse, Hadi Gerami, and Kristina Stephenson-Cheang, and $250 per hour for younger attorneys. A true and correct copy of the order is attached hereto as **Exhibit XX**.

110. On August 8, 2018, Judge John P. Doyle awarded 100% of the lodestar fees requested by motion in the total amount of $72,478.75 in the matter of *Geoffrey Morgan and Ambyr Morgan v. FCA* (Los Angeles County Superior Court, Case No. BC625668). The rates rates approved as reasonable include my rate of $500 per hour, the rate of $400 per hour for Roger Kirnos and Sepehr Daghighian, $375 per hour for kirk Donnelly, $350 per hour for Amy Morse and Kristina Stephenson-Cheang, $250 per hour for Deepak Devabose and George Aguilar, and $225 per hour Jennifer Reiz and Thomas Burns. A true and correct copy of the signed order is attached hereto as **Exhibit YY**.

111. On July 19, 2018, Judge Barry T. LaBarbera awarded 96% of the lodestar attorneys fees in the amount of $153,043 out of $158,743.25 requested by motion and all of the requested costs and expenses in the amount of $20,175.61 in the matter of *Douglas Spelts et al v. FCA* (San Luis Obispo County Superior Court, Case No. 15CV-0470). The rates approved as reasonable included my rate of $500 per hour, the rate of $400 per hour for Russell Higgins and Lauren Ungs, $350 per hour for Amy Morse and Kristina Stephenson-Cheang, $325 per hour for Alastair Hamblin, and $200 per hour for Michelle Lumasag. A true and correct copy of the signed order is attached hereto as **Exhibit ZZ.**

112. On June 28, 2018, Judge James Oakley awarded 100% of the lodestar attorney's fees requested in the amount of $98,602.50 and full costs and expenses in

the amount of $17,878.25 in matter of Frank *Coulombe and Gloria Coulombe v. FCA US LLC* (Merced County Superior Court, Case No. 15CV00543). Specifically, the Court deemed my hourly rate at the time of $500 per hour reasonable along with trial attorney, Michael Rosenstein's hourly rate of $500 per hour as reasonable. Judge Oakley determined that the hourly rates of attorneys ranging from $200 to $400 per hour were reasonable, such as Partners Amy Morse and Roger Kirnos, and Associates Christopher Swanson, Deepak Devabose, Kristina Stephenson-Cheang, and Michelle Lumasag, and contract/"Of Counsel" attorney Diane Hernandez was awarded her hourly rate of $350 for all time expended.. A true and correct copy of the signed order is attached hereto as **Exhibit AAA**.

113. On June 28, 2018, Judge Donald Proietti awarded 100% of the requested lodestar attorney's fees in the amount of $136,550.00, full costs and expenses in the amount of $15,682.73, and a ***1.5 multiplier of $ $81,817.50*** in matter of *Oscar Berriozabal v. FCA US LLC* (Merced County Superior Court, Case No. 15CV00543). Specifically, the Court deemed my then hourly rate of $500 reasonable along with trial attorney, Richard Wirtz's hourly rate of $500. Judge Proietti determined that the hourly rates of attorneys ranging from $200 to $400 per hour were reasonable, such as Partners Lauren Ungs, Amy Morse, and Roger Kirnos, and Associates Russell Higgins, Christopher Swanson, Daisy Ortiz, Kevin Van Hout, Stephanie Marshall and contract/"Of Counsel" attorney Diane Hernandez was awarded her hourly rate of $350 for all time expended.. A true and correct copy of the signed order is attached hereto as **Exhibit BBB.**

114. On June 18, 2018, Judge Richard Henderson approved all of Plaintiff's incurred hours as reasonable, awarded lodestar attorney fees in the amount of $168,242.50 out of $205,797.50 requested, full costs and expenses in the amount of $26,663.24, and a **1.2 multiplier** of $33,648.50 in matter of *Peter Reynolds v. Ford Motor Company* (Sonoma County Superior Court, Case No. SCV-254959). Regarding

the multiplier, the court stated "In litigating these type of cases with a large corporate defendant such as Ford Motor Company, many attorneys may decline to represent plaintiffs due to the financial resources of defendant, and the prospect of long and hard fought litigation. Based upon these factors the court believes that a multiplier of 1.2 is reasonable and appropriate to accomplish the salutatory objectives of the Song Beverly Consumer Warranty Act" In addition, regarding the rates, the Court deemed a rate of $500 per hour reasonable for senior attorneys like myself and trial attorney, Bryan Altman, and prior to adding the lodestar enhancement. This matter was subject to appeal by Ford Motor Company and resulted in a published opinion affirming the fee award and holding that a consumer's retainer agreement is irrelevant to the lodestar analysis. See *Reynolds v. Ford Motor Company,* 47 Cal.App.5th 1105 (2020). A true and correct copy of the signed order is attached hereto as **Exhibit CCC**.

115. On June 1, 2018, Judge Glenda Sanders awarded 100% of the lodestar attorney fees request in the amount of $98,515 and full costs and expenses in the amount of $8,045.55 in the matter of *Josefa Vargas vs. FCA US LLC* (Orange County Superior Court, Case No. 30-2016-00845431-CU-BC-CJC). The hourly rates awarded ranged from $750 to $500 per hour for senior-level attorneys, such as myself, Mark O'Connor, trial counsel Richard Wirtz, and trial counsel Moses Lebovitz; $400 to $350 per hour for attorneys Roger Kirnos, Amy Morse, Constance Morrison, and Kristina Stephenson-Cheang; and $200 for younger attorney Michelle Lumasag. . A true and correct copy of the signed order is attached hereto as **Exhibit DDD.**

116. On January 5, 2018, Judge Mel Red Recana granted 100% of the requested lodestar attorney fees in the amount of $529,885.50 and $96,840.81 in costs and expenses in the matter of *Charles Margeson v. Ford Motor Company* (Los Angeles Superior Court, Case No. BC549430),. Judge Recana believed the firm's prowess during the four-week trial that resulted in an unprecedented almost two million dollar jury verdict warranted a ***1.8 multiplier of $423,908.40*** to be added to

the fee award. In addition, the hourly rates awarded as reasonable ranged from $500 to $650 per hour for senior-level attorneys such as myself, trial counsel Michael Rosenstein, trial counsel Bryan Altman, and Hal Rosner ; $400 to $350 per hour for senior attorneys Russel Higgins, Lauren Ungs, Roger Kirnos, Amy Morse, Kirk Donnelly, Constance Morrison, and Kristina Stephenson-Cheang, and $200 to $300 for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit EEE**.

117. On December 11, 2017, Judge Melinda M. Reed awarded about 98% of plaintiff's lodestar attorney's fees in the amount of $151,780.00 based on a request of $155,330 and $42,060.45 in costs and expenses after trial in the matter of *Dominic Teran vs. FCA US LLC* (Tulare County Superior Court, Case No. 265860),. The hourly rates awarded ranged from $500 per hour for senior-level attorneys, including me and trial counsel, Rich Wirtz; $325 to $400 per hour for attorneys Russel Higgins, Lauren Ungs and Chris Swanson,; and for attorneys from Wirtz Law $325 per hour for Amy Smith, $250 per hour for Jessica Underwood and Lauren Saab, and $175 per hour for paralegals. . A true and correct copy of the signed order is attached hereto as **Exhibit FFF.**

118. On November 21, 2017, Judge David R. Lampe presiding in Kern County over the trial in the matter of *Marilyn West v. Hyundai Motor America* (Kern County Superior Court, Case No. BCV-16-100792) awarded 100% of the fees requested for an attorney fee award $169,148.75, plus an additional $16,431.83 in costs and expenses. The plaintiff obtained a jury verdict for treble damages, e.g. maximum civil penalties. Judge Lampe confirmed the rate of $650 per hour for trial attorney Bryan Altman, $500 per hour for myself and rates ranging from $350 to $400 per hour for Partners and mid-level Associates Russell Higgin, Kristina Stephenson-Cheang and Brian Murray, $450 per hour for Joel Elkins from the Altman Law Group, and $200 to $250 per hour for the lowest billing rate attorneys. The court awarded $350 per

hour for attorney/"of counsel," Diane Hernandez. A true and correct copy of the signed order is attached hereto as **Exhibit GGG.**

119. On October 11, 2017, Judge Elizabeth R. Feffer awarded 98% of the attorney fees requested by motion in the matter of *Sergio Lopez v. Ford Motor Company* (Los Angeles County, Case No. 585892) in the amount of $108,750.00 out of $110,797.50 requested, with the one reduction stemming from my firm's own withdrawal of time that was unreasonable. Judge Feffer reviewed the following hourly rates and determined them to be reasonable: $500 per hour for attorneys Steve Mikhov and Richard Wirtz, $400 per hour for attorney Russel Higgins, $300 - $350 per hour for attorneys Alistair Hamblin, Constance Morrison, Kristina Stephenson-Cheang, Amy Smith and Erin Barns, and $250 per hour for Amy Morse and Lauren Sabb. A true and correct copy of the signed order is attached hereto as **Exhibit HHH**.

120. On September 20, 2017, Judge Gail R. Feuer awarded 98% of the requested lodestar attorney's fees totaling $227,228.00 out of $231,228.00 requested and $31,712.55 in costs and expenses in the matter of *Anita Longin vs. Ford Motor Company* (Los Angeles Superior Court, Case No. BC564186). Specifically, the Court deemed my hourly rate of $500 per hour reasonable along with trial attorney, Sepehr Daghighian's, hourly rate of $400 per hour as reasonable. Judge Feuer determined that the hourly rates of attorneys ranging from $225 to $400 per hour were reasonable, such as Partners Lauren Ungs and Amy Morse (who were Associates at the time), and Associates Russell Higgins, Alastair Hamblin, Kristina Stephenson-Cheang, Daisy Ortiz, etc. Contract/"Of Counsel" attorney Constance Morrison was awarded her hourly rate of $350 for all time expended.. A true and correct copy of the signed order is attached hereto as **Exhibit III.**

121. On August 9, 2017, Judge Sandra K. Bean awarded $94,112.50 in attorney's fees plus $11,484.05 in costs and expenses in the matter of *Tanya Bravo v. FCA US LLC* (Alameda Superior Court, Case No. RG15757477), which represented

100% of the amount requested by motion. The Court affirmed the hourly rates of attorneys, including the hourly rate of trial counsel of $650 for Bryan Altman, my hourly rate of $500, and associate rates ranging from $225 to $375 per hour. A true and correct copy of the Court's ruling is attached hereto as **Exhibit JJJ**.

122. On May 9, 2017, Judge Sidney P. Chapin in Kern County awarded lodestar attorney's fees for a total of $296,055.00 out of $344,888.75 requested plus $25,651.18 in costs and expenses based on a jury verdict for maximum civil penalties in the matter of *Jerry Cofield et al v. Kia Motors America, Inc.* (Kern County Superior Court, Case No. S-1500-CV-283504). In so doing, Judge Chapin expressly ruled that the requested hourly rates were reasonable, including a rate of $650 per hour for attorney Bryan Altman, $500 per hour for trial attorney Michael Rosenstein, $500 per hour for my rate, $375 per hour for trial attorney Roger Kirnos, and all other requested rates of $200, $225, $300, $325 and $350 per hour as reasonable for Kern County. A true and correct copy of the signed order is attached hereto as **Exhibit KKK**.

123. On March 17, 2017, in the matter of *Michelle Page et al v. Kia Motors America, Inc.* (San Diego Superior Court, Case No. 37-2014-00023991-CU-BC-CTL), Judge Eddie C. Sturgeon granted an award of attorney's fees in the amount of $236,111.30 out of $277,778 requested in a case in which our clients prevailed at trial. Judge Sturgeon ruled that the hourly rates were reasonable, including trial counsel Bryan Altman's rate of $650/hour and Roger Kirnos' rate of $375/hour. The court found my rate of $500/hour to be reasonable, as well as each of my associates and the associates of Mr. Altman who top out at $450/hour for Joel Elkins. A true and correct copy of the signed order is attached hereto as **Exhibit LLL**.

124. On December 5, 2016, Judge Colleen K. Sterne in Santa Barbara ruled that the hourly rates and the amount of the work performed were both reasonable, and granted 100% of the firm's lodestar fee request in the matter of *Danielle Holzer v Ford Motor Company* (Santa Barbara County Superior Court, Case No. 15CV02771). In

addition, the court ***__granted a multiplier of 1.5__*** and stated "In this case, plaintiff's attorneys agreed to represent plaintiff on a contingency basis and to bear the risk of never being paid for hundreds of hours of work. Indeed, plaintiff's attorneys have not been paid any compensation since the case was filed more than a year ago, while at the same time they have advanced thousands of dollars of costs. Given the risk and delay in payment associated with the case, as well as the positive result achieved by way of the settlement, the court will approve plaintiff's 1.5 lodestar modifier", for a total award of fees, costs and expenses in the amount of $143,301.69. The court found the hourly rates of my firm ranging from $500 per hour for my rate to $250 per hour for the lowest billing attorneys were reasonable. The court also found that trial counsel, Sepehr Daghighian's, hourly rate of $400 per hour was reasonable. A true and correct copy of the signed order is attached hereto as **Exhibit MMM**.

125. On December 1, 2015, Judge Ernest H. Goldsmith awarded 100% of the attorneys' lodestar fees and costs requested in the matter of *Donald Yerbic v. Ford Motor Company* (San Francisco County Superior Court, Case No. CGC-13-533092) in the amount of $73,995.00, thereby confirming the reasonableness of the hourly rates requested and the reasonableness of the time incurred. The court granted my rate of $500 per hour and my associates' rates ranging from $225 to $350 per hour. The court also granted trial attorneys, Michael Rosenstein and Roger Kirnos, their rates of $450 and $300 per hour, respectively. A true and correct copy of the signed order is attached hereto as **Exhibit NNN**.

126. On November 4, 2015, Judge Geoffrey M. Howard granted fees, costs and expenses in the case of *Neil Kran v. Ford Motor Company* (Marin County Superior Court, Case No. CIV1302144) awarding $73,918.63 in lodestar fees, The court also awarded __a **1.5 multiplier**__ in the amount of $36,959.31 to reflect the risk undertaken by Plaintiff's counsel in litigating this matter due to the contingency, for a total award including costs of $122,947.34. A true and correct copy of the signed

order is attached hereto as **Exhibit OOO**.

127. On October 27, 2015, Judge Geoffrey M. Howard awarded attorney's fees and costs in the matter of *Steven Wiessler v. Ford Motor Company* (Marin County Superior Court, Case No. CIV1303232) in the amount of $144,137.77. The court also awarded **a lodestar multiplier of 1.5** to reflect the risk undertaken by Plaintiff's counsel in litigating this matter due to the contingency. A true and correct copy of the signed order is attached hereto as **Exhibit PPP**.

128. On January 12, 2015, Judge Jeffrey A. Thompson awarded a total of $126,129.08 in fees and costs and expenses in the matter of *Jimmy Thiessen and Tiffany Thiesen v. Ford Motor Company* (Colusa County Superior Court, Case No. CV23968). Judge Thompson awarded **a lodestar multiplier of 1.25** that resulted in an award comprising nearly 100% of the $129,765.90 in fees and costs actually incurred in the case. Rates approved as reasonable ranged from $400/hr-$175/hr. A true and correct copy of the signed order is attached hereto as **Exhibit QQQ**.

129. As shown by the number of cases discussed herein and the results achieved on behalf of each client, the hourly rate is reasonable and the number of hours expended are reasonable. The fees incurred in this litigation are the direct result of Ford's aggressive litigation strategy.

130. I request a multiplier of 1.5 based on my contingent fee, the risk and delay in payment associated with a contingent fee scenario, and the result achieved. Such a multiplier is reasonable and towards the low end under the established law. (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 255.) Knight Law is compensated only if its clients prevail, unlike Defendant's attorneys who get paid monthly regardless of the outcome. Moreover, Defendant's attorneys typically have a continuing and ongoing relationship, whereas this firm will most likely not have the opportunity to represent Plaintiffs again.

131. All time billing entries were completed contemporaneously with each dated entry or near in time to the work performed. I have personally reviewed the

billing entries to ensure that they appropriately reflect the time expended. I have removed any time for work that was attributable solely to the fraud claims. I have also removed or reduced time that I felt was excessive, duplicative, or otherwise unreasonable, or I have labeled the entry as a "no charge", as identified by the "N/C" in the invoice. My firm **does not bill clients** for secretarial support staff time even though substantial time is incurred for scheduling matters, preparing and organizing documents, tracking deadlines, filing motions, preparing forms and more.

132. Generally speaking, clients of the firm are benefitted by the experience of this firm insofar as work-product from other cases can be used in this case as well. Hence, a substantial amount of time was saved by not needing to draft each document from scratch and little time was needed to "get up to speed" in this specialized area of law. In effect, Ford also benefitted when it comes to a determination of reasonable attorney's fees to be paid because there are numerous cost-saving techniques employed by the firm.

133. It is not uncommon for attorney's fees and costs to exceed the client's damages. The Legislature acknowledged such a circumstance, which is the reason behind the fee shifting provision of the Song-Beverly Act. Otherwise, consumers would be left without opportunity for redress when their damages were not enough for an attorney to take the case on a contingent fee or hourly rate basis. Such a result occurs in large part because of dealerships' or vehicle manufacturers' refusal to adhere to statutory laws protecting consumers, resistance to honoring consumers' complaints, and generally playing games or simply abusing discovery procedures. For example, Ford could have avoided paying any attorney fees whatsoever had it admitted to its wrongdoing early on. Instead, Ford engaged in expensive litigation, and drove up fees and costs by holding out for nearly five years of litigation before ultimately settling at the beginning of trial for exponentially more than their sole 998 offer.

134. The Song-Beverly Act and automotive fraud cases are not simple actions. They require a specialized understanding of the full scope of consumer protection

laws, which are highly nuanced. The cases also require knowledge of intricacies of automobiles and a lexicon associated with them, as well as a knowledge concerning how to investigate these matters. They also require knowledge of auto manufacturers' and dealers' protocols for repairing vehicles.

135. This case was particularly complicated as it involved matters that are not typically part of "lemon law" litigation due to the coordination of this case with so many others. Ford produced millions of pages of documents from the *Vargas* class action and Plaintiffs took approximately thirty fact witness depositions around the country and even in London. Ford made matters difficult so far as refusing to agree to the simple authenticity of its own documents until this Court ordered an in-person meet and confer to resolve that issue.

136. Ford itself made this matter more complex by maintaining it had no liability and declining to submit reasonable offers to settle the matter early in the litigation.

137. The scope of Ford's corporate disregard to the plight of its customers is not unique to the DPS6 transmission. Just weeks ago, a California appellate court found that there was substantial evidence of fraud by Ford when it sold and failed to repair its Super-Duty trucks equipped with a defective 6.0L diesel engine. "Perhaps unsurprisingly, given the recounting we have already done of the testimony and exhibits presented at trial, we hold there was enough evidence of fraud under that standard. The magnitude of Ford's problem with its 6.0-liter engine was conveyed to the jury." The court addressed some of the evidence presented in that case: "From affidavits submitted by Ford employees in the Navistar lawsuit, the jury learned that by February 2007, warranty repair costs on the 6.0-liter engine exceeded $400 million (more than $227 million in repair costs for the engine's fuel injectors and more than $182 million on repairs to the engine's turbochargers), which was the largest repair rate ever experienced by any Ford engine. There was also evidence that the engine represented only 10 percent of Ford's total engine volume but accounted for 80

percent of Ford's warranty spending on engines, which in turn represented 25 percent of Ford's overall warranty spending." A true and correct copy of this recent, unpublished opinion is attached hereto as **Exhibit RRR**.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 9th day of November, 2020, at Los Angeles, California.

/s/Steve Mikhov
STEVE MIKHOV
Declarant

# EXHIBIT A

# EXHIBIT A-1

Fort, Sharon v. FMC | Knight Law Group LLP | BC670958

Invoice | 2:17-cv-06631-AB-FFM

| Date | Attorney | Rate | Task | Time | FEE |
|---|---|---|---|---|---|
| | SBM | $550.00 | Initial communication with client; evaluation of Client's claims | 0.4 | $220.00 |
| | SBM | $550.00 | Review docs | 0.6 | $330.00 |
| 7/27/2017 | ALM | $350.00 | Communication with Client | 0.5 | $175.00 |
| 7/28/2017 | ALM | $350.00 | Draft Complaint | 0.5 | $175.00 |
| 7/31/2017 | SBM | $550.00 | Review and sign Complaint | 0.1 | $55.00 |
| 8/21/2017 | ALM | $350.00 | Communication with Client | 0.2 | $70.00 |
| 8/22/2017 | KSC | $375.00 | Review Court Notice of CMC | 0.1 | N/C |
| 8/31/2017 | ALM | $350.00 | Draft Notice of CMC | 0.1 | $35.00 |
| 9/6/2017 | KSC | $375.00 | Review file in preparation of drafting Pltf's discovery requests | 0.3 | $112.50 |
| 9/6/2017 | KSC | $375.00 | Draft Pltf's Form ROGs to Ford | 0.2 | $75.00 |
| 9/6/2017 | KSC | $375.00 | Draft Pltf's Special ROGs to Ford and Declaration | 1.5 | $562.50 |
| 9/7/2017 | KSC | $375.00 | Draft Pltf's RFA to Ford and Declaration | 1.1 | $412.50 |
| 9/7/2017 | KSC | $375.00 | Draft Pltf's RFP to Ford | 0.8 | $300.00 |
| 9/7/2017 | KSC | $375.00 | Review and revise letter to Defense enclosing Pltf's discovery requests | 0.1 | $37.50 |
| 9/11/2017 | KSC | $375.00 | Review Deft's Depo Subp for Production of Business Documents of Robertson Honda and Notice to Consumer | 0.1 | $37.50 |
| 9/12/2017 | SBM | $550.00 | Review Ford's Answer to Complaint | 0.3 | $165.00 |
| 9/14/2017 | KSC | $375.00 | Review Deft's Notice of Removal; update case file | 0.4 | $150.00 |
| 9/14/2017 | KSC | $375.00 | Review Court Notice of Assignment to U.S Judges | 0.1 | N/C |
| 9/14/2017 | KSC | $375.00 | Review Court Notice to Parties of Court-Directed ADR program | 0.1 | N/C |
| 9/15/2017 | ALM | $350.00 | Review Def's Demand for Jury Trial | 0.1 | N/C |
| 9/18/2017 | KSC | $375.00 | Communication with Client | 0.4 | $150.00 |
| 9/21/2017 | KSC | $375.00 | Review Court Order re Transfer re Related Cases | 0.1 | N/C |
| 9/26/2017 | KSC | $375.00 | Review Court Order Setting Scheduling Conference, for 2/15/18 | 0.1 | N/C |
| 10/5/2017 | MER | $325.00 | Email exchange with opposing counsel re scheduling telephonic meet and confer re remand motions (multiple dates) | 0.1 | N/C |
| 10/5/2017 | RH | $450.00 | Prepare for, correspond with, and telephonic meet and confer with Ford counsel re motion to remand (time split with 9 cases) | 0.3 | $135.00 |
| 10/9/2017 | SBM | $550.00 | Review Ford's Settlement Offer | 0.1 | $55.00 |
| 10/10/2017 | RH | $450.00 | Draft Motion For Remand and declaration | 1.0 | $450.00 |
| 10/13/2017 | DK | $250.00 | Communication with Client | 0.3 | $75.00 |
| 10/17/2017 | KSC | $375.00 | Review Deft's Notice of Related Cases | 0.1 | $37.50 |
| 10/25/2017 | DK | $250.00 | Telephone conference with Client | 0.3 | $75.00 |

| | | | | | |
|---|---|---|---|---|---|
| 10/27/2017 | RH | $450.00 | Review Deft's Opposition to Remand Motion | 0.3 | $135.00 |
| 10/31/2017 | RH | $450.00 | Communication with FMC counsel (John Thomas, Molly Mrowka, Tamara Bush, Spencer Hugret) re motions to remand, proposed ex parte to stay pending MDL, state coordination | 0.1 | $45.00 |
| 11/6/2017 | KSC | $375.00 | Review Ford's Notice of Related Actions | 0.1 | $37.50 |
| 11/9/2017 | KSC | $375.00 | Review Court Minute Order re Stay | 0.1 | N/C |
| 11/16/2017 | ALM | $350.00 | Communication with Appearance Attorney re CMC | 0.2 | $70.00 |
| 11/20/2017 | ALM | $350.00 | Review results of CMC | 0.1 | $35.00 |
| 11/21/2017 | RH | $450.00 | Draft Opposition to Ford's Motion for Transfer and Consolidation of Related Actions (multiple cases) | 0.3 | $135.00 |
| 11/27/2017 | DK | $250.00 | Communication with Client | 0.2 | $50.00 |
| 1/12/2018 | ALM | $350.00 | Communication with Client | 0.2 | $70.00 |
| 1/17/2018 | ALM | $350.00 | Draft Notice of OSC re Removal to Federal Court | 0.1 | $35.00 |
| 2/15/2018 | KSC | $375.00 | Review Court Transfer Order | 0.1 | N/C |
| 3/12/2018 | KSC | $375.00 | Review Court Order Setting CMC | 0.1 | N/C |
| 3/12/2018 | ALM | $350.00 | Communication with Appearance Attorney re OSC | 0.2 | $70.00 |
| 3/14/2018 | ALM | $350.00 | Review results of OSC | 0.1 | $35.00 |
| 3/27/2018 | DK | $250.00 | Communication with Client | 0.2 | $50.00 |
| 8/1/2018 | ALM | $350.00 | Communication with Client | 0.2 | $70.00 |
| 11/13/2018 | MC | $300.00 | Draft Ptf's Rule 26 Initial Disclosures | 1.0 | $300.00 |
| 11/21/2018 | KSC | $375.00 | Review NOD of Plaintiff | 0.1 | $37.50 |
| 11/30/2018 | MER | $325.00 | Review file for the purpose of drafting NODs of dealership personnel | 0.2 | $65.00 |
| 11/30/2018 | MER | $325.00 | Draft NODs of South Bay Ford's PMQ and Dealership Personnel (8 NODs) | 0.9 | $292.50 |
| 12/7/2018 | KSC | $375.00 | Communication with Client | 0.2 | $75.00 |
| 12/7/2018 | MER | $325.00 | Draft NOD of FMC's PMK/30(b)(6) and cover letter | 0.2 | $65.00 |
| 12/11/2018 | KSC | $375.00 | Review Deft's ROGs to draft response | 0.2 | $75.00 |
| 12/11/2018 | KSC | $375.00 | Review Deft's RFA to draft response | 0.2 | $75.00 |
| 12/11/2018 | KSC | $375.00 | Review Deft's RFP to draft response | 0.1 | $37.50 |
| 12/11/2018 | KSC | $375.00 | Prepare discovery requests to send to Plaintiff in preparation of drafting responses; Communication with Client | 0.4 | $150.00 |
| 12/12/2018 | ALM | $350.00 | Review correspondence from Defense re Ptfs' NOD of def's dealership personnel (multiple cases) | 0.1 | $35.00 |
| 12/13/2018 | ALM | $350.00 | Review Deft's Objections NOD and of South Bay Ford PMQ/30(b)(6) and Personnel (8 obj.) | 0.2 | $70.00 |

| | | | | | |
|---|---|---|---|---|---|
| 12/13/2018 | KSC | $375.00 | Email exchange with opposing counsel confirming extension of time for pltf to respond to deft discovery | 0.1 | $37.50 |
| 12/19/2018 | ALM | $350.00 | Review correspondence from Defense to meet and confer re scheduling Plaintiff depositions (multiple cases) | 0.1 | $35.00 |
| 12/26/2018 | KSC | $375.00 | Review FMC letter demanding pltf availability for upcoming deposition dates (multiple cases) | 0.1 | N/C |
| 12/27/2018 | ALM | $350.00 | Review further correspondence from Defense re scheduling Plaintiffs depositions (multiple cases) | 0.1 | N/C |
| 12/27/2018 | KSC | $375.00 | Review file in preparation of drafting Plaintiff's discovery requests in light of removal from state court | 0.2 | $75.00 |
| 12/27/2018 | KSC | $375.00 | Draft Ptf's ROGs to Ford | 0.5 | $187.50 |
| 12/27/2018 | KSC | $375.00 | Draft Ptf's RFA to Ford | 1.2 | $450.00 |
| 12/28/2018 | KSC | $375.00 | Draft Ptf's RFP to Ford | 1.8 | $675.00 |
| 12/28/2018 | KSC | $375.00 | Review and revise letter to Defense enclosing Ptf's discovery requests | 0.1 | $37.50 |
| 12/31/2018 | ALM | $350.00 | Communication with Client | 0.2 | $70.00 |
| 1/9/2019 | KSC | $375.00 | Draft Objections to NOD of Plaintiff | 0.2 | $75.00 |
| 1/10/2019 | ALM | $350.00 | Review letter from Defense re Ptf's NOD of Ford's PMK/30(b)(6) | 0.1 | $35.00 |
| 1/10/2019 | KSC | $375.00 | Review responses and documents provided by Plaintiff to discovery requests to draft responses; Communication with Client | 0.9 | $337.50 |
| 1/10/2019 | KSC | $375.00 | Draft Ptf's response to Ford's ROGs | 0.6 | $225.00 |
| 1/10/2019 | KSC | $375.00 | Draft Ptf's response to Ford's RFA | 1.0 | $375.00 |
| 1/11/2019 | KSC | $375.00 | Draft Ptf's response to Ford's RFP | 0.8 | $300.00 |
| 1/11/2019 | KSC | $375.00 | Prepare Ptf's Document Production | 1.5 | $562.50 |
| 1/11/2019 | KSC | $375.00 | Review and revise letter to Defense enclosing Ptf's discovery responses | 0.1 | $37.50 |
| 1/11/2019 | KSC | $375.00 | Review Ford's Objections to NOD of PMK/30(b)(6) | 0.2 | $75.00 |
| 1/16/2019 | ALM | $350.00 | Review letter from Defense re request for withdrawal of Ford's PMK/30(b)(6) deposition | 0.1 | $35.00 |
| 1/16/2019 | KSC | $375.00 | Review [Proposed] Federal/State Coordination Order | 0.1 | N/C |
| 1/17/2019 | ALM | $350.00 | Review corresponded from Defense re rescheduling Ptfs' depositions (multiple cases) | 0.1 | $35.00 |
| 1/19/2019 | KSC | $375.00 | Email exchange with defense confirming proposed date for pltf deposition | 0.1 | $37.50 |
| 1/28/2019 | KSC | $375.00 | Review Amended NOD of Plaintiff | 0.1 | $37.50 |

| | | | | | |
|---|---|---|---|---|---|
| 1/30/2019 | KSC | $375.00 | Draft Objections to Amended NOD of Plaintiff | 0.1 | $37.50 |
| 1/30/2019 | KSC | $375.00 | Review email from defense requesting dates for pltf depositions (multiple cases) | 0.1 | N/C |
| 2/7/2019 | NF | $250.00 | Review memorandum of Ptf's Deposition | 0.3 | $75.00 |
| 2/11/2019 | KSC | $375.00 | Review Notice of Vehicle Inspection | 0.1 | $37.50 |
| 2/20/2019 | NF | $250.00 | Review and analyze Deft's response to Ptf's ROGs | 0.9 | $225.00 |
| 2/20/2019 | NF | $250.00 | Review and analyze Deft's response to Ptf's RFA | 1.1 | $275.00 |
| 2/20/2019 | NF | $250.00 | Review and analyze Deft's response to Ptf's RFP | 1.7 | $425.00 |
| 2/26/2019 | NF | $250.00 | Review Deft's Supplemental Rule 26 Initial Disclosures | 0.5 | $125.00 |
| 2/27/2019 | ALM | $350.00 | Review letter from Defense re dates of availability to conduct vehicle inspection (multiple cases) | 0.1 | N/C |
| 3/4/2019 | ALM | $350.00 | Communication with Expert | 0.2 | $70.00 |
| 3/11/2019 | KSC | $375.00 | Review Deft's RFP to draft response, Set Two | 0.1 | $37.50 |
| 3/11/2019 | KSC | $375.00 | Review Deft's RFP to draft response, Set Three | 0.2 | $75.00 |
| 3/11/2019 | KSC | $375.00 | Communication with Client | 0.2 | $75.00 |
| 3/13/2019 | KSC | $375.00 | Draft Objections to VI Notice; communication with Client | 0.3 | $112.50 |
| 3/18/2019 | KSC | $375.00 | Review Amended Notice of VI | 0.1 | $37.50 |
| 3/18/2019 | KSC | $375.00 | Communication with Expert | 0.2 | $75.00 |
| 3/19/2019 | KSC | $375.00 | Draft Objections to Amended VI Notice | 0.1 | $37.50 |
| 3/19/2019 | KSC | $375.00 | Communication with Client | 0.1 | $37.50 |
| 3/20/2019 | MM | $225.00 | Prepare for and attend vehicle inspection (travel included); Draft summary | 3.5 | $787.50 |
| 3/21/2019 | ALM | $350.00 | Review VI summary | 0.1 | $35.00 |
| 3/27/2019 | KSC | $375.00 | Communication with Client | 0.2 | $75.00 |
| 3/27/2019 | KSC | $375.00 | Draft Ptf's response to RFP, Set Two | 0.7 | $262.50 |
| 3/27/2019 | KSC | $375.00 | Draft Ptf's response to RFP, Set Three | 0.5 | $187.50 |
| 3/27/2019 | KSC | $375.00 | Prepare Ptf's Supplemental Document Production | 0.3 | $112.50 |
| 3/27/2019 | KSC | $375.00 | Review and revise letter to Defense enclosing Ptf's discovery responses, Set Nos. Two and Three | 0.1 | $37.50 |
| 5/15/2019 | RH | $450.00 | Draft NOD of Ford's PMK/30(b)(6) | 0.2 | $90.00 |
| 5/22/2019 | RH | $450.00 | Draft letter to Defense in response to 5/17/19 letter to meet and confer re NOD of Ford's PMK/30(b)(6) | 0.2 | $90.00 |
| 5/24/2019 | RH | $450.00 | Review Ford's Objections to NOD of PMK/30(b)(6) | 0.1 | $45.00 |

| | | | | | |
|---|---|---|---|---|---|
| 6/6/2019 | KSC | $375.00 | Review Court Minute Order re 6/5/19 Status Conference | 0.1 | N/C |
| 6/7/2019 | RH | $450.00 | Draft NOD of Ford's PMK/30b6 | 0.1 | $45.00 |
| 6/13/2019 | RH | $450.00 | Draft NOD and Depo Subp of South Bay's PMQ/30b6 | 0.3 | $135.00 |
| 6/18/2019 | RH | $450.00 | Review Ford's objections served to NOD of Ford's case 30b6 witness for case specific subjects | 0.1 | $45.00 |
| 6/24/2019 | RH | $450.00 | Review Ford's Objections to NOD of South Bay Ford PMK 30(b)(6) | 0.1 | $45.00 |
| 8/20/2019 | ALM | $350.00 | Draft NOD of Def's PMK30(b)(6) | 0.1 | $35.00 |
| 8/21/2019 | RH | $450.00 | Review Ford's Objection to NOD of PMK/30(b)(6) | 0.1 | $45.00 |
| 8/21/2019 | RH | $450.00 | Confer with Ed Lear re preparation for deposition of Ford's 30B6 witness; review files and send case documents and exhibits | 0.6 | $270.00 |
| 8/21/2019 | EOL | $595.00 | Prepare for deposition by reviewing prior depo transcript of Doss, underlying case-specific documents | 2.8 | $1,666.00 |
| 8/22/2019 | EOL | $595.00 | Attend deposition of Ford's PMK/30(b)(6) (take statement of non-appearance (travel included) | 3.2 | $1,904.00 |
| 10/7/2019 | RH | $450.00 | Draft NOD of Ford's PMK/30(b)(6) | 0.1 | $45.00 |
| 10/9/2019 | RH | $450.00 | Review letter from Defense to meet and confer re MDL PMK/30(b)(6) Depos (multiple cases) | 0.1 | $45.00 |
| 10/10/2019 | RH | $450.00 | Review Ford's Objections to NOD of PMK/30(b)(6) | 0.1 | $45.00 |
| 2/21/2020 | RH | $450.00 | Draft Opposition to Ford's motion to compel arbitration | 1.1 | $495.00 |
| 5/4/2020 | RH | $450.00 | Communication with RK and review files re involvement of co-counsel in arbitration briefs (split with Wirth) | 0.1 | $45.00 |
| 5/4/2020 | ALM | $350.00 | Meeting with RK/Russ: discuss upcoming hearing re arbitration (split with Wirth) | 0.1 | $35.00 |
| 5/6/2020 | RH | $450.00 | Multiple communications re arrangements for attendance at hearing on arbitration motions | 0.1 | $45.00 |
| 5/7/2020 | RH | $450.00 | Confer with CT re argument on Ford's arbitration motions (split with Wirth) | 0.2 | $90.00 |
| 5/12/2020 | RH | $450.00 | Prepare for hearing on motions to compel arbitration (Wirth, Fort) and status conference; extensive legal research (split with Wirth) | 3.0 | $1,350.00 |
| 5/14/2020 | NF | $250.00 | Review Court Minute Order re Motion to Compel Arbitration Hearing | 0.1 | N/C |

| | | | | | |
|---|---|---|---|---|---|
| 6/5/2020 | SBM | $550.00 | Review and analyze Deft's Rule 68 Offer of Judgment; Review Client docs | 0.2 | $110.00 |
| 6/5/2020 | ALM | $350.00 | Communication with Client | 0.3 | $105.00 |
| 6/19/2020 | ALM | $350.00 | Review and sign acceptance of Deft's Rule 68 Offer of Judgment | 0.1 | $35.00 |
| 6/19/2020 | ALM | $350.00 | Communication with Client | 0.2 | $70.00 |
| 6/22/2020 | DK | $250.00 | Prepare Joint Notice of Settlement | 0.1 | $25.00 |
| 6/26/2020 | DK | $250.00 | Review Deft's Notice of Withdrawal of MTC Arbitration | 0.1 | N/C |
| 7/1/2020 | NF | $250.00 | Review Court Order Dismissing Civil Action | 0.1 | N/C |
| 8/7/2020 | RH | $450.00 | Draft email to FMC counsel re deadlines for MAF in Bagwell/Fort pending Pedante ruling | 0.1 | N/C |
| 8/11/2020 | DK | $250.00 | Incorporate revisions to ex parte relief to extend time to file motion for attorney's fees including notice, memorandum, declaration and proposed order; confer with RK re same | 0.3 | $75.00 |
| 8/11/2020 | DK | $250.00 | Prepare ex parte application for extension to file motions for fees, costs and expenses including notice, memorandum, and declaration | 1.0 | $250.00 |
| 8/12/2020 | RK | $425.00 | Prepared notice of withdrawal and stipulation and proposed order | 0.3 | $127.50 |
| 8/12/2020 | RK | $425.00 | Prepared notice of withdrawal and stipulations and proposed order; communicated with Ford counsel re joint filing and finalized (split with Bagwell) | 0.6 | $255.00 |
| 9/16/2020 | DK | $250.00 | Draft Joint Stipulation for Extension of Time to file Motion for Attorneys Fees for attorney review | 0.6 | $150.00 |
| 9/16/2020 | RK | $425.00 | Prepared proposed orders for stipulation; | 0.2 | $85.00 |
| 9/17/2020 | RK | $425.00 | Began review of billing invoices in preparation for fee motion; reviewed court docket; begin drafting fee motion (split with Bagwell) | 2.4 | $1,020.00 |
| 9/17/2020 | RK | $425.00 | Call with A. Nassihi re fee motion scheduling | 0.2 | $85.00 |
| 9/22/2020 | RK | $425.00 | Drafted email re ex parte notice (split with Bagwell) | 0.1 | $42.50 |
| 9/23/2020 | RK | $425.00 | Prepared stipulation and proposed order and continunce of fee motion deadline | 0.2 | $85.00 |
| 9/23/2020 | RK | $425.00 | Continued drafting motion for attorney fees; performed legal research (split with Bagwell) | 2.0 | $850.00 |
| 9/23/2020 | RK | $425.00 | Prepared stipulation and proposed order and continunce of fee motion deadline | 0.2 | $85.00 |

| | | | | | |
|---|---|---|---|---|---|
| 9/23/2020 | RK | $425.00 | Call with A. Nassihi re stipulations | 0.4 | $170.00 |
| 9/24/2020 | RK | $425.00 | Reviewed Ford's proposed stipulation to continue; drafted email to P. Kiesel re same | 0.2 | $85.00 |
| 9/25/2020 | RK | $425.00 | Reviewed Ford's revised stipulation to confirm final draft | 0.1 | $42.50 |
| 10/1/2020 | SBM | $550.00 | Review and audit billing | 0.5 | $275.00 |
| 10/1/2020 | RK | $425.00 | Drafted email to M&C re fee motion (split) | 0.1 | $42.50 |
| 10/5/2020 | RK | $425.00 | Researched case authority provided by S. Taft re [redacted] | 0.8 | $340.00 |
| 10/5/2020 | RK | $425.00 | Call with S. Taft re legal research re [redacted] | 0.2 | $85.00 |
| 10/5/2020 | RK | $425.00 | Continued phone call with S. Taft, discuss Ford's refusal for status conference | 0.6 | $255.00 |
| 10/5/2020 | RK | $425.00 | Further discussions re fee motion matters with S. Taft, review proposed email to court clerk | 0.7 | $297.50 |
| 10/6/2020 | RK | $425.00 | Audited case-specific billing | 0.5 | $212.50 |
| 10/6/2020 | RK | $425.00 | Reviewed and analyzed court docket and case filings in preparation for fee motion | 1.0 | $425.00 |
| 10/7/2020 | RK | $425.00 | Continued drafting motion for attorney fees | 1.7 | $722.50 |
| 10/7/2020 | RK | $425.00 | Continued drafting motion for attorney fees | 3.8 | $1,615.00 |
| 10/8/2020 | RK | $425.00 | Began Drafted Declaration of S. Mikhov | 1.4 | $595.00 |
| 10/9/2020 | RK | $425.00 | Continued drafting Declaration of S. Mikhov; drafted declaration of B. Altman and R. Boucher; corresponded with attorneys re same; reviewed invoices and court docket | 4.0 | $1,700.00 |
| 10/9/2020 | RK | $425.00 | Continued drafting and finalizing fee motion; revised arguments, added record citations | 2.4 | $1,020.00 |
| 10/9/2020 | DK | $250.00 | Prepare Plaintiffs' Consolidated Motion for Costs and Expenses (Split with Fort) | 5.0 | $1,250.00 |
| TBD | RK | $425.00 | Review and analyze Defendant's Opposition to Motion for Attorney fees, Costs and Expenses *(Anticipated)* (Split with Bagwell) | 1.0 | $425.00 |
| TBD | DK | $250.00 | Review and analyze Defendant's Opposition to Motion for Costs and Expenses *(Anticipated)* (Split with Fort) | 0.5 | $125.00 |
| TBD | RK | $425.00 | Draft Plaintiff's Reply to Opposition to Plaintiff's Motion for Attorney fees, Costs and Expenses *(Anticipated)* (Split with Bagwell) | 5.0 | $2,125.00 |

| | | | | | |
|---|---|---|---|---|---|
| TBD | DK | $250.00 | Draft Plaintiff's Reply to Opposition to Plaintiff's Motion for Costs and Expenses *(Anticipated)* (Split with Fort) | 2.0 | $500.00 |
| TBD | RK | $425.00 | Prepare for and attend hearing on Plaintiff's Motion for Attorney fees, Costs and Expenses *(Anticipated)* (Split with Bagwell) | 1.2 | $510.00 |
| | | | Total Attorney Fees | 92.3 | $35,877.50 |

**Billing Rate Summary**

| Initials | Avg/Hr | Attorney/Staff | Hours | Amount |
|---|---|---|---|---|
| ALM | $350.00 | Amy Morse | 4.4 | $1,540.00 |
| DK | $250.00 | Daniel Kalinowski | 10.5 | $2,625.00 |
| EOL | $595.00 | Edward Lear | 6.0 | $3,570.00 |
| KSC | $375.00 | Kristina Stephenson-Cheang | 19.0 | $7,125.00 |
| MC | $300.00 | Maite Colón | 1.0 | $300.00 |
| MER | $325.00 | Mitchell Rosensweig | 1.3 | $422.50 |
| MM | $225.00 | Marisa Melero | 3.5 | $787.50 |
| NF | $250.00 | Natalee Fisher | 4.5 | $1,125.00 |
| RH | $450.00 | Russell Higgins | 8.6 | $3,870.00 |
| RK | $425.00 | Roger Kirnos | 31.3 | $13,302.50 |
| SBM | $550.00 | Steve Mikhov | 2.2 | $1,210.00 |

# EXHIBIT A-2

Bagwell, Robert Dean v. FMC

Knight Law Group LLP

Invoice

BC671076

2:17-cv-06632

MDL Case: 2:18-ML-02814

| Date | Attorney | Rate | Task | Time | FEE |
|---|---|---|---|---|---|
| | SBM | $550.00 | Initial communication with client and evaluation of client's claims | 1.0 | $550.00 |
| | SBM | $550.00 | Analyze vehicle documentation | 0.8 | $440.00 |
| | SBM | $550.00 | Communication with Client | 0.5 | $275.00 |
| 7/31/2017 | ALM | $350.00 | Communication with Client | 0.5 | $175.00 |
| 7/31/2017 | ALM | $350.00 | Draft Complaint | 0.5 | $175.00 |
| 7/31/2017 | SBM | $550.00 | Review and sign Complaint | 0.1 | $55.00 |
| 8/25/2017 | KSC | $375.00 | Review Court Notice of OSC and CMC | 0.1 | N/C |
| 9/12/2017 | SBM | $550.00 | Review Deft's Answer to Complaint | 0.3 | $165.00 |
| 9/12/2017 | KSC | $375.00 | Review Deft's Notice of Removal, Declaration of Tamara B.'s in Support of Notice of Removal, Declaration of Spencer H.'s in Support of Notice of Removal, Certification and Notice of Interested Parties | 0.4 | $150.00 |
| 9/12/2017 | ALM | $350.00 | Draft Notice of CMC and OSC | 0.1 | $35.00 |
| 9/15/2017 | KSC | $375.00 | Review Deft's Notice to Court and Adverse Party of Filing Notice of Removal | 0.1 | $37.50 |
| 9/19/2017 | KSC | $375.00 | Review Court Notice of Scheduling Conference | 0.1 | N/C |
| 9/19/2017 | KSC | $375.00 | Review Court Standing Order | 0.1 | $37.50 |
| 9/19/2017 | KSC | $375.00 | Review Court Notice of Assignment to US Judge | 0.1 | N/C |
| 9/21/2017 | KSC | $375.00 | Review Court Order re Transfer | 0.1 | $37.50 |
| 9/25/2017 | KSC | $375.00 | Review Court Notice of Scheduling Conference | 0.1 | N/C |
| 9/25/2017 | KSC | $375.00 | Review Court Standing Order for Civil Cases Assigned to Judge James Otero | 0.1 | $37.50 |
| 9/25/2017 | KSC | $375.00 | Review Court Order Setting Scheduling Conference | 0.1 | $37.50 |
| 10/3/2017 | KSC | $375.00 | Review letter from Defense re Ptf's Discovery requests | 0.3 | $112.50 |
| 10/3/2017 | ALM | $350.00 | Communication with Client | 0.3 | $105.00 |
| 10/5/2017 | MER | $325.00 | Email exchange with Defense to meet and confer re Motions to Remand (multiple cases) | 0.1 | N/C |
| 10/5/2017 | KSC | $375.00 | Email Exchange with Defense Counsel to withdraw state discovery in light of Removal to Federal Court | 0.1 | $37.50 |
| 10/5/2017 | RH | $450.00 | Prepare for, correspond with, and telephonic meet and confer with Defense Counsel re motion to remand | 0.3 | $135.00 |
| 10/6/2017 | SBM | $550.00 | Review letter from Defense re Settlement Offer | 0.1 | $55.00 |

| | | | | | |
|---|---|---|---|---|---|
| 10/10/2017 | KSC | $375.00 | Review letter from Defense following up on 9/28/17 letter re Ptf's discovery requests | 0.2 | $75.00 |
| 10/10/2017 | RH | $450.00 | Review and sign Notice of Appearance of Counsel | 0.1 | $45.00 |
| 10/10/2017 | RH | $450.00 | Draft Motion for Remand | 1.0 | $450.00 |
| 10/10/2017 | RH | $450.00 | Draft Declaration of Russell H. in Support of Motion for Remand | 0.5 | $225.00 |
| 10/31/2017 | RH | $450.00 | Email exchange with Defense re Motion to Remand (multiple cases) | 0.1 | N/C |
| 10/31/2017 | RH | $450.00 | Communication with Defense counsel re motions to remand, proposed ex parte to stay pending MDL, state coordination | 0.1 | $45.00 |
| 10/31/2017 | RH | $450.00 | Communication with Defense Counsel re motions to remand, proposed ex parte to stay pending MDL, state coordination; Review opposition to remand motion | 0.4 | $180.00 |
| 11/10/2017 | KSC | $375.00 | Review Court Notice re Stay | 0.1 | N/C |
| 11/24/2017 | ALM | $350.00 | Communication with Appearance Attorney re CMC hearing | 0.3 | $105.00 |
| 11/29/2017 | SBM | $550.00 | Review CMC hearing results; Communication with Client | 0.4 | $220.00 |
| 12/7/2017 | ALM | $350.00 | Draft Notice of CMC | 0.1 | $35.00 |
| 1/3/2018 | ALM | $350.00 | Communication with Client | 0.2 | $70.00 |
| 1/11/2018 | KSC | $375.00 | Review and revise Case Management Statement; Review file | 0.6 | $225.00 |
| 1/25/2018 | ALM | $350.00 | Communication with Appearance Attorney re CMC hearing | 0.3 | $105.00 |
| 1/29/2018 | SBM | $550.00 | Review CMC hearing results; Communication with Client | 0.3 | $165.00 |
| 2/15/2018 | KSC | $375.00 | Review Court Transfer Order | 0.1 | $37.50 |
| 3/8/2018 | KSC | $375.00 | Review and revise Case Management Statement | 0.3 | $112.50 |
| 3/12/2018 | KSC | $375.00 | Review Court Order Setting CMC (multiple cases) | 0.1 | N/C |
| 3/23/2018 | ALM | $350.00 | Communication with Appearance Attorney re CMC hearing | 0.3 | $105.00 |
| 3/27/2018 | SBM | $550.00 | Review and sign Notice of Association of Paul K. | 0.1 | $55.00 |
| 3/28/2018 | SBM | $550.00 | Review CMC hearing results; Communication with Client | 0.4 | $220.00 |
| 3/28/2018 | ALM | $350.00 | Communication with Client | 0.3 | $105.00 |
| 6/12/2018 | MER | $325.00 | Review and sign Notice of Appearance of Counsel | 0.1 | $32.50 |
| 6/22/2018 | SBM | $550.00 | Review and sign Joint Notice of Settlement | 0.1 | $55.00 |
| 6/25/2018 | ALM | $350.00 | Communication with Client | 0.3 | $105.00 |

| | | | | | |
|---|---|---|---|---|---|
| 9/17/2018 | ALM | $350.00 | Communication with Client | 0.3 | $105.00 |
| 10/15/2018 | ALM | $350.00 | Communication with Client | 0.2 | $70.00 |
| 11/9/2018 | ALM | $350.00 | Communication with Client | 0.3 | $105.00 |
| 11/15/2018 | MC | $300.00 | Draft Plaintiff's Rule 26 Initial Disclosures | 1.5 | $450.00 |
| 11/15/2018 | SBM | $550.00 | Review and sign Plaintiff's Rule 26 Initial Disclosures | 0.1 | $55.00 |
| 11/16/2018 | KSC | $375.00 | Review Deft's Rule 26 Initial Disclosures | 0.5 | $187.50 |
| 11/21/2018 | KSC | $375.00 | Review Deft's NOD of Plaintiff | 0.1 | $37.50 |
| 11/30/2018 | MER | $325.00 | Draft NOD and Depo Subp of Ford of Montebello's PMQ and Personnel (10 NODs) | 1.1 | $357.50 |
| 12/4/2018 | KSC | $375.00 | Review Deft's ROGs to Ptf, set one to draft responses | 0.2 | $75.00 |
| 12/4/2018 | KSC | $375.00 | Review Deft's RFA to Ptf, set one to draft responses | 0.3 | $112.50 |
| 12/4/2018 | KSC | $375.00 | Review Deft's RFP to Ptf, set one to draft responses | 0.3 | $112.50 |
| 12/4/2018 | KSC | $375.00 | Prepare discovery requests to send to Client in preparation of drafting responses, set one; Communication with Client | 0.7 | $262.50 |
| 12/7/2018 | KSC | $375.00 | Communication with Client | 0.3 | $112.50 |
| 12/7/2018 | MER | $325.00 | Draft NOD of Deft's PMK and cover letter | 0.2 | $65.00 |
| 12/12/2018 | ALM | $350.00 | Review letter from Defense re non-compliance of NOD of PMK and Dealership Personnel (multiple cases) | 0.1 | N/C |
| 12/13/2018 | KSC | $375.00 | Review Deft's Objections to Ford of Montebello's PMQ and Personnel (Objections) | 1.1 | $412.50 |
| 12/19/2018 | KSC | $375.00 | Review letter from Defense to meet and confer re NOD of PMK and Dealership Personnel | 0.1 | $37.50 |
| 12/21/2018 | KSC | $375.00 | Communication with Client | 0.2 | $75.00 |
| 12/26/2018 | KSC | $375.00 | Review letter from Defense re confirmation of Depositions of PMK and Dealership Personnel (multiple cases) | 0.1 | N/C |
| 12/28/2018 | KSC | $375.00 | Draft letter to Defense in response to 12/26/18 letter re Proposed Ptf's Deposition availability | 0.1 | $37.50 |
| 12/28/2018 | KSC | $375.00 | Draft Special ROGs to Plaintiff | 0.4 | $150.00 |
| 12/28/2018 | KSC | $375.00 | Draft RFA to Plaintiff | 1.2 | $450.00 |
| 12/28/2018 | KSC | $375.00 | Draft RFP to Plaintiff | 1.8 | $675.00 |
| 12/28/2018 | KSC | $375.00 | Review and revise letter to Defense enclosing Ptf's discovery requests | 0.1 | $37.50 |
| 12/28/2018 | KSC | $375.00 | Communication with Client | 0.2 | $75.00 |
| 12/31/2018 | KSC | $375.00 | Review Deft's NOD of Plaintiff; Draft Objections | 0.2 | $75.00 |

| | | | | | |
|---|---|---|---|---|---|
| 1/8/2019 | KSC | $375.00 | Review Deft's Amended NOD of Ptf | 0.1 | $37.50 |
| 1/9/2019 | KSC | $375.00 | Review letter from Defense re cancellation of NOD of PMK | 0.1 | $37.50 |
| 1/11/2019 | KSC | $375.00 | Review responses and docs provided by Plaintiff to discovery requests, set one to draft responses; Communication with Client | 1.2 | $450.00 |
| 1/11/2019 | KSC | $375.00 | Draft Ptf's Responses to ROGs, set one | 0.7 | $262.50 |
| 1/11/2019 | KSC | $375.00 | Draft Ptf's Responses to RFA, set one | 1.7 | $637.50 |
| 1/11/2019 | KSC | $375.00 | Draft Ptf's Responses to RFP, set one | 1.7 | $637.50 |
| 1/11/2019 | KSC | $375.00 | Review and revise letter to Defense enclosing Ptf's discovery responses | 0.1 | $37.50 |
| 1/11/2019 | KSC | $375.00 | Prepare Document Production | 1.5 | $562.50 |
| 1/11/2019 | KSC | $375.00 | Review Deft's Objections to NOD of PMK | 0.3 | $112.50 |
| 1/16/2019 | ALM | $350.00 | Review letter from Defense re NOD of PMK and Dealership Personnel | 0.1 | $35.00 |
| 1/16/2019 | KSC | $375.00 | Review Court [Proposed] Federal/State Coordination Order (multiple cases) | 0.1 | N/C |
| 1/23/2019 | KSC | $375.00 | Communication with Client | 0.2 | $75.00 |
| 1/24/2019 | KSC | $375.00 | Review Deft's Amended NOD of Ptf; Draft Objections | 0.2 | $75.00 |
| 1/28/2019 | KSC | $375.00 | Review letter from Defense re cancellation of Ptf's Deposition | 0.1 | $37.50 |
| 1/28/2019 | SS | $225.00 | Communication with Client | 0.6 | $135.00 |
| 2/13/2019 | KSC | $375.00 | Review and analyze Deft's Response to ROGs to Ptf | 0.8 | $300.00 |
| 2/13/2019 | KSC | $375.00 | Review and analyze Deft's Response to RFA to Ptf | 1.0 | $375.00 |
| 2/13/2019 | KSC | $375.00 | Review and analyze Deft's Response to RFP to Ptf | 0.8 | $300.00 |
| 2/13/2019 | KSC | $375.00 | Review and analyze Deft's Document Production | 0.9 | $337.50 |
| 2/20/2019 | KSC | $375.00 | Review letter from Defense re NOD of Ptfs and Vehicle Inspections (multiple cases) | 0.1 | N/C |
| 2/22/2019 | ALM | $350.00 | Review Deft's Second Amended NOD of Ptf | 0.1 | $35.00 |
| 2/25/2019 | KSC | $375.00 | Review Deft's Rule 26 Supplemental Initial Disclosures | 0.5 | $187.50 |
| 2/27/2019 | KSC | $375.00 | Review letter from Defense to meet and confer re NOD of Pltfs and Vehicle Inspections | 0.1 | $37.50 |
| 3/7/2019 | KSC | $375.00 | Communication with Client | 0.2 | $75.00 |
| 3/7/2019 | KSC | $375.00 | Review Deft's Second Amended NOD of Ptf; Draft Objections | 0.2 | $75.00 |
| 3/11/2019 | KSC | $375.00 | Review Deft's RFP, set two to Ptf to draft responses | 0.1 | $37.50 |

| | | | | | |
|---|---|---|---|---|---|
| 3/11/2019 | KSC | $375.00 | Prepare discovery requests to send to Client in preparation of drafting responses, set two; Communication with Client | 0.2 | $75.00 |
| 3/11/2019 | DK | $250.00 | Prepared client for tomorrow's deposition | 3.2 | $800.00 |
| 3/12/2019 | DK | $250.00 | Appeared at and defended Plaintiff's deposition | 6.9 | $1,725.00 |
| 3/12/2019 | DK | $250.00 | Travel to/from deposition location | 1.8 | $450.00 |
| 3/12/2019 | DK | $250.00 | Post-deposition report, including outcome at deposition, testimony taken, and recommendations for further handling | 0.6 | $150.00 |
| 3/13/2019 | SS | $225.00 | Review memorandum of Ptf's Deposition | 0.1 | $22.50 |
| 3/15/2019 | KSC | $375.00 | Review Deft's Amended NOD of VI | 0.1 | $37.50 |
| 3/15/2019 | DK | $250.00 | Prepared for tomorrow's vehicle inspection, and conferred with RH re same | 0.5 | $125.00 |
| 3/18/2019 | DK | $250.00 | Appeared at vehicle inspection | 3.1 | $775.00 |
| 3/18/2019 | DK | $250.00 | Communication with Client | 0.2 | $50.00 |
| 3/19/2019 | DK | $250.00 | Prepared post vehicle inspection report | 0.4 | $100.00 |
| 3/19/2019 | SS | $225.00 | Review VI summary | 0.1 | $22.50 |
| 3/21/2019 | DK | $250.00 | Communication with Client | 0.2 | $50.00 |
| 3/26/2019 | KSC | $375.00 | Draft Ptf's Responses to RFP, Set Two | 0.7 | $262.50 |
| 3/27/2019 | KSC | $375.00 | Review and revise letter to Defense enclosing Ptf's discovery responses | 0.1 | $37.50 |
| 3/29/2019 | ALM | $350.00 | Communication with Client | 0.3 | $105.00 |
| 4/1/2019 | ALM | $350.00 | Communication with Client | 0.3 | $105.00 |
| 4/2/2019 | KSC | $375.00 | Review Deft's Notice of Non-Party Subpoena to LA County Sheriff's Department | 0.1 | $37.50 |
| 4/2/2019 | KSC | $375.00 | Review Deft's Notice of Non-Party Subpoena to Montebello Police Department | 0.1 | $37.50 |
| 4/2/2019 | KSC | $375.00 | Review Deft's Notice of Non-Party Subpoena to LA Police Department | 0.1 | $37.50 |
| 4/3/2019 | KSC | $375.00 | Review Deft's Notice of Non-Party Subpoena to LA County Probation Department | 0.1 | $37.50 |
| 4/3/2019 | KSC | $375.00 | Review Deft's Notice of Non-Party Subpoena to CA Department of Alcoholic Beverage Control | 0.1 | $37.50 |
| 4/3/2019 | KSC | $375.00 | Review Deft's Notice of Non-Party Subpoena to CA Department of Motor Vehicles | 0.1 | $37.50 |
| 4/4/2019 | SS | $225.00 | Review Depo Transcript of Plaintiff; Draft summary | 1.9 | $427.50 |
| 4/12/2019 | ALM | $350.00 | Review letter from Department from Alcoholic Beverage Control re Doc Production | 0.1 | $35.00 |

| | | | | | |
|---|---|---|---|---|---|
| 4/19/2019 | KSC | $375.00 | Review Deft's Notice of Non-Party Subpoena to ACCO Engineered Systems | 0.1 | $37.50 |
| 4/22/2019 | KSC | $375.00 | Review Deft's RFP, Set Three to Ptf to draft responses | 0.2 | $75.00 |
| 4/22/2019 | KSC | $375.00 | Prepare discovery requests to send to Client in preparation of drafting responses, set three; Communication with Client | 0.2 | $75.00 |
| 4/29/2019 | KSC | $375.00 | Draft letter to Defense to meet and confer re Non-Party subpoenas | 0.3 | $112.50 |
| 4/30/2019 | DK | $250.00 | Communication with Client | 0.2 | $50.00 |
| 5/1/2019 | DK | $250.00 | Communication with Client | 0.4 | $100.00 |
| 5/3/2019 | DK | $250.00 | Communication with Client | 0.6 | $150.00 |
| 5/4/2019 | KSC | $375.00 | Review letter from Defense in response to 4/29/19 letter re Non-Party subpoenas | 0.1 | $37.50 |
| 5/6/2019 | KSC | $375.00 | Review responses and docs provided by Plaintiff to discovery requests to draft responses, set three; Communication with Client | 0.2 | $75.00 |
| 5/6/2019 | KSC | $375.00 | Draft Ptf's Responses to RFP, Set Three | 0.5 | $187.50 |
| 5/6/2019 | KSC | $375.00 | Review and revise letter to Defense enclosing Ptf's discovery responses | 0.1 | $37.50 |
| 5/15/2019 | RH | $450.00 | Draft NOD of Deft's PMK | 0.1 | $45.00 |
| 5/22/2019 | RH | $450.00 | Draft letter from Defense in response to 5/17/19 letter re NOD of PMK | 0.2 | $90.00 |
| 5/24/2019 | KSC | $375.00 | Review Deft's Objections NOD of PMK | 0.1 | $37.50 |
| 5/24/2019 | RH | $450.00 | Prepare for and attend Deft's PMK's Depo (travel included); Draft memorandum | 0.3 | $135.00 |
| 5/28/2019 | KSC | $375.00 | Review and analyze Def's Supplemental Doc Production | 0.3 | $112.50 |
| 6/6/2019 | KSC | $375.00 | Review Court Minute Order re Status Conference (multiple cases) | 0.1 | N/C |
| 6/6/2019 | DK | $250.00 | Communication with Client | 0.1 | $25.00 |
| 6/7/2019 | DK | $250.00 | Communication with Client | 0.4 | $100.00 |
| 6/7/2019 | RH | $450.00 | Review Amended NOD of Deft's PMK | 0.1 | $45.00 |
| 6/13/2019 | RH | $450.00 | Draft NOD of Ford of Montebello's PMQ | 0.1 | $45.00 |
| 6/19/2019 | KSC | $375.00 | Review Deft's Objections to NOD of PMK | 0.1 | $37.50 |
| 6/27/2019 | KSC | $375.00 | Review Ford of Montebello's Objections to NOD of PMQ | 0.1 | $37.50 |
| 6/27/2019 | KSC | $375.00 | Review FMC's Objections to NOD of Ford of Montebello's PMQ | 0.1 | $37.50 |
| 7/17/2019 | KSC | $375.00 | Review letter from Defense re requests for document production (multiple cases) | 0.1 | N/C |
| 8/26/2019 | ALM | $350.00 | Draft Second Amended Deft's NOD of PMK | 0.1 | $35.00 |

| | | | | | |
|---|---|---|---|---|---|
| 8/28/2019 | KSC | $375.00 | Review letter from Defense to meet and confer re NOD of Case Specific Witness (multiple cases) | 0.1 | N/C |
| 8/28/2019 | KSC | $375.00 | Review Deft's Notice of Non-Party Subpoena to ACCO Engineered Systems | 0.1 | $37.50 |
| 8/29/2019 | KSC | $375.00 | Review Deft's Response and NOD of PMK | 0.1 | $37.50 |
| 8/29/2019 | RH | $450.00 | Prepare for and attend Jacob Doss' Depo (travel included); Draft memorandum (split with two cases) | 6.0 | $2,700.00 |
| 8/30/2019 | SS | $225.00 | Review memorandum of Jacob Doss' Depo | 0.3 | $67.50 |
| 9/10/2019 | KSC | $375.00 | Email exchange with Defense re signed Stipulation (4 emails; 4 days) | 0.2 | $75.00 |
| 9/10/2019 | RH | $450.00 | Multiple communications with third party (ACCO) re Ford's objectionable SDT for Plaintiff's employment records | 0.4 | $180.00 |
| 9/12/2019 | KSC | $375.00 | Review Depo Transcript of Jacob Doss; Draft summary | 1.3 | $487.50 |
| 9/17/2019 | KSC | $375.00 | Email exchange with Defense re withdrawal of subpoena re ACCO Engineered Systems | 0.1 | $37.50 |
| 9/17/2019 | KSC | $375.00 | Review Court Order Granting Joint Stipulation to Strike Ptf's Claim of Loss of Income and Withdrawal Subpoena | 0.1 | $37.50 |
| 10/3/2019 | RH | $450.00 | Email exchange with Defense re withdrawal of subpoena | 0.2 | $90.00 |
| 1/13/2020 | DK | $250.00 | Communication with Client | 0.4 | $100.00 |
| 6/5/2020 | SBM | $550.00 | Review and analyze Deft's Offer of Judgement to Rule 68 Offer | 0.2 | $110.00 |
| 6/8/2020 | SBM | $550.00 | Communication with Client | 0.4 | $220.00 |
| 6/15/2020 | RK | $425.00 | Reviewed and analyzed Rule 68 Offer, reviewed case notes for analysis; conferred with D. Kalinowski re client offer | 0.2 | $85.00 |
| 6/15/2020 | DK | $250.00 | Communication with Client | 0.5 | $125.00 |
| 6/16/2020 | MM | $225.00 | Communication with Client | 0.2 | N/C |
| 6/17/2020 | MM | $225.00 | Communication with Client | 0.4 | N/C |
| 6/18/2020 | DK | $250.00 | Communication with Client | 0.5 | $125.00 |
| 6/19/2020 | RK | $425.00 | Reviewed and revised M&C letter re Rule 68 | 0.2 | $85.00 |
| 6/19/2020 | ALM | $350.00 | Review and sign Acceptance of Defts' Rule 68 Offer to Compromise | 0.1 | $35.00 |
| 6/22/2020 | RK | $425.00 | Reviewed and edited proposed NOS; drafted email to opposing counsel | 0.2 | $85.00 |
| 7/1/2020 | ALM | $350.00 | Review Court Order Dismissing Civil Action | 0.1 | $35.00 |
| 8/10/2020 | DK | $250.00 | Prepared ex parte application for extension to file motions for fees, costs and expenses including notice, memorandum, and declaration | 2.2 | $550.00 |

| | | | | | |
|---|---|---|---|---|---|
| 8/11/2020 | RK | $425.00 | Reviewed email from opposing counsel re stipulation to continue fee motion deadline; drafted email in response | 0.8 | $340.00 |
| 8/11/2020 | RK | $425.00 | Drafted notice of ex parte relief | 0.3 | $127.50 |
| 8/11/2020 | RK | $425.00 | Reviewd and revised ex parte application re extension for fee motion and supporting papers; confer with D. Kalinowski re same | 1.0 | $425.00 |
| 8/11/2020 | DK | $250.00 | Incorporated revisions to ex parte relief to extend time to file motion for attorney's fees including notice, memorandum, declaration and proposed order, and conferred with RK re same | 0.4 | $100.00 |
| 8/12/2020 | DK | $250.00 | Prepared draft joint stipulation to continue fee motion deadline and related dates including stipulation and proposed order | 0.3 | $75.00 |
| 8/12/2020 | RK | $425.00 | Review and sign Notice of Withdrawal of Ex Parte | 0.1 | $42.50 |
| 8/12/2020 | RK | $425.00 | Numerous back and forth emails with opposing re opposing counsel continuing to meet and confer re fee motion timing | 0.4 | $170.00 |
| 8/12/2020 | RK | $425.00 | Call with opposing counsel re fee motion deadline timing | 0.5 | $212.50 |
| 8/12/2020 | RK | $425.00 | Prepared notice of withdrawal and stipulations and proposed order; communicated with Ford counsel re joint filing and finalized (split with Fort) | 0.6 | $255.00 |
| 8/17/2020 | DK | $250.00 | Received and reviewed court's order re extension of time to file fee motion | 0.1 | $25.00 |
| 9/16/2020 | RK | $425.00 | Prepared proposed orders for stipulation; drafted email to opposing counsel | 0.3 | $127.50 |
| 9/17/2020 | RK | $425.00 | Began review of billing invoices in preparation for fee motion; reviewed court docket; begin drafting fee motion (split with Fort) | 2.4 | $1,020.00 |
| 9/22/2020 | RK | $425.00 | Drafted email re ex parte notice | 0.1 | $42.50 |
| 9/22/2020 | DK | $250.00 | Conducted brief legal research re court's authority to continue hearings on its calendar in anticipation of including case law in ex parte to continue fee motion hearing | 0.2 | $50.00 |
| 9/23/2020 | RK | $425.00 | Received and reviewed email from opposing counsel re ex parte application to continue fee motion | 0.2 | $85.00 |
| 9/23/2020 | RK | $425.00 | Conference with SBM, RH and others with PK and ST re fee applications | 0.4 | $170.00 |

| | | | | | |
|---|---|---|---|---|---|
| 9/23/2020 | RK | $425.00 | Continued drafting motion for attorney fees; performed legal research (split with Fort) | 2.0 | $850.00 |
| 9/23/2020 | RK | $425.00 | Drafted response to Ford's counsel email re continuance of fee motion deadline | 0.2 | $85.00 |
| 9/23/2020 | RK | $425.00 | Revised Stipulation per A. Nasihi email | 0.3 | $127.50 |
| 9/23/2020 | RK | $425.00 | Reviewed email from opposing counsel re stipulation; drafted response, call with P. Kiesel re settlements in other MDL cases with Judge Feess | 0.5 | $212.50 |
| 9/25/2020 | RK | $425.00 | Drafted rervised stipulation per M&C with Ford counsel | 0.2 | $85.00 |
| 9/25/2020 | RK | $425.00 | Reviewed Ford's revised stipulation to confirm final draft | 0.1 | $42.50 |
| 9/30/2020 | RK | $425.00 | Call with fee expert re fee motion | 0.3 | $127.50 |
| 10/1/2020 | SBM | $550.00 | Review and audit billing | 0.6 | $330.00 |
| 10/2/2020 | RK | $425.00 | M&C call with Ford re attorney fees | 0.5 | $212.50 |
| 10/5/2020 | RK | $425.00 | Reviewed email from opposing counsel re M&C conference; respond to the same | 0.2 | $85.00 |
| 10/6/2020 | RK | $425.00 | Audited case-specific billing | 0.5 | $212.50 |
| 10/6/2020 | RK | $425.00 | Reviewed and analyzed court docket and case filings in preparation for fee motion | 1.0 | $425.00 |
| 10/7/2020 | RK | $425.00 | Continued drafting motion for attorney fees | 1.7 | $722.50 |
| 10/8/2020 | RK | $425.00 | Continued drafting motion for attorney fees | 3.8 | $1,615.00 |
| 10/8/2020 | RK | $425.00 | Began Drafted Declaration of S. Mikhov | 1.4 | $595.00 |
| 10/9/2020 | RK | $425.00 | Continued drafting Declaration of S. Mikhov; drafted declaration of B. Altman and R. Boucher; corresponded with attorneys re same; reviewed invoices and court docket | 4.0 | $1,700.00 |
| 10/9/2020 | RK | $425.00 | Continued drafting and finalizing fee motion; revised arguments, added record citations | 2.4 | $1,020.00 |
| 10/9/2020 | DK | $250.00 | Prepare Plaintiffs' Consolidated Motion for Costs and Expenses (Split with Fort) | 5.0 | $1,250.00 |
| TBD | RK | $425.00 | Review and analyze Defendant's Opposition to Motion for Attorney fees *(Anticipated)* (Split with Fort) | 1.0 | $425.00 |
| TBD | DK | $250.00 | Review and analyze Defendant's Opposition to Motion for Costs and Expenses *(Anticipated)* (Split with Fort) | 0.5 | $125.00 |
| TBD | RK | $425.00 | Draft Plaintiff's Reply to Opposition to Plaintiff's Motion for Attorney fees *(Anticipated)* (Split with Fort) | 5.0 | $2,125.00 |

| | | | | | |
|---|---|---|---|---|---|
| TBD | DK | $250.00 | Draft Plaintiff's Reply to Opposition to Plaintiff's Motion for Costs and Expenses *(Anticipated)* (Split with Fort) | 2.0 | $500.00 |
| TBD | RK | $425.00 | Prepare for and attend hearing on Plaintiff's Motion for Attorney fees, Costs and Expenses *(Anticipated)* (Split with Fort) | 1.2 | $510.00 |
| | | | Total Attorney Fees | 119.8 | $43,705.00 |

**Billing Rate Summary**

| Initials | Avg/Hr | Attorney/Staff | Hours | Amount |
|---|---|---|---|---|
| ALM | $350.00 | Amy Morse | 5.2 | $1,820.00 |
| DK | $250.00 | Daniel Kalinowski | 30.7 | $7,675.00 |
| KSC | $375.00 | Kristina Stephenson-Cheang | 28.8 | $10,800.00 |
| MC | $300.00 | Maite Colón | 1.5 | $450.00 |
| MER | $325.00 | Mitchell Rosensweig | 1.4 | $455.00 |
| RH | $450.00 | Russell Higgins | 9.8 | $4,410.00 |
| RK | $425.00 | Roger Kirnos | 34.0 | $14,450.00 |
| SBM | $550.00 | Steve Mikhov | 5.4 | $2,970.00 |
| SS | $225.00 | Sundeep Samra | 3.0 | $675.00 |

# EXHIBIT N

**KNIGHT LAW GROUP, LLP**
Steve Mikhov (SBN 224676)
*stevem@knightlaw.com*
Roger Kirnos (SBN 283163)
*rogerk@knightlaw.com*
10250 Constellation Blvd., Suite 2500
Los Angeles, California 90067
Telephone: (310) 552-2250
Fax: (310) 552-7973

**THE ALTMAN LAW GROUP**
Bryan Charles Altman (SBN 122976)
*bryan@altmanlawroup.net*
10250 Constellation Blvd., Suite 2500
Los Angeles, California 90067
Telephone: (310) 277-8481
Fax: (310) 277-8483

**BOUCHER LLP**
Raymond P. Boucher (SBN 115364)
boucher@law.com
21600 Oxnard Street, Suite 600
Woodland Hills, CA 91367
Telephone: (818) 340-5400
Fax: (818) 340-5401

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **IN RE: FORD MOTOR CO. DPS6 POWERSHIFT TRANSMISSION PRODUCTS LIABILITY LITIGATION** | MDL No. 2:18-ML-02814-AB<br>*Honorable Andrew Birotte Jr.* |
| **THIS DOCUMENT RELATES ONLY TO:**<br><br>*Robert Bagwell v. Ford Motor Company, et al., 2:17-cv-06632-AB-FFMx*<br><br>*Sharon Fort v. Ford Motor Company, et. al., 2:17-cv-06631 AB (FFMx)* | **COMBINED DECLARATION OF ROGER KIRNOS IN SUPPORT OF REPLY TO FORD'S OPPOSITIONS TO PLAINTIFFS' MOTION FOR ATTORNEY FEES**<br><br>[Filed Concurrently with Plaintiffs' Reply and other Supporting Declarations]<br><br>Hearing Date: March 24, 2021<br>Time: 10:00 a.m.<br>Courtroom: 7B |

DECLARATION OF ROGER KIRNOS

I, Roger Kirnos, declare as follows:

1. I am an attorney at law duly licensed to practice before the courts of the State of California and the United States District Court, Central District of California and attorney of record for Plaintiff Sharon Fort ("Fort") and Plaintiff Robert Bagwell ("Bagwell") (together referred to as "Plaintiffs") in the instant action. I am a Partner at Knight Law Group, LLP ("Knight Law" or the "Firm"). I have personal knowledge of the following facts and, if sworn as a witness, I could and would testify to them competently. I make this declaration in support of Plaintiffs' Consolidated Reply to Defendant's Opposition to Motion for Attorney Fees (the "Motion").

2. The billing submitted with Plaintiffs' Consolidated Motion for Attorney Fees contained entries for anticipated time. This estimate was based on my experience for time it might typically take to prepare a reply to an opposition to a fee motion. However, Ford's oppositions contained 50 pages of briefing and additional argument concerning fees in the Declaration of John S. Pierce, plus four other declarations and sixty-one voluminous exhibits. I did not expect such an opposition and the amount of time necessary was substantially under-estimated. Given the substantial opposition briefing, numerous declarations and voluminous exhibits filed by Ford, the revised lodestar fee request for Bagwell is **$122,673.18** plus a 1.5 multiplier for a total of $181,387.46 and the revised request for *Fort* is **$117,585.68** plus a 1.5 multiplier for a total of $173,756.21. I have provided a revised billing invoice containing the actual time expended – with no-charge entries – to supplement the undated "anticipated" entries. A revised calculation for each Plaintiffs' fee request is provided in **Exhibit A-1.** A true and correct copy of the revised billing for Plaintiff Robert Bagwell is attached hereto as **Exhibit A-2.** A true and correct copy of the revised billing for Plaintiff Sharon Fort is attached hereto as **Exhibit A-3.**

3. On January 10, 2021, I wrote to Ford counsel attempting to meet and confer regarding their improperly disclosed experts. I informed Ford that none of its

experts have disclosed their hourly rate and asked Ford to provide the same consistent with the requirements of FRCP 26. I also asked Ford to provide its expert's billing records for the case, or else allow Knight Law to depose them. We had a Zoom conference on January 12, 2021 wherein we discussed these matters and others. Ford sent a confirmatory email thereafter. On January 15, 2021, I followed up with Ford counsel to obtain this information to avoid Plaintiffs' objection and request to exclude the experts. Ford ignored my efforts. A true and correct copy of the email communications is attached hereto as **Exhibit B**.

4. In August 2019, Ford Motor Company announced a new strategy in which it would begin issuing Form 1099s to Knight Law's clients who bring an action against it. Prior to this time, Ford has never once issued tax forms to clients. Form 1099s were issued in every instance to Knight Law. I have been working with Knight Law since 2012 as one of its associated counsel and took a position as Partner in 2017 so I am aware of Ford's practices in this regard.

5. Ford began this new policy on August 5, 2019 with a letter written by Ford's counsel at Gordon Rees Scully Mansuhkhani, LLP that stated Ford would be newly adhering to this 50-year-old obligation. On September 6, 2019, the same counsel sent a letter laid out general calculations asserting that a consumer's need to hire an attorney (after Ford already refused to provide relief to that consumer) and effort to hold Ford accountable for damages would be better off not filing any lawsuit in the first place, or alternatively to accept a low-ball offer that Ford should have made before a law firm got involved. On September 23, 2019, Ford wrote a letter threatening to withhold damages if consumers' confidential identification information was not provided, namely a social security number, and kindly reminded me to inform my clients of Ford's new punitive approach. A true and correct copy of Ford's August 5, 2019 letter is attached hereto as **Exhibit C.** A true and correct copy of Ford's September 6, 2019 letter is attached hereto as **Exhibit D.** A true and correct copy of Ford's September 23, 2019 letter is attached hereto as **Exhibit E.**

6. On November 20, 2020, I took the deposition of Ford's expert designated to opine on vehicle valuation and depreciation. Dr. David Harless provided his expert file. Among the documents in the file was an article from the New York Times that he relied upon. The document indicates, "[a]lmost two-thirds of the 34 Ford and Lincoln models in the survey scored much worse than 'Average,' which is the lowest rating." A true and correct copy of the article is attached hereto as **Exhibit F.**

7. Ford asserts that the attorney fee motions filed on behalf of Plaintiffs cost $41,406.26. I am not able to ascertain how Ford derived this number. Ford did not provide any information concerning how it reached this sum; not in its oppositions or in any of the declarations filed in support of the opposition. I identified the entries that actually pertain to drafting the fee motion and supporting papers, and the motion for costs and expenses, and have provided a spreadsheet calculating the time spent for both motions. The total time incurred for the motion is $22,400, which is split in half for each case and the motion for costs was $3,750. A true and correct copy of the spreadsheet that Knight Law staff created based on our combined assessment of time entries for drafting the motion for attorney fees and the motion for costs and expenses is attached hereto as **Exhibit G**.

8. Edward Lear is a Professional Responsibility attorney that my firm works with to ensure compliance with professional and ethical requirements. In or about 2019, Mr. Lear contacted my firm to inform us that of the State Bar's new rule requiring written notification and client consent of associations of counsel. Mr. Lear worked with us to prepare letters to send to clients, which we did and continue to do.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 19th day of January, 2021 at Los Angeles, California.

/s/Roger Kirnos
ROGER KIRNOS
Declarant

# EXHIBIT A-1

| Attorney Fees for IDP Work | |
|---|---|
| **Attorney Fees for IDP Work Split Pro-Rata (Pre-Pedante/Quintero)** | **Fees** |
| Knight Law Group, LLP | $468,835.00 |
| The Altman Law Group | $137,830.00 |
| Total | $606,665.00 |
| **1/15th** | **$40,444.33** |
| | |
| **Attorney Fees for IDP Work Split Pro-Rata (Post-Pedante/Quintero)** | **Fees** |
| Knight Law Group, LLP | $36,005.00 |
| The Altman Law Group | $116,150.00 |
| Boucher LLP | $68,180.00 |
| Total | $220,335.00 |
| **1/13th** | **$16,948.85** |

| Bagwell, Robert v. Ford | Fees |
|---|---|
| Knight Law Group, LLP | $64,695.00 |
| The Altman Law Group | $585.00 |
| Total Case Specific Attorney Fees | $65,280.00 |
| Attorney Fees for IDP Work Split Pro-Rata (Pre-Pedante/Quintero) 1/15th | $40,444.33 |
| Attorney Fees for IDP Work Split Pro-Rata (Post-Pedante/Quintero) 1/13th | $16,948.85 |
| Total Case Specific and IDP Work Split Pro-Rata Attorneys' Fees | $122,673.18 |
| .5x Lodestar Multiplier on Knight Law Group & Altman Law Group Fees | $58,714.28 |
| **Total Attorneys' Fees (including multiplier) in Bagwell v. Ford** | **$181,387.46** |

| Fort, Sharon v. Ford | Fees |
|---|---|
| Knight Law Group, LLP | $56,065.00 |
| The Altman Law Group | $4,127.50 |
| Total Case Specific Attorney Fees | $60,192.50 |
| Attorney Fees for IDP Work Split Pro-Rata (Pre-Pedante/Quintero) 1/15th | $40,444.33 |
| Attorney Fees for IDP Work Split Pro-Rata (Post-Pedante/Quintero) 1/13th | $16,948.85 |
| Total Case Specific and IDP Work Split Pro-Rata Attorneys' Fees | $117,585.68 |
| .5x Lodestar Multiplier on Knight Law Group & Altman Law Group Fees | $56,170.53 |
| **Total Attorneys' Fees (including multiplier) in Fort v. Ford** | **$173,756.21** |

| | |
|---|---|
| **Total Attorneys' Fees Requested in Motion** | **$355,143.67** |

| Firm | Firm Total |
|---|---|
| Knight Law Group, LLP | $188,810.56 |
| The Altman Law Group | $40,959.06 |
| Boucher LLP | $10,489.23 |
| **Total** | **$240,258.86** |

| Attorneys' Fee Request Summary | |
|---|---|
| Total Attorney Fees for IDP Work Split Pro-Rata per case | $57,393.18 |
| Total Attorney Fees for IDP Work Split Pro-Rata (2 cases: Bagwell, Fort) | $114,786.36 |
| Total Case Specific Attorney Fees (Bagwell, Fort) | $125,472.50 |
| Total IDP Work Split Pro-Rata and Case Specific Attorney Fees | $240,258.86 |
| .5x Lodestar Multiplier on Knight Law Group & Altman Law Group Fees | $114,884.81 |
| **Total Attorneys' Fees Requested in Motion** | **$355,143.67** |

# EXHIBIT A-2

Bagwell, Robert Dean v. FMC

Knight Law Group LLP

Invoice

BC671076

2:17-cv-06632

MDL Case: 2:18-ML-02814

| Date | Attorney | Rate | Task | Time | FEE |
|---|---|---|---|---|---|
| | SBM | $550.00 | Initial communication with client and evaluation of client's claims | 1.0 | $550.00 |
| | SBM | $550.00 | Analyze vehicle documentation | 0.8 | $440.00 |
| | SBM | $550.00 | Communication with Client | 0.5 | $275.00 |
| 7/31/2017 | ALM | $350.00 | Communication with Client | 0.5 | $175.00 |
| 7/31/2017 | ALM | $350.00 | Draft Complaint | 0.5 | $175.00 |
| 7/31/2017 | SBM | $550.00 | Review and sign Complaint | 0.1 | $55.00 |
| 8/25/2017 | KSC | $375.00 | Review Court Notice of OSC and CMC | 0.1 | N/C |
| 9/12/2017 | SBM | $550.00 | Review Deft's Answer to Complaint | 0.3 | $165.00 |
| 9/12/2017 | KSC | $375.00 | Review Deft's Notice of Removal, Declaration of Tamara B.'s in Support of Notice of Removal, Declaration of Spencer H.'s in Support of Notice of Removal, Certification and Notice of Interested Parties | 0.4 | $150.00 |
| 9/12/2017 | ALM | $350.00 | Draft Notice of CMC and OSC | 0.1 | $35.00 |
| 9/15/2017 | KSC | $375.00 | Review Deft's Notice to Court and Adverse Party of Filing Notice of Removal | 0.1 | $37.50 |
| 9/19/2017 | KSC | $375.00 | Review Court Notice of Scheduling Conference | 0.1 | N/C |
| 9/19/2017 | KSC | $375.00 | Review Court Standing Order | 0.1 | $37.50 |
| 9/19/2017 | KSC | $375.00 | Review Court Notice of Assignment to US Judge | 0.1 | N/C |
| 9/21/2017 | KSC | $375.00 | Review Court Order re Transfer | 0.1 | $37.50 |
| 9/25/2017 | KSC | $375.00 | Review Court Notice of Scheduling Conference | 0.1 | N/C |
| 9/25/2017 | KSC | $375.00 | Review Court Standing Order for Civil Cases Assigned to Judge James Otero | 0.1 | $37.50 |
| 9/25/2017 | KSC | $375.00 | Review Court Order Setting Scheduling Conference | 0.1 | $37.50 |
| 10/3/2017 | KSC | $375.00 | Review letter from Defense re Ptf's Discovery requests | 0.3 | $112.50 |
| 10/3/2017 | ALM | $350.00 | Communication with Client | 0.3 | $105.00 |
| 10/5/2017 | MER | $325.00 | Email exchange with Defense to meet and confer re Motions to Remand (multiple cases) | 0.1 | N/C |
| 10/5/2017 | KSC | $375.00 | Email Exchange with Defense Counsel to withdraw state discovery in light of Removal to Federal Court | 0.1 | $37.50 |
| 10/5/2017 | RH | $450.00 | Prepare for, correspond with, and telephonic meet and confer with Defense Counsel re motion to remand | 0.3 | $135.00 |
| 10/6/2017 | SBM | $550.00 | Review letter from Defense re Settlement Offer | 0.1 | $55.00 |

| | | | | | |
|---|---|---|---|---|---|
| 10/10/2017 | KSC | $375.00 | Review letter from Defense following up on 9/28/17 letter re Ptf's discovery requests | 0.2 | $75.00 |
| 10/10/2017 | RH | $450.00 | Review and sign Notice of Appearance of Counsel | 0.1 | $45.00 |
| 10/10/2017 | RH | $450.00 | Draft Motion for Remand | 1.0 | $450.00 |
| 10/10/2017 | RH | $450.00 | Draft Declaration of Russell H. in Support of Motion for Remand | 0.5 | $225.00 |
| 10/31/2017 | RH | $450.00 | Email exchange with Defense re Motion to Remand (multiple cases) | 0.1 | N/C |
| 10/31/2017 | RH | $450.00 | Communication with Defense counsel re motions to remand, proposed ex parte to stay pending MDL, state coordination | 0.1 | $45.00 |
| 10/31/2017 | RH | $450.00 | Communication with Defense Counsel re motions to remand, proposed ex parte to stay pending MDL, state coordination; Review opposition to remand motion | 0.4 | $180.00 |
| 11/10/2017 | KSC | $375.00 | Review Court Notice re Stay | 0.1 | N/C |
| 11/24/2017 | ALM | $350.00 | Communication with Appearance Attorney re CMC hearing | 0.3 | $105.00 |
| 11/29/2017 | SBM | $550.00 | Review CMC hearing results; Communication with Client | 0.4 | $220.00 |
| 12/7/2017 | ALM | $350.00 | Draft Notice of CMC | 0.1 | $35.00 |
| 1/3/2018 | ALM | $350.00 | Communication with Client | 0.2 | $70.00 |
| 1/11/2018 | KSC | $375.00 | Review and revise Case Management Statement; Review file | 0.6 | $225.00 |
| 1/25/2018 | ALM | $350.00 | Communication with Appearance Attorney re CMC hearing | 0.3 | $105.00 |
| 1/29/2018 | SBM | $550.00 | Review CMC hearing results; Communication with Client | 0.3 | $165.00 |
| 2/15/2018 | KSC | $375.00 | Review Court Transfer Order | 0.1 | $37.50 |
| 3/8/2018 | KSC | $375.00 | Review and revise Case Management Statement | 0.3 | $112.50 |
| 3/12/2018 | KSC | $375.00 | Review Court Order Setting CMC (multiple cases) | 0.1 | N/C |
| 3/23/2018 | ALM | $350.00 | Communication with Appearance Attorney re CMC hearing | 0.3 | $105.00 |
| 3/27/2018 | SBM | $550.00 | Review and sign Notice of Association of Paul K. | 0.1 | $55.00 |
| 3/28/2018 | SBM | $550.00 | Review CMC hearing results; Communication with Client | 0.4 | $220.00 |
| 3/28/2018 | ALM | $350.00 | Communication with Client | 0.3 | $105.00 |
| 6/12/2018 | MER | $325.00 | Review and sign Notice of Appearance of Counsel | 0.1 | $32.50 |
| 6/22/2018 | SBM | $550.00 | Review and sign Joint Notice of Settlement | 0.1 | $55.00 |
| 6/25/2018 | ALM | $350.00 | Communication with Client | 0.3 | $105.00 |
| 9/17/2018 | ALM | $350.00 | Communication with Client | 0.3 | $105.00 |

| | | | | | |
|---|---|---|---|---|---|
| 10/15/2018 | ALM | $350.00 | Communication with Client | 0.2 | $70.00 |
| 11/9/2018 | ALM | $350.00 | Communication with Client | 0.3 | $105.00 |
| 11/15/2018 | MC | $300.00 | Draft Plaintiff's Rule 26 Initial Disclosures | 1.5 | $450.00 |
| 11/15/2018 | SBM | $550.00 | Review and sign Plaintiff's Rule 26 Initial Disclosures | 0.1 | $55.00 |
| 11/16/2018 | KSC | $375.00 | Review Deft's Rule 26 Initial Disclosures | 0.5 | $187.50 |
| 11/21/2018 | KSC | $375.00 | Review Deft's NOD of Plaintiff | 0.1 | $37.50 |
| 11/30/2018 | MER | $325.00 | Draft NOD and Depo Subp of Ford of Montebello's PMQ and Personnel (10 NODs) | 1.1 | $357.50 |
| 12/4/2018 | KSC | $375.00 | Review Deft's ROGs to Ptf, set one to draft responses | 0.2 | $75.00 |
| 12/4/2018 | KSC | $375.00 | Review Deft's RFA to Ptf, set one to draft responses | 0.3 | $112.50 |
| 12/4/2018 | KSC | $375.00 | Review Deft's RFP to Ptf, set one to draft responses | 0.3 | $112.50 |
| 12/4/2018 | KSC | $375.00 | Prepare discovery requests to send to Client in preparation of drafting responses, set one; Communication with Client | 0.7 | $262.50 |
| 12/7/2018 | KSC | $375.00 | Communication with Client | 0.3 | $112.50 |
| 12/7/2018 | MER | $325.00 | Draft NOD of Deft's PMK and cover letter | 0.2 | $65.00 |
| 12/12/2018 | ALM | $350.00 | Review letter from Defense re non-compliance of NOD of PMK and Dealership Personnel (multiple cases) | 0.1 | N/C |
| 12/13/2018 | KSC | $375.00 | Review Deft's Objections to Ford of Montebello's PMQ and Personnel (Objections) | 1.1 | $412.50 |
| 12/19/2018 | KSC | $375.00 | Review letter from Defense to meet and confer re NOD of PMK and Dealership Personnel | 0.1 | $37.50 |
| 12/21/2018 | KSC | $375.00 | Communication with Client | 0.2 | $75.00 |
| 12/26/2018 | KSC | $375.00 | Review letter from Defense re confirmation of Depositions of PMK and Dealership Personnel (multiple cases) | 0.1 | N/C |
| 12/28/2018 | KSC | $375.00 | Draft letter to Defense in response to 12/26/18 letter re Proposed Ptf's Deposition availability | 0.1 | $37.50 |
| 12/28/2018 | KSC | $375.00 | Draft Special ROGs to Plaintiff | 0.4 | $150.00 |
| 12/28/2018 | KSC | $375.00 | Draft RFA to Plaintiff | 1.2 | $450.00 |
| 12/28/2018 | KSC | $375.00 | Draft RFP to Plaintiff | 1.8 | $675.00 |
| 12/28/2018 | KSC | $375.00 | Review and revise letter to Defense enclosing Ptf's discovery requests | 0.1 | $37.50 |
| 12/28/2018 | KSC | $375.00 | Communication with Client | 0.2 | $75.00 |
| 12/31/2018 | KSC | $375.00 | Review Deft's NOD of Plaintiff; Draft Objections | 0.2 | $75.00 |
| 1/8/2019 | KSC | $375.00 | Review Deft's Amended NOD of Ptf | 0.1 | $37.50 |

| | | | | | |
|---|---|---|---|---|---|
| 1/9/2019 | KSC | $375.00 | Review letter from Defense re cancellation of NOD of PMK | 0.1 | $37.50 |
| 1/11/2019 | KSC | $375.00 | Review responses and docs provided by Plaintiff to discovery requests, set one to draft responses; Communication with Client | 1.2 | $450.00 |
| 1/11/2019 | KSC | $375.00 | Draft Ptf's Responses to ROGs, set one | 0.7 | $262.50 |
| 1/11/2019 | KSC | $375.00 | Draft Ptf's Responses to RFA, set one | 1.7 | $637.50 |
| 1/11/2019 | KSC | $375.00 | Draft Ptf's Responses to RFP, set one | 1.7 | $637.50 |
| 1/11/2019 | KSC | $375.00 | Review and revise letter to Defense enclosing Ptf's discovery responses | 0.1 | $37.50 |
| 1/11/2019 | KSC | $375.00 | Prepare Document Production | 1.5 | $562.50 |
| 1/11/2019 | KSC | $375.00 | Review Deft's Objections to NOD of PMK | 0.3 | $112.50 |
| 1/16/2019 | ALM | $350.00 | Review letter from Defense re NOD of PMK and Dealership Personnel | 0.1 | $35.00 |
| 1/16/2019 | KSC | $375.00 | Review Court [Proposed] Federal/State Coordination Order (multiple cases) | 0.1 | N/C |
| 1/23/2019 | KSC | $375.00 | Communication with Client | 0.2 | $75.00 |
| 1/24/2019 | KSC | $375.00 | Review Deft's Amended NOD of Ptf; Draft Objections | 0.2 | $75.00 |
| 1/28/2019 | KSC | $375.00 | Review letter from Defense re cancellation of Ptf's Deposition | 0.1 | $37.50 |
| 1/28/2019 | SS | $225.00 | Communication with Client | 0.6 | $135.00 |
| 2/13/2019 | KSC | $375.00 | Review and analyze Deft's Response to ROGs to Ptf | 0.8 | $300.00 |
| 2/13/2019 | KSC | $375.00 | Review and analyze Deft's Response to RFA to Ptf | 1.0 | $375.00 |
| 2/13/2019 | KSC | $375.00 | Review and analyze Deft's Response to RFP to Ptf | 0.8 | $300.00 |
| 2/13/2019 | KSC | $375.00 | Review and analyze Deft's Document Production | 0.9 | $337.50 |
| 2/20/2019 | KSC | $375.00 | Review letter from Defense re NOD of Ptfs and Vehicle Inspections (multiple cases) | 0.1 | N/C |
| 2/22/2019 | ALM | $350.00 | Review Deft's Second Amended NOD of Ptf | 0.1 | $35.00 |
| 2/25/2019 | KSC | $375.00 | Review Deft's Rule 26 Supplemental Initial Disclosures | 0.5 | $187.50 |
| 2/27/2019 | KSC | $375.00 | Review letter from Defense to meet and confer re NOD of Pltfs and Vehicle Inspections | 0.1 | $37.50 |
| 3/7/2019 | KSC | $375.00 | Communication with Client | 0.2 | $75.00 |
| 3/7/2019 | KSC | $375.00 | Review Deft's Second Amended NOD of Ptf; Draft Objections | 0.2 | $75.00 |
| 3/11/2019 | KSC | $375.00 | Review Deft's RFP, set two to Ptf to draft responses | 0.1 | $37.50 |
| 3/11/2019 | KSC | $375.00 | Prepare discovery requests to send to Client in preparation of drafting responses, set two; Communication with Client | 0.2 | $75.00 |

| | | | | | |
|---|---|---|---|---|---|
| 3/11/2019 | DK | $250.00 | Prepared client for tomorrow's deposition | 3.2 | $800.00 |
| 3/12/2019 | DK | $250.00 | Appeared at and defended Plaintiff's deposition | 6.9 | $1,725.00 |
| 3/12/2019 | DK | $250.00 | Travel to/from deposition location | 1.8 | $450.00 |
| 3/12/2019 | DK | $250.00 | Post-deposition report, including outcome at deposition, testimony taken, and recommendations for further handling | 0.6 | $150.00 |
| 3/13/2019 | SS | $225.00 | Review memorandum of Ptf's Deposition | 0.1 | $22.50 |
| 3/15/2019 | KSC | $375.00 | Review Deft's Amended NOD of VI | 0.1 | $37.50 |
| 3/15/2019 | DK | $250.00 | Prepared for tomorrow's vehicle inspection, and conferred with RH re same | 0.5 | $125.00 |
| 3/18/2019 | DK | $250.00 | Appeared at vehicle inspection | 3.1 | $775.00 |
| 3/18/2019 | DK | $250.00 | Communication with Client | 0.2 | $50.00 |
| 3/19/2019 | DK | $250.00 | Prepared post vehicle inspection report | 0.4 | $100.00 |
| 3/19/2019 | SS | $225.00 | Review VI summary | 0.1 | $22.50 |
| 3/21/2019 | DK | $250.00 | Communication with Client | 0.2 | $50.00 |
| 3/26/2019 | KSC | $375.00 | Draft Ptf's Responses to RFP, Set Two | 0.7 | $262.50 |
| 3/27/2019 | KSC | $375.00 | Review and revise letter to Defense enclosing Ptf's discovery responses | 0.1 | $37.50 |
| 3/29/2019 | ALM | $350.00 | Communication with Client | 0.3 | $105.00 |
| 4/1/2019 | ALM | $350.00 | Communication with Client | 0.3 | $105.00 |
| 4/2/2019 | KSC | $375.00 | Review Deft's Notice of Non-Party Subpoena to LA County Sheriff's Department | 0.1 | $37.50 |
| 4/2/2019 | KSC | $375.00 | Review Deft's Notice of Non-Party Subpoena to Montebello Police Department | 0.1 | $37.50 |
| 4/2/2019 | KSC | $375.00 | Review Deft's Notice of Non-Party Subpoena to LA Police Department | 0.1 | $37.50 |
| 4/3/2019 | KSC | $375.00 | Review Deft's Notice of Non-Party Subpoena to LA County Probation Department | 0.1 | $37.50 |
| 4/3/2019 | KSC | $375.00 | Review Deft's Notice of Non-Party Subpoena to CA Department of Alcoholic Beverage Control | 0.1 | $37.50 |
| 4/3/2019 | KSC | $375.00 | Review Deft's Notice of Non-Party Subpoena to CA Department of Motor Vehicles | 0.1 | $37.50 |
| 4/4/2019 | SS | $225.00 | Review Depo Transcript of Plaintiff; Draft summary | 1.9 | $427.50 |
| 4/12/2019 | ALM | $350.00 | Review letter from Department from Alcoholic Beverage Control re Doc Production | 0.1 | $35.00 |
| 4/19/2019 | KSC | $375.00 | Review Deft's Notice of Non-Party Subpoena to ACCO Engineered Systems | 0.1 | $37.50 |
| 4/22/2019 | KSC | $375.00 | Review Deft's RFP, Set Three to Ptf to draft responses | 0.2 | $75.00 |

| | | | | | |
|---|---|---|---|---|---|
| 4/22/2019 | KSC | $375.00 | Prepare discovery requests to send to Client in preparation of drafting responses, set three; Communication with Client | 0.2 | $75.00 |
| 4/29/2019 | KSC | $375.00 | Draft letter to Defense to meet and confer re Non-Party subpoenas | 0.3 | $112.50 |
| 4/30/2019 | DK | $250.00 | Communication with Client | 0.2 | $50.00 |
| 5/1/2019 | DK | $250.00 | Communication with Client | 0.4 | $100.00 |
| 5/3/2019 | DK | $250.00 | Communication with Client | 0.6 | $150.00 |
| 5/4/2019 | KSC | $375.00 | Review letter from Defense in response to 4/29/19 letter re Non-Party subpoenas | 0.1 | $37.50 |
| 5/6/2019 | KSC | $375.00 | Review responses and docs provided by Plaintiff to discovery requests to draft responses, set three; Communication with Client | 0.2 | $75.00 |
| 5/6/2019 | KSC | $375.00 | Draft Ptf's Responses to RFP, Set Three | 0.5 | $187.50 |
| 5/6/2019 | KSC | $375.00 | Review and revise letter to Defense enclosing Ptf's discovery responses | 0.1 | $37.50 |
| 5/15/2019 | RH | $450.00 | Draft NOD of Deft's PMK | 0.1 | $45.00 |
| 5/22/2019 | RH | $450.00 | Draft letter from Defense in response to 5/17/19 letter re NOD of PMK | 0.2 | $90.00 |
| 5/24/2019 | KSC | $375.00 | Review Deft's Objections NOD of PMK | 0.1 | $37.50 |
| 5/24/2019 | RH | $450.00 | Prepare for and attend Deft's PMK's Depo (travel included); Draft memorandum | 0.3 | $135.00 |
| 5/28/2019 | KSC | $375.00 | Review and analyze Def's Supplemental Doc Production | 0.3 | $112.50 |
| 6/6/2019 | KSC | $375.00 | Review Court Minute Order re Status Conference (multiple cases) | 0.1 | N/C |
| 6/6/2019 | DK | $250.00 | Communication with Client | 0.1 | $25.00 |
| 6/7/2019 | DK | $250.00 | Communication with Client | 0.4 | $100.00 |
| 6/7/2019 | RH | $450.00 | Review Amended NOD of Deft's PMK | 0.1 | $45.00 |
| 6/13/2019 | RH | $450.00 | Draft NOD of Ford of Montebello's PMQ | 0.1 | $45.00 |
| 6/19/2019 | KSC | $375.00 | Review Deft's Objections to NOD of PMK | 0.1 | $37.50 |
| 6/27/2019 | KSC | $375.00 | Review Ford of Montebello's Objections to NOD of PMQ | 0.1 | $37.50 |
| 6/27/2019 | KSC | $375.00 | Review FMC's Objections to NOD of Ford of Montebello's PMQ | 0.1 | $37.50 |
| 7/17/2019 | KSC | $375.00 | Review letter from Defense re requests for document production (multiple cases) | 0.1 | N/C |
| 8/26/2019 | ALM | $350.00 | Draft Second Amended Deft's NOD of PMK | 0.1 | $35.00 |
| 8/28/2019 | KSC | $375.00 | Review letter from Defense to meet and confer re NOD of Case Specific Witness (multiple cases) | 0.1 | N/C |
| 8/28/2019 | KSC | $375.00 | Review Deft's Notice of Non-Party Subpoena to ACCO Engineered Systems | 0.1 | $37.50 |
| 8/29/2019 | KSC | $375.00 | Review Deft's Response and NOD of PMK | 0.1 | $37.50 |

| | | | | | |
|---|---|---|---|---|---|
| 8/29/2019 | RH | $450.00 | Prepare for and attend Jacob Doss' Depo (travel included); Draft memorandum (split with two cases) | 6.0 | $2,700.00 |
| 8/30/2019 | SS | $225.00 | Review memorandum of Jacob Doss' Depo | 0.3 | $67.50 |
| 9/10/2019 | KSC | $375.00 | Email exchange with Defense re signed Stipulation (4 emails; 4 days) | 0.2 | $75.00 |
| 9/10/2019 | RH | $450.00 | Multiple communications with third party (ACCO) re Ford's objectionable SDT for Plaintiff's employment records | 0.4 | $180.00 |
| 9/12/2019 | KSC | $375.00 | Review Depo Transcript of Jacob Doss; Draft summary | 1.3 | $487.50 |
| 9/17/2019 | KSC | $375.00 | Email exchange with Defense re withdrawal of subpoena re ACCO Engineered Systems | 0.1 | $37.50 |
| 9/17/2019 | KSC | $375.00 | Review Court Order Granting Joint Stipulation to Strike Ptf's Claim of Loss of Income and Withdrawal Subpoena | 0.1 | $37.50 |
| 10/3/2019 | RH | $450.00 | Email exchange with Defense re withdrawal of subpoena | 0.2 | $90.00 |
| 1/13/2020 | DK | $250.00 | Communication with Client | 0.4 | $100.00 |
| 6/5/2020 | SBM | $550.00 | Review and analyze Deft's Offer of Judgement to Rule 68 Offer | 0.2 | $110.00 |
| 6/8/2020 | SBM | $550.00 | Communication with Client | 0.4 | $220.00 |
| 6/15/2020 | RK | $425.00 | Reviewed and analyzed Rule 68 Offer, reviewed case notes for analysis; conferred with D. Kalinowski re client offer | 0.2 | $85.00 |
| 6/15/2020 | DK | $250.00 | Communication with Client | 0.5 | $125.00 |
| 6/16/2020 | MM | $225.00 | Communication with Client | 0.2 | N/C |
| 6/17/2020 | MM | $225.00 | Communication with Client | 0.4 | N/C |
| 6/18/2020 | DK | $250.00 | Communication with Client | 0.5 | $125.00 |
| 6/19/2020 | RK | $425.00 | Reviewed and revised M&C letter re Rule 68 | 0.2 | $85.00 |
| 6/19/2020 | ALM | $350.00 | Review and sign Acceptance of Defts' Rule 68 Offer to Compromise | 0.1 | $35.00 |
| 6/22/2020 | RK | $425.00 | Reviewed and edited proposed NOS; drafted email to opposing counsel | 0.2 | $85.00 |
| 7/1/2020 | ALM | $350.00 | Review Court Order Dismissing Civil Action | 0.1 | $35.00 |
| 8/10/2020 | DK | $250.00 | Prepared ex parte application for extension to file motions for fees, costs and expenses including notice, memorandum, and declaration | 2.2 | $550.00 |
| 8/11/2020 | RK | $425.00 | Reviewed email from opposing counsel re stipulation to continue fee motion deadline; drafted email in response | 0.8 | $340.00 |
| 8/11/2020 | RK | $425.00 | Drafted notice of ex parte relief | 0.3 | $127.50 |
| 8/11/2020 | RK | $425.00 | Reviewd and revised ex parte application re extension for fee motion and supporting papers; confer with D. Kalinowski re same | 1.0 | $425.00 |

| | | | | | |
|---|---|---|---|---|---|
| 8/11/2020 | DK | $250.00 | Incorporated revisions to ex parte relief to extend time to file motion for attorney's fees including notice, memorandum, declaration and proposed order, and conferred with RK re same | 0.4 | $100.00 |
| 8/12/2020 | DK | $250.00 | Prepared draft joint stipulation to continue fee motion deadline and related dates including stipulation and proposed order | 0.3 | $75.00 |
| 8/12/2020 | RK | $425.00 | Review and sign Notice of Withdrawal of Ex Parte | 0.1 | $42.50 |
| 8/12/2020 | RK | $425.00 | Numerous back and forth emails with opposing re opposing counsel continuing to meet and confer re fee motion timing | 0.4 | $170.00 |
| 8/12/2020 | RK | $425.00 | Call with opposing counsel re fee motion deadline timing | 0.5 | $212.50 |
| 8/12/2020 | RK | $425.00 | Prepared notice of withdrawal and stipulations and proposed order; communicated with Ford counsel re joint filing and finalized (split with Fort) | 0.6 | $255.00 |
| 8/17/2020 | DK | $250.00 | Received and reviewed court's order re extension of time to file fee motion | 0.1 | $25.00 |
| 9/16/2020 | RK | $425.00 | Prepared proposed orders for stipulation; drafted email to opposing counsel | 0.3 | $127.50 |
| 9/17/2020 | RK | $425.00 | Began review of billing invoices in preparation for fee motion; reviewed court docket; begin drafting fee motion (split with Fort) | 2.4 | $1,020.00 |
| 9/22/2020 | RK | $425.00 | Drafted email re ex parte notice | 0.1 | $42.50 |
| 9/22/2020 | DK | $250.00 | Conducted brief legal research re court's authority to continue hearings on its calendar in anticipation of including case law in ex parte to continue fee motion hearing | 0.2 | $50.00 |
| 9/23/2020 | RK | $425.00 | Received and reviewed email from opposing counsel re ex parte application to continue fee motion | 0.2 | $85.00 |
| 9/23/2020 | RK | $425.00 | Conference with SBM, RH and others with PK and ST re fee applications | 0.4 | $170.00 |
| 9/23/2020 | RK | $425.00 | Continued drafting motion for attorney fees; performed legal research (split with Fort) | 2.0 | $850.00 |
| 9/23/2020 | RK | $425.00 | Drafted response to Ford's counsel email re continuance of fee motion deadline | 0.2 | $85.00 |
| 9/23/2020 | RK | $425.00 | Revised Stipulation per A. Nasihi email | 0.3 | $127.50 |

| | | | | | |
|---|---|---|---|---|---|
| 9/23/2020 | RK | $425.00 | Reviewed email from opposing counsel re stipulation; drafted response, call with P. Kiesel re settlements in other MDL cases with Judge Feess | 0.5 | $212.50 |
| 9/25/2020 | RK | $425.00 | Drafted rervised stipulation per M&C with Ford counsel | 0.2 | $85.00 |
| 9/25/2020 | RK | $425.00 | Reviewed Ford's revised stipulation to confirm final draft | 0.1 | $42.50 |
| 9/30/2020 | RK | $425.00 | Call with fee expert re fee motion | 0.3 | $127.50 |
| 10/1/2020 | SBM | $550.00 | Review and audit billing | 0.6 | $330.00 |
| 10/2/2020 | RK | $425.00 | M&C call with Ford re attorney fees | 0.5 | $212.50 |
| 10/5/2020 | RK | $425.00 | Reviewed email from opposing counsel re M&C conference; respond to the same | 0.2 | $85.00 |
| 10/6/2020 | RK | $425.00 | Audited case-specific billing | 0.5 | $212.50 |
| 10/6/2020 | RK | $425.00 | Reviewed and analyzed court docket and case filings in preparation for fee motion | 1.0 | $425.00 |
| 10/7/2020 | RK | $425.00 | Continued drafting motion for attorney fees | 1.7 | $722.50 |
| 10/8/2020 | RK | $425.00 | Continued drafting motion for attorney fees | 3.8 | $1,615.00 |
| 10/8/2020 | RK | $425.00 | Began Drafted Declaration of S. Mikhov | 1.4 | $595.00 |
| 10/9/2020 | RK | $425.00 | Continued drafting Declaration of S. Mikhov; drafted declaration of B. Altman and R. Boucher; corresponded with attorneys re same; reviewed invoices and court docket | 4.0 | $1,700.00 |
| 10/9/2020 | RK | $425.00 | Continued drafting and finalizing fee motion; revised arguments, added record citations | 2.4 | $1,020.00 |
| 10/9/2020 | DK | $250.00 | Prepare Plaintiffs' Consolidated Motion for Costs and Expenses (Split with Fort) | 5.0 | $1,250.00 |
| 10/16/2020 | DK | $250.00 | Prepared proposed draft stipulation re modify briefing schedule re motion for costs | 0.4 | $100.00 |
| 10/16/2020 | DK | $250.00 | Exchanged email correspondence with opposing counsel re proposed stipulation to modify deadlines re motion for costs | 0.2 | $50.00 |
| 10/16/2020 | DK | $250.00 | Prepared draft joint stipulation to continue deadlines to file opposition and reply and conferred with RK re same | 0.3 | $75.00 |
| 10/20/2020 | DK | $250.00 | Prepared and finalized notice of errata re memorandum in support of motion for cots and expenses and conferred with RK re same | 0.4 | N/C |
| 10/20/2020 | DK | $250.00 | Exchanged email with opposing counsel re stipulation to extend deadline for opposition and reply | 0.2 | $50.00 |

| | | | | | |
|---|---|---|---|---|---|
| 10/24/2020 | RK | $425.00 | Conference with opposing counsel re M&C re briefing schedule on various fee related motions | 0.5 | $212.50 |
| 10/26/2020 | RK | $425.00 | Reviewed and revised Ford's proposed stipulation | 0.3 | $127.50 |
| 10/26/2020 | RK | $425.00 | Further meeting and conferring with Ford re briefing schedule, revised briefing schedule, call with A. Nassihi | 0.2 | $85.00 |
| 12/18/2020 | RK | $425.00 | Reviewed and annotated declarations in support of Opp to MAF | 0.5 | $212.50 |
| 12/18/2020 | RK | $425.00 | Reviewed and annotated Opposition to Fort/Bagwell case fees; reviewed RJNs; reviewed various exhibits | 1.4 | $595.00 |
| 12/18/2020 | RK | $425.00 | Reviewed and annotated Ford's Opposition to Fort/Bagwell common fees | 0.8 | $340.00 |
| 12/19/2020 | RK | $425.00 | Began drafting Reply to Ford's Opp to fee motion, outlined arguments, reviewed case orders | 1.7 | $722.50 |
| 12/21/2020 | RK | $425.00 | Call with expert re Ford expert declaration/analysis | 0.3 | $127.50 |
| 12/21/2020 | RK | $425.00 | Confer with C. Swanson re Ford's opposition to fee motion | 0.2 | N/C |
| 12/23/2020 | RK | $425.00 | Drafted Reply to Opp to Fee Motion | 1.1 | $467.50 |
| 12/24/2020 | RK | $425.00 | Drafted Reply to Opposition to Fee Motion | 2.3 | $977.50 |
| 12/26/2020 | RK | $425.00 | Drafted Reply to Opposition to Fee Motion | 1.0 | N/C |
| 1/4/2021 | RK | $425.00 | Call with fee expert | 0.2 | $85.00 |
| 1/5/2021 | RK | $425.00 | Continued drafting portions of Reply to Case-Specific Opposition to fee motion; legal research and analysis | 0.9 | N/C |
| 1/6/2021 | RK | $425.00 | Continued drafting Reply to Case-Specific fee opp | 2.4 | $1,020.00 |
| 1/8/2021 | ZP | $250.00 | Pulled documents for RK and DropBoxed. | 0.3 | N/C |
| 1/8/2021 | ZP | $250.00 | Reviewed Gregory Overla deposition for SBA non-fraud language. | 1.0 | $250.00 |
| 1/9/2021 | ZP | $250.00 | Reviewed McClain depositions for non-Fraud SBA questions and language. | 1.4 | $350.00 |
| 1/9/2021 | ZP | $250.00 | Reviewed Mark Tuneff deposition for SBA non-fraud language. | 0.9 | $225.00 |

| | | | | | |
|---|---|---|---|---|---|
| 1/9/2021 | RK | $425.00 | Further review of exhibits attached to Opposition to fee motion, reviewed declarations to identify declarants to exhibits and relevance of each; reviewed and analyzed J. Pierce declaration thoroughly and annotated exhibits; concurrently continued drafting Reply to Opposition to Fee Motion; research additional case law in support of reply | 5.2 | $2,210.00 |
| 1/10/2021 | RK | $425.00 | Legal research re categories of objections in Pierce declaration; and prevailing party authority; reviewed case files for legal authority on responsive arguments | 0.7 | $297.50 |
| 1/10/2021 | RK | $425.00 | Drafted M&C email to opposing counsel re fee reply issues | 0.3 | $127.50 |
| 1/10/2021 | RK | $425.00 | Reviewed and analyzed Opposition for "Common Work Fees" and prior annotations; cite checked cases cited by Ford; continued drafting Reply | 2.1 | $892.50 |
| 1/11/2021 | RK | $425.00 | Continued working on Reply; reviewed documents filed in MDL, continued to review transcripts | 2.7 | $1,147.50 |
| 1/12/2021 | RK | $425.00 | Legal research re notice of appearance; drafted reply | 0.3 | $127.50 |
| 1/12/2021 | RK | $425.00 | Legal research re double taxation argument | 0.6 | $255.00 |
| 1/13/2021 | RK | $425.00 | Drafted email to Ira Rheingold / NACA re double taxation | 0.3 | $127.50 |
| 1/13/2012 | RK | $425.00 | Emails and calls with E. Lear and R. Boucher re declarations; coordinated with D. Kalinowski and Z. Powell re declarations | 0.2 | N/C |
| 1/13/2021 | RK | $425.00 | Continued work on Reply | 0.4 | $170.00 |
| 1/13/2021 | RK | $425.00 | Reviewed email from A. Nassihi; respond to same | 0.1 | N/C |
| 1/13/2021 | RK | $425.00 | Call with A. Nassihi | 0.1 | N/C |
| 1/13/2021 | RK | $425.00 | Drafted Stipulation for Additional Pages | 0.2 | N/C |
| 1/13/2021 | RK | $425.00 | Completed first draft of Reply, reviewed billing invoices, legal research to supplement factual arguments, reviewed Ford declarations | 2.4 | $1,020.00 |
| 1/14/2021 | RK | $425.00 | Drafted Proposed Order re stipulation for page limit | 0.1 | N/C |
| 1/14/2021 | RK | $425.00 | Emails and calls with E. Lear and R. Boucher re declarations; coordinated with D. Kalinowski and Z. Powell re declarations | 0.2 | N/C |

| | | | | | |
|---|---|---|---|---|---|
| 1/14/2021 | RK | $425.00 | Reviewed and edited draft of Plaintiff's position re Daubert motions; performed legal research | 0.4 | $170.00 |
| 1/14/2021 | RK | $425.00 | Reviewed and analyzed Ford's Opposition to Motion to Tax Costs; reviewed declaration and reviewed/analzed referenced exhibits and charts/tables, initial review of cost receipts/invoices in dispute; drafted email to J. Pendlebury | 1.1 | $467.50 |
| 1/15/2021 | ZP | $250.00 | Drafted initial portion of declaration for Motion for Attorney's Fees/Costs reply | 0.5 | $125.00 |
| 1/15/2021 | ZP | $250.00 | Completed review of depositions for responsive SBA-only material to be added to Exhibit A to d3Declaration for MAF/Costs reply. | 1.1 | $275.00 |
| 1/15/2021 | RK | $425.00 | Reviewed files to analyze transcripts and reviewed court orders relevant to Ford's arguments in Opp to Motion for Costs | 0.5 | $212.50 |
| 1/15/2021 | RK | $425.00 | Researched legal authority re Clausen exception and expenses; research re statutory construction | 1.2 | $510.00 |
| 1/15/2021 | DK | $250.00 | Conducted legal research re authority that a party is sanctionable for knowingly making arguments against legal authority (split w/ Fort) | 0.6 | $150.00 |
| 1/15/2021 | DK | $250.00 | Assist RK with preparing Reply to Opposition re Motion for Costs | 0.4 | $100.00 |
| 1/15/2021 | CS | $375.00 | Review and revise fee motion reply; review Ford's two opposition briefs | 3.1 | $1,162.50 |
| 1/16/2021 | CS | $375.00 | Continue revising fee motion opposition brief; calls with RK re same; legal research | 3.9 | N/C |
| 1/16/2021 | RK | $425.00 | Drafted Reply to Opp to Motion for Costs; concurrently continued research | 1.4 | $595.00 |
| 1/16/2021 | RK | $425.00 | Call with C. Swanson re arguments in fee motion | 0.2 | N/C |
| 1/16/2021 | RK | $425.00 | Continued drafting reply to Opp to Motion to Tax Costs | 3.2 | $1,360.00 |
| 1/17/2021 | RK | $425.00 | Reviewed and revised Reply to Opp to fee motion | 2.3 | $977.50 |
| 1/18/2021 | RK | $425.00 | Reviewed and revised Reply to Opp to Motion to Tax Costs | 0.9 | $382.50 |
| 1/18/2021 | RK | $425.00 | Reviewed billing and costs summaries; informed staff to create exhibits | 0.2 | N/C |
| 1/18/2021 | RK | $425.00 | Call with C. Swanson re analysis | 0.2 | $85.00 |
| 1/18/2021 | RK | $425.00 | Call with R. Boucher re drafting declaration | 0.1 | $42.50 |

| | | | | | |
|---|---|---|---|---|---|
| 1/18/2021 | RK | $425.00 | Call with P. Kiesel re declaration and invoices | 0.1 | $42.50 |
| 1/18/2021 | RK | $425.00 | Call with Ed Lear re drafting declaration | 0.1 | $42.50 |
| 1/18/2021 | RK | $425.00 | Reviewed Motion for Atty Fees and declarations; continued work on Reply to Opp to Motion for Fees; revised Declaration of D. Kalinowski; further analysis of Pedante order | 3.2 | $1,360.00 |
| 1/18/2021 | RK | $425.00 | Reviewed Z. Powell declaration | 0.1 | $42.50 |
| 1/18/2021 | DK | $250.00 | Assisted RK with preparing Reply in support of Motion for Costs and Expenses (split w/ Fort) | 0.7 | $175.00 |
| 1/18/2021 | DK | $250.00 | Prepared declaration in support of Fee Motion to be concurrently filed with Reply (split with Fort) | 0.6 | $150.00 |
| 1/18/2021 | RK | $425.00 | Further revisions to reply to motion to tax costs | 0.4 | $170.00 |
| 1/18/2021 | RK | $425.00 | Drafted Declaration in support of reply to opp to motion for attorney fees; revised reply | 0.8 | $340.00 |
| 1/18/2021 | RK | $425.00 | Drafted Declaration in support of reply to opposition to motion for costs and expenses | 0.4 | $170.00 |
| 1/18/2021 | ZP | $250.00 | Completed initial draft of MAF/Costs reply declaration for review by RK | 0.2 | $50.00 |
| 1/18/2021 | ZP | $250.00 | Emails to/from RH re: Kwasniewicz document review tallies | 0.1 | N/C |
| 1/18/2021 | ZP | $250.00 | Pulled Kwasniewicz document review numbers and identified culled totals | 0.1 | $25.00 |
| 1/18/2021 | ZP | $250.00 | Emails to/from DK/RK re: presence of non-appearing counsel in proximity to MDL depositions | 0.1 | N/C |
| 1/19/2021 | RK | $425.00 | Reviewed timeline and notes provided by R. Boucher; drafted declaration of R. Boucher; reviewed Ambriz file | 0.6 | $255.00 |
| 1/19/2021 | RK | $425.00 | Miscellaneous organization and tracking of all documents to be filed; email to staff | 0.3 | N/C |
| 1/19/2021 | ZP | $250.00 | Completed final edits to draft of MAF/Costs reply declaration | 0.2 | $50.00 |
| 1/19/2021 | MC | $300.00 | Review Amy Maclear declaration. and draft Plaintiff's objections to Amy Maclear's declaration in opposition to Plaintiff's MAF | 2.1 | $630.00 |
| 1/19/2021 | RK | $425.00 | Call with J. Studer re declaration | 0.2 | $85.00 |
| 1/19/2021 | RK | $425.00 | Prepare draft of declaration for C. Urner; drafted email to C. Urner and call with C. Urner | 0.2 | $85.00 |

| | | | | | |
|---|---|---|---|---|---|
| 1/19/2021 | ZP | $250.00 | Supplemental review of depositions for responsive SBA-only material to be added to Exhibit A | 3.0 | $750.00 |
| 1/19/2021 | RK | $425.00 | Reviewed and finalized all declarations; reviewed and finalized both replies | 2.8 | $1,190.00 |
| | | | Total Attorney Fees | 174.0 | $64,695.00 |

**Billing Rate Summary**

| Initials | Avg/Hr | Attorney/Staff | Hours | Amount |
|---|---|---|---|---|
| ALM | $350.00 | Amy Morse | 5.2 | $1,820.00 |
| CS | $375.00 | Chris Swanson | 3.1 | $1,162.50 |
| DK | $250.00 | Daniel Kalinowski | 31.6 | $7,900.00 |
| KSC | $375.00 | Kristina Stephenson-Cheang | 28.8 | $10,800.00 |
| MC | $300.00 | Maite Colón | 3.6 | $1,080.00 |
| MER | $325.00 | Mitchell Rosensweig | 1.4 | $455.00 |
| RH | $450.00 | Russell Higgins | 9.8 | $4,410.00 |
| RK | $425.00 | Roger Kirnos | 73.7 | $31,322.50 |
| SBM | $550.00 | Steve Mikhov | 5.4 | $2,970.00 |
| SS | $225.00 | Sundeep Samra | 3.0 | $675.00 |
| ZP | $250.00 | Zachary Powell | 8.4 | $2,100.00 |

# EXHIBIT A-3

Fort, Sharon v. FMC | Knight Law Group LLP | BC670958

Invoice | 2:17-cv-06631-AB-FFM

| Date | Attorney | Rate | Task | Time | FEE |
|---:|:---:|---:|---|---:|---:|
| | SBM | $550.00 | Initial communication with client; evaluation of Client's claims | 0.4 | $220.00 |
| | SBM | $550.00 | Review docs | 0.6 | $330.00 |
| 7/27/2017 | ALM | $350.00 | Communication with Client | 0.5 | $175.00 |
| 7/28/2017 | ALM | $350.00 | Draft Complaint | 0.5 | $175.00 |
| 7/31/2017 | SBM | $550.00 | Review and sign Complaint | 0.1 | $55.00 |
| 8/21/2017 | ALM | $350.00 | Communication with Client | 0.2 | $70.00 |
| 8/22/2017 | KSC | $375.00 | Review Court Notice of CMC | 0.1 | N/C |
| 8/31/2017 | ALM | $350.00 | Draft Notice of CMC | 0.1 | $35.00 |
| 9/6/2017 | KSC | $375.00 | Review file in preparation of drafting Pltf's discovery requests | 0.3 | $112.50 |
| 9/6/2017 | KSC | $375.00 | Draft Pltf's Form ROGs to Ford | 0.2 | $75.00 |
| 9/6/2017 | KSC | $375.00 | Draft Pltf's Special ROGs to Ford and Declaration | 1.5 | $562.50 |
| 9/7/2017 | KSC | $375.00 | Draft Pltf's RFA to Ford and Declaration | 1.1 | $412.50 |
| 9/7/2017 | KSC | $375.00 | Draft Pltf's RFP to Ford | 0.8 | $300.00 |
| 9/7/2017 | KSC | $375.00 | Review and revise letter to Defense enclosing Pltf's discovery requests | 0.1 | $37.50 |
| 9/11/2017 | KSC | $375.00 | Review Deft's Depo Subp for Production of Business Documents of Robertson Honda and Notice to Consumer | 0.1 | $37.50 |
| 9/12/2017 | SBM | $550.00 | Review Ford's Answer to Complaint | 0.3 | $165.00 |
| 9/14/2017 | KSC | $375.00 | Review Deft's Notice of Removal; update case file | 0.4 | $150.00 |
| 9/14/2017 | KSC | $375.00 | Review Court Notice of Assignment to U.S Judges | 0.1 | N/C |
| 9/14/2017 | KSC | $375.00 | Review Court Notice to Parties of Court-Directed ADR program | 0.1 | N/C |
| 9/15/2017 | ALM | $350.00 | Review Def's Demand for Jury Trial | 0.1 | N/C |
| 9/18/2017 | KSC | $375.00 | Communication with Client | 0.4 | $150.00 |
| 9/21/2017 | KSC | $375.00 | Review Court Order re Transfer re Related Cases | 0.1 | N/C |
| 9/26/2017 | KSC | $375.00 | Review Court Order Setting Scheduling Conference, for 2/15/18 | 0.1 | N/C |
| 10/5/2017 | MER | $325.00 | Email exchange with opposing counsel re scheduling telephonic meet and confer re remand motions (multiple dates) | 0.1 | N/C |
| 10/5/2017 | RH | $450.00 | Prepare for, correspond with, and telephonic meet and confer with Ford counsel re motion to remand (time split with 9 cases) | 0.3 | $135.00 |
| 10/9/2017 | SBM | $550.00 | Review Ford's Settlement Offer | 0.1 | $55.00 |
| 10/10/2017 | RH | $450.00 | Draft Motion For Remand and declaration | 1.0 | $450.00 |
| 10/13/2017 | DK | $250.00 | Communication with Client | 0.3 | $75.00 |
| 10/17/2017 | KSC | $375.00 | Review Deft's Notice of Related Cases | 0.1 | $37.50 |
| 10/25/2017 | DK | $250.00 | Telephone conference with Client | 0.3 | $75.00 |

| | | | | | |
|---|---|---|---|---|---|
| 10/27/2017 | RH | $450.00 | Review Deft's Opposition to Remand Motion | 0.3 | $135.00 |
| 10/31/2017 | RH | $450.00 | Communication with FMC counsel (John Thomas, Molly Mrowka, Tamara Bush, Spencer Hugret) re motions to remand, proposed ex parte to stay pending MDL, state coordination | 0.1 | $45.00 |
| 11/6/2017 | KSC | $375.00 | Review Ford's Notice of Related Actions | 0.1 | $37.50 |
| 11/9/2017 | KSC | $375.00 | Review Court Minute Order re Stay | 0.1 | N/C |
| 11/16/2017 | ALM | $350.00 | Communication with Appearance Attorney re CMC | 0.2 | $70.00 |
| 11/20/2017 | ALM | $350.00 | Review results of CMC | 0.1 | $35.00 |
| 11/21/2017 | RH | $450.00 | Draft Opposition to Ford's Motion for Transfer and Consolidation of Related Actions (multiple cases) | 0.3 | $135.00 |
| 11/27/2017 | DK | $250.00 | Communication with Client | 0.2 | $50.00 |
| 1/12/2018 | ALM | $350.00 | Communication with Client | 0.2 | $70.00 |
| 1/17/2018 | ALM | $350.00 | Draft Notice of OSC re Removal to Federal Court | 0.1 | $35.00 |
| 2/15/2018 | KSC | $375.00 | Review Court Transfer Order | 0.1 | N/C |
| 3/12/2018 | KSC | $375.00 | Review Court Order Setting CMC | 0.1 | N/C |
| 3/12/2018 | ALM | $350.00 | Communication with Appearance Attorney re OSC | 0.2 | $70.00 |
| 3/14/2018 | ALM | $350.00 | Review results of OSC | 0.1 | $35.00 |
| 3/27/2018 | DK | $250.00 | Communication with Client | 0.2 | $50.00 |
| 8/1/2018 | ALM | $350.00 | Communication with Client | 0.2 | $70.00 |
| 11/13/2018 | MC | $300.00 | Draft Ptf's Rule 26 Initial Disclosures | 1.0 | $300.00 |
| 11/21/2018 | KSC | $375.00 | Review NOD of Plaintiff | 0.1 | $37.50 |
| 11/30/2018 | MER | $325.00 | Review file for the purpose of drafting NODs of dealership personnel | 0.2 | $65.00 |
| 11/30/2018 | MER | $325.00 | Draft NODs of South Bay Ford's PMQ and Dealership Personnel (8 NODs) | 0.9 | $292.50 |
| 12/7/2018 | KSC | $375.00 | Communication with Client | 0.2 | $75.00 |
| 12/7/2018 | MER | $325.00 | Draft NOD of FMC's PMK/30(b)(6) and cover letter | 0.2 | $65.00 |
| 12/11/2018 | KSC | $375.00 | Review Deft's ROGs to draft response | 0.2 | $75.00 |
| 12/11/2018 | KSC | $375.00 | Review Deft's RFA to draft response | 0.2 | $75.00 |
| 12/11/2018 | KSC | $375.00 | Review Deft's RFP to draft response | 0.1 | $37.50 |
| 12/11/2018 | KSC | $375.00 | Prepare discovery requests to send to Plaintiff in preparation of drafting responses; Communication with Client | 0.4 | $150.00 |
| 12/12/2018 | ALM | $350.00 | Review correspondence from Defense re Ptfs' NOD of def's dealership personnel (multiple cases) | 0.1 | $35.00 |
| 12/13/2018 | ALM | $350.00 | Review Deft's Objections NOD and of South Bay Ford PMQ/30(b)(6) and Personnel (8 obj.) | 0.2 | $70.00 |

| | | | | | |
|---|---|---|---|---|---|
| 12/13/2018 | KSC | $375.00 | Email exchange with opposing counsel confirming extension of time for pltf to respond to deft discovery | 0.1 | $37.50 |
| 12/19/2018 | ALM | $350.00 | Review correspondence from Defense to meet and confer re scheduling Plaintiff depositions (multiple cases) | 0.1 | $35.00 |
| 12/26/2018 | KSC | $375.00 | Review FMC letter demanding pltf availability for upcoming deposition dates (multiple cases) | 0.1 | N/C |
| 12/27/2018 | ALM | $350.00 | Review further correspondence from Defense re scheduling Plaintiffs depositions (multiple cases) | 0.1 | N/C |
| 12/27/2018 | KSC | $375.00 | Review file in preparation of drafting Plaintiff's discovery requests in light of removal from state court | 0.2 | $75.00 |
| 12/27/2018 | KSC | $375.00 | Draft Ptf's ROGs to Ford | 0.5 | $187.50 |
| 12/27/2018 | KSC | $375.00 | Draft Ptf's RFA to Ford | 1.2 | $450.00 |
| 12/28/2018 | KSC | $375.00 | Draft Ptf's RFP to Ford | 1.8 | $675.00 |
| 12/28/2018 | KSC | $375.00 | Review and revise letter to Defense enclosing Ptf's discovery requests | 0.1 | $37.50 |
| 12/31/2018 | ALM | $350.00 | Communication with Client | 0.2 | $70.00 |
| 1/9/2019 | KSC | $375.00 | Draft Objections to NOD of Plaintiff | 0.2 | $75.00 |
| 1/10/2019 | ALM | $350.00 | Review letter from Defense re Ptf's NOD of Ford's PMK/30(b)(6) | 0.1 | $35.00 |
| 1/10/2019 | KSC | $375.00 | Review responses and documents provided by Plaintiff to discovery requests to draft responses; Communication with Client | 0.9 | $337.50 |
| 1/10/2019 | KSC | $375.00 | Draft Ptf's response to Ford's ROGs | 0.6 | $225.00 |
| 1/10/2019 | KSC | $375.00 | Draft Ptf's response to Ford's RFA | 1.0 | $375.00 |
| 1/11/2019 | KSC | $375.00 | Draft Ptf's response to Ford's RFP | 0.8 | $300.00 |
| 1/11/2019 | KSC | $375.00 | Prepare Ptf's Document Production | 1.5 | $562.50 |
| 1/11/2019 | KSC | $375.00 | Review and revise letter to Defense enclosing Ptf's discovery responses | 0.1 | $37.50 |
| 1/11/2019 | KSC | $375.00 | Review Ford's Objections to NOD of PMK/30(b)(6) | 0.2 | $75.00 |
| 1/16/2019 | ALM | $350.00 | Review letter from Defense re request for withdrawal of Ford's PMK/30(b)(6) deposition | 0.1 | $35.00 |
| 1/16/2019 | KSC | $375.00 | Review [Proposed] Federal/State Coordination Order | 0.1 | N/C |
| 1/17/2019 | ALM | $350.00 | Review corresponded from Defense re rescheduling Ptfs' depositions (multiple cases) | 0.1 | $35.00 |
| 1/19/2019 | KSC | $375.00 | Email exchange with defense confirming proposed date for pltf deposition | 0.1 | $37.50 |
| 1/28/2019 | KSC | $375.00 | Review Amended NOD of Plaintiff | 0.1 | $37.50 |

| | | | | | |
|---|---|---|---|---|---|
| 1/30/2019 | KSC | $375.00 | Draft Objections to Amended NOD of Plaintiff | 0.1 | $37.50 |
| 1/30/2019 | KSC | $375.00 | Review email from defense requesting dates for pltf depositions (multiple cases) | 0.1 | N/C |
| 2/7/2019 | NF | $250.00 | Review memorandum of Ptf's Deposition | 0.3 | $75.00 |
| 2/11/2019 | KSC | $375.00 | Review Notice of Vehicle Inspection | 0.1 | $37.50 |
| 2/20/2019 | NF | $250.00 | Review and analyze Deft's response to Ptf's ROGs | 0.9 | $225.00 |
| 2/20/2019 | NF | $250.00 | Review and analyze Deft's response to Ptf's RFA | 1.1 | $275.00 |
| 2/20/2019 | NF | $250.00 | Review and analyze Deft's response to Ptf's RFP | 1.7 | $425.00 |
| 2/26/2019 | NF | $250.00 | Review Deft's Supplemental Rule 26 Initial Disclosures | 0.5 | $125.00 |
| 2/27/2019 | ALM | $350.00 | Review letter from Defense re dates of availability to conduct vehicle inspection (multiple cases) | 0.1 | N/C |
| 3/4/2019 | ALM | $350.00 | Communication with Expert | 0.2 | $70.00 |
| 3/11/2019 | KSC | $375.00 | Review Deft's RFP to draft response, Set Two | 0.1 | $37.50 |
| 3/11/2019 | KSC | $375.00 | Review Deft's RFP to draft response, Set Three | 0.2 | $75.00 |
| 3/11/2019 | KSC | $375.00 | Communication with Client | 0.2 | $75.00 |
| 3/13/2019 | KSC | $375.00 | Draft Objections to VI Notice; communication with Client | 0.3 | $112.50 |
| 3/18/2019 | KSC | $375.00 | Review Amended Notice of VI | 0.1 | $37.50 |
| 3/18/2019 | KSC | $375.00 | Communication with Expert | 0.2 | $75.00 |
| 3/19/2019 | KSC | $375.00 | Draft Objections to Amended VI Notice | 0.1 | $37.50 |
| 3/19/2019 | KSC | $375.00 | Communication with Client | 0.1 | $37.50 |
| 3/20/2019 | MM | $225.00 | Prepare for and attend vehicle inspection (travel included); Draft summary | 3.5 | $787.50 |
| 3/21/2019 | ALM | $350.00 | Review VI summary | 0.1 | $35.00 |
| 3/27/2019 | KSC | $375.00 | Communication with Client | 0.2 | $75.00 |
| 3/27/2019 | KSC | $375.00 | Draft Ptf's response to RFP, Set Two | 0.7 | $262.50 |
| 3/27/2019 | KSC | $375.00 | Draft Ptf's response to RFP, Set Three | 0.5 | $187.50 |
| 3/27/2019 | KSC | $375.00 | Prepare Ptf's Supplemental Document Production | 0.3 | $112.50 |
| 3/27/2019 | KSC | $375.00 | Review and revise letter to Defense enclosing Ptf's discovery responses, Set Nos. Two and Three | 0.1 | $37.50 |
| 5/15/2019 | RH | $450.00 | Draft NOD of Ford's PMK/30(b)(6) | 0.2 | $90.00 |
| 5/22/2019 | RH | $450.00 | Draft letter to Defense in response to 5/17/19 letter to meet and confer re NOD of Ford's PMK/30(b)(6) | 0.2 | $90.00 |
| 5/24/2019 | RH | $450.00 | Review Ford's Objections to NOD of PMK/30(b)(6) | 0.1 | $45.00 |

| | | | | | |
|---|---|---|---|---|---|
| 6/6/2019 | KSC | $375.00 | Review Court Minute Order re 6/5/19 Status Conference | 0.1 | N/C |
| 6/7/2019 | RH | $450.00 | Draft NOD of Ford's PMK/30b6 | 0.1 | $45.00 |
| 6/13/2019 | RH | $450.00 | Draft NOD and Depo Subp of South Bay's PMQ/30b6 | 0.3 | $135.00 |
| 6/18/2019 | RH | $450.00 | Review Ford's objections served to NOD of Ford's case 30b6 witness for case specific subjects | 0.1 | $45.00 |
| 6/24/2019 | RH | $450.00 | Review Ford's Objections to NOD of South Bay Ford PMK 30(b)(6) | 0.1 | $45.00 |
| 8/20/2019 | ALM | $350.00 | Draft NOD of Def's PMK30(b)(6) | 0.1 | $35.00 |
| 8/21/2019 | RH | $450.00 | Review Ford's Objection to NOD of PMK/30(b)(6) | 0.1 | $45.00 |
| 8/21/2019 | RH | $450.00 | Confer with Ed Lear re preparation for deposition of Ford's 30B6 witness; review files and send case documents and exhibits | 0.6 | $270.00 |
| 8/21/2019 | EOL | $595.00 | Prepare for deposition by reviewing prior depo transcript of Doss, underlying case-specific documents | 2.8 | $1,666.00 |
| 8/22/2019 | EOL | $595.00 | Attend deposition of Ford's PMK/30(b)(6) (take statement of non-appearance (travel included) | 3.2 | $1,904.00 |
| 10/7/2019 | RH | $450.00 | Draft NOD of Ford's PMK/30(b)(6) | 0.1 | $45.00 |
| 10/9/2019 | RH | $450.00 | Review letter from Defense to meet and confer re MDL PMK/30(b)(6) Depos (multiple cases) | 0.1 | $45.00 |
| 10/10/2019 | RH | $450.00 | Review Ford's Objections to NOD of PMK/30(b)(6) | 0.1 | $45.00 |
| 2/21/2020 | RH | $450.00 | Draft Opposition to Ford's motion to compel arbitration | 1.1 | $495.00 |
| 5/4/2020 | RH | $450.00 | Communication with RK and review files re involvement of co-counsel in arbitration briefs (split with Wirth) | 0.1 | $45.00 |
| 5/4/2020 | ALM | $350.00 | Meeting with RK/Russ: discuss upcoming hearing re arbitration (split with Wirth) | 0.1 | $35.00 |
| 5/6/2020 | RH | $450.00 | Multiple communications re arrangements for attendance at hearing on arbitration motions | 0.1 | $45.00 |
| 5/7/2020 | RH | $450.00 | Confer with CT re argument on Ford's arbitration motions (split with Wirth) | 0.2 | $90.00 |
| 5/12/2020 | RH | $450.00 | Prepare for hearing on motions to compel arbitration (Wirth, Fort) and status conference; extensive legal research (split with Wirth) | 3.0 | $1,350.00 |
| 5/14/2020 | NF | $250.00 | Review Court Minute Order re Motion to Compel Arbitration Hearing | 0.1 | N/C |

Fort, Sharon v. FMC | Knight Law Group LLP | BC670958

Invoice | 2:17-cv-06631-AB-FFM

| | | | | | |
|---|---|---|---|---|---|
| 6/5/2020 | SBM | $550.00 | Review and analyze Deft's Rule 68 Offer of Judgment; Review Client docs | 0.2 | $110.00 |
| 6/5/2020 | ALM | $350.00 | Communication with Client | 0.3 | $105.00 |
| 6/19/2020 | ALM | $350.00 | Review and sign acceptance of Deft's Rule 68 Offer of Judgment | 0.1 | $35.00 |
| 6/19/2020 | ALM | $350.00 | Communication with Client | 0.2 | $70.00 |
| 6/22/2020 | DK | $250.00 | Prepare Joint Notice of Settlement | 0.1 | $25.00 |
| 6/26/2020 | DK | $250.00 | Review Deft's Notice of Withdrawal of MTC Arbitration | 0.1 | N/C |
| 7/1/2020 | NF | $250.00 | Review Court Order Dismissing Civil Action | 0.1 | N/C |
| 8/7/2020 | RH | $450.00 | Draft email to FMC counsel re deadlines for MAF in Bagwell/Fort pending Pedante ruling | 0.1 | N/C |
| 8/11/2020 | DK | $250.00 | Incorporate revisions to ex parte relief to extend time to file motion for attorney's fees including notice, memorandum, declaration and proposed order; confer with RK re same | 0.3 | $75.00 |
| 8/11/2020 | DK | $250.00 | Prepare ex parte application for extension to file motions for fees, costs and expenses including notice, memorandum, and declaration | 1.0 | $250.00 |
| 8/12/2020 | RK | $425.00 | Prepared notice of withdrawal and stipulation and proposed order | 0.3 | $127.50 |
| 8/12/2020 | RK | $425.00 | Prepared notice of withdrawal and stipulations and proposed order; communicated with Ford counsel re joint filing and finalized (split with Bagwell) | 0.6 | $255.00 |
| 9/16/2020 | DK | $250.00 | Draft Joint Stipulation for Extension of Time to file Motion for Attorneys Fees for attorney review | 0.6 | $150.00 |
| 9/16/2020 | RK | $425.00 | Prepared proposed orders for stipulation; | 0.2 | $85.00 |
| 9/17/2020 | RK | $425.00 | Began review of billing invoices in preparation for fee motion; reviewed court docket; begin drafting fee motion (split with Bagwell) | 2.4 | $1,020.00 |
| 9/17/2020 | RK | $425.00 | Call with A. Nassihi re fee motion scheduling | 0.2 | $85.00 |
| 9/22/2020 | RK | $425.00 | Drafted email re ex parte notice (split with Bagwell) | 0.1 | $42.50 |
| 9/23/2020 | RK | $425.00 | Prepared stipulation and proposed order and continunce of fee motion deadline | 0.2 | $85.00 |
| 9/23/2020 | RK | $425.00 | Continued drafting motion for attorney fees; performed legal research (split with Bagwell) | 2.0 | $850.00 |
| 9/23/2020 | RK | $425.00 | Prepared stipulation and proposed order and continunce of fee motion deadline | 0.2 | $85.00 |

| | | | | | |
|---|---|---|---|---|---|
| 9/23/2020 | RK | $425.00 | Call with A. Nassihi re stipulations | 0.4 | $170.00 |
| 9/24/2020 | RK | $425.00 | Reviewed Ford's proposed stipulation to continue; drafted email to P. Kiesel re same | 0.2 | $85.00 |
| 9/25/2020 | RK | $425.00 | Reviewed Ford's revised stipulation to confirm final draft | 0.1 | $42.50 |
| 10/1/2020 | SBM | $550.00 | Review and audit billing | 0.5 | $275.00 |
| 10/1/2020 | RK | $425.00 | Drafted email to M&C re fee motion (split) | 0.1 | $42.50 |
| 10/5/2020 | RK | $425.00 | Researched case authority provided by S. Taft re [redacted] | 0.8 | $340.00 |
| 10/5/2020 | RK | $425.00 | Call with S. Taft re legal research re [redacted] | 0.2 | $85.00 |
| 10/5/2020 | RK | $425.00 | Continued phone call with S. Taft, discuss Ford's refusal for status conference | 0.6 | $255.00 |
| 10/5/2020 | RK | $425.00 | Further discussions re fee motion matters with S. Taft, review proposed email to court clerk | 0.7 | $297.50 |
| 10/6/2020 | RK | $425.00 | Audited case-specific billing | 0.5 | $212.50 |
| 10/6/2020 | RK | $425.00 | Reviewed and analyzed court docket and case filings in preparation for fee motion | 1.0 | $425.00 |
| 10/7/2020 | RK | $425.00 | Continued drafting motion for attorney fees | 1.7 | $722.50 |
| 10/7/2020 | RK | $425.00 | Continued drafting motion for attorney fees | 3.8 | $1,615.00 |
| 10/8/2020 | RK | $425.00 | Began Drafted Declaration of S. Mikhov | 1.4 | $595.00 |
| 10/9/2020 | RK | $425.00 | Continued drafting Declaration of S. Mikhov; drafted declaration of B. Altman and R. Boucher; corresponded with attorneys re same; reviewed invoices and court docket | 4.0 | $1,700.00 |
| 10/9/2020 | RK | $425.00 | Continued drafting and finalizing fee motion; revised arguments, added record citations | 2.4 | $1,020.00 |
| 10/9/2020 | DK | $250.00 | Prepare Plaintiffs' Consolidated Motion for Costs and Expenses (Split with Fort) | 5.0 | $1,250.00 |
| 10/16/2020 | DK | $250.00 | Prepared draft joint stipulation to continue deadlines to file opposition and reply and conferred with RK re same | 0.3 | $75.00 |
| 10/24/2020 | RK | $425.00 | Conference with opposing counsel re M&C re briefing schedule on various fee related motions | 0.5 | $212.50 |
| 10/26/2020 | RK | $425.00 | Reviewed and revised Ford's proposed stipulation | 0.3 | $127.50 |
| 10/26/2020 | RK | $425.00 | Further meeting and conferring with Ford re briefing schedule, revised briefing schedule, call with A. Nassihi | 0.2 | $85.00 |

| | | | | | |
|---|---|---|---|---|---|
| 12/18/2020 | RK | $425.00 | Reviewed and annotated declarations in support of Opp to MAF | 0.5 | $212.50 |
| 12/18/2020 | RK | $425.00 | Reviewed and annotated Opposition to Fort/Bagwell case fees; reviewed RJNs; reviewed various exhibits | 1.4 | $595.00 |
| 12/18/2020 | RK | $425.00 | Reviewed and annotated Ford's Opposition to Fort/Bagwell common fees | 0.8 | $340.00 |
| 12/19/2020 | RK | $425.00 | Began drafting Reply to Ford's Opp to fee motion, outlined arguments, reviewed case orders | 1.7 | $722.50 |
| 12/21/2020 | RK | $425.00 | Call with expert re Ford expert declaration/analysis | 0.3 | $127.50 |
| 12/21/2020 | RK | $425.00 | Confer with C. Swanson re Ford's opposition to fee motion | 0.2 | N/C |
| 12/23/2020 | RK | $425.00 | Drafted Reply to Opp to Fee Motion | 1.1 | $467.50 |
| 12/24/2020 | RK | $425.00 | Drafted Reply to Opposition to Fee Motion | 2.3 | $977.50 |
| 12/26/2020 | RK | $425.00 | Drafted Reply to Opposition to Fee Motion | 1.0 | N/C |
| 1/4/2021 | RK | $425.00 | Call with fee expert | 0.2 | $85.00 |
| 1/5/2021 | RK | $425.00 | Continued drafting portions of Reply to Case-Specific Opposition to fee motion; legal research and analysis | 0.9 | N/C |
| 1/6/2021 | RK | $425.00 | Continued drafting Reply to Case-Specific fee opp | 2.4 | $1,020.00 |
| 1/8/2021 | ZP | $250.00 | Pulled documents for RK and DropBoxed. | 0.3 | N/C |
| 1/8/2021 | ZP | $250.00 | Reviewed Gregory Overla deposition for SBA non-fraud language. | 1.0 | $250.00 |
| 1/9/2021 | ZP | $250.00 | Reviewed McClain depositions for non-Fraud SBA questions and language. | 1.4 | $350.00 |
| 1/9/2021 | ZP | $250.00 | Reviewed Mark Tuneff deposition for SBA non-fraud language. | 0.9 | $225.00 |
| 1/9/2021 | RK | $425.00 | Further review of exhibits attached to Opposition to fee motion, reviewed declarations to identify declarants to exhibits and relevance of each; reviewed and analyzed J. Pierce declaration thoroughly and annotated exhibits; concurrently continued drafting Reply to Opposition to Fee Motion; research additional case law in support of reply | 5.2 | $2,210.00 |
| 1/10/2021 | RK | $425.00 | Legal research re categories of objections in Pierce declaration; and prevailing party authority; reviewed case files for legal authority on responsive arguments | 0.7 | $297.50 |
| 1/10/2021 | RK | $425.00 | Drafted M&C email to opposing counsel re fee reply issues | 0.3 | $127.50 |

| | | | | | |
|---|---|---|---|---|---|
| 1/10/2021 | RK | $425.00 | Reviewed and analyzed Opposition for "Common Work Fees" and prior annotations; cite checked cases cited by Ford; continued drafting Reply | 2.1 | $892.50 |
| 1/11/2021 | RK | $425.00 | Continued working on Reply; reviewed documents filed in MDL, continued to review transcripts | 2.7 | $1,147.50 |
| 1/12/2021 | RK | $425.00 | Legal research re notice of appearance; drafted reply | 0.3 | $127.50 |
| 1/12/2021 | RK | $425.00 | Legal research re double taxation argument | 0.6 | $255.00 |
| 1/12/2021 | RH | $450.00 | Review files re FMC claim of improperly scheduled PMK deposition | 0.2 | $90.00 |
| 1/13/2021 | RK | $425.00 | Drafted email to Ira Rheingold / NACA re double taxation | 0.3 | $127.50 |
| 1/13/2012 | RK | $425.00 | Emails and calls with E. Lear and R. Boucher re declarations; coordinated with D. Kalinowski and Z. Powell re declarations | 0.2 | N/C |
| 1/13/2021 | RK | $425.00 | Continued work on Reply | 0.4 | $170.00 |
| 1/13/2021 | RK | $425.00 | Reviewed email from A. Nassihi; respond to same | 0.1 | N/C |
| 1/13/2021 | RK | $425.00 | Call with A. Nassihi | 0.1 | N/C |
| 1/13/2021 | RK | $425.00 | Drafted Stipulation for Additional Pages | 0.2 | N/C |
| 1/13/2021 | RK | $425.00 | Completed first draft of Reply, reviewed billing invoices, legal research to supplement factual arguments, reviewed Ford declarations | 2.4 | $1,020.00 |
| 1/14/2021 | RK | $425.00 | Drafted Proposed Order re stipulation for page limit | 0.1 | N/C |
| 1/14/2021 | RK | $425.00 | Emails and calls with E. Lear and R. Boucher re declarations; coordinated with D. Kalinowski and Z. Powell re declarations | 0.2 | N/C |
| 1/14/2021 | RH | $450.00 | Review files in unrelated case (Picton v. FMC) re claimed joint deposition agreement | 0.6 | $270.00 |
| 1/14/2021 | RK | $425.00 | Reviewed and edited draft of Plaintiff's position re Daubert motions; performed legal research | 0.4 | $170.00 |
| 1/14/2021 | RK | $425.00 | Reviewed and analyzed Ford's Opposition to Motion to Tax Costs; reviewed declaration and reviewed/analzed referenced exhibits and charts/tables, initial review of cost receipts/invoices in dispute; drafted email to J. Pendlebury | 1.1 | $467.50 |
| 1/15/2021 | ZP | $250.00 | Drafted initial portion of declaration for Motion for Attorney's Fees/Costs reply | 0.5 | $125.00 |

| | | | | | |
|---|---|---|---|---|---|
| 1/15/2021 | ZP | $250.00 | Completed review of depositions for responsive SBA-only material to be added to Exhibit A to d3Declaration for MAF/Costs reply. | 1.1 | $275.00 |
| 1/15/2021 | RK | $425.00 | Reviewed files to analyze transcripts and reviewed court orders relevant to Ford's arguments in Opp to Motion for Costs | 0.5 | $212.50 |
| 1/15/2021 | RK | $425.00 | Researched legal authority re Clausen exception and expenses; research re statutory construction | 1.2 | $510.00 |
| 1/15/2021 | RH | $450.00 | Research to rebut FMC grievances in fee motion (re FMC's bad faith JCCP repository dispute, my billing for Michigan depositions, etc.) | 0.5 | $225.00 |
| 1/15/2021 | DK | $250.00 | Conducted legal research re authority that a party is sanctionable for knowingly making arguments against legal authority (split with Bagwell) | 0.5 | $125.00 |
| 1/15/2021 | DK | $250.00 | Assist RK with preparing Reply to Opposition re Motion for Costs | 0.4 | $100.00 |
| 1/16/2021 | RK | $425.00 | Drafted Reply to Opp to Motion for Costs; concurrently continued research | 1.4 | $595.00 |
| 1/16/2021 | RK | $425.00 | Call with C. Swanson re arguments in fee motion | 0.2 | N/C |
| 1/16/2021 | RK | $425.00 | Continued drafting reply to Opp to Motion to Tax Costs | 3.2 | $1,360.00 |
| 1/17/2021 | RK | $425.00 | Reviewed and revised Reply to Opp to fee motion | 2.3 | $977.50 |
| 1/18/2021 | RK | $425.00 | Reviewed and revised Reply to Opp to Motion to Tax Costs | 0.9 | $382.50 |
| 1/18/2021 | RK | $425.00 | Reviewed billing and costs summaries; informed staff to create exhibits | 0.2 | N/C |
| 1/18/2021 | RK | $425.00 | Call with C. Swanson re analysis | 0.2 | $85.00 |
| 1/18/2021 | RK | $425.00 | Call with R. Boucher re drafting declaration | 0.1 | $42.50 |
| 1/18/2021 | RK | $425.00 | Call with P. Kiesel re declaration and invoices | 0.1 | $42.50 |
| 1/18/2021 | RK | $425.00 | Call with Ed Lear re drafting declaration | 0.1 | $42.50 |
| 1/18/2021 | RK | $425.00 | Reviewed Motion for Atty Fees and declarations; continued work on Reply to Opp to Motion for Fees; revised Declaration of D. Kalinowski; further analysis of Pedante order | 3.2 | $1,360.00 |
| 1/18/2021 | RK | $425.00 | Reviewed Z. Powell declaration | 0.1 | $42.50 |
| 1/18/2021 | RK | $425.00 | Further revisions to reply to motion to tax costs | 0.4 | $170.00 |

| | | | | | |
|---|---|---|---|---|---|
| 1/18/2021 | RK | $425.00 | Drafted Declaration in support of reply to opp to motion for attorney fees; revised reply | 0.8 | $340.00 |
| 1/18/2021 | RK | $425.00 | Drafted Declaration in support of reply to opposition to motion for costs and expenses | 0.4 | $170.00 |
| 1/18/2021 | DK | $250.00 | Assisted RK with preparing Reply in support of Motion for Costs and Expenses (split w/ Bagwell) | 0.7 | $175.00 |
| 1/18/2021 | DK | $250.00 | Prepared declaration in support of Fee Motion to be concurrently filed with Reply (split with Bagwell) | 0.6 | $150.00 |
| 1/18/2021 | ZP | $250.00 | Completed initial draft of MAF/Costs reply declaration for review by RK | 0.2 | $50.00 |
| 1/18/2021 | ZP | $250.00 | Emails to/from RH re: Kwasniewicz document review tallies | 0.1 | N/C |
| 1/18/2021 | ZP | $250.00 | Pulled Kwasniewicz document review numbers and identified culled totals | 0.1 | $25.00 |
| 1/18/2021 | ZP | $250.00 | Emails to/from DK/RK re: presence of non-appearing counsel in proximity to MDL depositions | 0.1 | N/C |
| 1/19/2021 | RK | $425.00 | Reviewed timeline and notes provided by R. Boucher; drafted declaration of R. Boucher; reviewed Ambriz file | 0.6 | $255.00 |
| 1/19/2021 | RK | $425.00 | Miscellaneous organization and tracking of all documents to be filed; email to staff | 0.3 | N/C |
| 1/19/2021 | ZP | $250.00 | Completed final edits to draft of MAF/Costs reply declaration | 0.2 | $50.00 |
| 1/19/2021 | MC | $300.00 | Fort and Bagwell MAF: Review Amy Maclear declaration. and draft Plaintiff's objections to Amy Maclear's declaration in opposition to Plaintiff's MAF | 2.1 | $630.00 |
| 1/19/2021 | RK | $425.00 | Call with J. Studer re declaration | 0.2 | $85.00 |
| 1/19/2021 | DK | $250.00 | Further prepared, revised and finalized declaration in support of Fee Motion to be concurrently filed with Reply (split with Bagwell) | 0.3 | N/C |
| 1/19/2021 | DK | $250.00 | Reviewed and edited RH's declaration in support of motion for fees, costs and expenses and conferred with RH re same (split with Bagwell) | 0.2 | N/C |
| 1/19/2021 | RK | $425.00 | Prepare draft of declaration for C. Urner; drafted email to C. Urner and call with C. Urner | 0.2 | $85.00 |
| 1/19/2021 | ZP | $250.00 | Supplemental review of depositions for responsive SBA-only material to be added to Exhibit A | 3.0 | $750.00 |

| | | | | | |
|---|---|---|---|---|---|
| 1/19/2021 | RK | $425.00 | Reviewed and finalized all declarations; reviewed and finalized both replies | 2.8 | $1,190.00 |
| | | | Total Attorney Fees | 143.8 | $56,065.00 |

**Billing Rate Summary**

| Initials | Avg/Hr | Attorney/Staff | Hours | Amount |
|---|---|---|---|---|
| ALM | $350.00 | Amy Morse | 4.4 | $1,540.00 |
| DK | $250.00 | Daniel Kalinowski | 10.5 | $2,625.00 |
| EOL | $595.00 | Edward Lear | 6.0 | $3,570.00 |
| KSC | $375.00 | Kristina Stephenson-Cheang | 19.0 | $7,125.00 |
| MC | $300.00 | Maite Colón | 3.1 | $930.00 |
| MER | $325.00 | Mitchell Rosensweig | 1.3 | $422.50 |
| MM | $225.00 | Marisa Melero | 3.5 | $787.50 |
| NF | $250.00 | Natalee Fisher | 4.5 | $1,125.00 |
| RH | $450.00 | Russell Higgins | 9.9 | $4,455.00 |
| RK | $425.00 | Roger Kirnos | 71.0 | $30,175.00 |
| SBM | $550.00 | Steve Mikhov | 2.2 | $1,210.00 |
| ZP | $250.00 | Zachary Powell | 8.4 | $2,100.00 |

# EXHIBIT O

**KNIGHT LAW GROUP, LLP**
Steve Mikhov (SBN 224676)
stevem@knightlaw.com
10250 Constellation Blvd., Suite 2500
Los Angeles, California 90067
Telephone: (310) 552-2250
Fax: (310) 552-7973

Attorneys for Plaintiffs,
OSCAR SERRANO MEDINA and
MARIANA SERRANO

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**OSCAR SERRANO MEDINA and MARIANA SERRANO,**

Plaintiffs,

vs.

**FORD MOTOR COMPANY, a Delaware Corporation; and DOES 1 through 10, inclusive,**

Defendants.

Case No: 2:19-cv-00078-R-KS_

**DECLARATION OF STEVE MIKHOV IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEY’S FEES, COSTS AND EXPENSES**

[Filed concurrently with Plaintiffs’ Notice of Motion and Motion for Attorney’s Fees, Costs and Expenses; Memorandum in Support Thereof]

Hearing Date: April 29, 2020
Time: 10:00 a.m.
Courtroom: 580, 5th Floor
Honorable Karen L. Stevenson

# DECLARATION OF STEVE MIKHOV

I, Steve Mikhov, declare as follows:

1. I am an attorney at law duly licensed to practice before the courts of the State of California and attorney of record for Plaintiffs Oscar Serrano Medina and Mariana Serrano ("Plaintiffs") in the instant action. I have personal knowledge of the following facts and, if sworn as a witness, I could and would testify to them competently.

2. I make this declaration in support of Plaintiffs' Motion for Attorney's Fees, Costs and Expenses ("Motion"). For the reasons set forth herein and, in the Motion, Plaintiffs request $37,395.00 in attorney's fees for the legal services provided by Knight Law Group, LLP ("Knight Law"). Plaintiffs' attorneys request a reasonable "lodestar" enhancement of 0.5 in the amount of $18,697.50, for a total attorney's fee award of $56,092.50. A true and correct copy of my firm's billing is attached hereto as **Exhibit A**. Plaintiffs also request reimbursement of costs and expenses in the amount of $12,555.70. My firm advanced all of the costs in this matter. A true and correct copy of my firm's verified memorandum of costs is attached hereto as **Exhibit B.** The total amount requested in fees, costs and expenses is $68,648.20

3. Plaintiffs purchased a new 2016 Ford F-250 on June 12, 2016 for a cash price of $58,495.00 – adding taxes, fees, an optional theft deterrent device, an optional service plan, optional Gap coverage and financing charges on a seven-year loan, the total purchase price was $78,495.72. The vehicle was distributed by Ford Motor Company ("Defendant" or "Ford"), which provided an express written warranty. A true and correct copy of the Retail Installment Sales Contract is attached hereto as **Exhibit C**.

4. After approximately eighteen months and less than 23,000 miles of ownership, and within the applicable warranty periods, the vehicle began exhibiting problems with the engine. Plaintiffs delivered the vehicle to a Ford-authorized repair

facility because the engine was leaking coolant. The vehicle remained at the repair facility for eleven (11) days while the repair facility technicians attempted to correct the issue by replacing the primary radiator assembly and the CAC assembly. Despite these efforts, the engine continued to leak coolant, requiring another repair visit just one month later. In another attempt to correct the issue, the repair facility technicians replaced the water pumps and upper radiator hose. Nevertheless, the problems with the engine continued.

5. Approximately two months later, Plaintiffs again delivered the vehicle to a Ford-authorized repair facility because the check engine light was illuminated, as well as several other warning lights on the dashboard, and the vehicle would not start. At that time, the vehicle remained at the repair facility for eight (8) days while the repair facility technicians attempted to correct the issues by overlaying the high speed can wires, among other repairs. Plaintiffs repeatedly took the vehicle in for repairs, a total of four (4) times in a period of just four months, all for problems with the engine, but the serious engine problems persisted. Repeated failed attempts to repair the engine left Plaintiffs without the use of their truck for at least twenty-three (23) days during this time period.

6. Despite the ongoing repairs and continued manifestation of problems, Ford refused to acknowledge the defective nature of Plaintiffs' vehicle. At all times, however, Ford had direct, contemporaneous knowledge of the vehicle's serious defects, which it records in a database called "OASIS" and a warranty repair history database called "AWS." These repair records indicate each time the vehicle was presented for repair during the warranty period, as well as every time the Ford repair facility found a problem/defect attributable to Ford and billed Ford for the work.

7. Frustrated, concerned for their safety, and having lost confidence in Ford's ability to repair the vehicle, Plaintiffs contacted Ford customer service directly on April 18, 2018 and requested that Ford repurchase the defective vehicle. Despite Ford's affirmative duty under the law to perform an investigation and offer

relief, Ford rejected Plaintiffs' request on April 27, 2018.

8. With no other available avenue for relief, Plaintiffs contacted Knight Law and told the firm about the problems with the vehicle and the way Ford treated them. After reviewing the repair history and discussions with Plaintiffs, Knight Law agreed to represent them and bear the risk of litigating the case on a fully contingent basis. Because Knight Law's compensation was purely contingent, the firm faced a genuine risk of not being paid for its services for years, if at all, while advancing thousands of dollars in costs and expenses on Plaintiffs' behalf. In taking on this duty, the firm was facing a litigation behemoth—Ford is a multi-billion-dollar company, with a virtually infinite litigation war-chest, that wages a battle of attrition that most firms cannot withstand.

9. As a result of Ford's failure to fix the material defects associated with Plaintiffs' vehicle, or otherwise comply with the Song-Beverly Act, Plaintiffs filed a Complaint in this action on December 4, 2018 in the Los Angeles County Superior Court. Plaintiffs' Complaint alleged willful violations of the Song-Beverly Act and sought, among other things, civil penalties.

10. On January 4, 2019, Ford filed its Notice of Removal of Action from State to Federal Court. Accordingly, the parties proceeded to litigate this matter in Federal Court. Ford then filed its Answer to Plaintiffs' Complaint, denying all liability and asserting numerous affirmative defenses, on or about January 11, 2019.

11. In March 2019, Plaintiffs' counsel reviewed and revised Plaintiffs' Case Management Statement, reviewed Ford's Case Management Statement, and prepared a Joint Report pursuant to Rule 26(f) of the Federal Rules of Civil Procedure to begin federal discovery. Plaintiffs' counsel also drafted Plaintiffs' Rule 26 initial disclosures and reviewed Ford's Rule 26 initial disclosures.

12. On March 29, 2019, Ford served Plaintiffs with an Offer of Judgment pursuant to Federal Rule of Civil Procedure 68 ("Rule 68 Offer") in the amount of $192,000.00. Plaintiffs rejected the inadequate offer.

13. Defendant's position in the litigation required extensive efforts on the part of Plaintiffs' counsel, and they promptly began working up their case on behalf of Plaintiffs. Federal written discovery was drafted and served on Defendant on or about April 4, 2019, consisting of 89 requests for admissions, 81 requests for production of documents and 25 interrogatories. Plaintiffs benefitted from Knight Law's expertise and experience in litigating against Ford as just 3.3 hours were billed for drafting the entirety of this discovery. Plaintiffs' counsel are able to use existing files as templates to conserve time and litigate efficiently. Written discovery of this magnitude, drafted from scratch and without the benefit of Plaintiffs' attorneys' vast knowledge, experience and specialized expertise, would have taken multitudes of the time expediently managed here.

14. In May 2019, Ford continued its vigorous defense in this case, propounding 31 requests for admissions, 66 requests for production of documents and 25 special interrogatories upon Plaintiffs. Plaintiffs again benefitted from Knight Law's expertise and experience in litigating against Ford as just 3.8 hours were billed for drafting responses to the entirety of this discovery. Ford also noticed the depositions of Plaintiffs and made a demand for the inspection of Plaintiffs' defective vehicle. Plaintiffs' counsel then reviewed and analyzed Ford's responses to Plaintiffs' federal discovery requests in June 2019.

15. In July 2019, Plaintiffs noticed the depositions of several Ford employees and dealership personnel, including Ford's PMK and PMQ, service advisors and service technicians. These depositions were needed to obtain information regarding repairs to the vehicle, authenticate the repair orders, and rebut Ford's anticipated argument that the problems with Plaintiffs' vehicle were somehow caused by Plaintiffs' neglect or abuse. True to form, Ford served objections to all of the noticed depositions.

16. On July 2, 2019, Plaintiffs' counsel prepared for and attended the inspection of Plaintiffs' defective vehicle. Also, on July 2, 2018, Plaintiffs' counsel

prepared the Joint Status Report. On July 22 and 23, 2019, Plaintiffs' counsel prepared for and defended Ford's depositions of Plaintiffs. Plaintiffs' counsel then reviewed the deposition transcripts and drafted summaries of same.

17. On August 7, 2019, Plaintiffs' counsel prepared for and attended the deposition of Ford's PMK, and on August 21, 2019, Plaintiffs' counsel prepared for and attended the depositions of Ford's PMQ and dealership personnel.

18. Also, in August 2019, Plaintiffs' counsel drafted Plaintiffs' Confidential Mediation Brief. Plaintiffs' counsel then prepared for and attended mediation on August 27, 2019, during which the parties agreed to settle the case for the sum of $200,000.00. This settlement, which came nearly nine months after the Complaint was filed in this matter, was inclusive of a full statutory "buyback" of Plaintiffs' defective vehicle, incidental and consequential damages and a civil penalty.

19. Plaintiffs, as the prevailing parties in this action, have made every reasonable effort to resolve the payment of Plaintiffs' attorney's fees by Ford but were forced to file this Motion with the Court.

**Defendant Has Refused to Settle Attorney Fees/Costs/Expenses and Has Forced This Fee Motion to be Filed**

20. Throughout my experience as an attorney in this area of law, I was routinely able to settle the matter of attorney fees, costs and expenses without court involvement. For most manufacturers, that remains to be true. However, while I do not have direct proof, it appears to me, and I infer that it not be coincidence, that a select few manufacturers have colluded to force my firm to file motions for attorney fees in virtually every case instead of resolving the issue by agreement.

21. It is a policy of the law firm to settle our clients' claims before discussing settlement of attorney fees and costs. We take this approach to avoid any possibility, or even the appearance, of a conflict of interest. Once the vehicle is

surrendered and the client is paid, we discuss attorney fees, costs and expenses with opposing counsel.

22. In 2016, the practice of settling fees changed completely, and in particular with Ford Motor Company. From 2007 until approximately the middle of 2016, I was typically able to settle attorney fees with Ford. In 2015, I filed a total of 15 motions for attorney fees all year. However, that all changed in mid-2016.

23. In June of 2016, I made a demand to Ford's counsel on 13 cases. This was a typical sized batch. Over the course of the next three months, I followed up by text message and my staff followed up by email. After three months of virtual silence, the fees and costs finally settled.

24. At that point, in September of 2016, there were another 17 cases that had settled for the clients in which fees were still outstanding. Still a manageable number of cases to discuss. Ford's counsel stated that settling these fees is complicated but also makes unreasonably low-ball offers. While ignoring the outstanding fees and costs, Ford's counsel makes offers to settle my clients' liability component in other cases. Cases continued to settle while my firm remained unpaid for providing the services to secure substantial settlement figures on cases that were already completed.

25. By January 27, 2017, the number of cases had reached 33, so I withdrew the demand on 17 cases and made a new demand encompassing all 33 cases. I attempted to discuss the matter informally over lunch, but the invitation was declined.

26. By April 2017, I had to withdraw the demand, which went unanswered and was not countered, and made a new demand to Ford's counsel on what had become 58 cases with unsettled attorney fees. In light of the inability to reach resolution, we even hired a mediator, but still Ford would not come close to agreeing to pay the fees incurred.

27. In August of 2017, the attorney fees remained unsettled in 86 cases against Ford in which liability for the client had long been settled. In 9 months, the number of unsettled attorney fee matters had gone from 17 cases to 86 cases. In that time period, Ford agreed to settle just 7 attorney fees and costs. At this juncture, Ford expressly stated that it no longer has interest to even talk about attorney fees and costs.

28. By October 2017, the number of cases in which fees remained unresolved had ballooned into triple digits. As a result of Ford's refusal to settle fees and costs and my continued efforts to avoid filing over 150 fee motions, my firm has been traveling the state attending Orders to Show Cause re: Dismissal.

29. As it is now patently clear to me that Ford is unwilling to come to the table with realistic numbers to settle attorney fees and costs, my firm has shifted focus to getting these unpaid matters to the courts, thereby increasing fees and clogging the already-busy courts with more work.

**Ford is a Staunch Defendant That Litigates More Aggressively Than Most Other Vehicle Manufacturers While Deceiving Consumers More Than Most Manufacturers**

30. There are vehicle manufacturers with whom this firm has had exactly zero trials, zero discovery disputes, zero motions to compel, zero fee motions. Ford Motor Company is not one of them. Since 2012, the firm has tried 55 lemon law cases. One case ended in a hung jury and one case ended in a mistrial. Taking those two matters out, Knight Law and its trial attorneys have a win-loss record of 36 wins and 17 losses. This amounts to nearly a 70% winning percentage in trials. Of those 55 trials, Ford makes up 14 of them. In other words, Ford alone comprises 25% of all of the cases that go to trial. Of the 14 trials prosecuted against Ford, the firm has prevailed in 9 of them.

31. During the course of my years in practice, I have successfully pursued evidence during discovery that has proven damaging to Ford. For example, Ford

was compelled to produce 35,000 pages of training materials from its customer service call center. The production of these documents came only after Ford's representatives claimed for years that no such training materials existed, and perjured themselves in declarations opposing motions to compel. It was only once I flew to Melbourne, Florida to depose Abe Bush, one of Ford's customer service agents, during which he admitted that he had use of training materials. Based on that information, I pursued court orders to compel the materials. Ford's then-counsel, having denied the existence of training materials in countless declarations, flipped the opposition and claimed "it was a revelation" that the documents existed. Another example is Ford's attempt to conceal documents that it had produced in other class action litigation. Through continuing efforts, Ford was ordered to produce approximately 12,000,000 pages in a class document dump. The firm's attorneys spent countless hours sifting through these pages. Once certain documents were identified and brought into evidence at trial, Ford amazingly claimed that the documents were not genuine and authentic. As a result, we sought Ford's admission of the genuineness of these documents, which Ford initially denied, but court orders eventually compelled their admission of authenticity. More recently, there was an ongoing feud in which Ford was ordered to produce customer service documents located on what is referred to as the "G: drive," but Ford ignored the order, caused a motion to compel compliance, filed motions for a protective order and a motion for reconsideration, and after almost two years of this battle finally produced the contents of that G: drive.

32. In my experience, Ford's approach to litigation is to fight at every turn, make unacceptably low offers that its attorneys know from their experience are not satisfactory, or make no offers at all, until the trial date for the case is near. Of course, this is not always the situation. Based on a sample of the cases filed against Ford in 2016 and 2017, 74% of those cases settled where trial was within six months or less, and 50% of those cases settled within just one month of trial. The following

chart shows the percentage of lawsuits that are settled when Ford finally tenders an adequate offer when trial is imminent:




33. While there are a variety of vehicles forming the basis of breach of warranty claims against Ford, the prosecution of claims by my firm in representation of consumers against Ford in large part involves two particular vehicles with defects. The first is Ford's Super Duty trucks that were sold with a defective diesel engine. The second involves Ford Focus and Fiesta vehicles equipped with a malfunctioning "adaptive automatic transmission." As mentioned to some extent above, the firm's efforts have led to court orders compelling Ford to produce millions of internal documents relating to the defects in these vehicles, such as internal emails, presentations, studies, charts, tables, and graphs. I am not aware of any other firm that has successfully pursued such discovery. Such efforts have led to resounding settlements and victories in trial, though admittedly not every case has ended with a victory for the consumer. In June 2016, one of the firm's trial teams obtained a jury verdict in the amount of $1.68M against Ford on a vehicle that was purchased for just over $50,000.00 because it was proven by clear and convincing evidence that Ford engaged in fraudulent conduct with malicious, oppressive and/or fraudulent

intent. The judgment was later reduced by the trial court to approximately $950,000.00, comprised of compensatory damages, civil penalties and punitive damages based on a multiple of ten times the compensatory damages, and prejudgment interest.

34. In response to that verdict, Ford ramped up its defense even more. Ford hired several new law firms to assist in its defense. Ford is now represented by the following eleven law firms in lemon law actions against my firm:

1) King & Spalding
2) Greenburg Traurig
3) Gordon Rees Scully Mansukhani, LLP
4) Gates, O'Doherty, Gonter & Guy
5) Baker Hostetler LLP
6) Snell & Wilmer, LLP
7) Shook, Hardy & Bacon
8) The Erskine Law Group
9) LeClairRyan
10) Sanders Roberts LLP
11) Dykema Gossett

35. Recently, one of Ford's attorneys, speaking on behalf of the entire army of lawyers, proclaimed that Ford was no longer willing to discuss settlement, did not want to engage in any further mediations and fully intends to bring every case to trial unless our clients accept Ford's existing offers. A true and correct copy of that letter is attached hereto as **Exhibit D**.

36. As a result of Ford's resolute defense, attorney fees are incurred during the prosecution of the lawsuit. As discussed above, I was historically able to resolve payment without the need for filing motions, though in a few, rare cases my firm did file a motion. As stated by one of Ford's attorneys in a declaration in support of a federal court finding federal jurisdiction of a matter based on amount in controversy,

"it is not uncommon, and in fact quite regular, for attorney's fee and cost awards (or resolutions through informal discussions with opposing counsel) to exceed $100,000.00." A true and correct copy of the declaration of Spencer Hugret is attached hereto as **Exhibit E, p. 3, ¶ 4**.

**The Attorneys' Hourly Rates Are Reasonable Pursuant to the Lodestar Method in Light of their Experience**

37. I attended law school at Pepperdine University and I was a judicial extern for Judge Gregory W. Alarcon of the Los Angeles County Superior Court in 2002.

38. I have been admitted to the State Bar of California since April 29, 2003. Since my admission to the State Bar of California, I have specialized in consumer law.

39. I have extensive experience prosecuting and resolving consumer protection matters involving motor vehicle claims. For the past fifteen years, I have specialized in breach of warranty and fraud cases against automobile manufacturers and dealers. I was among the attorneys who represented the plaintiff in *Joyce v. Ford Motor Co.* (2011) 198 Cal.App.4th 1478, a leading case which extended the protections of the Lemon Law to trucks based on actual weight, not maximum capacity.

40. I originally worked for one of the largest consumer warranty law firms in the country, Consumer Legal Services. From April 2007 until April 2012, I was a founding partner in Romano, Stancroff & Mikhov PC. I was the Managing Partner of the firm until it was dissolved. In April 2012, I founded O'Connor & Mikhov, LLP. The firm was reformed in 2017 as Knight Law Group, LLP. I am the Managing Partner of the firm. My rate for this case was $550/hour. My billing entries are indicated by the initials "SBM" in the billing statement exhibited to this declaration.

///

41. Amy Morse is a Partner in my office. Ms. Morse has been with my firm since her admission to the bar in 2013. Prior to her admission, she was a law clerk with my office since 2012. Ms. Morse graduated from Loyola Law School. Ms. Morse's hourly rate is $350/hour. Ms. Morse's billing entries are indicated by the initials "ALM" in the billing statement exhibited to this declaration.

42. Kristina Stephenson-Cheang graduated from Western State University College of Law and was admitted to practice in 2008. Ms. Stephenson-Cheang has been employed with the firm since 2013. Prior to her employment at Knight Law, she worked for a different lemon law firm gaining valuable experience in this area of law. Ms. Stephenson-Cheang's hourly rate in this matter is $375/hour. Ms. Stephenson-Cheang's billing entries are indicated by the initials "KSC" in the billing statement exhibited to this declaration.

43. Mitchell Rosensweig was an Associate at my firm. Mr. Rosensweig graduated cum laude from the University of Baltimore School of Law and was admitted to practice law in the state of Maryland in 2012. He was also admitted to practice law in Washington, D.C. in 2014. Prior to his employment with KLG, Mr. Rosensweig practiced primarily in the area of medical malpractice. Mr. Rosensweig was admitted to the California Bar in 2018. His hourly rate in this matter is $325/hour. Mr. Rosensweig's billing entries are indicated by the initials "MER" in the billing statement exhibited to this declaration.

44. Constance Morrison is of counsel that is very often used by my firm to attend vehicle inspections, defend depositions or attend hearings. Ms. Morrison has 20 years of litigation experience. She graduated from Empire College School of Law and was admitted to practice in 1996. Ms. Morrison's hourly billing rate in this case was $375/hour, and her billing entries are indicated by the initials "CM" in the billing statement exhibited to this declaration.

45. Deepak Devabose is an Associate at my firm. Mr. Devabose was admitted to the Bar in 2014 and has been working at the firm since 2015. He

graduated from Pepperdine University School of Law and received his undergraduate degree from Emory University. He has earned the Certificate in Reasonable Attorney Fees from the National Association of Legal Fee Analysis, which specializes in attorney fees and legal billing. Mr. Devabose's hourly rate is $275/hour. His billing entries are indicated by the initials "DD" in the billing statement exhibited to this declaration.

46. Gregory Lehrmann is an Associate at my firm. Mr. Lehrmann has been with my firm since his admission to the Bar in 2019. Prior to his admission, he was a law clerk with my firm since 2018. He graduated from Pepperdine University School of Law and received his undergraduate degree from the University of California, Los Angeles. Mr. Lehrmann's hourly rate is $200/hour. His billing entries are indicated by the initials "GAL" in the billing statement exhibited to this declaration.

47. Mark R. Berns is associated with Knight Law Group drafting motions for the Lemon Law practice. Mark R. Berns has been admitted to the State Bar of California since 2006. He graduated from the University of Southern California Gould School of Law and received his undergraduate degree from the University of California, Los Angeles. Mr. Berns' regular hourly rate is $350/hour. His billing entries are indicated by the initials "MRB" in the billing statement exhibited to this declaration.

48. As always, Knight Law attempts to keep attorney fees and costs down while providing vigorous and effective representation.

49. All time billing entries were completed contemporaneously with each dated entry or near in time to the work performed. I have personally reviewed the billing entries to ensure that they appropriately reflect the time expended. I have removed or reduced any time I felt was excessive, duplicative, or otherwise unreasonable, or I have labeled the entry as a "no charge", as identified by the "N/C" in the invoice. My firm **does not bill clients** for secretarial support staff time.

**Evidence to Support the Reasonableness of Hourly Rates for Attorneys**

50. I am aware of the hourly rates of other attorneys in California who work in the area of lemon law and consumer law. I bill my time at an hourly rate of $550 per hour. An hourly rate of $550 per hour is reasonable, and consistent with other attorneys who litigate consumer matters and who have a comparable level of experience. A canvas of the community of attorneys who specialize in this area reveals the following hourly rates:

a. Hallen Rosner of Rosner, Barry & Babbit, LLP, San Diego, CA has been practicing law since 1983 and specializes in consumer litigation with particular attention to auto financing issues. He charges $640 per hour. Survey as of 2017.

b. Michael Lindsey was admitted to the bar in 1993 and has been handling consumer law cases for nearly 15 years in San Diego, California. Mr. Lindsey's hourly rate is $625. Survey as of 2017. His previous rate of $575/hour was recently confirmed as reasonable in *Goglin v. BMW of North America* (2016) 4 Cal.App.5th 462, 473-74.

c. Brian Kemnitzer of Kemnitzer, Anderson, Barron, Ogilvie & Brewer LLP in San Francisco has been handling consumer cases since 1983. Mr. Kemnitzer charges $800 per hour. Survey as of 2016.

d. Robert Brennan of Brennan, Weiner and Associates in La Crescenta, California charges $450 per hour. He has been in practice since 1987. The hourly rate for his associates is $375 per hour. Survey as of 2010.

e. Martin Anderson of The Anderson Law Firm in Santa Ana, California has practiced law since 1995 and charges $395 per

hour. Mr. Anderson specializes in Lemon Law matters. Survey as of 2007.

f. Nancy Barros of Kemnitzer, Anderson, Barron, Ogilvie & Brewer LLP in San Francisco, California has been handling consumer cases since 1983. Ms. Barros charges $625 per hour. Survey as of 2016.

g. Mark Romano of Romano, Stancroff in Los Angeles, California has been practicing for 23 years, primarily in consumer litigation. His hourly rate is $400 per hour. Survey as of 2010.

51. On August 8, 2018, Judge John P. Doyle awarded 100% of the lodestar fees requested by motion in the total amount of $72,478.75 in the matter of *Morgan v. FCA* (Los Angeles County Superior Court, Case No. BC625668). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion included my rate of $500 per hour, the rate of $400 per hour for Roger Kirnos and Sepehr Daghighian, $375 per hour for Kirk Donnelly, $350 per hour for Amy Morse and Kristina Stephenson-Cheang, $250 per hour for Deepak Devabose and George Aguilar, and $225 per hour Jennifer Reiz and Thomas Burns. A true and correct copy of the signed order is attached hereto as **Exhibit F**.

52. On August 7, 2018, Judge David Sotello awarded 100% of the fees, costs and expenses requested by motion in the total amount of $31,656.20 in the matter of *Hadorn v. FCA* (Los Angeles County Superior Court, Case No. BC633611). The court indicated it would not consider rates of defense counsel and found that the hourly rates were reasonable for that venue and that the time incurred were reasonable. The rates requested by motion included my rate of $500 per hour, the rate of $350 per hour for Amy Morse, Christopher Swanson, Hadi Gerami, and Kristina Stephenson-Cheang, $225 per hour for Jennifer Reiz, and $200 per hour for Michelle Lumasag. A true and correct copy of the signed order is attached hereto as

**Exhibit G**.

53. On July 31, 2018, Judge Teresa Beaudet awarded full requested lodestar attorney's fees in the amount of $55,312.50 in attorney's fees and $12,893.46 in costs and expenses in the matter of *Marroquin vs. Ford Motor Company* (Los Angeles County Superior Court, Case No. BC626539), which resulted in a settlement that is more than three the total amount Plaintiff paid for the vehicle. The hourly rates awarded ranged from my rate at the time of $500 for senior-level attorneys such as myself; $375 to $300 per hour for "contract/of counsel" attorneys Kirk Donnelly, Constance Morrison, Hadi Gerami, and Larry Castruita; $350 per hour for partner Amy Morse and senior associate Kristina Stephenson-Cheang; and $250 for younger attorneys. The overall award represents 100% of the amount requested without a multiplier. A true and correct copy of the signed order is attached hereto as **Exhibit H**.

54. On July 13, 2018, Judge Deirdre Hill awarded full lodestar attorney's fees in the amount of $40,066.25 and full costs and expenses in the amount of $1,723.21 in the matter of *Bell vs. FCA US LLC* (Los Angeles County Superior Court, Case No. BC631014), which resulted in a settlement that consisted of a full buy-back of the subject vehicle, incidental and consequential damages, and civil penalties. The hourly rates awarded ranged from $500 for senior-level attorneys, such as myself and trial counsel, Michael Rosenstein; $400 to $350 per hour for attorneys Russell Higgins and Amy Morse; and $225 to $250 for Thomas Burns and Hadi Gerami. The overall award represents 100% of the amount requested. A true and correct copy of the signed order is attached hereto as **Exhibit I**.

55. On February 23, 2018, Judge John P. Doyle awarded $63,705.38 in attorney's fees based on a request of $70,783.75 and full $8,560.21 in costs and expenses in the matter of *Aandahl vs. FCA US LLC* (Los Angeles County Superior Court, Case No. BC620824), which resulted in a settlement that is more than double the total amount Plaintiff paid for the vehicle. The hourly rates awarded ranged from

$500 per hour for senior-level attorneys, including me and trial counsel, Michael Rosenstein; $400 to $350 per hour for attorneys Russell Higgins, Lauren Ungs, Chris Swanson, Amy Morse, Constance Morrison, Kristina Stephenson-Cheang, $200 to $275 for younger attorneys. The overall award represents 90% of the amount requested. A true and correct copy of the signed order is attached hereto as **Exhibit J**.

56. On January 5, 2018, Judge Mel Red Recana granted full requested lodestar attorney fees in the amount of $529,885.50 and $96,840.81 in costs and expenses in the matter of *Margeson v. Ford Motor Company* (Los Angeles Superior Court, Case No. BC549430), which represented 100% of the fees and 98% of requested costs and expenses. Judge Recana believed the firm's prowess during the four-week trial that resulted in an unprecedented almost two-million-dollar jury verdict warranted a 1.8 multiplier of $423,908.40 to be added to the fee award. In particular, the hourly rates awarded ranged from $500 to $650 per hour for senior-level attorneys such as myself, trial counsel Michael Rosenstein, trial counsel Bryan Altman, and Hal Rosner; $400 to $350 per hour for senior attorneys Russell Higgins, Lauren Ungs, Roger Kirnos, Amy Morse, Kirk Donnelly, Constance Morrison, and Kristina Stephenson-Cheang, and $200 to $300 for younger attorneys. A true and correct copy of the signed order is attached hereto as **Exhibit K**.

57. On October 31, 2017, Judge Elizabeth R. Feffer granted attorney fees, costs and expenses in the amount of $43,527.50 in the matter of *Jesus Montes v. Ford Motor Company* (Los Angeles Superior Court, Case No. BC617619), which represented 100% of the fees and costs requested. Judge Feffer granted rates from $750 per hour for trial counsel Moses Lebovits, my rate of $500 per hour, $400 per hour for Senior Associate Russell Higgins, $325 to $350 per hour for Associates Chris Swanson and Kristina Stephenson-Cheang, $350 per hour for Mr. Lebovits' associates, Ashley Arnett and Mary Fersch, $250 per hour for then-associate, now-Partner Amy Morse. A true and correct copy of the signed order is attached hereto

as **Exhibit L**.

58. On October 11, 2017, Judge Elizabeth R. Feffer awarded 98% of the attorney fees requested by motion in the matter of *Sergio Lopez v. Ford Motor Company* (Los Angeles County, Case No. 585892) in the amount of $108,750.00, with the one reduction stemming from my firm's own withdrawal of time that was unreasonable. Judge Feffer reviewed the following hourly rates and determined them to be reasonable: $500 per hour for attorneys Steve Mikhov and Richard Wirtz, $400 per hour for attorney Russell Higgins, $300 - $350 per hour for attorneys Alistair Hamblin, Constance Morrison, Kristina Stephenson-Cheang, Amy Smith and Erin Barns, and $250 per hour for Amy Morse and Lauren Sabb. A true and correct copy of the signed order is attached hereto as **Exhibit M**.

59. On September 20, 2017, Judge Gail R. Feuer awarded $227,228.00 in attorney fees and $31,712.55 in costs and expenses in the matter of *Anita Longin vs. Ford Motor Company* (Los Angeles Superior Court, Case No. BC564186). Specifically, the Court deemed my hourly rate of $500 per hour reasonable along with trial attorney, Sepehr Daghighian's, hourly rate of $400 per hour as reasonable. Judge Feuer determined that the hourly rates of attorneys ranging from $225 to $400 per hour were reasonable, such as Partners Lauren Ungs and Amy Morse (who were Associates at the time), and Associates Russell Higgins, Alastair Hamblin, Kristina Stephenson-Cheang, Daisy Ortiz, etc. Contract/"Of Counsel" attorney Constance Morrison was awarded her hourly rate of $350 for all time expended. The attorney fee award represents 98% recovery of the lodestar fees and costs requested by motion in the matter. A true and correct copy of the signed order is attached hereto as **Exhibit N**.

60. On June 19, 2017, Judge Michael J. Raphael awarded $116,872.50 in attorney's fees after trial in the matter of *Bellamy v. Mercedes Benz USA LLC* (Los Angeles Superior Court, Case No. BC597233). Plaintiff obtained a maximum treble damages jury verdict. The Court affirmed the hourly rates of the attorneys, including

Moses Lebovits' rate of $750 per hour, my rate of $500 per hour and mid-level and young associates ranging from $250 to $400 per hour, as well as Attorney Ashley Arnett at $350 per hour. The court made reductions to some time entries but the fee award represents 84% of the lodestar fees requested. A true and correct copy of the signed order is attached hereto as **Exhibit O**.

61. On May 24, 2017, Judge Howard L. Halm awarded $168,000.00 in attorney's fees and $27,257.19 in costs and expenses in a jury trial that resulted in a maximum civil penalty award for our client in the matter of *Gomez v. Kia Motors America, Inc.* (Los Angeles County Superior Court, Case No. BC 574493). The attorney fee award represents 81% of the lodestar fees requested by motion in the matter. The court reduced the number of hours for various billing entries. The court also reduced Attorneys Bryan Altman and Joel Elkins from $650 per hour and $450 per hour down to $550 per hour and $375 per hour, respectively. The court found my hourly rate of $500 to be reasonable as well as those of other attorneys in my office ranging from $225 per hour for Daisy Ortiz to $350 per hour for Lauren Ungs and Kristina Stephenson-Cheang to $400 per hour for Russell Higgins. The court, on its own, raised the rate of trial attorney Roger Kirnos from the requested $375 per hour to $475 per hour. A true and correct copy of the signed order is attached hereto as **Exhibit P**.

62. On March 15, 2017, Judge Susan Bryant-Deason awarded $113,398.46 in fees, costs and expenses in the matter of *Andrino v. Kia* (Los Angeles County Superior Court, Case No. BC596210), which settled on the first day of trial. The court's award represents approximately 10% reduction of the fees requested by motion. A true and correct copy of the signed order is attached hereto as **Exhibit Q**.

63. On February 28, 2017, Judge Ernest M. Hiroshige in Los Angeles County Superior Court awarded 100% of the requested fees in the matter of *Dorfman v. BMW of North America, LLC* (Los Angeles Superior Court, Case No. BC538183) for a total attorney fee award (not including costs) of $47,732.50. Therefore, the

court confirmed the reasonableness of the time expended as well as the reasonableness of the hourly rates requested, which were $500 for my rate and the rate of senior trial counsel, Rich Wirtz, $300 to $350 per hour for middle level attorneys such as Lauren Ungs, Kristina Stephenson-Cheang, Kevin Van Hout, and contract attorney/"of counsel" Constance Morrison, and $200 to $250 per hour for the younger associates, such as Daisy Ortiz, Amy Morse, Stephanie Marshall and Michael Ouziel. A true and correct copy of the signed order is attached hereto as **Exhibit R**.

64. On November 2, 2016, Judge Barbara A. Meiers in Los Angeles County Superior Court awarded 100% of the requested fees and costs in the matter of *Carter v. Chrysler Group LLC* (Los Angeles Superior Court, Case No. BC495228) resulting in a total award of fees, costs and expenses in the amount of $41,466.22. The award reflects a finding that the hourly rate of $500 per hour is reasonable for myself and senior trial attorney, Michael Rosenstein, as well as $350 for attorneys Roger Kirnos, Lauren Ungs and Chris Swanson. A true and correct copy of the signed order is attached hereto as **Exhibit S**.

65. On August 25, 2016, Judge Elizabeth A. White awarded 100% of the requested lodestar attorney fees and costs and expenses in the total sum of $84,210.90 in the matter of *Mansur v. Chrysler Group, LLC* (Los Angeles County Superior Court, Case No. BC539866). Judge White expressly approved hourly rates ranging from $600 per hour for trial counsel, Mark O'Connor, to my rate of $500 per hour to $325 - $350 per hour for mid-level attorneys such as Lauren Ungs, Chris Swanson, Shawna Melton and Kristina Stephenson-Cheang. A true and correct copy of the signed order is attached hereto as **Exhibit T**.

66. On August 22, 2016, in the matter of *Kebodeaoux v. Mercedes-Benz* (Los Angeles Superior Court, Case No. BC552037), Judge Marc R. Marmaro granted an award of attorney's fees, costs and expenses in the amount of $203,247.39 in a case in which our clients prevailed at trial with an award of civil penalties. In

so doing, the court took a 15% reduction on the overall amount but expressly considered and granted hourly rates for trial counsel Mark O'Connor at $600 per hour, my rate at $500 per hour, mid-level attorney rates of $300 to $350 per hour and lower billing attorney rates of $225 to $250 per hour. A true and correct copy of the signed order is attached hereto as **Exhibit U**.

67. Also on August 22, 2016, Judge John T. Doyle ruled that the hourly rates were reasonable and likewise ruled the work performed in that case was also reasonable. He also awarded 100% of the requested lodestar fees and costs in the case entitled *Baca v. Chrysler Group, LLC* (Los Angeles Superior Court, Case No. BC566511). The court ruled that the time entries were reasonable as well as the hourly rates were reasonable, including the rate of $500 per hour for myself and senior trial counsel, Michael Rosenstein, $300 to $350 per hour for attorneys Lauren Ungs, Roger Kirnos, Chris Swanson, Kevin Van Hout and Constance Morrison, and $200 to $250 per hour for attorneys Stephanie Marshall, Michael Ouziel, Daisy Ortiz and Amy Morse. A true and correct copy of the signed order is attached hereto as **Exhibit V**.

68. On August 2, 2016, Judge Teresa A. Beaudette awarded 100% of the requested fees, costs and expenses in the matter of *Lepe v. Chrysler Group, LLC* (Los Angeles Superior Court, Case No. BC556273) for a total of $74,712.10. Judge Beaudette determined the requested hourly rates were reasonable and found that the work performed in the matter was reasonable. The requested rates ranged from $650 per hour for trial counsel, Bryan Altman, to $500 per hour for my rate, to $450 per hour for senior attorney, Joel Elkins, to $200 to $350 per hour for associates ranging from 1 year to 5 years of legal experience in California. A true and correct copy of the signed order is attached hereto as **Exhibit W**.

69. On June 6, 2016, Judge Michael Johnson expressly confirmed the reasonableness of each of the hourly rates and awarded 90% of the attorneys' lodestar fees in the amount of $50,541.00, in addition to $2,634.80 in costs, in the

case of *Perez v. Chrysler Group LLC* (Los Angeles Superior Court, Case No. BC528217.) The court ruled that my rate of $500 per hour was reasonable, trial counsel Michael Rosenstein's rate of $450 per hour was reasonable, rates of $300 to $350 per hour for attorneys Lauren Ungs, Roger Kirnos, Kevin Van Hout, Kristina Stephenson-Cheang were reasonable, and the rate of $375 per hour was reasonable for attorney Kirk Donnelly. A true and correct copy of the signed order is attached hereto as **Exhibit X**.

70. On September 9, 2015, Judge Gregory W. Alarcon awarded 100% of the attorney's fees and costs and expenses actually incurred in the case of *Helm v. Chrysler* (Los Angeles County Superior Court, Case No. BC519503) in the amount of $66,172.80, thereby confirming the reasonableness of the hourly rates requested and the reasonableness of the time incurred. Judge Alarcon granted my rate of $450 per hour, trial attorneys Michael Rosenstein and Roger Kirnos at rates of $450 and $300, respectively, associate rates at $300 per hour for attorneys Lauren Ungs and Kevin Van Hout and $325 per hour for Kristina Stephenson-Cheang, $350 per hour for Constance Morrison, and $200 to $250 per hour for Amy Morse, Daisy Ortiz and Stephanie Marshall. A true and correct copy of the signed order is attached hereto as **Exhibit Y**.

71. On April 20, 2015, Judge Michael P. Linfield awarded $79,081.14 in fees and costs and expenses in the matter of *Shychko v. Mercedes-Benz USA* (Los Angeles Superior Court, Case No. BC533642). Judge Linfield reduced the fee amount by 21% but granted a lodestar multiplier of 1.5. A true and correct copy of the signed order is attached hereto as **Exhibit Z**.

72. On October 8, 2014, Judge Terry A. Green awarded $150,000 in a case that went to trial in the matter of *Sanders v. Ford Motor Company* (Los Angeles County Superior Court, Case No. BC48466.) The hourly rates ranged from $175 per hour for Ms. Ortiz to $300 - $375 per hour for associates and mid-level attorneys such as Roger Kirnos, Lauren Ungs and Kevin Van Hout, to $400 per hour for my

rate and $450 per hour for trial counsel, Michael Rosenstein. A true and correct copy of the signed order is attached hereto as **Exhibit AA**.

73. On October 31, 2013, Judge Abraham Khan awarded the amount of $136,701.17 in the matter of *Chiavassa v Ford Motor Company*, Los Angeles Superior Court, awarding him his hourly rate of $500 per hour. A true and correct copy of the signed order is attached hereto as **Exhibit BB**.

74. On September 17, 2013, Judge Ernest M. Hiroshige awarded me fees that I requested at the rate of $350 per hour in *Snell v. Ford Motor Company*, Los Angeles Superior Court, Case No. BC 471985. Judge Hiroshige also <u>granted a lodestar multiplier of 1.5</u>. A true and correct copy of the signed order is attached hereto as **Exhibit CC**.

75. On July 24, 2013, Judge Michael L. Stern awarded fees at my rate of $350 per hour in *Meuchel v. Ford Motor Company* (Los Angeles Superior Court, Case No. BC 481727). A true and correct copy of the signed order is attached hereto as **Exhibit DD**.

76. On March 5, 2009, Judge Rolf M. Treu awarded me all the fees I requested at $300 per hour, <u>plus a 1.33 multiplier</u> in *Jeske v. Chrysler Motor Co.* (Los Angeles Superior Court Case No. BC394377). A true and correct copy of the signed order is attached hereto as **Exhibit EE**.

77. On August 20, 2008, I was awarded attorney fees based on an hourly rate of $300 per hour after a 1.5 multiplier in *Kang v. American Honda Motor Co.* (Los Angeles County Superior Court Case No. BC379949). Although the court in Kang reduced the requested hourly rate, it did <u>award a 1.5 multiplier</u> because Kang, like this case, was taken on a contingent-fee basis. A true and correct copy of the signed order is attached hereto as **Exhibit FF**.

78. In considering the appropriate rates to charge in a matter such as this, I have reviewed a report entitled United States Consumer Law Attorney Fee Survey Report published in 2019 reflecting rates for 2017 to 2018. Based on the facts

presented in the Report, I have determined that the rates charged by the attorneys in this case are commensurate with the hourly rates charged by other attorneys with comparable experience in consumer rights law. On Pages 1– 20, the purpose and methodology of the Report is described. On Pages 58 – 61, the Report sets forth the average hourly rates of consumer law attorneys in California based on experience. The information reflected in these pages supports the reasonableness of the attorney hourly rates charged in this case, which are equivalent, if not below, the average rate of attorneys who practice consumer law in California. On pages 510 – 515, the Report identifies cases in California that have used this Report as supporting evidence in fee awards. The entire report is 598 pages so I have attached only the relevant pages dealing with California attorneys and California law. A true and correct copy of the most relevant pages from the Report is attached hereto as. **Exhibit GG.**

79. I request a multiplier of 0.5 based on my contingent fee, the risk and delay in payment associated with a contingent fee scenario, and the result achieved. Such a multiplier is reasonable and towards the low end under the established law. (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 255.) Plaintiffs' attorneys are paid only if Plaintiffs prevail, unlike Defendant's attorneys who get paid monthly regardless of the outcome. Moreover, Defendant's attorneys typically have a continuing and ongoing relationship, whereas this firm will most likely not have the opportunity to represent Plaintiffs again.

80. It is not uncommon for attorney's fees and costs to exceed the client's damages. The Legislature acknowledged such a circumstance, which is the reason behind the fee shifting provision of the Song-Beverly Act. Otherwise, consumers would be left without opportunity for redress when their damages were not enough for an attorney to take the case on a contingent fee or hourly rate basis. Such a result occurs in large part because of dealerships' or vehicle manufacturers' refusal to adhere to statutory laws protecting consumers, resistance to honoring consumers'

complaints, and generally playing games or simply abusing discovery procedures. For example, Ford could have avoided paying any attorney's fees whatsoever had it admitted to its wrongdoing early on. Instead, Ford engaged in expensive litigation, and drove up fees and costs by, among other things, engaging in extensive discovery, stone-walling Plaintiffs' discovery efforts and holding out for nearly nine months of litigation before finally agreeing to a reasonable settlement.

81. Lemon law cases are not simple actions. They require a specialized understanding of the full scope of consumer protection laws, which are highly nuanced. The cases also require knowledge of intricacies of automobiles and a lexicon associated with them, as well as a knowledge concerning how to investigate these matters. They also require knowledge of auto manufacturers' and dealers' protocols for repairing vehicles.

82. Generally speaking, clients of the firm are benefitted by the experience of this firm insofar as work-product from other cases can be used in this case as well. Hence, a substantial amount of time was saved by not needing to draft each document from scratch and little time was needed to "get up to speed" in this specialized area of law. In effect, Ford also benefitted when it comes to a determination of reasonable attorney's fees to be paid because there are numerous cost-saving techniques employed by the firm.

83. Ford itself made this matter more complex by maintaining it had no liability and declining to submit any reasonable offers to settle the matter early in the litigation.

84. As shown by the number of cases discussed herein and the positive results achieved on behalf of each client, the hourly rate is reasonable and the number of hours expended are reasonable. The fees incurred in this litigation are the direct result of Ford's own dismissive approach to handling lemon law matters.

///

///

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 2nd day of March 2020, at Los Angeles, California.

/s/ Steve Mikhov
STEVE MIKHOV
Declarant

# EXHIBIT A

Serrano Medina, Oscar | Knight Law Group, LLP | 18STCV07072
Serrano, Mariana v. FMC | Invoice | 2:19-cv-00078-R-KS

| Date | Attorney | Rate | Task | Time | FEE |
|---|---|---|---|---|---|
| | SBM | $550.00 | Initial communication with Clients and evaluation of Clients' claims | 1.0 | $550.00 |
| | SBM | $550.00 | Analyze vehicle documentation | 0.7 | $385.00 |
| | SBM | $550.00 | Communication with Clients | 0.5 | $275.00 |
| 12/3/2018 | ALM | $350.00 | Communication with Clients | 0.5 | $175.00 |
| 12/3/2018 | ALM | $350.00 | Draft Complaint | 1.0 | $350.00 |
| 12/3/2018 | SBM | $550.00 | Review and sign Complaint | 0.1 | $55.00 |
| 12/14/2018 | KSC | $375.00 | Review Court Notice of CMC and Court Notice of OSC | 0.1 | N/C |
| 1/7/2019 | KSC | $375.00 | Review Court Order Denying Transfer and Court Notice of Assignment to US Judge | 0.1 | N/C |
| 1/7/2019 | KSC | $375.00 | Review Def's Notice of Removal | 0.2 | $75.00 |
| 1/7/2019 | KSC | $375.00 | Review Declaration of H. Paul Efstratis in Support of Notice of Removal | 0.1 | $37.50 |
| 1/7/2019 | KSC | $375.00 | Review Declaration of Taylor Sullivan in Support of Notice of Removal | 0.1 | $37.50 |
| 1/7/2019 | KSC | $375.00 | Review Certification of Interested Parties | 0.1 | $37.50 |
| 1/9/2019 | KSC | $375.00 | Review Court Order re Notice to Counsel | 0.2 | N/C |
| 1/9/2019 | KSC | $375.00 | Review Def's Notice to State Court of Removal | 0.1 | $37.50 |
| 1/25/2019 | ALM | $350.00 | Draft Notice of CMC | 0.1 | $35.00 |
| 1/29/2019 | ALM | $350.00 | Communication with Clients | 0.3 | $105.00 |
| 2/11/2019 | ALM | $350.00 | Draft Notice of OSC re POS | 0.1 | $35.00 |
| 2/14/2019 | MC | $300.00 | Telephonic Meet and Confer with Defense | 0.2 | N/C |
| 3/1/2019 | SH | $200.00 | Review and revise Case Management Statement; Review file | 0.6 | N/C |
| 3/6/2019 | KSC | $375.00 | Review Deft's Case Management Statement | 0.2 | $75.00 |
| 3/7/2019 | MER | $325.00 | Prepare Joint Report of Counsel | 0.8 | $260.00 |
| 3/8/2019 | MER | $325.00 | Prepare Notice of Appearance of Counsel | 0.1 | $32.50 |
| 3/11/2019 | KSC | $375.00 | Review Rule 26 Initial Disclosures | 0.3 | $112.50 |
| 3/18/2019 | ALM | $350.00 | Communication with Appearance Attorney re CMC hearing | 0.3 | $105.00 |
| 3/19/2019 | MER | $325.00 | Draft Rule 26 Initial Disclosures | 0.9 | $292.50 |
| 3/20/2019 | SBM | $550.00 | Review CMC hearing results; Communication with Clients | 0.3 | $165.00 |
| 3/27/2019 | ALM | $350.00 | Draft Notice of CMC; Status Conference; FSC; and Trial | 0.1 | $35.00 |
| 4/1/2019 | SBM | $550.00 | Review and analyze Deft's Rule 68 Offer | 0.2 | $110.00 |
| 4/2/2019 | SBM | $550.00 | Communication with Clients | 0.5 | $275.00 |
| 4/3/2019 | KSC | $375.00 | Review Court Order Setting Pre-Trial and Trial Dates | 0.1 | $37.50 |
| 4/4/2019 | MER | $325.00 | Review file in preparation of drafting federal discovery requests to FMC | 0.4 | $130.00 |
| 4/4/2019 | MER | $325.00 | Draft ROGs to Deft | 0.4 | $130.00 |
| 4/4/2019 | MER | $325.00 | Draft RFA to Deft | 1.5 | $487.50 |
| 4/4/2019 | MER | $325.00 | Draft RFP to Deft | 1.4 | $455.00 |

| | | | | | |
|---|---|---|---|---|---|
| 4/4/2019 | MER | $325.00 | Review and revise letter to Defense enclosing Ptfs' discovery requests | 0.1 | $32.50 |
| 4/18/2019 | KSC | $375.00 | Review Deft's Case Management Statement | 0.2 | $75.00 |
| 4/22/2019 | SH | $200.00 | Draft Declaration in anticipation of CMC hearing | 0.1 | N/C |
| 5/6/2019 | ALM | $350.00 | Communication with Appearance Attorney re CMC hearing | 0.2 | $70.00 |
| 5/8/2019 | SBM | $550.00 | Review CMC hearing results; Communication with Clients | 0.3 | $165.00 |
| 5/10/2019 | KSC | $375.00 | Review Def's Notice of Ruling re Status Conference | 0.1 | $37.50 |
| 5/15/2019 | KSC | $375.00 | Review Deft's Special ROGs to Ptfs to draft responses | 0.2 | $75.00 |
| 5/15/2019 | KSC | $375.00 | Review Deft's RFA to Ptfs to draft responses | 0.2 | $75.00 |
| 5/15/2019 | KSC | $375.00 | Review Deft's RFP to Ptfs to draft responses | 0.4 | $150.00 |
| 5/15/2019 | KSC | $375.00 | Prepare discovery requests to send to Clients in preparation of drafting responses; Communication with Clients | 0.8 | $300.00 |
| 5/31/2019 | KSC | $375.00 | Communication with Clients | 0.3 | $112.50 |
| 6/5/2019 | ALM | $350.00 | Review Def's Demand for VI | 0.1 | $35.00 |
| 6/5/2019 | KSC | $375.00 | Review and analyze Deft's Responses to ROGs | 1.0 | $375.00 |
| 6/5/2019 | KSC | $375.00 | Review and analyze Deft's Responses to RFA | 1.4 | $525.00 |
| 6/5/2019 | KSC | $375.00 | Review and analyze Deft's Responses to RFP | 2.2 | $825.00 |
| 6/10/2019 | KSC | $375.00 | Review responses and docs provided by Plaintiffs to discovery requests to draft responses; Communication with Clients | 1.4 | $525.00 |
| 6/10/2019 | KSC | $375.00 | Draft Ptfs' Response to Special ROGs | 1.5 | $562.50 |
| 6/10/2019 | KSC | $375.00 | Draft Ptfs' Response to RFA | 0.8 | $300.00 |
| 6/10/2019 | KSC | $375.00 | Draft Ptfs' Response to RFP | 1.5 | $562.50 |
| 6/10/2019 | KSC | $375.00 | Review and revise letter to Defense enclosing Ptfs' discovery responses | 0.1 | $37.50 |
| 6/20/2019 | KSC | $375.00 | Communication with Clients | 0.3 | $112.50 |
| 6/20/2019 | KSC | $375.00 | Review Demand for VI; Draft Objections | 0.2 | $75.00 |
| 6/25/2019 | KSC | $375.00 | Review email exchange with Defense re dates of availability to conduct Ptfs' depositions | 0.2 | $75.00 |
| 6/27/2019 | MC | $300.00 | Review email exchange with Defense re dates of availability to conduct Mediation (multiple dates) | 0.1 | N/C |
| 6/27/2019 | KSC | $375.00 | Review Def's NOD of Oscar Serrano Medina and NOD of Mariana Serrano | 0.1 | $37.50 |
| 7/1/2019 | KSC | $375.00 | Prepare Supplemental Doc Production | 1.5 | $562.50 |
| 7/2/2019 | ALM | $350.00 | Review file in preparation of drafting dealership NODs | 0.4 | $140.00 |
| 7/2/2019 | ALM | $350.00 | Draft NOD and Depo Subp of Norm Reeves Ford's PMQ and Personnel (5 NODs) | 0.6 | $210.00 |

| | | | | | |
|---|---|---|---|---|---|
| 7/2/2019 | KSC | $375.00 | Review and revise letter to Defense enclosing Ptfs' Supplemental Doc Production | 0.1 | $37.50 |
| 7/2/2019 | MC | $300.00 | Prepare Joint Status Report | 0.8 | N/C |
| 7/2/2019 | CM | $375.00 | Prepare for and attend VI (travel included); Draft results | 10.9 | $4,087.50 |
| 7/3/2019 | KSC | $375.00 | Review VI results | 0.2 | $75.00 |
| 7/9/2019 | DK | $250.00 | Communication with Clients | 0.5 | N/C |
| 7/9/2019 | DK | $250.00 | Review NOD of Oscar Serrano Medina; Draft Objections | 0.2 | N/C |
| 7/9/2019 | DK | $250.00 | Review NOD of Mariana Serrano; Draft Objections | 0.2 | N/C |
| 7/9/2019 | MC | $300.00 | Draft Disclosure of Anthony Micale | 0.2 | N/C |
| 7/17/2019 | ALM | $350.00 | Draft NOD of FMC's PMK | 0.2 | $70.00 |
| 7/18/2019 | KSC | $375.00 | Review Norm Reeves Ford's Objections to NOD and Depo Subp of PMQ and Personnel | 0.3 | $112.50 |
| 7/19/2019 | KSC | $375.00 | Communication with Constance Morrison; Communication with Clients | 1.5 | $562.50 |
| 7/19/2019 | CM | $375.00 | Communication with Kristina Stephenson-Cheang; Communication with Clients | 1.5 | N/C |
| 7/22/2019 | CM | $375.00 | Prepare for and attend Depo of Oscar Serrano Medina (travel included); Draft Memorandum | 12.6 | $4,725.00 |
| 7/23/2019 | CM | $375.00 | Prepare for and attend Depo of Mariana Serrano (travel included); Draft Memorandum | 10.0 | $3,750.00 |
| 7/23/2019 | KSC | $375.00 | Review letter from Defense to meet and confer re Ptfs' discovery responses | 0.3 | $112.50 |
| 7/23/2019 | KSC | $375.00 | Review Deft's Objections to NOD of Norm Reeves Ford's PMQ and Personnel (5 Objections) | 0.5 | $187.50 |
| 7/23/2019 | KSC | $375.00 | Review memorandum of Oscar Serrano Medina's Depo | 0.1 | $37.50 |
| 7/24/2019 | KSC | $375.00 | Review memorandum of Mariana Serrano's Depo | 0.1 | $37.50 |
| 7/31/2019 | KSC | $375.00 | Review Def's Disclosure of A. Kromberg | 0.3 | $112.50 |
| 7/31/2019 | KSC | $375.00 | Review Def's Disclosure of E. Kalis | 0.4 | $150.00 |
| 8/3/2019 | KSC | $375.00 | Review Depo Transcript of Mariana Serrano; Draft Summary | 2.8 | $1,050.00 |
| 8/3/2019 | KSC | $375.00 | Review Depo Transcript of Oscar Serrano Medina; Draft Summary | 3.2 | $1,200.00 |
| 8/6/2019 | KSC | $375.00 | Prepare Ptfs' Doc Production | 0.9 | $337.50 |
| 8/7/2019 | DD | $275.00 | Prepare for and attend Depo of FMC's PMK (travel included); Draft Memorandum | 5.5 | $1,512.50 |
| 8/8/2019 | KSC | $375.00 | Review Def's Objections to NOD Of FMC's PMK | 0.4 | $150.00 |
| 8/8/2019 | KSC | $375.00 | Review Memorandum of FMC's PMK's Depo | 0.2 | $75.00 |
| 8/20/2019 | KSC | $375.00 | Review Deft's Objections to NOD of Norm Reeves Ford's PMQ and Personnel served 8/20/19 (5 Objections) | 0.6 | $225.00 |

| | | | | | |
|---|---|---|---|---|---|
| 8/21/2019 | GAL | $200.00 | Prepare for and attend Depos of Norm Reeves' PMQ and Personnel (travel included); Draft memorandum | 5.1 | $1,020.00 |
| 8/21/2019 | KSC | $375.00 | Review memorandum of Norm Reeves' PMQ and Personnel Depos | 0.2 | $75.00 |
| 8/22/2019 | CS | $375.00 | Draft Confidential Mediation Brief | 0.5 | N/C |
| 8/23/2019 | MC | $275.00 | Review email exchange with Defense re confirmation of Mediation (multiple dates) | 0.1 | N/C |
| 8/27/2019 | DD | $275.00 | Prepare for and attend telephonic mediation; Draft results | 4.5 | $1,237.50 |
| 8/28/2019 | SBM | $550.00 | Review mediation results | 0.1 | $55.00 |
| 9/11/2019 | DD | $275.00 | Email exchange with Mediator and Defense re Release Agreement | 0.2 | $55.00 |
| 9/13/2019 | SBM | $550.00 | Review letter from Defense re Form 1099 (multiple cases) | 0.1 | N/C |
| 9/20/2019 | KSC | $375.00 | Review Court Scheduling Notice and Order re Dismissal | 0.1 | N/C |
| 10/7/2019 | RK | $425.00 | Review and sign Joint Stipulation for Dismissal | 0.2 | N/C |
| 10/15/2019 | SBM | $550.00 | Review and audit billing | 0.4 | $220.00 |
| 2/25/2020 | MRB | $350.00 | Review file; Draft Motion for Attorney's Fees, Costs and Expenses | 2.3 | $805.00 |
| 2/25/2020 | MRB | $350.00 | Draft Declaration of Steve Mikhov in Support; Review and finalize Motion for Attorney's Fees, Costs and Expenses | 1.5 | $525.00 |
| TBD | MRB | $350.00 | Review and analyze Defendant's Opposition to Motion for Attorney's Fees, Costs and Expenses (Anticipated) | 2.0 | $700.00 |
| TBD | MRB | $350.00 | Draft Reply to Opposition to Motion for Attorney's Fees, Costs and Expenses (Anticipated) | 5.0 | $1,750.00 |
| TBD | MRB | $350.00 | Prepare for and appear at hearing on Motion for Attorney's Fees, Costs and Expenses (Travel Included) (Anticipated) | 4.0 | $1,400.00 |
| | | | **Total Attorney Time:** | 104.9 | $37,395.00 |

**Billing Rate Summary**

| Initials | Avg/Hr | Attorney/Staff | Hours | Amount |
|---|---|---|---|---|
| ALM | $350.00 | Amy Morse | 3.9 | $1,365.00 |
| CM | $375.00 | Constance Morrison | 33.5 | $12,562.50 |
| DD | $275.00 | Deepak Devabose | 10.2 | $2,805.00 |
| GAL | $200.00 | Gregory Lehrmann | 5.1 | $1,020.00 |
| KSC | $375.00 | Kristina Stephenson-Cheang | 27.7 | $10,387.50 |
| MER | $325.00 | Mitchell Rosensweig | 5.6 | $1,820.00 |
| MRB | $350.00 | Mark R. Berns | 14.8 | $5,180.00 |
| SBM | $550.00 | Steve Mikhov | 4.1 | $2,255.00 |

# EXHIBIT P

**KNIGHT LAW GROUP, LLP**
Roger Kirnos (SBN 283163)
Jacob Cutler (SBN 264988)
10250 Constellation Blvd., Suite 2500
Los Angeles, California 90067
Telephone: (310) 552-2250

**KIESEL LAW LLP**
Paul R. Kiesel (SBN 119854)
8648 Wilshire Boulevard
Beverly Hills, CA 90211-2910
Telephone: 310-854-4444

**BOUCHER LLP**
Raymond P. Boucher (SBN 115364)
21600 Oxnard Street, Suite 600
Woodland Hills, CA 91367
Telephone: (818) 340-5400

Attorneys for Plaintiffs,
HAILEY O'BRIEN and
SHAUN O'BRIEN

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**IN RE: FORD MOTOR CO. DPS6 POWERSHIFT TRANSMISSION PRODUCTS LIABILITY LITIGATION**

THIS DOCUMENT RELATES ONLY TO:

*O'Brien, Hailey, et al. v. Ford Motor Company, et al., Case No.: 2:24-cv-04969-AB-PVC*

Case No.: 2:18-ML-02814-AB (FFMx)

**DECLARATION OF ROGER KIRNOS IN SUPPORT OF PLAINTIFFS' AND LIAISON COUNSEL'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES**

[Filed Concurrently with Plaintiffs' Notice of Motion for Attorney's Fees, Costs and Expenses; Memorandum in Support Thereof, Declaration of Paul Kiesel, and Declaration of Raymond Boucher]

Date: October 11, 2024
Time: 10:00 a.m.
Dept.: 7B

# DECLARATION OF ROGER KIRNOS

I, Roger Kirnos, declare as follows:

1. I am an attorney at law duly licensed to practice before the courts of the State of California and attorney of record for Plaintiffs Hailey O'Brien and Shaun O'Brien ("Plaintiffs") in the instant action. I am the Managing Partner of Knight Law Group and, as such, I have personal knowledge of the following facts. If sworn as a witness, I could and would testify to them competently.

2. Attached hereto as **Exhibit A** is the attorney billing by Knight Law Group that was billed directly to Plaintiffs' client matter since it was litigation conduct limited to just their case.

3. Attached hereto as **Exhibit B** is the attorney billings from Knight Law Group for work performed globally for clients' cases in JCCP 4856 ("Knight Law Plaintiffs"). This invoice is intended to provide greater detail and to demonstrate the manner by which attorney fees for global JCCP work was attributed to Plaintiffs' case.

4. For the reasons set forth herein and, in the Motion, Plaintiffs request $122,680.50 in lodestar attorney's fees. This amount is comprised of the legal services provided by Knight Law Group, LLP ("Knight Law") in the amount of $81,748.50, the legal services provided by Kiesel Law, LLP ("Kiesel Law") as liaison Counsel in the amount of $22,182.00, and the legal services provided by Boucher LLP ("Boucher Law") in the amount of $18,750.00. Plaintiffs' attorneys request a reasonable "lodestar" enhancement of 0.5 in the amount of $61,340.25, for a total attorney's fee award of $184,020.75. A true and correct copy of my firm's billing is attached hereto as **Exhibit A**. Plaintiffs also request reimbursement of costs and expenses in the amount of $20,186.77. My firm advanced costs in this matter. Plaintiffs are concurrently filing a motion for costs that attaches a Bill of Costs.

///

5. My law firm's internal computer systems create and maintain a client matter for each individual case. But because there was work performed on behalf of multiple clients, the law firm created a separate JCCP 4856 client matter (just as they did in the NorCal JCCP and the federal MDL) in which the attorneys inputted time incurred when it was not attributable to any one single case alone. In presenting the global billing from this JCCP client matter, Plaintiffs' attorneys apportioned some of the time fractionally to this case, leaving substantial time left to be attributed to future cases that resolve, if they resolve favorably.

6. To explain the attached billing invoices for work done in this JCCP: the time incurred for a task was inputted into a global JCCP matter profile, which was created because much of the work in the JCCP was performed concurrently for, and applicable to, numerous consumers represented by Plaintiffs' attorneys. If part of that entry was already allocated to previous case there will be a corresponding column. Here, in this motion, there are *Faulkner, Mota* and *Ortiz, and Daggett* columns to identify whether or not part of that entry was previously allocated in those fee applications. The next column shows the amount allocated to the *O'Brien* matter. No allocations were made to these cases until the date they were added to this coordination. The last column shows the total remaining billable time that could be allocated to future cases. The hours claimed in previous cases (evidenced by their respective column) can't be duplicated or sought again in the future as those columns will remain in future motions and the court and Ford will have a record of that as well as the entire billing time sheets for the global JCCP entries.

7. For example, an entry may have taken .6 hours to perform in the JCCP client matter, and the attached global billing invoice will show that that time entry was allocated by .1 to *Faulkner, Mota* and *Ortiz, and Daggett*, leaving the remaining .2 hours to be *potentially* allocated to other cases that may settle or succeed in trial in the future. This was the same methodology submitted in the NorCal JCCP that was approved by that Court. This method has complete transparency in

demonstrating whether, if at all, a particular entry is allocated, to what case(s) it's allocated to, and the remaining balance going forward. This also ensures that if an allocation has been used on a case it can never be used again in a different case going forward.

8. As explained above, because Plaintiffs' case was not added into this JCCP until December 12, 2018, *no* entries until after that date are apportioned to his case. This means that the first entry for Plaintiffs' case does not appear in Knight's billing invoice until page 28 of 80 pages of billing entries. When time is attributed to Plaintiffs' case, the invoices indicate how much time is attributed to Plaintiffs' case, and how much time remains to be ascribed to another case. The column with the *O'Brien* allocation and the column showing the remaining total balance will remain in future fee applications to alleviate any of Ford's concerns that this same amount could be allocated again to a future case. This approach ensures that time is apportioned fairly and only to cases where appropriate, and that the recovery for work in this case is not duplicative of time requested in any other case in the past or in the future.

9. Plaintiffs' counsel has attempted to meet and confer with Ford's counsel on further refining the methodology to a manner that would be suitable for Ford. However, Ford would not engage in such discussions. A true and correct copy of the email communications is attached hereto as **Exhibit C.**

10. On March 11, 2012, Plaintiffs purchased a new 2012 Ford Focus for a total sales price of $23,557.30 inclusive of a $2,500.00 Mfg. Rebate ("Subject Vehicle"). The vehicle was manufactured and distributed by Ford Motor Company ("FMC" "Ford" or "Defendant"), which provided an express written warranty to be serviced by FMC authorized repair facilities. A true and correct copy of the Retail Installment Sales Contract is attached hereto as **Exhibit D**.

11. On June 15, 2012, within the applicable warranty period, Plaintiffs took the Subject Vehicle to a Ford authorized repair facility because of engine related

concerns. The technician addressed the fuel filler inlet.

12. On November 6, 2014, Plaintiffs returned to the dealership with transmission related concerns. The technician replaced the input shaft seals.

13. From July 11, 2015 until August 30, 2016, Plaintiffs brought back the Subject Vehicle with transmission and/or engine concerns on about three (3) more occasions. Despite these multiple repair attempts, these problems with the vehicle continued unabated.

14. Notwithstanding the ongoing repairs and continued manifestation of problems, Ford refused to acknowledge the defective nature of Plaintiffs' vehicle. At all times, however, Ford had direct, contemporaneous knowledge of the vehicle's issues, which it records in various databases accessible to its authorized repair facilities and the corporate offices. These repair records indicate each time the vehicle was presented for repair during the warranty period, as well as every time the Ford repair facility found a problem attributable to Ford, and billed Ford for the work.

15. Frustrated, and concerned for their safety, Plaintiffs contacted Ford and requested a buyback on or about April 5, 2017. Despite FMC's affirmative duty under the law to perform an investigation and offer relief, FMC refused to provide restitution in accordance with the Song Beverly Act.

16. Plaintiffs contacted Knight Law and told the firm about the problems with the vehicle and the way FMC treated them. After reviewing the repair history and discussions with Plaintiffs, Knight Law agreed to represent them and bear the risk of litigating the case on a fully contingent basis. Because Knight Law's compensation was purely contingent, the firm faced a genuine risk of not being paid for its services for years, if at all, while advancing thousands of dollars in costs and expenses on Plaintiffs' behalf. In taking on this duty, the firm was facing a litigation behemoth— FMC is a multi-billion-dollar company, with a virtually infinite litigation war-chest, that wages a battle of attrition that most firms cannot withstand.

17. As a result of FMC's failure to fix the material defects associated with Plaintiffs' vehicle, or otherwise comply with the Song-Beverly Act, Plaintiffs filed a Complaint in this action on December 20, 2017, in Los Angeles County alleging willful violations of the Song-Beverly Act and violations of the Consumer Legal Remedies Act.

18. On February 21, 2018, Ford removed the case to federal court which Plaintiffs opposed. The matter was promptly remanded.

19. On April 9, 2018, FMC filed its Answer denying liability and asserting numerous defenses.

20. With the matter back in state court, Plaintiffs drafted a set of written discovery including requests for production, requests for admission, special interrogatories, and form interrogatories. Plaintiffs benefitted from Knight Law's experience litigating against Ford as it only took 0.9 hours to draft this entire set of written discovery. Without a starting template, this task would have taken far longer.

21. On April 18, 2018, Ford served its responses to Plaintiffs' discovery requests. Plaintiffs evaluated those responses and documents, and met and conferred with Ford regarding the deficiencies including that the responses were not code complaint, they lodged numerous meritless and boilerplate objections and failed to substantively respond to certain requests. Plaintiff's efforts explained why the information and documents sought were relevant, not unduly burdensome, and should be produced.

22. On June 14, 2018, July 30, 2018, and September 25, 2018 Plaintiffs attended the Case Management Conferences. On November 27, 2018, Plaintiffs attended the Status Conference.

23. On December 12, 2018, the matter was added on to the JCCP 4856 at Ford's behest (and over Plaintiffs opposition) where it remained for about five and a half (5.5) years.

24. On December 19, 2018, Plaintiffs attended the Status Conference.

25. In February through May of 2019, Plaintiffs reviewed, analyzed, and catalogued Ford's substantial document production (millions of pages of documents) on the defective DPS6 Transmission.

26. On April 18, 2019, Plaintiffs deposed Ford's Tom Hamm. On April 25, 2019, Plaintiffs deposed Chris Kwasniewski. On May 13, 2019, Plaintiffs attended a Status Conference. In May of 2019, Plaintiffs also prepared a request for genuineness of trial exhibits and created an exhibit list.

27. In June and July of 2019, Plaintiffs prepared their experts for trial so that they could make a report and further analyzed trial exhibits. On July 25, 2019, Plaintiffs appeared for the Status Conference.

28. In August through October of 2019 Plaintiffs opposed Ford's demurrers and efforts to compel these cases to arbitration. In September, Plaintiffs updated their master trial exhibit list and created an admissibility chart. Plaintiffs also created deposition summaries and deposition designations.

29. On January 13, 2020, and January 28, 2020 Plaintiffs attended the Status Conferences.

30. In March through May of 2020, Plaintiffs prepared motions in limine and drafted additional written discovery and PMK deposition notices. Plaintiffs also prepared another request for genuineness on important exhibits.

31. In September of 2020, Plaintiff met and conferred with Ford on foundation and the parties entered into a stipulation concerning authenticity and business record of exhibits. Plaintiffs also prepared a timeline of events and prepared presentations to aid the judge and jury.

32. On October 21, 2020, January 25, 2021, and February 18, 2021 Plaintiffs attended the Status Conferences. Plaintiffs also continued to oppose Ford's efforts to compel these matters to arbitration. On May 19, 2021, Plaintiffs attended the Status Conference.

///

33. On May 23, 2022, Plaintiffs attended the Status Conference and prepared a corresponding joint report. Around this time Plaintiffs researched Ford employees who had personal knowledge of certain hot documents for deposition.

34. In October of 2022, Plaintiffs prepared a joint report and attended the November 4, 2022, December 8, 2022, and January 27, 2023 Status Conferences.

35. In February of 2023, Plaintiffs worked on a discovery plan and attended a March 13, 2023, Status Conference. In April of 2023, Plaintiffs opposed Ford's efforts at compelling arbitration and appeared at the April 27, 2023 Status Conference.

36. In July through November of 2023, Plaintiffs propounded additional global written discovery and appeared at the October 31, 2023, Status Conference. In December of 2023, Plaintiffs prepared reports on Next Trial Groups ("NTG"). On January 10, 2024, Plaintiffs attended the Status Conference.

37. On March 27, 2024, to further prepare for trial, Plaintiffs propounded a another set of written discovery requests. On April 19, 2024, Plaintiffs attended the Status Conference.

38. On March 29, 2024, Ford propounded a set of written discovery including requests for production, requests for admission, special interrogatories, and form interrogatories. Plaintiffs provided responses on May 13, 2024. On May 28, 2014, the dealership defendant propounded a set of written discovery requests.

39. On June 13, 2024, Ford removed the case to federal court. Plaintiffs began efforts to remand.

40. On July 22, 2024, the case was mediated.

41. On July 31, 2024, FMC served a Rule 68 Offer for $49,470.00 in exchange for surrender of the subject vehicle plus a motion for attorney's fees, costs, and expenses wherein Plaintiffs would be considered the prevailing party. The offer provided full restitution on the vehicle and substantial civil penalties. Plaintiffs accepted on August 8, 2024. A true and correct copy of the signed Offer is attached

hereto as **Exhibit E.**

42. Plaintiffs, as the prevailing party in this action, has made every reasonable effort to resolve the payment of Plaintiffs' attorney's fees, costs, and expenses by FMC but was forced to file this Motion with the Court. Specifically, Plaintiffs engaged in discussions starting on September 6, 2024. In these efforts, given FMC's categorical refusal to pay Global fees and costs, Plaintiffs proposed resolving the individual fees and costs informally and having the Court decide the real issue in dispute. As of the writing of this motion, Ford did not agree nor made any offer whatsoever to resolve the attorney's fees at issue in this motion.

**The Firm's Fees Incurred in Litigating This Matter Are Reasonable Pursuant to the Lodestar Method**

43. I am the Managing Partner at Knight Law Group, LLP. I graduated in 2009 from Southwestern University School of Law in the top 10% with cum laude honors and received several academic based scholarships including the Dean's Merit Award. While in law school, I was an oralist on the team that reached the semi-finals at the August A. Rendigs, Jr. National Products Liability Moot Court Competition. I received the CALI Excellence Award for Real Estate Transactions. I received a certificate for completing the Alternative Dispute Resolution program in Hong Kong and Beijing through Pepperdine Law School's esteemed Strauss Institute for Dispute Resolution. I was a judicial extern for then-Chief Judge Alexander Kozinski of the Ninth Circuit Court of Appeals and thereafter served as a judicial extern to Judge F. Gary Klausner of the United States District Court, Central District of California. I received a B.A. in Economics with a minor in English from the University of California at Los Angeles, where I graduated with Provost Honors in 2000. I also studied economics at the University of Westminster in London, England. I was admitted to the California State Bar in 2012. I am admitted to practice in each of the United States District Courts in California.

///

44. I have been prosecuting consumers' claims under the Song-Beverly Act, and other consumer statutes such as the Consumer Legal Remedies Act ("CLRA) and the Automobile Sales Finance Act ("ASFA"), since 2013. I joined Knight Law Group in 2017 as a Partner at the firm. My professional focus has been to protect consumers from large-scale abuses by automobile manufacturers. I have been involved in the settlement of hundreds of cases over the years. I have been trial counsel in over 25 consumer-protection cases that have gone to jury verdict, and was one of the trial attorneys on the team that won a record verdict of $8.2M against Ford Motor Company, besting previous jury verdicts of $7.6M, $2.8M, and $1.6M. Three of these verdicts were in the Top 50 of all verdicts in California in the year they were rendered according to Top Verdicts, and were the #1, #2 and #5 top verdicts in the area of "Consumer Fraud, Deceptive Trade Practices, False Advertising, Fraudulent Concealment, Lemon Law" that year. In addition to litigating individual cases, I have been the lead attorney for Knight Law's clients in multiple federal Multi-District Litigation and state Judicial Counsel Coordinated Proceedings. I have represented clients in appeals and was personally and directly involved in authoring the briefing in at least 20 appeals, whether as appellant or respondent, including the following list of cases, which is not an exhaustive list of all appellate matters in which Knight Law Group was involved (Note: One asterisk (*) signifies an appeal brought as an Appellant, and two asterisks (**) signifies an appeal in which we were the Respondent):

<u>Published Opinions</u>

a. *Warren v. Kia Motors America* (2018) 30 Cal.App.5th 24; San Bernardino County, Case No. CIVDS1414575; Fourth Appellate District, Case No. SCV254959*

b. *Hanna v. Mercedes-Benz, USA* (2019) 36 Cal.App.5th 493; Los Angeles County, Case No. BC552038; Second Appellate District, Case No. B283776*

c. *Patel v. Mercedes-Benz, USA* (2019) 43 Cal.App.5th 1007; Los Angeles County, Case No. BC580425; Second Appellate District, Case No. B293813*

d. *Berroteran v. Ford Motor Company* (2019) 41 Cal.App.5th 518 (*review granted* 2/11/20); Los Angeles County, Case No. B542525; Second Appellate District, Case No. B296639*

e. *Berroteran v. Ford Motor Company* (2022) --- P.3d ----, 2022 WL 664719 Los Angeles County, Case No. B542525; California Supreme Court, Case No. S259522

f. *Reynolds v. Ford Motor Company* (2020) 47 Cal.App.5th 1105; Sonoma County Case No. SCV254959; First Appellate District, Case No. A154811**

g. *Anderson v. Ford Motor Company* (2022) 74 Cal.App.5th 946, San Joaquin County, Case No. 39-2013-00299512-CU-BC-STK; Third Appellate District, Case No. C089603**

h. *Niedermeier v. FCA US* (2020) 56 Cal.App.5th 1052 (*review granted* 2/20/21); Los Angeles County, Case No. BC638010; Second Appellate District, Case No. B293960**

i. *Hernandez v. FCA US* (2020) 50 Cal.App.5th 329 Los Angeles County, Case No. BC668240; Second Appellate District, Case No. B296516*

j. *Reck v. FCA US* (2021) 64 Cal.App.5th 682, Alameda County, Case No. RG16836069; First Appellate District, Case No. A157966*

k. *Covert v. FCA US,* (2022) 73 Cal.App.5th 821, Los Angeles County, Case No. BC629240, Second Appellate District, Case No. B293960**

Unpublished Opinions / Pending Appeals

l. *Palombi v. FCA, US*, Solano County, Case No. FCS043387; First Appellate District, Case No. A156166*

m. *Margeson v. Ford Motor Company*, Los Angeles County, Case No. BC552038; Second Appellate District, Case No. B283776**

n. *Cofield v. Kia Motors America*, Kern County, Case No. S-1500-CV283504; Fifth Appellate District, Case No. F074977**

o. *Myers v. Ford Motor Company*, Los Angeles County, Case No. BC638302; Second Appellate District, Case No. B297244**

p. *Cieslikowski v. FCA US* (2020) 809 Fed.Appx. 386; USDC Central Dist., Case No. 5:17-cv-00562; Ninth Circuit, Case No. 21-55874*

q. *Bowser v. Ford Motor Company*, Riverside County, Case No. MCC1301631; Fourth Appellate District, Case No. E073609**

r. *Nolan v. Ford Motor Company*, Riverside County, Case No. RIC1307491; Fourth Appellate District, Case No. E073850**

s. *Brown v. Ford Motor Company,* Butte County, Case No. 160060; Third Appellate District, Case No. C088419**

t. *Coon v. Ford Motor Company*, Riverside County, Case No. MCC1300767; Fourth Appellate District, Case No. E073138**

u. *Rodriguez v. FCA US*, Riverside County, Case No. RIC1807727; Fourth Appellate District, Case No. E73766*

v. *Madrigal v. Hyundai Motor America*, Placer County, Case No. CV00338395; Third Appellate District, Case No. C090463**

w. *Figueroa v. FCA US*, Ventura County, Case No. 56-2018-00507038; Second Appellate District, Case No. B306275*

x. *Quintero v. Ford Motor Company*, USDC Central District, Case No. 2:18-cv-01912-AB-FFM; Ninth Circuit, Case No. 20-5583*

45. In addition to the above published and unpublished opinions, my firm was also involved in numerous other notable unpublished appellate decisions such as:

Notable Favorable Unpublished Opinions

a. *Smart v. Ford Motor Company*, Butte County, Case No. 159509; Third Appellate District, Case No. C087422*

b. *Noflin v. Volkswagen Group of America*, Los Angeles County, Case No. BC575800; Second Appellate District, Case No. B275638*

c. *McCullough v. FCA US* San Diego County, Case No. 37-2015-00013501-CU-BC-CTL; Fourth Appellate District, Case No. D073330*

Published opinions:

d. *Etcheson v. FCA US* (2018) 30 Cal.App.5th 831*

e. *Morris v. Hyundai Motor America* (2019) 41 Cal.App.5th 24*

f. *Montoya v. Ford Motor Company* (2020) 46 Cal.App.5th 493**

g. *Santana v. FCA US* (2020) 56 Cal.App.5th 334*

46. I am a member of, and have been a presenter at conferences, for the National Association of Consumer Affairs discussing topics including automotive fraud generally and best practices for pursuing and calculating damages to maximize consumers' recoveries. I have also presented a Continuing Legal Education course addressing recent and upcoming changes in the area of the Song-Beverly Act and other consumers statutes such as the Consumer Legal Remedies Act by educating attorneys about recent appellate decisions and upcoming appellate issues to be decided. I am also actively involved with non-profit groups such as Consumers for Auto Reliability and Safety and professional organizations such as Consumer Attorneys of California where I sit on the organization's PAC Board. I have also been voted by my peers as a Super Lawyer Rising Star each year since 2018 to

present. I am a member of the Los Angeles County Bar Association and Beverly Hills Bar Association. My current billing rate is $550/hour and my initials are indicated in the billing as "RK".

47. Amy Morse is a Partner in my office. Ms. Morse has been with my firm since her admission to the bar in 2013. Prior to her admission, she was a law clerk with my office since 2012. Ms. Morse graduated from Loyola Law School. Ms. Morse's hourly rate in this matter was $350/hour for 2018-2020 and $450/hour for 2023. Ms. Morse's billing entries are indicated by the initials "ALM" in the billing statement exhibited to this declaration.

48. Daniel Kalinowski was a senior attorney at Knight Law. He graduated cum laude from the University of California Irvine with a Bachelor's Degree in History. Subsequently, Mr. Kalinowski graduated from Chapman University, Dale E. Fowler School of Law having received a CALI Excellence of the Future Award during his time as a law student. He was admitted to practice law in 2015. From 2015 to 2017, Mr. Kalinowski worked for two different firms in various practices including but not limited to construction defect employment and business litigation. Since 2017, he has worked at Knight Law handling all aspects of litigation from inception through trial and post-trial work in all venues including state and federal court and arbitration. His hourly rate in this matter was $250/hour for 2019-2020, $350/hour for 2022 and $400/hour for 2023. Mr. Kalinowski's billing entries are indicated by the initials "DK" in the billing statement exhibited to this declaration.

49. Debra Reed is an Associate Attorney II at Knight Law Group. Ms. Reed earned her Juris Doctor from the Santa Clara University School of Law in 2009, her Master of Business Administration at City University of New York in 2000, and her Bachelor of Arts from Boston College in 1986. Ms. Reed began her career in finance working as a trader on the New York Stock Exchange. She earned her MBA at night while working full time at Citi. Ms. Reed then worked as Management Consultant at PWC in financial services technology, before moving on

to become Managing Director at Wells Fargo Private Asset Management. Ms. Reed's legal career began with her work as a legal operations associate at Cisco Systems, where she worked on licensing agreements, UCC sale of goods contracts, intellectual property rights enforcement in China, and ad hoc projects for General Counsel. After passing the bar, Ms. Reed worked as a litigation attorney at Google specializing in intellectual property and antitrust litigation, and later as Director of Legal and Business Affairs at Disney Concerts. Ms. Reed spent the last several years as a bankruptcy and civil litigation attorney at a firm in Los Angeles. Ms. Reed's legal, financial, and consulting experience positioned her well to protect consumers against violations of the Song-Beverly Consumer Warranty Act at Knight Law Group, LLP. Ms. Reed is admitted to the California Bar, the New York Bar, and the New Jersey Bar. Her hourly rate in this matter is $495/hour for 2024. Her billing entries are indicated by the initials "DR" in the billing statement exhibited to this declaration.

50. George Aguilar was an associate at Knight Law Group, LLP. He received his undergraduate degree from the University of California, Berkeley in 2011, and his law degree from the University of Maryland Carey School of Law in 2014. Mr. Aguilar was admitted to the California Bar in 2015, and spent his first year and a half practicing family law, criminal defense, personal injury and bankruptcy before joining my firm. Mr. Aguilar's hourly billing rate in this matter was $275/hour for 2018. Mr. Aguilar's billing entries are indicated by the initials "GA" in the billing statement exhibited to this declaration.

51. Jonathan Cagliata was an associate at my firm. Mr. Cagliata was admitted to the Bar in 2017 and was with the firm for one year. He is a graduate from Loyola Law School, Loyola Marymount University and received his undergraduate degree from the University of California, Los Angeles. His hourly rate in this matter was $225/hour for 2018. His billing entries are indicated by the initials "JC" in the billing statement exhibited to this declaration.

52. Jacob Cutler, a Senior Attorney at Knight Law, graduated from the University of Miami School of Law and was admitted to practice in California in 2009. Prior to his employment at Knight Law, he worked for over five years at a different lemon law firm gaining valuable experience in this area of law. At Knight, Mr. Cutler focuses on trial practice, and post-trial/settlement motions. Mr. Cutler's hourly rate in this matter is $450/hour for 2022 and $495/hour for 2023-2024. Mr. Cutler's billing entries are indicated by the initials "JWC" in the billing statement exhibited to this declaration.

53. Kristina Stephenson-Cheang, a former associate, graduated from Western State University College of Law and was admitted to practice in 2008. Ms. Stephenson-Cheang was employed with the firm since 2013. Prior to her employment at Knight Law, she worked for a different lemon law firm gaining valuable experience in this area of law. Ms. Stephenson-Cheang's hourly rate in this matter was $375/hour for 2018. Ms. Stephenson-Cheang's billing entries are indicated by the initials "KSC" in the billing statement exhibited to this declaration.

54. Lauren Ungs is a Partner at Knight Law Group, LLP. Ms. Ungs has been an attorney at Knight Law Group, LLP since July 12, 2012. She graduated magna cum laude from Southwestern Law School's two-year SCALE program in 2010 and has been a member of the California bar, actively practicing law for over twelve years. She currently specializes in representing California consumers in lemon law and automotive fraud cases. Ms. Ungs also previously served as a judicial extern for Honorable Patrick J. Walsh in the United States District Court, Central District of California. In addition to being a member of the State Bar of California, Ms. Ungs is on the Board of Directors of the Consumer Attorneys of California ("CAOC") and a member of the San Francisco Trial Attorneys Association ("SFTLA"). Ms. Ungs has been selected as a Rising Star by Super Lawyers from 2018 through 2023. Ms. Ungs frequently leads presentations on strategies relating to novel legal issues and statutory interpretation in the consumer-protection context.

Ms. Ungs has participated in more than twenty-four (24) lemon law and/or auto-fraud trials, with over 80% resulting in verdicts for consumer-plaintiffs. Included in the cases in which Ms. Ungs participated in are Brown v. Ford Motor Company (Butte County Case No. 160060; Jury Verdict: $1,958,836.68), Anderson v. Ford Motor Company (San Joaquin County Case No. STK-CV-UBC-2013-0007198; Jury Verdict: $227,715.60), Nolan v. Ford Motor Company (Riverside County Case No. RIC1307491; Jury Verdict: $8,244,269.82), Coon v. Ford Motor Company (Riverside County Case No. MCC1300767; Jury Verdict: $1,599,525.02), and Margeson v. Ford Motor Company (Los Angeles County Case No. BC549430; Verdict: $940,177.74). Ms. Ungs was also part of the team of trial attorneys from my office that completed the only Volkswagen diesel emissions scandal trial to verdict in the United States, resulting in a verdict in favor of over half of the plaintiffs and coordinated the subsequent successful appeal in the Ninth Circuit. In addition, Ms. Ungs has been appointed liaison counsel for consumer-plaintiffs in statewide coordinated lemon law and auto fraud litigation. Ms. Ungs' hourly rate in this matter is $425/hour for 2019-2020. Ms. Ungs' entries are indicated by the initials "LAU" in the billing statement exhibited to this declaration.

55. Maite Colón was a Senior Associate in my office. Mrs. Colón graduated from the University of Puerto Rico School of Law in 2011 and was admitted to practice law in California in 2018. Mrs. Colón was employed at my law firm from 2017-2023. Mrs. Colón is also admitted to the practice of law in the State of Florida (2012), the District of Columbia (2013) as well as the United States District Court for the Central, Southern and Northern Districts of California, the Southern District of Florida and the District Court of Puerto Rico. In addition, Mrs. Colón is a member of the Consumer Attorneys of California ("CAOC") and holds a Certificate in Mediation and International Commercial Arbitration from the Humboldt-Universität zu Berlin (2010). Prior to joining my firm, Mrs. Colón worked at an international law firm advising clients in the energy sector and gaining valuable experience in the

areas of project finance, commercial transactional work and international law representing international clientele. Mrs. Colón also served as legislative advisor to the Government of the Commonwealth of Puerto Rico in 2013. Mrs. Colón's hourly rate in this matter was $300/hour for 2020, $345/hour for 2021 and $425/hour for 2023, and her billing entries are indicated by the initials "MC" in the billing statement exhibited to this declaration.

56. Natalee Fisher was an associate at my firm. Ms. Fisher was admitted to the Bar in 2015 and has been working at the firm since 2017. She is a graduate from the University of San Francisco School of Law, and received her undergraduate degree from Syracuse University. Her hourly rate in this matter was $250/hour for 2018-2020. Her billing entries are indicated by the initials "NF" in the billing statement exhibited to this declaration.

57. Russell Higgins obtained his J.D. at Pepperdine University School of Law and was admitted to practice in 2003. Mr. Higgins was an Associate and then a Partner with the firm; his hourly rate in this matter is $450/hour for 2018-2020 and $550/hour for 2023-2024. Mr. Higgins' billing entries are indicated by the initials "RH" in the billing statement attached to this declaration.

58. Sundeep Samra is an associate at my firm. Mr. Samra was admitted to the Bar in 2018 and has been working at the firm since then. He is a graduate of the two-year accelerated program at Southwestern Law School and received his undergraduate degree from the University of California, Los Angeles (UCLA). Mr. Samra specializes in handling discovery matters, opposing motions for summary judgment or adjudication, arbitrations, and second-chairing trials. His hourly rate in this matter is $225/hour for 2019-2020. His billing entries are indicated by the initials "SS" in the billing statement exhibited to this declaration.

59. Taylor Tieman was an associate at my firm. Ms. Tieman is a graduate of Southwestern University School of Law and received her undergraduate degree from the University of Pennsylvania. Ms. Tieman has focused primarily on

consumer protection since passing the July 2015 bar exam. Ms. Tieman's hourly rate in this matter was $200/hour for 2017. Her billing entries are indicated by the initials "TT" in the billing statement exhibited to this declaration.

60. Zachary Powell is a Senior Attorney at Knight Law Group, LLP. He received his undergraduate degree from the University of California, Berkeley, and his law degree from the University of the Pacific, McGeorge School of Law. Mr. Powell was admitted to the Missouri Bar in 2013, and the California Bar in 2015. Mr. Powell's billing rate in this matter is $250/hour for 2019-2020 and $375/hour for 2022. Mr. Powell's billing entries are indicated by the initials "ZP" in the billing statement exhibited to this declaration.

61. As always, Knight Law attempts to keep attorney's fees and costs down while providing vigorous and effective representation.

62. On September 13, 2022, the Hon Lawrence J. Riff approved all of Knight Law's rates as reasonable ranging from $550/hr-$225/hr in the JCCP 4856 matter *Susan Goyzueta v. Ford Motor Company.* Attached hereto as **Exhibit F** is a true and correct copy of an excerpt from the September 13, 2022 hearing transcript (Pages 1-4 & 930-931).

63. Specifically the Court stated "[O]VERALL I WANT TO TELL YOU, I AM NOT MUCH DISTURBED BY THE BILLING IN MS. GOYZUETA'S CASE.· ***I'M NOT DISTURBED BY THE RATES***, AND I'M NOT DISTURBED BY THE ACCURACY – SPECIFICITY THAT IS A BETTER WORD, OF THE TIME DESCRIPTIONS.· I'M NOT DISTURBED THAT THE BILL DOES NOT DISCLOSE THE CONFIDENTIAL COMMUNICATIONS WITH THE CLIENT.· I'M GOING TO TAKE COUNSEL'S WORD WHEN THEY TELL ME UNDER PENALTY OF PERJURY THAT THIS IS WHAT THEY CHARGE, THAT THEY DID THAT AND IF THEY SPEND HALF AN HOUR ON JULY 3RD, 2017 TALKING ABOUT THEIR CLIENT ABOUT SOMETHING I DON'T NEED THEM TO TELL ME MORE OF WHAT THEY TALKED ABOUT. · · · · · · TO

THE EXTENT THAT I HAVE QUESTIONS AND/OR ISSUES, IT CONCERNS THE PROPOSITION THAT THERE IS BILLING FOR FRAUD ONLY." (emphasis added) (Id.)

64. On January 9, 2024, Judge Michael W. Fitzgerald awarded rates as reasonable ranging from $875/hr-$295/hr in the matter of *Oswaldo Sanchez Hernandez v. Ford Motor Company* (United States District Court Central District of California, Case No. 2:22-cv-03361-MWF-KS.) A true and correct copy of the Order is attached hereto as **Exhibit G.**

65. One of Ford's trial counsel in a lemon law matter charged $450.00 per hour for a sixth-year associate who did not attend trial, and attested that it was either at *or below* the market rate for *defense* attorneys in San Joaquin County. Attached hereto as **Exhibit H** is a true and correct copy of the declaration of Ford's counsel filed in the matter of *Anderson v. Ford*, San Joaquin County, case number STK-CV-UBC-2013-0007198.

66. All time billing entries were completed contemporaneously with each dated entry or near in time to the work performed. I have personally reviewed the billing entries to ensure that they appropriately reflect the time expended. I have removed or reduced any time I felt was excessive, duplicative, or otherwise unreasonable, or I have labeled the entry as a "no charge", as identified by the "N/C" in the invoice. My firm does not bill clients for secretarial support staff time other than for senior trial paralegals.

67. I request a multiplier of 0.5 based on my contingent fee, the risk and delay in payment associated with a contingent fee scenario, and the result achieved. Such a multiplier is reasonable and towards the low end under the established law. (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 255.) Plaintiffs' attorneys are paid only if Plaintiffs prevails, unlike Defendants' attorneys who get paid monthly regardless of the outcome. Moreover, Defendants' attorneys typically have a continuing and ongoing relationship, whereas this firm will most likely not

have the opportunity to represent Plaintiffs again.

68. It is not uncommon for attorney's fees and costs to exceed the client's damages. The Legislature acknowledged such a circumstance, which is the reason behind the fee shifting provision of the Song-Beverly Act. Otherwise, consumers would be left without opportunity for redress when their damages were not enough for an attorney to take the case on a contingent fee or hourly rate basis. Such a result occurs in large part because of dealerships' or vehicle manufacturers' refusal to adhere to statutory laws protecting consumers, resistance to honoring consumers' complaints, and generally playing games or simply abusing discovery procedures. For example, FMC could have avoided paying any attorney's fees whatsoever had it admitted to its wrongdoing early on and repurchased the subject vehicle. Instead, FMC engaged in expensive litigation, and drove up fees and costs by, among other things, denying liability, engaging in extensive discovery, removing the case to federal court twice, coordinating the matter to the JCCP 4856 for five and a half (5.5) years causing Plaintiffs to propound discovery, take or defend depositions, oppose Ford's pleading challenges and efforts to compel arbitration, prepare for trial, and appear at numerous court hearings with corresponding joint reports.

69. Lemon law cases are not simple actions. They require a specialized understanding of the full scope of consumer protection laws, which are highly nuanced. The cases also require knowledge of intricacies of automobiles and a lexicon associated with them, as well as a knowledge concerning how to investigate these matters. They also require knowledge of auto manufacturers' and dealers' protocols for repairing vehicles.

70. Generally speaking, clients of the firm are benefitted by the experience of this firm insofar as work-product from other cases can be used in this case as well. Hence, a substantial amount of time was saved by not needing to draft each document from scratch and little time was needed to "get up to speed" in this specialized area of law. In effect, FMC also benefitted when it comes to a

determination of reasonable attorney's fees to be paid because there are numerous cost-saving techniques employed by the firm.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on Wednesday, September 11, 2024, at Los Angeles, California.

*/s/ Roger Kirnos*
ROGER KIRNOS

# EXHIBIT A

| Date | Attorney | Rate | Task | Time | FEE |
|---|---|---|---|---|---|
| 9/22/2017 | TT | $200.00 | Draft initial complaint | 1.1 | $220.00 |
| 11/7/2017 | TT | $200.00 | Add CLRA language to complaint; draft CLRA letter | 0.5 | $100.00 |
| 12/11/2017 | MC | $300.00 | Review and Edit DP6 complaint | 0.2 | N/C |
| 1/9/2018 | GA | $275.00 | Draft FAC | 0.3 | $82.50 |
| 2/22/2018 | GA | $275.00 | email to Amy and Co-Counsel re Baker Hostetler letters threatening MTC Arbitration | 0.1 | $27.50 |
| 2/27/2018 | RH | $450.00 | Review court order re remand | 0.1 | $45.00 |
| 3/8/2018 | KSC | $375.00 | Prepare pltf set one disco requests to deft (Form ROGs, Special ROGs, RFA, RFP) | 0.9 | $337.50 |
| 4/3/2018 | NF | $250.00 | Review file to determine case status, communication with client re CLRA claims | 0.4 | $100.00 |
| 4/4/2018 | ALM | $350.00 | Review NOD of Plaintiffs; review and sign objections (x2) | 0.1 | N/C |
| 4/8/2018 | RH | $450.00 | Review Defendants' Answer to Complaint | 0.1 | $45.00 |
| 4/19/2018 | GA | $275.00 | Review Court Notice of Case Reassignment | 0.1 | $27.50 |
| 5/8/2018 | GA | $275.00 | Review Court Notice of CMC | 0.1 | $27.50 |
| 5/11/2018 | GA | $275.00 | Review FMC Responses to Form Rogs, SROGs, RFAs, and RFPs | 0.8 | $220.00 |
| 5/11/2018 | GA | $275.00 | Draft Initial meet and confer letter to Defense re Defendant's discovery responses | 0.8 | $220.00 |
| 5/16/2018 | ALM | $350.00 | Review and sign Notice of Case Reassignment | 0.1 | N/C |
| 5/18/2018 | ALM | $350.00 | Review and sign Notice of CMC | 0.1 | N/C |
| 5/22/2018 | GA | $275.00 | Review case file re determination to stipulate to including case in JCCP 4856; email to Russ re same | 0.3 | $82.50 |
| 5/22/2018 | RH | $450.00 | Review proposal for stipulated coordination; confer with GA and ALM re same (time split with unrelated cases) | 0.1 | $45.00 |
| 5/25/2018 | KSC | $375.00 | Review/sign letter to deft re initial CMC | 0.1 | $37.50 |
| 5/25/2018 | KSC | $375.00 | Review deft response to pltf meet & confer letter in advance of CMC | 0.1 | $37.50 |
| 5/30/2018 | KSC | $375.00 | Review/sign pltf's CMC statement | 0.1 | $37.50 |
| 6/8/2018 | JC | $225.00 | Review Defendant's CMS | 0.1 | $22.50 |
| 6/13/2018 | ALM | $350.00 | Review NOD of Plaintiffs; review and sign objections (x2) | 0.1 | N/C |
| 6/14/2018 | JC | $225.00 | Prepare for and attend CMC; Travel included (time split with Dawes v. VW) | 0.9 | $202.50 |
| 6/14/2018 | JC | $225.00 | Draft CMC results | 0.2 | $45.00 |
| 6/20/2018 | KSC | $375.00 | Review email from Jennifer@Stradling (enclosed with deft response to pltf meet & confer / disco responses) | 0.1 | $37.50 |
| 7/13/2018 | KSC | $375.00 | Review/sign (2nd) revised pltfs CMC statement | 0.1 | $37.50 |
| 7/23/2018 | GA | $275.00 | Discussion with Jon and Jonathan re status report for Court | 0.2 | $55.00 |

| | | | | | |
|---|---|---|---|---|---|
| 7/23/2018 | JC | $225.00 | Review CMC notes re multiple queries on status report - confirm that, per my review, no mention by court of 'joint' report | 0.2 | $45.00 |
| 7/24/2018 | JC | $225.00 | Call to department to clarify judge's order re joint status; clerk Nori confirmed that "Defendants are to file status report"; update to KSC and GA re same | 0.2 | $45.00 |
| 7/24/2018 | KSC | $375.00 | Prepare email response to Sheila@SYCR re: Court Order to Deft to file status report | 0.1 | $37.50 |
| 7/30/2018 | JC | $225.00 | Prep for and attend CMC; travel included (Time split with Mendoza v. GM and Romero v. FMC) | 1.2 | $270.00 |
| 7/30/2018 | JC | $225.00 | Draft results of CMC | 0.2 | $45.00 |
| 8/29/2018 | KSC | $375.00 | Review/revise pltf CMC statement | 0.1 | $37.50 |
| 9/21/2018 | RH | $450.00 | Review and respond to correspondence from Ford counsel re proposal to reschedule CMC pending entry of coordination order | 0.1 | $45.00 |
| 9/25/2018 | JC | $225.00 | Prep for and attend CMC (travel included); draft results | 2.1 | $472.50 |
| 9/28/2018 | ALM | $350.00 | Review and sign Notice of CMC | 0.1 | N/C |
| 9/28/2018 | JC | $225.00 | Review Defendants' status report | 0.2 | $45.00 |
| 11/6/2018 | ALM | $350.00 | Review and sign CMS | 0.1 | N/C |
| 11/14/2018 | ALM | $350.00 | Review and sign Notice of Status Conference | 0.1 | N/C |
| 11/26/2018 | NF | $250.00 | Review docket for hearing tomorrow, discuss with GA | 0.2 | $50.00 |
| 11/27/2018 | NF | $250.00 | Ensure this status conference was off calendar with the clerk, clerk confirm off calendar; draft results email | 0.3 | $75.00 |
| 11/27/2018 | NF | $250.00 | Travel to and from court for status conference | 0.8 | $200.00 |
| 3/20/2019 | MC | $300.00 | Review Defendant's Notice of Submission to JCCP | 0.2 | N/C |
| 8/3/2020 | RH | $450.00 | Communication with clients | 0.1 | $45.00 |
| 8/23/2021 | MC | $345.00 | Vargas class action/review file | 0.4 | N/C |
| 4/19/2022 | CS | $450.00 | Analyze case strength/facts for purposes of selecting additional IDP cases | 0.2 | N/C |
| 12/13/2023 | ALM | $450.00 | Meeting with staff to discuss scheduling VI | 0.1 | N/C |
| 1/18/2024 | RK | $550.00 | Review Court's Order re additional NTG trial dates | 0.1 | $55.00 |
| 1/31/2024 | RK | $550.00 | Draft Proposed Orders re MTC Depo | 0.1 | $55.00 |
| 3/27/2024 | JWC | $495.00 | Draft Special ROGs and to Defendant and Declaration | 0.9 | $445.50 |
| 3/27/2024 | JWC | $495.00 | Draft RFA to Defendant and Declaration | 0.7 | $346.50 |
| 3/27/2024 | JWC | $495.00 | Draft RFP to Defendant | 0.8 | $396.00 |
| 4/15/2024 | RK | $550.00 | Review cases files in Quintero and Pedante re materials for R. Higgins for IDP trials/Quintero; call with R. Higgins | 0.1 | $55.00 |

| | | | | | |
|---|---|---|---|---|---|
| 4/15/2024 | RK | $550.00 | Meeting with Ford team re prep for trial filings, discuss strategy for trial | 0.1 | $55.00 |
| 4/18/2024 | RK | $550.00 | Meeting with D. Reed, E. Komosko, R. Higgins re Ford's written discovery | 0.2 | $110.00 |
| 4/19/2024 | RK | $550.00 | Attend Status Conference | 0.2 | $110.00 |
| 4/23/2024 | RK | $550.00 | Review notes on Ford's discovery requests in preparation for meeting with team | 0.1 | $55.00 |
| 4/23/2024 | RK | $550.00 | Meeting with R. Higgins, E. Komosko and D. Reed re plaintiff's written discovery responses (split time with all NTG2 cases) | 0.2 | $110.00 |
| 4/23/2024 | EK | $350.00 | Meeting with Roger Kirnos, Russell Higgins, and Debra Reed re Plaintiff's responses | 0.3 | N/C |
| 4/24/2024 | JWC | $495.00 | Review/sign Objections to NOD of Plaintiff | 0.1 | $49.50 |
| 5/2/2024 | EK | $350.00 | Prepare Plaintiff's document production | 0.2 | N/C |
| 5/3/2024 | JWC | $495.00 | Revise PMK deposition notice | 0.3 | $148.50 |
| 5/8/2024 | DR | $495.00 | Draft Plaintiff's response to RFA, set one | 1.4 | $693.00 |
| 5/9/2024 | DR | $495.00 | Draft Plaintiff's responses to RFP, set one | 1.3 | $643.50 |
| 5/10/2024 | DR | $495.00 | Draft Plaintiffs' responses to Special ROGs, set one | 1.1 | $544.50 |
| 5/10/2024 | RH | $550.00 | Review causes of action, drafts of responses to discovery, request for dismissal of claims | 0.4 | $220.00 |
| 5/13/2024 | DR | $495.00 | Review Plaintiffs' document production to enable responding to interrogatories propounded by Defendant | 0.7 | $346.50 |
| 5/13/2024 | DR | $495.00 | Complete the drafting of two Plaintiffs' discovery responses to Ford set one discovery requests | 2.0 | $990.00 |
| 5/28/2024 | JWC | $495.00 | Appear for PMK depo non app | 0.2 | $99.00 |
| 5/29/2024 | RK | $550.00 | Initial review of terms of 998 offer | 0.1 | $55.00 |
| 5/29/2024 | RK | $550.00 | Review written discovery propounded by defendant dealer; meet with E. Kamosko re responses | 0.3 | $165.00 |
| 5/30/2024 | RH | $550.00 | Review and evaluate proposed 998; confer with RK and JWC re same | 0.1 | $55.00 |
| 6/3/2024 | RK | $550.00 | Receive email from opposing counsel re plaintiff deposition dates, call with R. Higgins, respond to opposing counsel, email to staff re coordinate | 0.1 | $55.00 |
| 6/5/2024 | RK | $550.00 | Meeting with M. Melero re case evaluation / Def's 998 offer | 0.1 | $55.00 |
| 6/6/2024 | RH | $550.00 | Review and sign depo supb.to Dealer PMQ | 0.1 | $55.00 |
| 6/12/2024 | RH | $550.00 | Communication with staff at Star Ford re confirmation of deposition schedule and witness(es), including review of file | 0.3 | $165.00 |
| 6/12/2024 | RH | $550.00 | Review and sign Amended NOD of Defendant's PMQ | 0.1 | $55.00 |
| 6/17/2024 | RH | $550.00 | Review and evaluate removal and remand | 0.3 | $165.00 |

| | | | | | |
|---|---|---|---|---|---|
| 6/17/2024 | RK | $550.00 | Receive email from R. Higgins re dealership deposition, respond to emails | 0.1 | $55.00 |
| 6/17/2024 | RK | $550.00 | Review Court's minute order re Status re Removal, review prior motion for remand filed in MDL to assess strategy, draft lengthy email to R. Higgins and J. Cutler (split time with other case) | 0.6 | $330.00 |
| 7/1/2024 | RH | $550.00 | Review files and removal papers, and outline issues for potential motion for remand; communication with FMC counsel to confer re same (time split with related case) | 1.3 | $715.00 |
| 7/7/2024 | DR | $495.00 | Begin outline of motion to remand | 0.4 | $198.00 |
| 7/11/2024 | DR | $495.00 | Draft Stipulation and proposed order to extend the deadline to file a motion to remand for 14 days after the mediation | 1.5 | $742.50 |
| 7/11/2024 | DR | $495.00 | Review edits by Amir to the stipulations and proposed orders; accept changes | 0.3 | $148.50 |
| 7/17/2024 | RH | $550.00 | Prepare for and meet with clients re upcoming mediation | 0.5 | $275.00 |
| 7/19/2024 | RH | $550.00 | Communication with opposing counsel re stipulation for coherent scheduling order with remaining MDL cases; time split with related case | 0.2 | $110.00 |
| 7/19/2024 | DR | $495.00 | Draft Joint stipulation to merge this case in with the MDL No. 2814-AB (PVCx) | 0.5 | $247.50 |
| 7/22/2024 | RH | $550.00 | Prepare for and attend mediation; communication with client | 0.8 | $440.00 |
| 7/23/2024 | RH | $550.00 | Draft memo to file re outcome of mediation and next steps | 0.2 | $110.00 |
| 8/6/2024 | RH | $550.00 | Review court order re initial scheduling / OSC; confer with staff re status of filings | 0.1 | $55.00 |
| 8/8/2024 | DR | $495.00 | Review case re Mediation results | 0.1 | $49.50 |
| 8/13/2024 | DR | $495.00 | Review docket re OSC re dismissal set for 8/23/2024, must file a joint stipulation for settlement in advance; Request settlement status from settlement team | 0.3 | $148.50 |
| 8/14/2024 | RH | $550.00 | Review and execute Rule 68 offer; evaluate new non-monetary terms for legality; client communication | 0.6 | $330.00 |
| 9/6/2024 | JWC | $495.00 | meet and confer on attorney's fees, costs, and expenses | 0.2 | $99.00 |
| 9/6/2024 | JWC | $495.00 | Draft Motion for Costs and Expenses | 3.1 | $1,534.50 |
| 9/10/2024 | JWC | $495.00 | Review and audit time records | 1.1 | $544.50 |
| 9/10/2024 | JWC | $495.00 | Draft Motion for Attorney's Fees, Costs, and Expenses and supporting declarations | 5.7 | $2,821.50 |
| TBD | JWC | $495.00 | Review and analyze Defendant's Opposition to Motion for Attorney's Fees (Anticipated) | 2.0 | $990.00 |

| | | | | | |
|---|---|---|---|---|---|
| TBD | JWC | $495.00 | Review and analyze Defendant's Opposition to Motion for Costs and Expenses (Anticipated) | 1.0 | $495.00 |
| TBD | JWC | $495.00 | Draft Reply to Opposition to Motion for Attorney's Fees (Anticipated) | 4.0 | $1,980.00 |
| TBD | JWC | $495.00 | Draft Reply to Opposition to Motion for Costs and Expenses (Anticipated) | 2.0 | $990.00 |
| TBD | JWC | $495.00 | Prepare for and appear at hearing on Motion for Attorney's Fees and Motion for Costs and Expenses (Telephonically) (Anticipated) | 1.5 | $742.50 |
| | | | Total Attorney Fees | 54.0 | $24,009.00 |

**Billing Rate Summary**

| Initials | Avg/Hr | Attorney/Staff | Hours | Amount |
|---|---|---|---|---|
| DR | $495.00 | Debra Reed | 9.6 | $4,752.00 |
| GA | $275.00 | George Aguilar | 2.7 | $742.50 |
| JC | $225.00 | Jonathan Cagliata | 5.3 | $1,192.50 |
| JWC | $495.00 | Jacob Cutler | 23.6 | $11,682.00 |
| KSC | $375.00 | Kristina Stephenson-Cheang | 1.6 | $600.00 |
| NF | $250.00 | Natalee Fisher | 1.7 | $425.00 |
| RH | $450.00 | Russell Higgins | 0.5 | $225.00 |
| RH | $550.00 | Russell Higgins | 5.0 | $2,750.00 |
| RK | $550.00 | Roger Kirnos | 2.4 | $1,320.00 |
| TT | $200.00 | Taylor Tieman | 1.6 | $320.00 |

# EXHIBIT B

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/4/2016 | RH | $450.00 | Ford Focus JCCP: Review opposition briefs filed by other firms concerning stay | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 1/4/2016 | RH | $450.00 | Ford Focus JCCP: Prepare objections and motion to strike Declaration of Robert Shields; research authorities and evidence cited by Ford in support of petition; prepare and outline opposition arguments, evidence, and authority in support of opposition | 7.0 | $3,150.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 7.0 |
| 1/5/2016 | RH | $450.00 | Ford Focus JCCP: Telephone calls with plaintiff's counsel Anthony Caronna and Erika Kavicky (Bickel) re status of oppositions and organization of plaintiff firm briefing | 0.5 | $225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 1/5/2016 | RH | $450.00 | Ford Focus JCCP: Prepare opposition to petition for coordination, and declaration of Steve Mikhov, including extnesive review of files and potential exhibits | 8.0 | $3,600.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 8.0 |
| 1/6/2016 | RH | $450.00 | Ford Focus JCCP: Outline potential areas for client declarations | 0.5 | $225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 1/6/2016 | RH | $450.00 | Ford Focus JCCP: Prepare opposition brief, declaration of Steve Mikhov | 0.5 | $225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 1/8/2016 | RH | $450.00 | Ford JCCP: Prepare opposition documents and email to Plaintiffs' firms for review and possible joinder in briefs; review and evaluate draft opposition brief by Bickel Law Firm | 5.0 | $2,250.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 5.0 |
| 1/11/2016 | RH | $450.00 | Ford Focus JCCP: Prepare final drafts of Opposition, Declaration, and assemble exhibits; exchange emails and telephone calls with Plaintiffs' firms re same, and re arguments in opposition to coordination | 5.0 | $2,250.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 5.0 |
| 1/12/2016 | RH | $450.00 | Ford Focus JCCP: Finalize all exhibits, declarations, and documents for filing, and exchange emails with other plaintiffs' firms re adopting or joining in our brief; legal research re same | 2.0 | $900.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.0 |
| 1/13/2016 | RH | $450.00 | Ford Focus JCCP: Review oppositions and notices of joinder filed by plaintiffs' law firms | 0.7 | $315.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.7 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/21/2016 | RH | $450.00 | Ford Focus JCCP - Prepare and outline arguments for hearing on Ford Petition for Coordination | 1.0 | $450.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.0 |
| 1/21/2016 | RH | $450.00 | Ford Focus JCCP - Review and evaluate Reply Brief and Declaration filed by Ford in response to oppositions to petition; outline issues for potential argument and/or further briefing | 1.5 | $675.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.5 |
| 1/22/2016 | RH | $450.00 | Ford Focus JCCP - Prepare and outline arguments for hearing on Ford Petition for Coordination | 1.7 | $765.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.7 |
| 1/24/2016 | RH | $450.00 | Ford Focus JCCP - Finalize argument outline and email to Paul Kiesel forwarding same with documents to prepare for argument on petition | 0.8 | $360.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.8 |
| 1/26/2016 | RH | $450.00 | Ford Focus JCCP - Prepare for and attend hearing on Ford's petition to coordinate Focus/Fiesta cases statewide | 4.0 | $1,800.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 4.0 |
| 4/20/2016 | RH | $450.00 | Ford DPS6 JCCP: Meeting with Jeff Koncius, ALM, SBM re proposed draft CMO 1 and next steps in formation of committee and evaluation of coordination procedures | 0.7 | $315.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.7 |
| 4/21/2016 | RH | $450.00 | Ford JCCP: Review and evaluate draft proposed Case Management Order | 1.5 | $675.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.5 |
| 4/21/2016 | RH | $450.00 | Ford JCCP: Review email from Payam Shahian re meeting and conferring on coordination issues | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 4/27/2016 | RH | $450.00 | Ford JCCP: Exchange emails with Plaintiffs' counsel re meeting to discuss Case Management Order preparation | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 4/27/2016 | RH | $450.00 | Ford JCCP: Prepare redline of draft proposed CMO # 1; Exchange emails with coordination counsel re same | 1.4 | $630.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.4 |
| 4/29/2016 | RH | $450.00 | Ford JCCP: Teleconference with steering committee and liaison counsel regarding status and scope of coordination, proposed Case Management Order, and pending actions in coordinated proceeding | 0.7 | $315.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.7 |



Case 2:25-cv-07425-AB-MAA Document 39-5 Filed 07/22/25 Page 862 of 1097 Page ID #:4280

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/2/2016 | RH | $450.00 | Ford JCCP - Confer with coordination counsel re opposition to add on petition | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 5/4/2016 | RH | $450.00 | Ford JCCP - Exchange emails with coordination counsel re status of CMO and related issues | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 5/13/2016 | RH | $450.00 | Ford JCCP: Prepare for and attend conference with steering committee and liaison counsel re draft CMO 1, scheduling for status conference and briefing, and related events in related cases and class actions | 1.4 | $630.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.4 |
| 5/13/2016 | RH | $450.00 | Ford JCCP: Confer with AH and ALM re opposition to add on petition | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 5/20/2016 | RH | $450.00 | Ford JCCP: Review and evaluate add-on petition and supporting papers | 1.5 | $675.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.5 |
| 5/24/2016 | RH | $450.00 | Ford JCCP: Review and edit draft Joint Initial Status Conference Report; research and evaluate potential ESI requirements | 2.6 | $1,170.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.6 |
| 5/24/2016 | RH | $450.00 | Ford JCCP: Prepare exhibits and opposition to petition for coordination of add on cases | 2.3 | $1,035.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.3 |
| 5/25/2016 | RH | $450.00 | Ford JCCP: Confer with ALM, LAU, SBM, MOC, CS re draft edits to joint status report for ISC, and scheduling | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 5/31/2016 | RH | $450.00 | Ford JCCP: Confer with internal counsel, PEC counsel, Liaison counsel re scheduling for in person meet and confer for ISC; draft ISC statement | 0.5 | $225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 6/1/2016 | RH | $450.00 | Ford JCCP: Review correspondence from Ford lead counsel, PEC and Liaison counsel re scheduling of in person meet and confer for ISC | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 6/2/2016 | RH | $450.00 | Ford JCCP: Extensive review of draft joint report for status conference, draft CMO, and prepare outline for in-person meet and confer with Ford's lead counsel, Plaintiffs' liaison counsel and executive committee | 3.0 | $1,350.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 3.0 |
| 6/2/2016 | RH | $450.00 | Ford JCCP: Review correspondence from Ford lead counsel, PEC and Liaison counsel re scheduling of in person meet and confer for ISC | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |



Case 2:25-cv-04251-AB-AGR Document 39-1 Filed 06/20/25 Page 863 of 1097 Page ID #:4268 (overlapping stamps)

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/3/2016 | RH | $450.00 | Ford JCCP: Prepare for, travel to and attend in person meet and confer with Ford's lead counsel, Plaintiffs' liaison counsel and executive committee | 3.0 | $1,350.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 3.0 |
| 6/30/2016 | LAU | $425.00 | Reviewed and revised CMO 1. | 0.8 | $340.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.8 |
| 6/30/2016 | LAU | $425.00 | Reviewed and followed up on status of plaintiffs' attorneys categorization chart to be attached to Joint Report. | 0.4 | $170.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 6/30/2016 | LAU | $425.00 | Reviewed and revised joint report. | 0.6 | $255.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.6 |
| 6/30/2016 | TB | $225.00 | Reviewed complete list of all cases in Ford's petition for Coordination and narrowed list to only those coordinated; went through each case to check case status, who is counsel on the case, and whether spreadsheet from applicable counsel was received | 7.0 | $1,575.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 7.0 |
| 6/30/2016 | TB | $225.00 | Contacted all attorneys in coordination to follow up on excel spreadsheets of cases; updated spreadsheets where applicable, and created spreadsheets for each attorney's settled JCCP cases | 2.5 | $562.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.5 |
| 7/1/2016 | TB | $225.00 | Merged all individual attorneys' settled cases spreadsheets | 0.3 | $67.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 7/1/2016 | TB | $225.00 | Searched case info for each case of attorney who has not responded to request for case status/info, determined status of case and plugged information into appropriate spreadsheet | 2.6 | $585.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.6 |
| 7/1/2016 | TB | $225.00 | Review email from Meghan George re coordinated cases form Todd Friedman firm, merge files | 0.2 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 7/1/2016 | TB | $225.00 | Review email from Mark Romanov re coordinated cases form Todd Friedman firm, merge files | 0.2 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 7/1/2016 | RH | $450.00 | Ford JCCP: Review draft protective order and comments by liaison counsel and other parties | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |



Case 2:25-cv-07125-AB-AGR Document 39-4 Filed 08/20/25 Page 33 of 417 Page ID #:2089

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/5/2016 | TB | $225.00 | Conversation with LAU re status of case chart; review of chart and email to Jeff Koncius re missing information | 0.3 | $67.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 7/5/2016 | TB | $225.00 | Phone call with LAU re missing chart information; San Luis Obispo cases | 0.3 | $67.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 7/5/2016 | TB | $225.00 | Phone call and email to David Berry re defects in his case, "David Kerr" | 0.3 | $67.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 7/5/2016 | TB | $225.00 | Phone call with LAU re status, looking up case of Javier Garcia to check status | 0.2 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 7/5/2016 | LAU | $425.00 | Revised, formatted, and finalized charts of consolidated information from plaintiffs' counsel for court's order. | 3.8 | $1,615.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 3.8 |
| 7/5/2016 | TB | $225.00 | Phone call with Jeff from Rosner Barry and Babbit re active cases in coordination; email to LAU re the same | 0.3 | $67.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 7/5/2016 | TB | $225.00 | Follow up phone call with LAU re status | 0.1 | $22.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 7/5/2016 | TB | $225.00 | Phone call with LAU re David Barry Case "Batterton"; review of docket, call to David barry and email to David Barry re Batterton case and cases that should not be coordinated | 0.3 | $67.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 7/5/2016 | TB | $225.00 | Review of LO of Robert Starr response to request for excel; discussion with LAU re lack of response, follow up email to Gordon from Starr Law to attempt to gather remaining information | 0.4 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 7/5/2016 | LAU | $425.00 | Revised and organized charts with last minute submissions by plaintiffs' attorneys. | 2.3 | $977.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.3 |
| 7/5/2016 | TB | $225.00 | Phone call to Gordon Wong from Starr law re missing information | 0.1 | $22.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 7/5/2016 | RH | $450.00 | Ford JCCP: Review correspondence from liaison counsel and executive committee concerning case information charts, protective order issues | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/6/2016 | ALM | $350.00 | Read and reviewed email chain and corresponding documents re upcoming continued initial status conference hearing/Plaintiff's portion of joint report/CMO in connection with same and discussed with Lauren | 1.0 | $350.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.0 |
| 7/6/2016 | TB | $225.00 | Review of email from Caitlin Bartkus from CLS and searched for docs requested | 0.2 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 7/6/2016 | TB | $225.00 | Review of Joint Status report and accompanying chart | 0.5 | $112.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 7/6/2016 | RH | $450.00 | Ford JCCP: Review correspondence and language of proposed protective order defining terms "automobile," "motor vehicle," "manufacturer" in accordance with statute | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 7/6/2016 | RH | $450.00 | Ford JCCP: Review uploaded case documents | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 7/7/2016 | LAU | $425.00 | Reviewed and responded to email regarding rescheduling of ISC and add-on petition. | 0.1 | $42.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 7/7/2016 | LAU | $425.00 | Reviewed minute order from court continuing ISC and add on petition. | 0.1 | $42.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 7/7/2016 | LAU | $425.00 | Organized tech meeting with document repository company; coordinated schedules with PEC and ILS. | 0.3 | $127.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 7/7/2016 | RH | $450.00 | Ford JCCP: review correspondence between liaison and executive committee members re consulting experts and effect of protective orders | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 7/8/2016 | ALM | $350.00 | Meeting with Lauren: discussed issue with cases incorrectly designated as settled | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 7/8/2016 | LAU | $425.00 | Investigated corrections to information filed in plaintiff's case categorization chart after inquiries for plaintiff's attorneys. | 0.3 | $127.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 7/8/2016 | RH | $450.00 | Ford JCCP: Review numerous emails among PEC/liaison counsel re scheduling for hearing on case management and status | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/20/2016 | ALM | $350.00 | Read and reviewed email from "Kiesel's" office re upcoming intitial statuf conference/status of various coordinated and add-on cases and discussed with Lauren | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 7/20/2016 | TB | $225.00 | Meeting with LAU re missing chart cases, review of all leftover cases and checked to see if now accounted for | 0.5 | $112.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 7/22/2016 | TB | $225.00 | Reviewed email from Melanie re missing cases; review of charts seeked email address and drafted email to all attorneys regarding the missing cases | 2.2 | $495.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.2 |
| 7/22/2016 | TB | $225.00 | Phone call to Barry Edzant law firm regarding the Petition for Add-on | 0.1 | $22.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 7/22/2016 | TB | $225.00 | Added our missing Add-on cases to add-on chart with defect information | 0.3 | $67.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 7/22/2016 | ALM | $350.00 | Read and reviewed email from liason counsel re discrepancies with coordinated cases identified by both parties and discussed with Lauren | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 7/25/2016 | ALM | $350.00 | Read and reviewed emal from liason counsel re upcoming status conference and discussed with Lauren | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 7/25/2016 | TB | $225.00 | Review of incoming excel spreadsheets and updated sheets sent by Melanie to reflect new case information | 0.6 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.6 |
| 7/25/2016 | TB | $225.00 | Review of email from LAU re spreadsheets, email from Steven Simons re spreadsheet, moved to file | 0.1 | $22.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 7/26/2016 | TB | $225.00 | Review of emails from Zolonz, Romano re status of coordinated/add-on cases, updated excel | 0.2 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 7/26/2016 | TB | $225.00 | Review of email from Debbie Horowitz and attached excel spreadsheets; merge with current sheets | 0.3 | $67.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 7/26/2016 | TB | $225.00 | Review of Melanie email re new excel information; compilation of all spreadsheet info to forward to Melanie | 0.4 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 7/26/2016 | ALM | $350.00 | Read and reviewed court's tentative ruling on Defendant's petition for add-on cases and discussed with Lauren | 0.4 | $140.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/26/2016 | TB | $225.00 | Review of email from Meghan George re Principe case; email to Melanie Palmer re update | 0.2 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 7/26/2016 | RH | $450.00 | Ford JCCP: Review and evaluate tentative ruling on add-on petition; confer with PEC and liaison counsel re same | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 7/27/2016 | TB | $225.00 | Review of Melanie Palmer email re ccordinated discrepancies and response with new charts | 0.3 | $67.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 7/27/2016 | ALM | $350.00 | Read and reviewd email from "Payam's" office re outstanding issues re PO | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 7/28/2016 | ALM | $350.00 | Meeting with Melanie: discussed OM input of joint report | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 7/28/2016 | ALM | $350.00 | Telephone conversation with MOC: discussed upcoming hearing on Defendant's petition for add-on cases | 0.4 | $140.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 7/29/2016 | ALM | $350.00 | In person appearance at status conference/hearing on Defendant's petition for add-on coordination/travel | 2.5 | $875.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.5 |
| 8/2/2016 | ALM | $350.00 | Drafted email re results of hearing on Defendant's petition for coordination of add-on cases and discussed with KSC | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 8/3/2016 | ALM | $350.00 | Meeting with Tom: discussed email from other Plaintiff's attorney re results of hearing on Defendant's peition for coordination of add-on cases and sent email to "Kiesel's" office re same | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 8/4/2016 | ALM | $350.00 | Read and reviewed court's minute order after hearing on Defendant's petition for coordination of add-on cases | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 8/10/2016 | RH | $450.00 | Solano county Ford DPS6 cases: Prepare letter response to presiding judge concerning Ford's letter request to coordinate cases within county | 4.0 | $1,800.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 4.0 |
| 8/25/2016 | RH | $450.00 | Ford JCCP: Prepare status letter to clients re pending coordination hearings | 0.5 | $225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 8/29/2016 | RH | $450.00 | Ford JCCP: Review and evaluate Court's ruling on Add-On Petition | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 8/31/2016 | ALM | $350.00 | Reviewed and edited letter to clients re status of coordination | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/1/2016 | ALM | $350.00 | Read and reviewed email exchange between PEC and liason counsel re de-coordination and discussed with Lauren | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 9/7/2016 | ALM | $350.00 | Telephone conference with PEC/liason counsel to discuss termination of coordination | 0.5 | $175.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 9/8/2016 | ALM | $350.00 | Read and reviewed email chain between PEC and lisason counsel re termination of coordination and discussed with Lauren | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 9/9/2016 | RH | $450.00 | Ford JCCP: Review proposed message board posting and communications among executive and liaison counsel re potential motion to dissolve coordination | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 9/13/2016 | RH | $450.00 | Ford JCCP: Review filed documents, case docket, joint status reports, and status of coordination | 1.5 | $675.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.5 |
| 9/13/2016 | RH | $450.00 | Ford JCCP 4856: Review stipulation and proposed order to remand cases from coordination; confer with staff re scheduled hearings and status conferences | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 9/16/2016 | TB | $225.00 | Review of cases for service list to eliminate Martin Anderson firm | 0.3 | $67.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 9/19/2016 | RH | $450.00 | Ford JCCP: Review and evaluate Ford's petition for writ of mandate; initial legal research re response to petition | 2.0 | $900.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.0 |
| 9/20/2016 | RH | $450.00 | Ford Focus JCCP: Review Ford's writ petition in detail; telephone call and exchange emails with office of Liaison Counsel and executive committee counsel to discuss filing of petition and strategy for response | 2.3 | $1,035.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.3 |
| 10/24/2016 | RH | $450.00 | Prepare declaration concerning status of JCCP hearing in advance of status conference | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 10/27/2016 | RH | $450.00 | Ford JCCP Writ - Meet with staff, liaison, and executive committee counsel re preparation of response to FMC's petition for writ of mandate to reverse Court's ruling on petition for add on cases | 1.0 | $450.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.0 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/2/2016 | RH | $450.00 | Ford JCCP: Review and evaluate Liaison Counsel "preliminary response" to Defendant's petition for writ of mandate; legal research re standard of review; exchange emails with Liaison Counsel re same | 2.3 | $1,035.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.3 |
| 11/3/2016 | ALM | $350.00 | Read and reviewed response to Defendant's writ and discussed with Lauren | 0.4 | $140.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 11/10/2016 | RH | $450.00 | Ford JCCP: Review status of writ of mandate proceeding | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 11/15/2016 | ALM | $350.00 | Read and reviewed Defendant's reply to Plaintiff's opposition to Defendant's writ | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 12/2/2016 | RH | $450.00 | Ford JCCP: Review and evaluate Court of Appeal case notification re Ford writ petition for denial of add-on petition | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 12/6/2016 | RH | $450.00 | Ford JCCP - Add On Petition - Writ - Confer with SF, ALM re meeting to discuss Court of Appeal decision | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 12/7/2016 | RH | $450.00 | Ford Focus JCCP: Confer with executive committee and liaison counsel re responses to FMC writ petition challenging denial of Add On Petition | 1.2 | $540.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.2 |
| 12/8/2016 | RH | $450.00 | Ford Focus JCCP: Review correspondence and research by executive committee, and confer with ALM re strategy for evaluating responses to FMC writ petition challenging denial of Add On Petition | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 12/9/2016 | RH | $450.00 | Ford Focus JCCP: Confer with executive committee and liaison counsel re responses to FMC writ petition challenging denial of Add On Petition | 0.8 | $360.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.8 |
| 12/19/2016 | ALM | $350.00 | Meeting with Russ: discussed telephone conference re Defendant's writ to order after hearing on petition for coordination of add-on cases | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 12/19/2016 | ALM | $350.00 | Telephonce conversation with PEC re Defendant's writ to order after hearing on petition for coordination of add-on cases | 0.5 | $175.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/19/2016 | ALM | $350.00 | Telephone conversation with Plaintiff's attorney re writ on order after hearing on Defendant's petition for coordination of add-on cases | 0.4 | $140.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 12/19/2016 | RH | $450.00 | Ford JCCP: Confer with plaintiff executive committee and liaison counsel re response to alternative writ concerning add on petition; prepare message board posting and confer with counsel re same | 0.7 | $315.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.7 |
| 12/29/2016 | RH | $450.00 | Ford JCCP: Telephone call with Jordan Wager of Bickel Law Firm, re response to alternative writ order on add on petition; communications with Liaison and Executive Committee | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 1/5/2017 | RH | $450.00 | Review and evaluate Respondent's response to alternative writ re: add on petition; communications with co-counsel re same | 2.0 | $900.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.0 |
| 1/5/2017 | ALM | $350.00 | Meeting with SBM | 1.5 | $525.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.5 |
| 1/10/2017 | ALM | $350.00 | Drafted email to opposing counsel re scheduling mediation and discussed with Sarah | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 1/12/2017 | RH | $450.00 | Meeting with SBM, Payam, Neil, Ben Schatz, Paul Kiesel re writ proceedings | 1.5 | $675.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.5 |
| 1/15/2017 | RH | $450.00 | Ford Writ re Add On Petition: Communication with staff re schedule for argument in court of appeal | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 1/18/2017 | ALM | $350.00 | Telephone conversation with liason counsel re scheduling mediation | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 1/19/2017 | ALM | $350.00 | Mediation: drafted email to opposing counsel re scheduling mediation and discussed with Chris | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 1/20/2017 | RH | $450.00 | Send info to SBM and Michael Gold | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 1/30/2017 | RH | $450.00 | Ford Add On/Writ: Prepare answer to writ petition; communication with SLP, Ben Schatz, and Kiesel Law | 2.5 | $1,125.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.5 |
| 1/31/2017 | RH | $450.00 | Ford Add On/Writ: Confer with plaintiffs' counsel re answer to writ petition (12+ emails) | 1.2 | $540.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.2 |



Case 2:25-cv-07126-AB-AJR Document 39-5 Filed 08/12/25 Page 871 of 1097 Page ID #:5240

Case 2:18-ml-02814-AB-PVC Document 1638-2 Filed 09/11/24 Page 41 of 417 Page ID #:67182 (overlapping stamped header text, illegible)

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/1/2017 | RH | $450.00 | Ford Add On Cases - Meeting with Kiesel Law, SLP, ALM, LAU re Return to Alternative Writ | 1.5 | $675.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.5 |
| 2/1/2017 | ALM | $350.00 | Prepared for in-person meeting re Plaintiff's return to Defendant's writ | 0.4 | $140.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 2/1/2017 | ALM | $350.00 | Meeting re Plaintiff's return to Defendant's writ | 1.2 | $420.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.2 |
| 2/2/2017 | RH | $450.00 | Ford add on writ - Communication with Jared Walder re final edits to return to alternative writ; legal research | 1.1 | $495.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.1 |
| 2/2/2017 | TB | $225.00 | Review of add-on cases for settlement status and respond to AM email | 0.2 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 2/21/2017 | ALM | $350.00 | Read and reviewed Ford's traverse re petition for add-on cases | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 2/28/2017 | RH | $450.00 | Ford Add On/Writ: Communication with Kiesel Law Firm, SLP | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 3/1/2017 | RH | $450.00 | Ford DPS6 cases - Review class action settlement | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 3/1/2017 | ALM | $350.00 | Telephone call with PEC/liason counsel re whether to respond to letter from court of appeal | 0.7 | $245.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.7 |
| 3/2/2017 | RH | $450.00 | Ford Add-On Writ - Review numerous emails among Plaintiffs' counsel and review Superior Court response filed with Court of Appeal | 0.6 | $270.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.6 |
| 3/3/2017 | RH | $450.00 | Ford Add On Writ - Communications with various plaintiff counsel (SLP, PK, Ben Schatz) re response to Court of Appeal inquiry | 1.0 | $450.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.0 |
| 3/3/2017 | ALM | $350.00 | Telephone conversation with liason counsel/PEC | 1.0 | $350.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.0 |
| 3/5/2017 | RH | $450.00 | Ford Add On Writ - Communications with various plaintiff counsel (SLP, PK, Ben Schatz) re response to Court of Appeal inquiry | 0.9 | $405.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.9 |
| 3/21/2017 | RH | $450.00 | Ford Add On Appeal - Prepare for and attend meeting with appellate counsel | 8.0 | $3,600.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 8.0 |
| 3/23/2017 | RH | $450.00 | Ford Add On Writ - Communication with SLP, Kiesel Law, Ben Schatz re arguments for appellate hearing | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/14/2017 | RH | $450.00 | Ford JCCP 4856 - Confer with Liaison and Exec Committee counsel re preparation of status report, cases to release for trial | 0.6 | $270.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.6 |
| 4/18/2017 | RH | $450.00 | JCCP 4856: Review and edit draft Joint Status Conference Report re May 1 Status Conference | 0.8 | $360.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.8 |
| 4/19/2017 | RH | $450.00 | JCCP 4856 (Ford Focus/Fiesta) - Communication with Plaintiffs' liaison and executive committee counsel, and prepare draft joint status report, including review of files | 1.0 | $450.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.0 |
| 4/26/2017 | RH | $450.00 | Ford Focus JCCP 4856 - Review notice of continuance of status conference | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 4/27/2017 | RH | $450.00 | San Bernardino FMC related cases - Review cases and organize information for filing of status briefs | 0.6 | $270.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.6 |
| 5/8/2017 | RH | $450.00 | Ford JCCP 4856 - Review and evaluate opinion of Court of Appeal re: FMC writ petition; communications with co-counsel | 0.5 | $225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 5/8/2017 | ALM | $350.00 | Meeting with Russ/Payam: discussed court's ruling on Defendant's writ in connection with petition to coordinate add-on cases | 1.0 | $350.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.0 |
| 5/11/2017 | RH | $450.00 | Ford JCCP 4856 - Prepare materials for status conference | 0.8 | $360.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.8 |
| 5/11/2017 | RH | $450.00 | Ford Add-On Writ - Prepare for and attend conference with Plaintiffs' counsel re results of appellate process | 1.5 | $675.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.5 |
| 5/11/2017 | ALM | $350.00 | Telephone conference re Defendant's petition for coordination of add-on cases | 1.5 | $525.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.5 |
| 5/14/2017 | RH | $450.00 | Ford JCCP - Communication with Liaison counsel re issues for discussion and schedule | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 5/15/2017 | RH | $450.00 | Ford JCCP 4856: Prepare for, travel to and attend coordination status conference | 4.5 | $2,025.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 4.5 |
| 5/15/2017 | RH | $450.00 | Ford JCCP 4856 - Communication with Liaison and executive Committee counsel re protective order, draft rehearing petition, | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 5/15/2017 | ALM | $350.00 | Appeared in-person at CMC hearing/travel | 3.0 | $1,050.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 3.0 |



Case 2:25-cv-01524-AB-PVC Document 39-5 Filed 07/22/25 Page 873 of 1097 Page ID #:3248

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/15/2017 | ALM | $350.00 | Read and reviewed draft of rehearing petition and drafted email re concerns/discussed with Russ | 0.4 | $140.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 5/16/2017 | RH | $450.00 | Ford Focus JCCP 4856: Review and evaluate discovery of "fact sheets," and protective orders entered in various proceedings; review rulings and prepare memoranda on CMC hearing | 2.5 | $1,125.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.5 |
| 5/16/2017 | ALM | $350.00 | Drafted email re results of CMC hearing and discussed with Russ | 0.4 | $140.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 5/17/2017 | RH | $450.00 | Ford JCCP - Communication with liaison and staff counsel re proposed protective order | 0.6 | $270.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.6 |
| 5/17/2017 | ALM | $350.00 | Read and reviewed email to opposing counsel re status of SPO in connection with Defendant's document production in reponse to Plaintiff's written discovery requests | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 5/17/2017 | ALM | $350.00 | Telephone conversation with liason counsel: discussed results of CMC hearing/steps to take going forward | 0.4 | $140.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 5/18/2017 | RH | $450.00 | Ford Focus JCCP 4856: Communication with liaison and executive committee, and review status re discovery, review and evaluate variety of protective order drafts | 4.0 | $1,800.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 4.0 |
| 5/18/2017 | ALM | $350.00 | Read and reviewed email chain re parties' SPO and discussed with Russ | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 5/18/2017 | ALM | $350.00 | Meeting with Russ: discussed upcoming deadlines/status of cases as result of recent CMC hearing | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 5/19/2017 | RH | $450.00 | San Bernardino FMC cases - Prepare for, travel to and attend hearing on related cases - Burgess, Brownmayfield, Clark, Cowan, Coleman, Davidson-Codjoe, Jansson, Kopchak, Salcido, Macbean, Velasco, Schene, Ibarra, Montes, Soto, Stead, Rivera, Etheredge | 4.2 | $1,890.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 4.2 |
| 5/19/2017 | ALM | $350.00 | Telephone conversation with liason counsel: discussed upcoming posting to bulletin board in light of court's order at recent CMC hearing | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/24/2017 | RH | $450.00 | Review ruling of trial court re transfer order, communication with liaison counsel in JCCP 4856 | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 5/25/2017 | RH | $450.00 | Ford JCCP 4856 - Review files and prepare list of cases originally coordinated re: prior trial dates affected by coordination; communication with liaison counsel re: same | 0.8 | $360.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.8 |
| 5/30/2017 | RH | $450.00 | Ford JCCP 4856 - Review files re trial dates of coordinated/Add On cases; communication with liaison counsel | 2.0 | $900.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.0 |
| 6/1/2017 | RH | $450.00 | San Bernardino Ford related cases - Correspondence with Defendant's counsel t | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 6/1/2017 | RH | $450.00 | Ford JCCP - Communication with liaison counsel re informal discovery and message board posting | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 6/1/2017 | RH | $450.00 | Confer with staff counsel re outcome of Ford JCCP Writ and published opinion on complex cases | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 6/2/2017 | RH | $450.00 | FMC related cases in San Bernardino: Communication with defense counsel re: meet and confer on discovery/case management | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 6/12/2017 | RH | $450.00 | Ford JCCP Add On - Prepare updated trial status list of add on cases, communication with liaison counsel | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 6/12/2017 | RH | $450.00 | Ford JCCP Add On - Prepare updated trial status list of add on cases, communication with liaison counsel | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 6/14/2017 | RH | $450.00 | Prepare client update letter - FMC JCCP 4856 add on cases | 0.8 | $360.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.8 |
| 6/29/2017 | RH | $450.00 | San Bernardino related FMC cases: Prepare for, travel to and attend hearing on related cases, status of stay orders (numerous cases) | 5.3 | $2,385.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 5.3 |
| 7/7/2017 | RH | $450.00 | Review correspondence and chart from Ford's counsel re proposed new add on cases | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 7/18/2017 | RH | $450.00 | Ford SoCal JCCP 4856 - Conference call with Plaintiffs' Liaison and Executive Committee | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/31/2017 | RH | $450.00 | Ford JCCP 4856: Review communications from liaison and PEC counsel, review drafts of proposed CMO; conference call with liaison and PEC re same; prepare commentary to proposed CMO | 3.8 | $1,710.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 3.8 |
| 7/31/2017 | ALM | $350.00 | Telephone conversation with PEC re coordination | 1.0 | $350.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.0 |
| 8/1/2017 | RH | $450.00 | PEC - Communications with PEC re potential case Focus/Fiesta management and discovery orders, document JCCP repository orders | 0.7 | $315.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.7 |
| 8/3/2017 | RH | $450.00 | Meeting with plaintiffs' counsel re assignment of coordination motion judge, and review orders re same | 0.8 | $360.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.8 |
| 8/4/2017 | RH | $450.00 | Communication with liaison counsel re scheduling | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 8/9/2017 | RH | $450.00 | Meeting with PEC | 0.6 | $270.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.6 |
| 8/11/2017 | RH | $450.00 | Communication with PEC and liaison counsel re proposed CMO re discovery orders | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 8/14/2017 | RH | $450.00 | Communication with PEC and liaison counsel in advance of status conference | 0.6 | $270.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.6 |
| 8/15/2017 | RH | $450.00 | Meeting with SBM, ALM, JK, Nicole Ramirez, SLP re preparation for status conference; prepare orders for hearing | 4.0 | $1,800.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 4.0 |
| 8/15/2017 | RH | $450.00 | Review files and prepare for status conference | 2.8 | $1,260.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.8 |
| 8/15/2017 | ALM | $350.00 | Meeting with PEC/Liason counsel: discussed upcoming CMC hearing | 3.5 | $1,225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 3.5 |
| 8/16/2017 | RH | $450.00 | Prepare for, travel to and attend status conference | 4.5 | $2,025.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 4.5 |
| 8/21/2017 | RH | $450.00 | Confer with PEC re proposed CMO No. 1, and prepare CMO, multple issues for discussion at upcoming hearing | 2.2 | $990.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.2 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/22/2017 | RH | $450.00 | Confer with PEC and Liaison counsel re proposed CMO No. 1 | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 8/23/2017 | RH | $450.00 | Communication with liaison and PEC counsel re proposed CMO No. 1 | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 8/23/2017 | RH | $450.00 | Communication with /attorney Charles Lee re hearing on petition | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 8/24/2017 | RH | $450.00 | Preparation for status conference | 0.8 | $360.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.8 |
| 8/24/2017 | RH | $450.00 | Communication with liaison counsel; conference with liaison and Defendant's lead counsel re CMO No. 1 | 1.0 | $450.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.0 |
| 8/24/2017 | RH | $450.00 | Communications with plaintiffs' counsel re status conference arguments for August 25 and August 30 | 1.0 | $450.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.0 |
| 8/24/2017 | RH | $450.00 | Communications with plaintiffs' counsel re status conference arguments for August 25 and August 30 | 0.8 | $360.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.8 |
| 8/24/2017 | ALM | $350.00 | Telephonic meeting with liason counsel/opposing counsel: discussed upcoming CMC | 1.0 | $350.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.0 |
| 8/25/2017 | RH | $450.00 | Prepare for, travel to and attend status conferencel meetings with PEC and liaison counsel | 8.0 | $3,600.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 8.0 |
| 8/25/2017 | RH | $450.00 | Communication with PEC and defense counsel re meet and confer on proposed protective order | 0.6 | $270.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.6 |
| 8/27/2017 | RH | $450.00 | Review proposed CMO No 1 and communication with liaison counsel re same | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 8/28/2017 | RH | $450.00 | Communication with PEC re revised CMO 1, with PEC and Ford counsel re revised protective order, request to release cases for trial, communications with plaintiff attorneys | 2.4 | $1,080.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.4 |
| 8/29/2017 | RH | $450.00 | Prepare for hearing on petition | 1.2 | $540.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.2 |



Case 2:25-cv-01226-AB-AGR Document 39-5 Filed 07/22/25 Page 48 of 154 Page ID #:3053
Case 2:25-cv-01226-AB-AGR Document 45-17 Filed 08/14/25 Page 877 of 1097 Page ID #:5252

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/29/2017 | RH | $450.00 | Communication with PEC re document repositories and document production, communicate with Ford counsel and PEC re protective order drafts and issues, prepare for status conference | 3.6 | $1,620.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 3.6 |
| 8/30/2017 | RH | $450.00 | Prepare for, travel to and attend status conference; meetings with PEC and liaison counsel | 6.5 | $2,925.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 6.5 |
| 8/30/2017 | RH | $450.00 | Communication with Defendant's counsel | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 8/30/2017 | ALM | $350.00 | Appeared at CMC hearing/travel | 4.3 | $1,505.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 4.3 |
| 9/1/2017 | RH | $450.00 | Communication with Defendant's counsel re protective order | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 9/5/2017 | RH | $450.00 | Review transcript of proceedings on August 30, and prepare revised protective order | 0.5 | $225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 9/5/2017 | RH | $450.00 | Review proposed CMO 2, communication with liaison counsel re same | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 9/6/2017 | RH | $450.00 | FMC related cases in San Bernardino - confer with MQ re NORC filing | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 9/6/2017 | RH | $450.00 | Communication with Defendant's counsel re draft protective order; prepare SPO; communication with PEC and Deft counsel re execution and filing | 1.8 | $810.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.8 |
| 9/6/2017 | RH | $450.00 | Confer with PEC re document repository selection and briefing | 0.8 | $360.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.8 |
| 9/7/2017 | RH | $450.00 | Communication with liaison and PEC counsel re document repository briefing; prepare brief re same | 0.8 | $360.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.8 |
| 9/7/2017 | ALM | $350.00 | Meeting with Russ: discussed upcoming CMC hearing | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 9/7/2017 | ALM | $350.00 | Reviewed binder in preparation for in-person appearance at CMC hearing | 0.5 | $175.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 9/8/2017 | ALM | $350.00 | CMC: In person appearance at CMC hearing/travel | 3.0 | $1,050.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 3.0 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/8/2017 | ALM | $350.00 | CMC: drafted email re results of CMC hearing and discussed with Russ | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 9/12/2017 | RH | $450.00 | Prepare lengthy update to GO re client updates and status of coordination | 0.5 | $225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 9/13/2017 | RH | $450.00 | Communication with PEC | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 9/13/2017 | RH | $450.00 | Communication with liaison counsel re CMO 1 and cases to include in JCCP | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 9/14/2017 | RH | $450.00 | Review case files re: May 2016 Add On Petition and Second Add On Set; communication with liaison counsel re cases to include in JCCP 4856 by stipulation | 2.5 | $1,125.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.5 |
| 9/14/2017 | RH | $450.00 | Communication with liaison counsel re cases to exclude from original Add On and Second Set, including extensive review of files | 2.5 | $1,125.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.5 |
| 9/14/2017 | RH | $450.00 | Communication with plaintiff counsel Amy Smith re cases to be excluded/included | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 9/15/2017 | RH | $450.00 | DPS6 cases - Research re motion for sanctions 128.7 for false statements concerning opt-out | 2.2 | $990.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.2 |
| 9/15/2017 | RH | $450.00 | Communication with liaison counsel re CMO 1 and cases to include in JCCP | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 9/19/2017 | RH | $450.00 | Ford DPS6 cases - Confer with intake staff re Vargas opt-out master list; prepare motion for sanctions template | 0.9 | $405.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.9 |
| 9/19/2017 | RH | $450.00 | Communication with liaison counsel re cases to exclude from original Add On and Second Set, including extensive review of files | 2.2 | $990.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.2 |
| 9/19/2017 | RH | $450.00 | Communication with PEC and liaison re ILS order | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 9/20/2017 | RH | $450.00 | Communication with PEC re proposed CMO's | 0.8 | $360.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.8 |
| 9/20/2017 | RH | $450.00 | FMC San Bernardino related cases - Meeting with KSC re preparation for joint status conference; review files | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 9/20/2017 | RH | $450.00 | Communication with PEC re cases to exclude in CMO 1 | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/21/2017 | RH | $450.00 | Communication with PEC and liaison counsel re upcoming CMO issues | 0.6 | $270.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.6 |
| 9/21/2017 | RH | $450.00 | Review files and update liaison counsel re additional settled cases | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 9/21/2017 | RH | $450.00 | Review CMO 3 message board posting | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 9/22/2017 | RH | $450.00 | Review letters from attorney Joseph Kaufman re cases included in JCCP; communicate with liaison counsel re same | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 9/26/2017 | RH | $450.00 | Communication with liaison and PEC re proposed CMO 4 re ADR | 1.0 | $450.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.0 |
| 9/26/2017 | RH | $450.00 | Review and evaluate FMC's proposed CMO 4; communication with PEC | 0.5 | $225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 9/26/2017 | ALM | $350.00 | Meeting with Russ: discussed issues in connection with CMO4 | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 9/26/2017 | ALM | $350.00 | Read and reviewed email chain between PEC/liason counsel re upcoming status conference hearing/CMO #4 and discussed with Russ | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 9/27/2017 | RH | $450.00 | Communication with liaison/PEC re scheduling meet and confer on CMO 4 | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 9/28/2017 | RH | $450.00 | Meeting with PEC, Defendant's counsel re proposed CMO 4 | 1.0 | $450.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.0 |
| 9/28/2017 | RH | $450.00 | Communication with PEC re joint reports on included and excluded cases, settled cases | 0.7 | $315.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.7 |
| 9/28/2017 | ALM | $350.00 | Participated in telephonic meet and confer re CMO #4 | 1.2 | $420.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.2 |
| 9/29/2017 | RH | $450.00 | Review new add on petition and rules of court | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 9/29/2017 | RH | $450.00 | Prepare joint report re disputed add-on cases | 0.7 | $315.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.7 |
| 10/2/2017 | RH | $450.00 | Review and evaluate Ford's Secon Add-On Petition | 1.5 | $675.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.5 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/2/2017 | RH | $450.00 | Confer with GA re agreed add-on cases | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 10/2/2017 | RH | $450.00 | Confer with Mitch re motions to remand in DPS6 federal cases, and prepare language re effect of coordination | 0.6 | $270.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.6 |
| 10/3/2017 | RH | $450.00 | Prepare for status conference | 1.0 | $450.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.0 |
| 10/3/2017 | RH | $450.00 | Prepare motions to remand in DPS6 federal cases | 0.7 | $315.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.7 |
| 10/3/2017 | RH | $450.00 | Ford DPS6 cases with motions for stay - Check opt-out status, prepare motion for sanctions and opposition to motion for stay and declarations, along with correspondence to Ford | 1.1 | $495.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.1 |
| 10/3/2017 | RH | $450.00 | Communication with Charles Lee re effect of coordination and outcome of Vargas fairness hearing | 0.7 | $315.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.7 |
| 10/3/2017 | ALM | $350.00 | Meeting with Russ: discussed upcoming CMC hearing | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 10/4/2017 | RH | $450.00 | Communication with Charles Lee of CLS | 0.7 | $315.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.7 |
| 10/4/2017 | RH | $450.00 | Prepare for, travel to and attend status conference | 7.5 | $3,375.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 7.5 |
| 10/4/2017 | ALM | $350.00 | CMC: in-person appearance at CMC hearing/travel | 7.5 | $2,625.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 7.5 |
| 10/5/2017 | RH | $450.00 | Communication with Charles Lee of CLS | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 10/5/2017 | RH | $450.00 | Prepare memorandum re status conference | 0.5 | $225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 10/5/2017 | RH | $450.00 | Confer with PEC re proposed CMO 5; confer with liaison re proposed add on cases Salcido and Santos | 0.6 | $270.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.6 |
| 10/10/2017 | RH | $450.00 | Communication with defendant's counsel | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 10/10/2017 | RH | $450.00 | Review and evaluate correspondence from Ford counsel re proposal to stipulate to add on to JCCP | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |



Case 2:25-cv-04251-AB-PVC Document 39-5 Filed 07/02/25 Page 881 of 1097 Page ID #:1250

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/10/2017 | ALM | $350.00 | Meeting with George: discussed status of discovery in newly coordinated cases | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 10/12/2017 | RH | $450.00 | Prepare draft CMO 3 and CMO 5; confer with PEC re repository order dispute; communication with Ford counsel re stipulated add-on cases | 1.1 | $495.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.1 |
| 10/13/2017 | RH | $450.00 | Exchange emails with PEC re draft CMO 3; exchange emails with Ford counsel re cases included in stipulated add-on list | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 10/13/2017 | RH | $450.00 | Exchange emails with PEC re draft CMO 3; exchange emails with Ford counsel re cases included in stipulated add-on list | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 10/16/2017 | RH | $450.00 | Communication with PEC and Defendant's counsel re : message board posting, execution of joint filings re: add-on cases, | 0.4 | $180.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |
| 10/17/2017 | RH | $450.00 | San Bernardino related DPS6 cases - Send recent JCCP orders to Dept. S29 | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 10/20/2017 | RH | $450.00 | Review and evaluate cases included in Second Add On Petition | 1.5 | $675.00 | 1.5 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |
| 10/24/2017 | ALM | $350.00 | Meeting with Russ: discussed issues re CMO #5 | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 10/24/2017 | RH | $450.00 | Communication with PEC and liaison re revisions to draft CMO 3 | 0.9 | $405.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.9 |
| 10/27/2017 | RH | $450.00 | Prepare draft CMO No 3 re initial exchange, and draft correspondence to Ford counsel, and communicate with PEC re same | 1.0 | $450.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.0 |
| 10/27/2017 | ALM | $350.00 | Read and reviewed email chain re CMO #3 and discused with Russ | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 10/27/2017 | RH | $450.00 | Communication with PEC re terms of proposed repository order | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 10/31/2017 | RH | $450.00 | Prepare information to send to Cindy Tobisman | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 11/1/2017 | RH | $450.00 | DPS6 Federal cases: Meet and confer with Defendant's counsel re motions to remand | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 11/3/2017 | RH | $450.00 | Communication with PEC re proposed CMO and repository order(s) | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 11/8/2017 | RH | $450.00 | Confer with PEC re repository orders and discovery orders applicable to JCCP | 0.5 | $225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/8/2017 | RH | $450.00 | Communication with defense counsel re proposed CMO No. 3, including review and evaluation of proposed language | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 11/9/2017 | RH | $450.00 | Communications with Charles Lee re add on schedule | 0.2 | $90.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |
| 11/10/2017 | ALM | $350.00 | Conducated research re Defendant's request for stay in connection with add-on petition and discussed with Russ | 0.4 | $140.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 11/13/2017 | RH | $450.00 | Confer with PEC re proposed CMO No. 3 | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 11/14/2017 | ALM | $350.00 | Read and reviewed email chain re parties' CMO #3 | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 11/14/2017 | RH | $450.00 | Prepare opposition to Second Add On Petition | 1.1 | $495.00 | 1.1 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |
| 11/14/2017 | RH | $450.00 | Communication with Ford counsel re status of CMO No 3 | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 11/15/2017 | RH | $450.00 | Communication with Ford counsel re status of CMO No 3 | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 11/16/2017 | RH | $450.00 | Review and evaluate communication from Ford counsel re proposed revisions to CMO No 3 | 0.5 | $225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 11/17/2017 | RH | $450.00 | Confer with PEC and liaison counsel re status of CMO 3; status and oppositions to second and third add on petitions; confer with staff re same | 1.5 | $675.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.5 |
| 11/20/2017 | ALM | $350.00 | Read and reviewed Plaintiff's PO re document repository | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 11/21/2017 | ALM | $350.00 | Reviewed and edited declaration of SBM in support of Plaintiffs' opposition to Defendant's second add on petition for coordination | 0.3 | $105.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |
| 11/27/2017 | ALM | $350.00 | Read and revviewed parties' CMO #3 and discussed with Angie | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 11/27/2017 | ALM | $350.00 | Telephone conversation with liason counsel: discussed upcoming deadline to file parties' joint report | 0.3 | $105.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |
| 11/28/2017 | ALM | $350.00 | Drafted Plaintiffs' portion of joint report and discussed with George | 1.0 | $350.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.0 |
| 11/28/2017 | ALM | $350.00 | Meeting with George: discussed upcoming deadline to file parties' joint report | 0.3 | $105.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |

Case 2:25-cv-07245-AB-AJR Document 39-51 Filed 10/22/25 Page 54 of 101 Page ID #:2089

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/28/2017 | ALM | $350.00 | Telephone conference with PEC/liason counsel: discussed status of parties' joint report | 0.4 | $140.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 11/29/2017 | ALM | $350.00 | Telephone conversation with Nicole: discussed status of Plaintiff's portion of joint report | 0.4 | $140.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 12/4/2017 | RH | $450.00 | FMC DPS6 Federal Cases - Eastern District - Communication with court re FMC motions to stay | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 12/6/2017 | RH | $450.00 | Prepare for, travel to and attend status conference | 5.3 | $2,385.00 | 5.3 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |
| 12/7/2017 | RH | $450.00 | Review and confer with liaison/PEC re: proposed orders on repository issues | 0.5 | $225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 12/8/2017 | RH | $450.00 | Review and confer with liaison/PEC re: proposed orders on repository issues | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 12/11/2017 | RH | $450.00 | Confer with GA and prepare memorandum re: hearing results and pending orders | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 12/11/2017 | RH | $450.00 | DPS6 cases - meeting with SBM and ALM, review files re depositions from Vargas class action | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 12/15/2017 | ALM | $350.00 | Read and reviewed summary re results of recent status conference hearing | 0.2 | $70.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 12/20/2017 | RH | $450.00 | San Bernardino related DPS6 cases - Review court orders and confer with MQ re filing of NORC's in new cases | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 1/4/2018 | RH | $450.00 | Confer with PEC and liaison counsel re issues for upcoming status conference | 0.3 | $135.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 1/15/2018 | ALM | $350.00 | Read and reviewed parties' joint report in advance of upcoming status conference hearing | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 1/15/2018 | RH | $450.00 | Prepare for hearing on status conference / add on petitions | 2.5 | $1,125.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.0 |
| 1/16/2018 | RH | $450.00 | Travel to and attend status conference | 4.0 | $1,800.00 | 0.8 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 3.2 |
| 1/16/2018 | RH | $450.00 | Review several master case list submissions, confer with liaison and PEC re same | 0.8 | $360.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.6 |
| 1/16/2018 | RH | $450.00 | Communication with Charles Lee | 0.2 | $90.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |
| 1/17/2018 | RH | $450.00 | Meeting with SBM re next steps in discovery and settlement issues | 0.2 | $90.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |

Case 2:18-ml-02814-AB-PVC Document 1638-2 Filed 09/11/24 Page 54 of 417 Page ID #:67195

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/17/2018 | RH | $450.00 | Ford DPS6 issues - review discovery and depositions from Vargas and related cases | 1.1 | $495.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.1 |
| 1/18/2018 | ALM | $350.00 | Read and reviewed letter from opposing counsel re mediation of cases and discussed with Russ | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 1/24/2018 | RH | $450.00 | Conference call with LAU, ILS representatives re DPS6 repository analysis; confer with LAU re documents included in repository | 0.8 | $360.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.8 |
| 1/25/2018 | RH | $450.00 | Ford DPS6 - Review transcript of Chris (split time) Kwasniewicz | 1.8 | $810.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.4 |
| 1/29/2018 | RH | $450.00 | Review DPS6 documents (split time) | 7.0 | $3,150.00 | 1.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 6.0 |
| 2/7/2018 | ALM | $350.00 | Read and reviewed parties' CMO #5 | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 2/13/2018 | RH | $450.00 | Ford So Cal JCCP 4856 - Confer with LAU and Rowena Santos re repository issues, document production, protective orders | 0.6 | $270.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.6 |
| 2/15/2018 | RH | $450.00 | San Bernardino related DPS6 cases - communication with liaison counsel re updating Judge Frangie on JCCP rulings | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 2/16/2018 | RH | $450.00 | Review Order granting second and third add on petitions; communication with staff counsel re same | 0.2 | $90.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |
| 2/16/2018 | RH | $450.00 | Communication with PEC re document repository administrative issues | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 2/19/2018 | RH | $450.00 | Confer with KSC re statement of damages per CMO 3, and list of coordinated cases; confer with staff re settlement of cases in JCCP | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 2/19/2018 | RH | $450.00 | Confer with PEC re document repository issues with ILS | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 2/20/2018 | ALM | $350.00 | Telephone conference re data storage software | 0.8 | $280.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.8 |
| 2/26/2018 | RH | $450.00 | Review document index produced by Ford counsel | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 2/26/2018 | RH | $450.00 | Confer with PEC re document repository charges, coding structure | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/26/2018 | RH | $450.00 | Confer with PEC re document repository and global discovery efforts; work product issues | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 2/27/2018 | RH | $450.00 | Review draft case management orders | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 2/27/2018 | RH | $450.00 | Review Ford DPS6 federal case files re: settlement offers to establish amount in controversy | 0.6 | $270.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.6 |
| 3/1/2018 | ALM | $350.00 | Meeting with Russ: discussed receipt of Defendant's CMO #4 re resolution of Song-Beverly claims (and other related matters) | 0.5 | $175.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 3/1/2018 | RH | $450.00 | Review and evaluate proposed CMO 4; confer with PEC re same | 1.0 | $450.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.0 |
| 3/1/2018 | RH | $450.00 | [Not really PEC, but JCCP issues] Confer with KSC re plaintiffs' document production in all coordinated cases | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 3/2/2018 | RH | $450.00 | Conference with PEC re Joint Report, proposed CMO's | 0.3 | $135.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |
| 3/4/2018 | RH | $450.00 | Draft revisions and comments to proposed CMO 5; communcation with PEC re same | 2.5 | $1,125.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.5 |
| 3/5/2018 | RH | $450.00 | Review and evaluate proposed revisions to CMO 4; confer with PEC re same, and re: Ford strategy of non-admissions of liability and attempts to exclude evidence | 2.1 | $945.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.1 |
| 3/6/2018 | RH | $450.00 | Confer with PEC about proposed CMOs 4, 5, and 6; draft revisions to proposed CMO 4 and proposed CMO 6 | 1.6 | $720.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.4 |
| 3/7/2018 | RH | $450.00 | [Not really PEC but JCCP issues for clients] Follow up with KSC re plaintiff document production | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 3/7/2018 | RH | $450.00 | Further revision to proposed CMO 4 | 0.4 | $180.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 3/12/2018 | ALM | $350.00 | Read and reviewed Plaintiff's proposed edits to CMO #4 | 0.4 | $140.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 3/12/2018 | ALM | $350.00 | Read and reviewed CMO #5 | 0.4 | $140.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 3/12/2018 | RH | $450.00 | Revise proposed CMO 4 with comments; prepare Joint Status Report; communication with PEC and liaison counsel re same | 1.5 | $675.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.5 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/12/2018 | RH | $450.00 | Review and file batches of document production for case specific information | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 3/12/2018 | RH | $450.00 | Ford DPS6 cases - Confer with George S. re patent research | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 3/13/2018 | ALM | $350.00 | Read and reviewed Plaintiffs' responses to questionnaire in "Nor Cal" cases and discussed with George | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 3/14/2018 | ALM | $350.00 | Read and reviewed Plaintiff's further CMS filed by "Neil" and discussed with Russ | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 3/19/2018 | ALM | $350.00 | In-person appearance at status conference re CMOs #4 and 5, travel | 3.0 | $1,050.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.5 |
| 3/19/2018 | RH | $450.00 | Prepare for, travel to and attend status conference | 3.0 | $1,350.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.5 |
| 3/22/2018 | ALM | $350.00 | Meeting with Jonathan: discussed whether receieved results from "Nor Cal" hearing | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 3/26/2018 | RH | $450.00 | Prepare memo to file re status conference and Ford proposal to admit liability | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 3/29/2018 | ALM | $350.00 | Read and reviewed summary re results of recent status conference hearing | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 4/9/2018 | RH | $450.00 | Review status of document repository access with LAU | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 4/17/2018 | ALM | $350.00 | Telephone meeting re upcoming status conference hearing | 0.5 | $175.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 4/24/2018 | RH | $450.00 | Extensive communication with liaison and PEC re access to document repository; terms and conditions | 2.0 | $900.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.0 |
| 4/27/2018 | RH | $450.00 | Confer with staff counsel re scheduling and deadlines for Ford's motions for leave to amend answers | 0.1 | $45.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |
| 5/3/2018 | RH | $450.00 | Review Defendant's notices of motions for leave to file FAC, and deadline for oppositions to same | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 5/10/2018 | RH | $450.00 | Communication with Lauren Ungs re invoice from ILS for repository hosting fees | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 5/11/2018 | RH | $450.00 | Prepare opposition to motion for leave to file amended answers; review multiple cases re: same | 3.5 | $1,575.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 3.0 |



Case 2:25-cv-01256-AB-PVC Document 39-4 Filed 07/21/25 Page 57 of 174 Page ID #:2083

Case 2:18-ml-02814-AB-PVC Document 1638-2 Filed 09/11/24 Page 57 of 417 Page ID #:67198

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/16/2018 | RH | $450.00 | Meeting with GA to discuss FMC motions for leave to amend answers | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 5/21/2018 | RH | $450.00 | Communication with liaison counsel and PEC re apportionment of costs for repository | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 5/30/2018 | RH | $450.00 | Confer with ALM and GA re stipulation to add on cases | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 6/1/2018 | KSC | $375.00 | prepared chart / review contact log; follow ups with disco team for outstanding client docs/info | 1.0 | $375.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.0 |
| 6/6/2018 | ALM | $350.00 | Meeting with George/Russ: discussed status of hearing on Defendant's motion for leave to amend answer | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 6/15/2018 | MER | $325.00 | Emails with liaison counsel | 0.6 | $195.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.6 |
| 6/18/2018 | MER | $325.00 | Review RH edits to Joint Report for 6/22 Conf | 0.5 | $162.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 7/5/2018 | RH | $450.00 | Confer with liaison and PEC re plaintiffs' report for status conference; review drafts of status report | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 7/12/2018 | RH | $450.00 | Confer with MQ re stipulation for coordination of cases in 4th AOP | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 7/24/2018 | RH | $450.00 | Communication with liaison counsel re terms of document repository access for additional counsel | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 7/25/2018 | RH | $450.00 | Confer with co-counsel re review of items in document repository; communication with liaison counsel re any potential conflicts for document repository access for additional counsel | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 7/25/2018 | RH | $450.00 | Communication with liaison counsel and PEC re request for case management conference | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 8/3/2018 | RH | $450.00 | Confer with GA and attorneys re 4th add on case set, deadline to oppose add on petition | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 8/22/2018 | MC | $300.00 | Meeting with MR discussed holding of Fritsch v Swift Transp Co, as per supplemental briefing of D. | 0.5 | $150.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 8/22/2018 | MC | $300.00 | Research DPS6 in re Defendant's Notice of Supplemental Authority re opp to P's test remand motions | 3.3 | $990.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 3.3 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/27/2018 | RH | $450.00 | Review draft joint status report, confer with liaison counsel re same | 0.3 | $135.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |
| 8/28/2018 | RH | $450.00 | Prepare joint status report, conferences with liaison and PEC re same | 2.0 | $900.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.0 |
| 8/30/2018 | RH | $450.00 | Review defense plea for delay of scheduled status conference; confer with liaison and PEC re response to same; review minute order and confer with liaison re methods to prevent improvident rulings and continuances based on Ford's unilateral requests | 1.2 | $540.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.2 |
| 8/31/2018 | RH | $450.00 | Review Court notice of continuance of Status Conference and 4th Add On Petition | 0.1 | $45.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |
| 9/12/2018 | RH | $450.00 | Communication with liaison counsel re schedule for status conference | 0.1 | $45.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |
| 9/17/2018 | RH | $450.00 | Confer with liaison counsel re proposed continuance of status conference | 0.2 | $90.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |
| 10/1/2018 | RH | $450.00 | Review and respond to proposed further rescheduling of status conference | 0.1 | $45.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |
| 10/2/2018 | RH | $450.00 | Confer with liaison re formal stipulation for proposed further rescheduling of status conference | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 10/22/2018 | RH | $450.00 | Check dockets, prepare for hearing on motion to be relieved | 0.9 | $405.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.9 |
| 10/22/2018 | RH | $450.00 | Review JCCP order re nunc pro tunc reversal of coordination following MAF in Zaeemi and Redman; memo to file; confer with RK re same | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 10/23/2018 | RH | $450.00 | Prepare notices of hearing, packages for follow up service, argue with KSC and SF about the next steps and responsibility for carrying them out | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 10/23/2018 | RH | $450.00 | Travel to and from, prepare for and attend hearing on motion to be relieved; memorandum to file re next steps | 3.0 | $1,350.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 3.0 |
| 10/25/2018 | RH | $450.00 | Confer with liaison counsel re proposals for joint status report | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 10/29/2018 | RH | $450.00 | Confer with liaison and PEC re joint report; draft portions of joint report | 0.6 | $270.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.6 |



Case 2:25-cv-01275-AB-AGR Document 30-1 Filed 07/22/25 Page 531 of 1097 Page ID #:1284

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/1/2018 | RH | $450.00 | Review and evaluate Ford's Fifth Add On Petition; review Portillo and Bowell cases re: facts, client contacts and status; memo to staff re same | 0.5 | $225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 11/5/2018 | RH | $450.00 | Prepare for, travel to and from, and attend status conference; lengthy meetings with liaison and other plaintiffs' counsel re next steps | 4.0 | $1,800.00 | 1.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 3.0 |
| 12/4/2018 | RH | $450.00 | Prepare joint status report for status conference | 2.5 | $1,125.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.0 |
| 12/5/2018 | RH | $450.00 | Revise/finalize joint status report; confer with Jeff Koncius re same | 0.3 | $135.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |
| 12/19/2018 | RH | $450.00 | Prepare for, travel to and attend status conference; prepare extensive memoranda to file and confer with liaison counsel re notices and communications with co-counsel | 4.0 | $1,800.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $225.00 | $225.00 | 2.5 |
| 12/20/2018 | RH | $450.00 | Research and communication with trial counsel teams regarding Ford's 6th Add On Petition (Zaragoza, Mora, Angulo, Cazares cases) in preparation to oppose coordination | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.2 |
| 12/21/2018 | RH | $450.00 | Research and communication with trial counsel teams regarding Ford's 6th Add On Petition (Zaragoza, Mora, Angulo, Cazares cases) in preparation to oppose coordination | 2.0 | $900.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $180.00 | $180.00 | 1.2 |
| 12/21/2018 | ALM | $350.00 | Meeting with Russ: discussed drafting opposition to Defendant's add-on petition for coordination | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $35.00 | $35.00 | 0.0 |
| 12/24/2018 | RH | $450.00 | Prepare opposition to 6th Add On Petition | 1.5 | $675.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $225.00 | $225.00 | 0.5 |
| 12/26/2018 | RH | $450.00 | Prepare opposition to 6th Add On Petition; research files; prepare supporting documents | 5.8 | $2,610.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.8 | 0.8 | $360.00 | $360.00 | 4.2 |
| 12/27/2018 | RH | $450.00 | Prepare opposition to 6th Add On Petition | 7.0 | $3,150.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 1.0 | 1.0 | $450.00 | $450.00 | 5.0 |
| 1/3/2019 | RH | $450.00 | Confer with liaison counsel re proposed order to release initial disposition pool of cases for discovery and law/motion | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.0 | 0.1 | $0.00 | $45.00 | 0.0 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/9/2019 | RH | $450.00 | Monitor correspondence between liaison counsel and Ford counsel re: Ford counsel's attempt to retroactively add deadlines to notice of rulings from status conference | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |
| 1/10/2019 | LAU | $425.00 | Meeting with Z. Powell regarding DPS6 document review project. | 0.5 | $212.50 | 0.5 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/10/2019 | LAU | $425.00 | Telephone call with P. Kiesel & S. Mikhov regarding DPS6 document review project. | 0.2 | $85.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/10/2019 | LAU | $425.00 | Telephone call with Dan Klier regarding DPS6 document review project. | 0.3 | $127.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $42.50 | $42.50 | 0.1 |
| 1/11/2019 | RH | $450.00 | Review court order continuing hearing on 6th add-on petition; confer with staff re schedules for further hearings and calendar | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |
| 1/15/2019 | RH | $450.00 | Confer with co-counsel and liaison counsel re hearing status, discovery and next steps | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |
| 1/18/2019 | LAU | $425.00 | Prepared for meeting regarding document review and preparation for June trial. | 1.6 | $680.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $127.50 | $127.50 | 1.0 |
| 1/18/2019 | LAU | $425.00 | Attended meeting regarding document review and preparation for June trial. | 3.8 | $1,615.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $212.50 | $212.50 | 2.8 |
| 1/18/2019 | RH | $450.00 | Confer with RK re proposed order on 998's and other matters | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |
| 1/30/2019 | RH | $450.00 | Confer with Jeff Koncius re 5-year issues | 0.1 | $45.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/31/2019 | RH | $450.00 | Confer with liaison and with staff re review of all active coordinated cases for 5-year deadlines | 2.0 | $900.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $90.00 | $90.00 | 1.4 |
| 2/4/2019 | LAU | $425.00 | Reviewed DPS6 documents. | 1.0 | $425.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | USED UP | 0.5 | n/a | $212.50 | 0.0 |
| 2/4/2019 | RH | $450.00 | Confer with Paul Kiesel re application of stays in complex court, recent appellate law, and accounting for time during coordination against 5-year dismissal statute; review correspondence between liaison and defense counsel | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.1 |
| 2/5/2019 | RH | $450.00 | Review files and prepare spreadsheets on 5-year issue | 1.5 | $675.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 1.1 |
| 2/5/2019 | RH | $450.00 | Review correspondence with CLR attorneys re proposed stipulation to coordinate; access to documents; exchange emails re protective orders | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.2 |

Ford Motor Warranty Cases

Knight Law Group, LLP
Invoice

JCCP 4856

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/5/2019 | RH | $450.00 | Review case files and trial court orders in all active coordinated cases re stays ordered in trial courts prior to coordination | 2.5 | $1,125.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $135.00 | $135.00 | 1.5 |
| 2/7/2019 | ZP | $250.00 | Prepared by reviewing files for meeting. | 0.5 | $125.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 2/7/2019 | ZP | $250.00 | Meeting with Kiesel's office, CLR, RH and LAU re: DPS6 deposition targets. (split time) | 3.3 | $825.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 2.3 |
| 2/7/2019 | LAU | $425.00 | Reviewed DPS6 documents. | 6.5 | $2,762.50 | 1.0 | starts 9/10/20 | starts 8/6/21 | 0.9 | 0.9 | $382.50 | $382.50 | 3.7 |
| 2/7/2019 | LAU | $425.00 | Prepared for DPS6 meeting. | 1.2 | $510.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $170.00 | $170.00 | 0.0 |
| 2/7/2019 | LAU | $425.00 | Meeting with P. Kiesel, R. Higgens, Z. Powell, and CLR regarding DPS6 deposition scheduling and strategy. | 3.5 | $1,487.50 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $127.50 | $127.50 | 2.5 |
| 2/8/2019 | RH | $450.00 | Confer with liaison counsel re 5-year deadlines for coordinated cases | 0.2 | $90.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 2/11/2019 | ZP | $250.00 | Further DPS6 Vargas Hot Docs review. | 1.2 | $300.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 0.4 |
| 2/11/2019 | ZP | $250.00 | DPS6 Vargas Hot Docs review to cull exhibits. | 1.6 | $400.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 1.0 |
| 2/11/2019 | RH | $450.00 | Research files re active cases with prior court stays, settled cases and status of fees; confer extensively with liaison counsel and with staff re same | 2.0 | $900.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $180.00 | $180.00 | 1.2 |
| 2/12/2019 | RH | $450.00 | Confer with liaison counsel and prepare further spreadsheet re active and settled cases | 0.9 | $405.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $135.00 | $135.00 | 0.3 |
| 2/18/2019 | ZP | $250.00 | DPS6 second round review continues. | 1.7 | $425.00 | 0.6 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 0.1 |
| 2/19/2019 | SS | $225.00 | Reviewed Ford's 6th Add on Petition Hearing Results | 0.1 | $22.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.0 | $22.50 | $0.00 | 0.0 |
| 2/19/2019 | RH | $450.00 | Prepare for, travel to and attend hearing on Ford's 6th Add On Petition; memoranda to file in preparation for status conference and continued hearing; prepare case materials for delivery to court | 7.0 | $3,150.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 1.0 | 1.0 | $450.00 | $450.00 | 5.0 |



Case 2:18-ml-02814-AB-PVC Document 1638-2 Filed 09/11/24 Page 61 of 417 Page ID #:67202

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/21/2019 | ALM | $350.00 | Read and reviewed court's tentative ruling on Defendant's petition for coordination/MTC further discovery responses from Defendant and discussed with KSC | 0.4 | $140.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $35.00 | $35.00 | 0.2 |
| 2/26/2019 | RH | $450.00 | Review status of dispute regarding rulings from December status conference; confer with staff regarding potential attorney fee deadlines in additional settled cases | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.2 |
| 2/26/2019 | RH | $450.00 | Prepare for, travel to and attend hearing on status conference and Ford's 6th Add On petition | 8.0 | $3,600.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 1.1 | 1.1 | $495.00 | $495.00 | 5.8 |
| 2/28/2019 | SS | $225.00 | Reviewed Status Conference Results | 0.1 | $22.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.0 | 0.1 | $0.00 | $22.50 | 0.0 |
| 2/28/2019 | RH | $450.00 | Prepare comprehensive outcome of status conference and 6th AOP; confer with RK re next steps | 1.5 | $675.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $225.00 | $225.00 | 0.5 |
| 3/5/2019 | LAU | $425.00 | Meeting with Zach regarding ILS data. | 1.5 | $637.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $212.50 | $212.50 | 0.5 |
| 3/5/2019 | RH | $450.00 | Communications with Michael Hansen concerning remand issues | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.2 |
| 3/7/2019 | RH | $450.00 | Review emails from Ford counsel Stradling Yocca concerning NOD's served in coordinated cases; confer with staff concerning NOD's served in various cases and dates for deposition; emails and telephone call with Craig Taggart concerning schedule for depos a | 0.5 | $225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.3 |
| 3/12/2019 | RH | $450.00 | Review and revise draft notice of rulings from status conference | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.0 | $45.00 | $0.00 | 0.0 |
| 3/13/2019 | ALM | $350.00 | Meeting with Russ: discussed status of PO | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $35.00 | $35.00 | 0.1 |
| 3/18/2019 | ZP | $250.00 | Emails to/from Truong re: deponent building breakdowns. | 0.3 | $75.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.1 |
| 3/18/2019 | ZP | $250.00 | Meeting with LAU/RH re: DPS6 review and issue coding. | 0.8 | $200.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.1 |
| 3/18/2019 | ZP | $250.00 | Call/meeting with LAU on DPS6 review and ILS breakdown. | 0.2 | $50.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 3/18/2019 | ZP | $250.00 | Email to Truong at ILS. | 0.1 | $25.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/18/2019 | ZP | $250.00 | Call with Truong at ILS. | 0.2 | $50.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 3/18/2019 | ZP | $250.00 | Call with Stephanie Taft at Kiesel Law re: ILS doc review for DPS6. | 0.2 | $50.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 3/18/2019 | ZP | $250.00 | Reviewed NOD from ST re: ILS doc review for DPS6. | 0.2 | $50.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 3/18/2019 | LAU | $425.00 | Telephone call with P. Kiesel regarding scheduling of a DPS6 meeting; telephone call with Russ regarding coordination of meeting; meeting with Zach regarding preparation for meeting. | 4.0 | $1,700.00 | 0.8 | starts 9/10/20 | starts 8/6/21 | 0.8 | 0.8 | $340.00 | $340.00 | 1.6 |
| 3/18/2019 | LAU | $425.00 | Telephone call with lead attorneys regarding common issues. | 1.6 | $680.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $127.50 | $127.50 | 1.0 |
| 3/19/2019 | ZP | $250.00 | DPS6 prep, reviewed 700R hot docs and watched video breakdown. | 2.4 | $600.00 | 0.6 | starts 9/10/20 | starts 8/6/21 | 0.6 | 0.6 | $150.00 | $150.00 | 0.6 |
| 3/19/2019 | ZP | $250.00 | Email from/to ST re: ILS doc review. | 0.2 | $50.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 3/19/2019 | MER | $325.00 | review and revise template pmk notice | 0.5 | $162.50 | 0.2 | starts 9/10/20 | starts 8/6/21 | 0.0 | 0.0 | $0.00 | $0.00 | 0.3 |
| 3/19/2019 | LAU | $425.00 | Document review in ILS database. | 4.0 | $1,700.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $212.50 | $212.50 | 3.0 |
| 3/19/2019 | RH | $450.00 | Prepare heavily revised PMK deposition notice on case-specific issues | 1.5 | $675.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $225.00 | $225.00 | 0.0 |
| 3/20/2019 | ZP | $250.00 | Prepared for DPS6 meeting, reviewed files, reviewed complaint, reviewed deponent list, located docs from prior meeting, updated meeting agenda and review protocol. | 4.4 | $1,100.00 | 0.8 | starts 9/10/20 | starts 8/6/21 | 0.7 | 0.7 | $175.00 | $175.00 | 2.2 |
| 3/20/2019 | ZP | $250.00 | Emails to team for DPS6 meeting with attached docs. | 0.3 | $75.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 3/20/2019 | ZP | $250.00 | Email to Neil and team re: DPS6 depositions. | 0.2 | $50.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 3/20/2019 | ZP | $250.00 | Email from Neil re: ford employee depos. | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.0 | 0.1 | $0.00 | $25.00 | 0.0 |
| 3/20/2019 | ZP | $250.00 | Email to Truong for DPS6 coding panels and excel spreadsheet breakdown. | 0.3 | $75.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.1 |
| 3/20/2019 | ZP | $250.00 | Read Truong's email re: coding panels. | 0.2 | $50.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |



Case 2:25-cv-01215-AB-AGR Document 39-5 Filed 06/20/25 Page 64 of 174 Page ID #:2092

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/20/2019 | ZP | $250.00 | Email to Truong for DPS6 deponent coding. | 0.3 | $75.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.1 |
| 3/21/2019 | ZP | $250.00 | DPS6 deponent background research. | 1.2 | $300.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 0.4 |
| 3/21/2019 | ZP | $250.00 | Email from Truong@ILS re: excel spreadsheet. | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.0 | $25.00 | $0.00 | 0.0 |
| 3/21/2019 | ZP | $250.00 | Reviewed ILS production of Chris Kwas excel sheet. | 0.3 | $75.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 3/21/2019 | ZP | $250.00 | DPS6 team meeting. | 2.6 | $650.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.3 |
| 3/21/2019 | ZP | $250.00 | Reviewed DPS6 notes and docs for DPS6 meeting. | 2.3 | $575.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 1.3 |
| 3/21/2019 | ZP | $250.00 | Watched DPS6 videos for research/presentation on DPS6. | 1.1 | $275.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.4 |
| 3/21/2019 | ZP | $250.00 | Email to DPS6 team with Outline outline. | 0.1 | $25.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 3/21/2019 | ZP | $250.00 | Met with LAU for Outline for meeting. | 0.5 | $125.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.3 |
| 3/21/2019 | ZP | $250.00 | Email from ST re: Bates for 700 hot docs from Resnik | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.0 | 0.1 | $0.00 | $25.00 | 0.0 |
| 3/21/2019 | ZP | $250.00 | Email to ST re: Bates for 700 hot docs from Resnik | 0.2 | $50.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 3/21/2019 | ZP | $250.00 | Email to Truong re: editing coding panels in DPS6 repository. | 0.3 | $75.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.1 |
| 3/21/2019 | ZP | $250.00 | Correspondence with DK re: DPS6. | 0.3 | $75.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.1 |
| 3/21/2019 | LAU | $425.00 | Document review in ILS database in preparation for drafting of document review protocol. | 3.0 | $1,275.00 | 0.6 | starts 9/10/20 | starts 8/6/21 | 0.6 | 0.6 | $255.00 | $255.00 | 1.2 |
| 3/21/2019 | LAU | $425.00 | Meeting with Zach regarding preparations for document review protocol; review and revisions to document review protocol. | 3.0 | $1,275.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $127.50 | $127.50 | 2.1 |
| 3/21/2019 | LAU | $425.00 | Prepared for hosting meeting regarding document review; prepared outlines and protocols. | 3.0 | $1,275.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $212.50 | $212.50 | 1.5 |
| 3/21/2019 | LAU | $425.00 | Hosted meeting regarding document review for upcoming Ford employee depositions. | 3.0 | $1,275.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $212.50 | $212.50 | 1.5 |
| 3/21/2019 | RH | $450.00 | Confer with RK re protocol for fee motions (meet/confer) | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.0 | $45.00 | $0.00 | 0.0 |



Case 2:18-ml-02814-AB-PVC Document 1638-2 Filed 09/11/24 Page 64 of 417 Page ID #:67205

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/22/2019 | ZP | $250.00 | Email to Truong re: order of deponents to work on. | 0.2 | $50.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 3/22/2019 | ZP | $250.00 | Compiled depo dates and tentative depo dates. | 0.8 | $200.00 | 0.8 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 3/22/2019 | ZP | $250.00 | DPS6 transmission breakdown video review. | 1.3 | $325.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 0.5 |
| 3/22/2019 | ZP | $250.00 | Emails to/from ST re: DPS6 depos. | 0.3 | $75.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 3/22/2019 | ZP | $250.00 | Reviewed new times proposed for depositions in MI. | 0.3 | $75.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 3/24/2019 | ZP | $250.00 | DPS6 meeting. | 5.7 | $1,425.00 | 1.1 | starts 9/10/20 | starts 8/6/21 | 0.9 | 0.9 | $225.00 | $225.00 | 2.8 |
| 3/24/2019 | LAU | $425.00 | Attended DPS6 meeting. | 8.0 | $3,400.00 | 1.1 | starts 9/10/20 | starts 8/6/21 | 1.0 | 1.0 | $425.00 | $425.00 | 4.9 |
| 3/25/2019 | ZP | $250.00 | Word searches for key items. | 1.2 | $300.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 0.4 |
| 3/25/2019 | ZP | $250.00 | Email to Truong re: accounts and coding questions. | 0.2 | $50.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 3/25/2019 | ZP | $250.00 | Email to RH re: answers to coding questions. | 0.2 | $50.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 3/25/2019 | ZP | $250.00 | Email from RH re: coding questions. | 0.2 | $50.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 3/26/2019 | ZP | $250.00 | Edited notes and guidelines for deposition doc review, reviewed excel spreadsheets from production and from ILS | 2.3 | $575.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 1.3 |
| 3/26/2019 | ZP | $250.00 | Emails to/from Truong at ILS for DPS6 database edits and coding panel updates. | 0.4 | $100.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.2 |
| 3/26/2019 | ZP | $250.00 | Met with Lauren re: ILS training. | 0.4 | $100.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.2 |
| 3/26/2019 | ZP | $250.00 | DPS6 ILS training session. | 0.8 | $200.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.4 |
| 3/27/2019 | ZP | $250.00 | DPS6 review and protocol edits. | 2.9 | $725.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.9 |
| 3/27/2019 | ZP | $250.00 | Email to ST about 2012 lessons learned. | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.0 | 0.1 | $0.00 | $25.00 | 0.0 |
| 3/27/2019 | ZP | $250.00 | Asked LAU about the 2012 Lessons Learned. | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.0 | $25.00 | $0.00 | 0.0 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/28/2019 | ZP | $250.00 | DPS6 Review, quality control on DK's review as well. | 3.2 | $800.00 | 0.6 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.6 |
| 3/28/2019 | ZP | $250.00 | Emails to/from Truong at ILS. | 0.4 | $100.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | 0.2 | USED UP | $50.00 | n/a | 0.0 |
| 3/29/2019 | ZP | $250.00 | DPS6 review. | 5.2 | $1,300.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.7 | 0.7 | $175.00 | $175.00 | 3.8 |
| 3/30/2019 | ZP | $250.00 | Discussed DPS6 review with GA. | 0.4 | $100.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.2 |
| 3/30/2019 | ZP | $250.00 | Email to Stephanie re: review outline | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.0 | 0.1 | $0.00 | $25.00 | 0.0 |
| 3/30/2019 | ZP | $250.00 | Email to Kiesel re: review outline. | 0.3 | $75.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 3/30/2019 | ZP | $250.00 | Call with Kiesel re: review. | 0.1 | $25.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 3/30/2019 | ZP | $250.00 | DPS6 review. | 5.1 | $1,275.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 3.8 |
| 4/1/2019 | RH | $450.00 | Emails and conference call with Jeff Koncius & Taft re issues for conference call with Ford in preparation for joint status report | 0.5 | $225.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | USED UP | 0.2 | n/a | $90.00 | 0.0 |
| 4/1/2019 | RH | $450.00 | Emails and conference call with Jeff Koncius & Taft re issues for conference call with Ford in preparation for joint status report | 0.5 | $225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.3 |
| 4/2/2019 | ZP | $250.00 | Call with DK re: DPS6 review. | 0.2 | $50.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/2/2019 | ZP | $250.00 | Emails to/from RH re: Chris Kwas review. | 0.2 | $50.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/2/2019 | ZP | $250.00 | Emails to/from Truong at ILS re: Resnick Hot Docs. | 0.3 | $75.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.1 |
| 4/2/2019 | ZP | $250.00 | Call with SS re: DPS6 review. | 0.1 | $25.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/2/2019 | ZP | $250.00 | Email to MR/CS re: ILS Log-In Credentials. | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.0 | $25.00 | $0.00 | 0.0 |
| 4/2/2019 | ZP | $250.00 | Email from/to Truong at ILS for accounts. | 0.2 | $50.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 4/2/2019 | ZP | $250.00 | Email to KLG DPS6 review team new members. | 0.4 | $100.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/2/2019 | ZP | $250.00 | Email to Bicoastal team for DPS6 review. | 0.2 | $50.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/2/2019 | ZP | $250.00 | Call with Stephanie Taft re: DPS6 review. | 0.1 | $25.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/2/2019 | ZP | $250.00 | Call with Dan Klier re: DPS6 review. | 0.2 | $50.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 4/2/2019 | ZP | $250.00 | Call with Dan Klier re: DPS6 review. | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.0 | 0.1 | $0.00 | $25.00 | 0.0 |
| 4/2/2019 | ZP | $250.00 | Call with Scott Delaney re: DPS6 review. | 0.2 | $50.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 4/2/2019 | ZP | $250.00 | Call with Kiesel re: DPS6 review. | 0.1 | $25.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/2/2019 | ZP | $250.00 | Call with Kiesel re: DPS6 review. | 0.1 | $25.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/2/2019 | ZP | $250.00 | Ran training session for new DPS6 reviewers. | 1.1 | $275.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.5 |
| 4/2/2019 | RH | $450.00 | Conference with Ford counsel and liaison, re Ford's complaints about Morales and Toriz motions for attorney's fees and costs; review case files and tortured history of Ford's complaints about fee issues, unclear demands and orders, and outline situation l | 1.8 | $810.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $135.00 | $135.00 | 1.2 |
| 4/2/2019 | RH | $450.00 | Conference with Ford counsel and liaison, and meetings with staff and co-counsel, re discovery issues, resolution of purported "global legal issues," and related matters | 0.5 | $225.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.2 | USED UP | $90.00 | n/a | 0.0 |
| 4/3/2019 | ZP | $250.00 | Email re: batches to ILS and co-counsel. | 0.5 | $125.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | USED UP | 0.2 | n/a | $50.00 | 0.0 |
| 4/3/2019 | LAU | $425.00 | Worked on document review of Ford's production in database. | 6.0 | $2,550.00 | 1.0 | starts 9/10/20 | starts 8/6/21 | 1.0 | 1.0 | $425.00 | $425.00 | 3.0 |
| 4/3/2019 | LAU | $425.00 | Meeting with Zach regarding upcoming depositions in Michigan; coordination of tech set up in Michigan. | 2.0 | $850.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $85.00 | $85.00 | 1.3 |
| 4/4/2019 | ZP | $250.00 | Located Complaint and edited PDF, sent over to Bicoastal and Kiesel's office for review. Emails to/from both offices. | 0.5 | $125.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.3 |
| 4/4/2019 | ZP | $250.00 | Call with George re: B299. | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.0 | $25.00 | $0.00 | 0.0 |
| 4/4/2019 | ZP | $250.00 | Emails to/from Truong re: Resnick Hot Docs. | 0.2 | $50.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/4/2019 | ZP | $250.00 | Email to Truong to set up ILS account. | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.0 | 0.1 | $0.00 | $25.00 | 0.0 |
| 4/4/2019 | ZP | $250.00 | Call with TS re: setting up account. | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.0 | $25.00 | $0.00 | 0.0 |
| 4/4/2019 | ZP | $250.00 | Email to ST and Dan Klier's office re: V48 Transmission designation. | 0.2 | $50.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/4/2019 | ZP | $250.00 | V48 and acronym searches. | 0.4 | $100.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/4/2019 | ZP | $250.00 | Email to/from DM re: DPS6 parking lock system. | 0.3 | $75.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.1 |
| 4/4/2019 | ZP | $250.00 | Emails to DPS6 team on Resnick hot docs folder. | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.0 | 0.1 | $0.00 | $25.00 | 0.0 |
| 4/4/2019 | ZP | $250.00 | Emails to/from Truong at ILS re: Resnick Hot Docs. | 0.2 | $50.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 4/4/2019 | ZP | $250.00 | Call with GA re: DPS6 Review and resnick docs. | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.0 | $25.00 | $0.00 | 0.0 |
| 4/5/2019 | ZP | $250.00 | DPS6 review and second pass on hot docs. | 2.1 | $525.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 1.1 |
| 4/5/2019 | ZP | $250.00 | Reviewed Chris Kwas documents. | 1.8 | $450.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.8 |
| 4/5/2019 | ZP | $250.00 | Meeting with Bicoastal team for DPS6. | 1.1 | $275.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.4 |
| 4/6/2019 | ZP | $250.00 | Research into dangerous dps6 youtuber. | 0.2 | $50.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/6/2019 | ZP | $250.00 | Email to ILS about merging repositories. | 0.2 | $50.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 4/6/2019 | ZP | $250.00 | Emails to/from DK and RH re: dps6. | 0.2 | $50.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 4/6/2019 | ZP | $250.00 | Meeting with entire DPS6 team and trial counsel. | 2.6 | $650.00 | 0.6 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.0 |
| 4/7/2019 | ZP | $250.00 | Emails to/from Kiesel re: docs. | 0.2 | $50.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 4/7/2019 | ZP | $250.00 | Email to AL/GL/DM re: overla review. | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.0 | 0.1 | $0.00 | $25.00 | 0.0 |
| 4/7/2019 | ZP | $250.00 | Emails to Russ/AM re: background checks. | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.0 | $25.00 | $0.00 | 0.0 |
| 4/8/2019 | ZP | $250.00 | Email to GA re: setting up exhibit list. | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.0 | 0.1 | $0.00 | $25.00 | 0.0 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/8/2019 | ZP | $250.00 | Emails re: Overla Notes. | 0.2 | $50.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 4/8/2019 | ZP | $250.00 | Emails to/from Truong re: merging of ILS repositories. | 0.3 | $75.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.1 |
| 4/8/2019 | ZP | $250.00 | Forwarded Bicoastal email to RH/GA/DK. | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.0 | $25.00 | $0.00 | 0.0 |
| 4/8/2019 | ZP | $250.00 | Email to team re: DPS6 Overla notes. | 0.3 | $75.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.1 |
| 4/9/2019 | ZP | $250.00 | Email to Truong re: account set-up. | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.0 | 0.1 | $0.00 | $25.00 | 0.0 |
| 4/9/2019 | ZP | $250.00 | Email to ST re: Micale. | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.0 | $25.00 | $0.00 | 0.0 |
| 4/11/2019 | ZP | $250.00 | Meeting with RH, DK, GA re: DPS6 docs | 1.6 | $400.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 0.4 |
| 4/11/2019 | RK | $425.00 | Reviewed memo status conference, conferred with staff regarding timely motions for relief | 1.8 | $765.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $127.50 | $127.50 | 1.2 |
| 4/12/2019 | SS | $225.00 | Reviewed Status Conference Hearing Results | 0.1 | $22.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.0 | 0.1 | $0.00 | $22.50 | 0.0 |
| 4/15/2019 | ZP | $250.00 | Organized deposition folders on server and cross referenced prior exhibits with new final exhibit list. | 1.8 | $450.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.8 |
| 4/15/2019 | RH | $450.00 | Confer with liaison counsel re cases with pending motions to amend, and common issues to be resolved in JCCP | 0.2 | $90.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/17/2019 | SS | $225.00 | Prepped for Hamm Depo | 6.5 | $1,462.50 | 1.0 | starts 9/10/20 | starts 8/6/21 | 0.9 | 0.9 | $202.50 | $202.50 | 3.7 |
| 4/17/2019 | SS | $225.00 | Travel to Michigan for Hamm Depo | 5.5 | $1,237.50 | 1.0 | starts 9/10/20 | starts 8/6/21 | 0.9 | 0.9 | $202.50 | $202.50 | 2.7 |
| 4/17/2019 | RH | $450.00 | MagMoss and pleading amendment research - review all complaints, pleading / docket histories, etc. in IDP cases; confer with KM, Lorena, et al re Mag Moss dismissals and unresolved pleadings | 1.5 | $675.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $225.00 | $225.00 | 0.5 |
| 4/18/2019 | SS | $225.00 | Travel back to L.A. | 5.5 | $1,237.50 | 1.0 | starts 9/10/20 | starts 8/6/21 | 0.9 | 0.9 | $202.50 | $202.50 | 2.7 |
| 4/18/2019 | SS | $225.00 | Deposition of Tom Hamm | 9.5 | $2,137.50 | 1.5 | starts 9/10/20 | starts 8/6/21 | 1.3 | 1.3 | $292.50 | $292.50 | 5.4 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/19/2019 | ALM | $350.00 | Meeting with Russ: discussed whether amending Plaintiff's complaint to include fraud against dealership | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $35.00 | $35.00 | 0.0 |
| 4/22/2019 | SS | $225.00 | Worked on DPS6 Doc Review | 5.5 | $1,237.50 | 0.9 | starts 9/10/20 | starts 8/6/21 | 0.7 | 0.7 | $157.50 | $157.50 | 3.2 |
| 4/22/2019 | ZP | $250.00 | Reviewed updated deponent schedule, emailed to LAU. | 0.3 | $75.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 4/22/2019 | ZP | $250.00 | Emails to/from ST/PK re: further deponent approval. | 0.2 | $50.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/22/2019 | ZP | $250.00 | Read emails from RH/GA re: hot docs. | 0.3 | $75.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.1 |
| 4/22/2019 | ZP | $250.00 | Emails to/from GA re: list of exhibits used in depositions so far. | 0.3 | $75.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/22/2019 | ZP | $250.00 | Call with Paul Kiesel re: items to complete for deposition. | 0.2 | $50.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/22/2019 | LAU | $425.00 | Meeting with Maye regarding upcoming trial schedule. | 1.0 | $425.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $127.50 | $127.50 | 0.4 |
| 4/22/2019 | LAU | $425.00 | Telephone call with Z. Powell regarding updates on DPS6 depositions; discussion re: staffing of upcoming depositions; discussion re: ongoing document review. | 2.0 | $850.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $170.00 | $170.00 | 0.8 |
| 4/22/2019 | RH | $450.00 | Review cases with open / unresolved pleading issues; emails with Nicole Ramirez, other liaison and staff counsel, re issues to discuss prior to status conference | 1.0 | $450.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $135.00 | $135.00 | 0.4 |
| 4/23/2019 | SS | $225.00 | Worked on DPS6 Doc Review | 4.5 | $1,012.50 | 0.9 | starts 9/10/20 | starts 8/6/21 | 0.9 | 0.9 | $202.50 | $202.50 | 1.8 |
| 4/23/2019 | RH | $450.00 | Prepare opposition to 7th Add On Petition | 4.5 | $2,025.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.6 | 0.6 | $270.00 | $270.00 | 3.3 |
| 4/24/2019 | SS | $225.00 | Worked on DPS6 Doc Review | 3.4 | $765.00 | 0.7 | starts 9/10/20 | starts 8/6/21 | 0.6 | 0.6 | $135.00 | $135.00 | 1.5 |
| 4/25/2019 | ZP | $250.00 | Follow-up email re: exhibit number renumbering to SS/SM. | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.0 | $25.00 | $0.00 | 0.0 |
| 4/25/2019 | ZP | $250.00 | Email strings with team re: overlapping exhibit numbers. | 0.4 | $100.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.2 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/25/2019 | ZP | $250.00 | Met with Sean Macias, Ken Stern and Michael Resnick for dinner and post-deposition discussion, as well as preparation for Kara Kennedy Deposition to commence 4/26. | 2.1 | $525.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.3 |
| 4/25/2019 | ZP | $250.00 | Cleared the room of all documents used in Chris Kwas deposition, reorganized and filed away for future use or shredding. | 0.5 | $125.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.3 |
| 4/25/2019 | ZP | $250.00 | Supported Chris Kwas deposition via document pulls and research. | 4.8 | $1,200.00 | 0.8 | starts 9/10/20 | starts 8/6/21 | 0.8 | 0.8 | $200.00 | $200.00 | 2.4 |
| 4/25/2019 | ZP | $250.00 | Prepared for Chris Kwas deposition with Paul and Russ. | 4.6 | $1,150.00 | 0.6 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 3.0 |
| 4/29/2019 | SS | $225.00 | DPS6 Doc Review | 1.2 | $270.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $90.00 | $90.00 | 0.4 |
| 4/29/2019 | SS | $225.00 | Meeting with Russ to Discuss how to handle Gary Nichols Depo | 0.6 | $135.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.3 | USED UP | $67.50 | n/a | 0.0 |
| 4/29/2019 | ZP | $250.00 | Emails to/from AM/RH re: meeting with Stern Law. | 0.4 | $100.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.2 |
| 4/30/2019 | SS | $225.00 | DPS6 Doc Review | 2.5 | $562.50 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $112.50 | $112.50 | 1.0 |
| 4/30/2019 | ZP | $250.00 | Continued to label exhibits and cull for shredding. Broke down remaining nonessential equipment to be transported. | 3.9 | $975.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 2.9 |
| 4/30/2019 | ZP | $250.00 | Labeled exhibits for depositions. | 2.8 | $700.00 | 0.6 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.2 |
| 5/1/2019 | SS | $225.00 | DPS6 Doc Review | 9.5 | $2,137.50 | 1.5 | starts 9/10/20 | starts 8/6/21 | 1.3 | 1.3 | $292.50 | $292.50 | 5.4 |
| 5/2/2019 | SS | $225.00 | DPS6 Doc Review | 6.5 | $1,462.50 | 1.5 | starts 9/10/20 | starts 8/6/21 | 1.3 | 1.3 | $292.50 | $292.50 | 2.4 |
| 5/3/2019 | SS | $225.00 | DPS6 Doc Review | 2.8 | $630.00 | 0.7 | starts 9/10/20 | starts 8/6/21 | 0.7 | 0.7 | $157.50 | $157.50 | 0.7 |
| 5/3/2019 | ZP | $250.00 | Emails to/from co-counsel regarding boardroom reservations. | 0.3 | $75.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.1 |
| 5/4/2019 | ZP | $250.00 | Renumbered deposition exhibits and saved to file. | 2.4 | $600.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.6 |
| 5/5/2019 | ZP | $250.00 | Met with SM and PK for dinner to discuss deposition going forward 5/6 and 5/7 and BC's document review. | 3.2 | $800.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 2.4 |

Case 2:18-ml-02814-AB-PVC Document 1638-2 Filed 09/11/24 Page 72 of 417 Page ID #:67213

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/6/2019 | SS | $225.00 | Located TSBs and corresponding exhibits numbers | 1.4 | $315.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $67.50 | $67.50 | 0.4 |
| 5/6/2019 | RH | $450.00 | Review status of Arnelle and Secules settlements / dismissals in advance of OSC hearings | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |
| 5/6/2019 | RH | $450.00 | Confer with liaison & RK re several issues for upcoming status conference -- fee motion orders, cases with unresolved pleading issues, pretrial scheduling proposals | 0.5 | $225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.3 |
| 5/8/2019 | SS | $225.00 | DPS6 Documents Review | 2.8 | $630.00 | 0.6 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $112.50 | $112.50 | 1.2 |
| 5/8/2019 | ZP | $250.00 | Continued preparation for deposition of Piero Aversa with RH, printed and tabbed exhibits. | 4.8 | $1,200.00 | 0.8 | starts 9/10/20 | starts 8/6/21 | 0.8 | 0.8 | $200.00 | $200.00 | 2.4 |
| 5/9/2019 | ZP | $250.00 | Prepared for, printed documents for, supported and seconded deposition of Piero Aversa. | 9.7 | $2,425.00 | 1.6 | starts 9/10/20 | starts 8/6/21 | 1.3 | 1.3 | $325.00 | $325.00 | 5.5 |
| 5/10/2019 | RH | $450.00 | Confer with liaison & RK re several issues for upcoming status conference -- fee motion orders, cases with unresolved pleading issues, pretrial scheduling proposals | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.1 |
| 5/13/2019 | ZP | $250.00 | Sorted documents from use in early April depositions for destruction, tabbed exhibits to be used in future depositions, sorted into separate boxes and labeled for use by deposing attorneys. | 2.6 | $650.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.3 |
| 5/13/2019 | ZP | $250.00 | Emails to/from court reporters regarding exhibits used in each deposition. | 0.3 | $75.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/13/2019 | ZP | $250.00 | Updated exhibit list, Master Exhibit List spreadsheet, final exhibit list folder and own tracking chart of exhibits used in each deposition. | 1.7 | $425.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.7 |
| 5/13/2019 | RH | $450.00 | Prepare for and attend status conference | 3.0 | $1,350.00 | 1.0 | starts 9/10/20 | starts 8/6/21 | 1.0 | 1.0 | $450.00 | $450.00 | 0.0 |
| 5/14/2019 | SS | $225.00 | Assigned exhibit numbers to documents intended to be used at deposition | 0.8 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $45.00 | $45.00 | 0.4 |
| 5/14/2019 | SS | $225.00 | Complied CRC exhibits and other ones routinely used with Jake Doss in other cases (including 6.0's) | 1.4 | $315.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $90.00 | $90.00 | 0.6 |

Knight Law Group, LLP
Invoice



| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/14/2019 | ZP | $250.00 | Performed background research and document review on Ernie DeVincent as an individual an d Ford employee. | 4.8 | $1,200.00 | 0.8 | starts 9/10/20 | starts 8/6/21 | 0.8 | 0.8 | $200.00 | $200.00 | 2.4 |
| 5/16/2019 | SS | $225.00 | Worked on drafting RFG's | 4.5 | $1,012.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.6 | 0.6 | $135.00 | $135.00 | 3.3 |
| 5/16/2019 | ZP | $250.00 | Policed documents up from deposition room and sorted into shred and reuse boxes, retabbbed and filed according to number. | 1.5 | $375.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 0.5 |
| 5/16/2019 | ZP | $250.00 | Continued research on Ernest DeVincent. | 0.7 | $175.00 | 0.7 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/17/2019 | ZP | $250.00 | Call with LAU re: exhibit list | 0.1 | $25.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/17/2019 | ZP | $250.00 | Put together initial draft of exhibit list with notes, descriptions of usefulness of document and indices. Highlighted all documents for relevance. | 8.3 | $2,075.00 | 1.6 | starts 9/10/20 | starts 8/6/21 | 1.3 | 1.3 | $325.00 | $325.00 | 4.1 |
| 5/20/2019 | SS | $225.00 | Gathered Jake Doss Exhibits | 1.3 | $292.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $90.00 | $90.00 | 0.5 |
| 5/20/2019 | ZP | $250.00 | Deponent research and document review. | 7.5 | $1,875.00 | 1.5 | starts 9/10/20 | starts 8/6/21 | 1.5 | 1.5 | $375.00 | $375.00 | 3.0 |
| 5/31/2019 | RH | $450.00 | Prepare memorandum to file re outcome of status conference | 0.3 | $135.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |
| 6/4/2019 | ZP | $250.00 | Worked on deposition document chart. | 5.7 | $1,425.00 | 1.4 | starts 9/10/20 | starts 8/6/21 | 1.1 | 1.1 | $275.00 | $275.00 | 2.1 |
| 6/4/2019 | RH | $450.00 | Review issues of potential amendment of complaints to add dealer fraud claims; Meet with SBM re same | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |
| 6/5/2019 | ZP | $250.00 | Compiled documents for Master Exhibit List for use with experts. | 4.1 | $1,025.00 | 0.7 | starts 9/10/20 | starts 8/6/21 | 0.6 | 0.6 | $150.00 | $150.00 | 2.2 |
| 6/6/2019 | ZP | $250.00 | Continued to edit Master Exhibit List excel spreadsheet for use in trial and to prep experts. | 3.3 | $825.00 | 0.6 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.7 |
| 6/7/2019 | RH | $450.00 | Confer with liaison & co-counsel re "stays of proceedings" and arguments about the 5-year rule applying to our cases | 0.3 | $135.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |
| 6/10/2019 | ZP | $250.00 | Further work on excel spreadsheet for DPS6 trial exhibits. | 1.5 | $375.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.6 |
| 6/10/2019 | ZP | $250.00 | Worked on excel spreadsheet for DPS6 trial exhibits. | 2.7 | $675.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.4 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/10/2019 | RH | $450.00 | Confer with defense counsel re scheduling for PMK depositions | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.0 | 0.1 | $0.00 | $45.00 | 0.0 |
| 6/10/2019 | RH | $450.00 | Confer with liaison counsel re proposed "case management schedule", trial selections, 5-year deadline issues, and contents of court orders | 0.5 | $225.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.1 |
| 6/11/2019 | RH | $450.00 | Review Ford's last minute, ambush "status report"; legal research; communications with liaison counsel re Ford's position concerning "early discovery cutoff dates" which is an illegal request | 2.5 | $1,125.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $225.00 | $225.00 | 1.0 |
| 6/12/2019 | RK | $425.00 | Reviewed and responded in advance of hearing to back and forth correspondence between co-counsel re meeting and conferring re issues of trial management to be addressed with opposing counsel | 0.5 | $212.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $42.50 | $42.50 | 0.3 |
| 6/12/2019 | RH | $450.00 | Review Ford's last minute, ambush "status report"; outline response and prepare language for inclusion in responsive status report filing and also prepare materials for hearing/status conference; legal research; travel to and from and attend status confer | 6.5 | $2,925.00 | 1.2 | starts 9/10/20 | starts 8/6/21 | 1.0 | 1.0 | $450.00 | $450.00 | 3.3 |
| 6/14/2019 | ZP | $250.00 | Reviewed George A.'s notes on newly introduced documents, reviewed Marentic files. | 1.8 | $450.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.8 |
| 6/14/2019 | ZP | $250.00 | Second pass review of documents in excel spreadsheet for missing quotes/highlighting. | 2.7 | $675.00 | 0.6 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.1 |
| 6/17/2019 | RH | $450.00 | Review KM chart/emails re meet/confer on 5-year deadlines | 0.2 | $90.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | USED UP | 0.1 | n/a | $45.00 | 0.0 |
| 6/18/2019 | LAU | $425.00 | Meeting regarding status of deposition scheduling and outstanding projects | 3.0 | $1,275.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $212.50 | $212.50 | 1.5 |
| 6/18/2019 | RH | $450.00 | Prepare correspondence to Ford about meet/confer for MJOPs | 0.8 | $360.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $90.00 | $90.00 | 0.4 |
| 6/18/2019 | RK | $425.00 | Meeting with attorneys, Kiesel Law and CLR re discovery and trial strategies | 1.0 | $425.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $127.50 | $127.50 | 0.4 |
| 6/21/2019 | RH | $450.00 | Confer with LAU & other staff attorneys, and with various staff, and with PLLC, re 5-year deadlines in IDP cases | 0.5 | $225.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.1 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/21/2019 | RH | $450.00 | Review filing requirements in So Cal JCCP (LA Complex) for amended / redacted complaints; review status of all IDP cases requiring FAC's to be prepared / filed; confer with various staff re same | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.1 |
| 6/24/2019 | ALM | $350.00 | Meeting with Lauren/Russ: discussed selecting bellweather cases for trial | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $35.00 | $35.00 | 0.0 |
| 6/25/2019 | ZP | $250.00 | Edits to exhibit chart for use in DPS6 trials. | 1.8 | $450.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 1.2 |
| 6/27/2019 | ZP | $250.00 | Replied to ST email re: Doc Review. | 0.3 | $75.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.1 |
| 6/27/2019 | LAU | $425.00 | Prepared for meeting regarding outstanding assignments. | 1.5 | $637.50 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $127.50 | $127.50 | 0.6 |
| 6/27/2019 | LAU | $425.00 | Meeting regarding outstanding assignments on JCCP litigation; review of outstanding discovery issues. | 3.5 | $1,487.50 | 0.7 | starts 9/10/20 | starts 8/6/21 | 0.7 | 0.7 | $297.50 | $297.50 | 1.4 |
| 6/27/2019 | RK | $425.00 | Meeting with P. Kiesel, S. Mikhov, M. Cypers, L. Ungs, S. Taft and N. Ramirez re litigation strategy (split with MDL) | 0.8 | $340.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $85.00 | $85.00 | 0.4 |
| 6/28/2019 | RH | $450.00 | Confer with co-counsel / PLLC re trial picks | 1.0 | $450.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $135.00 | $135.00 | 0.4 |
| 7/1/2019 | ZP | $250.00 | Reviewed expert report and located missing documents from exhibit list. | 1.7 | $425.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 1.1 |
| 7/2/2019 | ZP | $250.00 | Worked on Master Exhibit and Doc Review spreadsheet updates and separation by category. | 3.9 | $975.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 2.9 |
| 7/5/2019 | ZP | $250.00 | Meeting with ILS re: doc review. | 1.1 | $275.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.4 |
| 7/12/2019 | ZP | $250.00 | Reviewed ILS team's reviewed docs and notes. | 2.8 | $700.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.6 |
| 7/12/2019 | ZP | $250.00 | Meeting with ILS doc review team and follow-up notes. | 1.0 | $250.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.4 |
| 7/12/2019 | ZP | $250.00 | Emails to/from ST/RH re: Michigan depositions. | 0.3 | $75.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 7/18/2019 | ZP | $250.00 | Began reviewing the reviewer batch notes and pulling documents in ILS for Brian Wolfe, Mae Smith-Smitherman, Kim Pittel, Craig Renneker and Jennifer Jones depositions. | 3.7 | $925.00 | 0.6 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 2.1 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/18/2019 | RH | $450.00 | Confer with PLLC and prepare status report; detailed review of case files in all proposed plaintiff and FMC trial picks | 1.1 | $495.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $135.00 | $135.00 | 0.5 |
| 7/22/2019 | RH | $450.00 | Review Ford's motions to seal FAC's filed in So Cal JCCP; confer with CLR re same | 0.4 | $180.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.1 |
| 7/23/2019 | ZP | $250.00 | Reviewed the Ford Depo Prep batch notes and associated documents from ILS for Mae Smitherman-Smith. | 2.7 | $675.00 | 0.6 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.1 |
| 7/25/2019 | RH | $450.00 | Travel to and from, prepare for and attend status conference | 3.0 | $1,350.00 | 0.6 | starts 9/10/20 | starts 8/6/21 | 0.6 | 0.6 | $270.00 | $270.00 | 1.2 |
| 7/30/2019 | ALM | $350.00 | Meeting with Abdiel: discussed opposing counsel withdrawal of notices of taken deposition of Plaintiffs/demand for VI | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $35.00 | $35.00 | 0.0 |
| 8/1/2019 | ZP | $250.00 | Reviewed DPS6 notes from reviewers. | 0.8 | $200.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.2 |
| 8/2/2019 | RK | $425.00 | Reviewed Notice of Ruling re Trial dates and hearing schedules | 0.3 | $127.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $42.50 | $42.50 | 0.1 |
| 8/5/2019 | RH | $450.00 | Communication with Ford counsel re scheduling meet/confer on demurrers and motions to compel arbitration | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.0 | $45.00 | $0.00 | 0.0 |
| 8/6/2019 | ZP | $250.00 | Reviewed outstanding deposition batches for DPS6 litigation, confirmed we had document review summaries for each. | 0.8 | $200.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.2 |
| 8/8/2019 | ZP | $250.00 | Read new DFP article on Ford FoFi engineers. | 0.3 | $75.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 8/8/2019 | RH | $450.00 | Prepare joint statement re Ford's proposed demurrers and arbitration motions in IDP/trial cases | 1.9 | $855.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $135.00 | $135.00 | 1.3 |
| 8/9/2019 | RH | $450.00 | Prepare status conference report re proposed demurrers and arbitration motions; multiple communications with Ford and PLLC counsel re same | 2.8 | $1,260.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $225.00 | $225.00 | 1.8 |
| 8/12/2019 | RH | $450.00 | Exchange emails with Ford counsel and review/evaluate in detail, Ford's proposed documentary exhibits to support motions to compel arbitration | 0.9 | $405.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $135.00 | $135.00 | 0.3 |



Case 2:25-cv-01251-AB-AYP Document 39-5 Filed 07/11/25 Page 77 of 97 Page ID #:3382

Knight Law Group, LLP
Invoice



| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/13/2019 | RH | $450.00 | Prepare for and attend hearing / informal conference re: Ford's proposed demurrers and motions to compel arbitration in trial cases (travel split with MDL hearing) | 2.1 | $945.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $180.00 | $180.00 | 1.3 |
| 8/15/2019 | LAU | $425.00 | Scheduled meeting regarding updates on outstanding issues with steering committee. | 0.2 | $85.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $42.50 | $42.50 | 0.0 |
| 8/15/2019 | LAU | $425.00 | Telephone call with F. Heather and A. Solis regarding Bill Ickes. | 0.3 | $127.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $42.50 | $42.50 | 0.1 |
| 8/16/2019 | RK | $425.00 | Ford litigation strategy meeting with co-counsels | 0.3 | $127.50 | 0.3 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 8/19/2019 | ALM | $350.00 | Read and reviewed court's tentative ruling on Plaintiff's MTC deposition of Defendant's PMK | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $35.00 | $35.00 | 0.1 |
| 8/19/2019 | ZP | $250.00 | Began pulling together hot docs for DPS6 meeting. | 2.6 | $650.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.3 |
| 8/20/2019 | ZP | $250.00 | Prepared for and attended DPS6 meeting. | 2.1 | $525.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 0.8 |
| 8/21/2019 | RH | $450.00 | Exchange emails with Ford counsel re briefing and hearing schedule on omnibus demurrers; review and evaluate scheduling proposals and likely issues | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |
| 8/26/2019 | ZP | $250.00 | Emails to/from RH and GA re: 30b6 depo categories. | 0.6 | $150.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.2 |
| 8/26/2019 | ZP | $250.00 | Electronic Field Communication and Sync/MyTouch research in the document repository to prepare for 30b6 deposition on advertising. | 2.5 | $625.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.5 |
| 8/28/2019 | ZP | $250.00 | Compiled document list for deposition of Amy Marentic, saved to file, gave exhibit numbers, added copies to master list with all identifying information and circulated to co-counsel. | 0.8 | $200.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.2 |
| 8/28/2019 | RH | $450.00 | Draft opposition to motion to compel arbitration (filed in several cases, omnibus) | 3.0 | $1,350.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.6 | 0.6 | $270.00 | $270.00 | 1.8 |
| 8/28/2019 | RH | $450.00 | Review message board post re: schedule for demurrer briefing, cross check email correspondence, confer with staff re calendaring | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |



Case 2:25-cv-04251-AB-MAA Document 69-4 Filed 06/20/25 Page 73 of 97 Page ID #:3366

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/3/2019 | RH | $450.00 | Prepare consolidated opposition to FMC's motions to compel arbitration (Jordan, Goyzueta, Larson, Ralph) | 11.0 | $4,950.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 1.5 | 1.5 | $675.00 | $675.00 | 8.0 |
| 9/4/2019 | DK | $250.00 | Assisted RH in preparation of opposition to Ford's motion to compel arbitration, and conferred with RH re same | 3.6 | $900.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 2.6 |
| 9/10/2019 | ZP | $250.00 | Reviewed documents in exhibit list for initial filing | 2.1 | $525.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.3 |
| 9/12/2019 | ZP | $250.00 | Reviewed documents from DPS6 exhibit list used in Myers and Franklin to verify usefulness for trial. | 1.8 | $450.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 1.2 |
| 9/12/2019 | ZP | $250.00 | Emails to/from Stephanie Taft re: status of stip to authentication of 1600 docs. | 0.5 | $125.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.2 |
| 9/12/2019 | ZP | $250.00 | Emails to/from Lance Rubin re: status of deposition videos. | 0.3 | $75.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 9/12/2019 | ZP | $250.00 | Drafted to-do list and sent email to RK and rest of DPS6 team in KLG. | 0.4 | $100.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | 0.2 | USED UP | $50.00 | n/a | 0.0 |
| 9/12/2019 | RH | $450.00 | Review draft joint report for status conference | 0.3 | $135.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |
| 9/13/2019 | ZP | $250.00 | Broke down list of completed deponents, incomplete deponenets, apex depositions and 30b6 in order of usefuleness. | 1.2 | $300.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 0.4 |
| 9/13/2019 | ZP | $250.00 | Emails to/from ST and RH re: Percepta docs. | 0.3 | $75.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 9/13/2019 | RH | $450.00 | Exchange emails with PLLC re status conference report and preparation for status conference | 1.1 | $495.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $90.00 | $90.00 | 0.4 |
| 9/14/2019 | RH | $450.00 | Review draft status conference report and exchange emails with PLLC re same | 0.4 | $180.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.1 |
| 9/16/2019 | ZP | $250.00 | Reviewed DPS6 trial exhibits used in Myers and prepped for Franklin to create short list. | 2.5 | $625.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.0 |
| 9/17/2019 | ZP | $250.00 | Reviewed Amy Marentic depositions for exhibit numbers and bates numbers of Source Books, Frontline Magazines and brochures. | 1.3 | $325.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.6 |
| 9/17/2019 | ZP | $250.00 | Reviewed deposition calendars going back 4.5 months for DPS6 depos to verify all depositions accounted for in video and transcript logs. | 1.2 | $300.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.6 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/17/2019 | ZP | $250.00 | Identified problems in Master Exhibit List and missing documents to pull from deposition folders, fixed the errors. | 2.3 | $575.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.5 |
| 9/20/2019 | ZP | $250.00 | Edited working list of exhibits for DPS6 litigation, culled to level of documents intended to be introduced at trials after careful review of each document's contents. | 3.1 | $775.00 | 0.7 | starts 9/10/20 | starts 8/6/21 | 0.6 | 0.6 | $150.00 | $150.00 | 1.2 |
| 9/22/2019 | ZP | $250.00 | Continued review of documents used more than once in DPS6 depositions to prepare designations of deponent testimony. | 1.3 | $325.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.6 |
| 9/22/2019 | ZP | $250.00 | Reviewed documents used more than once in deposition, approximately 55, and compiled list of depositions to cross-reference with each document for relevant testimony. | 3.7 | $925.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 2.4 |
| 9/23/2019 | ZP | $250.00 | Extracted documents to utilize that have been authenticated by Ford in their agreement. | 0.8 | $200.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.2 |
| 9/23/2019 | ZP | $250.00 | Created short list of documents for Resnick's review. | 0.6 | $150.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.2 |
| 9/24/2019 | ZP | $250.00 | Identified all 34 documents previously unused from CLR's short list, assigned exhibit numbers in master exhibit spreadsheet and circulated. | 2.0 | $500.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.2 |
| 9/24/2019 | ZP | $250.00 | Compiled list of all CLR and KLG documents on short lists, as well as all documents discussed in meeting with Kiesel, circulated in email. | 1.5 | $375.00 | 1.5 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 9/24/2019 | ZP | $250.00 | Prepared Master Exhibit List culled down to documents used by deponent with each deponent represented. | 3.5 | $875.00 | 0.7 | starts 9/10/20 | starts 8/6/21 | 0.7 | 0.7 | $175.00 | $175.00 | 1.4 |
| 9/24/2019 | ZP | $250.00 | Meeting with attorney regarding documents to use in new exhibit list for trials. | 3.2 | $800.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.9 |
| 9/24/2019 | ZP | $250.00 | Prepared for meeting with trial counsel regarding documents to introduce in new exhibit list. Compiled existing exhibits with or without applicable deposition testimony. | 4.7 | $1,175.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.6 | 0.6 | $150.00 | $150.00 | 3.5 |
| 9/25/2019 | ZP | $250.00 | Reviewed 34 documents and excerpted descriptors of each to forward to trial counsel to edit exhibit list. | 2.9 | $725.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.9 |



Case 2:25-cv-07251-AB-AGR Document 39-5 Filed 08/22/25 Page 80 of 91 Page ID #:2088

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/25/2019 | ZP | $250.00 | Worked on admissibility chart to be combined with/used to support admissibility brief in all DPS6 cases; reviewed portions of 15 depositions to prepare. | 2.7 | $675.00 | 0.9 | starts 9/10/20 | starts 8/6/21 | 0.9 | 0.9 | $225.00 | $225.00 | 0.0 |
| 9/26/2019 | ZP | $250.00 | Reviewed 14 documents in their entirety for potential hearsay exceptions. | 1.3 | $325.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.3 |
| 9/26/2019 | ZP | $250.00 | Worked on admissibility chart to be combined with/used to support admissibility brief. | 3.4 | $850.00 | 0.7 | starts 9/10/20 | starts 8/6/21 | 0.6 | 0.6 | $150.00 | $150.00 | 1.5 |
| 9/27/2019 | ZP | $250.00 | Re-reviewed deposition lists for accuracy on document production in each, corrected all errors found in the master list. | 1.3 | $325.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.6 |
| 9/28/2019 | ZP | $250.00 | Reviewed 17 hot docs for hearsay exceptions and applicable deposition testimony supporting admissibility. | 2.9 | $725.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 1.9 |
| 9/30/2019 | ZP | $250.00 | Worked on Ford DPS6 admissibility and exhibit list spreadsheet. | 2.6 | $650.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 1.6 |
| 10/1/2019 | ZP | $250.00 | Meeting with Frank Kelly on admissibility; BA, PK, RK and ST also in attendance. | 4.5 | $1,125.00 | 0.8 | starts 9/10/20 | starts 8/6/21 | 0.7 | 0.7 | $175.00 | $175.00 | 2.3 |
| 10/1/2019 | RH | $450.00 | Travel to and from, and prepare for and attend supplemental hearing on Ford's motions to compel arbitration (Jordan, Goyzueta, Larson, Ralph) | 4.9 | $2,205.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.7 | 0.7 | $315.00 | $315.00 | 3.5 |
| 10/2/2019 | ZP | $250.00 | Searched for and identified missing documents from CLR's notes for Maite's opp to MSJ filing. | 2.4 | $600.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.6 |
| 10/2/2019 | ZP | $250.00 | Gathered documents for Stephanie Taft to use in relationship to customer perception and communications to dealerships. | 2.6 | $650.00 | 0.6 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.0 |
| 10/3/2019 | ZP | $250.00 | Edited CLR/KLG spreadsheet for hot docs admissibility. | 2.6 | $650.00 | 0.6 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.0 |
| 10/4/2019 | ZP | $250.00 | Edited deposition designations for admissibility of DPS6 documents and foundational testimony. | 1.9 | $475.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.9 |
| 10/7/2019 | ZP | $250.00 | Created file with 3001-3034 Exhibits, reviewed all and added to short list. | 1.9 | $475.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.9 |
| 10/8/2019 | ZP | $250.00 | Reviewed master exhibit list and culled dupes after adding in missing documents from Kiesel Law depositions. | 2.3 | $575.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.0 |
| 10/9/2019 | ZP | $250.00 | Reorganized hard copies of Ford doc printouts for DPS6 litigation. | 1.6 | $400.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 1.0 |



Case 2:18-cv-07235-AB-AFM Document 39-51 Filed 06/20/25 Page 71 of 91 Page ID #:2080

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/10/2019 | ZP | $250.00 | Edited DPS6 master exhibit spreadsheet and document IDs while power was out. | 1.5 | $375.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 0.5 |
| 10/10/2019 | ZP | $250.00 | Located documents for Focus grind/rattle for Diba Alemi. | 0.6 | $150.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.2 |
| 10/10/2019 | ZP | $250.00 | Located and compiled all FoFi TSBs in one location on document server for RH. | 0.7 | $175.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.0 |
| 10/11/2019 | ZP | $250.00 | Reviewed 18 GETRAG documents produced by Ford, compared and fit into rubric for DPS6 cases and made note of witnesses to use with at trial. | 4.1 | $1,025.00 | 0.7 | starts 9/10/20 | starts 8/6/21 | 0.6 | 0.6 | $150.00 | $150.00 | 2.2 |
| 10/11/2019 | ZP | $250.00 | Reviewed 21 GETRAG documents produced by Ford, compared and fit into rubric for DPS6 cases and made note of witnesses to use with at trial. | 4.7 | $1,175.00 | 0.8 | starts 9/10/20 | starts 8/6/21 | 0.7 | 0.7 | $175.00 | $175.00 | 2.5 |
| 10/14/2019 | ZP | $250.00 | Reorganized documents per discussion with CU and BA, began edits to new exhibit list spreadsheet. | 2.5 | $625.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.5 |
| 10/14/2019 | ZP | $250.00 | Email to RH re: testimony on docs for the components returned issue. | 0.1 | $25.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/14/2019 | ZP | $250.00 | Email to RH re: email strings on components returned to Ford. | 0.3 | $75.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/14/2019 | ZP | $250.00 | Met with Chris Urner and Bryan Altman regarding status of Ford cases, documents and plan going forward. | 2.8 | $700.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.8 |
| 10/16/2019 | RH | $450.00 | Review and evaluate Court's final order directing portions of claims into arbitration; internal meetings with co-counsel (PLLC and Knight partners) re effect, appealability, and next steps; review and evaluate Ford's omnibus demurrer and email to Ford cou | 1.9 | $855.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $135.00 | $135.00 | 1.3 |
| 10/17/2019 | RH | $450.00 | Review and respond to correspondence from Ford counsel re: proposals for what to do with demurrers following arbitration ruling | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |
| 10/21/2019 | ZP | $250.00 | Status updates on MG deposition designations, concerns, excerpts. | 0.3 | $75.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.1 |
| 10/21/2019 | ZP | $250.00 | Email to ST re: AIMS reports and what they are as well as how they're stored. | 0.5 | $125.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.1 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/21/2019 | ZP | $250.00 | Email to RK re: reasons for MG testimony designations. | 0.1 | $25.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/22/2019 | ZP | $250.00 | Continued work on hot docs distillation/admissibility argument breakdown. | 1.9 | $475.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.9 |
| 10/22/2019 | ZP | $250.00 | Completed all deposition designations and paring down to solely foundational testimony from full designation list. | 5.3 | $1,325.00 | 0.9 | starts 9/10/20 | starts 8/6/21 | 0.8 | 0.8 | $200.00 | $200.00 | 2.8 |
| 10/23/2019 | ZP | $250.00 | Reviewed Ford exhibit list in comparison with prior Ford list and Plaintiff's exhibit list. | 2.2 | $550.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 1.2 |
| 10/23/2019 | ZP | $250.00 | Prepared in part a distilled version of KLG's hot documents list separated by overarching trial narrative categories. | 2.7 | $675.00 | 0.6 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.1 |
| 10/23/2019 | RH | $450.00 | Review and exchange emails among RK, CT, SBM, ALM re cases ordered to arbitration and appellate issues | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.1 |
| 10/24/2019 | ZP | $250.00 | Edited chart for admissibility/document preparation; separating documents into trial narratives with usable quotes extracted. | 4.7 | $1,175.00 | 0.8 | starts 9/10/20 | starts 8/6/21 | 0.7 | 0.7 | $175.00 | $175.00 | 2.5 |
| 10/24/2019 | ZP | $250.00 | Uploading designations, large video files, counter-designations etc. to video editing service. | 2.1 | $525.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.3 |
| 10/25/2019 | ZP | $250.00 | Worked on admissibility brief and document distillation for DPS6 hot docs | 4.3 | $1,075.00 | 0.7 | starts 9/10/20 | starts 8/6/21 | 0.6 | 0.6 | $150.00 | $150.00 | 2.4 |
| 10/26/2019 | ZP | $250.00 | Worked between power outages on KLG-CLR Short List with Citations and Excerpts for BA's use at trial in Pedante and other DPS6 cases. | 4.2 | $1,050.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.6 | 0.6 | $150.00 | $150.00 | 3.0 |
| 10/28/2019 | ZP | $250.00 | Correspondence with KL in several emails re: smi mdb and cms files missing. | 0.4 | $100.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.2 |
| 10/29/2019 | ZP | $250.00 | Updated KLG/CLR short list with citations and excerpts, made new tabs. | 2.2 | $550.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.4 |
| 10/29/2019 | RH | $450.00 | Review & revise proposed stipulation and confer with Cindy Tobisman re research for writ petition concerning arbitration motions | 1.1 | $495.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $135.00 | $135.00 | 0.5 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/31/2019 | RH | $450.00 | Review status of dealership defendants in all coordinated cases; confer with CT re conflicts and preparation for filing writ petition regarding arbitration decision; review and revise draft stipulation re: demurrers and answers in trial and IDP cases | 1.4 | $630.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $180.00 | $180.00 | 0.6 |
| 10/31/2019 | ALM | $350.00 | Meeting with Russ: discussed email to Cindy re appealability of order compelling arbitration | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $35.00 | $35.00 | 0.0 |
| 11/1/2019 | RH | $450.00 | Revise/redline draft stipulation re Ford's omnibus demurrers; exchange emails with Ford counsel to meet/confer re same | 0.7 | $315.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $90.00 | $90.00 | 0.3 |
| 11/4/2019 | RH | $450.00 | Confer with OC re stipulation for demurrer schedules etc | 0.5 | $225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.3 |
| 11/12/2019 | RH | $450.00 | Confirm court approval of stipulation for rescheduling status conference; confer with Ford counsel and Knight staff re same | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |
| 11/13/2019 | RH | $450.00 | Confer with staff re availability of hearing transcripts re arbitration motion(s) | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |
| 11/19/2019 | RH | $450.00 | Aborted trip to DTLA for vacated hearing, including pointless review of Ford's motion to file under seal | 2.0 | $900.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $180.00 | $180.00 | 1.2 |
| 12/10/2019 | RH | $450.00 | Confer with PLLC re: expert disclosures, completion of depositions and expert discovery, dates for 402 hearing, motions to compel arbitration, MSJ deadlines, and means to resolve legal issues, in advance of meet/confer with Ford counsel | 0.8 | $360.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $90.00 | $90.00 | 0.4 |
| 12/10/2019 | RH | $450.00 | Review petition for writ of mandate from arbitration ruling; confer extensively with Cindy and Marc Poster re same | 4.0 | $1,800.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $225.00 | $225.00 | 3.0 |
| 12/11/2019 | ZP | $250.00 | Edited DPS6 exhibit list with changes from list saved for Quintero trial, reviewed documents numbered 3000+ for use in future trials. | 1.7 | $425.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 1.0 |
| 12/24/2019 | RH | $450.00 | Review and evaluate appellate court decision on petition for writ re arbitration order; memoranda to file | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.1 |
| 1/2/2020 | RH | $450.00 | Prepare template update letter to non-IDP plaintiffs | 0.5 | $225.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.1 |



Case 2:25-cv-07425 (overlapping, illegible stamp) Page ID #:24982

Ford Motor Warranty Cases

Knight Law Group, LLP
Invoice

JCCP 4856

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/8/2020 | RH | $450.00 | Prepare client status update letter for non-IDP cases | 0.6 | $270.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $90.00 | $90.00 | 0.0 |
| 1/9/2020 | RH | $450.00 | Conference with FMC counsel re scheduling and proposed continuances of trials, motions to compel arbitration, status of discovery in trial cases; conferences with PLLC to prepare for meeting and follow up on issues from the meeting | 1.5 | $675.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $225.00 | $225.00 | 0.5 |
| 1/9/2020 | RH | $450.00 | Review status of discovery in IDP and trial cases | 0.7 | $315.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $90.00 | $90.00 | 0.3 |
| 1/10/2020 | RH | $450.00 | Jordan, Goyzueta, Ralph, Larson, prepare NOD for FMC PMK (0.8); Jordan/Larson confer with staff re arrangements for rescheduled VI's following Ford cancellation (0.2); So Cal JCCP - emails with PLLC and CLR re upcoming status conference and issues to be a | 2.5 | $1,125.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $225.00 | $225.00 | 1.5 |
| 1/13/2020 | RH | $450.00 | Prepare for and attend status conference by CC; memoranda to file re same | 2.0 | $900.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $180.00 | $180.00 | 1.2 |
| 1/14/2020 | RH | $450.00 | Confer with PLLC/trial counsel and staff to work on scheduling vehicle inspection (time split with Larson) (0.4); order transcript of January 13 hearing (0.1); Exchange emails with Ford counsel re Jordan/Larson VI scheduling (0.1); prepare outcome emails | 5.0 | $2,250.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.7 | 0.7 | $315.00 | $315.00 | 3.6 |
| 1/14/2020 | RK | $425.00 | Reviewed memo from R. Higgins re results of status conference; meet with R. Higgins re status conference, strategy | 0.5 | $212.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $42.50 | $42.50 | 0.3 |
| 1/27/2020 | ZP | $250.00 | Reviewed hot docs list for Pedante and retooled chart for use at DPS6 meeting on 1/29. | 1.6 | $400.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 1.0 |
| 1/28/2020 | RK | $425.00 | Confer with R. Higgins re re issues to discuss with Court during conference call, confer with staff re same | 0.3 | $127.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $42.50 | $42.50 | 0.1 |
| 1/28/2020 | RK | $425.00 | Call with Court and Ford attorneys re scheduling; confer with R. Higgins re issues to discuss, confer withs staff re same | 0.5 | $212.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $42.50 | $42.50 | 0.3 |
| 1/28/2020 | RH | $450.00 | Prepare for and attend telephonic status conference with Court and co/defense counsel | 1.5 | $675.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $225.00 | $225.00 | 0.5 |



Case 2:25-cv-01524-BWA-KWR Document 39-5 Filed 06/06/25 Page 51 of 1097 Page ID #:19591

Case 2:25-cv-01251-AB-MAA Document 39-5 Filed 07/22/25 Page 76 of 1097 Page ID #:1934

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/16/2020 | ZP | $250.00 | Began task of reorganizing all DPS6 related documents on server, deleting the extraneous copies and synthesizing down to those used in trials | 2.2 | $550.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 1.5 |
| 3/16/2020 | ZP | $250.00 | Read trial transcript from Ambriz to determine useful MILs to draft. | 3.1 | $775.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 2.3 |
| 3/17/2020 | ZP | $250.00 | Put together admissibility chart template for depositions and reviewed all docs presented for examination in Aversa and part of Fields. | 2.4 | $600.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.2 |
| 3/17/2020 | ZP | $250.00 | Edited exhibit list for DPS6 cases, cut out dupes of list used in Ambriz and cross-referenced with trial transcript reviewed 3/16 to make changes and notes regarding stipulation/admission. | 2.4 | $600.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.6 |
| 3/18/2020 | ZP | $250.00 | Created new master exhibit folder with missing DPS6 exhibits from July depositions; cross-referenced with depositions for verification. | 1.9 | $475.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 1.2 |
| 3/18/2020 | ZP | $250.00 | Reviewed depositions to extract foundational testimony and enter into admissibility chart containing all exhibits regardless of whether they have been used, as well as breakdown of each document's contents. | 7.5 | $1,875.00 | 1.1 | starts 9/10/20 | starts 8/6/21 | 1.0 | 1.0 | $250.00 | $250.00 | 4.4 |
| 3/27/2020 | ZP | $250.00 | Came up with some categories for PMQ/PMK depos per RK's request during meeting. | 1.9 | $475.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.9 |
| 3/27/2020 | ZP | $250.00 | Identified possible admissions and SROGs for filing in DPS6 going forward. | 1.2 | $300.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 0.4 |
| 3/27/2020 | ZP | $250.00 | Used notes on discovery and foundation issues to come up with questions for discovery requests and categories for new depositions in JCCP. | 2.1 | $525.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 1.1 |
| 4/1/2020 | RK | $425.00 | Reviewed DPS6 case files, prepared notes and topics for discovery | 4.0 | $1,700.00 | 1.0 | starts 9/10/20 | starts 8/6/21 | 1.0 | 1.0 | $425.00 | $425.00 | 1.0 |
| 4/1/2020 | RK | $425.00 | Conference call meeting with attorneys re litigation strategy | 1.5 | $637.50 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $127.50 | $127.50 | 0.5 |
| 4/15/2020 | RK | $425.00 | Completed draft of written discovery, performed legal research | 2.5 | $1,062.50 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $212.50 | $212.50 | 1.0 |
| 4/15/2020 | RK | $425.00 | Meeting with attorneys re litigaiton strategy | 1.0 | $425.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $85.00 | $85.00 | 0.3 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/29/2020 | RH | $450.00 | Review email from FMC counsel re scheduling and confer with co-counsel | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |
| 5/1/2020 | ALM | $350.00 | Meeting with Russ: discussed email exchange between Paul Kiesel/court re upcoming video conference re hearings/trials | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $35.00 | $35.00 | 0.0 |
| 5/4/2020 | ZP | $250.00 | Call with CU on DPS6 project status and where to go on RFGs. | 0.4 | $100.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.2 |
| 5/4/2020 | ZP | $250.00 | Found and reviewed prior DPS6 RFG and 6.0L RFG templates to make changes. | 2.7 | $675.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.7 |
| 5/4/2020 | ZP | $250.00 | Worked on DPS6 master lists and changes from prior trial. | 2.5 | $625.00 | 0.6 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 0.9 |
| 5/4/2020 | ZP | $250.00 | Download of all DPS6 documents saved from trial and review of last status update for DPS6 to-do list. | 0.5 | $125.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.3 |
| 5/4/2020 | ZP | $250.00 | Call with CU to bring me up to speed on current status of ALG's DPS6 work. | 0.3 | $75.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.1 |
| 5/5/2020 | ZP | $250.00 | ILS research on high level executive/agency documents to supplement RFA for Diba/ALG. | 3.8 | $950.00 | 0.7 | starts 9/10/20 | starts 8/6/21 | 0.6 | 0.6 | $150.00 | $150.00 | 1.9 |
| 5/5/2020 | ZP | $250.00 | Reviewed Ambriz trial docs and edited templates for closing argument slides. | 2.7 | $675.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.7 |
| 5/6/2020 | ZP | $250.00 | Edited documents folder with new clean copies and edited Bates numbering. | 1.6 | $400.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 1.0 |
| 5/6/2020 | ZP | $250.00 | Searched for and identified/downloaded warranty manuals for use in RFG/RFAs. | 2.8 | $700.00 | 0.7 | starts 9/10/20 | starts 8/6/21 | 0.7 | 0.7 | $175.00 | $175.00 | 0.7 |
| 5/6/2020 | ZP | $250.00 | Identified and located clean copies in ILS of 30+ documents for ALG to use in RFG/RFAs. | 2.5 | $625.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.0 |
| 5/7/2020 | ZP | $250.00 | Located documents from Ford's answers missing from the original ILS production for DA to use in RFG/RFA. | 2.1 | $525.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 1.1 |
| 5/7/2020 | ZP | $250.00 | Began review of new batches for RFGs to go out in Martinez and other cases. | 2.0 | $500.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.2 |
| 5/8/2020 | ZP | $250.00 | Final review of RFG documents sent from ALG to be referred to in 3rd set of RFGs to Ford. | 2.2 | $550.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.4 |
| 5/8/2020 | ZP | $250.00 | Continued to categorize documents for next 3 sets of RFGs to be sent to Ford. | 1.8 | $450.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 1.2 |
| 5/12/2020 | RH | $450.00 | Confer with staff (AB) and attorneys re plaintiff and defense expert designations and deposition notices | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/20/2020 | RK | $425.00 | Meeting with atttorneys re strategy and discovery | 1.2 | $510.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $170.00 | $170.00 | 0.0 |
| 6/25/2020 | RK | $425.00 | Meeting with Plaintiff attorneys and Ford attorneys, A. Maclear, S. Hugret, A. Chang, K. Vilchez, A. Nassihi re expert and scheduling | 0.5 | $212.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $42.50 | $42.50 | 0.3 |
| 7/9/2020 | MC | $300.00 | Subpoena Duces Tecum research //Notice to consumer Research | 1.5 | $450.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $150.00 | $150.00 | 0.5 |
| 7/10/2020 | ALM | $350.00 | Meeting with Russ: discussed meet and confer with opposing counsel re deposition of Defendant's PMK in various cases | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $35.00 | $35.00 | 0.0 |
| 7/19/2020 | RK | $425.00 | Reviewed and revised letter to clients | 0.6 | $255.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $85.00 | $85.00 | 0.0 |
| 7/21/2020 | RH | $450.00 | Review correspondence from Ford counsel re status of responses (Santos, Ochoa, Brito, Garcia) and follow up with staff and clients re receipt of documents & verifications | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |
| 7/23/2020 | RK | $425.00 | Coordinated with J. Mukai re motions to quash subpoenas for expert records | 0.3 | $127.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $42.50 | $42.50 | 0.1 |
| 7/24/2020 | RH | $450.00 | Finalize correspondence re: non-IDP case updates; review master case lists and various spreadsheets re: IDP selections and status of cases | 0.6 | $270.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.3 |
| 7/24/2020 | RH | $450.00 | Review Ochoa verifications / production to upload | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |
| 7/29/2020 | RK | $425.00 | Attended trial strategy meeting | 1.0 | $425.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $127.50 | $127.50 | 0.4 |
| 8/25/2020 | NF | $250.00 | Attend further status conference via court call | 0.8 | $200.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.4 |
| 8/25/2020 | NF | $250.00 | Review joint status report in advance of further status conference | 0.4 | $100.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.2 |
| 9/14/2020 | ZP | $250.00 | Completed pull of Admit/Admit documents for RB review. | 1.3 | $325.00 | 0.0 | 0.4 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 0.1 |
| 9/14/2020 | ZP | $250.00 | Continued review of larger Excel and PPT files referring to PowerPoint and BoD search terms. | 1.5 | $375.00 | 0.3 | 0.3 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.3 |
| 9/14/2020 | ZP | $250.00 | Review of large PDF files and PPT files for purpose of identifying presentations used in BoD and QSF meetings. | 1.7 | $425.00 | 0.4 | 0.4 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.3 |



Case 2:25-cv-07425-AB-PVC Document 39-51 Filed 08/22/25 Page 88 of 174 Page ID #:2896

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/15/2020 | ZP | $250.00 | Continued reviewing 480 admitted stipulated BR documents for identification and relevance. | 2.3 | $575.00 | 0.5 | 0.5 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 0.5 |
| 9/15/2020 | ZP | $250.00 | Sorted admitted stipulated BR documents and made initial notes for identification and relevance in spreadsheet. | 1.7 | $425.00 | 0.4 | 0.4 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.3 |
| 9/21/2020 | ZP | $250.00 | Continued review of stipulated Ford documents and issue coded for relevance to particular deponents and topics. | 2.7 | $675.00 | 0.6 | 0.6 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 0.5 |
| 9/21/2020 | ZP | $250.00 | Reviewed stipulated Ford documents, issue coded for topics of relevance for trial and deponent. | 2.2 | $550.00 | 0.4 | 0.4 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.8 |
| 9/22/2020 | ZP | $250.00 | Started chronological ordering of documents to create timeline of presentations and meetings with high level Ford employees. | 1.4 | $350.00 | 0.0 | 0.4 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 0.2 |
| 9/22/2020 | ZP | $250.00 | Completed issue coding review of approximately 500 stipulated documents for relevance and use with deponents and topics for examination. | 2.1 | $525.00 | 0.0 | 0.4 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 0.9 |
| 9/22/2020 | ZP | $250.00 | Continued issue coding review of stipulated FoFi documents, coded for relevance to deponent and topics for examination. | 2.9 | $725.00 | 0.0 | 0.5 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.4 |
| 9/23/2020 | ZP | $250.00 | Created highlights for documents listed in stipulation for Ford depositions and identified as hot docs. | 2.2 | $550.00 | 0.5 | 0.5 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 0.4 |
| 9/23/2020 | ZP | $250.00 | Ordered chronology of documents listed in stipulation for Ford depositions, and reviewed for topic relevance. | 2.7 | $675.00 | 0.0 | 0.5 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.2 |
| 9/24/2020 | ZP | $250.00 | ILS and internal database searches run for safety and safety office related documents, powerpoints and spreadsheets. Downloaded and coded documents for relevance and issue/topic coding. | 2.6 | $650.00 | 0.0 | 0.5 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.1 |
| 9/24/2020 | ZP | $250.00 | Completed chronological ordering of stipulated documents based on topic coding. | 1.8 | $450.00 | 0.0 | 0.3 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.9 |
| 9/25/2020 | ZP | $250.00 | ILS and internal database searches for documents regarding accidents/injuries, reports submitted to NHTSA and ASO, high level executive knowledge of same. | 1.7 | $425.00 | 0.0 | 0.3 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.8 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/25/2020 | ZP | $250.00 | Safety related document searches including ASO and ASO members, powerpoints, meetings and safety data, downloaded and coded, added to chronological list. | 1.9 | $475.00 | 0.4 | 0.4 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.5 |
| 9/25/2020 | ZP | $250.00 | ILS and internal document database searches for NHTSA related documentation as well as reports and presentations related to this topic, pulled and coded for relevance. | 1.6 | $400.00 | 0.0 | 0.3 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.7 |
| 10/1/2020 | ZP | $250.00 | Reviewed responses to discovery requests forwarded from ST. | 1.4 | $350.00 | 0.0 | 0.4 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 0.2 |
| 10/2/2020 | ZP | $250.00 | Reviewed entire backlog of duplicate files for changes made between PDF versions of presentations to BoD members. | 2.6 | $650.00 | 0.5 | 0.5 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 0.8 |
| 10/2/2020 | ZP | $250.00 | Edited Excel file categorization of DPS6 PDFs for admissibility. | 2.7 | $675.00 | 0.0 | 0.5 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.2 |
| 10/7/2020 | SW | $595.00 | Conference call with L. Ungs, Z. Powell and S. Mikhov re fraud discovery and legal issues; Prepare memo re same | 1.0 | $595.00 | 0.0 | 0.3 | starts 8/6/21 | 0.0 | 0.0 | $0.00 | $0.00 | 0.7 |
| 10/7/2020 | LAU | $425.00 | Meeting to discuss common benefit fund recovery. | 1.0 | $425.00 | 0.0 | 0.3 | starts 8/6/21 | 0.3 | 0.3 | $127.50 | $127.50 | 0.1 |
| 10/7/2020 | LAU | $425.00 | Attended meeting regarding strategy for admissibility of documents and discovery strategy. | 0.7 | $297.50 | 0.3 | 0.3 | starts 8/6/21 | 0.1 | USED UP | $42.50 | n/a | 0.0 |
| 10/7/2020 | LAU | $425.00 | Meeting to discuss process for fee motions and recovery of common benefit fund. | 1.2 | $510.00 | 0.0 | 0.4 | starts 8/6/21 | 0.4 | 0.4 | $170.00 | $170.00 | 0.0 |
| 10/7/2020 | RH | $450.00 | Review, revise, confer with PLLC re joint status report and status of cases | 1.1 | $495.00 | 0.2 | 0.2 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.5 |
| 10/8/2020 | RK | $425.00 | Reviewed Ford's proposed Joint Statement; reviewed email from S. Taft re impropriety of arguments in Statement | 0.3 | $127.50 | 0.3 | USED UP | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/8/2020 | RH | $450.00 | Review draft status report and prepare responses to Ford's claims about settlement/mediation/procedures and role of Kiesel as PLLC; review files and records in numerous cases along with case management and related orders/reports, and confer with staff/co- | 1.8 | $810.00 | 0.4 | 0.4 | starts 8/6/21 | 0.3 | 0.3 | $135.00 | $135.00 | 0.4 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/8/2020 | ALM | $350.00 | Meeting with Russ/Cristobal: discussed whether filed NOAs for Paul Kiesel | 0.2 | $70.00 | 0.0 | 0.1 | starts 8/6/21 | USED UP | 0.1 | n/a | $35.00 | 0.0 |
| 10/13/2020 | ZP | $250.00 | Ran keyword searches for references to DeVincent and consulting firms established by ex Ford employees after their tenure at Ford in relation to DPS6 and powertrain engineering. | 2.1 | $525.00 | 0.4 | 0.4 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.7 |
| 10/15/2020 | JKM | $400.00 | Research for JCCP MTC Arbitration | 1.3 | $520.00 | 0.0 | 0.4 | starts 8/6/21 | 0.0 | 0.0 | $0.00 | $0.00 | 0.9 |
| 10/16/2020 | ZP | $250.00 | Went through original master folder of hot docs for early April/May 2019 spreadsheets, emails and PDFs referring to specific customer complaints and references to outside companies, consultants and engineering divisions, crossed with DeVincent and Fowler | 2.1 | $525.00 | 0.3 | 0.3 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.9 |
| 10/19/2020 | LAU | $425.00 | Preparation for meeting and attendance at meeting to discuss structure of Ford DPS6 settlement. | 1.5 | $637.50 | 0.4 | 0.4 | starts 8/6/21 | 0.3 | 0.3 | $127.50 | $127.50 | 0.1 |
| 10/19/2020 | RK | $425.00 | Meeting with Partners re mediation approaches | 1.9 | $807.50 | 0.4 | 0.4 | starts 8/6/21 | 0.3 | 0.3 | $127.50 | $127.50 | 0.5 |
| 10/21/2020 | RK | $425.00 | Prepared for and attended Status Conference, reviewed ruling on arbitration | 1.2 | $510.00 | 0.0 | 0.4 | starts 8/6/21 | 0.4 | 0.4 | $170.00 | $170.00 | 0.0 |
| 10/22/2020 | MC | $300.00 | Prep for and attend Meeting with JCCP Clients | 3.5 | $1,050.00 | 0.3 | 0.3 | starts 8/6/21 | 0.2 | 0.2 | $60.00 | $60.00 | 2.5 |
| 10/26/2020 | RH | $450.00 | Confer with RK re arbitration rulings in So Cal JCCP and resulting deposition constraints | 0.3 | $135.00 | 0.0 | 0.1 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |
| 11/3/2020 | RH | $450.00 | Prepare memorandum re recent hearings on motions to compel arbitration outcome, Larson ongoing dispute, Ralph subpoenas for Micale information, status conference and scheduling changes | 0.7 | $315.00 | 0.0 | 0.2 | starts 8/6/21 | 0.2 | 0.2 | $90.00 | $90.00 | 0.1 |
| 11/3/2020 | ALM | $350.00 | Read and reviewed summary re results of status conference and discussed with Russ | 0.2 | $70.00 | 0.0 | 0.1 | starts 8/6/21 | 0.1 | USED UP | $35.00 | n/a | 0.0 |
| 12/14/2020 | RK | $425.00 | Reviewed emails from opposing counsel re continuances; reviewed hearing transcript | 0.3 | $127.50 | 0.0 | 0.1 | starts 8/6/21 | 0.1 | 0.1 | $42.50 | $42.50 | 0.0 |
| 1/12/2021 | RK | $450.00 | Reviewed final draft of Supplemental Brief re 1281.2 | 0.3 | $135.00 | 0.0 | 0.1 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/25/2021 | RK | $450.00 | Prepared for Status Conference portion of hearing, reviewed calendars; attended hearing (MTC Arb / Status Conf) | 1.0 | $450.00 | 0.3 | 0.3 | starts 8/6/21 | 0.2 | 0.2 | $90.00 | $90.00 | 0.0 |
| 1/25/2021 | MC | $345.00 | Follow up with RK re coordiantion cases meeting | 0.1 | $34.50 | 0.1 | USED UP | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 2/2/2021 | MC | $345.00 | Conference call with OC re briefing schedules and various other issuesi n JCCP | 1.0 | $345.00 | 0.0 | 0.3 | starts 8/6/21 | 0.3 | 0.3 | $103.50 | $103.50 | 0.1 |
| 2/2/2021 | ALM | $450.00 | Meeting with RK: discussed Defendant's appeal of court order after hearing on Defendant's MTC arbitration | 0.2 | $90.00 | 0.0 | 0.1 | starts 8/6/21 | USED UP | 0.1 | n/a | $45.00 | 0.0 |
| 2/10/2021 | RK | $450.00 | Reviewed Ford's Objections to Statement of Decision; drafted email to A. Morse re same | 0.5 | $225.00 | 0.0 | 0.1 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.2 |
| 2/18/2021 | RK | $450.00 | Attended Status Conference, Hearing on Larson metadata | 0.3 | $135.00 | 0.0 | 0.1 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |
| 2/18/2021 | MC | $345.00 | Continue draft MTC Arb Opps draft | 3.4 | $1,173.00 | 0.0 | 0.4 | starts 8/6/21 | 0.4 | 0.4 | $138.00 | $138.00 | 2.2 |
| 2/19/2021 | MC | $345.00 | Finalize MTC Arb Opps/RJN/Exhibits | 4.8 | $1,656.00 | 0.0 | 0.6 | starts 8/6/21 | 0.6 | 0.6 | $207.00 | $207.00 | 3.0 |
| 3/1/2021 | MC | $345.00 | Review hearing transcripts | 2.6 | $897.00 | 0.0 | 0.5 | starts 8/6/21 | 0.5 | 0.5 | $172.50 | $172.50 | 1.1 |
| 3/26/2021 | RK | $450.00 | Reviewed summary/chart of settlement history of cases, reviewed select client files and repair summaries | 0.5 | $225.00 | 0.1 | 0.1 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.1 |
| 3/19/2021 | GM | $425.00 | Meet & Confer with opposing counsel | 0.5 | $212.50 | 0.0 | 0.1 | starts 8/6/21 | 0.0 | 0.0 | $0.00 | $0.00 | 0.4 |
| 3/19/2021 | GM | $425.00 | Pre-meet & confer coordination meeting with Roger Kirnos and Maite Colon | 0.5 | $212.50 | 0.0 | 0.1 | starts 8/6/21 | 0.0 | 0.0 | $0.00 | $0.00 | 0.4 |
| 3/19/2021 | MC | $345.00 | Call with OC to mc about various issues/mediation/case management statment/trials and dauberts | 1.1 | $379.50 | 0.0 | 0.3 | starts 8/6/21 | 0.3 | 0.3 | $103.50 | $103.50 | 0.2 |
| 3/19/2021 | MC | $345.00 | Internal conference with RK/GM re status of cases in the JCCP in anticipation of call with OC | 0.5 | $172.50 | 0.1 | 0.1 | starts 8/6/21 | 0.1 | 0.1 | $34.50 | $34.50 | 0.1 |
| 4/25/2021 | RK | $450.00 | Reviewed JCCP files and emails to ascertain 5-year statute application | 3.0 | $1,350.00 | 0.3 | 0.3 | starts 8/6/21 | 0.3 | 0.3 | $135.00 | $135.00 | 1.8 |
| 4/25/2021 | RK | $450.00 | Prepared draft of email to A. Nassihi re M&C re 5-year SOL | 1.1 | $495.00 | 0.2 | 0.2 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.5 |
| 4/25/2021 | RK | $450.00 | Call with C. Swanson re 5-Year SOL analysis | 0.5 | $225.00 | 0.1 | 0.1 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.1 |



Case 2:25-cv-07125-AB-AGR Document 39-5 Filed 09/22/25 Page 922 of 1097 Page ID #:2890

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/26/2021 | RK | $450.00 | Meeting with attorneys and staff re 5-year SOL analysis; draft memo re same | 0.5 | $225.00 | 0.1 | 0.1 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.1 |
| 5/12/2021 | RK | $450.00 | Call with A. Nassihi re 5-year SOL | 0.1 | $45.00 | 0.1 | USED UP | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/12/2021 | RK | $450.00 | Call with A. Nassihi re Joint Status Report | 0.3 | $135.00 | 0.1 | 0.1 | starts 8/6/21 | 0.1 | USED UP | $45.00 | n/a | 0.0 |
| 5/12/2021 | RK | $450.00 | Drafted Plaintiffs' portion of Status Conference Statement | 1.3 | $585.00 | 0.2 | 0.2 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.7 |
| 5/19/2021 | RK | $450.00 | M&C with A. Nassihi re Joint Report for Status Conference | 0.2 | $90.00 | 0.0 | 0.1 | starts 8/6/21 | 0.1 | USED UP | $45.00 | n/a | 0.0 |
| 5/19/2021 | RK | $450.00 | Reviewed Joint Report and Emails re Larson metadata in preparation for Status Conference | 0.2 | $90.00 | 0.0 | 0.1 | starts 8/6/21 | USED UP | 0.1 | n/a | $45.00 | 0.0 |
| 5/19/2021 | RK | $450.00 | Attended Status Conference (split with Faulkner demurrer) | 0.5 | $225.00 | 0.0 | 0.1 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.2 |
| 5/20/2021 | RK | $450.00 | Drafted memo re results of Status Conference | 0.5 | $225.00 | 0.0 | 0.1 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.2 |
| 5/20/2021 | ALM | $450.00 | Read and reviewed summary re results of status conference hearing | 0.2 | $90.00 | 0.0 | 0.1 | starts 8/6/21 | 0.1 | USED UP | $45.00 | n/a | 0.0 |
| 6/8/2021 | ALM | $450.00 | Meeting with Abdiel/RK/operations team: discussed expert deadlines auto-generated in Salesforce | 0.2 | $90.00 | 0.0 | 0.1 | starts 8/6/21 | USED UP | 0.1 | n/a | $45.00 | 0.0 |
| 6/11/2021 | MC | $345.00 | Call with rK re 5 year rule | 0.4 | $138.00 | 0.1 | 0.1 | starts 8/6/21 | 0.1 | 0.1 | $34.50 | $34.50 | 0.0 |
| 6/14/2021 | CS | $425.00 | Locate relevant template re five-year motion; draft e-mail re key points to argue | 0.3 | $127.50 | 0.1 | 0.1 | starts 8/6/21 | 0.0 | 0.0 | n/a | $0.00 | 0.1 |
| 6/14/2021 | CS | $425.00 | Meeting with Roger Kirnos and Maite C. re five-year deadline | 0.3 | $127.50 | 0.1 | 0.1 | starts 8/6/21 | 0.0 | USED UP | $0.00 | n/a | 0.1 |
| 6/25/2021 | RK | $450.00 | Prepared for and attended Status Conference, call with M. Colon | 0.6 | $270.00 | 0.2 | 0.2 | starts 8/6/21 | 0.2 | USED UP | $90.00 | n/a | 0.0 |
| 6/25/2021 | ALM | $450.00 | Read and reviewed summary re results of hearing on 5 year Status Conference and discussed with Maite | 0.2 | $90.00 | 0.2 | USED UP | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/3/2022 | RK | $500.00 | Received email from Ford's counsel re status conference, respond to same | 0.1 | $50.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/3/2022 | RK | $500.00 | Conference call with A. Nassihi re continuing status conference | 0.3 | $150.00 | 0.3 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/4/2022 | RK | $500.00 | Meeting with Partners re strategies | 0.3 | $150.00 | 0.3 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/12/2022 | RK | $500.00 | Drafted email to Ford counsel re f/u on Settlement Conference | 0.1 | $50.00 | 0.0 | 0.1 | 0.0 | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/25/2022 | RK | $500.00 | Meeting with partners re auditing/organizing billing | 0.5 | $250.00 | 0.0 | 0.1 | 0.1 | 0.1 | 0.1 | $50.00 | $50.00 | 0.1 |
| 2/22/2022 | RK | $500.00 | Reviewed and analyzed Ford proposed positions for Joint Report, reviewed case file for prior motions and orders | 0.8 | $400.00 | 0.8 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 2/22/2022 | RK | $500.00 | Call with C. Swanson re preparation for Joint Report position and further M&C with Ford | 0.3 | $150.00 | 0.1 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/11/2022 | RK | $500.00 | Reviewed Ford's Positions in Joint Statement, drafted/revised Plaintiff's responsive positions, calls with D. Kalinowski and C. Swanson | 1.7 | $850.00 | 0.3 | 0.3 | 0.3 | 0.2 | 0.2 | $100.00 | $100.00 | 0.4 |
| 4/20/2022 | RK | $500.00 | Meeting with team re analysis and strategy to prepare for IDP selection and discovery needs | 1.0 | $500.00 | 0.2 | 0.2 | 0.2 | 0.2 | 0.2 | $100.00 | $100.00 | 0.0 |
| 4/21/2022 | RK | $500.00 | Reviewed and analyzed C. Swanson notes re case facts to select cases for Global Settlement / Trial cases; reviewed underlying case materials in select cases | 0.6 | $300.00 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | $50.00 | $50.00 | 0.1 |
| 4/21/2022 | RK | $500.00 | Call with C. Swanson re preparation for JCCP status conference, discuss Ford's settlement position and further strategy | 0.3 | $150.00 | 0.1 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/21/2022 | RK | $500.00 | Call with C. Swanson re analysis of settlement of remaining cases | 0.4 | $200.00 | 0.0 | 0.1 | 0.1 | 0.1 | 0.1 | $50.00 | $50.00 | 0.0 |
| 4/21/2022 | RK | $500.00 | Review email from S. Taft and Kiesel billing, email to staff re same | 0.2 | $100.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/22/2022 | RK | $500.00 | Receive email from A. Nassihi re M&C re trial case selection, respond to the same | 0.1 | $50.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/25/2022 | RK | $500.00 | Review Ford's proposed Joint Report, call with D. Kalinowski re revisions | 0.2 | $100.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/25/2022 | RK | $500.00 | M&C Zoom with D. Kalinowski and Ford counsel re trial pick selections | 0.5 | $250.00 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | $50.00 | $50.00 | 0.0 |
| 4/27/2022 | RK | $500.00 | Reviewed Minute Order re continuance of Status Conference | 0.1 | $50.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/27/2022 | RK | $500.00 | Review Ford's proposed posting on Case Anywhere, edited, email to D. Kalinowski (x2) | 0.2 | $100.00 | 0.1 | 0.1 | 0.0 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/29/2022 | RK | $500.00 | Draft memo re results of Status Conference on 4/22/22 with instructions to staff and attorneys re next steps | 0.3 | $150.00 | 0.1 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |

Case 2:25-cv-01454-AB-AJR Document 39-15 Filed 01/06/25 Page 35 of 97 Page ID #:2309

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/2/2022 | RK | $500.00 | Meeting with staff re update to clients re status of proceedings | 0.3 | $150.00 | 0.0 | 0.1 | 0.1 | USED UP | 0.1 | n/a | $50.00 | 0.0 |
| 5/2/2022 | RK | $500.00 | Meeting with staff re preparation for Settlement Conference | 0.4 | $200.00 | 0.0 | 0.1 | 0.1 | 0.1 | 0.1 | $50.00 | $50.00 | 0.0 |
| 5/6/2022 | RK | $500.00 | Email to opposing counsel re M&C re dates/deadlines for fee motion | 0.1 | $50.00 | 0.0 | 0.0 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/6/2022 | RK | $500.00 | Received email from staff re fee motion organization, respond to same | 0.1 | $50.00 | 0.0 | 0.1 | 0.0 | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/11/2022 | RK | $500.00 | Review summary and analysis of attorney fees, dates of coordination and potential cut-off, email to C. Swanson and staff re review | 0.3 | $150.00 | 0.0 | 0.1 | 0.1 | 0.1 | USED UP | $50.00 | n/a | 0.0 |
| 5/11/2022 | RK | $500.00 | Call with C. Swanson re attorney fee/demand | 0.2 | $100.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/11/2022 | DK | $350.00 | Confer with RK re proposing the next IDP cases to defense and mediators to use as well as a scheduling order following mediation and leading up to trial as well as meeting and conferring with defense re same | 0.4 | $140.00 | 0.1 | 0.1 | 0.1 | USED UP | 0.1 | n/a | $35.00 | 0.0 |
| 5/11/2022 | DK | $350.00 | Draft email to opposing counsel re Plaintiffs' choices for IDP cases, mediator proposal, scheduling order and discovery framework proposals | 0.3 | $105.00 | 0.1 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/11/2022 | DK | $350.00 | Conduct review and analysis of 9 cases to choose as next round of IDP cases in anticipation of submitting them to defense and Court | 0.6 | $210.00 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | $35.00 | $35.00 | 0.1 |
| 5/11/2022 | DK | $350.00 | Communication with defense re mediators | 0.1 | $35.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/12/2022 | DK | $350.00 | Telephone conference with opposing counsel re status report to court and issues to include | 0.3 | $105.00 | 0.3 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/12/2022 | DK | $350.00 | Exchange email with opposing counsel re mediations, discovery procedure, case picks for IDP and steps moving forward | 0.2 | $70.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/12/2022 | DK | $350.00 | Prepare draft joint status report | 0.4 | $140.00 | 0.4 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/12/2022 | DK | $350.00 | Confer with RK re preparing joint status report, proposing mediators and strategy | 0.2 | $70.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/13/2022 | DK | $350.00 | Exchange email with opposing counsel re draft joint status report | 0.2 | $70.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/13/2022 | DK | $350.00 | Review and analyze defense edits to joint status report and finalize for filing | 0.2 | $70.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/16/2022 | DK | $350.00 | Provide estimate of documents in repository | 0.3 | $105.00 | 0.0 | 0.1 | 0.1 | 0.1 | USED UP | $35.00 | n/a | 0.0 |
| 5/16/2022 | RK | $500.00 | Emails with D. Kalinowski re ex parte notice re 5-year motion; emails re mediation brief | 0.2 | $100.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/16/2022 | RK | $500.00 | Call with J. Cutler re fee motion | 0.3 | $150.00 | 0.0 | 0.1 | 0.1 | USED UP | 0.1 | n/a | $50.00 | 0.0 |
| 5/20/2022 | RK | $500.00 | Call with D. Kalinowski re strategy prep for MSC, call with C. Swanson re same | 0.5 | $250.00 | 0.0 | 0.1 | 0.1 | 0.1 | 0.1 | $50.00 | $50.00 | 0.1 |
| 5/23/2022 | RK | $500.00 | Call with C. Swanson re MSC | 0.1 | $50.00 | 0.0 | 0.0 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/23/2022 | RK | $500.00 | Prepare for MSC, review MSC Statement and case files, review case calculations | 0.7 | $350.00 | 0.0 | 0.2 | 0.2 | 0.3 | USED UP | $150.00 | n/a | 0.0 |
| 5/23/2022 | RK | $500.00 | Attend Settlement Conference | 7.5 | $3,750.00 | 0.0 | 1.0 | 1.0 | 1.0 | 1.0 | $500.00 | $500.00 | 3.5 |
| 5/23/2022 | RK | $500.00 | Call with C. Swanson re settlement conference, call with D. Kalinowski re meeting with clients | 0.3 | $150.00 | 0.0 | 0.1 | 0.1 | USED UP | 0.1 | n/a | $50.00 | 0.0 |
| 5/23/2022 | DK | $350.00 | Zoom conference with opposing counsel re stipulations to extend fees and cost motion hearing and deadlines | 0.2 | $70.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/23/2022 | ZP | $375.00 | Review approximately 100 documents in repository to identify further deponents | 1.9 | $712.50 | 0.3 | 0.3 | 0.3 | 0.2 | 0.2 | $75.00 | $75.00 | 0.6 |
| 5/23/2022 | ZP | $375.00 | Continued review of approximately 90 documents in repository reviewed to identify further deponents and topics inside Automotive Safety Office | 1.8 | $675.00 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | $112.50 | $112.50 | 0.3 |
| 5/24/2022 | DK | $350.00 | Draft email to opposing counsel re joint status report and mediator pick | 0.1 | $35.00 | 0.0 | 0.1 | 0.0 | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/24/2022 | DK | $350.00 | Confer with RK re defense's request to continue fee hearing and deadlines | 0.2 | $70.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/24/2022 | DK | $350.00 | Telephone conference with opposing counsel re continuing hearing and deadline | 0.1 | $35.00 | 0.0 | 0.0 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/24/2022 | ZP | $375.00 | Read and annotate deposition transcripts of 7 prior deponents to identify targets for further deposition on new topics and to assess possible knowledge responsive to new categories | 4.1 | $1,537.50 | 0.7 | 0.7 | 0.7 | 0.6 | 0.6 | $225.00 | $225.00 | 0.8 |
| 5/24/2022 | ZP | $375.00 | Perform searches for and review documents pertaining to outstanding matters for examination and further investigation of ASO/Internal Investigations division documents | 2.6 | $975.00 | 0.5 | 0.5 | 0.5 | 0.4 | 0.4 | $150.00 | $150.00 | 0.3 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/24/2022 | ZP | $375.00 | Continued review of documents in relation to new matters for examination and specific internal organizations at Ford Motor Company; also reviewed documents in relation to GETRAG lateral hires from Ford Motor Company and involvement in production of transm | 1.4 | $525.00 | 0.3 | 0.3 | 0.3 | 0.2 | 0.2 | $75.00 | $75.00 | 0.1 |
| 5/24/2022 | RK | $500.00 | Review notes on settlement discussions, organize final numbers in preparation for meeting with clients, speak to staff to prepare for meeting with clients post-Settlement Conference | 0.4 | $200.00 | 0.0 | 0.1 | 0.1 | 0.1 | 0.1 | $50.00 | $50.00 | 0.0 |
| 5/24/2022 | RK | $500.00 | Meeting with clients re Settlement Conference/Ford's offer | 0.6 | $300.00 | 0.0 | 0.2 | 0.2 | USED UP | 0.2 | n/a | $100.00 | 0.0 |
| 5/25/2022 | RK | $500.00 | Draft email to opposing counsel re confirmation of settlements | 0.2 | $100.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/25/2022 | DK | $350.00 | Telephone conference with opposing counsel re joint status report | 0.2 | $70.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/25/2022 | DK | $350.00 | Review and analyze Ford's proposed joint status report prior to filing | 0.1 | $35.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/25/2022 | DK | $350.00 | Exchange email with opposing counsel re joint status report | 0.1 | $35.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/25/2022 | ZP | $375.00 | Perform further document review re internal/external investigations departments and employees during relevant time period for cases in the JCCP | 1.5 | $562.50 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | $112.50 | $112.50 | 0.0 |
| 5/25/2022 | ZP | $375.00 | Investigate work history/background of employees active at FMC and GETRAG during relevant time period for DPS6 cases in JCCP and where those employees are currently working | 1.6 | $600.00 | 0.3 | 0.3 | 0.3 | 0.2 | 0.2 | $75.00 | $75.00 | 0.3 |
| 5/26/2022 | RK | $500.00 | Review, interlineate and sign 998 offers | 0.2 | $100.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/26/2022 | DK | $350.00 | Telephone communication with opposing counsel re meet and confer on pending fees motion | 0.2 | $70.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/26/2022 | DK | $350.00 | Prepare draft global discovery proposal to file with the Court and serve on defense, and confer with RK and ZP re same | 0.8 | $280.00 | 0.2 | 0.2 | 0.2 | 0.2 | USED UP | $70.00 | n/a | 0.0 |
| 5/27/2022 | RK | $500.00 | Call with D. Kalinowski re assessment of discovery needs | 0.2 | $100.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |



Case 2:25-cv-01254-AB-AJR Document 59-4 Filed 07/01/25 Page 97 of 174 Page ID #:2303

Case 2:25-cv-04251-AB-PVC Document 39-15 Filed 07/08/25 Page 98 of 174 Page ID #:2306

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/27/2022 | RK | $500.00 | Review and revise Plaintiffs' proposal for Global Discovery, concurrent calls with D. Kalinowski and Z. Powell re same | 0.7 | $350.00 | 0.2 | 0.2 | 0.2 | 0.1 | USED UP | $50.00 | n/a | 0.0 |
| 5/27/2022 | CS | $450.00 | Review notice re Judge Hogue's retirement; email exchange with Roger Kirnos re same and impact on litigation | 0.2 | $90.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/27/2022 | CS | $450.00 | Review and revise JCCP report; meeting with DK re changes | 0.3 | $135.00 | 0.0 | 0.1 | 0.1 | 0.0 | 0.0 | n/a | $0.00 | 0.1 |
| 5/27/2022 | ZP | $375.00 | Meeting with Roger and Danny re discovery drafts | 0.5 | $187.50 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | $37.50 | $37.50 | 0.0 |
| 5/27/2022 | ZP | $375.00 | Research on potential deponents and categories for discovery update | 1.5 | $562.50 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | $112.50 | $112.50 | 0.0 |
| 5/31/2022 | ZP | $375.00 | Review document repository for further information on targeted deponents laid out in discovery brief to Court | 1.8 | $675.00 | 0.0 | 0.3 | 0.3 | 0.3 | 0.3 | $112.50 | $112.50 | 0.6 |
| 5/31/2022 | ZP | $375.00 | Background research on deponents and prior work experience and education; Review documents for prior job titles before and after production of DPS6 and completion of NHTSA reporting | 2.1 | $787.50 | 0.4 | 0.4 | 0.4 | 0.3 | 0.3 | $112.50 | $112.50 | 0.3 |
| 6/1/2022 | ZP | $375.00 | Review deposition transcripts of Overla, Hamm, Pline and McClain in furtherance of identifying topics and further requests for ASO, internal investigatory and external communication documents | 3.4 | $1,275.00 | 0.7 | 0.7 | 0.7 | 0.6 | 0.6 | $225.00 | $225.00 | 0.1 |
| 6/2/2022 | ZP | $375.00 | Create search terms and request drafts for Automotive Safety Office, II/EI departments and NHTSA related reports | 1.7 | $637.50 | 0.0 | 0.3 | 0.3 | 0.3 | 0.3 | $112.50 | $112.50 | 0.5 |
| 6/2/2022 | ZP | $375.00 | Run searches in database for Ernie DeVincent related documents and review results | 0.8 | $300.00 | 0.0 | 0.2 | 0.2 | 0.2 | 0.2 | $75.00 | $75.00 | 0.0 |
| 6/2/2022 | RK | $500.00 | Meeting with staff re 998 offers | 0.6 | $300.00 | 0.0 | 0.2 | 0.2 | USED UP | 0.2 | n/a | $100.00 | 0.0 |
| 6/5/2022 | RK | $500.00 | Review Ford's Statement re Discovery; email to D. Kalinowski | 0.3 | $150.00 | 0.1 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 8/2/2022 | RK | $500.00 | Draft email to Ford attorneys re request to meet and confer re fee motion(s) | 0.2 | $100.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 8/24/2022 | RK | $500.00 | Draft email to Ford counsel re attempt to meet and confer re fee motion | 0.4 | $200.00 | 0.0 | 0.1 | 0.1 | 0.1 | 0.1 | $50.00 | $50.00 | 0.0 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/25/2022 | JWC | $450.00 | Review motion to tax costs (Larson, Goyzueta, Jordan and Ralph); Begin drafting opposition and supporting declaration | 6.0 | $2,700.00 | 0.0 | 0.8 | 0.8 | 0.0 | 0.0 | $0.00 | $0.00 | 4.4 |
| 8/26/2022 | JWC | $450.00 | Revise and finalize opposition to motion to tax costs | 3.0 | $1,350.00 | 0.0 | 0.6 | 0.6 | 0.0 | 0.0 | $0.00 | $0.00 | 1.8 |
| 8/29/2022 | RK | $500.00 | Follow up email to Ford counsel re meet and confer re attorney fees | 0.1 | $50.00 | 0.0 | 0.1 | 0.0 | USED UP | USED UP | n/a | n/a | 0.0 |
| 9/2/2022 | JWC | $450.00 | Work on JCCP (Goyzueta & Ralph Fee Replies) | 8.0 | $3,600.00 | 0.0 | 1.1 | 1.1 | 0.0 | 0.0 | $0.00 | $0.00 | 5.8 |
| 9/4/2022 | JWC | $450.00 | Work on JCCP (Jordan & Larson Fee Replies) | 8.0 | $3,600.00 | 0.0 | 1.1 | 1.1 | 0.0 | 0.0 | $0.00 | $0.00 | 5.8 |
| 9/6/2022 | DK | $350.00 | Draft email to opposing counsel re joint status report | 0.1 | $35.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 9/6/2022 | DK | $350.00 | Telephone conference with opposing counsel re joint status report in advance of upcoming status conference | 0.2 | $70.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 9/7/2022 | DK | $350.00 | Confer with RK re draft joint status report, edits and strategy | 0.3 | $105.00 | 0.3 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 9/7/2022 | DK | $350.00 | Confer with opposing counsel re joint status report | 0.4 | $140.00 | 0.4 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 9/7/2022 | DK | $350.00 | Edit draft joint report sent by opposing counsel | 0.4 | $140.00 | 0.4 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 9/7/2022 | RK | $500.00 | Review and redline draft of proposed Joint Report; meet with D. Kalinowski | 0.2 | $100.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 9/7/2022 | RK | $500.00 | Call with D. Kalinowski, discuss contents of prior joint reports; finalize draft to send to Ford counsel | 0.2 | $100.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 9/8/2022 | RK | $500.00 | Review finalize draft of Joint Status Report discussed between D. Kalinowski and Ford counsel | 0.1 | $50.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 9/8/2022 | DK | $350.00 | Exchange email correspondence with opposing counsel re joint status report | 0.1 | $35.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 9/8/2022 | DK | $350.00 | Make further edits to joint status report following defense edits | 0.1 | $35.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 9/9/2022 | RK | $500.00 | Call with P. Kiesel re Status Conference and fee motion hearing | 0.3 | $150.00 | 0.0 | 0.1 | 0.1 | 0.1 | USED UP | $50.00 | n/a | 0.0 |
| 9/9/2022 | JWC | $450.00 | Discuss with Roger and review evidentiary objections and argument re fee motions | 0.8 | $360.00 | 0.0 | 0.2 | 0.2 | 0.2 | 0.2 | $90.00 | $90.00 | 0.0 |
| 9/13/2022 | JWC | $450.00 | Travel to and from and attend hearing on fees and costs | 3.0 | $1,350.00 | 0.0 | 0.6 | 0.6 | 0.0 | 0.0 | $0.00 | $0.00 | 1.8 |



Case 2:25-cv-01226-AB-AGR Document 51-7 Filed 07/22/25 Page 929 of 1097 Page ID #:2304

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/13/2022 | RK | $500.00 | Review Joint Status Reports since April in preparation of Status Conference; prepare summary of matters for discussion with Court at hearing | 0.9 | $450.00 | 0.3 | 0.3 | 0.3 | USED UP | USED UP | n/a | n/a | 0.0 |
| 9/13/2022 | RK | $500.00 | Attend Status Conference, meet with P. Kiesel prior to discuss (split time with Bellwether fee motions) | 1.7 | $850.00 | 0.3 | 0.3 | 0.3 | 0.2 | 0.2 | $100.00 | $100.00 | 0.4 |
| 9/30/2022 | RK | $500.00 | Call with A. Nassihi re meet and confer re attorney fees | 0.2 | $100.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/1/2022 | RK | $500.00 | Draft email to Ford's counsel re continuing date for meet and confer re attorney fees | 0.2 | $100.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/18/2022 | RK | $500.00 | Email to S. Hugret and A. Nassihi re follow up re attorney fees | 0.2 | $100.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/18/2022 | RK | $500.00 | Receive email from S. Hugret re attempt to meet and confer re attorney fees; respond to email | 0.3 | $150.00 | 0.0 | 0.1 | 0.1 | USED UP | 0.1 | n/a | $50.00 | 0.0 |
| 10/21/2022 | RK | $500.00 | Draft Plaintiff's position in Joint Status Report; review prior reports from earlier in year to synthesize | 1.2 | $600.00 | 0.4 | 0.4 | 0.4 | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/21/2022 | RK | $500.00 | Call with A. Nassihi re Joint Report | 0.3 | $150.00 | 0.3 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/21/2022 | RK | $500.00 | Communications with L. Ungs re causes of action to allege, review and analyze repair history | 0.2 | $100.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/21/2022 | RK | $500.00 | Continue preparing Joint Report | 1.1 | $550.00 | 0.3 | 0.3 | 0.3 | USED UP | 0.2 | n/a | $100.00 | 0.0 |
| 10/22/2022 | RK | $500.00 | Receive email from J. Cutler re inquiry re briefing on mediator; respond to email re scope of brief and meet and confer with Ford | 0.1 | $50.00 | 0.0 | 0.0 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/23/2022 | RK | $500.00 | Zoom conference with opposing counsel re Joint Report | 0.1 | $50.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/23/2022 | RK | $500.00 | Finalize Plaintiffs' position for Joint Report; email to opposing counsel | 0.4 | $200.00 | 0.2 | 0.0 | 0.2 | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/24/2022 | RK | $500.00 | Receive email from Ford counsel re attorney fee motions, draft response | 0.5 | $250.00 | 0.0 | 0.1 | 0.1 | 0.1 | 0.1 | $50.00 | $50.00 | 0.1 |
| 10/25/2022 | RK | $500.00 | Meet and confer with Ford counsel re attorney fees | 0.2 | $100.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/26/2022 | RK | $500.00 | Email to opposing counsel re memorializing meet and confer conference | 0.5 | $250.00 | 0.0 | 0.1 | 0.1 | 0.1 | 0.1 | $50.00 | $50.00 | 0.1 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/27/2022 | DK | $350.00 | Telephone correspondence with opposing counsel re meet and confer on joint statement and proposed fee referee | 0.2 | $70.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/28/2022 | JWC | $450.00 | Review and revise spreadsheet and meet and confer on attorney's fees and costs | 0.8 | $360.00 | 0.0 | 0.2 | 0.2 | 0.2 | 0.2 | $90.00 | $90.00 | 0.0 |
| 10/28/2022 | JWC | $450.00 | Review Ford's statement; Research neutrals; Draft statement on proposed neutrals | 2.0 | $900.00 | 0.0 | 0.4 | 0.4 | 0.4 | 0.4 | $180.00 | $180.00 | 0.4 |
| 10/28/2022 | RK | $500.00 | Email to opposing counsel re preliminary list of cases subject of upcoming fee motion | 0.1 | $50.00 | 0.0 | 0.1 | 0.0 | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/28/2022 | RK | $500.00 | Review Ford's brief re appointment of referee, review resumes; call with J. Cutler | 0.3 | $150.00 | 0.0 | 0.1 | 0.1 | 0.1 | USED UP | $50.00 | n/a | 0.0 |
| 10/28/2022 | RK | $500.00 | Review case lists and prior Status Reports to confirm/identify universe of cases at issue in fee motion to provide to opposing counsel; emails to staff members re same | 0.3 | $150.00 | 0.0 | 0.1 | 0.1 | USED UP | 0.1 | n/a | $50.00 | 0.0 |
| 10/28/2022 | RK | $500.00 | Call with J. Cutler re finalizing brief re referee | 0.1 | $50.00 | 0.0 | 0.0 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/28/2022 | RK | $500.00 | Revise Brief re Referee | 0.3 | $150.00 | 0.0 | 0.1 | 0.1 | 0.1 | USED UP | $50.00 | n/a | 0.0 |
| 11/4/2022 | DK | $350.00 | Prepare for status conference | 0.2 | $70.00 | 0.1 | 0.1 | 0.0 | USED UP | USED UP | n/a | n/a | 0.0 |
| 11/4/2022 | DK | $350.00 | Attend hearing on status conference | 0.9 | $315.00 | 0.2 | 0.2 | 0.2 | 0.1 | 0.1 | $35.00 | $35.00 | 0.1 |
| 11/4/2022 | JWC | $450.00 | Prepare for and attend JCCP OSC/Status Conference | 1.1 | $495.00 | 0.3 | 0.3 | 0.3 | 0.2 | USED UP | $90.00 | n/a | 0.0 |
| 11/21/2022 | RK | $500.00 | Meet and confer with Ford counsel re motion for attorney fees | 0.3 | $150.00 | 0.0 | 0.1 | 0.1 | USED UP | 0.1 | n/a | $50.00 | 0.0 |
| 11/21/2022 | RK | $500.00 | Draft email to opposing counsel memorializing meet and confer re attorney fee motion | 0.2 | $100.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 11/22/2022 | RK | $500.00 | Draft email to Judge Andler's assistant re attorney fee motion hearing | 0.3 | $150.00 | 0.0 | 0.1 | 0.1 | 0.1 | USED UP | $50.00 | n/a | 0.0 |
| 12/8/2022 | RK | $500.00 | Review Joint Report, including Ford's exhibits (transcripts and reports) in preparation of Status Conference | 0.7 | $350.00 | 0.3 | 0.2 | 0.2 | USED UP | USED UP | n/a | n/a | 0.0 |
| 12/8/2022 | RK | $500.00 | Call with D. Kalinowski re analysis and arguments for status conference | 0.7 | $350.00 | 0.2 | 0.2 | 0.2 | USED UP | 0.1 | n/a | $50.00 | 0.0 |
| 12/8/2022 | RK | $500.00 | Call to Judge Davidian case manager, follow up email | 0.1 | $50.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 12/8/2022 | RK | $500.00 | Attend Status Conference | 1.8 | $900.00 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | $150.00 | $150.00 | 0.3 |
| 12/8/2022 | DK | $350.00 | Preparation for hearing on status conference, including confer with RK re strategy and topics to discuss with Court | 0.8 | $280.00 | 0.2 | 0.2 | 0.2 | USED UP | 0.2 | n/a | $70.00 | 0.0 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/8/2022 | DK | $350.00 | Telephone conference with RK and mediator Davidian's office re availability for a mediation | 0.2 | $70.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 12/8/2022 | DK | $350.00 | Attend hearing on status conference | 1.7 | $595.00 | 0.3 | 0.3 | 0.3 | 0.2 | 0.2 | $70.00 | $70.00 | 0.4 |
| 12/9/2022 | RK | $500.00 | Attend continued Status Conference; review notes in preparation, call with D. Kalinowski to debrief | 1.6 | $800.00 | 0.4 | 0.4 | 0.4 | USED UP | 0.4 | n/a | $200.00 | 0.0 |
| 12/9/2022 | DK | $350.00 | Further prepare for continued status conference this morning | 0.4 | $140.00 | 0.0 | 0.1 | 0.1 | 0.1 | 0.1 | $35.00 | $35.00 | 0.0 |
| 12/9/2022 | DK | $350.00 | Attend continued status conference | 1.6 | $560.00 | 0.4 | 0.4 | 0.4 | 0.4 | USED UP | $140.00 | n/a | 0.0 |
| 12/12/2022 | DK | $350.00 | Prepare post-hearing report re appearances, court comments and tentative thoughts, arguments with opposing counsel, and steps moving forward in terms of meet and confer | 0.9 | $315.00 | 0.2 | 0.2 | 0.2 | 0.1 | 0.1 | $35.00 | $35.00 | 0.1 |
| 12/12/2022 | RK | $500.00 | Email to Judge Davidian case manager re earlier availability for mediation (IDP cases) | 0.1 | $50.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 12/14/2022 | RK | $500.00 | Prepare declaration in support of Fee Motion, review history of communications with Ford counsel re settlements, attorney fees and CMO | 3.9 | $1,950.00 | 0.0 | 0.5 | 0.5 | 0.0 | 0.0 | $0.00 | $0.00 | 2.9 |
| 12/16/2022 | RK | $500.00 | Email to D. Kalinowski and Z. Powell re follow up re proposed stipulation to send to Ford re authenticity and business records exception as agreed in MDL | 0.1 | $50.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 12/20/2022 | RK | $500.00 | Follow up email to opposing counsel re availability for dates proposed by Mediator (Judge Davidian) | 0.1 | $50.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 12/22/2022 | RK | $500.00 | Receive email from Judge Davidian clerk re follow up for dates for mediation; respond to email | 0.1 | $50.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 12/22/2022 | RK | $500.00 | Email to Ford counsel re follow up re dates for availability for Judge Davidian mediation | 0.1 | $50.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 12/22/2022 | RK | $500.00 | Receive email from Ford counsel re 1/2 day mediation for NTG cases, respond to the same | 0.1 | $50.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 12/22/2022 | DK | $350.00 | Confer with RK re proposed order re appointing referee to determine pending fee motions | 0.2 | $70.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 12/23/2022 | RK | $500.00 | Receive email from Ford counsel re 1/2 day mediation with different mediator than agreed upon for NTG cases, respond to the same | 0.1 | $50.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |

Case 2:25-cv-04276-AB-PVC Document 1-4 Filed 05/13/25 Page 933 of 1097 Page ID #:1308

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/27/2022 | DK | $350.00 | Review and analyze Ford's objection to proposed order re fee motion referee | 0.3 | $105.00 | 0.0 | 0.1 | 0.1 | 0.1 | USED UP | $35.00 | n/a | 0.0 |
| 12/27/2022 | DK | $350.00 | Prepare response to Ford's objection to proposed order re fee motion referee | 2.1 | $735.00 | 0.0 | 0.4 | 0.4 | 0.4 | 0.4 | $140.00 | $140.00 | 0.5 |
| 1/3/2023 | DK | $400.00 | Zoom conference with opposing counsel re proposed orders | 0.2 | $80.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/4/2023 | DK | $400.00 | Exchange email with opposing counsel re continuing status conference | 0.2 | $80.00 | 0.1 | 0.0 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/4/2023 | DK | $400.00 | Review court order continuing status conference | 0.1 | $40.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/7/2023 | DK | $400.00 | Prepare draft stipulation and exhibits re DPS6 documents stipulated to by Ford as authentic and BR exceptions, including brief research on applicable code sections | 1.1 | $440.00 | 0.3 | 0.3 | 0.3 | 0.2 | USED UP | $80.00 | n/a | 0.0 |
| 1/11/2023 | DK | $400.00 | Exchange email with opposing counsel re telephone conference with opposing counsel re upcoming status conference hearing and court's proposed order | 0.3 | $120.00 | 0.1 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/17/2023 | DK | $400.00 | Exchange email with opposing counsel re rescheduling status conference | 0.2 | $80.00 | 0.1 | 0.1 | 0.0 | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/17/2023 | DK | $400.00 | Review and analyze Court's case anywhere messages re continuing status conference | 0.3 | $120.00 | 0.1 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/17/2023 | DK | $400.00 | Telephone conference with opposing counsel re upcoming status conference and dates | 0.2 | $80.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/19/2023 | DK | $400.00 | Confer with RK re upcoming scheduling conference and strategy moving forward | 0.2 | $80.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/19/2023 | DK | $400.00 | Confer with opposing counsel re rescheduling the status conference | 0.2 | $80.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/19/2023 | DK | $350.00 | Prepare draft Plaintiffs' proposed fact discovery plan for NTG | 1.0 | $350.00 | 0.2 | 0.2 | 0.2 | 0.2 | 0.2 | $70.00 | $70.00 | 0.0 |
| 1/27/2023 | DK | $400.00 | Attend hearing on status conference | 2.5 | $1,000.00 | 0.4 | 0.4 | 0.4 | 0.3 | 0.3 | $120.00 | $120.00 | 0.7 |
| 1/27/2023 | DK | $400.00 | Roundtrip travel for hearing on status conference | 1.6 | $640.00 | 0.3 | 0.3 | 0.3 | 0.2 | 0.2 | $80.00 | $80.00 | 0.3 |
| 1/30/2023 | DK | $400.00 | Prepare post-status conference internal memorandum re appearances, new dates and deadlines set by Court, other orders by the Court and steps moving forward | 0.6 | $240.00 | 0.2 | 0.2 | 0.2 | USED UP | USED UP | n/a | n/a | 0.0 |

Case 2:25-cv-07176-AB-PVC Document 1-4 Filed 07/30/25 Page 934 of 1097 Page ID #:1409 (overlapping stamp, partly illegible)

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/30/2023 | DK | $400.00 | Draft email to opposing counsel re meet and confer on scheduling 90 minute fees and costs motion hearing per Court Order | 0.1 | $40.00 | 0.0 | 0.1 | 0.0 | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/30/2023 | RK | $550.00 | Messages with R. Wirtz re fee motion overview hearing date | 0.1 | $55.00 | 0.0 | 0.0 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/30/2023 | RK | $550.00 | Call with P. Kiesel re fee motion overview hearing date | 0.1 | $55.00 | 0.0 | 0.1 | 0.0 | USED UP | USED UP | n/a | n/a | 0.0 |
| 2/1/2023 | DK | $400.00 | Communication with clients re update on coordination and status of cases | 1.4 | $560.00 | 0.2 | 0.2 | 0.2 | 0.2 | 0.2 | $80.00 | $80.00 | 0.4 |
| 2/1/2023 | DK | $400.00 | Exchange email with opposing counsel re scheduling overview/background on pending fee motion hearing | 0.1 | $40.00 | 0.0 | 0.0 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 2/1/2023 | DK | $400.00 | Prepare message on case anywhere re March 13, 2023 hearing date for overview/background on fees and costs motion | 0.1 | $40.00 | 0.0 | 0.1 | 0.0 | USED UP | USED UP | n/a | n/a | 0.0 |
| 2/1/2023 | RK | $550.00 | Meeting with clients re update on proceedings | 1.1 | $605.00 | 1.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 2/1/2023 | RK | $550.00 | Meeting with clients re update on proceedings | 0.4 | $220.00 | 0.4 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 2/7/2023 | RK | $550.00 | Meeting with D. Kalinowski re further strategy (split with MDL) | 0.4 | $220.00 | 0.1 | 0.1 | 0.1 | USED UP | 0.1 | n/a | $55.00 | 0.0 |
| 2/17/2023 | RK | $550.00 | Review draft of discovery plan for exchange with Ford; review drafts of discovery in other actions to supplement and reduce matters for discovery | 1.2 | $660.00 | 0.3 | 0.3 | 0.3 | USED UP | 0.3 | n/a | $165.00 | 0.0 |
| 2/18/2023 | RK | $550.00 | Review Ford's Proposed Fact Discovery Plan | 0.1 | $55.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 2/27/2023 | RK | $550.00 | Review and annotate Ford's discovery plan in preparation for meet and confer; review various prior discovery and depositions to assess Ford's contentions | 1.1 | $605.00 | 0.3 | 0.3 | 0.3 | USED UP | 0.2 | n/a | $110.00 | 0.0 |
| 2/27/2023 | RK | $550.00 | Confer with Ford counsel re Discovery Plan | 0.8 | $440.00 | 0.2 | 0.2 | 0.2 | 0.2 | USED UP | $110.00 | n/a | 0.0 |
| 2/27/2023 | RK | $550.00 | Prepare Statement re Plaintiff Discovery Plan | 2.8 | $1,540.00 | 0.4 | 0.4 | 0.4 | 0.4 | 0.4 | $220.00 | $220.00 | 0.8 |
| 2/27/2023 | RK | $550.00 | Cursory review of Ford's filing of Objections and Opposition to Knight Law Discovery Plan and exhibits; review Ford separate filing re Supporting Fact Sheet Plan | 0.4 | $220.00 | 0.1 | 0.1 | 0.1 | 0.1 | USED UP | $55.00 | n/a | 0.0 |
| 2/27/2023 | RK | $550.00 | Revise Statement re Plaintiff Discovery Plan | 0.2 | $110.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/13/2023 | JWC | $495.00 | Prepare for, travel to and from, and attend status conference re fee motion and discovery plan | 6.5 | $3,217.50 | 0.0 | 0.9 | 0.9 | 0.9 | 0.9 | $445.50 | $445.50 | 2.9 |
| 3/16/2023 | RK | $550.00 | Attend meeting re Conference with opposing counsel re Ford's arbitration motion (on hold, disconnected) | 0.4 | $220.00 | 0.0 | 0.1 | 0.1 | 0.1 | 0.1 | $55.00 | $55.00 | 0.0 |
| 3/16/2023 | RK | $550.00 | Attend meeting re Call with opposing counsel re arbitration motion | 0.1 | $55.00 | 0.0 | 0.0 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/14/2023 | RK | $550.00 | Review Court minute order re Status Conference time change; email to J. Cutler re attendance in person | 0.1 | $55.00 | 0.0 | 0.1 | 0.0 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/18/2023 | JWC | $495.00 | Meet and confer on fees and costs for post motion filing issues | 0.1 | $49.50 | 0.0 | 0.0 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/18/2023 | JWC | $495.00 | Meet and confer on arbitration issue | 0.1 | $49.50 | 0.0 | 0.1 | 0.0 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/18/2023 | RK | $550.00 | Confer with J. Cutler re work on list of cases Ford identified for arbitration; review internal master case list to cross-check matters not named in Ford's list of cases subject to MTC arbitration | 0.7 | $385.00 | 0.0 | 0.2 | 0.2 | USED UP | 0.3 | n/a | $165.00 | 0.0 |
| 4/18/2023 | RK | $550.00 | Review and revise draft of Joint Status Report re Arbitration; send email to J. Cutler re meet and confer re same | 0.2 | $110.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/20/2023 | JWC | $495.00 | Research re arb cases and causes of action re Ford's proposed list of cases | 0.7 | $346.50 | 0.0 | 0.2 | 0.2 | 0.3 | USED UP | $148.50 | n/a | 0.0 |
| 4/20/2023 | JWC | $495.00 | Follow up and review Ford's edits to joint statement re arbitration; Edit Plaintiff's portion | 0.6 | $297.00 | 0.0 | 0.2 | 0.2 | USED UP | 0.2 | n/a | $99.00 | 0.0 |
| 4/20/2023 | RK | $550.00 | Review Ford's propose revisions to Joint Report re Arbitration; email to J. Cutler re further meet and confer | 0.1 | $55.00 | 0.0 | 0.0 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/20/2023 | RK | $550.00 | Meeting with R. Higgins re discuss status of Coordination and next steps (split time with MDL) | 0.3 | $165.00 | 0.1 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/20/2023 | RK | $550.00 | Emails with J. Cutler re Ford's proposed revisions to Joint Report, drafted a revised version to propose | 0.4 | $220.00 | 0.2 | 0.0 | 0.2 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/26/2023 | RK | $550.00 | Meeting with attorneys re planning for discovery preparation | 0.5 | $275.00 | 0.3 | 0.2 | 0.0 | USED UP | USED UP | n/a | n/a | 0.0 |

Case 2:25-cv-04176-AB-PVC Document 1-1 Filed 05/08/25 Page 936 of 1097 Page ID #:1334

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/26/2023 | RK | $550.00 | Call with S. Taft re Status Conference re arbitration | 0.3 | $165.00 | 0.0 | 0.1 | 0.1 | USED UP | 0.1 | n/a | $55.00 | 0.0 |
| 4/27/2023 | RH | $550.00 | Attend hearing on motion for attorney's fees and status conference | 1.0 | $550.00 | 0.0 | 0.3 | 0.3 | USED UP | 0.3 | n/a | $165.00 | 0.1 |
| 5/9/2023 | RK | $550.00 | Call with S. Wilson re DPS6 docs | 0.2 | $110.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/11/2023 | JWC | $495.00 | Further discussions and revise and finalize joint report | 0.4 | $198.00 | 0.2 | 0.0 | 0.2 | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/25/2023 | JWC | $495.00 | Attend JCCP discovery meeting | 1.0 | $495.00 | 0.2 | 0.2 | 0.2 | 0.2 | 0.2 | $99.00 | $99.00 | 0.0 |
| 5/25/2023 | RK | $550.00 | Meeting with team re preparation for discovery | 0.8 | $440.00 | 0.2 | 0.2 | 0.2 | 0.2 | USED UP | $110.00 | n/a | 0.0 |
| 5/30/2023 | JWC | $495.00 | Meet and confer on outstanding fees and costs ford owes | 0.2 | $99.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 6/7/2023 | RK | $550.00 | Receive email from opposing counsel re lack of arbitration hearing extension; respond to same | 0.2 | $110.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 6/11/2023 | RK | $550.00 | Review email from D. Folia re identification of Ford deponents; legal research re out of state commission process and legal authorities thereunder, draft analysis to team | 1.2 | $660.00 | 0.3 | 0.3 | 0.3 | 0.3 | USED UP | $165.00 | n/a | 0.0 |
| 6/11/2023 | RK | $550.00 | Receive email from D. Folia re county rules; respond to same | 0.1 | $55.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 6/11/2023 | RK | $550.00 | Review internal report re 5-year deadlines; email to M. Colon and J. Cutler re cases in coordination | 0.1 | $55.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 6/12/2023 | RK | $550.00 | Receive email from J. Cutler re stipulated documents, respond to same | 0.1 | $55.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 6/12/2023 | RK | $550.00 | Receive email from R. Higgins re stipulated documents, respond to same | 0.1 | $55.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 6/12/2023 | RH | $550.00 | Confer with J. Cutler re Ford DPS6 discovery | 1.0 | $550.00 | 0.3 | 0.3 | 0.3 | USED UP | 0.1 | n/a | $55.00 | 0.0 |
| 6/12/2023 | MC | $425.00 | Confer with J. Cutler re pending discovery in JCCP | 0.5 | $212.50 | 0.2 | 0.2 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 6/22/2023 | RK | $550.00 | Review JCCP case files to ascertain status of existing 998 offers in light of court ruling on attorney fees in Goyzueta and Ralph | 1.6 | $880.00 | 0.0 | 0.3 | 0.3 | 0.3 | 0.3 | $165.00 | $165.00 | 0.4 |
| 6/26/2023 | RK | $550.00 | Draft email to J. Cutler and team re NTG trial prep, joint report topics, litigation strategy | 0.5 | $275.00 | 0.3 | 0.2 | 0.0 | USED UP | USED UP | n/a | n/a | 0.0 |
| 6/28/2023 | AZ | $175.00 | Draft Notice of Ruling re Def's MTCA | 0.6 | $105.00 | 0.0 | 0.2 | 0.2 | 0.0 | USED UP | $0.00 | n/a | 0.2 |
| 6/28/2023 | RK | $550.00 | Review emails from J. Cutler and A. Lopez re discovery orders in other JCCP, respond to same | 0.2 | $110.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/28/2023 | RK | $550.00 | Receive email from J. Cutler re preparation of RFGs, review email files to identify additional documents, draft email to J. Cutler and R. Higgins re plan | 0.7 | $385.00 | 0.2 | 0.2 | 0.2 | 0.1 | USED UP | $55.00 | n/a | 0.0 |
| 6/28/2023 | RH | $550.00 | Confer with attys and staff re FMC discovery responses/orders | 0.6 | $330.00 | 0.2 | 0.2 | 0.2 | USED UP | USED UP | n/a | n/a | 0.0 |
| 6/29/2023 | RH | $550.00 | Prepare deposition notices for FMC employees; confer with attorneys and staff re same | 0.4 | $220.00 | 0.1 | 0.1 | 0.1 | USED UP | 0.1 | n/a | $55.00 | 0.0 |
| 7/3/2023 | JWC | $495.00 | Draft Joint Report for July 13, 2023 Status Conference | 1.8 | $891.00 | 0.4 | 0.4 | 0.4 | 0.3 | 0.3 | $148.50 | $148.50 | 0.0 |
| 7/3/2023 | JWC | $495.00 | Draft Special ROGs (multiple cases) | 1.5 | $742.50 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | $148.50 | $148.50 | 0.0 |
| 7/3/2023 | JWC | $495.00 | Draft RFPs (multiple cases) | 1.5 | $742.50 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | $148.50 | $148.50 | 0.0 |
| 7/3/2023 | JWC | $495.00 | Emails and calls re joint status report; Attend zoom meeting re same | 0.8 | $396.00 | 0.2 | 0.2 | 0.2 | USED UP | 0.2 | n/a | $99.00 | 0.0 |
| 7/6/2023 | JWC | $495.00 | Meet and confer with opposing counsel on Joint Statement; Revise and finalize; Create separate Plaintiff's only portion that Ford refused to include | 1.7 | $841.50 | 0.3 | 0.3 | 0.3 | 0.2 | 0.2 | $99.00 | $99.00 | 0.4 |
| 7/11/2023 | RH | $550.00 | Review Case Anywhere post/order and confer with co counsel | 0.2 | $110.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 7/27/2023 | RK | $550.00 | Receive inquiry from staff re trial dates and deadlines, respond to email with updated information | 0.2 | $110.00 | 0.1 | 0.0 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 8/4/2023 | MC | $425.00 | Review file and follow up with legal assistant re status of dealer depos | 0.4 | $170.00 | 0.0 | 0.1 | 0.1 | 0.1 | 0.1 | $42.50 | $42.50 | 0.0 |
| 8/7/2023 | JWC | $495.00 | Meet and confer on dealership depositions | 0.3 | $148.50 | 0.0 | 0.1 | 0.1 | 0.1 | USED UP | $49.50 | n/a | 0.0 |
| 8/8/2023 | JWC | $495.00 | Meet and confer on ford employee depositions | 0.2 | $99.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 8/9/2023 | JWC | $495.00 | Email opposing counsel re meet and confer scheduling | 0.1 | $49.50 | 0.0 | 0.1 | 0.0 | USED UP | USED UP | n/a | n/a | 0.0 |
| 8/14/2023 | JWC | $495.00 | Prepare for and attend meet and confer re discovery in JCCP 4856 including depositions | 0.6 | $297.00 | 0.2 | 0.2 | 0.2 | USED UP | USED UP | n/a | n/a | 0.0 |
| 8/23/2023 | RH | $550.00 | Prepare objections to NOD and requests for production of documents (percipient) | 0.4 | $220.00 | 0.0 | 0.1 | 0.1 | 0.1 | 0.1 | $55.00 | $55.00 | 0.0 |
| 9/12/2023 | RH | $550.00 | Prepare RFP, SROGs (multiple cases) | 4.0 | $2,200.00 | 0.0 | 0.5 | 0.5 | 0.5 | 0.5 | $275.00 | $275.00 | 2.0 |
| 9/13/2023 | RH | $550.00 | Prepare SROGS; confer with JWC/RK re same (multiple cases) | 2.0 | $1,100.00 | 0.0 | 0.4 | 0.4 | 0.4 | 0.4 | $220.00 | $220.00 | 0.4 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/3/2023 | RK | $550.00 | Search email history with Ford counsel from MDL re Ford's offer to buyback all clients' vehicles to prepare response to Ford in this JCCP; call with L. Ungs re same; draft email to Ford counsel responding to offer to buy back cars | 0.8 | $440.00 | 0.0 | 0.2 | 0.2 | 0.2 | 0.2 | $110.00 | $110.00 | 0.0 |
| 10/3/2023 | RK | $550.00 | Review memos re results of prior hearings; email to Ford counsel re stipulation re arbitrations Post-Ochoa | 0.2 | $110.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/3/2023 | RK | $550.00 | Legal research re transfer/remand cases from JCCP | 0.6 | $330.00 | 0.0 | 0.2 | 0.2 | 0.2 | USED UP | $110.00 | n/a | 0.0 |
| 10/5/2023 | RK | $550.00 | Begin draft of status report for 10/31/23 conference; review transcripts | 0.9 | $495.00 | 0.0 | 0.3 | 0.3 | 0.3 | USED UP | $165.00 | n/a | 0.0 |
| 10/8/2023 | RK | $550.00 | Receive responsive email from opposing counsel re "repurchase" proposal, respond to emails | 0.1 | $55.00 | 0.0 | 0.0 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/19/2023 | JWC | $495.00 | Meet and confer on discovery and depositions | 0.3 | $148.50 | 0.0 | 0.1 | 0.1 | USED UP | 0.1 | n/a | $49.50 | 0.0 |
| 10/19/2023 | RH | $550.00 | Review case files/master case lists re written discovery; draft common RFAs; confer with JC, RK, et al re same | 3.7 | $2,035.00 | 0.0 | 0.5 | 0.5 | 0.5 | 0.5 | $275.00 | $275.00 | 1.7 |
| 10/23/2023 | RH | $550.00 | Confer with discovery teams & staff re SDTs for records in IDP cases | 1.2 | $660.00 | 0.0 | 0.4 | 0.4 | USED UP | 0.4 | n/a | $220.00 | 0.0 |
| 10/24/2023 | RK | $550.00 | Respond to email from opposing counsel re stipulation re arbitration | 0.2 | $110.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/24/2023 | RK | $550.00 | Respond to email from opposing counsel re repurchase of all vehicles | 0.4 | $220.00 | 0.0 | 0.1 | 0.1 | 0.1 | 0.1 | $55.00 | $55.00 | 0.0 |
| 10/24/2023 | RK | $550.00 | Draft Status Report for 10.31 Status Conference, confer with J. Cutler and make revisions | 0.7 | $385.00 | 0.0 | 0.2 | 0.2 | 0.3 | USED UP | $165.00 | n/a | 0.0 |
| 10/25/2023 | RH | $550.00 | Prepare for and attend meeting with RK, JC re drafting discovery to FMC in IDP cases | 3.5 | $1,925.00 | 0.0 | 0.5 | 0.5 | 0.5 | 0.5 | $275.00 | $275.00 | 1.5 |
| 10/26/2023 | JWC | $495.00 | Meet and confer on depositions and document productions | 0.4 | $198.00 | 0.0 | 0.1 | 0.1 | 0.1 | 0.1 | $49.50 | $49.50 | 0.0 |
| 10/31/2023 | RK | $550.00 | JCCP South Global Status Conference + Travel Time | 3.9 | $2,145.00 | 0.0 | 0.5 | 0.5 | 0.5 | 0.5 | $275.00 | $275.00 | 1.9 |
| 11/1/2023 | RK | $550.00 | Review Court's Order re new NTG | 0.1 | $55.00 | 0.0 | 0.1 | 0.0 | USED UP | USED UP | n/a | n/a | 0.0 |
| 11/16/2023 | RH | $550.00 | Draft Set Two discovery sets | 0.9 | $495.00 | n/a | 0.3 | 0.3 | USED UP | 0.3 | n/a | $165.00 | 0.0 |
| 11/17/2023 | RH | $550.00 | Prepare Set Two discovery sets for NTG cases | 1.3 | $715.00 | n/a | 0.4 | 0.4 | 0.4 | USED UP | $220.00 | n/a | 0.1 |
| 12/4/2023 | RH | $550.00 | Communication with ILS re status of repository | 0.2 | $110.00 | n/a | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |



Case 2:25-cv-04276-AB-PVC Document 31-4 Filed 07/30/25 Page 69 of 1097 Page ID #:2336

[illegible]

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/4/2023 | RH | $550.00 | Legal research re deposition/testimony limitations and circulate research to partners | 0.6 | $330.00 | n/a | 0.2 | 0.2 | USED UP | 0.2 | n/a | $110.00 | 0.0 |
| 12/13/2023 | RH | $550.00 | Prepare for and attend meeting with RK, JC, AL re next steps and status of JCCP | 0.3 | $165.00 | n/a | 0.1 | 0.1 | USED UP | 0.1 | n/a | $55.00 | 0.0 |
| 12/18/2023 | RH | $550.00 | Review pending active cases for NTG selections | 3.0 | $1,650.00 | n/a | 0.6 | 0.6 | 0.6 | 0.6 | $330.00 | $330.00 | 0.6 |
| 12/18/2023 | RH | $550.00 | Review orders and research re arbitration denial and automatic stay pending appeal; videoconference meeting with FMC counsel re arbitration stay and next steps for status conference | 0.9 | $495.00 | n/a | 0.3 | 0.3 | USED UP | 0.3 | n/a | $165.00 | 0.0 |
| 12/18/2023 | RH | $550.00 | Review MTC FMC depos | 0.3 | $165.00 | n/a | 0.1 | 0.1 | 0.1 | USED UP | $55.00 | n/a | 0.0 |
| 12/18/2023 | RH | $550.00 | Review Discovery, PMQ deposition notices and scheduling | 1.3 | $715.00 | n/a | 0.4 | 0.4 | 0.4 | USED UP | $220.00 | n/a | 0.1 |
| 12/20/2023 | RK | $550.00 | Conference with R. Higgins re discuss next NTG selections | 0.3 | $165.00 | n/a | 0.1 | 0.1 | USED UP | 0.1 | n/a | $55.00 | 0.0 |
| 12/21/2023 | RK | $550.00 | Review R. Higgins notes of JCCP cases; review and identify cases for next NTG cases; review R. Higgins selections; draft email to R. Higgins re analysis and observations | 1.7 | $935.00 | n/a | 0.3 | 0.3 | 0.3 | 0.3 | $165.00 | $165.00 | 0.5 |
| 12/26/2023 | RH | $550.00 | Evaluate NTG case selections | 3.0 | $1,650.00 | n/a | 0.6 | 0.6 | 0.6 | 0.6 | $330.00 | $330.00 | 0.6 |
| 12/26/2023 | RK | $550.00 | Conference with R. Higgins re discuss choices for NTG 2-5 | 0.6 | $330.00 | n/a | 0.2 | 0.2 | 0.2 | USED UP | $110.00 | n/a | 0.0 |
| 12/28/2023 | RK | $550.00 | Receive email from R. Higgins re assessment of Ford's picks for NTG 2-5; review Ford's proposed status conference statement; review chart of Knight selections; draft email to R. Higgins | 0.4 | $220.00 | n/a | 0.1 | 0.1 | 0.1 | 0.1 | $55.00 | $55.00 | 0.0 |
| 12/29/2023 | RK | $550.00 | Review and redline R. Higgins' draft of Status Report re NTG cases; email to R. Higgins | 0.3 | $165.00 | n/a | 0.1 | 0.1 | 0.1 | USED UP | $55.00 | n/a | 0.0 |
| 12/29/2023 | RK | $550.00 | Zoom conference with R. Higgins re NTG selection reorganization | 0.4 | $220.00 | n/a | 0.1 | 0.1 | 0.1 | 0.1 | $55.00 | $55.00 | 0.0 |
| 12/29/2023 | RK | $550.00 | Call with P. Shahian from SLP re NTG selections | 0.2 | $110.00 | n/a | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 12/29/2023 | RK | $550.00 | Call with R. Higgins re finalizing Status Report and NTG selections | 0.3 | $165.00 | n/a | 0.1 | 0.1 | USED UP | 0.1 | n/a | $55.00 | 0.0 |
| 1/2/2024 | RK | $550.00 | Receive CaseAnywhere notice re Ford's Petition for 43rd Add-On; review internal case docket to ascertain whether Knight Law case | 0.1 | $55.00 | n/a | 0.0 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/5/2024 | RK | $550.00 | Review and respond to emails, call with staff re JCCP cases re RFDs | 1.5 | $825.00 | n/a | 0.5 | 0.5 | USED UP | 0.5 | n/a | $275.00 | 0.0 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/10/2024 | RK | $550.00 | Attend Further Status Conference (re new NTG cases), including travel to and from court | 3.2 | $1,760.00 | n/a | 0.4 | 0.4 | 0.4 | 0.4 | $220.00 | $220.00 | 1.6 |
| 1/17/2024 | RH | $550.00 | Communication with defendant's counsel and with staff re depositions of FMC | 0.7 | $385.00 | n/a | 0.2 | 0.2 | 0.3 | USED UP | $165.00 | n/a | 0.0 |
| 1/17/2024 | RH | $550.00 | Evaluate court order setting trial schedules for all remaining cases, and memoranda to files re calendaring and next steps | 1.2 | $660.00 | n/a | 0.4 | 0.4 | 0.4 | USED UP | $220.00 | n/a | 0.0 |
| 1/18/2024 | RH | $550.00 | Review MIL filings and confer with partners re same, local/chambers rules, etc. | 0.3 | $165.00 | n/a | 0.1 | 0.1 | USED UP | 0.1 | n/a | $55.00 | 0.0 |
| 1/26/2024 | RK | $550.00 | Review outline, revise to prepare for oral argument | 0.4 | $220.00 | n/a | 0.1 | 0.1 | 0.1 | 0.1 | $55.00 | $55.00 | 0.0 |
| 2/20/2024 | RK | $550.00 | Attend continued Final Status Conference, arrive early to review rulings and prepare for arguments on MILs, confer with J. Cutler re assessment of previous settlement offers | 3.8 | $2,090.00 | n/a | 0.5 | 0.5 | 0.5 | 0.5 | $275.00 | $275.00 | 1.8 |
| 2/21/2024 | RK | $550.00 | Draft memo to file re Ford's ex parte to bifurcate trial and results of both FSC hearings | 1.6 | $880.00 | n/a | 0.3 | 0.3 | 0.3 | 0.3 | $165.00 | $165.00 | 0.4 |
| 2/23/2024 | RK | $550.00 | Conference call with C. Swanson and appeallate counsel re procedure and issues re stipulated judgment | 0.4 | $220.00 | n/a | 0.1 | 0.1 | 0.1 | 0.1 | $55.00 | $55.00 | 0.0 |
| 2/23/2024 | RK | $550.00 | Review 998 offers and revise internal calculations, call with C. Swanson re trial vs. stipulated judgment | 0.4 | $220.00 | n/a | 0.1 | 0.1 | 0.1 | 0.1 | $55.00 | $55.00 | 0.0 |
| 2/23/2024 | RK | $550.00 | Email to opposing counsel re settlement of cases | 0.1 | $55.00 | n/a | 0.1 | 0.0 | USED UP | USED UP | n/a | n/a | 0.0 |
| 2/26/2024 | RK | $550.00 | Review draft stipulated judgment proposed by Ford in preparation for call with opposing counsel | 0.1 | $55.00 | n/a | 0.0 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 2/27/2024 | RH | $550.00 | Review orders and prior update letters; update letters for clients in various trial groups and confer with partners and DR re same | 1.5 | $825.00 | n/a | 0.5 | 0.5 | 0.5 | USED UP | $275.00 | n/a | 0.0 |
| 2/29/2024 | RH | $550.00 | Confer with DR, RK re update letters to all trial groups | 0.2 | $110.00 | n/a | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 3/1/2024 | RH | $550.00 | Confer with DR re client update letters | 0.2 | $110.00 | n/a | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 3/6/2024 | RH | $550.00 | Meeting with DR; prepare all update letters for trial groups | 1.0 | $550.00 | n/a | 0.3 | 0.3 | USED UP | 0.4 | n/a | $220.00 | 0.0 |
| 3/12/2024 | RH | $550.00 | Confer with DR re status/finalization of NTG status letters | 0.2 | $110.00 | n/a | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |

Case 2:25-cv-04276-AB-PVC Document 1-5 Filed 05/12/25 Page 941 of 1097 Page ID #:2130

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/12/2024 | RH | $550.00 | Review and evaluate 44th Add On Petition | 0.2 | $110.00 | n/a | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 3/27/2024 | RH | $550.00 | Confer with J. Cutler re Set Two written disco sets | 0.2 | $110.00 | n/a | n/a | n/a | 0.1 | 0.1 | $55.00 | $55.00 | 0.0 |
| 3/28/2024 | RH | $550.00 | Confer with J. Cutler re written discovery | 0.6 | $330.00 | n/a | n/a | n/a | 0.2 | 0.2 | $110.00 | $110.00 | 0.2 |
| 4/8/2024 | RH | $550.00 | Confer with J. Cutler re NOD | 0.2 | $110.00 | n/a | n/a | n/a | 0.1 | 0.1 | $55.00 | $55.00 | 0.0 |
| 4/18/2024 | RH | $550.00 | Meeting with staff re discovery status/responses/requests | 1.0 | $550.00 | n/a | n/a | n/a | 0.3 | 0.3 | $165.00 | $165.00 | 0.4 |
| 4/24/2024 | RH | $550.00 | Evaluation/strategy for claim dismissal; discovery status and related issues | 1.0 | $550.00 | n/a | n/a | n/a | 0.3 | 0.3 | $165.00 | $165.00 | 0.4 |
| 4/24/2024 | RH | $550.00 | Review and respond to client requests for updates/status | 0.2 | $110.00 | n/a | n/a | n/a | 0.1 | 0.1 | $55.00 | $55.00 | 0.0 |
| 4/25/2024 | RK | $550.00 | Review Ford inventory numbers in preparation of call with A. Maclear re settlement | 0.5 | $275.00 | n/a | n/a | n/a | 0.1 | 0.1 | $55.00 | $55.00 | 0.3 |
| 4/30/2024 | RH | $550.00 | Exchange emails with opposing counsel re discovery deadlines (8 cases NTG2) | 0.1 | $55.00 | n/a | n/a | n/a | 0.1 | 0.0 | $55.00 | $0.00 | 0.0 |
| 5/2/2024 | RH | $550.00 | Draft NOD for PMQ; confer with J. Cutler and staff re same | 1.2 | $660.00 | n/a | n/a | n/a | 0.4 | 0.4 | $220.00 | $220.00 | 0.4 |
| 5/6/2024 | RH | $550.00 | Confer with JC, MM, AM, LS re case list and claim dismissal | 0.4 | $220.00 | n/a | n/a | n/a | 0.1 | 0.1 | $55.00 | $55.00 | 0.2 |
| 5/8/2024 | RH | $550.00 | Assist DR with preparation of discovery responses | 1.2 | $660.00 | n/a | n/a | n/a | 0.4 | 0.4 | $220.00 | $220.00 | 0.4 |
| 5/13/2024 | RH | $550.00 | Confer with DR, EK re discovery and legal issues for JCCP | 0.2 | $110.00 | n/a | n/a | n/a | 0.1 | 0.1 | $55.00 | $55.00 | 0.0 |
| 5/14/2024 | RH | $550.00 | Confer with DR, EK re status of discovery and application of Code | 0.6 | $330.00 | n/a | n/a | n/a | 0.2 | 0.2 | $110.00 | $110.00 | 0.2 |
| 5/21/2024 | RH | $550.00 | Confer with attorneys and staff re handling PMQ nonappearances | 0.2 | $110.00 | n/a | n/a | n/a | 0.1 | 0.1 | $55.00 | $55.00 | 0.0 |
| | | | Total Attorney Fees | 1415.8 | $524,519.00 | | | | | | $57,760.00 | $57,739.50 | |

**Billing Rate Summary**

| Initials | Avg/Hr | Attorney/Staff | Hours | Amount |
|---|---|---|---|---|
| ALM | $350.00 | Amy Morse | 62.2 | $21,770.00 |
| ALM | $450.00 | Amy Morse | 0.8 | $360.00 |
| AZ | $175.00 | Angelica Zamudio | 0.6 | $105.00 |
| CS | $425.00 | Christopher Swanson | 0.6 | $255.00 |
| CS | $450.00 | Christopher Swanson | 0.5 | $225.00 |
| DK | $250.00 | Daniel Kalinowski | 3.6 | $900.00 |

| | | | | |
|---|---|---|---|---|
| DK | $350.00 | Daniel Kalinowski | 17.3 | $6,055.00 |
| DK | $400.00 | Daniel Kalinowski | 9.4 | $3,760.00 |
| GM | $425.00 | Greg Mohrman | 1.0 | $425.00 |
| JKM | $400.00 | Jeffery Mukai | 1.3 | $520.00 |
| JWC | $450.00 | Jacob Cutler | 32.7 | $14,715.00 |
| JWC | $495.00 | Jacob Cutler | 18.8 | $9,306.00 |
| KSC | $375.00 | Kristina Stephenson-Cheang | 1.0 | $375.00 |
| LAU | $425.00 | Lauren Ungs | 82.3 | $34,977.50 |
| MC | $300.00 | Maite Colon | 8.8 | $2,640.00 |
| MC | $345.00 | Maite Colon | 13.9 | $4,795.50 |
| MC | $425.00 | Maite Colon | 0.9 | $382.50 |
| MER | $325.00 | Mitch Rosensweig | 1.6 | $520.00 |
| NF | $250.00 | Natalee Fisher | 1.2 | $300.00 |
| RH | $450.00 | Russell Higgins | 446.3 | $200,835.00 |
| RH | $550.00 | Russell Higgins | 42.9 | $23,595.00 |
| RK | $425.00 | Roger Kirnos | 22.3 | $9,477.50 |
| RK | $450.00 | Roger Kirnos | 11.4 | $5,130.00 |
| RK | $500.00 | Roger Kirnos | 43.2 | $21,600.00 |
| RK | $550.00 | Roger Kirnos | 41.5 | $22,825.00 |
| SS | $225.00 | Sundeep Samra | 76.0 | $17,100.00 |
| SW | $595.00 | Scot Wilson | 1.0 | $595.00 |
| TB | $225.00 | Thomas Burns | 21.5 | $4,837.50 |
| ZP | $250.00 | Zachary Powell | 424.5 | $106,125.00 |
| ZP | $375.00 | Zachary Powell | 26.7 | $10,012.50 |

**Daggett v. Ford** **Billing Rate Summary**

| Initials | Avg/Hr | Attorney/Staff | Hours | Amount |
|---|---|---|---|---|
| ALM | $350.00 | Amy Morse | 1.1 | $385.00 |
| ALM | $450.00 | Amy Morse | 0.1 | $45.00 |
| AZ | $175.00 | Angelica Zamudio | | $0.00 |
| CS | $425.00 | Christopher Swanson | | $0.00 |
| CS | $450.00 | Christopher Swanson | | $0.00 |
| DK | $250.00 | Daniel Kalinowski | 0.5 | $125.00 |
| DK | $350.00 | Daniel Kalinowski | 2.0 | $700.00 |
| DK | $400.00 | Daniel Kalinowski | 0.9 | $360.00 |
| GM | $425.00 | Greg Mohrman | | $0.00 |



Case 2:25-cv-04276-AB-PVC Document 30-4 Filed 07/30/25 Page 942 of 1097 Page ID #:2340

| | | | | |
|---|---|---|---|---|
| JKM | $400.00 | Jeffery Mukai | | $0.00 |
| JWC | $450.00 | Jacob Cutler | 1.0 | $450.00 |
| JWC | $495.00 | Jacob Cutler | 2.7 | $1,336.50 |
| KSC | $375.00 | Kristina Stephenson-Cheang | | $0.00 |
| LAU | $425.00 | Lauren Ungs | 12.2 | $5,185.00 |
| MC | $300.00 | Maite Colon | 0.7 | $210.00 |
| MC | $345.00 | Maite Colon | 2.3 | $793.50 |
| MC | $425.00 | Maite Colon | 0.1 | $42.50 |
| MER | $325.00 | Mitch Rosensweig | | $0.00 |
| NF | $250.00 | Natalee Fisher | 0.3 | $75.00 |
| RH | $450.00 | Russell Higgins | 27.9 | $12,555.00 |
| RH | $550.00 | Russell Higgins | 7.8 | $4,290.00 |
| RK | $425.00 | Roger Kirnos | 5.2 | $2,210.00 |
| RK | $450.00 | Roger Kirnos | 1.9 | $855.00 |
| RK | $500.00 | Roger Kirnos | 3.8 | $1,900.00 |
| RK | $550.00 | Roger Kirnos | 5.7 | $3,135.00 |
| SS | $225.00 | Sundeep Samra | 13.2 | $2,970.00 |
| SW | $595.00 | Scot Wilson | | $0.00 |
| TB | $225.00 | Thomas Burns | | $0.00 |
| ZP | $250.00 | Zachary Powell | 74.1 | $18,525.00 |
| ZP | $375.00 | Zachary Powell | 4.3 | $1,612.50 |
| | | | | **$57,760.00** |

**O'Brien v. Ford** **Billing Rate Summary**

| Initials | Avg/Hr | Attorney/Staff | Hours | Amount |
|---|---|---|---|---|
| ALM | $350.00 | Amy Morse | 1.1 | $385.00 |
| ALM | $450.00 | Amy Morse | 0.2 | $90.00 |
| AZ | $175.00 | Angelica Zamudio | | $0.00 |
| CS | $425.00 | Christopher Swanson | | $0.00 |
| CS | $450.00 | Christopher Swanson | | $0.00 |
| DK | $250.00 | Daniel Kalinowski | 0.5 | $125.00 |
| DK | $350.00 | Daniel Kalinowski | 1.5 | $525.00 |
| DK | $400.00 | Daniel Kalinowski | 0.7 | $280.00 |
| GM | $425.00 | Greg Mohrman | | $0.00 |
| JKM | $400.00 | Jeffery Mukai | | $0.00 |
| JWC | $450.00 | Jacob Cutler | 0.8 | $360.00 |
| JWC | $495.00 | Jacob Cutler | 2.8 | $1,386.00 |



Case 2:25-cv-04176-AB-PVC Document 1-45 Filed 05/08/25 Page 943 of 1097 Page ID #:2348

| | | | | |
|---|---|---|---|---|
| KSC | $375.00 | Kristina Stephenson-Cheang | | $0.00 |
| LAU | $425.00 | Lauren Ungs | 12.6 | $5,355.00 |
| MC | $300.00 | Maite Colon | 0.7 | $210.00 |
| MC | $345.00 | Maite Colon | 2.3 | $793.50 |
| MC | $425.00 | Maite Colon | 0.1 | $42.50 |
| MER | $325.00 | Mitch Rosensweig | | $0.00 |
| NF | $250.00 | Natalee Fisher | 0.3 | $75.00 |
| RH | $450.00 | Russell Higgins | 27.9 | $12,555.00 |
| RH | $550.00 | Russell Higgins | 7.9 | $4,345.00 |
| RK | $425.00 | Roger Kirnos | 5.2 | $2,210.00 |
| RK | $450.00 | Roger Kirnos | 1.6 | $720.00 |
| RK | $500.00 | Roger Kirnos | 4.6 | $2,300.00 |
| RK | $550.00 | Roger Kirnos | 5.4 | $2,970.00 |
| SS | $225.00 | Sundeep Samra | 13.0 | $2,925.00 |
| SW | $595.00 | Scot Wilson | | $0.00 |
| TB | $225.00 | Thomas Burns | | $0.00 |
| ZP | $250.00 | Zachary Powell | 73.9 | $18,475.00 |
| ZP | $375.00 | Zachary Powell | 4.3 | $1,612.50 |
| | | | | **$57,739.50** |

# EXHIBIT Q

**KNIGHT LAW GROUP, LLP**
Roger Kirnos (SBN 283163)
Jacob Cutler (SBN 264988)
10250 Constellation Blvd., Suite 2500
Los Angeles, California 90067
Telephone: (310) 552-2250

**KIESEL LAW LLP**
Paul R. Kiesel (SBN 119854)
8648 Wilshire Boulevard
Beverly Hills, CA 90211-2910
Telephone: 310-854-4444

**BOUCHER LLP**
Raymond P. Boucher (SBN 115364)
21600 Oxnard Street, Suite 600
Woodland Hills, CA 91367
Telephone: (818) 340-5400

Attorneys for Plaintiff,
DANN MARSHALL DAGGETT

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**IN RE: FORD MOTOR CO. DPS6 POWERSHIFT TRANSMISSION PRODUCTS LIABILITY LITIGATION**

THIS DOCUMENT RELATES ONLY TO:

*Daggett, Dann Marshall v. Ford Motor Company, et al., Case No.: 2:24-cv-04970-AB-PVC*

Case No.: 2:18-ML-02814-AB (FFMx)

**DECLARATION OF ROGER KIRNOS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES**

[Filed Concurrently with Plaintiff's Notice of Motion for Attorney's Fees, Costs and Expenses; Memorandum in Support Thereof, Declaration of Paul Kiesel, and Declaration of Raymond Boucher]

Date: October 11, 2024
Time: 10:00 a.m.
Dept.: 7B

# DECLARATION OF ROGER KIRNOS

I, Roger Kirnos, declare as follows:

1. I am an attorney at law duly licensed to practice before the courts of the State of California and attorney of record for Plaintiff Dann Marshall Daggett ("Plaintiff") in the instant action. I am the Managing Partner of Knight Law Group and, as such, I have personal knowledge of the following facts. If sworn as a witness, I could and would testify to them competently.

2. Attached hereto as **Exhibit A** is the attorney billing by Knight Law Group that was billed directly to Plaintiff's client matter since it was litigation conduct limited to just their case.

3. Attached hereto as **Exhibit B** is the attorney billings from Knight Law Group for work performed globally for clients' cases in JCCP 4856 ("Knight Law Plaintiff"). This invoice is intended to provide greater detail and to demonstrate the manner by which attorney fees for global JCCP work was attributed to Plaintiff's case.

4. For the reasons set forth herein and, in the Motion, Plaintiff request $70,008.00 in lodestar attorney's fees. This amount is comprised of the legal services provided by Knight Law Group, LLP ("Knight Law") in the amount of $28,859.00, the legal services provided by Kiesel Law, LLP ("Kiesel Law") as liaison Counsel in the amount of $22,069.00, and the legal services provided by Boucher LLP ("Boucher Law") in the amount of $19,080.00. Plaintiff's attorneys request a reasonable "lodestar" enhancement of 0.5 in the amount of $35,004.00, for a total attorney's fee award of $105,012.00. A true and correct copy of my firm's billing is attached hereto as **Exhibit A**. Plaintiff also request reimbursement of costs and expenses in the amount of $1,929.33. My firm advanced costs in this matter. Plaintiff are concurrently filing a motion for costs that attaches a Bill of Costs.

5. My law firm's internal computer systems create and maintain a client matter for each individual case. But because there was work performed on behalf of

multiple clients, the law firm created a separate JCCP 4856 client matter (just as they did in the NorCal JCCP and the federal MDL) in which the attorneys inputted time incurred when it was not attributable to any one single case alone. In presenting the global billing from this JCCP client matter, Plaintiff's attorneys apportioned some of the time fractionally to this case, leaving substantial time left to be attributed to future cases that resolve, if they resolve favorably.

6. To explain the attached billing invoices for work done in this JCCP: the time incurred for a task was inputted into a global JCCP matter profile, which was created because much of the work in the JCCP was performed concurrently for, and applicable to, numerous consumers represented by Plaintiff's attorneys. If part of that entry was already allocated to previous case there will be a corresponding column. Here, in this motion, there are *Faulkner, Mota* and *Ortiz, and O'Brien* columns to identify whether or not part of that entry was previously allocated in those fee applications. The next column shows the amount allocated to the *Daggett* matter. No allocations were made to these cases until the date they were added to this coordination. The last column shows the total remaining billable time that could be allocated to future cases. The hours claimed in previous cases (evidenced by their respective column) can't be duplicated or sought again in the future as those columns will remain in future motions and the court and Ford will have a record of that as well as the entire billing time sheets for the global JCCP entries.

7. For example, an entry may have taken .6 hours to perform in the JCCP client matter, and the attached global billing invoice will show that that time entry was allocated by .1 to *Faulkner, Mota* and *Ortiz, and O'Brien*, leaving the remaining .2 hours to be *potentially* allocated to other cases that may settle or succeed in trial in the future. This was the same methodology submitted in the NorCal JCCP that was approved by that Court. This method has complete transparency in demonstrating whether, if at all, a particular entry is allocated, to what case(s) it's allocated to, and the remaining balance going forward. This also ensures that if an

allocation has been used on a case it can never be used again in a different case going forward.

8. As explained above, because Plaintiff's case was not added into this JCCP until December 12, 2018, *no* entries until after that date are apportioned to his case. This means that the first entry for Plaintiff's case does not appear in Knight's billing invoice until page 30 of 84 pages of billing entries. When time is attributed to Plaintiff's case, the invoices indicate how much time is attributed to Plaintiff's case, and how much time remains to be ascribed to another case. The column with the *Daggett* allocation and the column showing the remaining total balance will remain in future fee applications to alleviate any of Ford's concerns that this same amount could be allocated again to a future case. This approach ensures that time is apportioned fairly and only to cases where appropriate, and that the recovery for work in this case is not duplicative of time requested in any other case in the past or in the future.

9. Plaintiff's counsel has attempted to meet and confer with Ford's counsel on further refining the methodology to a manner that would be suitable for Ford. However, Ford would not engage in such discussions. A true and correct copy of the email communications is attached hereto as **Exhibit C.**

10. On June 5, 2011, Plaintiff purchased a new 2012 Ford Focus for a total sales price of $25,300.80 inclusive of a $500.00 Mfg. Rebate ("Subject Vehicle"). The vehicle was manufactured and distributed by Ford Motor Company ("FMC" "Ford" or "Defendant"), which provided an express written warranty to be serviced by FMC authorized repair facilities. A true and correct copy of the Retail Installment Sales Contract is attached hereto as **Exhibit D**.

11. On June 26, 2012, within the applicable warranty period, Plaintiff took the Subject Vehicle to a Ford authorized repair facility because of transmission related concerns. The technician reprogrammed the Transmission Control Module and Powertrain Control Module.

12. On September 8, 2014, Plaintiff returned to the dealership with transmission related concerns. The technician performed another reprogram.

13. From October 29, 2014 until August 16, 2021, Plaintiff brought back the Subject Vehicle with transmission concerns on about six (6) more occasions. Despite these multiple repair attempts, these problems with the vehicle continued unabated.

14. Notwithstanding the ongoing repairs and continued manifestation of problems, Ford refused to acknowledge the defective nature of Plaintiff's vehicle. At all times, however, Ford had direct, contemporaneous knowledge of the vehicle's issues, which it records in various databases accessible to its authorized repair facilities and the corporate offices. These repair records indicate each time the vehicle was presented for repair during the warranty period, as well as every time the Ford repair facility found a problem attributable to Ford, and billed Ford for the work.

15. Frustrated, and concerned for his safety, Plaintiff contacted Ford and requested a buyback on or about April 25, 2017. Despite FMC's affirmative duty under the law to perform an investigation and offer relief, FMC refused to provide restitution in accordance with the Song Beverly Act.

16. Plaintiff contacted Knight Law and told the firm about the problems with the vehicle and the way FMC treated him. After reviewing the repair history and discussions with Plaintiff, Knight Law agreed to represent him and bear the risk of litigating the case on a fully contingent basis. Because Knight Law's compensation was purely contingent, the firm faced a genuine risk of not being paid for its services for years, if at all, while advancing thousands of dollars in costs and expenses on Plaintiff's behalf. In taking on this duty, the firm was facing a litigation behemoth— FMC is a multi-billion-dollar company, with a virtually infinite litigation war-chest, that wages a battle of attrition that most firms cannot withstand.

///

17. As a result of FMC's failure to fix the material defects associated with Plaintiff's vehicle, or otherwise comply with the Song-Beverly Act, Plaintiff filed a Complaint in this action on December 19, 2017, in Los Angeles County alleging willful violations of the Song-Beverly Act and violations of the Consumer Legal Remedies Act.

18. On January 22, 2018, FMC filed its Answer denying liability and asserting numerous defenses.

19. On February 16, 2018, Plaintiff drafted a set of written discovery including requests for production, requests for admission, special interrogatories, and form interrogatories. Plaintiff benefitted from Knight Law's experience litigating against Ford as it only took 1.4 hours to draft this entire set of written discovery. Without a starting template, this task would have taken far longer.

20. On March 29, 2018, Ford served its responses to Plaintiff's discovery requests. Plaintiff evaluated those responses and documents, and met and conferred with Ford regarding the deficiencies including that the responses were not code complaint, they lodged numerous meritless and boilerplate objections and failed to substantively respond to certain requests. Plaintiff's efforts explained why the information and documents sought were relevant, not unduly burdensome, and should be produced.

21. On June 19, 2018 Plaintiff attended the Case Management Conference. In June of 2018, Ford sought to transfer venue which Plaintiff opposed in July of 2018. On September 5, 2018, Plaintiff attended the further Case Management Conference / Order to Show Cause.

22. On December 12, 2018, the matter was added on to the JCCP 4856 at Ford's behest (and over Plaintiff opposition) where it remained for about five and a half (5.5) years.

23. On December 19, 2018, Plaintiff attended the Status Conference.

///

24. In February through May of 2019, Plaintiff reviewed, analyzed, and catalogued Ford's substantial document production (millions of pages of documents) on the defective DPS6 Transmission.

25. On April 18, 2019, Plaintiff deposed Ford's Tom Hamm. On April 25, 2019, Plaintiff deposed Chris Kwasniewski. On May 13, 2019, Plaintiff attended a Status Conference. In May of 2019, Plaintiff also prepared a request for genuineness of trial exhibits and created an exhibit list.

26. In June and July of 2019, Plaintiff prepared their experts for trial so that they could make a report and further analyzed trial exhibits. On July 25, 2019, Plaintiff appeared for the Status Conference.

27. In August through October of 2019 Plaintiff opposed Ford's demurrers and efforts to compel these cases to arbitration. In September, Plaintiff updated their master trial exhibit list and created an admissibility chart. Plaintiff also created deposition summaries and deposition designations.

28. On January 13, 2020, and January 28, 2020 Plaintiff attended the Status Conferences.

29. In March through May of 2020, Plaintiff prepared motions in limine and drafted additional written discovery and PMK deposition notices. Plaintiff also prepared another request for genuineness on important exhibits.

30. In September of 2020, Plaintiff met and conferred with Ford on foundation and the parties entered into a stipulation concerning authenticity and business record of exhibits. Plaintiff also prepared a timeline of events and prepared presentations to aid the judge and jury.

31. On October 21, 2020, January 25, 2021, and February 18, 2021 Plaintiff attended the Status Conferences. Plaintiff also continued to oppose Ford's efforts to compel these matters to arbitration. On May 19, 2021, Plaintiff attended the Status Conference.

///

32. On May 23, 2022, Plaintiff attended the Status Conference and prepared a corresponding joint report. Around this time Plaintiff researched Ford employees who had personal knowledge of certain hot documents for deposition.

33. In October of 2022, Plaintiff prepared a joint report and attended the November 4, 2022, December 8, 2022, and January 27, 2023 Status Conferences.

34. In February of 2023, Plaintiff worked on a discovery plan and attended a March 13, 2023, Status Conference. In April of 2023, Plaintiff opposed Ford's efforts at compelling arbitration and appeared at the April 27, 2023 Status Conference.

35. In July through November of 2023, Plaintiff propounded additional global written discovery and appeared at the October 31, 2023, Status Conference. In December of 2023, Plaintiff prepared reports on Next Trial Groups ("NTG"). On January 10, 2024, Plaintiff attended the Status Conference.

36. On March 27, 2024, to further prepare for trial, Plaintiff propounded a another set of written discovery requests. On April 19, 2024, Plaintiff attended the Status Conference.

37. On March 29, 2024, Ford propounded a set of written discovery including requests for production, requests for admission, special interrogatories, and form interrogatories. Plaintiff provided responses on May 10, 2024. On May 28, 2024, the dealership defendant propounded a set of written discovery requests.

38. On June 13, 2024, Ford removed the case to federal court. Plaintiff began efforts to remand.

39. On July 22, 2024, the case was mediated.

40. On August 14, 2024, FMC served a Rule 68 Offer for $53,132.00 in exchange for surrender of the subject vehicle plus a motion for attorney's fees, costs, and expenses wherein Plaintiff would be considered the prevailing party. The offer provided full restitution on the vehicle and substantial civil penalties. Plaintiff accepted on August 22, 2024. A true and correct copy of the signed Offer is attached

hereto as **Exhibit E.**

41. Plaintiff, as the prevailing party in this action, has made every reasonable effort to resolve the payment of Plaintiff's attorney's fees, costs, and expenses by FMC but was forced to file this Motion with the Court. Specifically, Plaintiff engaged in discussions starting on September 6, 2024. In these efforts, given FMC's categorical refusal to pay Global fees and costs, Plaintiff proposed resolving the individual fees and costs informally and having the Court decide the real issue in dispute. As of the writing of this motion, Ford did not agree nor made any offer whatsoever to resolve the attorney's fees at issue in this motion.

**The Firm's Fees Incurred in Litigating This Matter Are Reasonable Pursuant to the Lodestar Method**

42. I am the Managing Partner at Knight Law Group, LLP. I graduated in 2009 from Southwestern University School of Law in the top 10% with cum laude honors and received several academic based scholarships including the Dean's Merit Award. While in law school, I was an oralist on the team that reached the semi-finals at the August A. Rendigs, Jr. National Products Liability Moot Court Competition. I received the CALI Excellence Award for Real Estate Transactions. I received a certificate for completing the Alternative Dispute Resolution program in Hong Kong and Beijing through Pepperdine Law School's esteemed Strauss Institute for Dispute Resolution. I was a judicial extern for then-Chief Judge Alexander Kozinski of the Ninth Circuit Court of Appeals and thereafter served as a judicial extern to Judge F. Gary Klausner of the United States District Court, Central District of California. I received a B.A. in Economics with a minor in English from the University of California at Los Angeles, where I graduated with Provost Honors in 2000. I also studied economics at the University of Westminster in London, England. I was admitted to the California State Bar in 2012. I am admitted to practice in each of the United States District Courts in California.

///

43. I have been prosecuting consumers' claims under the Song-Beverly Act, and other consumer statutes such as the Consumer Legal Remedies Act ("CLRA) and the Automobile Sales Finance Act ("ASFA"), since 2013. I joined Knight Law Group in 2017 as a Partner at the firm. My professional focus has been to protect consumers from large-scale abuses by automobile manufacturers. I have been involved in the settlement of hundreds of cases over the years. I have been trial counsel in over 25 consumer-protection cases that have gone to jury verdict, and was one of the trial attorneys on the team that won a record verdict of $8.2M against Ford Motor Company, besting previous jury verdicts of $7.6M, $2.8M, and $1.6M. Three of these verdicts were in the Top 50 of all verdicts in California in the year they were rendered according to Top Verdicts, and were the #1, #2 and #5 top verdicts in the area of "Consumer Fraud, Deceptive Trade Practices, False Advertising, Fraudulent Concealment, Lemon Law" that year. In addition to litigating individual cases, I have been the lead attorney for Knight Law's clients in multiple federal Multi-District Litigation and state Judicial Counsel Coordinated Proceedings. I have represented clients in appeals and was personally and directly involved in authoring the briefing in at least 20 appeals, whether as appellant or respondent, including the following list of cases, which is not an exhaustive list of all appellate matters in which Knight Law Group was involved (Note: One asterisk (*) signifies an appeal brought as an Appellant, and two asterisks (**) signifies an appeal in which we were the Respondent):

<u>Published Opinions</u>

a. *Warren v. Kia Motors America* (2018) 30 Cal.App.5th 24; San Bernardino County, Case No. CIVDS1414575; Fourth Appellate District, Case No. SCV254959*

b. *Hanna v. Mercedes-Benz, USA* (2019) 36 Cal.App.5th 493; Los Angeles County, Case No. BC552038; Second Appellate District, Case No. B283776*

c. *Patel v. Mercedes-Benz, USA* (2019) 43 Cal.App.5th 1007; Los Angeles County, Case No. BC580425; Second Appellate District, Case No. B293813*

d. *Berroteran v. Ford Motor Company* (2019) 41 Cal.App.5th 518 (*review granted* 2/11/20); Los Angeles County, Case No. B542525; Second Appellate District, Case No. B296639*

e. *Berroteran v. Ford Motor Company* (2022) --- P.3d ----, 2022 WL 664719 Los Angeles County, Case No. B542525; California Supreme Court, Case No. S259522

f. *Reynolds v. Ford Motor Company* (2020) 47 Cal.App.5th 1105; Sonoma County Case No. SCV254959; First Appellate District, Case No. A154811**

g. *Anderson v. Ford Motor Company* (2022) 74 Cal.App.5th 946, San Joaquin County, Case No. 39-2013-00299512-CU-BC-STK; Third Appellate District, Case No. C089603**

h. *Niedermeier v. FCA US* (2020) 56 Cal.App.5th 1052 (*review granted* 2/20/21); Los Angeles County, Case No. BC638010; Second Appellate District, Case No. B293960**

i. *Hernandez v. FCA US* (2020) 50 Cal.App.5th 329 Los Angeles County, Case No. BC668240; Second Appellate District, Case No. B296516*

j. *Reck v. FCA US* (2021) 64 Cal.App.5th 682, Alameda County, Case No. RG16836069; First Appellate District, Case No. A157966*

k. *Covert v. FCA US,* (2022) 73 Cal.App.5th 821, Los Angeles County, Case No.  BC629240, Second Appellate District, Case No. B293960**

<u>Unpublished Opinions / Pending Appeals</u>

l. *Palombi v. FCA, US*, Solano County, Case No. FCS043387; First Appellate District, Case No. A156166*

m. *Margeson v. Ford Motor Company*, Los Angeles County, Case No. BC552038; Second Appellate District, Case No. B283776**

n. *Cofield v. Kia Motors America*, Kern County, Case No. S-1500-CV283504; Fifth Appellate District, Case No. F074977**

o. *Myers v. Ford Motor Company*, Los Angeles County, Case No. BC638302; Second Appellate District, Case No. B297244**

p. *Cieslikowski v. FCA US* (2020) 809 Fed.Appx. 386; USDC Central Dist., Case No. 5:17-cv-00562; Ninth Circuit, Case No. 21-55874*

q. *Bowser v. Ford Motor Company*, Riverside County, Case No. MCC1301631; Fourth Appellate District, Case No. E073609**

r. *Nolan v. Ford Motor Company*, Riverside County, Case No. RIC1307491; Fourth Appellate District, Case No. E073850**

s. *Brown v. Ford Motor Company,* Butte County, Case No. 160060; Third Appellate District, Case No. C088419**

t. *Coon v. Ford Motor Company*, Riverside County, Case No. MCC1300767; Fourth Appellate District, Case No. E073138**

u. *Rodriguez v. FCA US*, Riverside County, Case No. RIC1807727; Fourth Appellate District, Case No. E73766*

v. *Madrigal v. Hyundai Motor America*, Placer County, Case No. CV00338395; Third Appellate District, Case No. C090463**

w. *Figueroa v. FCA US*, Ventura County, Case No. 56-2018-00507038; Second Appellate District, Case No. B306275*

x. *Quintero v. Ford Motor Company*, USDC Central District, Case No. 2:18-cv-01912-AB-FFM; Ninth Circuit, Case No. 20-5583*

44. In addition to the above published and unpublished opinions, my firm was also involved in numerous other notable unpublished appellate decisions such as:

<u>Notable Favorable Unpublished Opinions</u>

a. *Smart v. Ford Motor Company*, Butte County, Case No. 159509; Third Appellate District, Case No. C087422*
b. *Noflin v. Volkswagen Group of America*, Los Angeles County, Case No. BC575800; Second Appellate District, Case No. B275638*
c. *McCullough v. FCA US* San Diego County, Case No. 37-2015-00013501-CU-BC-CTL; Fourth Appellate District, Case No. D073330*

<u>Published opinions</u>:

d. *Etcheson v. FCA US* (2018) 30 Cal.App.5th 831*
e. *Morris v. Hyundai Motor America* (2019) 41 Cal.App.5th 24*
f. *Montoya v. Ford Motor Company* (2020) 46 Cal.App.5th 493**
g. *Santana v. FCA US* (2020) 56 Cal.App.5th 334*

45. I am a member of, and have been a presenter at conferences, for the National Association of Consumer Affairs discussing topics including automotive fraud generally and best practices for pursuing and calculating damages to maximize consumers' recoveries. I have also presented a Continuing Legal Education course addressing recent and upcoming changes in the area of the Song-Beverly Act and other consumers statutes such as the Consumer Legal Remedies Act by educating attorneys about recent appellate decisions and upcoming appellate issues to be decided. I am also actively involved with non-profit groups such as Consumers for Auto Reliability and Safety and professional organizations such as Consumer Attorneys of California where I sit on the organization's PAC Board. I have also been voted by my peers as a Super Lawyer Rising Star each year since 2018 to

present. I am a member of the Los Angeles County Bar Association and Beverly Hills Bar Association. My current billing rate is $500 and my initials are indicated in the billing as “RK”.

46. Debra Reed is an Associate Attorney II at Knight Law Group. Ms. Reed earned her Juris Doctor from the Santa Clara University School of Law in 2009, her Master of Business Administration at City University of New York in 2000, and her Bachelor of Arts from Boston College in 1986. Ms. Reed began her career in finance working as a trader on the New York Stock Exchange. She earned her MBA at night while working full time at Citi. Ms. Reed then worked as Management Consultant at PWC in financial services technology, before moving on to become Managing Director at Wells Fargo Private Asset Management. Ms. Reed’s legal career began with her work as a legal operations associate at Cisco Systems, where she worked on licensing agreements, UCC sale of goods contracts, intellectual property rights enforcement in China, and ad hoc projects for General Counsel. After passing the bar, Ms. Reed worked as a litigation attorney at Google specializing in intellectual property and antitrust litigation, and later as Director of Legal and Business Affairs at Disney Concerts. Ms. Reed spent the last several years as a bankruptcy and civil litigation attorney at a firm in Los Angeles. Ms. Reed’s legal, financial, and consulting experience positioned her well to protect consumers against violations of the Song-Beverly Consumer Warranty Act at Knight Law Group, LLP. Ms. Reed is admitted to the California Bar, the New York Bar, and the New Jersey Bar. Her hourly rate in this matter is $495/hour for 2023. Her billing entries are indicated by the initials “DR” in the billing statement exhibited to this declaration.

47. Elvira Kamosko is an Associate Attorney at Knight Law Group. She graduated from Southwestern Law School and was admitted to practice in 2021. Ms. Kamosko’s hourly rate in this matter is $295/hour. Ms. Kamosko’s billing entries are indicated by the initials “EK” in the billing statement exhibited to this

declaration.

48. George Aguilar was an associate at Knight Law Group, LLP. He received his undergraduate degree from the University of California, Berkeley in 2011, and his law degree from the University of Maryland Carey School of Law in 2014. Mr. Aguilar was admitted to the California Bar in 2015, and spent his first year and a half practicing family law, criminal defense, personal injury and bankruptcy before joining my firm. Mr. Aguilar's hourly billing rate in this matter was $275/hour for 2017-2019. Mr. Aguilar's billing entries are indicated by the initials "GA" in the billing statement exhibited to this declaration.

49. George Semaan was an associate at my firm. Mr. Semaan was admitted to the Bar in 2016 and joined my firm in 2017. Mr. Semaan graduated from Chapman University Fowler School of Law in 2016, and spent his first year practicing intellectual property, business and employment law. Mr. Semaan's hourly billing rate in this matter was $225/hour for 2017-2019. His billing entries are indicated by the initials "GS" in the billing statement exhibited to this declaration.

50. Jonathan Cagliata was an associate at my firm. Mr. Cagliata was admitted to the Bar in 2017 and was with the firm for one year. He is a graduate from Loyola Law School, Loyola Marymount University and received his undergraduate degree from the University of California, Los Angeles. His hourly rate in this matter was $225/hour for 2017-2018. His billing entries are indicated by the initials "JC" in the billing statement exhibited to this declaration.

51. Jodie Koo was an Associate in my office. Ms. Koo graduated from Boston University School of Law and was admitted to practice in California in 2017. The hourly rate for Ms. Koo in this matter was $225/hour for 2018. Ms. Koo's billing entries are indicated by "JK" in the attached invoice.

52. Jacob Cutler, a Senior Attorney at Knight Law, graduated from the University of Miami School of Law and was admitted to practice in California in 2009. Prior to his employment at Knight Law, he worked for over five years at a

different lemon law firm gaining valuable experience in this area of law. At Knight, Mr. Cutler focuses on trial practice, and post-trial/settlement motions. Mr. Cutler's hourly rate in this matter is $425/hour for 2020-2021, $450/hour for 2022, and $495/hour for 2023 and 2024. Mr. Cutler's billing entries are indicated by the initials "JWC" in the billing statement exhibited to this declaration.

53. Kristina Stephenson-Cheang, a former associate, graduated from Western State University College of Law and was admitted to practice in 2008. Ms. Stephenson-Cheang was employed with the firm since 2013. Prior to her employment at Knight Law, she worked for a different lemon law firm gaining valuable experience in this area of law. Ms. Stephenson-Cheang's hourly rate in this matter was $375/hour for 2013-2020. Ms. Stephenson-Cheang's billing entries are indicated by the initials "KSC" in the billing statement exhibited to this declaration.

54. Marisa Melero is a senior associate at my firm. Ms. Melero has been employed by the firm since March of 2017. Ms. Melero graduated from University of California Los Angeles, Southwestern Law School, and was admitted to practice law in 2015. Her prior professional experience includes employment and entertainment law where she also gained valuable experience in the area of copyright, contracts and negotiations. Ms. Melero's hourly rate in this matter is $225/hour for 2017-2020, $295/hour for 2021, $345/hour for 2022, $395/hour for 2023, and $425/hour for 2024. Ms. Melero's billing entries are indicated by the initials "MM" in the billing statement exhibited to this declaration.

55. Natalee Fisher was an associate at my firm. Ms. Fisher was admitted to the Bar in 2015 and has been working at the firm since 2017. She is a graduate from the University of San Francisco School of Law, and received her undergraduate degree from Syracuse University. Her hourly rate in this matter was $250/hour for 2017-2020 and $295/hour for 2021. Her billing entries are indicated by the initials "NF" in the billing statement exhibited to this declaration.

///

56. Russell Higgins obtained his J.D. at Pepperdine University School of Law and was admitted to practice in 2003. Mr. Higgins was an Associate and then a Partner with the firm; his hourly rate in this matter is $450/hour for 2015-2020, $495/hour for 2021, and $550/hour for 2023. Mr. Higgins' billing entries are indicated by the initials "RH" in the billing statement attached to this declaration.

57. Sundeep Samra is an associate at my firm. Mr. Samra was admitted to the Bar in 2018 and has been working at the firm since then. He is a graduate of the two-year accelerated program at Southwestern Law School and received his undergraduate degree from the University of California, Los Angeles (UCLA). Mr. Samra specializes in handling discovery matters, opposing motions for summary judgment or adjudication, arbitrations, and second-chairing trials. His hourly rate in this matter is $225/hour for 2018-2020, $270/hour for 2021, $325/hour for 2022 and $375/hour for 2023. His billing entries are indicated by the initials "SS" in the billing statement exhibited to this declaration.

58. As always, Knight Law attempts to keep attorney's fees and costs down while providing vigorous and effective representation.

59. On September 13, 2022, the Hon Lawrence J. Riff approved all of Knight Law's rates as reasonable ranging from $550/hr-$225/hr in the JCCP 4856 matter *Susan Goyzueta v. Ford Motor Company.* Attached hereto as **Exhibit F** is a true and correct copy of an excerpt from the September 13, 2022 hearing transcript (Pages 1-4 & 930-931).

60. Specifically the Court stated "[O]VERALL I WANT TO TELL YOU, I AM NOT MUCH DISTURBED BY THE BILLING IN MS. GOYZUETA'S CASE.· ***I'M NOT DISTURBED BY THE RATES***, AND I'M NOT DISTURBED BY THE ACCURACY – SPECIFICITY THAT IS A BETTER WORD, OF THE TIME DESCRIPTIONS.· I'M NOT DISTURBED THAT THE BILL DOES NOT DISCLOSE THE CONFIDENTIAL COMMUNICATIONS WITH THE CLIENT.· I'M GOING TO TAKE COUNSEL'S WORD WHEN THEY TELL ME UNDER

PENALTY OF PERJURY THAT THIS IS WHAT THEY CHARGE, THAT THEY DID THAT AND IF THEY SPEND HALF AN HOUR ON JULY 3RD, 2017 TALKING ABOUT THEIR CLIENT ABOUT SOMETHING I DON'T NEED THEM TO TELL ME MORE OF WHAT THEY TALKED ABOUT. · · · · · · TO THE EXTENT THAT I HAVE QUESTIONS AND/OR ISSUES, IT CONCERNS THE PROPOSITION THAT THERE IS BILLING FOR FRAUD ONLY." (emphasis added) (Id.)

61. On January 9, 2024, Judge Michael W. Fitzgerald awarded rates as reasonable ranging from $875/hr-$295/hr in the matter of *Oswaldo Sanchez Hernandez v. Ford Motor Company* (United States District Court Central District of California, Case No. 2:22-cv-03361-MWF-KS.) A true and correct copy of the Order is attached hereto as **Exhibit G.**

62. One of Ford's trial counsel in a lemon law matter charged $450.00 per hour for a sixth-year associate who did not attend trial, and attested that it was either at *or below* the market rate for *defense* attorneys in San Joaquin County. Attached hereto as **Exhibit H** is a true and correct copy of the declaration of Ford's counsel filed in the matter of *Anderson v. Ford*, San Joaquin County, case number STK-CV-UBC-2013-0007198.

63. All time billing entries were completed contemporaneously with each dated entry or near in time to the work performed. I have personally reviewed the billing entries to ensure that they appropriately reflect the time expended. I have removed or reduced any time I felt was excessive, duplicative, or otherwise unreasonable, or I have labeled the entry as a "no charge", as identified by the "N/C" in the invoice. My firm does not bill clients for secretarial support staff time other than for senior trial paralegals.

64. I request a multiplier of 0.5 based on my contingent fee, the risk and delay in payment associated with a contingent fee scenario, and the result achieved. Such a multiplier is reasonable and towards the low end under the established law.

(*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 255.) Plaintiff's attorneys are paid only if Plaintiff prevails, unlike Defendants' attorneys who get paid monthly regardless of the outcome. Moreover, Defendants' attorneys typically have a continuing and ongoing relationship, whereas this firm will most likely not have the opportunity to represent Plaintiff again.

65. It is not uncommon for attorney's fees and costs to exceed the client's damages. The Legislature acknowledged such a circumstance, which is the reason behind the fee shifting provision of the Song-Beverly Act. Otherwise, consumers would be left without opportunity for redress when their damages were not enough for an attorney to take the case on a contingent fee or hourly rate basis. Such a result occurs in large part because of dealerships' or vehicle manufacturers' refusal to adhere to statutory laws protecting consumers, resistance to honoring consumers' complaints, and generally playing games or simply abusing discovery procedures. For example, FMC could have avoided paying any attorney's fees whatsoever had it admitted to its wrongdoing early on and repurchased the subject vehicle. Instead, FMC engaged in expensive litigation, and drove up fees and costs by, among other things, denying liability, engaging in extensive discovery, removing the case to federal court, coordinating the matter to the JCCP 4856 for five and a half (5.5) years causing Plaintiff to propound discovery, take or defend depositions, oppose Ford's pleading challenges and efforts to compel arbitration, prepare for trial, and appear at numerous court hearings with corresponding joint reports.

66. Lemon law cases are not simple actions. They require a specialized understanding of the full scope of consumer protection laws, which are highly nuanced. The cases also require knowledge of intricacies of automobiles and a lexicon associated with them, as well as a knowledge concerning how to investigate these matters. They also require knowledge of auto manufacturers' and dealers' protocols for repairing vehicles.

///

67. Generally speaking, clients of the firm are benefitted by the experience of this firm insofar as work-product from other cases can be used in this case as well. Hence, a substantial amount of time was saved by not needing to draft each document from scratch and little time was needed to "get up to speed" in this specialized area of law. In effect, FMC also benefitted when it comes to a determination of reasonable attorney's fees to be paid because there are numerous cost-saving techniques employed by the firm.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 11th day of September 2024, at Los Angeles, California.

*/s/ Roger Kirnos*
ROGER KIRNOS

# EXHIBIT A

**Invoice**

| Date | Attorney | Rate | Task | Time | FEE |
|---|---|---|---|---|---|
| 8/29/2017 | RK | $425.00 | Review intake materials for the purposes of assessing representation | 0.2 | $85.00 |
| 9/12/2017 | JC | $225.00 | Draft DPS6 Complaint | 1.5 | $337.50 |
| 9/13/2017 | JC | $225.00 | Update DPS6 complaint draft with dealer language | 0.6 | $135.00 |
| 10/11/2017 | JC | $225.00 | Update DPS6 Complaint draft | 0.4 | $90.00 |
| 11/8/2017 | JC | $225.00 | Updating DPS6 Complaint | 0.3 | $67.50 |
| 11/9/2017 | JC | $225.00 | Draft letter to Defense re CLRA | 0.3 | $67.50 |
| 11/16/2017 | JC | $225.00 | Update DPS6 Complaint Caption Page | 0.1 | $22.50 |
| 11/27/2017 | NF | $250.00 | Review complaint to ensure proper discovery date | 0.1 | $25.00 |
| 11/28/2017 | NF | $250.00 | Update discovery date paragraph in complaint | 0.2 | $50.00 |
| 12/4/2017 | NF | $250.00 | Update complaint to remove discovery date paragraph and tolling | 0.2 | $50.00 |
| 12/11/2017 | MC | $300.00 | Review and edit DP6 Complaint | 0.2 | N/C |
| 1/4/2018 | NF | $250.00 | Review Court Notice of CMC | 0.1 | N/C |
| 1/17/2018 | JC | $225.00 | Review letter from Defense in response to 12/18/17 CLRA letter | 0.1 | $22.50 |
| 1/10/2018 | ALM | $350.00 | Meeting with staff; Discuss client update call | 0.1 | N/C |
| 1/22/2018 | RK | $425.00 | Review Def's Answer to Complaint and Notice of Jury fees | 0.1 | $42.50 |
| 2/2/2018 | ALM | $350.00 | Meeting with staff; Discuss client update call | 0.1 | N/C |
| 2/16/2018 | KSC | $375.00 | Prepare Ptf's Form ROG to Defense, set one | 0.1 | $37.50 |
| 2/16/2018 | KSC | $375.00 | Prepare Ptf's Special ROG to Defense, set one | 0.5 | $187.50 |
| 2/16/2018 | KSC | $375.00 | Prepare Ptf's RFA to Defense, set one and declaration | 0.3 | $112.50 |
| 2/16/2018 | KSC | $375.00 | Prepare Ptf's RFP to Defense, set one and declaration | 0.5 | $187.50 |
| 2/23/2018 | RK | $425.00 | Review Defs' Answer to First Amended Complaint | 0.1 | $42.50 |
| 3/1/2018 | ALM | $350.00 | Meeting with staff; Discuss client update call | 0.1 | N/C |
| 3/30/2018 | KSC | $375.00 | Review and analyze Def's Responses to Form ROG | 0.5 | $187.50 |
| 3/30/2018 | KSC | $375.00 | Review and analyze Def's Responses to Special ROG | 1.1 | $412.50 |

| | | | | | |
|---|---|---|---|---|---|
| 3/30/2018 | KSC | $375.00 | Review and analyze Def's Responses to RFA | 0.3 | $112.50 |
| 3/30/2018 | KSC | $375.00 | Review and analyze Def's Responses to RFP | 1.0 | $375.00 |
| 4/3/2018 | NF | $250.00 | Communication with Client | 0.4 | $100.00 |
| 4/4/2018 | JC | $225.00 | Communication with Client | 0.3 | $67.50 |
| 4/4/2018 | NF | $250.00 | Received phone call from Client | 0.4 | $100.00 |
| 4/10/2018 | ALM | $350.00 | Meeting with staff; Discuss client update call | 0.1 | N/C |
| 5/10/2018 | KSC | $375.00 | Review and revise pltf letter to deft - meet and confer letter in advance of CMC | 0.1 | $37.50 |
| 5/22/2018 | GA | $275.00 | Review case file re determination to stipulate to including case in JCCP 4856; E-mail to Russ re same | 0.3 | $82.50 |
| 5/22/2018 | RH | $450.00 | Review proposal for stipulated coordination; Confer with GA and ALM re same (time split with unrelated cases) | 0.1 | $45.00 |
| 6/7/2018 | KSC | $375.00 | Review Def's Case Management Statement | 0.1 | $37.50 |
| 6/11/2018 | GA | $275.00 | Review Def's Notice of Submission of Petition for Coordination of Add on cases | 0.1 | $27.50 |
| 6/19/2018 | GS | $225.00 | Review files in preparation for hearing | 0.3 | $67.50 |
| 6/19/2018 | GS | $225.00 | Attend CMC hearing | 0.5 | $112.50 |
| 6/25/2018 | GS | $225.00 | Results email | 0.3 | $67.50 |
| 6/19/2018 | GS | $225.00 | Travel back to office from LASC | 0.9 | $202.50 |
| 6/28/2018 | GA | $275.00 | Discussions with staff and Jodie re opposing transfer of venue | 0.3 | $82.50 |
| 7/13/2018 | JK | $225.00 | Research on opposition to venue transfer | 1.0 | $225.00 |
| 7/26/2018 | JK | $225.00 | Meeting with George A. re opposition to venue transfer | 0.2 | $45.00 |
| 7/27/2018 | JK | $225.00 | Discussion with George A. about incorporating the fraud element into the oppo for venue transfer | 0.1 | $22.50 |
| 7/27/2018 | JK | $225.00 | Draft Plaintiff's opposition to venue transfer | 2.6 | $585.00 |
| 7/27/2018 | JK | $225.00 | Revise Plaintiff's motion to set aside dismissal | 1.9 | $427.50 |
| 7/27/2018 | JK | $225.00 | Research opposition to motion for venue transfers | 0.7 | $157.50 |

| | | | | | |
|---|---|---|---|---|---|
| 7/27/2018 | JK | $225.00 | Confer with George re motion for venue transfer | 0.3 | $67.50 |
| 7/27/2018 | JK | $225.00 | Discuss with George re Court decided on its own motion to transfer venue so there are no moving papers | 0.1 | $22.50 |
| 7/30/2018 | JK | $225.00 | Finish drafting of Plaintiff's opposition to venue transfer; Sent to George for review | 2.2 | $495.00 |
| 7/31/2018 | GA | $275.00 | Review and made edits and comments to Opposition to Venue Transfer; E-mail to Jodie re same | 1.1 | $302.50 |
| 8/1/2018 | JK | $225.00 | Draft declaration in support of Ptf's oppo to venue transfer; Sent to George A. for review | 0.5 | $112.50 |
| 8/1/2018 | JK | $225.00 | Revise opposition to venue transfer. Sent revisions to George A. | 1.6 | $360.00 |
| 8/2/2018 | JK | $225.00 | Confer with George about whether opposition to venue transfer is really due tomorrow | 0.2 | $45.00 |
| 8/3/2018 | JK | $225.00 | Conversation with George A. re opposition | 0.1 | $22.50 |
| 8/14/2018 | KSC | $375.00 | Review and sign Case Management Statement | 0.1 | $37.50 |
| 8/23/2018 | KSC | $375.00 | Review Def's Case Management Statement | 0.1 | $37.50 |
| 9/4/2018 | GA | $275.00 | Discussion with Jon re OSC re transfer and status of coordination | 0.2 | $55.00 |
| 9/4/2018 | JC | $225.00 | Prepare for OSC re Venue (including conversation with GA) | 0.5 | $112.50 |
| 9/5/2018 | JC | $225.00 | Prepare for and attend CMC/OSC | 1.1 | $247.50 |
| 9/5/2018 | JC | $225.00 | Travel to/from CMC/OSC (111 N Hill St., LA CA 90012) - (Time split with 2 cases) | 1.1 | $247.50 |
| 9/5/2018 | JC | $225.00 | CMC/OSC Results Email | 0.2 | $45.00 |
| 9/19/2018 | MM | $225.00 | Confer re venue | 0.1 | $22.50 |
| 10/3/2018 | MM | $225.00 | Client call | 0.3 | $67.50 |
| 11/14/2018 | KSC | $375.00 | Review and sign Case Management Statement | 0.1 | $37.50 |
| 1/16/2019 | GA | $275.00 | Review Def's Notice of Submission of Petition for Coordination of Add on cases | 0.1 | $27.50 |
| 9/11/2019 | NF | $250.00 | Spoke with client | 0.1 | $25.00 |
| 7/12/2021 | NF | $250.00 | Review Def's Substitution of Attorney | 0.1 | $25.00 |

| | | | | | |
|---|---|---|---|---|---|
| 4/19/2022 | CS | $375.00 | Analyze case strength/facts for purposes of selecting additional IDP cases | 0.1 | N/C |
| 10/4/2023 | MC | $425.00 | Review client call notes/questions and Confer with L. Pagola re response to client | 0.2 | N/C |
| 1/25/2024 | RK | $550.00 | Email to staff re initiating discovery and outline strategy | 0.1 | $55.00 |
| 1/31/2024 | RK | $550.00 | Draft Proposed Orders re MTC Depo | 0.1 | $55.00 |
| 3/27/2024 | JWC | $495.00 | Draft RFP | 0.8 | $396.00 |
| 3/27/2024 | JWC | $495.00 | Draft Special ROG and supporting declaration | 0.9 | $445.50 |
| 3/27/2024 | JWC | $495.00 | Draft RFA and supporting declaration | 0.7 | $346.50 |
| 4/15/2024 | RK | $550.00 | Review cases files in Quintero and Pedante re materials for R. Higgins for IDP trials/Quintero, call with R. Higgins | 0.1 | $55.00 |
| 4/15/2024 | RK | $550.00 | Meeting with staff re prep for trial filings, discuss strategy for trial | 0.1 | $55.00 |
| 4/18/2024 | RK | $550.00 | Meeting with D. Reed, E. Komosko, R. Higgins re Ford's written discovery | 0.2 | $110.00 |
| 4/19/2024 | RK | $550.00 | Review draft of proposed pretrial schedule, respond to R. Higgins re suggested modifications and expert matters | 0.1 | $55.00 |
| 4/19/2024 | RK | $550.00 | Attend Status Conference | 0.1 | $55.00 |
| 4/22/2024 | EK | $350.00 | Review and analyze Def's Form ROG, set one | 0.1 | $35.00 |
| 4/22/2024 | EK | $350.00 | Review and analyze Def's Special ROG, set one | 0.2 | $70.00 |
| 4/22/2024 | EK | $350.00 | Review and analyze Def's RFA, set one | 0.1 | $35.00 |
| 4/22/2024 | EK | $350.00 | Review and analyze Def's RFP, set one | 0.3 | $105.00 |
| 4/23/2024 | EK | $350.00 | Meeting with Roger Kirnos, Russell Higgins, and Debra Reed regarding Plaintiff's responses | 0.3 | $105.00 |
| 4/23/2024 | EK | $350.00 | Review Plaintiff's document production | 0.2 | $70.00 |
| 4/23/2024 | RK | $550.00 | Meeting with R. Higgins, E. Komosko and D. Reed re plaintiff's written discovery responses (split time with all NTG2 cases) | 0.2 | $110.00 |

| | | | | | |
|---|---|---|---|---|---|
| 4/23/2024 | RK | $550.00 | Review notes on Ford's discovery requests in preparation for meeting with team | 0.1 | $55.00 |
| 4/24/2024 | JWC | $495.00 | Review Def's NOD of Plaintiff; Draft objections | 0.1 | $49.50 |
| 4/26/2024 | RK | $550.00 | Review trial countdown to ascertain important dates leading to trial | 0.1 | $55.00 |
| 4/29/2024 | EK | $350.00 | Draft Plaintiff's responses to Defendant's first set of requests for admission | 0.8 | $280.00 |
| 4/29/2024 | EK | $350.00 | Draft Plaintiff's responses to Defendant's first set of requests for production of documents | 0.8 | $280.00 |
| 5/1/2024 | EK | $350.00 | Draft Plaintiff's responses to Defendant's first set of form interrogatories | 0.7 | $245.00 |
| 5/1/2024 | EK | $350.00 | Draft Plaintiff's responses to Defendant's first set of special interrogatories | 0.8 | $280.00 |
| 5/2/2024 | DR | $495.00 | Review and edit responses to RFAs and RFPs | 0.7 | $346.50 |
| 5/3/2024 | JWC | $495.00 | Revise PMK deposition notice | 0.3 | $148.50 |
| 5/3/2024 | EK | $350.00 | Zoom meeting with Debra Reed regarding discovery responses | 1.0 | $350.00 |
| 5/3/2024 | DR | $495.00 | Review and edit Plaintiff's responses to Form Interrogatories | 0.9 | $445.50 |
| 5/7/2024 | RH | $550.00 | Review and sign NOD of FMC's PMK | 0.1 | $55.00 |
| 5/7/2024 | RH | $550.00 | Prepare plaintiff's discovery responses | 0.7 | $385.00 |
| 5/7/2024 | DR | $495.00 | Read partners edits to the discovery responses | 0.2 | $99.00 |
| 5/8/2024 | DR | $495.00 | Consult partner regarding statute of limitations | 0.2 | $99.00 |
| 5/9/2024 | RH | $550.00 | Prepare responses to discovery requests | 0.3 | $165.00 |
| 5/10/2024 | EK | $350.00 | Make edits to Plaintiff's responses | 0.3 | $105.00 |
| 5/10/2024 | RH | $550.00 | Prepare responses to discovery requests | 0.3 | $165.00 |
| 5/10/2024 | RK | $550.00 | Review draft of discovery responses, Prepare comments for revisions; Email to E. Kamosko and D. Reed re S.ROG and F. ROG responses | 0.9 | $495.00 |
| 5/10/2024 | RK | $550.00 | Review emails from R. Higgins and D. Reed re discovery responses, respond to the same | 0.1 | $55.00 |

| | | | | | |
|---|---|---|---|---|---|
| 5/14/2024 | RH | $550.00 | Review and sign Request for Dismissal of Cause of Action | 0.1 | $55.00 |
| 5/21/2024 | SS | $400.00 | Review Def's Objection to NOD of FMC's PMQ | 0.1 | $40.00 |
| 5/23/2024 | SS | $400.00 | Attend deposition of Def's PMQ (nonappearance) | 0.5 | $200.00 |
| 5/29/2024 | RK | $550.00 | Initial review of terms of 998 offer | 0.1 | $55.00 |
| 5/30/2024 | RH | $550.00 | Review and evaluate proposed 998; confer with RK and JC re same | 0.1 | $55.00 |
| 5/30/2024 | EK | $350.00 | Review and analyze Vista Ford of Oxnard's Form ROG to Plaintiff | 0.1 | $35.00 |
| 5/30/2024 | EK | $350.00 | Review and analyze Vista Ford of Oxnard's Special ROG to Plaintiff | 0.2 | $70.00 |
| 5/30/2024 | EK | $350.00 | Review and analyze Vista Ford of Oxnard's RFA to Plaintiff | 0.1 | $35.00 |
| 5/30/2024 | EK | $350.00 | Review and analyze Vista Ford of Oxnard's RFP to Plaintiff | 0.2 | $70.00 |
| 6/3/2024 | RK | $550.00 | Receive email from opposing counsel re plaintiff deposition dates, call with R. Higgins, respond to opposing counsel, email to staff re coordinate | 0.1 | $55.00 |
| 6/5/2024 | RK | $550.00 | Review and analyze Defendant’s 998 offer; Meeting with M. Melero re case evaluation / Def's 998 offer | 0.1 | $55.00 |
| 6/14/2024 | MM | $425.00 | Review and analyze Defendant’s 998 offer | 0.3 | $127.50 |
| 6/14/2024 | MM | $425.00 | Communication with client | 0.5 | $212.50 |
| 6/14/2024 | RH | $550.00 | Review Court Standing Order for Civil Cases assigned to Judge Birotte and Order setting Scheduling Conference | 0.1 | N/C |
| 6/17/2024 | RH | $550.00 | Review and evaluate Def's Notice of removal and remand | 0.2 | $110.00 |
| 6/17/2024 | RK | $550.00 | Review Court's minute order re Status re Removal, review prior motion for remand filed in MDL to assess strategy, drafted lengthy email to R. Higgins and J. Cutler (split time with O'Brien) | 0.6 | $330.00 |
| 6/17/2024 | RK | $550.00 | Review and sign Mediation Agreement | 0.1 | $55.00 |
| 6/18/2024 | RK | $550.00 | Email to R. Higgins re Court's notice re OSC re status of removal, multiple email exchanges | 0.3 | $165.00 |

**Invoice**

| | | | | | |
|---|---|---|---|---|---|
| 6/24/2024 | RH | $550.00 | Review Non-Party Vista Ford Lincoln of Oxnard's Response to Depo Subp for Production of documents | 0.1 | $55.00 |
| 6/26/2024 | EK | $350.00 | Draft Plaintiff's responses to Defendant's first set of form interrogatories (dealership). - matter removed to federal | 0.4 | N/C |
| 6/26/2024 | EK | $350.00 | Draft Plaintiff's responses to Defendant's first set of special interrogatories (dealership). - matter removed to federal | 0.4 | N/C |
| 6/26/2024 | EK | $350.00 | Draft Plaintiff's responses to Defendant's first set of requests for admission (dealership). - matter removed to federal | 0.4 | N/C |
| 6/26/2024 | EK | $350.00 | Draft Plaintiff's responses to Defendant's first set of requests for production of documents (dealership). - matter removed to federal | 0.4 | N/C |
| 6/26/2024 | RH | $550.00 | Confer with EK re discovery status | 0.2 | $110.00 |
| 6/28/2024 | RH | $550.00 | Review DCH Thousand Oaks-F Inc.'s Objection to NOD of PMQ | 0.1 | $55.00 |
| 7/1/2024 | RH | $550.00 | Review files and removal papers, and outline issues for potential motion for remand; communication with FMC counsel to confer re same (time split with related case) | 1.3 | $715.00 |
| 7/11/2024 | DR | $495.00 | Read edits by Amir to the stipulations and proposed orders. accept changes. send for signature | 0.3 | $148.50 |
| 7/11/2024 | DR | $495.00 | Draft Stipulation and proposed order to extend the deadline to file a motion to remand for 14 days after the mediation | 1.5 | $742.50 |
| 7/17/2024 | RH | $550.00 | Prepare for and meet with clients re upcoming mediation | 0.4 | $220.00 |
| 7/19/2024 | RH | $550.00 | Communication with Opposing Counsel re stipulation for coherent scheduling order with remaining MDL cases; time split with related case | 0.2 | $110.00 |
| 7/19/2024 | DR | $495.00 | Draft Joint Stipulation to merge this case in with the MDL No. 2814-AB (PVCx) | 0.5 | $247.50 |

**Invoice**

| | | | | | |
|---|---|---|---|---|---|
| 7/22/2024 | RH | $550.00 | Prepare for and attend mediation; Communication with client | 0.8 | $440.00 |
| 7/23/2024 | RH | $550.00 | Draft Memo re outcome of mediation and next steps | 0.2 | $110.00 |
| 7/31/2024 | JWC | $495.00 | Review and analyze Def's Offer of Judgment pursuant to Rule 68 | 0.1 | $49.50 |
| 8/6/2024 | RH | $550.00 | Review court order re initial scheduling / OSC; confer with staff re status of filings | 0.1 | $55.00 |
| 8/13/2024 | DR | $495.00 | Review Docket in matter; In order to avoid OSC re dismissal must file the NOS before 8/23; Resend to Partner to review | 0.3 | $148.50 |
| 8/14/2024 | RH | $550.00 | Communication with Defense Counsel re proposed settlements not consistent with mediation (time split with related case) | 0.4 | $220.00 |
| 8/20/2024 | DR | $495.00 | Follow up with Russ for proposed edits to the Notice of Settlement so we can send over to Defense counsel for signature before the case is dismissed for lack of prosecution | 0.2 | $99.00 |
| 8/22/2024 | RH | $550.00 | Review and execute revised Rule 68; Prepare joint notice of settlement | 0.2 | $110.00 |
| 9/3/2024 | RH | $550.00 | Confer with partners/staff re fee allocation issues between state/fed courts | 0.2 | $110.00 |
| 9/5/2024 | RH | $550.00 | Confer with staff re fee allocation method | 0.2 | $110.00 |
| 9/6/2024 | JWC | $495.00 | Meet and confer on attorney's fees, costs and expenses | 0.2 | $99.00 |
| 9/10/2024 | JWC | $495.00 | Draft motion for costs | 2.7 | $1,336.50 |
| 9/10/2024 | JWC | $495.00 | Review and audit time records | 0.8 | $396.00 |
| 9/11/2024 | JWC | $495.00 | Draft motion for attorney's fees, costs, and expenses and supporting declarations | 4.8 | $2,376.00 |
| TBD | JWC | $495.00 | Review and analyze Defendant's Opposition to Motion for Attorney's Fees (Anticipated) | 2.0 | $990.00 |
| TBD | JWC | $495.00 | Review and analyze Defendant's Opposition to Motion for costs (Anticipated) | 1.0 | $495.00 |
| TBD | JWC | $495.00 | Draft Reply to Opposition to Motion for Attorney's Fees (Anticipated) | 4.0 | $1,980.00 |

Invoice

| | | | | | |
|---|---|---|---|---|---|
| TBD | JWC | $495.00 | Draft Reply to Opposition to Motion for costs (Anticipated) | 2.0 | $990.00 |
| TBD | JWC | $495.00 | Prepare for and appear at hearing on Motion for Attorney's Fees and Motion for costs (Telephonically) (Anticipated) | 1.5 | $742.50 |
| | | | Total Attorney Fees | 73.3 | $28,859.00 |

**Billing Rate Summary**

| Initials | Avg/Hr | Attorney/Staff | Hours | Amount |
|---|---|---|---|---|
| DR | $495.00 | Debra Reed | 4.8 | $2,376.00 |
| EK | $350.00 | Elvira Kamosko | 6.2 | $2,170.00 |
| GA | $275.00 | George Aguilar | 2.1 | $577.50 |
| GS | $225.00 | George Semaan | 2.0 | $450.00 |
| JC | $225.00 | Jonathan Cagliata | 6.5 | $1,462.50 |
| JK | $225.00 | Jodie Koo | 11.5 | $2,587.50 |
| JWC | $495.00 | Jacob Cutler | 21.9 | $10,840.50 |
| KSC | $375.00 | Kristina Stephenson-Cheang | 4.8 | $1,800.00 |
| MM | $225.00 | Marisa Melero | 0.4 | $90.00 |
| MM | $425.00 | Marisa Melero | 0.8 | $340.00 |
| NF | $250.00 | Natalee Fisher | 1.5 | $375.00 |
| RH | $450.00 | Russell Higgins | 0.1 | $45.00 |
| RH | $550.00 | Russell Higgins | 6.2 | $3,410.00 |
| RK | $425.00 | Roger Kirnos | 0.4 | $170.00 |
| RK | $550.00 | Roger Kirnos | 3.5 | $1,925.00 |
| SS | $400.00 | Sundeep Samra | 0.6 | $240.00 |

# EXHIBIT B

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/4/2016 | RH | $450.00 | Ford Focus JCCP: Review opposition briefs filed by other firms concerning stay | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 1/4/2016 | RH | $450.00 | Ford Focus JCCP: Prepare objections and motion to strike Declaration of Robert Shields; research authorities and evidence cited by Ford in support of petition; prepare and outline opposition arguments, evidence, and authority in support of opposition | 7.0 | $3,150.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 7.0 |
| 1/5/2016 | RH | $450.00 | Ford Focus JCCP: Telephone calls with plaintiff's counsel Anthony Caronna and Erika Kavicky (Bickel) re status of oppositions and organization of plaintiff firm briefing | 0.5 | $225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 1/5/2016 | RH | $450.00 | Ford Focus JCCP: Prepare opposition to petition for coordination, and declaration of Steve Mikhov, including extnesive review of files and potential exhibits | 8.0 | $3,600.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 8.0 |
| 1/6/2016 | RH | $450.00 | Ford Focus JCCP: Outline potential areas for client declarations | 0.5 | $225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 1/6/2016 | RH | $450.00 | Ford Focus JCCP: Prepare opposition brief, declaration of Steve Mikhov | 0.5 | $225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 1/8/2016 | RH | $450.00 | Ford JCCP: Prepare opposition documents and email to Plaintiffs' firms for review and possible joinder in briefs; review and evaluate draft opposition brief by Bickel Law Firm | 5.0 | $2,250.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 5.0 |
| 1/11/2016 | RH | $450.00 | Ford Focus JCCP: Prepare final drafts of Opposition, Declaration, and assemble exhibits; exchange emails and telephone calls with Plaintiffs' firms re same, and re arguments in opposition to coordination | 5.0 | $2,250.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 5.0 |
| 1/12/2016 | RH | $450.00 | Ford Focus JCCP: Finalize all exhibits, declarations, and documents for filing, and exchange emails with other plaintiffs' firms re adopting or joining in our brief; legal research re same | 2.0 | $900.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.0 |
| 1/13/2016 | RH | $450.00 | Ford Focus JCCP: Review oppositions and notices of joinder filed by plaintiffs' law firms | 0.7 | $315.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.7 |



Case 2:25-cv-01256-AB-MAA Document 39-5 Filed 07/22/25 Page 49 of 96 Page ID #:1352

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/21/2016 | RH | $450.00 | Ford Focus JCCP - Prepare and outline arguments for hearing on Ford Petition for Coordination | 1.0 | $450.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.0 |
| 1/21/2016 | RH | $450.00 | Ford Focus JCCP - Review and evaluate Reply Brief and Declaration filed by Ford in response to oppositions to petition; outline issues for potential argument and/or further briefing | 1.5 | $675.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.5 |
| 1/22/2016 | RH | $450.00 | Ford Focus JCCP - Prepare and outline arguments for hearing on Ford Petition for Coordination | 1.7 | $765.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.7 |
| 1/24/2016 | RH | $450.00 | Ford Focus JCCP - Finalize argument outline and email to Paul Kiesel forwarding same with documents to prepare for argument on petition | 0.8 | $360.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.8 |
| 1/26/2016 | RH | $450.00 | Ford Focus JCCP - Prepare for and attend hearing on Ford's petition to coordinate Focus/Fiesta cases statewide | 4.0 | $1,800.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 4.0 |
| 4/20/2016 | RH | $450.00 | Ford DPS6 JCCP: Meeting with Jeff Koncius, ALM, SBM re proposed draft CMO 1 and next steps in formation of committee and evaluation of coordination procedures | 0.7 | $315.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.7 |
| 4/21/2016 | RH | $450.00 | Ford JCCP: Review and evaluate draft proposed Case Management Order | 1.5 | $675.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.5 |
| 4/21/2016 | RH | $450.00 | Ford JCCP: Review email from Payam Shahian re meeting and conferring on coordination issues | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 4/27/2016 | RH | $450.00 | Ford JCCP: Exchange emails with Plaintiffs' counsel re meeting to discuss Case Management Order preparation | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 4/27/2016 | RH | $450.00 | Ford JCCP: Prepare redline of draft proposed CMO # 1; Exchange emails with coordination counsel re same | 1.4 | $630.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.4 |
| 4/29/2016 | RH | $450.00 | Ford JCCP: Teleconference with steering committee and liaison counsel regarding status and scope of coordination, proposed Case Management Order, and pending actions in coordinated proceeding | 0.7 | $315.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.7 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/2/2016 | RH | $450.00 | Ford JCCP - Confer with coordination counsel re opposition to add on petition | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 5/4/2016 | RH | $450.00 | Ford JCCP - Exchange emails with coordination counsel re status of CMO and related issues | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 5/13/2016 | RH | $450.00 | Ford JCCP: Prepare for and attend conference with steering committee and liaison counsel re draft CMO 1, scheduling for status conference and briefing, and related events in related cases and class actions | 1.4 | $630.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.4 |
| 5/13/2016 | RH | $450.00 | Ford JCCP: Confer with AH and ALM re opposition to add on petition | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 5/20/2016 | RH | $450.00 | Ford JCCP: Review and evaluate add-on petition and supporting papers | 1.5 | $675.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.5 |
| 5/24/2016 | RH | $450.00 | Ford JCCP: Review and edit draft Joint Initial Status Conference Report; research and evaluate potential ESI requirements | 2.6 | $1,170.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.6 |
| 5/24/2016 | RH | $450.00 | Ford JCCP: Prepare exhibits and opposition to petition for coordination of add on cases | 2.3 | $1,035.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.3 |
| 5/25/2016 | RH | $450.00 | Ford JCCP: Confer with ALM, LAU, SBM, MOC, CS re draft edits to joint status report for ISC, and scheduling | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 5/31/2016 | RH | $450.00 | Ford JCCP: Confer with internal counsel, PEC counsel, Liaison counsel re scheduling for in person meet and confer for ISC; draft ISC statement | 0.5 | $225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 6/1/2016 | RH | $450.00 | Ford JCCP: Review correspondence from Ford lead counsel, PEC and Liaison counsel re scheduling of in person meet and confer for ISC | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 6/2/2016 | RH | $450.00 | Ford JCCP: Extensive review of draft joint report for status conference, draft CMO, and prepare outline for in-person meet and confer with Ford's lead counsel, Plaintiffs' liaison counsel and executive committee | 3.0 | $1,350.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 3.0 |
| 6/2/2016 | RH | $450.00 | Ford JCCP: Review correspondence from Ford lead counsel, PEC and Liaison counsel re scheduling of in person meet and confer for ISC | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/3/2016 | RH | $450.00 | Ford JCCP: Prepare for, travel to and attend in person meet and confer with Ford's lead counsel, Plaintiffs' liaison counsel and executive committee | 3.0 | $1,350.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 3.0 |
| 6/30/2016 | LAU | $425.00 | Reviewed and revised CMO 1. | 0.8 | $340.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.8 |
| 6/30/2016 | LAU | $425.00 | Reviewed and followed up on status of plaintiffs' attorneys categorization chart to be attached to Joint Report. | 0.4 | $170.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 6/30/2016 | LAU | $425.00 | Reviewed and revised joint report. | 0.6 | $255.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.6 |
| 6/30/2016 | TB | $225.00 | Reviewed complete list of all cases in Ford's petition for Coordination and narrowed list to only those coordinated; went through each case to check case status, who is counsel on the case, and whether spreadsheet from applicable counsel was received | 7.0 | $1,575.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 7.0 |
| 6/30/2016 | TB | $225.00 | Contacted all attorneys in coordination to follow up on excel spreadsheets of cases; updated spreadsheets where applicable, and created spreadsheets for each attorney's settled JCCP cases | 2.5 | $562.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.5 |
| 7/1/2016 | TB | $225.00 | Merged all individual attorneys' settled cases spreadsheets | 0.3 | $67.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 7/1/2016 | TB | $225.00 | Searched case info for each case of attorney who has not responded to request for case status/info, determined status of case and plugged information into appropriate spreadsheet | 2.6 | $585.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.6 |
| 7/1/2016 | TB | $225.00 | Review email from Meghan George re coordinated cases form Todd Friedman firm, merge files | 0.2 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 7/1/2016 | TB | $225.00 | Review email from Mark Romanov re coordinated cases form Todd Friedman firm, merge files | 0.2 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 7/1/2016 | RH | $450.00 | Ford JCCP: Review draft protective order and comments by liaison counsel and other parties | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/5/2016 | TB | $225.00 | Conversation with LAU re status of case chart; review of chart and email to Jeff Koncius re missing information | 0.3 | $67.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 7/5/2016 | TB | $225.00 | Phone call with LAU re missing chart information; San Luis Obispo cases | 0.3 | $67.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 7/5/2016 | TB | $225.00 | Phone call and email to David Berry re defects in his case, "David Kerr" | 0.3 | $67.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 7/5/2016 | TB | $225.00 | Phone call with LAU re status, looking up case of Javier Garcia to check status | 0.2 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 7/5/2016 | LAU | $425.00 | Revised, formatted, and finalized charts of consolidated information from plaintiffs' counsel for court's order. | 3.8 | $1,615.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 3.8 |
| 7/5/2016 | TB | $225.00 | Phone call with Jeff from Rosner Barry and Babbit re active cases in coordination; email to LAU re the same | 0.3 | $67.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 7/5/2016 | TB | $225.00 | Follow up phone call with LAU re status | 0.1 | $22.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 7/5/2016 | TB | $225.00 | Phone call with LAU re David Barry Case "Batterton"; review of docket, call to David barry and email to David Barry re Batterton case and cases that should not be coordinated | 0.3 | $67.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 7/5/2016 | TB | $225.00 | Review of LO of Robert Starr response to request for excel; discussion with LAU re lack of response, follow up email to Gordon from Starr Law to attempt to gather remaining information | 0.4 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 7/5/2016 | LAU | $425.00 | Revised and organized charts with last minute submissions by plaintiffs' attorneys. | 2.3 | $977.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.3 |
| 7/5/2016 | TB | $225.00 | Phone call to Gordon Wong from Starr law re missing information | 0.1 | $22.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 7/5/2016 | RH | $450.00 | Ford JCCP: Review correspondence from liaison counsel and executive committee concerning case information charts, protective order issues | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |



Case 2:18-ml-02814-AB-PVC Document 1640-2 Filed 09/11/24 Page 36 of 177 Page ID #:68114

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/6/2016 | ALM | $350.00 | Read and reviewed email chain and corresponding documents re upcoming continued initial status conference hearing/Plaintiff's portion of joint report/CMO in connection with same and discussed with Lauren | 1.0 | $350.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.0 |
| 7/6/2016 | TB | $225.00 | Review of email from Caitlin Bartkus from CLS and searched for docs requested | 0.2 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 7/6/2016 | TB | $225.00 | Review of Joint Status report and accompanying chart | 0.5 | $112.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 7/6/2016 | RH | $450.00 | Ford JCCP: Review correspondence and language of proposed protective order defining terms "automobile," "motor vehicle," "manufacturer" in accordance with statute | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 7/6/2016 | RH | $450.00 | Ford JCCP: Review uploaded case documents | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 7/7/2016 | LAU | $425.00 | Reviewed and responded to email regarding rescheduling of ISC and add-on petition. | 0.1 | $42.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 7/7/2016 | LAU | $425.00 | Reviewed minute order from court continuing ISC and add on petition. | 0.1 | $42.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 7/7/2016 | LAU | $425.00 | Organized tech meeting with document repository company; coordinated schedules with PEC and ILS. | 0.3 | $127.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 7/7/2016 | RH | $450.00 | Ford JCCP: review correspondence between liaison and executive committee members re consulting experts and effect of protective orders | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 7/8/2016 | ALM | $350.00 | Meeting with Lauren: discussed issue with cases incorrectly designated as settled | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 7/8/2016 | LAU | $425.00 | Investigated corrections to information filed in plaintiff's case categorization chart after inquiries for plaintiff's attorneys. | 0.3 | $127.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 7/8/2016 | RH | $450.00 | Ford JCCP: Review numerous emails among PEC/liaison counsel re scheduling for hearing on case management and status | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/20/2016 | ALM | $350.00 | Read and reviewed email from "Kiesel's" office re upcoming intitial statuf conference/status of various coordinated and add-on cases and discussed with Lauren | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 7/20/2016 | TB | $225.00 | Meeting with LAU re missing chart cases, review of all leftover cases and checked to see if now accounted for | 0.5 | $112.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 7/22/2016 | TB | $225.00 | Reviewed email from Melanie re missing cases; review of charts seeked email address and drafted email to all attorneys regarding the missing cases | 2.2 | $495.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.2 |
| 7/22/2016 | TB | $225.00 | Phone call to Barry Edzant law firm regarding the Petition for Add-on | 0.1 | $22.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 7/22/2016 | TB | $225.00 | Added our missing Add-on cases to add-on chart with defect information | 0.3 | $67.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 7/22/2016 | ALM | $350.00 | Read and reviewed email from liason counsel re discrepancies with coordinated cases identified by both parties and discussed with Lauren | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 7/25/2016 | ALM | $350.00 | Read and reviewed emal from liason counsel re upcoming status conference and discussed with Lauren | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 7/25/2016 | TB | $225.00 | Review of incoming excel spreadsheets and updated sheets sent by Melanie to reflect new case information | 0.6 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.6 |
| 7/25/2016 | TB | $225.00 | Review of email from LAU re spreadsheets, email from Steven Simons re spreadsheet, moved to file | 0.1 | $22.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 7/26/2016 | TB | $225.00 | Review of emails from Zolonz, Romano re status of coordinated/add-on cases, updated excel | 0.2 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 7/26/2016 | TB | $225.00 | Review of email from Debbie Horowitz and attached excel spreadsheets; merge with current sheets | 0.3 | $67.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 7/26/2016 | TB | $225.00 | Review of Melanie email re new excel information; compilation of all spreadsheet info to forward to Melanie | 0.4 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 7/26/2016 | ALM | $350.00 | Read and reviewed court's tentative ruling on Defendant's petition for add-on cases and discussed with Lauren | 0.4 | $140.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/26/2016 | TB | $225.00 | Review of email from Meghan George re Principe case; email to Melanie Palmer re update | 0.2 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 7/26/2016 | RH | $450.00 | Ford JCCP: Review and evaluate tentative ruling on add-on petition; confer with PEC and liaison counsel re same | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 7/27/2016 | TB | $225.00 | Review of Melanie Palmer email re ccordinated discrepancies and response with new charts | 0.3 | $67.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 7/27/2016 | ALM | $350.00 | Read and reviewd email from "Payam's" office re outstanding issues re PO | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 7/28/2016 | ALM | $350.00 | Meeting with Melanie: discussed OM input of joint report | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 7/28/2016 | ALM | $350.00 | Telephone conversation with MOC: discussed upcoming hearing on Defendant's petition for add-on cases | 0.4 | $140.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 7/29/2016 | ALM | $350.00 | In person appearance at status conference/hearing on Defendant's petition for add-on coordination/travel | 2.5 | $875.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.5 |
| 8/2/2016 | ALM | $350.00 | Drafted email re results of hearing on Defendant's petition for coordination of add-on cases and discussed with KSC | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 8/3/2016 | ALM | $350.00 | Meeting with Tom: discussed email from other Plaintiff's attorney re results of hearing on Defendant's peition for coordination of add-on cases and sent email to "Kiesel's" office re same | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 8/4/2016 | ALM | $350.00 | Read and reviewed court's minute order after hearing on Defendant's petition for coordination of add-on cases | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 8/10/2016 | RH | $450.00 | Solano county Ford DPS6 cases: Prepare letter response to presiding judge concerning Ford's letter request to coordinate cases within county | 4.0 | $1,800.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 4.0 |
| 8/25/2016 | RH | $450.00 | Ford JCCP: Prepare status letter to clients re pending coordination hearings | 0.5 | $225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 8/29/2016 | RH | $450.00 | Ford JCCP: Review and evaluate Court's ruling on Add-On Petition | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 8/31/2016 | ALM | $350.00 | Reviewed and edited letter to clients re status of coordination | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |



Case 2:25-cv-01251-AB-AJR Document 39-5 Filed 06/20/25 Page 47 of 178 Page ID #:2482

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/1/2016 | ALM | $350.00 | Read and reviewed email exchange between PEC and liason counsel re de-coordination and discussed with Lauren | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 9/7/2016 | ALM | $350.00 | Telephone conference with PEC/liason counsel to discuss termination of coordination | 0.5 | $175.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 9/8/2016 | ALM | $350.00 | Read and reviewed email chain between PEC and lisason counsel re termination of coordination and discussed with Lauren | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 9/9/2016 | RH | $450.00 | Ford JCCP: Review proposed message board posting and communications among executive and liaison counsel re potential motion to dissolve coordination | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 9/13/2016 | RH | $450.00 | Ford JCCP: Review filed documents, case docket, joint status reports, and status of coordination | 1.5 | $675.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.5 |
| 9/13/2016 | RH | $450.00 | Ford JCCP 4856: Review stipulation and proposed order to remand cases from coordination; confer with staff re scheduled hearings and status conferences | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 9/16/2016 | TB | $225.00 | Review of cases for service list to eliminate Martin Anderson firm | 0.3 | $67.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 9/19/2016 | RH | $450.00 | Ford JCCP: Review and evaluate Ford's petition for writ of mandate; initial legal research re response to petition | 2.0 | $900.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.0 |
| 9/20/2016 | RH | $450.00 | Ford Focus JCCP: Review Ford's writ petition in detail; telephone call and exchange emails with office of Liaison Counsel and executive committee counsel to discuss filing of petition and strategy for response | 2.3 | $1,035.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.3 |
| 10/24/2016 | RH | $450.00 | Prepare declaration concerning status of JCCP hearing in advance of status conference | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 10/27/2016 | RH | $450.00 | Ford JCCP Writ - Meet with staff, liaison, and executive committee counsel re preparation of response to FMC's petition for writ of mandate to reverse Court's ruling on petition for add on cases | 1.0 | $450.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.0 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/2/2016 | RH | $450.00 | Ford JCCP: Review and evaluate Liaison Counsel "preliminary response" to Defendant's petition for writ of mandate; legal research re standard of review; exchange emails with Liaison Counsel re same | 2.3 | $1,035.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.3 |
| 11/3/2016 | ALM | $350.00 | Read and reviewed response to Defendant's writ and discussed with Lauren | 0.4 | $140.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 11/10/2016 | RH | $450.00 | Ford JCCP: Review status of writ of mandate proceeding | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 11/15/2016 | ALM | $350.00 | Read and reviewed Defendant's reply to Plaintiff's opposition to Defendant's writ | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 12/2/2016 | RH | $450.00 | Ford JCCP: Review and evaluate Court of Appeal case notification re Ford writ petition for denial of add-on petition | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 12/6/2016 | RH | $450.00 | Ford JCCP - Add On Petition - Writ - Confer with SF, ALM re meeting to discuss Court of Appeal decision | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 12/7/2016 | RH | $450.00 | Ford Focus JCCP: Confer with executive committee and liaison counsel re responses to FMC writ petition challenging denial of Add On Petition | 1.2 | $540.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.2 |
| 12/8/2016 | RH | $450.00 | Ford Focus JCCP: Review correspondence and research by executive committee, and confer with ALM re strategy for evaluating responses to FMC writ petition challenging denial of Add On Petition | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 12/9/2016 | RH | $450.00 | Ford Focus JCCP: Confer with executive committee and liaison counsel re responses to FMC writ petition challenging denial of Add On Petition | 0.8 | $360.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.8 |
| 12/19/2016 | ALM | $350.00 | Meeting with Russ: discussed telephone conference re Defendant's writ to order after hearing on petition for coordination of add-on cases | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 12/19/2016 | ALM | $350.00 | Telephonce conversation with PEC re Defendant's writ to order after hearing on petition for coordination of add-on cases | 0.5 | $175.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |

Case 2:25-cv-04256-AB-PVC Document 1-5 Filed 05/12/25 Page 43 of 178 Page ID #:2382



| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/19/2016 | ALM | $350.00 | Telephone conversation with Plaintiff's attorney re writ on order after hearing on Defendant's petition for coordination of add-on cases | 0.4 | $140.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 12/19/2016 | RH | $450.00 | Ford JCCP: Confer with plaintiff executive committee and liaison counsel re response to alternative writ concerning add on petition; prepare message board posting and confer with counsel re same | 0.7 | $315.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.7 |
| 12/29/2016 | RH | $450.00 | Ford JCCP: Telephone call with Jordan Wager of Bickel Law Firm, re response to alternative writ order on add on petition; communications with Liaison and Executive Committee | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 1/5/2017 | RH | $450.00 | Review and evaluate Respondent's response to alternative writ re: add on petition; communications with co-counsel re same | 2.0 | $900.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.0 |
| 1/5/2017 | ALM | $350.00 | Meeting with SBM | 1.5 | $525.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.5 |
| 1/10/2017 | ALM | $350.00 | Drafted email to opposing counsel re scheduling mediation and discussed with Sarah | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 1/12/2017 | RH | $450.00 | Meeting with SBM, Payam, Neil, Ben Schatz, Paul Kiesel re writ proceedings | 1.5 | $675.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.5 |
| 1/15/2017 | RH | $450.00 | Ford Writ re Add On Petition: Communication with staff re schedule for argument in court of appeal | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 1/18/2017 | ALM | $350.00 | Telephone conversation with liason counsel re scheduling mediation | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 1/19/2017 | ALM | $350.00 | Mediation: drafted email to opposing counsel re scheduling mediation and discussed with Chris | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 1/20/2017 | RH | $450.00 | Send info to SBM and Michael Gold | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 1/30/2017 | RH | $450.00 | Ford Add On/Writ: Prepare answer to writ petition; communication with SLP, Ben Schatz, and Kiesel Law | 2.5 | $1,125.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.5 |
| 1/31/2017 | RH | $450.00 | Ford Add On/Writ: Confer with plaintiffs' counsel re answer to writ petition (12+ emails) | 1.2 | $540.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.2 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/1/2017 | RH | $450.00 | Ford Add On Cases - Meeting with Kiesel Law, SLP, ALM, LAU re Return to Alternative Writ | 1.5 | $675.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.5 |
| 2/1/2017 | ALM | $350.00 | Prepared for in-person meeting re Plaintiff's return to Defendant's writ | 0.4 | $140.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 2/1/2017 | ALM | $350.00 | Meeting re Plaintiff's return to Defendant's writ | 1.2 | $420.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.2 |
| 2/2/2017 | RH | $450.00 | Ford add on writ - Communication with Jared Walder re final edits to return to alternative writ; legal research | 1.1 | $495.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.1 |
| 2/2/2017 | TB | $225.00 | Review of add-on cases for settlement status and respond to AM email | 0.2 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 2/21/2017 | ALM | $350.00 | Read and reviewed Ford's traverse re petition for add-on cases | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 2/28/2017 | RH | $450.00 | Ford Add On/Writ: Communication with Kiesel Law Firm, SLP | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 3/1/2017 | RH | $450.00 | Ford DPS6 cases - Review class action settlement | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 3/1/2017 | ALM | $350.00 | Telephone call with PEC/liason counsel re whether to respond to letter from court of appeal | 0.7 | $245.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.7 |
| 3/2/2017 | RH | $450.00 | Ford Add-On Writ - Review numerous emails among Plaintiffs' counsel and review Superior Court response filed with Court of Appeal | 0.6 | $270.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.6 |
| 3/3/2017 | RH | $450.00 | Ford Add On Writ - Communications with various plaintiff counsel (SLP, PK, Ben Schatz) re response to Court of Appeal inquiry | 1.0 | $450.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.0 |
| 3/3/2017 | ALM | $350.00 | Telephone conversation with liason counsel/PEC | 1.0 | $350.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.0 |
| 3/5/2017 | RH | $450.00 | Ford Add On Writ - Communications with various plaintiff counsel (SLP, PK, Ben Schatz) re response to Court of Appeal inquiry | 0.9 | $405.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.9 |
| 3/21/2017 | RH | $450.00 | Ford Add On Appeal - Prepare for and attend meeting with appellate counsel | 8.0 | $3,600.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 8.0 |
| 3/23/2017 | RH | $450.00 | Ford Add On Writ - Communication with SLP, Kiesel Law, Ben Schatz re arguments for appellate hearing | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/14/2017 | RH | $450.00 | Ford JCCP 4856 - Confer with Liaison and Exec Committee counsel re preparation of status report, cases to release for trial | 0.6 | $270.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.6 |
| 4/18/2017 | RH | $450.00 | JCCP 4856: Review and edit draft Joint Status Conference Report re May 1 Status Conference | 0.8 | $360.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.8 |
| 4/19/2017 | RH | $450.00 | JCCP 4856 (Ford Focus/Fiesta) - Communication with Plaintiffs' liaison and executive committee counsel, and prepare draft joint status report, including review of files | 1.0 | $450.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.0 |
| 4/26/2017 | RH | $450.00 | Ford Focus JCCP 4856 - Review notice of continuance of status conference | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 4/27/2017 | RH | $450.00 | San Bernardino FMC related cases - Review cases and organize information for filing of status briefs | 0.6 | $270.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.6 |
| 5/8/2017 | RH | $450.00 | Ford JCCP 4856 - Review and evaluate opinion of Court of Appeal re: FMC writ petition; communications with co-counsel | 0.5 | $225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 5/8/2017 | ALM | $350.00 | Meeting with Russ/Payam: discussed court's ruling on Defendant's writ in connection with petition to coordinate add-on cases | 1.0 | $350.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.0 |
| 5/11/2017 | RH | $450.00 | Ford JCCP 4856 - Prepare materials for status conference | 0.8 | $360.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.8 |
| 5/11/2017 | RH | $450.00 | Ford Add-On Writ - Prepare for and attend conference with Plaintiffs' counsel re results of appellate process | 1.5 | $675.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.5 |
| 5/11/2017 | ALM | $350.00 | Telephone conference re Defendant's petition for coordination of add-on cases | 1.5 | $525.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.5 |
| 5/14/2017 | RH | $450.00 | Ford JCCP - Communication with Liaison counsel re issues for discussion and schedule | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 5/15/2017 | RH | $450.00 | Ford JCCP 4856: Prepare for, travel to and attend coordination status conference | 4.5 | $2,025.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 4.5 |
| 5/15/2017 | RH | $450.00 | Ford JCCP 4856 - Communication with Liaison and executive Committee counsel re protective order, draft rehearing petition, | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 5/15/2017 | ALM | $350.00 | Appeared in-person at CMC hearing/travel | 3.0 | $1,050.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 3.0 |

Ford Motor Warranty Cases

Knight Law Group, LLP
Invoice

JCCP 4856

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/15/2017 | ALM | $350.00 | Read and reviewed draft of rehearing petition and drafted email re concerns/discussed with Russ | 0.4 | $140.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 5/16/2017 | RH | $450.00 | Ford Focus JCCP 4856: Review and evaluate discovery of "fact sheets," and protective orders entered in various proceedings; review rulings and prepare memoranda on CMC hearing | 2.5 | $1,125.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.5 |
| 5/16/2017 | ALM | $350.00 | Drafted email re results of CMC hearing and discussed with Russ | 0.4 | $140.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 5/17/2017 | RH | $450.00 | Ford JCCP - Communication with liaison and staff counsel re proposed protective order | 0.6 | $270.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.6 |
| 5/17/2017 | ALM | $350.00 | Read and reviewed email to opposing counsel re status of SPO in connection with Defendant's document production in reponse to Plaintiff's written discovery requests | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 5/17/2017 | ALM | $350.00 | Telephone conversation with liason counsel: discussed results of CMC hearing/steps to take going forward | 0.4 | $140.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 5/18/2017 | RH | $450.00 | Ford Focus JCCP 4856: Communication with liaison and executive committee, and review status re discovery, review and evaluate variety of protective order drafts | 4.0 | $1,800.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 4.0 |
| 5/18/2017 | ALM | $350.00 | Read and reviewed email chain re parties' SPO and discussed with Russ | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 5/18/2017 | ALM | $350.00 | Meeting with Russ: discussed upcoming deadlines/status of cases as result of recent CMC hearing | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 5/19/2017 | RH | $450.00 | San Bernardino FMC cases - Prepare for, travel to and attend hearing on related cases - Burgess, Brownmayfield, Clark, Cowan, Coleman, Davidson-Codjoe, Jansson, Kopchak, Salcido, Macbean, Velasco, Schene, Ibarra, Montes, Soto, Stead, Rivera, Etheredge | 4.2 | $1,890.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 4.2 |
| 5/19/2017 | ALM | $350.00 | Telephone conversation with liason counsel: discussed upcoming posting to bulletin board in light of court's order at recent CMC hearing | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/24/2017 | RH | $450.00 | Review ruling of trial court re transfer order, communication with liaison counsel in JCCP 4856 | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 5/25/2017 | RH | $450.00 | Ford JCCP 4856 - Review files and prepare list of cases originally coordinated re: prior trial dates affected by coordination; communication with liaison counsel re: same | 0.8 | $360.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.8 |
| 5/30/2017 | RH | $450.00 | Ford JCCP 4856 - Review files re trial dates of coordinated/Add On cases; communication with liaison counsel | 2.0 | $900.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.0 |
| 6/1/2017 | RH | $450.00 | San Bernardino Ford related cases - Correspondence with Defendant's counsel t | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 6/1/2017 | RH | $450.00 | Ford JCCP - Communication with liaison counsel re informal discovery and message board posting | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 6/1/2017 | RH | $450.00 | Confer with staff counsel re outcome of Ford JCCP Writ and published opinion on complex cases | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 6/2/2017 | RH | $450.00 | FMC related cases in San Bernardino: Communication with defense counsel re: meet and confer on discovery/case management | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 6/12/2017 | RH | $450.00 | Ford JCCP Add On - Prepare updated trial status list of add on cases, communication with liaison counsel | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 6/12/2017 | RH | $450.00 | Ford JCCP Add On - Prepare updated trial status list of add on cases, communication with liaison counsel | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 6/14/2017 | RH | $450.00 | Prepare client update letter - FMC JCCP 4856 add on cases | 0.8 | $360.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.8 |
| 6/29/2017 | RH | $450.00 | San Bernardino related FMC cases: Prepare for, travel to and attend hearing on related cases, status of stay orders (numerous cases) | 5.3 | $2,385.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 5.3 |
| 7/7/2017 | RH | $450.00 | Review correspondence and chart from Ford's counsel re proposed new add on cases | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 7/18/2017 | RH | $450.00 | Ford SoCal JCCP 4856 - Conference call with Plaintiffs' Liaison and Executive Committee | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/31/2017 | RH | $450.00 | Ford JCCP 4856: Review communications from liaison and PEC counsel, review drafts of proposed CMO; conference call with liaison and PEC re same; prepare commentary to proposed CMO | 3.8 | $1,710.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 3.8 |
| 7/31/2017 | ALM | $350.00 | Telephone conversation with PEC re coordination | 1.0 | $350.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.0 |
| 8/1/2017 | RH | $450.00 | PEC - Communications with PEC re potential case Focus/Fiesta management and discovery orders, document JCCP repository orders | 0.7 | $315.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.7 |
| 8/3/2017 | RH | $450.00 | Meeting with plaintiffs' counsel re assignment of coordination motion judge, and review orders re same | 0.8 | $360.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.8 |
| 8/4/2017 | RH | $450.00 | Communication with liaison counsel re scheduling | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 8/9/2017 | RH | $450.00 | Meeting with PEC | 0.6 | $270.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.6 |
| 8/11/2017 | RH | $450.00 | Communication with PEC and liaison counsel re proposed CMO re discovery orders | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 8/14/2017 | RH | $450.00 | Communication with PEC and liaison counsel in advance of status conference | 0.6 | $270.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.6 |
| 8/15/2017 | RH | $450.00 | Meeting with SBM, ALM, JK, Nicole Ramirez, SLP re preparation for status conference; prepare orders for hearing | 4.0 | $1,800.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 4.0 |
| 8/15/2017 | RH | $450.00 | Review files and prepare for status conference | 2.8 | $1,260.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.8 |
| 8/15/2017 | ALM | $350.00 | Meeting with PEC/Liason counsel: discussed upcoming CMC hearing | 3.5 | $1,225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 3.5 |
| 8/16/2017 | RH | $450.00 | Prepare for, travel to and attend status conference | 4.5 | $2,025.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 4.5 |
| 8/21/2017 | RH | $450.00 | Confer with PEC re proposed CMO No. 1, and prepare CMO, multple issues for discussion at upcoming hearing | 2.2 | $990.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.2 |



Case 2:25-cv-01254-AB-AGR Document 39-5 Filed 06/02/25 Page 524 of 976 Page ID #:2390

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/22/2017 | RH | $450.00 | Confer with PEC and Liaison counsel re proposed CMO No. 1 | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 8/23/2017 | RH | $450.00 | Communication with liaison and PEC counsel re proposed CMO No. 1 | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 8/23/2017 | RH | $450.00 | Communication with /attorney Charles Lee re hearing on petition | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 8/24/2017 | RH | $450.00 | Preparation for status conference | 0.8 | $360.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.8 |
| 8/24/2017 | RH | $450.00 | Communication with liaison counsel; conference with liaison and Defendant's lead counsel re CMO No. 1 | 1.0 | $450.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.0 |
| 8/24/2017 | RH | $450.00 | Communications with plaintiffs' counsel re status conference arguments for August 25 and August 30 | 1.0 | $450.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.0 |
| 8/24/2017 | RH | $450.00 | Communications with plaintiffs' counsel re status conference arguments for August 25 and August 30 | 0.8 | $360.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.8 |
| 8/24/2017 | ALM | $350.00 | Telephonic meeting with liason counsel/opposing counsel: discussed upcoming CMC | 1.0 | $350.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.0 |
| 8/25/2017 | RH | $450.00 | Prepare for, travel to and attend status conferencel meetings with PEC and liaison counsel | 8.0 | $3,600.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 8.0 |
| 8/25/2017 | RH | $450.00 | Communication with PEC and defense counsel re meet and confer on proposed protective order | 0.6 | $270.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.6 |
| 8/27/2017 | RH | $450.00 | Review proposed CMO No 1 and communication with liaison counsel re same | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 8/28/2017 | RH | $450.00 | Communication with PEC re revised CMO 1, with PEC and Ford counsel re revised protective order, request to release cases for trial, communications with plaintiff attorneys | 2.4 | $1,080.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.4 |
| 8/29/2017 | RH | $450.00 | Prepare for hearing on petition | 1.2 | $540.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.2 |



Case 2:25-cv-02524-AB-AJR Document 39-5 Filed 06/30/25 Page 79 of 176 Page ID #:2398

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/29/2017 | RH | $450.00 | Communication with PEC re document repositories and document production, communicate with Ford counsel and PEC re protective order drafts and issues, prepare for status conference | 3.6 | $1,620.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 3.6 |
| 8/30/2017 | RH | $450.00 | Prepare for, travel to and attend status conference; meetings with PEC and liaison counsel | 6.5 | $2,925.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 6.5 |
| 8/30/2017 | RH | $450.00 | Communication with Defendant's counsel | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 8/30/2017 | ALM | $350.00 | Appeared at CMC hearing/travel | 4.3 | $1,505.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 4.3 |
| 9/1/2017 | RH | $450.00 | Communication with Defendant's counsel re protective order | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 9/5/2017 | RH | $450.00 | Review transcript of proceedings on August 30, and prepare revised protective order | 0.5 | $225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 9/5/2017 | RH | $450.00 | Review proposed CMO 2, communication with liaison counsel re same | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 9/6/2017 | RH | $450.00 | FMC related cases in San Bernardino - confer with MQ re NORC filing | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 9/6/2017 | RH | $450.00 | Communication with Defendant's counsel re draft protective order; prepare SPO; communication with PEC and Deft counsel re execution and filing | 1.8 | $810.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.8 |
| 9/6/2017 | RH | $450.00 | Confer with PEC re document repository selection and briefing | 0.8 | $360.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.8 |
| 9/7/2017 | RH | $450.00 | Communication with liaison and PEC counsel re document repository briefing; prepare brief re same | 0.8 | $360.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.8 |
| 9/7/2017 | ALM | $350.00 | Meeting with Russ: discussed upcoming CMC hearing | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 9/7/2017 | ALM | $350.00 | Reviewed binder in preparation for in-person appearance at CMC hearing | 0.5 | $175.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 9/8/2017 | ALM | $350.00 | CMC: In person appearance at CMC hearing/travel | 3.0 | $1,050.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 3.0 |

Ford Motor Warranty Cases

Knight Law Group, LLP
Invoice

JCCP 4856

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/8/2017 | ALM | $350.00 | CMC: drafted email re results of CMC hearing and discussed with Russ | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 9/12/2017 | RH | $450.00 | Prepare lengthy update to GO re client updates and status of coordination | 0.5 | $225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 9/13/2017 | RH | $450.00 | Communication with PEC | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 9/13/2017 | RH | $450.00 | Communication with liaison counsel re CMO 1 and cases to include in JCCP | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 9/14/2017 | RH | $450.00 | Review case files re: May 2016 Add On Petition and Second Add On Set; communication with liaison counsel re cases to include in JCCP 4856 by stipulation | 2.5 | $1,125.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.5 |
| 9/14/2017 | RH | $450.00 | Communication with liaison counsel re cases to exclude from original Add On and Second Set, including extensive review of files | 2.5 | $1,125.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.5 |
| 9/14/2017 | RH | $450.00 | Communication with plaintiff counsel Amy Smith re cases to be excluded/included | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 9/15/2017 | RH | $450.00 | DPS6 cases - Research re motion for sanctions 128.7 for false statements concerning opt-out | 2.2 | $990.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.2 |
| 9/15/2017 | RH | $450.00 | Communication with liaison counsel re CMO 1 and cases to include in JCCP | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 9/19/2017 | RH | $450.00 | Ford DPS6 cases - Confer with intake staff re Vargas opt-out master list; prepare motion for sanctions template | 0.9 | $405.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.9 |
| 9/19/2017 | RH | $450.00 | Communication with liaison counsel re cases to exclude from original Add On and Second Set, including extensive review of files | 2.2 | $990.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.2 |
| 9/19/2017 | RH | $450.00 | Communication with PEC and liaison re ILS order | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 9/20/2017 | RH | $450.00 | Communication with PEC re proposed CMO's | 0.8 | $360.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.8 |
| 9/20/2017 | RH | $450.00 | FMC San Bernardino related cases - Meeting with KSC re preparation for joint status conference; review files | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 9/20/2017 | RH | $450.00 | Communication with PEC re cases to exclude in CMO 1 | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |



Case 2:25-cv-01256-AB-AJR Document 39-5 Filed 07/22/25 Page 51 of 176 Page ID #:2390

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/21/2017 | RH | $450.00 | Communication with PEC and liaison counsel re upcoming CMO issues | 0.6 | $270.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.6 |
| 9/21/2017 | RH | $450.00 | Review files and update liaison counsel re additional settled cases | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 9/21/2017 | RH | $450.00 | Review CMO 3 message board posting | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 9/22/2017 | RH | $450.00 | Review letters from attorney Joseph Kaufman re cases included in JCCP; communicate with liaison counsel re same | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 9/26/2017 | RH | $450.00 | Communication with liaison and PEC re proposed CMO 4 re ADR | 1.0 | $450.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.0 |
| 9/26/2017 | RH | $450.00 | Review and evaluate FMC's proposed CMO 4; communication with PEC | 0.5 | $225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 9/26/2017 | ALM | $350.00 | Meeting with Russ: discussed issues in connection with CMO4 | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 9/26/2017 | ALM | $350.00 | Read and reviewed email chain between PEC/liason counsel re upcoming status conference hearing/CMO #4 and discussed with Russ | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 9/27/2017 | RH | $450.00 | Communication with liaison/PEC re scheduling meet and confer on CMO 4 | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 9/28/2017 | RH | $450.00 | Meeting with PEC, Defendant's counsel re proposed CMO 4 | 1.0 | $450.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.0 |
| 9/28/2017 | RH | $450.00 | Communication with PEC re joint reports on included and excluded cases, settled cases | 0.7 | $315.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.7 |
| 9/28/2017 | ALM | $350.00 | Participated in telephonic meet and confer re CMO #4 | 1.2 | $420.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.2 |
| 9/29/2017 | RH | $450.00 | Review new add on petition and rules of court | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 9/29/2017 | RH | $450.00 | Prepare joint report re disputed add-on cases | 0.7 | $315.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.7 |
| 10/2/2017 | RH | $450.00 | Review and evaluate Ford's Secon Add-On Petition | 1.5 | $675.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.5 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/2/2017 | RH | $450.00 | Confer with GA re agreed add-on cases | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 10/2/2017 | RH | $450.00 | Confer with Mitch re motions to remand in DPS6 federal cases, and prepare language re effect of coordination | 0.6 | $270.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.6 |
| 10/3/2017 | RH | $450.00 | Prepare for status conference | 1.0 | $450.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.0 |
| 10/3/2017 | RH | $450.00 | Prepare motions to remand in DPS6 federal cases | 0.7 | $315.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.7 |
| 10/3/2017 | RH | $450.00 | Ford DPS6 cases with motions for stay - Check opt-out status, prepare motion for sanctions and opposition to motion for stay and declarations, along with correspondence to Ford | 1.1 | $495.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.1 |
| 10/3/2017 | RH | $450.00 | Communication with Charles Lee re effect of coordination and outcome of Vargas fairness hearing | 0.7 | $315.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.7 |
| 10/3/2017 | ALM | $350.00 | Meeting with Russ: discussed upcoming CMC hearing | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 10/4/2017 | RH | $450.00 | Communication with Charles Lee of CLS | 0.7 | $315.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.7 |
| 10/4/2017 | RH | $450.00 | Prepare for, travel to and attend status conference | 7.5 | $3,375.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 7.5 |
| 10/4/2017 | ALM | $350.00 | CMC: in-person appearance at CMC hearing/travel | 7.5 | $2,625.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 7.5 |
| 10/5/2017 | RH | $450.00 | Communication with Charles Lee of CLS | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 10/5/2017 | RH | $450.00 | Prepare memorandum re status conference | 0.5 | $225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 10/5/2017 | RH | $450.00 | Confer with PEC re proposed CMO 5; confer with liaison re proposed add on cases Salcido and Santos | 0.6 | $270.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.6 |
| 10/10/2017 | RH | $450.00 | Communication with defendant's counsel | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 10/10/2017 | RH | $450.00 | Review and evaluate correspondence from Ford counsel re proposal to stipulate to add on to JCCP | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |



Case 2:25-cv-01251-AB-AVC Document 29-5 Filed 06/30/25 Page 73 of 176 Page ID #:2392 (overlapping stamps, illegible)

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/10/2017 | ALM | $350.00 | Meeting with George: discussed status of discovery in newly coordinated cases | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 10/12/2017 | RH | $450.00 | Prepare draft CMO 3 and CMO 5; confer with PEC re repository order dispute; communication with Ford counsel re stipulated add-on cases | 1.1 | $495.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.1 |
| 10/13/2017 | RH | $450.00 | Exchange emails with PEC re draft CMO 3; exchange emails with Ford counsel re cases included in stipulated add-on list | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 10/13/2017 | RH | $450.00 | Exchange emails with PEC re draft CMO 3; exchange emails with Ford counsel re cases included in stipulated add-on list | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 10/16/2017 | RH | $450.00 | Communication with PEC and Defendant's counsel re : message board posting, execution of joint filings re: add-on cases, | 0.4 | $180.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |
| 10/17/2017 | RH | $450.00 | San Bernardino related DPS6 cases - Send recent JCCP orders to Dept. S29 | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 10/20/2017 | RH | $450.00 | Review and evaluate cases included in Second Add On Petition | 1.5 | $675.00 | 1.5 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |
| 10/24/2017 | ALM | $350.00 | Meeting with Russ: discussed issues re CMO #5 | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 10/24/2017 | RH | $450.00 | Communication with PEC and liaison re revisions to draft CMO 3 | 0.9 | $405.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.9 |
| 10/27/2017 | RH | $450.00 | Prepare draft CMO No 3 re initial exchange, and draft correspondence to Ford counsel, and communicate with PEC re same | 1.0 | $450.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.0 |
| 10/27/2017 | ALM | $350.00 | Read and reviewed email chain re CMO #3 and discused with Russ | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 10/27/2017 | RH | $450.00 | Communication with PEC re terms of proposed repository order | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 10/31/2017 | RH | $450.00 | Prepare information to send to Cindy Tobisman | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 11/1/2017 | RH | $450.00 | DPS6 Federal cases: Meet and confer with Defendant's counsel re motions to remand | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 11/3/2017 | RH | $450.00 | Communication with PEC re proposed CMO and repository order(s) | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 11/8/2017 | RH | $450.00 | Confer with PEC re repository orders and discovery orders applicable to JCCP | 0.5 | $225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/8/2017 | RH | $450.00 | Communication with defense counsel re proposed CMO No. 3, including review and evaluation of proposed language | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 11/9/2017 | RH | $450.00 | Communications with Charles Lee re add on schedule | 0.2 | $90.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |
| 11/10/2017 | ALM | $350.00 | Conducated research re Defendant's request for stay in connection with add-on petition and discussed with Russ | 0.4 | $140.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 11/13/2017 | RH | $450.00 | Confer with PEC re proposed CMO No. 3 | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 11/14/2017 | ALM | $350.00 | Read and reviewed email chain re parties' CMO #3 | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 11/14/2017 | RH | $450.00 | Prepare opposition to Second Add On Petition | 1.1 | $495.00 | 1.1 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |
| 11/14/2017 | RH | $450.00 | Communication with Ford counsel re status of CMO No 3 | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 11/15/2017 | RH | $450.00 | Communication with Ford counsel re status of CMO No 3 | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 11/16/2017 | RH | $450.00 | Review and evaluate communication from Ford counsel re proposed revisions to CMO No 3 | 0.5 | $225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 11/17/2017 | RH | $450.00 | Confer with PEC and liaison counsel re status of CMO 3; status and oppositions to second and third add on petitions; confer with staff re same | 1.5 | $675.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.5 |
| 11/20/2017 | ALM | $350.00 | Read and reviewed Plaintiff's PO re document repository | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 11/21/2017 | ALM | $350.00 | Reviewed and edited declaration of SBM in support of Plaintiffs' opposition to Defendant's second add on petition for coordination | 0.3 | $105.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |
| 11/27/2017 | ALM | $350.00 | Read and revviewed parties' CMO #3 and discussed with Angie | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 11/27/2017 | ALM | $350.00 | Telephone conversation with liason counsel: discussed upcoming deadline to file parties' joint report | 0.3 | $105.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |
| 11/28/2017 | ALM | $350.00 | Drafted Plaintiffs' portion of joint report and discussed with George | 1.0 | $350.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.0 |
| 11/28/2017 | ALM | $350.00 | Meeting with George: discussed upcoming deadline to file parties' joint report | 0.3 | $105.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/28/2017 | ALM | $350.00 | Telephone conference with PEC/liason counsel: discussed status of parties' joint report | 0.4 | $140.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 11/29/2017 | ALM | $350.00 | Telephone conversation with Nicole: discussed status of Plaintiff's portion of joint report | 0.4 | $140.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 12/4/2017 | RH | $450.00 | FMC DPS6 Federal Cases - Eastern District - Communication with court re FMC motions to stay | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 12/6/2017 | RH | $450.00 | Prepare for, travel to and attend status conference | 5.3 | $2,385.00 | 5.3 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |
| 12/7/2017 | RH | $450.00 | Review and confer with liaison/PEC re: proposed orders on repository issues | 0.5 | $225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 12/8/2017 | RH | $450.00 | Review and confer with liaison/PEC re: proposed orders on repository issues | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 12/11/2017 | RH | $450.00 | Confer with GA and prepare memorandum re: hearing results and pending orders | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 12/11/2017 | RH | $450.00 | DPS6 cases - meeting with SBM and ALM, review files re depositions from Vargas class action | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 12/15/2017 | ALM | $350.00 | Read and reviewed summary re results of recent status conference hearing | 0.2 | $70.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 12/20/2017 | RH | $450.00 | San Bernardino related DPS6 cases - Review court orders and confer with MQ re filing of NORC's in new cases | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 1/4/2018 | RH | $450.00 | Confer with PEC and liaison counsel re issues for upcoming status conference | 0.3 | $135.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 1/15/2018 | ALM | $350.00 | Read and reviewed parties' joint report in advance of upcoming status conference hearing | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 1/15/2018 | RH | $450.00 | Prepare for hearing on status conference / add on petitions | 2.5 | $1,125.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.0 |
| 1/16/2018 | RH | $450.00 | Travel to and attend status conference | 4.0 | $1,800.00 | 0.8 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 3.2 |
| 1/16/2018 | RH | $450.00 | Review several master case list submissions, confer with liaison and PEC re same | 0.8 | $360.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.6 |
| 1/16/2018 | RH | $450.00 | Communication with Charles Lee | 0.2 | $90.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |
| 1/17/2018 | RH | $450.00 | Meeting with SBM re next steps in discovery and settlement issues | 0.2 | $90.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |

Knight Law Group, LLP
Invoice



| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/17/2018 | RH | $450.00 | Ford DPS6 issues - review discovery and depositions from Vargas and related cases | 1.1 | $495.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.1 |
| 1/18/2018 | ALM | $350.00 | Read and reviewed letter from opposing counsel re mediation of cases and discussed with Russ | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 1/24/2018 | RH | $450.00 | Conference call with LAU, ILS representatives re DPS6 repository analysis; confer with LAU re documents included in repository | 0.8 | $360.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.8 |
| 1/25/2018 | RH | $450.00 | Ford DPS6 - Review transcript of Chris (split time) Kwasniewicz | 1.8 | $810.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.4 |
| 1/29/2018 | RH | $450.00 | Review DPS6 documents (split time) | 7.0 | $3,150.00 | 1.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 6.0 |
| 2/7/2018 | ALM | $350.00 | Read and reviewed parties' CMO #5 | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 2/13/2018 | RH | $450.00 | Ford So Cal JCCP 4856 - Confer with LAU and Rowena Santos re repository issues, document production, protective orders | 0.6 | $270.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.6 |
| 2/15/2018 | RH | $450.00 | San Bernardino related DPS6 cases - communication with liaison counsel re updating Judge Frangie on JCCP rulings | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 2/16/2018 | RH | $450.00 | Review Order granting second and third add on petitions; communication with staff counsel re same | 0.2 | $90.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |
| 2/16/2018 | RH | $450.00 | Communication with PEC re document repository administrative issues | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 2/19/2018 | RH | $450.00 | Confer with KSC re statement of damages per CMO 3, and list of coordinated cases; confer with staff re settlement of cases in JCCP | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 2/19/2018 | RH | $450.00 | Confer with PEC re document repository issues with ILS | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 2/20/2018 | ALM | $350.00 | Telephone conference re data storage software | 0.8 | $280.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.8 |
| 2/26/2018 | RH | $450.00 | Review document index produced by Ford counsel | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 2/26/2018 | RH | $450.00 | Confer with PEC re document repository charges, coding structure | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |

Knight Law Group, LLP
Invoice



| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/26/2018 | RH | $450.00 | Confer with PEC re document repository and global discovery efforts; work product issues | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 2/27/2018 | RH | $450.00 | Review draft case management orders | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 2/27/2018 | RH | $450.00 | Review Ford DPS6 federal case files re: settlement offers to establish amount in controversy | 0.6 | $270.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.6 |
| 3/1/2018 | ALM | $350.00 | Meeting with Russ: discussed receipt of Defendant's CMO #4 re resolution of Song-Beverly claims (and other related matters) | 0.5 | $175.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 3/1/2018 | RH | $450.00 | Review and evaluate proposed CMO 4; confer with PEC re same | 1.0 | $450.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.0 |
| 3/1/2018 | RH | $450.00 | [Not really PEC, but JCCP issues] Confer with KSC re plaintiffs' document production in all coordinated cases | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 3/2/2018 | RH | $450.00 | Conference with PEC re Joint Report, proposed CMO's | 0.3 | $135.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |
| 3/4/2018 | RH | $450.00 | Draft revisions and comments to proposed CMO 5; communcation with PEC re same | 2.5 | $1,125.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.5 |
| 3/5/2018 | RH | $450.00 | Review and evaluate proposed revisions to CMO 4; confer with PEC re same, and re: Ford strategy of non-admissions of liability and attempts to exclude evidence | 2.1 | $945.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.1 |
| 3/6/2018 | RH | $450.00 | Confer with PEC about proposed CMOs 4, 5, and 6; draft revisions to proposed CMO 4 and proposed CMO 6 | 1.6 | $720.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.4 |
| 3/7/2018 | RH | $450.00 | [Not really PEC but JCCP issues for clients] Follow up with KSC re plaintiff document production | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 3/7/2018 | RH | $450.00 | Further revision to proposed CMO 4 | 0.4 | $180.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 3/12/2018 | ALM | $350.00 | Read and reviewed Plaintiff's proposed edits to CMO #4 | 0.4 | $140.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 3/12/2018 | ALM | $350.00 | Read and reviewed CMO #5 | 0.4 | $140.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 3/12/2018 | RH | $450.00 | Revise proposed CMO 4 with comments; prepare Joint Status Report; communication with PEC and liaison counsel re same | 1.5 | $675.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.5 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/12/2018 | RH | $450.00 | Review and file batches of document production for case specific information | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 3/12/2018 | RH | $450.00 | Ford DPS6 cases - Confer with George S. re patent research | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 3/13/2018 | ALM | $350.00 | Read and reviewed Plaintiffs' responses to questionnaire in "Nor Cal" cases and discussed with George | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 3/14/2018 | ALM | $350.00 | Read and reviewed Plaintiff's further CMS filed by "Neil" and discussed with Russ | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 3/19/2018 | ALM | $350.00 | In-person appearance at status conference re CMOs #4 and 5, travel | 3.0 | $1,050.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.5 |
| 3/19/2018 | RH | $450.00 | Prepare for, travel to and attend status conference | 3.0 | $1,350.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.5 |
| 3/22/2018 | ALM | $350.00 | Meeting with Jonathan: discussed whether receieved results from "Nor Cal" hearing | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 3/26/2018 | RH | $450.00 | Prepare memo to file re status conference and Ford proposal to admit liability | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 3/29/2018 | ALM | $350.00 | Read and reviewed summary re results of recent status conference hearing | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 4/9/2018 | RH | $450.00 | Review status of document repository access with LAU | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 4/17/2018 | ALM | $350.00 | Telephone meeting re upcoming status conference hearing | 0.5 | $175.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 4/24/2018 | RH | $450.00 | Extensive communication with liaison and PEC re access to document repository; terms and conditions | 2.0 | $900.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.0 |
| 4/27/2018 | RH | $450.00 | Confer with staff counsel re scheduling and deadlines for Ford's motions for leave to amend answers | 0.1 | $45.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |
| 5/3/2018 | RH | $450.00 | Review Defendant's notices of motions for leave to file FAC, and deadline for oppositions to same | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 5/10/2018 | RH | $450.00 | Communication with Lauren Ungs re invoice from ILS for repository hosting fees | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 5/11/2018 | RH | $450.00 | Prepare opposition to motion for leave to file amended answers; review multiple cases re: same | 3.5 | $1,575.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 3.0 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/16/2018 | RH | $450.00 | Meeting with GA to discuss FMC motions for leave to amend answers | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 5/21/2018 | RH | $450.00 | Communication with liaison counsel and PEC re apportionment of costs for repository | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 5/30/2018 | RH | $450.00 | Confer with ALM and GA re stipulation to add on cases | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 6/1/2018 | KSC | $375.00 | prepared chart / review contact log; follow ups with disco team for outstanding client docs/info | 1.0 | $375.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.0 |
| 6/6/2018 | ALM | $350.00 | Meeting with George/Russ: discussed status of hearing on Defendant's motion for leave to amend answer | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 6/15/2018 | MER | $325.00 | Emails with liaison counsel | 0.6 | $195.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.6 |
| 6/18/2018 | MER | $325.00 | Review RH edits to Joint Report for 6/22 Conf | 0.5 | $162.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 7/5/2018 | RH | $450.00 | Confer with liaison and PEC re plaintiffs' report for status conference; review drafts of status report | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 7/12/2018 | RH | $450.00 | Confer with MQ re stipulation for coordination of cases in 4th AOP | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 7/24/2018 | RH | $450.00 | Communication with liaison counsel re terms of document repository access for additional counsel | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 7/25/2018 | RH | $450.00 | Confer with co-counsel re review of items in document repository; communication with liaison counsel re any potential conflicts for document repository access for additional counsel | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 7/25/2018 | RH | $450.00 | Communication with liaison counsel and PEC re request for case management conference | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.3 |
| 8/3/2018 | RH | $450.00 | Confer with GA and attorneys re 4th add on case set, deadline to oppose add on petition | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.2 |
| 8/22/2018 | MC | $300.00 | Meeting with MR discussed holding of Fritsch v Swift Transp Co, as per supplemental briefing of D. | 0.5 | $150.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 8/22/2018 | MC | $300.00 | Research DPS6 in re Defendant's Notice of Supplemental Authority re opp to P's test remand motions | 3.3 | $990.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 3.3 |

Case 2:25-cv-01256-AB-PVC Document 39-1 Filed 07/01/25 Page 63 of 180 Page ID #:2480

Ford Motor Warranty Cases

Knight Law Group, LLP
Invoice

JCCP 4856

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/27/2018 | RH | $450.00 | Review draft joint status report, confer with liaison counsel re same | 0.3 | $135.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |
| 8/28/2018 | RH | $450.00 | Prepare joint status report, conferences with liaison and PEC re same | 2.0 | $900.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.0 |
| 8/30/2018 | RH | $450.00 | Review defense plea for delay of scheduled status conference; confer with liaison and PEC re response to same; review minute order and confer with liaison re methods to prevent improvident rulings and continuances based on Ford's unilateral requests | 1.2 | $540.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 1.2 |
| 8/31/2018 | RH | $450.00 | Review Court notice of continuance of Status Conference and 4th Add On Petition | 0.1 | $45.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |
| 9/12/2018 | RH | $450.00 | Communication with liaison counsel re schedule for status conference | 0.1 | $45.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |
| 9/17/2018 | RH | $450.00 | Confer with liaison counsel re proposed continuance of status conference | 0.2 | $90.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |
| 10/1/2018 | RH | $450.00 | Review and respond to proposed further rescheduling of status conference | 0.1 | $45.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |
| 10/2/2018 | RH | $450.00 | Confer with liaison re formal stipulation for proposed further rescheduling of status conference | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 10/22/2018 | RH | $450.00 | Check dockets, prepare for hearing on motion to be relieved | 0.9 | $405.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.9 |
| 10/22/2018 | RH | $450.00 | Review JCCP order re nunc pro tunc reversal of coordination following MAF in Zaeemi and Redman; memo to file; confer with RK re same | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 10/23/2018 | RH | $450.00 | Prepare notices of hearing, packages for follow up service, argue with KSC and SF about the next steps and responsibility for carrying them out | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.4 |
| 10/23/2018 | RH | $450.00 | Travel to and from, prepare for and attend hearing on motion to be relieved; memorandum to file re next steps | 3.0 | $1,350.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 3.0 |
| 10/25/2018 | RH | $450.00 | Confer with liaison counsel re proposals for joint status report | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.1 |
| 10/29/2018 | RH | $450.00 | Confer with liaison and PEC re joint report; draft portions of joint report | 0.6 | $270.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.6 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/1/2018 | RH | $450.00 | Review and evaluate Ford's Fifth Add On Petition; review Portillo and Bowell cases re: facts, client contacts and status; memo to staff re same | 0.5 | $225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.5 |
| 11/5/2018 | RH | $450.00 | Prepare for, travel to and from, and attend status conference; lengthy meetings with liaison and other plaintiffs' counsel re next steps | 4.0 | $1,800.00 | 1.0 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 3.0 |
| 12/4/2018 | RH | $450.00 | Prepare joint status report for status conference | 2.5 | $1,125.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 2.0 |
| 12/5/2018 | RH | $450.00 | Revise/finalize joint status report; confer with Jeff Koncius re same | 0.3 | $135.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | starts 12/12/18 | starts 12/12/18 | n/a | n/a | 0.0 |
| 12/19/2018 | RH | $450.00 | Prepare for, travel to and attend status conference; prepare extensive memoranda to file and confer with liaison counsel re notices and communications with co-counsel | 4.0 | $1,800.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $225.00 | $225.00 | 2.5 |
| 12/20/2018 | RH | $450.00 | Research and communication with trial counsel teams regarding Ford's 6th Add On Petition (Zaragoza, Mora, Angulo, Cazares cases) in preparation to oppose coordination | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.2 |
| 12/21/2018 | RH | $450.00 | Research and communication with trial counsel teams regarding Ford's 6th Add On Petition (Zaragoza, Mora, Angulo, Cazares cases) in preparation to oppose coordination | 2.0 | $900.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $180.00 | $180.00 | 1.2 |
| 12/21/2018 | ALM | $350.00 | Meeting with Russ: discussed drafting opposition to Defendant's add-on petition for coordination | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $35.00 | $35.00 | 0.0 |
| 12/24/2018 | RH | $450.00 | Prepare opposition to 6th Add On Petition | 1.5 | $675.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $225.00 | $225.00 | 0.5 |
| 12/26/2018 | RH | $450.00 | Prepare opposition to 6th Add On Petition; research files; prepare supporting documents | 5.8 | $2,610.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.8 | 0.8 | $360.00 | $360.00 | 4.2 |
| 12/27/2018 | RH | $450.00 | Prepare opposition to 6th Add On Petition | 7.0 | $3,150.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 1.0 | 1.0 | $450.00 | $450.00 | 5.0 |
| 1/3/2019 | RH | $450.00 | Confer with liaison counsel re proposed order to release initial disposition pool of cases for discovery and law/motion | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.0 | 0.1 | $0.00 | $45.00 | 0.0 |

Case 2:25-cv-01256-AB-PVC Document 1-17 Filed 02/11/25 Page 1007 of 1097 Page ID #:2432

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/9/2019 | RH | $450.00 | Monitor correspondence between liaison counsel and Ford counsel re: Ford counsel's attempt to retroactively add deadlines to notice of rulings from status conference | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |
| 1/10/2019 | LAU | $425.00 | Meeting with Z. Powell regarding DPS6 document review project. | 0.5 | $212.50 | 0.5 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/10/2019 | LAU | $425.00 | Telephone call with P. Kiesel & S. Mikhov regarding DPS6 document review project. | 0.2 | $85.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/10/2019 | LAU | $425.00 | Telephone call with Dan Klier regarding DPS6 document review project. | 0.3 | $127.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $42.50 | $42.50 | 0.1 |
| 1/11/2019 | RH | $450.00 | Review court order continuing hearing on 6th add-on petition; confer with staff re schedules for further hearings and calendar | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |
| 1/15/2019 | RH | $450.00 | Confer with co-counsel and liaison counsel re hearing status, discovery and next steps | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |
| 1/18/2019 | LAU | $425.00 | Prepared for meeting regarding document review and preparation for June trial. | 1.6 | $680.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $127.50 | $127.50 | 1.0 |
| 1/18/2019 | LAU | $425.00 | Attended meeting regarding document review and preparation for June trial. | 3.8 | $1,615.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $212.50 | $212.50 | 2.8 |
| 1/18/2019 | RH | $450.00 | Confer with RK re proposed order on 998's and other matters | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |
| 1/30/2019 | RH | $450.00 | Confer with Jeff Koncius re 5-year issues | 0.1 | $45.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/31/2019 | RH | $450.00 | Confer with liaison and with staff re review of all active coordinated cases for 5-year deadlines | 2.0 | $900.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $90.00 | $90.00 | 1.4 |
| 2/4/2019 | LAU | $425.00 | Reviewed DPS6 documents. | 1.0 | $425.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | USED UP | 0.5 | n/a | $212.50 | 0.0 |
| 2/4/2019 | RH | $450.00 | Confer with Paul Kiesel re application of stays in complex court, recent appellate law, and accounting for time during coordination against 5-year dismissal statute; review correspondence between liaison and defense counsel | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.1 |
| 2/5/2019 | RH | $450.00 | Review files and prepare spreadsheets on 5-year issue | 1.5 | $675.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 1.1 |
| 2/5/2019 | RH | $450.00 | Review correspondence with CLR attorneys re proposed stipulation to coordinate; access to documents; exchange emails re protective orders | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.2 |

Knight Law Group, LLP
Invoice



| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/5/2019 | RH | $450.00 | Review case files and trial court orders in all active coordinated cases re stays ordered in trial courts prior to coordination | 2.5 | $1,125.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $135.00 | $135.00 | 1.5 |
| 2/7/2019 | ZP | $250.00 | Prepared by reviewing files for meeting. | 0.5 | $125.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 2/7/2019 | ZP | $250.00 | Meeting with Kiesel's office, CLR, RH and LAU re: DPS6 deposition targets. (split time) | 3.3 | $825.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 2.3 |
| 2/7/2019 | LAU | $425.00 | Reviewed DPS6 documents. | 6.5 | $2,762.50 | 1.0 | starts 9/10/20 | starts 8/6/21 | 0.9 | 0.9 | $382.50 | $382.50 | 3.7 |
| 2/7/2019 | LAU | $425.00 | Prepared for DPS6 meeting. | 1.2 | $510.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $170.00 | $170.00 | 0.0 |
| 2/7/2019 | LAU | $425.00 | Meeting with P. Kiesel, R. Higgens, Z. Powell, and CLR regarding DPS6 deposition scheduling and strategy. | 3.5 | $1,487.50 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $127.50 | $127.50 | 2.5 |
| 2/8/2019 | RH | $450.00 | Confer with liaison counsel re 5-year deadlines for coordinated cases | 0.2 | $90.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 2/11/2019 | ZP | $250.00 | Further DPS6 Vargas Hot Docs review. | 1.2 | $300.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 0.4 |
| 2/11/2019 | ZP | $250.00 | DPS6 Vargas Hot Docs review to cull exhibits. | 1.6 | $400.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 1.0 |
| 2/11/2019 | RH | $450.00 | Research files re active cases with prior court stays, settled cases and status of fees; confer extensively with liaison counsel and with staff re same | 2.0 | $900.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $180.00 | $180.00 | 1.2 |
| 2/12/2019 | RH | $450.00 | Confer with liaison counsel and prepare further spreadsheet re active and settled cases | 0.9 | $405.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $135.00 | $135.00 | 0.3 |
| 2/18/2019 | ZP | $250.00 | DPS6 second round review continues. | 1.7 | $425.00 | 0.6 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 0.1 |
| 2/19/2019 | SS | $225.00 | Reviewed Ford's 6th Add on Petition Hearing Results | 0.1 | $22.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.0 | $22.50 | $0.00 | 0.0 |
| 2/19/2019 | RH | $450.00 | Prepare for, travel to and attend hearing on Ford's 6th Add On Petition; memoranda to file in preparation for status conference and continued hearing; prepare case materials for delivery to court | 7.0 | $3,150.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 1.0 | 1.0 | $450.00 | $450.00 | 5.0 |



Case 2:25-cv-01215-AB-PVC Document 39-1 Filed 07/02/25 Page 64 of 176 Page ID #:2486

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/21/2019 | ALM | $350.00 | Read and reviewed court's tentative ruling on Defendant's petition for coordination/MTC further discovery responses from Defendant and discussed with KSC | 0.4 | $140.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $35.00 | $35.00 | 0.2 |
| 2/26/2019 | RH | $450.00 | Review status of dispute regarding rulings from December status conference; confer with staff regarding potential attorney fee deadlines in additional settled cases | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.2 |
| 2/26/2019 | RH | $450.00 | Prepare for, travel to and attend hearing on status conference and Ford's 6th Add On petition | 8.0 | $3,600.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 1.1 | 1.1 | $495.00 | $495.00 | 5.8 |
| 2/28/2019 | SS | $225.00 | Reviewed Status Conference Results | 0.1 | $22.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.0 | 0.1 | $0.00 | $22.50 | 0.0 |
| 2/28/2019 | RH | $450.00 | Prepare comprehensive outcome of status conference and 6th AOP; confer with RK re next steps | 1.5 | $675.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $225.00 | $225.00 | 0.5 |
| 3/5/2019 | LAU | $425.00 | Meeting with Zach regarding ILS data. | 1.5 | $637.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $212.50 | $212.50 | 0.5 |
| 3/5/2019 | RH | $450.00 | Communications with Michael Hansen concerning remand issues | 0.4 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.2 |
| 3/7/2019 | RH | $450.00 | Review emails from Ford counsel Stradling Yocca concerning NOD's served in coordinated cases; confer with staff concerning NOD's served in various cases and dates for deposition; emails and telephone call with Craig Taggart concerning schedule for depos a | 0.5 | $225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.3 |
| 3/12/2019 | RH | $450.00 | Review and revise draft notice of rulings from status conference | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.0 | $45.00 | $0.00 | 0.0 |
| 3/13/2019 | ALM | $350.00 | Meeting with Russ: discussed status of PO | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $35.00 | $35.00 | 0.1 |
| 3/18/2019 | ZP | $250.00 | Emails to/from Truong re: deponent building breakdowns. | 0.3 | $75.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.1 |
| 3/18/2019 | ZP | $250.00 | Meeting with LAU/RH re: DPS6 review and issue coding. | 0.8 | $200.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.1 |
| 3/18/2019 | ZP | $250.00 | Call/meeting with LAU on DPS6 review and ILS breakdown. | 0.2 | $50.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 3/18/2019 | ZP | $250.00 | Email to Truong at ILS. | 0.1 | $25.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/18/2019 | ZP | $250.00 | Call with Truong at ILS. | 0.2 | $50.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 3/18/2019 | ZP | $250.00 | Call with Stephanie Taft at Kiesel Law re: ILS doc review for DPS6. | 0.2 | $50.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 3/18/2019 | ZP | $250.00 | Reviewed NOD from ST re: ILS doc review for DPS6. | 0.2 | $50.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 3/18/2019 | LAU | $425.00 | Telephone call with P. Kiesel regarding scheduling of a DPS6 meeting; telephone call with Russ regarding coordination of meeting; meeting with Zach regarding preparation for meeting. | 4.0 | $1,700.00 | 0.8 | starts 9/10/20 | starts 8/6/21 | 0.8 | 0.8 | $340.00 | $340.00 | 1.6 |
| 3/18/2019 | LAU | $425.00 | Telephone call with lead attorneys regarding common issues. | 1.6 | $680.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $127.50 | $127.50 | 1.0 |
| 3/19/2019 | ZP | $250.00 | DPS6 prep, reviewed 700R hot docs and watched video breakdown. | 2.4 | $600.00 | 0.6 | starts 9/10/20 | starts 8/6/21 | 0.6 | 0.6 | $150.00 | $150.00 | 0.6 |
| 3/19/2019 | ZP | $250.00 | Email from/to ST re: ILS doc review. | 0.2 | $50.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 3/19/2019 | MER | $325.00 | review and revise template pmk notice | 0.5 | $162.50 | 0.2 | starts 9/10/20 | starts 8/6/21 | 0.0 | 0.0 | $0.00 | $0.00 | 0.3 |
| 3/19/2019 | LAU | $425.00 | Document review in ILS database. | 4.0 | $1,700.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $212.50 | $212.50 | 3.0 |
| 3/19/2019 | RH | $450.00 | Prepare heavily revised PMK deposition notice on case-specific issues | 1.5 | $675.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $225.00 | $225.00 | 0.0 |
| 3/20/2019 | ZP | $250.00 | Prepared for DPS6 meeting, reviewed files, reviewed complaint, reviewed deponent list, located docs from prior meeting, updated meeting agenda and review protocol. | 4.4 | $1,100.00 | 0.8 | starts 9/10/20 | starts 8/6/21 | 0.7 | 0.7 | $175.00 | $175.00 | 2.2 |
| 3/20/2019 | ZP | $250.00 | Emails to team for DPS6 meeting with attached docs. | 0.3 | $75.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 3/20/2019 | ZP | $250.00 | Email to Neil and team re: DPS6 depositions. | 0.2 | $50.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 3/20/2019 | ZP | $250.00 | Email from Neil re: ford employee depos. | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.0 | 0.1 | $0.00 | $25.00 | 0.0 |
| 3/20/2019 | ZP | $250.00 | Email to Truong for DPS6 coding panels and excel spreadsheet breakdown. | 0.3 | $75.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.1 |
| 3/20/2019 | ZP | $250.00 | Read Truong's email re: coding panels. | 0.2 | $50.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/20/2019 | ZP | $250.00 | Email to Truong for DPS6 deponent coding. | 0.3 | $75.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.1 |
| 3/21/2019 | ZP | $250.00 | DPS6 deponent background research. | 1.2 | $300.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 0.4 |
| 3/21/2019 | ZP | $250.00 | Email from Truong@ILS re: excel spreadsheet. | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.0 | $25.00 | $0.00 | 0.0 |
| 3/21/2019 | ZP | $250.00 | Reviewed ILS production of Chris Kwas excel sheet. | 0.3 | $75.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 3/21/2019 | ZP | $250.00 | DPS6 team meeting. | 2.6 | $650.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.3 |
| 3/21/2019 | ZP | $250.00 | Reviewed DPS6 notes and docs for DPS6 meeting. | 2.3 | $575.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 1.3 |
| 3/21/2019 | ZP | $250.00 | Watched DPS6 videos for research/presentation on DPS6. | 1.1 | $275.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.4 |
| 3/21/2019 | ZP | $250.00 | Email to DPS6 team with Outline outline. | 0.1 | $25.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 3/21/2019 | ZP | $250.00 | Met with LAU for Outline for meeting. | 0.5 | $125.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.3 |
| 3/21/2019 | ZP | $250.00 | Email from ST re: Bates for 700 hot docs from Resnik | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.0 | 0.1 | $0.00 | $25.00 | 0.0 |
| 3/21/2019 | ZP | $250.00 | Email to ST re: Bates for 700 hot docs from Resnik | 0.2 | $50.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 3/21/2019 | ZP | $250.00 | Email to Truong re: editing coding panels in DPS6 repository. | 0.3 | $75.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.1 |
| 3/21/2019 | ZP | $250.00 | Correspondence with DK re: DPS6. | 0.3 | $75.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.1 |
| 3/21/2019 | LAU | $425.00 | Document review in ILS database in preparation for drafting of document review protocol. | 3.0 | $1,275.00 | 0.6 | starts 9/10/20 | starts 8/6/21 | 0.6 | 0.6 | $255.00 | $255.00 | 1.2 |
| 3/21/2019 | LAU | $425.00 | Meeting with Zach regarding preparations for document review protocol; review and revisions to document review protocol. | 3.0 | $1,275.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $127.50 | $127.50 | 2.1 |
| 3/21/2019 | LAU | $425.00 | Prepared for hosting meeting regarding document review; prepared outlines and protocols. | 3.0 | $1,275.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $212.50 | $212.50 | 1.5 |
| 3/21/2019 | LAU | $425.00 | Hosted meeting regarding document review for upcoming Ford employee depositions. | 3.0 | $1,275.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $212.50 | $212.50 | 1.5 |
| 3/21/2019 | RH | $450.00 | Confer with RK re protocol for fee motions (meet/confer) | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.0 | $45.00 | $0.00 | 0.0 |



Case 2:18-ml-02814-AB-PVC Document 1640-2 Filed 09/11/24 Page 66 of 177 Page ID #:68144

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/22/2019 | ZP | $250.00 | Email to Truong re: order of deponents to work on. | 0.2 | $50.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 3/22/2019 | ZP | $250.00 | Compiled depo dates and tentative depo dates. | 0.8 | $200.00 | 0.8 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 3/22/2019 | ZP | $250.00 | DPS6 transmission breakdown video review. | 1.3 | $325.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 0.5 |
| 3/22/2019 | ZP | $250.00 | Emails to/from ST re: DPS6 depos. | 0.3 | $75.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 3/22/2019 | ZP | $250.00 | Reviewed new times proposed for depositions in MI. | 0.3 | $75.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 3/24/2019 | ZP | $250.00 | DPS6 meeting. | 5.7 | $1,425.00 | 1.1 | starts 9/10/20 | starts 8/6/21 | 0.9 | 0.9 | $225.00 | $225.00 | 2.8 |
| 3/24/2019 | LAU | $425.00 | Attended DPS6 meeting. | 8.0 | $3,400.00 | 1.1 | starts 9/10/20 | starts 8/6/21 | 1.0 | 1.0 | $425.00 | $425.00 | 4.9 |
| 3/25/2019 | ZP | $250.00 | Word searches for key items. | 1.2 | $300.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 0.4 |
| 3/25/2019 | ZP | $250.00 | Email to Truong re: accounts and coding questions. | 0.2 | $50.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 3/25/2019 | ZP | $250.00 | Email to RH re: answers to coding questions. | 0.2 | $50.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 3/25/2019 | ZP | $250.00 | Email from RH re: coding questions. | 0.2 | $50.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 3/26/2019 | ZP | $250.00 | Edited notes and guidelines for deposition doc review, reviewed excel spreadsheets from production and from ILS | 2.3 | $575.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 1.3 |
| 3/26/2019 | ZP | $250.00 | Emails to/from Truong at ILS for DPS6 database edits and coding panel updates. | 0.4 | $100.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.2 |
| 3/26/2019 | ZP | $250.00 | Met with Lauren re: ILS training. | 0.4 | $100.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.2 |
| 3/26/2019 | ZP | $250.00 | DPS6 ILS training session. | 0.8 | $200.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.4 |
| 3/27/2019 | ZP | $250.00 | DPS6 review and protocol edits. | 2.9 | $725.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.9 |
| 3/27/2019 | ZP | $250.00 | Email to ST about 2012 lessons learned. | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.0 | 0.1 | $0.00 | $25.00 | 0.0 |
| 3/27/2019 | ZP | $250.00 | Asked LAU about the 2012 Lessons Learned. | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.0 | $25.00 | $0.00 | 0.0 |



Case 2:25-cv-01256-AB-PVC Document 39-4 Filed 07/01/25 Page 51 of 170 Page ID #:2480

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/28/2019 | ZP | $250.00 | DPS6 Review, quality control on DK's review as well. | 3.2 | $800.00 | 0.6 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.6 |
| 3/28/2019 | ZP | $250.00 | Emails to/from Truong at ILS. | 0.4 | $100.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | 0.2 | USED UP | $50.00 | n/a | 0.0 |
| 3/29/2019 | ZP | $250.00 | DPS6 review. | 5.2 | $1,300.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.7 | 0.7 | $175.00 | $175.00 | 3.8 |
| 3/30/2019 | ZP | $250.00 | Discussed DPS6 review with GA. | 0.4 | $100.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.2 |
| 3/30/2019 | ZP | $250.00 | Email to Stephanie re: review outline | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.0 | 0.1 | $0.00 | $25.00 | 0.0 |
| 3/30/2019 | ZP | $250.00 | Email to Kiesel re: review outline. | 0.3 | $75.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 3/30/2019 | ZP | $250.00 | Call with Kiesel re: review. | 0.1 | $25.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 3/30/2019 | ZP | $250.00 | DPS6 review. | 5.1 | $1,275.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 3.8 |
| 4/1/2019 | RH | $450.00 | Emails and conference call with Jeff Koncius & Taft re issues for conference call with Ford in preparation for joint status report | 0.5 | $225.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | USED UP | 0.2 | n/a | $90.00 | 0.0 |
| 4/1/2019 | RH | $450.00 | Emails and conference call with Jeff Koncius & Taft re issues for conference call with Ford in preparation for joint status report | 0.5 | $225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.3 |
| 4/2/2019 | ZP | $250.00 | Call with DK re: DPS6 review. | 0.2 | $50.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/2/2019 | ZP | $250.00 | Emails to/from RH re: Chris Kwas review. | 0.2 | $50.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/2/2019 | ZP | $250.00 | Emails to/from Truong at ILS re: Resnick Hot Docs. | 0.3 | $75.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.1 |
| 4/2/2019 | ZP | $250.00 | Call with SS re: DPS6 review. | 0.1 | $25.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/2/2019 | ZP | $250.00 | Email to MR/CS re: ILS Log-In Credentials. | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.0 | $25.00 | $0.00 | 0.0 |
| 4/2/2019 | ZP | $250.00 | Email from/to Truong at ILS for accounts. | 0.2 | $50.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 4/2/2019 | ZP | $250.00 | Email to KLG DPS6 review team new members. | 0.4 | $100.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/2/2019 | ZP | $250.00 | Email to Bicoastal team for DPS6 review. | 0.2 | $50.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |



Case 2:25-cv-01256-AB-PVC Document 39-1 Filed 07/30/25 Page 79 of 177 Page ID #:2488

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/2/2019 | ZP | $250.00 | Call with Stephanie Taft re: DPS6 review. | 0.1 | $25.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/2/2019 | ZP | $250.00 | Call with Dan Klier re: DPS6 review. | 0.2 | $50.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 4/2/2019 | ZP | $250.00 | Call with Dan Klier re: DPS6 review. | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.0 | 0.1 | $0.00 | $25.00 | 0.0 |
| 4/2/2019 | ZP | $250.00 | Call with Scott Delaney re: DPS6 review. | 0.2 | $50.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 4/2/2019 | ZP | $250.00 | Call with Kiesel re: DPS6 review. | 0.1 | $25.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/2/2019 | ZP | $250.00 | Call with Kiesel re: DPS6 review. | 0.1 | $25.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/2/2019 | ZP | $250.00 | Ran training session for new DPS6 reviewers. | 1.1 | $275.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.5 |
| 4/2/2019 | RH | $450.00 | Conference with Ford counsel and liaison, re Ford's complaints about Morales and Toriz motions for attorney's fees and costs; review case files and tortured history of Ford's complaints about fee issues, unclear demands and orders, and outline situation l | 1.8 | $810.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $135.00 | $135.00 | 1.2 |
| 4/2/2019 | RH | $450.00 | Conference with Ford counsel and liaison, and meetings with staff and co-counsel, re discovery issues, resolution of purported "global legal issues," and related matters | 0.5 | $225.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.2 | USED UP | $90.00 | n/a | 0.0 |
| 4/3/2019 | ZP | $250.00 | Email re: batches to ILS and co-counsel. | 0.5 | $125.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | USED UP | 0.2 | n/a | $50.00 | 0.0 |
| 4/3/2019 | LAU | $425.00 | Worked on document review of Ford's production in database. | 6.0 | $2,550.00 | 1.0 | starts 9/10/20 | starts 8/6/21 | 1.0 | 1.0 | $425.00 | $425.00 | 3.0 |
| 4/3/2019 | LAU | $425.00 | Meeting with Zach regarding upcoming depositions in Michigan; coordination of tech set up in Michigan. | 2.0 | $850.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $85.00 | $85.00 | 1.3 |
| 4/4/2019 | ZP | $250.00 | Located Complaint and edited PDF, sent over to Bicoastal and Kiesel's office for review. Emails to/from both offices. | 0.5 | $125.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.3 |
| 4/4/2019 | ZP | $250.00 | Call with George re: B299. | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.0 | $25.00 | $0.00 | 0.0 |
| 4/4/2019 | ZP | $250.00 | Emails to/from Truong re: Resnick Hot Docs. | 0.2 | $50.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |



Case 2:25-cv-01215-AB-PVC Document 39-1-5 Filed 07/01/25 Page 70 of 176 Page ID #:2489

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/4/2019 | ZP | $250.00 | Email to Truong to set up ILS account. | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.0 | 0.1 | $0.00 | $25.00 | 0.0 |
| 4/4/2019 | ZP | $250.00 | Call with TS re: setting up account. | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.0 | $25.00 | $0.00 | 0.0 |
| 4/4/2019 | ZP | $250.00 | Email to ST and Dan Klier's office re: V48 Transmission designation. | 0.2 | $50.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/4/2019 | ZP | $250.00 | V48 and acronym searches. | 0.4 | $100.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/4/2019 | ZP | $250.00 | Email to/from DM re: DPS6 parking lock system. | 0.3 | $75.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.1 |
| 4/4/2019 | ZP | $250.00 | Emails to DPS6 team on Resnick hot docs folder. | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.0 | 0.1 | $0.00 | $25.00 | 0.0 |
| 4/4/2019 | ZP | $250.00 | Emails to/from Truong at ILS re: Resnick Hot Docs. | 0.2 | $50.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 4/4/2019 | ZP | $250.00 | Call with GA re: DPS6 Review and resnick docs. | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.0 | $25.00 | $0.00 | 0.0 |
| 4/5/2019 | ZP | $250.00 | DPS6 review and second pass on hot docs. | 2.1 | $525.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 1.1 |
| 4/5/2019 | ZP | $250.00 | Reviewed Chris Kwas documents. | 1.8 | $450.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.8 |
| 4/5/2019 | ZP | $250.00 | Meeting with Bicoastal team for DPS6. | 1.1 | $275.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.4 |
| 4/6/2019 | ZP | $250.00 | Research into dangerous dps6 youtuber. | 0.2 | $50.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/6/2019 | ZP | $250.00 | Email to ILS about merging repositories. | 0.2 | $50.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 4/6/2019 | ZP | $250.00 | Emails to/from DK and RH re: dps6. | 0.2 | $50.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 4/6/2019 | ZP | $250.00 | Meeting with entire DPS6 team and trial counsel. | 2.6 | $650.00 | 0.6 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.0 |
| 4/7/2019 | ZP | $250.00 | Emails to/from Kiesel re: docs. | 0.2 | $50.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 4/7/2019 | ZP | $250.00 | Email to AL/GL/DM re: overla review. | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.0 | 0.1 | $0.00 | $25.00 | 0.0 |
| 4/7/2019 | ZP | $250.00 | Emails to Russ/AM re: background checks. | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.0 | $25.00 | $0.00 | 0.0 |
| 4/8/2019 | ZP | $250.00 | Email to GA re: setting up exhibit list. | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.0 | 0.1 | $0.00 | $25.00 | 0.0 |

Case 2:25-cv-01256-AB-AGR Document 39-1-7 Filed 07/01/24 Page 70 of 201 Page ID #:2914

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/8/2019 | ZP | $250.00 | Emails re: Overla Notes. | 0.2 | $50.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 4/8/2019 | ZP | $250.00 | Emails to/from Truong re: merging of ILS repositories. | 0.3 | $75.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.1 |
| 4/8/2019 | ZP | $250.00 | Forwarded Bicoastal email to RH/GA/DK. | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.0 | $25.00 | $0.00 | 0.0 |
| 4/8/2019 | ZP | $250.00 | Email to team re: DPS6 Overla notes. | 0.3 | $75.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.1 |
| 4/9/2019 | ZP | $250.00 | Email to Truong re: account set-up. | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.0 | 0.1 | $0.00 | $25.00 | 0.0 |
| 4/9/2019 | ZP | $250.00 | Email to ST re: Micale. | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.0 | $25.00 | $0.00 | 0.0 |
| 4/11/2019 | ZP | $250.00 | Meeting with RH, DK, GA re: DPS6 docs | 1.6 | $400.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 0.4 |
| 4/11/2019 | RK | $425.00 | Reviewed memo status conference, conferred with staff regarding timely motions for relief | 1.8 | $765.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $127.50 | $127.50 | 1.2 |
| 4/12/2019 | SS | $225.00 | Reviewed Status Conference Hearing Results | 0.1 | $22.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.0 | 0.1 | $0.00 | $22.50 | 0.0 |
| 4/15/2019 | ZP | $250.00 | Organized deposition folders on server and cross referenced prior exhibits with new final exhibit list. | 1.8 | $450.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.8 |
| 4/15/2019 | RH | $450.00 | Confer with liaison counsel re cases with pending motions to amend, and common issues to be resolved in JCCP | 0.2 | $90.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/17/2019 | SS | $225.00 | Prepped for Hamm Depo | 6.5 | $1,462.50 | 1.0 | starts 9/10/20 | starts 8/6/21 | 0.9 | 0.9 | $202.50 | $202.50 | 3.7 |
| 4/17/2019 | SS | $225.00 | Travel to Michigan for Hamm Depo | 5.5 | $1,237.50 | 1.0 | starts 9/10/20 | starts 8/6/21 | 0.9 | 0.9 | $202.50 | $202.50 | 2.7 |
| 4/17/2019 | RH | $450.00 | MagMoss and pleading amendment research - review all complaints, pleading / docket histories, etc. in IDP cases; confer with KM, Lorena, et al re Mag Moss dismissals and unresolved pleadings | 1.5 | $675.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $225.00 | $225.00 | 0.5 |
| 4/18/2019 | SS | $225.00 | Travel back to L.A. | 5.5 | $1,237.50 | 1.0 | starts 9/10/20 | starts 8/6/21 | 0.9 | 0.9 | $202.50 | $202.50 | 2.7 |
| 4/18/2019 | SS | $225.00 | Deposition of Tom Hamm | 9.5 | $2,137.50 | 1.5 | starts 9/10/20 | starts 8/6/21 | 1.3 | 1.3 | $292.50 | $292.50 | 5.4 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/19/2019 | ALM | $350.00 | Meeting with Russ: discussed whether amending Plaintiff's complaint to include fraud against dealership | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $35.00 | $35.00 | 0.0 |
| 4/22/2019 | SS | $225.00 | Worked on DPS6 Doc Review | 5.5 | $1,237.50 | 0.9 | starts 9/10/20 | starts 8/6/21 | 0.7 | 0.7 | $157.50 | $157.50 | 3.2 |
| 4/22/2019 | ZP | $250.00 | Reviewed updated deponent schedule, emailed to LAU. | 0.3 | $75.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 4/22/2019 | ZP | $250.00 | Emails to/from ST/PK re: further deponent approval. | 0.2 | $50.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/22/2019 | ZP | $250.00 | Read emails from RH/GA re: hot docs. | 0.3 | $75.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.1 |
| 4/22/2019 | ZP | $250.00 | Emails to/from GA re: list of exhibits used in depositions so far. | 0.3 | $75.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/22/2019 | ZP | $250.00 | Call with Paul Kiesel re: items to complete for deposition. | 0.2 | $50.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/22/2019 | LAU | $425.00 | Meeting with Maye regarding upcoming trial schedule. | 1.0 | $425.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $127.50 | $127.50 | 0.4 |
| 4/22/2019 | LAU | $425.00 | Telephone call with Z. Powell regarding updates on DPS6 depositions; discussion re: staffing of upcoming depositions; discussion re: ongoing document review. | 2.0 | $850.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $170.00 | $170.00 | 0.8 |
| 4/22/2019 | RH | $450.00 | Review cases with open / unresolved pleading issues; emails with Nicole Ramirez, other liaison and staff counsel, re issues to discuss prior to status conference | 1.0 | $450.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $135.00 | $135.00 | 0.4 |
| 4/23/2019 | SS | $225.00 | Worked on DPS6 Doc Review | 4.5 | $1,012.50 | 0.9 | starts 9/10/20 | starts 8/6/21 | 0.9 | 0.9 | $202.50 | $202.50 | 1.8 |
| 4/23/2019 | RH | $450.00 | Prepare opposition to 7th Add On Petition | 4.5 | $2,025.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.6 | 0.6 | $270.00 | $270.00 | 3.3 |
| 4/24/2019 | SS | $225.00 | Worked on DPS6 Doc Review | 3.4 | $765.00 | 0.7 | starts 9/10/20 | starts 8/6/21 | 0.6 | 0.6 | $135.00 | $135.00 | 1.5 |
| 4/25/2019 | ZP | $250.00 | Follow-up email re: exhibit number renumbering to SS/SM. | 0.1 | $25.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.0 | $25.00 | $0.00 | 0.0 |
| 4/25/2019 | ZP | $250.00 | Email strings with team re: overlapping exhibit numbers. | 0.4 | $100.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.2 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/25/2019 | ZP | $250.00 | Met with Sean Macias, Ken Stern and Michael Resnick for dinner and post-deposition discussion, as well as preparation for Kara Kennedy Deposition to commence 4/26. | 2.1 | $525.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.3 |
| 4/25/2019 | ZP | $250.00 | Cleared the room of all documents used in Chris Kwas deposition, reorganized and filed away for future use or shredding. | 0.5 | $125.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.3 |
| 4/25/2019 | ZP | $250.00 | Supported Chris Kwas deposition via document pulls and research. | 4.8 | $1,200.00 | 0.8 | starts 9/10/20 | starts 8/6/21 | 0.8 | 0.8 | $200.00 | $200.00 | 2.4 |
| 4/25/2019 | ZP | $250.00 | Prepared for Chris Kwas deposition with Paul and Russ. | 4.6 | $1,150.00 | 0.6 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 3.0 |
| 4/29/2019 | SS | $225.00 | DPS6 Doc Review | 1.2 | $270.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $90.00 | $90.00 | 0.4 |
| 4/29/2019 | SS | $225.00 | Meeting with Russ to Discuss how to handle Gary Nichols Depo | 0.6 | $135.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.3 | USED UP | $67.50 | n/a | 0.0 |
| 4/29/2019 | ZP | $250.00 | Emails to/from AM/RH re: meeting with Stern Law. | 0.4 | $100.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.2 |
| 4/30/2019 | SS | $225.00 | DPS6 Doc Review | 2.5 | $562.50 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $112.50 | $112.50 | 1.0 |
| 4/30/2019 | ZP | $250.00 | Continued to label exhibits and cull for shredding. Broke down remaining nonessential equipment to be transported. | 3.9 | $975.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 2.9 |
| 4/30/2019 | ZP | $250.00 | Labeled exhibits for depositions. | 2.8 | $700.00 | 0.6 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.2 |
| 5/1/2019 | SS | $225.00 | DPS6 Doc Review | 9.5 | $2,137.50 | 1.5 | starts 9/10/20 | starts 8/6/21 | 1.3 | 1.3 | $292.50 | $292.50 | 5.4 |
| 5/2/2019 | SS | $225.00 | DPS6 Doc Review | 6.5 | $1,462.50 | 1.5 | starts 9/10/20 | starts 8/6/21 | 1.3 | 1.3 | $292.50 | $292.50 | 2.4 |
| 5/3/2019 | SS | $225.00 | DPS6 Doc Review | 2.8 | $630.00 | 0.7 | starts 9/10/20 | starts 8/6/21 | 0.7 | 0.7 | $157.50 | $157.50 | 0.7 |
| 5/3/2019 | ZP | $250.00 | Emails to/from co-counsel regarding boardroom reservations. | 0.3 | $75.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.1 |
| 5/4/2019 | ZP | $250.00 | Renumbered deposition exhibits and saved to file. | 2.4 | $600.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.6 |
| 5/5/2019 | ZP | $250.00 | Met with SM and PK for dinner to discuss deposition going forward 5/6 and 5/7 and BC's document review. | 3.2 | $800.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 2.4 |



Case 2:25-cv-01254-AB-PVC Document 39-1 Filed 06/20/25 Page 81 of 185 Page ID #:2416

Case 2:25-cv-01252-AB-PVC Document 3-41-17 Filed 02/10/25 Page 82 of 176 Page ID #:2994

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/6/2019 | SS | $225.00 | Located TSBs and corresponding exhibits numbers | 1.4 | $315.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $67.50 | $67.50 | 0.4 |
| 5/6/2019 | RH | $450.00 | Review status of Arnelle and Secules settlements / dismissals in advance of OSC hearings | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |
| 5/6/2019 | RH | $450.00 | Confer with liaison & RK re several issues for upcoming status conference -- fee motion orders, cases with unresolved pleading issues, pretrial scheduling proposals | 0.5 | $225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.3 |
| 5/8/2019 | SS | $225.00 | DPS6 Documents Review | 2.8 | $630.00 | 0.6 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $112.50 | $112.50 | 1.2 |
| 5/8/2019 | ZP | $250.00 | Continued preparation for deposition of Piero Aversa with RH, printed and tabbed exhibits. | 4.8 | $1,200.00 | 0.8 | starts 9/10/20 | starts 8/6/21 | 0.8 | 0.8 | $200.00 | $200.00 | 2.4 |
| 5/9/2019 | ZP | $250.00 | Prepared for, printed documents for, supported and seconded deposition of Piero Aversa. | 9.7 | $2,425.00 | 1.6 | starts 9/10/20 | starts 8/6/21 | 1.3 | 1.3 | $325.00 | $325.00 | 5.5 |
| 5/10/2019 | RH | $450.00 | Confer with liaison & RK re several issues for upcoming status conference -- fee motion orders, cases with unresolved pleading issues, pretrial scheduling proposals | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.1 |
| 5/13/2019 | ZP | $250.00 | Sorted documents from use in early April depositions for destruction, tabbed exhibits to be used in future depositions, sorted into separate boxes and labeled for use by deposing attorneys. | 2.6 | $650.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.3 |
| 5/13/2019 | ZP | $250.00 | Emails to/from court reporters regarding exhibits used in each deposition. | 0.3 | $75.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/13/2019 | ZP | $250.00 | Updated exhibit list, Master Exhibit List spreadsheet, final exhibit list folder and own tracking chart of exhibits used in each deposition. | 1.7 | $425.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.7 |
| 5/13/2019 | RH | $450.00 | Prepare for and attend status conference | 3.0 | $1,350.00 | 1.0 | starts 9/10/20 | starts 8/6/21 | 1.0 | 1.0 | $450.00 | $450.00 | 0.0 |
| 5/14/2019 | SS | $225.00 | Assigned exhibit numbers to documents intended to be used at deposition | 0.8 | $180.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $45.00 | $45.00 | 0.4 |
| 5/14/2019 | SS | $225.00 | Complied CRC exhibits and other ones routinely used with Jake Doss in other cases (including 6.0's) | 1.4 | $315.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $90.00 | $90.00 | 0.6 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/14/2019 | ZP | $250.00 | Performed background research and document review on Ernie DeVincent as an individual an d Ford employee. | 4.8 | $1,200.00 | 0.8 | starts 9/10/20 | starts 8/6/21 | 0.8 | 0.8 | $200.00 | $200.00 | 2.4 |
| 5/16/2019 | SS | $225.00 | Worked on drafting RFG's | 4.5 | $1,012.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.6 | 0.6 | $135.00 | $135.00 | 3.3 |
| 5/16/2019 | ZP | $250.00 | Policed documents up from deposition room and sorted into shred and reuse boxes, retabbbed and filed according to number. | 1.5 | $375.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 0.5 |
| 5/16/2019 | ZP | $250.00 | Continued research on Ernest DeVincent. | 0.7 | $175.00 | 0.7 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/17/2019 | ZP | $250.00 | Call with LAU re: exhibit list | 0.1 | $25.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/17/2019 | ZP | $250.00 | Put together initial draft of exhibit list with notes, descriptions of usefulness of document and indices. Highlighted all documents for relevance. | 8.3 | $2,075.00 | 1.6 | starts 9/10/20 | starts 8/6/21 | 1.3 | 1.3 | $325.00 | $325.00 | 4.1 |
| 5/20/2019 | SS | $225.00 | Gathered Jake Doss Exhibits | 1.3 | $292.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $90.00 | $90.00 | 0.5 |
| 5/20/2019 | ZP | $250.00 | Deponent research and document review. | 7.5 | $1,875.00 | 1.5 | starts 9/10/20 | starts 8/6/21 | 1.5 | 1.5 | $375.00 | $375.00 | 3.0 |
| 5/31/2019 | RH | $450.00 | Prepare memorandum to file re outcome of status conference | 0.3 | $135.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |
| 6/4/2019 | ZP | $250.00 | Worked on deposition document chart. | 5.7 | $1,425.00 | 1.4 | starts 9/10/20 | starts 8/6/21 | 1.1 | 1.1 | $275.00 | $275.00 | 2.1 |
| 6/4/2019 | RH | $450.00 | Review issues of potential amendment of complaints to add dealer fraud claims; Meet with SBM re same | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |
| 6/5/2019 | ZP | $250.00 | Compiled documents for Master Exhibit List for use with experts. | 4.1 | $1,025.00 | 0.7 | starts 9/10/20 | starts 8/6/21 | 0.6 | 0.6 | $150.00 | $150.00 | 2.2 |
| 6/6/2019 | ZP | $250.00 | Continued to edit Master Exhibit List excel spreadsheet for use in trial and to prep experts. | 3.3 | $825.00 | 0.6 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.7 |
| 6/7/2019 | RH | $450.00 | Confer with liaison & co-counsel re "stays of proceedings" and arguments about the 5-year rule applying to our cases | 0.3 | $135.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |
| 6/10/2019 | ZP | $250.00 | Further work on excel spreadsheet for DPS6 trial exhibits. | 1.5 | $375.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.6 |
| 6/10/2019 | ZP | $250.00 | Worked on excel spreadsheet for DPS6 trial exhibits. | 2.7 | $675.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.4 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/10/2019 | RH | $450.00 | Confer with defense counsel re scheduling for PMK depositions | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.0 | 0.1 | $0.00 | $45.00 | 0.0 |
| 6/10/2019 | RH | $450.00 | Confer with liaison counsel re proposed "case management schedule", trial selections, 5-year deadline issues, and contents of court orders | 0.5 | $225.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.1 |
| 6/11/2019 | RH | $450.00 | Review Ford's last minute, ambush "status report"; legal research; communications with liaison counsel re Ford's position concerning "early discovery cutoff dates" which is an illegal request | 2.5 | $1,125.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $225.00 | $225.00 | 1.0 |
| 6/12/2019 | RK | $425.00 | Reviewed and responded in advance of hearing to back and forth correspondence between co-counsel re meeting and conferring re issues of trial management to be addressed with opposing counsel | 0.5 | $212.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $42.50 | $42.50 | 0.3 |
| 6/12/2019 | RH | $450.00 | Review Ford's last minute, ambush "status report"; outline response and prepare language for inclusion in responsive status report filing and also prepare materials for hearing/status conference; legal research; travel to and from and attend status confer | 6.5 | $2,925.00 | 1.2 | starts 9/10/20 | starts 8/6/21 | 1.0 | 1.0 | $450.00 | $450.00 | 3.3 |
| 6/14/2019 | ZP | $250.00 | Reviewed George A.'s notes on newly introduced documents, reviewed Marentic files. | 1.8 | $450.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.8 |
| 6/14/2019 | ZP | $250.00 | Second pass review of documents in excel spreadsheet for missing quotes/highlighting. | 2.7 | $675.00 | 0.6 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.1 |
| 6/17/2019 | RH | $450.00 | Review KM chart/emails re meet/confer on 5-year deadlines | 0.2 | $90.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | USED UP | 0.1 | n/a | $45.00 | 0.0 |
| 6/18/2019 | LAU | $425.00 | Meeting regarding status of deposition scheduling and outstanding projects | 3.0 | $1,275.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $212.50 | $212.50 | 1.5 |
| 6/18/2019 | RH | $450.00 | Prepare correspondence to Ford about meet/confer for MJOPs | 0.8 | $360.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $90.00 | $90.00 | 0.4 |
| 6/18/2019 | RK | $425.00 | Meeting with attorneys, Kiesel Law and CLR re discovery and trial strategies | 1.0 | $425.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $127.50 | $127.50 | 0.4 |
| 6/21/2019 | RH | $450.00 | Confer with LAU & other staff attorneys, and with various staff, and with PLLC, re 5-year deadlines in IDP cases | 0.5 | $225.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.1 |



Case 2:25-cv-01254-AB-PVC Document 3-4 Filed 02/14/25 Page 8 of 176 Page ID #:310

Case 2:25-cv-01254-AB-PVC Document 39-1-5 Filed 07/01/25 Page 50 of 78 Page ID #:3420

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/21/2019 | RH | $450.00 | Review filing requirements in So Cal JCCP (LA Complex) for amended / redacted complaints; review status of all IDP cases requiring FAC's to be prepared / filed; confer with various staff re same | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.1 |
| 6/24/2019 | ALM | $350.00 | Meeting with Lauren/Russ: discussed selecting bellweather cases for trial | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $35.00 | $35.00 | 0.0 |
| 6/25/2019 | ZP | $250.00 | Edits to exhibit chart for use in DPS6 trials. | 1.8 | $450.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 1.2 |
| 6/27/2019 | ZP | $250.00 | Replied to ST email re: Doc Review. | 0.3 | $75.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.1 |
| 6/27/2019 | LAU | $425.00 | Prepared for meeting regarding outstanding assignments. | 1.5 | $637.50 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $127.50 | $127.50 | 0.6 |
| 6/27/2019 | LAU | $425.00 | Meeting regarding outstanding assignments on JCCP litigation; review of outstanding discovery issues. | 3.5 | $1,487.50 | 0.7 | starts 9/10/20 | starts 8/6/21 | 0.7 | 0.7 | $297.50 | $297.50 | 1.4 |
| 6/27/2019 | RK | $425.00 | Meeting with P. Kiesel, S. Mikhov, M. Cypers, L. Ungs, S. Taft and N. Ramirez re litigation strategy (split with MDL) | 0.8 | $340.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $85.00 | $85.00 | 0.4 |
| 6/28/2019 | RH | $450.00 | Confer with co-counsel / PLLC re trial picks | 1.0 | $450.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $135.00 | $135.00 | 0.4 |
| 7/1/2019 | ZP | $250.00 | Reviewed expert report and located missing documents from exhibit list. | 1.7 | $425.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 1.1 |
| 7/2/2019 | ZP | $250.00 | Worked on Master Exhibit and Doc Review spreadsheet updates and separation by category. | 3.9 | $975.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 2.9 |
| 7/5/2019 | ZP | $250.00 | Meeting with ILS re: doc review. | 1.1 | $275.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.4 |
| 7/12/2019 | ZP | $250.00 | Reviewed ILS team's reviewed docs and notes. | 2.8 | $700.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.6 |
| 7/12/2019 | ZP | $250.00 | Meeting with ILS doc review team and follow-up notes. | 1.0 | $250.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.4 |
| 7/12/2019 | ZP | $250.00 | Emails to/from ST/RH re: Michigan depositions. | 0.3 | $75.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 7/18/2019 | ZP | $250.00 | Began reviewing the reviewer batch notes and pulling documents in ILS for Brian Wolfe, Mae Smith-Smitherman, Kim Pittel, Craig Renneker and Jennifer Jones depositions. | 3.7 | $925.00 | 0.6 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 2.1 |

Case 2:25-cv-01254-AB-PVC Document 39-4 Filed 07/01/25 Page 81 of 179 Page ID #:1328 (overlapping stamp, partly illegible)

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/18/2019 | RH | $450.00 | Confer with PLLC and prepare status report; detailed review of case files in all proposed plaintiff and FMC trial picks | 1.1 | $495.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $135.00 | $135.00 | 0.5 |
| 7/22/2019 | RH | $450.00 | Review Ford's motions to seal FAC's filed in So Cal JCCP; confer with CLR re same | 0.4 | $180.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.1 |
| 7/23/2019 | ZP | $250.00 | Reviewed the Ford Depo Prep batch notes and associated documents from ILS for Mae Smitherman-Smith. | 2.7 | $675.00 | 0.6 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.1 |
| 7/25/2019 | RH | $450.00 | Travel to and from, prepare for and attend status conference | 3.0 | $1,350.00 | 0.6 | starts 9/10/20 | starts 8/6/21 | 0.6 | 0.6 | $270.00 | $270.00 | 1.2 |
| 7/30/2019 | ALM | $350.00 | Meeting with Abdiel: discussed opposing counsel withdrawal of notices of taken deposition of Plaintiffs/demand for VI | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $35.00 | $35.00 | 0.0 |
| 8/1/2019 | ZP | $250.00 | Reviewed DPS6 notes from reviewers. | 0.8 | $200.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.2 |
| 8/2/2019 | RK | $425.00 | Reviewed Notice of Ruling re Trial dates and hearing schedules | 0.3 | $127.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $42.50 | $42.50 | 0.1 |
| 8/5/2019 | RH | $450.00 | Communication with Ford counsel re scheduling meet/confer on demurrers and motions to compel arbitration | 0.1 | $45.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.0 | $45.00 | $0.00 | 0.0 |
| 8/6/2019 | ZP | $250.00 | Reviewed outstanding deposition batches for DPS6 litigation, confirmed we had document review summaries for each. | 0.8 | $200.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.2 |
| 8/8/2019 | ZP | $250.00 | Read new DFP article on Ford FoFi engineers. | 0.3 | $75.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 8/8/2019 | RH | $450.00 | Prepare joint statement re Ford's proposed demurrers and arbitration motions in IDP/trial cases | 1.9 | $855.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $135.00 | $135.00 | 1.3 |
| 8/9/2019 | RH | $450.00 | Prepare status conference report re proposed demurrers and arbitration motions; multiple communications with Ford and PLLC counsel re same | 2.8 | $1,260.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $225.00 | $225.00 | 1.8 |
| 8/12/2019 | RH | $450.00 | Exchange emails with Ford counsel and review/evaluate in detail, Ford's proposed documentary exhibits to support motions to compel arbitration | 0.9 | $405.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $135.00 | $135.00 | 0.3 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/13/2019 | RH | $450.00 | Prepare for and attend hearing / informal conference re: Ford's proposed demurrers and motions to compel arbitration in trial cases (travel split with MDL hearing) | 2.1 | $945.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $180.00 | $180.00 | 1.3 |
| 8/15/2019 | LAU | $425.00 | Scheduled meeting regarding updates on outstanding issues with steering committee. | 0.2 | $85.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $42.50 | $42.50 | 0.0 |
| 8/15/2019 | LAU | $425.00 | Telephone call with F. Heather and A. Solis regarding Bill Ickes. | 0.3 | $127.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $42.50 | $42.50 | 0.1 |
| 8/16/2019 | RK | $425.00 | Ford litigation strategy meeting with co-counsels | 0.3 | $127.50 | 0.3 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 8/19/2019 | ALM | $350.00 | Read and reviewed court's tentative ruling on Plaintiff's MTC deposition of Defendant's PMK | 0.3 | $105.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $35.00 | $35.00 | 0.1 |
| 8/19/2019 | ZP | $250.00 | Began pulling together hot docs for DPS6 meeting. | 2.6 | $650.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.3 |
| 8/20/2019 | ZP | $250.00 | Prepared for and attended DPS6 meeting. | 2.1 | $525.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 0.8 |
| 8/21/2019 | RH | $450.00 | Exchange emails with Ford counsel re briefing and hearing schedule on omnibus demurrers; review and evaluate scheduling proposals and likely issues | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |
| 8/26/2019 | ZP | $250.00 | Emails to/from RH and GA re: 30b6 depo categories. | 0.6 | $150.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.2 |
| 8/26/2019 | ZP | $250.00 | Electronic Field Communication and Sync/MyTouch research in the document repository to prepare for 30b6 deposition on advertising. | 2.5 | $625.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.5 |
| 8/28/2019 | ZP | $250.00 | Compiled document list for deposition of Amy Marentic, saved to file, gave exhibit numbers, added copies to master list with all identifying information and circulated to co-counsel. | 0.8 | $200.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.2 |
| 8/28/2019 | RH | $450.00 | Draft opposition to motion to compel arbitration (filed in several cases, omnibus) | 3.0 | $1,350.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.6 | 0.6 | $270.00 | $270.00 | 1.8 |
| 8/28/2019 | RH | $450.00 | Review message board post re: schedule for demurrer briefing, cross check email correspondence, confer with staff re calendaring | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |



Case 2:25-cv-01215-AB-AGR Document 3-43 Filed 02/07/25 Page 80 of 176 Page ID #:3429

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/3/2019 | RH | $450.00 | Prepare consolidated opposition to FMC's motions to compel arbitration (Jordan, Goyzueta, Larson, Ralph) | 11.0 | $4,950.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 1.5 | 1.5 | $675.00 | $675.00 | 8.0 |
| 9/4/2019 | DK | $250.00 | Assisted RH in preparation of opposition to Ford's motion to compel arbitration, and conferred with RH re same | 3.6 | $900.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 2.6 |
| 9/10/2019 | ZP | $250.00 | Reviewed documents in exhibit list for initial filing | 2.1 | $525.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.3 |
| 9/12/2019 | ZP | $250.00 | Reviewed documents from DPS6 exhibit list used in Myers and Franklin to verify usefulness for trial. | 1.8 | $450.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 1.2 |
| 9/12/2019 | ZP | $250.00 | Emails to/from Stephanie Taft re: status of stip to authentication of 1600 docs. | 0.5 | $125.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.2 |
| 9/12/2019 | ZP | $250.00 | Emails to/from Lance Rubin re: status of deposition videos. | 0.3 | $75.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.0 |
| 9/12/2019 | ZP | $250.00 | Drafted to-do list and sent email to RK and rest of DPS6 team in KLG. | 0.4 | $100.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | 0.2 | USED UP | $50.00 | n/a | 0.0 |
| 9/12/2019 | RH | $450.00 | Review draft joint report for status conference | 0.3 | $135.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |
| 9/13/2019 | ZP | $250.00 | Broke down list of completed deponents, incomplete deponenets, apex depositions and 30b6 in order of usefuleness. | 1.2 | $300.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 0.4 |
| 9/13/2019 | ZP | $250.00 | Emails to/from ST and RH re: Percepta docs. | 0.3 | $75.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 9/13/2019 | RH | $450.00 | Exchange emails with PLLC re status conference report and preparation for status conference | 1.1 | $495.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $90.00 | $90.00 | 0.4 |
| 9/14/2019 | RH | $450.00 | Review draft status conference report and exchange emails with PLLC re same | 0.4 | $180.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.1 |
| 9/16/2019 | ZP | $250.00 | Reviewed DPS6 trial exhibits used in Myers and prepped for Franklin to create short list. | 2.5 | $625.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.0 |
| 9/17/2019 | ZP | $250.00 | Reviewed Amy Marentic depositions for exhibit numbers and bates numbers of Source Books, Frontline Magazines and brochures. | 1.3 | $325.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.6 |
| 9/17/2019 | ZP | $250.00 | Reviewed deposition calendars going back 4.5 months for DPS6 depos to verify all depositions accounted for in video and transcript logs. | 1.2 | $300.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.6 |



Case 2:25-cv-01256-AB-PVC Document 39-1 Filed 07/01/25 Page 83 of 167 Page ID #:3200

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/17/2019 | ZP | $250.00 | Identified problems in Master Exhibit List and missing documents to pull from deposition folders, fixed the errors. | 2.3 | $575.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.5 |
| 9/20/2019 | ZP | $250.00 | Edited working list of exhibits for DPS6 litigation, culled to level of documents intended to be introduced at trials after careful review of each document's contents. | 3.1 | $775.00 | 0.7 | starts 9/10/20 | starts 8/6/21 | 0.6 | 0.6 | $150.00 | $150.00 | 1.2 |
| 9/22/2019 | ZP | $250.00 | Continued review of documents used more than once in DPS6 depositions to prepare designations of deponent testimony. | 1.3 | $325.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.6 |
| 9/22/2019 | ZP | $250.00 | Reviewed documents used more than once in deposition, approximately 55, and compiled list of depositions to cross-reference with each document for relevant testimony. | 3.7 | $925.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 2.4 |
| 9/23/2019 | ZP | $250.00 | Extracted documents to utilize that have been authenticated by Ford in their agreement. | 0.8 | $200.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.2 |
| 9/23/2019 | ZP | $250.00 | Created short list of documents for Resnick's review. | 0.6 | $150.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.2 |
| 9/24/2019 | ZP | $250.00 | Identified all 34 documents previously unused from CLR's short list, assigned exhibit numbers in master exhibit spreadsheet and circulated. | 2.0 | $500.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.2 |
| 9/24/2019 | ZP | $250.00 | Compiled list of all CLR and KLG documents on short lists, as well as all documents discussed in meeting with Kiesel, circulated in email. | 1.5 | $375.00 | 1.5 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 9/24/2019 | ZP | $250.00 | Prepared Master Exhibit List culled down to documents used by deponent with each deponent represented. | 3.5 | $875.00 | 0.7 | starts 9/10/20 | starts 8/6/21 | 0.7 | 0.7 | $175.00 | $175.00 | 1.4 |
| 9/24/2019 | ZP | $250.00 | Meeting with attorney regarding documents to use in new exhibit list for trials. | 3.2 | $800.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.9 |
| 9/24/2019 | ZP | $250.00 | Prepared for meeting with trial counsel regarding documents to introduce in new exhibit list. Compiled existing exhibits with or without applicable deposition testimony. | 4.7 | $1,175.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.6 | 0.6 | $150.00 | $150.00 | 3.5 |
| 9/25/2019 | ZP | $250.00 | Reviewed 34 documents and excerpted descriptors of each to forward to trial counsel to edit exhibit list. | 2.9 | $725.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.9 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/25/2019 | ZP | $250.00 | Worked on admissibility chart to be combined with/used to support admissibility brief in all DPS6 cases; reviewed portions of 15 depositions to prepare. | 2.7 | $675.00 | 0.9 | starts 9/10/20 | starts 8/6/21 | 0.9 | 0.9 | $225.00 | $225.00 | 0.0 |
| 9/26/2019 | ZP | $250.00 | Reviewed 14 documents in their entirety for potential hearsay exceptions. | 1.3 | $325.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.3 |
| 9/26/2019 | ZP | $250.00 | Worked on admissibility chart to be combined with/used to support admissibility brief. | 3.4 | $850.00 | 0.7 | starts 9/10/20 | starts 8/6/21 | 0.6 | 0.6 | $150.00 | $150.00 | 1.5 |
| 9/27/2019 | ZP | $250.00 | Re-reviewed deposition lists for accuracy on document production in each, corrected all errors found in the master list. | 1.3 | $325.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.6 |
| 9/28/2019 | ZP | $250.00 | Reviewed 17 hot docs for hearsay exceptions and applicable deposition testimony supporting admissibility. | 2.9 | $725.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 1.9 |
| 9/30/2019 | ZP | $250.00 | Worked on Ford DPS6 admissibility and exhibit list spreadsheet. | 2.6 | $650.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 1.6 |
| 10/1/2019 | ZP | $250.00 | Meeting with Frank Kelly on admissibility; BA, PK, RK and ST also in attendance. | 4.5 | $1,125.00 | 0.8 | starts 9/10/20 | starts 8/6/21 | 0.7 | 0.7 | $175.00 | $175.00 | 2.3 |
| 10/1/2019 | RH | $450.00 | Travel to and from, and prepare for and attend supplemental hearing on Ford's motions to compel arbitration (Jordan, Goyzueta, Larson, Ralph) | 4.9 | $2,205.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.7 | 0.7 | $315.00 | $315.00 | 3.5 |
| 10/2/2019 | ZP | $250.00 | Searched for and identified missing documents from CLR's notes for Maite's opp to MSJ filing. | 2.4 | $600.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.6 |
| 10/2/2019 | ZP | $250.00 | Gathered documents for Stephanie Taft to use in relationship to customer perception and communications to dealerships. | 2.6 | $650.00 | 0.6 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.0 |
| 10/3/2019 | ZP | $250.00 | Edited CLR/KLG spreadsheet for hot docs admissibility. | 2.6 | $650.00 | 0.6 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.0 |
| 10/4/2019 | ZP | $250.00 | Edited deposition designations for admissibility of DPS6 documents and foundational testimony. | 1.9 | $475.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.9 |
| 10/7/2019 | ZP | $250.00 | Created file with 3001-3034 Exhibits, reviewed all and added to short list. | 1.9 | $475.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.9 |
| 10/8/2019 | ZP | $250.00 | Reviewed master exhibit list and culled dupes after adding in missing documents from Kiesel Law depositions. | 2.3 | $575.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.0 |
| 10/9/2019 | ZP | $250.00 | Reorganized hard copies of Ford doc printouts for DPS6 litigation. | 1.6 | $400.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 1.0 |



Case 2:25-cv-01256-AB-PVC Document 39-1 Filed 07/30/25 Page 78 of 176 Page ID #:3223

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/10/2019 | ZP | $250.00 | Edited DPS6 master exhibit spreadsheet and document IDs while power was out. | 1.5 | $375.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 0.5 |
| 10/10/2019 | ZP | $250.00 | Located documents for Focus grind/rattle for Diba Alemi. | 0.6 | $150.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.2 |
| 10/10/2019 | ZP | $250.00 | Located and compiled all FoFi TSBs in one location on document server for RH. | 0.7 | $175.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.0 |
| 10/11/2019 | ZP | $250.00 | Reviewed 18 GETRAG documents produced by Ford, compared and fit into rubric for DPS6 cases and made note of witnesses to use with at trial. | 4.1 | $1,025.00 | 0.7 | starts 9/10/20 | starts 8/6/21 | 0.6 | 0.6 | $150.00 | $150.00 | 2.2 |
| 10/11/2019 | ZP | $250.00 | Reviewed 21 GETRAG documents produced by Ford, compared and fit into rubric for DPS6 cases and made note of witnesses to use with at trial. | 4.7 | $1,175.00 | 0.8 | starts 9/10/20 | starts 8/6/21 | 0.7 | 0.7 | $175.00 | $175.00 | 2.5 |
| 10/14/2019 | ZP | $250.00 | Reorganized documents per discussion with CU and BA, began edits to new exhibit list spreadsheet. | 2.5 | $625.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.5 |
| 10/14/2019 | ZP | $250.00 | Email to RH re: testimony on docs for the components returned issue. | 0.1 | $25.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/14/2019 | ZP | $250.00 | Email to RH re: email strings on components returned to Ford. | 0.3 | $75.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/14/2019 | ZP | $250.00 | Met with Chris Urner and Bryan Altman regarding status of Ford cases, documents and plan going forward. | 2.8 | $700.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.8 |
| 10/16/2019 | RH | $450.00 | Review and evaluate Court's final order directing portions of claims into arbitration; internal meetings with co-counsel (PLLC and Knight partners) re effect, appealability, and next steps; review and evaluate Ford's omnibus demurrer and email to Ford cou | 1.9 | $855.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $135.00 | $135.00 | 1.3 |
| 10/17/2019 | RH | $450.00 | Review and respond to correspondence from Ford counsel re: proposals for what to do with demurrers following arbitration ruling | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |
| 10/21/2019 | ZP | $250.00 | Status updates on MG deposition designations, concerns, excerpts. | 0.3 | $75.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.1 |
| 10/21/2019 | ZP | $250.00 | Email to ST re: AIMS reports and what they are as well as how they're stored. | 0.5 | $125.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.1 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/21/2019 | ZP | $250.00 | Email to RK re: reasons for MG testimony designations. | 0.1 | $25.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/22/2019 | ZP | $250.00 | Continued work on hot docs distillation/admissibility argument breakdown. | 1.9 | $475.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.9 |
| 10/22/2019 | ZP | $250.00 | Completed all deposition designations and paring down to solely foundational testimony from full designation list. | 5.3 | $1,325.00 | 0.9 | starts 9/10/20 | starts 8/6/21 | 0.8 | 0.8 | $200.00 | $200.00 | 2.8 |
| 10/23/2019 | ZP | $250.00 | Reviewed Ford exhibit list in comparison with prior Ford list and Plaintiff's exhibit list. | 2.2 | $550.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 1.2 |
| 10/23/2019 | ZP | $250.00 | Prepared in part a distilled version of KLG's hot documents list separated by overarching trial narrative categories. | 2.7 | $675.00 | 0.6 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.1 |
| 10/23/2019 | RH | $450.00 | Review and exchange emails among RK, CT, SBM, ALM re cases ordered to arbitration and appellate issues | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.1 |
| 10/24/2019 | ZP | $250.00 | Edited chart for admissibility/document preparation; separating documents into trial narratives with usable quotes extracted. | 4.7 | $1,175.00 | 0.8 | starts 9/10/20 | starts 8/6/21 | 0.7 | 0.7 | $175.00 | $175.00 | 2.5 |
| 10/24/2019 | ZP | $250.00 | Uploading designations, large video files, counter-designations etc. to video editing service. | 2.1 | $525.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.3 |
| 10/25/2019 | ZP | $250.00 | Worked on admissibility brief and document distillation for DPS6 hot docs | 4.3 | $1,075.00 | 0.7 | starts 9/10/20 | starts 8/6/21 | 0.6 | 0.6 | $150.00 | $150.00 | 2.4 |
| 10/26/2019 | ZP | $250.00 | Worked between power outages on KLG-CLR Short List with Citations and Excerpts for BA's use at trial in Pedante and other DPS6 cases. | 4.2 | $1,050.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.6 | 0.6 | $150.00 | $150.00 | 3.0 |
| 10/28/2019 | ZP | $250.00 | Correspondence with KL in several emails re: smi mdb and cms files missing. | 0.4 | $100.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.2 |
| 10/29/2019 | ZP | $250.00 | Updated KLG/CLR short list with citations and excerpts, made new tabs. | 2.2 | $550.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.4 |
| 10/29/2019 | RH | $450.00 | Review & revise proposed stipulation and confer with Cindy Tobisman re research for writ petition concerning arbitration motions | 1.1 | $495.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $135.00 | $135.00 | 0.5 |



Case 2:25-cv-01256-AB-PVC Document 39-1-5 Filed 07/01/25 Page 215 of 216 Page ID #:3204

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/31/2019 | RH | $450.00 | Review status of dealership defendants in all coordinated cases; confer with CT re conflicts and preparation for filing writ petition regarding arbitration decision; review and revise draft stipulation re: demurrers and answers in trial and IDP cases | 1.4 | $630.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $180.00 | $180.00 | 0.6 |
| 10/31/2019 | ALM | $350.00 | Meeting with Russ: discussed email to Cindy re appealability of order compelling arbitration | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $35.00 | $35.00 | 0.0 |
| 11/1/2019 | RH | $450.00 | Revise/redline draft stipulation re Ford's omnibus demurrers; exchange emails with Ford counsel to meet/confer re same | 0.7 | $315.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $90.00 | $90.00 | 0.3 |
| 11/4/2019 | RH | $450.00 | Confer with OC re stipulation for demurrer schedules etc | 0.5 | $225.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.3 |
| 11/12/2019 | RH | $450.00 | Confirm court approval of stipulation for rescheduling status conference; confer with Ford counsel and Knight staff re same | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |
| 11/13/2019 | RH | $450.00 | Confer with staff re availability of hearing transcripts re arbitration motion(s) | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |
| 11/19/2019 | RH | $450.00 | Aborted trip to DTLA for vacated hearing, including pointless review of Ford's motion to file under seal | 2.0 | $900.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $180.00 | $180.00 | 1.2 |
| 12/10/2019 | RH | $450.00 | Confer with PLLC re: expert disclosures, completion of depositions and expert discovery, dates for 402 hearing, motions to compel arbitration, MSJ deadlines, and means to resolve legal issues, in advance of meet/confer with Ford counsel | 0.8 | $360.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $90.00 | $90.00 | 0.4 |
| 12/10/2019 | RH | $450.00 | Review petition for writ of mandate from arbitration ruling; confer extensively with Cindy and Marc Poster re same | 4.0 | $1,800.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $225.00 | $225.00 | 3.0 |
| 12/11/2019 | ZP | $250.00 | Edited DPS6 exhibit list with changes from list saved for Quintero trial, reviewed documents numbered 3000+ for use in future trials. | 1.7 | $425.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 1.0 |
| 12/24/2019 | RH | $450.00 | Review and evaluate appellate court decision on petition for writ re arbitration order; memoranda to file | 0.3 | $135.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.1 |
| 1/2/2020 | RH | $450.00 | Prepare template update letter to non-IDP plaintiffs | 0.5 | $225.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.1 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/8/2020 | RH | $450.00 | Prepare client status update letter for non-IDP cases | 0.6 | $270.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $90.00 | $90.00 | 0.0 |
| 1/9/2020 | RH | $450.00 | Conference with FMC counsel re scheduling and proposed continuances of trials, motions to compel arbitration, status of discovery in trial cases; conferences with PLLC to prepare for meeting and follow up on issues from the meeting | 1.5 | $675.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $225.00 | $225.00 | 0.5 |
| 1/9/2020 | RH | $450.00 | Review status of discovery in IDP and trial cases | 0.7 | $315.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $90.00 | $90.00 | 0.3 |
| 1/10/2020 | RH | $450.00 | Jordan, Goyzueta, Ralph, Larson, prepare NOD for FMC PMK (0.8); Jordan/Larson confer with staff re arrangements for rescheduled VI's following Ford cancellation (0.2); So Cal JCCP - emails with PLLC and CLR re upcoming status conference and issues to be a | 2.5 | $1,125.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $225.00 | $225.00 | 1.5 |
| 1/13/2020 | RH | $450.00 | Prepare for and attend status conference by CC; memoranda to file re same | 2.0 | $900.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $180.00 | $180.00 | 1.2 |
| 1/14/2020 | RH | $450.00 | Confer with PLLC/trial counsel and staff to work on scheduling vehicle inspection (time split with Larson) (0.4); order transcript of January 13 hearing (0.1); Exchange emails with Ford counsel re Jordan/Larson VI scheduling (0.1); prepare outcome emails | 5.0 | $2,250.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.7 | 0.7 | $315.00 | $315.00 | 3.6 |
| 1/14/2020 | RK | $425.00 | Reviewed memo from R. Higgins re results of status conference; meet with R. Higgins re status conference, strategy | 0.5 | $212.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $42.50 | $42.50 | 0.3 |
| 1/27/2020 | ZP | $250.00 | Reviewed hot docs list for Pedante and retooled chart for use at DPS6 meeting on 1/29. | 1.6 | $400.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 1.0 |
| 1/28/2020 | RK | $425.00 | Confer with R. Higgins re re issues to discuss with Court during conference call, confer with staff re same | 0.3 | $127.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $42.50 | $42.50 | 0.1 |
| 1/28/2020 | RK | $425.00 | Call with Court and Ford attorneys re scheduling; confer with R. Higgins re issues to discuss, confer withs staff re same | 0.5 | $212.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $42.50 | $42.50 | 0.3 |
| 1/28/2020 | RH | $450.00 | Prepare for and attend telephonic status conference with Court and co/defense counsel | 1.5 | $675.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $225.00 | $225.00 | 0.5 |



Case 2:25-cv-01215-AB-AMR Document 39-1-5 Filed 07/01/25 Page 186 of 196 Page ID #:3209

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/16/2020 | ZP | $250.00 | Began task of reorganizing all DPS6 related documents on server, deleting the extraneous copies and synthesizing down to those used in trials | 2.2 | $550.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 1.5 |
| 3/16/2020 | ZP | $250.00 | Read trial transcript from Ambriz to determine useful MILs to draft. | 3.1 | $775.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 2.3 |
| 3/17/2020 | ZP | $250.00 | Put together admissibility chart template for depositions and reviewed all docs presented for examination in Aversa and part of Fields. | 2.4 | $600.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.2 |
| 3/17/2020 | ZP | $250.00 | Edited exhibit list for DPS6 cases, cut out dupes of list used in Ambriz and cross-referenced with trial transcript reviewed 3/16 to make changes and notes regarding stipulation/admission. | 2.4 | $600.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.6 |
| 3/18/2020 | ZP | $250.00 | Created new master exhibit folder with missing DPS6 exhibits from July depositions; cross-referenced with depositions for verification. | 1.9 | $475.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 1.2 |
| 3/18/2020 | ZP | $250.00 | Reviewed depositions to extract foundational testimony and enter into admissibility chart containing all exhibits regardless of whether they have been used, as well as breakdown of each document's contents. | 7.5 | $1,875.00 | 1.1 | starts 9/10/20 | starts 8/6/21 | 1.0 | 1.0 | $250.00 | $250.00 | 4.4 |
| 3/27/2020 | ZP | $250.00 | Came up with some categories for PMQ/PMK depos per RK's request during meeting. | 1.9 | $475.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.9 |
| 3/27/2020 | ZP | $250.00 | Identified possible admissions and SROGs for filing in DPS6 going forward. | 1.2 | $300.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 0.4 |
| 3/27/2020 | ZP | $250.00 | Used notes on discovery and foundation issues to come up with questions for discovery requests and categories for new depositions in JCCP. | 2.1 | $525.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 1.1 |
| 4/1/2020 | RK | $425.00 | Reviewed DPS6 case files, prepared notes and topics for discovery | 4.0 | $1,700.00 | 1.0 | starts 9/10/20 | starts 8/6/21 | 1.0 | 1.0 | $425.00 | $425.00 | 1.0 |
| 4/1/2020 | RK | $425.00 | Conference call meeting with attorneys re litigation strategy | 1.5 | $637.50 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $127.50 | $127.50 | 0.5 |
| 4/15/2020 | RK | $425.00 | Completed draft of written discovery, performed legal research | 2.5 | $1,062.50 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $212.50 | $212.50 | 1.0 |
| 4/15/2020 | RK | $425.00 | Meeting with attorneys re litigaiton strategy | 1.0 | $425.00 | 0.3 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $85.00 | $85.00 | 0.3 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/29/2020 | RH | $450.00 | Review email from FMC counsel re scheduling and confer with co-counsel | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |
| 5/1/2020 | ALM | $350.00 | Meeting with Russ: discussed email exchange between Paul Kiesel/court re upcoming video conference re hearings/trials | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $35.00 | $35.00 | 0.0 |
| 5/4/2020 | ZP | $250.00 | Call with CU on DPS6 project status and where to go on RFGs. | 0.4 | $100.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.2 |
| 5/4/2020 | ZP | $250.00 | Found and reviewed prior DPS6 RFG and 6.0L RFG templates to make changes. | 2.7 | $675.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.7 |
| 5/4/2020 | ZP | $250.00 | Worked on DPS6 master lists and changes from prior trial. | 2.5 | $625.00 | 0.6 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 0.9 |
| 5/4/2020 | ZP | $250.00 | Download of all DPS6 documents saved from trial and review of last status update for DPS6 to-do list. | 0.5 | $125.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.3 |
| 5/4/2020 | ZP | $250.00 | Call with CU to bring me up to speed on current status of ALG's DPS6 work. | 0.3 | $75.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.1 |
| 5/5/2020 | ZP | $250.00 | ILS research on high level executive/agency documents to supplement RFA for Diba/ALG. | 3.8 | $950.00 | 0.7 | starts 9/10/20 | starts 8/6/21 | 0.6 | 0.6 | $150.00 | $150.00 | 1.9 |
| 5/5/2020 | ZP | $250.00 | Reviewed Ambriz trial docs and edited templates for closing argument slides. | 2.7 | $675.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.7 |
| 5/6/2020 | ZP | $250.00 | Edited documents folder with new clean copies and edited Bates numbering. | 1.6 | $400.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 1.0 |
| 5/6/2020 | ZP | $250.00 | Searched for and identified/downloaded warranty manuals for use in RFG/RFAs. | 2.8 | $700.00 | 0.7 | starts 9/10/20 | starts 8/6/21 | 0.7 | 0.7 | $175.00 | $175.00 | 0.7 |
| 5/6/2020 | ZP | $250.00 | Identified and located clean copies in ILS of 30+ documents for ALG to use in RFG/RFAs. | 2.5 | $625.00 | 0.5 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.0 |
| 5/7/2020 | ZP | $250.00 | Located documents from Ford's answers missing from the original ILS production for DA to use in RFG/RFA. | 2.1 | $525.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 1.1 |
| 5/7/2020 | ZP | $250.00 | Began review of new batches for RFGs to go out in Martinez and other cases. | 2.0 | $500.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.2 |
| 5/8/2020 | ZP | $250.00 | Final review of RFG documents sent from ALG to be referred to in 3rd set of RFGs to Ford. | 2.2 | $550.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 1.4 |
| 5/8/2020 | ZP | $250.00 | Continued to categorize documents for next 3 sets of RFGs to be sent to Ford. | 1.8 | $450.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 1.2 |
| 5/12/2020 | RH | $450.00 | Confer with staff (AB) and attorneys re plaintiff and defense expert designations and deposition notices | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |



Case 2:25-cv-01215-AB-PVC Document 39-1 Filed 07/01/25 Page 1 of 176 Page ID #:1208

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/20/2020 | RK | $425.00 | Meeting with atttorneys re strategy and discovery | 1.2 | $510.00 | 0.4 | starts 9/10/20 | starts 8/6/21 | 0.4 | 0.4 | $170.00 | $170.00 | 0.0 |
| 6/25/2020 | RK | $425.00 | Meeting with Plaintiff attorneys and Ford attorneys, A. Maclear, S. Hugret, A. Chang, K. Vilchez, A. Nassihi re expert and scheduling | 0.5 | $212.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $42.50 | $42.50 | 0.3 |
| 7/9/2020 | MC | $300.00 | Subpoena Duces Tecum research //Notice to consumer Research | 1.5 | $450.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.5 | 0.5 | $150.00 | $150.00 | 0.5 |
| 7/10/2020 | ALM | $350.00 | Meeting with Russ: discussed meet and confer with opposing counsel re deposition of Defendant's PMK in various cases | 0.2 | $70.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $35.00 | $35.00 | 0.0 |
| 7/19/2020 | RK | $425.00 | Reviewed and revised letter to clients | 0.6 | $255.00 | 0.2 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $85.00 | $85.00 | 0.0 |
| 7/21/2020 | RH | $450.00 | Review correspondence from Ford counsel re status of responses (Santos, Ochoa, Brito, Garcia) and follow up with staff and clients re receipt of documents & verifications | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |
| 7/23/2020 | RK | $425.00 | Coordinated with J. Mukai re motions to quash subpoenas for expert records | 0.3 | $127.50 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $42.50 | $42.50 | 0.1 |
| 7/24/2020 | RH | $450.00 | Finalize correspondence re: non-IDP case updates; review master case lists and various spreadsheets re: IDP selections and status of cases | 0.6 | $270.00 | 0.1 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.3 |
| 7/24/2020 | RH | $450.00 | Review Ochoa verifications / production to upload | 0.2 | $90.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |
| 7/29/2020 | RK | $425.00 | Attended trial strategy meeting | 1.0 | $425.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.3 | 0.3 | $127.50 | $127.50 | 0.4 |
| 8/25/2020 | NF | $250.00 | Attend further status conference via court call | 0.8 | $200.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.2 | 0.2 | $50.00 | $50.00 | 0.4 |
| 8/25/2020 | NF | $250.00 | Review joint status report in advance of further status conference | 0.4 | $100.00 | 0.0 | starts 9/10/20 | starts 8/6/21 | 0.1 | 0.1 | $25.00 | $25.00 | 0.2 |
| 9/14/2020 | ZP | $250.00 | Completed pull of Admit/Admit documents for RB review. | 1.3 | $325.00 | 0.0 | 0.4 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 0.1 |
| 9/14/2020 | ZP | $250.00 | Continued review of larger Excel and PPT files referring to PowerPoint and BoD search terms. | 1.5 | $375.00 | 0.3 | 0.3 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.3 |
| 9/14/2020 | ZP | $250.00 | Review of large PDF files and PPT files for purpose of identifying presentations used in BoD and QSF meetings. | 1.7 | $425.00 | 0.4 | 0.4 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.3 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/15/2020 | ZP | $250.00 | Continued reviewing 480 admitted stipulated BR documents for identification and relevance. | 2.3 | $575.00 | 0.5 | 0.5 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 0.5 |
| 9/15/2020 | ZP | $250.00 | Sorted admitted stipulated BR documents and made initial notes for identification and relevance in spreadsheet. | 1.7 | $425.00 | 0.4 | 0.4 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.3 |
| 9/21/2020 | ZP | $250.00 | Continued review of stipulated Ford documents and issue coded for relevance to particular deponents and topics. | 2.7 | $675.00 | 0.6 | 0.6 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 0.5 |
| 9/21/2020 | ZP | $250.00 | Reviewed stipulated Ford documents, issue coded for topics of relevance for trial and deponent. | 2.2 | $550.00 | 0.4 | 0.4 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.8 |
| 9/22/2020 | ZP | $250.00 | Started chronological ordering of documents to create timeline of presentations and meetings with high level Ford employees. | 1.4 | $350.00 | 0.0 | 0.4 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 0.2 |
| 9/22/2020 | ZP | $250.00 | Completed issue coding review of approximately 500 stipulated documents for relevance and use with deponents and topics for examination. | 2.1 | $525.00 | 0.0 | 0.4 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 0.9 |
| 9/22/2020 | ZP | $250.00 | Continued issue coding review of stipulated FoFi documents, coded for relevance to deponent and topics for examination. | 2.9 | $725.00 | 0.0 | 0.5 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.4 |
| 9/23/2020 | ZP | $250.00 | Created highlights for documents listed in stipulation for Ford depositions and identified as hot docs. | 2.2 | $550.00 | 0.5 | 0.5 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 0.4 |
| 9/23/2020 | ZP | $250.00 | Ordered chronology of documents listed in stipulation for Ford depositions, and reviewed for topic relevance. | 2.7 | $675.00 | 0.0 | 0.5 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.2 |
| 9/24/2020 | ZP | $250.00 | ILS and internal database searches run for safety and safety office related documents, powerpoints and spreadsheets. Downloaded and coded documents for relevance and issue/topic coding. | 2.6 | $650.00 | 0.0 | 0.5 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.1 |
| 9/24/2020 | ZP | $250.00 | Completed chronological ordering of stipulated documents based on topic coding. | 1.8 | $450.00 | 0.0 | 0.3 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.9 |
| 9/25/2020 | ZP | $250.00 | ILS and internal database searches for documents regarding accidents/injuries, reports submitted to NHTSA and ASO, high level executive knowledge of same. | 1.7 | $425.00 | 0.0 | 0.3 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.8 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/25/2020 | ZP | $250.00 | Safety related document searches including ASO and ASO members, powerpoints, meetings and safety data, downloaded and coded, added to chronological list. | 1.9 | $475.00 | 0.4 | 0.4 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.5 |
| 9/25/2020 | ZP | $250.00 | ILS and internal document database searches for NHTSA related documentation as well as reports and presentations related to this topic, pulled and coded for relevance. | 1.6 | $400.00 | 0.0 | 0.3 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.7 |
| 10/1/2020 | ZP | $250.00 | Reviewed responses to discovery requests forwarded from ST. | 1.4 | $350.00 | 0.0 | 0.4 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 0.2 |
| 10/2/2020 | ZP | $250.00 | Reviewed entire backlog of duplicate files for changes made between PDF versions of presentations to BoD members. | 2.6 | $650.00 | 0.5 | 0.5 | starts 8/6/21 | 0.4 | 0.4 | $100.00 | $100.00 | 0.8 |
| 10/2/2020 | ZP | $250.00 | Edited Excel file categorization of DPS6 PDFs for admissibility. | 2.7 | $675.00 | 0.0 | 0.5 | starts 8/6/21 | 0.5 | 0.5 | $125.00 | $125.00 | 1.2 |
| 10/7/2020 | SW | $595.00 | Conference call with L. Ungs, Z. Powell and S. Mikhov re fraud discovery and legal issues; Prepare memo re same | 1.0 | $595.00 | 0.0 | 0.3 | starts 8/6/21 | 0.0 | 0.0 | $0.00 | $0.00 | 0.7 |
| 10/7/2020 | LAU | $425.00 | Meeting to discuss common benefit fund recovery. | 1.0 | $425.00 | 0.0 | 0.3 | starts 8/6/21 | 0.3 | 0.3 | $127.50 | $127.50 | 0.1 |
| 10/7/2020 | LAU | $425.00 | Attended meeting regarding strategy for admissibility of documents and discovery strategy. | 0.7 | $297.50 | 0.3 | 0.3 | starts 8/6/21 | 0.1 | USED UP | $42.50 | n/a | 0.0 |
| 10/7/2020 | LAU | $425.00 | Meeting to discuss process for fee motions and recovery of common benefit fund. | 1.2 | $510.00 | 0.0 | 0.4 | starts 8/6/21 | 0.4 | 0.4 | $170.00 | $170.00 | 0.0 |
| 10/7/2020 | RH | $450.00 | Review, revise, confer with PLLC re joint status report and status of cases | 1.1 | $495.00 | 0.2 | 0.2 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.5 |
| 10/8/2020 | RK | $425.00 | Reviewed Ford's proposed Joint Statement; reviewed email from S. Taft re impropriety of arguments in Statement | 0.3 | $127.50 | 0.3 | USED UP | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/8/2020 | RH | $450.00 | Review draft status report and prepare responses to Ford's claims about settlement/mediation/procedures and role of Kiesel as PLLC; review files and records in numerous cases along with case management and related orders/reports, and confer with staff/co- | 1.8 | $810.00 | 0.4 | 0.4 | starts 8/6/21 | 0.3 | 0.3 | $135.00 | $135.00 | 0.4 |



Case 2:25-cv-01275-AB-PVC Document 394-17 Filed 07/31/25 Page 92 of 178 Page ID #:12231

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/8/2020 | ALM | $350.00 | Meeting with Russ/Cristobal: discussed whether filed NOAs for Paul Kiesel | 0.2 | $70.00 | 0.0 | 0.1 | starts 8/6/21 | USED UP | 0.1 | n/a | $35.00 | 0.0 |
| 10/13/2020 | ZP | $250.00 | Ran keyword searches for references to DeVincent and consulting firms established by ex Ford employees after their tenure at Ford in relation to DPS6 and powertrain engineering. | 2.1 | $525.00 | 0.4 | 0.4 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.7 |
| 10/15/2020 | JKM | $400.00 | Research for JCCP MTC Arbitration | 1.3 | $520.00 | 0.0 | 0.4 | starts 8/6/21 | 0.0 | 0.0 | $0.00 | $0.00 | 0.9 |
| 10/16/2020 | ZP | $250.00 | Went through original master folder of hot docs for early April/May 2019 spreadsheets, emails and PDFs referring to specific customer complaints and references to outside companies, consultants and engineering divisions, crossed with DeVincent and Fowler | 2.1 | $525.00 | 0.3 | 0.3 | starts 8/6/21 | 0.3 | 0.3 | $75.00 | $75.00 | 0.9 |
| 10/19/2020 | LAU | $425.00 | Preparation for meeting and attendance at meeting to discuss structure of Ford DPS6 settlement. | 1.5 | $637.50 | 0.4 | 0.4 | starts 8/6/21 | 0.3 | 0.3 | $127.50 | $127.50 | 0.1 |
| 10/19/2020 | RK | $425.00 | Meeting with Partners re mediation approaches | 1.9 | $807.50 | 0.4 | 0.4 | starts 8/6/21 | 0.3 | 0.3 | $127.50 | $127.50 | 0.5 |
| 10/21/2020 | RK | $425.00 | Prepared for and attended Status Conference, reviewed ruling on arbitration | 1.2 | $510.00 | 0.0 | 0.4 | starts 8/6/21 | 0.4 | 0.4 | $170.00 | $170.00 | 0.0 |
| 10/22/2020 | MC | $300.00 | Prep for and attend Meeting with JCCP Clients | 3.5 | $1,050.00 | 0.3 | 0.3 | starts 8/6/21 | 0.2 | 0.2 | $60.00 | $60.00 | 2.5 |
| 10/26/2020 | RH | $450.00 | Confer with RK re arbitration rulings in So Cal JCCP and resulting deposition constraints | 0.3 | $135.00 | 0.0 | 0.1 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |
| 11/3/2020 | RH | $450.00 | Prepare memorandum re recent hearings on motions to compel arbitration outcome, Larson ongoing dispute, Ralph subpoenas for Micale information, status conference and scheduling changes | 0.7 | $315.00 | 0.0 | 0.2 | starts 8/6/21 | 0.2 | 0.2 | $90.00 | $90.00 | 0.1 |
| 11/3/2020 | ALM | $350.00 | Read and reviewed summary re results of status conference and discussed with Russ | 0.2 | $70.00 | 0.0 | 0.1 | starts 8/6/21 | 0.1 | USED UP | $35.00 | n/a | 0.0 |
| 12/14/2020 | RK | $425.00 | Reviewed emails from opposing counsel re continuances; reviewed hearing transcript | 0.3 | $127.50 | 0.0 | 0.1 | starts 8/6/21 | 0.1 | 0.1 | $42.50 | $42.50 | 0.0 |
| 1/12/2021 | RK | $450.00 | Reviewed final draft of Supplemental Brief re 1281.2 | 0.3 | $135.00 | 0.0 | 0.1 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |



Case 2:18-ml-02814-AB-PVC Document 1640-2 Filed 09/11/24 Page 92 of 177 Page ID #:68170

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/25/2021 | RK | $450.00 | Prepared for Status Conference portion of hearing, reviewed calendars; attended hearing (MTC Arb / Status Conf) | 1.0 | $450.00 | 0.3 | 0.3 | starts 8/6/21 | 0.2 | 0.2 | $90.00 | $90.00 | 0.0 |
| 1/25/2021 | MC | $345.00 | Follow up with RK re coordiantion cases meeting | 0.1 | $34.50 | 0.1 | USED UP | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 2/2/2021 | MC | $345.00 | Conference call with OC re briefing schedules and various other issuesi n JCCP | 1.0 | $345.00 | 0.0 | 0.3 | starts 8/6/21 | 0.3 | 0.3 | $103.50 | $103.50 | 0.1 |
| 2/2/2021 | ALM | $450.00 | Meeting with RK: discussed Defendant's appeal of court order after hearing on Defendant's MTC arbitration | 0.2 | $90.00 | 0.0 | 0.1 | starts 8/6/21 | USED UP | 0.1 | n/a | $45.00 | 0.0 |
| 2/10/2021 | RK | $450.00 | Reviewed Ford's Objections to Statement of Decision; drafted email to A. Morse re same | 0.5 | $225.00 | 0.0 | 0.1 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.2 |
| 2/18/2021 | RK | $450.00 | Attended Status Conference, Hearing on Larson metadata | 0.3 | $135.00 | 0.0 | 0.1 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.0 |
| 2/18/2021 | MC | $345.00 | Continue draft MTC Arb Opps draft | 3.4 | $1,173.00 | 0.0 | 0.4 | starts 8/6/21 | 0.4 | 0.4 | $138.00 | $138.00 | 2.2 |
| 2/19/2021 | MC | $345.00 | Finalize MTC Arb Opps/RJN/Exhibits | 4.8 | $1,656.00 | 0.0 | 0.6 | starts 8/6/21 | 0.6 | 0.6 | $207.00 | $207.00 | 3.0 |
| 3/1/2021 | MC | $345.00 | Review hearing transcripts | 2.6 | $897.00 | 0.0 | 0.5 | starts 8/6/21 | 0.5 | 0.5 | $172.50 | $172.50 | 1.1 |
| 3/26/2021 | RK | $450.00 | Reviewed summary/chart of settlement history of cases, reviewed select client files and repair summaries | 0.5 | $225.00 | 0.1 | 0.1 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.1 |
| 3/19/2021 | GM | $425.00 | Meet & Confer with opposing counsel | 0.5 | $212.50 | 0.0 | 0.1 | starts 8/6/21 | 0.0 | 0.0 | $0.00 | $0.00 | 0.4 |
| 3/19/2021 | GM | $425.00 | Pre-meet & confer coordination meeting with Roger Kirnos and Maite Colon | 0.5 | $212.50 | 0.0 | 0.1 | starts 8/6/21 | 0.0 | 0.0 | $0.00 | $0.00 | 0.4 |
| 3/19/2021 | MC | $345.00 | Call with OC to mc about various issues/mediation/case management statment/trials and dauberts | 1.1 | $379.50 | 0.0 | 0.3 | starts 8/6/21 | 0.3 | 0.3 | $103.50 | $103.50 | 0.2 |
| 3/19/2021 | MC | $345.00 | Internal conference with RK/GM re status of cases in the JCCP in anticipation of call with OC | 0.5 | $172.50 | 0.1 | 0.1 | starts 8/6/21 | 0.1 | 0.1 | $34.50 | $34.50 | 0.1 |
| 4/25/2021 | RK | $450.00 | Reviewed JCCP files and emails to ascertain 5-year statute application | 3.0 | $1,350.00 | 0.3 | 0.3 | starts 8/6/21 | 0.3 | 0.3 | $135.00 | $135.00 | 1.8 |
| 4/25/2021 | RK | $450.00 | Prepared draft of email to A. Nassihi re M&C re 5-year SOL | 1.1 | $495.00 | 0.2 | 0.2 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.5 |
| 4/25/2021 | RK | $450.00 | Call with C. Swanson re 5-Year SOL analysis | 0.5 | $225.00 | 0.1 | 0.1 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.1 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/26/2021 | RK | $450.00 | Meeting with attorneys and staff re 5-year SOL analysis; draft memo re same | 0.5 | $225.00 | 0.1 | 0.1 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.1 |
| 5/12/2021 | RK | $450.00 | Call with A. Nassihi re 5-year SOL | 0.1 | $45.00 | 0.1 | USED UP | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/12/2021 | RK | $450.00 | Call with A. Nassihi re Joint Status Report | 0.3 | $135.00 | 0.1 | 0.1 | starts 8/6/21 | 0.1 | USED UP | $45.00 | n/a | 0.0 |
| 5/12/2021 | RK | $450.00 | Drafted Plaintiffs' portion of Status Conference Statement | 1.3 | $585.00 | 0.2 | 0.2 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.7 |
| 5/19/2021 | RK | $450.00 | M&C with A. Nassihi re Joint Report for Status Conference | 0.2 | $90.00 | 0.0 | 0.1 | starts 8/6/21 | 0.1 | USED UP | $45.00 | n/a | 0.0 |
| 5/19/2021 | RK | $450.00 | Reviewed Joint Report and Emails re Larson metadata in preparation for Status Conference | 0.2 | $90.00 | 0.0 | 0.1 | starts 8/6/21 | USED UP | 0.1 | n/a | $45.00 | 0.0 |
| 5/19/2021 | RK | $450.00 | Attended Status Conference (split with Faulkner demurrer) | 0.5 | $225.00 | 0.0 | 0.1 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.2 |
| 5/20/2021 | RK | $450.00 | Drafted memo re results of Status Conference | 0.5 | $225.00 | 0.0 | 0.1 | starts 8/6/21 | 0.1 | 0.1 | $45.00 | $45.00 | 0.2 |
| 5/20/2021 | ALM | $450.00 | Read and reviewed summary re results of status conference hearing | 0.2 | $90.00 | 0.0 | 0.1 | starts 8/6/21 | 0.1 | USED UP | $45.00 | n/a | 0.0 |
| 6/8/2021 | ALM | $450.00 | Meeting with Abdiel/RK/operations team: discussed expert deadlines auto-generated in Salesforce | 0.2 | $90.00 | 0.0 | 0.1 | starts 8/6/21 | USED UP | 0.1 | n/a | $45.00 | 0.0 |
| 6/11/2021 | MC | $345.00 | Call with rK re 5 year rule | 0.4 | $138.00 | 0.1 | 0.1 | starts 8/6/21 | 0.1 | 0.1 | $34.50 | $34.50 | 0.0 |
| 6/14/2021 | CS | $425.00 | Locate relevant template re five-year motion; draft e-mail re key points to argue | 0.3 | $127.50 | 0.1 | 0.1 | starts 8/6/21 | 0.0 | 0.0 | n/a | $0.00 | 0.1 |
| 6/14/2021 | CS | $425.00 | Meeting with Roger Kirnos and Maite C. re five-year deadline | 0.3 | $127.50 | 0.1 | 0.1 | starts 8/6/21 | 0.0 | USED UP | $0.00 | n/a | 0.1 |
| 6/25/2021 | RK | $450.00 | Prepared for and attended Status Conference, call with M. Colon | 0.6 | $270.00 | 0.2 | 0.2 | starts 8/6/21 | 0.2 | USED UP | $90.00 | n/a | 0.0 |
| 6/25/2021 | ALM | $450.00 | Read and reviewed summary re results of hearing on 5 year Status Conference and discussed with Maite | 0.2 | $90.00 | 0.2 | USED UP | starts 8/6/21 | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/3/2022 | RK | $500.00 | Received email from Ford's counsel re status conference, respond to same | 0.1 | $50.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/3/2022 | RK | $500.00 | Conference call with A. Nassihi re continuing status conference | 0.3 | $150.00 | 0.3 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/4/2022 | RK | $500.00 | Meeting with Partners re strategies | 0.3 | $150.00 | 0.3 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |



Case 2:25-cv-01216-AB-PVC Document 39-1 Filed 07/01/25 Page 209 of 250 Page ID #:1234

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/12/2022 | RK | $500.00 | Drafted email to Ford counsel re f/u on Settlement Conference | 0.1 | $50.00 | 0.0 | 0.1 | 0.0 | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/25/2022 | RK | $500.00 | Meeting with partners re auditing/organizing billing | 0.5 | $250.00 | 0.0 | 0.1 | 0.1 | 0.1 | 0.1 | $50.00 | $50.00 | 0.1 |
| 2/22/2022 | RK | $500.00 | Reviewed and analyzed Ford proposed positions for Joint Report, reviewed case file for prior motions and orders | 0.8 | $400.00 | 0.8 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 2/22/2022 | RK | $500.00 | Call with C. Swanson re preparation for Joint Report position and further M&C with Ford | 0.3 | $150.00 | 0.1 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/11/2022 | RK | $500.00 | Reviewed Ford's Positions in Joint Statement, drafted/revised Plaintiff's responsive positions, calls with D. Kalinowski and C. Swanson | 1.7 | $850.00 | 0.3 | 0.3 | 0.3 | 0.2 | 0.2 | $100.00 | $100.00 | 0.4 |
| 4/20/2022 | RK | $500.00 | Meeting with team re analysis and strategy to prepare for IDP selection and discovery needs | 1.0 | $500.00 | 0.2 | 0.2 | 0.2 | 0.2 | 0.2 | $100.00 | $100.00 | 0.0 |
| 4/21/2022 | RK | $500.00 | Reviewed and analyzed C. Swanson notes re case facts to select cases for Global Settlement / Trial cases; reviewed underlying case materials in select cases | 0.6 | $300.00 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | $50.00 | $50.00 | 0.1 |
| 4/21/2022 | RK | $500.00 | Call with C. Swanson re preparation for JCCP status conference, discuss Ford's settlement position and further strategy | 0.3 | $150.00 | 0.1 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/21/2022 | RK | $500.00 | Call with C. Swanson re analysis of settlement of remaining cases | 0.4 | $200.00 | 0.0 | 0.1 | 0.1 | 0.1 | 0.1 | $50.00 | $50.00 | 0.0 |
| 4/21/2022 | RK | $500.00 | Review email from S. Taft and Kiesel billing, email to staff re same | 0.2 | $100.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/22/2022 | RK | $500.00 | Receive email from A. Nassihi re M&C re trial case selection, respond to the same | 0.1 | $50.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/25/2022 | RK | $500.00 | Review Ford's proposed Joint Report, call with D. Kalinowski re revisions | 0.2 | $100.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/25/2022 | RK | $500.00 | M&C Zoom with D. Kalinowski and Ford counsel re trial pick selections | 0.5 | $250.00 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | $50.00 | $50.00 | 0.0 |
| 4/27/2022 | RK | $500.00 | Reviewed Minute Order re continuance of Status Conference | 0.1 | $50.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/27/2022 | RK | $500.00 | Review Ford's proposed posting on Case Anywhere, edited, email to D. Kalinowski (x2) | 0.2 | $100.00 | 0.1 | 0.1 | 0.0 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/29/2022 | RK | $500.00 | Draft memo re results of Status Conference on 4/22/22 with instructions to staff and attorneys re next steps | 0.3 | $150.00 | 0.1 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/2/2022 | RK | $500.00 | Meeting with staff re update to clients re status of proceedings | 0.3 | $150.00 | 0.0 | 0.1 | 0.1 | USED UP | 0.1 | n/a | $50.00 | 0.0 |
| 5/2/2022 | RK | $500.00 | Meeting with staff re preparation for Settlement Conference | 0.4 | $200.00 | 0.0 | 0.1 | 0.1 | 0.1 | 0.1 | $50.00 | $50.00 | 0.0 |
| 5/6/2022 | RK | $500.00 | Email to opposing counsel re M&C re dates/deadlines for fee motion | 0.1 | $50.00 | 0.0 | 0.0 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/6/2022 | RK | $500.00 | Received email from staff re fee motion organization, respond to same | 0.1 | $50.00 | 0.0 | 0.1 | 0.0 | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/11/2022 | RK | $500.00 | Review summary and analysis of attorney fees, dates of coordination and potential cut-off, email to C. Swanson and staff re review | 0.3 | $150.00 | 0.0 | 0.1 | 0.1 | 0.1 | USED UP | $50.00 | n/a | 0.0 |
| 5/11/2022 | RK | $500.00 | Call with C. Swanson re attorney fee/demand | 0.2 | $100.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/11/2022 | DK | $350.00 | Confer with RK re proposing the next IDP cases to defense and mediators to use as well as a scheduling order following mediation and leading up to trial as well as meeting and conferring with defense re same | 0.4 | $140.00 | 0.1 | 0.1 | 0.1 | USED UP | 0.1 | n/a | $35.00 | 0.0 |
| 5/11/2022 | DK | $350.00 | Draft email to opposing counsel re Plaintiffs' choices for IDP cases, mediator proposal, scheduling order and discovery framework proposals | 0.3 | $105.00 | 0.1 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/11/2022 | DK | $350.00 | Conduct review and analysis of 9 cases to choose as next round of IDP cases in anticipation of submitting them to defense and Court | 0.6 | $210.00 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | $35.00 | $35.00 | 0.1 |
| 5/11/2022 | DK | $350.00 | Communication with defense re mediators | 0.1 | $35.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/12/2022 | DK | $350.00 | Telephone conference with opposing counsel re status report to court and issues to include | 0.3 | $105.00 | 0.3 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/12/2022 | DK | $350.00 | Exchange email with opposing counsel re mediations, discovery procedure, case picks for IDP and steps moving forward | 0.2 | $70.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/12/2022 | DK | $350.00 | Prepare draft joint status report | 0.4 | $140.00 | 0.4 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/12/2022 | DK | $350.00 | Confer with RK re preparing joint status report, proposing mediators and strategy | 0.2 | $70.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/13/2022 | DK | $350.00 | Exchange email with opposing counsel re draft joint status report | 0.2 | $70.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/13/2022 | DK | $350.00 | Review and analyze defense edits to joint status report and finalize for filing | 0.2 | $70.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/16/2022 | DK | $350.00 | Provide estimate of documents in repository | 0.3 | $105.00 | 0.0 | 0.1 | 0.1 | 0.1 | USED UP | $35.00 | n/a | 0.0 |
| 5/16/2022 | RK | $500.00 | Emails with D. Kalinowski re ex parte notice re 5-year motion; emails re mediation brief | 0.2 | $100.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/16/2022 | RK | $500.00 | Call with J. Cutler re fee motion | 0.3 | $150.00 | 0.0 | 0.1 | 0.1 | USED UP | 0.1 | n/a | $50.00 | 0.0 |
| 5/20/2022 | RK | $500.00 | Call with D. Kalinowski re strategy prep for MSC, call with C. Swanson re same | 0.5 | $250.00 | 0.0 | 0.1 | 0.1 | 0.1 | 0.1 | $50.00 | $50.00 | 0.1 |
| 5/23/2022 | RK | $500.00 | Call with C. Swanson re MSC | 0.1 | $50.00 | 0.0 | 0.0 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/23/2022 | RK | $500.00 | Prepare for MSC, review MSC Statement and case files, review case calculations | 0.7 | $350.00 | 0.0 | 0.2 | 0.2 | 0.3 | USED UP | $150.00 | n/a | 0.0 |
| 5/23/2022 | RK | $500.00 | Attend Settlement Conference | 7.5 | $3,750.00 | 0.0 | 1.0 | 1.0 | 1.0 | 1.0 | $500.00 | $500.00 | 3.5 |
| 5/23/2022 | RK | $500.00 | Call with C. Swanson re settlement conference, call with D. Kalinowski re meeting with clients | 0.3 | $150.00 | 0.0 | 0.1 | 0.1 | USED UP | 0.1 | n/a | $50.00 | 0.0 |
| 5/23/2022 | DK | $350.00 | Zoom conference with opposing counsel re stipulations to extend fees and cost motion hearing and deadlines | 0.2 | $70.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/23/2022 | ZP | $375.00 | Review approximately 100 documents in repository to identify further deponents | 1.9 | $712.50 | 0.3 | 0.3 | 0.3 | 0.2 | 0.2 | $75.00 | $75.00 | 0.6 |
| 5/23/2022 | ZP | $375.00 | Continued review of approximately 90 documents in repository reviewed to identify further deponents and topics inside Automotive Safety Office | 1.8 | $675.00 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | $112.50 | $112.50 | 0.3 |
| 5/24/2022 | DK | $350.00 | Draft email to opposing counsel re joint status report and mediator pick | 0.1 | $35.00 | 0.0 | 0.1 | 0.0 | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/24/2022 | DK | $350.00 | Confer with RK re defense's request to continue fee hearing and deadlines | 0.2 | $70.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/24/2022 | DK | $350.00 | Telephone conference with opposing counsel re continuing hearing and deadline | 0.1 | $35.00 | 0.0 | 0.0 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/24/2022 | ZP | $375.00 | Read and annotate deposition transcripts of 7 prior deponents to identify targets for further deposition on new topics and to assess possible knowledge responsive to new categories | 4.1 | $1,537.50 | 0.7 | 0.7 | 0.7 | 0.6 | 0.6 | $225.00 | $225.00 | 0.8 |
| 5/24/2022 | ZP | $375.00 | Perform searches for and review documents pertaining to outstanding matters for examination and further investigation of ASO/Internal Investigations division documents | 2.6 | $975.00 | 0.5 | 0.5 | 0.5 | 0.4 | 0.4 | $150.00 | $150.00 | 0.3 |



Case 2:25-cv-01254-AB-PVC Document 39-17 Filed 07/01/25 Page 250 of 276 Page ID #:2440

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/24/2022 | ZP | $375.00 | Continued review of documents in relation to new matters for examination and specific internal organizations at Ford Motor Company; also reviewed documents in relation to GETRAG lateral hires from Ford Motor Company and involvement in production of transm | 1.4 | $525.00 | 0.3 | 0.3 | 0.3 | 0.2 | 0.2 | $75.00 | $75.00 | 0.1 |
| 5/24/2022 | RK | $500.00 | Review notes on settlement discussions, organize final numbers in preparation for meeting with clients, speak to staff to prepare for meeting with clients post-Settlement Conference | 0.4 | $200.00 | 0.0 | 0.1 | 0.1 | 0.1 | 0.1 | $50.00 | $50.00 | 0.0 |
| 5/24/2022 | RK | $500.00 | Meeting with clients re Settlement Conference/Ford's offer | 0.6 | $300.00 | 0.0 | 0.2 | 0.2 | USED UP | 0.2 | n/a | $100.00 | 0.0 |
| 5/25/2022 | RK | $500.00 | Draft email to opposing counsel re confirmation of settlements | 0.2 | $100.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/25/2022 | DK | $350.00 | Telephone conference with opposing counsel re joint status report | 0.2 | $70.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/25/2022 | DK | $350.00 | Review and analyze Ford's proposed joint status report prior to filing | 0.1 | $35.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/25/2022 | DK | $350.00 | Exchange email with opposing counsel re joint status report | 0.1 | $35.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/25/2022 | ZP | $375.00 | Perform further document review re internal/external investigations departments and employees during relevant time period for cases in the JCCP | 1.5 | $562.50 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | $112.50 | $112.50 | 0.0 |
| 5/25/2022 | ZP | $375.00 | Investigate work history/background of employees active at FMC and GETRAG during relevant time period for DPS6 cases in JCCP and where those employees are currently working | 1.6 | $600.00 | 0.3 | 0.3 | 0.3 | 0.2 | 0.2 | $75.00 | $75.00 | 0.3 |
| 5/26/2022 | RK | $500.00 | Review, interlineate and sign 998 offers | 0.2 | $100.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/26/2022 | DK | $350.00 | Telephone communication with opposing counsel re meet and confer on pending fees motion | 0.2 | $70.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/26/2022 | DK | $350.00 | Prepare draft global discovery proposal to file with the Court and serve on defense, and confer with RK and ZP re same | 0.8 | $280.00 | 0.2 | 0.2 | 0.2 | 0.2 | USED UP | $70.00 | n/a | 0.0 |
| 5/27/2022 | RK | $500.00 | Call with D. Kalinowski re assessment of discovery needs | 0.2 | $100.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/27/2022 | RK | $500.00 | Review and revise Plaintiffs' proposal for Global Discovery, concurrent calls with D. Kalinowski and Z. Powell re same | 0.7 | $350.00 | 0.2 | 0.2 | 0.2 | 0.1 | USED UP | $50.00 | n/a | 0.0 |
| 5/27/2022 | CS | $450.00 | Review notice re Judge Hogue's retirement; email exchange with Roger Kirnos re same and impact on litigation | 0.2 | $90.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/27/2022 | CS | $450.00 | Review and revise JCCP report; meeting with DK re changes | 0.3 | $135.00 | 0.0 | 0.1 | 0.1 | 0.0 | 0.0 | n/a | $0.00 | 0.1 |
| 5/27/2022 | ZP | $375.00 | Meeting with Roger and Danny re discovery drafts | 0.5 | $187.50 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | $37.50 | $37.50 | 0.0 |
| 5/27/2022 | ZP | $375.00 | Research on potential deponents and categories for discovery update | 1.5 | $562.50 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | $112.50 | $112.50 | 0.0 |
| 5/31/2022 | ZP | $375.00 | Review document repository for further information on targeted deponents laid out in discovery brief to Court | 1.8 | $675.00 | 0.0 | 0.3 | 0.3 | 0.3 | 0.3 | $112.50 | $112.50 | 0.6 |
| 5/31/2022 | ZP | $375.00 | Background research on deponents and prior work experience and education; Review documents for prior job titles before and after production of DPS6 and completion of NHTSA reporting | 2.1 | $787.50 | 0.4 | 0.4 | 0.4 | 0.3 | 0.3 | $112.50 | $112.50 | 0.3 |
| 6/1/2022 | ZP | $375.00 | Review deposition transcripts of Overla, Hamm, Pline and McClain in furtherance of identifying topics and further requests for ASO, internal investigatory and external communication documents | 3.4 | $1,275.00 | 0.7 | 0.7 | 0.7 | 0.6 | 0.6 | $225.00 | $225.00 | 0.1 |
| 6/2/2022 | ZP | $375.00 | Create search terms and request drafts for Automotive Safety Office, II/EI departments and NHTSA related reports | 1.7 | $637.50 | 0.0 | 0.3 | 0.3 | 0.3 | 0.3 | $112.50 | $112.50 | 0.5 |
| 6/2/2022 | ZP | $375.00 | Run searches in database for Ernie DeVincent related documents and review results | 0.8 | $300.00 | 0.0 | 0.2 | 0.2 | 0.2 | 0.2 | $75.00 | $75.00 | 0.0 |
| 6/2/2022 | RK | $500.00 | Meeting with staff re 998 offers | 0.6 | $300.00 | 0.0 | 0.2 | 0.2 | USED UP | 0.2 | n/a | $100.00 | 0.0 |
| 6/5/2022 | RK | $500.00 | Review Ford's Statement re Discovery; email to D. Kalinowski | 0.3 | $150.00 | 0.1 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 8/2/2022 | RK | $500.00 | Draft email to Ford attorneys re request to meet and confer re fee motion(s) | 0.2 | $100.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 8/24/2022 | RK | $500.00 | Draft email to Ford counsel re attempt to meet and confer re fee motion | 0.4 | $200.00 | 0.0 | 0.1 | 0.1 | 0.1 | 0.1 | $50.00 | $50.00 | 0.0 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/25/2022 | JWC | $450.00 | Review motion to tax costs (Larson, Goyzueta, Jordan and Ralph); Begin drafting opposition and supporting declaration | 6.0 | $2,700.00 | 0.0 | 0.8 | 0.8 | 0.0 | 0.0 | $0.00 | $0.00 | 4.4 |
| 8/26/2022 | JWC | $450.00 | Revise and finalize opposition to motion to tax costs | 3.0 | $1,350.00 | 0.0 | 0.6 | 0.6 | 0.0 | 0.0 | $0.00 | $0.00 | 1.8 |
| 8/29/2022 | RK | $500.00 | Follow up email to Ford counsel re meet and confer re attorney fees | 0.1 | $50.00 | 0.0 | 0.1 | 0.0 | USED UP | USED UP | n/a | n/a | 0.0 |
| 9/2/2022 | JWC | $450.00 | Work on JCCP (Goyzueta & Ralph Fee Replies) | 8.0 | $3,600.00 | 0.0 | 1.1 | 1.1 | 0.0 | 0.0 | $0.00 | $0.00 | 5.8 |
| 9/4/2022 | JWC | $450.00 | Work on JCCP (Jordan & Larson Fee Replies) | 8.0 | $3,600.00 | 0.0 | 1.1 | 1.1 | 0.0 | 0.0 | $0.00 | $0.00 | 5.8 |
| 9/6/2022 | DK | $350.00 | Draft email to opposing counsel re joint status report | 0.1 | $35.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 9/6/2022 | DK | $350.00 | Telephone conference with opposing counsel re joint status report in advance of upcoming status conference | 0.2 | $70.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 9/7/2022 | DK | $350.00 | Confer with RK re draft joint status report, edits and strategy | 0.3 | $105.00 | 0.3 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 9/7/2022 | DK | $350.00 | Confer with opposing counsel re joint status report | 0.4 | $140.00 | 0.4 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 9/7/2022 | DK | $350.00 | Edit draft joint report sent by opposing counsel | 0.4 | $140.00 | 0.4 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 9/7/2022 | RK | $500.00 | Review and redline draft of proposed Joint Report; meet with D. Kalinowski | 0.2 | $100.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 9/7/2022 | RK | $500.00 | Call with D. Kalinowski, discuss contents of prior joint reports; finalize draft to send to Ford counsel | 0.2 | $100.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 9/8/2022 | RK | $500.00 | Review finalize draft of Joint Status Report discussed between D. Kalinowski and Ford counsel | 0.1 | $50.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 9/8/2022 | DK | $350.00 | Exchange email correspondence with opposing counsel re joint status report | 0.1 | $35.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 9/8/2022 | DK | $350.00 | Make further edits to joint status report following defense edits | 0.1 | $35.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 9/9/2022 | RK | $500.00 | Call with P. Kiesel re Status Conference and fee motion hearing | 0.3 | $150.00 | 0.0 | 0.1 | 0.1 | 0.1 | USED UP | $50.00 | n/a | 0.0 |
| 9/9/2022 | JWC | $450.00 | Discuss with Roger and review evidentiary objections and argument re fee motions | 0.8 | $360.00 | 0.0 | 0.2 | 0.2 | 0.2 | 0.2 | $90.00 | $90.00 | 0.0 |
| 9/13/2022 | JWC | $450.00 | Travel to and from and attend hearing on fees and costs | 3.0 | $1,350.00 | 0.0 | 0.6 | 0.6 | 0.0 | 0.0 | $0.00 | $0.00 | 1.8 |

Knight Law Group, LLP
Invoice



| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/13/2022 | RK | $500.00 | Review Joint Status Reports since April in preparation of Status Conference; prepare summary of matters for discussion with Court at hearing | 0.9 | $450.00 | 0.3 | 0.3 | 0.3 | USED UP | USED UP | n/a | n/a | 0.0 |
| 9/13/2022 | RK | $500.00 | Attend Status Conference, meet with P. Kiesel prior to discuss (split time with Bellwether fee motions) | 1.7 | $850.00 | 0.3 | 0.3 | 0.3 | 0.2 | 0.2 | $100.00 | $100.00 | 0.4 |
| 9/30/2022 | RK | $500.00 | Call with A. Nassihi re meet and confer re attorney fees | 0.2 | $100.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/1/2022 | RK | $500.00 | Draft email to Ford's counsel re continuing date for meet and confer re attorney fees | 0.2 | $100.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/18/2022 | RK | $500.00 | Email to S. Hugret and A. Nassihi re follow up re attorney fees | 0.2 | $100.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/18/2022 | RK | $500.00 | Receive email from S. Hugret re attempt to meet and confer re attorney fees; respond to email | 0.3 | $150.00 | 0.0 | 0.1 | 0.1 | USED UP | 0.1 | n/a | $50.00 | 0.0 |
| 10/21/2022 | RK | $500.00 | Draft Plaintiff's position in Joint Status Report; review prior reports from earlier in year to synthesize | 1.2 | $600.00 | 0.4 | 0.4 | 0.4 | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/21/2022 | RK | $500.00 | Call with A. Nassihi re Joint Report | 0.3 | $150.00 | 0.3 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/21/2022 | RK | $500.00 | Communications with L. Ungs re causes of action to allege, review and analyze repair history | 0.2 | $100.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/21/2022 | RK | $500.00 | Continue preparing Joint Report | 1.1 | $550.00 | 0.3 | 0.3 | 0.3 | USED UP | 0.2 | n/a | $100.00 | 0.0 |
| 10/22/2022 | RK | $500.00 | Receive email from J. Cutler re inquiry re briefing on mediator; respond to email re scope of brief and meet and confer with Ford | 0.1 | $50.00 | 0.0 | 0.0 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/23/2022 | RK | $500.00 | Zoom conference with opposing counsel re Joint Report | 0.1 | $50.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/23/2022 | RK | $500.00 | Finalize Plaintiffs' position for Joint Report; email to opposing counsel | 0.4 | $200.00 | 0.2 | 0.0 | 0.2 | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/24/2022 | RK | $500.00 | Receive email from Ford counsel re attorney fee motions, draft response | 0.5 | $250.00 | 0.0 | 0.1 | 0.1 | 0.1 | 0.1 | $50.00 | $50.00 | 0.1 |
| 10/25/2022 | RK | $500.00 | Meet and confer with Ford counsel re attorney fees | 0.2 | $100.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/26/2022 | RK | $500.00 | Email to opposing counsel re memorializing meet and confer conference | 0.5 | $250.00 | 0.0 | 0.1 | 0.1 | 0.1 | 0.1 | $50.00 | $50.00 | 0.1 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/27/2022 | DK | $350.00 | Telephone correspondence with opposing counsel re meet and confer on joint statement and proposed fee referee | 0.2 | $70.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/28/2022 | JWC | $450.00 | Review and revise spreadsheet and meet and confer on attorney's fees and costs | 0.8 | $360.00 | 0.0 | 0.2 | 0.2 | 0.2 | 0.2 | $90.00 | $90.00 | 0.0 |
| 10/28/2022 | JWC | $450.00 | Review Ford's statement; Research neutrals; Draft statement on proposed neutrals | 2.0 | $900.00 | 0.0 | 0.4 | 0.4 | 0.4 | 0.4 | $180.00 | $180.00 | 0.4 |
| 10/28/2022 | RK | $500.00 | Email to opposing counsel re preliminary list of cases subject of upcoming fee motion | 0.1 | $50.00 | 0.0 | 0.1 | 0.0 | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/28/2022 | RK | $500.00 | Review Ford's brief re appointment of referee, review resumes; call with J. Cutler | 0.3 | $150.00 | 0.0 | 0.1 | 0.1 | 0.1 | USED UP | $50.00 | n/a | 0.0 |
| 10/28/2022 | RK | $500.00 | Review case lists and prior Status Reports to confirm/identify universe of cases at issue in fee motion to provide to opposing counsel; emails to staff members re same | 0.3 | $150.00 | 0.0 | 0.1 | 0.1 | USED UP | 0.1 | n/a | $50.00 | 0.0 |
| 10/28/2022 | RK | $500.00 | Call with J. Cutler re finalizing brief re referee | 0.1 | $50.00 | 0.0 | 0.0 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/28/2022 | RK | $500.00 | Revise Brief re Referee | 0.3 | $150.00 | 0.0 | 0.1 | 0.1 | 0.1 | USED UP | $50.00 | n/a | 0.0 |
| 11/4/2022 | DK | $350.00 | Prepare for status conference | 0.2 | $70.00 | 0.1 | 0.1 | 0.0 | USED UP | USED UP | n/a | n/a | 0.0 |
| 11/4/2022 | DK | $350.00 | Attend hearing on status conference | 0.9 | $315.00 | 0.2 | 0.2 | 0.2 | 0.1 | 0.1 | $35.00 | $35.00 | 0.1 |
| 11/4/2022 | JWC | $450.00 | Prepare for and attend JCCP OSC/Status Conference | 1.1 | $495.00 | 0.3 | 0.3 | 0.3 | 0.2 | USED UP | $90.00 | n/a | 0.0 |
| 11/21/2022 | RK | $500.00 | Meet and confer with Ford counsel re motion for attorney fees | 0.3 | $150.00 | 0.0 | 0.1 | 0.1 | USED UP | 0.1 | n/a | $50.00 | 0.0 |
| 11/21/2022 | RK | $500.00 | Draft email to opposing counsel memorializing meet and confer re attorney fee motion | 0.2 | $100.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 11/22/2022 | RK | $500.00 | Draft email to Judge Andler's assistant re attorney fee motion hearing | 0.3 | $150.00 | 0.0 | 0.1 | 0.1 | 0.1 | USED UP | $50.00 | n/a | 0.0 |
| 12/8/2022 | RK | $500.00 | Review Joint Report, including Ford's exhibits (transcripts and reports) in preparation of Status Conference | 0.7 | $350.00 | 0.3 | 0.2 | 0.2 | USED UP | USED UP | n/a | n/a | 0.0 |
| 12/8/2022 | RK | $500.00 | Call with D. Kalinowski re analysis and arguments for status conference | 0.7 | $350.00 | 0.2 | 0.2 | 0.2 | USED UP | 0.1 | n/a | $50.00 | 0.0 |
| 12/8/2022 | RK | $500.00 | Call to Judge Davidian case manager, follow up email | 0.1 | $50.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 12/8/2022 | RK | $500.00 | Attend Status Conference | 1.8 | $900.00 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | $150.00 | $150.00 | 0.3 |
| 12/8/2022 | DK | $350.00 | Preparation for hearing on status conference, including confer with RK re strategy and topics to discuss with Court | 0.8 | $280.00 | 0.2 | 0.2 | 0.2 | USED UP | 0.2 | n/a | $70.00 | 0.0 |



Case 2:25-cv-04125-AB-MAR Document 30-1 Filed 07/25/25 Page 1040 of 1097 Page ID #:2245

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/8/2022 | DK | $350.00 | Telephone conference with RK and mediator Davidian's office re availability for a mediation | 0.2 | $70.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 12/8/2022 | DK | $350.00 | Attend hearing on status conference | 1.7 | $595.00 | 0.3 | 0.3 | 0.3 | 0.2 | 0.2 | $70.00 | $70.00 | 0.4 |
| 12/9/2022 | RK | $500.00 | Attend continued Status Conference; review notes in preparation, call with D. Kalinowski to debrief | 1.6 | $800.00 | 0.4 | 0.4 | 0.4 | USED UP | 0.4 | n/a | $200.00 | 0.0 |
| 12/9/2022 | DK | $350.00 | Further prepare for continued status conference this morning | 0.4 | $140.00 | 0.0 | 0.1 | 0.1 | 0.1 | 0.1 | $35.00 | $35.00 | 0.0 |
| 12/9/2022 | DK | $350.00 | Attend continued status conference | 1.6 | $560.00 | 0.4 | 0.4 | 0.4 | 0.4 | USED UP | $140.00 | n/a | 0.0 |
| 12/12/2022 | DK | $350.00 | Prepare post-hearing report re appearances, court comments and tentative thoughts, arguments with opposing counsel, and steps moving forward in terms of meet and confer | 0.9 | $315.00 | 0.2 | 0.2 | 0.2 | 0.1 | 0.1 | $35.00 | $35.00 | 0.1 |
| 12/12/2022 | RK | $500.00 | Email to Judge Davidian case manager re earlier availability for mediation (IDP cases) | 0.1 | $50.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 12/14/2022 | RK | $500.00 | Prepare declaration in support of Fee Motion, review history of communications with Ford counsel re settlements, attorney fees and CMO | 3.9 | $1,950.00 | 0.0 | 0.5 | 0.5 | 0.0 | 0.0 | $0.00 | $0.00 | 2.9 |
| 12/16/2022 | RK | $500.00 | Email to D. Kalinowski and Z. Powell re follow up re proposed stipulation to send to Ford re authenticity and business records exception as agreed in MDL | 0.1 | $50.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 12/20/2022 | RK | $500.00 | Follow up email to opposing counsel re availability for dates proposed by Mediator (Judge Davidian) | 0.1 | $50.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 12/22/2022 | RK | $500.00 | Receive email from Judge Davidian clerk re follow up for dates for mediation; respond to email | 0.1 | $50.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 12/22/2022 | RK | $500.00 | Email to Ford counsel re follow up re dates for availability for Judge Davidian mediation | 0.1 | $50.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 12/22/2022 | RK | $500.00 | Receive email from Ford counsel re 1/2 day mediation for NTG cases, respond to the same | 0.1 | $50.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 12/22/2022 | DK | $350.00 | Confer with RK re proposed order re appointing referee to determine pending fee motions | 0.2 | $70.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 12/23/2022 | RK | $500.00 | Receive email from Ford counsel re 1/2 day mediation with different mediator than agreed upon for NTG cases, respond to the same | 0.1 | $50.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/27/2022 | DK | $350.00 | Review and analyze Ford's objection to proposed order re fee motion referee | 0.3 | $105.00 | 0.0 | 0.1 | 0.1 | 0.1 | USED UP | $35.00 | n/a | 0.0 |
| 12/27/2022 | DK | $350.00 | Prepare response to Ford's objection to proposed order re fee motion referee | 2.1 | $735.00 | 0.0 | 0.4 | 0.4 | 0.4 | 0.4 | $140.00 | $140.00 | 0.5 |
| 1/3/2023 | DK | $400.00 | Zoom conference with opposing counsel re proposed orders | 0.2 | $80.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/4/2023 | DK | $400.00 | Exchange email with opposing counsel re continuing status conference | 0.2 | $80.00 | 0.1 | 0.0 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/4/2023 | DK | $400.00 | Review court order continuing status conference | 0.1 | $40.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/7/2023 | DK | $400.00 | Prepare draft stipulation and exhibits re DPS6 documents stipulated to by Ford as authentic and BR exceptions, including brief research on applicable code sections | 1.1 | $440.00 | 0.3 | 0.3 | 0.3 | 0.2 | USED UP | $80.00 | n/a | 0.0 |
| 1/11/2023 | DK | $400.00 | Exchange email with opposing counsel re telephone conference with opposing counsel re upcoming status conference hearing and court's proposed order | 0.3 | $120.00 | 0.1 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/17/2023 | DK | $400.00 | Exchange email with opposing counsel re rescheduling status conference | 0.2 | $80.00 | 0.1 | 0.1 | 0.0 | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/17/2023 | DK | $400.00 | Review and analyze Court's case anywhere messages re continuing status conference | 0.3 | $120.00 | 0.1 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/17/2023 | DK | $400.00 | Telephone conference with opposing counsel re upcoming status conference and dates | 0.2 | $80.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/19/2023 | DK | $400.00 | Confer with RK re upcoming scheduling conference and strategy moving forward | 0.2 | $80.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/19/2023 | DK | $400.00 | Confer with opposing counsel re rescheduling the status conference | 0.2 | $80.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/19/2023 | DK | $350.00 | Prepare draft Plaintiffs' proposed fact discovery plan for NTG | 1.0 | $350.00 | 0.2 | 0.2 | 0.2 | 0.2 | 0.2 | $70.00 | $70.00 | 0.0 |
| 1/27/2023 | DK | $400.00 | Attend hearing on status conference | 2.5 | $1,000.00 | 0.4 | 0.4 | 0.4 | 0.3 | 0.3 | $120.00 | $120.00 | 0.7 |
| 1/27/2023 | DK | $400.00 | Roundtrip travel for hearing on status conference | 1.6 | $640.00 | 0.3 | 0.3 | 0.3 | 0.2 | 0.2 | $80.00 | $80.00 | 0.3 |
| 1/30/2023 | DK | $400.00 | Prepare post-status conference internal memorandum re appearances, new dates and deadlines set by Court, other orders by the Court and steps moving forward | 0.6 | $240.00 | 0.2 | 0.2 | 0.2 | USED UP | USED UP | n/a | n/a | 0.0 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/30/2023 | DK | $400.00 | Draft email to opposing counsel re meet and confer on scheduling 90 minute fees and costs motion hearing per Court Order | 0.1 | $40.00 | 0.0 | 0.1 | 0.0 | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/30/2023 | RK | $550.00 | Messages with R. Wirtz re fee motion overview hearing date | 0.1 | $55.00 | 0.0 | 0.0 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/30/2023 | RK | $550.00 | Call with P. Kiesel re fee motion overview hearing date | 0.1 | $55.00 | 0.0 | 0.1 | 0.0 | USED UP | USED UP | n/a | n/a | 0.0 |
| 2/1/2023 | DK | $400.00 | Communication with clients re update on coordination and status of cases | 1.4 | $560.00 | 0.2 | 0.2 | 0.2 | 0.2 | 0.2 | $80.00 | $80.00 | 0.4 |
| 2/1/2023 | DK | $400.00 | Exchange email with opposing counsel re scheduling overview/background on pending fee motion hearing | 0.1 | $40.00 | 0.0 | 0.0 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 2/1/2023 | DK | $400.00 | Prepare message on case anywhere re March 13, 2023 hearing date for overview/background on fees and costs motion | 0.1 | $40.00 | 0.0 | 0.1 | 0.0 | USED UP | USED UP | n/a | n/a | 0.0 |
| 2/1/2023 | RK | $550.00 | Meeting with clients re update on proceedings | 1.1 | $605.00 | 1.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 2/1/2023 | RK | $550.00 | Meeting with clients re update on proceedings | 0.4 | $220.00 | 0.4 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 2/7/2023 | RK | $550.00 | Meeting with D. Kalinowski re further strategy (split with MDL) | 0.4 | $220.00 | 0.1 | 0.1 | 0.1 | USED UP | 0.1 | n/a | $55.00 | 0.0 |
| 2/17/2023 | RK | $550.00 | Review draft of discovery plan for exchange with Ford; review drafts of discovery in other actions to supplement and reduce matters for discovery | 1.2 | $660.00 | 0.3 | 0.3 | 0.3 | USED UP | 0.3 | n/a | $165.00 | 0.0 |
| 2/18/2023 | RK | $550.00 | Review Ford's Proposed Fact Discovery Plan | 0.1 | $55.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 2/27/2023 | RK | $550.00 | Review and annotate Ford's discovery plan in preparation for meet and confer; review various prior discovery and depositions to assess Ford's contentions | 1.1 | $605.00 | 0.3 | 0.3 | 0.3 | USED UP | 0.2 | n/a | $110.00 | 0.0 |
| 2/27/2023 | RK | $550.00 | Confer with Ford counsel re Discovery Plan | 0.8 | $440.00 | 0.2 | 0.2 | 0.2 | 0.2 | USED UP | $110.00 | n/a | 0.0 |
| 2/27/2023 | RK | $550.00 | Prepare Statement re Plaintiff Discovery Plan | 2.8 | $1,540.00 | 0.4 | 0.4 | 0.4 | 0.4 | 0.4 | $220.00 | $220.00 | 0.8 |
| 2/27/2023 | RK | $550.00 | Cursory review of Ford's filing of Objections and Opposition to Knight Law Discovery Plan and exhibits; review Ford separate filing re Supporting Fact Sheet Plan | 0.4 | $220.00 | 0.1 | 0.1 | 0.1 | 0.1 | USED UP | $55.00 | n/a | 0.0 |
| 2/27/2023 | RK | $550.00 | Revise Statement re Plaintiff Discovery Plan | 0.2 | $110.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/13/2023 | JWC | $495.00 | Prepare for, travel to and from, and attend status conference re fee motion and discovery plan | 6.5 | $3,217.50 | 0.0 | 0.9 | 0.9 | 0.9 | 0.9 | $445.50 | $445.50 | 2.9 |
| 3/16/2023 | RK | $550.00 | Attend meeting re Conference with opposing counsel re Ford's arbitration motion (on hold, disconnected) | 0.4 | $220.00 | 0.0 | 0.1 | 0.1 | 0.1 | 0.1 | $55.00 | $55.00 | 0.0 |
| 3/16/2023 | RK | $550.00 | Attend meeting re Call with opposing counsel re arbitration motion | 0.1 | $55.00 | 0.0 | 0.0 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/14/2023 | RK | $550.00 | Review Court minute order re Status Conference time change; email to J. Cutler re attendance in person | 0.1 | $55.00 | 0.0 | 0.1 | 0.0 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/18/2023 | JWC | $495.00 | Meet and confer on fees and costs for post motion filing issues | 0.1 | $49.50 | 0.0 | 0.0 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/18/2023 | JWC | $495.00 | Meet and confer on arbitration issue | 0.1 | $49.50 | 0.0 | 0.1 | 0.0 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/18/2023 | RK | $550.00 | Confer with J. Cutler re work on list of cases Ford identified for arbitration; review internal master case list to cross-check matters not named in Ford's list of cases subject to MTC arbitration | 0.7 | $385.00 | 0.0 | 0.2 | 0.2 | USED UP | 0.3 | n/a | $165.00 | 0.0 |
| 4/18/2023 | RK | $550.00 | Review and revise draft of Joint Status Report re Arbitration; send email to J. Cutler re meet and confer re same | 0.2 | $110.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/20/2023 | JWC | $495.00 | Research re arb cases and causes of action re Ford's proposed list of cases | 0.7 | $346.50 | 0.0 | 0.2 | 0.2 | 0.3 | USED UP | $148.50 | n/a | 0.0 |
| 4/20/2023 | JWC | $495.00 | Follow up and review Ford's edits to joint statement re arbitration; Edit Plaintiff's portion | 0.6 | $297.00 | 0.0 | 0.2 | 0.2 | USED UP | 0.2 | n/a | $99.00 | 0.0 |
| 4/20/2023 | RK | $550.00 | Review Ford's propose revisions to Joint Report re Arbitration; email to J. Cutler re further meet and confer | 0.1 | $55.00 | 0.0 | 0.0 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/20/2023 | RK | $550.00 | Meeting with R. Higgins re discuss status of Coordination and next steps (split time with MDL) | 0.3 | $165.00 | 0.1 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/20/2023 | RK | $550.00 | Emails with J. Cutler re Ford's proposed revisions to Joint Report, drafted a revised version to propose | 0.4 | $220.00 | 0.2 | 0.0 | 0.2 | USED UP | USED UP | n/a | n/a | 0.0 |
| 4/26/2023 | RK | $550.00 | Meeting with attorneys re planning for discovery preparation | 0.5 | $275.00 | 0.3 | 0.2 | 0.0 | USED UP | USED UP | n/a | n/a | 0.0 |



Case 2:25-cv-04125-AB-PVC Document 69-1 Filed 07/30/25 Page 1405 of 1476 Page ID #:3220

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/26/2023 | RK | $550.00 | Call with S. Taft re Status Conference re arbitration | 0.3 | $165.00 | 0.0 | 0.1 | 0.1 | USED UP | 0.1 | n/a | $55.00 | 0.0 |
| 4/27/2023 | RH | $550.00 | Attend hearing on motion for attorney's fees and status conference | 1.0 | $550.00 | 0.0 | 0.3 | 0.3 | USED UP | 0.3 | n/a | $165.00 | 0.1 |
| 5/9/2023 | RK | $550.00 | Call with S. Wilson re DPS6 docs | 0.2 | $110.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/11/2023 | JWC | $495.00 | Further discussions and revise and finalize joint report | 0.4 | $198.00 | 0.2 | 0.0 | 0.2 | USED UP | USED UP | n/a | n/a | 0.0 |
| 5/25/2023 | JWC | $495.00 | Attend JCCP discovery meeting | 1.0 | $495.00 | 0.2 | 0.2 | 0.2 | 0.2 | 0.2 | $99.00 | $99.00 | 0.0 |
| 5/25/2023 | RK | $550.00 | Meeting with team re preparation for discovery | 0.8 | $440.00 | 0.2 | 0.2 | 0.2 | 0.2 | USED UP | $110.00 | n/a | 0.0 |
| 5/30/2023 | JWC | $495.00 | Meet and confer on outstanding fees and costs ford owes | 0.2 | $99.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 6/7/2023 | RK | $550.00 | Receive email from opposing counsel re lack of arbitration hearing extension; respond to same | 0.2 | $110.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 6/11/2023 | RK | $550.00 | Review email from D. Folia re identification of Ford deponents; legal research re out of state commission process and legal authorities thereunder, draft analysis to team | 1.2 | $660.00 | 0.3 | 0.3 | 0.3 | 0.3 | USED UP | $165.00 | n/a | 0.0 |
| 6/11/2023 | RK | $550.00 | Receive email from D. Folia re county rules; respond to same | 0.1 | $55.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 6/11/2023 | RK | $550.00 | Review internal report re 5-year deadlines; email to M. Colon and J. Cutler re cases in coordination | 0.1 | $55.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 6/12/2023 | RK | $550.00 | Receive email from J. Cutler re stipulated documents, respond to same | 0.1 | $55.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 6/12/2023 | RK | $550.00 | Receive email from R. Higgins re stipulated documents, respond to same | 0.1 | $55.00 | 0.1 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 6/12/2023 | RH | $550.00 | Confer with J. Cutler re Ford DPS6 discovery | 1.0 | $550.00 | 0.3 | 0.3 | 0.3 | USED UP | 0.1 | n/a | $55.00 | 0.0 |
| 6/12/2023 | MC | $425.00 | Confer with J. Cutler re pending discovery in JCCP | 0.5 | $212.50 | 0.2 | 0.2 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 6/22/2023 | RK | $550.00 | Review JCCP case files to ascertain status of existing 998 offers in light of court ruling on attorney fees in Goyzueta and Ralph | 1.6 | $880.00 | 0.0 | 0.3 | 0.3 | 0.3 | 0.3 | $165.00 | $165.00 | 0.4 |
| 6/26/2023 | RK | $550.00 | Draft email to J. Cutler and team re NTG trial prep, joint report topics, litigation strategy | 0.5 | $275.00 | 0.3 | 0.2 | 0.0 | USED UP | USED UP | n/a | n/a | 0.0 |
| 6/28/2023 | AZ | $175.00 | Draft Notice of Ruling re Def's MTCA | 0.6 | $105.00 | 0.0 | 0.2 | 0.2 | 0.0 | USED UP | $0.00 | n/a | 0.2 |
| 6/28/2023 | RK | $550.00 | Review emails from J. Cutler and A. Lopez re discovery orders in other JCCP, respond to same | 0.2 | $110.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/28/2023 | RK | $550.00 | Receive email from J. Cutler re preparation of RFGs, review email files to identify additional documents, draft email to J. Cutler and R. Higgins re plan | 0.7 | $385.00 | 0.2 | 0.2 | 0.2 | 0.1 | USED UP | $55.00 | n/a | 0.0 |
| 6/28/2023 | RH | $550.00 | Confer with attys and staff re FMC discovery responses/orders | 0.6 | $330.00 | 0.2 | 0.2 | 0.2 | USED UP | USED UP | n/a | n/a | 0.0 |
| 6/29/2023 | RH | $550.00 | Prepare deposition notices for FMC employees; confer with attorneys and staff re same | 0.4 | $220.00 | 0.1 | 0.1 | 0.1 | USED UP | 0.1 | n/a | $55.00 | 0.0 |
| 7/3/2023 | JWC | $495.00 | Draft Joint Report for July 13, 2023 Status Conference | 1.8 | $891.00 | 0.4 | 0.4 | 0.4 | 0.3 | 0.3 | $148.50 | $148.50 | 0.0 |
| 7/3/2023 | JWC | $495.00 | Draft Special ROGs (multiple cases) | 1.5 | $742.50 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | $148.50 | $148.50 | 0.0 |
| 7/3/2023 | JWC | $495.00 | Draft RFPs (multiple cases) | 1.5 | $742.50 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | $148.50 | $148.50 | 0.0 |
| 7/3/2023 | JWC | $495.00 | Emails and calls re joint status report; Attend zoom meeting re same | 0.8 | $396.00 | 0.2 | 0.2 | 0.2 | USED UP | 0.2 | n/a | $99.00 | 0.0 |
| 7/6/2023 | JWC | $495.00 | Meet and confer with opposing counsel on Joint Statement; Revise and finalize; Create separate Plaintiff's only portion that Ford refused to include | 1.7 | $841.50 | 0.3 | 0.3 | 0.3 | 0.2 | 0.2 | $99.00 | $99.00 | 0.4 |
| 7/11/2023 | RH | $550.00 | Review Case Anywhere post/order and confer with co counsel | 0.2 | $110.00 | 0.2 | USED UP | USED UP | USED UP | USED UP | n/a | n/a | 0.0 |
| 7/27/2023 | RK | $550.00 | Receive inquiry from staff re trial dates and deadlines, respond to email with updated information | 0.2 | $110.00 | 0.1 | 0.0 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 8/4/2023 | MC | $425.00 | Review file and follow up with legal assistant re status of dealer depos | 0.4 | $170.00 | 0.0 | 0.1 | 0.1 | 0.1 | 0.1 | $42.50 | $42.50 | 0.0 |
| 8/7/2023 | JWC | $495.00 | Meet and confer on dealership depositions | 0.3 | $148.50 | 0.0 | 0.1 | 0.1 | 0.1 | USED UP | $49.50 | n/a | 0.0 |
| 8/8/2023 | JWC | $495.00 | Meet and confer on ford employee depositions | 0.2 | $99.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 8/9/2023 | JWC | $495.00 | Email opposing counsel re meet and confer scheduling | 0.1 | $49.50 | 0.0 | 0.1 | 0.0 | USED UP | USED UP | n/a | n/a | 0.0 |
| 8/14/2023 | JWC | $495.00 | Prepare for and attend meet and confer re discovery in JCCP 4856 including depositions | 0.6 | $297.00 | 0.2 | 0.2 | 0.2 | USED UP | USED UP | n/a | n/a | 0.0 |
| 8/23/2023 | RH | $550.00 | Prepare objections to NOD and requests for production of documents (percipient) | 0.4 | $220.00 | 0.0 | 0.1 | 0.1 | 0.1 | 0.1 | $55.00 | $55.00 | 0.0 |
| 9/12/2023 | RH | $550.00 | Prepare RFP, SROGs (multiple cases) | 4.0 | $2,200.00 | 0.0 | 0.5 | 0.5 | 0.5 | 0.5 | $275.00 | $275.00 | 2.0 |
| 9/13/2023 | RH | $550.00 | Prepare SROGS; confer with JWC/RK re same (multiple cases) | 2.0 | $1,100.00 | 0.0 | 0.4 | 0.4 | 0.4 | 0.4 | $220.00 | $220.00 | 0.4 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/3/2023 | RK | $550.00 | Search email history with Ford counsel from MDL re Ford's offer to buyback all clients' vehicles to prepare response to Ford in this JCCP; call with L. Ungs re same; draft email to Ford counsel responding to offer to buy back cars | 0.8 | $440.00 | 0.0 | 0.2 | 0.2 | 0.2 | 0.2 | $110.00 | $110.00 | 0.0 |
| 10/3/2023 | RK | $550.00 | Review memos re results of prior hearings; email to Ford counsel re stipulation re arbitrations Post-Ochoa | 0.2 | $110.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/3/2023 | RK | $550.00 | Legal research re transfer/remand cases from JCCP | 0.6 | $330.00 | 0.0 | 0.2 | 0.2 | 0.2 | USED UP | $110.00 | n/a | 0.0 |
| 10/5/2023 | RK | $550.00 | Begin draft of status report for 10/31/23 conference; review transcripts | 0.9 | $495.00 | 0.0 | 0.3 | 0.3 | 0.3 | USED UP | $165.00 | n/a | 0.0 |
| 10/8/2023 | RK | $550.00 | Receive responsive email from opposing counsel re "repurchase" proposal, respond to emails | 0.1 | $55.00 | 0.0 | 0.0 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/19/2023 | JWC | $495.00 | Meet and confer on discovery and depositions | 0.3 | $148.50 | 0.0 | 0.1 | 0.1 | USED UP | 0.1 | n/a | $49.50 | 0.0 |
| 10/19/2023 | RH | $550.00 | Review case files/master case lists re written discovery; draft common RFAs; confer with JC, RK, et al re same | 3.7 | $2,035.00 | 0.0 | 0.5 | 0.5 | 0.5 | 0.5 | $275.00 | $275.00 | 1.7 |
| 10/23/2023 | RH | $550.00 | Confer with discovery teams & staff re SDTs for records in IDP cases | 1.2 | $660.00 | 0.0 | 0.4 | 0.4 | USED UP | 0.4 | n/a | $220.00 | 0.0 |
| 10/24/2023 | RK | $550.00 | Respond to email from opposing counsel re stipulation re arbitration | 0.2 | $110.00 | 0.0 | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 10/24/2023 | RK | $550.00 | Respond to email from opposing counsel re repurchase of all vehicles | 0.4 | $220.00 | 0.0 | 0.1 | 0.1 | 0.1 | 0.1 | $55.00 | $55.00 | 0.0 |
| 10/24/2023 | RK | $550.00 | Draft Status Report for 10.31 Status Conference, confer with J. Cutler and make revisions | 0.7 | $385.00 | 0.0 | 0.2 | 0.2 | 0.3 | USED UP | $165.00 | n/a | 0.0 |
| 10/25/2023 | RH | $550.00 | Prepare for and attend meeting with RK, JC re drafting discovery to FMC in IDP cases | 3.5 | $1,925.00 | 0.0 | 0.5 | 0.5 | 0.5 | 0.5 | $275.00 | $275.00 | 1.5 |
| 10/26/2023 | JWC | $495.00 | Meet and confer on depositions and document productions | 0.4 | $198.00 | 0.0 | 0.1 | 0.1 | 0.1 | 0.1 | $49.50 | $49.50 | 0.0 |
| 10/31/2023 | RK | $550.00 | JCCP South Global Status Conference + Travel Time | 3.9 | $2,145.00 | 0.0 | 0.5 | 0.5 | 0.5 | 0.5 | $275.00 | $275.00 | 1.9 |
| 11/1/2023 | RK | $550.00 | Review Court's Order re new NTG | 0.1 | $55.00 | 0.0 | 0.1 | 0.0 | USED UP | USED UP | n/a | n/a | 0.0 |
| 11/16/2023 | RH | $550.00 | Draft Set Two discovery sets | 0.9 | $495.00 | n/a | 0.3 | 0.3 | USED UP | 0.3 | n/a | $165.00 | 0.0 |
| 11/17/2023 | RH | $550.00 | Prepare Set Two discovery sets for NTG cases | 1.3 | $715.00 | n/a | 0.4 | 0.4 | 0.4 | USED UP | $220.00 | n/a | 0.1 |
| 12/4/2023 | RH | $550.00 | Communication with ILS re status of repository | 0.2 | $110.00 | n/a | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |



Case 2:22-cv-04125-AB-PVC Document 39-4 Filed 07/30/25 Page 170 of 176 Page ID #:3422

Case 2:25-cv-04250-AB-MAR Document 39-1 Filed 07/30/25 Page 130 of 197 Page ID #:3330 (overlapping stamp)

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/4/2023 | RH | $550.00 | Legal research re deposition/testimony limitations and circulate research to partners | 0.6 | $330.00 | n/a | 0.2 | 0.2 | USED UP | 0.2 | n/a | $110.00 | 0.0 |
| 12/13/2023 | RH | $550.00 | Prepare for and attend meeting with RK, JC, AL re next steps and status of JCCP | 0.3 | $165.00 | n/a | 0.1 | 0.1 | USED UP | 0.1 | n/a | $55.00 | 0.0 |
| 12/18/2023 | RH | $550.00 | Review pending active cases for NTG selections | 3.0 | $1,650.00 | n/a | 0.6 | 0.6 | 0.6 | 0.6 | $330.00 | $330.00 | 0.6 |
| 12/18/2023 | RH | $550.00 | Review orders and research re arbitration denial and automatic stay pending appeal; videoconference meeting with FMC counsel re arbitration stay and next steps for status conference | 0.9 | $495.00 | n/a | 0.3 | 0.3 | USED UP | 0.3 | n/a | $165.00 | 0.0 |
| 12/18/2023 | RH | $550.00 | Review MTC FMC depos | 0.3 | $165.00 | n/a | 0.1 | 0.1 | 0.1 | USED UP | $55.00 | n/a | 0.0 |
| 12/18/2023 | RH | $550.00 | Review Discovery, PMQ deposition notices and scheduling | 1.3 | $715.00 | n/a | 0.4 | 0.4 | 0.4 | USED UP | $220.00 | n/a | 0.1 |
| 12/20/2023 | RK | $550.00 | Conference with R. Higgins re discuss next NTG selections | 0.3 | $165.00 | n/a | 0.1 | 0.1 | USED UP | 0.1 | n/a | $55.00 | 0.0 |
| 12/21/2023 | RK | $550.00 | Review R. Higgins notes of JCCP cases; review and identify cases for next NTG cases; review R. Higgins selections; draft email to R. Higgins re analysis and observations | 1.7 | $935.00 | n/a | 0.3 | 0.3 | 0.3 | 0.3 | $165.00 | $165.00 | 0.5 |
| 12/26/2023 | RH | $550.00 | Evaluate NTG case selections | 3.0 | $1,650.00 | n/a | 0.6 | 0.6 | 0.6 | 0.6 | $330.00 | $330.00 | 0.6 |
| 12/26/2023 | RK | $550.00 | Conference with R. Higgins re discuss choices for NTG 2-5 | 0.6 | $330.00 | n/a | 0.2 | 0.2 | 0.2 | USED UP | $110.00 | n/a | 0.0 |
| 12/28/2023 | RK | $550.00 | Receive email from R. Higgins re assessment of Ford's picks for NTG 2-5; review Ford's proposed status conference statement; review chart of Knight selections; draft email to R. Higgins | 0.4 | $220.00 | n/a | 0.1 | 0.1 | 0.1 | 0.1 | $55.00 | $55.00 | 0.0 |
| 12/29/2023 | RK | $550.00 | Review and redline R. Higgins' draft of Status Report re NTG cases; email to R. Higgins | 0.3 | $165.00 | n/a | 0.1 | 0.1 | 0.1 | USED UP | $55.00 | n/a | 0.0 |
| 12/29/2023 | RK | $550.00 | Zoom conference with R. Higgins re NTG selection reorganization | 0.4 | $220.00 | n/a | 0.1 | 0.1 | 0.1 | 0.1 | $55.00 | $55.00 | 0.0 |
| 12/29/2023 | RK | $550.00 | Call with P. Shahian from SLP re NTG selections | 0.2 | $110.00 | n/a | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 12/29/2023 | RK | $550.00 | Call with R. Higgins re finalizing Status Report and NTG selections | 0.3 | $165.00 | n/a | 0.1 | 0.1 | USED UP | 0.1 | n/a | $55.00 | 0.0 |
| 1/2/2024 | RK | $550.00 | Receive CaseAnywhere notice re Ford's Petition for 43rd Add-On; review internal case docket to ascertain whether Knight Law case | 0.1 | $55.00 | n/a | 0.0 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 1/5/2024 | RK | $550.00 | Review and respond to emails, call with staff re JCCP cases re RFDs | 1.5 | $825.00 | n/a | 0.5 | 0.5 | USED UP | 0.5 | n/a | $275.00 | 0.0 |

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/10/2024 | RK | $550.00 | Attend Further Status Conference (re new NTG cases), including travel to and from court | 3.2 | $1,760.00 | n/a | 0.4 | 0.4 | 0.4 | 0.4 | $220.00 | $220.00 | 1.6 |
| 1/17/2024 | RH | $550.00 | Communication with defendant's counsel and with staff re depositions of FMC | 0.7 | $385.00 | n/a | 0.2 | 0.2 | 0.3 | USED UP | $165.00 | n/a | 0.0 |
| 1/17/2024 | RH | $550.00 | Evaluate court order setting trial schedules for all remaining cases, and memoranda to files re calendaring and next steps | 1.2 | $660.00 | n/a | 0.4 | 0.4 | 0.4 | USED UP | $220.00 | n/a | 0.0 |
| 1/18/2024 | RH | $550.00 | Review MIL filings and confer with partners re same, local/chambers rules, etc. | 0.3 | $165.00 | n/a | 0.1 | 0.1 | USED UP | 0.1 | n/a | $55.00 | 0.0 |
| 1/26/2024 | RK | $550.00 | Review outline, revise to prepare for oral argument | 0.4 | $220.00 | n/a | 0.1 | 0.1 | 0.1 | 0.1 | $55.00 | $55.00 | 0.0 |
| 2/20/2024 | RK | $550.00 | Attend continued Final Status Conference, arrive early to review rulings and prepare for arguments on MILs, confer with J. Cutler re assessment of previous settlement offers | 3.8 | $2,090.00 | n/a | 0.5 | 0.5 | 0.5 | 0.5 | $275.00 | $275.00 | 1.8 |
| 2/21/2024 | RK | $550.00 | Draft memo to file re Ford's ex parte to bifurcate trial and results of both FSC hearings | 1.6 | $880.00 | n/a | 0.3 | 0.3 | 0.3 | 0.3 | $165.00 | $165.00 | 0.4 |
| 2/23/2024 | RK | $550.00 | Conference call with C. Swanson and appeallate counsel re procedure and issues re stipulated judgment | 0.4 | $220.00 | n/a | 0.1 | 0.1 | 0.1 | 0.1 | $55.00 | $55.00 | 0.0 |
| 2/23/2024 | RK | $550.00 | Review 998 offers and revise internal calculations, call with C. Swanson re trial vs. stipulated judgment | 0.4 | $220.00 | n/a | 0.1 | 0.1 | 0.1 | 0.1 | $55.00 | $55.00 | 0.0 |
| 2/23/2024 | RK | $550.00 | Email to opposing counsel re settlement of cases | 0.1 | $55.00 | n/a | 0.1 | 0.0 | USED UP | USED UP | n/a | n/a | 0.0 |
| 2/26/2024 | RK | $550.00 | Review draft stipulated judgment proposed by Ford in preparation for call with opposing counsel | 0.1 | $55.00 | n/a | 0.0 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 2/27/2024 | RH | $550.00 | Review orders and prior update letters; update letters for clients in various trial groups and confer with partners and DR re same | 1.5 | $825.00 | n/a | 0.5 | 0.5 | 0.5 | USED UP | $275.00 | n/a | 0.0 |
| 2/29/2024 | RH | $550.00 | Confer with DR, RK re update letters to all trial groups | 0.2 | $110.00 | n/a | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 3/1/2024 | RH | $550.00 | Confer with DR re client update letters | 0.2 | $110.00 | n/a | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 3/6/2024 | RH | $550.00 | Meeting with DR; prepare all update letters for trial groups | 1.0 | $550.00 | n/a | 0.3 | 0.3 | USED UP | 0.4 | n/a | $220.00 | 0.0 |
| 3/12/2024 | RH | $550.00 | Confer with DR re status/finalization of NTG status letters | 0.2 | $110.00 | n/a | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |



Case 2:23-cv-04135-AB-MAR Document 39-4 Filed 07/30/25 Page 19 of 23 Page ID #:3234

| Date | Attorney | Rate | Task | Time | FEE | Faulkner Time Requested | Mota 9/10/20 - 3/26/24 | Ortiz 8/6/21 - 3/26/24 | Daggett 12/12/18 - 6/12/24 | O'Brien 12/12/18 - 6/12/24 | Daggett Total | O'Brien Total | Total Remaining Billable Time |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/12/2024 | RH | $550.00 | Review and evaluate 44th Add On Petition | 0.2 | $110.00 | n/a | 0.1 | 0.1 | USED UP | USED UP | n/a | n/a | 0.0 |
| 3/27/2024 | RH | $550.00 | Confer with J. Cutler re Set Two written disco sets | 0.2 | $110.00 | n/a | n/a | n/a | 0.1 | 0.1 | $55.00 | $55.00 | 0.0 |
| 3/28/2024 | RH | $550.00 | Confer with J. Cutler re written discovery | 0.6 | $330.00 | n/a | n/a | n/a | 0.2 | 0.2 | $110.00 | $110.00 | 0.2 |
| 4/8/2024 | RH | $550.00 | Confer with J. Cutler re NOD | 0.2 | $110.00 | n/a | n/a | n/a | 0.1 | 0.1 | $55.00 | $55.00 | 0.0 |
| 4/18/2024 | RH | $550.00 | Meeting with staff re discovery status/responses/requests | 1.0 | $550.00 | n/a | n/a | n/a | 0.3 | 0.3 | $165.00 | $165.00 | 0.4 |
| 4/24/2024 | RH | $550.00 | Evaluation/strategy for claim dismissal; discovery status and related issues | 1.0 | $550.00 | n/a | n/a | n/a | 0.3 | 0.3 | $165.00 | $165.00 | 0.4 |
| 4/24/2024 | RH | $550.00 | Review and respond to client requests for updates/status | 0.2 | $110.00 | n/a | n/a | n/a | 0.1 | 0.1 | $55.00 | $55.00 | 0.0 |
| 4/25/2024 | RK | $550.00 | Review Ford inventory numbers in preparation of call with A. Maclear re settlement | 0.5 | $275.00 | n/a | n/a | n/a | 0.1 | 0.1 | $55.00 | $55.00 | 0.3 |
| 4/30/2024 | RH | $550.00 | Exchange emails with opposing counsel re discovery deadlines (8 cases NTG2) | 0.1 | $55.00 | n/a | n/a | n/a | 0.1 | 0.0 | $55.00 | $0.00 | 0.0 |
| 5/2/2024 | RH | $550.00 | Draft NOD for PMQ; confer with J. Cutler and staff re same | 1.2 | $660.00 | n/a | n/a | n/a | 0.4 | 0.4 | $220.00 | $220.00 | 0.4 |
| 5/6/2024 | RH | $550.00 | Confer with JC, MM, AM, LS re case list and claim dismissal | 0.4 | $220.00 | n/a | n/a | n/a | 0.1 | 0.1 | $55.00 | $55.00 | 0.2 |
| 5/8/2024 | RH | $550.00 | Assist DR with preparation of discovery responses | 1.2 | $660.00 | n/a | n/a | n/a | 0.4 | 0.4 | $220.00 | $220.00 | 0.4 |
| 5/13/2024 | RH | $550.00 | Confer with DR, EK re discovery and legal issues for JCCP | 0.2 | $110.00 | n/a | n/a | n/a | 0.1 | 0.1 | $55.00 | $55.00 | 0.0 |
| 5/14/2024 | RH | $550.00 | Confer with DR, EK re status of discovery and application of Code | 0.6 | $330.00 | n/a | n/a | n/a | 0.2 | 0.2 | $110.00 | $110.00 | 0.2 |
| 5/21/2024 | RH | $550.00 | Confer with attorneys and staff re handling PMQ nonappearances | 0.2 | $110.00 | n/a | n/a | n/a | 0.1 | 0.1 | $55.00 | $55.00 | 0.0 |
| | | | Total Attorney Fees | 1415.8 | $524,519.00 | | | | | | $57,760.00 | $57,739.50 | |

**Billing Rate Summary**

| Initials | Avg/Hr | Attorney/Staff | Hours | Amount |
|---|---|---|---|---|
| ALM | $350.00 | Amy Morse | 62.2 | $21,770.00 |
| ALM | $450.00 | Amy Morse | 0.8 | $360.00 |
| AZ | $175.00 | Angelica Zamudio | 0.6 | $105.00 |
| CS | $425.00 | Christopher Swanson | 0.6 | $255.00 |
| CS | $450.00 | Christopher Swanson | 0.5 | $225.00 |
| DK | $250.00 | Daniel Kalinowski | 3.6 | $900.00 |

| | | | | |
|---|---|---|---|---|
| DK | $350.00 | Daniel Kalinowski | 17.3 | $6,055.00 |
| DK | $400.00 | Daniel Kalinowski | 9.4 | $3,760.00 |
| GM | $425.00 | Greg Mohrman | 1.0 | $425.00 |
| JKM | $400.00 | Jeffery Mukai | 1.3 | $520.00 |
| JWC | $450.00 | Jacob Cutler | 32.7 | $14,715.00 |
| JWC | $495.00 | Jacob Cutler | 18.8 | $9,306.00 |
| KSC | $375.00 | Kristina Stephenson-Cheang | 1.0 | $375.00 |
| LAU | $425.00 | Lauren Ungs | 82.3 | $34,977.50 |
| MC | $300.00 | Maite Colon | 8.8 | $2,640.00 |
| MC | $345.00 | Maite Colon | 13.9 | $4,795.50 |
| MC | $425.00 | Maite Colon | 0.9 | $382.50 |
| MER | $325.00 | Mitch Rosensweig | 1.6 | $520.00 |
| NF | $250.00 | Natalee Fisher | 1.2 | $300.00 |
| RH | $450.00 | Russell Higgins | 446.3 | $200,835.00 |
| RH | $550.00 | Russell Higgins | 42.9 | $23,595.00 |
| RK | $425.00 | Roger Kirnos | 22.3 | $9,477.50 |
| RK | $450.00 | Roger Kirnos | 11.4 | $5,130.00 |
| RK | $500.00 | Roger Kirnos | 43.2 | $21,600.00 |
| RK | $550.00 | Roger Kirnos | 41.5 | $22,825.00 |
| SS | $225.00 | Sundeep Samra | 76.0 | $17,100.00 |
| SW | $595.00 | Scot Wilson | 1.0 | $595.00 |
| TB | $225.00 | Thomas Burns | 21.5 | $4,837.50 |
| ZP | $250.00 | Zachary Powell | 424.5 | $106,125.00 |
| ZP | $375.00 | Zachary Powell | 26.7 | $10,012.50 |

**Daggett v. Ford** **Billing Rate Summary**

| Initials | Avg/Hr | Attorney/Staff | Hours | Amount |
|---|---|---|---|---|
| ALM | $350.00 | Amy Morse | 1.1 | $385.00 |
| ALM | $450.00 | Amy Morse | 0.1 | $45.00 |
| AZ | $175.00 | Angelica Zamudio | | $0.00 |
| CS | $425.00 | Christopher Swanson | | $0.00 |
| CS | $450.00 | Christopher Swanson | | $0.00 |
| DK | $250.00 | Daniel Kalinowski | 0.5 | $125.00 |
| DK | $350.00 | Daniel Kalinowski | 2.0 | $700.00 |
| DK | $400.00 | Daniel Kalinowski | 0.9 | $360.00 |
| GM | $425.00 | Greg Mohrman | | $0.00 |

Case 2:25-cv-04125-AB-MAR Document 30-4 Filed 07/30/25 Page 220 of 546 Page ID #:1332

| | | | | |
|---|---|---|---|---|
| JKM | $400.00 | Jeffery Mukai | | $0.00 |
| JWC | $450.00 | Jacob Cutler | 1.0 | $450.00 |
| JWC | $495.00 | Jacob Cutler | 2.7 | $1,336.50 |
| KSC | $375.00 | Kristina Stephenson-Cheang | | $0.00 |
| LAU | $425.00 | Lauren Ungs | 12.2 | $5,185.00 |
| MC | $300.00 | Maite Colon | 0.7 | $210.00 |
| MC | $345.00 | Maite Colon | 2.3 | $793.50 |
| MC | $425.00 | Maite Colon | 0.1 | $42.50 |
| MER | $325.00 | Mitch Rosensweig | | $0.00 |
| NF | $250.00 | Natalee Fisher | 0.3 | $75.00 |
| RH | $450.00 | Russell Higgins | 27.9 | $12,555.00 |
| RH | $550.00 | Russell Higgins | 7.8 | $4,290.00 |
| RK | $425.00 | Roger Kirnos | 5.2 | $2,210.00 |
| RK | $450.00 | Roger Kirnos | 1.9 | $855.00 |
| RK | $500.00 | Roger Kirnos | 3.8 | $1,900.00 |
| RK | $550.00 | Roger Kirnos | 5.7 | $3,135.00 |
| SS | $225.00 | Sundeep Samra | 13.2 | $2,970.00 |
| SW | $595.00 | Scot Wilson | | $0.00 |
| TB | $225.00 | Thomas Burns | | $0.00 |
| ZP | $250.00 | Zachary Powell | 74.1 | $18,525.00 |
| ZP | $375.00 | Zachary Powell | 4.3 | $1,612.50 |
| | | | | **$57,760.00** |

**O'Brien v. Ford** **Billing Rate Summary**

| Initials | Avg/Hr | Attorney/Staff | Hours | Amount |
|---|---|---|---|---|
| ALM | $350.00 | Amy Morse | 1.1 | $385.00 |
| ALM | $450.00 | Amy Morse | 0.2 | $90.00 |
| AZ | $175.00 | Angelica Zamudio | | $0.00 |
| CS | $425.00 | Christopher Swanson | | $0.00 |
| CS | $450.00 | Christopher Swanson | | $0.00 |
| DK | $250.00 | Daniel Kalinowski | 0.5 | $125.00 |
| DK | $350.00 | Daniel Kalinowski | 1.5 | $525.00 |
| DK | $400.00 | Daniel Kalinowski | 0.7 | $280.00 |
| GM | $425.00 | Greg Mohrman | | $0.00 |
| JKM | $400.00 | Jeffery Mukai | | $0.00 |
| JWC | $450.00 | Jacob Cutler | 0.8 | $360.00 |
| JWC | $495.00 | Jacob Cutler | 2.8 | $1,386.00 |

| | | | | |
|---|---|---|---|---|
| KSC | $375.00 | Kristina Stephenson-Cheang | | $0.00 |
| LAU | $425.00 | Lauren Ungs | 12.6 | $5,355.00 |
| MC | $300.00 | Maite Colon | 0.7 | $210.00 |
| MC | $345.00 | Maite Colon | 2.3 | $793.50 |
| MC | $425.00 | Maite Colon | 0.1 | $42.50 |
| MER | $325.00 | Mitch Rosensweig | | $0.00 |
| NF | $250.00 | Natalee Fisher | 0.3 | $75.00 |
| RH | $450.00 | Russell Higgins | 27.9 | $12,555.00 |
| RH | $550.00 | Russell Higgins | 7.9 | $4,345.00 |
| RK | $425.00 | Roger Kirnos | 5.2 | $2,210.00 |
| RK | $450.00 | Roger Kirnos | 1.6 | $720.00 |
| RK | $500.00 | Roger Kirnos | 4.6 | $2,300.00 |
| RK | $550.00 | Roger Kirnos | 5.4 | $2,970.00 |
| SS | $225.00 | Sundeep Samra | 13.0 | $2,925.00 |
| SW | $595.00 | Scot Wilson | | $0.00 |
| TB | $225.00 | Thomas Burns | | $0.00 |
| ZP | $250.00 | Zachary Powell | 73.9 | $18,475.00 |
| ZP | $375.00 | Zachary Powell | 4.3 | $1,612.50 |
| | | | | **$57,739.50** |

# EXHIBIT 5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-04550-MWC-PVC Date: March 10, 2026

Title: Ford Motor Company v. Steve B. Mikhov *et al.*

Present: The Honorable Michelle Williams Court, United States District Judge

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings: (IN CHAMBERS) Order GRANTING Defendants' Motion to Dismiss WITHOUT LEAVE TO AMEND (Dkt. [160]) JS-6**

Before the Court is a motion filed by Defendants Steve B. Mikhov, Amy Morse, and Roger Kirnos (collectively, "Defendants") to dismiss Plaintiff Ford Motor Company's ("Plaintiff") Second Amended Complaint ("SAC"). *See* Dkt. # 160 ("*MTD*"). Plaintiff opposed, *see* Dkt. # 161 ("*Opp.*"), and Defendants replied, *see* Dkt. # 164 ("*Reply*"). On March 6, 2026, the Court heard oral argument on the motions. After considering the papers and the parties' oral arguments, the Court **GRANTS** Defendants' motion to dismiss **WITHOUT LEAVE TO AMEND**.

I. Background

A. Factual Background

This case arises out of allegedly inflated billing statements in "Lemon Law" cases. *See* Dkt. # 157 ("*SAC*"). The SAC alleges as follows:

Mr. Mikhov is a founding partner and former managing partner of Knight Law Group. *Id.* ¶ 20. Mr. Mikhov was the "ringleader" of Defendants' activities, responsible for creating Knight Law Group's "Fee Motion Department" and the practices that department used, which included billing time for work not performed or contemporaneously billed. *See id.* Mr. Mikhov's responsibilities at Knight Law Group included marketing activities, client intake, and approval of settlements. *Id.* Though Mr. Mikhov claims to have separated from Knight Law Group several years ago, Mr. Mikhov

"has maintained his role working with other Defendants" on the activities alleged and continues to profit from those activities. *See id.* Ms. Morse is a partner at Knight Law Group who supervises the firm's litigation department. *Id.* ¶ 21. Ms. Morse testified that she rarely performed many of the billable tasks for which she later requested compensation, so Plaintiff concludes that Ms. Morse must have known that many of the time entries submitted in her name were false. *Id.* Mr. Kirnos is a partner at Knight Law Group, who also participated in the activities that Plaintiff alleges. *Id.* ¶ 22.

Knight Law Group was "an enterprise." *See id.* ¶ 23. Defendants and other attorneys and employees worked in tandem to conduct Knight Law Group's operations, "including by creating fictitious time sheets that misrepresent tasks completed and the amount of time spent on cases, and regularly split the proceeds unlawfully obtained by relying on these false and fraudulent billing records to obtain fee awards." *See id.* Defendants provided direction to others at Knight Law Group, including members of the Fee Motion Department. *Id.* The Fee Motion Department created "time records in which they falsely add[ed] fictious tasks, assign[ed] the amounts to be billed to the fictitious task, and [chose] a billing attorney to whom the fictitious task [would] be attributed." *See id.* Those records supported fee demands and applications. *See id.*

California's Lemon Law, the Song-Beverly Consumer Warranty Act, Civil Code § 1790 *et seq.*, allows prevailing attorneys to recover fees and expenses from defendants, provided that the prevailing attorneys submit fee applications reflecting the work they performed on the case and support those applications with timesheets and other billing records. *Id.* ¶ 26; *see* Cal. Civ. Code § 1794(d). Those fee applications are necessary only if the parties do not reach a settlement. *See id.* ¶ 26. From 2015 through the present, Defendants submitted fake time records to support their fee applications, on which Plaintiff and courts relied, in addition to making inflated demands for payment from Plaintiff to extract settlements. *Id.* ¶¶ 27, 30. As a result of Plaintiff's reliance on those records, Plaintiff wrongfully paid more than $100 million to Defendants. *Id.* ¶ 28. Through its limited preliminary discovery in this action, Plaintiff learned that members of Knight Law Group testified that the firm's attorneys frequently did not record time contemporaneously. *Id.* ¶ 31. Instead, Defendants "oversaw a process by which the purported time entries . . . were generated by non-lawyer members of a dedicated Fee Motion Department after the fact—often years after the purported work in question—to support [the firm's] fee demands against Ford and other auto manufacturers." *Id.* Knight Law Group admitted that it did not begin keeping contemporaneous time records until 2018. *Id.*

In various depositions, Plaintiff learned about Defendants' billing practices. *See id.* ¶ 32. Mr. Kirnos, "who testified that his duties as partner included 'supervising and addressing matters involving settlement of cases [and] fee motion[s],' claimed he did not know whether attorneys contemporaneously entered their time." *Id.* ¶ 33. Ms. Morse "testified that 'a lot of what [she did was] on the administrative end of things, and [] would not be billed to a case,'" but Plaintiff found that "she billed unnatural and sometimes impossible amounts" on certain cases. *See id.* ¶ 34. Mr. Mikhov testified that "he would only record his time spent working on cases 'from time to time' and in a 'hodgepodge' fashion, and that he would 'recreate' 'what [time he could] remember' sometimes a month or two after he would have done the purported task." *Id.* ¶ 35. After doing so, Mr. Mikhov would provide a piece of paper with that time to Mr. Kirnos "or Guadalupe Lopez, a non-lawyer employee of Knight Law Group who worked in the Fee Motion Department, to enter into fee motions." *See id.* Mr. Mikhov "also testified that 'the fee motion department . . . ha[d] authority to enter time for various tasks for [Mr. Mikhov] absent [Mr. Mikhov] handing them a written sheet or Mr. Kirnos handing them a written sheet' with purported time entries." *See id.*

Another Knight Law Group employee, Elin Howard, provided testimony that members of the Fee Motion Department were "divided by role into 'drafters,' 'reviewers,' and 'finalizers'" and tasked with "'prepar[ing] to file the motion for attorney's fees and costs after a case had settled,' and to that end would 'review attorney time billing.'" *See id.* ¶ 36. "Members of the team would review attorney tasks that [Knight Law Group] attorneys had input into [the firm's] billing software to compile an invoice in a new, separate document for filing a fee petition." *See id.* Ms. Howard stated that where information as to time allocation was insufficient, the firm permitted team members to "'input an attorney task and identify a particular set of hours for that attorney.'" *See id.* Ms. Howard estimated that "'on a regular basis'" and "for '[m]ore than 50 percent' of case files she handled," she would input an estimate in support of Knight Law Group's fee petitions as to how long an attorney spent on a task. *See id.* Though the firm provided guidelines to determine the amounts that employees should add for specified tasks, Ms. Howard eventually "began to 'rely on [her] experience' and 'history with the company' to 'set a certain amount of time' for a particular task." *Id.* For example, Ms. Howard would input one hour for "'Initial communication with client,' nine-tenths of an hour for 'Analyze vehicle documentation,' and half an hour for 'Draft Complaint,'" though Ms. Howard did not confirm the accuracy of those entries with the relevant attorneys. *See id.*

Case 2:25-cv-04501-AB-MAR Document 147-1 Filed 03/12/26 Page 1065 of 1097 Page ID #:4249

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-04550-MWC-PVC Date: March 10, 2026

Title: Ford Motor Company v. Steve B. Mikhov *et al.*

Mr. Mikhov stated that the Fee Motion Department had authority to enter time for various tasks for him even if he did not hand them a "written sheet," and Mr. Kirnos had testified that his responsibilities included supervising the preparation of fee motions. *See id.* ¶ 37. Defendants all received payment for their work at Knight Law Group. *See id.* ¶ 39. Defendants also intended that Plaintiff rely on the records that the Fee Motion Department created when paying fee awards and negotiating settlements. *Id.* ¶ 41.

Plaintiff has reviewed thousands of Knight Law Group's billing invoices and time records between 2013 and 2024, which Plaintiff believes represent roughly 11–12% of all consumer warranty cases that Defendants worked during that time. *Id.* ¶ 42. Plaintiff has identified various indications that Defendants' billing records were false. *Id.* Ms. Morse testified under oath that since becoming a "supervising attorney" at Knight Law Group in 2016, she has not propounded written discovery, drafted motions, or directly communicated with clients. *Id.* ¶ 44. But Knight Law Group's billing statements "include many hundreds of entries for [Ms.] Morse that purport to attribute her time for performing these very tasks during this period, including frequent entries for communicating with clients and opposing counsel and hundreds of entries claiming to have drafted written discovery and complaints." *Id.* Despite those admissions, Ms. Howard noted that she reviewed attorney billing statements as recently as 2021 stating that Ms. Morse prepared complaints and drafted discovery. *See id.* ¶ 45.

Individual attorneys, including Mr. Kirnos and Ms. Morse, worked more than 24 billable hours in a day several times. *Id.* ¶ 46. Those attorneys also worked more than 20 billable hours in a day on several occasions. *Id.* Ms. Morse worked more than 24 hours in a day on 34 separate occasions. *Id.* ¶ 47. One of those days, November 30, 2016, shows Ms. Morse as having worked 57.5 hours, and another day, March 23, 2017, indicates that Ms. Morse worked 31.3 hours. *Id.* Time entries also represent that Ms. Morse worked between 20 and 23.9 hours in a day 38 different times. *Id.* Between February and April 2017, Ms. Morse averaged 16.5 hours of work per day (including weekends). *Id.* In 2016, Plaintiff can identify that Ms. Morse billed 3,106.45 hours, and that Ms. Morse billed 3,975.4 hours in 2017. *Id.* ¶ 48. Ms. Morse has testified that since 2016 she worked 60 hours per week and dedicated at least 70% of her time to non-billable administrative and supervisory work. *Id.* Ms. Morse was the billing attorney on 95% of the cases that Plaintiff has reviewed, and she was the billing attorney on 92% of the entries with the description "Draft Complaint," even though Ms. Morse testified that she spent little time drafting legal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-04550-MWC-PVC Date: March 10, 2026

Title: Ford Motor Company v. Steve B. Mikhov *et al.*

documents. *Id.* ¶ 50. Between 2016 and 2024, billing records show more than 4,600 distinct entries with the description "Communicate with Client," though Ms. Morse testified that she never billed or recorded time for client communications. *Id.* Kristina Stephenson-Cheang, an associate with Knight Law Group, is shown to have worked more than 24 hours on seven different occasions. *Id.* ¶ 51. Ms. Stephenson-Cheang was the billing attorney on 90% of the cases that Plaintiff has reviewed. *Id.*

Plaintiff includes compilations of questionable entries. *See id.* ¶¶ 53–54. Exhibit A "is a chart of 489 task descriptions in which an attorney billed to draft a meet-and-confer letter and perform unspecified legal research." *Id.* ¶ 53. Plaintiff avers that "[t]here is no plausible reason why those two separate tasks should so frequently be combined other than to mask the time actually spent on the two tasks." *Id.* Many of the entries in Exhibit A overlap with the 24-plus hour days previously referenced. *Id.*; *see* Dkt. # 157-1. Plaintiff identifies that "many letters were drafted without any economy of scale reduction in time allotments." *See id.* ¶ 53. Exhibit B is a chart detailing entries for drafting Requests for Admissions, and Plaintiff here too highlights that "there are no economies of scale over time . . . ." *See id.* ¶ 54. Knight Law Group has relied on entries of this kind to obtain payments from Plaintiff, including as recently as August 2025. *See id.* ¶ 55.

Moreover, Mr. Mikhov has submitted hundreds of invoices that contain fee entries with no date. *Id.* ¶ 56. "Such no-date entries exceed 1,200 hours," and "[n]early all entries are a combination of (i) initial communication with client, (ii) initial evaluation of client's claims, and (iii) analysis of vehicle documents," which "describe identical tasks with only slight wording differences." *Id.* In 2016, Mr. Mikhov was Knight Law Group's second-highest biller, with a total of 1,350.10 hours in just the cases for which Plaintiff has invoices. *Id.* ¶ 57. From 2016 to 2025, Mr. Mikhov had 487 separate time entries for "Initial communications with client and evaluation of clients' claims," which totaled approximately 518.6 hours. *Id.* ¶ 58. 388 of those entries were for either exactly 1.0 hours or 0.8 hours. *Id.* Over the same period, Mr. Mikhov "made vague entries for 'analyze vehicle documentation' on all or nearly all of the matters in which Ms. Morse" billed for "Draft Complaint." *Id.* In 2017, Plaintiff has access to records showing that Mr. Mikhov logged 1,799 hours. *Id.* And on July 31, 2017, Mr. Mikhov billed a total of 18.1 hours based on 84 separate entries in 59 separate cases. *Id.* Defendants' actions extended to the settlement process, causing Plaintiff to overpay "not just for attorney's fees, but for compensatory damages and civil penalties as well . . . ." *Id.* ¶ 61. Large fee requests also

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-04550-MWC-PVC Date: March 10, 2026

Title: Ford Motor Company v. Steve B. Mikhov *et al.*

"disincentivize auto manufacturers from proceeding to fee hearings—where auto manufacturers end up paying both sides to fight over how much more to pay . . . ." *See id.*

Plaintiff could not have identified such billing inaccuracies when reviewing matters in isolation. *Id.* ¶ 62. Courts would have provided smaller fee awards to Defendants, and Plaintiff would not have settled fee claims had it known of Defendants' billing irregularities. *Id.* Mr. Kirnos stated in *Pedante v. Ford Motor Company et al.* (ML 18-02814-AB) that "[t]here is a presumption attached to our billing because there is a presumption that we are going to be ethical, that we are not going to submit lies to this Court. And we did not." *Id.* ¶ 63. Still, Mr. Kirnos represented that Knight Law Group had kept billing records contemporaneously even though it had not done so. *Id.*

In certain cases, courts reduced Defendants' fee requests. For *In re Volkswagen "Clean Diesel" Marketing, Sales Practice and Product Liability Litigation* (MDL No. 2672 CBR (JSC)), United States District Judge Charles R. Breyer reduced Defendants' requested attorneys' fees. *Id.* ¶ 64. Judge Breyer highlighted that the plaintiffs' attorneys worked a significant number of hours while the case was stayed. *Id.* Judge Breyer also "excluded bills for vague entries and clerical tasks, as well as work performed for other plaintiffs, not involved in the fee application, whose cases actually went forward to trial." *Id.* Separately, for instances when Defendants have received fee awards, their receipt has created "a snowball effect by leading to less scrutiny of their time records." *Id.* ¶ 65. Mr. Mikhov and Mr. Kirnos have signed declarations attaching previous fee awards and identifying various judges who had approved their fee applications, many of which are included as exhibits to the SAC. *Id.*

After Plaintiff filed this lawsuit, Knight Law Group altered its actions in certain cases. Shortly after Plaintiff filed this case, Knight Law Group submitted a supplemental billing invoice in *Solisperez v. Ford*, Los Angeles Superior Court Case No. 23PSCV01411, which removed time attributed to Ms. Morse. *Id.* ¶ 69. Since Plaintiff filed this lawsuit, Knight Law Group "has begun withdrawing requests for payment for time entries" attributed to Ms. Morse and other Knight Law Group attorneys. *Id.*

As part of cases comprising *In Re Ford Motor Co. DPS6 Powershift Transmission Products Liability Litigation*, No. 2:18-ml-02814 (C.D. Cal.) (collectively, the "DPS6 Cases"), Knight Law Group submitted multiple declarations that Plaintiff believes to constitute perjury. *See id.* ¶ 71. One of those cases was *Pedante*, where Mr. Mikhov

submitted numerous time entries and attested that "[a]ll time billing entries were completed contemporaneously with each dated entry or near in time to the work performed" and that he "personally reviewed the billing entries to ensure that they appropriately reflected the time expended." *See id.* Some of the time entries for Ms. Morse in that case listed "Communication with Client" and "Draft Complaint," although Ms. Morse testified that she did not conduct such tasks at the time of those entries (July 17). *See id.* For Mr. Mikhov, the billing entries reflected "one hour for 'Initial communication with Client; Analyze Vehicle documentation,'" along with other non-contemporaneous time records that the Fee Motion Department created. *See id.* The SAC highlights that these time entries comport with Ms. Howard's testimony. *See id.* The same billing and attestations were present in *Fort v. Ford Motor Company*, No. 2:17-cv-06631 (C.D. Cal.) and *Bagwell v. Ford Motor Company*, No. 2:17-cv-06632 (C.D. Cal.). *See id.* ¶ 72. In *Fort* and *Bagwell*, Mr. Kirnos submitted a declaration "attaching 'revised billing' to support a 'revised . . . fee request'" after Plaintiff opposed the fee request. *See id.* ¶ 73. Mr. Kirnos swore that the time sheets were "true and correct." *See id.* Across the two cases, Plaintiff agreed to pay Knight Law Group and associated firms a total of $146,978.48. *See id.*

Mr. Mikhov submitted a declaration attesting to the truth, contemporaneous nature, and personal review of timesheets in *Medina v. Ford Motor Company*, No. 2:29-cv-00078 (C.D. Cal.). *See id.* ¶ 74. Those timesheets included entries for Ms. Morse beginning in December 2018 showing "Communication with Client," "Draft Complaint" and "Draft [Notice of Deposition]," although Ms. Morse has testified that she did not perform those tasks during this period. *See id.* The entries also include line items from Mr. Mikhov showing one hour for "Initial communication with Clients and evaluation of Clients' claims." *See id.* Ultimately, Plaintiff paid Knight Law Group $30,000 for fees in that case.

In *O'Brien v. Ford Motor Company*, No. 2:24-cv-04969 (C.D. Cal.) and *Daggett v. Ford Motor Company, et al.*, No. 2:24-cv-04970 (C.D. Cal.), both of which were DPS6 cases, Mr. Kirnos submitted a sworn declaration attaching timesheets and attesting that "[a]ll time billing entries were completed contemporaneously with each dated entry or near in time to the work performed" and that he "personally reviewed the billing entries to ensure that they appropriately reflect the time expended." *See id.* ¶ 75; *see id.*, Exs. P, Q. Those applications included time entries for those specific payments, but also for work performed across all DPS6 cases. *See id.*, Exs. P, Q. This documentation included time entries for Ms. Morse beginning in July 2016 stating that she had attended numerous hearings. *See id.* ¶ 75. The applications also included time created or supplemented by

the Knight Law Group Fee Motion Department, and Plaintiff ultimately paid the firm and associated firms $73,600.58 in fees. *See id.*

Defendants used the U.S. mail and interstate wires to file fee applications, negotiate settlements, and receive payments for their billing records. *Id.* ¶ 77. These include the following cases:

- *Buck v. Ford Motor Company*, Stanislaus County Superior Court Case No. 2008745, where the court ordered Plaintiff to pay Defendants $135,500 based on records that Knight Law Group filed and which included entries by Ms. Morse for March 23, 2017, when she billed 31.3 hours.
- *Duk v. Ford Motor Company*, San Diego County Superior Court Case No. 2016-00012779, where the court ordered Plaintiff to pay Defendants $101,450.78 based on records that Knight Law Group filed and included entries by Ms. Morse for November 30, 2016, when she billed 57.5 hours.
- *Burgess v. Ford Motor Company*, San Bernardino County Superior Court Case No. CIVDS1620111, where Ms. Morse's billing records contributed to a $10,675.16 fee award that Plaintiff paid to Defendants.
- *Duenas v. Ford Motor Company*, Los Angeles County Superior Court Case No. BC638306, where Ms. Morse's billing records contributed to a $12,405.20 award that Plaintiff paid to Defendants.
- *Orosco v. Ford Motor Company*, Los Angeles County Superior Court Case No. BC638222, where Ms. Morse's billing records contributed to a $15,005 award that Plaintiff paid to Defendants.

*Id.* Knight Law Group also included Ms. Morse's billing records in cases against other auto manufacturers. *Id.* ¶ 77 n.1.

In *Berroteran v. Ford Motor Company*, Los Angeles County Superior Court Case No. BC542525, Mr. Kirnos submitted a declaration that Knight Law Group had recorded time contemporaneously or "near in time to the work performed," even though many of the entries predated when Knight Law Group began recording time contemporaneously. *Id.* ¶ 78. The court awarded $807,127.50 in attorneys' fees, and Plaintiff issued a $851,493.51 check to Knight Law Group. *Id.* And in *Coon v. Ford Motor Company*, Riverside County Superior Court Case No. MCC1300767, Mr. Mikhov submitted a declaration in support of Defendants' fee application representing that Defendants recorded

time contemporaneously, even though many of the time entries predated when Knight Law Group began doing so. *Id.* ¶ 79. The court awarded Knight Law Group $543,554 in attorneys' fees, and Plaintiff mailed a check for $709,004.12. *Id.* The same was true in *Brown v. Ford Motor Company*, Butte County Superior Court Case No. 160060, and *Margeson v. Ford Motor Company*, Los Angeles County Superior Court Case No. BC549430, where Plaintiff ultimately mailed checks for $843,528.13 and $481,744.53 (total), respectively. *Id.* ¶¶ 80–81. Mr. Mikhov did the same in *Anderson v. Ford Motor Company*, San Joaquin County Superior Court Case No. 39-2013-00299512-CU-BC-STK, and Plaintiff mailed a check for $813,554.48 to Plaintiff. *Id.* ¶ 82. In each case where Plaintiff paid Defendants' fee awards, Plaintiff sent checks via FedEx. *See id.* ¶¶ 77–82. Reliance on Defendants' representations has harmed Plaintiff both financially and reputationally. *See id.* ¶¶ 84–87.

As to the elements of a RICO claim, "Defendants and Unnamed Enterprise Members have associated with one another in the Enterprise for the common purpose of preparing and filing fraudulent billing records in support of fee demands, inflating the value of negotiated settlements, unethically splitting fraudulently obtained fees," and working in pursuit of the other harms that flow from falsified records. *Id.* ¶ 89. Mr. Mikhov, Mr. Kirnos, and Ms. Morse oversaw the firm's operations and directed employees to create the fee statements in question, and they were financially intertwined as partners at Knight Law Group. *Id.* ¶¶ 90–91. Defendants engaged in business "involving clients in different states, auto manufacturers engaged in interstate commerce, and the federal courts' interstate e-filing system." *Id.* ¶ 82.

B. Procedural Background

On May 21, 2025, Plaintiff filed its original complaint against Knight Law Group LLP, Steve B. Mikhov, Amy Morse, Roger Kirnos, Dorothy Becerra, The Altman Law Group, Bryan C. Altman, Wirtz Law APC, and Richard M. Wirtz. *See* Dkt. # 1. After the Defendants had filed motions to dismiss, *see* Dkts. # 61, 65, 66, but before the Court heard the motions, Plaintiff filed the First Amended Complaint ("FAC") on August 22, 2025. *See* Dkt. # 83 ("*FAC*"). On September 12, 2025, all listed defendants moved to dismiss the FAC. *See* Dkts. # 88, 89, 92. On November 24, 2025, the Court granted the motions to dismiss. *See* Dkt. # 147 ("*First MTD Order*"). On January 5, 2026, Plaintiff filed the SAC against only Mr. Mikhov, Ms. Morse, and Mr. Kirnos, pleading two causes of action:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-04550-MWC-PVC Date: March 10, 2026

Title: Ford Motor Company v. Steve B. Mikhov *et al.*

Civil RICO (under 18 U.S.C. § 1962(c)) and Civil RICO Conspiracy (under 18 U.S.C. § 1962(d)).

The Court assumes familiarity with its November 24, 2025, order dismissing Plaintiff's FAC and incorporates its analysis from that order herein. *See First MTD Order*.

II. Legal Standard

Rule 8 requires a complaint to clearly establish the claims and parties such that a defendant would have "no difficulty in responding to the claims with an answer and/or with a Rule 12(b)(6) motion to dismiss." *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131–32 (9th Cir. 2008). Pleadings that are "verbose, confusing and conclusory" are subject to dismissal. *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981). A plaintiff fails to comply with Rule 8 if "all defendants are lumped together in a single, broad allegation." *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing the adequacy of the complaint, the court must accept all pleaded facts as true and construe them in the light most favorable to the plaintiff. *See Turner v. City & Cnty. of S.F.*, 788 F.3d 1206, 1210 (9th Cir. 2015); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). The court then determines whether the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, a cause of action's elements that are "supported by mere conclusory statements[] do not suffice." *Id*. Accordingly, "for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To plead fraud with particularity, the pleader must state the false representations' time, place, and specific content. *See Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007). A pleader must "'identify

Case 2:25-cv-04550-MWC-PVC Document 47 Filed 03/10/26 Page 11 of 28 Page ID #:1523

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-04550-MWC-PVC Date: March 10, 2026

Title: Ford Motor Company v. Steve B. Mikhov *et al.*

the who, what, when, where, and how of the misconduct charged . . . .'" *Davidson v. Sprout Foods, Inc.*, 106 F.4th 842, 852 (9th Cir. 2024) (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018)). The allegations "must set forth more than neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about the statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). In essence, the defendant must be able to adequately answer the fraud allegations. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

III. Discussion[1]

A. *Noerr-Pennington* Doctrine

The *Noerr-Pennington* doctrine stems from the First Amendment's guarantee of "the right of the people . . . to petition the Government for redress of grievances." U.S. Const. amend. I; *see E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657 (1965); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006). "Under the *Noerr-Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa*, 437 F.3d at 929 (citing *Empress LLC v. City & Cnty. of S.F.*, 419 F.3d 1052, 1056 (9th Cir. 2005)). This immunity extends to the use of "the channels and procedures" of state and federal courts to advocate causes. *See Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510–11 (1972); *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 644 (9th Cir. 2009).

[1] Plaintiff argues that the Court should deny Defendants' motion because they failed to meet and confer under Local Rule 7-3. *See Opp.* 13 n.1. Defendants argue that they complied with the Local Rules because "[t]his motion raises the same grounds for dismissal as the two prior motions," and the parties met and conferred concerning arguments on those prior motions. *See Reply* 15–16 n.5. The Local Rules do not contemplate that meeting and conferring on an earlier motion to dismiss negates the need for meeting and conferring on later motions of the same kind. *See* L.R. 7-3. And the Court takes seriously litigants' obligation to meet and confer, so Defendants' argument as to Plaintiff's lack of prejudice does not cure their violation. Because the Court prefers to decide issues on the merits, it will do so, but the Court admonishes Defendants to scrupulously comply with the Local Rules in all future proceedings.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-04550-MWC-PVC Date: March 10, 2026

Title: Ford Motor Company v. Steve B. Mikhov *et al.*

"Under the *Noerr-Pennington* rule of statutory construction, we must construe federal statutes so as to avoid burdening conduct that implicates the protections afforded by the Petition Clause unless the statute clearly provides otherwise." *Sosa*, 437 F.3d at 931. The Supreme Court has counseled that courts must not "lightly impute to Congress an intent to invade" the freedoms protected by the Bill of Rights. *Noerr*, 365 U.S. at 138. "In determining whether the burdened conduct falls under the protection of the Petition Clause, we must give adequate 'breathing space' to the right of petition." *Sosa*, 437 F.3d at 931–32 (quoting *BE & K Constr. Co. v. N.L.R.B.*, 536 U.S. 516, 531 (2002)); *cf. Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 341–42 (1974) (pronouncing that "[t]he First Amendment requires that we protect some falsehood in order to protect speech that matters," since such protection "assure[s] to the freedoms of speech and press that 'breathing space' essential to their fruitful exercise."). As a result, the "breathing space principle" protects "activities that do not come within the protection of the speech clause in their own right." *Sosa*, 437 F.3d at 933 (identifying "certain classes of speech not meriting protection in themselves," like certain false statements (citing *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964)), and "certain conduct, not in itself speech" (citing *Buckley v. Valeo*, 424 U.S. 1, 17 (1976)) that "is protected in order adequately to protect the actor's ability to exercise his free speech rights"). "Consistent with the breathing space principle, we have recognized that, in the litigation context, not only petitions sent directly to the court in the course of litigation, but also 'conduct incidental to the prosecution of the suit' is protected by the *Noerr-Pennington* doctrine." *Sosa*, 437 F.3d at 934 (citing *Columbia Pictures Indus., Inc. v. Pro. Real Est. Invs., Inc.*, 944 F.2d 1525, 1528–29 (9th Cir. 1991)); *see United States v. Koziol*, 993 F.3d 1160, 1171 (9th Cir. 2021) ("The constitutional right to petition includes the right of access to the courts and therefore most litigation activities . . . are immunized from statutory liability." (citation omitted)).

Courts apply a three-part analysis to determine if the *Noerr-Pennington* doctrine immunizes a defendant's allegedly illegal conduct. *See B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 535 (9th Cir. 2022). First, a court must ask "whether the lawsuit imposes a burden on petitioning rights," after which it must analyze "whether the alleged activities constitute protected petitioning activity." *Kearney*, 590 F.3d at 644. Lastly, a court must analyze "whether the statute[] at issue must be construed to [avoid] that burden." *Id.* "If the answer to each step is 'yes,' then a defendant's conduct is immunized under *Noerr-Pennington*." *B&G Foods*, 29 F.4th at 535 (citing *Sosa*, 437 F.3d at 932). "But such immunity is not absolute, as 'neither the Petition Clause nor the *Noerr-Pennington* doctrine protects sham petitions.'" *Id.* (citing *Sosa*, 437 F.3d at 932). Courts analyze the whether

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-04550-MWC-PVC Date: March 10, 2026

Title: Ford Motor Company v. Steve B. Mikhov *et al.*

the "sham exception" is applicable under step two of the *Noerr-Pennington* analysis. *See Sosa*, 437 F.3d at 938.

*i. Whether Plaintiff's Claims Burden Petitioning Rights*

Because many of Plaintiff's arguments echo those of its opposition to Defendants' first set of motions to dismiss, *see generally* Dkt. # 103 ("*Opp. to First MTD*"), the Court incorporates by reference the analysis of its prior order, *see generally First MTD Order*.

Plaintiff first argues in its latest opposition that "the lawsuit does not target petitioning activity, but instead alleges a scheme to defraud Ford of millions of dollars by making fraudulent settlement demands and submitting perjured declarations." *Opp.* 14. It argues that because perjury lacks First Amendment protection, any declarations to courts which could be considered perjury and any false statements to Plaintiff while settling cases would fall outside the ambit of *Noerr-Pennington* protection. *See id.* 14–15.

Plaintiff's argument incorrectly attempts to reframe the scope of the *Noerr-Pennington* analysis and places the cart before the horse. "The question at this stage is not whether the conduct at issue is fraudulent and abusive, but instead whether the success of [Plaintiff's] lawsuit would constitute a burden on petitioning rights." *Kearney*, 590 F.3d at 645. Plaintiff's lawsuit focuses on Defendants' ability to recover fees when pursuing Lemon Law cases, including the representations that Defendants make to courts when doing so. Filings "in which plaintiffs or defendants make representations and present arguments to support their request that the court do or not do something, can be described as petitions without doing violence to the concept." *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005). Plaintiff does not contend that Defendants lack the right to seek fees stemming from these cases, nor could it. *See* Cal. Civ. Code § 1794(d) (stating, as part of the Song-Beverly Act, that a plaintiff can recover attorneys' fees). And even if the Court assumes *arguendo* that it should focus on only the declarations that Defendants filed in support of their fee petitions rather than the act of seeking fees generally, those declarations must constitute "representations" or "arguments to support their request that the court do or not do something . . . ." *See Freeman*, 410 F.3d at 1184.

Because *Kearney* is the most relevant example of the Ninth Circuit engaging Plaintiff's argument, the Court will reiterate the application of that precedent here. In that case, the plaintiff "contend[ed] that, if her lawsuit were successful, it would not discourage

future eminent domain proceedings, just fraudulent behavior in those lawsuits." *See Kearney*, 590 F.3d at 645. Plaintiff echoes the same argument when stating that its "lawsuit does not target petitioning activity, but instead . . . making fraudulent settlement demands and submitting perjured declarations." *See Opp.* 14. Following the example of *Kearney*, the Court here must remind Plaintiff that "this question of burden is separate from the question of whether the conduct challenged included intentional misrepresentations or fraud." *See Kearney*, 590 F.3d at 645.

*Sosa* buttresses this conclusion. Not only did *Sosa* determine that "[a] successful RICO claim would quite plainly burden [defendant's] ability to settle legal claims short of filing a lawsuit," *see Sosa*, 437 F.3d at 932, but the *Sosa* court did not question the validity or truthfulness of the defendant's demand letters in the first step of the *Noerr-Pennington* analysis, *see id.* at 932–33. In avoiding a conflation of step one with the sham litigation inquiry under step two, the court asked only whether petitioning activity included the defendant's "ability to settle legal claims short of filing a lawsuit." *See id.* Because it did, the plaintiff's RICO suit "pose[d] a burden on [the defendant's] communication of demand letters . . . ." *Id.* at 933. The step one inquiry requires no more, and the Court will not short-circuit the larger *Noerr-Pennington* analysis by collapsing the relevant questions.

Plaintiff's authority does not change the Court's conclusion. Plaintiff relies heavily on *U.S. ex rel. Wilson v. Maxxam, Inc.*, No. C 06-7497 CW, 2009 WL 322934 (N.D. Cal. Feb. 9, 2009). The crux of *Wilson* is that the plaintiffs sought "to impose liability, not for the act of 'petitioning' the government, but for specific acts committed in the course of 'petitioning' the government." *See Wilson*, 2009 WL 322934, at *6. In attempting to draw a distinction between petitioning and the acts committed while petitioning, *Wilson* reads out the Ninth Circuit's guidance that, under the *Noerr-Pennington* doctrine, "'conduct incidental to' a petition is protected by *Noerr-Pennington* if the petition itself is protected." *Freeman*, 410 F.3d at 1184 (citing *Theofel v. Farey-Jones*, 359 F.3d 1066, 1078–79 (9th Cir. 2004)). Plaintiff does not contend that fee petitions are not protected, only that Defendants' submissions in the course of seeking fees lacked protection. *See generally SAC*. And *Wilson* hinges its step one analysis on *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240 (9th Cir. 1982). First, and especially important given the context here, when evaluating "protests with the [Interstate Commerce Commission] that were 'spurious, baseless, and prosecuted without regard to their merit,'" *Clipper Exxpress* relied on the sham exception at step two rather than the step one inquiry. *See Wilson*, 2009 WL 322934, at *7 (citing *Clipper Exxpress*, 690 F.2d at 1253). The

*Clipper Exxpress* court only engaged step one when evaluating whether the *Walker Process* doctrine was relevant, holding that "when there is a conspiracy prohibited by the antitrust laws, and the otherwise legal litigation is nothing but an act in furtherance of that conspiracy prohibited by the antitrust laws, general antitrust principles apply, notwithstanding the existence of Noerr immunity." *See Clipper Exxpress*, 690 F.2d at 1263 (referencing *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172 (1965)). Plaintiff's theory of the case renders *Clipper Exxpress* inapposite. Rather than arguing that legal fee declarations were part of a larger unlawful scheme, the entirety of Plaintiff's case hinges on the specific fee declarations being unlawful, *see generally SAC*, inverting the *Clipper Exxpress* analysis. Stated differently, in *Clipper Exxpress*, the lack of protection for litigation activity is based on unlawful actions beyond the scope of any litigation; here, Defendants' actions overall would not be unlawful but for the allegedly illegal litigation activity.

Plaintiff's other source of relevant authority comes from *Pyankovska v. Abid*, 65 F.4th 1067 (9th Cir. 2023), a case that the Court already deemed an inappropriate comparator. *See First MTD Order* 13–14. In addition to incorporating by reference the same analysis here, the Court clarifies one source of contention stemming from its previous order. Plaintiff argues that the Court should deem an inaccurate declaration to be of the same ilk as illegally intercepted evidence. *See Opp.* 17 n.3. But the Court understands the use of evidence stemming from the insertion of a recording device into a child's backpack to surreptitiously record private conversations without consent to do so, *see Pyankovska*, 65 F.4th at 1072, as being different in kind from the misrepresentations that the SAC chronicles. That is especially true when considering *Pyankovska*'s incorporation of *Freeman*'s description that documents "'in which plaintiffs or defendants make representations and present arguments to support their request that the court do or not do something[] can be described as petitions without doing violence to the concept.'" *See id.* at 1077 (quoting *Freeman*, 410 F.3d at 1184). Even assuming *arguendo* that Plaintiff is correct in its attempt to exclude Defendants' suits or larger fee petitions from the inquiry, a declaration in support of a fee petition constitutes the kind of representation that *Freeman* contemplates; the product of a secret recording device does not.

For these reasons, Plaintiff's claims burden petitioning rights.

*ii. Whether Defendants' Conduct Was Based on Protected Petitioning Activity*

*a. Petitioning Activity*

Plaintiff offers no argument as to the first inquiry in step two, and the Court's analysis from its previous dismissal order applies. *See First MTD Order* 14–15. The lone argument in Plaintiff's opposition potentially applicable to this inquiry is that "[e]ven if petitioning activity were implicated at all, Ford's lawsuit clearly imposes no plausible burden on such activity to the extent it involves fee requests that were not adjudicated in courts." *See Opp.* 15 n.2. But *Sosa* foreclosed this contention by determining that "[p]relitigation communications demanding settlement of legal claims must be afforded *Noerr–Pennington* protection . . . ." *See Sosa*, 437 F.3d at 942. Plaintiff offers no way to distinguish a prelitigation settlement demand from a post-litigation fee demand—if anything, the fact that the latter arose out of litigation would place it more comfortably inside the tent of petitioning activity. The logic of the Ninth Circuit's *Sosa* conclusion applies equally here. "Even though the prelitigation settlement demands were not themselves litigation, they were part of the 'breathing space required' for effective exercise of petitioning rights." *Kearney*, 690 F.3d at 645 (quoting *Sosa*, 437 F.3d at 933).

Accordingly, Defendants' conduct was based on protected petitioning activity, regardless of whether Defendants directly petitioned a court when seeking fees.

*b. Application of "Sham Exception"*

"A party cannot claim the protection of the *Noerr-Pennington* doctrine if it engaged in 'sham' litigation." *Easton Diamond Sports, LLC v. Monsta Athletics, LLC*, 720 F. Supp. 3d 849, 861 (C.D. Cal. 2024) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 556 (2014)). There are three circumstances in which the sham litigation exception may apply: "first, where the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful," *Sosa*, 437 F.3d at 938 (citing *Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir. 1998)), "second, where the conduct involves a series of lawsuits 'brought pursuant to a policy of starting legal proceedings without regard to the merits' and for unlawful purposes," *id.* (quoting *Kottle*, 146 F.3d at 1060), and third, if the purportedly unlawful conduct "consists of making intentional misrepresentations to the court, litigation can be deemed a sham if 'a party's knowing fraud upon, or its intentional

Case 2:25-cv-04510-MAR Document 47-1 Filed 08/12/26 Page 1078 of 1097 Page ID #:4476

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-04550-MWC-PVC Date: March 10, 2026

Title: Ford Motor Company v. Steve B. Mikhov *et al.*

misrepresentations to, the court deprive the litigation of its legitimacy,'" *Kottle*, 146 F.3d at 1060 (quoting *Liberty Lake Invs., Inc. v. Magnuson*, 12 F.3d 155, 159 (9th Cir. 1993)).

Again, the parties disagree on whether the proper scope of the inquiry is the whole Lemon Law litigation or just the fee petition portion of that litigation. *Compare MTD* 19, *with Opp.* 19. The Court understands the entire Lemon Law litigation to be the correct scope of analysis. The Song-Beverly Act provides that:

> If the buyer prevails in an action under this section, the buyer shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action.

Cal. Civ. Code § 1794(d). The statute deems a fee award to be a portion of the overall judgment and pays those fees not to the lawyer, but to the client. *See id.* (stating that "the buyer shall be allowed . . . to recover as part of the judgment" the relevant fees). Plaintiff does not offer any textual or structural indication that the Song-Beverly drafters understood the fee petition process to be a proceeding distinct from the larger case. And even if a party can appeal a grant of attorneys' fees alone, the subject of that appeal can still comfortably fall within the ambit of the "entire proceeding." *See Kottle*, 146 F.3d at 1063 (stating that the third possibility under the sham exception applies only if the party "so misrepresented the truth . . . that the entire . . . proceeding was deprived of its legitimacy").

*Theofel* does not persuade the Court otherwise. There, the defendant subpoenaed plaintiffs' internet service provider, and a court determined the subpoena "was massively overbroad," "patently unlawful," a "transparent[] and egregious" violation of the Federal Rules, and suggestive of at least gross negligence. *See Theofel*, 359 F.3d at 1071–72. Defendants are correct that because the company subject to the subpoena was a third party,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-04550-MWC-PVC Date: March 10, 2026

Title: Ford Motor Company v. Steve B. Mikhov *et al.*

as to that party, the subpoena was the entire proceeding.[2] *See id.*; *Reply* 12. The same cannot be said as to the relationship between Defendants' fee petitions and Plaintiff here.

Plaintiff asserts that the third circumstance of the sham exception applies, which is "when the at-issue conduct 'consists of making intentional misrepresentations to the court'" such that those misrepresentations "'deprive the litigation of its legitimacy.'" *See Opp.* 19 (quoting *Kottle*, 146 F.3d at 1060). Plaintiff does not argue that Defendants' actions so deprived the whole Lemon Law litigation of its validity. *See generally id.* Accordingly, the sham exception does not apply because Defendants' actions did not so infect the Lemon Law proceedings as to render them illegitimate. *See First MTD Order* 15–21.

Even if the proper analysis focused on only the fee petitions, the third prong of the sham exception remains inapplicable to these facts. The parties disagree on the standard the Court should use when evaluating whether a misrepresentation deprived the fee process of legitimacy—Plaintiff believes that the Court should "require no more than materiality," *see Opp.* 21, while Defendants argue that "the sham litigation exception is not triggered by just any material misrepresentation, but only those that 'so misrepresented the truth' they deprived the 'entire' litigation of legitimacy," *see Reply* 12–13 (quoting *Kottle*, 146 F.3d at 1063). Plaintiff's argument proceeds by relying on authority from the Seventh and Fourth Circuits. *See Opp.* 21 (citing *Mercatus Grp., LLC v. Lake Forest Hosp.*, 641 F.3d 834, 843 (7th Cir. 2011) and *Baltimore Scrap Corp. v. David J. Joseph Co.*, 237 F.3d 394, 401–03 (4th Cir. 2001)). The Seventh Circuit opinion did not reach the question as to whether an exception to the *Noerr-Pennington* doctrine applied. *See Mercatus Grp.*, 641 F.3d at 849 ("We need not address whether the Hospital's alleged misrepresentations rendered the Board proceedings a sham."). The Fourth Circuit reasoned that "[a]lleged frauds that 'do not infect the core' of a case will receive *Noerr-Pennington* immunity because regardless of the alleged fraud, the outcome would have been the same." *See Baltimore Scrap*, 237 F.3d at 402. In that case, as here, "[w]hether to condemn [defendants'] activities . . . is a different question than whether to abrogate *Noerr-Pennington* immunity for conduct that does not deprive the lawsuit of legitimacy." *See id.* And because the outcome of the lawsuit in question would have been the same regardless

[2] Defendants also correctly identify that *Theofel* addressed the objective baselessness inquiry under the first prong of the sham exception, rather than the misrepresentation inquiry under the third prong; Plaintiff bases its argument on the latter. *See Reply* 12.

of the defendants' actions, the *Baltimore Scrap* court deemed the misrepresentation exception inapt. *See id.* at 403.

The same is true here. Plaintiff argues that "the fact that Defendants were entitled to some fees is of no moment, as the materiality inquiry is not binary . . . ." *See Opp.* 23. But Plaintiff's argument lacks a limiting principle. Plaintiff's theory of the case is that Defendants spread their scheme across many different cases, making it possible for the increase in their fees to go undetected. *See SAC* ¶¶ 4, 11, 18, 52, 64. Assuming the truth of Plaintiff's allegations, the Court can only conclude that the outcome—granting the vast majority of Defendants' fee requests—would remain the same. Since Plaintiff asks the Court to apply an outcome-determinative standard, *see Opp.* 21, but does not explain what constitutes "a discernable and objective financial impact," *see id.* 23, the Court is left wanting.[3] Moreover, Defendants identify that "[t]he six fee petitions attached to Ford's SAC alone include 21 unique billers other than Ms. Morse, Ms. Stephenson-Cheang, and Mr. Mikhov, and the SAC does not allege that any of those billers had false billing entries." *See MTD* 20. Plaintiff offers no way for the Court to determine that Defendants' actions infected the core of their fee applications when their representations were only one part of those applications, and admittedly a part so insignificant that they were "undetect[able]." *See SAC* ¶ 4.

The Court's issues with Plaintiff's application of its own standard is not an acceptance of that standard. Instead, the Court must follow the guidance of this Circuit, which *Kottle* offers and from which Plaintiff's standard departs—that the relevant misrepresentations must have deprived the "entire . . . proceeding of its legitimacy." *See Kottle*, 146 F.3d at 1063; *cf. Freeman*, 410 F.3d at 1185 n.2 ("Our conclusion that the defense as a whole was not a sham also establishes that this isolated instance of litigation misconduct would not, if proven, deprive the defense as a whole of its legitimacy."). For the same reasons the Court has outlined above and those identified in its previous dismissal order, *see First MTD Order* 19–20, the third prong of the sham exception does not apply.

---

[3] Though the Court gave Plaintiff an opportunity to clarify its standard at oral argument, Plaintiff was unable to provide a limiting principle for its "discernable and objective" standard. Accordingly, the Court can only wonder why a wrongful $1 increase—objectively discernable—would differ from a wrongful $100, $1,000, or $10,000 increase under Plaintiff's description of materiality.

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-04550-MWC-PVC Date: March 10, 2026

Title: Ford Motor Company v. Steve B. Mikhov *et al.*

*iii. Whether Statute Must Be Construed to Avoid Burden*

Plaintiff argues that the *Noerr-Pennington* doctrine is "nonetheless inapplicable [because] the statute at issue 'unambiguously applies to [Defendants'] conduct." *See Opp.* 24 (quoting *Pyankovska*, 65 F.4th at 1078). As the Court detailed previously, the Ninth Circuit explained that "RICO's general definition of racketeering activity does not in terms clearly reach the conduct at issue here," so "we turn to the particular RICO predicates alleged here to determine whether they do so or whether, instead, they are susceptible of a construction that avoids the serious constitutional question of Petition Clause immunity." *See Sosa*, 437 F.3d at 939; *First MTD Order* 21. Presumably because the Court previously quoted the Ninth Circuit's conclusion in *Sosa* that the mail and wire fraud statutes "[did] not unambiguously reach demands to settle reasonably based legal claims," *Sosa*, 437 F.3d at 940, and thus did not unambiguously reach the submission of inflated fee petitions, *see First MTD Order* 21, Plaintiff has focused on an entirely different RICO predicate.

Now, Plaintiff asserts, the relevant statute is 18 U.S.C. § 1621. *See Opp.* 24. But Defendants identify a fundamental flaw in Plaintiff's contention—for all of the RICO predicates that 18 U.S.C. § 1961(1) lists to define "racketeering activity," 18 U.S.C. § 1621 is not among them. *See* 18 U.S.C. § 1961(1). And Plaintiff offers no basis for the Court to find atextual RICO predicates. *See Opp.* 24; *Pac. Recovery Sols. v. United Behavioral Health*, 481 F. Supp. 3d 1011, 1027 (N.D. Cal. 2020) ("Offenses that can constitute predicate acts for a RICO violation are listed in 18 U.S.C. § 1961(1)."). To be sure, a separate portion of Plaintiff's brief once cites 18 U.S.C. § 1503, which is a RICO predicate. But the plain text of the statute does not unambiguously reach the conduct at issue, *see* 18 U.S.C. § 1503, and "[i]t is not the role of the Court to make parties' arguments for them," *Cordon v. Wachovia Mortg., a Div. of Wells Fargo Bank, N.A.*, 776 F. Supp. 2d 1029, 1040 (N.D. Cal. 2011) (citation omitted).[4] As a result, the Court must construe the RICO statute to avoid burdening protected petitioning activity.

[4] At oral argument, Plaintiff suggested that it should have the opportunity to file a surreply to respond to Defendants' argument regarding 18 U.S.C. § 1621 and provide new arguments regarding 18 U.S.C. § 1503. Plaintiff lacks any entitlement to a surreply on this issue. Defendants argued that "RICO and its predicates do not unambiguously cover the conduct at issue," *see MTD* 21, and Plaintiff opted to focus the entirety of its opposition argument on 18 U.S.C. § 1621 without addressing that this statute is not a listed RICO predicate, *see Opp.* 24. Plaintiff may be dissatisfied with its own briefing on the issue, but that dissatisfaction does not entitle it to a do-over.

*iv. Determination*

Based on the Court's findings above, Defendants are entitled to *Noerr-Pennington* immunity for their petitioning activity, and dismissal is appropriate on this basis alone. Still, to the extent that there is any doubt as to the appropriate application of the *Noerr-Pennington* doctrine when evaluating Plaintiff's motion to dismiss, the Court finds below that the SAC fails to plead a substantive RICO claim.

B. Civil RICO

Under 18 U.S.C. § 1962(c), to successfully plead a claim Plaintiff must plausibly allege that Defendants participated in (1) the conduct (2) of an enterprise that affects interstate commerce, (3) through a pattern (4) of racketeering activity (5) causing injury to the plaintiff's business or property by the conduct constituting the violation. *See Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005). Failure to plead even one of these elements precludes a plaintiff from stating a claim. *See, e.g.*, *Ruggles v. Ige*, No. 20-cv-00247-DKW-KJM, 2020 WL 6731704, at *2 n.2 (D. Haw. Nov. 16, 2020) ("Because failure to satisfy this element alone sinks [plaintiff's] Section 1962(c) claim, analysis of the other elements is unnecessary." (citing *Living Designs*, 431 F.3d at 361)).

*i. RICO Enterprise*[5]

An enterprise under the RICO statute "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals

[5] Defendants identify that the SAC contradicts Plaintiff's previous pleading, providing sufficient grounds for the Court to reject those allegations as false. *See MTD* 22. "A party cannot amend pleadings to 'directly contradict[t] an earlier assertion made in the same proceeding.'" *Air Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)). And there may be grounds for the Court to determine that Plaintiff's latest pleading contradicts its previous pleadings. *Compare FAC* ¶ 19 (detailing enterprise consisting of Knight Law Group and "a consortium of other Defendants, retained experts, and legal professionals, including other law firms and attorneys who are brought in as co-counsel to handle trial work on purposefully overstaffed cases"), *with SAC* ¶ 88 (limiting enterprise definition solely to individuals associated with Knight Law Group). But

associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "To show the existence of [a RICO] enterprise . . . plaintiffs must plead that the enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish that purpose." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). Though the Court incorporates its previous analysis by reference, *see First MTD Order* 22–26, it will again analyze each of those elements in turn.

*a. Common Purpose*

To plead a common purpose sufficient to prove the existence of a RICO enterprise, a plaintiff typically must show more than the parties engaging in ordinary business conduct and an ordinary business purpose. *See In re Ariz. Theranos, Inc., Litig.*, 308 F. Supp. 3d 1026, 1060 (D. Ariz. 2018) (citation omitted). Instead, the defendants engaged in the enterprise must have been "bound by common purpose . . . ." *See Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1054 (C.D. Cal. 2016) (citation omitted). "Courts have overwhelmingly rejected attempts to characterize routine commercial relationships as RICO enterprises." *Gomez v. Guthy-Renker, LLC*, No. EDCV 14-01425 JGB (KKx), 2015 WL 4270042, at *8 (C.D. Cal. July 13, 2015).

The Court previously identified that Plaintiff's allegations "lack[ed] an indication that the parties came together for the purpose of fraudulently inflating their billing, rather than having formed for the purpose of bringing Lemon Law cases but having utilized poor billing practices in doing so." *See First MTD Order* 23. The SAC suffers from the same principal defect.

Still, Plaintiff begins by attacking a strawman: that a lawyer could not be subject to RICO liability. *See Opp.* 25. The Court never suggested otherwise, but instead rejected Plaintiff's reliance on a "syllogism that because there are allegations of fraudulent billing, and the parties co-counseled on cases involving such billing, then the parties must have co-counseled with the purpose of billing fraudulently." *First MTD Order* 25. Though Plaintiff has dropped its claims against counsel outside of Knight Law Group, it still fails to plead that the Defendants came together for the common purpose of creating fictitious billing records. Instead, Plaintiff's allegations "lack an indication that the parties came together for the purpose of fraudulently inflating their billing, rather than having formed for the

because the Court prefers to decide issues on the merits, it will not rule on this question at this juncture.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-04550-MWC-PVC Date: March 10, 2026

Title: Ford Motor Company v. Steve B. Mikhov *et al.*

purpose of bringing Lemon Law cases but having utilized poor billing practices in doing so." *See id.* 23.

The SAC describes the "common purposes" of the alleged enterprise to be "preparing and filing fraudulent billing records and perjured declarations in support of fee demands, fraudulently inflating the value of negotiated settlements, delaying and/or depriving clients of compensation due to them or increasing their clients' tax liability to advance their own financial interests, and funneling fraud proceeds into attorney distributions and extravagant purchases." *SAC* ¶ 89. As an initial matter, the SAC includes no specific allegations as to Defendants delaying or depriving clients of compensation, increasing their clients' tax liability, or funneling fraud proceeds into attorney distributions and extravagant purchases. *See generally id.* The extent of Plaintiff's argument on the remaining two "purposes" is that there was a "consistent pattern of fraud." *See Opp.* 28. Stripping the SAC of its conclusory allegations, *see Maye v. Online Land Sales LLC*, No. 2:23-cv-00173-DAD-CKD, 2024 WL 382294, at *10 (E.D. Cal. Feb. 1, 2024) (citing *Comm. to Protect Our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1174–75 (E.D. Cal. 2017)), Plaintiff has not pleaded that the purpose binding Defendants was to conduct the alleged scheme.

The Supreme Court has explained that although "proof used to establish the[] separate elements [of enterprise and pattern] may in particular cases coalesce, proof of one does not necessarily establish the other." *United States v. Turkette*, 452 U.S. 576, 583 (1981); *see also id.* ("The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages."). And Plaintiff offers no justification as to why the Court should decide that this case is one where proof of a pattern "necessarily" establishes proof of common purpose. *See id.* That defect is especially fatal when alternative explanations as to what binds Defendants abound. *See Iqbal*, 556 U.S. at 681 (finding that the court must draw all reasonable inferences in favor of the non-moving party but must also assess whether there are "more likely explanations" for defendant's conduct); *GreenCycle Paint, Inc. v. PaintCare, Inc.*, 250 F. Supp. 3d 438, 447 (N.D. Cal. 2017) ("Among other things, when faced with two possible explanations for a defendant's behavior, a plaintiff cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the defendant's alternative explanation." (quoting *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1008 (9th Cir. 2013))).

Case 2:25-cv-04550-MWC-PVC Document 144-1 Filed 03/10/26 Page 1085 of 1097 Page ID #:4162

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-04550-MWC-PVC Date: March 10, 2026

Title: Ford Motor Company v. Steve B. Mikhov *et al.*

Although Plaintiff relies heavily on *In re Outlaw Laboratory, LP Litigation*, that case is not to the contrary. There, the various entities associated with the enterprise came together to pursue litigation against a number of websites that sold male enhancement products, and the court found the demand letters at the center of the plaintiff's allegations in those demand letters to be "objectively baseless as a matter of law such that no reasonable litigant could realistically expect success on the merits." *See* No. 18-cv-840-GPC-BGS, 2020 WL 5552558, at *2–4 (S.D. Cal. Sept. 16, 2020). Given the volume of that litigation—with the relevant law firm sending an estimated 4,000 demand letters—and the lack of an alternative explanation as to the association and actions among the relevant actors, there were sufficient facts to infer that these actors were bound together by the common purpose of threatening frivolous litigation. *See generally id.* Those actions are far afield of Defendants' actions here, since the SAC does not dispute that Defendants brought meritorious Lemon Law cases, were entitled to some fees, but relied on inappropriate billing practices when doing so. *See generally SAC*. There was not a more plausible explanation for the *Outlaw* defendants' common purpose, while the SAC indicates several more plausible purposes for Defendants' association here.

The cases the Court cited in its previous order on this issue apply in equal force to the SAC. *See First MTD Order* 23–26; *see In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., and Prods. Liab. Litig.*, 826 F. Supp. 2d 1180, 1202–03 (C.D. Cal. 2011) (determining that the complaint alleged "no more than that Defendants' primary business activity—the design, manufacture, and sale or lease of Toyota vehicles—was conducted fraudulently," which is "incompatible with the types of conduct RICO was enacted to prevent"); *In re Jamster Mktg. Litig.*, No. 05-cv-0819, 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009) ("Without the adjectives, the allegations allege conduct consistent with ordinary business conduct and an ordinary business purpose."); *see also id.* ("Plaintiffs cannot meet their particularized pleading burden by artfully inserting modifiers such as 'unauthorized charges' or 'fraudulently collecting monies' in an attempt to show a common purpose."); *Eclectic Props.*, 751 F.3d at 997–98 (highlighting need for "a significant level of factual specificity" for a court to reasonably infer that ordinary business conduct is plausibly part of a fraudulent scheme). Plaintiff's allegations are again limited to the idea that Defendants' billing—the primary activity at any for-profit law firm hoping to stay in business—was conducted fraudulently. These allegations are "incompatible with the types of conduct RICO was enacted to prevent." *See In re Toyota*, 826 F. Supp. 2d at 1203.

Without more, the SAC has not alleged a common purpose among Defendants.

*b. Structure / Organization*

"An ongoing organization is 'a vehicle for the commission of two or more predicate crimes.'" *Odom*, 486 F.3d at 552 (quoting *U.S. v. Cagnina*, 697 F.2d 915, 921–22 (11th Cir. 1983)). For purposes of § 1962(c), a single individual or entity cannot be both the RICO enterprise and an individual defendant. *See Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir. 1984) (holding that plaintiff could not assert RICO claim against defendant bank because bank was alleged to be a RICO enterprise). "While accepting the 'distinctness' principle, . . . . [t]he corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001); *see also Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1534 (9th Cir. 1992) (explaining that "if the enterprise was a corporation, the fact that there was but one stockholder would not shield that individual from suit," so long as the enterprise was "'either formally'" or "'practically . . . separable from the individual.'" (quoting *United States v. Benny*, 786 F.2d 1410, 1416 (9th Cir. 1986))). In California, "[a] partnership is an entity distinct from its partners." Cal. Corp. Code § 16201.

The SAC explains that Defendants are associated with Knight Law Group LLP. *See SAC* ¶ 88. It notes that "the Enterprise has a governing structure that operates a command hierarchy led by" Mr. Mikhov, Ms. Morse, and Mr. Kirnos, with different roles for members, and a governing set of rules and practices. *See id.* The SAC alleges that Mr. Mikhov was "the scheme's ringleader," since "he was responsible for creating [Knight Law Group's] Fee Motion Department as a formal system to create fictitious time entries in Lemon Law cases for work never performed or contemporaneously billed." *Id.* ¶ 20. Ms. Morse "supervises [Knight Law Group's] litigation department" who "knowingly [made] and/or [allowed] the creation of fraudulent entries." *Id.* ¶ 21. Mr. Kirnos is alleged to have done the same. *See id.* ¶ 22. The SAC includes allegations as to roles within the Fee Motion Department. Ms. Elin Howard provided testimony that members of the Fee Motion Department were "divided by role into 'drafters,' 'reviewers,' and 'finalizers'" and tasked with "'prepar[ing] to file the motion for attorney's fees and costs after a case had settled,' and to that end would 'review attorney time billing.'" *See id.* ¶ 36. "Members of the team would review attorney tasks that [Knight Law Group] attorneys had input into [the firm's]

billing software to compile an invoice in a new, separate document for filing a fee petition." *See id.*

Defendants argue that the Court cannot accept that Knight Law Group as a legal entity satisfies the structure / organization prong. They first refer to inconsistencies between the FAC and the SAC, an issue the Court will not rule on at this juncture considering its preference for deciding on the merits. *See supra* Section III.B.i n.3. Defendants' other argument is that "the allegations still sound as an association-in-fact enterprise with Knight Law as a RICO person." *See MTD* 23. But Defendants read in a distinctiveness requirement more stringent than the RICO statute and case law require. The statute states that "[i]t shall be unlawful for any person *employed by* . . . an enterprise . . . to conduct or participate, directly or indirectly, *in the conduct of such enterprise's affairs* through a pattern of racketeering activity . . . ." *See* 18 U.S.C. § 1962(c) (emphasis added). And § 1961(4) provides that an enterprise "includes any individual, *partnership*, corporation, association, or other legal entity . . . ." *See* 18 U.S.C. § 1961(4) (emphasis added). Defendants' briefing does not identify another case where a court determined that a pleading failed to satisfy the structure / organization prong despite alleging that the defendants operated through a legal entity that was not itself a defendant. The SAC alleges that Defendants operated through Knight Law Group, a partnership, which satisfies the definition of an enterprise for this portion of the inquiry. And allowing Knight Law Group—which is not a defendant—to serve as the relevant legal entity under this prong of the enterprise analysis comports with the purpose of the RICO statute. *See Cedric Kushner Promotions*, 533 U.S. at 162 ("Whether the Act seeks to prevent a person from victimizing, say, a small business, . . . or to prevent a person from using a corporation for criminal purposes, . . . the person and the victim, or the person and tool, are different entities, not the same." (citations omitted)).

Accordingly, the SAC has satisfied the structure / organization prong of the enterprise inquiry.

*c. Longevity*

The Court previously determined that Plaintiff had satisfied the longevity element despite its shortcomings as to the other elements of the enterprise inquiry. *See First MTD Order* 28–29. Defendants' briefing does not attempt to change this conclusion. Accordingly, the SAC satisfies the longevity element.

Case 2:25-cv-04551-MWC-PVC Document 47-1 Filed 03/12/26 Page 1088 of 1097 Page ID #:2246

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-04550-MWC-PVC Date: March 10, 2026

Title: Ford Motor Company v. Steve B. Mikhov *et al.*

*ii. Determination*

Because Plaintiff has not alleged a RICO enterprise since it failed to plead a common purpose, Plaintiff cannot state a RICO claim. *See Stitt v. Citibank, N.A.*, 748 Fed. Appx. 99, 101 (9th Cir. 2018) ("By failing to plead an enterprise, Appellants did not state a plausible RICO claim under 18 U.S.C. § 1962(c) or (d)."). As a result, the Court does not reach the remaining factors and **GRANTS** Defendants' motion to dismiss Plaintiff's RICO claim under 18 U.S.C. § 1962(c).

C. RICO Conspiracy

Plaintiff second claim is one for RICO Conspiracy under 18 U.S.C. § 1962(d). *See generally SAC*. "There can be no RICO conspiracy without having committed a RICO violation." *Flores v. Emerich & Fike*, 416 F.2d 885, 912 (E.D. Cal. 2006); *see Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) (identifying that "the district court held that the failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy. We agree."). Here, the Court has already determined that the SAC fails to adequately plead a substantive RICO violation under 18 U.S.C. § 1962(c). Because Plaintiff's "allegations under 1962(c) are insufficient . . . their allegation under 1962(d) fails as well." *Flores*, 416 F. Supp. 2d at 912. Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's RICO Conspiracy claim.

IV. Leave to Amend

Whether to grant leave to amend rests in the sound discretion of the trial court. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Courts consider whether leave to amend would cause undue delay or prejudice to the opposing party, and whether granting leave to amend would be futile. *See Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). Generally, dismissal without leave to amend is improper "unless it is clear that the complaint could not be saved by any amendment." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003). In the Ninth Circuit, courts should grant leave to amend with "extreme liberality." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (internal quotation marks and citation omitted). Where a party does not request leave to amend, the Court need not grant it. *See Armbruster v. WageWorks, Inc.*, 953 F. Supp. 2d 1072, 1078 (D. Ariz. 2013) ("Armbruster has not requested leave to amend

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-04550-MWC-PVC Date: March 10, 2026

Title: Ford Motor Company v. Steve B. Mikhov *et al.*

and recent Ninth Circuit authority suggests the Court need not grant leave to amend when no request is made." (citing *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 926 (9th Cir. 2012))). Plaintiff here has not requested leave to amend, and the Court already granted leave to amend in its previous dismissal order. *See generally Opp.*; *First MTD Order*. In light of these two considerations, in addition to the extensive time and resources that Plaintiff has already dedicated to drafting its complaints, leave to amend is inappropriate.

V. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss **WITHOUT LEAVE TO AMEND**. This Order closes the case.

**IT IS SO ORDERED.**

:

**Initials of Preparer** TJ

# EXHIBIT 6

**ACMS Docket Report**
**United States Court of Appeals for the Ninth Circuit**

**Court of Appeals Docket #:** 26-2317 **Docketed:** 04/15/2026
**Nature of Suit:** 3470 Civil (Rico)
Ford Motor Company v. Mikhov, et al.
**Appeal From:** Los Angeles, Central California
**Fee Status:** Paid

**Case Type Information:**
**1)** Civil
**2)** Private
**3)**

**Originating Court Information:**
**District:** Central District of California : 2:25-cv-04550-MWC-PVC
**Trial Judge:** Michelle Williams Court, District Judge
**Court Reporter:** Alberto V. Ortiz
**Date Filed:** 05/21/2025

| Date Order/Judgment: | Date Order/Judgment EOD: | Date NOA Filed: | Date Rec'd COA: |
|---|---|---|---|
| 03/10/2026 | 03/10/2026 | 04/09/2026 | 04/09/2026 |

**Prior Cases:**
None

**Current Cases:**
None

| | |
|---|---|
| FORD MOTOR COMPANY, A Delaware Coporation<br>Plaintiff - Appellant | Mr. Daniel Saunders, Partner<br>Direct: 424-288-7904<br>Email: dsaunders@kasowitz.com<br>[Retained]<br>Kasowitz, LLP<br>1801 Century Park East<br>Suite 1830<br>Los Angeles, CA 90067<br><br>Daniel Fetterman, Attorney<br>Direct: 212-506-1902<br>Email: dfetterman@kasowitz.com<br>[Retained]<br>Kasowitz LLP<br>Accounting<br>1633 Broadway<br>22nd Floor<br>New York, NY 10019<br><br>Ms. Jessica Lynn Ellsworth, Attorney<br>Direct: 202-637-5886<br>Email: jessica.ellsworth@hlc.com<br>[Retained]<br>Hogan Lovells Cadwalader US LLP<br>555 13th Street, NW<br>Washington, DC 20004 |

| | |
|---|---|
| | Jo-Ann Tamila Sagar<br>Direct: 202-637-6454<br>Email: jo-ann.sagar@hoganlovells.com<br>[Retained]<br>Hogan Lovells US, LLP<br>555 13th Street, NW<br>Washington, DC 20004<br><br>James Andrew Mackenzie, Assistant Attorney General<br>Direct: 202-637-5600<br>Email: drew.mackenzie@hoganlovells.com<br>[Retained]<br>Hogan Lovells US, LLP<br>555 13th Street, NW<br>Washington, DC 20004 |
| STEVE BORISLAV MIKHOV<br>Defendant - Appellee | Mark Davis Litvack<br>Direct: 213-488-7100<br>Email: mark.litvack@pillsburylaw.com<br>[Retained]<br>Pillsbury Winthrop Shaw Pittman, LLP<br>725 S Figueroa Street<br>36th Floor<br>Los Angeles, CA 90017<br><br>Mr. Zachary Kent Warren, Partner<br>Direct: 202-434-5252<br>Email: zwarren@wc.com<br>[Retained]<br>Williams & Connolly, LLP<br>680 Maine Avenue, SW<br>Washington, DC 20024<br><br>Matthew Laroche<br>Direct: 212-530-5514<br>Email: mlaroche@milbank.com<br>[Retained]<br>Milbank, LLP<br>55 Hudson Yards<br>New York, NY 10001<br><br>Ronald L. Cheng, Attorney<br>Direct: 213-488-7100<br>Email: ronald.cheng@pillsburylaw.com<br>[Retained]<br>Pillsbury Winthrop Shaw Pittman, LLP<br>725 S Figueroa Street<br>36th Floor<br>Los Angeles, CA 90017 |
| KNIGHT LAW GROUP, LLP<br>Defendant | |

| | |
|---|---|
| BRYAN C. ALTMAN, ATTORNEY<br>Defendant | |
| AMY MORSE<br>Defendant - Appellee | Ronald L. Cheng, Attorney<br>Direct: 213-488-7100<br>Email: ronald.cheng@pillsburylaw.com<br>[Retained]<br>Pillsbury Winthrop Shaw Pittman, LLP<br>725 S Figueroa Street<br>36th Floor<br>Los Angeles, CA 90017<br><br>Ms. Kendall Erin Waters<br>Direct: 213-972-4899<br>Email: kwaters@foley.com<br>[Retained]<br>Foley & Lardner, LLP<br>555 S Flower Street<br>Suite 3300<br>Los Angeles, CA 90071-2411<br><br>Mr. Zachary Kent Warren, Partner<br>Direct: 202-434-5252<br>Email: zwarren@wc.com<br>[Retained]<br>Williams & Connolly, LLP<br>680 Maine Avenue, SW<br>Washington, DC 20024<br><br>Pamela Johnston, Attorney<br>Direct: 213-972-4500<br>Email: pjohnston@foley.com<br>[Retained]<br>Foley & Lardner, LLP<br>555 S Flower Street<br>Suite 3300<br>Los Angeles, CA 90071-2411 |
| ROGER KIRNOS<br>Defendant - Appellee | Mr. Zachary Kent Warren, Partner<br>Direct: 202-434-5252<br>Email: zwarren@wc.com<br>[Retained]<br>Williams & Connolly, LLP<br>680 Maine Avenue, SW<br>Washington, DC 20024<br><br>Neal Kumar Katyal<br>Direct: 202-835-7505<br>Email: nkatyal@milbank.com<br>[Retained]<br>Milbank, LLP<br>1101 New York Avenue, NW<br>Washington, DC 20005 |

| | |
|---|---|
| RICHARD M. WRITZ<br>Defendant | |
| ALTMAN LAW GROUP<br>Defendant | |
| DOROTHY BECERRA<br>Defendant | |
| WRITZ LAW, APC<br>Defendant | |

FORD MOTOR COMPANY, A Delaware Coporation,

Plaintiff - Appellant,

v.

STEVE BORISLAV MIKHOV; AMY MORSE; ROGER KIRNOS,

Defendants - Appellees,

KNIGHT LAW GROUP, LLP, Mr. BRYAN C. ALTMAN Esquire, Attorney, RICHARD M. WRITZ, ALTMAN LAW GROUP, DOROTHY BECERRA, WRITZ LAW, APC,

Defendants.

| | | |
|---|---|---|
| 4/15/2026 | 1 | **CASE OPENED.** A copy of your notice of appeal / petition filed in 2:25-cv-04550-MWC-PVC has been received in the Clerk's office of the United States Court of Appeals for the Ninth Circuit.<br>The U.S. Court of Appeals docket number **26-2317** has been assigned to this case. All communications with the court must indicate this Court of Appeals docket number. Please carefully review the docket to ensure the name(s) and contact information are correct. It is your responsibility to alert the court if your contact information changes.<br>**Resources Available**<br>For more information about case processing and to assist you in preparing your brief, please review the Case Opening Information (for attorneys and pro se litigants) and review the Appellate Practice Guide. Attorneys should consider contacting the court's Appellate Mentoring Program for help with the brief and argument. [Entered: 04/15/2026 10:08 AM] |
| 4/15/2026 | 2<br>3 pg. 233 KB | **SCHEDULE NOTICE.** Appeal Opening Brief Due (Appellant) 7/2/2026, Appeal Answering Brief Due (Appellee) 8/3/2026, Appeal Transcript Order Due (Appellant) 4/23/2026, Mediation Questionnaire due (Appellant) 4/20/2026, Appeal Transcript Due (Appellant) 5/26/2026. **For appeal no. 26-2317, 2:25-cv-04550-MWC-PVC**. All briefs shall be served and filed pursuant to FRAP 31 and 9th Cir. R. 31-2.1. Failure of the petitioner(s)/appellant(s) to comply with this briefing schedule will result in automatic dismissal of the appeal. See 9th Cir. R. 42-1. [Entered: 04/15/2026 10:44 AM] |
| 4/20/2026 | 3 | **NOTICE OF APPEARANCE** by Jessica Lynn Ellsworth for Appellant Ford Motor Company. [Entered: 04/20/2026 10:45 AM] |
| 4/20/2026 | 4 | **NOTICE OF APPEARANCE** by Jo-Ann Tamila Sagar for Appellant Ford Motor Company. [Entered: 04/20/2026 11:00 AM] |
| 4/20/2026 | 5 | **NOTICE OF APPEARANCE** by James Andrew Mackenzie for Appellant Ford Motor Company. [Entered: 04/20/2026 11:14 AM] |
| 4/20/2026 | 6 | **ADDED** Counsel for Appellant Jessica Lynn Ellsworth [Entered: 04/20/2026 12:17 PM] |
| 4/20/2026 | 7<br>2 pg. 684 KB | **MEDIATION QUESTIONNAIRE** filed by Appellant Ford Motor Company.<br>To submit pertinent **confidential** information directly to the Circuit Mediators, please email ca09_mediation@ca9.uscourts.gov and include the case name and number in the subject line. Confidential submissions may include any information relevant to mediation of the case and settlement potential, including, but not limited to, settlement history, ongoing or potential settlement discussions, non-litigated party related issues, other pending actions, and timing considerations that may impact mediation efforts. [Entered: 04/20/2026 12:25 PM] |
| 4/20/2026 | 8 | **ADDED** Counsel for Appellant Jo-Ann Tamila Sagar [Entered: 04/20/2026 12:26 PM] |
| 4/20/2026 | 9 | **ADDED** Counsel for Appellant James Andrew Mackenzie [Entered: 04/20/2026 12:29 PM] |
| 4/23/2026 | 10<br>2 pg. 115 KB | **DISCLOSURE STATEMENT** pursuant to FRAP 26.1 and CR 26.1-1 filed by Appellant Ford Motor Company. [Entered: 04/23/2026 12:27 PM] |
| 5/7/2026 | 11<br>6 pg. 1,564 KB | **MEDIATION CONFERENCE SCHEDULED** - DIAL-IN Assessment Conference, 5/27/2026, 10:00 a.m. PACIFIC Time. See order for instructions and details. [Entered: 05/07/2026 01:58 PM] |
| 5/27/2026 | 12 | **RELEASED FROM MEDIATION (text only).** This case is released from the Mediation Program. [Entered: 05/27/2026 10:35 AM] |
| 6/11/2026 | 13 | Streamlined Request for Extension of Time to File Brief filed by Appellant Ford Motor Company. [Entered: 06/11/2026 02:51 PM] |
| 6/12/2026 | 14 | **ORDER FILED.** Streamlined Request for Extension of Time to File Brief (DE 13) granted. Amended briefing schedule: Answering Brief Due (Appellee) 9/2/2026, Opening Brief Due (Appellant) 8/3/2026. Optional Reply Brief due 21 days after service of Answering Brief. All briefs shall be served and filed pursuant to FRAP 31 and 9th Cir. R. 31-2.1. [Entered: 06/12/2026 08:22 AM] |

| | | |
|---|---|---|
| 8/3/2026 | 15<br>85 pg. 333 KB | **OPENING BRIEF** submitted for filing by Appellant Ford Motor Company. [Entered: 08/03/2026 03:58 PM] |
| 8/3/2026 | 16<br>936 pg. 19,143 KB | **EXCERPTS OF RECORD** submitted for filing by Appellant Ford Motor Company. [Entered: 08/03/2026 04:03 PM] |
| 8/4/2026 | 17 | **CLERK ACTION:** Opening Brief and Excerpts of Record submitted at DE 15, DE 16 by Appellant Ford Motor Company are filed. No paper copies are required. [Entered: 08/04/2026 09:37 AM] |